1

2

3

4

5

6

7

8

HONORABLE RICHARD A. JONES

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

10

11

12

13

14

15

16

STATE OF WASHINGTON, *et al.*,

        Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF
STATE, *et al.*,

        Federal Defendants.

No. 2:20-cv-00111-RAJ

**MOTION TO INTERVENE BY
NATIONAL SHOOTING SPORTS
FOUNDATION, INC. AND FREDRIC'S
ARMS & SMITHS, LLC**

NOTE ON MOTION CALENDAR:
February 28, 2020

17

18

19

20

21

22

23

24

25

26

1     National Shooting Sports Foundation, Inc. and Fredric's Arms & Smiths, LLC ("the NSSF

2  Parties") respectfully seek an order from this Court allowing them to intervene as of right as

3  defendants pursuant to Fed. R. Civ. P. 24(a)(2), or, alternatively, to intervene permissively as

4  defendants under Fed. R. Civ. P. 24(b)(1)(B).  In this action, Plaintiffs State of Washington, *et al.*

5  challenge agency rules ("Rules") promulgated by the State Department and the Department of

6  Commerce, respectively.  These Rules, first initiated during President Obama's Administration,

7  transfer export licensing jurisdiction over certain categories of firearms and ammunition to

8  simplify and improve regulatory enforcement.  Plaintiffs' merits arguments target *only* the Rules'

9  removal of technical data related to 3D-printed firearms ("3D Files") from the U.S. Munitions List

10  ("Munitions List").  Am. Compl. ¶ 2.  Yet Plaintiffs seek an injunction against, and vacatur of, the

11  Rules *in their entirety*.  *Id.* VI (Prayer for Relief).  The Federal Defendants can be expected to

12  defend the Rules' treatment of 3D Files.  By contrast, the NSSF Parties will argue that however

13  this Court resolves the Rules' treatment of 3D Files, there is no basis for the Court to enjoin or

14  vacate the Rules in their entirety.

15     Counsel for Federal Defendants state their position on this motion as follows:  "We do not

16  believe the Court has jurisdiction over this action.  However, to the extent the Court exercises

17  jurisdiction, we do not oppose your intervention as of right under FRCP 24(a)(2)."  Counsel for

18  Plaintiffs state their position as follows:  "The States will not oppose [this] motion to intervene,

19  on the conditions that (1) [the NSSF Parties'] briefing is limited to the severability issue and (2)

20  the relief [the NSSF Parties] request would not alter the current (pre-implementation) status quo

21  as to software and technology related to 3D-printed guns."[1]

22

23

24  _____

25     [1] Although the NSSF Parties do not plan to address issues beyond severability or to defend
the Rules' treatment of 3D Files, the NSSF Parties reserve the right to address other issues if the
26  claims change or if Plaintiffs and Federal Defendants inject other issues into the litigation.

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 1
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1

## I.   BACKGROUND

2      NSSF is the trade association for America's firearms and ammunition industry, and it

3 participated actively in the administrative process leading to the Rules' promulgation.  Fredric's

4 Arms & Smiths, LLC ("Fredric's Arms"), a member of NSSF, is a gunsmith shop in Washington

5 State.  *See* Declaration of Marc Stairet ("Stairet Decl.") ¶¶ 2, 4.  Plaintiffs' challenge to the Rules

6 threatens to jeopardize a regulatory regime that will enable more effective and less burdensome

7 regulation of firearm exports in ways that have nothing to do with the 3D Files.  If successful,

8 Plaintiffs' challenge would cause significant economic detriment to NSSF's members, including

9 Fredric's Arms.  Accordingly, the NSSF Parties are entitled to (or, alternatively, should be

10 permitted to) intervene in this matter to protect the unique interests of NSSF and its members.

11      **A.      Summary of the Rules**

12      The Rules here at issue "are the product of a larger effort since 2010," originating in the

13 Obama Administration, "to create a simpler, more robust system that eases industry compliance,

14 improves enforceability, and better protects America's most sensitive technologies."  U.S. Dep't

15 of State, Final Rules for Oversight of Firearms Exports Fact Sheet (Jan. 23, 2020).[2]  In 2018, the

16 State Department and the Department of Commerce issued proposed rules to transfer licensing

17 jurisdiction over commercial firearms and related items, including those widely available in retail

18 outlets, from the State Department under the International Traffic in Arms Regulations to the

19 Department of Commerce's Export Administration Regulations.  *See* International Traffic in Arms

20 Regulations: U.S. Munitions List Categories I, II, and III, 83 Fed. Reg. 24,198 (proposed May 24,

21 2018); Control of Firearms, Guns, Ammunition and Related Articles the President Determines No

22 Longer Warrant Control Under the United States Munitions List (USML), 83 Fed. Reg. 24,166

23 (proposed May 24, 2018).

24

25

26      [2] *Available at* https://www.state.gov/proposed-rules-for-oversight-of-firearms-exports-published-for-public-comment.

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 2
Case No. 2:20-cv-00111-RAJ

1    Following a notice-and-comment period, in which NSSF submitted comments reflecting its

2    members' significant interest in the proposed rules, the State Department and the Department of

3    Commerce issued the Rules that Plaintiffs now challenge.  *See* International Traffic in Arms

4    Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020) ("State

5    Final Rule"); Control of Firearms, Guns, Ammunition and Related Articles the President

6    Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed.

7    Reg. 4136 (Jan. 23, 2020) ("Commerce Final Rule").  The Rules, the State Department explained,

8    revise the Munitions List to remove items that do not "provide the United States with a critical

9    military or intelligence advantage or, in the case of weapons, have an inherently military function."

10   State Final Rule, 85 Fed. Reg. 3820.  The removed items include many that are "widely available

11   in retail outlets in the United States and abroad."  *Id.*  At the same time, the Rules' transfer of

12   jurisdiction to the Department of Commerce "does not deregulate the export of firearms."  *Id.* at

13   3822.  "All firearms and major components being transferred to the [Commerce Control List] will

14   continue to require export authorization from the Department of Commerce," which is "capable of

15   monitoring foreign recipients' compliance with their obligations."  *Id.*

16   ### B.    Interests of the NSSF Parties

17   NSSF's mission is to promote, protect, and preserve hunting and the shooting sports, to

18   promote and protect the lawful commerce in firearms, ammunition, and related products, and to

19   support America's traditional hunting heritage and firearms freedoms.  Formed in 1961, NSSF is

20   a Connecticut non-profit organization with a membership that includes about 10,000

21   manufacturers, distributors, firearms retailers, shooting ranges, sportsmen's organizations, and

22   publishers.  *See* NSSF, FIREARMS AND AMMUNITION INDUSTRY ECONOMIC IMPACT REPORT 2019.[3]

23   NSSF members, and the firearms and ammunition industry as a whole, provide approximately

24

25

26   [3] *Available* at https://d3aya7xwz8momx.cloudfront.net/wp-content/uploads/2019
     /02/2019-Economic-Impact.pdf, at 2.

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 3
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1    149,000 jobs in the United States (in addition to about 162,000 jobs in supplier and ancillary

2    industries).[4]  In 2018, the firearms and ammunition industry was responsible for as much as $52

3    billion in total U.S. economic activity.[5]

4         NSSF has significant economic, legal, and policy interests in the viability of the Rules.  As

5    NSSF noted in comments submitted to the agencies, most NSSF members indicated that the Rules

6    "would significantly reduce the overall burden and cost of complying with controls on the export

7    of commercial firearms and ammunition." Comment Letter on Proposed Rule on International

8    Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III (July 6, 2018).[6]  NSSF

9    also assists its members with export compliance.  With respect to the Rules challenged here, NSSF

10   has conducted training on compliance in conjunction with the Department of Commerce's Bureau

11   of Industry and Security.  *See* NSSF, NSSF-BIS Export Training (Feb. 25, 2019).[7]

12        Fredric's Arms, a member of NSSF, is a gunsmith shop co-owned by a married couple in

13   Richland, Washington.  Stairet Decl. ¶¶ 2, 4.  Fredric's Arms offers services such as repair,

14   restoration, cleaning, and building of firearms.  *Id.* ¶ 2.  The business does not export firearms

15   outside the United States.  *Id.* ¶ 5.  Nevertheless, under the current regulatory regime, Fredric's

16   Arms is required to register with the State Department's Directorate of Defense Trade Controls

17   ("DDTC") and to pay a $2,250 annual registration fee.  *Id.* ¶ 6.  This fee puts a significant burden

18   on a small business like Fredric's Arms, which has total annual revenues well under six figures.

19   *Id.* ¶ 7.  As a consequence of the Rules, Fredric's Arms will no longer be required to pay the

20

21
───────────────

22   [4] *Id.* at 3.

23   [5] *Id.*

24   [6] *Available at* https://www.pmddtc.state.gov/sys_attachment.do?sys_id=0b4aef81d
     ba31b403b1272131f9619f1, at 108.

25   [7] *Available at* https://www.nssf.org/event/nssf-bis-export-training.

26

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 4
Case No. 2:20-cv-00111-RAJ

$2,250 annual fee to register with the State Department's DDTC.  *Id.* ¶ 9.  Fredric's Arms has never been involved with the 3D-printing of firearms.  *Id.* ¶ 11.

Notably, the NSSF Parties' interests just described are fully independent of any interest in maintaining the provisions of the Rules relating to the 3D Files.  For these reasons, and for the reasons stated below, this Court should grant the NSSF Parties' motion for leave to intervene.[8]

## II.   ARGUMENT

### A.   The NSSF Parties Are Entitled to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)

Federal Rule of Civil Procedure 24(a) states in relevant part:

Intervention of Right.  On timely motion, the court must permit anyone to intervene who:
. . .
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

"Rule 24(a) is construed broadly, in favor of the applicants for intervention."  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 894 F.3d 1030, 1037 (9th Cir. 2018).

Under Rule 24(a)(2), "an applicant is entitled to intervention as of right upon showing that:"

---

[8] Although the NSSF Parties, as defendant-intervenors, are not required to show Article III standing, they readily clear that threshold.  Fredric's Arms is "an object of the [government] action (or forgone action) at issue."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).  Further, if Plaintiffs succeed in invalidating the Rules in their entirety, on either a temporary or permanent basis, that would reimpose a significant economic burden on Fredric's Arms.  Stairet Decl. ¶ 10.  NSSF itself also has standing.  *First*, NSSF's members "would . . . have standing to sue in their own right" because they would be personally subject to a more costly regulatory regime if Plaintiffs' suit succeeds.  *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (quoting *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000)).  Fredric's Arms, a member of NSSF, provides an example.  *See* Stairet Decl. ¶¶ 7–10.  *Second*, the interests NSSF "seek[s] to protect are germane to the organization's purposes" of acting on behalf of the firearms and ammunition industry to promote hunting and the shooting sports.  *Am. Diabetes Ass'n,* 938 F.3d at 1155 (quoting *Ecological Rights Found.*, 230 F.3d at 1147).  *Third*, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," *id.* (quoting *Ecological Rights Found.*, 230 F.3d at 1147), though here an individual NSSF member (Fredric's Arms) is participating in the suit.

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 5
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1
2
3
4

>(1) the application for intervention is timely; (2) the applicant has a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties in the lawsuit.

5

*In re Mastro*, No. 10-cv-0927-RAJ, 2010 WL 2650642, at \*2 (W.D. Wash. June 30, 2010)

6

(quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)).

7

The NSSF Parties satisfy each prong of this test.

8

>1.  *The NSSF Parties' Motion to Intervene is Timely.*

9
10
11

"Courts weigh three factors in determining whether a motion to intervene is timely: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'"  *EEOC v. Trans Ocean Seafoods, Inc.*,

12
13

No. 15-cv-1563-RAJ, 2016 WL 10591398, at \*3 (W.D. Wash. Jan. 28, 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).  Plaintiffs filed their complaint

14

on January 23, 2020, and the NSSF Parties are seeking to intervene 19 days later.  The intervention

15

motion also follows Plaintiffs' motion for a preliminary injunction by just five days.  Federal

16

Defendants have not yet filed their opposition to Plaintiffs' motion for a preliminary injunction,

17

and this Court has not made "any substantive rulings."  *Swinomish Indian Tribal Cmty. v. Army*

18

*Corps of Eng'rs*, No. 2:18-cv-598-RSL, 2019 WL 469842, at \*2 (W.D. Wash. Feb. 6, 2019).

19

This litigation, then, "is in its earliest stages."  *Trans Ocean Seafoods*, 2016 WL 10591398,

20

at \*3 (finding a motion to intervene timely when it was filed over two months after the complaint

21

and following the defendant's filing of an answer).  Granting the NSSF Parties' timely motion

22

thus will not cause any delay.  Further, the NSSF Parties fully agree to comply with any

23

forthcoming scheduling orders and deadlines applicable to Federal Defendants.  Hence, there is

24

no risk of prejudice to Plaintiffs or Federal Defendants, and the NSSF Parties' motion to intervene

25

satisfies the timeliness provision of Rule 24(a)(2).

26

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 6
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

      *2.  The NSSF Parties Have Significantly Protectable Interests Relating to the Rules' Effects on Regulated Parties.*

    "[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (internal quotation marks omitted).  An applicant for intervention demonstrates a "significantly protectable interest" when "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [the applicant's] legally protectable interests." *Sw. Ctr.*, 268 F.3d at 818 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995)).  Here, the NSSF Parties have a direct interest in the economic vitality and legal rights of NSSF members and in the effective regulation of firearms exports.

    *First*, an injunction against the Rules would "have direct, immediate, and harmful effects" on the legal and economic interests of NSSF members.  *Southwest Ctr.*, 268 F.3d at 818.  The Rules, the Department of Commerce explained, "reduc[e] the procedural burdens and costs of export compliance on the U.S. firearms industry."  Commerce Final Rule, 85 Fed. Reg. 4136.  As NSSF observed in its comments, "under the Commerce system, there are no fees to apply for licenses. There are no redundant registration requirements for domestic manufacturers.  There are no fees for registration.  Such fees are bearable for large companies, but often not for small- and medium-sized companies."  Comment Letter, *supra*, at 109.  The Rules thus protect NSSF members' property interests; an injunction against the Rules' enforcement would eliminate that protection, requiring NSSF members "to expend significant time and resources." *Swinomish*, 2019 WL 469842, at *2.

    Fredric's Arms provides a clear example.  The Rules eliminate the requirement that Fredric's Arms, which does not even export goods outside the United States, pay a $2,250 annual registration fee.  *See* Dep't of State, State Transition Guidance for Revisions to Categories I, II,

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 7
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1  and II (Jan. 23, 2020);[9] Dep't of State Directorate of Def. Trade Controls, Registration FAQs

2  (accessed Feb. 11, 2020).[10]  The Rules will therefore remove a significant economic burden on

3  Fredric's Arms, which has total annual revenues under six figures and which has been forced to

4  raise its hourly rates to cover the costs of paying the $2,250 annual registration fee.  Stairet Decl.

5  ¶¶ 6–7, 9.

6    *Second*, NSSF "participated actively in the administrative process" that culminated in

7  promulgation of the Rules.  *T-Mobile W., LLC v. City of Medina*, No. C14-cv-1455-RSL, 2015

8  WL 13234962, at *3 (W.D. Wash. Jan. 21, 2015) (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713

9  F.2d 525, 526–27 (9th Cir. 1983)).  NSSF submitted comments to both the State Department and

10  the Department of Commerce that underscored the significance of the "regulatory burden

11  reduction."  Comment Letter, *supra*; *see also* Comment Letter on Proposed Rule—Control of

12  Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant

13  Control Under the United States Munitions List (USML) (July 6, 2018).[11]  NSSF's comments

14  further explained that the Rules would "lead to growth for U.S. companies, more jobs in the United

15  States, and related economic benefits for the cities and states where the members reside."  *Id.* at

16  3.  With "[t]he result of" the administrative process "now at issue," NSSF has "a significant

17  protectable interest in defending th[at] result."  *T-Mobile*, 2015 WL 13234962, at *3.

18    The NSSF Parties' significantly protectable interests in the Rules exist independently of

19  any decisions this Court may make concerning the 3D Files—the target of Plaintiffs' Complaint.

20

21

22

23    [9] *Available at* https://www.pmddtc.state.gov/sys_attachment.do?sysparm_referring_url =tear_off&view =true&sys_id=11608c55db664c107ede365e7c96196e.

24    [10] *Available at* https://www.pmddtc.state.gov/ddtc_public?id=ddtc_public_portal_ faq_detail&sys_id=138b6d9cdb3d5b4044f9ff621f961905.

25

26    [11] *Available at* https://www.regulations.gov/contentStreamer?documentId=BIS-2017-0004-0375&attachmentNumber=1&contentType=pdf at 2.

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 8
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1
2

In other words, the NSSF Parties have a substantial interest in defending the Rules' many other

provisions, including on different legal grounds from those relating to the 3D Files.

3
4

   *3.   The Disposition of this Action May, as a Practical Matter, Impede the NSSF Parties'
        Ability to Protect Their Economic and Policy Interests.*

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

"Having found that [proposed intervenors] have a significant protectable interest," the Ninth

Circuit has had "little difficulty concluding that the disposition of th[e] case may, as a practical

matter, affect it." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Thus, "[i]f an absentee would be substantially affected in a practical sense by the determination made

in an action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use v.

Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting FED. R. CIV. P. 24 advisory

committee's note).  NSSF members' economic interests, as noted, would be jeopardized if the Court

granted Plaintiffs' requested relief of enjoining and vacating the Rules.  For example, the Plaintiffs'

lawsuit has created uncertainty about whether Fredric's Arms will need to pay the $2,250 fee for the

upcoming year.  Stairet Decl. ¶ 10.  If the lawsuit halted implementation of the Rules in their entirety,

on either a temporary or permanent basis, that would re-impose a significant economic burden on

Fredric's Arms and other small businesses.  *Id.*  Further, because "[a] central issue in this case is the

propriety of the [administrative] result that [NSSF] supported," NSSF's "ability to protect this

interest could be impaired or impeded by an adverse ruling in this case." *T-Mobile*, 2015 WL

13234962, at *3.

20

   *4.   The Existing Parties May Not Adequately Represent the NSSF Parties' Interests.*

21
22
23
24
25
26

   A proposed intervenor is adequately represented only if "the interest of a present party is

such that it will undoubtedly make all of a proposed intervenor's arguments;" "the present party

is capable and willing to make such arguments;" and the proposed intervenor would not "offer

any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced

Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).  The

Ninth Circuit has "stress[ed] that intervention of right does not require an absolute certainty that

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 9
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1    a party's interests will be impaired or that existing parties will not adequately represent its

2    interests." *Id.* at 900.

3    The NSSF Parties intend to argue that, however this Court resolves the question whether

4    the agencies acted lawfully in transferring jurisdiction over the 3D Files from the State Department

5    to the Department of Commerce, there is no basis for the Court to halt implementation of any

6    other portion of the Rules not involving the 3D Files.  Plaintiffs, while specifically directing their

7    arguments at the transfer of jurisdiction over 3D Files, *see* Am. Compl. ¶ 2, have asked this Court

8    to enjoin and vacate the Rules in their entirety, *see id.* VI (Prayer for Relief).  Plaintiffs' request

9    thus contravenes the NSSF Parties' interests in preserving the many Rules provisions unrelated to

10   3D Files.

11   The Federal Defendants, as promulgators of the Rules (including provisions related to 3D

12   Files), are situated differently than the NSSF Parties.  As the Ninth Circuit has stated, "the

13   government's representation of the public interest may not be identical" to the interest "of a

14   particular group," even if "both entities occupy the same posture in the litigation."  *Citizens for*

15   *Balanced Use*, 647 F.3d at 899 (internal quotation marks omitted); *see Fund For Animals, Inc. v.*

16   *Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003) (courts "often conclude[] that governmental

17   entities do not adequately represent the interests of aspiring intervenors").  And "[i]nadequate

18   representation is most likely to be found when the applicant asserts a personal interest that does

19   not belong to the general public."  *Swinomish*, 2019 WL 469842, at *3.  The NSSF Parties' focus

20   on preserving provisions of the Rules unrelated to the 3D Files stems from NSSF members'

21   commercial and policy interests.  These interests are not fully aligned with those of Federal

22   Defendants, who are tasked with taking into account a variety of constituencies and interests, and

23   who will defend the Rules' transfer of jurisdiction over the 3D Files.

24   The NSSF Parties' substantive legal positions, moreover, may well diverge from those of

25   the Federal Defendants in ways that will prejudice the NSSF Parties if they are shut out of the suit.

26   The NSSF Parties will show that the provisions of the Rules transferring jurisdiction over the 3D

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 10
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1    Files are severable:  if the Court rules that the transfer of jurisdiction over the files was unlawful,

2    it should "set[] aside only the offending parts of the [R]ule[s]."  *Carlson v. Postal Regulatory*

3    *Comm'n*, 938 F.3d 337, 351 (D.C. Cir. 2019).  Because the NSSF Parties lack any interest in the

4    3D Files issue, the NSSF Parties would "offer [the] necessary element[]" of differentiation

5    between arguments directed at transfer of jurisdiction over the 3D Files (presumably the Federal

6    Defendants' focus in defending against this suit) and those directed at transfer of firearms and

7    ammunition more broadly (the NSSF Parties' focus).  *Citizens for Balanced Use*, 647 F.3d at 898

8    (quoting *Arakaki*, 324 F.3d at 1086).  Indeed, the NSSF Parties plan to address in considerable

9    depth the remedial question of what the Court should do if it agrees with Plaintiffs' position on

10   the Rules' treatment of 3D Files.

11         In sum, the NSSF Parties ask to be heard on an issue of substantial and distinctive

12   importance to NSSF and its members, including Fredric's Arms.  This Court should grant that

13   opportunity.

14         **B.**      **In the Alternative, the NSSF Parties Should Be Granted Leave for**
     **Permissive Intervention Under Federal Rule of Civil Procedure 24(b)**

15

16   Federal Rule of Civil Procedure 24(b) states in relevant part:

17   Permissive Intervention.

18   (1) *In General*.  On timely motion, the court may permit anyone to intervene who:
     . . .

19   (B) has a claim or defense that shares with the main action a common question of
     law or fact.

20

21         "The standard for permissive intervention is a low one."  *Club v. McLerran*, No. 11-cv-

22   1759-RSL, 2012 WL 12846108, at *1 (W.D. Wash. Mar. 19, 2012) (citing *Wilderness Soc'y*, 630

23   F.3d at 1179) ("[A] liberal policy in favor of intervention serves both efficient resolution of issues

24   and broadened access to the courts.").  As explained above, *see supra* p. 7, the NSSF Parties'

25   motion to intervene is timely.  Moreover, the validity of provisions of the Rules that Plaintiffs

26   seek to vacate is a "common question of law."  FED. R. CIV. P. 24(b)(1)(B).

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 11
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1

2

3

Additional factors that "courts consider . . . in deciding whether to permit intervention" similarly support the NSSF Parties' intervention. *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).  These factors include:

4

5

6

7

8

9

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

10

*Id.* (second alteration in original) (quoting *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326,

11

1329 (9th Cir. 1977)) (footnotes omitted).  As earlier noted, the NSSF Parties have "a

12

substantial interest in the outcome of the litigation," *McLerran*, 2012 WL 12846108, at *2,

13

as well as standing to raise the validity of Rules provisions unrelated to the 3D Files and the

14

severability of the Rules. *See supra* pp. 8–10, 6 n.8.  Further, the NSSF Parties' intervention

15

motion will not cause delay; their interests are not adequately represented by either Plaintiffs

16

or Federal Defendants; and their participation will permit full consideration of the validity of

17

the many Rules provisions unrelated to the 3D Files, as well as of any remedial questions.

18

*See supra* pp. 7, 10–12.  Therefore, the NSSF Parties fulfill the criteria for permissive

19

20

intervention under Fed. R. Civ. P. 24(b).

21

### III.   CONCLUSION

22

The NSSF Parties respectfully request leave to intervene as of right pursuant to Fed. R.

23

Civ. P. 24(a) or, in the alternative, to intervene permissively pursuant to Fed. R. Civ. P. 24(b).  In

24

addition, the NSSF Parties request leave to file their own response to the preliminary injunction

25

motion on the same date that Defendants are required to file a response.

26

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 12
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1      DATED this 11th day of February, 2020.

2

3    AKIN GUMP STRAUSS HAUER & FELD LLP    DAVIS WRIGHT TREMAINE LLP

4    */s/ Pratik A. Shah*    By: */s/ Ross Siler*
    Pratik A. Shah, D.C. Bar No. 497108    Ross Siler, WSBA # 46486

5    (*pro hac vice* application forthcoming)    920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610

6    */s/ James E. Tysse*    Telephone: (206) 757-8120

7    James E. Tysse, D.C. Bar No. 978722    Fax: (206) 757-7120
    (*pro hac vice* application forthcoming)    E-mail: ross.siler@dwt.com

8

9    */s/ Rachel Bayefsky*
    Rachel Bayefsky, N.Y. Bar No. 5426481

10    (*pro hac vice* application forthcoming)*

11    2001 K Street, N.W.
    Washington, D.C. 20006

12    Telephone:  202-887-4000
    Fax:  202-887-4288

13    E-mail: pshah@akingump.com

14
    * Licensed to practice in New York only and under

15    the direct supervision of a partner of Akin Gump
    Strauss Hauer & Feld LLP who is an enrolled,

16    active member of the District of Columbia Bar;
    application for admission to the D.C. Bar pending.

17

18            *Attorneys for Defendant-Intervenors*

19

20

21

22

23

24

25

26

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 13
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1

**CERTIFICATE OF SERVICE**

2
I hereby certify that on February 11th, 2020, I electronically filed the foregoing document

3
with the Clerk of Court using the CM/ECF system, which will send notice of filing to all parties

4
registered in the CM/ECF system for this matter.

5
DATED:  February 11th, 2020

6

7
*/s/ Ross Siler*
Ross Siler

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION TO INTERVENE BY NATIONAL
SHOOTING SPORTS FOUNDATION, INC.
AND FREDRIC'S ARMS & SMITHS, LLC - 14
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000