Exhibit 1

The Honorable Richard A. Jones

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

STATE OF WASHINGTON; STATE OF
CALIFORNIA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA;
STATE OF HAWAII; STATE OF ILLINOIS;
STATE OF MAINE; STATE OF
MARYLAND; COMMONWEALTH OF
MASSACHUSETTS; STATE OF
MICHIGAN; STATE OF MINNESOTA;
STATE OF NEW JERSEY; STATE OF NEW
MEXICO; STATE OF NEW YORK; STATE
OF NORTH CAROLINA; STATE OF
OREGON; COMMONWEALTH OF
PENNSYLVANIA; STATE OF RHODE
ISLAND; STATE OF VERMONT;
COMMONWEALTH OF VIRGINIA; and
STATE OF WISCONSIN,

No. 2:20-cv-00111-RAJ

[**PROPOSED**] **BRIEF OF** *AMICUS CURIAE*
**BRADY IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**

**Note on Motion Calendar:**
**February 13, 2020**

10

11

12

13

14

15

16

17

18

19

                    Plaintiffs,

20

v.

21

22

23

24

25

26

27

UNITED STATES DEPARTMENT OF
STATE; MICHAEL R. POMPEO, in his
official capacity as Secretary of State;
DIRECTORATE OF DEFENSE TRADE
CONTROLS; MIKE MILLER, in his official
capacity as Acting Deputy Assistant Secretary
of Defense Trade Controls; SARAH
HEIDEMA, in her official capacity as Director
of Policy, Office of Defense Trade Controls
Policy; UNITED STATES DEPARTMENT
OF COMMERCE; WILBUR L. ROSS, in his
official capacity as Secretary of Commerce;

28

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 627-5600 FAX: (202) 637-5910

BUREAU OF INDUSTRY AND SECURITY;
CORDELL HULL, in his official capacity as
Acting Undersecretary for Industry and
Security; RICH ASHOOH, in his official
capacity as Assistant Secretary of Commerce
for Export Administration,

                              Defendants.

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

## CORPORATE DISCLOSURE STATEMENT

Brady is a § 501(c)(3) non-profit corporation.   No publicly held corporation holds its stock.

Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600 Fax: (202) 637-5910

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... v

STATEMENT OF INTEREST ............................................................................................... 1

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

ARGUMENT ......................................................................................................................... 7

    I.       The Commerce Department Rule to be Codified at 15 C.F.R. § 734.7(c) Is Not a
            Logical Outgrowth of State and Commerce's Proposed Rules. ............................... 8

    II.      Brady Did Not Have Adequate An Adequate Opportunity to Comment on the
            Commerce Department Rule to be Codified at 15 C.F.R. § 734.7(c). .................... 11

    III.     The State and Commerce Departments' Failure to Comply with the APA's
            Requirements Was Not Harmless. .......................................................................... 12

CONCLUSION .................................................................................................................... 13

CERTIFICATE OF SERVICE ............................................................................................ 14

BRIEF OF AMICUS CURIAE BRADY - iv
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

## TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Alameda Health Sys. v. Ctrs. for Medicare & Medicaid Servs.*,
  287 F. Supp. 3d 896 (N.D. Cal. 2017) ...................................................................................10

*Am. Water Works Assoc. v. EPA*,
  40 F.3d 1266 (D.C. Cir. 1994) ...............................................................................................8

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ................................................................................................12

*Citizens for Better Forestry v. U.S. Dep't of Agric.*,
  481 F. Supp. 2d 1059 (N.D. Cal. 2007) ................................................................................10

*Cty. of Del Norte v. United States*,
  732 F.2d 1462 (9th Cir. 1984) ..............................................................................................12

*Defense Distributed v. U.S. Dep't of State*,
  838 F.3d 451 (5th Cir. 2016) .........................................................................................1, 3, 5

*Empire Health Found. for Valley Hosp. Med. Ctr. v. Price*,
  334 F. Supp. 3d 1134 (E.D. Wash. 2018) .............................................................................12

*Envtl. Def. Center, Inc. v. U.S. EPA*,
  344 F.3d 832 (9th Cir. 2003) ..........................................................................................10, 11

*Envtl. Integrity Project v. EPA*,
  425 F.3d 992 (D.C. Cir. 2005) ...............................................................................................9

*Foss v. Nat'l Marine Fisheries Serv.*,
  161 F.3d 584 (9th Cir. 1998) ................................................................................................11

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*,
  626 F.3d 84 (D.C. Cir. 2010) .................................................................................................1

*Nat. Res. Def. Council v. EPA*,
  279 F.3d 1180 (9th Cir. 2002) ....................................................................................... *passim*

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ...............................................................................................................12

*Paulsen v. Daniels*,
  413 F.3d 999 (9th Cir. 2005) ................................................................................................12

*Rybachek v. U.S. EPA*,
  904 F.2d 1276 (9th Cir. 1990) ..............................................................................................11

BRIEF OF AMICUS CURIAE BRADY - v
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

*Sagebrush Rebellion, Inc. v. Hodel*,
   790 F.2d 760 (9th Cir. 1986) ...........................................................................12

*Washington v. U.S. Dep't of State*,
   318 F. Supp. 3d 1247 (W.D. Wash. 2018)...................................................1, 3

**STATUTES:**

5 U.S.C. § 553(b) .............................................................................................1, 7, 8 ,12

5 U.S.C. § 553(c) ...........................................................................................1, 7, 8, 12

5 U.S.C. § 551(5) .........................................................................................................1

5 U.S.C. § 706(2)(A)..............................................................................................2, 12

22 U.S.C. § 2778(a)(1) .................................................................................................3

22 U.S.C. § 2778(b)(2) .................................................................................................3

50 U.S.C. § 4801(7) ......................................................................................................4

50 U.S.C. § 4812 ...........................................................................................................4

**REGULATIONS:**

15 C.F.R. § 734.3(b)(3)............................................................................................4, 8

15 C.F.R. § 734.7(a).............................................................................................4, 5, 8

15 C.F.R. § 734.7(c) ........................................................................................... *passim*

22 C.F.R. § 120.2 ..........................................................................................................3

22 C.F.R. § 120.10(a)(1) ..............................................................................................3

22 C.F.R. § 120.17 ........................................................................................................4

22 C.F.R. § 120.17(a) ...................................................................................................3

22 C.F.R. § 121.1(I)(a) .................................................................................................3

22 C.F.R. § 123.1(a) .....................................................................................................3

Administration of Reformed Export Controls, Exec. Order No. 13,637, § 1(n), 3
   C.F.R. 223–24 (2014) ............................................................................................3

*Control of Firearms, Guns, Ammunition and Related Articles the President
   Determines No Longer Warrant Control Under the United States Munitions
   List*, 83 Fed. Reg. 24,166 (May 24, 2018) ...................................................... *passim*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

*Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List*, 85 Fed. Reg. 4136 (Jan. 23, 2020) .......................................................................... *passim*

*International Traffic In Arms Regulations: U.S. Munitions List Categories I, II, and III*, 83 Fed. Reg. 24,198 (May 24, 2018) .......................................................................4, 8

*International Traffic In Arms Regulations: U.S. Munitions List Categories I, II, and III*, 85 Fed. Reg. 3819 (Jan. 23, 2020) .................................................................................6

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

**STATEMENT OF INTEREST**

Brady is a non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Its membership includes individuals who are concerned with, and affected by, public health and safety issues stemming from gun violence. Brady has a substantial interest in ensuring that state and federal laws are not interpreted or applied in a way that would jeopardize the public's interest in protecting individuals, families, and communities from the effects of gun violence. Brady submitted comments on the rules that are at the center of this litigation. *See* Ex. 3 (Brady Comments on the Proposed Rules). Brady has also filed numerous briefs as *amicus curiae* in cases involving the constitutionality and interpretation of gun laws, including in *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247 (W.D. Wash. 2018), and *Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016). Brady submits this brief in support Plaintiffs' position that Defendants failed to provide adequate notice and opportunity to comment on the State and Commerce Departments Final Rules.

**INTRODUCTION**

The Administrative Procedure Act requires an agency to notify the public of—and provide the public with an opportunity to comment on—the agency's intention to change an existing regulation or to promulgate a new regulation. *See* 5 U.S.C. §§ 553(b), 553(c), 551(5). Adequate notice "is crucial to 'ensure that agency regulations are tested via exposure to diverse public comment," "to ensure fairness to affected parties," and "to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 95 (D.C. Cir. 2010) (citation omitted).

The Ninth Circuit has held that when a court considers whether an agency has satisfied the notice requirement of the APA, the "essential inquiry focuses on whether interested parties reasonably could have anticipated the final rulemaking from the draft [proposal]." *Nat. Res. Def. Council v. EPA*, 279 F.3d 1180, 1186 (9th Cir. 2002). Thus, for example, where an agency "embrace[s] an entirely different standard" in the final rule than the standard that was proposed, the reviewing court should hold the agency's actions in promulgating the final rule unlawful

Brief of Amicus Curiae Brady - 1
Case No. 2:20-cv-00111-RAJ

Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600 Fax: (202) 637-5910

because the agency has failed to afford interested parties the opportunity to comment on whether the change in the permit "conformed to the substantive requirements" of the law. *Id.* at 1189.

That is precisely what happened here. The State and Commerce Departments have promulgated rules that will de-regulate the technical information—that is, the computer files— necessary to manufacture 3D printed guns. The agencies rules will accomplish this change by transferring the responsibility to regulate technical information related to 3D printed guns from the State Department to the Commerce Department. Brady was able to glean that much from the notices of proposed rulemaking. But what Brady did not know—and could not have discovered by examining the proposed rules—was the agencies' intent to construct an entirely new standard to regulate the export of the technical information necessary to manufacture 3D printed guns: the new provision to be codified at 15 C.F.R. § 734.7(c).

In its notice of final rulemaking, the Commerce Department announced—for the first time—that it will retain jurisdiction over files "for the production of a firearm, or firearm frame or receiver" that are "made available by posting on the internet in electronic format" and are "ready for insertion" into a computer or other machine that "makes use" of the files "to produce the firearm frame or receiver or complete firearm." *Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List*, 85 Fed. Reg. 4136, 4172–73 (Jan. 23, 2020) (setting out the new Commerce rule to be codified at 15 C.F.R. § 734.7(c)). Neither the text nor the substance of that provision were in the notices of proposed rulemaking. The topic of that provision—the computer files necessary to manufacture 3D printed guns—does not appear in the notices of proposed rulemaking either. Yet, the Commerce's inclusion of this new provision in the final rule will work a substantial change in the regulatory regime that governs the online distribution of 3D printed guns.

In promulgating this new rule, the State and Commerce Departments denied Brady—and other interested members of the public—the opportunity to comment on the new provision. "A decision made without adequate notice and comment is arbitrary or an abuse of discretion" as a matter of law. *Nat. Res. Def. Council*, 279 F.3d at 1186 (citing 5 U.S.C. § 706(2)(A)).

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

**BACKGROUND**

1.      The statutory and regulatory path through which the State Department currently regulates the technical information necessary to manufacture 3D printed guns begins with the Arms Export Control Act.  There, Congress authorized the President, "[i]n furtherance of world peace and the security and foreign policy of the United States," to "control the . . . export of defense articles and defense services."  22 U.S.C. § 2778(a)(1).  The President has delegated that authority to the State Department.  *See* Administration of Reformed Export Controls, Exec. Order No. 13,637, § 1(n), 3 C.F.R. 223–24 (2014).  And, exercising that authority, the State Department has promulgated the International Traffic in Arms Regulations.   *See* 22 C.F.R. §§ 120–130.  Consistent with the Act, *see* 22 U.S.C. § 2778(a)(1), the State Department's regulations create a list—called the "United States Munitions List"—of materials that constitute "defense articles and defense services."  *See* 22 C.F.R. §§ 120.2, 121.  The State Department's regulations also provide that all firearms up to .50 caliber, and all "technical data" directly related to such firearms—that is, "[i]nformation . . . which is required for the . . . production . . . of defense articles," *id.*. § 120.10(a)(1)—are a part of the Munitions List. *See id.* § 121.1(I)(a).  Persons who want to "export" items on the Munitions List—that is, "transfer[]" or "release[]" technical data to a foreign person, *id.* § 120.17(a)—must first obtain a license from the State Department.  *See* 22 U.S.C. § 2778(b)(2), 22 C.F.R. § 123.1(a).

Under the current regulatory regime, the State Department has the power to prevent a person from uploading the technical information necessary to manufacture 3D printed guns to the Internet because federal law requires a person to obtain a license from the State Department before exporting items on the United States Munitions List.  *See Defense Distributed*, 838 F.3d at 456; *Washington*, 318 F. Supp. at 1262 (citing 22 C.F.R. §§ 120.10, 120.11).  That is, as noted above, persons who want to export items on the United States Munitions List must first obtain a license from the State Department to do so.  *See* 22 U.S.C. § 2778(b)(2), 22 C.F.R. § 123.1(a). The computer files that are needed to produce a 3D printed gun are "technical data" directly related to firearms, 22 C.F.R. § 120.10(a)(1), and as a result, are included in the United States Munitions List.  *See id.* § 121.1(I)(a).  And posting computer files that are needed to produce a

*BRIEF OF AMICUS CURIAE BRADY* - 3
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

3D printed gun on the Internet, where that information can be accessed by foreign nationals, is an "export" of that information. *See id.* § 120.17.

2.      In 2018, the State Department and the Commerce Department each published a notice of proposed rulemaking announcing the federal government's intent to make substantial changes to the regulatory regime that governs the export of firearms. *See Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List*, 83 Fed. Reg. 24,166 (May 24, 2018) (Commerce Proposed Rule); *International Traffic In Arms Regulations: U.S. Munitions List Categories I, II, and III*, 83 Fed. Reg. 24,198 (May 24, 2018) (State Proposed Rule).

The proposed rules silently announced the government's intent to divest itself of the power to prevent the widespread dissemination of the technical information necessary to manufacture 3D printed guns.  In particular, State proposed removing all non-automatic firearms up to .50 caliber and related technical information—including the computer files needed to manufacture a 3D printed gun—from the United States Munitions List.  *See* State Proposed Rule, 83 Fed. Reg. 24,198.  In making that change, State disclaims its authority to regulate the export of such computer files.  And if State no longer has that authority, then the agency will no longer be able to stop a person from uploading the computer files necessary to manufacture 3-D printed guns a person to the Internet.

Commerce's proposed rule purported to solve that problem by providing that items removed from the Munitions List would instead be regulated by Commerce under the Export Control Reform Act and Commerce's Export Administration Regulations.  *See* Commerce Proposed Rule, 83 Fed. Reg. 24,166.  The Export Control Reform Act authorizes Commerce to regulate the export of certain controlled commodities, software, and technology.  *See* 50 U.S.C. §§ 4801(7), 4812.  But Commerce's proposed rule cannot not fill the regulatory void created by State's proposed rule because the Commerce's authority under the Export Control Reform Act is limited in a way that the State's authority under the Arms Export Control Act is not.

Under the Export Control Reform Act, Commerce lacks jurisdiction to regulate the export of "published" technology or software.  *See* 15 C.F.R. §§ 734.3(b)(3), 734.7(a).  And

Commerce's regulations define "published" technology or software as technology or software that "has been made available to the public without restrictions upon its further dissemination." *Id.* § 734.7(a). So where the Arms Export Control Act and State's regulations empower the State Department to prevent a person from posting computer files that are needed to produce a 3D printed gun on the Internet, the Export Control Reform Act and Export Administration Regulations would render the Commerce Department powerless to prevent a person from sharing computer files that are needed to produce a 3D printed gun.

3.     Brady spotted this "significant loophole." Ex. 3 at 8. In Brady's comments on the proposed rules, Brady noted that "if jurisdiction over technical data related to the design, production or use of semi-automatic or military-style firearms transfers to [Commerce], there would no longer be any controls on companies or individuals releasing such sensitive information into the public domain." *Id.* As Brady explained, "[i]t has been [State's] long standing practice to require prior authorization for any public release of . . . controlled technical data, source code or software (e.g., posting controlled technical data on a public website)," but Commerce "takes a less stringent approach to publicly available information, removing . . . controls once the items are made public (or intended to be made public) without requiring prior authorization." *Id.* Thus, Brady warned that "if a gun manufacturer posts a firearm's operation and maintenance manual on the Internet" then the "information included in that published manual would no longer be . . . subject to export controls." *Id.*

Brady also warned that the loophole would result in the proliferation of 3-D printed guns. As Brady pointed out, "the Fifth Circuit ordered manufacturer Defense Distributed to remove 3-D printing instructions from the Internet after the State Department charged the company with violating the [State Department Regulations]." *Id.* (citing *Defense Distributed*, 838 F.3d at 451–76). "In contrast, under the proposed rules, such manufacturers would be able to freely release 3-D printing instructions and code into the public domain (and thereby enable the private production of firearms overseas and in the United States), as the [Commerce Regulations] permit publication of source code and technology (except encryption source code and technology) without authorization from [the Commerce Department]." *Id.*

BRIEF OF AMICUS CURIAE BRADY - 5
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

4.      Last month, the State and Commerce Departments promulgated their Final Rules without closing this loophole. *See Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List*, 85 Fed. Reg. 4136 (Jan. 23, 2020) (Commerce Final Rule); *International Traffic In Arms Regulations: U.S. Munitions List Categories I, II, and III*, 85 Fed. Reg. 3819 (Jan. 23, 2020) (State Final Rule).

Instead, the agencies created an entirely different kind of loophole.  State's final rule confirmed its decision to remove non-automatic firearms and related technical information—including the computer files need to manufacture a 3D printed gun—from the Munitions List. *See* State Final Rule, 85 Fed. Reg. 3819, 3823.  But Commerce's final rule included a new provision that did not appear in the Proposed Rules.  *See* Commerce Final Rule, 85 Fed. Reg. at 4162.  Under that new provision, which will be codified at 15 C.F.R. § 734.7(c), notwithstanding the ordinary exception from jurisdiction for "published" items, Commerce explained that it will retain jurisdiction over files "for the production of a firearm, or firearm frame or receiver" that are "made available by posting on the internet in electronic format" and are "ready for insertion" into a computer or other machine that "makes use" of the files "to produce the firearm frame or receiver or complete firearm."  *See* Commerce Final Rule, 85 Fed. Reg. at 4172–73 (setting out the new rule to be codified at 15 C.F.R. § 734.7(c)).

Section 734.7(c) creates a regulatory regime that differs substantially from the one currently in effect.  First, the new regulations differ from the existing regulations because the Final Rules authorize—where current regulations would prohibit—the distribution of the technical information necessary for manufacturing 3D printed guns by any means other than "posting on the internet."  So under the Final Rules, a person could transfer the technical information necessary to manufacture 3-D printed guns to a foreign national through an email, an AirDrop, or a USB drive.  Second, the new regulations also differ from the existing regulations because the Final Rules authorize—where existing regulations would prohibit—the distribution of the technical information necessary for manufacturing 3D printed guns in any format that is not readable by a 3D printer.  So under the Final Rules, a person could distribute the technical

*BRIEF OF AMICUS CURIAE BRADY* - 6
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

information necessary for manufacturing 3D printed guns in any computer language that is not readable by a 3D printer, but could easily become so.  And third, the new regulations differ from the existing regulations because the Final Rules authorize—where existing regulations would prohibit—the distribution of the technical information necessary for manufacturing components of a 3D printed gun other than the firearm frame or receiver.   So under the Final Rules, a person could distribute the technical information necessary for manufacturing the barrel of or magazine for a 3D printed gun.

Section 734.7(c) also represents a substantial departure from the State and Commerce Department's proposed rules.  First, neither the substance nor the text of Section 734.7(c) appears in State and Commerce's notices of proposed rulemaking.  And second, neither State's nor the Commerce's notice of proposed rulemaking mention 3D printed guns at all.   Thus, although the Final Rules are similar to the Proposed Rules in that they create a new regulatory regime under which the federal government will lack the power to prevent the widespread dissemination of the technical information necessary to manufacture 3D printed guns, the new provision in the Commerce Final Rule still differs substantially from what the State and Commerce Departments proposed.

5.   If Brady had been given the opportunity to comment on the new Section 734.7(c), it would have done so.  *See generally* Ex. 2 (Decl. of Kelly Sampson).  As noted above, Brady commented on the proposed rules' applicability to 3D printed guns.  Brady was attentive to and interested in this issue.   And if the State and Commerce Departments had given Brady the opportunity to comment on Section 734.7(c), Brady would have opined on whether the regulation of 3D printed guns through an exception to the Commerce Department's existing regulations would conform to the substantive requirements of the law.

## **ARGUMENT**

The State Department and the Commerce Department violated the APA in promulgating the Final Rules at issue here.   The APA requires administrative agencies like the State and Commerce Departments to provide an opportunity for notice and comment for its proposed regulations and rules.  *See* 5 U.S.C. § 553(b)-(c).  Although a final rule need not be the same as a

BRIEF OF AMICUS CURIAE BRADY - 7
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

proposed rule, it must be a logical outgrowth of the proposed rule *See Nat. Res. Def. Council*, 279 F.3d at 1186, or a second round of comment is required, *see Am. Water Works Assoc. v. EPA*, 40 F.3d 1266, 1274 (D.C. Cir. 1994).  Section 734.7(c) is not a logical outgrowth of the proposed rules.  Brady did not have an adequate opportunity to comment on this provision.  And the State and Commerce Department's failure to comply with the APA's notice requirements was not harmless.  Accordingly, the State and Commerce Department's promulgation of that provision violates the APA, and the Court should vacate the final rules.

I.   **The Commerce Department Rule to be Codified at 15 C.F.R. § 734.7(c) Is Not a Logical Outgrowth of State and Commerce's Proposed Rules.**

1.   The APA requires agencies to provide notice of the "terms or substance" of proposed regulations and to provide an opportunity for the public to comment on its proposals. 5 U.S.C. § 553(b), (c).  While a final rule need not be "identical" to the proposed rule, "a final rule which departs from the proposed rule must be a logical outgrowth of the proposed rule." *Nat. Res. Def. Council*, 279 F.3d at 1186 (citation omitted).  Thus, where an agency "embrace[s] an entirely different standard" in the final rule than the one that was proposed, the reviewing court should hold the agency's actions in promulgating the final rule unlawful. *Id.* at 1189.

Here, the State and Commerce Department's notices of proposed rulemaking tacitly indicated that the federal government would divest itself of the power to prevent the widespread dissemination of the technical information necessary to manufacture 3D printed guns.  In particular, State proposed removing certain non-automatic firearms and related technical information—including the computer files needed to manufacture a 3D printed gun—from the United States Munitions List.  *See* State Proposed Rule, 83 Fed. Reg. 24,198.  Commerce's proposed rule purported to solve the problem created by State's proposal to deregulate this group of firearms by regulating the items removed from the Munitions List.  *See* Commerce Proposed Rule, 83 Fed. Reg. 24,166.  But because the Commerce lacks jurisdiction to regulate the export of "published" technology or software, *see* 15 C.F.R. §§ 734.3(b)(3), 734.7(a), the agencies essentially announced that the federal government would be powerless to prevent the dissemination of the technical information necessary to produce a 3D printed gun.

BRIEF OF AMICUS CURIAE BRADY - 8
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

By contrast, the State and Commerce Department's notices of final rulemaking indicated that the federal government would regulate the dissemination of the technical information necessary to manufacture 3D printed guns, albeit ineffectually.  In particular, Commerce's final rule contained a provision that appears to have been specifically drafted to address the dissemination of technical information related to 3D printed guns.  Under that new provision, which will be codified at 15 C.F.R. § 734.7(c), notwithstanding the ordinary exception from jurisdiction for "published" technology or software, Commerce explained that it will retain jurisdiction over files "for the production of a firearm, or firearm frame or receiver" that are "made available by posting on the internet in electronic format" and are "ready for insertion" into a computer or other machine that "makes use" of the files "to produce the firearm frame or receiver or complete firearm." Commerce Final Rule, 85 Fed. Reg. 4136,4172–73.

Thus, prior to the publication of the final rules, the agencies gave no indication that they would develop a specific regulation to address the threat posed by the online dissemination of technical information related to 3D printed guns.  Indeed, prior to the publication of the final rules, the agencies had tacitly conveyed that they did not intend to regulate technical information related to 3D printed guns at all.  Commerce all but acknowledged the fact that it was flipping the regulatory switch from "off" to "on" when it said in the notice of final rulemaking that "[a]t the time of the proposed rule, [Commerce] believed that its existing framework struck the appropriate approach in providing for national security and foreign policy control of firearms" that would transfer from the Munitions List, but "[s]ince that time, [Commerce] has had considerable time to review the comments related to 3D printing of firearms," and concluded that "the framework of [Commerce] regulations as described in the proposed rule did not adequately address" the issue of "regulating the unlimited access to certain files for the 3D printing of firearms."  Commerce Final Rule, 85 Fed. Reg. 4136, 4141–42.

The addition of an entirely new provision is not the sort of deviation from the proposed rule that is allowed under the APA as a logical outgrowth of the proposals on which the public had the opportunity to comment.  "Something is not a logical outgrowth of nothing."  *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005) (citation omitted); *see also, e.g.,*

BRIEF OF AMICUS CURIAE BRADY - 9
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

*Alameda Health Sys. v. Ctrs. for Medicare & Medicaid Servs.*, 287 F. Supp. 3d 896, 918 (N.D. Cal. 2017) (final rule was not a logical outgrowth where challenged provision was "not mentioned at all" in the proposed rule).

2.    The conclusion that the Section 734.7(c) is not a logical outgrowth of the State and Commerce Department's proposed rules is underscored by the record that was before the agency.  As the Ninth Circuit has explained, "in determining the adequacy of [an agency's] notice and comment procedure," the "salient question" is "whether interested parties reasonably could have anticipated the final rulemaking from the draft."  *Nat. Res. Def. Council*, 279 F.3d at 1187 (internal quotation marks and citation omitted).  Put another way, where the final rule's substance is "'not foreshadowed in proposals and comments advanced during the rulemaking,' it will not be considered a 'logical outgrowth' because it may catch interested parties by surprise."  *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 481 F. Supp. 2d 1059, 1073 (N.D. Cal. 2007) (quoting *Nat. Res. Def. Council*, 279 F.3d at 1188).

But Commerce does not cite any comments that foreshadowed the agency's adoption of the specific requirements set out in Section 734.7(c).  That is, Commerce does not cite any comments showing that the public supported Commerce's decision to "tailor[]" the new Section 734.7(c) so that "only technology or software for the complete firearm, its frame, or its receiver are subject to [Commerce] licensing requirements"  85 Fed. Reg. 4136, 4142.  Commerce does not cite any comments to show that the public approved of Commerce's decision to "craft[] its rule to regulate dissemination" in the "electronic format that the internet provides."  *Id.*  And Commerce does not cite any comments to show how the public was involved in helping the agency "reach[] the conclusion" that "technology and software ready for insertion into an automated manufacturing tool" should be the focus of the rule.  *Id.*

The agencies' inability to cite comments regarding the new Section 734.7(c) underscores the fact that the State and Commerce Departments "clearly caught [public commenters] by surprise."  *Nat. Res. Def. Council*, 279 F.3d at 1188 (citation omitted).  By contrast, cases finding that an agency rule was a logical outgrowth of the rulemaking identify clear connections between the proposed rule and the issues extensively discussed in public comments.  *See, e.g.*, *Envtl. Def.*

*Center, Inc. v. U.S. EPA*, 344 F.3d 832, 852 (9th Cir. 2003) (final rule was a "logical outgrowth" where it "contain[ed] no elements that were not part of the original rule"); *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 591 (9th Cir. 1998) (agency's adoption of application deadline was valid where public comment was "extensive" and included "specific references" to the deadline issue); *Rybachek v. U.S. EPA*, 904 F.2d 1276, 1288 (9th Cir. 1990) (EPA's adoption of provisions "strongly recommended" by public commenters was "very much in character with the original proposal and a logical outgrowth of the notice and comments"). There is no such connection between the proposed and final rules is here.

## II.   Brady Did Not Have Adequate An Adequate Opportunity to Comment on the Commerce Department Rule to be Codified at 15 C.F.R. § 734.7(c).

Brady did not have an adequate opportunity to comment on the final rules. To be sure, Brady submitted comments regarding how the proposed rules would affect the regulation of technical information related to 3D printed guns. *See* Ex. 3. In particular, Brady commented on a loophole in the State and Commerce Department's proposed rules that would have deregulated the dissemination of technical information related to 3D printed guns. But Brady did not comment on Section 734.7(c). Brady was not able to develop or express its views regarding whether Commerce should promulgate a regulation to specifically address the dissemination of the technical information necessary to manufacture a 3D printed gun. Brady was not able to express its views about Commerce's decision to regulate some, but not all components of a 3D printed gun. Brady was not able to express its views about Commerce's decision to regulate some, but not other electronic formats for the technical information necessary to manufacture a 3D printed gun. And Brady was not able to express its views about Commerce's decision to regulate technical information that is "ready for insertion" into a 3D printer, but leave unregulated technical information that can easily be made ready for insertion. Put another way, Brady's comments on the proposed rules' implications for 3D printed guns cannot reasonably be viewed as comments on the final rules' Section 734.7(c). That provision is entirely new. As would be Brady's comments on that provision.

BRIEF OF AMICUS CURIAE BRADY - 11
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

### III. The State and Commerce Departments' Failure to Comply with the APA's Requirements Was Not Harmless.

Nothing about the circumstances of this case indicates that the State and Commerce Departments should be excused from complying with the APA's requirements. See *California v. Azar*, 911 F.3d 558, 580 (9th Cir. 2018) ("The failure to provide notice and comment is harmless only where the agency's mistake 'clearly had no bearing on the procedure used or the substance of decision reached.'") (citation omitted). The agencies did not, for example, simultaneously called for the public's views on the issue pursuant to a different statute. *Cf. Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760, 763–64 (9th Cir. 1986). Nor did the agencies merely make a technical violation, such as publishing the final rule earlier than described in the governing statute. *Cf. Cty. of Del Norte v. United States*, 732 F.2d 1462, 1467 (9th Cir. 1984).

To the contrary, the agency error at issue here implicates the most fundamental of APA's rulemaking requirements: the requirement that agencies "shall" publish a "notice of proposed rulemaking … in the Federal Register," and the requirement that agencies "shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments" for the agency's consideration. 5 U.S.C. § 553(b), (c). The word "shall" indicates a "command that admits of no discretion" on the agency's part. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661–62 (2007). Consequently, "[a] decision made without adequate notice and comment is arbitrary or an abuse of discretion" as a matter of law. *Nat. Res. Def. Council*, 279 F.3d at 1186 (citing 5 U.S.C. § 706(2)(A)). *See, e.g.*, *Paulsen v. Daniels*, 413 F.3d 999, 1006 (9th Cir. 2005) (rejecting a harmless error claim where an agency failed to comply with notice-and-comment requirements); *Empire Health Found. for Valley Hosp. Med. Ctr. v. Price*, 334 F. Supp. 3d 1134, 1163 (E.D. Wash. 2018) (same). Therefore, this Court should not excuse the State and Commerce Department's failure to comply with the requirements of the Administrative Procedure Act here.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction.

DATED: February 13, 2020     Respectfully submitted,

             HOGAN LOVELLS US LLP

             By: s/ Neal Kumar Katyal
             Neal Kumar Katyal
             555 Thirteenth Street, N.W.
             Washington, D.C. 20004
             Tel:  (202) 637-5528
             Fax:  (202) 637-5910
             neal.katyal@hoganlovells.com

             FRIEDMAN | RUBIN PLLP

             By: s/ Ronald J Park
             Ronald J. Park
             FRIEDMAN RUBIN PLLP
             WSBA #54372
             1109 1st Avenue, Suite 501
             Seattle, WA 98101
             Phone: (206) 501-4446
             rpark@friedmanrubin.com

             Attorneys for *Amicus Curiae*

BRIEF OF AMICUS CURIAE BRADY - 13
*Case No. 2:20-cv-00111-RAJ*

HOGAN LOVELLS US LLP
555 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910

1

2 <u>CERTIFICATE OF SERVICE</u>

3

4      I hereby certify that on February 13, 2020, I electronically filed the foregoing with the

5 Clerk of the Court using the CM/ECF system, which will send notification of such filing to those

6 attorneys of record registered on the CM/ECF system.

7      DATED February 13, 2020.

8                                         HOGAN LOVELLS US LLP

9                                         By <u>s/ Neal Kumar Katyal</u>

10                                             Neal Kumar Katyal
                                              555 Thirteenth Street, N.W.
11                                             Washington, D.C. 20004
                                              Tel:  (202) 637-5528
12                                             Fax:  (202) 637-5910
                                              neal.katyal@hoganlovells.com
13
                                          FRIEDMAN | RUBIN PLLP
14
                                          By: <u>s/ Ronald J Park</u>
15                                             Ronald J. Park
                                              WSBA #54372
16                                             1109 1st Avenue, Suite 501
                                              Seattle, WA 98101
17                                             Phone: (206) 501-4446
                                              rpark@friedmanrubin.com
18
                                          Attorneys for *Amicus Curiae*
19

20

21

22

23

24

25

26

27

28

Brief of Amicus Curiae Brady - 14
Case No. 2:20-cv-00111-RAJ

Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600 FAX: (202) 637-5910