HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
8                AT SEATTLE

9   STATE OF WASHINGTON, *et al.*,

10           Plaintiffs,                    No. 2:20-cv-00111-RAJ

11       v.                                 **INTERVENOR-DEFENDANTS'
                                            RESPONSE TO MOTION FOR
12   UNITED STATES DEPARTMENT OF            PRELIMINARY INJUNCTION**
     STATE, *et al.*,
13                                          NOTE ON MOTION CALENDAR:
             Federal Defendants,           February 28, 2020
14
        and                                **ORAL ARGUMENT REQUESTED**
15
     NATIONAL SHOOTING SPORTS
16   FOUNDATION, INC., FREDRIC'S ARMS
     & SMITHS, LLC,
17
             Intervenor-Defendants.
18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1

## TABLE OF CONTENTS

2   I.   INTRODUCTION ................................................................................................1

3   II.   BACKGROUND ................................................................................................2

4        A.   Statutory and Regulatory Background ................................................2

5        B.   The Final Rules ................................................................................5

6        C.   The Challenged Provisions of the Rules ..............................................7

7        D.   The Intervenor-Defendants ................................................................8

8   III.   ARGUMENT ....................................................................................................9

9        A.   The Rules' Treatment of 3D-Firearm Files Is Severable from the
             Remainder of the Rules .......................................................................9

10
             1.   *The Rules would have been promulgated absent their change in*
11                *treatment of 3D-Firearm Files.* .............................................10

12           2.   *Severance will not impair the function of the Rules as a whole.* ............12

13       B.   An Injunction Tailored to the Regulation of 3D-Firearm Files Is the
             Most Appropriate Exercise of This Court's Equitable Authority ...................14

14
             1.   *This Court should limit any relief to the scope of the alleged*
15                *harms.* ..............................................................................14

16           2.   *The preliminary injunction factors weigh sharply against*
                  *extending relief beyond 3D-Firearm Files.* .............................16

17
         C.   A Court Order Preserving the Status Quo as to 3D-Firearm Files Would
18            Fully Address Plaintiffs' Objections to the Rules ................................17

19   IV.   CONCLUSION ..................................................................................................20

20

21

22

23

24

25

26

# TABLE OF AUTHORITIES

**CASES:**

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ...................................................................................................10

*Am. Meat Inst. v. Dep't of Agric.*,
  760 F.3d 18 (D.C. Cir. 2014) ....................................................................................................11

*Ariz. Pub. Serv. Co. v. EPA*,
  562 F.3d 1116 (10th Cir. 2009) ................................................................................................12

*Ass'n of Private Colls. & Univs. v. Duncan*,
  870 F. Supp. 2d 133 (D.D.C. 2012) .........................................................................................11

*Averett v. Dep't of Health & Human Servs.*,
  306 F. Supp. 3d 1005 (M.D. Tenn. 2018) ................................................................................11
  943 F.3d 313 (6th Cir. 2019) ....................................................................................................11

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ............................................................................................................14, 18

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ...............................................................................................16, 17

*California v. Dep't of Health & Human Servs.*,
  941 F.3d 410 (9th Cir. 2019) ....................................................................................................16

*Carlson v. Postal Regulatory Comm'n*,
  938 F.3d 337 (D.C. Cir. 2019) ...............................................................................................2, 10

*Catholic Soc. Serv. v. Shalala*,
  12 F.3d 1123 (D.C. Cir. 1994) ......................................................................................10, 12, 13

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ....................................................................................................................15

*Ctr. for Biological Diversity v. Jewell*,
  No. 16-cv-94-TUC-JGZ, 2018 WL 1586651 (D. Ariz. Mar. 31, 2018) ..................................10

*Davis Cty. Solid Waste Mgmt. v. EPA*,
  108 F.3d 1454 (D.C. Cir. 1997) ....................................................................................10, 13, 17

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ....................................................................................................15

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - ii
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

*High Country Conservation Advocates v. Forest Serv.*,
   67 F. Supp. 3d 1262 (D. Colo. 2014) ................................................................................ 14

*In re A Cmty. Voice*,
   878 F.3d 779 (9th Cir. 2017) ........................................................................................... 18

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281 (1988) .......................................................................................................... 10

*Lewis v. Casey*,
   518 U.S. 343 (1996) .......................................................................................................... 15

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) .......................................................................................................... 15

*MD/DC/DE Broadcasters Ass'n v. FCC*,
   236 F.3d 13 (D.C. Cir. 2001) .......................................................................................... 12

*Milliken v. Bradley*,
   433 U.S. 267 (1977) .......................................................................................................... 15

*Nat'l Ass'n of Mfrs. v. NLRB*,
   717 F.3d 947 (D.C. Cir. 2013) ........................................................................................ 11

*Nat'l Treasury Emps. Union v. Yeutter*,
   918 F.2d 968 (D.C. Cir. 1990) ................................................................................ 2, 13, 14

*North Carolina v. FERC*,
   730 F.2d 790 (D.C. Cir. 1984) ........................................................................................ 10

*U.S. Sugar Corp. v. EPA*,
   830 F.3d 579 (D.C. Cir. 2016) ........................................................................................ 18

*United States v. Edler Indus., Inc.*,
   579 F.2d 516 (9th Cir. 1978) ........................................................................................... 18

*Virginia v. EPA*,
   116 F.3d 499 (D.C. Cir. 1997) ........................................................................................ 12

*Washington v. Dep't of State*,
   318 F. Supp. 3d 1247 (W.D. Wash. 2018) ...................................................................... 16

*Winter v. NRDC*,
   555 U.S. 7 (2008) .............................................................................................................. 16

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - iii
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

**STATUTES AND REGULATIONS:**

5 U.S.C.
   § 551(13)........................................................................................................10
   § 553................................................................................................................19
   § 706(2)...........................................................................................................10

22 U.S.C.
   § 2778(a)(1).......................................................................................................3

50 U.S.C.
   § 4821(a)............................................................................................................9

Export Control Reform Act of 2018, Pub. L. No. 115-232, 132 Stat. 2208 .....................2, 9

15 C.F.R.
   § 730.1 *et seq.*................................................................................................2
   § 730.6................................................................................................................2
   § 734.7(c)...................................................................................................8, 14, 19
   § 738.1(a)(1)....................................................................................................2, 3
   § 742.1 *et seq.*................................................................................................3

22 C.F.R.
   § 120.1................................................................................................................3
   § 121.1(a)...........................................................................................................8
   § 121.1(h)...........................................................................................................8
   § 121.1(i)............................................................................................................8
   § 122.1................................................................................................................3
   § 122.1(a)...........................................................................................................3
   § 126.2..............................................................................................................19

**Other Authorities:**

Comment Letter on Proposed Rule on International Traffic in Arms Regulations: U.S.
   Munitions List Categories I, II, and III (July 6, 2018)............................................5, 6, 9

Dep't of Commerce, Addition of Software Specially Designed to Automate the
   Analysis of Geospatial Imagery to the Export Control Classification Number
   0Y521 Series, 85 Fed. Reg. 459 (Jan. 6, 2020)...................................................19

Dep't of Commerce, International Traffic in Arms Regulations: U.S. Munitions List
   Categories I, II, and III, 83 Fed. Reg. 24,198 (proposed May 24, 2018)........................5

Dep't of Commerce, International Traffic in Arms Regulations: U.S. Munitions List
   Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020) ................................. *passim*

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - iv
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

Dep't of State, Amendment to the Int'l Traffic in Arms Regulations: Initial
   Implementation of Export Control Reform, 78 Fed. Reg. 22,740 (Apr. 16, 2013) .....................4, 5

Dep't of State, Continued Temporary Modification of Category XI of the United
   States Munitions List, 83 Fed. Reg. 44,228 (Aug. 30, 2018) ........................................................19

Dep't of State, Control of Firearms, Guns, Ammunition and Related Articles the
   President Determines No Longer Warrant Control Under the United States
   Munitions List (USML), 83 Fed. Reg. 24,166 (proposed May 24, 2018).,. ....................................5

Dep't of State, Control of Firearms, Guns, Ammunition and Related Articles the
   President Determines No Longer Warrant Control Under the United States
   Munitions List (USML), 85 Fed. Reg. 4136 (Jan. 23, 2020)................................................. *passim*

Dep't of State Directorate of Def. Trade Controls, Registration FAQs................................................3

Dep't of State, Final Rules for Oversight of Firearms Exports Fact Sheet (Jan. 23,
   2020) ..............................................................................................................................................4

Dep't of State, International Traffic in Arms Regulations: Creation of Definition of
   Activities That Are Not Exports, Reexports, Retransfers, or Temporary Imports;
   Creation of Definition of Access Information; Revisions to Definitions of Export,
   Reexport, Retransfer, Temporary Import, and Release, 84 Fed. Reg. 70,887 (Dec.
   26, 2019) .......................................................................................................................................18

Dep't of State, Revision of the International Traffic in Arms Regulations, 49 Fed. Reg.
   47,682 (Dec. 6, 1984)....................................................................................................................18

General Electric, What is Additive Manufacturing?............................................................................6

The White House, Fact Sheet on the President's Export Control Reform Initiative
   (Apr. 20, 2010)................................................................................................................................4

The White House, White House Chief of Staff Daley Highlights Priority for the
   President's Export Control Reform Initiative (July 19, 2011) .........................................................4

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - v
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

# I.     INTRODUCTION

Intervenor-Defendants National Shooting Sports Foundation, Inc. ("NSSF") and Fredric's Arms & Smiths, LLC (collectively, "NSSF Parties") submit this response in partial opposition to the motion for a preliminary injunction brought by Plaintiff States.  Plaintiffs challenge two agency rules ("Rules") transferring export control jurisdiction over certain firearms, ammunition, and related products and technology to the Commerce Department from the State Department. Plaintiffs' merits arguments focus with laser-like precision on just one of the Rules' myriad effects:  the change in regulation of computer files for the production of firearms or their components using a 3D-printer ("3D-Firearm Files").  The vast majority of the Rules have nothing to do with 3D-Firearm Files.  Yet Plaintiffs seek a preliminary injunction against the Rules *in their entirety*.  Even if the Court determines that Plaintiffs are entitled to relief on their specific claims, there would be no basis for an order enjoining implementation of the Rules wholesale.  Instead, at most, the Court should simply order the agencies to maintain the pre-implementation status quo with respect to regulatory restrictions on 3D-Firearm Files (as defined by the Plaintiff States).

Plaintiffs' requested preliminary injunction is wildly overbroad.  It would wholly block the implementation of Rules emerging from a comprehensive decade-long effort, first initiated during President Obama's Administration, to improve and simplify controls over exports of many items.  These items include firearms and ammunition as well as associated technology, production equipment, and software—almost all of which are entirely unrelated to 3D-Firearm Files.  The resulting Rules strengthen national security and create a more efficient regulatory system for businesses around the country, including members of NSSF, the trade association for America's firearms and ammunition industry.  For example, the Rules eliminate the annual $2,250 State Department registration fee covering gunsmiths or small firearms manufacturers that do not even export goods (like NSSF member Fredric's Arms).  The Rules thus enhance the regulatory framework in numerous ways unrelated to their treatment of 3D-Firearm Files.  Indeed, Plaintiffs

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 1
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

do not point to a single aspect of the Rules, other than their treatment of 3D-Firearm Files, that is unlawful or that threatens any harm.

Accordingly, if this Court accepts Plaintiffs' claims on the merits about 3D-Firearm Files, it should go only so far as to remedy their alleged harm—and no further.  Well-established severability principles support that common-sense result:  there is no evidence the agencies would not have adopted the Rules without their change in treatment of 3D-Firearm Files, and the Rules are eminently workable in the absence of that change.  *See Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 351 (D.C. Cir. 2019).  Issuing an order that tailors relief to the asserted legal violation would also be the most appropriate exercise of this Court's equitable authority— particularly considering the harms that Intervenor-Defendants (and countless non-parties) would suffer if the Rules were enjoined completely.  *See Nat'l Treasury Emps. Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).  Indeed, a tailored order is needed to comply with Article III limitations on this Court's remedial powers.  And implementing such an order would be straightforward:  the agencies would maintain the status quo as to regulatory restrictions on 3D-Firearm Files (which the agencies can easily do).  This Court should therefore reject Plaintiffs' request for an indiscriminate and needlessly disruptive remedy, and instead ensure that the scope of the Court's relief does not exceed the limited violation or harm alleged.

## II.     BACKGROUND

### A.     Statutory and Regulatory Background

Pursuant to its statutory authority to regulate exports, the Department of Commerce has issued and maintained the Export Administration Regulations ("EAR").  *See* Export Control Reform Act of 2018, Pub. L. No. 115-232, 132 Stat. 2208; 15 C.F.R. § 730.1 *et seq.*  "The export control provisions of the EAR are intended to serve the national security, foreign policy . . . and other interests of the United States."  *Id.* § 730.6.  The EAR's Commerce Control List contains "items (i.e., commodities, software, and technology) subject to the export licensing authority" of the Commerce Department's Bureau of Industry and Security.  *Id.* § 738.1(a)(1).  The Bureau, in

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 2
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

turn, controls the export of items on the Commerce Control List through a detailed regulatory structure. *See, e.g.*, *id.* § 742.1 *et seq.*

The Commerce Department is not, however, the only agency with regulatory jurisdiction over exports. *See* 15 C.F.R. § 738.1(a)(1). "Defense articles" and "defense services" are instead controlled under the State Department's International Traffic in Arms Regulations ("ITAR"), administered by the Department's Directorate of Defense Trade Controls ("DDTC") pursuant to the Arms Export Control Act ("AECA"). *See* 22 C.F.R. § 120.1. That Act authorizes the President, "[i]n furtherance of world peace and the security and foreign policy of the United States," to "control the import and the export of defense articles and defense services." 22 U.S.C. § 2778(a)(1). To do so, the President "designate[s] those items which shall be considered as defense articles and defense services" on "the United States Munitions List" ("USML"). *Id.* Manufacturers and exporters of designated articles must register with the DDTC and pay an annual fee, now a minimum of $2,250. *See* 22 C.F.R. § 122.1; Dep't of State Directorate of Def. Trade Controls, Registration FAQs (accessed Feb. 24, 2020).[1]

The USML proved to be a blunt regulatory instrument. All manner of guns and ammunition, including items widely available over the counter in retail outlets around the world, were controlled as "defense articles" and essentially regulated equally regardless of their non-military applications, use, sensitivity, or vintage. Given how broadly "defense articles" are defined, small businesses, for example, were in effect required to comply with rules similar to those applicable to manufacturers of fighter jets and tanks. And even "manufacturer[s] who do[] not engage in exporting"—including certain gunsmiths like Fredric's Arms—"must nevertheless register." 22 C.F.R. § 122.1(a).

The complexities and redundancies of the export control regime prompted a comprehensive effort, initiated in 2010 under the Obama Administration, "to modernize the U.S.

---

[1] *Available at* https://www.pmddtc.state.gov/ddtc_public?id=ddtc_public_portal_faq_detail &sys_id=138b6d9cdb3d5b4044f9ff621f961905.

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 3
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

export control regulations to create a simpler, more robust system that eases industry compliance, improves enforceability, and better protects America's most sensitive technologies." Dep't of State, Final Rules for Oversight of Firearms Exports Fact Sheet (Jan. 23, 2020).[2]  In April 2010, the White House stated in a press release that "the current U.S. export control system does not sufficiently reduce national security risk based on the fact that its structure is overly complicated, contains too many redundancies, and tries to protect too much." The White House, Fact Sheet on the President's Export Control Reform Initiative (Apr. 20, 2010).[3]  The White House explained: "The fragmented system, combined with the extensive list of controlled items which resulted in almost 130,000 licenses last year, dilutes our ability to adequately control and protect those key items and technologies that must be protected for our national security." *Id.*

In July 2011, the White House Chief of Staff highlighted a proposal "by which less militarily significant items (e.g., parts and components) will be transferred from the U.S. Munitions List (USML) to the more flexible Commerce Control List." The White House, White House Chief of Staff Daley Highlights Priority for the President's Export Control Reform Initiative (July 19, 2011).[4]  In April 2013, the State Department issued a final rule amending its arms regulations (the ITAR) to transfer certain items on the USML to the jurisdiction of the Commerce Department. Dep't of State, Amendment to the Int'l Traffic in Arms Regulations: Initial Implementation of Export Control Reform, 78 Fed. Reg. 22,740 (Apr. 16, 2013).  That rule noted that there would be future changes: "The Department intends to publish final rules implementing the revised [USML] categories and related ITAR amendments periodically,

---

[2] *Available at* https://www.state.gov/proposed-rules-for-oversight-of-firearms-exports-published-for-public-comment.

[3] *Available at* https://obamawhitehouse.archives.gov/the-press-office/fact-sheet-presidents-export-control-reform-initiative.

[4] *Available at* https://obamawhitehouse.archives.gov/the-press-office/2011/07/19/white-house-chief-of-staff-daley-highlights-priority-presidents-export-cont.

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 4
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

beginning with this rule." *Id.* By the end of the Obama Administration, the process of revising the USML to streamline regulation and transfer certain items to the Department of Commerce's jurisdiction had been completed for 18 of the USML's 21 categories—*i.e.*, all but the three categories in the Rules now at issue.

### B.   The Final Rules

The Rules that the Plaintiffs seek to vacate "are the product of [the] larger effort since 2010." Final Rules for Oversight of Firearms Exports Fact Sheet, *supra*. They complete the export reform control process for items in the remaining three categories on the USML. Specifically, in 2018, the State Department and the Commerce Department issued proposed rules to transfer licensing jurisdiction over certain commercial firearms and related items in these categories, including products widely available in retail outlets, from State to Commerce regulatory jurisdiction. *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 83 Fed. Reg. 24,198 (proposed May 24, 2018); Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 83 Fed. Reg. 24,166 (proposed May 24, 2018).

Many commenters, including NSSF, supported the new Rules. NSSF explained that the Rules' projected advantages had "been proven thousands of times through the application of similar export control reforms for other sensitive commercial or less sensitive military items that have been transferred to Commerce's jurisdiction over the course of the last eight years." Comment Letter on Proposed Rule on International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III (July 6, 2018).[5] As examples, NSSF noted that "under the Commerce system, there are no fees to apply for licenses. There are no redundant registration requirements for domestic manufacturers. There are no fees for registration. Such fees are bearable for large

---

[5] *Available at* https://www.pmddtc.state.gov/sys_attachment.do?sys_id=0b4aef81d ba31b403b1272131f9619f1, at 109.

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 5
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

companies, but often not for small- and medium-sized companies.  The license application forms are vastly simpler."  *Id.*  NSSF's comments did not address 3D-Firearm Files or 3D-printing technology.[6]

On January 23, 2020, the State Department and the Commerce Department issued the final Rules that Plaintiffs now challenge.  *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020) (State Rule); Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136 (Jan. 23, 2020) (Commerce Rule).  The Rules, the State Department explained, revise the USML to transfer items that do not "provide the United States with a critical military or intelligence advantage or, in the case of weapons, have an inherently military function."  85 Fed. Reg. at 3820.  The transferred items include many "that are widely available in retail outlets in the United States and abroad."  *Id.*

At the same time, the Rules' transfer of jurisdiction over various items to the Department of Commerce "does not deregulate the export of firearms."  85 Fed. Reg. at 3822.  "All firearms and major components being transferred to the [Commerce Control List] will continue to require export authorization from the Department of Commerce," which is "capable of monitoring foreign recipients' compliance with their obligations."  *Id.*  The Commerce Department "will use its resources and expertise . . . to vet parties involved in transactions subject to the EAR for human rights concerns."  85 Fed. Reg. at 4144.  Thus, the firearms, ammunition, and related products at issue will still be controlled for export purposes to achieve, after interagency review, national

---

[6] "3D printing" is a reference to additive manufacturing, which is a technique to use data with computer-aided-design software to "direct hardware to deposit material, layer upon layer, in precise geometric shapes.  As its name implies, additive manufacturing adds material to create an object.  By contrast, when you create an object by traditional means, it is often necessary to remove material through milling, machining, carving, shaping or other means."  General Electric, What is Additive Manufacturing?, *available at* https://www.ge.com/additive/additive-manufacturing (accessed Feb. 24, 2020).

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 6
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

security, foreign policy, and human rights objectives.  But these objectives will be achieved in a simpler, more efficient way for non-military manufacturers and exporters, including NSSF members.

The Rules, which together span 68 pages of the Federal Register, contain dozens of provisions adjusting export controls over numerous categories of firearms, ammunition, and related products and technologies.  85 Fed. Reg. at 3819–33; 85 Fed. Reg. at 4136–88.  The items added to the Commerce Control List (and thus no longer considered "defense articles" subject to State Department regulation) run the gamut.  They include non-automatic and semi-automatic firearms up to .50 caliber; firearms manufactured from 1890 to 1898 and reproductions thereof; certain riflescopes, shotgun shells, and firearm and ammunition production equipment; and many other related products and technologies.  *See, e.g.*, 85 Fed. Reg. at 4180–82 (No. 42).  In fact, the Department of Commerce estimated that 10,000 current State Department licenses would be affected by the transfer of jurisdiction.  *Id.* at 4139.

Further, the Rules contain numerous provisions designed to enhance the Department of Commerce's regulation of firearm exports.  For example, the Commerce Rule sets forth multiple grounds to impose license requirements and deny licenses, such as regional stability, national security, and human rights.  *See* 85 Fed. Reg. at 4143–44, 4163, 4176.  It also "imposes a requirement to file Electronic Export Information . . . for nearly all exports of firearms being moved to the [Commerce Control List]."  85 Fed. Reg. at 4138; *see* 85 Fed. Reg. at 4176–77 (No. 21).  On the State Department side, the Rules clarify and revise the categories of firearms and other items that remain on the USML.  *See, e.g.*, 85 Fed. Reg. at 3831–32.

### C.    The Challenged Provisions of the Rules

The provisions of the Rules to which Plaintiffs object constitute a very thin slice of the Rules.  Plaintiffs challenge the transfer of "Firearm Files"—characterized as "[c]omputer software for the production of a [USML] Category I firearm or its components using a 3D printer"—from the USML to the jurisdiction of the Commerce Department.  *See* Pl. States' Mot. For Preliminary

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 7
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

Inj. 3 (ECF No. 55) ("PI Mot.").[7]  Plaintiffs relatedly object to a section of the Commerce Rule revising the scope of an exception from Commerce regulatory jurisdiction for "published" technology and software in 15 C.F.R. § 734.7.  *See* PI Mot. 6–7.  Specifically, the Rule provides for the Commerce Department to retain jurisdiction over "software" or "technology" for producing "a firearm, or firearm frame or receiver . . . made available by posting on the internet" and "ready for insertion" into manufacturing equipment.  85 Fed. Reg. at 4172–73 (No. 4).

Plaintiffs do not, however, object to any aspects of the Rules that transfer regulatory control over specified firearm products, manufacturing equipment, or traditional (*i.e.*, non-3D-printing) technology or software.  Plaintiffs' objections are thus directed toward an extremely narrow subset of the Rules' many provisions, almost all of which are unrelated to 3D-printing technology or software.

### D.   The Intervenor-Defendants

Intervenor-Defendants are NSSF and Fredric's Arms.  Neither NSSF nor Fredric's Arms is involved in the 3D printing of firearms.  The interest of Intervenor-Defendants is to ensure that the remaining bulk of the Rules go into effect on March 9, 2020, regardless of this Court's decision with respect to 3D-Firearm Files.

NSSF is the trade association for America's firearms and ammunition industry.  Its membership includes manufacturers, distributors, and retailers that export firearms and ammunition products, and those that do not but are nevertheless subject to the export control regulations.  NSSF, on behalf of its members, participated actively in the administrative process

---

[7] The Rules effectuate the transfer of 3D-Firearm Files by: (1) removing "[n]onautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)" from Category I of the State Department's USML, such that "[t]echnical data . . . directly related to" these firearms and their associated components are also eliminated from the USML, 22 C.F.R. § 121.1(a), (h), (i); and (2) adding the up-to-.50-caliber firearms and their associated components to a category of the Commerce Control List, such that "technology" and "software" for the production of these items—which includes 3D-Printing technology and software—also moves to the Commerce list. *See* 85 Fed. Reg. at 3830 (No. 2), 85 Fed. Reg. at 4180–81 (No. 42), 4184 (No. 49), 4185 (No. 52).

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 8
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

leading to the Rules' promulgation.  It made clear that, for its members, the Rules "would significantly reduce the overall burden and cost of complying with controls on the export of commercial firearms and ammunition."  Comment Letter on Proposed Rule on International Traffic in Arms Regulations, *supra*.

Fredric's Arms, a member of NSSF, is a gunsmith shop co-owned by a married couple in Richland, Washington.  As a small business with total annual revenues well under six figures, Fredric's Arms stands to benefit materially from the implementation of the new Rules.  Under the current regulatory regime, Fredric's Arms must register with DDTC and pay the $2,250 annual registration fee—even though the business does not export firearms outside the United States.  *See* Declaration of Marc Stairet (ECF No. 65) ¶¶ 6–9 ("Stairet Decl.").  That is a significant burden on Fredric's Arms.  *Id.* ¶¶ 7–9.  Once the Rules go into effect on March 9, Fredric's Arms will no longer be required to pay that fee.

## III.    ARGUMENT

In the event the Court is inclined to grant relief to Plaintiffs, it should deem the Rules' treatment of 3D-Firearm Files severable from the remainder of the Rules and preliminarily enjoin solely those aspects of the Rules that are unlawful.  That course would adequately—indeed, completely—preserve the current regulation of 3D-Firearm Files, as Plaintiffs seek, without running afoul of Article III limits or harming Intervenor-Defendants (and thousands of others) through the imposition of an unduly broad and burdensome injunction.

### A.    The Rules' Treatment of 3D-Firearm Files Is Severable from the Remainder of the Rules

Assuming the Administrative Procedure Act ("APA") applies,[8] APA principles of severability dictate that the Rules' regulation of 3D-Firearm Files can be enjoined separately from

---

[8] The Export Control Reform Act of 2018 provides, however, that "the functions exercised under this subchapter shall not be subject to sections 551, 553 through 559, and 701 through 706 of Title 5" (*i.e.*, several provisions of the APA).  50 U.S.C. § 4821(a); *see* Pub. L. No. 115-232.

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 9
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

the rest of the Rules.  "An 'agency action' may be either 'the whole or a part of an agency rule [or] order.'"  *Carlson*, 938 F.3d at 351 (quoting 5 U.S.C. § 551(13)).  Consequently, although "[t]he APA requires a reviewing court to 'hold unlawful and set aside agency action' that is arbitrary and capricious . . . , the APA permits a court to sever a rule by setting aside only the offending parts of the rule."  *Id.* (quoting 5 U.S.C. § 706(2)).  In fact, "[i]t would . . . exceed the statutory scope of review for a court to set aside an entire rule where only a part is invalid, and where the remaining portion may sensibly be given independent life."  *Catholic Soc. Serv. v. Shalala*, 12 F.3d 1123, 1128 (D.C. Cir. 1994).

"Whether an administrative agency's order or regulation is severable, permitting a court to affirm it in part and reverse it in part, depends on the issuing agency's intent."  *Davis Cty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) (quoting *North Carolina v. FERC*, 730 F.2d 790, 795–96 (D.C. Cir. 1984)); *accord Ctr. for Biological Diversity v. Jewell*, No. 16-cv-94-TUC-JGZ, 2018 WL 1586651, at *22 n.22 (D. Ariz. Mar. 31, 2018).  Thus, courts look at two criteria in evaluating severability:  (1) whether there is an "indication that the regulation would not have been passed but for [the] inclusion" of the offending provisions, and (2) whether severance will "impair the function" of the remaining provisions "as a whole."  *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988).  The 3D-Firearm-related provisions of the Rules at issue are severable under both criteria.

> 1.  *The Rules would have been promulgated absent their change in treatment of 3D-Firearm Files.*

To conclude that an agency intended a "rule to have an all or nothing character," *Catholic Soc. Serv.*, 12 F.3d at 1127, a court must find "substantial doubt" as to whether the agency would have adopted the valid provisions on their own.  *ACA Int'l v. FCC*, 885 F.3d 687, 708 (D.C. Cir. 2018) (internal quotation marks omitted).  Here, there is simply no "indication that the [Rules] would not have been passed but for [the] inclusion" of provisions relating to 3D-Firearm Files.  *Davis Cty.*, 108 F.3d at 1460 (quoting *K-Mart*, 486 U.S. at 294) (second alteration in original).

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 10
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

As recounted above, the Rules emerged from longstanding efforts (originating in the Obama Administration) to streamline the regulatory system for exports of commercial firearms and related products. *See supra* pp. 2–7. The agencies' purposes, stated in the Rules, were to revise the State Department's USML "to describe more precisely the articles that . . . warrant . . . control" on that List and to "complete the initial review of the USML that the [State] Department began in 2011." 85 Fed. Reg. at 3819; *see also* 85 Fed. Reg. at 4136. The agencies have conveyed no intent for every Rules provision to stand or fall together. Unlike in cases in which courts have struck down entire regulations, the agencies did not (i) "reject[]" the option of promulgating the Rules absent their change in treatment of 3D-Firearm Files "in the preamble to [their] final rule[s]," *Nat'l Ass'n of Mfrs. v. NLRB*, 717 F.3d 947, 964 (D.C. Cir. 2013), *overruled on other grounds by Am. Meat Inst. v. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014); (ii) "repeatedly emphasize[] the ways in which the [treatment of 3D-Firearm Files] and [the other provisions] were designed to work together," *Ass'n of Private Colls. & Univs. v. Duncan*, 870 F. Supp. 2d 133, 154 (D.D.C. 2012); or (iii) state "during the notice and comment period" that they "would *not* have adopted . . . a rule" that excluded regulatory changes relating to 3D-Firearm Files, *Averett v. Dep't of Health & Human Servs.*, 306 F. Supp. 3d 1005, 1021 (M.D. Tenn. 2018), *aff'd*, 943 F.3d 313 (6th Cir. 2019). Contrary to any idea that 3D-Firearm Files are a central feature of the Rules, one of Plaintiffs' principal complaints is that the agencies' notices of proposed rulemaking failed to put parties on notice that 3D-Firearm Files would be affected at all. PI Mot. 10–16.

Moreover, the contents of the Rules clearly reflect the agencies' focus on countless matters unrelated to 3D-printing of firearms. The Rules transfer regulatory jurisdiction over products affecting an estimated 10,000 State Department licenses. *See* 85 Fed. Reg. at 4139. They also institute numerous provisions designed to enhance regulatory enforcement under the new Commerce Department regime, *see, e.g.*, *id.* at 4176 (No. 17); *id.* at 4176–77 (No. 21), and clarify the categories remaining on the State Department's USML, *see* 85 Fed. Reg. at 3831–32 (No. 2). As in a D.C. Circuit case in which the court declined to strike down a regulation in its entirety, the

INTERVENOR-DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION - 11
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

Rules have myriad provisions with "importance beyond the particular . . . program" ruled invalid. *Virginia v. EPA*, 116 F.3d 499, 500 (D.C. Cir. 1997). Thus, "the circumstances indicate the agenc[ies] would have adopted the regulation[s] even without" their change in treatment of 3D-Firearm Files. *Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009).

> ### 2.   *Severance will not impair the function of the Rules as a whole.*

Were this Court to invalidate the Rules only insofar as they alter current regulatory restrictions on 3D-Firearm Files, there is no doubt that "the remaining portion may sensibly be given independent life." *Catholic Soc. Serv.*, 12 F.3d at 1128. Consistent with such a court order, the agencies could still transfer hundreds of firearms and components, and their associated technology and software, to the Commerce Control List. The agencies could also implement provisions regulating the export of these items to achieve the national security and foreign policy, including human rights, objectives of the Commerce Department's regulations. Such an outcome would not "severely distort the [agencies'] program and produce a rule strikingly different from any [the agencies] ha[ve] ever considered or promulgated." *MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 23 (D.C. Cir. 2001). Precisely the opposite is true here: the Rules would serve their principal function of creating a more efficient export control regime regardless of whether they change the regulatory regime with respect to 3D-Firearm Files. *See* 85 Fed. Reg. at 3819, 4136.

Because the Rules could "function sensibly" without their change in treatment of 3D-Firearm Files, *MD/DC/DE Broadcasters Ass'n*, 236 F.3d at 22, it makes no difference that the Rules do not always address 3D-Firearm Files as a wholly separate category of technology.[9] In *Davis County*, for example, the D.C. Circuit rejected an argument against severability grounded

---

[9] Although the Commerce Rule contains discrete provisions governing regulation of 3D-printing technology, 85 Fed. Reg. at 4172 (Nos. 1–4), it also includes 3D-Firearm Files within the "technical data" related to items in a USML category that the Rules move to the Commerce Control List, *see id.* at 4181 (No. 42).

---

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 12
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

in the contention that "[g]uidelines for existing large [municipal waste combustor] *units* have never been promulgated as such and, therefore, are not severable from the other guidelines." 108 F.3d at 1459 (internal quotation marks omitted) (first alteration in original). "The real question for severability analysis," the court of appeals explained, "is not whether the EPA separately issued standards for existing large units, but rather" how the EPA would have proceeded had it not committed the legal error at issue. *Id.* Here, as noted, there is no reason to think the agencies would have abandoned Rules transferring hundreds of items from State to Commerce jurisdiction had they decided to maintain current regulatory restrictions on 3D-Firearm Files.

In *Yeutter,* the D.C. Circuit again confirmed that an all-or-nothing approach is unwarranted even when the agency regulations do not contain wholly distinct categories of offending and non-offending provisions. *See* 918 F.2d at 977. There, the court of appeals determined that certain regulations licensed drug testing in too broad an array of cases. *Id.* at 974. In particular, the regulations were "unconstitutional insofar as [they] authorize[d] mandatory drug testing of . . . workers who do not hold safety- or security-sensitive jobs, absent reasonable suspicion of on-duty drug use or drug-impaired work performance." *Id.* The D.C. Circuit used these categories of drug use—which came from the case law and did not merely track the language of the regulations—to narrow the scope of the injunction. *See id.* at 973–77. The court rejected the argument that it was "inappropriate to redraw employee categories drawn by [an agency] so as to allow random testing of some employees within those categories while prohibiting testing of others." *Id.* at 977. Instead, the D.C. Circuit remanded to the district court "with instructions to modify the injunction" to block drug testing only under the conditions the court deemed unconstitutional. *Id.*

Here, "[i]f the [agencies] had promulgated two entirely separate rules"—one addressing 3D-Firearm Files and one addressing every other item covered by the Rules—"it is beyond dispute that the latter rule would survive." *Catholic Social Serv.*, 12 F.3d at 1128. And as discussed *infra* pp. 17–20, a court order mandating the maintenance of current regulatory restrictions on 3D-Firearm Files would require the agencies to take minimal steps to implement. 3D-Firearm Files

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 13
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

are simply not a "linchpin holding together the entire rule."  *High Country Conservation Advocates v. Forest Serv.*, 67 F. Supp. 3d 1262, 1266 (D. Colo. 2014).  Plaintiffs do not even purport to offer any justification for enjoining the Rules in their entirety.

### B. An Injunction Tailored to the Regulation of 3D-Firearm Files Is the Most Appropriate Exercise of This Court's Equitable Authority

Fundamental equitable principles lead to the same result as the severability analysis:  any relief for Plaintiffs can and must be tailored to the asserted legal violations.  That is particularly true because the preliminary injunction factors weigh against affording any relief extending beyond the harms related to 3D-Firearm Files.

#### 1. This Court should limit any relief to the scope of the alleged harms.

"[I]njunctions issued by federal courts should be narrowly tailored to remedy the harm shown."  *Yeutter*, 918 F.2d at 977; *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established.").  In *Yeutter*, the D.C. Circuit applied that established principle to issue a "narrowly tailored remedial order" invalidating an agency rule only in part.  918 F.2d at 977.

This Court should apply a similarly restrained approach here.  Each of Plaintiffs' three asserted grounds for a preliminary injunction is targeted at the Rules' alteration of the regulatory framework for 3D-Firearm Files, and not at any other aspect of the Rules.  *See, e.g.*, Am. Compl. ¶ 2.  In particular, Plaintiffs urge that (1) the agencies violated notice-and-comment procedures because they provided inadequate opportunity to comment on Rules provisions related to 3D-Firearm Files, and because the addition of a provision addressing 3D-printing (15 C.F.R. § 734.7(c)) was not a logical outgrowth of the proposed rules, PI Mot. 10–16; (2) the agencies' decision to "remove [Firearm] files from the Munitions List" was contrary to AECA's purpose and failed to take into account statutory factors, *id.* 16–18; and (3) the Rules' promulgation was arbitrary and capricious because the Rules "are not a logical means of implementing Defendants' stated policy of continuing to regulate 3D-printed guns," *id.* 18–22.

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 14
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

All of these challenges share one thing in common (as do the related arguments of *amicus* Brady Center):  they are focused exclusively on 3D-Firearm Files.  For instance, Plaintiffs' allegations of defective process are directed at the procedures the agencies employed in effectuating changes in the regulation of 3D-Firearm Files.  Granting relief for the asserted legal violations, therefore, calls solely for an order mandating that the agencies maintain the status quo with respect to regulatory restrictions on 3D-Firearm Files.  The Court's injunction would then be tailored to "the nature and extent of the . . . violation." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Milliken v. Bradley*, 433 U.S. 267, 270 (1977)) (ellipses in original).

In fact, this Court would face constitutional obstacles to doing any more.  The principle that courts must tailor their injunctions to the asserted legal violations is rooted not only in sound equitable practice, but also in Article III.  For a federal court to exercise its remedial authority consistent with Article III, "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Plaintiffs must demonstrate Article III standing with respect to each form of relief they seek. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).  Here, Plaintiffs allege standing based on the effects of the Rules' treatment of 3D-Firearm Files on their interests.  PI Mot. 8.  They are therefore entitled to secure only the relief that would cure their "injury in fact." *Lewis*, 518 U.S. at 357.  And while a litigant asserting a procedural violation "has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant," *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007), here the relevant "injury," "decision," and "harm" all revolve around 3D-Firearm Files.  Hence, to the extent Plaintiffs have Article III standing at all,[10] Plaintiffs have not demonstrated standing

_____

[10] The Department of Justice has previously argued that the Plaintiff States lacked Article III

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 15
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

to seek relief broader than that necessary to alleviate their asserted injuries—all of which, according to Plaintiffs' allegations, stem directly and exclusively from the Rules' treatment of 3D-Firearm Files.

### 2. The preliminary injunction factors weigh sharply against extending relief beyond 3D-Firearm Files.

Granting Plaintiffs relief over the Rules as a whole would be particularly unwarranted in the preliminary injunction context. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (quoting *Winter v. NRDC*, 555 U.S. 7, 22 (2008)). As Plaintiffs note, they "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in their favor; and (4) an injunction is in the public interest." PI Mot. 7 (citing *California v. Dep't of Health & Human Servs.*, 941 F.3d 410, 423–24 (9th Cir. 2019)). Regardless of whether Plaintiffs can satisfy the first factor, each of the remaining preliminary injunction factors cuts against Plaintiffs to the extent they seek any relief beyond what is necessary to remedy the asserted legal violations.

*First*, the irreparable harms Plaintiffs cite stem exclusively from the prospect that "technical data for designing and producing undetectable weapons using a commercially-available 3D printer [will be] published on the internet." PI Mot. 22 (internal quotation marks omitted); *see id.* 22–24. Accordingly, Plaintiffs will suffer no irreparable harm—in fact, no harm whatsoever—if, as the NSSF Parties argue, this Court simply maintains the status quo as to regulatory restrictions on 3D-Firearm Files rather than enjoining the Rules in their entirety.

---

standing to enjoin a temporary USML modification, *see Washington v. Dep't of State*, 318 F. Supp. 3d 1247, 1254 (W.D. Wash. 2018), and the Federal Defendants have signaled their intent to raise an Article III standing objection to Plaintiffs' suit in the instant case, *see* Fed. Defs.' Mot.to File Over-Length Br. in Opp'n to Pls.' Mot. for Prelim. Inj. 1–2 (ECF No. 78).

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 16
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

*Second*, the balance of the equities tips in favor of the NSSF Parties, not Plaintiffs, as to any broader relief.  An order limited to 3D-Firearm Files would "have no prejudicial effect" on Plaintiffs, because the regulatory standards applicable to 3D-Firearm Files would not change. *Davis Cty.*, 108 F.3d at 1459.  By contrast, an order enjoining the Rules in their entirety—even on a preliminary basis—would have inequitable effects on NSSF and its members, including Fredric's Arms.  NSSF members would continue to be subject to the increased regulatory burdens of the State Department's USML.  Fredric's Arms, for instance, would immediately be required to register with and pay the yearly $2,250 fee to the State Department—a significant cost for Fredric's Arms—even though the small gunsmith shop does not export.  Stairet Decl. ¶¶ 6–7.  And NSSF members would be forced to bear those kinds of burdens as a result of a ruling directed at the unrelated topic of 3D-Firearm Files.

*Third*, for similar reasons, Plaintiffs have provided no indication as to why an injunction against the Rules in their entirety, as distinct from an injunction narrowly tailored to 3D-Firearm Files, is in the public interest.  Indeed, Plaintiffs have not ventured any injuries whatsoever stemming from the Rules beyond those related to 3D-Firearm Files.

As a consequence, even if the Court determines that it has the constitutional authority to enjoin the Rules in their entirety (despite Plaintiffs' failure to point to any injury stemming from any aspect of the Rules unrelated to 3D-Firearm Files), the Court should still exercise its "equitable discretion" to tailor relief to Plaintiffs' asserted legal violation.  *Azar*, 911 F.3d at 575.  That measured approach would be "the more equitable and appropriate course."  *Davis Cty.*, 108 F.3d at 1459.

### C.   A Court Order Preserving the Status Quo as to 3D-Firearm Files Would Fully Address Plaintiffs' Objections to the Rules

If this Court determines that Plaintiffs are entitled to any preliminary injunction, then its order should be straightforward: "The State Department and the Commerce Department shall

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 17
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1     maintain the status quo with respect to regulatory restrictions on 3D-Firearm Files (as defined by

2     the Plaintiff States)."  The Rules would otherwise go into effect as scheduled.

3             There are no legal or practical impediments to the agencies' implementation of that court

4     order.  As a legal matter, agencies are, of course, required to follow court orders.  *See Yamasaki*,

5     442 U.S. at 705 ("[T]he grant of injunctive relief makes the Secretary's duty to comply enforceable

6     by contempt order.").  And courts may require agencies to take affirmative steps to comply with

7     court orders finding APA violations.  *See, e.g.*, *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 667 (D.C.

8     Cir. 2016) (remanding to the agency to "determine whether burn-off ovens, soil treatment units,

9     and space heaters" fall under a certain regulatory category "and, if so, to set standards for those

10    types of units"); *see also In re A Cmty. Voice*, 878 F.3d 779, 788 (9th Cir. 2017) (granting a writ

11    of mandamus ordering an agency to issue rules modifying standards to comply with statutory

12    directives related to lead poisoning).  In a closely related context, for example, the State

13    Department has previously revised the definition of "technical data" in the ITAR to comply with

14    a Ninth Circuit decision interpreting that phrase narrowly.  *See United States v. Edler Indus., Inc.*,

15    579 F.2d 516, 521 (9th Cir. 1978); Dep't of State, Revision of the International Traffic in Arms

16    Regulations, 49 Fed. Reg. 47,682, 47,683 (Dec. 6, 1984).

17            As a practical matter, the court's order would merely preserve the status quo with respect

18    to regulatory restrictions on 3D-Firearm Files (which, at bottom, is all that Plaintiffs are concerned

19    about).  The agencies have multiple options for how to comply with such an order.  For example,

20    3D-Firearm Files could be kept on the USML subject to existing State Department regulation

21    through a minor amendment to the USML to state explicitly that such files are subject to the ITAR.

22    Alternatively, the Commerce Department could regulate 3D-Firearm Files subject to the same

23    restrictions on publication as though the files had remained on the USML.

24            The agencies could readily implement either alternative.  To the extent an agency believed

25    any rulemaking were necessary to effectuate the court order, one option would be to issue interim

26    rules that take effect immediately.  *See, e.g.*, Dep't of State, International Traffic in Arms

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 18
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1   Regulations: Creation of Definition of Activities That Are Not Exports, Reexports, Retransfers,

2   or Temporary Imports; Creation of Definition of Access Information; Revisions to Definitions of

3   Export, Reexport, Retransfer, Temporary Import, and Release, 84 Fed. Reg. 70,887 (Dec. 26,

4   2019) (interim final rule amending the ITAR); Dep't of Commerce, Addition of Software

5   Specially Designed to Automate the Analysis of Geospatial Imagery to the Export Control

6   Classification Number 0Y521 Series, 85 Fed. Reg. 459 (Jan. 6, 2020) (interim final rule amending

7   the EAR).  Notably, both the State and Commerce Departments took the position that the Rules

8   were exempt from the APA's notice-and-comment requirements altogether (5 U.S.C. § 553).  *See*

9   State Rule, 85 Fed. Reg. at 3828; Commerce Rule, 85 Fed. Reg. at 4172; *see also* note 8, *supra*.

10          If the agencies decided to keep 3D-Firearms Files on the USML, another option would be

11   temporary modification.  The State Department's Deputy Assistant Secretary for Defense Trade

12   Controls "may order the temporary suspension or modification of any or all of the regulations of

13   [the] subchapter," including the USML, "in the interest of the security and foreign policy of the

14   United States."  22 C.F.R. § 126.2.  The State Department, for example, is currently using this

15   authority to temporarily control certain items in USML Category XI(b) pending publication of a

16   proposed rule on the topic.  *See, e.g.*, Continued Temporary Modification of Category XI of the

17   United States Munitions List, 83 Fed. Reg. 44,228 (Aug. 30, 2018).  The State Department could

18   employ that authority to temporarily control 3D-Firearm Files on the USML.

19          In terms of specific provisions, a key target of Plaintiffs' complaint—and the exclusive

20   focus of *amicus* Brady Center's brief—is the Commerce Rule's addition of 15 C.F.R. § 734.7(c)

21   to regulate certain software or technology related to 3D-printing.  *See* PI Mot. 13–16; Brief of

22   *Amicus Curiae* Brady Center 7–12 (ECF No. 80).  Intervenors' proposed injunctive relief would

23   necessarily enjoin the operation of 15 C.F.R. § 734.7(c).  No further amendments would be

24   required to block that provision.

25          In sum, this Court can order, and the agencies can easily implement, tailored relief

26   mandating that they preserve the status quo as to regulatory restrictions on 3D-Firearm Files.  Such

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 19
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

a court order would correct the asserted legal violations and entirely protect Plaintiffs from their asserted irreparable harm, while simultaneously shielding the NSSF parties and countless others from harm occasioned by indiscriminately halting numerous unrelated alterations to the firearms export control regime embodied in the Rules.

## IV.   CONCLUSION

If this Court determines that Plaintiffs are entitled to any preliminary injunction, the Court should limit its order to requiring the State Department and the Commerce Department to maintain the status quo with respect to regulatory restrictions on 3D-Firearm Files (as defined by the Plaintiff States).

DATED this 24th day of February, 2020.

AKIN GUMP STRAUSS HAUER & FELD LLP

*/s/ Pratik A. Shah*
Pratik A. Shah, D.C. Bar No. 497108
(*pro hac vice*)

*/s/ James E. Tysse*
James E. Tysse, D.C. Bar No. 978722
(*pro hac vice*)

*/s/ Rachel Bayefsky*
Rachel Bayefsky, N.Y. Bar No. 5426481
(*pro hac vice*)*

2001 K Street, N.W.
Washington, D.C. 20006
Telephone:  202-887-4000
Fax:  202-887-4288
E-mail: pshah@akingump.com

* Licensed to practice in New York only and under the direct supervision of a partner of Akin Gump Strauss Hauer & Feld LLP who is an enrolled, active member of the District of Columbia Bar; application for admission to the D.C. Bar pending.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Ross Siler*
  Ross Siler, WSBA # 46486
  920 Fifth Avenue, Suite 3300
  Seattle, WA 98104-1610
  Telephone: (206) 757-8120
  Fax: (206) 757-7120
  E-mail: ross.siler@dwt.com

*Attorneys for Intervenor-Defendants*

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 20
Case No. 2:20-cv-00111-RAJ

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
(202) 887-4000

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on February 24th, 2020, I electronically filed the foregoing document

3   with the Clerk of Court using the CM/ECF system, which will send notice of filing to all parties

4   registered in the CM/ECF system for this matter.

5          DATED:  February 24th, 2020

6

7                                                          */s/ Ross Siler*
                                                          Ross Siler
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

INTERVENOR-DEFENDANTS' RESPONSE
TO MOTION FOR PRELIMINARY
INJUNCTION - 21
Case No. 2:20-cv-00111-RAJ