Message

| | |
|---|---|
| **From:** | Jim Bartlett, Full Circle Compliance [jebartlett@fullcirclecompliance.eu] |
| **Sent:** | 2/11/2019 10:57:25 PM |
| **To:** | fosterja2@state.gov |
| **Subject:** | 19-0211 Monday "Daily Bugle" |

## Monday, 11 February 2019

The Daily Bugle is a free daily newsletter from Full Circle Compliance, containing changes to export/import regulations (ATF, DOE/NRC, Customs, NISPOM, EAR, FACR/OFAC, FAR/DFARS, FTR/AES, HTSUS, and ITAR), plus news and events.  Subscribe here for free subscription.  Contact us for advertising inquiries and rates.

### ITEMS FROM FEDERAL REGISTER

1. Commerce Seeks Comments Concerning Procedures Related to Section 232 National Security Adjustments of Imports of Steel and Aluminum
2. DHS/CBP Announces COAC Meeting on 27 Feb in Washington DC
3. Treasury Lists Countries Requiring Cooperation with an International Boycott

### OTHER GOVERNMENT SOURCES

4. Items Scheduled for Publication in Future Federal Register Editions
5. Commerce/BIS: (No new postings.)
6. DHS/CBP Releases Notice Concerning Filing PRE-TFTEA (CORE) and TFTEA Drawback Claims with Section 301 and/or 201 Duties
7. DHS/CBP Releases Notice Concerning Submitting Imports of Products Excluded from Section 301 Duties
8. State/DDTC: (No new postings.)
9. Treasury/OFAC Issues Venezuela-related General Licenses, Amends FAQs
10. Singapore Customs Updates of Interest

### NEWS

11. Defense News: "French Air Force Chief: France And Germany Working on Export Controls for Future Fighter"
12. NBC News: "New Trump Rules Make it Easier for U.S. Gun Makers to Sell Overseas"
13. Radio Free Europe: "German Tech Firm's Turkmen Ties Trigger Surveillance Concerns"
14. ST&R Trade Report: "Export, FTZ, Other Violations See Increased Civil Penalty Amounts"

15. The Washington Times: "3D-Printed Gun Blueprint Website Owner Sues New Jersey Attorney General in Free Speech Challenge"

## COMMENTARY

16. B. Adkins, U. Johnston & S. Giles: "UK Publishes No Deal Export License for Dual-Use Products"
17. J.E. Smith, J.P. Carlin & N.J. Spiliotes: "OFAC Has Been Talking About Compliance Through Enforcement" (Part I of II)

## EX/IM MOVERS & SHAKERS

18. Monday List of Ex/Im Job Openings: 161 Openings Posted This Week, Including 22 New Openings

## EX/IM TRAINING EVENTS & CONFERENCES

19. ECS Presents "Managing ITAR/EAR Complexities" on 26-27 Mar in Scottsdale, AZ
20. Madison Int'l Trade Assn Meeting Tomorrow in Madison, WI, is Canceled
21. FCC Presents U.S. Export Controls Awareness Course: "ITAR & EAR from a non-U.S. Perspective", 9 April in Bruchem, the Netherlands

## EDITOR'S NOTES

21. Bartlett's Unfamiliar Quotations
22. Are Your Copies of Regulations Up to Date? Latest Amendments: DHS/Customs (14 Jan 2019), DOC/EAR (20 Dec 2018), DOC/FTR (24 Apr 2018), DOD/NISPOM (18 May 2016), DOE/AFAEC (23 Feb 2015), DOE/EINEM (20 Nov 2018), DOJ/ATF (26 Dec 2018), DOS/ITAR (4 Oct 2018), DOT/FACR/OFAC (15 Nov 2018), HTSUS (1 Jan 2019)
23. Weekly Highlights of the Daily Bugle Top Stories

ITEMS FROM TODAY'S FEDERAL REGISTER

## 1. Commerce Seeks Comments Concerning Procedures Related to Section 232 National Security Adjustments of Imports of Steel and Aluminum

(Source: Federal Register, 11 Feb 2019.) [Excerpts.]

84 FR 3142-3143: Submission for OMB Review; Comment Request

The Department of Commerce will submit to the Office of Management and Budget (OMB) for clearance the following proposal for collection of information under the provisions of the Paperwork Reduction Act.

- Agency: Bureau of Industry and Security.
- Title: Procedures for Submitting Rebuttals and Surrebuttals Requests for Exclusions from and Objections to the Section 232 National Security Adjustments of Imports of Steel and Aluminum.
- Form Number(s): 0694-0141.
- OMB Control Number: 0694-0141.
- Type of Review: Regular submission. ...
- Needs and Uses: On September 11, 2018, Bureau of Industry and Security (BIS) published a second interim final rule, Revisions to the Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel into the United States and Adjusting Imports of Aluminum into the United States; and the filing of Objections to Submitted Exclusion Requests for Steel and Aluminum. This second interim final rule that was published by BIS, on behalf of the Secretary, made changes to the two supplements added in the March 19 rule: Supplement No. 1 to Part 705 -- Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Articles into the United States; and to Supplement No. 2 to Part 705 -- Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamation 9704 of March 8, 2018 to Adjusting Imports of Aluminum into the United States.

This collection of information gives U.S. Companies the opportunity to submit rebuttals to objections received on posted exclusion requests and also allows U.S. companies the opportunity to submit surrebuttals for objections they submitted that receive rebuttals under the Section 232 exclusion process. ...

This information collection request may be viewed at reginfo.gov, http://www.reginfo.gov/public/. Follow the instructions to view Department of Commerce collections currently under review by OMB.

Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to OIRA_Submission@omb.eop.gov.

Sheleen Dumas,Departmental Lead PRA Officer, Office of the Chief Information Officer, Commerce Department.

back to top

WASHSTATEC001391

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 2. DHS/CBP Announces COAC Meeting on 27 Feb in Washington DC
(Source: Federal Register, 11 Feb 2019.) [Excerpts.]

84 FR 3217-3218: Commercial Customs Operations Advisory Committee

\* AGENCY: U.S. Customs and Border Protection (CBP), Department of Homeland Security (DHS).
\* ACTION: Committee Management; Notice of Federal Advisory Committee Meeting.
\* SUMMARY: The Commercial Customs Operations Advisory Committee (COAC) will hold its quarterly meeting on Wednesday, February 27, 2019, in Washington, DC. The meeting will be open to the public.
\* DATES: The COAC will meet on Wednesday, February 27, 2019, from 1:00 p.m. to 5:00 p.m. EST. Please note that the meeting may close early if the committee has completed its business.
\* ADDRESSES: The meeting will be held at the Ronald Reagan Building and International Trade Center, 1300 Pennsylvania Avenue NW, Horizon Ballroom, Washington, DC 20004. For information on facilities or services for individuals with disabilities or to request special assistance at the meeting, contact Ms. Florence Constant-Gibson, Office of Trade Relations, U.S. Customs & Border Protection, at (202) 344-1440 as soon as possible.
 - Pre-Registration: Meeting participants may attend either in person or via webinar after pre-registering using one of the methods indicated below:
 For members of the public who plan to attend the meeting in person, please register by 5:00 p.m. EST February 26, 2019, either online here by email to tradeevents@dhs.gov; or by fax to (202) 325-4290. You must register prior to the meeting in order to attend the meeting in person.
 For members of the public who plan to participate via webinar, please register online here by 5:00 p.m. EST on February 26, 2019.
 Please feel free to share this information with other interested members of your organization or association.
 Members of the public who are pre-registered to attend via webinar and later need to cancel, please do so by February 26, 2019, utilizing the following links: here to cancel an in person registration; or here to cancel a webinar registration.
 To facilitate public participation, we are inviting public comment on the issues the committee will consider prior to the formulation of recommendations as listed in the Agenda section below.
 Comments must be submitted in writing no later than February 26, 2019, and must be identified by Docket No. USCBP-2019-0005, and may be submitted by one (1) of the following methods:
 - Federal eRulemaking Portal: http://www.regulations.gov. Follow the instructions for submitting comments.
 - Email: tradeevents@dhs.gov. Include the docket number in the subject line of the message.
 - Fax: (202) 325-4290, Attention Florence Constant-Gibson.

   - Mail: Ms. Florence Constant-Gibson, Office of Trade Relations, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue NW, Room 3.5A, Washington, DC 20229.
   - Instructions: All submissions received must include the words "Department of Homeland Security" and the docket number (USCBP-2019-0005) for this action. Comments received will be posted without alteration at http://www.regulations.gov. Please do not submit personal information to this docket.
   - Docket: For access to the docket or to read background documents or comments, go to http://www.regulations.gov and search for Docket Number USCBP-2019-0005. To submit a comment, click the "Comment Now!" button located on the top-right hand side of the docket page.
   - There will be multiple public comment periods held during the meeting on February 27, 2019. Speakers are requested to limit their comments to two (2) minutes or less to facilitate greater participation. Contact the individual listed below to register as a speaker. Please note that the public comment period for speakers may end before the time indicated on the schedule that is posted on the CBP web CBP web page.
* FOR FURTHER INFORMATION CONTACT: Ms. Florence Constant-Gibson, Office of Trade Relations, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue NW, Room 3.5A, Washington, DC 20229; telephone (202) 344-1440; facsimile (202) 325-4290; or Mr. Bradley Hayes, Executive Director and Designated Federal Officer at (202) 344-1440.
* SUPPLEMENTARY INFORMATION: ... The Commercial Customs Operations Advisory Committee (COAC) provides advice to the Secretary of Homeland Security, the Secretary of the Treasury, and the Commissioner of U.S. Customs and Border Protection (CBP) on matters pertaining to the commercial operations of CBP and related functions within the Department of Homeland Security and the Department of the Treasury.

*Agenda*

The COAC will hear from the current subcommittees on the topics listed below and then will review, deliberate, provide observations, and formulate recommendations on how to proceed:
 1. The Secure Trade Lanes Subcommittee will present plans for the scope and activities of the Trusted Trader and CTPAT Minimum Security Criteria Working Groups. Recommendations will be presented regarding the proposed Forced Labor Trusted Trader Strategy. The subcommittee will also deliver recommendations from the Petroleum Pipeline Working Group for CBP to develop and codify uniform reporting procedures for pipeline carriers as well as entry and bonding procedures for importers. The subcommittee will also deliver recommendations from the In-Bond Working Group regarding potential automation and process enhancements.
 2. The Intelligent Enforcement Subcommittee will provide necessary updates from the Anti-Dumping and Countervailing Duty, Bond, and Forced Labor Working Groups and recommendations from Intellectual Property Rights Working Group.
 3. The Next Generation Facilitation Subcommittee will discuss the E-Commerce Working Group's progress on mapping the supply chains of various modes of transportation to identify the differences between e-

WASHSTATEC001393

commerce and traditional channels to address CBP's strategic plan regarding e-commerce threats and opportunities for both the government and trade. The subcommittee will also provide an update on the status of the Emerging Technologies Working Group's NAFTA/CAFTA and Intellectual Property Rights Blockchain Proof of Concept Projects. Finally, the subcommittee will provide recommendations from the Regulatory Reform Working Group upon completing its review of Title 19 of the Code of Federal Regulations to identify regulations for potential repeal or modification to eliminate or reduce costs and burdens for U.S. businesses.

    Meeting materials will be available by February 25, 2019 here.

    Dated: February 6, 2019.
Bradley F. Hayes, Executive Director, Office of Trade Relations.

back to top

* * * * * * * * * * * * * * * * * * *

# 3. Treasury Lists Countries Requiring Cooperation with an International Boycott

(Source: Federal Register, 6 Feb 2019.)

84 FR 2337: List of Countries Requiring Cooperation with an International Boycott

In accordance with section 999(a)(3) of the Internal Revenue Code of 1986, the Department of the Treasury is publishing a current list of countries which require or may require participation in, or cooperation with, an international boycott (within the meaning of section 999(b)(3) of the Internal Revenue Code of 1986).

  On the basis of the best information currently available to the Department of the Treasury, the following countries require or may require participation in, or cooperation with, an international boycott (within the meaning of section 999(b)(3) of the Internal Revenue Code of 1986).

- Iraq
- Kuwait
- Lebanon
- Libya
- Qatar
- Saudi Arabia
- Syria
- United Arab Emirates Yemen

Dated: December 31, 2018.
Douglas Poms, International Tax Counsel, (Tax Policy).

back to top

* * * * * * * * * * * * * * * * * * *

–

## OTHER GOVERNMENT SOURCES

## 4. Items Scheduled for Publication in Future Federal Register Editions
(Source: Federal Register)

* DHS/CBP; NOTICES; Meetings: 21st Century Customs Framework; Change of Location [Pub. Date: 12 Feb 2019.]

* Justice/ATF; NOTICES; Agency Information Collection Activities; Proposals, Submissions, and Approvals: Voluntary Magazine Questionnaire for Agencies/Entities Who Store Explosive Materials [Pub. Date: 12 Feb 2019.]

* State; NOTICES; Agency Information Collection Activities; Proposals, Submissions, and Approvals:
  - Annual Brokering Report;
  - Brokering Prior Approval; and
  - United States Munitions List, Categories I, II and III [Pub. Dates: 12 Feb 2019.]

back to top

* * * * * * * * * * * * * * * * * * * *

## 5. Commerce/BIS: (No new postings.)
(Source: Commerce/BIS)

back to top

* * * * * * * * * * * * * * * * * * *

## 6.
## DHS/CBP Releases Notice Concerning Filing PRE-TFTEA (CORE) and TFTEA Drawback Claims with Section 301 and/or 201 Duties
(Source: CSMS# 19-000050, 8 Feb 2019.)

* GUIDANCE: Effective immediately, drawback filers can submit claims related to Section 301 and/or 201 duties. Filers will no longer receive error messages related to unit of measure (UOM) when transmitting drawback claims for Section 301 and/or 201 duties. Previously, filers received a UOM mismatch error because the underlying import did not have a UOM associated to a Chapter 99 HTSUS. If the filer left the UOM blank, they received an additional error message because the UOM is a mandatory data element field.
* FILING REQUIREMENTS: Filers are required to provide the Chapter 99 HTSUS tariff number related to Section 301 and/or 201 duties, and the

WASHSTATEC001395

associated Chapter 1 to 97 HTSUS tariff number on ALL claims.

If any drawback claim subject to Section 301 and/or 201 duties was previously filed and accepted in ACE, the filers are required to "perfect" the claim. To "perfect" a claim, filers must contact their Drawback Specialist and request the claim be returned to trade control. The filers are then required to list both HTSUS tariff numbers (as described above) on their claims and resubmit to CBP within 5 business days.

* SUBSTITUTION AND NAFTA DRAWBACK CLAIM GUIDANCE: This guidance applies to both Section 301 and 201 duties. Goods subject to Section 232 are ineligible for refund of 232 duties, per Presidential Proclamation 9739 and 9740.

- Pre-TFTEA Substitution Claims: 301/201 duties are refundable, in full, on pre-TFTEA substitution claims.

- TFTEA Substitution Claims: 301/201 duties are refundable on TFTEA substitution claims, even if subject to the TFTEA lesser of [value] rule. If subject to the TFTEA lesser of [value] rule, the amount will be limited by the value of the substituted merchandise when it is lower than the value of the imported merchandise.

- NAFTA Claims (pre and post TFTEA): 301/201 duties may be refundable on NAFTA claims subject to the lesser of [duty] rule, but only when the total amount of Canadian/Mexican duties paid is higher than the total amount of duties paid in the United States. The amount of 301/201 duties refunded under the NAFTA lesser of [duty] rule will be limited by the total amount of duties paid on the merchandise imported into Canada/Mexico.

* 19 U.S.C 1313(p) CLAIMS: Due to a pending technical fix, please do not file any 19 U.S.C. 1313(p) claims with the subject duties at this time. Future guidance will be sent once this issue has been resolved. If you have a 1313(p) claim on file with Section 301 and/or 201 duties, please do not request to "perfect" this claim until further guidance has been received.

* RESOURCES: The list of impacted tariff classifications for Section 301 are found at the following links: Section 301 Trade Remedies to be Assessed on Certain Products from China, Section 301 HTSUS Reference Guide, 83 FR 28710, 83 FR 40823, 83 FR 47974, 83 FR 65198.

For more information regarding Section 201 duties, please reference the following link: here

Contact your Client Representative for assistance with technical questions regarding the input of the required tariff numbers.

Direct questions regarding this update to OTDRAWBACK@cbp.dhs.gov.

back to top

* * * * * * * * * * * * * * * * * *

## 7. DHS/CBP Releases Notice Concerning Submitting Imports of Products Excluded from Section 301 Duties
(Source: CSMS# 19-000052, 8 Feb 2019.)

* BACKGROUND: On December 28, 2018, the U.S. Trade Representative published a Federal Register Notice (83 FR 67463) announcing the decision

to grant certain exclusion requests from the 25 percent duty assessed under the Section 301 investigation related to goods from China (Tranche 1). The product exclusions announced in this notice will be retroactive as of the July 6, 2018 effective date (see 83 FR 28710). The exclusions will extend for one year after the December 28, 2018 Federal Register notice (83 FR 67463).

The exclusions are available for any product that meets the description in the Annex to 83 FR 67463, regardless of whether the importer filed an exclusion request. Further, the scope of each exclusion is governed by the scope of the 10-digit headings and product descriptions in the Annex to 83 FR 67463, and not by the product descriptions set out in any particular request for exclusion.

The functionality for the acceptance of products excluded from Section 301 duties will be available in the Automated Commercial Environment (ACE) on February 10, 2019.

* INSTRUCTIONS FOR FILING ENTRIES SUBJECT TO PRODUCT EXCLUSIONS: Instructions on submitting entries to CBP containing products granted exclusions by USTR from the Section 301 measures are as follows:

In addition to reporting the regular Chapters 84, 85 & 90 classification of the Harmonized Tariff Schedule of the United States (HTSUS) for the imported merchandise, importers shall report the HTSUS classification 9903.88.05 (Articles the product of China, as provided for in U.S. note 20(h) to this subchapter, each covered by an exclusion granted by the U.S. Trade Representative) for imported merchandise subject to the exclusion.

Do not submit the corresponding Chapter 99 HTS number for the Section 301 duties when HTS 9903.88.05 is submitted.

* ADDITIONAL INFORMATION: Duty exclusions granted by USTR are retroactive on imports to the initial effective date of July 6, 2018. To request an administrative refund for previous imports of duty-excluded products granted by USTR, importers may file a Post Summary Correction (PSC) following the same entry filing instructions above.

If the entry has already liquidated, importers may protest the liquidation.

Reminder: When submitting an entry summary in which a heading or subheading in Chapter 99 is claimed on imported merchandise, please refer to CSMS 18-000657 (Entry Summary Order of Reporting for Multiple HTS in ACE).

Imports which have been granted a product exclusion from the Section 301 measures, and which are not subject to the Section 301 duties, are not covered by the FTZ provisions of the Section 301 Federal Register notices, but instead are subject to the FTZ provisions in 19 CFR part 146.

For more information, please refer to the December 28, 2018 Federal Register notice (83 FR 67463).

Questions from the importing community concerning ACE entry rejections involving product exclusion numbers should be referred to their CBP Client Representative. Questions related to Section 301 entry filing requirements should be emailed to Traderemedy@cbp.dhs.gov.

- Related CSMS No. 18-000757, 18-000752, 18-000624

back to top

* * * * * * * * * * * * * * * * * *



## 8. State/DDTC: (No new postings.)
(Source: State/DDTC)

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 9. Treasury/OFAC Issues Venezuela-related General Licenses, Amends FAQs
(Source: Treasury/OFAC, 11 Feb 2019.)

The Department of the Treasury's Office of Foreign Assets Control (OFAC) is issuing General License 3C, "Authorizing Transactions Related to, Provisions of Financing for, and Other Dealings in Certain Bonds," and General License 9B, "Authorizing Transactions Related to Dealings in Certain Securities."  Additionally, OFAC is revising Frequently Asked Questions (FAQs) 650, 661, and 662.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 10. Singapore Customs Updates of Interest
(Source: Singapore Customs, 8 Feb 2019.)

Singapore Customs has released the following document(s) on its website:

\* Changes to the prohibition of imports, exports, transshipments and goods in transit to and from South Sudan and Eritrea (Circular No: 02/2019)

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

‒

NEWS

## 11. Defense News: "French Air Force Chief: France And Germany Working on Export Controls for Future Fighter"
(Source: Defense News, 9 Feb 2019.)

The French Air Force chief of staff provided top cover for the future Franco-German fighter at a time when the French defense industry is increasingly concerned that cooperation with Germany could curtail its ability to export the system.

"There is a real determination" at the highest levels of government -

including French President Emmanuel Macron and German Chancellor Angela Merkel - to agree on export controls, said Gen. Philippe Lavigne during a Feb. 7 roundtable with reporters.

"It's a need for our security, but it's also a need for our industry, and we have to develop this," he said, adding that Spain has already signed on as an observer to the program and that others are expected to follow.

The French government is generally seen as more supportive of arms sales than its partner in the sixth-generation fighter program, called the Future Combat Air System, or FCAS. While enthusiasm for the program remains high, some French defense industry officials are concerned that Germany's involvement could prevent sales to countries that Berlin considers rogue actors.

But settling an export policy is just one of the many questions about the FCAS program that are still yet to be answered.

So far, France and Germany's concept for FCAS involves a network of swarming UAVs, new weapons and a sixth-generation fighter that can exchange information with each other. FCAS would replace France's Rafale and Germany's Eurofighter around 2040.

"We haven't decided what will be the architecture," Lavigne said. "Will it be this type of aircraft? Will it be this type of [UAV]? Will it be this type of unmanned combat air vehicle? Will it be this type of missiles? But we know that we will share an architecture.

"The gamechanger is the connectivity between different platforms."

Earlier this week, the French and German governments awarded €65 million (U.S. $74 million) to Dassault and Airbus for the two-year study that will solidify a path forward for FCAS, and the companies plan to announce demonstrator programs at the Paris Air Show this summer.

Lavigne wasn't clear on how the governments would reconcile different requirements, like France's intention to launch FCAS from aircraft carriers, which could drive different design attributes than a fighter that takes off and lands conventionally.

"Of course we will have national interests in France with the nuclear deterrence. Germany will have different national interests," he said. However, he stopped short of saying how much commonality is expected between the two militaries.

Until the study is complete, it is "too early to say" whether FCAS will be manned or unmanned. However, Lavigne said a human will continue to be in the loop - especially for nuclear deterrence missions - whether a human is in the cockpit or it is remotely piloted.

"We are open to look at the technical solution," he said. "For me, it's

WASHSTATEC001399

optionally piloted."

FCAS' system-of-systems approach is similar to the U.S. Air Force's vision for Penetrating Counter Air, its future air superiority concept. The Air Force hasn't shared which defense companies are involved in conceptualizing or prototyping future technologies that could be pulled into a PCA program of record, but it requested $504 million in fiscal 2019 to push the effort forward, with investments projected to hit $3 billion in FY22.

back to top

* * * * * * * * * * * * * * * * * *

## 12. NBC News: "New Trump Rules Make it Easier for U.S. Gun Makers to Sell Overseas"
(Source: NBC News, 7 Feb 2019.) [Excerpts.]

Manufacturers will no longer need State Department licenses to export dozens of weapons.

Semi-automatic weapons, flamethrowers, and even some grenades will become easier for U.S. weapons manufacturers to export overseas under new rules being put in place by the Trump administration and obtained by NBC News.

Under the new rules, set to take effect in just under a month, gun-makers will no longer need licenses from the Department of State to sell dozens of types of weapons to other countries, including semi-automatic assault weapons such as the AR-15 that has been employed in many of America's worst mass shootings. Instead, sellers will need only a no-fee license from the Department of Commerce, which has a less onerous licensing process and a smaller global footprint, making it harder to track how the weapons are ultimately used overseas. ...

back to top

* * * * * * * * * * * * * * * * * *

## 13. Radio Free Europe: "German Tech Firm's Turkmen Ties Trigger Surveillance Concerns"
(Source: Radio Free Europe, 8 Feb 2019.) [Excerpts.]

One year ago this month, Turkmenistan's state news agency reported on a meeting between the country's authoritarian president and a visiting executive from a German electronics firm that supplies surveillance and encryption technology to governments and militaries.

Hartmut Jaeschke of the Munich-based Rohde & Schwarz, according to the report, told President Gurbanguly Berdymukhammedov during the talks that the company sought "to gain a stronger foothold" in Turkmenistan, whose government is consistently ranked among the world's most repressive.

WASHSTATEC001400

Jaeschke's visit caught the eye of Human Rights Watch (HRW), which said it had been told by a knowledgeable source that Turkmen authorities were seeking "technology for monitoring and blocking mobile and satellite communications, which would also enable the government to block Internet access." ...

The issue of spyware deliveries to authoritarian regimes has prompted proposed legislation in the European Parliament. The legislation aims to tighten export controls to prevent "the abuse of certain cyber-surveillance technologies by regimes with a questionable human rights record." ...

back to top

* * * * * * * * * * * * * * * * *

## 14. ST&R Trade Report: "Export, FTZ, Other Violations See Increased Civil Penalty Amounts"
(Source: Sandler, Travis & Rosenberg Trade Report, 11 Feb 2019.)

The Department of Commerce is increasing for inflation the civil monetary penalty amounts that may be assessed for the following regulatory violations after March 1, including when the associated violation occurred before that date. However, the DOC notes that the actual penalty assessed for a particular violation will be dependent on a variety of factors.

 * false or fraudulent claims under the Program Fraud Civil Remedies Act (31 USC 3802(a)(1) and (2)) - maximum increased from $ $11,181 to $11,463
 * knowing use of false record or statement material to an obligation to pay or transmit money or property to the federal government (31 USC 3729(a)(1)(G)) - minimum increased from $11,181 to $11,463, maximum increased from $22,363 to $22,927
 * Fastener Quality Act violations (15 USC 5408(b)(1)): maximum increased from $46,192 to $47,357
 * prohibited acts relating to inspections or record-keeping violations under the Chemical Weapons Convention Implementation Act (22 USC 6761(a)(1)(A) and (B)) - maximums increased from $37,601 to $38,549 and from $7,530 to $7,710, respectively
 * violations of the International Emergency Economic Powers Act (50 USC 1705(b)) - maximum increased from $295,141 to $302,584
 * violation of Export Controls Act of 2018 (50 USC 4819) - maximum of $300,000 (new penalty)
 * failure to file export information or reports required by 13 USC 304 within prescribed period - maximum for each day's delinquency increased from $1,360 to $1,394, maximum per violation increased from $13,605 to $13,948
 * other unlawful export information activities under 13 USC 305 - maximum increased from $13,605 to $13,948
 * failure to furnish any information required under 22 USC Chapter 46 (international investment and trade in services survey) - minimum increased

from $4,619 to $4,735, maximum increased from $46,192 to $47,357
 * foreign-trade zone violations (19 USC 81s): maximum increased from
$2,852 to $2,924

back to top

* * * * * * * * * * * * * * * * * *



## 15. The Washington Times: "3D-Printed Gun Blueprint Website Owner Sues New Jersey Attorney General in Free Speech Challenge"

(Source: The Washington Times, 10 Feb 2019.) [Excerpts.]

The man behind a website devoted to sharing online blueprints for 3D-printed gun is suing the attorney general of New Jersey, after being alerted that the activity was violating a new gun control law.

The lawsuit is the latest salvo in the fight to publish the plans online and challenges a law signed late last year that gun-rights advocates say criminalizes their free speech rights to post the blueprints.

 "Whatever their claimed motive or agenda is, we know that their actual agenda is the disarmament of the people of New Jersey," said Brandon Combs, president of the Firearms Policy Coalition. "And if they have to infringe speech rights in order to red-line the right to keep and bear arms in their state, I think that they're willing to do whatever it takes to do that."

back to top

* * * * * * * * * * * * * * * * * *

—

## COMMENTARY

## 16. B. Adkins, U. Johnston & S. Giles: "UK Publishes No-Deal Export License for Dual-Use Products"

(Source: Gowling WLG, 7 Feb 2019.)

The UK's export licensing authority has published a new Open General Export License for the export of dual use goods to the EU which will come into force on 29 March 2019 in event of a no deal Brexit.

UK businesses that hold an existing OGEL and businesses that will require an OGEL after Brexit (i.e. because they are currently exporting dual use goods into the EU) can register now for the new OGEL.

On 1 February 2019, the Export Control Joint Unit (("ECJU") - the UK's export licensing authority - published a new Open General Export

WASHSTATEC001402

License ("OGEL") for the export of dual use goods to the EU. The OGEL is intended to come into force at 11pm, 29 March in the event that there is no Brexit deal.

**"Nothing has changed"?**

The OGEL follows the guidance on the export of controlled goods if there is no Brexit deal that was first issued by the Department for International Trade in August. Council Regulation (EC) 428/2009, currently governs the scope of export authorizations (among other things) for dual use goods across the EU, including the UK. This Regulation will be preserved as applying in UK law, as part of the new species of 'Retained EU Law' created by the EU (Withdrawal) Act 2018). As such, the UK's post-Brexit export controls regime will, in the short-term, continue to follow the EU framework.

However, the retention of the EU framework will not prevent a change in the way UK exporters operate. This is because the transfer of goods to the EU from the UK will become an 'export' post-Brexit, triggering the need for export licenses in relation to controlled goods.  Exporters of dual use goods - that is, goods that may have both a military and non-military application - will therefore require authorization in order to export goods into the EU, as well as to the rest of the world.

More importantly, OGELs for the export of dual use goods from the EU will cease to cover the UK in a no deal Brexit. Consequently, exporters will need to obtain a new authorization from either the UK authorities (if they are exporting from the UK) or the relevant EU Member State (if they are exporting from the EU to the UK).

**What if there is a deal?**

The Withdrawal Agreement, agreed by the Prime Minister and the EU in November 2018, commits the UK and EU to an 'implementation period' whereby the UK would in effect be treated as an EU member for the purposes of the EU export control regime until 31 December 2020. The relationship between the UK and EU export control regimes after the end of the implementation period is not addressed in the political declaration on the future UK-EU trading relationship. This means there is still uncertainty as to the mutual recognition or otherwise of OGELs from 1 January 2021.

It is still uncertain whether the Withdrawal Agreement will be ratified by the UK Parliament. The publication of the OGEL provides some certainty to business as to the process for exporting dual-use goods from 29 March in the event that the Withdrawal Agreement is not ratified.

**What should business do now?**

UK businesses that hold an existing OGEL and businesses that will require an OGEL after Brexit (i.e. because they are currently exporting dual use goods into the EU) are able to register to use the new OGEL before it comes into force.

WASHSTATEC001403

Registration is possible via SPIRE, the ECJU's licensing system. As part of the application process, businesses will need to confirm to the ECJU where records of exports will be retained between now and Brexit day.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*



### 17.
### J.E. Smith, J.P. Carlin & N.J. Spiliotes: "OFAC Has Been Talking About Compliance Through Enforcement" (Part I of II)
(Source: Morrison Foerster, 5 Feb 2019.)

\* Authors: John E. Smith, Esq., johnsmith@mofo.com; John P. Carlin, Esq., jcarlin@mofo.com; and Nicholas J. Spiliotes, Esq., nspiliotes@mofo.com. All of Morrison Foerster.

*Have You Been Listening?*

Last Thursday, January 31, the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) issued its first enforcement action of 2019, a fascinating case involving *false eyelashes* that teaches that virtually any company in any industry selling any product can find itself in OFAC's cross-hairs (pun intended). This year also marks a decade since OFAC published its tried-and-true Enforcement Guidelines, which outline the agency's standard operating procedure for reviewing and enforcing violations of U.S. economic sanctions.

Last week's case involving e.l.f. Cosmetics, like another half dozen OFAC enforcement cases resolved over the past several months, serves as yet another indication that OFAC has, with relatively little fanfare, embarked upon one of the most sweeping elaborations of its enforcement policy since its Enforcement Guidelines were published a decade ago. Few have paid attention to the lessons from these recent cases. You should.

In fact, you might be forgiven if you believed that OFAC's enforcement of economic sanctions had waned during the early years of the Trump Administration, because various media reported the nadir of sanctions enforcement last year with one only case finalized in the first half of 2018 and only sevenpublished all year, the lowest number in more than a decade. The penalties and settlement amounts per enforcement case last year ranged from $88,000 to $54 million, totaling nearly $72 million for all of 2018.

After a lull in issuing final enforcement actions for much of the first three-quarters of last year, however, OFAC began pumping them out again last fall, but the new cases have differed from the old. Over the past several months, OFAC's enforcement cases have offered far more detail of the

WASHSTATEC001404

agency's expectations regarding sanctions compliance than ever before, expanding upon the agency's informal mantra of "better compliance through enforcement."

In a December 2018 speech to the American Bankers Association/American Bar Association Financial Crimes Enforcement Conference, Treasury Under Secretary Sigal Mandelker formally announced the changes - which began last fall - noting that, "To aid the compliance community in strengthening defenses against sanctions violations, OFAC will be outlining the hallmarks of an effective sanctions compliance program. . . . Going forward, these types of compliance commitments will become an essential element in settlement agreements between OFAC and apparent violators."

So, without further ado, here are the Top 20 lessons recent OFAC cases - including all those issued last year - have been trying to teach you:

**1. If you are a U.S. company, beware your touchpoints to the global economy, particularly when involved in high-risk industries or high-risk jurisdictions.** You may be exposed to sanctions risk because of, for example, your (A) **international financial transactions**, (B) **overseas subsidiaries or employees**, (C) **supply chains**, and (D) **distribution chains**. Recent OFAC cases have touched upon each of these risks:

   - **International Financial Transaction Risk**. The twin JP Morgan cases from October demonstrate the continued risks to U.S. financial institutions and companies emanating from global financial transactions. The first of the two cases involved the bank's operation of a net settlement mechanism that resolved billings among global airlines and other airline participants, some of which involved sanctioned entities. The second of the two involved the bank's delay in remedying a historic deficiency in its screening software that failed to identify customer names with hyphens, initials, or additional middle or last names as potential matches to similar names on the OFAC List of Specially Designated Nationals and Blocked Persons ("SDN List").
   - **Overseas Subsidiaries or Employees Risk.** In the Zoltek case from December, OFAC took action against a Missouri company that reviewed and approved its Hungarian subsidiary's purchase of chemicals from a subsidiary of a designated Belarusian entity. OFAC noted that the "enforcement action highlights the risks for companies with overseas operations that do not implement OFAC compliance programs or that implement compliance programs that fail to address the sanctions regulations administered by OFAC."
   - **Supply Chain Risk.** The e.l.f. Cosmetics case issued last week involved a California company that imported false eyelash kits from Chinese suppliers that contained materials from North Korea. OFAC noted that the company "appears not to have exercised sufficient supply chain due diligence while sourcing products from a region that poses a high risk to the effectiveness of the NKSR [North Korea Sanctions Regulations]." Don't be complacent, however, if you source materials far closer to home; manufacturers have occasionally found themselves importing items such as cobalt or nickel from Canada and then belatedly realizing that the material originally may have

WASHSTATEC001405

been sourced from Cuba.

  **- Distribution Chain Risk.** In the Cobham case from November, a U.S. company's subsidiary - a global provider of technology and services in aviation, electronics, communications, and defense - sold several parts through distributors in Canada and Russia to an entity 51 percent owned by a Russian entity on the SDN List, making the subsidiary entity automatically sanctioned under OFAC's 50 Percent Rule. The SDN and its Russian subsidiary both contained the similar names "Almaz Antey," but the U.S. company used a third-party screening software that required "an all word match criteria that would only return matches containing all of the searched words." Similarly, in the Epsilon action settled in September, OFAC acted against a U.S. company that exported its products to a Dubai company, with knowledge or reason to know that company distributed most, if not all, of its products to Iran.

**2. If you are not a U.S. company, beware your touchpoints to the United States - including use of** (A) **the U.S. financial system,** (B) **U.S. persons, or** (C) **U.S.-origin goods and services - for transactions that may violate U.S. sanctions.** Recent OFAC cases have dealt with a few of these risks.

  **- Use of the U.S. Financial System.** The Société Générale case from November marked the latest in a long line of OFAC enforcement actions targeting a foreign bank's "stripping" of information regarding sanctioned parties from transactions sent through U.S. banks, serving as a reminder for foreign financial institutions and companies to avoid sending non-transparent financial or other transactions through the United States that violate U.S. sanctions.
  **- U.S. Persons.** In the Ericsson case from last June, employees of Swedish and U.S. subsidiaries of a Swedish electronics company cooperated with respect to the provision of services by the Swedish subsidiary to a Sudanese entity and worked together to obtain a U.S.-origin product for shipment to a third country and then on to Sudan, in apparent violation of U.S. sanctions.
  **- U.S.-Origin Goods and Services.** In the Jereh Group case from December, OFAC and the Department of Commerce's Bureau of Industry and Security acted against a Chinese oilfield services company and its affiliated companies and subsidiaries worldwide that re-exported U.S.-origin goods to Iran by way of China, as well as exported U.S.-origin goods with knowledge they were to be used for production of, for commingling with, or for incorporation into goods made in China to be sent to Iran.

**3. If at first you don't succeed, remediate.** "Compliance commitments," to use Under Secretary Mandelker's terminology, are a key focus of recent OFAC enforcement cases. OFAC is providing far more detailed explanations in its enforcement case summaries of corporate remediation efforts constituting mitigating factors warranting penalty reductions. In all the enforcement cases issued in recent months, OFAC has listed detailed summaries of the companies' remedial **sanctions compliance commitments, many of which are detailed below and should serve as a template for OFAC's expectations regarding the sufficiency of sanctions compliance programs**.

WASHSTATEC001406

**4. Expand and stress test compliance programs.** Under Secretary Mandelker emphasized that hallmarks of effective sanctions compliance programs include senior management commitment to compliance and "frequent risk assessments to identify and mitigate sanctions-specific risks within an institution and its products, services, and customers." Recent enforcement cases demonstrate the importance to OFAC of corporate actions that strengthen, or fail to strengthen, sanctions compliance programs. In the Zoltek case, for example, OFAC noted that the U.S. parent had expanded its Director of Global Compliance position to include sanctions as well as export/import controls. In the Jereh Group matter, OFAC credited the company for hiring "an external organization with specialized experience in U.S. economic and trade sanctions and export control laws and regulations, which conducted an internal review of the company and developed a trade and sanctions compliance program." (*Hey, we at MoFo's National Security Group are available to assist. Just sayin'.*)

**5. Money matters.** In several recent enforcement cases, OFAC specifically highlighted compliance commitments by companies to provide additional staffing and resources. For example, the Jereh Group hired full-time compliance personnel and new senior managers with compliance backgrounds. In Société Générale, the bank "increased the number of personnel within compliance staffing, and SG's total budget for sanctions compliance has also increased." Similarly, in the first of the two JP Morgan cases, OFAC noted the bank had increased its compliance staff. In Cobham, OFAC bluntly declared its expectations: "OFAC expects companies settling apparent violations of its regulations to ensure their compliance units receive adequate resources, including in the form of human capital, information technology, and other resources, as appropriate."

**6. Sound screening software is a must.** In the Zoltek case, OFAC noted that the company's new screening software would be used to screen "its vendors, and their parent and subsidiary companies," against OFAC and other government restricted lists on a daily basis. In Cobham, the company "acquired and implemented new and enhanced sanctions screening software . . . that is capable of identifying and flagging potential matches to persons with close name variations to parties identified on the SDN List." And in both of the JP Morgan cases, OFAC noted that the bank had implemented new screening software. Companies should not become complacent, however, with this tool; as Under Secretary Mandelker noted, a company's sanctions compliance "resources must go far beyond merely screening the SDN List."

**7. Don't delay.** In the second of the two JP Morgan cases resolved in October, OFAC issued a finding of violation against the bank for delays in addressing known deficiencies in its screening system. As OFAC noted, "JPMC engaged in a pattern of conduct over a two-year period where the apparent violations stemmed from the same screening issue; although JPMC identified this screening issue and implemented multiple screening enhancements, it took over three years to fully address a known deficiency in the vendor-provided screening system." When technological solutions

require a longer period to address, OFAC emphasizes that "compensating controls" are needed to address the risk of the known deficiencies. As OFAC summarized, "This enforcement action highlights the importance of financial institutions remediating known compliance program deficiencies in an expedient manner, and when that is not possible, the importance of implementing compensating controls to mitigate risk until a comprehensive solution can be deployed."

**8. Screen, screen, and screen again.** Cobham demonstrates the need to re-screen regularly and at all phases of a transaction. In that case, when the U.S. company's subsidiary agreed to ship parts through its distributors to Russia, and at the time of its first shipment, neither the Russian company nor its parent was sanctioned. By the time of subsequent shipments, they were.

**9. Beware the 50 Percent Rule.** Zoltek involved a U.S. company's review and approval of its overseas subsidiary's dealings with a non-designated subsidiary of a sanctioned entity. While OFAC characterized as egregious the U.S. parent's continued involvement in its subsidiary's dealings after numerous high-level conversations revealed its awareness that purchases were being made from a subsidiary of a sanctioned entity, OFAC also included the previous non-egregious dealings with the sanctioned subsidiary as part of the penalty calculation. Similarly, Cobham involved a U.S. company's sales of goods through Canadian and Russian distributors to an entity owned 51 percent by an SDN; OFAC pursued an enforcement action because of the similarity of names of the SDN parent and subsidiary. Both cases demonstrate the urgency of the need for sanctions compliance screening of entities beyond the SDN List itself. Indeed, OFAC highlighted that, as a remedial measure, "Cobham acquired and implemented a screening and business intelligence tool with the capability of identifying and flagging persons known to be owned by parties identified on the SDN List, and has developed a process for employing the business intelligence tool to conduct enhanced due diligence on high-risk transactions from an OFAC sanctions perspective, to include any transaction involving a Cobham U.S. entity and any party in either Russia or Ukraine."

*[Part II will be published in tomorrow's Daily Bugle.]*

back to top

* * * * * * * * * * * * * * * * * * *

## EX/IM MOVERS & SHAKERS

### 18. Monday List of Ex/Im Job Openings: 161 Openings Posted This Week, Including 22 New Openings
(Source: Events & Jobs Editor)

Published every Monday or first business day of the week. Please, send job openings in the following format to jobs@fullcirclecompliance.eu.

* COMPANY; LOCATION; POSITION TITLE (WEBLINK); CONTACT INFORMATION; REQUISITION ID

  "#" New or amended listing this week

* Adient; Bratislava, Slovakia; Customs Specialist (EMEA); Requisition ID: R-02990;
* AeroVironment; Simi Valley, CA; Trade Compliance Specialist II; Requisition ID: 333;
* Agility; Basel, Switzerland; SachbearbeiterIn Ocean Freight Export;
* Agility; Charlotte, NC; Import Manager/Licensed Customs Broker;
* Agility; Dallas, TX; Ocean Export Coordinator;
* Agility; Houston, TX; Ocean Export Coordinator;
* Agility; Houston, TX; Ocean Export Team Leader;
* Airbus; Manching, Germany; Internship within Procurement Compliance, Regulations & Risks; Requisition ID: 10438469 NU EN EXT 1;
* AM General; Auburn Hills, MI; International Compliance Analyst;
* Amazon EU; Luxembourg City, Luxembourg; Trade Compliance

WASHSTATEC001409

Manager; Requisition ID: 780313;
* Amazon Web Services; Seattle, WA; Trade Compliance Manager, Export Controls & Classification; Requisition ID: 787194;
* Analog Devices; Chelmsford, MA; Import-Export Analyst;
* Arconic; Pittsburgh, PA; Global Director Export Compliance, EPS Liaison;
* Arconic; Pittsburgh, PA; Global Director Import Compliance, TCS Liaison;
* Ascent Aerospace; Lake Orion and Macomb Township, MI; ITAR/EAR/Export Compliance Manager; Requisition ID: 1399;
* Arconic; Cleveland, OH; Global Trade Compliance Manager;
* Ascent Aerospace; Lake Orion and Macomb Township, MI; ITAR/EAR/Export Compliance Manager; Requisition ID: 1399;
* BAE Systems; Farnborough, United Kingdom; Counsel, Group Export Control; Requisition ID: 00058679;
* BAE Systems; Nashua, NH; Procurement Compliance; Requisition ID: 44996BR
* BAE Systems; Poznań, Poland; Export Control Officer;
* BAE Systems; Sterling Heights, MI; Senior Procurement Compliance Analyst; Requisition ID: 4BR
# * Baker Hughes; Aberdeen, United Kingdom; Trade Compliance Classification Analyst; Requisition ID: 1902478;
* Beiersdorf; Hamburg, Germany; International Trade Expert;
* Bell Flight; Fort Worth, TX; Trade Classification Specialist I; Requisition ID: 270536;
# * Boeing; Berlin and Frankfurt am Main, Germany; Trade Control Specialist m/f; Requisition ID: 1900016657;
# * Boeing; Dubai and Abu Dhabi, UAE; Senior Trade Control Specialist; Requisition ID: 1900019092;
# * Boeing; multiple locations, United States; Trade Control Specialist; Requisition ID: 1900020123;
* Boeing; Dallas, TX; Global Regulatory and Compliance Specialist 4; Requisition ID: 12795;
* Boeing; Zoushan, China;  Compliance Analyst;
* Boeing; Zoushan, China; Trade Compliance Manager;
* Bosch USA; Owatonna, MN; Import/Export Compliance Analyst;
* Bristol-Myers Squibb; New Brunswick, NJ; Director Global Customs & Trade;
* Brookhaven National Laboratory; Upton, NY; Mgr Export Control Program; Requisition ID: 1563;
# * Carnegie Mellon University; Pittsburgh, PA; Export Compliance Manager;
* CISCO; Amsterdam, The Netherlands; Global Export Trade Manager - EMEAR;
* Cobham Advanced Electronic Solutions; Colorado Springs, CO; Export Compliance Manager; Requisition ID: req2102;

WASHSTATEC001410

* ConvaTec; Flexible location, U.S.; Associate Manager, Customs & Trade; Requisition ID: JR0000536
* Danfoss; Rødekro, Denmark; Global Trade Compliance Specialist and Coordinator; Requisition ID: 14732BR;
* DB Schenker; Düsseldorf, Germany; Head of Ocean Freight Import; Requisition ID: 201811140002;
# * Defense Technology Security Administration; Alexandria, VA; Export Control Analyst; Requisition ID: DE-10413785-19-TB;
* Deloitte Belgium; Ghent, Belgium; Manager Global Trade Advisory;
* DHL; Erlanger, KY; OFAC Agent; Requisition ID: req72731;
* Doosan; West Fargo, ND; Director Customs & Trade Compliance;
* DuPont; Neu-Isenburg, Germany; Logistics Specialist Customs & Trade Compliance EMEA; Requisition ID: SOU00001629;
* EDCO; Eindhoven, the Netherlands; Customs & Trade Compliance Coordinator;
* ELTA North America; Baltimore, MD; Compliance Officer;
* ENSCO Plc; Houston, TX; Analyst II - Export & Trade Compliance; Requisition ID: 13136;
* Erickson Inc.; Portland or Central Point, OR; Import Specialist; Susan Colletto; Requisition ID 927130;
* Esri; Redlands, CA; Export Compliance Specialist;
* Expeditors; Krefeld, Germany; Clerk Import / Export;
* Expeditors; Bedfont, United Kingdom; Customs Brokerage Clerk;
* Expeditors; Frankfurt, Germany; Consultant - Customs and Trade Compliance (m/w), unbefristet und in Vollzeit
¿
* Expeditors; Sunnyvale, CA, USA; Customs Compliance Coordinator;
* Expeditors; Sunnyvale, CA, USA; Customs Compliance Specialist;
* Export Compliance Solutions/ECScreening; Remote; Sales Representative
* Export Solutions, Inc.; San Jose, CA; Director of Global Trade & Compliance;
* Flexport; Amsterdam, the Netherlands; Customs Director Europe;
* Flexport; San Francisco, CA; Customs Compliance Manager;
* FLIR; Arlington, VA; Global Trade Compliance Program Analyst/Trade Projects Facilitator/Program Administrator; Requisition ID: REQ11503;
* FLIR; Arlington, VA or Billerica, MA; Senior Director, Global Export Compliance; Requisition ID: REQ11409;
* FLIR; Elkridge, MD; Global Trade Compliance, Traffic Analyst OTS;
* FLIR; Täby, Sweden; Compliance Site Operations Leader; Requisition ID: REQ11291;
* Fortive - Tektronix; Beaverton, OR; Chief Compliance Counsel;
* Fortive - HealthNewCo; Irvine, CA; Global Trade Compliance Manager;
* GCP Applied Technologies; Cambridge, MA; Trade Compliance Manager;

WASHSTATEC001411

* General Atomics; San Diego, CA; Compliance Specialist; Requisition ID: 22119BR
# * General Atomics; San Diego, CA; Trade Compliance Classification Leader; Requisition ID: 22466BR;
* General Dynamics; Falls Church, VA; Manager, Intl Trade Compliance; Requisition ID: 2018-50910;
* Google; Mountain View, CA; Trade Specialist, Export Compliance;
# * GSK; Research Triangle Park, NC; Trade Compliance COE Manager; Requisition ID: WD184670;
* GSW Manufacturing Inc; Findlay, OH; Trade Compliance Analyst;
* Henderson Group Unlimited, Inc; State Dept, DDTC; Washington, DC; Defense Trade Control Compliance Analyst;
* Henderson Group Unlimited, Inc; State Dept, DDTC; Washington, DC; Commodities Jurisdiction Analyst;
# * Honda; Marysville, OH; Senior Export Compliance Specialist; Requisition ID: HTA0000AX;
# * Honeywell; multiple locations, United States; Export Compliance Manager (North America); Requisition ID: HRD45798;
# * Honeywell; Kansas City, MO; Import/Export Compliance Leader; Requisition ID: req177780;
# * Honeywell; Prague, Czech Republic; Export Compliance Officer; Requisition ID: req179383;
* Honeywell International Inc.; Sunnyvale, CA or Lincolnshire, IL; Sr. Import/Export Analyst; HRD32371
* Infineon; El Segundo, CA; Manager, Export Control; Requisition ID: 33841
* Infineon Technologies, El Segundo, CA; Senior Export Compliance Specialist; Requisition ID: 31215;
# * Infineon Technologies; Tijuana, Mexico; Import-Export Manager;
* InteliTrac Global Solutions; Herndon, VA; ITAR Compliance Official / Deputy Facility Security Officer;
* InteliTrac Global Solutions; Herndon, VA; ITAR Compliance Official;
* IPG Photonics; Oxford, MA; Global Director Trade Compliance;
* IPG Photonics; Oxford, MA; Global Director Trade Compliance
* John Crane; Slough, United Kingdom; Senior Manager International Trade Compliance EMEA; Requisition ID: JCRANE01688;
* Johnson Controls; Milwaukee, WI; Director, Global Trade Compliance; Requisition ID: WD30055791295;
* Keeco Home; Hayward, CA; Director Customs and Compliance;
# * Kellogg's; Bucharest, Romania; Export Documents & Customs Coordinator; Requisition ID: LOG003008;
* Kohler Co; Kohler, WI; Analyst, International Trade Compliance; Requisition ID: 18105;
* Leidos; Columbia, MD; International Trade Manager / Export Compliance; Requisition ID: R-00005745;
* Leonardo DRS; Melbourne, FL; Senior Supply Chain Analyst - Small Business Compliance; Requisition ID: 91669

* Lockheed Martin; Arlington, VA; International Licensing Analyst; Requisition ID: 465724BR;
# * Lockheed Martin; Arlington, VA; International Licensing Analyst; Requisition ID: 468160BR;
* Lockheed Martin; Bethesda, MD; Regulatory Compliance Analyst; Requisition ID: 449353BR
* Lockheed Martin, Grand Prairie, TX OR Orlando, FL.; International Trade Compliance Engineer Staff; Requisition ID 462509BR
* Lockheed Martin; Grand Prairie, TX; International Trade Compliance Specialist / International Licensing Analyst; Requisition ID: 469631BR
* Luminex; Austin, TX; Global Logistics & Trade Compliance Analyst - US; Requisition ID: 561
* Lutron Electronics Co; Lehigh Valley, PA; Trade Compliance Coordinator; Requisition ID: 4025;
* Meggitt; Erlanger, KY; Trade Compliance Officer; Requisition ID: 37476;
* Meggitt; San Diego, CA; Trade Compliance Officer; Requisition ID: 36402;
#* Metso; Beijing or Tianjin or Shanghai, China; Trade Compliance Manager APAC; Requisition ID: 83732;
# * Metso; Helsinki or Vantaa or Tampere, Finland; Trade Compliance Manager EMEA; Requisition ID: 83711;
* Mohawk Global Trade Advisors; Chicago, IL; Vice President and General Manager of Consulting Division; Contact: CSardella@mohawkglobal.com;
# * Moog Aircraft Group; Torrance, CA; Senior Trade Compliance Specialist; Requisition ID: 190620;
* Muscogee International, LLC; Washington, D.C.; DDTC Records Auditor; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Contract Analyst; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Service Support Desk Lead; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Service Support Desk; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support I; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support II; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support III; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support; Apply HERE or contact their recruiting team.
* Newell Brands; Norwalk, CT; Manager of Trade Operations;
* Norma Group; Maintal, Germany; Manager Global Trade Compliance and Forwarding; Requisition ID: 8843;
* Northrop Grumman; Chester, United Kingdom; International Trade

WASHSTATEC001413

Compliance (ITC) Professional;
* Northrop Grumman; London, United Kingdom; Regional Trade Compliance Manager;
* NXP Semiconductors; Eindhoven, The Netherlands; (Senior) Manager Customs Compliance; Requisition ID: R-10013630;
* Ormco; Amersfoort, The Netherlands; EU Trade Compliance Specialist;
* Palomar Products; Rancho Santa Margarita, CA; Contracts & Compliance Manager;
* Panasonic Avionics; Houston, TX; Import/Export Analyst;
* Pinpoint Pharma; Lincolnshire,IL; Export Compliance Specialist; Requisition ID: 351;
# * Polaris; Minneapolis, MN; Mgr, Export Compliance; Requisition ID: 12882BR;
* PwC; Houston, TX; Customs and International Trade Director; Requisition ID: 38150WD;
* QinetiQ; Mönchengladbach, Germany; International Trade Compliance and Logistics Manager;
* Ralph Lauren; New York, NY; Director, Trade Compliance Analyst; Requisition ID: 5567761;
* Rawlings Sporting Goods, St. Louis, MO, Trade Compliance Analyst
* Raytheon; Dulles, VA; Principal Global Trade License;
* Raytheon; Tuscon, AZ; Senior Export Licensing and Compliance Specialist; Requisition ID: 129588BR;
# * Raytheon; Tucson, AZ; Trade Compliance Empowered Official; ryan.murphy@raytheon.com; Requisition ID: 121105BR;
* Richemont; Fort Worth, TX; Import/Export Manager; Requisition ID: 8837;
* Rohde & Schwarz; Columbia, MD; Import/Export Compliance Specialist;
* Rohde Schwarz; Munich, Germany; Spezialist Exportkontrolle (m/w)
* SABIC; Houston TX; Senior Analyst, Trade Compliance; Danielle.Cannata@sabic.com; Requisition ID: 8411BR
* SC Johnson; Kuala Lumpur, Malaysia; Senior Analyst, Global Trade Compliance; Requisition ID: 1525;
* Shell; Houston, TX; Trade Compliance Manager (Projects and Technology); Requisition ID: 98302BR;
# * Shell; Krakow, Poland; Trade Compliance Manager; Requisition ID: 100384BR;
* Shell; The Hague, The Netherlands; Trade Compliance Manager - Integrated Gas/New Energies; Requisition ID: 98522BR;
* Sierra Nevada Corporation; Hurlburt Field, FL; International Trade Compliance Analyst II; Requisition ID: R0007284;
* Smith & Nephew; Hull, United Kingdom; European Trade Compliance Analyst; Requisition ID: R31311;
* Societé Génerale Securities Services; Munich, Germany;

Sachbearbeiter Trade Compliance; Requisition ID: 1800112L;
* Symantec; Tempe, AZ; Trade Compliance Analyst; Requisition ID:
47108;
* Teledyne Technologies Inc.; Hawthorne, CA; Sr. International Trade
Compliance Specialist;
* Thales; Brest, France; Export Control Manager (H/F); Requisition
ID: R0052876
* TLR Inc.; Portland, OR; Export Compliance Specialist;
* TE Connectivity; El Cajon, CA or Middletown, PA; Licensing
Specialist; tbaker@te.com; Requisition 40514
* Teledyne Semiconductors; Saint-Egrève/Grenoble, France; Trade
Compliance Manager; Requisition ID: 2019-8459;
* Textron Aviation; Wichita, KS; Trade Compliance Analyst;
Requisition ID: 269127
* Thales; New Delhi, India; Manager - Trade Compliance; Requisition
ID:R0038060
* United Technologies - Collins Aerospace; Cedar Rapids; Compliance
Specialist-Government; Requisition ID: 01271793;
* United Technologies - Pratt & Whitney; East Hartford, CT;
International Trade Compliance Manager; Requisition ID: 01279346;
* University of California; San Francisco, CA; Export Control Officer;
Requisition ID: 51010;
# * Volvo Cars; Göteborg, Sweden; Technical Expert - Export
Controls;
* Wealth Ocean; Newport Beach, CA; Marketing & International Trade
Specialist;
* Wellesley Asset Management; Wellesley, MA; Chief Compliance
Officer;
* World Wide Technology; Edwardsville, IL; International Trade
Compliance Specialist;
* Würth Adams; Greenwood, IN; International Trade Compliance
Classification Specialist;
* Xilinx; San Jose, CA; Trade Compliance Specialist; Requisition ID: 155901
* YETI Coolers; Austin, TX; Inbound Logistics and Trade Compliance
Manager;

back to top

* * * * * * * * * * * * * * * * * * *

---

## EX/IM TRAINING EVENTS & CONFERENCES

### 19. ECS Presents "Managing ITAR/EAR Complexities" on 26-27 Mar in Scottsdale, AZ

(Source: S. Palmer, spalmer@exportcompliancesolutions.com.)

* What: Managing ITAR/EAR Complexities; Scottsdale, AZ
* When: 26-27 March 2019
* Where: Double Tree Resort by Hilton Paradise Valley
* Sponsor: Export Compliance Solutions (ECS)
* ECS Speaker Panel:  Suzanne Palmer, Lisa Bencivenga
* Register here or by calling 866-238-4018 or e-mail
  spalmer@exportcompliancesolutions.com.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

20. Madison Int'l Trade Association's Meeting Tomorrow in Madison, WI, Has Been Canceled
(Source: Editor)

The Madison International Trade Association (MITA) regrets that due to inclement weather, the export control conference scheduled for tomorrow, 12 February, has been canceled.  Watch this space for news of rescheduling.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

21. FCC Presents U.S. Export Controls Awareness Course: "ITAR & EAR from a non-U.S. Perspective", 9 April in Bruchem, the Netherlands
(Source: Full Circle Compliance, events@fullcirclecompliance.eu.)

Our next academy course is specifically designed for beginning compliance professionals and those in a similar role who aim to stay up-to-date with the latest U.S. export control requirements that apply to non-U.S. transactions, and industry's best practices.

The course will cover multiple topics relevant for organizations outside the U.S. that are subject to U.S. export controls, including: the U.S. regulatory framework, key concepts and definitions, tips regarding classification and licensing, essential steps to ensure a U.S. export control compliant shipment, how to handle a (potential) non-compliance issue, recent enforcement trends, and the latest and anticipated regulatory amendments.  Participants will receive a certification upon completion of the training.

* What: Awareness Course U.S. Export Controls: ITAR & EAR from a Non-U.S. Perspective
* When: Tuesday, 9 Apr 2010, 9.30 am - 4.30 pm (CET)
* Where: Landgoed Groenhoven, Bruchem, the Netherlands
* Sponsor: Full Circle Compliance (FCC)
* Instructors: Michael E. Farrell (ITAR), and drs. Alexander P. Bosch

WASHSTATEC001416

(EAR)
* Information & Registration: HERE, or contact us at
events@fullcirclecompliance.eu or +31 6 15 65 02 09.

*Register now and get a 10% Early Bird discount
on the course fee!*

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

–

## EDITOR'S NOTES

## 22. Bartlett's Unfamiliar Quotations
(Source: Editor)

* **Thomas A. Edison** (Thomas Alva Edison; 11 Feb 1847 - 18 Oct 1931; was an American inventor and businessman, who has been described as America's greatest inventor.  He is credited with developing many devices in fields such as electric power generation, mass communication, sound recording, and motion pictures. These inventions, which include the phonograph, the motion picture camera, and the long-lasting, practical electric light bulb, had a widespread impact on the modern industrialized world. He was one of the first inventors to apply the principles of mass production and teamwork to the process of invention.)
  - *"Our greatest weakness lies in giving up. The most certain way to succeed is always to try just one more time."*

**Monday is pun day:**
* When plumbers sleep do they have pipe dreams?
* That guy who was convicted of stealing a calendar got 12 months.
* When I was very young, I felt like a male trapped in a female's body. Then I was born.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 23. Are Your Copies of Regulations Up to Date?
(Source: Editor)

* DHS CUSTOMS REGULATIONS: 19 CFR, Ch. 1, Pts. 0-199.  Implemented by Dep't of Homeland Security, U.S. Customs & Border Protection.
  - Last Amendment: 14 Jan 2019: 84 FR 112-116: Extension of Import Restrictions Imposed on Certain Archaeological and Ecclesiastical Ethnological Material from Bulgaria; and 84 FR 107-112: Extension of Import Restrictions Imposed on Certain Archaeological Material From China

* DOC EXPORT ADMINISTRATION REGULATIONS (EAR): 15 CFR Subtit. B,

WASHSTATEC001417

Ch. VII, Pts. 730-774. Implemented by Dep't of Commerce, Bureau of Industry & Security.
  - Last Amendment: 20 Dec 2018: 83 FR 65292-65294: Control of Military Electronic Equipment and Other Items the President Determines No Longer Warrant Control Under the United States Munitions List (USML); Correction [Concerning ECCN 7A005 and ECCN 7A105.]

* DOC FOREIGN TRADE REGULATIONS (FTR): 15 CFR Part 30.  Implemented by Dep't of Commerce, U.S. Census Bureau.
  - Last Amendment: 24 Apr 2018: 83 FR 17749-17751: Foreign Trade Regulations (FTR): Clarification on the Collection and Confidentiality of Kimberley Process Certificates
  - HTS codes that are not valid for AES are available here.
  - The latest edition (1 Jan 2019) of *Bartlett's Annotated FTR* ("BAFTR"), by James E. Bartlett III, is available for downloading in Word format. The BAFTR contains all FTR amendments, FTR Letters and Notices, a large Index, and approximately 250 footnotes containing case annotations, practice tips, Census/AES guidance, and explanations of the numerous errors contained in the official text. Subscribers receive revised copies in Microsoft Word every time the FTR is amended. The BAFTR is available by annual subscription from the Full Circle Compliance website.  BITAR subscribers are entitled to a 25% discount on subscriptions to the BAFTR. Government employees (including military) and employees of universities are eligible for a 50% discount on both publications at www.FullCircleCompiance.eu.

* DOD NATIONAL INDUSTRIAL SECURITY PROGRAM OPERATING MANUAL (NISPOM): DoD 5220.22-M. Implemented by Dep't of Defense.
  - Last Amendment: 18 May 2016: Change 2: Implement an insider threat program; reporting requirements for Cleared Defense Contractors; alignment with Federal standards for classified information systems; incorporated and cancelled Supp. 1 to the NISPOM (Summary here.)

* DOE ASSISTANCE TO FOREIGN ATOMIC ENERGY ACTIVITIES: 10 CFR Part 810; Implemented by Dep't of Energy, National Nuclear Security Administration, under Atomic Energy Act of 1954.
  - Last Amendment: 23 Feb 2015: 80 FR 9359, comprehensive updating of regulations, updates the activities and technologies subject to specific authorization and DOE reporting requirements. This rule also identifies destinations with respect to which most assistance would be generally authorized and destinations that would require a specific authorization by the Secretary of Energy.

* DOE EXPORT AND IMPORT OF NUCLEAR EQUIPMENT AND MATERIAL; 10 CFR Part 110; Implemented by Dep't of Energy, U.S. Nuclear Regulatory Commission, under Atomic Energy Act of 1954.
  - Last Amendment: 20 Nov 2018, 10 CFR 110.6, Re-transfers.

* DOJ ATF ARMS IMPORT REGULATIONS: 27 CFR Part 447-Importation of Arms, Ammunition, and Implements of War.  Implemented by Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives.
  - Last Amendment: 15 Jan 2016: 81 FR 2657-2723: Machineguns,

WASHSTATEC001418

Destructive Devices and Certain Other Firearms; Background Checks for Responsible Persons of a Trust or Legal Entity With Respect To Making or Transferring a Firearm.

* DOS INTERNATIONAL TRAFFIC IN ARMS REGULATIONS (ITAR): 22 C.F.R. Ch. I, Subch. M, Pts. 120-130. Implemented by Dep't of State, Directorate of Defense Trade Controls.
  - Last Amendment: 4 Oct 2018: 83 FR 50003-50007: Regulatory Reform Revisions to the International Traffic in Arms Regulations.
  - The only available fully updated copy (latest edition: 1 Jan 2019) of the ITAR with all amendments is contained in *Bartlett's Annotated ITAR* ("BITAR"), by James E. Bartlett III. The BITAR contains all ITAR amendments to date, plus a large Index, over 800 footnotes containing amendment histories, case annotations, practice tips, DDTC guidance, and explanations of errors in the official ITAR text. Subscribers receive updated copies of the BITAR in Word by email, usually revised within 24 hours after every ITAR amendment. The BITAR is available by annual subscription from the Full Circle Compliance website. BAFTR subscribers receive a $25 discount on subscriptions to the BITAR, please contact us to receive your discount code.

* DOT FOREIGN ASSETS CONTROL REGULATIONS (OFAC FACR): 31 CFR, Parts 500-599, Embargoes, Sanctions, Executive Orders.
Implemented by Dep't of Treasury, Office of Foreign Assets Control.
  - Last Amendment: 15 Nov 2018: 83 FR 57308-57318: Democratic Republic of the Congo Sanctions Regulations

* USITC HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES (HTS, HTSA or HTSUSA), 1 Jan 2019: 19 USC 1202 Annex. Implemented by U.S. International Trade Commission. ("HTS" and "HTSA" are often seen as abbreviations for the Harmonized Tariff Schedule of the United States Annotated, shortened versions of "HTSUSA".)
  - Last Amendment: 1 Jan 2019: 2019 Basic Edition of the HTS
  - HTS codes for AES are available here.
  - HTS codes that are not valid for AES are available here.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 24. Weekly Highlights of the Daily Bugle Top Stories
(Source: Editor)

Review last week's top Ex/Im stories in "Weekly Highlights of the Daily Bugle Top Stories" published here.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

WASHSTATEC001419

## EDITORIAL POLICY

* The Ex/Im Daily Update is a publication of FCC Advisory B.V., compiled by: Editor, James E. Bartlett III; Assistant Editors, Alexander P. Bosch and Vincent J.A. Goossen; and Events & Jobs Editor, Alex Witt. The Ex/Im Daily Update is emailed every business day to approximately 6,500 readers of changes to defense and high-tech trade laws and regulations. We check the following sources daily: Federal Register, Congressional Record, Commerce/AES, Commerce/BIS, DHS/CBP, DOE/NRC, DOJ/ATF, DoD/DSS, DoD/DTSA, FAR/DFARS, State/DDTC, Treasury/OFAC, White House, and similar websites of Australia, Canada, U.K., and other countries and international organizations.  Due to space limitations, we do not post Arms Sales notifications, Denied Party listings, or Customs AD/CVD items.

* RIGHTS & RESTRICTIONS: This email contains no proprietary, classified, or export-controlled information. All items are obtained from public sources or are published with permission of private contributors, and may be freely circulated without further permission, provided attribution is given to "*The Export/Import Daily Bugle* of (date)". Any further use of contributors' material, however, must comply with applicable copyright laws.  If you would to submit material for inclusion in the *The Export/Import Daily Update ("Daily Bugle")*, please find instructions here.

* CAVEAT: The contents of this newsletter cannot be relied upon as legal or expert advice.  Consult your own legal counsel or compliance specialists before taking actions based upon news items or opinions from this or other unofficial sources.  If any U.S. federal tax issue is discussed in this communication, it was not intended or written by the author or sender for tax or legal advice, and cannot be used for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending to another party any transaction or tax-related matter.

* SUBSCRIPTIONS: Subscriptions are free.  Subscribe by completing the request form on the Full Circle Compliance website.

* BACK ISSUES: An archive of Daily Bugle publications from 2005 to present is available HERE.

* TO UNSUBSCRIBE: Use the Safe Unsubscribe link below.

back to top

Stay Connected



WASHSTATEC001420

The Daily Bugle |  www.FullCircleCompliance.us

Copyright © 2019. All Rights Reserved.

FCC Advisory B.V., Landgoed Groenhoven, Dorpsstraat 6, Bruchem, 5314
AE Netherlands

SafeUnsubscribe™ fosterja2@state.gov

Forward this email | Update Profile | About our service provider

Sent by jebartlett@fullcirclecompliance.eu

WASHSTATEC001421

Message

| | |
|---|---|
| **From:** | Jim Bartlett, Full Circle Compliance [jebartlett@fullcirclecompliance.eu] |
| **Sent:** | 2/11/2019 10:57:12 PM |
| **To:** | hartrl@state.gov |
| **Subject:** | 19-0211 Monday "Daily Bugle" |

## Monday, 11 February 2019

The Daily Bugle is a free daily newsletter from Full Circle Compliance, containing changes to export/import regulations (ATF, DOE/NRC, Customs, NISPOM, EAR, FACR/OFAC, FAR/DFARS. FTR/AES, HTSUS, and ITAR), plus news and events.  Subscribe here for free subscription.  Contact us for advertising inquiries and rates.

### ITEMS FROM FEDERAL REGISTER

1. Commerce Seeks Comments Concerning Procedures Related to Section 232 National Security Adjustments of Imports of Steel and Aluminum
2. DHS/CBP Announces COAC Meeting on 27 Feb in Washington DC
3. Treasury Lists Countries Requiring Cooperation with an International Boycott

### OTHER GOVERNMENT SOURCES

4. Items Scheduled for Publication in Future Federal Register Editions
5. Commerce/BIS: (No new postings.)
6. DHS/CBP Releases Notice Concerning Filing PRE-TFTEA (CORE) and TFTEA Drawback Claims with Section 301 and/or 201 Duties
7. DHS/CBP Releases Notice Concerning Submitting Imports of Products Excluded from Section 301 Duties
8. State/DDTC: (No new postings.)
9. Treasury/OFAC Issues Venezuela-related General Licenses, Amends FAQs
10. Singapore Customs Updates of Interest

### NEWS

11. Defense News: "French Air Force Chief: France And Germany Working on Export Controls for Future Fighter"
12. NBC News: "New Trump Rules Make it Easier for U.S. Gun Makers to Sell Overseas"
13. Radio Free Europe: "German Tech Firm's Turkmen Ties Trigger Surveillance Concerns"

14. ST&R Trade Report: "Export, FTZ, Other Violations See Increased Civil Penalty Amounts"
15. The Washington Times: "3D-Printed Gun Blueprint Website Owner Sues New Jersey Attorney General in Free Speech Challenge"

## COMMENTARY

16. B. Adkins, U. Johnston & S. Giles: "UK Publishes No Deal Export License for Dual-Use Products"
17. J.E. Smith, J.P. Carlin & N.J. Spiliotes: "OFAC Has Been Talking About Compliance Through Enforcement" (Part I of II)

## EX/IM MOVERS & SHAKERS

18. Monday List of Ex/Im Job Openings: 161 Openings Posted This Week, Including 22 New Openings

## EX/IM TRAINING EVENTS & CONFERENCES

19. ECS Presents "Managing ITAR/EAR Complexities" on 26-27 Mar in Scottsdale, AZ
20. Madison Int'l Trade Assn Meeting Tomorrow in Madison, WI, is Canceled
21. FCC Presents U.S. Export Controls Awareness Course: "ITAR & EAR from a non-U.S. Perspective", 9 April in Bruchem, the Netherlands

## EDITOR'S NOTES

21. Bartlett's Unfamiliar Quotations
22. Are Your Copies of Regulations Up to Date? Latest Amendments: DHS/Customs (14 Jan 2019), DOC/EAR (20 Dec 2018), DOC/FTR (24 Apr 2018), DOD/NISPOM (18 May 2016), DOE/AFAEC (23 Feb 2015), DOE/EINEM (20 Nov 2018), DOJ/ATF (26 Dec 2018), DOS/ITAR (4 Oct 2018), DOT/FACR/OFAC (15 Nov 2018), HTSUS (1 Jan 2019)
23. Weekly Highlights of the Daily Bugle Top Stories

ITEMS FROM TODAY'S FEDERAL REGISTER

# 1. Commerce Seeks Comments Concerning Procedures Related to Section 232 National Security Adjustments of Imports of Steel and Aluminum

(Source: Federal Register, 11 Feb 2019.) [Excerpts.]

84 FR 3142-3143: Submission for OMB Review; Comment Request

The Department of Commerce will submit to the Office of Management and Budget (OMB) for clearance the following proposal for collection of information under the provisions of the Paperwork Reduction Act.

- Agency: Bureau of Industry and Security.
- Title: Procedures for Submitting Rebuttals and Surrebuttals Requests for Exclusions from and Objections to the Section 232 National Security Adjustments of Imports of Steel and Aluminum.
- Form Number(s): 0694-0141.
- OMB Control Number: 0694-0141.
- Type of Review: Regular submission. ...
- Needs and Uses: On September 11, 2018, Bureau of Industry and Security (BIS) published a second interim final rule, Revisions to the Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel into the United States and Adjusting Imports of Aluminum into the United States; and the filing of Objections to Submitted Exclusion Requests for Steel and Aluminum. This second interim final rule that was published by BIS, on behalf of the Secretary, made changes to the two supplements added in the March 19 rule: Supplement No. 1 to Part 705 -- Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Articles into the United States; and to Supplement No. 2 to Part 705 -- Requirements for Submissions Requesting Exclusions from the Remedies Instituted in Presidential Proclamation 9704 of March 8, 2018 to Adjusting Imports of Aluminum into the United States.

This collection of information gives U.S. Companies the opportunity to submit rebuttals to objections received on posted exclusion requests and also allows U.S. companies the opportunity to submit surrebuttals for objections they submitted that receive rebuttals under the Section 232 exclusion process. ...
This information collection request may be viewed at reginfo.gov, http://www.reginfo.gov/public/. Follow the instructions to view Department of Commerce collections currently under review by OMB.
Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to OIRA_Submission@omb.eop.gov.

Sheleen Dumas,Departmental Lead PRA Officer, Office of the Chief Information Officer, Commerce Department.

WASHSTATEC001424

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 2. DHS/CBP Announces COAC Meeting on 27 Feb in Washington DC

(Source: Federal Register, 11 Feb 2019.) [Excerpts.]

84 FR 3217-3218: Commercial Customs Operations Advisory Committee

* AGENCY: U.S. Customs and Border Protection (CBP), Department of Homeland Security (DHS).
* ACTION: Committee Management; Notice of Federal Advisory Committee Meeting.
* SUMMARY: The Commercial Customs Operations Advisory Committee (COAC) will hold its quarterly meeting on Wednesday, February 27, 2019, in Washington, DC. The meeting will be open to the public.
* DATES: The COAC will meet on Wednesday, February 27, 2019, from 1:00 p.m. to 5:00 p.m. EST. Please note that the meeting may close early if the committee has completed its business.
* ADDRESSES: The meeting will be held at the Ronald Reagan Building and International Trade Center, 1300 Pennsylvania Avenue NW, Horizon Ballroom, Washington, DC 20004. For information on facilities or services for individuals with disabilities or to request special assistance at the meeting, contact Ms. Florence Constant-Gibson, Office of Trade Relations, U.S. Customs & Border Protection, at (202) 344-1440 as soon as possible.
  - Pre-Registration: Meeting participants may attend either in person or via webinar after pre-registering using one of the methods indicated below:
  For members of the public who plan to attend the meeting in person, please register by 5:00 p.m. EST February 26, 2019, either online here by email to tradeevents@dhs.gov; or by fax to (202) 325-4290. You must register prior to the meeting in order to attend the meeting in person.
  For members of the public who plan to participate via webinar, please register online here by 5:00 p.m. EST on February 26, 2019.
  Please feel free to share this information with other interested members of your organization or association.
  Members of the public who are pre-registered to attend via webinar and later need to cancel, please do so by February 26, 2019, utilizing the following links: here to cancel an in person registration; or here to cancel a webinar registration.
  To facilitate public participation, we are inviting public comment on the issues the committee will consider prior to the formulation of recommendations as listed in the Agenda section below.
  Comments must be submitted in writing no later than February 26, 2019, and must be identified by Docket No. USCBP-2019-0005, and may be submitted by one (1) of the following methods:
  - Federal eRulemaking Portal: http://www.regulations.gov. Follow the instructions for submitting comments.
  - Email: tradeevents@dhs.gov. Include the docket number in the subject line of the message.

WASHSTATEC001425

- Fax: (202) 325-4290, Attention Florence Constant-Gibson.
- Mail: Ms. Florence Constant-Gibson, Office of Trade Relations, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue NW, Room 3.5A, Washington, DC 20229.
- Instructions: All submissions received must include the words "Department of Homeland Security" and the docket number (USCBP-2019-0005) for this action. Comments received will be posted without alteration at http://www.regulations.gov. Please do not submit personal information to this docket.
- Docket: For access to the docket or to read background documents or comments, go to http://www.regulations.gov and search for Docket Number USCBP-2019-0005. To submit a comment, click the "Comment Now!" button located on the top-right hand side of the docket page.
- There will be multiple public comment periods held during the meeting on February 27, 2019. Speakers are requested to limit their comments to two (2) minutes or less to facilitate greater participation. Contact the individual listed below to register as a speaker. Please note that the public comment period for speakers may end before the time indicated on the schedule that is posted on the CBP web CBP web page.
* FOR FURTHER INFORMATION CONTACT: Ms. Florence Constant-Gibson, Office of Trade Relations, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue NW, Room 3.5A, Washington, DC 20229; telephone (202) 344-1440; facsimile (202) 325-4290; or Mr. Bradley Hayes, Executive Director and Designated Federal Officer at (202) 344-1440.
* SUPPLEMENTARY INFORMATION: ... The Commercial Customs Operations Advisory Committee (COAC) provides advice to the Secretary of Homeland Security, the Secretary of the Treasury, and the Commissioner of U.S. Customs and Border Protection (CBP) on matters pertaining to the commercial operations of CBP and related functions within the Department of Homeland Security and the Department of the Treasury.

*Agenda*

The COAC will hear from the current subcommittees on the topics listed below and then will review, deliberate, provide observations, and formulate recommendations on how to proceed:
 1. The Secure Trade Lanes Subcommittee will present plans for the scope and activities of the Trusted Trader and CTPAT Minimum Security Criteria Working Groups. Recommendations will be presented regarding the proposed Forced Labor Trusted Trader Strategy. The subcommittee will also deliver recommendations from the Petroleum Pipeline Working Group for CBP to develop and codify uniform reporting procedures for pipeline carriers as well as entry and bonding procedures for importers. The subcommittee will also deliver recommendations from the In-Bond Working Group regarding potential automation and process enhancements.
 2. The Intelligent Enforcement Subcommittee will provide necessary updates from the Anti-Dumping and Countervailing Duty, Bond, and Forced Labor Working Groups and recommendations from Intellectual Property Rights Working Group.
 3. The Next Generation Facilitation Subcommittee will discuss the E-Commerce Working Group's progress on mapping the supply chains of

WASHSTATEC001426

various modes of transportation to identify the differences between e-commerce and traditional channels to address CBP's strategic plan regarding e-commerce threats and opportunities for both the government and trade. The subcommittee will also provide an update on the status of the Emerging Technologies Working Group's NAFTA/CAFTA and Intellectual Property Rights Blockchain Proof of Concept Projects. Finally, the subcommittee will provide recommendations from the Regulatory Reform Working Group upon completing its review of Title 19 of the Code of Federal Regulations to identify regulations for potential repeal or modification to eliminate or reduce costs and burdens for U.S. businesses.

Meeting materials will be available by February 25, 2019 here.

Dated: February 6, 2019.
Bradley F. Hayes, Executive Director, Office of Trade Relations.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 3. Treasury Lists Countries Requiring Cooperation with an International Boycott
(Source: Federal Register, 6 Feb 2019.)

84 FR 2337: List of Countries Requiring Cooperation with an International Boycott

In accordance with section 999(a)(3) of the Internal Revenue Code of 1986, the Department of the Treasury is publishing a current list of countries which require or may require participation in, or cooperation with, an international boycott (within the meaning of section 999(b)(3) of the Internal Revenue Code of 1986).

On the basis of the best information currently available to the Department of the Treasury, the following countries require or may require participation in, or cooperation with, an international boycott (within the meaning of section 999(b)(3) of the Internal Revenue Code of 1986).

- Iraq
- Kuwait
- Lebanon
- Libya
- Qatar
- Saudi Arabia
- Syria
- United Arab Emirates Yemen

Dated: December 31, 2018.
Douglas Poms, International Tax Counsel, (Tax Policy).

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## OTHER GOVERNMENT SOURCES

## 4. Items Scheduled for Publication in Future Federal Register Editions
(Source: Federal Register)

* DHS/CBP; NOTICES; Meetings: 21st Century Customs Framework; Change of Location [Pub. Date: 12 Feb 2019.]

* Justice/ATF; NOTICES; Agency Information Collection Activities; Proposals, Submissions, and Approvals: Voluntary Magazine Questionnaire for Agencies/Entities Who Store Explosive Materials [Pub. Date: 12 Feb 2019.]

* State; NOTICES; Agency Information Collection Activities; Proposals, Submissions, and Approvals:
  - Annual Brokering Report;
  - Brokering Prior Approval; and
  - United States Munitions List, Categories I, II and III [Pub. Dates: 12 Feb 2019.]

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 5. Commerce/BIS: (No new postings.)
(Source: Commerce/BIS)

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 6.
## DHS/CBP Releases Notice Concerning Filing PRE-TFTEA (CORE) and TFTEA Drawback Claims with Section 301 and/or 201 Duties
(Source: CSMS# 19-000050, 8 Feb 2019.)

* GUIDANCE: Effective immediately, drawback filers can submit claims related to Section 301 and/or 201 duties. Filers will no longer receive error messages related to unit of measure (UOM) when transmitting drawback claims for Section 301 and/or 201 duties. Previously, filers received a UOM mismatch error because the underlying import did not have a UOM associated to a Chapter 99 HTSUS. If the filer left the UOM blank, they received an additional error message because the UOM is a mandatory data element field.
* FILING REQUIREMENTS: Filers are required to provide the Chapter 99

HTSUS tariff number related to Section 301 and/or 201 duties, and the associated Chapter 1 to 97 HTSUS tariff number on ALL claims.

If any drawback claim subject to Section 301 and/or 201 duties was previously filed and accepted in ACE, the filers are required to "perfect" the claim. To "perfect" a claim, filers must contact their Drawback Specialist and request the claim be returned to trade control. The filers are then required to list both HTSUS tariff numbers (as described above) on their claims and resubmit to CBP within 5 business days.

* SUBSTITUTION AND NAFTA DRAWBACK CLAIM GUIDANCE: This guidance applies to both Section 301 and 201 duties. Goods subject to Section 232 are ineligible for refund of 232 duties, per Presidential Proclamation 9739 and 9740.

- Pre-TFTEA Substitution Claims: 301/201 duties are refundable, in full, on pre-TFTEA substitution claims.

- TFTEA Substitution Claims: 301/201 duties are refundable on TFTEA substitution claims, even if subject to the TFTEA lesser of [value] rule. If subject to the TFTEA lesser of [value] rule, the amount will be limited by the value of the substituted merchandise when it is lower than the value of the imported merchandise.

- NAFTA Claims (pre and post TFTEA): 301/201 duties may be refundable on NAFTA claims subject to the lesser of [duty] rule, but only when the total amount of Canadian/Mexican duties paid is higher than the total amount of duties paid in the United States. The amount of 301/201 duties refunded under the NAFTA lesser of [duty] rule will be limited by the total amount of duties paid on the merchandise imported into Canada/Mexico.

* 19 U.S.C 1313(p) CLAIMS: Due to a pending technical fix, please do not file any 19 U.S.C. 1313(p) claims with the subject duties at this time. Future guidance will be sent once this issue has been resolved. If you have a 1313(p) claim on file with Section 301 and/or 201 duties, please do not request to "perfect" this claim until further guidance has been received.

* RESOURCES: The list of impacted tariff classifications for Section 301 are found at the following links: Section 301 Trade Remedies to be Assessed on Certain Products from China, Section 301 HTSUS Reference Guide, 83 FR 28710, 83 FR 40823, 83 FR 47974, 83 FR 65198.

For more information regarding Section 201 duties, please reference the following link: here

Contact your Client Representative for assistance with technical questions regarding the input of the required tariff numbers.

Direct questions regarding this update to OTDRAWBACK@cbp.dhs.gov.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### 7. DHS/CBP Releases Notice Concerning Submitting Imports of Products Excluded from Section 301 Duties
(Source: CSMS# 19-000052, 8 Feb 2019.)

* BACKGROUND: On December 28, 2018, the U.S. Trade Representative

WASHSTATEC001429

published a Federal Register Notice (83 FR 67463) announcing the decision to grant certain exclusion requests from the 25 percent duty assessed under the Section 301 investigation related to goods from China (Tranche 1). The product exclusions announced in this notice will be retroactive as of the July 6, 2018 effective date (see 83 FR 28710). The exclusions will extend for one year after the December 28, 2018 Federal Register notice (83 FR 67463).

The exclusions are available for any product that meets the description in the Annex to 83 FR 67463, regardless of whether the importer filed an exclusion request. Further, the scope of each exclusion is governed by the scope of the 10-digit headings and product descriptions in the Annex to 83 FR 67463, and not by the product descriptions set out in any particular request for exclusion.

The functionality for the acceptance of products excluded from Section 301 duties will be available in the Automated Commercial Environment (ACE) on February 10, 2019.

* INSTRUCTIONS FOR FILING ENTRIES SUBJECT TO PRODUCT EXCLUSIONS: Instructions on submitting entries to CBP containing products granted exclusions by USTR from the Section 301 measures are as follows:

In addition to reporting the regular Chapters 84, 85 & 90 classification of the Harmonized Tariff Schedule of the United States (HTSUS) for the imported merchandise, importers shall report the HTSUS classification 9903.88.05 (Articles the product of China, as provided for in U.S. note 20(h) to this subchapter, each covered by an exclusion granted by the U.S. Trade Representative) for imported merchandise subject to the exclusion.

Do not submit the corresponding Chapter 99 HTS number for the Section 301 duties when HTS 9903.88.05 is submitted.

* ADDITIONAL INFORMATION: Duty exclusions granted by USTR are retroactive on imports to the initial effective date of July 6, 2018. To request an administrative refund for previous imports of duty-excluded products granted by USTR, importers may file a Post Summary Correction (PSC) following the same entry filing instructions above.

If the entry has already liquidated, importers may protest the liquidation.

Reminder: When submitting an entry summary in which a heading or subheading in Chapter 99 is claimed on imported merchandise, please refer to CSMS 18-000657 (Entry Summary Order of Reporting for Multiple HTS in ACE).

Imports which have been granted a product exclusion from the Section 301 measures, and which are not subject to the Section 301 duties, are not covered by the FTZ provisions of the Section 301 Federal Register notices, but instead are subject to the FTZ provisions in 19 CFR part 146.

For more information, please refer to the December 28, 2018 Federal Register notice (83 FR 67463).

Questions from the importing community concerning ACE entry rejections involving product exclusion numbers should be referred to their CBP Client Representative. Questions related to Section 301 entry filing requirements should be emailed to Traderemedy@cbp.dhs.gov.

- Related CSMS No. 18-000757, 18-000752, 18-000624

back to top

* * * * * * * * * * * * * * * * * * *



8. State/DDTC: (No new postings.)
(Source: State/DDTC)

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

9. Treasury/OFAC Issues Venezuela-related General Licenses, Amends FAQs
(Source: Treasury/OFAC, 11 Feb 2019.)

The Department of the Treasury's Office of Foreign Assets Control (OFAC) is issuing General License 3C, "Authorizing Transactions Related to, Provisions of Financing for, and Other Dealings in Certain Bonds," and General License 9B, "Authorizing Transactions Related to Dealings in Certain Securities."  Additionally, OFAC is revising Frequently Asked Questions (FAQs) 650, 661, and 662.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

10. Singapore Customs Updates of Interest
(Source: Singapore Customs, 8 Feb 2019.)

Singapore Customs has released the following document(s) on its website:

\* Changes to the prohibition of imports, exports, transshipments and goods in transit to and from South Sudan and Eritrea (Circular No: 02/2019)

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

–

NEWS

11. Defense News: "French Air Force Chief: France And Germany Working on Export Controls for Future Fighter"
(Source: Defense News, 9 Feb 2019.)

The French Air Force chief of staff provided top cover for the future Franco-German fighter at a time when the French defense industry is increasingly concerned that cooperation with Germany could curtail its ability to export the system.

"There is a real determination" at the highest levels of government - including French President Emmanuel Macron and German Chancellor Angela Merkel - to agree on export controls, said Gen. Philippe Lavigne during a Feb. 7 roundtable with reporters.

"It's a need for our security, but it's also a need for our industry, and we have to develop this," he said, adding that Spain has already signed on as an observer to the program and that others are expected to follow.

The French government is generally seen as more supportive of arms sales than its partner in the sixth-generation fighter program, called the Future Combat Air System, or FCAS. While enthusiasm for the program remains high, some French defense industry officials are concerned that Germany's involvement could prevent sales to countries that Berlin considers rogue actors.

But settling an export policy is just one of the many questions about the FCAS program that are still yet to be answered.

So far, France and Germany's concept for FCAS involves a network of swarming UAVs, new weapons and a sixth-generation fighter that can exchange information with each other. FCAS would replace France's Rafale and Germany's Eurofighter around 2040.

"We haven't decided what will be the architecture," Lavigne said. "Will it be this type of aircraft? Will it be this type of [UAV]? Will it be this type of unmanned combat air vehicle? Will it be this type of missiles? But we know that we will share an architecture.

"The gamechanger is the connectivity between different platforms."

Earlier this week, the French and German governments awarded €65 million (U.S. $74 million) to Dassault and Airbus for the two-year study that will solidify a path forward for FCAS, and the companies plan to announce demonstrator programs at the Paris Air Show this summer.

Lavigne wasn't clear on how the governments would reconcile different requirements, like France's intention to launch FCAS from aircraft carriers, which could drive different design attributes than a fighter that takes off and lands conventionally.

"Of course we will have national interests in France with the nuclear deterrence. Germany will have different national interests," he said. However, he stopped short of saying how much commonality is expected between the two militaries.

Until the study is complete, it is "too early to say" whether FCAS will be manned or unmanned. However, Lavigne said a human will continue to be in the loop - especially for nuclear deterrence missions - whether a human is in the cockpit or it is remotely piloted.

WASHSTATEC001432

"We are open to look at the technical solution," he said. "For me, it's optionally piloted."

FCAS' system-of-systems approach is similar to the U.S. Air Force's vision for Penetrating Counter Air, its future air superiority concept. The Air Force hasn't shared which defense companies are involved in conceptualizing or prototyping future technologies that could be pulled into a PCA program of record, but it requested $504 million in fiscal 2019 to push the effort forward, with investments projected to hit $3 billion in FY22.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 12. NBC News: "New Trump Rules Make it Easier for U.S. Gun Makers to Sell Overseas"
(Source: NBC News, 7 Feb 2019.) [Excerpts.]

Manufacturers will no longer need State Department licenses to export dozens of weapons.

Semi-automatic weapons, flamethrowers, and even some grenades will become easier for U.S. weapons manufacturers to export overseas under new rules being put in place by the Trump administration and obtained by NBC News.

Under the new rules, set to take effect in just under a month, gun-makers will no longer need licenses from the Department of State to sell dozens of types of weapons to other countries, including semi-automatic assault weapons such as the AR-15 that has been employed in many of America's worst mass shootings. Instead, sellers will need only a no-fee license from the Department of Commerce, which has a less onerous licensing process and a smaller global footprint, making it harder to track how the weapons are ultimately used overseas. ...

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 13. Radio Free Europe: "German Tech Firm's Turkmen Ties Trigger Surveillance Concerns"
(Source: Radio Free Europe, 8 Feb 2019.) [Excerpts.]

One year ago this month, Turkmenistan's state news agency reported on a meeting between the country's authoritarian president and a visiting executive from a German electronics firm that supplies surveillance and encryption technology to governments and militaries.

Hartmut Jaeschke of the Munich-based Rohde & Schwarz, according to the report, told President Gurbanguly Berdymukhammedov during the talks that the company sought "to gain a stronger foothold" in Turkmenistan, whose

WASHSTATEC001433

government is consistently ranked among the world's most repressive.

Jaeschke's visit caught the eye of Human Rights Watch (HRW), which said it had been told by a knowledgeable source that Turkmen authorities were seeking "technology for monitoring and blocking mobile and satellite communications, which would also enable the government to block Internet access." ...

The issue of spyware deliveries to authoritarian regimes has prompted proposed legislation in the European Parliament. The legislation aims to tighten export controls to prevent "the abuse of certain cyber-surveillance technologies by regimes with a questionable human rights record." ...

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 14. ST&R Trade Report: "Export, FTZ, Other Violations See Increased Civil Penalty Amounts"
(Source: Sandler, Travis & Rosenberg Trade Report, 11 Feb 2019.)

The Department of Commerce is increasing for inflation the civil monetary penalty amounts that may be assessed for the following regulatory violations after March 1, including when the associated violation occurred before that date. However, the DOC notes that the actual penalty assessed for a particular violation will be dependent on a variety of factors.

 * false or fraudulent claims under the Program Fraud Civil Remedies Act (31 USC 3802(a)(1) and (2)) - maximum increased from $ $11,181 to $11,463
 * knowing use of false record or statement material to an obligation to pay or transmit money or property to the federal government (31 USC 3729(a)(1)(G)) - minimum increased from $11,181 to $11,463, maximum increased from $22,363 to $22,927
 * Fastener Quality Act violations (15 USC 5408(b)(1)): maximum increased from $46,192 to $47,357
 * prohibited acts relating to inspections or record-keeping violations under the Chemical Weapons Convention Implementation Act (22 USC 6761(a)(1)(A) and (B)) - maximums increased from $37,601 to $38,549 and from $7,530 to $7,710, respectively
 * violations of the International Emergency Economic Powers Act (50 USC 1705(b)) - maximum increased from $295,141 to $302,584
 * violation of Export Controls Act of 2018 (50 USC 4819) - maximum of $300,000 (new penalty)
 * failure to file export information or reports required by 13 USC 304 within prescribed period - maximum for each day's delinquency increased from $1,360 to $1,394, maximum per violation increased from $13,605 to $13,948
 * other unlawful export information activities under 13 USC 305 - maximum increased from $13,605 to $13,948

WASHSTATEC001434

* failure to furnish any information required under 22 USC Chapter 46 (international investment and trade in services survey) - minimum increased from $4,619 to $4,735, maximum increased from $46,192 to $47,357
* foreign-trade zone violations (19 USC 81s): maximum increased from $2,852 to $2,924

back to top

* * * * * * * * * * * * * * * * * *

## 15. The Washington Times: "3D-Printed Gun Blueprint Website Owner Sues New Jersey Attorney General in Free Speech Challenge"
(Source: The Washington Times, 10 Feb 2019.) [Excerpts.]

The man behind a website devoted to sharing online blueprints for 3D-printed gun is suing the attorney general of New Jersey, after being alerted that the activity was violating a new gun control law.

The lawsuit is the latest salvo in the fight to publish the plans online and challenges a law signed late last year that gun-rights advocates say criminalizes their free speech rights to post the blueprints.

"Whatever their claimed motive or agenda is, we know that their actual agenda is the disarmament of the people of New Jersey," said Brandon Combs, president of the Firearms Policy Coalition. "And if they have to infringe speech rights in order to red-line the right to keep and bear arms in their state, I think that they're willing to do whatever it takes to do that."

back to top

* * * * * * * * * * * * * * * * * *

## COMMENTARY

## 16. B. Adkins, U. Johnston & S. Giles: "UK Publishes No-Deal Export License for Dual-Use Products"
(Source: Gowling WLG, 7 Feb 2019.)

The UK's export licensing authority has published a new Open General Export License for the export of dual use goods to the EU which will come into force on 29 March 2019 in event of a no deal Brexit.

WASHSTATEC001435

UK businesses that hold an existing OGEL and businesses that will require an OGEL after Brexit (i.e. because they are currently exporting dual use goods into the EU) can register now for the new OGEL.

On 1 February 2019, the Export Control Joint Unit (("ECJU") - the UK's export licensing authority - published a new Open General Export License ("OGEL") for the export of dual use goods to the EU. The OGEL is intended to come into force at 11pm, 29 March in the event that there is no Brexit deal.

**"Nothing has changed"?**

The OGEL follows the guidance on the export of controlled goods if there is no Brexit deal that was first issued by the Department for International Trade in August. Council Regulation (EC) 428/2009, currently governs the scope of export authorizations (among other things) for dual use goods across the EU, including the UK. This Regulation will be preserved as applying in UK law, as part of the new species of 'Retained EU Law' created by the EU (Withdrawal) Act 2018). As such, the UK's post-Brexit export controls regime will, in the short-term, continue to follow the EU framework.

However, the retention of the EU framework will not prevent a change in the way UK exporters operate. This is because the transfer of goods to the EU from the UK will become an 'export' post-Brexit, triggering the need for export licenses in relation to controlled goods. Exporters of dual use goods - that is, goods that may have both a military and non-military application - will therefore require authorization in order to export goods into the EU, as well as to the rest of the world.

More importantly, OGELs for the export of dual use goods from the EU will cease to cover the UK in a no deal Brexit. Consequently, exporters will need to obtain a new authorization from either the UK authorities (if they are exporting from the UK) or the relevant EU Member State (if they are exporting from the EU to the UK).

**What if there is a deal?**

The Withdrawal Agreement, agreed by the Prime Minister and the EU in November 2018, commits the UK and EU to an 'implementation period' whereby the UK would in effect be treated as an EU member for the purposes of the EU export control regime until 31 December 2020. The relationship between the UK and EU export control regimes after the end of the implementation period is not addressed in the political declaration on the future UK-EU trading relationship. This means there is still uncertainty as to the mutual recognition or otherwise of OGELs from 1 January 2021.

It is still uncertain whether the Withdrawal Agreement will be ratified by the UK Parliament. The publication of the OGEL provides some certainty to business as to the process for exporting dual-use goods from 29 March in the event that the Withdrawal Agreement is not ratified.

**What should business do now?**

UK businesses that hold an existing OGEL and businesses that will require an OGEL after Brexit (i.e. because they are currently exporting dual use goods into the EU) are able to register to use the new OGEL before it comes into force.

Registration is possible via SPIRE, the ECJU's licensing system. As part of the application process, businesses will need to confirm to the ECJU where records of exports will be retained between now and Brexit day.

_back to top_

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

17.
## J.E. Smith, J.P. Carlin & N.J. Spiliotes: "OFAC Has Been Talking About Compliance Through Enforcement" (Part I of II)
(Source: Morrison Foerster, 5 Feb 2019.)

\* Authors: John E. Smith, Esq., johnsmith@mofo.com; John P. Carlin, Esq., jcarlin@mofo.com; and Nicholas J. Spiliotes, Esq., nspiliotes@mofo.com. All of Morrison Foerster.

_Have You Been Listening?_

Last Thursday, January 31, the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) issued its first enforcement action of 2019, a fascinating case involving _false eyelashes_ that teaches that virtually any company in any industry selling any product can find itself in OFAC's cross-hairs (pun intended). This year also marks a decade since OFAC published its tried-and-true Enforcement Guidelines, which outline the agency's standard operating procedure for reviewing and enforcing violations of U.S. economic sanctions.

Last week's case involving e.l.f. Cosmetics, like another half dozen OFAC enforcement cases resolved over the past several months, serves as yet another indication that OFAC has, with relatively little fanfare, embarked upon one of the most sweeping elaborations of its enforcement policy since its Enforcement Guidelines were published a decade ago. Few have paid attention to the lessons from these recent cases. You should.

In fact, you might be forgiven if you believed that OFAC's enforcement of economic sanctions had waned during the early years of the Trump Administration, because various media reported the nadir of sanctions enforcement last year with one only case finalized in the first half of 2018 and only seven published all year, the lowest number in more than a decade. The penalties and settlement amounts per enforcement case last year

WASHSTATEC001437

ranged from $88,000 to $54 million, totaling nearly $72 million for all of 2018.

After a lull in issuing final enforcement actions for much of the first three-quarters of last year, however, OFAC began pumping them out again last fall, but the new cases have differed from the old. Over the past several months, OFAC's enforcement cases have offered far more detail of the agency's expectations regarding sanctions compliance than ever before, expanding upon the agency's informal mantra of "better compliance through enforcement."

In a December 2018 speech to the American Bankers Association/American Bar Association Financial Crimes Enforcement Conference, Treasury Under Secretary Sigal Mandelker formally announced the changes - which began last fall - noting that, "To aid the compliance community in strengthening defenses against sanctions violations, OFAC will be outlining the hallmarks of an effective sanctions compliance program. . . . Going forward, these types of compliance commitments will become an essential element in settlement agreements between OFAC and apparent violators."

So, without further ado, here are the Top 20 lessons recent OFAC cases - including all those issued last year - have been trying to teach you:

**1. If you are a U.S. company, beware your touchpoints to the global economy, particularly when involved in high-risk industries or high-risk jurisdictions.** You may be exposed to sanctions risk because of, for example, your (A) **international financial transactions**, (B) **overseas subsidiaries or employees**, (C) **supply chains**, and (D) **distribution chains**. Recent OFAC cases have touched upon each of these risks:

  - **International Financial Transaction Risk**. The twin JP Morgan cases from October demonstrate the continued risks to U.S. financial institutions and companies emanating from global financial transactions. The first of the two cases involved the bank's operation of a net settlement mechanism that resolved billings among global airlines and other airline participants, some of which involved sanctioned entities. The second of the two involved the bank's delay in remedying a historic deficiency in its screening software that failed to identify customer names with hyphens, initials, or additional middle or last names as potential matches to similar names on the OFAC List of Specially Designated Nationals and Blocked Persons ("SDN List").
  - **Overseas Subsidiaries or Employees Risk.** In the Zoltek case from December, OFAC took action against a Missouri company that reviewed and approved its Hungarian subsidiary's purchase of chemicals from a subsidiary of a designated Belarusian entity. OFAC noted that the "enforcement action highlights the risks for companies with overseas operations that do not implement OFAC compliance programs or that implement compliance programs that fail to address the sanctions regulations administered by OFAC."
  - **Supply Chain Risk.** The e.l.f. Cosmetics case issued last week involved a California company that imported false eyelash kits from Chinese suppliers

WASHSTATEC001438

that contained materials from North Korea. OFAC noted that the company "appears not to have exercised sufficient supply chain due diligence while sourcing products from a region that poses a high risk to the effectiveness of the NKSR [North Korea Sanctions Regulations]." Don't be complacent, however, if you source materials far closer to home; manufacturers have occasionally found themselves importing items such as cobalt or nickel from Canada and then belatedly realizing that the material originally may have been sourced from Cuba.

  - **Distribution Chain Risk.** In the Cobham case from November, a U.S. company's subsidiary - a global provider of technology and services in aviation, electronics, communications, and defense - sold several parts through distributors in Canada and Russia to an entity 51 percent owned by a Russian entity on the SDN List, making the subsidiary entity automatically sanctioned under OFAC's 50 Percent Rule. The SDN and its Russian subsidiary both contained the similar names "Almaz Antey," but the U.S. company used a third-party screening software that required "an all word match criteria that would only return matches containing all of the searched words." Similarly, in the Epsilon action settled in September, OFAC acted against a U.S. company that exported its products to a Dubai company, with knowledge or reason to know that company distributed most, if not all, of its products to Iran.

**2. If you are not a U.S. company, beware your touchpoints to the United States - including use of** (A) **the U.S. financial system,** (B) **U.S. persons, or** (C) **U.S.-origin goods and services - for transactions that may violate U.S. sanctions.** Recent OFAC cases have dealt with a few of these risks.

  - **Use of the U.S. Financial System.** The Société Générale case from November marked the latest in a long line of OFAC enforcement actions targeting a foreign bank's "stripping" of information regarding sanctioned parties from transactions sent through U.S. banks, serving as a reminder for foreign financial institutions and companies to avoid sending non-transparent financial or other transactions through the United States that violate U.S. sanctions.

  - **U.S. Persons.** In the Ericsson case from last June, employees of Swedish and U.S. subsidiaries of a Swedish electronics company cooperated with respect to the provision of services by the Swedish subsidiary to a Sudanese entity and worked together to obtain a U.S.-origin product for shipment to a third country and then on to Sudan, in apparent violation of U.S. sanctions.

  - **U.S.-Origin Goods and Services.** In the Jereh Group case from December, OFAC and the Department of Commerce's Bureau of Industry and Security acted against a Chinese oilfield services company and its affiliated companies and subsidiaries worldwide that re-exported U.S.-origin goods to Iran by way of China, as well as exported U.S.-origin goods with knowledge they were to be used for production of, for commingling with, or for incorporation into goods made in China to be sent to Iran.

**3. If at first you don't succeed, remediate.** "Compliance commitments," to use Under Secretary Mandelker's terminology, are a key focus of recent OFAC enforcement cases. OFAC is providing far more detailed explanations

WASHSTATEC001439

in its enforcement case summaries of corporate remediation efforts constituting mitigating factors warranting penalty reductions. In all the enforcement cases issued in recent months, OFAC has listed detailed summaries of the companies' remedial **sanctions compliance commitments, many of which are detailed below and should serve as a template for OFAC's expectations regarding the sufficiency of sanctions compliance programs**.

**4. Expand and stress test compliance programs.** Under Secretary Mandelker emphasized that hallmarks of effective sanctions compliance programs include senior management commitment to compliance and "frequent risk assessments to identify and mitigate sanctions-specific risks within an institution and its products, services, and customers." Recent enforcement cases demonstrate the importance to OFAC of corporate actions that strengthen, or fail to strengthen, sanctions compliance programs. In the Zoltek case, for example, OFAC noted that the U.S. parent had expanded its Director of Global Compliance position to include sanctions as well as export/import controls. In the Jereh Group matter, OFAC credited the company for hiring "an external organization with specialized experience in U.S. economic and trade sanctions and export control laws and regulations, which conducted an internal review of the company and developed a trade and sanctions compliance program." (*Hey, we at MoFo's National Security Group are available to assist. Just sayin'.*)

**5. Money matters.** In several recent enforcement cases, OFAC specifically highlighted compliance commitments by companies to provide additional staffing and resources. For example, the Jereh Group hired full-time compliance personnel and new senior managers with compliance backgrounds. In Société Générale, the bank "increased the number of personnel within compliance staffing, and SG's total budget for sanctions compliance has also increased." Similarly, in the first of the two JP Morgan cases, OFAC noted the bank had increased its compliance staff. In Cobham, OFAC bluntly declared its expectations: "OFAC expects companies settling apparent violations of its regulations to ensure their compliance units receive adequate resources, including in the form of human capital, information technology, and other resources, as appropriate."

**6. Sound screening software is a must.** In the Zoltek case, OFAC noted that the company's new screening software would be used to screen "its vendors, and their parent and subsidiary companies," against OFAC and other government restricted lists on a daily basis. In Cobham, the company "acquired and implemented new and enhanced sanctions screening software . . . that is capable of identifying and flagging potential matches to persons with close name variations to parties identified on the SDN List." And in both of the JP Morgan cases, OFAC noted that the bank had implemented new screening software. Companies should not become complacent, however, with this tool; as Under Secretary Mandelker noted, a company's sanctions compliance "resources must go far beyond merely screening the SDN List."

WASHSTATEC001440

**7. Don't delay.** In the second of the two JP Morgan cases resolved in October, OFAC issued a finding of violation against the bank for delays in addressing known deficiencies in its screening system. As OFAC noted, "JPMC engaged in a pattern of conduct over a two-year period where the apparent violations stemmed from the same screening issue; although JPMC identified this screening issue and implemented multiple screening enhancements, it took over three years to fully address a known deficiency in the vendor-provided screening system." When technological solutions require a longer period to address, OFAC emphasizes that "compensating controls" are needed to address the risk of the known deficiencies. As OFAC summarized, "This enforcement action highlights the importance of financial institutions remediating known compliance program deficiencies in an expedient manner, and when that is not possible, the importance of implementing compensating controls to mitigate risk until a comprehensive solution can be deployed."

**8. Screen, screen, and screen again.** Cobham demonstrates the need to re-screen regularly and at all phases of a transaction. In that case, when the U.S. company's subsidiary agreed to ship parts through its distributors to Russia, and at the time of its first shipment, neither the Russian company nor its parent was sanctioned. By the time of subsequent shipments, they were.

**9. Beware the 50 Percent Rule.** Zoltek involved a U.S. company's review and approval of its overseas subsidiary's dealings with a non-designated subsidiary of a sanctioned entity. While OFAC characterized as egregious the U.S. parent's continued involvement in its subsidiary's dealings after numerous high-level conversations revealed its awareness that purchases were being made from a subsidiary of a sanctioned entity, OFAC also included the previous non-egregious dealings with the sanctioned subsidiary as part of the penalty calculation. Similarly, Cobham involved a U.S. company's sales of goods through Canadian and Russian distributors to an entity owned 51 percent by an SDN; OFAC pursued an enforcement action because of the similarity of names of the SDN parent and subsidiary. Both cases demonstrate the urgency of the need for sanctions compliance screening of entities beyond the SDN List itself. Indeed, OFAC highlighted that, as a remedial measure, "Cobham acquired and implemented a screening and business intelligence tool with the capability of identifying and flagging persons known to be owned by parties identified on the SDN List, and has developed a process for employing the business intelligence tool to conduct enhanced due diligence on high-risk transactions from an OFAC sanctions perspective, to include any transaction involving a Cobham U.S. entity and any party in either Russia or Ukraine."

*[Part II will be published in tomorrow's Daily Bugle.]*

back to top

* * * * * * * * * * * * * * * * * * * *

## EX/IM MOVERS & SHAKERS

## 18. Monday List of Ex/Im Job Openings: 161 Openings Posted This Week, Including 22 New Openings
(Source: Events & Jobs Editor)

Published every Monday or first business day of the week. Please, send job openings in the following format to jobs@fullcirclecompliance.eu.

* COMPANY; LOCATION; POSITION TITLE (WEBLINK); CONTACT INFORMATION; REQUISITION ID

     "#" New or amended listing this week

* Adient; Bratislava, Slovakia; Customs Specialist (EMEA); Requisition ID: R-02990;
* AeroVironment; Simi Valley, CA; Trade Compliance Specialist II; Requisition ID: 333;
* Agility; Basel, Switzerland; SachbearbeiterIn Ocean Freight Export;
* Agility; Charlotte, NC; Import Manager/Licensed Customs Broker;
* Agility; Dallas, TX; Ocean Export Coordinator;
* Agility; Houston, TX; Ocean Export Coordinator;
* Agility; Houston, TX; Ocean Export Team Leader;
* Airbus; Manching, Germany; Internship within Procurement Compliance, Regulations & Risks; Requisition ID: 10438469 NU EN EXT 1;
* AM General; Auburn Hills, MI; International Compliance Analyst;

WASHSTATEC001442

* Amazon EU; Luxembourg City, Luxembourg; Trade Compliance Manager; Requisition ID: 780313;
* Amazon Web Services; Seattle, WA; Trade Compliance Manager, Export Controls & Classification; Requisition ID: 787194;
* Analog Devices; Chelmsford, MA; Import-Export Analyst;
* Arconic; Pittsburgh, PA; Global Director Export Compliance, EPS Liaison;
* Arconic; Pittsburgh, PA; Global Director Import Compliance, TCS Liaison;
* Ascent Aerospace; Lake Orion and Macomb Township, MI; ITAR/EAR/Export Compliance Manager; Requisition ID: 1399;
* Arconic; Cleveland, OH; Global Trade Compliance Manager;
* Ascent Aerospace; Lake Orion and Macomb Township, MI; ITAR/EAR/Export Compliance Manager; Requisition ID: 1399;
* BAE Systems; Farnborough, United Kingdom; Counsel, Group Export Control; Requisition ID: 00058679;
* BAE Systems; Nashua, NH; Procurement Compliance; Requisition ID: 44996BR
* BAE Systems; Poznań, Poland; Export Control Officer;
* BAE Systems; Sterling Heights, MI; Senior Procurement Compliance Analyst; Requisition ID: 4BR
# * Baker Hughes; Aberdeen, United Kingdom; Trade Compliance Classification Analyst; Requisition ID: 1902478;
* Beiersdorf; Hamburg, Germany; International Trade Expert;
* Bell Flight; Fort Worth, TX; Trade Classification Specialist I; Requisition ID: 270536;
# * Boeing; Berlin and Frankfurt am Main, Germany; Trade Control Specialist m/f; Requisition ID: 1900016657;
# * Boeing; Dubai and Abu Dhabi, UAE; Senior Trade Control Specialist; Requisition ID: 1900019092;
# * Boeing; multiple locations, United States; Trade Control Specialist; Requisition ID: 1900020123;
* Boeing; Dallas, TX; Global Regulatory and Compliance Specialist 4; Requisition ID: 12795;
* Boeing; Zoushan, China;  Compliance Analyst;
* Boeing; Zoushan, China; Trade Compliance Manager;
* Bosch USA; Owatonna, MN; Import/Export Compliance Analyst;
* Bristol-Myers Squibb; New Brunswick, NJ; Director Global Customs & Trade;
* Brookhaven National Laboratory; Upton, NY; Mgr Export Control Program; Requisition ID: 1563;
# * Carnegie Mellon University; Pittsburgh, PA; Export Compliance Manager;
* CISCO; Amsterdam, The Netherlands; Global Export Trade Manager - EMEAR;

WASHSTATEC001443

* Cobham Advanced Electronic Solutions; Colorado Springs, CO; Export Compliance Manager; Requisition ID: req2102;
* ConvaTec; Flexible location, U.S.; Associate Manager, Customs & Trade; Requisition ID: JR0000536
* Danfoss; Rødekro, Denmark; Global Trade Compliance Specialist and Coordinator; Requisition ID: 14732BR;
* DB Schenker; Düsseldorf, Germany; Head of Ocean Freight Import; Requisition ID: 201811140002;
# * Defense Technology Security Administration; Alexandria, VA; Export Control Analyst; Requisition ID: DE-10413785-19-TB;
* Deloitte Belgium; Ghent, Belgium; Manager Global Trade Advisory;
* DHL; Erlanger, KY; OFAC Agent; Requisition ID: req72731;
* Doosan; West Fargo, ND; Director Customs & Trade Compliance;
* DuPont; Neu-Isenburg, Germany; Logistics Specialist Customs & Trade Compliance EMEA; Requisition ID: SOU00001629;
* EDCO; Eindhoven, the Netherlands; Customs & Trade Compliance Coordinator;
* ELTA North America; Baltimore, MD; Compliance Officer;
* ENSCO Plc; Houston, TX; Analyst II - Export & Trade Compliance; Requisition ID: 13136;
* Erickson Inc.; Portland or Central Point, OR; Import Specialist; Susan Colletto; Requisition ID 927130;
* Esri; Redlands, CA; Export Compliance Specialist;
* Expeditors; Krefeld, Germany; Clerk Import / Export;
* Expeditors; Bedfont, United Kingdom; Customs Brokerage Clerk;
* Expeditors; Frankfurt, Germany; Consultant - Customs and Trade Compliance (m/w), unbefristet und in Vollzeit
;
* Expeditors; Sunnyvale, CA, USA; Customs Compliance Coordinator;
* Expeditors; Sunnyvale, CA, USA; Customs Compliance Specialist;
* Export Compliance Solutions/ECScreening; Remote; Sales Representative
* Export Solutions, Inc.; San Jose, CA; Director of Global Trade & Compliance;
* Flexport; Amsterdam, the Netherlands; Customs Director Europe;
* Flexport; San Francisco, CA; Customs Compliance Manager;
* FLIR; Arlington, VA; Global Trade Compliance Program Analyst/Trade Projects Facilitator/Program Administrator; Requisition ID: REQ11503;
* FLIR; Arlington, VA or Billerica, MA; Senior Director, Global Export Compliance; Requisition ID: REQ11409;
* FLIR; Elkridge, MD; Global Trade Compliance, Traffic Analyst OTS;
* FLIR; Täby, Sweden; Compliance Site Operations Leader; Requisition ID: REQ11291;
* Fortive - Tektronix; Beaverton, OR; Chief Compliance Counsel;
* Fortive - HealthNewCo; Irvine, CA; Global Trade Compliance Manager;

WASHSTATEC001444

* GCP Applied Technologies; Cambridge, MA; Trade Compliance Manager;
* General Atomics; San Diego, CA; Compliance Specialist; Requisition ID: 22119BR
# * General Atomics; San Diego, CA; Trade Compliance Classification Leader; Requisition ID: 22466BR;
* General Dynamics; Falls Church, VA; Manager, Intl Trade Compliance; Requisition ID: 2018-50910;
* Google; Mountain View, CA; Trade Specialist, Export Compliance;
# * GSK; Research Triangle Park, NC; Trade Compliance COE Manager; Requisition ID: WD184670;
* GSW Manufacturing Inc; Findlay, OH; Trade Compliance Analyst;
* Henderson Group Unlimited, Inc; State Dept, DDTC; Washington, DC; Defense Trade Control Compliance Analyst;
* Henderson Group Unlimited, Inc; State Dept, DDTC; Washington, DC; Commodities Jurisdiction Analyst;
# * Honda; Marysville, OH; Senior Export Compliance Specialist; Requisition ID: HTA0000AX;
# * Honeywell; multiple locations, United States; Export Compliance Manager (North America); Requisition ID: HRD45798;
# * Honeywell; Kansas City, MO; Import/Export Compliance Leader; Requisition ID: req177780;
# * Honeywell; Prague, Czech Republic; Export Compliance Officer; Requisition ID: req179383;
* Honeywell International Inc.; Sunnyvale, CA or Lincolnshire, IL; Sr. Import/Export Analyst; HRD32371
* Infineon; El Segundo, CA; Manager, Export Control; Requisition ID: 33841
* Infineon Technologies, El Segundo, CA; Senior Export Compliance Specialist; Requisition ID: 31215;
# * Infineon Technologies; Tijuana, Mexico; Import-Export Manager;
* InteliTrac Global Solutions; Herndon, VA; ITAR Compliance Official / Deputy Facility Security Officer;
* InteliTrac Global Solutions; Herndon, VA; ITAR Compliance Official;
* IPG Photonics; Oxford, MA; Global Director Trade Compliance;
* IPG Photonics; Oxford, MA; Global Director Trade Compliance
* John Crane; Slough, United Kingdom; Senior Manager International Trade Compliance EMEA; Requisition ID: JCRANE01688;
* Johnson Controls; Milwaukee, WI; Director, Global Trade Compliance; Requisition ID: WD30055791295;
* Keeco Home; Hayward, CA; Director Customs and Compliance;
# * Kellogg's; Bucharest, Romania; Export Documents & Customs Coordinator; Requisition ID: LOG003008;
* Kohler Co; Kohler, WI; Analyst, International Trade Compliance; Requisition ID: 18105;
* Leidos; Columbia, MD; International Trade Manager / Export Compliance; Requisition ID: R-00005745;

WASHSTATEC001445

* Leonardo DRS; Melbourne, FL; Senior Supply Chain Analyst - Small Business Compliance; Requisition ID: 91669
* Lockheed Martin; Arlington, VA; International Licensing Analyst; Requisition ID: 465724BR;
# * Lockheed Martin; Arlington, VA; International Licensing Analyst; Requisition ID: 468160BR;
* Lockheed Martin; Bethesda, MD; Regulatory Compliance Analyst; Requisition ID: 449353BR
* Lockheed Martin, Grand Prairie, TX OR Orlando, FL.; International Trade Compliance Engineer Staff; Requisition ID 462509BR
* Lockheed Martin; Grand Prairie, TX; International Trade Compliance Specialist / International Licensing Analyst; Requisition ID: 469631BR
* Luminex; Austin, TX; Global Logistics & Trade Compliance Analyst - US; Requisition ID: 561
* Lutron Electronics Co; Lehigh Valley, PA; Trade Compliance Coordinator; Requisition ID: 4025;
* Meggitt; Erlanger, KY; Trade Compliance Officer; Requisition ID: 37476;
* Meggitt; San Diego, CA; Trade Compliance Officer; Requisition ID: 36402;
#* Metso; Beijing or Tianjin or Shanghai, China; Trade Compliance Manager APAC; Requisition ID: 83732;
# * Metso; Helsinki or Vantaa or Tampere, Finland; Trade Compliance Manager EMEA; Requisition ID: 83711;
* Mohawk Global Trade Advisors; Chicago, IL; Vice President and General Manager of Consulting Division; Contact: CSardella@mohawkglobal.com;
# * Moog Aircraft Group; Torrance, CA; Senior Trade Compliance Specialist; Requisition ID: 190620;
* Muscogee International, LLC; Washington, D.C.; DDTC Records Auditor; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Contract Analyst; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Service Support Desk Lead; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Service Support Desk; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support I; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support II; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support III; Apply HERE or contact their recruiting team.
* Muscogee International, LLC; Washington, D.C.; DDTC Office Support; Apply HERE or contact their recruiting team.
* Newell Brands; Norwalk, CT; Manager of Trade Operations;

* Norma Group; Maintal, Germany; Manager Global Trade Compliance and Forwarding; Requisition ID: 8843;
* Northrop Grumman; Chester, United Kingdom; International Trade Compliance (ITC) Professional;
* Northrop Grumman; London, United Kingdom; Regional Trade Compliance Manager;
* NXP Semiconductors; Eindhoven, The Netherlands; (Senior) Manager Customs Compliance; Requisition ID: R-10013630;
* Ormco; Amersfoort, The Netherlands; EU Trade Compliance Specialist;
* Palomar Products; Rancho Santa Margarita, CA; Contracts & Compliance Manager;
* Panasonic Avionics; Houston, TX; Import/Export Analyst;
* Pinpoint Pharma; Lincolnshire,IL; Export Compliance Specialist; Requisition ID: 351;
# * Polaris; Minneapolis, MN; Mgr, Export Compliance; Requisition ID: 12882BR;
* PwC; Houston, TX; Customs and International Trade Director; Requisition ID: 38150WD;
* QinetiQ; Mönchengladbach, Germany; International Trade Compliance and Logistics Manager;
* Ralph Lauren; New York, NY; Director, Trade Compliance Analyst; Requisition ID: 5567761;
* Rawlings Sporting Goods, St. Louis, MO, Trade Compliance Analyst
* Raytheon; Dulles, VA; Principal Global Trade License;
* Raytheon; Tuscon, AZ; Senior Export Licensing and Compliance Specialist; Requisition ID: 129588BR;
# * Raytheon; Tucson, AZ; Trade Compliance Empowered Official; ryan.murphy@raytheon.com; Requisition ID: 121105BR;
* Richemont; Fort Worth, TX; Import/Export Manager; Requisition ID: 8837;
* Rohde & Schwarz; Columbia, MD; Import/Export Compliance Specialist;
* Rohde Schwarz; Munich, Germany; Spezialist Exportkontrolle (m/w);
* SABIC; Houston TX; Senior Analyst, Trade Compliance; Danielle.Cannata@sabic.com; Requisition ID: 8411BR
* SC Johnson; Kuala Lumpur, Malaysia; Senior Analyst, Global Trade Compliance; Requisition ID: 1525;
* Shell; Houston, TX; Trade Compliance Manager (Projects and Technology); Requisition ID: 98302BR;
# * Shell; Krakow, Poland; Trade Compliance Manager; Requisition ID: 100384BR;
* Shell; The Hague, The Netherlands; Trade Compliance Manager - Integrated Gas/New Energies; Requisition ID: 98522BR;
* Sierra Nevada Corporation; Hurlburt Field, FL; International Trade Compliance Analyst II; Requisition ID: R0007284;

* Smith & Nephew; Hull, United Kingdom; European Trade Compliance Analyst; Requisition ID: R31311;
* Société Générale Securities Services; Munich, Germany; Sachbearbeiter Trade Compliance; Requisition ID: 1800112L;
* Symantec; Tempe, AZ; Trade Compliance Analyst; Requisition ID: 47108;
* Teledyne Technologies Inc.; Hawthorne, CA; Sr. International Trade Compliance Specialist;
* Thales; Brest, France; Export Control Manager (H/F); Requisition ID: R0052876
* TLR Inc.; Portland, OR; Export Compliance Specialist;
* TE Connectivity; El Cajon, CA or Middletown, PA; Licensing Specialist; tbaker@te.com; Requisition 40514
* Teledyne Semiconductors; Saint-Egrève/Grenoble, France; Trade Compliance Manager; Requisition ID: 2019-8459;
* Textron Aviation; Wichita, KS; Trade Compliance Analyst; Requisition ID: 269127
* Thales; New Delhi, India; Manager - Trade Compliance; Requisition ID:R0038060
* United Technologies - Collins Aerospace; Cedar Rapids; Compliance Specialist-Government; Requisition ID: 01271793;
* United Technologies - Pratt & Whitney; East Hartford, CT; International Trade Compliance Manager; Requisition ID: 01279346;
* University of California; San Francisco, CA; Export Control Officer; Requisition ID: 51010;
# * Volvo Cars; Göteborg, Sweden; Technical Expert - Export Controls;
* Wealth Ocean; Newport Beach, CA; Marketing & International Trade Specialist;
* Wellesley Asset Management; Wellesley, MA; Chief Compliance Officer;
* World Wide Technology; Edwardsville, IL; International Trade Compliance Specialist;
* Würth Adams; Greenwood, IN; International Trade Compliance Classification Specialist;
* Xilinx; San Jose, CA; Trade Compliance Specialist; Requisition ID: 155901
* YETI Coolers; Austin, TX; Inbound Logistics and Trade Compliance Manager;

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

—

**EX/IM TRAINING EVENTS & CONFERENCES**

## 19. ECS Presents "Managing ITAR/EAR Complexities" on 26-27 Mar in Scottsdale, AZ
(Source: S. Palmer, spalmer@exportcompliancesolutions.com.)

* What: Managing ITAR/EAR Complexities; Scottsdale, AZ
* When: 26-27 March 2019
* Where: Double Tree Resort by Hilton Paradise Valley
* Sponsor: Export Compliance Solutions (ECS)
* ECS Speaker Panel:  Suzanne Palmer, Lisa Bencivenga
* Register here or by calling 866-238-4018 or e-mail spalmer@exportcompliancesolutions.com.

back to top

* * * * * * * * * * * * * * * * * *

## 20. Madison Int'l Trade Association's Meeting Tomorrow in Madison, WI, Has Been Canceled
(Source: Editor)

The Madison International Trade Association (MITA) regrets that due to inclement weather, the export control conference scheduled for tomorrow, 12 February, has been canceled.  Watch this space for news of rescheduling.

back to top

* * * * * * * * * * * * * * * * * *

## 21. FCC Presents U.S. Export Controls Awareness Course: "ITAR & EAR from a non-U.S. Perspective", 9 April in Bruchem, the Netherlands
(Source: Full Circle Compliance, events@fullcirclecompliance.eu.)

Our next academy course is specifically designed for beginning compliance professionals and those in a similar role who aim to stay up-to-date with the latest U.S. export control requirements that apply to non-U.S. transactions, and industry's best practices.

The course will cover multiple topics relevant for organizations outside the U.S. that are subject to U.S. export controls, including: the U.S. regulatory framework, key concepts and definitions, tips regarding classification and licensing, essential steps to ensure a U.S. export control compliant shipment, how to handle a (potential) non-compliance issue, recent enforcement trends, and the latest and anticipated regulatory amendments.  Participants will receive a certification upon completion of the training.

* What: Awareness Course U.S. Export Controls: ITAR & EAR from a Non-U.S. Perspective
* When: Tuesday, 9 Apr 2010, 9.30 am - 4.30 pm (CET)

WASHSTATEC001449

* Where: Landgoed Groenhoven, Bruchem, the Netherlands
* Sponsor: Full Circle Compliance (FCC)
* Instructors: Michael E. Farrell (ITAR), and drs. Alexander P. Bosch (EAR)
* Information & Registration: HERE, or contact us at events@fullcirclecompliance.eu or +31 6 15 65 02 09.

*Register now and get a 10% Early Bird discount on the course fee!*

back to top

* ※ * ※ * ※ * ※ * ※ * ※ * ※ * ※ * ※ * ※ *

–

## EDITOR'S NOTES

### 22. Bartlett's Unfamiliar Quotations
(Source: Editor)

* **Thomas A. Edison** (Thomas Alva Edison; 11 Feb 1847 - 18 Oct 1931; was an American inventor and businessman, who has been described as America's greatest inventor.  He is credited with developing many devices in fields such as electric power generation, mass communication, sound recording, and motion pictures. These inventions, which include the phonograph, the motion picture camera, and the long-lasting, practical electric light bulb, had a widespread impact on the modern industrialized world. He was one of the first inventors to apply the principles of mass production and teamwork to the process of invention.)
  - *"Our greatest weakness lies in giving up. The most certain way to succeed is always to try just one more time."*

**Monday is pun day:**
* When plumbers sleep do they have pipe dreams?
* That guy who was convicted of stealing a calendar got 12 months.
* When I was very young, I felt like a male trapped in a female's body. Then I was born.

back to top

* * * * * * * * * * * * * * * * * * * * *

### 23. Are Your Copies of Regulations Up to Date?
(Source: Editor)

* DHS CUSTOMS REGULATIONS: 19 CFR, Ch. 1, Pts. 0-199.  Implemented by Dep't of Homeland Security, U.S. Customs & Border Protection.
  - Last Amendment: 14 Jan 2019: 84 FR 112-116: Extension of Import Restrictions Imposed on Certain Archaeological and Ecclesiastical

WASHSTATEC001450

Ethnological Material from Bulgaria; and 84 FR 107-112: Extension of Import Restrictions Imposed on Certain Archaeological Material From China

* DOC EXPORT ADMINISTRATION REGULATIONS (EAR): 15 CFR Subtit. B, Ch. VII, Pts. 730-774. Implemented by Dep't of Commerce, Bureau of Industry & Security.
  - Last Amendment: 20 Dec 2018: 83 FR 65292-65294: Control of Military Electronic Equipment and Other Items the President Determines No Longer Warrant Control Under the United States Munitions List (USML); Correction [Concerning ECCN 7A005 and ECCN 7A105.]

* DOC FOREIGN TRADE REGULATIONS (FTR): 15 CFR Part 30.  Implemented by Dep't of Commerce, U.S. Census Bureau.
  - Last Amendment: 24 Apr 2018: 83 FR 17749-17751: Foreign Trade Regulations (FTR): Clarification on the Collection and Confidentiality of Kimberley Process Certificates
  - HTS codes that are not valid for AES are available here.
  - The latest edition (1 Jan 2019) of *Bartlett's Annotated FTR* ("BAFTR"), by James E. Bartlett III, is available for downloading in Word format. The BAFTR contains all FTR amendments, FTR Letters and Notices, a large Index, and approximately 250 footnotes containing case annotations, practice tips, Census/AES guidance, and explanations of the numerous errors contained in the official text. Subscribers receive revised copies in Microsoft Word every time the FTR is amended. The BAFTR is available by annual subscription from the Full Circle Compliance website.  BITAR subscribers are entitled to a 25% discount on subscriptions to the BAFTR. Government employees (including military) and employees of universities are eligible for a 50% discount on both publications at www.FullCircleCompiance.eu.

* DOD NATIONAL INDUSTRIAL SECURITY PROGRAM OPERATING MANUAL (NISPOM): DoD 5220.22-M. Implemented by Dep't of Defense.
  - Last Amendment: 18 May 2016: Change 2: Implement an insider threat program; reporting requirements for Cleared Defense Contractors; alignment with Federal standards for classified information systems; incorporated and cancelled Supp. 1 to the NISPOM (Summary here.)

* DOE ASSISTANCE TO FOREIGN ATOMIC ENERGY ACTIVITIES: 10 CFR Part 810; Implemented by Dep't of Energy, National Nuclear Security Administration, under Atomic Energy Act of 1954.
  - Last Amendment: 23 Feb 2015: 80 FR 9359, comprehensive updating of regulations, updates the activities and technologies subject to specific authorization and DOE reporting requirements. This rule also identifies destinations with respect to which most assistance would be generally authorized and destinations that would require a specific authorization by the Secretary of Energy.

* DOE EXPORT AND IMPORT OF NUCLEAR EQUIPMENT AND MATERIAL; 10 CFR Part 110; Implemented by Dep't of Energy, U.S. Nuclear Regulatory Commission, under Atomic Energy Act of 1954.
  - Last Amendment: 20 Nov 2018, 10 CFR 110.6, Re-transfers.

WASHSTATEC001451

* <u>DOJ ATF ARMS IMPORT REGULATIONS</u>: 27 CFR Part 447-Importation of Arms, Ammunition, and Implements of War.  Implemented by Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives.
  - Last Amendment: 15 Jan 2016: <u>81 FR 2657-2723</u>: Machineguns, Destructive Devices and Certain Other Firearms; Background Checks for Responsible Persons of a Trust or Legal Entity With Respect To Making or Transferring a Firearm.

* <u>DOS INTERNATIONAL TRAFFIC IN ARMS REGULATIONS (ITAR)</u>: 22 C.F.R. Ch. I, Subch. M, Pts. 120-130. Implemented by Dep't of State, Directorate of Defense Trade Controls.
  - Last Amendment: 4 Oct 2018: <u>83 FR 50003-50007</u>: Regulatory Reform Revisions to the International Traffic in Arms Regulations.
  - The only available fully updated copy (latest edition: 1 Jan 2019) of the ITAR with all amendments is contained in *Bartlett's Annotated ITAR* ("BITAR"), by James E. Bartlett III. The BITAR contains all ITAR amendments to date, plus a large Index, over 800 footnotes containing amendment histories, case annotations, practice tips, DDTC guidance, and explanations of errors in the official ITAR text. Subscribers receive updated copies of the BITAR in Word by email, usually revised within 24 hours after every ITAR amendment. The BITAR is available by annual subscription from the Full Circle Compliance <u>website</u>. BAFTR subscribers receive a $25 discount on subscriptions to the BITAR, please <u>contact us</u> to receive your discount code.

* <u>DOT FOREIGN ASSETS CONTROL REGULATIONS (OFAC FACR)</u>: 31 CFR, Parts 500-599, Embargoes, Sanctions, Executive Orders.
Implemented by Dep't of Treasury, Office of Foreign Assets Control.
  - Last Amendment: 15 Nov 2018: <u>83 FR 57308-57318</u>: Democratic Republic of the Congo Sanctions Regulations

* <u>USITC HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES (HTS, HTSA or HTSUSA)</u>, 1 Jan 2019: 19 USC 1202 Annex. Implemented by U.S. International Trade Commission. ("HTS" and "HTSA" are often seen as abbreviations for the Harmonized Tariff Schedule of the United States Annotated, shortened versions of "HTSUSA".)
  - Last Amendment: 1 Jan 2019: <u>2019 Basic Edition of the HTS</u>
  - HTS codes for AES are available <u>here</u>.
  - HTS codes that are not valid for AES are available <u>here</u>.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 24. Weekly Highlights of the Daily Bugle Top Stories
(Source: Editor)

Review last week's top Ex/Im stories in "Weekly Highlights of the Daily Bugle Top Stories" published <u>here</u>.

back to top

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

WASHSTATEC001452

## EDITORIAL POLICY

* The Ex/Im Daily Update is a publication of FCC Advisory B.V., compiled by: Editor, James E. Bartlett III; Assistant Editors, Alexander P. Bosch and Vincent J.A. Goossen; and Events & Jobs Editor, Alex Witt. The Ex/Im Daily Update is emailed every business day to approximately 6,500 readers of changes to defense and high-tech trade laws and regulations. We check the following sources daily: Federal Register, Congressional Record, Commerce/AES, Commerce/BIS, DHS/CBP, DOE/NRC, DOJ/ATF, DoD/DSS, DoD/DTSA, FAR/DFARS, State/DDTC, Treasury/OFAC, White House, and similar websites of Australia, Canada, U.K., and other countries and international organizations.  Due to space limitations, we do not post Arms Sales notifications, Denied Party listings, or Customs AD/CVD items.

* RIGHTS & RESTRICTIONS: This email contains no proprietary, classified, or export-controlled information. All items are obtained from public sources or are published with permission of private contributors, and may be freely circulated without further permission, provided attribution is given to "*The Export/Import Daily Bugle* of (date)". Any further use of contributors' material, however, must comply with applicable copyright laws.  If you would to submit material for inclusion in the *The Export/Import Daily Update ("Daily Bugle")*, please find instructions here.

* CAVEAT: The contents of this newsletter cannot be relied upon as legal or expert advice.  Consult your own legal counsel or compliance specialists before taking actions based upon news items or opinions from this or other unofficial sources.  If any U.S. federal tax issue is discussed in this communication, it was not intended or written by the author or sender for tax or legal advice, and cannot be used for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending to another party any transaction or tax-related matter.

* SUBSCRIPTIONS: Subscriptions are free.  Subscribe by completing the request form on the Full Circle Compliance website.

* BACK ISSUES: An archive of Daily Bugle publications from 2005 to present is available HERE.

* TO UNSUBSCRIBE: Use the Safe Unsubscribe link below.

back to top

Stay Connected



The Daily Bugle | www.FullCircleCompliance.us

Copyright © 2019. All Rights Reserved.

FCC Advisory B.V., Landgoed Groenhoven, Dorpsstraat 6, Bruchem, 5314
AE Netherlands

SafeUnsubscribe™ hartrl@state.gov

Forward this email | Update Profile | About our service provider

Sent by jebartlett@fullcirclecompliance.eu

WASHSTATEC001454

Message

---

**From:** Rogers, Shana A [RogersSA2@state.gov]
**Sent:** 2/12/2019 1:24:36 PM
**To:** Rogers, Shana A [RogersSA2@state.gov]
**Subject:** Fw: Points on the 1-3 rule for the NSC

Sent from my BlackBerry 10 smartphone.

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F; Heidema, Sarah J; Kovar, Jeffrey D; Rogers, Shana A
**Cc:** Minarich, Christine M
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC





Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001456

Message

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/12/2019 2:42:47 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: Points on the 1-3 rule for the NSC |

Thanks.  I started edits in a word document and will port yours into it.

**Official - SBU (Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Tuesday, February 12, 2019 9:26 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC

Shana,
A few minor thoughts on the bullets below. ███████████████████████
████████████████████████████

Christine

**Official - SBU (Deliberative Process)**
UNCLASSIFIED

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC

████████████████████████████████████████████████████████



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001458

Message

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/12/2019 3:13:18 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: Points on the 1-3 rule for the NSC |
| **Attachments:** | 20190212_RuleImpacts.docx |

What do you think about the attached?

**Official - SBU (Deliberative Process, Attorney Work Product, Attorney-Client Privilege)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Tuesday, February 12, 2019 9:26 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC

Shana,
A few minor thoughts on the bullets below. ████████████████████████
████████████████████████████████

Christine

**Official - SBU (Deliberative Process)**
UNCLASSIFIED

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001460

Message

---

**From:**        Minarich, Christine M [MinarichCM@state.gov]
**Sent:**        2/12/2019 3:48:28 PM
**To:**          Rogers, Shana A [RogersSA2@state.gov]
**Subject:**     RE: Points on the 1-3 rule for the NSC
**Attachments:** 20190212_RuleImpacts CM cmts.docx

Thanks. I've proposed a few edits in the attached. ████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

**Official - SBU (Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

---

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Tuesday, February 12, 2019 10:13 AM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

What do you think about the attached?

**Official - SBU (Deliberative Process, Attorney Work Product, Attorney-Client Privilege)**
UNCLASSIFIED

---

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Tuesday, February 12, 2019 9:26 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC

Shana,
A few minor thoughts on the bullets below. ███████████████████████████
███████████████████████████████████████

Christine

**Official - SBU (Deliberative Process)**
UNCLASSIFIED

---

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

---

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A

<RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC



Sarah Heidema

Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001463

Message
_____

**From:**      Rogers, Shana A [RogersSA2@state.gov]
**Sent:**      2/12/2019 4:03:44 PM
**To:**        Minarich, Christine M [MinarichCM@state.gov]
**Subject:**   RE: Points on the 1-3 rule for the NSC

Thanks.

**Official - SBU (Deliberative Process, Attorney Work Product)**
UNCLASSIFIED
_____

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Tuesday, February 12, 2019 10:48 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

**Official - SBU (Deliberative Process, Attorney Work Product)**
UNCLASSIFIED
_____

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Tuesday, February 12, 2019 10:13 AM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

What do you think about the attached?

**Official - SBU (Deliberative Process, Attorney Work Product, Attorney-Client Privilege)**
UNCLASSIFIED
_____

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Tuesday, February 12, 2019 9:26 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC

Shana,
A few minor thoughts on the bullets below. ██████████████████████
████████████████████████████████████████

Christine

**Official - SBU (Deliberative Process)**
UNCLASSIFIED
_____

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D

<KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

---

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001466

Message

---

**From**:      Kovar, Jeffrey D [KovarJD@state.gov]
**Sent**:      2/12/2019 4:40:15 PM
**To**:        Rogers, Shana A [RogersSA2@state.gov]
**CC**:        Minarich, Christine M [MinarichCM@state.gov]
**Subject**:   RE: Points on the 1-3 rule for the NSC


I will review now

**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

---

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Tuesday, February 12, 2019 11:33 AM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC


Jeff,



Thanks,
Shana

**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

---

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

---

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

WASHSTATEC001467

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001468

Message
_____

**From:** Rogers, Shana A [RogersSA2@state.gov]
**Sent:** 2/12/2019 4:53:01 PM
**To:** Heidema, Sarah J [HeidemaSJ@state.gov]
**Subject:** FW: Points on the 1-3 rule for the NSC

Sarah,
Jeff is reviewing now; we will have something to you shortly.

Thanks,
Shana

**Official**
UNCLASSIFIED

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001470

Message

| | |
|---|---|
| **From:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent:** | 2/12/2019 4:57:33 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov] |
| **CC:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: Points on the 1-3 rule for the NSC |
| **Attachments:** | 20190212_RuleImpacts LPM cmts.docx |

Here's edits on doc 1.  Now looking at doc 2

**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Tuesday, February 12, 2019 11:33 AM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC

Jeff,



Thanks,
Shana

**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

WASHSTATEC001471

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001472

Message

| | |
|---|---|
| **From:** | Marquis, Matthew R [MarquisMR@state.gov] |
| **Sent:** | 2/12/2019 5:03:43 PM |
| **To:** | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov]; Legal-PM-DL [Legal-PM-DL@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov]; String, Marik A [StringMA@state.gov]; Miller, Michael F [Millermf@state.gov] |
| **Subject:** | CPA Media Monitoring: Ars Technica: Just when an end seemed near, two 3D-printed gun-file legal battles get new life |



**Just when an end seemed near, two 3D-printed gun-file legal battles get new life**
**By Nathan Mattise**
**7 February 2019**

Last week, the legal drama surrounding 3D-printed gun files and firearms tech company Defense Distributed seemed near the finish line. A judge had newly ruled that a federal court in Texas lacked jurisdiction to decide whether a new New Jersey "ghost gun" law was unconstitutional in Defense Distributed v. Grewal. And a previous, separate effort from 19 states and the District of Columbia to keep the gun files offline, State of Washington v. Department of State, continued to sit in limbo as it had for months. Nothing happened in the case since the fall when the defense wanted to stay (or pause) the whole thing. The defense claimed rule changes were coming at the State Department within the next four months, and those tweaks would make Washington irrelevant.

But this week, two new and unexpected court filings have set the table for yet another round in this ongoing courtroom saga. In one motion, the judge in Washington v. State has decided the case won't wait any longer and can move forward. And in the other filing, Grewal may now get a sequel situated in the state of New Jersey, as Defense Distributed has submitted a fresh legal complaint against New Jersey Attorney General Gurbir Grewal. The company did so after a website that hosted DD's gun files received a corresponding takedown notice from New Jersey.

**Evidently it can't wait**

The last major action in Washington came toward the end of 2018 when the defendants filed a motion to pause everything for four months while the State Department considered new rules that it argued would "directly bear on this case." Washington et al. pursued this legal action initially because they believed that, when the Department of Justice settled its five-year legal battle with Defense Distributed in July 2018 and allowed the CAD files in question to be re-posted, that action violated the Constitution. But in a November 2018 filing, government lawyers for the defense explained that rule changes being considered by the State Department would make any legal conflicts in Washington moot.

Today, however, US District Judge Robert Lasnik denied the Department of State's motion to stay the case, meaning the case will move forward for now. In his filing with the decision, Judge Lasnik indicated the defendants simply did not provide enough proof that impactful rule changes were imminent.

"Plaintiffs filed this action in July 2018 to prevent the federal defendants from acting on informal agency determinations that were not made in accordance with the Administrative Procedures Act and may violate the 11th Amendment," Judge Lasnik writes. "The federal defendants imply that the temporary modification and letter were part of the larger process which will ultimately justify the authorizations granted in 2018, but no details regarding the substance of the proposed final rule are provided... The federal defendants have failed to do anything more than baldly assert that the final rules will impact the outcome of this case."

WASHSTATEC001473

Washington's origins can be traced back to Defense Distributed's initial legal battle (PDF) with the Department of State, which started in 2013 and centered on export laws (specifically the International Traffic in Arms Regulations, or ITAR). In essence, Defense Distributed was accused of violating American export law. Domestic publication of the files was not at issue, but the chance of those files landing in the hands of a foreign entity sparked the feds to act. Defense Distributed initially removed the information from its site, fearful of facing criminal prosecution or a lawsuit.

The two sides settled last summer when the feds essentially agreed to change the relevant export laws. Defense Distributed would be allowed to publish, the DOJ would pay $40,000 of DD's legal fees, and the case would be over. The Second Amendment Foundation announced the settlement on July 10, 2018. Defense Distributed announced that it would be putting the files back online on August 1, though it hit "publish" earlier than that.

The situation sparked Washington (and ultimately 18 other states plus the District of Columbia) to ask a federal judge for a temporary restraining order (TRO) preventing the publishing of said files. The states argued that allowing Defense Distributed to release the files violated both the 10th Amendment (which allows states to regulate activity not specifically described in the Constitution) and federal administrative law. If Americans could access these files and make anonymous, untraceable weapons, the states argued, they would be circumventing state-level firearms laws that restricted access to guns.

Washington v. Department of State began in the fall, and Judge Lasnik agreed with the TRO argument. The judge concluded that, because the State Department did not formally notify Congress when it modified the United States Munitions List (allowing Defense Distributed to republish its CAD files), the previous legal settlement that Defense Distributed struck with the department was invalid. No other substantial rulings had been made since, as the case largely waited on both the defense's motion to stay and the related, potential rule changes the State Department said would change the dynamics in Washington.

"The States opposed the stay because the government has given no indication of how a final rule might apply to 3D-printed gun files or how it would regulate their export, if at all," the Washington attorney general's office told Ars back in January. "The best outcome for the state is that federal law will continue to prohibit the export of 3D-printed gun files, including by distributing them via the Internet, so they are not readily available to anyone on the Web, including dangerous individuals prohibited from owning firearms in Washington state."

**Meanwhile, in New Jersey...**

Despite similar subject matter, Washington v. State is an entirely separate case from the other recent legal spat involving Defense Distributed: DD v. Grewal. The two cases have no bearing on each other. In that second case, Defense Distributed sued Grewal over a new New Jersey statute (SB2465) that the firearms company believed violated the Constitution. Ultimately, US District Judge Robert Pitman made a ruling (PDF) that ended the case without answering the central question. The judge did not believe he had jurisdiction to hear the matter in the first place given that the statute did not impact Texas, where the case was filed.

"Defendants' allegedly harmful conduct, however, has no relation to Texas, was not expressly aimed at Texas, and does not avail itself of any Texas laws or benefits," Judge Pitman's order (PDF) stated.

This week, Defense Distributed took its legal arguments directly to New Jersey.

Recently, the website CodeIsFreeSpeech (which sprang up in summer 2018 from the Firearms Policy Coalition) decided to republish Defense Distributed's CAD files. That move prompted action from New Jersey, which reported the site as potentially in violation of state laws to host provider Cloudflare (PDF).

"This is a notice to Cloudflare that you are serving files consisting of 3D-printable firearms in violation of NJ Stat. Ann. § 2C:39-9 3(I)(2)," the New Jersey AG's office wrote. "These files are accessible via Cloudflare's

New Jersey datacenter. You shall delete all files described within 24 hours or we will be forced to press charges in order to preserve the safety of the citizens of New Jersey."

CodeIsFreeSpeech remains online (as do redirects from the FPC like GurbirGrewalIsATyrant.com), but direct URLs with the files in question returned a 403 Forbidden notice when Ars attempted to access them today. In light of the situation (which occurred just days after the Grewal dismissal), Defense Distributed along with the FPC and the Second Amendment Foundation this week filed a new federal complaint (PDF) against Grewal and New Jersey, potentially setting up Defense Distributed v. Grewal round two within the Garden State.

"We know that the tech press is uninterested, but to be clear, this is a state politician telling a host in California and a national CDN service that they are guilty of a speech crime in New Jersey based on the public content they've merely re-published on the free Internet," writes Defense Distributed on its LEGIO political action fundraising site.

"As of yesterday [February 5], Defense Distributed, joined by SAF, FPC, and codeisfreespeech.com, have again filed to enjoin Grewal and his absurd and obviously unconstitutional speech crime. This time we have filed in New Jersey where the AG will presumably submit to the court's jurisdiction... Section 3(l)(2) of New Jersey Senate Bill 2465 is a gift, in that it is so comically overpowered and ignorant of its numerous federal supersessions that even a strongly anti-gun federal judge will have her hands tied dealing with it. It's also a gift that these New Jersey authorities keep admitting their laws were specifically passed to target our work, and it's a gift that they proudly do this in public pressers."

This latest filing contains many of the inciting documents from Defense Distributed's previous lawsuit, like a July 2018 cease and desist from New Jersey to Defense Distributed after the Department of State settlement. Defense Distributed believed such actions beyond the New Jersey statute merited a preliminary injunction against that state law, though ultimately the question of jurisdiction made arguments both for and against the constitutionality of SB2465 moot at the time.

Ars has reached out to both the Washington and New Jersey attorneys general offices, an attorney for Defense Distributed, and Cloudflare PR in the hopes of learning more about what's next in the cases above and whether any of the alleged threatened legal action has been taken by the Garden State against CodeIsFreeSpeech or Cloudflare. The New Jersey AG's office declined comment, only directing us to the statement it put out in July 2018 regarding the previous lawsuit. Ars will update this story when any additional information becomes available.

Link: https://arstechnica.com/tech-policy/2019/02/just-when-an-end-seemed-near-two-3d-printed-gun-file-legal-battles-get-new-life/

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.6968
e-mail:     *MarquisMR@state.gov* |   Web: *www.state.gov/t/pm /* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

WASHSTATEC001476

Message

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/12/2019 5:44:06 PM |
| **To:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Subject:** | RE: Points on the 1-3 rule for the NSC |



**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

**From:** Rogers, Shana A
**Sent:** Tuesday, February 12, 2019 11:33 AM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC

Jeff,



Thanks,

Shana

**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC



WASHSTATEC001478



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001479

Message

| | |
|---|---|
| **From**: | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent**: | 2/12/2019 5:53:59 PM |
| **To**: | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject**: | RE: Points on the 1-3 rule for the NSC |

**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Tuesday, February 12, 2019 12:44 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

Jeff,
Is this more along the lines of what you think might be helpful?



**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

**From:** Rogers, Shana A
**Sent:** Tuesday, February 12, 2019 11:33 AM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** FW: Points on the 1-3 rule for the NSC

Jeff,



Thanks,
Shana

**Official - SBU (Deliberative Process, Attorney-Client Privilege, Attorney Work Product)**
UNCLASSIFIED

---

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

---

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001482

Message

---

**From:** Rogers, Shana A [RogersSA2@state.gov]
**Sent:** 2/12/2019 6:03:12 PM
**To:** String, Marik A [StringMA@state.gov]; Miller, Michael F [Millermf@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]
**CC:** Minarich, Christine M [MinarichCM@state.gov]
**Subject:** RE: Points on the 1-3 rule for the NSC
**Attachments:** 20190212_RuleImpacts LPM cmts (002).docx

Sarah,
Apologies for the delayed response.  Here are some comments from L/PM. ████████████
████████████████████████████████████████████████

Give me a call if you'd like to discuss.

Thanks,
Shana

**Official - SBU (Attorney Work Product, Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

---

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████



Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001484

Message

| | |
|---|---|
| **From**: | Paul, Joshua M [PaulJM@state.gov] |
| **Sent**: | 2/13/2019 3:45:21 PM |
| **To**: | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov] |
| **CC**: | PM-CPA [PM-CPA@state.gov]; Miller, Michael F [Millermf@state.gov]; PM-DAS's [PM-DASs@state.gov] |
| **Subject**: | CPA Media Monitoring: SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act |



**CPA Note: Text of this bill is not yet available.**

Menendez, Colleagues Introduce Bill to Block Trump Admin Push to Allow Unfettered Proliferation of Untraceable, 3D Printable Guns, Weaken Controls over Foreign Arms Sales

Tuesday, February 12, 2019

**WASHINGTON– U.S. Senator Bob Menendez (D-N.J.), Ranking Member of the Senate Foreign Relations Committee**, was joined today by **Senators Chris Murphy (D-Conn.), Ed Markey (D-Mass.), Ben Cardin (D-Md.), Dianne Feinstein (D-Ca.)** in introducing legislation to block the Trump Administration's efforts to weaken controls over foreign arms sales and allow for the unfettered proliferation of untraceable, virtually undetectable, 3D printable guns that threaten public safety.

The Trump Administration announced earlier this month that it has taken steps to transfer control of the export of semi-automatic pistols, assault-style rifles, sniper rifles and ammunition from the United States Munition List under the authority of the Department of State to the less-stringent controls of the Department of Commerce.  It would also transfer the control of the technical information and blueprints for 3D printing of nearly undetectable firearms to Commerce, where the lax regulations will facilitate the Internet publication worldwide.  These moves are also designed to strangle Congressional oversight.

"These changes defy common sense, undermine public safety and undercut our national security.  The only ones cheering these ill-advised moves are the NRA and U.S. gunmakers," **said Sen. Menendez**.  "Small arms and associated ammunition are uniquely lethal.  They are easily spread and easily modified, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world.  Every terrorist and criminal that wants to hijack an airplane with Americans onboard will more easily be able to smuggle 3D printed, virtually undetectable guns aboard.  Every school, every government facility, every hospital, here and abroad, will become even more vulnerable to gun violence through this change.  This is madness."

"Our laws have not kept up with the pace of technology, especially when it comes to the manufacturing of firearms," **said Sen. Murphy.** "The Trump administration basically gave anyone – including criminals and murderers – a green light to 3D print and sell untraceable 'ghost guns.' Thankfully, the courts have blocked this for now, but Congress needs to act to close this glaring loophole before anyone gets killed."

"We now live in a world where a 3D printer cartridge can become as deadly as a gun cartridge," **said Sen. Markey.** "These homemade 3D firearms are the ultimate gun show loophole -- they are untraceable and in some instances, undetectable. We need to stop the spread of these firearms before they become a public health crisis and the latest addition to the terrible scourge of gun violence that is already plaguing our country."

"A firearm is a firearm, period. It is illogical and dangerous to make blueprints widely available so that anyone can build their own gun. Gun kit manufacturers and distributors must be held to the same regulatory standards for similar firearms," **said Cardin. "Small arms and light weapons are among the most lethal weapons that we and other countries export because these are the weapons that are most likely to be used to commit atrocities and suppress human rights, either by individuals, non-state groups, or governmental security and para-military forces. The threat of**

**untraceable 3D weapons increases the dangers exponentially. The United States should never make it easier for foreign despots, paramilitary or terrorist groups to slaughter or threaten people."**

The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act would outright prevent this transfer, and therefore maintain the strict controls over firearms and 3D printed "ghost gun" information that currently exist on the United States Munitions List.  It would also keep Congressional oversight and legislative disapproval of such sales, which the Trump Administration is also trying to circumvent.

Specifically, the legislation would:

- Prohibit the transfer of small arms/light weapons, and the technical manufacturing information related to them (including 3D Printed guns), to the Department of Commerce;

- Maintain the statutory restriction on publishing 3D Printing gun information, including via the Internet;

- Prohibit the ability of the State Department to suspend the International Trafficking in Arms Regulations without 30-day prior notice to Congress.

Sen. Menendez was an outspoken opponent of the Trump Administration's action last year allowing a Texas company to publish the downloadable designs for 3D printable firearms, which was later blocks by the courts, and has taken a series of additional actions to prevent the proliferation of untraceable, undetectable 3D printed guns. He called on Secretary of State Mike Pompeo to intervene and reverse his department's decision and spoke out about his decision at a hearing of the Senate Foreign Relations Committee

Senators Menendez  and Markey also co-authored two pieces of legislation in the last Congress to combat the threat posed from the spread of 3D printable guns. The 3D Printing Safety Act and the Untraceable Firearms Act of 2018.  Sen. Menendez went to the Senate floor to try and unanimously pass this emergency bill, but Republicans blocked the vote.  He also held a press conference in Cliffside Park, N.J., with local officials and Moms Demand Action to rail against 3D guns.

In August, Senators Menendez, Markey and Feinstein called on the CEO's of Facebook, Microsoft, Yahoo, Google, Craigslist, Reddit and Twitter to proactively block any distribution of 3D gun blueprints on their platforms.

WASHSTATEC001486

Message

| | |
|---|---|
| **From:** | Hart, Robert L [HartRL@state.gov] |
| **Sent:** | 2/13/2019 6:18:05 PM |
| **To:** | Noonan, Michael J [NoonanMJ@state.gov]; Foster, John A [FosterJA2@state.gov]; Garcia, Mariel C [GarciaMC3@state.gov] |
| **Subject:** | Fwd: CPA Media Monitoring: SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act |
| **Attachments:** | Menendez 3D Gun Bill for introduction FINAL.pdf |

For those of you who aren't on the DTCP tasking DL (which I think is all of you).

Rob Hart
202.736.9221 | hartrl@state.gov

---

**From:** Paul, Joshua M <pauljm@state.gov>
**Sent:** Wednesday, February 13, 2019 12:35 PM
**To:** PM-DTCP-Tasking-DL
**Cc:** PM-CPA; Miller, Michael F; PM-DAS's; Legal-PM-DL; Darrach, Tamara A; Schwab, Carol M
**Subject:** RE: CPA Media Monitoring: SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act

+L/PM & H – Bill text attached.

---

**From:** Paul, Joshua M
**Sent:** Wednesday, February 13, 2019 10:45 AM
**To:** PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Miller, Michael F <Millermf@state.gov>; PM-DAS's <PM-DASs@state.gov>
**Subject:** CPA Media Monitoring: SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act



**CPA Note: Text of this bill is not yet available.**

Menendez, Colleagues Introduce Bill to Block Trump Admin Push to Allow Unfettered Proliferation of Untraceable, 3D Printable Guns, Weaken Controls over Foreign Arms Sales

Tuesday, February 12, 2019

**WASHINGTON– U.S. Senator Bob Menendez (D-N.J.), Ranking Member of the Senate Foreign Relations Committee,** was joined today by **Senators Chris Murphy (D-Conn.), Ed Markey (D-Mass.), Ben Cardin (D-Md.), Dianne Feinstein (D-Ca.)** in introducing legislation to block the Trump Administration's efforts to weaken controls over foreign arms sales and allow for the unfettered proliferation of untraceable, virtually undetectable, 3D printable guns that threaten public safety.

The Trump Administration announced earlier this month that it has taken steps to transfer control of the export of semi-automatic pistols, assault-style rifles, sniper rifles and ammunition from the United States Munition List under the authority of the Department of State to the less-stringent controls of the Department of Commerce.  It would also transfer the control of the technical information and blueprints for 3D printing of nearly undetectable firearms to Commerce, where the lax regulations will facilitate the Internet publication worldwide.  These moves are also designed to strangle Congressional oversight.

WASHSTATEC001487

"These changes defy common sense, undermine public safety and undercut our national security.  The only ones cheering these ill-advised moves are the NRA and U.S. gunmakers," **said Sen. Menendez**.  "Small arms and associated ammunition are uniquely lethal.  They are easily spread and easily modified, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world.  Every terrorist and criminal that wants to hijack an airplane with Americans onboard will more easily be able to smuggle 3D printed, virtually undetectable guns aboard.  Every school, every government facility, every hospital, here and abroad, will become even more vulnerable to gun violence through this change.  This is madness."

"Our laws have not kept up with the pace of technology, especially when it comes to the manufacturing of firearms," **said Sen. Murphy**. "The Trump administration basically gave anyone – including criminals and murderers – a green light to 3D print and sell untraceable 'ghost guns.' Thankfully, the courts have blocked this for now, but Congress needs to act to close this glaring loophole before anyone gets killed."

"We now live in a world where a 3D printer cartridge can become as deadly as a gun cartridge," **said Sen. Markey**. "These homemade 3D firearms are the ultimate gun show loophole -- they are untraceable and in some instances, undetectable. We need to stop the spread of these firearms before they become a public health crisis and the latest addition to the terrible scourge of gun violence that is already plaguing our country."

"A firearm is a firearm, period. It is illogical and dangerous to make blueprints widely available so that anyone can build their own gun. Gun kit manufacturers and distributors must be held to the same regulatory standards for similar firearms," **said Cardin. "Small arms and light weapons are among the most lethal weapons that we and other countries export because these are the weapons that are most likely to be used to commit atrocities and suppress human rights, either by individuals, non-state groups, or governmental security and para-military forces. The threat of untraceable 3D weapons increases the dangers exponentially. The United States should never make it easier for foreign despots, paramilitary or terrorist groups to slaughter or threaten people."**

The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act would outright prevent this transfer, and therefore maintain the strict controls over firearms and 3D printed "ghost gun" information that currently exist on the United States Munitions List.  It would also keep Congressional oversight and legislative disapproval of such sales, which the Trump Administration is also trying to circumvent.

Specifically, the legislation would:

- Prohibit the transfer of small arms/light weapons, and the technical manufacturing information related to them (including 3D Printed guns), to the Department of Commerce;

- Maintain the statutory restriction on publishing 3D Printing gun information, including via the Internet;

- Prohibit the ability of the State Department to suspend the International Trafficking in Arms Regulations without 30-day prior notice to Congress.

Sen. Menendez was an outspoken opponent of the Trump Administration's action last year allowing a Texas company to publish the downloadable designs for 3D printable firearms, which was later blocks by the courts, and has taken a series of additional actions to prevent the proliferation of untraceable, undetectable 3D printed guns. He called on Secretary of State Mike Pompeo to intervene and reverse his department's decision and spoke out about his decision at a hearing of the Senate Foreign Relations Committee

Senators Menendez  and Markey also co-authored two pieces of legislation in the last Congress to combat the threat posed from the spread of 3D printable guns. The 3D Printing Safety Act and the Untraceable Firearms Act of 2018.  Sen. Menendez went to the Senate floor to try and unanimously pass this emergency bill, but Republicans blocked the vote.  He also held a press conference in Cliffside Park, N.J., with local officials and Moms Demand Action to rail against 3D guns.

WASHSTATEC001488

In August, <u>Senators Menendez, Markey and Feinstein called on the CEO's of Facebook, Microsoft, Yahoo, Google, Craigslist, Reddit and Twitter to proactively block any distribution of 3D gun blueprints</u> on their platforms.

WASHSTATEC001489

116TH CONGRESS
1ST SESSION

# S. _____

To protect the American people from undetectable ghost guns, and for other
purposes.

---

## IN THE SENATE OF THE UNITED STATES

---

Mr. MENENDEZ (for himself, Mr. MURPHY, Mr. MARKEY, Mrs. FEINSTEIN,
and Mr. CARDIN) introduced the following bill; which was read twice and
referred to the Committee on _____

---

# A BILL

To protect the American people from undetectable ghost
guns, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    **SECTION 1. SHORT TITLE.**

4        This Act may be cited as the ''Stopping the Traffic

5    in Overseas Proliferation of Ghost Guns Act''.

6    **SEC. 2. FINDINGS.**

7        Congress makes the following findings:

8            (1) Small arms and associated ammunition

9        are—

10            (A) uniquely lethal;

WASHSTATEC001490

1    (B) easily spread and easily modified, and

2    (C) the primary means of injury, death,

3   and destruction in civil and military conflicts

4   throughout the world.

5   (2) Congress enacted legislation in 2002 to en-

6 sure that the sale and export of such weapons would

7 receive close congressional scrutiny and oversight,

8 which has proven important on multiple occasions.

9   (3) President Donald Trump has proposed to

10 transfer the oversight of the export of most of these

11 lethal weapons from the control of the Department

12 of State under the United States Munitions List to

13 the less stringent export controls of the Department

14 of Commerce, in part to expedite the sale of such

15 weapons abroad.

16   (4) This proposed transfer would—

17    (A) lessen the oversight of the Secretary of

18   State to ensure that such exports comply with

19   United States foreign policy, national security,

20   and human rights requirements;

21    (B) completely eliminate congressional re-

22   view of these sales by removing them from the

23   jurisdiction of the Arms Export Control Act (22

24   U.S.C. 2751 et seq.), which mandates that such

25   sales of $1,000,000 and higher be reviewed by

WASHSTATEC001491

MDM19077                                                                                                    S.L.C.

3

Congress and subject to the introduction, consideration, and vote on a resolution of disapproval to reject such sales; and

(C) facilitate the global dissemination of technical information, including blueprints, of firearms, allowing their easy production with 3D printers.

(5) Firearms manufactured with 3D printers could be untraceable and undetectable by conventional means, making it easier for criminals, terrorists, and other bad actors to commit violent crimes.

**SEC. 3. STATEMENT OF POLICY.**

It is the policy of the United States that—

(1) the export of lethal firearms and ammunition deserves the highest level of executive and congressional scrutiny and oversight; and

(2) long-standing practices, policies, and legal requirements regarding such exports should be continued and strengthened.

**SEC. 4. PROHIBITION ON REMOVAL OF FIREARMS FROM UNITED STATES MUNITIONS LIST.**

(a) RESTRICTION ON REMOVAL OF FIREARMS FROM UNITED STATES MUNITIONS LIST.—Notwithstanding section 38 of the Arms Export Control Act (22 U.S.C. 2778), the President may not remove any firearm, or tech-

WASHSTATEC001492

1  nical information relating to such firearm, from the
2  United States Munitions List.

3      (b) LIMITATION ON MODIFYING REGULATIONS.—
4  The President and the Secretary of State may not change
5  or alter any requirement under the International Traffic
6  in Arms Regulations (subchapter M of chapter I of title
7  22, Code of Federal Regulations) or such successor regula-
8  tions relating to the export of firearms controlled on the
9  United States Munitions List, as such regulations and mu-
10 nitions list were composed as of January 1, 2018.

11 **SEC. 5. CONGRESSIONAL OVERSIGHT OF SUSPENSION OF**
12 **EXPORT CONTROL REGULATIONS.**

13     The Secretary of State may not suspend the applica-
14 tion of the International Traffic in Arms Regulations
15 (subchapter M of chapter I of title 22, Code of Federal
16 Regulations) or any such successor regulations, or any
17 part thereof, unless the Secretary of State has notified the
18 Committee on Foreign Relations of the Senate and the
19 Committee on Foreign Affairs of the House of Representa-
20 tives in accordance with the process and procedures speci-
21 fied in section 38(f) of the Arms Export Control Act (22
22 U.S.C. 2778(f)).

WASHSTATEC001493

Message

| | |
|---|---|
| **From**: | Paul, Joshua M [PaulJM@state.gov] |
| **Sent**: | 2/14/2019 1:28:26 PM |
| **To**: | Noonan, Michael J [NoonanMJ@state.gov]; Monjay, Robert [MonjayR@state.gov]; PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov]; PM-DTCP-RMA [PM-DTCP-RMA@state.gov] |
| **CC**: | PM-CPA [PM-CPA@state.gov]; String, Marik A [StringMA@state.gov]; Miller, Michael F [Millermf@state.gov]; Legal-PM-DL [Legal-PM-DL@state.gov]; Darrach, Tamara A [DarrachTA@state.gov] |
| **Subject**: | RE: CPA Media Monitoring: DOJ: Man Carrying Prohibited 3-Printed Gun Found With List of Lawmakers' Addresses |

Yes, that too.  Thanks.

**From:** Noonan, Michael J <NoonanMJ@state.gov>
**Sent:** Thursday, February 14, 2019 8:03 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Monjay, Robert <MonjayR@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>; PM-DTCP-RMA <PM-DTCP-RMA@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Legal-PM-DL <Legal-PM-DL@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** Re: CPA Media Monitoring: DOJ: Man Carrying Prohibited 3-Printed Gun Found With List of Lawmakers' Addresses

████████████████████████████████████████████████████

Sent from my BlackBerry 10 smartphone.

**From:** Paul, Joshua M
**Sent:** Thursday, February 14, 2019 7:27 AM
**To:** Monjay, Robert; PM-DTCP-Tasking-DL; PM-DTCP-RMA
**Cc:** PM-CPA; String, Marik A; Miller, Michael F; Legal-PM-DL; Darrach, Tamara A
**Subject:** RE: CPA Media Monitoring: DOJ: Man Carrying Prohibited 3-Printed Gun Found With List of Lawmakers' Addresses

Thanks – that's very helpful insight and commentary.

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 14, 2019 7:26 AM
**To:** PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>; PM-DTCP-RMA <PM-DTCP-RMA@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Legal-PM-DL <Legal-PM-DL@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** Re: CPA Media Monitoring: DOJ: Man Carrying Prohibited 3-Printed Gun Found With List of Lawmakers' Addresses

Josh,

████████████████████████████████████████████████████

[black redaction box]

Robert Monjay
202-663-2817 (office)
[redacted] (mobile)

---

**From:** Paul, Joshua M
**Sent:** Thursday, February 14, 2019 6:13:48 AM
**To:** PM-DTCP-Tasking-DL; PM-DTCP-RMA
**Cc:** PM-CPA; String, Marik A; Miller, Michael F; Legal-PM-DL; Darrach, Tamara A
**Subject:** CPA Media Monitoring: DOJ: Man Carrying Prohibited 3D-Printed Gun Found With List of Lawmakers' Addresses



CPA Note: DOJ release at top; NY Times article below.

[black redaction box]

### Department of Justice
### U.S. Attorney's Office
### Northern District of Texas
### FOR IMMEDIATE RELEASE
### Wednesday, February 13, 2019
### Man Carrying Prohibited 3D-Printed Gun Found With List of Lawmakers' Addresses

A Dallas man was sentenced today to 8 years in prison after officers caught him with a partially 3D-printed AR-15 rifle and a list of lawmakers' addresses in his backpack, despite a court order that prohibited him from possessing a firearm, announced U.S. Attorney for the Northern District of Texas Erin Nealy Cox.

In August 2015, following a violent altercation with a live-in girlfriend, a county judge enacted a protective order against Eric Gerard McGinnis, then 39. Despite that order – which barred him from possessing firearms or ammunition for two years – Mr. McGinnis attempted to buy a semi-automatic rifle component at a federally licensed gun shop in June 2016. The prospective purchase was rejected after an NICS background check uncovered the order, and ATF reminded Mr. McGinnis he wasn't allowed to have a gun.

Instead, Mr. McGinnis obtained a barrel, stock, upper receiver, and grip, then used a 3D printer to create a "lower receiver," the gun's firing mechanism, and assembled the parts to construct a short-barrel AR-15 style rifle.

In July 2017 – with just over one month left on his protective order – Mr. McGinnis took the 3D-printed gun to a wooded area just outside Dallas. Grand Prairie police officers, out on another call, heard three shots fired and eventually located

him just off a major road. Ordered to put his hands up, Mr. McGinnis falsely claimed to be a member of the CIA. Body-cam video shows that officers directed him to kneel on the pavement, cuffed him, and shortly thereafter, inspected his backpack.

In the backpack, the officers discovered the partially 3D printed gun, loaded, and a list labeled "9/11/2001 list of American Terrorists." The hit list – not included as evidence at trial but presented at sentencing – included office and home addresses of several federal lawmakers, both Democrat and Republican.

A subsequent forensic analysis of Mr. McGinnis' electronic devices by U.S. Capitol Police suggests Mr. McGinnis had a strong interest in James Hodgkinson, the shooter who wounded Rep. Steve Scalise and several others at a GOP Congressional baseball practice in Virginia in June 2017, the federal prosecutor revealed at sentencing Wednesday.

In a jailhouse phone call to a family member, Mr. McGinnis admitted he'd "printed" part of the gun.

"I didn't buy a gun, I built the gun," he said in the recorded phone call. "The upper, I printed a lower, and I built it -- installed the trigger and did all that stuff. I built it."

After a two-day trial presided over by Chief U.S. District Judge Barbara M.G. Lynn, a jury found McGinnis guilty of possessing an unregistered short barrel rifle and unlawfully possessing ammunition while subject to an active protective order.

This case, investigated by the Bureau of Alcohol, Tobacco, Firearms & Explosives with assistance from the Grand Prairie Police Department and U.S. Capitol Police, was brought as part of U.S. Attorney Erin Nealy Cox's initiative to keep firearms out of the hands of domestic abusers. Assistant U.S. Attorneys Brian McKay and Rick Calvert prosecuted the case.

"When he realized he couldn't legally purchase a firearm, Eric McGinnis circumvented our gun laws by 3D-printing his weapon, eliminating the need for a background check," said Nealy Cox. "This case should send a message to prohibited persons contemplating acquiring guns by any method: this office is committed to keeping guns out of the hands of those who violate protective orders for domestic violence, no matter how the guns are obtained – by theft, purchase, or 3D printing."

"Controls to determine if an individual is prohibited from purchasing firearms and ammunition worked," said Jeffrey C. Boshek II, Special Agent in Charge of ATF's Dallas Field Division. "Mr. McGinnis applied evolving technology to by-pass those controls to manufacture an untraceable NFA weapon. The fact a prohibited person was able to manufacture an untraceable firearm with apparent ease and anonymity presents a significant challenge and major concern to law enforcement and our community."

Mr. McGinnis is one of a number of defendants prosecuted for possessing firearms or ammunition after domestic violence convictions or while under protective orders in the Northern District of Texas.

Police body-cam footage of his arrest and audio of his jailhouse call are available upon request.

**Man With 3-D-Printed Gun Had Hit List of Lawmakers, U.S. Says**
**New York Times**
**By Matt Stevens**
**Feb. 13, 2019**

A Dallas man was sentenced to eight years in prison on Wednesday after the authorities caught him with a partially 3-D-printed rifle and what federal prosecutors described as a hit list of lawmakers in his backpack.

WASHSTATEC001496

The man, Eric Gerard McGinnis, had been under a court order that prohibited him from possessing a firearm when he was discovered to have had the partially printed AR-15-style rifle in July 2017, according to a statement from the United States Attorney's Office for the Northern District of Texas.

Mr. McGinnis, 43, was charged with possession of an unregistered firearm and possession of ammunition by a prohibited person, prosecutors said. A jury later convicted him on both counts.

Prosecutors said in their statement that police officers had arrested Mr. McGinnis after hearing three shots he had apparently fired in a wooded area just outside of Dallas. They also discovered a list in his backpack labeled "9/11/2001 list of American Terrorists." The list included the office and home addresses of "several federal lawmakers, both Democrat and Republican," the statement said.

Prosecutors did not reveal the names on Mr. McGinnis's list, but at the sentencing hearing on Wednesday they disclosed that a forensic analysis of his electronic devices suggested that Mr. McGinnis "had a strong interest" in James T. Hodgkinson, the man who the authorities say shot and wounded Representative Steve Scalise and several others at a congressional baseball practice in June 2017.

"When he realized he couldn't legally purchase a firearm, Eric McGinnis circumvented our gun laws by 3-D printing his weapon, eliminating the need for a background check," United States Attorney Erin Nealy Cox said in the statement. "This case should send a message to prohibited persons contemplating acquiring guns by any method."

Late Wednesday, Juan G. Rodriguez, a lawyer for Mr. McGinnis, declined to comment on the sentencing.

In August 2015, a judge enacted a protective order against Mr. McGinnis after what prosecutors said was "a violent altercation with a live-in girlfriend." The order barred him from possessing firearms or ammunition for two years, but Mr. McGinnis tried to buy a semiautomatic rifle component at a federally licensed gun shop in June 2016, prosecutors said.

The prospective purchase was rejected after a background check flagged the order, prosecutors said.

So Mr. McGinnis decided instead to use a 3-D printer to create a gun's "lower receiver" — its firing mechanism — and obtain other necessary parts like a barrel, stock, and grip through alternate means, prosecutors said. Once he had all the parts he needed, he assembled a short-barrel AR-15-style rifle, they said.

Then, in July 2017, with about a month left on his protective order, Mr. McGinnis took the gun to the wooded area outside Dallas where Grand Prairie police officers, out on another call, heard three shots fired and eventually took him into custody, prosecutors said. Upon inspecting his backpack, they found the loaded gun and the hit list with the names and addresses of federal lawmakers, prosecutors said. At one point during his confrontation with the police, they said, Mr. McGinnis falsely claimed to work for the C.I.A.

"I didn't buy a gun, I built the gun," Mr. McGinnis said in a recorded phone call to a family member, according to prosecutors. "I printed a lower, and I built it — installed the trigger and did all that stuff."

In Wednesday's statement, Jeffrey C. Boshek II, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, acknowledged that "the fact a prohibited person was able to manufacture an untraceable firearm with apparent ease and anonymity presents a significant challenge and major concern to law enforcement and our community."

But he also noted, "Controls to determine if an individual is prohibited from purchasing firearms and ammunition worked."

Message

| | |
|---|---|
| **From:** | Abraham, Liz (Federal) [LAbraham@doc.gov] |
| **Sent:** | 2/14/2019 4:40:07 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov]; Rogers, Shana A [RogersSA2@state.gov] |



**R. Elizabeth Abraham**
Senior Counsel
U.S. Department of Commerce
Office of Chief Counsel for Industry and Security
14th & Constitution Ave., NW, Room 3839
Washington, DC 20230

Main: 202-482-5301
Direct: █████████
Fax: 202-482-0085
Labraham@doc.gov

Confidentiality Notice: This e-mail message is intended only for the named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify us immediately that you have received this message in error, and delete the message.

Message

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/14/2019 5:02:55 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | Fw: CPA Media Monitoring: SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act |
| **Attachments:** | Menendez 3D Gun Bill for introduction FINAL.pdf |

Sent from my BlackBerry 10 smartphone.

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Wednesday, February 13, 2019 12:35 PM
**To:** PM-DTCP-Tasking-DL
**Cc:** PM-CPA; Miller, Michael F; PM-DAS's; Legal-PM-DL; Darrach, Tamara A; Schwab, Carol M
**Subject:** RE: CPA Media Monitoring: SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act

+L/PM & H – Bill text attached.

---

**From:** Paul, Joshua M
**Sent:** Wednesday, February 13, 2019 10:45 AM
**To:** PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Miller, Michael F <Millermf@state.gov>; PM-DAS's <PM-DASs@state.gov>
**Subject:** CPA Media Monitoring: SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act



**CPA Note: Text of this bill is not yet available.**

Menendez, Colleagues Introduce Bill to Block Trump Admin Push to Allow Unfettered Proliferation of Untraceable, 3D Printable Guns, Weaken Controls over Foreign Arms Sales

Tuesday, February 12, 2019

**WASHINGTON– U.S. Senator Bob Menendez (D-N.J.), Ranking Member of the Senate Foreign Relations Committee**, was joined today by **Senators Chris Murphy (D-Conn.), Ed Markey (D-Mass.), Ben Cardin (D-Md.), Dianne Feinstein (D-Ca.)** in introducing legislation to block the Trump Administration's efforts to weaken controls over foreign arms sales and allow for the unfettered proliferation of untraceable, virtually undetectable, 3D printable guns that threaten public safety.

The Trump Administration announced earlier this month that it has taken steps to transfer control of the export of semi-automatic pistols, assault-style rifles, sniper rifles and ammunition from the United States Munition List under the authority of the Department of State to the less-stringent controls of the Department of Commerce.  It would also transfer the control of the technical information and blueprints for 3D printing of nearly undetectable firearms to Commerce, where the lax regulations will facilitate the Internet publication worldwide.  These moves are also designed to strangle Congressional oversight.

"These changes defy common sense, undermine public safety and undercut our national security.  The only ones cheering these ill-advised moves are the NRA and U.S. gunmakers," **said Sen. Menendez**.  "Small arms and associated ammunition are uniquely lethal.  They are easily spread and easily modified, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world.  Every terrorist and criminal that wants to hijack an

airplane with Americans onboard will more easily be able to smuggle 3D printed, virtually undetectable guns aboard.  Every school, every government facility, every hospital, here and abroad, will become even more vulnerable to gun violence through this change.  This is madness."

"Our laws have not kept up with the pace of technology, especially when it comes to the manufacturing of firearms," **said Sen. Murphy.** "The Trump administration basically gave anyone – including criminals and murderers – a green light to 3D print and sell untraceable 'ghost guns.' Thankfully, the courts have blocked this for now, but Congress needs to act to close this glaring loophole before anyone gets killed."

"We now live in a world where a 3D printer cartridge can become as deadly as a gun cartridge," **said Sen. Markey.** "These homemade 3D firearms are the ultimate gun show loophole -- they are untraceable and in some instances, undetectable. We need to stop the spread of these firearms before they become a public health crisis and the latest addition to the terrible scourge of gun violence that is already plaguing our country."

"A firearm is a firearm, period. It is illogical and dangerous to make blueprints widely available so that anyone can build their own gun. Gun kit manufacturers and distributors must be held to the same regulatory standards for similar firearms," **said Cardin. "Small arms and light weapons are among the most lethal weapons that we and other countries export because these are the weapons that are most likely to be used to commit atrocities and suppress human rights, either by individuals, non-state groups, or governmental security and para-military forces. The threat of untraceable 3D weapons increases the dangers exponentially. The United States should never make it easier for foreign despots, paramilitary or terrorist groups to slaughter or threaten people."**

The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act would outright prevent this transfer, and therefore maintain the strict controls over firearms and 3D printed "ghost gun" information that currently exist on the United States Munitions List.  It would also keep Congressional oversight and legislative disapproval of such sales, which the Trump Administration is also trying to circumvent.

Specifically, the legislation would:

- Prohibit the transfer of small arms/light weapons, and the technical manufacturing information related to them (including 3D Printed guns), to the Department of Commerce;

- Maintain the statutory restriction on publishing 3D Printing gun information, including via the Internet;

- Prohibit the ability of the State Department to suspend the International Trafficking in Arms Regulations without 30-day prior notice to Congress.

Sen. Menendez was an outspoken opponent of the Trump Administration's action last year allowing a Texas company to publish the downloadable designs for 3D printable firearms, which was later blocks by the courts, and has taken a series of additional actions to prevent the proliferation of untraceable, undetectable 3D printed guns. He called on Secretary of State Mike Pompeo to intervene and reverse his department's decision and spoke out about his decision at a hearing of the Senate Foreign Relations Committee

Senators Menendez  and Markey also co-authored two pieces of legislation in the last Congress to combat the threat posed from the spread of 3D printable guns. The 3D Printing Safety Act and the Untraceable Firearms Act of 2018.  Sen. Menendez went to the Senate floor to try and unanimously pass this emergency bill, but Republicans blocked the vote.  He also held a press conference in Cliffside Park, N.J., with local officials and Moms Demand Action to rail against 3D guns.

In August, Senators Menendez, Markey and Feinstein called on the CEO's of Facebook, Microsoft, Yahoo, Google, Craigslist, Reddit and Twitter to proactively block any distribution of 3D gun blueprints on their platforms.

WASHSTATEC001500

116TH CONGRESS
1ST SESSION

# S. _____

To protect the American people from undetectable ghost guns, and for other
purposes.

---

## IN THE SENATE OF THE UNITED STATES

---

Mr. MENENDEZ (for himself, Mr. MURPHY, Mr. MARKEY, Mrs. FEINSTEIN,
and Mr. CARDIN) introduced the following bill; which was read twice and
referred to the Committee on _____

---

# A BILL

To protect the American people from undetectable ghost
guns, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the ''Stopping the Traffic

5  in Overseas Proliferation of Ghost Guns Act''.

6  **SEC. 2. FINDINGS.**

7    Congress makes the following findings:

8        (1) Small arms and associated ammunition

9    are—

10        (A) uniquely lethal;

WASHSTATEC001501

S.L.C.

2

1        (B) easily spread and easily modified, and

2        (C) the primary means of injury, death,

3    and destruction in civil and military conflicts

4    throughout the world.

5    (2) Congress enacted legislation in 2002 to en-

6    sure that the sale and export of such weapons would

7    receive close congressional scrutiny and oversight,

8    which has proven important on multiple occasions.

9    (3) President Donald Trump has proposed to

10   transfer the oversight of the export of most of these

11   lethal weapons from the control of the Department

12   of State under the United States Munitions List to

13   the less stringent export controls of the Department

14   of Commerce, in part to expedite the sale of such

15   weapons abroad.

16   (4) This proposed transfer would—

17       (A) lessen the oversight of the Secretary of

18   State to ensure that such exports comply with

19   United States foreign policy, national security,

20   and human rights requirements;

21       (B) completely eliminate congressional re-

22   view of these sales by removing them from the

23   jurisdiction of the Arms Export Control Act (22

24   U.S.C. 2751 et seq.), which mandates that such

25   sales of $1,000,000 and higher be reviewed by

WASHSTATEC001502

1          Congress and subject to the introduction, con-

2          sideration, and vote on a resolution of dis-

3          approval to reject such sales; and

4              (C) facilitate the global dissemination of

5          technical information, including blueprints, of

6          firearms, allowing their easy production with

7          3D printers.

8          (5) Firearms manufactured with 3D printers

9         could be untraceable and undetectable by conven-

10        tional means, making it easier for criminals, terror-

11        ists, and other bad actors to commit violent crimes.

12 **SEC. 3. STATEMENT OF POLICY.**

13        It is the policy of the United States that—

14         (1) the export of lethal firearms and ammuni-

15        tion deserves the highest level of executive and con-

16        gressional scrutiny and oversight; and

17         (2) long-standing practices, policies, and legal

18        requirements regarding such exports should be con-

19        tinued and strengthened.

20 **SEC. 4. PROHIBITION ON REMOVAL OF FIREARMS FROM**

21                **UNITED STATES MUNITIONS LIST.**

22        (a) RESTRICTION ON REMOVAL OF FIREARMS FROM

23 UNITED STATES MUNITIONS LIST.—Notwithstanding

24 section 38 of the Arms Export Control Act (22 U.S.C.

25 2778), the President may not remove any firearm, or tech-

WASHSTATEC001503

4

1  nical information relating to such firearm, from the
2  United States Munitions List.

3      (b) LIMITATION ON MODIFYING REGULATIONS.—
4  The President and the Secretary of State may not change
5  or alter any requirement under the International Traffic
6  in Arms Regulations (subchapter M of chapter I of title
7  22, Code of Federal Regulations) or such successor regula-
8  tions relating to the export of firearms controlled on the
9  United States Munitions List, as such regulations and mu-
10  nitions list were composed as of January 1, 2018.

11  **SEC. 5. CONGRESSIONAL OVERSIGHT OF SUSPENSION OF**
12                 **EXPORT CONTROL REGULATIONS.**

13      The Secretary of State may not suspend the applica-
14  tion of the International Traffic in Arms Regulations
15  (subchapter M of chapter I of title 22, Code of Federal
16  Regulations) or any such successor regulations, or any
17  part thereof, unless the Secretary of State has notified the
18  Committee on Foreign Relations of the Senate and the
19  Committee on Foreign Affairs of the House of Representa-
20  tives in accordance with the process and procedures speci-
21  fied in section 38(f) of the Arms Export Control Act (22
22  U.S.C. 2778(f)).

WASHSTATEC001504

Message

**From**:        Minarich, Christine M [MinarichCM@state.gov]
**Sent**:        2/14/2019 5:05:29 PM
**To**:          Abraham, Liz (Federal) [LAbraham@doc.gov]
**Subject**:     SEN Menendez: The Stopping the Traffic in Overseas Proliferation of Ghost Guns Act
**Attachments**: Menendez 3D Gun Bill for introduction FINAL.pdf


Here's the text of the proposed bill.
**Official**
**UNCLASSIFIED**

MDM19077                                                           S.L.C.

116TH CONGRESS
1ST SESSION      **S.** _____

To protect the American people from undetectable ghost guns, and for other
purposes.

———————————

IN THE SENATE OF THE UNITED STATES

———————————

Mr. MENENDEZ (for himself, Mr. MURPHY, Mr. MARKEY, Mrs. FEINSTEIN,
and Mr. CARDIN) introduced the following bill; which was read twice and
referred to the Committee on _____

———————————

# A BILL

To protect the American people from undetectable ghost
guns, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2 *tives of the United States of America in Congress assembled,*

3 **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the ''Stopping the Traffic

5 in Overseas Proliferation of Ghost Guns Act''.

6 **SEC. 2. FINDINGS.**

7    Congress makes the following findings:

8       (1) Small arms and associated ammunition

9    are—

10          (A) uniquely lethal;

WASHSTATEC001506

Case 2:20-cv-00111-RAJ   Document 106-10   Filed 09/23/20   Page 119 of 314
MDM19077                                                                S.L.C.

2

1          (B) easily spread and easily modified, and

2          (C) the primary means of injury, death,

3       and destruction in civil and military conflicts

4       throughout the world.

5       (2) Congress enacted legislation in 2002 to en-

6   sure that the sale and export of such weapons would

7   receive close congressional scrutiny and oversight,

8   which has proven important on multiple occasions.

9       (3) President Donald Trump has proposed to

10  transfer the oversight of the export of most of these

11  lethal weapons from the control of the Department

12  of State under the United States Munitions List to

13  the less stringent export controls of the Department

14  of Commerce, in part to expedite the sale of such

15  weapons abroad.

16      (4) This proposed transfer would—

17          (A) lessen the oversight of the Secretary of

18      State to ensure that such exports comply with

19      United States foreign policy, national security,

20      and human rights requirements;

21          (B) completely eliminate congressional re-

22      view of these sales by removing them from the

23      jurisdiction of the Arms Export Control Act (22

24      U.S.C. 2751 et seq.), which mandates that such

25      sales of $1,000,000 and higher be reviewed by

WASHSTATEC001507

1       Congress and subject to the introduction, con-
2       sideration, and vote on a resolution of dis-
3       approval to reject such sales; and

4           (C) facilitate the global dissemination of
5       technical information, including blueprints, of
6       firearms, allowing their easy production with
7       3D printers.

8       (5) Firearms manufactured with 3D printers
9   could be untraceable and undetectable by conven-
10  tional means, making it easier for criminals, terror-
11  ists, and other bad actors to commit violent crimes.

12  **SEC. 3. STATEMENT OF POLICY.**

13      It is the policy of the United States that—

14      (1) the export of lethal firearms and ammuni-
15  tion deserves the highest level of executive and con-
16  gressional scrutiny and oversight; and

17      (2) long-standing practices, policies, and legal
18  requirements regarding such exports should be con-
19  tinued and strengthened.

20  **SEC. 4. PROHIBITION ON REMOVAL OF FIREARMS FROM**
21              **UNITED STATES MUNITIONS LIST.**

22      (a) RESTRICTION ON REMOVAL OF FIREARMS FROM
23  UNITED STATES MUNITIONS LIST.—Notwithstanding
24  section 38 of the Arms Export Control Act (22 U.S.C.
25  2778), the President may not remove any firearm, or tech-

WASHSTATEC001508

4

1    nical information relating to such firearm, from the
2    United States Munitions List.

3        (b) LIMITATION ON MODIFYING REGULATIONS.—
4    The President and the Secretary of State may not change
5    or alter any requirement under the International Traffic
6    in Arms Regulations (subchapter M of chapter I of title
7    22, Code of Federal Regulations) or such successor regula-
8    tions relating to the export of firearms controlled on the
9    United States Munitions List, as such regulations and mu-
10   nitions list were composed as of January 1, 2018.

11   **SEC. 5. CONGRESSIONAL OVERSIGHT OF SUSPENSION OF**
12              **EXPORT CONTROL REGULATIONS.**

13       The Secretary of State may not suspend the applica-
14   tion of the International Traffic in Arms Regulations
15   (subchapter M of chapter I of title 22, Code of Federal
16   Regulations) or any such successor regulations, or any
17   part thereof, unless the Secretary of State has notified the
18   Committee on Foreign Relations of the Senate and the
19   Committee on Foreign Affairs of the House of Representa-
20   tives in accordance with the process and procedures speci-
21   fied in section 38(f) of the Arms Export Control Act (22
22   U.S.C. 2778(f)).

Message

| | |
|---|---|
| **From:** | Abraham, Liz (Federal) [LAbraham@doc.gov] |
| **Sent:** | 2/14/2019 5:22:44 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | See attached... |
| **Attachments:** | BIS Jurisdiction.docx |

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

WASHSTATEC001510

Message
_____

**From:**       Foster, John A [FosterJA2@state.gov]
**Sent:**       2/15/2019 2:41:37 PM
**To:**         Hart, Robert L [HartRL@state.gov]; Monjay, Robert [MonjayR@state.gov]
**Subject:**    Urgent High Side Clearance Request

**Importance:**   High

Rob and Monjay,

Per our discussion about tracking taskers ███████████████████ just wanted to flag that the quick-turn one
mentioned below appears to be in Monjay's wheelhouse.

It's an unclass response to a tasker from OIRA about regulatory reform efforts.  Specifically, it contains an AM from the
Legal Adviser to D that describes the tasker and brief summary document that identifies the Cats I-III rule as at State's
top priority.  The relevant language seems benign to me.

It appears someone demanded clearances from the three State bureaus that issue rules at the last minute, which is the
source of the time pressure.

Please let me know if you want me to take any action.

Best,
John

_____

**From:** PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Sent:** Friday, February 15, 2019 9:17 AM
**To:** PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
**Subject:** Clearance Request on ClassNet
**Importance:** High

DTCP,

Flagging clearance request ███████████ re: OIRA Response. The Line needs PM clearance by 10 am.

Thanks,

Samantha Sison
PM/FO SharePoint
202-647-0561


**Official - Transitory**
UNCLASSIFIED

Message

---

**From:** Monjay, Robert [MonjayR@state.gov]
**Sent:** 2/15/2019 8:16:44 PM
**To:** Timothy Mooney [timothy.mooney@bis.doc.gov]
**Subject:** Re: Pre-review by OFR
**Attachments:** Cat I-III FR - FRN 13.docx

Thanks Tim.

Robert Monjay
202-663-2817 (office)
███████████ (mobile)

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Sent:** Friday, February 15, 2019 3:12:51 PM
**To:** Monjay, Robert
**Subject:** RE: Pre-review by OFR

Rob,

If you want me to send me a copy of your rule, I can send that by email to Moja at the OFR and ask if she can ask Kent Giles or one of the editors to do the pre-review for us. I would include you on the email that goes over.

Tim

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Friday, February 15, 2019 2:34 PM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** Pre-review by OFR

Tim,
Sarah said we can move forward with pre-review by OFR. What is the next step?
Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████████
*Email: MonjayR@state.gov*
██████████████████████

**Official**
UNCLASSIFIED

Message
_____

**From:**       Timothy Mooney [Timothy.Mooney@bis.doc.gov]
**Sent:**       2/15/2019 9:16:19 PM
**To:**         mscott@gpo.gov
**CC:**         Giles, Kent H. (OFR) [kgiles@gpo.gov]; Robert Monjay(monjayr@state.gov) [monjayr@state.gov]; Mulligan, Stacey A.
                (OFR) [smulligan@gpo.gov]; Shelley, Jason (OFR) [jshelley@gpo.gov]; Hillary Hess [Hillary.Hess@bis.doc.gov];
                Heidema, Sarah J [HeidemaSJ@state.gov]
**Subject:**    Pre-review request from Department of Commerce and State for review of Commerce final rule (RIN 0694-AF47) and
                State final rule (RIN 1400-AE30)
**Attachments:** Cat I-III FR - FRN 13.docx; 2018-2-15 Commerce Cat I-III firearms final rule_0694-AF47 for sending to OFR for pre-
                review.docx

Hi Moja,

On March 6, 2019, the Departments of Commerce and State are anticipating submitting the attached final rules to the
Office of the Federal Register for publication.  A final decision has not yet been made on publishing these rules, ████████
███████████████████████████████████████████████████████████

Commerce and State had published these rules as proposed rules concurrently on May 24, 2018. ██████████████



If the OFR has time, Commerce and State would like to request a pre-review of the attached rules prior to our formal
submission of the signed rules.  We understand that the rules will still need to be formally reviewed by the OFR editors
once the rules are submitted, but given the short timeline between when the rules will be signed and formally delivered
and when we will be requesting publication, we and our contacts at OMB thought it would help facilitate the process if
we requested a pre-review of the attached final rules at this time.

I have included my counterpart for the Department of State final rule, Robert Monjay, and he can answer any questions
on the State rule.

We know the OFR is quite busy because of the recent shut down, so we sincerely appreciate if you could accommodate
our pre-review request.

Have a nice holiday weekend.

Tim

Tim Mooney
Senior Export Policy Analyst
Regulatory Policy Division
Bureau of Industry and Security
Tel. (202) 482-3371

Message

| | |
|---|---|
| **From:** | Marquis, Matthew R [MarquisMR@state.gov] |
| **Sent:** | 2/21/2019 9:45:25 PM |
| **To:** | Windecker, Melissa A [WindeckerMA@state.gov]; PM-Strategy [PM-Strategy@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov]; Brown, Stanley L [BrownSL@state.gov]; O'Keefe, Kevin P [OKeefeKP@state.gov]; Miller, Michael F [Millermf@state.gov]; Mak, Daniella [MakD@state.gov]; Martin, Davette T [MartinDT@state.gov]; Dudding, Maria [DuddingM@state.gov]; Litzenberger,Earle D (Lee) [LitzenbergerED@state.gov]; Nute, Kathryn M [NuteKM3@state.gov]; McVerry, James [James.Mcverry.ctr@dla.mil]; String,Marik A [StringMA@state.gov]; Phalen, Susan A [PhalenSA@state.gov]; chandrawhalenlaw@gmail.com |
| **Subject:** | CPA MEDIA MONITORING: 21 February 2019 |



## Alerts for 21 February 2019

"Trump blocks sale of F-35 jets to Turkey over increasing relations with Russia", The transfer of the fighter jets was originally planned for March, but will not go ahead until US Secretary of State Mike Pompeo and Secretary of Defence Patrick M. Shanahan deliver an update to US Congress regarding Turkey's S-400 purchase.

"India Threatens a New Weapon Against Pakistan: Water", India vowed Thursday to cut back on water flowing through its rivers to arid Pakistan, a threat it has made before but now seems more determined to carry out in the wake of a suicide bomb attack last week that India has blamed on Pakistan.

"What if US is laying credibility trap for Beijing on Taiwan?", If China gets lured into a false sense of superiority, it could overreach and make its aggressive move against Taiwan. That could provide the pretext hardliners long have coveted to deal a crushing blow to the PRC before it further narrows the disparity in military capabilities — or at least give it enough of a "bloody nose" to deter further provocations. Despite President Trump's declared affection for Xi Jinping, all bets would be off if the Chinese leader resorts to violence over Taiwan.

"Okinawa Prefectural Assembly member travel to Germany and Italy, find major and "unsettling" differences in the nature of U.S. forces stationed in each country", Toguchi said at a press conference, "Both countries are resolute in enforcing their sovereignty with the U.S., and have built a relationship as equals. If the Japanese government faces the base issues in Okinawa as well as SOFA with the same resolution, they will be able to solve these problems."

"Promising signs of Africa's global leadership on maritime security", The number of kidnappings-for-ransom and reported assaults in the ports, anchorages and territorial waters of West African coastal states and on the high seas, is increasing. This shows the ability of maritime criminal networks to shift and diversify their modus operandi.

"Switzerland: Weapons were lost to the Lebanese Republican Guard", Switzerland has suspended the delivery of military equipment to Lebanon as long as it cannot monitor its final destination and the dangers of transporting it to an undesirable destination.

"US Navy Rear Admiral visit highlights commitment to NATO in the Baltics", The US has provided more than $100 million in combined security assistance to Estonia, which joined NATO in 2004, over the past few years, and conducts nearly 150 military-to-military engagements per year, with over 60 of those taking place with US personnel based in in Estonia.

"U.S. pledges diplomacy, sanctions against Russia, security assistance to support Ukraine", "The United States will continue to draw on the range of measures we have at our disposal, including diplomacy, sanctions, and security assistance to support Ukraine and make clear to Russia that the only resolution the international community can accept is the end of Russia's efforts to undermine Ukraine's sovereignty and territorial integrity. We'll continue to coordinate our efforts with the many other countries supporting Ukraine," he said at the UN General Assembly's 67th plenary meeting on the situation in Ukraine.

"A New Africa Strategy: Expanding Economic and Security Ties on the Basis of Mutual Respect", Under our new strategy, we will also take several additional steps to help our African friends fight terrorism and strengthen the rule of law. We will assist key African governments in building the capacity of partner forces and security institutions to provide effective and sustainable security and law enforcement services to their citizens.

"PRINTED GUNS TRIAL University student has been accused of making weapons with a 3D printer", A STUDENT has been accused of making guns with a 3D printer — the first case of its kind in the UK. Tendai Muswere, 25, was allegedly caught with two computer-generated weapons when cops searched his flat over a separate matter.

"Congress should block rule changes for firearm exports", A 30-day review period has started on the rules, started when the administration sent them to Congress on Feb. 4. Senator Menendez is expected to put a "hold" on the rule changes, but more permanent legislation, such as those acts now introduced in both chambers, is a better long-term approach.

"Heckler & Koch fined for illegal gun sales to Mexico", H&K was found to have breached German arms export rules by shipping nearly 5,000 G36 assault rifles and smaller firearms to strife-torn regions.

"U.S. troop withdrawals aren't on the table for Trump's North Korea peace talks — for now", But Trump in the past has broached the topic himself. Last year, he ordered a pause to some joint military exercises between the two countries to allow North Korea more political space to enact reforms. He has also argued that the U.S. troop presence there is costly and potentially a drain on other military priorities. But he said in a CBS interview earlier this month that he had "no plans" to move the forces.

"US committed to help demine Kingdom", A United States Embassy representative on Wednesday said that his country is committed to help clear landmines, in particular clusters bombs that were dropped in Cambodia's north-east.

"Turkey sticks to S-400 deal despite US pressure", In parallel to the Patriot negotiations, Washington increases pressure on Ankara for the cancellation of its deal with Russia on the procurement of the S-400 air missile defense systems on the grounds that the system risks NATO security both on political and technical grounds.

"Qatari force arrives in Saudi Arabia to take part in the Al Jazeera Shield drill", Qatar may still be under an illegal blockade by neighbouring countries led by Saudi Arabia, but that has not stopped Qatari troops from taking part in military drills organised there.

"Where Congress Stands on Yemen", If Congress wishes to put concrete legal restrictions on the executive branch's actions in Yemen, the next NDAA—which will be drafted over the coming year and brought to a vote sometime in the fall—is the most likely vehicle. Presidential allies in the House and the Senate may seek to limit or avoid these provisions, but Democratic control of the House, combined with Republican reservations about Yemen policy in the Senate, make this a realistic possibility.

"Chad: 400,000 sq. meters cleared of landmines", Since last November, Humanity & Inclusion's mine action team has cleared more than 400,000 square meters of land—the equivalent of 70 football fields—in northern Chad. The team has identified and destroyed 114 landmines and other explosive remnants of war.

WASHSTATEC001515

"Maldives Reiterates Commitment to 'Free, Open Indo-Pacific Region' & Democracy", David J. Ranz, the deputy assistant secretary for Central and South Asian affairs, announced in December an aid package for Maldives comprising $7 million in military aid for maritime security and $3 million for supporting civil society and environmental programmes.

"Lebanon keen to get more military aid from U.S.: official", "We are looking forward to receiving more military aid from the U.S. to help to modernize our army and enable it to use advanced technology in all areas," Bou Saab was quoted as saying by the National News Agency.

"Canada Is Officially Trying To Buy Germany's Unwanted And Unflyable RQ-4E Euro Hawk Drone", A sale of the RQ-4E airframe and any remaining associated equipment to either party would allow Germany to finally wash its hands of the Euro Hawk debacle for good. Nearly two decades ago, the German government had planned on buying five RQ-4Es, but European aviation authorities repeatedly refused to certify the aircraft to fly over the continent due to concerns about the risks the unmanned aircraft could pose to civilian air traffic.

"Boeing's EA-18G fighter plane under consideration by Finnish military", Australia is the only foreign country, so far, to be authorized to purchase the Growler. Finland seeks the eventual purchase of 64 aircraft capable of replacing its aging fleet.

"Largest ever American contingent at Aero India", Dubbing 2018 as a 'banner year for the United States' major defence partnership with India, Juster said: "Last year, the Indian Armed Forces conducted more military exercises with the US than with any other armed forces in the world. More US service members came to train with their counterparts in India than in any time in the past."

"The wrong decision on Hoda Muthana", The bigger issue is the precedent the Trump administration sets. Even as Trump is gleefully blocking Muthana's return, he is urging Europe to take back 800 of its own foreign fighters. Some European states have tough laws and strong security services, but many do not. And even for the countries with competent services, the sheer volume of fighters will be a strain. Politically, the pressure on governments by a population bruised by terrorism and increasingly anti-Muslim is often intense. Many European leaders are looking for an excuse not to take back their citizens, and this decision will give them an excuse.

"As concerns grow about faltering U.S. support for UAE, China steps in to fill the void" While it's unclear precisely how much Chinese arms sales to the UAE have grown, since many of the sales are not announced publicly, there have been some high-profile deals in recent years, including the Chinese Wing Loong II, an armed drone similar to the U.S.-made MQ-9 Reaper.

"Lockheed Martin Deletes Claim That Its Rebranded F-21 Could Be A Path To Indian F-35s", The possibility of F-35 sales to India clearly remain a sensitive issue, both in that country and in the United States. It could be even more complicated now that the Indians have purchased S-400 surface-to-air missile systems from Russia.

"Lockheed Unveils F-21 Fighter, a Beefy F-16 Concept It's Pitching to India", Unveiled on the opening day of the biennial Aero India show in Bengaluru, the F-21 represents the company's latest attempt to nab India's planned $15 billion purchase of 114 new fighter jets. Other announced competitors include the Boeing F/A-18 Super Hornet, Eurofighter Typhoon, Dassault Rafale, Saab Gripen, and Russian aircraft. Lockheed had previously pitched an advanced version of the F-16.

"Pentagon is scrambling as China 'sells the hell out of' armed drones to US allies", According to Jack Watling, a land warfare expert at the Royal United Services Institute (RUSI) in London, the UAE's Chinese drone purchases began after the U.S. refused to sell them American armed UAVs.

WASHSTATEC001516

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:     202.647.6968
e-mail:       *__MarquisMR@state.gov__* |  Web: *__www.state.gov/t/pm /__* |Twitter: *__@StateDeptPM__*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Monjay, Robert [MonjayR@state.gov] |
| **Sent:** | 2/21/2019 9:49:24 PM |
| **To:** | Shufflebarger, Jamie [ShufflebargerJ@state.gov]; Christopherson, CollinC [ChristophersonCC@state.gov]; Ravi, Sunil K [RaviSK@state.gov]; PM-CPA [PM-CPA@state.gov]; Urena, Michael A [UrenaMA@state.gov]; Abisellan,Eduardo [AbisellanE@state.gov]; P/EUR Duty Officer [P-EURDuty@state.gov]; T_SpecAssts [T_SpecAssts@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Shin, JaeE [ShinJE@state.gov]; Hamilton, Catherine E [HamiltonCE@state.gov]; Dearth, Anthony M [DearthAM@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Krueger, Thomas G [KruegerTG@state.gov]; McClung, Gailyn W [McClungGW@state.gov]; Peckham,Yvonne M [PeckhamYM@state.gov]; Thompson, Zainab B [ThompsonZB@state.gov]; Shinnick, Julianne [ShinnickJ@state.gov]; Blaha, Charles O [BlahaCO@state.gov] |
| **Subject:** | CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |
| **Attachments:** | Tab 1 - Cat I-III Final FRN.docx; Tab 2 - Rule Statement on Cat I-III Final FRN.docx; USML Cat I-III FInal FRN - AM to T.docx |

All,
Attached, please find the AM to T ████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████████████
*Email: MonjayR@state.gov*

████████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Blaha, Charles O [BlahaCO@state.gov] |
| **Sent:** | 2/22/2019 12:35:40 PM |
| **To:** | Hamilton, Catherine E [HamiltonCE@state.gov]; Monjay, Robert [MonjayR@state.gov]; Shufflebarger, Jamie [ShufflebargerJ@state.gov]; Christopherson, Collin C [ChristophersonCC@state.gov]; Ravi, Sunil K [RaviSK@state.gov]; PM-CPA [PM-CPA@state.gov]; Urena, Michael A [UrenaMA@state.gov]; Abisellan, Eduardo [AbisellanE@state.gov]; P/EUR DutyOfficer [P-EURDuty@state.gov]; T_SpecAssts [T_SpecAssts@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Shin, Jae E [ShinJE@state.gov]; Dearth, Anthony M [DearthAM@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Minarich,Christine M [MinarichCM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Krueger, Thomas G [KruegerTG@state.gov]; McClung,Gailyn W [McClungGW@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Thompson, Zainab B [ThompsonZB@state.gov]; Shinnick, Julianne [ShinnickJ@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |

Pls put DRL/SHR down as info by request.

**Official**
UNCLASSIFIED

---

**From:** Hamilton, Catherine E <HamiltonCE@state.gov>
**Sent:** Friday, February 22, 2019 7:34 AM
**To:** Monjay, Robert <MonjayR@state.gov>; Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Clear for DTCL.

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T

WASHSTATEC001519

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Dearth, Anthony M [DearthAM@state.gov] |
| **Sent:** | 2/22/2019 12:39:22 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov]; Shufflebarger, Jamie [ShufflebargerJ@state.gov]; Christopherson, Collin C [ChristophersonCC@state.gov]; Ravi, Sunil K [RaviSK@state.gov]; PM-CPA [PM-CPA@state.gov]; Urena, Michael A [UrenaMA@state.gov]; Abisellan,Eduardo [AbisellanE@state.gov]; P/EUR Duty Officer [P-EURDuty@state.gov]; T_SpecAssts [T_SpecAssts@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Shin, JaeE [ShinJE@state.gov]; Hamilton, Catherine E [HamiltonCE@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Krueger,Thomas G [KruegerTG@state.gov]; McClung, Gailyn W [McClungGW@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Thompson, Zainab B [ThompsonZB@state.gov]; Shinnick, Julianne [ShinnickJ@state.gov]; Blaha, Charles O [BlahaCO@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |

Clear for DTCM

v/r, Tony

Anthony M. Dearth
Chief of Staff
Directorate of Defense Trade Controls
Bureau of Political Military Affairs
United States Department of State
Office: 202-663-2836

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ███████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*

*Mobile:* █████████

*Email: MonjayR@state.gov*

████████████████████████████████

**Official - SBU**

UNCLASSIFIED

WASHSTATEC001522

Message

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 2/22/2019 1:09:17 PM |
| **To**: | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject**: | RE: Points on the 1-3 rule for the NSC |

███████████████████████████████████████████████████████

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Friday, February 22, 2019 8:08 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

████████████████████████████████████

**Official - SBU**
UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, February 22, 2019 8:07 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

████████████████████████

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Friday, February 22, 2019 7:58 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

Hi Sarah,
████████████████████████████

Thanks,
Shana

**Official - SBU (Attorney Work Product, Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Rogers, Shana A
**Sent:** Tuesday, February 12, 2019 1:03 PM
**To:** String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

Sarah,
Apologies for the delayed response.  Here are some comments from L/PM. ██████████████████████
████████████████████████████████████████████████████

Give me a call if you'd like to discuss.

Thanks,

Shana

**Official - SBU (Attorney Work Product, Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** String, Marik A <StringMA@state.gov>
**Sent:** Monday, February 11, 2019 6:56 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few additional notes below.

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Monday, February 11, 2019 4:44 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Points on the 1-3 rule for the NSC

A few suggestions

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 11, 2019 4:27 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; String, Marik A <StringMA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Points on the 1-3 rule for the NSC





Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

WASHSTATEC001525

Message

**From:**      Rogers, Shana A [RogersSA2@state.gov]
**Sent:**      2/22/2019 1:18:40 PM
**To:**        Kovar, Jeffrey D [KovarJD@state.gov]; Minarich, Christine M [MinarichCM@state.gov]
**Subject:**   FW: Points on the ITAR rule
**Attachments:** 20190212_RuleImpacts LPM cmts (002).docx

███████████████████████████████████████████████████
███████████████

████████████████████████████

Thanks,
Shana

**Official - SBU**
UNCLASSIFIED

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, February 22, 2019 8:12 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Points on the ITAR rule

---

**From:** Heidema, Sarah J
**Sent:** Tuesday, February 12, 2019 1:19 PM
**To:** 'Kouts, Jodi L. EOP/NSC' <Jodi.L.Kouts@nsc.eop.gov>
**Cc:** Miller, Michael F <Millermf@state.gov>
**Subject:** Points on the ITAR rule

Jody-

███████████████████████████████████████████

Sarah

Message

| | |
|---|---|
| **From:** | Shin, Jae E [ShinJE@state.gov] |
| **Sent:** | 2/22/2019 1:29:21 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |

Clear for Compliance.  Thank you,

Jae

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████████
*Email: MonjayR@state.gov*

████████████████████████████████

**Official - SBU**
UNCLASSIFIED

WASHSTATEC001527

Message

**From:** Abraham, Liz (Federal) [LAbraham@doc.gov]
**Sent:** 2/22/2019 2:06:41 PM
**To:** Rogers, Shana A [RogersSA2@state.gov]
**Subject:** RE: CAT I-III and 3-D issue

███████████████

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Friday, February 22, 2019 9:06 AM
**To:** Abraham, Liz (Federal) <LAbraham@doc.gov>
**Subject:** RE: CAT I-III and 3-D issue

███████████

**Official - Transitory**
UNCLASSIFIED

**From:** Abraham, Liz (Federal) <LAbraham@doc.gov>
**Sent:** Friday, February 22, 2019 8:21 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CAT I-III and 3-D issue

████████████████████████████████████████████████

████████████████████████████████████████████████

Best,
Liz

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Friday, February 22, 2019 8:15 AM
**To:** Abraham, Liz (Federal) <LAbraham@doc.gov>; Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CAT I-III and 3-D issue

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

Shana

**Official - SBU**
UNCLASSIFIED

**From:** Abraham, Liz (Federal) <LAbraham@doc.gov>
**Sent:** Thursday, February 21, 2019 4:57 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>
**Subject:** CAT I-III and 3-D issue

Thanks,
Liz

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

Message

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 2/22/2019 4:59:14 PM |
| **To**: | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject**: | FW: Pre-review request from Department of Commerce and State for review of Commerce final rule (RIN 0694-AF47) and State final rule (RIN 1400-AE30) |
| **Attachments**: | Cat I-III FR - FRN 13.docx; 2018-2-15 Commerce Cat I-III firearms final rule_0694-AF47 for sending to OFR for pre-review.docx |

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Sent:** Friday, February 15, 2019 4:16 PM
**To:** mscott@gpo.gov
**Cc:** Giles, Kent H. (OFR) <kgiles@gpo.gov>; Monjay, Robert <MonjayR@state.gov>; Mulligan, Stacey A. (OFR) <smulligan@gpo.gov>; Shelley, Jason (OFR) <jshelley@gpo.gov>; Hillary Hess <Hillary.Hess@bis.doc.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** Pre-review request from Department of Commerce and State for review of Commerce final rule (RIN 0694-AF47) and State final rule (RIN 1400-AE30)

Hi Moja,

On March 6, 2019, the Departments of Commerce and State are anticipating submitting the attached final rules to the Office of the Federal Register for publication.  A final decision has not yet been made on publishing these rules, ▮▮▮▮

Commerce and State had published these rules as proposed rules concurrently on May 24, 2018.



If the OFR has time, Commerce and State would like to request a pre-review of the attached rules prior to our formal submission of the signed rules.  We understand that the rules will still need to be formally reviewed by the OFR editors once the rules are submitted, but given the short timeline between when the rules will be signed and formally delivered and when we will be requesting publication, we and our contacts at OMB thought it would help facilitate the process if we requested a pre-review of the attached final rules at this time.

I have included my counterpart for the Department of State final rule, Robert Monjay, and he can answer any questions on the State rule.

We know the OFR is quite busy because of the recent shut down, so we sincerely appreciate if you could accommodate our pre-review request.

Have a nice holiday weekend.

Tim

Tim Mooney
Senior Export Policy Analyst
Regulatory Policy Division
Bureau of Industry and Security
Tel. (202) 482-3371

WASHSTATEC001531

Message
_____

**From:**        Monjay, Robert [MonjayR@state.gov]
**Sent:**        2/22/2019 5:15:50 PM
**To:**          Rogers, Shana A [RogersSA2@state.gov]
**Subject:**     RE: Cats I-III FRN
**Attachments:** Tab 1 - Cat I-III Final FRN.docx


FRN 13 is what went to the FR for initial review. I made a few formatting updates on the one that I circulated for signature clearance last night and I was going to have Tim send it over to the FR to replace FRN 13.

**Official - SBU**
UNCLASSIFIED

---

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Friday, February 22, 2019 11:35 AM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** FW: Cats I-III FRN

Hi Rob,
Is this still the latest version of the rule?  Or do you have what went to the *Federal Register* for initial review?

Thanks,
Shana

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, January 07, 2019 2:51 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Cats I-III FRN



**Official - SBU**
UNCLASSIFIED

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, January 7, 2019 2:49 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>; Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: Cats I-III FRN

+ monjay

**Official**
UNCLASSIFIED

WASHSTATEC001532

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Monday, January 7, 2019 2:48 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Cats I-III FRN

Hi Sarah,
Will you please send us the final notice as cleared by OMB?  I'm not sure I have the latest.


Thanks,
Shana


**Official**
UNCLASSIFIED

WASHSTATEC001533

**Message**

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/22/2019 5:16:13 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov] |
| **Subject:** | RE: Cats I-III FRN |

Thanks!

**Official - SBU**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Friday, February 22, 2019 12:16 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: Cats I-III FRN

FRN 13 is what went to the FR for initial review. I made a few formatting updates on the one that I circulated for signature clearance last night and I was going to have Tim send it over to the FR to replace FRN 13.

**Official - SBU**
UNCLASSIFIED

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Friday, February 22, 2019 11:35 AM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** FW: Cats I-III FRN

Hi Rob,
Is this still the latest version of the rule?  Or do you have what went to the *Federal Register* for initial review?

Thanks,
Shana

**Official - SBU**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, January 07, 2019 2:51 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Cats I-III FRN

**Official - SBU**
UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, January 7, 2019 2:49 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>; Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: Cats I-III FRN

+ monjay

**Official**
UNCLASSIFIED

---

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Monday, January 7, 2019 2:48 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** Cats I-III FRN

Hi Sarah,
Will you please send us the final notice as cleared by OMB?  I'm not sure I have the latest.


Thanks,
Shana


**Official**
UNCLASSIFIED

Message
_____

**From:**        Rogers, Shana A [RogersSA2@state.gov]
**Sent:**        2/22/2019 5:18:37 PM
**To:**          Robinson, Stuart J. (CIV) [Stuart.J.Robinson@usdoj.gov]; Myers, Steven A. (CIV) [Steven.A.Myers@usdoj.gov]
**CC:**          Minarich, Christine M [MinarichCM@state.gov]
**Subject:**     FW: Pre-review request from Department of Commerce and State for review of Commerce final rule (RIN 0694-
                 AF47) and State final rule (RIN 1400-AE30)
**Attachments:** Cat I-III FR - FRN 13.docx; 2018-2-15 Commerce Cat I-III firearms final rule_0694-AF47 for sending to OFR for pre-
                 review.docx

[black redaction box]

**Official - SBU**
UNCLASSIFIED
_____

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, February 22, 2019 11:59 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Pre-review request from Department of Commerce and State for review of Commerce final rule (RIN 0694-
AF47) and State final rule (RIN 1400-AE30)


**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Sent:** Friday, February 15, 2019 4:16 PM
**To:** mscott@gpo.gov
**Cc:** Giles, Kent H. (OFR) <kgiles@gpo.gov>; Monjay, Robert <MonjayR@state.gov>; Mulligan, Stacey A. (OFR)
<smulligan@gpo.gov>; Shelley, Jason (OFR) <jshelley@gpo.gov>; Hillary Hess <Hillary.Hess@bis.doc.gov>; Heidema,
Sarah J <HeidemaSJ@state.gov>
**Subject:** Pre-review request from Department of Commerce and State for review of Commerce final rule (RIN 0694-
AF47) and State final rule (RIN 1400-AE30)

Hi Moja,

On March 6, 2019, the Departments of Commerce and State are anticipating submitting the attached final rules to the
Office of the Federal Register for publication.  A final decision has not yet been made on publishing these rules, [black redaction]
[black redaction box]

Commerce and State had published these rules as proposed rules concurrently on May 24, 2018. [black redaction box]

[black redaction box]

[black redaction box]

███████████████████████████████████

If the OFR has time, Commerce and State would like to request a pre-review of the attached rules prior to our formal submission of the signed rules.  We understand that the rules will still need to be formally reviewed by the OFR editors once the rules are submitted, but given the short timeline between when the rules will be signed and formally delivered and when we will be requesting publication, we and our contacts at OMB thought it would help facilitate the process if we requested a pre-review of the attached final rules at this time.

I have included my counterpart for the Department of State final rule, Robert Monjay, and he can answer any questions on the State rule.

We know the OFR is quite busy because of the recent shut down, so we sincerely appreciate if you could accommodate our pre-review request.

Have a nice holiday weekend.

Tim

Tim Mooney
Senior Export Policy Analyst
Regulatory Policy Division
Bureau of Industry and Security
Tel. (202) 482-3371

WASHSTATEC001537

Message

| | |
|---|---|
| **From:** | Darrach, Tamara A [DarrachTA@state.gov] |
| **Sent:** | 2/22/2019 6:39:36 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov] |
| **Subject:** | Re: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |

I clear. Thanks!

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Date:** February 21, 2019 at 4:49:28 PM EST
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>, Christopherson, Collin C <ChristophersonCC@state.gov>, Ravi, Sunil K <RaviSK@state.gov>, PM-CPA <PM-CPA@state.gov>, Urena, Michael A <UrenaMA@state.gov>, Abisellan, Eduardo <AbisellanE@state.gov>, P/EUR Duty Officer <P-EURDuty@state.gov>, T_SpecAssts <T_SpecAssts@state.gov>, Darrach, Tamara A <DarrachTA@state.gov>, Heidema, Sarah J <HeidemaSJ@state.gov>, Shin, Jae E <ShinJE@state.gov>, Hamilton, Catherine E <HamiltonCE@state.gov>, Dearth, Anthony M <DearthAM@state.gov>, Rogers, Shana A <RogersSA2@state.gov>, Minarich, Christine M <MinarichCM@state.gov>, Kottmyer, Alice M <KottmyerAM@state.gov>, Krueger, Thomas G <KruegerTG@state.gov>, McClung, Gailyn W <McClungGW@state.gov>, Peckham, Yvonne M <PeckhamYM@state.gov>, Thompson, Zainab B <ThompsonZB@state.gov>, Shinnick, Julianne <ShinnickJ@state.gov>, Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ███████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent:** | 2/22/2019 7:53:44 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | FW: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T LPM cmts.docx |

Shana,

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Christine

**Official - SBU (Attorney Work Product, Deliberative Process)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████████████
*Email: MonjayR@state.gov*
███████████████████████████

**Official - SBU**
UNCLASSIFIED

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) Removal of Firearms Exports from Congressional Information and Review
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons.  Congressional oversight must be retained.


2)  Proliferation of 3D Gun Printing Technical Information

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests.  The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally.  This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law.  Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950.  3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge.  Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control.  Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months.  By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives.  It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily.  Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control.  Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

WASHSTATEC001542

Message

---

**From**:          String, Marik A [StringMA@state.gov]
**Sent**:          2/25/2019 2:49:20 PM
**To**:            Shufflebarger, Jamie [ShufflebargerJ@state.gov]; Frideres, Taryn F [FrideresTF@state.gov]
**Subject**:       FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**Attachments**:   02-22-19 Menendez Letter on Hold on CAT I-III Transfer.pdf

SBU

For D's awareness.

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) Removal of Firearms Exports from Congressional Information and Review

The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

WASHSTATEC001544

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) Proliferation of 3D Gun Printing Technical Information

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

Message

| | |
|---|---|
| **From:** | Peckham, Yvonne M [PeckhamYM@state.gov] |
| **Sent:** | 2/25/2019 3:15:46 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov] |
| **CC:** | Peckham, Yvonne M [PeckhamYM@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |

AE30 Final rule-    Format - 10603_SignedFR_xx-xx-2019
AE73 ANPRM rule-  Format - 10568_SignedFR_xx-xx-2019

I'm on leave today and don't expect to be in the office until Wednesday. ████████████
██████████████████████████████████████████████

Thank you,
Yvonne

**Official**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Friday, February 22, 2019 5:30 PM
**To:** Peckham, Yvonne M <PeckhamYM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Yvonne,

████████████████████████████████████████████████

Thanks
Rob

**Official**
UNCLASSIFIED

---

**From:** Peckham, Yvonne M <PeckhamYM@state.gov>
**Sent:** Friday, February 22, 2019 11:49 AM
**To:** Monjay, Robert <MonjayR@state.gov>; Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Cc:** Peckham, Yvonne M <PeckhamYM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Hi Rob-

Clear for DIR -

Thank you,
Yvonne

Yvonne Peckham
Office of Directives Management
A/GIS/DIR
515 22nd Street, N.W.
SA-2, Suite 5100
Washington, DC 20037
202-261-8500; ext 4-8500

**Official**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* █████████
*Email: MonjayR@state.gov*
████████████████████████

**Official - SBU**
UNCLASSIFIED

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) Removal of Firearms Exports from Congressional Information and Review
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

WASHSTATEC001549

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) <u>Proliferation of 3D Gun Printing Technical Information</u>
There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

WASHSTATEC001551

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) <u>Removal of Firearms Exports from Congressional Information and Review</u>
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

WASHSTATEC001552

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) Proliferation of 3D Gun Printing Technical Information

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

WASHSTATEC001554

Message
_____

**From:**      Kovar, Jeffrey D [KovarJD@state.gov]
**Sent:**      2/25/2019 4:43:54 PM
**To:**        Pompian, Shawn M [PompianSM@state.gov]
**Subject:**   RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer


I agree completely
_____

**From:** Pompian, Shawn M <PompianSM@state.gov>
**Sent:** Monday, February 25, 2019 11:36 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer



**Official - SBU**
UNCLASSIFIED
_____

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Monday, February 25, 2019 11:20 AM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Pompian, Shawn M <PompianSM@state.gov>
**Subject:** RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

Hi Shawn,



Thanks,
Shana

**Official - SBU**
UNCLASSIFIED
_____

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Sent:** Monday, February 25, 2019 11:08 AM
**To:** Minarich, Christine M <MinarichCM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

[REDACTED]

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 10:59 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>
**Subject:** RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

[REDACTED]

**Official - SBU**
UNCLASSIFIED

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Monday, February 25, 2019 10:49 AM
**To:** Minarich, Christine M <MinarichCM@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>
**Subject:** FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

Christine and Jeff,

[REDACTED]

Happy to discuss,

Shana

**Official - SBU**
UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Monday, February 25, 2019 10:11 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

[REDACTED]

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Friday, February 22, 2019 7:03 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Edmund.Rice@mail.house.gov (edmund.rice@mail.house.gov) <edmund.rice@mail.house.gov>; Silberman, Zach

<Zach.Silberman@mail.house.gov>; Callahan, Tom (Foreign Relations) <Tom_Callahan@foreign.senate.gov>
**Subject:** Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

FYI.  In the mail.

Message

| | |
|---|---|
| **From**: | Hart, Robert L [HartRL@state.gov] |
| **Sent**: | 2/25/2019 5:39:35 PM |
| **To**: | Noonan, Michael J [NoonanMJ@state.gov] |
| **Subject**: | FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |
| **Attachments**: | 02-22-19 Menendez Letter on Hold on CAT I-III Transfer.pdf |

Rob Hart
202.736.9221 | hartrl@state.gov

**Official**
~~UNCLASSIFIED~~

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Monday, February 25, 2019 7:28 AM
**To:** PM-DAS's <PM-DASs@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>; Miller, Michael F
<Millermf@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

███████████████████████████████████████████████████████████

Josh

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Friday, February 22, 2019 7:03 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Edmund.Rice@mail.house.gov (edmund.rice@mail.house.gov) <edmund.rice@mail.house.gov>; Silberman, Zach
<Zach.Silberman@mail.house.gov>; Callahan, Tom (Foreign Relations) <Tom_Callahan@foreign.senate.gov>
**Subject:** Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

FYI.  In the mail.

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510-6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) <u>Removal of Firearms Exports from Congressional Information and Review</u>
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

WASHSTATEC001559

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) <u>Proliferation of 3D Gun Printing Technical Information</u>

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

WASHSTATEC001560

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

WASHSTATEC001561

**Message**

| | |
|---|---|
| **From:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent:** | 2/25/2019 6:42:22 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | FW: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |
| **Attachments:** | IM to PM on CN Process 2.14 FINAL.docx |

███████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

███████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ██████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████████
*Email: MonjayR@state.gov*
████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From**: | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent**: | 2/25/2019 7:11:27 PM |
| **To**: | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject**: | FW: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 2:09 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

████████████████████████████████████████

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM

WASHSTATEC001564

**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

---

**From:** Kovar, Jeffrey D [KovarJD@state.gov]
**Sent:** 2/25/2019 7:30:04 PM
**To:** Rogers, Shana A [RogersSA2@state.gov]
**Subject:** RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

thx

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Monday, February 25, 2019 2:28 PM
**To:** Paul, Joshua M <PaulJM@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Pompian, Shawn M <PompianSM@state.gov>
**Subject:** RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

Josh,



Shana

**Official - SBU**
UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Monday, February 25, 2019 10:11 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Friday, February 22, 2019 7:03 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Edmund.Rice@mail.house.gov (edmund.rice@mail.house.gov) <edmund.rice@mail.house.gov>; Silberman, Zach <Zach.Silberman@mail.house.gov>; Callahan, Tom (Foreign Relations) <Tom_Callahan@foreign.senate.gov>
**Subject:** Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

FYI.  In the mail.

Message

___

**From:** Minarich, Christine M [MinarichCM@state.gov]
**Sent:** 2/25/2019 7:45:00 PM
**To:** Rogers, Shana A [RogersSA2@state.gov]
**Subject:** FW: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

███████████████████████████████████████████████

**Official - Transitory**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 2:09 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

████████████████████████████████████████

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

███████████████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ██████████████
*Email: MonjayR@state.gov*
███████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/25/2019 8:14:36 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T LPM cmts.docx |

███████████████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

---

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:42 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

---

**From:** Minarich, Christine M
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

██████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

█████████████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM

WASHSTATEC001570

**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ██████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████████

**Official - SBU**
UNCLASSIFIED

Message
---

| | |
|---|---|
| **From**: | Kottmyer, Alice M [KottmyerAM@state.gov] |
| **Sent**: | 2/25/2019 8:14:34 PM |
| **To**: | Hart, Regina A [HartRA@state.gov]; Monjay, Robert [MonjayR@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov] |
| **CC**: | Rogers, Shana A [RogersSA2@state.gov]; Johnson, Clifton M [JohnsonCM5@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov] |
| **Subject**: | FW: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |
| **Attachments**: | 02-22-19 Menendez Letter on Hold on CAT I-III Transfer.pdf |

**Importance**: High



Thanks
Alice

---

**From:** Mathew, Asha (Federal) <amathew@doc.gov>
**Sent:** Monday, February 25, 2019 3:07 PM
**To:** Kottmyer, Alice M <KottmyerAM@state.gov>
**Subject:** FW: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

---

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Monday, February 25, 2019 12:21 PM
**To:** Mathew, Asha (Federal) <amathew@doc.gov>
**Subject:** fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) Removal of Firearms Exports from Congressional Information and Review
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) Proliferation of 3D Gun Printing Technical Information

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control.  Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

Message

| | |
|---|---|
| **From:** | Marquis, Matthew R [MarquisMR@state.gov] |
| **Sent:** | 2/25/2019 8:17:45 PM |
| **To:** | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov]; Legal-PM-DL [Legal-PM-DL@state.gov] |
| **Subject:** | CPA Media Monitoring: Waltz: Implications of Proposed Changes to Firearms Export Regulations |
| **Attachments:** | waltz_implications_of_cati-iii-2019.pdf |



**Implications of Proposed Changes to Firearms Export Regulations**
**By Susan Waltz**
**February 2019**

**CPA Note: Paper attached as .pdf**

The Administration has notified Congress of its intent to change firearms export regulations by reclassifying several kinds of firearms and ammunition – from their current designation as military weapons (defense articles) to commercial items. Semi-automatic and non-automatic firearms are the main items slated for change. Included in this class of weapons are the high-powered assault rifles–including the semi-automatic AR-15--that have been used in several mass shootings in the US, as well as armor-piercing sniper rifles and sidearms used by the US military.

The proposed regulatory change involves moving items from one list (the US Munitions List) to another (the Commerce Control List), but the two lists are subject to different statutory provisions and the implications are significant. Legislative action is needed to ensure that stringent rules remain in place to regulate the export of these lethal firearms and suspend further sales to individuals or governments who misuse US weapons or transfer them to criminal or terrorist organizations.

Why the proposed changes matter:

**1. Failure to appreciate the military significance of semi-automatic weapons**

At the heart of the proposed changes is a faulty proposition that semi-automatic weapons are fundamentally a commercial product. Semi-automatic rifles such as the AR-15 are currently classified within the US export regime as "assault rifles." (The key difference between a fully automatic and a semi-automatic weapon is that for semi-automatic firearms, the trigger must be continuously activated to release bullets, whereas a fully automatic weapon only requires a single pull of the trigger to fire a continuous stream. In practical reality, there may be little difference between the two, inasmuch as a semi-automatic weapon can typically fire 45 rounds per minute and soldiers in combat often elect to use fully automatic weapons in a semi-automatic mode.) Category I on the US Munitions List (USML) is currently titled "Firearms, Close Assault Rifles and Combat Shotguns," but if the proposed changes go forward, the sanitized title will become simply "Firearms and Related Articles." Assault rifles as a category – on either list – will disappear, marking a significant change in the way we think about, and categorize, military-style weapons.

What Congress should do: Enact legislation such as H.R. 1134 or S. 459 to prevent the transfer of assault rifles and other semi-automatic weapons from the US Munitions List (USML) to the Commerce Control List (CCL).

**2. Certain Assault Rifles will no longer be subject to the human rights provisions of the Foreign Assistance Act**

Under the current system, Congress is notified when large sales of semi-automatic weapons are proposed for countries such as the Philippines, where government forces have used such weapons in extrajudicial killings or where there is a history of diversion from local security forces to cartels, such as Guatemala. After the proposed rule is adopted, there will be no legal barrier to transferring these weapons to countries with a consistent pattern of gross violations of human rights.

This is one of the provisions that derives from a statutory definition of terms such as defense article, security assistance, or military equipment. Where such terms are defined by statute, they are usually linked to the presence of an item on the USML. Congress recently expanded the definition of defense article to include "600-series" items previously moved to the CCL [22 USC 2304(d)(2)(C)], but no provision has been made regarding the items under consideration here, which are intended to be designated as "500-series" items. Moving an item off the USML now could still affect the scope of the various laws that refer to defense articles or security assistance.

Of greatest concern in this regard are the links to human rights conditionality on security assistance and provision of military equipment [22 USC 2304(d)(2)(C) and 10 USC 362]; vetting of foreign military units that receive training and equipment (22 USC 2378d); provisions for third-party transfer of grant-supplied defense articles (22 USC 2314); and various reports to Congress (22 USC 2776 and 22 USC 2415). If the changes go forward without adjustment, arms deals involving the sale or transfer of semi-automatic weapons would escape various statutory constraints.

What Congress should do:
- Continue to hold implementation of the new rule until the Government Accountability Office has completed its review of the current oversight regime and the Congress has had the opportunity to hold hearings.
- To ensure that human rights protections remain in place with regard to the potential sale or transfer of semi-automatic weapons, Congress should either enact legislation to ensure that weapons and ammunition currently listed in Categories I-III of the USML remain on the USML, or amend the definition of "security assistance" and "defense article" (22 USC 2304) to include weapons transferred to Commerce Department control (i.e. the "500 Series").
- Further, to prevent the diversion to unauthorized users or those engaged in atrocities, Congress should ensure that such security assistance is subject to relevant oversight provisions, including Sections 2314 (diversion), 2378d (vetting) and 2776 (Congressional notification of proposed sales).
- To ensure that Congress continues to receive a comprehensive annual report on US arms sales, the Arms Export Control Act (22 USC 2778) should be amended to clarify that "defense articles" includes any 500-series items on the CCL.

## 3. Retaining authority to monitor end use and block further sales if equipment is misused

What's in an asterisk? Some of the items included on the US Munitions List are marked with an asterisk (*) to signify that they are considered significant military equipment (SME), defense articles "for which special export controls are warranted because of the capacity of such articles for substantial military utility or capability." Semi-automatic firearms are currently classified as SME, but that would change if the current proposals go forward. All of the provisions covering defense articles (discussed above) apply to SME. In addition, there are a few statutory provisions that apply specifically to SME. The most relevant of these applies to end use controls, which could be significantly weakened by the proposed changes. As provided by 22 USC 2753, re-transfers of SME require explicit authorization. A special form for end-use control (DSP-83) is currently required for SME weapons transfers (22 CFR 123.10), and suppliers must provide precise information about the transferred equipment along with a certification by the foreign government at destination that the equipment will not be re-transferred without prior written approval of the US government. Under current law, if significant military equipment is re-transferred without permission or used against anything other than a legitimate military target,

the President must notify the Congress and suspend further transfers. The proposed rule would eliminate these oversight provisions.

What Congress should do if the proposal moves forward: Amend the Arms Export Control Act (notably 22 USC 2753) to ensure that all items currently designated as significant military equipment remain subject to end use monitoring and retain the prohibition on further sales or deliveries in the event of a violation of an end use agreement.

### 4. Risk of Diversion via unscrupulous brokering.

In 2010, 24-year old Efraim Diveroli was arrested for efforts to arrange munitions shipments to Afghanistan without proper authorization. Because the middle men who arrange arms deals are a significant source of diversion of weapons to criminal and terrorist organizations, Congress has imposed strict requirements for registration and licensing of brokers who supply defense articles (22 USC 2778). The State Department has asserted that it will continue to claim jurisdiction over such activities but if the proposed changes are enacted it would no longer have a statutory basis for doing so and therefore may face significant legal challenges to the assertion of this authority. Further, one provision of the changes proposed in May 2018 anticipates a regulatory modification [specifically, 129.2(b)(2)(vii)], which by narrowing the interpretation of "brokering activities" would open the door to lawful transactions that bypass scrutiny of the middlemen who ship, finance, or possibly transship semi-automatic rifles.

In addition to these concerns about the increased risk of diversion, the capacity for monitoring sale and delivery of firearms may be jeopardized by the proposed changes. End use monitoring of such weapons is currently overseen by the State Department's Blue Lantern program, which reports annually to Congress. Although the Commerce Department checks on export compliance through its Sentinel Program, relatively little is known about the operations or effectiveness of this program. It is unclear what resources the Commerce Department would be able to devote to monitoring transfers of 500-series weapons listed on the CCL.

What Congress should do if the proposed regulations are put in place: Adopt legislation making clear that the current statutory definition of brokering activity will remain applicable for middle men involved in the transfer of items formerly controlled by the State Department, and ensure that all brokers of such items are required to register and secure licenses pursuant to Section 2778.

### 5. Criminal Prosecution.

The Department of Justice's January 2018 summary of major US export enforcement cases includes recent smuggling of semi-automatic assault rifles (and other firearms) to Dominican Republic, the Gambia, Russia via Latvia, Thailand and other destinations. In addition, the report documents the case of two men in Georgia attempting to export firearms to a range of international buyers on the dark net, and another similar case from Kansas.9 If semi-automatic weapons and other non-automatic firearms are removed from the US Munitions List, where they are now considered defense articles and significant military equipment, it will impact the ability of law enforcement to charge weapons traffickers with the serious offense of violating the Arms Export Control Act.

What Congress should do: Keep all weapons with substantial military utility – including semi-automatic weapons – on the US Munitions List where they are subject to provisions of the AECA.

### 6. 3-D Printed Weapons.

By moving non-automatic and semi-automatic weapons oversight to the Commerce Department, individuals will no longer need prior approval before publishing or posting designs to produce plastic and untraceable guns using 3D-printing technology or CNC milling.

WASHSTATEC001578

What Congress should do: Enact legislation, such as S. 459, which would extend restrictions on the publication of plans for printing untraceable 3-D printed weapons.

## 7. Weakening Control Procedures (Registration and Licensing).

Procedures to authorize the export of weapons on the USML are overseen by the Department of State and involve two steps: registration and licensing. This system was put in place by Congress several decades ago to ensure adequate oversight of weapons transfers. The two-step procedure allows background scrutiny and close review of transactions before they are made – to ensure that unscrupulous deals do not go forward. While the Commerce Department will require licensing on items transferred, it does not have any way to track manufacturers of these weapons, removing an important opportunity to ensure that those required to obtain licenses are in fact doing so.

What Congress should do if the proposed regulatory changes are implemented: Require the concurrence of the Secretary of State for exports of articles and services that were previously controlled by the State Department.

_____

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.6968
e-mail:        *MarquisMR@state.gov* |   Web:  *www.state.gov/t/pm /* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

**Implications of Proposed Changes to Firearms Export Regulations[1]**

The Administration has notified Congress of its intent to change firearms export regulations by reclassifying several kinds of firearms and ammunition – from their current designation as military weapons (defense articles) to commercial items.   Semi-automatic and non-automatic firearms are the main items slated for change.[2]  Included in this class of weapons are the high-powered assault rifles–including the semi-automatic AR-15--that have been used in several mass shootings in the US, as well as armor-piercing sniper rifles and sidearms used by the US military.[3]

The proposed regulatory change involves moving items from one list (the US Munitions List) to another (the Commerce Control List), but the two lists are subject to different statutory provisions and the implications are significant.   Legislative action is needed to ensure that stringent rules remain in place to regulate the export of these lethal firearms and suspend further sales to individuals or governments who misuse US weapons or transfer them to criminal or terrorist organizations.

Why the proposed changes matter:

1. **Failure to appreciate the military significance of semi-automatic weapons**
   At the heart of the proposed changes is a faulty proposition that semi-automatic weapons are fundamentally a commercial product.  Semi-automatic rifles such as the AR-15 are currently classified within the US export regime as "assault rifles."  (The key difference between a fully automatic and a semi-automatic weapon is that for semi-automatic firearms, the trigger must be continuously activated to release bullets, whereas a fully automatic weapon only requires a single pull of the trigger to fire a continuous stream.  In practical reality, there may be little difference between the two, inasmuch as a semi-automatic weapon can typically fire 45 rounds per minute and soldiers in combat often elect to use fully automatic weapons in a semi-automatic mode.)    Category I on the US Munitions List (USML) is currently titled "Firearms, Close Assault Rifles and Combat Shotguns," but if the proposed changes go forward, the sanitized title will become simply "Firearms and Related Articles."   Assault rifles as a category – on either list – will disappear, marking a significant change in the way we think about, and categorize, military-style weapons.

   What Congress should do:  Enact legislation such as H.R. 1134 or S. 459 to prevent the transfer of assault rifles and other semi-automatic weapons from the US Munitions List (USML) to the Commerce Control List (CCL).

2. **Certain Assault Rifles will no longer be subject to the human rights provisions of the Foreign Assistance Act**
   Under the current system, Congress is notified when large sales of semi-automatic weapons are proposed for countries such as the Philippines, where government forces have used such weapons in extrajudicial killings or where there is a history of diversion from local security forces to cartels, such as Guatemala.  After the proposed rule is adopted, there will be no legal barrier to transferring these weapons to countries with a consistent pattern of gross violations of human rights.[4]

---

[1] Prepared by Susan Waltz, Professor, Gerald R. Ford School of Public Policy, University of Michigan swaltz@umich.edu, February 2019.  Thanks to Brittany Benowitz, Chief Counsel, American Bar Association for Human Rights, for reviewing a draft.

[2] Items scheduled to remain on the military control list include automatic firearms and firearms that use caseless ammunition, silencers, high-capacity magazines, belted ammunition, mortars, cannons, recoilless rifles, and grenade launchers.  Flame throwers with a range exceeding 20 feet would also be explicitly controlled by the munitions list.   In addition to semi-auto and non-auto firearms, grenades containing non-lethal or less lethal projectiles will be under CCL jurisdiction as 500-series items.

[3] See "Comments of the Brady Center and Brady Campaign to Prevent Gun Violence on the Department of State Proposed Rule to Amend the International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III and the Department of Commerce Proposed Rule Regarding Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List," 2018, for a detailed list of firearms that would be released from USML controls.

[4] For further details, see American Bar Association Center for Human Rights, WHITE PAPER: Proposals to Relax Export Controls for Significant Military Equipment January 14, 2013; Comments from the Center for International Policy Re: Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), RIN 0694–AF47 (2018); and Comments by Susan Waltz on ITAR Amendment Categories I, II and III and EAR Amendment RIN 0694-AF47.

WASHSTATEC001580

This is one of the provisions that derives from a statutory definition of terms such as *defense article*, *security assistance*, or *military equipment*. Where such terms are defined by statute, they are usually linked to the presence of an item on the USML.   Congress recently expanded the definition of defense article to include "600-series" items previously moved to the CCL [22 USC 2304(d)(2)(C)], but no provision has been made regarding the items under consideration here, which are intended to be designated as "500-series" items. Moving an item off the USML now could still affect the scope of the various laws that refer to defense articles or security assistance.

Of greatest concern in this regard are the links to human rights conditionality on security assistance and provision of military equipment [22 USC 2304(d)(2)(C) and 10 USC 362]; vetting of foreign military units that receive training and equipment (22 USC 2378d); provisions for third-party transfer of grant-supplied defense articles (22 USC 2314); and various reports to Congress (22 USC 2776 and 22 USC 2415).   If the changes go forward without adjustment, arms deals involving the sale or transfer of semi-automatic weapons would escape various statutory constraints.

What Congress should do:

- Continue to hold implementation of the new rule until the Government Accountability Office has completed its review of the current oversight regime and the Congress has had the opportunity to hold hearings.
- To ensure that **human rights protections** remain in place with regard to the potential sale or transfer of semi-automatic weapons, Congress should either enact legislation to ensure that weapons and ammunition currently listed in Categories I-III of the USML remain on the USML, or amend the definition of "security assistance" and "defense article" (22 USC 2304) to include weapons transferred to Commerce Department control (i.e. the "500 Series").
- Further, to **prevent the diversion to unauthorized users or those engaged in atrocities**, Congress should ensure that such security assistance is subject to relevant oversight provisions, including Sections 2314 (diversion), 2378d (vetting) and 2776 (Congressional notification of proposed sales).
- To ensure that Congress continues to receive **a comprehensive annual report on US arms sales**, the Arms Export Control Act (22 USC 2778) should be amended to clarify that "defense articles" includes any 500-series items on the CCL.[5]

**3.   Retaining authority to monitor end use and block further sales if equipment is misused**

What's in an asterisk?  Some of the items included on the US Munitions List are marked with an asterisk (*) to signify that they are considered significant military equipment (SME), defense articles "for which special export controls are warranted because of the capacity of such articles for substantial military utility or capability."[6]  Semi-automatic firearms are currently classified as SME, but that would change if the current proposals go forward.  All of the provisions covering defense articles (discussed above) apply to SME.  In addition, there are a few statutory provisions that apply specifically to SME.   The most relevant of these applies to end use controls, which could be significantly weakened by the proposed changes.   As provided by 22 USC 2753, re-transfers of SME require explicit authorization.  A special form for end-use control (DSP-83) is currently required for SME weapons transfers (22 CFR 123.10), and suppliers must provide precise information about the transferred equipment along with a certification by the foreign government at destination that the equipment will not be re-transferred without prior written approval of the US government.  Under current law, if significant military equipment is re-transferred without permission or used against anything other than a legitimate military target, the President must notify the Congress and suspend further transfers.  The proposed rule would eliminate these oversight provisions.

---

[5] The BIS regulatory proposal includes several changes to Export Administration Regulations (EAR) that affect record keeping on firearms transactions (namely EAR parts 743, 748, 758, and 762).   If the proposed regulations go forward, AECA reporting provisions (22 USC 2776) should be amended to ensure that statistical information about firearms transactions collected for other purposes, including compliance with multilateral agreements, should also be supplied directly to Congress.
[6] 22 USC 2794(9).

What Congress should do if the proposal moves forward:   Amend the Arms Export Control Act (notably 22 USC 2753) to ensure that all items currently designated as significant military equipment remain subject to end use monitoring and retain the prohibition on further sales or deliveries in the event of a violation of an end use agreement.

4. **Risk of Diversion via unscrupulous brokering.**
   In 2010, 24-year old Efraim Diveroli was arrested for efforts to arrange munitions shipments to Afghanistan without proper authorization.[7]  Because the middle men who arrange arms deals are a significant source of diversion of weapons to criminal and terrorist organizations, Congress has imposed strict requirements for registration and licensing of brokers who supply defense articles (22 USC 2778).  The State Department has asserted that it will continue to claim jurisdiction over such activities but if the proposed changes are enacted it would no longer have a statutory basis for doing so and therefore may face significant legal challenges to the assertion of this authority. Further, one provision of the changes proposed in May 2018 anticipates a regulatory modification [specifically, 129.2(b)(2)(vii)], which by narrowing the interpretation of "brokering activities" would open the door to lawful transactions that bypass scrutiny of the middlemen who ship, finance, or possibly transship semi-automatic rifles.[8]

   In addition to these concerns about the increased risk of diversion, the capacity for monitoring sale and delivery of firearms may be jeopardized by the proposed changes.  End use monitoring of such weapons is currently overseen by the State Department's Blue Lantern program, which reports annually to Congress. Although the Commerce Department checks on export compliance through its Sentinel Program, relatively little is known about the operations or effectiveness of this program.  It is unclear what resources the Commerce Department would be able to devote to monitoring transfers of 500-series weapons listed on the CCL.

   What Congress should do if the proposed regulations are put in place:  Adopt legislation making clear that the current statutory definition of brokering activity will remain applicable for middle men involved in the transfer of items formerly controlled by the State Department, and ensure that all brokers of such items are required to register and secure licenses pursuant to Section 2778.

5. **Criminal Prosecution.**
   The Department of Justice's January 2018 summary of major US export enforcement cases includes recent smuggling of semi-automatic assault rifles (and other firearms) to Dominican Republic, the Gambia, Russia via Latvia, Thailand and other destinations. In addition, the report documents the case of two men in Georgia attempting to export firearms to a range of international buyers on the dark net, and another similar case from Kansas.[9]  If semi-automatic weapons and other non-automatic firearms are removed from the US Munitions List, where they are now considered defense articles and significant military equipment, it will impact the ability of law enforcement to charge weapons traffickers with the serious offense of violating the Arms Export Control Act.

   What Congress should do:  Keep all weapons with substantial military utility – including semi-automatic weapons – on the US Munitions List where they are subject to provisions of the AECA.

---

[7] See "Supplier Under Scrutiny on Arms for Afghans," New York Times, March 27, 2008, and "Arms Dealer Faces New Charges," New York Times, August 23, 2010.  The arms brokering adventures of Diveroli and his partner David Packouz are the story behind the 2016 film *War Dogs*.

[8] As of February 2019 it is not clear whether those changes are being advanced, because they are not referenced in available documents.

[9] Department of Justice, "Summary of Major U.S. Export Enforcement, Economic Espionage, And Sanctions-Related Criminal Cases," January 2018.

6. **3-D Printed Weapons**.

By moving non-automatic and semi-automatic weapons oversight to the Commerce Department, individuals will no longer need prior approval before publishing or posting designs to produce plastic and untraceable guns using 3D-printing technology or CNC milling.

What Congress should do: Enact legislation, such as S. 459, which would extend restrictions on the publication of plans for printing untraceable 3-D printed weapons.

7. **Weakening Control Procedures (Registration and Licensing)**.

Procedures to authorize the export of weapons on the USML are overseen by the Department of State and involve two steps: registration and licensing.  This system was put in place by Congress several decades ago to ensure adequate oversight of weapons transfers.   The two-step procedure allows background scrutiny and close review of transactions before they are made – to ensure that unscrupulous deals do not go forward.   While the Commerce Department will require licensing on items transferred, it does not have any way to track manufacturers of these weapons, removing an important opportunity to ensure that those required to obtain licenses are in fact doing so.

What Congress should do if the proposed regulatory changes are implemented:  Require the concurrence of the Secretary of State for exports of articles and services that were previously controlled by the State Department.

Message

| | |
|---|---|
| **From:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent:** | 2/25/2019 8:19:16 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4 |

███████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Monday, February 25, 2019 3:15 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

███████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:42 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

█████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

███████████████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
███████████████████████████

**Official - SBU**
UNCLASSIFIED

WASHSTATEC001586

Message
_____

**From:** Minarich, Christine M [MinarichCM@state.gov]
**Sent:** 2/25/2019 8:35:45 PM
**To:** Kovar, Jeffrey D [KovarJD@state.gov]
**CC:** Rogers, Shana A [RogersSA2@state.gov]
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III
**Attachments:** USML Cat I-III FInal FRN - AM to T LPM cmts.docx

Jeff,



Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 2:09 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

WASHSTATEC001587

████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████████
*Email:* *MonjayR@state.gov*
████████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

**From:** Mathew, Asha (Federal) [amathew@doc.gov]
**Sent:** 2/25/2019 9:17:54 PM
**To:** Kottmyer, Alice M [KottmyerAM@state.gov]
**CC:** Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov]
**Subject:** RE: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

███████████████████████████████████████████████████████

**From:** Kottmyer, Alice M <KottmyerAM@state.gov>
**Sent:** Monday, February 25, 2019 3:37 PM
**To:** Mathew, Asha (Federal) <amathew@doc.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>
**Subject:** RE: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

███████████████████████████████████████████████████████

**From:** Mathew, Asha (Federal) <amathew@doc.gov>
**Sent:** Monday, February 25, 2019 3:07 PM
**To:** Kottmyer, Alice M <KottmyerAM@state.gov>
**Subject:** FW: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Monday, February 25, 2019 12:21 PM
**To:** Mathew, Asha (Federal) <amathew@doc.gov>
**Subject:** fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

███████████████████████████████████████████

Message

| | |
|---|---|
| **From:** | Monjay, Robert [MonjayR@state.gov] |
| **Sent:** | 2/25/2019 9:28:33 PM |
| **To:** | Shufflebarger, Jamie [ShufflebargerJ@state.gov]; Christopherson, CollinC [ChristophersonCC@state.gov]; Ravi, Sunil K [RaviSK@state.gov]; PM-CPA [PM-CPA@state.gov]; Urena, Michael A [UrenaMA@state.gov]; Abisellan,Eduardo [AbisellanE@state.gov]; P/EUR Duty Officer [P-EURDuty@state.gov]; T_SpecAssts [T_SpecAssts@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Shin, JaeE [ShinJE@state.gov]; Hamilton, Catherine E [HamiltonCE@state.gov]; Dearth, Anthony M [DearthAM@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Krueger, Thomas G [KruegerTG@state.gov]; McClung, Gailyn W [McClungGW@state.gov]; Peckham,Yvonne M [PeckhamYM@state.gov]; Thompson, Zainab B [ThompsonZB@state.gov]; Shinnick, Julianne [ShinnickJ@state.gov]; Blaha, Charles O [BlahaCO@state.gov] |
| **Subject:** | CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T.docx |

All,

We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd, ████████████
████████████████████████████████████████████████████████
████████

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,

Attached, please find the AM to T ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email:* *MonjayR@state.gov*

**Official - SBU**
UNCLASSIFIED

WASHSTATEC001592

Message

**From:** Minarich, Christine M [MinarichCM@state.gov]
**Sent:** 2/25/2019 9:32:05 PM
**To:** Monjay, Robert [MonjayR@state.gov]
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Sounds good – thanks.

**Official - Transitory**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:30 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Christine,

████████████████████████████████████████████

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

████████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

████████████████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Krueger, Thomas G [KruegerTG@state.gov] |
| **Sent:** | 2/25/2019 9:40:20 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |

CATR clears

**Official - SBU**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd, ██████████
████████████████████████████████████████████████████████████████████████████████

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████████

**Official - SBU**
~~UNCLASSIFIED~~

Message

| | |
|---|---|
| **From**: | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent**: | 2/25/2019 9:43:46 PM |
| **To**: | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject**: | RE: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |

thx

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Sent:** Monday, February 25, 2019 4:15 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Monjay, Robert <MonjayR@state.gov>
**Cc:** Johnson, Clifton M <JohnsonCM5@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>
**Subject:** RE: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

███████████████

**Official**
UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Monday, February 25, 2019 4:14 PM
**To:** Kottmyer, Alice M <KottmyerAM@state.gov>; Hart, Regina A <HartRA@state.gov>; Monjay, Robert <MonjayR@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>; Johnson, Clifton M <JohnsonCM5@state.gov>
**Subject:** RE: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

███████████████████████████████████████

**From:** Kottmyer, Alice M <KottmyerAM@state.gov>
**Sent:** Monday, February 25, 2019 3:15 PM
**To:** Hart, Regina A <HartRA@state.gov>; Monjay, Robert <MonjayR@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>; Johnson, Clifton M <JohnsonCM5@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>
**Subject:** FW: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**Importance:** High

███████████████████████████████████████

Thanks
Alice

**From:** Mathew, Asha (Federal) <amathew@doc.gov>
**Sent:** Monday, February 25, 2019 3:07 PM

WASHSTATEC001597

**To:** Kottmyer, Alice M <KottmyerAM@state.gov>
**Subject:** FW: fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

---

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Monday, February 25, 2019 12:21 PM
**To:** Mathew, Asha (Federal) <amathew@doc.gov>
**Subject:** fyi -- Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

████████████████████████████████

Message

| | |
|---|---|
| **From:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent:** | 2/25/2019 9:49:13 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **CC:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III |

OK, let's discuss in the morning.

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 3:36 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III

Jeff,



Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 2:09 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne

<ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent:** | 2/25/2019 9:57:59 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | FW: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T Revised LPM cmts.docx |

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

**Official - SBU (Attorney Work Product, Deliberative Process)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22ⁿᵈ, ████████████
████████████████████████████████████████████████████████████████████████

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,

Attached, please find the AM to T █████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* █████████████
*Email: MonjayR@state.gov*

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent:** | 2/25/2019 10:02:10 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **CC:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T LPM cmts.docx |



**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 3:36 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III

Jeff,



Christine


**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED


**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 2:09 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>;

Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>;
Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A
<RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M
<KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>;
Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne
<ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>

**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,

Attached, please find the AM to T █████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████████
*Email: MonjayR@state.gov*
*'* █████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Dearth, Anthony M [DearthAM@state.gov] |
| **Sent:** | 2/26/2019 12:14:05 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov]; Shufflebarger, Jamie [ShufflebargerJ@state.gov]; Christopherson, Collin C [ChristophersonCC@state.gov]; Ravi, Sunil K [RaviSK@state.gov]; PM-CPA [PM-CPA@state.gov]; Urena, Michael A [UrenaMA@state.gov]; Abisellan,Eduardo [AbisellanE@state.gov]; P/EUR Duty Officer [P-EURDuty@state.gov]; T_SpecAssts [T_SpecAssts@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Shin, JaeE [ShinJE@state.gov]; Hamilton, Catherine E [HamiltonCE@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Krueger,Thomas G [KruegerTG@state.gov]; McClung, Gailyn W [McClungGW@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Thompson, Zainab B [ThompsonZB@state.gov]; Shinnick, Julianne [ShinnickJ@state.gov]; Blaha, Charles O [BlahaCO@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |

Clear this revision for DTCM

v/r, Tony

Anthony M. Dearth
Chief of Staff
Directorate of Defense Trade Controls
Bureau of Political Military Affairs
United States Department of State
Office: 202-663-2836

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd, ▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi,

Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>

**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,

Attached, please find the AM to T to sign the final rule revising USML Categories I-III. The 38(f) notification period

███████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ██████████
*Email: MonjayR@state.gov*
████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/26/2019 12:51:12 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T Revised LPM cmts.docx |



Shana


**Official - SBU (Attorney Work Product, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 4:58 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III


**Official - SBU (Attorney Work Product, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd,

Thank you
Rob

WASHSTATEC001609

Official - SBU
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████

Official - SBU
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent:** | 2/26/2019 12:59:15 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |

I was going to try to go to that as well.  I'll come over before that and see if we can catch him then.  If not, we can try after the briefing.

---

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Date:** February 26, 2019 at 7:56:32 AM EST
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

I'm free all day, will probably go to the L/CA briefing at noon.

**Official**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Tuesday, February 26, 2019 7:55 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

Thanks - looks like our emails crossed!

---

**From:** Rogers, Shana A <RogersSA2@state.gov>
**Date:** February 26, 2019 at 7:51:14 AM EST
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III



**Official - SBU (Attorney Work Product, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 4:58 PM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** FW: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

**Official - SBU (Attorney Work Product, Deliberative Process)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd,

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* █████████████
*Email: MonjayR@state.gov*

███████████████████████

**Official - SBU**
UNCLASSIFIED

Message

---

**From:**      Abisellan, Eduardo [AbisellanE@state.gov]
**Sent:**      2/26/2019 1:15:57 PM
**To:**        Monjay, Robert [MonjayR@state.gov]
**CC:**        Brechwald, Matthew J (T) [BrechwaldMJ2@state.gov]
**Subject:**   RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

Clear from this end.  However, you'll need to change the Senior Bureau Official to DAS String.

Vr/Ed

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T █████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ██████████████
*Email: MonjayR@state.gov*
██████████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | McKeeby, David I [McKeebyDI@state.gov] |
| **Sent:** | 2/26/2019 1:27:07 PM |
| **To:** | PM-DDTC-Directors-DL [PM-DDTC-Directors-DL@state.gov]; Monjay, Robert [MonjayR@state.gov]; Hart, Robert L [HartRL@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov] |
| **Subject:** | CPA MEDIA MONITORING: Bloomberg, Shift in Small-Arms Export Approvals Opposed by a Top Democrat |

Shift in Small-Arms Export Approvals Opposed by a Top Democrat
2019-02-26 09:00:02.2 GMT

By Tony Capaccio
(Bloomberg) -- The top Democrat on the Senate Foreign Relations Committee says he's intent on blocking the State Department from shifting regulation to the Commerce Department
for exports of military-style firearms including certain pistols, semi-automatic rifles and related ammunition.

Senator Robert Menendez said in letters to Secretary of State Michael Pompeo and Commerce Secretary Wilbur Ross that he's placing a hold on the move under a provision in the Arms Export Control Act until his concerns are addressed.
Menendez said "combat rifles, including those commonly known as 'sniper rifles,'" shouldn't be removed from the State Department's munitions list. He added that "firearms and ammunition -- especially those derived from military models and
widely used by military services -- are uniquely dangerous."

Looser regulation also could "open the floodgates of information" for 3D printing of firearms that would be available to terrorists and criminals, the New Jersey senator said.

The State Department notified relevant congressional oversight committees on Feb. 4 that it would transfer. jurisdiction over such weapons effective March 4 unless lawmakers moved to block the change.

Traditionally, State has honored congressional objections, at least long enough to hear out lawmakers' concerns. Menendez has also introduced legislation to block the transfer, as have
House Foreign Affairs Committee Chairman Eliot Engel of New York and Representative Norma Torres of California.

'Extensive Consultation'

A State Department spokesman declined to comment on Menendez's effort to block the move.
Republican Senator Jim Risch of Idaho, the Foreign
Relations panel's chairman, said in a statement that the State Department's "formal notification on February 4 came after extensive consultation. This rule will complete a scrub of the U.S. Munitions List that began in 2010, which is long overdue. I
do not support any further delays in the process."
Under Commerce Department regulations, sales of the weapons involved to overseas customers wouldn't be reported to Congress for approval as they are under State Department regulation
currently.

Public Comment

During a public comment period, the transfer proposal drew criticism from arms control advocates such as the Center for International Policy and praise from the National Rifle
Association's legislative arm and the National Shooting Sports Foundation, a trade association representing the firearms and
ammunition industry.


The NRA Institute for Legislative Action said it "charts a positive course that will contribute to national security, enhance the competitiveness of U.S. businesses and benefit ordinary gun owners." The State Department didn't adopt the NRA
Institute's proposal that Commerce also take over approval for exports of weapons silencers.

The transfer was initially planned by the Obama
administration as part of an overhaul of the arms export licensing process that moved many categories of technology to the Commerce Department. The department is generally viewed by
the defense and aerospace industry as having a less onerous process than the State Department.

That effort was abandoned in 2016 by then-Secretary of State John Kerry after opposition from some Senate Democrats.

WASHSTATEC001616

**Message**

| | |
|---|---|
| **From**: | Shin, Jae E [ShinJE@state.gov] |
| **Sent**: | 2/26/2019 1:38:29 PM |
| **To**: | Monjay, Robert [MonjayR@state.gov] |
| **Subject**: | FW: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |
| **Attachments**: | USML Cat I-III FInal FRN - AM to T.docx |

Rob,

███████████████████████████████████████████████████

Jae

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,

We have updated the AM to reflect the letter received from Senator Menendez dated February 22ⁿᵈ, ████████████
███████████████████████████████████████████████████████████████

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,

Attached, please find the AM to T

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:*
*Email: MonjayR@state.gov*

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Sent:** | 2/26/2019 1:44:13 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T Revised LPM cmts.docx |

Christine,

████████████████████████████████████████████

Thanks,
Shana

**Official - SBU**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Tuesday, February 26, 2019 7:54 AM
**To:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III

████████████████████████████████████████████

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Date:** February 25, 2019 at 5:02:11 PM EST
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III

████████████████████████████████████████████

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 3:36 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III

Jeff,

████████████████████████████████████████████



Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 2:09 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

███████████████████████████████████████████████████████████

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

███████████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████████

████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*

███████████████████████

**Official - SBU**

UNCLASSIFIED

WASHSTATEC001622

Message

| | |
|---|---|
| **From:** | Peckham, Yvonne M [PeckhamYM@state.gov] |
| **Sent:** | 2/26/2019 1:46:14 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |

Clear


**Official**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd ██████████
████████████████████████████████████████████████████████████████████

Thank you
Rob


**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████
████████████████████████████████████████████████████████████████████

WASHSTATEC001623

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████
*Email: MonjayR@state.gov*
███████████████

**Official - SBU**
UNCLASSIFIED

Appointment

**From**:        Miller, Michael F [Millermf@state.gov]
**Sent**:        2/26/2019 1:48:41 PM
**To**:          String, Marik A [StringMA@state.gov]

**Subject**:     Accepted: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**Location**:    Information included

**Start**:       2/26/2019 9:30:00 PM
**End**:         2/26/2019 10:00:00 PM
**Show Time As**: Busy


**Recurrence**:  (none)

Appointment

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 2/26/2019 2:21:58 PM |
| **To**: | String, Marik A [StringMA@state.gov] |

| | |
|---|---|
| **Subject**: | Accepted: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |
| **Location**: | Information included |

| | |
|---|---|
| **Start**: | 2/26/2019 9:30:00 PM |
| **End**: | 2/26/2019 10:00:00 PM |
| **Show Time As**: | Busy |

**Recurrence**:   (none)

**Message**

| | |
|---|---|
| **From:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent:** | 2/26/2019 2:38:32 PM |
| **To:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **CC:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T Revised LPM cmts.docx |

Jeff,

[redacted]

Christine

**Official - SBU (Attorney Work Product, Deliberative Process)**
UNCLASSIFIED

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Sent:** Monday, February 25, 2019 5:02 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III

[redacted]

[redacted]

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 3:36 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Cc:** Rogers, Shana A <RogersSA2@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising Cats I-III

Jeff,

[redacted]



Christine


**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 2:09 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Thanks
Rob

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:41 PM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,


Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process, Attorney Work Product)**
UNCLASSIFIED

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 1:28 PM
**To:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

**From:** Minarich, Christine M <MinarichCM@state.gov>
**Sent:** Monday, February 25, 2019 1:02 PM

WASHSTATEC001628

**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

Rob,

████████████████████████████████████████████████████

Christine

**Official - SBU (Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████

**Official - SBU**
UNCLASSIFIED

WASHSTATEC001629

Message

| | |
|---|---|
| **From:** | Shufflebarger, Jamie [ShufflebargerJ@state.gov] |
| **Sent:** | 2/26/2019 2:41:51 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov]; Christopherson, Collin C [ChristophersonCC@state.gov]; Ravi, Sunil K [RaviSK@state.gov]; PM-CPA [PM-CPA@state.gov]; Urena, Michael A [UrenaMA@state.gov]; Abisellan,Eduardo [AbisellanE@state.gov]; P/EUR Duty Officer [P-EURDuty@state.gov]; T_SpecAssts [T_SpecAssts@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Shin, JaeE [ShinJE@state.gov]; Hamilton, Catherine E [HamiltonCE@state.gov]; Dearth, Anthony M [DearthAM@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Krueger, Thomas G [KruegerTG@state.gov]; McClung, Gailyn W [McClungGW@state.gov]; Peckham,Yvonne M [PeckhamYM@state.gov]; Thompson, Zainab B [ThompsonZB@state.gov]; Shinnick, Julianne [ShinnickJ@state.gov]; Blaha, Charles O [BlahaCO@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |

Clear for D

**Jamie Shufflebarger**
Special Assistant
Office of the Deputy Secretary of State
(202)-647-6237
shufflebargerj@state.gov

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,

We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd,

Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M

<KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>

**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T █████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ████████████
*Email: MonjayR@state.gov*
████████████████████████

**Official - SBU**
UNCLASSIFIED

Appointment

---

**From**: String, Marik A [StringMA@state.gov]
**Sent**: 2/26/2019 3:14:26 PM
**To**: Barz, Chloe O [BarzCO@state.gov]

**Subject**: FW: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**Attachments**: 02-22-19 Menendez Letter on Hold on CAT I-III Transfer.pdf
**Location**: Information included

**Start**: 2/26/2019 9:30:00 PM
**End**: 2/26/2019 10:00:00 PM
**Show Time As**: Tentative

**Recurrence**: (none)

█████████████████████████████████

-----Original Appointment-----
**From:** Celin, Liliana E **On Behalf Of** String, Marik A
**Sent:** Tuesday, February 26, 2019 8:48 AM
**To:** String, Marik A; Bulgrin, Julie K; Jodi.L.Kouts@nsc.eop.gov; Tully, Ryan M. EOP/NSC; Richard Ashooh; Morrison, Timothy A. EOP/NSC; Matthews, Earl G. EOP/NSC; Heidema, Sarah J; Paul, Joshua M; Miller, Michael F; Matthew Borman; Wier, Joseph S. EOP/NSC
**Subject:** Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**When:** Tuesday, February 26, 2019 4:30 PM-5:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Information included

**USA Toll-Free:** ████████████
**USA Caller Paid:** ████████████

**For Other Countries:** Click Here to View Global Conference Access Numbers

**Access Code:** ████████████
**Host Password:** █████████

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) Removal of Firearms Exports from Congressional Information and Review
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

WASHSTATEC001633

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2)  Proliferation of 3D Gun Printing Technical Information
There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

Appointment

---

**From**: String, Marik A [String, Marik A]
**Sent**: 2/26/2019 3:14:29 PM
**To**: String, Marik A [StringMA@state.gov]; Bulgrin, Julie K [BulgrinJK@state.gov]; Jodi.L.Kouts@nsc.eop.gov; Tully, Ryan M. EOP/NSC [Ryan.M.Tully@nsc.eop.gov]; Richard Ashooh [Richard.Ashooh@bis.doc.gov]; Morrison, Timothy A. EOP/NSC [Timothy.A.Morrison@nsc.eop.gov]; Matthews, Earl G. EOP/NSC [Earl.G.Matthews@nsc.eop.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Paul, Joshua M [PaulJM@state.gov]; Miller, Michael F [Millermf@state.gov]; Matthew Borman [Matthew.Borman@bis.doc.gov]; Wier, Joseph S. EOP/NSC [Joseph.S.Wier@nsc.eop.gov]
**CC**: Taylor, Mary Elizabeth [TaylorME3@state.gov]; Faulkner, Charles S [FaulknerCS@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Schwab, Carol M [SchwabCM@state.gov]

**Subject**: FW: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**Attachments**: 02-22-19 Menendez Letter on Hold on CAT I-III Transfer.pdf
**Location**: Information included

**Start**: 2/26/2019 9:30:00 PM
**End**: 2/26/2019 10:00:00 PM
**Show Time As**: Tentative

**Recurrence**: (none)

███████████████████████████

-----Original Appointment-----
**From:** Celin, Liliana E **On Behalf Of** String, Marik A
**Sent:** Tuesday, February 26, 2019 8:48 AM
**To:** String, Marik A; Bulgrin, Julie K; Jodi.L.Kouts@nsc.eop.gov; Tully, Ryan M. EOP/NSC; Richard Ashooh; Morrison, Timothy A. EOP/NSC; Matthews, Earl G. EOP/NSC; Heidema, Sarah J; Paul, Joshua M; Miller, Michael F; Matthew Borman; Wier, Joseph S. EOP/NSC
**Subject:** Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**When:** Tuesday, February 26, 2019 4:30 PM-5:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Information included

|  |  |
|---|---|
| **USA Toll-Free:** | ████████████ |
| **USA Caller Paid:** |  |
| **For Other Countries:** | Click Here to View Global Conference Access Numbers |
| **Access Code:** | ████████████ |
| **Host Password:** |  |

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) <u>Removal of Firearms Exports from Congressional Information and Review</u>
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) Proliferation of 3D Gun Printing Technical Information

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

WASHSTATEC001639

Appointment

| | |
|---|---|
| **From:** | Unknown [Unknown] |
| **To:** | String, Marik A [StringMA@state.gov]; Bulgrin, Julie K [BulgrinJK@state.gov]; Jodi.L.Kouts@nsc.eop.gov; Tully, Ryan M. EOP/NSC [Ryan.M.Tully@nsc.eop.gov]; Richard Ashooh [Richard.Ashooh@bis.doc.gov]; Morrison, Timothy A. EOP/NSC [Timothy.A.Morrison@nsc.eop.gov]; Matthews, Earl G. EOP/NSC [Earl.G.Matthews@nsc.eop.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Paul, Joshua M [PaulJM@state.gov]; Miller, Michael F [Millermf@state.gov]; Matthew Borman [Matthew.Borman@bis.doc.gov]; Wier, Joseph S. EOP/NSC [Joseph.S.Wier@nsc.eop.gov] |
| **CC:** | Taylor, Mary Elizabeth [TaylorME3@state.gov]; Faulkner, Charles S [FaulknerCS@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Schwab, Carol M [SchwabCM@state.gov] |
| **Subject:** | FW: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |
| **Location:** | Information included |
| **Start:** | 2/26/2019 9:30:00 PM |
| **End:** | 2/26/2019 10:00:00 PM |
| **Show Time As:** | Tentative |
| **Recurrence:** | (none) |

███████████████████████████████████

```
-----Original Appointment-----
From: Celin, Liliana E On Behalf Of String, Marik A
Sent: Tuesday, February 26, 2019 8:48 AM
To: String, Marik A\; Bulgrin, Julie K\; Jodi.L.Kouts@nsc.eop.gov\; Tully, Ryan M. EOP/NSC\; Richard
Ashooh\; Morrison, Timothy A. EOP/NSC\; Matthews, Earl G. EOP/NSC\; Heidema, Sarah J\; Paul, Joshua M\;
Miller, Michael F\; Matthew Borman\; Wier, Joseph S. EOP/NSC
Subject: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
When: Tuesday, February 26, 2019 4:30 PM-5:00 PM (UTC-05:00) Eastern Time (US & Canada).
Where: Information included


USA Toll-Free:
```

█████████████████

```
USA Caller Paid:
```

███████████████

```
For Other Countries:

Click Here to View Global Conference Access
Numbers<https://www.teleconference.att.com/servlet/glbAccess?process=1&accessCode=8924087&accessNumber=71
33537024#C2>


Access Code:
```

██████████████

```
Host Password:
```

███████

Appointment

| | |
|---|---|
| **From**: | String, Marik A [StringMA@state.gov] |
| **Sent**: | 2/26/2019 3:14:26 PM |
| **To**: | Taylor, Mary Elizabeth [TaylorME3@state.gov]; Faulkner, Charles S [FaulknerCS@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Schwab, Carol M [SchwabCM@state.gov] |

| | |
|---|---|
| **Subject**: | FW: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |
| **Attachments**: | 02-22-19 Menendez Letter on Hold on CAT I-III Transfer.pdf |
| **Location**: | Information included |

| | |
|---|---|
| **Start**: | 2/26/2019 9:30:00 PM |
| **End**: | 2/26/2019 10:00:00 PM |
| **Show Time As**: | Tentative |

| | |
|---|---|
| **Recurrence**: | (none) |

███████████████████████████████

-----Original Appointment-----
**From:** Celin, Liliana E **On Behalf Of** String, Marik A
**Sent:** Tuesday, February 26, 2019 8:48 AM
**To:** String, Marik A; Bulgrin, Julie K; Jodi.L.Kouts@nsc.eop.gov; Tully, Ryan M. EOP/NSC; Richard Ashooh; Morrison, Timothy A. EOP/NSC; Matthews, Earl G. EOP/NSC; Heidema, Sarah J; Paul, Joshua M; Miller, Michael F; Matthew Borman; Wier, Joseph S. EOP/NSC
**Subject:** Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**When:** Tuesday, February 26, 2019 4:30 PM-5:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Information included

| | |
|---|---|
| **USA Toll-Free:** | ████████████ |
| **USA Caller Paid:** | |
| **For Other Countries:** | Click Here to View Global Conference Access Numbers |
| **Access Code:** | ████████████ |
| **Host Password:** | ████████████ |

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510-6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) <u>Removal of Firearms Exports from Congressional Information and Review</u>
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

WASHSTATEC001642

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) Proliferation of 3D Gun Printing Technical Information

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member


CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

Appointment

| | |
|---|---|
| **From**: | Unknown [Unknown] |
| **To**: | Taylor, Mary Elizabeth [TaylorME3@state.gov]; Faulkner, Charles S [FaulknerCS@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Schwab, Carol M [SchwabCM@state.gov] |
| **Subject**: | FW: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |
| **Location**: | Information included |
| **Start**: | 2/26/2019 9:30:00 PM |
| **End**: | 2/26/2019 10:00:00 PM |
| **Show Time As**: | Tentative |
| **Recurrence**: | (none) |

███████████████████████████████████████

```
-----Original Appointment-----
From: Celin, Liliana E On Behalf Of String, Marik A
Sent: Tuesday, February 26, 2019 8:48 AM
To: String, Marik A\; Bulgrin, Julie K\; Jodi.L.Kouts@nsc.eop.gov\; Tully, Ryan M. EOP/NSC\; Richard
Ashooh\; Morrison, Timothy A. EOP/NSC\; Matthews, Earl G. EOP/NSC\; Heidema, Sarah J\; Paul, Joshua M\;
Miller, Michael F\; Matthew Borman\; Wier, Joseph S. EOP/NSC
Subject: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
When: Tuesday, February 26, 2019 4:30 PM-5:00 PM (UTC-05:00) Eastern Time (US & Canada).
Where: Information included

USA Toll-Free:

████████████              -

USA Caller Paid:

████████████

For Other Countries:

Click Here to View Global Conference Access
Numbers<https://www.teleconference.att.com/servlet/glbAccess?process=1&accessCode=8924087&accessNumber=71
33537024#C2>

Access Code:

████████                         ■

Host Password:

██████
```

Appointment

| | |
|---|---|
| **From**: | String, Marik A [StringMA@state.gov] |
| **Sent**: | 2/26/2019 3:14:26 PM |
| **To**: | Rauland, Frances N [RaulandFN@state.gov] |

| | |
|---|---|
| **Subject**: | FW: Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |
| **Attachments**: | 02-22-19 Menendez Letter on Hold on CAT I-III Transfer.pdf |
| **Location**: | Information included |

| | |
|---|---|
| **Start**: | 2/26/2019 9:30:00 PM |
| **End**: | 2/26/2019 10:00:00 PM |
| **Show Time As**: | Tentative |

| | |
|---|---|
| **Recurrence**: | (none) |

██████████████████████

-----Original Appointment-----
**From:** Celin, Liliana E **On Behalf Of** String, Marik A
**Sent:** Tuesday, February 26, 2019 8:48 AM
**To:** String, Marik A; Bulgrin, Julie K; Jodi.L.Kouts@nsc.eop.gov; Tully, Ryan M. EOP/NSC; Richard Ashooh; Morrison, Timothy A. EOP/NSC; Matthews, Earl G. EOP/NSC; Heidema, Sarah J; Paul, Joshua M; Miller, Michael F; Matthew Borman; Wier, Joseph S. EOP/NSC
**Subject:** Conference Call -Senator Menendez Letter to SecState on Hold on CAT I-III Transfer
**When:** Tuesday, February 26, 2019 4:30 PM-5:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Information included

| | |
|---|---|
| **USA Toll-Free:** | ████████████ |
| **USA Caller Paid:** | |
| **For Other Countries:** | Click Here to View Global Conference Access Numbers |
| **Access Code:** | ████████ |
| **Host Password:** | |

JAMES E. RISCH, IDAHO, CHAIRMAN

MARCO RUBIO, FLORIDA
RON JOHNSON, WISCONSIN
CORY GARDNER, COLORADO
MITT ROMNEY, UTAH
LINDSEY GRAHAM, SOUTH CAROLINA
JOHNNY ISAKSON, GEORGIA
JOHN BARRASSO, WYOMING
ROB PORTMAN, OHIO
RAND PAUL, KENTUCKY
TODD YOUNG, INDIANA
TED CRUZ, TEXAS

ROBERT MENENDEZ, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
JEANNE SHAHEEN, NEW HAMPSHIRE
CHRISTOPHER A. COONS, DELAWARE
TOM UDALL, NEW MEXICO
CHRISTOPHER MURPHY, CONNECTICUT
TIM KAINE, VIRGINIA
EDWARD J. MARKEY, MASSACHUSETTS
JEFF MERKLEY, OREGON
CORY A. BOOKER, NEW JERSEY

# United States Senate

COMMITTEE ON FOREIGN RELATIONS

WASHINGTON, DC 20510–6225

February 22, 2019

The Honorable Mike Pompeo
Secretary of State
U.S. Department of State
2201 C Street, N.W.
Washington, D.C. 20520

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous. They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) Removal of Firearms Exports from Congressional Information and Review
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests. Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML. Moving such firearms from the USML to the CCL would directly

contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons. Congressional oversight must be retained.

2) Proliferation of 3D Gun Printing Technical Information

There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests. The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally. This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law. Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950. 3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily. Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring

the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control. Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

Sincerely,

Robert Menendez
Ranking Member

CC: The Honorable Wilbur Ross, U.S. Secretary of Commerce

WASHSTATEC001649

Message

| | |
|---|---|
| **From:** | Marquis, Matthew R [MarquisMR@state.gov] |
| **Sent:** | 2/26/2019 3:28:02 PM |
| **To:** | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov]; String, Marik A [StringMA@state.gov]; Miller, Michael F [Millermf@state.gov] |
| **Subject:** | CPA Media Monitoring: Bloomberg: Shift in Small-Arms Export Approvals Opposed by a Top Democrat |



**Shift in Small-Arms Export Approvals Opposed by a Top Democrat**
**By Anthony Capaccio**
**26 February 2019**

The top Democrat on the Senate Foreign Relations Committee says he's intent on blocking the State Department from shifting regulation to the Commerce Department for exports of military-style firearms including certain pistols, semi-automatic rifles and related ammunition.

Senator Robert Menendez said in letters to Secretary of State Michael Pompeo and Commerce Secretary Wilbur Ross that he's placing a hold on the move under a provision in the Arms Export Control Act until his concerns are addressed.

Menendez said "combat rifles, including those commonly known as 'sniper rifles,'" shouldn't be removed from the State Department's munitions list. He added that "firearms and ammunition -- especially those derived from military models and widely used by military services -- are uniquely dangerous."

Looser regulation also could "open the floodgates of information" for 3D printing of firearms that would be available to terrorists and criminals, the New Jersey senator said.

The State Department notified relevant congressional oversight committees on Feb. 4 that it would transfer jurisdiction over such weapons effective March 4 unless lawmakers moved to block the change.

Traditionally, State has honored congressional objections, at least long enough to hear out lawmakers' concerns. Menendez has also introduced legislation to block the transfer, as have House Foreign Affairs Committee Chairman Eliot Engel of New York and Representative Norma Torres of California.

**'Extensive Consultation'**

A State Department spokesman declined to comment on Menendez's effort to block the move.

Republican Senator Jim Risch of Idaho, the Foreign Relations panel's chairman, said in a statement that the State Department's "formal notification on February 4 came after extensive consultation. This rule will complete a scrub of the U.S. Munitions List that began in 2010, which is long overdue. I do not support any further delays in the process."

Under Commerce Department regulations, sales of the weapons involved to overseas customers wouldn't be reported to Congress for approval as they are under State Department regulation currently.

**Public Comment**

During a public comment period, the transfer proposal drew criticism from arms control advocates such as the Center for International Policy and praise from the National Rifle Association's legislative arm and the National Shooting Sports Foundation, a trade association representing the firearms and ammunition industry.

The NRA Institute for Legislative Action said it "charts a positive course that will contribute to national security, enhance the competitiveness of U.S. businesses and benefit ordinary gun owners." The State Department didn't adopt the NRA Institute's proposal that Commerce also take over approval for exports of weapons silencers.

The transfer was initially planned by the Obama administration as part of an overhaul of the arms export licensing process that moved many categories of technology to the Commerce Department. The department is generally viewed by the defense and aerospace industry as having a less onerous process than the State Department.

That effort was abandoned in 2016 by then-Secretary of State John Kerry after opposition from some Senate Democrats.

Link: https://www.bloomberg.com/news/articles/2019-02-26/shift-in-small-arms-export-approvals-opposed-by-a-top-democrat

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.6968
e-mail:        *MarquisMR@state.gov* |   Web:  *www.state.gov/t/pm /* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Urena, Michael A [UrenaMA@state.gov] |
| **Sent:** | 2/26/2019 3:46:00 PM |
| **To:** | P/EUR Duty Officer [P-EURDuty@state.gov]; Shufflebarger, Jamie [ShufflebargerJ@state.gov]; Monjay, Robert [MonjayR@state.gov]; Christopherson, Collin C [ChristophersonCC@state.gov]; Ravi, Sunil K [RaviSK@state.gov]; PM-CPA [PM-CPA@state.gov]; Abisellan, Eduardo [AbisellanE@state.gov]; T_SpecAssts [T_SpecAssts@state.gov]; Darrach, TamaraA [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Shin,Jae E [ShinJE@state.gov]; Hamilton, Catherine E [HamiltonCE@state.gov]; Dearth, Anthony M [DearthAM@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Minarich, Christine M [MinarichCM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Krueger, Thomas G [KruegerTG@state.gov]; McClung, Gailyn W [McClungGW@state.gov]; Peckham,Yvonne M [PeckhamYM@state.gov]; Thompson, Zainab B [ThompsonZB@state.gov]; Shinnick, Julianne [ShinnickJ@state.gov]; Blaha, Charles O [BlahaCO@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |

Clear.

**Official**
UNCLASSIFIED

**From:** P/EUR Duty Officer <P-EURDuty@state.gov>
**Sent:** Tuesday, February 26, 2019 10:05 AM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Monjay, Robert <MonjayR@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

Clear for P.

Melanie Carter
P EUR Duty Officer
X7-5269

**Official**
UNCLASSIFIED

**From:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>
**Sent:** Tuesday, February 26, 2019 9:42 AM
**To:** Monjay, Robert <MonjayR@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

Clear for D

**Jamie Shufflebarger**
Special Assistant
Office of the Deputy Secretary of State
(202)-647-6237
shufflebargerj@state.gov

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22ⁿᵈ, ███████████████████████████████████████████████████████████████████████████████

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ████████████████████████████████████████████████████████████████████████████████████████████████████████

Thanks
Rob

WASHSTATEC001653

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████
*Email: MonjayR@state.gov*
███████████████

**Official - SBU**
UNCLASSIFIED

Message
___

**From:** Monjay, Robert [MonjayR@state.gov]
**Sent:** 2/26/2019 4:22:56 PM
**To:** Shin, Jae E [ShinJE@state.gov]
**Subject:** RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

Thank you

**Official**
UNCLASSIFIED
___

**From:** Shin, Jae E <ShinJE@state.gov>
**Sent:** Tuesday, February 26, 2019 8:38 AM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** FW: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

Rob,

Just have a minor edit. ███████████████████████████████████

Jae
___

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,

We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd █████████████
█████████████████████████████████████████████████████████████████

Thank you
Rob

**Official - SBU**
UNCLASSIFIED
___

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>;

Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>

**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,

Attached, please find the AM to T to ███████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ██████████
*Email: MonjayR@state.gov*
████████████████████████

**Official - SBU**
UNCLASSIFIED

Message

---

**From:**      Monjay, Robert [MonjayR@state.gov]
**Sent:**      2/26/2019 4:22:26 PM
**To:**        Darrach, Tamara A [DarrachTA@state.gov]
**Subject:**   RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

Tamara,

█████████████████████████████████████████████████████████████████████████

Thanks
Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Darrach, Tamara A <DarrachTA@state.gov>
**Sent:** Tuesday, February 26, 2019 10:26 AM
**To:** Monjay, Robert <MonjayR@state.gov>
**Subject:** Re: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

Hi Rob,

█████████████████████████████████████████████████████████████████████████

Thanks!

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Date:** February 25, 2019 at 4:28:35 PM EST
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>, Christopherson, Collin C
<ChristophersonCC@state.gov>, Ravi, Sunil K <RaviSK@state.gov>, PM-CPA <PM-CPA@state.gov>,
Urena, Michael A <UrenaMA@state.gov>, Abisellan, Eduardo <AbisellanE@state.gov>, P/EUR Duty Officer
<P-EURDuty@state.gov>, T_SpecAssts <T_SpecAssts@state.gov>, Darrach, Tamara A
<DarrachTA@state.gov>, Heidema, Sarah J <HeidemaSJ@state.gov>, Shin, Jae E <ShinJE@state.gov>,
Hamilton, Catherine E <HamiltonCE@state.gov>, Dearth, Anthony M <DearthAM@state.gov>, Rogers, Shana
A <RogersSA2@state.gov>, Minarich, Christine M <MinarichCM@state.gov>, Kottmyer, Alice M
<KottmyerAM@state.gov>, Krueger, Thomas G <KruegerTG@state.gov>, McClung, Gailyn W
<McClungGW@state.gov>, Peckham, Yvonne M <PeckhamYM@state.gov>, Thompson, Zainab B
<ThompsonZB@state.gov>, Shinnick, Julianne <ShinnickJ@state.gov>, Blaha, Charles O
<BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,
We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd, ████████
█████████████████████████████████████████████████████████████████████████

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T █████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ██████████
*Email: MonjayR@state.gov*
██████████████████████

**Official - SBU**
UNCLASSIFIED

Message
_____

| | |
|---|---|
| **From:** | Miller, Michael F [Millermf@state.gov] |
| **Sent:** | 2/26/2019 7:07:39 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | RE: [Non-DoD Source] USML Categories 1-3 Guidance |


Thank you for asking...I'm good to have Rob do it

-----Original Message-----
From: Heidema, Sarah J <HeidemaSJ@state.gov>
Sent: Tuesday, February 26, 2019 1:08 PM
To: Miller, Michael F <Millermf@state.gov>
Subject: FW: [Non-DoD Source] USML Categories 1-3 Guidance

I think that Rob can do his thing at the HASC/SASC briefing. He's generally a very good briefer and know
both the details of the rule and the political situation surrounding it well (he did a lot of the prep
for the SFRC/HFAC 1-3 briefing).  It should be a rather friendly matter of fact meeting.  That said, I
want to ping you and see if you have any reservations.
-----Original Message-----
From: Paul, Joshua M <PaulJM@state.gov>
Sent: Tuesday, February 26, 2019 11:48 AM
To: Heidema, Sarah J <HeidemaSJ@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Commerce can only make Mon-Weds work.  Is that ok (understand that will be RM only)?

-----Original Message-----
From: Heidema, Sarah J <HeidemaSJ@state.gov>
Sent: Tuesday, February 26, 2019 8:07 AM
To: Paul, Joshua M <PaulJM@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Per our call, yes, though I can make Friday work if others can

-----Original Message-----
From: Paul, Joshua M <PaulJM@state.gov>
Sent: Tuesday, February 26, 2019 8:04 AM
To: Heidema, Sarah J <HeidemaSJ@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Thanks.  So Sarah if this Fri or next Thurs, Rob M otherwise.  Any rule-out times?

-----Original Message-----
From: Heidema, Sarah J <HeidemaSJ@state.gov>
Sent: Tuesday, February 26, 2019 8:03 AM
To: Paul, Joshua M <PaulJM@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Yes, but we should probably do it sooner rather than later, with all the stuff up in the air and no one
knowing where it will land.  Also, while Monjay can do the substance of the brief just fine without me,
I'm out on Mon, Tues and Wed of next week

-----Original Message-----
From: Paul, Joshua M <PaulJM@state.gov>
Sent: Tuesday, February 26, 2019 7:29 AM
To: PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: FW: [Non-DoD Source] USML Categories 1-3 Guidance

Can DTCP support a briefing (statutorily mandated and overdue) with HASC and SASC on Cats 1-3? As I note
below, I am very much in favor of moving forward with this notwithstanding the Menendez letter.

Please provide availability.

J

```
-----Original Message-----
From: Paul, Joshua M
Sent: Tuesday, February 26, 2019 7:28 AM
To: 'Blake, Victoria C CIV DTSA PD (US)' <victoria.c.blake.civ@mail.mil>; Darrach, Tamara A
<DarrachTA@state.gov>; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov>; McKeeby, David I
<McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; MPlatt@doc.gov
Cc: Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA
LD (US) <susan.g.daoussi.civ@mail.mil>; Oukrop, Kenneth Jeffrey (Ken) CIV DTSA LD (US)
<kenneth.j.oukrop.civ@mail.mil>; Rosenberg, Michael R CIV DTSA PD (USA)
<michael.r.rosenberg2.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance
```

██████████████████████████████████████████████████████████████

```
-----Original Message-----
From: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil>
Sent: Monday, February 25, 2019 5:21 PM
To: Darrach, Tamara A <DarrachTA@state.gov>; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov>; McKeeby,
David I <McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; Nesterczuk, Oksana D CIV DTSA PD (US)
<oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil>;
Oukrop, Kenneth Jeffrey (Ken) CIV DTSA LD (US) <kenneth.j.oukrop.civ@mail.mil>; Rosenberg, Michael R CIV
DTSA PD (USA) <michael.r.rosenberg2.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance
```

All,

We still have a requirement to brief the SASC and HASC.

Can you give me State and Commerce availability so we can schedule the brief?

Vicky

```
-----Original Message-----
From: Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
Sent: Wednesday, January 30, 2019 12:19 PM
To: Darrach, Tamara A <DarrachTA@state.gov>; Blake, Victoria C CIV DTSA PD (US)
<victoria.c.blake.civ@mail.mil>; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov>; Bulgrin, Julie K. EOP/NSC
<Julie.K.Bulgrin@nsc.eop.gov>; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov>; McKeeby, David I
<McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; DL NSC Legislative <DL.Legislative@whmo.mil>; Kouts,
Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov>; MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; DL NSC Press <DL.Press@whmo.mil>; Nesterczuk, Oksana D CIV DTSA PD
(US) <oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US)
<susan.g.daoussi.civ@mail.mil>; DAgostino, Anthony <DAgostinoA@state.gov>; Matthew Borman
<Matthew.Borman@bis.doc.gov>; Oukrop, Kenneth Jeffrey (Ken) CIV DTSA LD (US)
<kenneth.j.oukrop.civ@mail.mil>; Devendorf, Thomas E CIV DTSA TD (US) <thomas.e.devendorf.civ@mail.mil>;
Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance
```

Tamara,


SASC and HASC PSMs have indicated they have scheduling conflicts and unable to attend  They are
requesting a separate brief.


Very respectfully,
ANGELA M. TAPIA, Lt Col, USAF
Special Assistant
Office of the Assistant Secretary of Defense, Legislative Affairs
703-614-8692 (office)
███████████████ (mobile)
angela.m.tapia2.mil@mail.mil

From: Darrach, Tamara A <DarrachTA@state.gov>
Sent: Monday, January 28, 2019 5:22 PM
To: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil>; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Hodges, Joshua S.
EOP/NSC <Joshua.S.Hodges@nsc.eop.gov>; McKeeby, David I <McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>;
DL NSC Legislative <DL.Legislative@whmo.mil>; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov>;
MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; DL NSC Press <DL.Press@whmo.mil>; Tapia, Angela M Lt Col USAF OSD
OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; Nesterczuk, Oksana D CIV DTSA PD (US)
<oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil>;
DAgostino, Anthony <DAgostinoA@state.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Oukrop, Kenneth
Jeffrey (Ken) CIV DTSA LD (US) <kenneth.j.oukrop.civ@mail.mil>; Devendorf, Thomas E CIV DTSA TD (US)
<thomas.e.devendorf.civ@mail.mil>; Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


All active links contained in this email were disabled. Please verify the identity of the sender, and
confirm the authenticity of all links contained within the message prior to copying and pasting the
address to a Web browser.

_____


All,


We have Dirksen 423 at 2 pm on Wednesday (1/30) for the briefing.


DOD - Would you please invite HASC and SASC staffers to attend?

Commerce - Would you please invite your SBank folks?


Please let me know if you have any questions.


Thanks!
Tamara


From: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil>
Sent: Monday, January 28, 2019 3:22 PM
To: Darrach, Tamara A <DarrachTA@state.gov>; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov>; Bulgrin,
Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov>;
McKeeby, David I <McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; DL NSC Legislative
<DL.Legislative@whmo.mil>; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov>; MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; DL NSC Press <DL.Press@whmo.mil>; Tapia, Angela M Lt Col USAF OSD
OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; Nesterczuk, Oksana D CIV DTSA PD (US)
<oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil>;
DAgostino, Anthony <DAgostinoA@state.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Oukrop, Kenneth
Jeffrey (Ken) CIV DTSA LD (US) <kenneth.j.oukrop.civ@mail.mil>; Devendorf, Thomas E CIV DTSA TD (US)
<thomas.e.devendorf.civ@mail.mil>; Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Yes DoD is available.


Is this a telecom or face-to-face?

Is there room for 3 from DoD?


Victoria Blake




-----Original Message-----

From: Darrach, Tamara A [Caution-mailto:DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > ]

Sent: Monday, January 28, 2019 2:31 PM

To: Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >;
Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >;
Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >;
McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV
DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA
<PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil <
Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-
mailto:Jodi.L.Kouts@nsc.eop.gov > >; MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; DAgostino, Anthony <DAgostinoA@state.gov < Caution-
mailto:DAgostinoA@state.gov > >; Matthew Borman <Matthew.Borman@bis.doc.gov < Caution-
mailto:Matthew.Borman@bis.doc.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


DOD - Does the Wednesday time slot (2-4 pm) work for you?


Thanks!

Tamara



Tamara Darrach Goulding

Congressional Advisor

Bureau of Legislative Affairs

U.S. Department of State

Tel: (202) 647-8763

Email: DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov >




-----Original Message-----

From: Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >

Sent: Monday, January 28, 2019 2:14 PM

To: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >; Bulgrin, Julie K.
EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >; Hodges, Joshua S.
EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I
<McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US)
<victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-
CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil <
Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-
mailto:Jodi.L.Kouts@nsc.eop.gov > >; MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >;
DAgostino, Anthony <DAgostinoA@state.gov < Caution-mailto:DAgostinoA@state.gov > >; Matthew Borman
<Matthew.Borman@bis.doc.gov < Caution-mailto:Matthew.Borman@bis.doc.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

████████████████████████████████████

-----Original Message-----

From: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >

Sent: Monday, January 28, 2019 12:18 PM

To: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov >
>; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov >
>; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV
DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA
<PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil <
Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-
mailto:Jodi.L.Kouts@nsc.eop.gov > >; MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >;
DAgostino, Anthony <DAgostinoA@state.gov < Caution-mailto:DAgostinoA@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Good afternoon,

Commerce, would you please let us know if you can brief this week?  If yes, State is available on:

- Wednesday (1/30) all day

- Thursday (1/31) in the afternoon

- Friday (2/1) in the morning

Thanks!

Tamara


Tamara Darrach Goulding

Congressional Advisor

Bureau of Legislative Affairs

U.S. Department of State

Tel: (202) 647-8763

Email: DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov >



-----Original Message-----

From: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >

Sent: Friday, January 25, 2019 12:33 PM

To: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-mailto:Jodi.L.Kouts@nsc.eop.gov > >; Platt, Mike (Federal) <MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > ) <MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

████████████████████████████████████████████████


-----Original Message-----

From: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >

Sent: Friday, January 25, 2019 8:21 AM

To: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-

mailto:Jodi.L.Kouts@nsc.eop.gov > >; Platt, Mike (Federal) (MPlatt@doc.gov < Caution-
mailto:MPlatt@doc.gov > ) <MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Good morning,


State is ready to move forward with this briefing.  I will circle back with our availability.


Best,

Tamara




Tamara Darrach Goulding

Congressional Advisor

Bureau of Legislative Affairs

U.S. Department of State

Tel: (202) 647-8763

Email:  DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >




-----Original Message-----
From: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov
> >

Sent: Wednesday, January 9, 2019 4:52 PM

To: Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov >
>; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV
DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA
<PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil <
Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-
mailto:Jodi.L.Kouts@nsc.eop.gov > >; Faulkner, Charles S <FaulknerCS@state.gov < Caution-
mailto:FaulknerCS@state.gov > >; Platt, Mike (Federal) (MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov >
) <MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

WASHSTATEC001665

███████████████████████████████████████

-----Original Message-----

From: Bulgrin, Julie K. EOP/NSC

Sent: Monday, January 7, 2019 5:17 PM

To: Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-mailto:Jodi.L.Kouts@nsc.eop.gov > >; Faulkner, Charles S <FaulknerCS@state.gov < Caution-mailto:FaulknerCS@state.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

███████████████████████████████████████

-----Original Message-----

From: Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >

Sent: Monday, January 7, 2019 10:52 AM

To: McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

+ NSC Leg Affairs.

Joshua S. Hodges

Director, Office of Strategic Communications

202-456-1791


-----Original Message-----

From: McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >

Sent: Monday, January 7, 2019 10:48 AM

To: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Vicky:


Yes, that would be our hope, but given current events still not 100 percent locked in. Since we're briefing SFRC, HFAC, and SBANK probably would make sense to get all the players involved to brief SASC and HASC as well, logistics willing.


+State Leg Affairs for awareness...


Best,

Dave


_____

David I. McKeeby

Office of Congressional & Public Affairs Bureau of Political-Military Affairs (PM/CPA) U.S. Department of State


    Phone:     202.647.8757 |   BlackBerry: ███████████ |

    e-mail:     mckeebydi@state.gov < Caution-mailto:mckeebydi@state.gov > |   Web: >>Caution-www.state.gov/t/pm<< < Caution-http://www.state.gov/t/pm%3c%3c > |Twitter: @StateDeptPM


Stay connected with State.gov:

-----Original Message-----

From: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >

Sent: Monday, January 07, 2019 10:31 AM

To: PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > ; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >

Subject: FW: [Non-DoD Source] USML Categories 1-3 Guidance


Resending to: pm-cpa@state.gov < Caution-mailto:pm-cpa@state.gov >  based on Josh Paul out-of-office instructions due to current lapse in appropriations.


Is it still anticipated that this briefing will occur mid-January?


Vicky Blake


-----Original Message-----

From: Blake, Victoria C CIV DTSA PD (US)

Sent: Monday, January 7, 2019 10:16 AM

To: 'Paul, Joshua M' <PaulJM@state.gov > >; DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > ; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >

Cc: PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Josh,


State, Commerce and Defense owe a briefing to HASC, SASC, HFAC regarding Cat I-III controls.  Since all agencies will be on the Hill briefing Congressional Committees on A-Day, it makes sense that it include HASC and SASC, otherwise we will have to gather the same individuals to go back to the Hill.


Can you include HASC and SASC in the roll out plan?


I have included our OSD LA Officer that would be able to assist in inviting HASC and SASC.


Vicky

-----Original Message-----

From: Paul, Joshua M [Caution-mailto:PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > ]

Sent: Thursday, January 3, 2019 4:21 PM

To: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil >

Cc: PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >

Subject: [Non-DoD Source] USML Categories 1-3 Guidance


All active links contained in this email were disabled. Please verify the identity of the sender, and confirm the authenticity of all links contained within the message prior to copying and pasting the address to a Web browser.


_____


Dear DTSA and NSC PA colleagues,


This morning we began the informal Congressional notification process for changes to U.S. Munitions List Categories 1-3 that would shift some items, notably certain firearms and ammunition, from State control to Commerce control. This commences a 30-day informal Congressional staff review followed by a 30-day formal notification, after which the rule is published in the Federal Register.


As you are aware, due to the lapse in appropriations we are currently limited in our communications with the media. ███████████████████████████████ I wanted to be sure you all had the latest version of the press guidance on the topic,which I have pasted below.  The attached document also lays out the Congressional Notification process and our intended roll-out plan, ████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████

Please don't hesitate to reach out if you have any questions.  And to clarify, there's no action precipitated or requested by this email - I just wanted to ensure everyone - particularly those without lapsed appropriations postures - had the talking points if needed in the coming weeks.

Thanks,

Josh

_____

Josh Paul

Director, Congressional & Public Affairs

Bureau of Political-Military Affairs (PM/CPA)

U.S. Department of State

* Phone:        202.647.7878 |*   BlackBerry:    ███████ |7  Fax:202.647.4055

* e-mail:       PaulJM@State.Gov < Caution-mailto:PaulJM@State.Gov >  < Caution-Caution-mailto:PaulJM@State.Gov >  | *  Web: Caution->>Caution-www.state.gov/t/pm/<< < Caution-http://www.state.gov/t/pm/%3c%3c >  < Caution->>Caution-http://www.state.gov/t/pm/<< < Caution-http://www.state.gov/t/pm/%3c%3c >  >

Caution->>Caution-http://twitter.com/StateDeptPM<< < Caution-http://twitter.com/StateDeptPM%3c%3c >  < Caution->>Caution-http://twitter.com/StateDeptPM<< < Caution-http://twitter.com/StateDeptPM%3c%3c >  >

Stay connected withState.gov:

< Caution->>Caution-http://twitter.com/StateDept<< < Caution-http://twitter.com/StateDept%3c%3c  >  < Caution->>Caution-http://statedept.tumblr.com/<< < Caution-http://statedept.tumblr.com/%3c%3c  >  < Caution->>Caution-http://www.state.gov/misc/echannels/66791.htm<< < Caution-http://www.state.gov/misc/echannels/66791.htm%3c%3c  >  < Caution->>Caution-http://www.facebook.com/usdos<< < Caution-http://www.facebook.com/usdos%3c%3c  >  < Caution->>Caution-http://www.flickr.com/photos/statephotos<< < Caution-http://www.flickr.com/photos/statephotos%3c%3c  >  < Caution->>Caution-http://www.youtube.com/user/statevideo<< < Caution-http://www.youtube.com/user/statevideo%3c%3c  >  < Caution->>Caution-https://plus.google.com/u/0/102630068213960289352<<#102630068213960289352/posts < Caution-https://plus.google.com/u/0/102630068213960289352%3c%3c#102630068213960289352/posts  >  >

This message isUNCLASSIFIED, per E.O. 12958

TOPLINES/KEY THEMES

Key Messages:

*       This Administration firmly believes that national security and economic security are not just complementary but fundamentally inseparable.  The steps we are taking to modernize America's export control lists will require all firearms exports to remain subject to U.S. Government authorization, while rationalizing the administrative requirements for American industry.

*       Specifically, the Administration is publishing rules to amend Categories I, II, and III of the USML in the International Traffic in Arms Regulations (ITAR) and transfer oversight for the export of some types of firearms, ammunition, and related items included in these categories from the Department of State to the Department of Commerce.

WASHSTATEC001671

*       The Administration is publishing these rules after an extensive interagency review process by the Departments of State, Commerce, Homeland Security, and other stakeholders, which included evaluating responsive comments received on the proposed rules that helped to improve the final rules being published.  This review reexamined longstanding policies and regulatory processes to ensure that U.S. industry has every advantage in the global marketplace, while at the same time ensuring the responsible export of arms.

What These Rules Do

*       Under these final rules, firearms and related articles that perform an inherently military function or provide the United States with a critical military advantage will remain under State Department export licensing controls.

*       Items that do not provide the United States with a critical military advantage or perform an inherently military function, including many articles that are widely available in retail outlets that are transitioning off Categories I, II, and III of the USML in the ITAR will be subject to the new 500 series  controls (for Categories I and III items) and 600 series controls (for Category II items) in Category 0 of the U.S. Department of Commerce's Commerce Control List (CCL) in its Export Administration Regulations (EAR). The physical items transitioning to the CCL will remain subject to export licensing requirements, interagency review, and monitoring of commercial entities involved in export and sales.  A U.S. Government authorization will be required for all exports of these firearms and related items transitioning to the CCL.

*       Examples of items moving to the Commerce Control List include:

o  Most semi-automatic and nonautomatic firearms widely available for retail sale;

o  Most firearms parts and components (with exceptions for suppressors, magazines greater than 50 rounds; parts to convert semi-automatic to fully automatic firearms; and parts or components for automatic targeting or stabilization, which will remain under State Department export licensing controls);

o  Most firearms ammunition (with exceptions for belted or linked ammunition, which will remain under State Department export licensing controls); and

o  Minor parts and components of howitzers and artillery.

WASHSTATEC001672

What These Rules DO NOT Do

*       These rulesDO NOT impact the ability of American citizens in the United States to own or possess firearms. These final changes relate only to the export and temporary importation of some types of firearms and ammunition, and other items being moved from USML Categories I, II and III.

*       These changes DO NOT decontrol exports of any firearms or ammunition.  Under these rules, exports of items that have transferred to the Department of Commerce's CCL will continue to require U.S. Government authorization, which will continue to consider the risk of human rights abuses or illicit diversion.

IF ASKED: Congressional Oversight(Department of Commerce to respond)

*       We will provide briefings as requested by our oversight committees.

Benefits of Rules

*       The rules are the product of a larger effort since 2010 to modernize the U.S. export control regulations under the ITAR and EAR, to create a simpler, more robust system that eases industry compliance, improves enforceability, and better protects America's most sensitive technologies.

*       These changes will significantly reduce the regulatory burden on the U.S. commercial firearms and ammunition industry, promote American exports, and clarify the regulatory requirements for independent gunsmiths, while at the same time prioritizing national security controls and continuing our ability to restrict exports where human rights, illicit trafficking, and related issues may be of concern.

*       We anticipate that a number of firearms manufacturers, including many small businesses, that are currently required to register with the Department of State, will be relieved from an annual fee burden

WASHSTATEC001673

under this rule. The Department of Commerce's Bureau of Industry and Security (BIS) does not have registration requirements or export licensing fees.


Firearms Export Licensing by Commerce




*       The Department of Commerce has decades of experience in licensing firearms for export under the EAR.  This involves the export, reexport, and transfer (in-country) of 12-gauge shotguns, optical sighting devices for firearms, as well as law enforcement equipment that the United States has controlled and licensed unilaterally to address human rights concerns worldwide.




*       BIS Export Enforcement (EE) vigorously enforces export controls for items under Commerce jurisdiction. The Department of Commerce, through EE, is the only export licensing agency with an in-house law enforcement component, and manages the Information Triage Unit, an interagency body thatassembles and disseminates relevant information, including non-public sources,to inform licensing and enforcement actions.


*       BIS maintains a robust end-use verification program for items and locations that present the most cause for concern.  During Fiscal Year 2018, BIS conducted 1042 in-person checks in 50 countries.




*       Each export license application undergoes a thorough interagency review process, which includes input from the Departments of Defense and State, and takes into account national security and human rights concerns.


*       The Department of Commerce has a law enforcement component dedicated to enforcingexport law and regulations.




o  BIS EE is a specialized law enforcement organization recognized for its key role in national security investigations.




o  BIS EE accomplishes its mission through preventive and investigative enforcement activities and pursuing appropriate criminal and administrative sanctions against export violators.

WASHSTATEC001674

\*       BIS maintains unique law enforcement authorities to disrupt criminal networks and break up conspiracies to illegally export a multitude of items, including firearms:

o  Temporary Denial Orders are issued by the Assistant Secretary for Export Enforcement and deny the export privileges of a company or individual (whether in the U.S. or abroad) to prevent imminent or on-going export control violations.

o  The Department of Commerce's BIS Entity List is the primary tool to target individual bad actors.  It contains a list of names of certain foreign persons, including businesses, research institutions, government and private organizations, and individuals that have been determined through an interagency review process to have engaged in activities contrary to U.S. national security and/or foreign policy interests.  These persons are restricted from receiving items subject to U.S. jurisdiction unless authorized by a BIS license.  The license review policy for most listed entities is a presumption of denial.

\*       The Department of Commerce's BIS EEworks closely with other U.S. law enforcement agencies.

IF ASKED: 3-D Printed Firearms

\*       3-D printed firearms, like all other firearms, will be controlled on the CCL if they meet the criteria for Commerce control, otherwise they will remain controlled on the USML. ███████████
███████████████████████████████████████████████████████████████████████████████████████

\*       The United States strictly regulates the export of defense articles, including related manufacturing technologies and information, as an integral part of safeguarding U.S. national security and furthering U.S. foreign policy objectives in accordance with the AECA and the ITAR.

\*       On May 24, the Department of State published a proposed regulation that would revise the ITAR to remove certain items from its control, and the Department of Commerce concurrently published a proposed regulation that would revise the EAR to control these items that would be transferred to the CCL.  In the context of developing these regulations, the U.S. Government conducted a national security review to assess which items in Categories I-III continued to warrant control on the USML. The Department of State determined that articles in USML Categories I, II, and III that are removed from the USML under this final rule do not provide the United States with a critical military or intelligence advantage or, in the case of weapons, have an inherently military function, including many articles that are widely available

WASHSTATEC001675

in retail outlets in the United States and abroad, and therefore warrant regulation under the U.S. Department of Commerce's export control system.

Toplines: State of Washington v. Department of State (U.S. District Court for the Western District of Washington)

*       On July 31, the U.S. District Court for the Western District of Washington issued a Temporary Restraining Order that enjoined the federal government from implementing or enforcing the settlement agreement it concluded with Defense Distributed in a recent case.

*       The Department of State promptly took action to implement the court's order.  The Department has removed from its website the notice of the "Temporary Modification of Category I of the United States Munitions List" that is at issue in the case.

*       On August 27, the court granted plaintiffs' motion for a preliminary injunction enjoining the Department from implementing or enforcing the "Temporary Modification of Category I of the United States Munitions List" and the letter sent to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation.

*       We refer you to DOJ for comment on this ongoing litigation.

Background Points about the Predecessor Case (Defense Distributed v. Department of State in the U.S. District Court for the Western District of Texas)

*       The Department of State's involvement in theDefense Distributed case was based on the Department of State's role in regulating exports of certain types of firearms and related technical data and not based on domestic gun control issues.

WASHSTATEC001676

\*      The decision to settle theDefense Distributed case was made in the interest of national security
and foreign policy of the United States in consultation with the Department of Justice.

WASHSTATEC001677

Message

| | |
|---|---|
| **From:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Sent:** | 2/26/2019 7:30:09 PM |
| **To:** | Monjay, Robert [MonjayR@state.gov] |
| **CC:** | Kottmyer, Alice M [KottmyerAM@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]; Rogers, Shana A [RogersSA2@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | RE: CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III |
| **Attachments:** | USML Cat I-III FInal FRN - AM to T Revised LPM cmts.docx |

Rob,



Christine

**Official - SBU (Attorney Work Product, Attorney-Client Privilege, Deliberative Process)**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Monday, February 25, 2019 4:29 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising USML Categories I - III

All,

We have updated the AM to reflect the letter received from Senator Menendez dated February 22nd

Thank you
Rob

**Official - SBU**
UNCLASSIFIED

---

**From:** Monjay, Robert <MonjayR@state.gov>
**Sent:** Thursday, February 21, 2019 4:49 PM
**To:** Shufflebarger, Jamie <ShufflebargerJ@state.gov>; Christopherson, Collin C <ChristophersonCC@state.gov>; Ravi, Sunil K <RaviSK@state.gov>; PM-CPA <PM-CPA@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; P/EUR Duty Officer <P-EURDuty@state.gov>; T_SpecAssts <T_SpecAssts@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>; Dearth, Anthony M <DearthAM@state.gov>; Rogers, Shana A <RogersSA2@state.gov>; Minarich, Christine M <MinarichCM@state.gov>; Kottmyer, Alice M

<KottmyerAM@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; McClung, Gailyn W <McClungGW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Thompson, Zainab B <ThompsonZB@state.gov>; Shinnick, Julianne <ShinnickJ@state.gov>; Blaha, Charles O <BlahaCO@state.gov>
**Subject:** CLEARANCE REQUEST AM to T for Final Rule revising ITAR 126.4

All,
Attached, please find the AM to T ███████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████

Thanks
Rob

*Robert J. Monjay*
*U.S. Department of State*
*Office of Defense Trade Controls Policy*
*Phone: 202.663.2817*
*Mobile:* ███████████
*Email: MonjayR@state.gov*
███████████████████

**Official - SBU**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent:** | 2/26/2019 7:40:49 PM |
| **To:** | Paul, Joshua M [PaulJM@state.gov]; PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov] |
| **Subject:** | RE: [Non-DoD Source] USML Categories 1-3 Guidance |

```
Yes, Monjay can do the brief for DDTC

-----Original Message-----
From: Paul, Joshua M <PaulJM@state.gov>
Sent: Tuesday, February 26, 2019 11:48 AM
To: Heidema, Sarah J <HeidemaSJ@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Commerce can only make Mon-Weds work.  Is that ok (understand that will be RM only)?

-----Original Message-----
From: Heidema, Sarah J <HeidemaSJ@state.gov>
Sent: Tuesday, February 26, 2019 8:07 AM
To: Paul, Joshua M <PaulJM@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Per our call, yes, though I can make Friday work if others can

-----Original Message-----
From: Paul, Joshua M <PaulJM@state.gov>
Sent: Tuesday, February 26, 2019 8:04 AM
To: Heidema, Sarah J <HeidemaSJ@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Thanks.  So Sarah if this Fri or next Thurs, Rob M otherwise.  Any rule-out times?

-----Original Message-----
From: Heidema, Sarah J <HeidemaSJ@state.gov>
Sent: Tuesday, February 26, 2019 8:03 AM
To: Paul, Joshua M <PaulJM@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Yes, but we should probably do it sooner rather than later, with all the stuff up in the air and no one
knowing where it will land.  Also, while Monjay can do the substance of the brief just fine without me,
I'm out on Mon, Tues and Wed of next week

-----Original Message-----
From: Paul, Joshua M <PaulJM@state.gov>
Sent: Tuesday, February 26, 2019 7:29 AM
To: PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>
Cc: PM-CPA <PM-CPA@state.gov>
Subject: FW: [Non-DoD Source] USML Categories 1-3 Guidance

Can DTCP support a briefing (statutorily mandated and overdue) with HASC and SASC on Cats 1-3? As I note
below, I am very much in favor of moving forward with this notwithstanding the Menendez letter.

Please provide availability.

J

-----Original Message-----
From: Paul, Joshua M
Sent: Tuesday, February 26, 2019 7:28 AM
To: 'Blake, Victoria C CIV DTSA PD (US)' <victoria.c.blake.civ@mail.mil>; Darrach, Tamara A
<DarrachTA@state.gov>; Kimberly Ekmark <kimberly.Ekmark@bis.doc.gov>; McKeeby, David I
<McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; MPlatt@doc.gov
Cc: Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA
LD (US) <susan.g.daoussi.civ@mail.mil>; Oukrop, Kenneth Jeffrey (Ken) CIV DTSA LD (US)
```

WASHSTATEC001680

<kenneth.j.oukrop.civ@mail.mil>; Rosenberg, Michael R CIV DTSA PD (USA)
<michael.r.rosenberg2.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

████████████████████████████████████████████████████████

-----Original Message-----
From: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil>
Sent: Monday, February 25, 2019 5:21 PM
To: Darrach, Tamara A <DarrachTA@state.gov>; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov>; McKeeby,
David I <McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; Nesterczuk, Oksana D CIV DTSA PD (US)
<oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil>;
Oukrop, Kenneth Jeffrey (Ken) CIV DTSA LD (US) <kenneth.j.oukrop.civ@mail.mil>; Rosenberg, Michael R CIV
DTSA PD (USA) <michael.r.rosenberg2.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

All,

We still have a requirement to brief the SASC and HASC.

Can you give me State and Commerce availability so we can schedule the brief?

Vicky

-----Original Message-----
From: Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
Sent: Wednesday, January 30, 2019 12:19 PM
To: Darrach, Tamara A <DarrachTA@state.gov>; Blake, Victoria C CIV DTSA PD (US)
<victoria.c.blake.civ@mail.mil>; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov>; Bulgrin, Julie K. EOP/NSC
<Julie.K.Bulgrin@nsc.eop.gov>; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov>; McKeeby, David I
<McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; DL NSC Legislative <DL.Legislative@whmo.mil>; Kouts,
Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov>; MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; DL NSC Press <DL.Press@whmo.mil>; Nesterczuk, Oksana D CIV DTSA PD
(US) <oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US)
<susan.g.daoussi.civ@mail.mil>; DAgostino, Anthony <DAgostinoA@state.gov>; Matthew Borman
<Matthew.Borman@bis.doc.gov>; Oukrop, Kenneth Jeffrey (Ken) CIV DTSA LD (US)
<kenneth.j.oukrop.civ@mail.mil>; Devendorf, Thomas E CIV DTSA TD (US) <thomas.e.devendorf.civ@mail.mil>;
Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Tamara,


SASC and HASC PSMs have indicated they have scheduling conflicts and unable to attend  They are
requesting a separate brief.


Very respectfully,
ANGELA M. TAPIA, Lt Col, USAF
Special Assistant
Office of the Assistant Secretary of Defense, Legislative Affairs
703-614-8692 (office)
████████████ (mobile)
angela.m.tapia2.mil@mail.mil


From: Darrach, Tamara A <DarrachTA@state.gov>
Sent: Monday, January 28, 2019 5:22 PM
To: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil>; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Hodges, Joshua S.
EOP/NSC <Joshua.S.Hodges@nsc.eop.gov>; McKeeby, David I <McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>;

DL NSC Legislative <DL.Legislative@whmo.mil>; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov>;
MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; DL NSC Press <DL.Press@whmo.mil>; Tapia, Angela M Lt Col USAF OSD
OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; Nesterczuk, Oksana D CIV DTSA PD (US)
<oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil>;
DAgostino, Anthony <DAgostinoA@state.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Oukrop, Kenneth
Jeffrey (Ken) CIV DTSA LD (US) <kenneth.j.oukrop.civ@mail.mil>; Devendorf, Thomas E CIV DTSA TD (US)
<thomas.e.devendorf.civ@mail.mil>; Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


All active links contained in this email were disabled. Please verify the identity of the sender, and
confirm the authenticity of all links contained within the message prior to copying and pasting the
address to a Web browser.

_____


All,


We have Dirksen 423 at 2 pm on Wednesday (1/30) for the briefing.


DOD - Would you please invite HASC and SASC staffers to attend?

Commerce - Would you please invite your SBank folks?


Please let me know if you have any questions.


Thanks!
Tamara


From: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil>
Sent: Monday, January 28, 2019 3:22 PM
To: Darrach, Tamara A <DarrachTA@state.gov>; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov>; Bulgrin,
Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov>;
McKeeby, David I <McKeebyDI@state.gov>; PM-CPA <PM-CPA@state.gov>; DL NSC Legislative
<DL.Legislative@whmo.mil>; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov>; MPlatt@doc.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; DL NSC Press <DL.Press@whmo.mil>; Tapia, Angela M Lt Col USAF OSD
OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; Nesterczuk, Oksana D CIV DTSA PD (US)
<oksana.d.nesterczuk.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil>;
DAgostino, Anthony <DAgostinoA@state.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Oukrop, Kenneth
Jeffrey (Ken) CIV DTSA LD (US) <kenneth.j.oukrop.civ@mail.mil>; Devendorf, Thomas E CIV DTSA TD (US)
<thomas.e.devendorf.civ@mail.mil>; Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>
Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Yes DoD is available.


Is this a telecom or face-to-face?


Is there room for 3 from DoD?


Victoria Blake

-----Original Message-----

From: Darrach, Tamara A [Caution-mailto:DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > ]

Sent: Monday, January 28, 2019 2:31 PM

To: Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >;
Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >;
Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >;
McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV
DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA
<PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil <
Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-
mailto:Jodi.L.Kouts@nsc.eop.gov > >; MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; DAgostino, Anthony <DAgostinoA@state.gov < Caution-
mailto:DAgostinoA@state.gov > >; Matthew Borman <Matthew.Borman@bis.doc.gov < Caution-
mailto:Matthew.Borman@bis.doc.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

DOD - Does the Wednesday time slot (2-4 pm) work for you?

Thanks!

Tamara

Tamara Darrach Goulding

Congressional Advisor

Bureau of Legislative Affairs

U.S. Department of State

Tel: (202) 647-8763

Email:  DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov >

-----Original Message-----

From: Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >

Sent: Monday, January 28, 2019 2:14 PM

To: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >; Bulgrin, Julie K.
EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >; Hodges, Joshua S.
EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I
<McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US)
<victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-

CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil <
Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-
mailto:Jodi.L.Kouts@nsc.eop.gov > >; MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >;
DAgostino, Anthony <DAgostinoA@state.gov < Caution-mailto:DAgostinoA@state.gov > >; Matthew Borman
<Matthew.Borman@bis.doc.gov < Caution-mailto:Matthew.Borman@bis.doc.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

█████████████████████████████

-----Original Message-----

From: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >

Sent: Monday, January 28, 2019 12:18 PM

To: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov >
>; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov >
>; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV
DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA
<PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil <
Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-
mailto:Jodi.L.Kouts@nsc.eop.gov > >; MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >;
DAgostino, Anthony <DAgostinoA@state.gov < Caution-mailto:DAgostinoA@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

Good afternoon,

Commerce, would you please let us know if you can brief this week?  If yes, State is available on:

- Wednesday (1/30) all day

- Thursday (1/31) in the afternoon

- Friday (2/1) in the morning

Thanks!

Tamara

Tamara Darrach Goulding

Congressional Advisor

Bureau of Legislative Affairs

U.S. Department of State

Tel: (202) 647-8763

Email: DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov >


-----Original Message-----

From: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >

Sent: Friday, January 25, 2019 12:33 PM

To: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-mailto:Jodi.L.Kouts@nsc.eop.gov > >; Platt, Mike (Federal) (MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > ) <MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

████████████████████████████████████████


-----Original Message-----

From: Darrach, Tamara A <DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov > >

Sent: Friday, January 25, 2019 8:21 AM

To: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >; Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-mailto:Jodi.L.Kouts@nsc.eop.gov > >; Platt, Mike (Federal) (MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > ) <MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Good morning,


State is ready to move forward with this briefing.  I will circle back with our availability.


Best,

Tamara



Tamara Darrach Goulding

Congressional Advisor

Bureau of Legislative Affairs

U.S. Department of State

Tel: (202) 647-8763

Email:  DarrachTA@state.gov < Caution-mailto:DarrachTA@state.gov >



-----Original Message-----

From: Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov < Caution-mailto:Julie.K.Bulgrin@nsc.eop.gov > >

Sent: Wednesday, January 9, 2019 4:52 PM

To: Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-mailto:Jodi.L.Kouts@nsc.eop.gov > >; Faulkner, Charles S <FaulknerCS@state.gov < Caution-mailto:FaulknerCS@state.gov > >; Platt, Mike (Federal) (MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > ) <MPlatt@doc.gov < Caution-mailto:MPlatt@doc.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

███████████████████████████████████████


-----Original Message-----

From: Bulgrin, Julie K. EOP/NSC

Sent: Monday, January 7, 2019 5:17 PM

To: Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >; McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >; Kouts, Jodi L. EOP/NSC <Jodi.L.Kouts@nsc.eop.gov < Caution-mailto:Jodi.L.Kouts@nsc.eop.gov > >; Faulkner, Charles S <FaulknerCS@state.gov < Caution-mailto:FaulknerCS@state.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

-----Original Message-----

From: Hodges, Joshua S. EOP/NSC <Joshua.S.Hodges@nsc.eop.gov < Caution-mailto:Joshua.S.Hodges@nsc.eop.gov > >

Sent: Monday, January 7, 2019 10:52 AM

To: McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >; Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; DL NSC Legislative <DL.Legislative@whmo.mil < Caution-mailto:DL.Legislative@whmo.mil > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press <DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance

+ NSC Leg Affairs.

Joshua S. Hodges

Director, Office of Strategic Communications

202-456-1791

-----Original Message-----

From: McKeeby, David I <McKeebyDI@state.gov < Caution-mailto:McKeebyDI@state.gov > >

Sent: Monday, January 7, 2019 10:48 AM

To: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-
mailto:victoria.c.blake.civ@mail.mil > >; PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL NSC Press
<DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > >; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV
DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-
mailto:susan.g.daoussi.civ@mail.mil > >; H_RGF <H_RGF@state.gov < Caution-mailto:H_RGF@state.gov > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Vicky:


Yes, that would be our hope, but given current events still not 100 percent locked in. Since we're
briefing SFRC, HFAC, and SBANK probably would make sense to get all the players involved to brief SASC
and HASC as well, logistics willing.


+State Leg Affairs for awareness...


Best,

Dave


_____

David I. McKeeby

Office of Congressional & Public Affairs Bureau of Political-Military Affairs (PM/CPA) U.S. Department of
State


   Phone:        202.647.8757 |    BlackBerry: ███████████ |

     e-mail:      mckeebydi@state.gov < Caution-mailto:mckeebydi@state.gov >   |   Web:  >>Caution-
www.state.gov/t/pm<< < Caution-http://www.state.gov/t/pm%3c%3c >  |Twitter: @StateDeptPM


Stay connected with State.gov:


-----Original Message-----

From: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-
mailto:victoria.c.blake.civ@mail.mil > >

Sent: Monday, January 07, 2019 10:31 AM

To: PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >

Cc: Paul, Joshua M <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > ; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:angela.m.tapia2.mil@mail.mil > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >

Subject: FW: [Non-DoD Source] USML Categories 1-3 Guidance


Resending to: pm-cpa@state.gov < Caution-mailto:pm-cpa@state.gov >  based on Josh Paul out-of-office instructions due to current lapse in appropriations.


Is it still anticipated that this briefing will occur mid-January?


Vicky Blake


-----Original Message-----

From: Blake, Victoria C CIV DTSA PD (US)

Sent: Monday, January 7, 2019 10:16 AM

To: 'Paul, Joshua M' <PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > >; DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil > ; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil < Caution-mailto:angela.m.tapia2.mil@mail.mil > >

Cc: PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; Kimberly Ekmark <Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >; Nesterczuk, Oksana D CIV DTSA PD (US) <oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >; Daoussi, Susan G CIV DTSA LD (US) <susan.g.daoussi.civ@mail.mil < Caution-mailto:susan.g.daoussi.civ@mail.mil > >

Subject: RE: [Non-DoD Source] USML Categories 1-3 Guidance


Josh,


State, Commerce and Defense owe a briefing to HASC, SASC, HFAC regarding Cat I-III controls.  Since all agencies will be on the Hill briefing Congressional Committees on A-Day, it makes sense that it include HASC and SASC, otherwise we will have to gather the same individuals to go back to the Hill.


Can you include HASC and SASC in the roll out plan?


I have included our OSD LA Officer that would be able to assist in inviting HASC and SASC.


Vicky


-----Original Message-----

From: Paul, Joshua M [Caution-mailto:PaulJM@state.gov < Caution-mailto:PaulJM@state.gov > ]

Sent: Thursday, January 3, 2019 4:21 PM

To: Blake, Victoria C CIV DTSA PD (US) <victoria.c.blake.civ@mail.mil < Caution-
mailto:victoria.c.blake.civ@mail.mil > >; Nesterczuk, Oksana D CIV DTSA PD (US)
<oksana.d.nesterczuk.civ@mail.mil < Caution-mailto:oksana.d.nesterczuk.civ@mail.mil > >;
DL.Press@whmo.mil < Caution-mailto:DL.Press@whmo.mil >

Cc: PM-CPA <PM-CPA@state.gov < Caution-mailto:PM-CPA@state.gov > >; Kimberly Ekmark
<Kimberly.Ekmark@bis.doc.gov < Caution-mailto:Kimberly.Ekmark@bis.doc.gov > >

Subject: [Non-DoD Source] USML Categories 1-3 Guidance


All active links contained in this email were disabled. Please verify the identity of the sender, and
confirm the authenticity of all links contained within the message prior to copying and pasting the
address to a Web browser.



_____




Dear DTSA and NSC PA colleagues,



This morning we began the informal Congressional notification process for changes to U.S. Munitions List
Categories 1-3 that would shift some items, notably certain firearms and ammunition, from State control
to Commerce control. This commences a 30-day informal Congressional staff review followed by a 30-day
formal notification, after which the rule is published in the Federal Register.



As you are aware, due to the lapse in appropriations we are currently limited in our communications with
the media. ███████████████████████████████████████████████ I wanted to be sure you all had the latest version of the press
guidance on the topic,which I have pasted below.  The attached document also lays out the Congressional
Notification process and our intended roll-out plan. ███████████████████
███████████████████████████████████



Please don't hesitate to reach out if you have any questions.  And to clarify, there's no action
precipitated or requested by this email - I just wanted to ensure everyone - particularly those without
lapsed appropriations postures - had the talking points if needed in the coming weeks.

Thanks,


Josh


_____


Josh Paul

Director, Congressional & Public Affairs

Bureau of Political-Military Affairs (PM/CPA)

U.S. Department of State


* Phone:       202.647.7878 |*  BlackBerry: ██████████ |7  Fax:202.647.4055


* e-mail:      PaulJM@State.Gov < Caution-mailto:PaulJM@State.Gov >  < Caution-Caution-
mailto:PaulJM@State.Gov >  | *  Web: Caution->>Caution-www.state.gov/t/pm/<< < Caution-
http://www.state.gov/t/pm/%3c%3c  > < Caution->>Caution-http://www.state.gov/t/pm/<< < Caution-
http://www.state.gov/t/pm/%3c%3c >  >


Caution->>Caution-http://twitter.com/StateDeptPM<< < Caution-http://twitter.com/StateDeptPM%3c%3c > <
Caution->>Caution-http://twitter.com/StateDeptPM<< < Caution-http://twitter.com/StateDeptPM%3c%3c > >


Stay connected withState.gov:

WASHSTATEC001691

```
< Caution->>Caution-http://twitter.com/StateDept<< < Caution-http://twitter.com/StateDept%3c%3c  >  <
Caution->>Caution-http://statedept.tumblr.com/<< < Caution-http://statedept.tumblr.com/%3c%3c  >  <
Caution->>Caution-http://www.state.gov/misc/echannels/66791.htm<< < Caution-
http://www.state.gov/misc/echannels/66791.htm%3c%3c  >  < Caution->>Caution-
http://www.facebook.com/usdos<< < Caution-http://www.facebook.com/usdos%3c%3c  >  < Caution->>Caution-
http://www.flickr.com/photos/statephotos<< < Caution-http://www.flickr.com/photos/statephotos%3c%3c  >  >
< Caution->>Caution-http://www.youtube.com/user/statevideo<< < Caution-
http://www.youtube.com/user/statevideo%3c%3c  >  < Caution->>Caution-
https://plus.google.com/u/0/102630068213960289352<<#102630068213960289352/posts < Caution-
https://plus.google.com/u/0/102630068213960289352%3c%3c#102630068213960289352/posts  >  >
```

This message isUNCLASSIFIED, per E.O. 12958

TOPLINES/KEY THEMES

Key Messages:

*     This Administration firmly believes that national security and economic security are not just
complementary but fundamentally inseparable.  The steps we are taking to modernize America's export
control lists will require all firearms exports to remain subject to U.S. Government authorization, while
rationalizing the administrative requirements for American industry.

*     Specifically, the Administration is publishing rules to amend Categories I, II, and III of the
USML in the International Traffic in Arms Regulations (ITAR) and transfer oversight for the export of
some types of firearms, ammunition, and related items included in these categories from the Department of
State to the Department of Commerce.

*     The Administration is publishing these rules after an extensive interagency review process by the
Departments of State, Commerce, Homeland Security, and other stakeholders, which included evaluating
responsive comments received on the proposed rules that helped to improve the final rules being
published.  This review reexamined longstanding policies and regulatory processes to ensure that U.S.
industry has every advantage in the global marketplace, while at the same time ensuring the responsible
export of arms.

WASHSTATEC001692

What These Rules Do


\*       Under these final rules, firearms and related articles that perform an inherently military function or provide the United States with a critical military advantage will remain under State Department export licensing controls.


\*       Items that do not provide the United States with a critical military advantage or perform an inherently military function, including many articles that are widely available in retail outlets that are transitioning off Categories I, II, and III of the USML in the ITAR will be subject to the new 500 series  controls (for Categories I and III items) and 600 series controls (for Category II items) in Category 0 of the U.S. Department of Commerce's Commerce Control List (CCL) in its Export Administration Regulations (EAR). The physical items transitioning to the CCL will remain subject to export licensing requirements, interagency review, and monitoring of commercial entities involved in export and sales.  A U.S. Government authorization will be required for all exports of these firearms and related items transitioning to the CCL.


\*       Examples of items moving to the Commerce Control List include:


o  Most semi-automatic and nonautomatic firearms widely available for retail sale;


o  Most firearms parts and components (with exceptions for suppressors, magazines greater than 50 rounds; parts to convert semi-automatic to fully automatic firearms; and parts or components for automatic targeting or stabilization, which will remain under State Department export licensing controls);


o  Most firearms ammunition (with exceptions for belted or linked ammunition, which will remain under State Department export licensing controls); and


o  Minor parts and components of howitzers and artillery.


What These Rules DO NOT Do

WASHSTATEC001693

*       These rules DO NOT impact the ability of American citizens in the United States to own or possess firearms. These final changes relate only to the export and temporary importation of some types of firearms and ammunition, and other items being moved from USML Categories I, II and III.

*       These changes DO NOT decontrol exports of any firearms or ammunition.  Under these rules, exports of items that have transferred to the Department of Commerce's CCL will continue to require U.S. Government authorization, which will continue to consider the risk of human rights abuses or illicit diversion.

IF ASKED: Congressional Oversight(Department of Commerce to respond)

*       We will provide briefings as requested by our oversight committees.

Benefits of Rules

*       The rules are the product of a larger effort since 2010 to modernize the U.S. export control regulations under the ITAR and EAR, to create a simpler, more robust system that eases industry compliance, improves enforceability, and better protects America's most sensitive technologies.

*       These changes will significantly reduce the regulatory burden on the U.S. commercial firearms and ammunition industry, promote American exports, and clarify the regulatory requirements for independent gunsmiths, while at the same time prioritizing national security controls and continuing our ability to restrict exports where human rights, illicit trafficking, and related issues may be of concern.

*       We anticipate that a number of firearms manufacturers, including many small businesses, that are currently required to register with the Department of State, will be relieved from an annual fee burden under this rule. The Department of Commerce's Bureau of Industry and Security (BIS) does not have registration requirements or export licensing fees.

Firearms Export Licensing by Commerce

WASHSTATEC001694

\*      The Department of Commerce has decades of experience in licensing firearms for export under the EAR.  This involves the export, reexport, and transfer (in-country) of 12-gauge shotguns, optical sighting devices for firearms, as well as law enforcement equipment that the United States has controlled and licensed unilaterally to address human rights concerns worldwide.

\*      BIS Export Enforcement (EE) vigorously enforces export controls for items under Commerce jurisdiction. The Department of Commerce, through EE, is the only export licensing agency with an in-house law enforcement component, and manages the Information Triage Unit, an interagency body thatassembles and disseminates relevant information, including non-public sources,to inform licensing and enforcement actions.

\*      BIS maintains a robust end-use verification program for items and locations that present the most cause for concern.  During Fiscal Year 2018, BIS conducted 1042 in-person checks in 50 countries.

\*      Each export license application undergoes a thorough interagency review process, which includes input from the Departments of Defense and State, and takes into account national security and human rights concerns.

\*      The Department of Commerce has a law enforcement component dedicated to enforcingexport law and regulations.

o  BIS EE is a specialized law enforcement organization recognized for its key role in national security investigations.

o  BIS EE accomplishes its mission through preventive and investigative enforcement activities and pursuing appropriate criminal and administrative sanctions against export violators.

\*      BIS maintains unique law enforcement authorities to disrupt criminal networks and break up conspiracies to illegally export a multitude of items, including firearms:

WASHSTATEC001695

o  Temporary Denial orders are issued by the Assistant Secretary for Export Enforcement and deny the export privileges of a company or individual (whether in the U.S. or abroad) to prevent imminent or on-going export control violations.

o  The Department of Commerce's BIS Entity List is the primary tool to target individual bad actors.  It contains a list of names of certain foreign persons, including businesses, research institutions, government and private organizations, and individuals that have been determined through an interagency review process to have engaged in activities contrary to U.S. national security and/or foreign policy interests.  These persons are restricted from receiving items subject to U.S. jurisdiction unless authorized by a BIS license.  The license review policy for most listed entities is a presumption of denial.

*        The Department of Commerce's BIS EEworks closely with other U.S. law enforcement agencies.


IF ASKED: 3-D Printed Firearms

*        3-D printed firearms, like all other firearms, will be controlled on the CCL if they meet the criteria for Commerce control, otherwise they will remain controlled on the USML.

*        The United States strictly regulates the export of defense articles, including related manufacturing technologies and information, as an integral part of safeguarding U.S. national security and furthering U.S. foreign policy objectives in accordance with the AECA and the ITAR.

*        On May 24, the Department of State published a proposed regulation that would revise the ITAR to remove certain items from its control, and the Department of Commerce concurrently published a proposed regulation that would revise the EAR to control these items that would be transferred to the CCL.  In the context of developing these regulations, the U.S. Government conducted a national security review to assess which items in Categories I-III continued to warrant control on the USML. The Department of State determined that articles in USML Categories I, II, and III that are removed from the USML under this final rule do not provide the United States with a critical military or intelligence advantage or, in the case of weapons, have an inherently military function, including many articles that are widely available in retail outlets in the United States and abroad, and therefore warrant regulation under the U.S. Department of Commerce's export control system.


Toplines: State of Washington v. Department of State (U.S. District Court for the Western District of Washington)

*       On July 31, the U.S. District Court for the Western District of Washington issued a Temporary
Restraining Order that enjoined the federal government from implementing or enforcing the settlement
agreement it concluded with Defense Distributed in a recent case.

*       The Department of State promptly took action to implement the court's order.  The Department has
removed from its website the notice of the "Temporary Modification of Category I of the United States
Munitions List" that is at issue in the case.

*       On August 27, the court granted plaintiffs' motion for a preliminary injunction enjoining the
Department from implementing or enforcing the "Temporary Modification of Category I of the United States
Munitions List" and the letter sent to Cody R. Wilson, Defense Distributed, and the Second Amendment
Foundation.

*       We refer you to DOJ for comment on this ongoing litigation.

Background Points about the Predecessor Case (Defense Distributed v. Department of State in the U.S.
District Court for the Western District of Texas)

*       The Department of State's involvement in theDefense Distributed case was based on the Department
of State's role in regulating exports of certain types of firearms and related technical data and not
based on domestic gun control issues.

*       The decision to settle theDefense Distributed case was made in the interest of national security
and foreign policy of the United States in consultation with the Department of Justice.

WASHSTATEC001697

WASHSTATEC001698

Message

| | |
|---|---|
| **From:** | Paul, Joshua M [PaulJM@state.gov] |
| **Sent:** | 2/26/2019 7:44:13 PM |
| **To:** | Miller, Michael F [Millermf@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; String, Marik A [StringMA@state.gov] |
| **Subject:** | FW: REUTERS REQUEST// FW: Menendez Announces Hold on Trump Admin's Proposed Move to Weaken Regulatory Control over U.S. Guns Sales Abroad |

Noting that Menendez has released his letter in full.

**From:** Mason, Julia N <MasonJN@state.gov>
**Sent:** Tuesday, February 26, 2019 2:42 PM
**To:** PM-CPA <PM-CPA@state.gov>; Stryker, Sara A <StrykerSA@state.gov>
**Subject:** Fw: REUTERS REQUEST// FW: Menendez Announces Hold on Trump Admin's Proposed Move to Weaken Regulatory Control over U.S. Guns Sales Abroad

Colleagues, do we have anything to offer on the below?

Thanks,
Julia

**From:** Zengerle, Patricia A. (Reuters) <patricia.zengerle@thomsonreuters.com>
**Sent:** Tuesday, February 26, 2019 1:51 PM
**To:** PA Press Duty
**Subject:** REUTERS REQUEST// FW: Menendez Announces Hold on Trump Admin's Proposed Move to Weaken Regulatory Control over U.S. Guns Sales Abroad

Hi – wondered if you had any response to this? Thanks & rgds.

Patricia Zengerle
Correspondent (U.S. Congress/Foreign Policy)
Reuters
Desk: 202 898 8390
Cell: █████████
@ReutersZengerle

**From:** Pachon, Juan (Foreign Relations) <Juan_Pachon@foreign.senate.gov>
**Sent:** Tuesday, February 26, 2019 1:31 PM
**Subject:** Menendez Announces Hold on Trump Admin's Proposed Move to Weaken Regulatory Control over U.S. Guns Sales Abroad

United States Senate Committee on
# FOREIGN RELATIONS

**FOR IMMEDIATE RELEASE**
February 26, 2019

**CONTACT**
Juan Pachon (202) 224-4651

## Menendez Announces Hold on Trump Admin's Proposed Move to Weaken Regulatory Control over U.S. Guns Sales Abroad

**WASHINGTON– Senator Bob Menendez (D-N.J.), Ranking Member of the Senate Foreign Relations Committee,** sent a letter to Secretary of State Mike Pompeo expressing his concern about a proposal to drastically weaken firearms export regulations, and announcing he will not allow the proposed rules to move forward unless the State Department fully addresses the dangerous and far-reaching implications of this proposal prior to its taking effect.

In a move designed to stifle Congressional oversight and weaken controls over exports of guns from the United States, the Trump Administration announced last month that it will formally seek to transfer control of the export of semi-automatic pistols, assault-style rifles, sniper rifles and ammunition from the United States Munition List (USML) under the authority of the Department of State to the less-stringent controls of the Department of Commerce.  As part of the move, the Administration also seeks to transfer the control of the technical information and blueprints for nearly undetectable 3D Guns from State to Commerce, where lax regulations will facilitate printing of 3D guns worldwide.

"[Firearms] are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight," **wrote Menendez.**

As the top Senate Democrat with oversight on U.S. firearms exports and weapons sales, Menendez announced he would refuse to consent to formal congressional notification of the proposed transfer until the Trump administration is more forthcoming in responding to his questions and concerns. Specifically, Menendez listed his concerns that all Congressional oversight and right of disapproval over firearms sales to countries of concern would be eliminated, despite Congress tightening such oversight under law; and that Commerce has admitted that it will not control or prevent the global internet publication of 3D printing of nearly-undetectable guns by terrorist groups, a real danger to American embassies, military bases, and passenger air carriers abroad. Despite the new statutory requirements on the President and Secretary of Commerce to control emerging technologies like 3D printing, the Administration is seeking in effect to eliminate meaningful control over 3D gun printing.

"By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change," **added the Senator,** specifically raising concerns about the capability to 3D-print lethal weaponry that cannot easily be detected by metal detectors at airports, schools, or government facilities.

Earlier this month, Senator Menendez also led a group of his colleagues in introducing the Stopping the Traffic in Overseas Proliferation of Ghost Guns Act, legislation that would statutorily prohibit this transfer, and therefore maintain the strict controls over firearms and 3D printed "ghost gun" information that currently exist on the United States Munitions List.

As a champion for major gun safety reforms, Sen. Menendez was an outspoken opponent of the Trump Administration's action last year allowing a Texas company to publish the downloadable designs for 3D printable firearms, which was later blocked by a federal court, and has taken a series of additional actions to prevent the proliferation of untraceable, undetectable 3D printed guns. He called on Secretary of State Mike

Pompeo to intervene and reverse his department's decision and spoke out about his decision at a hearing of the Senate Foreign Relations Committee.

The text of the letter announcing the hold can be found here and below:

Dear Secretary Pompeo:

On February 4, 2019, I received a congressional notification from the Department for a proposal to transfer responsibility for the export control of firearms and ammunition from the United States Munitions list (USML) to the Commerce Control List (CCL). I write to inform you that I am placing a hold on the congressional notification, pursuant to the authority of Section 38(f) of the Arms Export Control Act (AECA).

I am deeply concerned about this proposed transfer. As you no doubt are aware, firearms and ammunition – especially those derived from military models and widely used by military and security services – are uniquely dangerous.  They are easily modified, diverted, and proliferated, and are the primary means of injury, death, and destruction in civil and military conflicts throughout the world. As such, they should be subject to more, not less, rigorous export controls and oversight.

Combat rifles, including those commonly known as "sniper rifles," should not be removed from the USML, nor should rifles of any type that are U.S. military-standard 5.56 (and especially .50 caliber). Semi-automatic firearms should also not be removed, and neither should related equipment, ammunition, or associated manufacturing equipment, technology, or technical data.

Consequently, my hold will remain in place until such time as the issues identified below are sufficiently addressed.

1) Removal of Firearms Exports from Congressional Information and Review
The AECA enables congressional review of exports of lethal weapons to ensure that they comport with U.S. foreign policy interests.  Congress took action in 2002 to ensure that the sale and export of these weapons would receive stringent oversight, including by amending the AECA to set a lower reporting threshold (from $14 million to $1 million) specifically for firearms on the USML.  Moving such firearms from the USML to the CCL would directly contradict congressional intent and effectively eliminate congressional oversight and potential disapproval of exports of these weapons.  Congressional oversight must be retained.

2)  Proliferation of 3D Gun Printing Technical Information
There is a serious risk that this transfer will open the floodgates of information for the 3D printing of nearly-undetectable firearms and components by foreign persons and terrorists that intend to harm U.S. citizens and interests.  The Department of Commerce claims that it cannot, by its own regulations, prevent the publication, including on the Internet for global consumption, of technical information and blueprint files that would enable this 3D production, if such information has once been published, even illegally.  This is outrageous and simply unacceptable given the dangers it poses to U.S. citizens and interests.

Moreover, it may also be at variance with recent law.  Section 1758 of the Export Control Reform Act of 2018 authorizes the Secretary of Commerce to control "emerging and foundational technologies" that (A) are essential to the national security of the United States; and (B) are not critical technologies described in clauses (i) through (v) of section 721(a)(6)(A) of the Defense Production Act of 1950.  3D printing has been identified by this Administration as an emerging technology of concern, and the Department of Commerce itself used 3D printing as an example of "emerging technology" in its November 19, 2018 Federal Register notice seeking public comment on what constitutes emerging technologies pursuant to this new statutory charge. Then-

WASHSTATEC001701

Secretary of Defense Mattis twice mentioned the challenges of 3D printing in congressional testimony, and Director of National Intelligence Coats, in his 2018 Worldwide Threat Assessment of the U.S. Intelligence Community, stated that, "[a]dvances in manufacturing, particularly the development of 3D printing, almost certainly will become even more accessible to a variety of state and non-state actors and be used in ways contrary to our interests."

It would seem axiomatic that the capability to 3D-print lethal weaponry that cannot easily or reliably be detected by metal detectors at airports, schools, governmental or other facilities (including the U.S. Capitol and the Department of State) would qualify as an emerging technology in need of regulatory control. Yet, the Commerce Department has told my staff that the interagency process to identify emerging and foundational technologies to be controlled has not been completed, and is unlikely to be completed for months. By proceeding with the transfer of firearms, including 3D printing technical information, to Commerce, the Administration is acting recklessly and endangering innocent lives. It should go without saying that we collectively need to understand the threat and have a plan to address this issue before making the regulatory change.

Moreover, the Department of Commerce would seem to have adequate additional regulatory authority to control 3D gun printing information, at least temporarily.  Commerce can control any item for foreign policy reasons under the miscellaneous category of 0Y521, according to a final rule issued by Commerce in 2012. Preventing foreign terrorists and thugs from acquiring the means to print undetectable guns to use against U.S. citizens is a sufficient foreign policy justification to control this technology from public release.

Ultimately, the specific provision of the Export Administration Regulations is cited as preventing Commerce from controlling the publication of 3D Printed guns in the longer term needs to be rewritten to permit this control.  Until that occurs, or until Commerce determines that such technical information can and will be controlled, this technical information cannot and should not be transferred from USML to the CCL.

I look forward to your prompt response to my concerns.

###

WASHSTATEC001702