Message

| | |
|---|---|
| **From:** | Gary Stanley [gstanley@glstrade.com] |
| **Sent:** | 10/28/2019 1:11:02 PM |
| **To:** | Robert L.Hart [hartrl@state.gov] |
| **Subject:** | Defense and Export-Import Update (Oct. 28, 2019) |

**Dear All,**

**Good Day!**

**Gary Stanley's Export Control Tip of the Day: A a foreign person may make a self-determination of an item's jurisdictional and classification status. Indeed, a foreign person is obligated to know whether an item is subject to the ITAR or, if subject to the EAR, how it is classified before reexporting or transferring the item in order to ensure compliance with the ITAR's and the EAR's licensing and other obligations. The U.S. exporter is responsible for determining the jurisdictional and classification status of the items it is exporting. However, if reliable jurisdictional and classification information has not already been provided by another party, such as the original equipment manufacturer, then the foreign person may and, indeed, must make these determinations itself in order to avoid violating the ITAR or the EAR if it later reexports or retransfers the article or item. As a matter of due diligence, however, the foreign person should seek jurisdictional and classification information from the manufacturer of the items or the owner of the technology in question and resolve any potential differences in interpretation. If after reviewing the ITAR's U.S. Munitions List (USML) and all relevant facts, doubt exists regarding whether the item is enumerated or otherwise described on the USML, the foreign person should request from DDTC a commodity jurisdiction determination pursuant to 22 C.F.R. § 120.4. If the item is clearly not enumerated or otherwise described on the USML and, after reviewing the EAR and all relevant facts, there is doubt regarding whether or where the item is enumerated or otherwise described on the EAR's Commerce Control List, then the foreign person should request from the Department of Commerce's Bureau of Industry and Security a commodity classification determination pursuant to 15 C.F.R. § 748.3.**

**Today's Items:**

1. **DDTC Seeks Public Comment on Electronic Form for Voluntary Disclosures**
2. **BIS Issues Order Denying Export Privileges of Alexis Vlachos of Montréal**
3. **Columbus Man Sentenced to Prison for Illegally Exporting Goods to Iran**
4. **Treasury and State Announce New Humanitarian Mechanism to Increase Transparency of Permissible Trade Supporting the Iranian People**
5. **OFAC Publishes General Licenses Relating to Iran and Venezuela**
6. **President Trump Continues National Emergency With Respect to the Democratic**

Republic of the Congo

7. **EU Commission Opens Registration for 2019 Export Control Forum**

8. **UK Government's OFSI Updates Post Brexit - Russia Guidance**

9. **USTR Grants Certain Requests for Exclusion from Additional Duties on Certain Chinese Products**

10. **USTR Publishes Exclusion Request Schedule on Additional Chinese Products Subject to Increased Tariffs**

11. **USTR Seeks Applications for Inclusion on the Binational Panels Roster Under the North American Free Trade Agreement**

12. **EXIM Bank Advisory Committee and Sub-Saharan Africa Advisory Committee to Meet Oct. 30**

13. **Commerce/ITA's Civil Nuclear Trade Advisory Committee to Meet Nov. 12**

14. **Homeland Security Advisory Committee to Meet Nov. 14**

15. **Commerce/ITA's Environmental Technologies Trade Advisory Committee to Meet Nov. 19**

16. **U.S. Government Contracting**

17. **U.S. Customs and U.S. Census/AES Updates**

18. **Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes**

19. **GAO and CRS Reports, Testimony, and Correspondence of Interest**

20. **U.S. Government Trade Forms and Other Information Collections Open for Public Comment**

## Other Headlines

21. **This Week in Congress: New Worries About the NDAA**

22. **Beijing Woos U.S. and Other Foreign Companies as Trade War Takes Toll**

23. **Amazon or Microsoft? DoD Picks a Winner for Its Controversial JEDI Contract**

24. **Key Dates Leading Up to the U.S. Pentagon's Cloud-Computing Award to Microsoft**

25. **Hypersonics Pitch Day: Air Force Woos Startups**

26. **Pentagon, With an Eye on China, Pushes for Help From American Tech**

27. **Air Force Halts Funding for Boeing's bBallistic Missile Replacement**

28. **Analysts Predict Counterdrone Market Will Top $2B**

29. **Uphill Sledding for EOD Funding**

30. **FTC Investigates Northrop: GBSD?**

31. **How the Army Will Use Satellites to Track Land Threats in Real Time**

32. **Does Major Joint Military Procurement Really Work in the Baltics?**

33. **Opinion: Is 3-D Printing the Future of Terrorism?**

34. **Opinion: US–China Competition: The Coming Decoupling? – Analysis**

WASHSTATEC004299

**Upcoming Export Control and Other Trade Compliance Conferences**

## 1. DDTC Seeks Public Comment on Electronic Form for Voluntary Disclosures

(84 Fed. Reg. 57801) - The U.S. Department of State's Directorate of Defense Trade Controls (DDTC) is seeking public comment on its electronic form DS-7787 - "Disclosure of Violations of the Arms Export Control Act." interested persons have until November 27, 2019, to submit their comments.

## 2. BIS Issues Order Denying Export Privileges of Alexis Vlachos of Montréal

The U.S. Department of Commerce's Bureau of Industry and Security (BIS) has issued an Order Denying Export Privileges to Alexis Vlachos of Montréal, Québec, Canada, until September 4, 2025. On September 4, 2018, in the U.S. District Court for the District of Vermont, Alexis Vlachos ("Vlachos") was convicted of violating Section 38 of the Arms Export Control Act (22 U.S.C. § 2778 (2012)) ("AECA"). Vlachos was convicted of violating Section 38 of the AECA by knowingly and willfully exporting and causing to be exported from the United States to Canada firearms that were designated as defense articles on the United States Munitions List, without the required U.S. Department of State licenses. Vlachos was sentenced to fifty-one (51) months in prison and an assessment of $200.

## 3. Columbus Man Sentenced to Prison for Illegally Exporting Goods to Iran

The U.S. Department of Justice (DOJ) has announced that Behrooz Behroozian, 64, Columbus, Ohio, has been sentenced to 20 months in prison for exporting gas and oil pipeline parts to Iran for more than a decade in deliberate violation of a U.S. embargo and trade sanctions. According to the sentencing memorandum filed in this case, Behroozian used an intermediary company, Sumar Industrial Equipment, to attempt to cover-up that he was illegally supplying industrial equipment to Iran in violation of the Emergency Economic Powers Act (IEEPA). Behroozian exported manifolds, valves and connectors used for industrial pipelines in the gas and oil refinement industry to Iran via Sumar and profited $35,000 to $40,000 per year. This violated embargo and trade sanctions imposed upon Iran by the United States in May 1995. In November 2006, Behroozian became the owner and operator of a computer parts supplier in Dublin, Ohio, called Comtech International. Comtech had no storefront and made no domestic sales. It seldom exported computer parts. Instead, Comtech primarily exported industrial equipment to Sumar in the United Arab Emirates for further exportation to Iran.

## 4. Treasury and State Announce New Humanitarian Mechanism to Increase Transparency of Permissible Trade Supporting the Iranian People

The U.S. Departments of the Treasury and State has announced a new humanitarian mechanism to ensure unprecedented transparency into humanitarian trade with Iran. This mechanism will help the international community perform enhanced due diligence on humanitarian trade to ensure that funds associated with permissible trade in support of the Iranian people are not diverted by the Iranian regime. Concurrently, Treasury's Financial

WASHSTATEC004300

Crimes Enforcement Network (FinCEN) identified Iran as a jurisdiction of primary money laundering concern under Section 311 of the USA PATRIOT Act, and issued a new rulemaking to protect the U.S. financial system from malign Iranian financial activities. The humanitarian mechanism will require foreign governments and financial institutions that choose to participate in the mechanism to conduct enhanced due diligence and provide to Treasury a substantial and unprecedented amount of information, with appropriate disclosure and use restrictions, on a monthly basis, as described in guidance provided by OFAC outlining specific requirements.

## 5. OFAC Publishes General Licenses Relating to Iran and Venezuela

The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) has taken the following actions:

- Issued General License K "Authorizing Maintenance or Wind Down of Transactions Involving Cosco Shipping Tanker (Dalian) Co., Ltd."

- Amended  General License 5A "Authorizing Certain Transactions Related to the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond on or After January 22, 2020." In conjunction with this action, OFAC is amending Frequently Asked Question 595.

## 6. President Trump Continues National Emergency With Respect to the Democratic Republic of the Congo

(84 Fed. Reg. 56927) - In accordance with section 202(d) of the National Emergencies Act (50 U.S.C. 1622(d)), President Donald J. Trump is continuing for 1 year the national emergency with respect to the situation in or in relation to the Democratic Republic of the Congo declared in Executive Order 13413, as amended by Executive Order 13671.

## 7. EU Commission Opens Registration for 2019 Export Control Forum

The European Commission and the Finnish Presidency of the Council are inviting representatives from EU Member States and the European Parliament, industry and civil society to participate in the 2019 Export Control Forum. The 2019 Export Control Forum will provide an opportunity to review ongoing export control implementation and latest developments in the EU, as well as to discuss the future of EU and global international export controls. The 2019 Export Control Forum will be opened by representatives of the Commission, the Presidency and the European Parliament, and will convene selected panels of experts, to be followed by open dialogue with the stakeholders.

- Date: 13 December 2019
- Venue: Albert Borschette Conference Centre (CCAB) Room 0A. Rue Froissart 36, Brussels
- Time: 10:00 – 17:00. Registration will be open at 9:30.
- Registration: Please register via the online registration tool. The deadline for registration is 1 December 2019.

## 8. UK Government's OFSI Updates Post Brexit - Russia Guidance

WASHSTATEC004301

The U.K. Government's Office of Financial Sanctions Implementation (FSI) has updated its guidance on the financial and investment restrictions in the Russia sanctions regime should the UK leave the EU without a deal. This guidance does not currently apply and would only come in to effect if the UK leaves the EU without a deal and when the Russia (Sanctions) (EU Exit) Regulations 2019 come into force. This is therefore for information only at this stage.

## 9. USTR Grants Certain Requests for Exclusion from Additional Duties on Certain Chinese Products

(84 Fed. Reg. 57803) - In September 2018, the U.S. Trade Representative imposed additional duties on goods of China with an annual trade value of approximately $200 billion as part of the action in the Section 301 investigation of China's acts, policies, and practices related to technology transfer, intellectual property, and innovation. The U.S. Trade Representative initiated a product exclusion process in June 2019, and interested persons have submitted requests for the exclusion of specific products. This notice announces the U.S. Trade Representative's determination to grant certain exclusion requests, as specified in the annex to this notice. The product exclusions announced in this notice will apply as of the September 24, 2018, effective date of the $200 billion action, to August 7, 2020.

## 10. USTR Publishes Exclusion Request Schedule on Additional Chinese Products Subject to Increased Tariffs

(84 Fed. Reg. 57144) - In a notice published at 84 Fed. Reg. 43304 (Aug. 20, 2019), the U.S. Trade Representative announced that the Office of the U.S. Trade Representative (USTR) would establish a process by which U.S. stakeholders may request an exclusion from additional duties of particular products classified within a tariff subheading covered by the August 2019 action. This notice announces that USTR will open an electronic portal for submission of exclusion requests on October 31, 2019 for products covered by Annex A of the August 2019 action, and sets out the specific procedures for submitting requests.

- October 31, 2019 at noon EDT: The web portal for submitting exclusion requests-- https://exclusions.USTR.gov--will open.

- January 31, 2020 at 11:59 PM EST: Last day for submitting exclusion requests.

- Responses to individual exclusion requests are due 14 days after USTR posts the request on the online portal.

- Any replies to responses to an exclusion request are due the later of 7 days after the close of the 14-day response period, or 7 days after the posting of a response.

## 11. USTR Seeks Applications for Inclusion on the Binational Panels Roster Under the North American Free Trade Agreement

(84 Fed. Reg. 57152) - The North American Free Trade Agreement (NAFTA) provides for the establishment of a roster of individuals to serve on binational panels convened to review final determinations in antidumping or countervailing duty (AD/CVD) proceedings and amendments to AD/CVD statutes of a NAFTA Party. The United States annually renews its selections for the roster. The Office of the United States Trade Representative (USTR) invites

WASHSTATEC004302

applications from eligible individuals wishing to be included on the roster for the period April 1, 2020, through March 31, 2021. USTR must receive your application by November 29, 2019.

## 12. EXIM Bank Advisory Committee and Sub-Saharan Africa Advisory Committee to Meet Oct. 30

(84 Fed. Reg. 56810) - The Export-Import Bank of the United States (EXIM) as announced that its advisory committee and its Sub-Saharan Africa Advisory Committee will meet Wednesday, October 30, 2019, 11:00 AM to 2:30 PM EDT, at 811 Vermont Avenue NW, Room 1126, Washington, DC 20571. If you plan to attend, a photo ID must be presented at the guard's desk as part of the clearance process into the building, you may contact India Walker at external@exim.gov to be placed on an attendee list. Discussion of EXIM programs and comments for inclusion in the report on competitiveness of the Export-Import Bank of the United States to Congress.

## 13. Commerce/ITA's Civil Nuclear Trade Advisory Committee to Meet Nov. 12

(84 Fed. Reg. 57699) - The U.S. Department of Commerce's International Trade Administration (ITA) has announced that its Civil Nuclear Trade Advisory Committee will meet in open sessionTuesday, November 12, 2019, 3:00 PM to 4:00 PM EST, at the U.S. Department of Commerce, Herbert C. Hoover Building, Commerce Research Library, 1401 Constitution Ave. NW, Washington, DC 20230. Requests to register to participate (including to speak or for auxiliary aids) and any written comments should be submitted to: Mr. Devin Horne, Office of Energy & Environmental Industries, International Trade Administration, Room 28018, 1401 Constitution Ave. NW, Washington, DC 20230. (Fax: 202-482- 5665; email: devin.horne@trade.gov). Members of the public are encouraged to submit registration requests and written comments via email to ensure timely receipt.

## 14. Homeland Security Advisory Committee to Meet Nov. 14

(84 Fed. Reg. 56828) - The U.S. Department of Homeland Security's Office of Partnership and Engagement has announced that the Homeland Security Advisory Council will meet in open session Thursday, November 14, 2019, 1:45 PM to 3:30 PM EST, in the Town Hall at the Transportation Security Administration, 601 S 12th Street (East Building), Arlington, VA 20598. The Council will swear in new members, and review and deliberate on reports from the Families and Children Care Panel, Emerging Technologies, Prevention of Targeted Violence Against Faith- based Communities, and State, Local, Tribal, and Territorial Cybersecurity subcommittees. Following this, there will be a break for public commentary.

## 15. Commerce/ITA's Environmental Technologies Trade Advisory Committee to Meet Nov. 19

(84 Fed. Reg. 57698) - The U.S. Department of Commerce's International Trade Administration (ITA) has announced that its Environmental Technologies Trade Advisory Committee (ETTAC) will meet Tuesday, November 19, 2019, 8:45 AM to 3:30 PM EST, in the Research Library at the U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230. Those interested in attending must provide notification by Friday, November 8, at 5:00 PM EST. To register and obtain call-in information, submit comments,

or request auxiliary aids, please contact: Ms. Amy Kreps, Office of Energy & Environmental Industries (OEEI), International Trade Administration, Room 28018, 1401 Constitution Avenue NW, Washington, DC 20230 or email: amy.kreps@trade.gov. The ETTAC will receive briefings from ITA as well as the interagency and will discuss its priorities and objectives for potential recommendations to the interagency through the Secretary of Commerce. Topics to be considered during the afternoon subcommittee breakout sessions will fall under the three themes of Trade Policy and Trade Negotiations, Trade Promotion and Export Market Development, and Cooperation on Standards, Certifications and Regulations.

## 16. U.S. Government Contracting

- DoD, GSA & NASA/Federal Acquisition Regulation (FAR): OMB Information Collection Submission - Patents - Deadline for Public Comment: Dec. 23, 2019

- DoD/Office of the Under Secretary of Defense for Acquisition and Sustainment: OMB Information Collection Submission - Department of Defense Application for Priority Rating for Production or Construction Equipment - Agency Form No.: DD Form 691 - Deadline for Public Comment: Nov. 25, 2019

- DoD/Defense Logistics Agency (DLA): OMB Information Collection Submission - ASSIST Database - Deadline for Public Comment: Nov. 25, 2019

- GSA: Notice of Announcement of Industry Engagement Event - GSA is hosting an industry engagement event on Wednesday, November 6, 2019, from 9:00 AM to 11:00 AM EST, at the Department of Interior (DOI) Yates Auditorium at 1849 C St. NW, Washington, DC 20240k, to highlight how section 889 of Title VII of the NDAA for FY 2019 (hereinafter Sec. 889) will affect GSA's business and supply chain.

## 17. U.S. Customs and U.S. Census/AES Updates

- U.S. Customs - CSMS #40363706 - ACE CERTIFICATION CQ Deployment Thursday morning, Oct 24, 2019 at 0630 ET

- U.S. Customs - CSMS #40371652 - Food and Drug Administration (FDA) New Center for Tobacco (CTP) Product Subclass Code

- U.S. Customs - CSMS #40373287 - Trade Policy Update for Drawback: Trade Facilitation and Trade Enforcement Act (TFTEA) Combination Privilege Application

- U.S. Customs - CSMS #40386416 - ACE PROD AND CERT EXTENDED Scheduled Maintenance this weekend, Sat. Oct 26, 2019@ 2100 ET to 0400 ET Sun. Oct 27

- U.S. Customs - CSMS #40389928 - Update for the Automated Commercial Environment (ACE) Collections Release 1 – PZ Output Release Date

- U.S. Census - Tips on How to Resolve AES Response Messages

WASHSTATEC004304

| | |
|---|---|
| **Fatal Error Response Code: 068** | **Narrative:** SRN on File; Action Not Allowed<br><br>**Severity:** Fatal<br><br>**Reason: The Shipment is not on file in AES, therefore the requested action is not allowed.**<br><br>**Resolution:** When the Shipment Filing Action Request Indicator is a Change, Replace, or X for Cancel, the Shipment Reference Number must exist on a previous filing in AES for the filer.<br><br>Verify the Shipment Filing Action Request Indicator and the Shipment Reference Number, correct the shipment and resubmit. |
| **Fatal Error Response Code: 808** | **Narrative:** Improbable Destination for Commodity<br><br>**Severity:** Verify<br><br>**Reason:** For the reported Schedule B/HTS Number, the Country of Destination Code is improbable.<br><br>**Resolution:** Certain products are highly unlikely to be exported to certain Countries of Destination based on historical data and industry input. This might indicate either a keying error or misclassification of the product.<br><br>Verify the Schedule B/HTS Number and Country of Destination Code, correct the shipment and resubmit (if necessary). If the information is verified correct as reported, no action is necessary. |

## 18. Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes

- Commerce/E&C - Certain Amorphous Silica Fabric From the People's Republic of China: Rescission of Countervailing Duty Administrative Review; 2018

- Commerce/E&C - Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017

- Commerce/E&C - Certain Large Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe (Over 4.5 Inches) From Japan: Rescission of Antidumping Duty Administrative Review: 2018-2019

- Commerce/E&C - Certain Small Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe (Under 4.5 Inches) From Japan: Rescission of Antidumping Duty Administrative Review: 2018-2019

- Commerce/E&C - Certain Uncoated Paper From Brazil: Final Results of Antidumping Duty Administrative Review; 2017-2018

WASHSTATEC004305

- Commerce/E&C - Fresh Tomatoes From Mexico: Final Determination of Sales at Less Than Fair Value Pages 57401 - 57403 [FR DOC #2019-23341]

- Commerce/E&C - High Pressure Steel Cylinders From the People's Republic of China: Rescission of Countervailing Duty Administrative Review: 2018

- Commerce/E&C - Mattresses From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Refillable Stainless Steel Kegs From Germany: Final Affirmative Determination of Sales at Less Than Fair Value

- Commerce/E&C - Refillable Stainless Steel Kegs From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Refillable Stainless Steel Kegs From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Stainless Steel Flanges From the People's Republic of China: Rescission of Countervailing Duty Administrative Review; 2019

- Commerce/E&C - Vertical Metal File Cabinets From the People's Republic of China: Final Determination of Sales at Less Than Fair Value

- Commerce/E&C - Vertical Metal File Cabinets From the People's Republic of China: Final Affirmative Countervailing Duty Determination

- USITC - USITC Releases Report on MTB Effects - This report provides a broad assessment of the economic effects of duty suspensions and reductions on U.S. producers, purchasers, and consumers, as well as case studies looking at the effects on groups of products covered by the Miscellaneous Tariff Bill Act of 2018. The report also includes recommendations from interested parties with respect to those domestic industry sectors that might benefit from permanent duty suspensions or reductions, with a particular focus on inequities created by tariff inversions. Much of the information in this report comes from a survey conducted by the Commission after the duty suspensions and reductions became effective.

- USITC - USITC Releases The Year in Trade 2018

- USITC - Certain Microfluidic Systems and Components Thereof and Products Containing Same: Commission Determination To Review in Part a Final Initial Determination Finding a Violation of Section 337 and To Extend the Target Date; Schedule for Filing Written Submissions

- USITC - Certain Semiconductor Devices, Integrated Circuits, and Consumer Products Containing the Same: Commission Determination Not To Review an Initial Determination Terminating the Investigation Based on a Settlement Agreement and a

WASHSTATEC004306

Withdrawal of the Complaint; Termination of the Investigation

- USITC - Certain Shaker Screens for Drilling Fluids, Components Thereof, and Related Marketing Materials: Notice of Receipt of Complaint; Solicitation of Comments Relating to the Public Interest

- USITC - Fresh Tomatoes From Mexico: Continuation of the Final Phase of an Antidumping Duty Investigation and Revised Schedule

- USITC - Wooden Cabinets and Vanities From China: Scheduling of the Final Phase of Countervailing Duty and Anti-Dumping Duty Investigations

- USITC - Government in the Sunshine Act Meeting Notice - October 31, 2019, 11:00 AM EDT

## 19. GAO and CRS Reports, Testimony, and Correspondence of Interest

- CRS - Brexit: Status and Outlook

- CRS - The European Parliament and U.S. Interests

- CRS - The Changing Landscape of Immigrant Investment Programs

- CRS - Australia

## 20. U.S. Government Trade Forms and Other Information Collections Open for Public Comment

(84 Fed. Reg. 57054) - Agency: U.S. Dept. of Justice/Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) - Title: Informant Agreement - Agency Form No.: ATF Form 3252.2 - Type of Review: New Collection - Deadline for Public Comment: Dec. 23, 2019

## Other Headlines

## 21. This Week in Congress: New Worries About the NDAA

MiltiaryTimes.com, Oct. 28 - Senate Armed Services Committee officials this week will release a "skinny" defense authorization bill plan as lawmakers grow increasingly pessimistic about the possibility of reaching a compromise on a host of disputed issues with the massive military policy bill. Committee Chairman Jim Inhofe, R-Okla., said last week that the move is designed to ensure that a host of necessary items — including numerous military specialty pay authorizations — are passed by the end of the year. But a day later, House Armed Services Chairman Adam Smith, D-Wash., said a stripped-down version of the measure wouldn't solve all of lawmakers' problems. Negotiations on the broader measure have stalled in recent weeks as Democrats and Republicans have fought over military construction money used for President Donald Trump's controversial border wall project.

## 22. Beijing Woos U.S. and Other Foreign Companies as Trade War

## Takes Toll

WSJ.com, Oct. 27 - China has stepped up its charm offensive to attract U.S. and other foreign companies in recent weeks, seeking to offset the debilitating impact of the trade war while still exchanging blistering comments with Washington. The country's premier, Li Keqiang, has wooed foreign companies with noticeable enthusiasm this month, telling a roundtable of Western executives, for example, that global manufacturing enterprises are welcome to seize opportunities as China opens up further. The move suggests a growing realization of the trade war's toll on the Chinese economy and on U.S. companies' willingness to invest in China. It also reflects a recognition that foreign companies are key to achieving Chinese leaders' ambitions for both growth and technological advancement. The pursuit of foreign investors comes as the Communist party elite sits down Monday for its first top policy-setting meeting, or plenum, since early last year, during which leaders will discuss their next five-year economic blueprint, according to Chinese officials involved in policy making.

## 23. Amazon or Microsoft? DoD Picks a Winner for Its Controversial JEDI Contract

DefenseNews.com, No. 26 - Microsoft won the contract for the Department of Defense's enterprise cloud, potentially worth $10 billion over 10 years, the Pentagon announced Oct. 25. The tech giant won the award over Amazon Web Services, just three days after Secretary of Defense Mark Esper recused himself from the award after months of review because his son worked for IBM. Amazon was widely considered by industry to be the front runner for the award. The JEDI contract process continues to be under investigation by the DoD inspector general and stuck in federal court. The Pentagon plans to move 80 percent of its systems over to the Joint Enterprise Defense Infrastructure cloud, better known as JEDI. The cloud will contain both unclassified and classified data. In a statement, DoD CIO Dana Deasy heralded the contract award as a win for the war fighter. "The National Defense Strategy dictates that we must improve the speed and effectiveness with which we develop and deploy modernized technical capabilities to our women and men in uniform," DoD Chief Information Officer Dana Deasy said. "The DoD Digital Modernization Strategy was created to support this imperative. This award is an important step in execution of the Digital Modernization Strategy."

## 24. Key Dates Leading Up to the U.S. Pentagon's Cloud-Computing Award to Microsoft

Reuters.com, Oct. 27 - Microsoft Corp has won the U.S. Pentagon's $10 billion cloud-computing contract, the Defense Department said on Friday, beating out favorite Amazon.com Inc. The contract, called the Joint Enterprise Defense Infrastructure Cloud, or JEDI, is part of a broad modernization of the Pentagon's information technology systems. Here is a timeline of important dates leading up to the award.

## 25. Hypersonics Pitch Day: Air Force Woos Startups

BreakingDefense.com, Oct. 25 - Hypersonics and "pitch days," two of the hottest concepts at the Air Force right now, will come together for the first time Nov. 7. Air Force experts will judge products and ideas from startup firms related to solving key challenges to hypersonic flight, such as Mach 5-plus propulsion and new materials that can withstand extremely high

WASHSTATEC004308

temperatures. Lt. Gen. Duke Richardson, military deputy to Air Force acquisition czar Will Roper, will oversee the panel of judges who pick the winner of a same-day contract of up to $750,000 to jumpstart their work, according to an Oct. 18 announcement from Air Force Materiel Command's 96th Test Wing. The pitch day will be held at the Doolittle Institute in Niceville, Fla. "Fielding hypersonic weapons is a top priority for our warfighters. The Air Force is leading the way, and we can use all the help we can get from innovative companies," Richardson said. "That's one reason why this pitch day is so exciting."

## 26. Pentagon, With an Eye on China, Pushes for Help From American Tech

NYTimes.com, Oct. 25 - Pentagon officials have been holding private discussions with tech industry executives to wrestle with a key question: how to ensure future supplies of the advanced computer chips needed to retain America's military edge. The talks, some of which predate the Trump administration, recently took on an increased urgency, according to people who were involved or briefed on the discussions. Pentagon officials encouraged chip executives to consider new production lines for semiconductors in the United States, said the people, who declined to be identified because the talks were confidential. The discussions are being driven by the Pentagon's increased dependence on chips made abroad, especially in Taiwan, as well as recent tensions with China, these people said. One chip maker, the Taiwan Semiconductor Manufacturing Company, better known as TSMC, plays a particularly crucial role producing commercial chips that also have applications for aircraft, satellites, drones and wireless communications. And because of unrest over the past few months in the semiautonomous Chinese territory of Hong Kong, some Pentagon officials and chip executives have wondered about situations that could force suppliers in Taiwan to limit or cut off silicon shipments, the people said.

## 27. Air Force Halts Funding for Boeing's bBallistic Missile Replacement

WashingtonPost.com, Oct. 22 - The Air Force has halted funding for Boeing's $349 million ballistic missile development effort, effectively clearing the way for a Northrop Grumman-led team to become the only bidder for one of the Pentagon's most expensive weapons production programs. The move is an apparent response to Boeing's recent announcement that it will drop out of the Ground Based Strategic Deterrent program, an $85 billion project to replace the nation's Minuteman III ballistic missiles. The Defense Department appears unwilling to pay Boeing to develop a next-generation ballistic missile when the company is refusing to submit that missile for review. A Boeing representative said the company is disappointed in the Air Force's decision not to allot more funding for its missile.

## 28. Analysts Predict Counterdrone Market Will Top $2B

C4ISRNet.com, Oct. 28 - The three biggest obstacles facing the counterdrone market are the law, the nature of the threat, and the technology itself. In fairness, those are obstacles to the adoption of most any national security technology. A new analysis by investment consultants Frost & Sullivan tackles the counterdrone market, an area of high interest, no consensus, and much proverbial snake oil. The report projects a counterdrone market whose revenues will exceed $2 billion by 2024. What legal obstacles counterdrone systems face depend on how, exactly, the equipment works to stop a drone. "Adoption of these [counterdrone] technologies is limited by individual country rules against wiretapping, jamming, and computer hacking — all methods employed by various C-UAS," said Michael Blades of Frost & Sullivan.

WASHSTATEC004309

## 29. Uphill Sledding for EOD Funding

NationalDefenseMagazine.org, Oct. 28 - Once a high-profile mission set, the military's explosive ordnance disposal community is now receiving less attention — and less money — from lawmakers. Just a decade ago, policymakers were pumping billions of dollars annually into initiatives to counter improvised explosive devices that were being used to target U.S. troops overseas. The film "The Hurt Locker," about a fictional EOD team operating in Iraq, won an Oscar for Best Picture. But times have changed. "We became very well publicized and we became a very big thing during the height of the IED years," noted Maj. Daniel Long with the Air Force's congressional liaison office. "As we've withdrawn out of Iraq, as Afghanistan starts to pull down, I don't know that we normally get the same amount of attention that we have previously, which is frankly a bit of a problem" because of the ongoing threat, he said at the National Defense Industrial Association's Global EOD Symposium and Exhibition. Between 2006 and 2009, the Joint Improvised Explosive Device Defeat Organization received more than $16 billion, according to the Government Accountability Office. By 2015, the renamed Joint Improvised-Threat Defeat Organization was receiving less than $600 million annually, and its budgets have remained relatively flat since then.

## 30. FTC Investigates Northrop: GBSD?

BreakingDefense.com, Oct. 24 - The Federal Trade Commission appears to be investigating whether Northrop Grumman acted in restraint of trade and violated an order requiring the company to sell its solid motor rocket engines on "a non-discriminatory basis to all competitors for missile contracts." Northrop disclosed the investigation today in its quarterly report: "In October 2019, the company received a civil investigative demand from the FTC requesting certain information relating to a potential issue of the company's compliance with the Order in connection with a pending strategic missile competition. The company is working to respond to the request. We believe the company has been and continues to be in full compliance with the Order, but we cannot predict any potential impact on the pending competition." Now, that does not make clear that the FTC is looking at the Ground Based Strategic Deterrent (GBSD), but there aren't a lot of other candidates for "a strategic missile competition" and it refers to an "Order."

## 31. How the Army Will Use Satellites to Track Land Threats in Real Time

C4ISRNet.com, Oct. 25 - The Army has needs. One of those needs is the ability to track and target land threats that are beyond the war fighters' line of sight. Though much of the focus on space sensing capabilities is directed at missile defense or space situational awareness, the ability to see time-sensitive ground threats like tanks beyond the line of sight of ground forces is essential for the war fighter. To help build this capability, the Army is teaming with the Space Development Agency on a space-based sensor layer dedicated to deep targeting that can feed information to the war fighter on the ground in real time. The SDA is actually developing a trio of sensing capabilities in space: a layer dedicated to tracking hypersonic weapons and ballistic missiles; a layer dedicated to space situational awareness and investigating objects in cislunar orbit; and a layer dedicated to detecting and maintaining custody of time-sensitive ground threats.

WASHSTATEC004310

## 32. Does Major Joint Military Procurement Really Work in the Baltics?

DefenseNews.com, Oct. 28 - On paper, the Baltic nations appear to have closely aligned defense modernization needs that make the joint procurement of advanced military equipment a no-brainer. After all, Latvia, Estonia and Lithuania have historically shared national interests, are currently facing a similar threat from Russia and each have relatively small defense budgets. Joint procurement would drive down costs for large defense articles by allowing the smaller Baltic nations to buy in greater numbers. It would also allow the countries to share maintenance responsibilities, which would save money. And it would drive greater interoperability in countering an adversary's simultaneous attack all three nations. But then there's the reality of the situation. "I think there are many misperceptions on Baltic integration," Janis Garisons, state secretary for the Latvian Ministry of Defence, told Defense News during a September visit to Washington. "I think this is a little bit of a wrong perception that there is a lot of added value in those common procurements."

## 33. Opinion: Is 3-D Printing the Future of Terrorism?

WSJ.com, Oct. 25 - On Oct. 9, a gunman tried to massacre worshipers on Yom Kippur at a synagogue in Halle, Germany, and crossed a new threshold: It was the first time a terrorist perpetrated a deadly attack with homemade weapons using 3-D-printed components—including a 3-D-printed gun. Instead of the slaughter the gunman had hoped for, he killed two people—in part because he couldn't get past a locked synagogue door, in part because what he called his "improvised guns" jammed or failed to fire. But the Halle attack shouldn't be dismissed as a macabre flop. The killer was interested not just in murder but in inspiration. In an online manifesto that German authorities have confirmed he wrote, the gunman styled himself a pioneer on a trial run: He wanted to use emerging technologies to encourage subsequent terrorists to follow in his footsteps and perfect his tactics. His goal was what security experts call "proof of concept." . . . The self-made Halle arsenal is a harbinger of a worrisome new era. The shooter sought to demonstrate the possibility of making simple, lethal, hard-to-trace, homemade guns that can be used by furtive lone-wolf terrorists like himself, as well as by larger extremist groups trying to lie low. More such attempts will likely follow, each building on the other to become increasingly deadly.

## 34. Opinion: US-China Competition: The Coming Decoupling? – Analysis

Eurasiareview.com, Oct. 27 - The United States and China are now clearly locked in a competition over dominance of the technologies of the future. At the same time, some elements of key government organisations on both sides are pushing for a major decoupling of very intertwined supply chains and value generation ecosystems that have developed over more than 30 years. How did we get to the point where zero sum competition and some level of decoupling are now widely accepted in government, academic, and business circles, and companies on both sides are acting in ways that will both heighten the competition and accelerate the decoupling? All this in several short years? Several parallel processes came together to produce this, which is happening in some sense organically, with no clear long-term thinking in either capital that accounts for the economic and national security costs, and second-, third-, and fourth- order effects. US policy towards China on technology issues has been driven by four major factors, some stemming from long standing concerns, and others coming out of recent developments around advanced technologies, where Chinese firms are suddenly both a supplier and collaborator and a new competitor.

## Upcoming Export Control and Other Trade Compliance Conferences

**Oct. 29-30 - Aéro Montréal and Cirrus Research Associates - Training on the Canadian Defence Market - Montreal**

**Nov. 4-5 - Aéro Montréal and McCarter & English - Training on the US Market - Montreal**

**Nov. 5 - America's Small Business Development Centers and M-PALM - Automated Commercial Environment (ACE) Export Compliance Seminar - Baltimore - Lofts Hotel**

**Nov. 5-6 - U.S. Dept. of Commerce/Bureau of Industry and Security (BIS) - Complying with U.S. Export Controls - Huntsville, AL**

**Nov. 12 - US Dept. of the Treasury/Office of Foreign Assets Control (OFAC) - 2019 OFAC Symposium - Washington, DC - Walter E. Washington Convention Center**

**Nov. 12-13 - Nielsonsmith - Customs Compliance in Europe 2019 - Düsseldorf, Germany**

**Nov. 18 - Cnxtd ("Connected") Inc. - 2019 International Conference on the EU Cybersecurity Act - Brussels - Hotel Brussels**

**Nov. 19 - C5 Group - European Forum on U.S. Export Controls - Brussels**

**Nov. 20-21 - C5 Group - European U.S. Defence Contracting - Brussels**

**Nov. 20-21 - Nielsonsmith - The European Anti-Corruption Summit - Munich, Germany**

**Dec. 3-4 - C5 Group - 12th Advanced Conference on Customs Compliance - London - St. James' Court, A Taj Hotel**

**Dec. 4-5 - American Conference Institute - 36th International Conference on the Foreign Corrupt Practices Act - Washington, DC**

**Dec. 10-11 - American Conference Institute - 10th Annual New York Forum on Economic Sanctions - New York City**

**Dec. 11 - German Government/Federal Office of Economics and Export Control - 11th Information Day Export Control 2019 -Frankfurt - Cape Europa, Osloer Str. 5, 60327 Frankfurt am Main**

**Dec. 13 - European Commission - 2019 Export Control Forum - Brussels - Albert Borschette Conference Centre (CCAB) Room CCAB0A Rue Froissart 36**

**Jan. 23-24 - American Conference Institute - AML & OFAC Compliance for the Insurance Industry - New York City**

**Jan. 28-29 - American Conference Institute - 9th Forum on U.S. Export & Re-Export Compliance for Canadian Operations - Toronto - Toronto Airport Marriott Hotel** - Gary Stanley, Editor of Defense and Export-Import Update, will once again co-chair this important conference.

**Jan. 30-31 - American Conference Institute - 14th Forum on the Foreign Corrupt Practices Act - Houston**

WASHSTATEC004312

**Feb. 5-6 – Nielsonsmith – Export Compliance in Europe – Munich, Germany**

**Feb. 11-12 – Nielsonsmith – European, EU and EU Member State Trade Controls Compliance for North American Companies Summit – Washington, DC**

**Feb. 24-26 – Society for International Affairs – 2020 Winter Back to Basics Conference – Las Vegas – Westin Las Vegas Hotel**

We hope this update proves helpful. If you have questions about any of these developments, please do not hesitate to call us. If you received this free newsletter from a colleague or friend and would like to subscribe directly, please just e-mail your name, title, company, and e-mail address to gstanley@glstrade.com.

Cordially yours,

Gary L. Stanley
President
Global Legal Services, PC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.20015
Tel. +1 (202) 686-4854
Fax +1 (202) 686-2624
Mobile +1 (202) 352-3059
E-mail gstanley@glstrade.com

Message
_____

**From:**      Gary Stanley [gstanley@glstrade.com]
**Sent:**      10/28/2019 1:11:02 PM
**To:**        John A.Foster [FosterJA2@state.gov]
**Subject:**   Defense and Export-Import Update (Oct. 28, 2019)

**Dear All,**

**Good Day!**

**Gary Stanley's Export Control Tip of the Day: A a foreign person may make a self-determination of an item's jurisdictional and classification status. Indeed, a foreign person is obligated to know whether an item is subject to the ITAR or, if subject to the EAR, how it is classified before reexporting or transferring the item in order to ensure compliance with the ITAR's and the EAR's licensing and other obligations. The U.S. exporter is responsible for determining the jurisdictional and classification status of the items it is exporting. However, if reliable jurisdictional and classification information has not already been provided by another party, such as the original equipment manufacturer, then the foreign person may and, indeed, must make these determinations itself in order to avoid violating the ITAR or the EAR if it later reexports or retransfers the article or item. As a matter of due diligence, however, the foreign person should seek jurisdictional and classification information from the manufacturer of the items or the owner of the technology in question and resolve any potential differences in interpretation. If after reviewing the ITAR's U.S. Munitions List (USML) and all relevant facts, doubt exists regarding whether the item is enumerated or otherwise described on the USML, the foreign person should request from DDTC a commodity jurisdiction determination pursuant to 22 C.F.R. § 120.4. If the item is clearly not enumerated or otherwise described on the USML and, after reviewing the EAR and all relevant facts, there is doubt regarding whether or where the item is enumerated or otherwise described on the EAR's Commerce Control List, then the foreign person should request from the Department of Commerce's Bureau of Industry and Security a commodity classification determination pursuant to 15 C.F.R. § 748.3.**

**Today's Items:**

1. **DDTC Seeks Public Comment on Electronic Form for Voluntary Disclosures**
2. **BIS Issues Order Denying Export Privileges of Alexis Vlachos of Montréal**
3. **Columbus Man Sentenced to Prison for Illegally Exporting Goods to Iran**
4. **Treasury and State Announce New Humanitarian Mechanism to Increase Transparency of Permissible Trade Supporting the Iranian People**
5. **OFAC Publishes General Licenses Relating to Iran and Venezuela**

6. **President Trump Continues National Emergency With Respect to the Democratic Republic of the Congo**

7. **EU Commission Opens Registration for 2019 Export Control Forum**

8. **UK Government's OFSI Updates Post Brexit - Russia Guidance**

9. **USTR Grants Certain Requests for Exclusion from Additional Duties on Certain Chinese Products**

10. **USTR Publishes Exclusion Request Schedule on Additional Chinese Products Subject to Increased Tariffs**

11. **USTR Seeks Applications for Inclusion on the Binational Panels Roster Under the North American Free Trade Agreement**

12. **EXIM Bank Advisory Committee and Sub-Saharan Africa Advisory Committee to Meet Oct. 30**

13. **Commerce/ITA's Civil Nuclear Trade Advisory Committee to Meet Nov. 12**

14. **Homeland Security Advisory Committee to Meet Nov. 14**

15. **Commerce/ITA's Environmental Technologies Trade Advisory Committee to Meet Nov. 19**

16. **U.S. Government Contracting**

17. **U.S. Customs and U.S. Census/AES Updates**

18. **Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes**

19. **GAO and CRS Reports, Testimony, and Correspondence of Interest**

20. **U.S. Government Trade Forms and Other Information Collections Open for Public Comment**

**Other Headlines**

21. **This Week in Congress: New Worries About the NDAA**

22. **Beijing Woos U.S. and Other Foreign Companies as Trade War Takes Toll**

23. **Amazon or Microsoft? DoD Picks a Winner for Its Controversial JEDI Contract**

24. **Key Dates Leading Up to the U.S. Pentagon's Cloud-Computing Award to Microsoft**

25. **Hypersonics Pitch Day: Air Force Woos Startups**

26. **Pentagon, With an Eye on China, Pushes for Help From American Tech**

27. **Air Force Halts Funding for Boeing's bBallistic Missile Replacement**

28. **Analysts Predict Counterdrone Market Will Top $2B**

29. **Uphill Sledding for EOD Funding**

30. **FTC Investigates Northrop: GBSD?**

31. **How the Army Will Use Satellites to Track Land Threats in Real Time**

32. **Does Major Joint Military Procurement Really Work in the Baltics?**

33. **Opinion: Is 3-D Printing the Future of Terrorism?**

**34. Opinion: US-China Competition: The Coming Decoupling? – Analysis**

**Upcoming Export Control and Other Trade Compliance Conferences**

## 1. DDTC Seeks Public Comment on Electronic Form for Voluntary Disclosures

(84 Fed. Reg. 57801) - The U.S. Department of State's Directorate of Defense Trade Controls (DDTC) is seeking public comment on its electronic form DS-7787 - "Disclosure of Violations of the Arms Export Control Act." interested persons have until November 27, 2019, to submit their comments.

## 2. BIS Issues Order Denying Export Privileges of Alexis Vlachos of Montréal

The U.S. Department of Commerce's Bureau of Industry and Security (BIS) has issued an Order Denying Export Privileges to Alexis Vlachos of Montréal, Québec, Canada, until September 4, 2025. On September 4, 2018, in the U.S. District Court for the District of Vermont, Alexis Vlachos ("Vlachos") was convicted of violating Section 38 of the Arms Export Control Act (22 U.S.C. § 2778 (2012)) ("AECA"). Vlachos was convicted of violating Section 38 of the AECA by knowingly and willfully exporting and causing to be exported from the United States to Canada firearms that were designated as defense articles on the United States Munitions List, without the required U.S. Department of State licenses. Vlachos was sentenced to fifty-one (51) months in prison and an assessment of $200.

## 3. Columbus Man Sentenced to Prison for Illegally Exporting Goods to Iran

The U.S. Department of Justice (DOJ) has announced that Behrooz Behroozian, 64, Columbus, Ohio, has been sentenced to 20 months in prison for exporting gas and oil pipeline parts to Iran for more than a decade in deliberate violation of a U.S. embargo and trade sanctions. According to the sentencing memorandum filed in this case, Behroozian used an intermediary company, Sumar Industrial Equipment, to attempt to cover-up that he was illegally supplying industrial equipment to Iran in violation of the Emergency Economic Powers Act (IEEPA). Behroozian exported manifolds, valves and connectors used for industrial pipelines in the gas and oil refinement industry to Iran via Sumar and profited $35,000 to $40,000 per year. This violated embargo and trade sanctions imposed upon Iran by the United States in May 1995. In November 2006, Behroozian became the owner and operator of a computer parts supplier in Dublin, Ohio, called Comtech International. Comtech had no storefront and made no domestic sales. It seldom exported computer parts. Instead, Comtech primarily exported industrial equipment to Sumar in the United Arab Emirates for further exportation to Iran.

## 4. Treasury and State Announce New Humanitarian Mechanism to Increase Transparency of Permissible Trade Supporting the Iranian People

The U.S. Departments of the Treasury and State has announced a new humanitarian mechanism to ensure unprecedented transparency into humanitarian trade with Iran. This

WASHSTATEC004316

mechanism will help the international community perform enhanced due diligence on humanitarian trade to ensure that funds associated with permissible trade in support of the Iranian people are not diverted by the Iranian regime. Concurrently, Treasury's Financial Crimes Enforcement Network (FinCEN) identified Iran as a jurisdiction of primary money laundering concern under Section 311 of the USA PATRIOT Act, and issued a new rulemaking to protect the U.S. financial system from malign Iranian financial activities. The humanitarian mechanism will require foreign governments and financial institutions that choose to participate in the mechanism to conduct enhanced due diligence and provide to Treasury a substantial and unprecedented amount of information, with appropriate disclosure and use restrictions, on a monthly basis, as described in guidance provided by OFAC outlining specific requirements.

## 5. OFAC Publishes General Licenses Relating to Iran and Venezuela

The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) has taken the following actions:

- Issued General License K "Authorizing Maintenance or Wind Down of Transactions Involving Cosco Shipping Tanker (Dalian) Co., Ltd."

- Amended  General License 5A "Authorizing Certain Transactions Related to the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond on or After January 22, 2020." In conjunction with this action, OFAC is amending Frequently Asked Question 595.

## 6. President Trump Continues National Emergency With Respect to the Democratic Republic of the Congo

(84 Fed. Reg. 56927) - In accordance with section 202(d) of the National Emergencies Act (50 U.S.C. 1622(d)), President Donald J. Trump is continuing for 1 year the national emergency with respect to the situation in or in relation to the Democratic Republic of the Congo declared in Executive Order 13413, as amended by Executive Order 13671.

## 7. EU Commission Opens Registration for 2019 Export Control Forum

The European Commission and the Finnish Presidency of the Council are inviting representatives from EU Member States and the European Parliament, industry and civil society to participate in the 2019 Export Control Forum. The 2019 Export Control Forum will provide an opportunity to review ongoing export control implementation and latest developments in the EU, as well as to discuss the future of EU and global international export controls. The 2019 Export Control Forum will be opened by representatives of the Commission, the Presidency and the European Parliament, and will convene selected panels of experts, to be followed by open dialogue with the stakeholders.

- Date: 13 December 2019
- Venue: Albert Borschette Conference Centre (CCAB) Room 0A. Rue Froissart 36, Brussels
- Time: 10:00 – 17:00. Registration will be open at 9:30.
- Registration: Please register via the online registration tool. The deadline for registration is 1 December 2019.

WASHSTATEC004317

## 8. UK Government's OFSI Updates Post Brexit - Russia Guidance

The U.K. Government's Office of Financial Sanctions Implementation (FSI) has updated its guidance on the financial and investment restrictions in the Russia sanctions regime should the UK leave the EU without a deal. This guidance does not currently apply and would only come in to effect if the UK leaves the EU without a deal and when the Russia (Sanctions) (EU Exit) Regulations 2019 come into force. This is therefore for information only at this stage.

## 9. USTR Grants Certain Requests for Exclusion from Additional Duties on Certain Chinese Products

(84 Fed. Reg. 57803) - In September 2018, the U.S. Trade Representative imposed additional duties on goods of China with an annual trade value of approximately $200 billion as part of the action in the Section 301 investigation of China's acts, policies, and practices related to technology transfer, intellectual property, and innovation. The U.S. Trade Representative initiated a product exclusion process in June 2019, and interested persons have submitted requests for the exclusion of specific products. This notice announces the U.S. Trade Representative's determination to grant certain exclusion requests, as specified in the annex to this notice. The product exclusions announced in this notice will apply as of the September 24, 2018, effective date of the $200 billion action, to August 7, 2020.

## 10. USTR Publishes Exclusion Request Schedule on Additional Chinese Products Subject to Increased Tariffs

(84 Fed. Reg. 57144) - In a notice published at 84 Fed. Reg. 43304 (Aug. 20, 2019), the U.S. Trade Representative announced that the Office of the U.S. Trade Representative (USTR) would establish a process by which U.S. stakeholders may request an exclusion from additional duties of particular products classified within a tariff subheading covered by the August 2019 action. This notice announces that USTR will open an electronic portal for submission of exclusion requests on October 31, 2019 for products covered by Annex A of the August 2019 action, and sets out the specific procedures for submitting requests.

- October 31, 2019 at noon EDT: The web portal for submitting exclusion requests-- https://exclusions.USTR.gov--will open.

- January 31, 2020 at 11:59 PM EST: Last day for submitting exclusion requests.

- Responses to individual exclusion requests are due 14 days after USTR posts the request on the online portal.

- Any replies to responses to an exclusion request are due the later of 7 days after the close of the 14-day response period, or 7 days after the posting of a response.

## 11. USTR Seeks Applications for Inclusion on the Binational Panels Roster Under the North American Free Trade Agreement

(84 Fed. Reg. 57152) - The North American Free Trade Agreement (NAFTA) provides for the establishment of a roster of individuals to serve on binational panels convened to review final determinations in antidumping or countervailing duty (AD/CVD) proceedings and

WASHSTATEC004318

amendments to AD/CVD statutes of a NAFTA Party. The United States annually renews its selections for the roster. The Office of the United States Trade Representative (USTR) invites applications from eligible individuals wishing to be included on the roster for the period April 1, 2020, through March 31, 2021. USTR must receive your application by November 29, 2019.

## 12. EXIM Bank Advisory Committee and Sub-Saharan Africa Advisory Committee to Meet Oct. 30

(84 Fed. Reg. 56810) - The Export-Import Bank of the United States (EXIM) as announced that its advisory committee and its Sub-Saharan Africa Advisory Committee will meet Wednesday, October 30, 2019, 11:00 AM to 2:30 PM EDT, at 811 Vermont Avenue NW, Room 1126, Washington, DC 20571. If you plan to attend, a photo ID must be presented at the guard's desk as part of the clearance process into the building, you may contact India Walker at external@exim.gov to be placed on an attendee list. Discussion of EXIM programs and comments for inclusion in the report on competitiveness of the Export-Import Bank of the United States to Congress.

## 13. Commerce/ITA's Civil Nuclear Trade Advisory Committee to Meet Nov. 12

(84 Fed. Reg. 57699) - The U.S. Department of Commerce's International Trade Administration (ITA) has announced that its Civil Nuclear Trade Advisory Committee will meet in open sessionTuesday, November 12, 2019, 3:00 PM to 4:00 PM EST, at the U.S. Department of Commerce, Herbert C. Hoover Building, Commerce Research Library, 1401 Constitution Ave. NW, Washington, DC 20230. Requests to register to participate (including to speak or for auxiliary aids) and any written comments should be submitted to: Mr. Devin Horne, Office of Energy & Environmental Industries, International Trade Administration, Room 28018, 1401 Constitution Ave. NW, Washington, DC 20230. (Fax: 202-482- 5665; email: devin.horne@trade.gov). Members of the public are encouraged to submit registration requests and written comments via email to ensure timely receipt.

## 14. Homeland Security Advisory Committee to Meet Nov. 14

(84 Fed. Reg. 56828) - The U.S. Department of Homeland Security's Office of Partnership and Engagement has announced that the Homeland Security Advisory Council will meet in open session Thursday, November 14, 2019, 1:45 PM to 3:30 PM EST, in the Town Hall at the Transportation Security Administration, 601 S 12th Street (East Building), Arlington, VA 20598. The Council will swear in new members, and review and deliberate on reports from the Families and Children Care Panel, Emerging Technologies, Prevention of Targeted Violence Against Faith- based Communities, and State, Local, Tribal, and Territorial Cybersecurity subcommittees. Following this, there will be a break for public commentary.

## 15. Commerce/ITA's Environmental Technologies Trade Advisory Committee to Meet Nov. 19

(84 Fed. Reg. 57698) - The U.S. Department of Commerce's International Trade Administration (ITA) has announced that its Environmental Technologies Trade Advisory Committee (ETTAC) will meet Tuesday, November 19, 2019, 8:45 AM to 3:30 PM EST, in the Research Library at the U.S. Department of Commerce, 1401 Constitution Avenue NW,

WASHSTATEC004319

Washington, DC 20230. Those interested in attending must provide notification by Friday, November 8, at 5:00 PM EST. To register and obtain call-in information, submit comments, or request auxiliary aids, please contact: Ms. Amy Kreps, Office of Energy & Environmental Industries (OEEI), International Trade Administration, Room 28018, 1401 Constitution Avenue NW, Washington, DC 20230 or email: amy.kreps@trade.gov. The ETTAC will receive briefings from ITA as well as the interagency and will discuss its priorities and objectives for potential recommendations to the interagency through the Secretary of Commerce. Topics to be considered during the afternoon subcommittee breakout sessions will fall under the three themes of Trade Policy and Trade Negotiations, Trade Promotion and Export Market Development, and Cooperation on Standards, Certifications and Regulations.

## 16. U.S. Government Contracting

- DoD, GSA & NASA/Federal Acquisition Regulation (FAR): OMB Information Collection Submission - Patents - Deadline for Public Comment: Dec. 23, 2019

- DoD/Office of the Under Secretary of Defense for Acquisition and Sustainment: OMB Information Collection Submission - Department of Defense Application for Priority Rating for Production or Construction Equipment - Agency Form No.: DD Form 691 - Deadline for Public Comment: Nov. 25, 2019

- DoD/Defense Logistics Agency (DLA): OMB Information Collection Submission - ASSIST Database - Deadline for Public Comment: Nov. 25, 2019

- GSA: Notice of Announcement of Industry Engagement Event - GSA is hosting an industry engagement event on Wednesday, November 6, 2019, from 9:00 AM to 11:00 AM EST, at the Department of Interior (DOI) Yates Auditorium at 1849 C St. NW, Washington, DC 20240k, to highlight how section 889 of Title VII of the NDAA for FY 2019 (hereinafter Sec. 889) will affect GSA's business and supply chain.

## 17. U.S. Customs and U.S. Census/AES Updates

- U.S. Customs - CSMS #40363706 - ACE CERTIFICATION CQ Deployment Thursday morning, Oct 24, 2019 at 0630 ET

- U.S. Customs - CSMS #40371652 - Food and Drug Administration (FDA) New Center for Tobacco (CTP) Product Subclass Code

- U.S. Customs - CSMS #40373287 - Trade Policy Update for Drawback: Trade Facilitation and Trade Enforcement Act (TFTEA) Combination Privilege Application

- U.S. Customs - CSMS #40386416 - ACE PROD AND CERT EXTENDED Scheduled Maintenance this weekend, Sat. Oct 26, 2019@ 2100 ET to 0400 ET Sun. Oct 27

- U.S. Customs - CSMS #40389928 - Update for the Automated Commercial Environment (ACE) Collections Release 1 – PZ Output Release Date

- U.S. Census - Tips on How to Resolve AES Response Messages

WASHSTATEC004320

| | |
|---|---|
| **Fatal Error Response Code: 068** | **Narrative:** SRN on File; Action Not Allowed<br><br>**Severity:** Fatal<br><br>**Reason: The Shipment is not on file in AES, therefore the requested action is not allowed.**<br><br>**Resolution:** When the Shipment Filing Action Request Indicator is a Change, Replace, or X for Cancel, the Shipment Reference Number must exist on a previous filing in AES for the filer.<br><br>Verify the Shipment Filing Action Request Indicator and the Shipment Reference Number, correct the shipment and resubmit. |
| **Fatal Error Response Code: 808** | **Narrative:** Improbable Destination for Commodity<br><br>**Severity:** Verify<br><br>**Reason:** For the reported Schedule B/HTS Number, the Country of Destination Code is improbable.<br><br>**Resolution:** Certain products are highly unlikely to be exported to certain Countries of Destination based on historical data and industry input. This might indicate either a keying error or misclassification of the product.<br><br>Verify the Schedule B/HTS Number and Country of Destination Code, correct the shipment and resubmit (if necessary). If the information is verified correct as reported, no action is necessary. |

## 18. Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes

- Commerce/E&C - Certain Amorphous Silica Fabric From the People's Republic of China: Rescission of Countervailing Duty Administrative Review; 2018

- Commerce/E&C - Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017

- Commerce/E&C - Certain Large Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe (Over 4.5 Inches) From Japan: Rescission of Antidumping Duty Administrative Review: 2018-2019

- Commerce/E&C - Certain Small Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe (Under 4.5 Inches) From Japan: Rescission of Antidumping Duty Administrative Review: 2018-2019

- Commerce/E&C - Certain Uncoated Paper From Brazil: Final Results of Antidumping Duty Administrative Review; 2017-2018

WASHSTATEC004321

- Commerce/E&C - Fresh Tomatoes From Mexico: Final Determination of Sales at Less Than Fair Value Pages 57401 - 57403 [FR DOC #2019-23341]

- Commerce/E&C - High Pressure Steel Cylinders From the People's Republic of China: Rescission of Countervailing Duty Administrative Review: 2018

- Commerce/E&C - Mattresses From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Refillable Stainless Steel Kegs From Germany: Final Affirmative Determination of Sales at Less Than Fair Value

- Commerce/E&C - Refillable Stainless Steel Kegs From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Refillable Stainless Steel Kegs From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Stainless Steel Flanges From the People's Republic of China: Rescission of Countervailing Duty Administrative Review; 2019

- Commerce/E&C - Vertical Metal File Cabinets From the People's Republic of China: Final Determination of Sales at Less Than Fair Value

- Commerce/E&C - Vertical Metal File Cabinets From the People's Republic of China: Final Affirmative Countervailing Duty Determination

- USITC - USITC Releases Report on MTB Effects - This report provides a broad assessment of the economic effects of duty suspensions and reductions on U.S. producers, purchasers, and consumers, as well as case studies looking at the effects on groups of products covered by the Miscellaneous Tariff Bill Act of 2018. The report also includes recommendations from interested parties with respect to those domestic industry sectors that might benefit from permanent duty suspensions or reductions, with a particular focus on inequities created by tariff inversions. Much of the information in this report comes from a survey conducted by the Commission after the duty suspensions and reductions became effective.

- USITC - USITC Releases The Year in Trade 2018

- USITC - Certain Microfluidic Systems and Components Thereof and Products Containing Same: Commission Determination To Review in Part a Final Initial Determination Finding a Violation of Section 337 and To Extend the Target Date; Schedule for Filing Written Submissions

- USITC - Certain Semiconductor Devices, Integrated Circuits, and Consumer Products Containing the Same: Commission Determination Not To Review an Initial Determination Terminating the Investigation Based on a Settlement Agreement and a

Withdrawal of the Complaint; Termination of the Investigation

- USITC - Certain Shaker Screens for Drilling Fluids, Components Thereof, and Related Marketing Materials: Notice of Receipt of Complaint; Solicitation of Comments Relating to the Public Interest

- USITC - Fresh Tomatoes From Mexico: Continuation of the Final Phase of an Antidumping Duty Investigation and Revised Schedule

- USITC - Wooden Cabinets and Vanities From China: Scheduling of the Final Phase of Countervailing Duty and Anti-Dumping Duty Investigations

- USITC - Government in the Sunshine Act Meeting Notice - October 31, 2019, 11:00 AM EDT

## 19. GAO and CRS Reports, Testimony, and Correspondence of Interest

- CRS - Brexit: Status and Outlook

- CRS - The European Parliament and U.S. Interests

- CRS - The Changing Landscape of Immigrant Investment Programs

- CRS - Australia

## 20. U.S. Government Trade Forms and Other Information Collections Open for Public Comment

(84 Fed. Reg. 57054) - Agency: U.S. Dept. of Justice/Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) - Title: Informant Agreement - Agency Form No.: ATF Form 3252.2 - Type of Review: New Collection - Deadline for Public Comment: Dec. 23, 2019

## Other Headlines

## 21. This Week in Congress: New Worries About the NDAA

MiltiaryTimes.com, Oct. 28 - Senate Armed Services Committee officials this week will release a "skinny" defense authorization bill plan as lawmakers grow increasingly pessimistic about the possibility of reaching a compromise on a host of disputed issues with the massive military policy bill. Committee Chairman Jim Inhofe, R-Okla., said last week that the move is designed to ensure that a host of necessary items — including numerous military specialty pay authorizations — are passed by the end of the year. But a day later, House Armed Services Chairman Adam Smith, D-Wash., said a stripped-down version of the measure wouldn't solve all of lawmakers' problems. Negotiations on the broader measure have stalled in recent weeks as Democrats and Republicans have fought over military construction money used for President Donald Trump's controversial border wall project.

## 22. Beijing Woos U.S. and Other Foreign Companies as Trade War Takes Toll

WSJ.com, Oct. 27 - China has stepped up its charm offensive to attract U.S. and other foreign companies in recent weeks, seeking to offset the debilitating impact of the trade war while still exchanging blistering comments with Washington. The country's premier, Li Keqiang, has wooed foreign companies with noticeable enthusiasm this month, telling a roundtable of Western executives, for example, that global manufacturing enterprises are welcome to seize opportunities as China opens up further. The move suggests a growing realization of the trade war's toll on the Chinese economy and on U.S. companies' willingness to invest in China. It also reflects a recognition that foreign companies are key to achieving Chinese leaders' ambitions for both growth and technological advancement. The pursuit of foreign investors comes as the Communist party elite sits down Monday for its first top policy-setting meeting, or plenum, since early last year, during which leaders will discuss their next five-year economic blueprint, according to Chinese officials involved in policy making.

## 23. Amazon or Microsoft? DoD Picks a Winner for Its Controversial JEDI Contract

DefenseNews.com, No. 26 - Microsoft won the contract for the Department of Defense's enterprise cloud, potentially worth $10 billion over 10 years, the Pentagon announced Oct. 25. The tech giant won the award over Amazon Web Services, just three days after Secretary of Defense Mark Esper recused himself from the award after months of review because his son worked for IBM. Amazon was widely considered by industry to be the front runner for the award. The JEDI contract process continues to be under investigation by the DoD inspector general and stuck in federal court. The Pentagon plans to move 80 percent of its systems over to the Joint Enterprise Defense Infrastructure cloud, better known as JEDI. The cloud will contain both unclassified and classified data. In a statement, DoD CIO Dana Deasy heralded the contract award as a win for the war fighter. "The National Defense Strategy dictates that we must improve the speed and effectiveness with which we develop and deploy modernized technical capabilities to our women and men in uniform," DoD Chief Information Officer Dana Deasy said. "The DoD Digital Modernization Strategy was created to support this imperative. This award is an important step in execution of the Digital Modernization Strategy."

## 24. Key Dates Leading Up to the U.S. Pentagon's Cloud-Computing Award to Microsoft

Reuters.com, Oct. 27 - Microsoft Corp has won the U.S. Pentagon's $10 billion cloud-computing contract, the Defense Department said on Friday, beating out favorite Amazon.com Inc. The contract, called the Joint Enterprise Defense Infrastructure Cloud, or JEDI, is part of a broad modernization of the Pentagon's information technology systems. Here is a timeline of important dates leading up to the award.

## 25. Hypersonics Pitch Day: Air Force Woos Startups

BreakingDefense.com, Oct. 25 - Hypersonics and "pitch days," two of the hottest concepts at the Air Force right now, will come together for the first time Nov. 7. Air Force experts will judge products and ideas from startup firms related to solving key challenges to hypersonic

WASHSTATEC004324

flight, such as Mach 5-plus propulsion and new materials that can withstand extremely high temperatures. Lt. Gen. Duke Richardson, military deputy to Air Force acquisition czar Will Roper, will oversee the panel of judges who pick the winner of a same-day contract of up to $750,000 to jumpstart their work, according to an Oct. 18 announcement from Air Force Materiel Command's 96th Test Wing. The pitch day will be held at the Doolittle Institute in Niceville, Fla. "Fielding hypersonic weapons is a top priority for our warfighters. The Air Force is leading the way, and we can use all the help we can get from innovative companies," Richardson said. "That's one reason why this pitch day is so exciting."

## 26. Pentagon, With an Eye on China, Pushes for Help From American Tech

NYTimes.com, Oct. 25 - Pentagon officials have been holding private discussions with tech industry executives to wrestle with a key question: how to ensure future supplies of the advanced computer chips needed to retain America's military edge. The talks, some of which predate the Trump administration, recently took on an increased urgency, according to people who were involved or briefed on the discussions. Pentagon officials encouraged chip executives to consider new production lines for semiconductors in the United States, said the people, who declined to be identified because the talks were confidential. The discussions are being driven by the Pentagon's increased dependence on chips made abroad, especially in Taiwan, as well as recent tensions with China, these people said. One chip maker, the Taiwan Semiconductor Manufacturing Company, better known as TSMC, plays a particularly crucial role producing commercial chips that also have applications for aircraft, satellites, drones and wireless communications. And because of unrest over the past few months in the semiautonomous Chinese territory of Hong Kong, some Pentagon officials and chip executives have wondered about situations that could force suppliers in Taiwan to limit or cut off silicon shipments, the people said.

## 27. Air Force Halts Funding for Boeing's bBallistic Missile Replacement

WashingtonPost.com, Oct. 22 - The Air Force has halted funding for Boeing's $349 million ballistic missile development effort, effectively clearing the way for a Northrop Grumman-led team to become the only bidder for one of the Pentagon's most expensive weapons production programs. The move is an apparent response to Boeing's recent announcement that it will drop out of the Ground Based Strategic Deterrent program, an $85 billion project to replace the nation's Minuteman III ballistic missiles. The Defense Department appears unwilling to pay Boeing to develop a next-generation ballistic missile when the company is refusing to submit that missile for review. A Boeing representative said the company is disappointed in the Air Force's decision not to allot more funding for its missile.

## 28. Analysts Predict Counterdrone Market Will Top $2B

C4ISRNet.com, Oct. 28 - The three biggest obstacles facing the counterdrone market are the law, the nature of the threat, and the technology itself. In fairness, those are obstacles to the adoption of most any national security technology. A new analysis by investment consultants Frost & Sullivan tackles the counterdrone market, an area of high interest, no consensus, and much proverbial snake oil. The report projects a counterdrone market whose revenues will exceed $2 billion by 2024. What legal obstacles counterdrone systems face depend on how, exactly, the equipment works to stop a drone. "Adoption of these

WASHSTATEC004325

[counterdrone] technologies is limited by individual country rules against wiretapping, jamming, and computer hacking — all methods employed by various C-UAS," said Michael Blades of Frost & Sullivan.

## 29. Uphill Sledding for EOD Funding

NationalDefenseMagazine.org, Oct. 28 - Once a high-profile mission set, the military's explosive ordnance disposal community is now receiving less attention — and less money — from lawmakers. Just a decade ago, policymakers were pumping billions of dollars annually into initiatives to counter improvised explosive devices that were being used to target U.S. troops overseas. The film "The Hurt Locker," about a fictional EOD team operating in Iraq, won an Oscar for Best Picture. But times have changed. "We became very well publicized and we became a very big thing during the height of the IED years," noted Maj. Daniel Long with the Air Force's congressional liaison office. "As we've withdrawn out of Iraq, as Afghanistan starts to pull down, I don't know that we normally get the same amount of attention that we have previously, which is frankly a bit of a problem" because of the ongoing threat, he said at the National Defense Industrial Association's Global EOD Symposium and Exhibition. Between 2006 and 2009, the Joint Improvised Explosive Device Defeat Organization received more than $16 billion, according to the Government Accountability Office. By 2015, the renamed Joint Improvised-Threat Defeat Organization was receiving less than $600 million annually, and its budgets have remained relatively flat since then.

## 30. FTC Investigates Northrop: GBSD?

BreakingDefense.com, Oct. 24 - The Federal Trade Commission appears to be investigating whether Northrop Grumman acted in restraint of trade and violated an order requiring the company to sell its solid motor rocket engines on "a non-discriminatory basis to all competitors for missile contracts." Northrop disclosed the investigation today in its quarterly report: "In October 2019, the company received a civil investigative demand from the FTC requesting certain information relating to a potential issue of the company's compliance with the Order in connection with a pending strategic missile competition. The company is working to respond to the request. We believe the company has been and continues to be in full compliance with the Order, but we cannot predict any potential impact on the pending competition." Now, that does not make clear that the FTC is looking at the Ground Based Strategic Deterrent (GBSD), but there aren't a lot of other candidates for "a strategic missile competition" and it refers to an "Order."

## 31. How the Army Will Use Satellites to Track Land Threats in Real Time

C4ISRNet.com, Oct. 25 - The Army has needs. One of those needs is the ability to track and target land threats that are beyond the war fighters' line of sight. Though much of the focus on space sensing capabilities is directed at missile defense or space situational awareness, the ability to see time-sensitive ground threats like tanks beyond the line of sight of ground forces is essential for the war fighter. To help build this capability, the Army is teaming with the Space Development Agency on a space-based sensor layer dedicated to deep targeting that can feed information to the war fighter on the ground in real time. The SDA is actually developing a trio of sensing capabilities in space: a layer dedicated to tracking hypersonic weapons and ballistic missiles; a layer dedicated to space situational awareness and

WASHSTATEC004326

investigating objects in cislunar orbit; and a layer dedicated to detecting and maintaining custody of time-sensitive ground threats.

## 32. Does Major Joint Military Procurement Really Work in the Baltics?

DefenseNews.com, Oct. 28 - On paper, the Baltic nations appear to have closely aligned defense modernization needs that make the joint procurement of advanced military equipment a no-brainer. After all, Latvia, Estonia and Lithuania have historically shared national interests, are currently facing a similar threat from Russia and each have relatively small defense budgets. Joint procurement would drive down costs for large defense articles by allowing the smaller Baltic nations to buy in greater numbers. It would also allow the countries to share maintenance responsibilities, which would save money. And it would drive greater interoperability in countering an adversary's simultaneous attack all three nations. But then there's the reality of the situation. "I think there are many misperceptions on Baltic integration," Janis Garisons, state secretary for the Latvian Ministry of Defence, told Defense News during a September visit to Washington. "I think this is a little bit of a wrong perception that there is a lot of added value in those common procurements."

## 33. Opinion: Is 3-D Printing the Future of Terrorism?

WSJ.com, Oct. 25 - On Oct. 9, a gunman tried to massacre worshipers on Yom Kippur at a synagogue in Halle, Germany, and crossed a new threshold: It was the first time a terrorist perpetrated a deadly attack with homemade weapons using 3-D-printed components—including a 3-D-printed gun. Instead of the slaughter the gunman had hoped for, he killed two people—in part because he couldn't get past a locked synagogue door, in part because what he called his "improvised guns" jammed or failed to fire. But the Halle attack shouldn't be dismissed as a macabre flop. The killer was interested not just in murder but in inspiration. In an online manifesto that German authorities have confirmed he wrote, the gunman styled himself a pioneer on a trial run: He wanted to use emerging technologies to encourage subsequent terrorists to follow in his footsteps and perfect his tactics. His goal was what security experts call "proof of concept." . . . The self-made Halle arsenal is a harbinger of a worrisome new era. The shooter sought to demonstrate the possibility of making simple, lethal, hard-to-trace, homemade guns that can be used by furtive lone-wolf terrorists like himself, as well as by larger extremist groups trying to lie low. More such attempts will likely follow, each building on the other to become increasingly deadly.

## 34. Opinion: US-China Competition: The Coming Decoupling? – Analysis

Eurasiareview.com, Oct. 27 - The United States and China are now clearly locked in a competition over dominance of the technologies of the future. At the same time, some elements of key government organisations on both sides are pushing for a major decoupling of very intertwined supply chains and value generation ecosystems that have developed over more than 30 years. How did we get to the point where zero sum competition and some level of decoupling are now widely accepted in government, academic, and business circles, and companies on both sides are acting in ways that will both heighten the competition and accelerate the decoupling? All this in several short years? Several parallel processes came together to produce this, which is happening in some sense organically, with no clear long-term thinking in either capital that accounts for the economic and national security costs, and second-, third-, and fourth- order effects. US policy towards China on technology issues has been driven by four major factors, some stemming from long standing

concerns, and others coming out of recent developments around advanced technologies, where Chinese firms are suddenly both a supplier and collaborator and a new competitor.

## Upcoming Export Control and Other Trade Compliance Conferences

**Oct. 29-30 - Aéro Montréal and Cirrus Research Associates - Training on the Canadian Defence Market - Montreal**

**Nov. 4-5 - Aéro Montréal and McCarter & English - Training on the US Market - Montreal**

**Nov. 5 - America's Small Business Development Centers and M-PALM - Automated Commercial Environment (ACE) Export Compliance Seminar - Baltimore - Lofts Hotel**

**Nov. 5-6 - U.S. Dept. of Commerce/Bureau of Industry and Security (BIS) - Complying with U.S. Export Controls - Huntsville, AL**

**Nov. 12 - US Dept. of the Treasury/Office of Foreign Assets Control (OFAC) - 2019 OFAC Symposium - Washington, DC - Walter E. Washington Convention Center**

**Nov. 12-13 - Nielsonsmith - Customs Compliance in Europe 2019 - Düsseldorf, Germany**

**Nov. 18 - Cnxtd ("Connected") Inc. - 2019 International Conference on the EU Cybersecurity Act - Brussels - Hotel Brussels**

**Nov. 19 - C5 Group - European Forum on U.S. Export Controls - Brussels**

**Nov. 20-21 - C5 Group - European U.S. Defence Contracting - Brussels**

**Nov. 20-21 - Nielsonsmith - The European Anti-Corruption Summit - Munich, Germany**

**Dec. 3-4 - C5 Group - 12th Advanced Conference on Customs Compliance - London - St. James' Court, A Taj Hotel**

**Dec. 4-5 - American Conference Institute - 36th International Conference on the Foreign Corrupt Practices Act - Washington, DC**

**Dec. 10-11 - American Conference Institute - 10th Annual New York Forum on Economic Sanctions - New York City**

**Dec. 11 - German Government/Federal Office of Economics and Export Control - 11th Information Day Export Control 2019 -Frankfurt - Cape Europa, Osloer Str. 5, 60327 Frankfurt am Main**

**Dec. 13 - European Commission - 2019 Export Control Forum - Brussels - Albert Borschette Conference Centre (CCAB) Room CCAB0A Rue Froissart 36**

**Jan. 23-24 - American Conference Institute - AML & OFAC Compliance for the Insurance Industry - New York City**

**Jan. 28-29 - American Conference Institute - 9th Forum on U.S. Export & Re-Export Compliance for Canadian Operations - Toronto - Toronto Airport Marriott Hotel - Gary Stanley, Editor of Defense and Export-Import Update, will once again co-chair this important conference.**

**Jan. 30-31 - American Conference Institute - 14th Forum on the Foreign Corrupt Practices Act - Houston**

**Feb. 5-6 - Nielsonsmith - Export Compliance in Europe - Munich, Germany**

**Feb. 11-12 - Nielsonsmith - European, EU and EU Member State Trade Controls Compliance for North American Companies Summit - Washington, DC**

**Feb. 24-26 - Society for International Affairs - 2020 Winter Back to Basics Conference - Las Vegas - Westin Las Vegas Hotel**

We hope this update proves helpful. If you have questions about any of these developments, please do not hesitate to call us. If you received this free newsletter from a colleague or friend and would like to subscribe directly, please just e-mail your name, title, company, and e-mail address to gstanley@glstrade.com.

Cordially yours,

Gary L. Stanley
President
Global Legal Services, PC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.20015
Tel. +1 (202) 686-4854
Fax +1 (202) 686-2624
Mobile +1 (202) 352-3059
E-mail gstanley@glstrade.com

Message

| | |
|---|---|
| **From:** | Gary Stanley [gstanley@glstrade.com] |
| **Sent:** | 10/28/2019 1:11:02 PM |
| **To:** | Michael F.Miller [MillerMF@state.gov] |
| **Subject:** | Defense and Export-Import Update (Oct. 28, 2019) |

**Dear All,**

**Good Day!**

**Gary Stanley's Export Control Tip of the Day: A a foreign person may make a self-determination of an item's jurisdictional and classification status. Indeed, a foreign person is obligated to know whether an item is subject to the ITAR or, if subject to the EAR, how it is classified before reexporting or transferring the item in order to ensure compliance with the ITAR's and the EAR's licensing and other obligations. The U.S. exporter is responsible for determining the jurisdictional and classification status of the items it is exporting. However, if reliable jurisdictional and classification information has not already been provided by another party, such as the original equipment manufacturer, then the foreign person may and, indeed, must make these determinations itself in order to avoid violating the ITAR or the EAR if it later reexports or retransfers the article or item. As a matter of due diligence, however, the foreign person should seek jurisdictional and classification information from the manufacturer of the items or the owner of the technology in question and resolve any potential differences in interpretation. If after reviewing the ITAR's U.S. Munitions List (USML) and all relevant facts, doubt exists regarding whether the item is enumerated or otherwise described on the USML, the foreign person should request from DDTC a commodity jurisdiction determination pursuant to 22 C.F.R. § 120.4. If the item is clearly not enumerated or otherwise described on the USML and, after reviewing the EAR and all relevant facts, there is doubt regarding whether or where the item is enumerated or otherwise described on the EAR's Commerce Control List, then the foreign person should request from the Department of Commerce's Bureau of Industry and Security a commodity classification determination pursuant to 15 C.F.R. § 748.3.**

**Today's Items:**

1. **DDTC Seeks Public Comment on Electronic Form for Voluntary Disclosures**
2. **BIS Issues Order Denying Export Privileges of Alexis Vlachos of Montréal**
3. **Columbus Man Sentenced to Prison for Illegally Exporting Goods to Iran**
4. **Treasury and State Announce New Humanitarian Mechanism to Increase Transparency of Permissible Trade Supporting the Iranian People**
5. **OFAC Publishes General Licenses Relating to Iran and Venezuela**
6. **President Trump Continues National Emergency With Respect to the Democratic**

WASHSTATEC004330

Republic of the Congo

7. **EU Commission Opens Registration for 2019 Export Control Forum**

8. **UK Government's OFSI Updates Post Brexit - Russia Guidance**

9. **USTR Grants Certain Requests for Exclusion from Additional Duties on Certain Chinese Products**

10. **USTR Publishes Exclusion Request Schedule on Additional Chinese Products Subject to Increased Tariffs**

11. **USTR Seeks Applications for Inclusion on the Binational Panels Roster Under the North American Free Trade Agreement**

12. **EXIM Bank Advisory Committee and Sub-Saharan Africa Advisory Committee to Meet Oct. 30**

13. **Commerce/ITA's Civil Nuclear Trade Advisory Committee to Meet Nov. 12**

14. **Homeland Security Advisory Committee to Meet Nov. 14**

15. **Commerce/ITA's Environmental Technologies Trade Advisory Committee to Meet Nov. 19**

16. **U.S. Government Contracting**

17. **U.S. Customs and U.S. Census/AES Updates**

18. **Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes**

19. **GAO and CRS Reports, Testimony, and Correspondence of Interest**

20. **U.S. Government Trade Forms and Other Information Collections Open for Public Comment**


**Other Headlines**


21. **This Week in Congress: New Worries About the NDAA**

22. **Beijing Woos U.S. and Other Foreign Companies as Trade War Takes Toll**

23. **Amazon or Microsoft? DoD Picks a Winner for Its Controversial JEDI Contract**

24. **Key Dates Leading Up to the U.S. Pentagon's Cloud-Computing Award to Microsoft**

25. **Hypersonics Pitch Day: Air Force Woos Startups**

26. **Pentagon, With an Eye on China, Pushes for Help From American Tech**

27. **Air Force Halts Funding for Boeing's bBallistic Missile Replacement**

28. **Analysts Predict Counterdrone Market Will Top $2B**

29. **Uphill Sledding for EOD Funding**

30. **FTC Investigates Northrop: GBSD?**

31. **How the Army Will Use Satellites to Track Land Threats in Real Time**

32. **Does Major Joint Military Procurement Really Work in the Baltics?**

33. **Opinion: Is 3-D Printing the Future of Terrorism?**

34. **Opinion: US-China Competition: The Coming Decoupling? – Analysis**

WASHSTATEC004331

**Upcoming Export Control and Other Trade Compliance Conferences**

## 1. DDTC Seeks Public Comment on Electronic Form for Voluntary Disclosures

(84 Fed. Reg. 57801) - The U.S. Department of State's Directorate of Defense Trade Controls (DDTC) is seeking public comment on its electronic form DS-7787 - "Disclosure of Violations of the Arms Export Control Act." interested persons have until November 27, 2019, to submit their comments.

## 2. BIS Issues Order Denying Export Privileges of Alexis Vlachos of Montréal

The U.S. Department of Commerce's Bureau of Industry and Security (BIS) has issued an Order Denying Export Privileges to Alexis Vlachos of Montréal, Québec, Canada, until September 4, 2025. On September 4, 2018, in the U.S. District Court for the District of Vermont, Alexis Vlachos ("Vlachos") was convicted of violating Section 38 of the Arms Export Control Act (22 U.S.C. § 2778 (2012)) ("AECA"). Vlachos was convicted of violating Section 38 of the AECA by knowingly and willfully exporting and causing to be exported from the United States to Canada firearms that were designated as defense articles on the United States Munitions List, without the required U.S. Department of State licenses. Vlachos was sentenced to fifty-one (51) months in prison and an assessment of $200.

## 3. Columbus Man Sentenced to Prison for Illegally Exporting Goods to Iran

The U.S. Department of Justice (DOJ) has announced that Behrooz Behroozian, 64, Columbus, Ohio, has been sentenced to 20 months in prison for exporting gas and oil pipeline parts to Iran for more than a decade in deliberate violation of a U.S. embargo and trade sanctions. According to the sentencing memorandum filed in this case, Behroozian used an intermediary company, Sumar Industrial Equipment, to attempt to cover-up that he was illegally supplying industrial equipment to Iran in violation of the Emergency Economic Powers Act (IEEPA). Behroozian exported manifolds, valves and connectors used for industrial pipelines in the gas and oil refinement industry to Iran via Sumar and profited $35,000 to $40,000 per year. This violated embargo and trade sanctions imposed upon Iran by the United States in May 1995. In November 2006, Behroozian became the owner and operator of a computer parts supplier in Dublin, Ohio, called Comtech International. Comtech had no storefront and made no domestic sales. It seldom exported computer parts. Instead, Comtech primarily exported industrial equipment to Sumar in the United Arab Emirates for further exportation to Iran.

## 4. Treasury and State Announce New Humanitarian Mechanism to Increase Transparency of Permissible Trade Supporting the Iranian People

The U.S. Departments of the Treasury and State has announced a new humanitarian mechanism to ensure unprecedented transparency into humanitarian trade with Iran. This mechanism will help the international community perform enhanced due diligence on humanitarian trade to ensure that funds associated with permissible trade in support of the Iranian people are not diverted by the Iranian regime. Concurrently, Treasury's Financial

Crimes Enforcement Network (FinCEN) identified Iran as a jurisdiction of primary money laundering concern under Section 311 of the USA PATRIOT Act, and issued a new rulemaking to protect the U.S. financial system from malign Iranian financial activities. The humanitarian mechanism will require foreign governments and financial institutions that choose to participate in the mechanism to conduct enhanced due diligence and provide to Treasury a substantial and unprecedented amount of information, with appropriate disclosure and use restrictions, on a monthly basis, as described in guidance provided by OFAC outlining specific requirements.

## 5. OFAC Publishes General Licenses Relating to Iran and Venezuela

The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) has taken the following actions:

- Issued General License K "Authorizing Maintenance or Wind Down of Transactions Involving Cosco Shipping Tanker (Dalian) Co., Ltd."

- Amended  General License 5A "Authorizing Certain Transactions Related to the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond on or After January 22, 2020." In conjunction with this action, OFAC is amending Frequently Asked Question 595.

## 6. President Trump Continues National Emergency With Respect to the Democratic Republic of the Congo

(84 Fed. Reg. 56927) - In accordance with section 202(d) of the National Emergencies Act (50 U.S.C. 1622(d)), President Donald J. Trump is continuing for 1 year the national emergency with respect to the situation in or in relation to the Democratic Republic of the Congo declared in Executive Order 13413, as amended by Executive Order 13671.

## 7. EU Commission Opens Registration for 2019 Export Control Forum

The European Commission and the Finnish Presidency of the Council are inviting representatives from EU Member States and the European Parliament, industry and civil society to participate in the 2019 Export Control Forum. The 2019 Export Control Forum will provide an opportunity to review ongoing export control implementation and latest developments in the EU, as well as to discuss the future of EU and global international export controls. The 2019 Export Control Forum will be opened by representatives of the Commission, the Presidency and the European Parliament, and will convene selected panels of experts, to be followed by open dialogue with the stakeholders.

- Date: 13 December 2019
- Venue: Albert Borschette Conference Centre (CCAB) Room 0A. Rue Froissart 36, Brussels
- Time: 10:00 – 17:00. Registration will be open at 9:30.
- Registration: Please register via the online registration tool. The deadline for registration is 1 December 2019.

## 8. UK Government's OFSI Updates Post Brexit - Russia Guidance

WASHSTATEC004333

The U.K. Government's Office of Financial Sanctions Implementation (FSI) has updated its guidance on the financial and investment restrictions in the Russia sanctions regime should the UK leave the EU without a deal. This guidance does not currently apply and would only come in to effect if the UK leaves the EU without a deal and when the Russia (Sanctions) (EU Exit) Regulations 2019 come into force. This is therefore for information only at this stage.

## 9. USTR Grants Certain Requests for Exclusion from Additional Duties on Certain Chinese Products

(84 Fed. Reg. 57803) - In September 2018, the U.S. Trade Representative imposed additional duties on goods of China with an annual trade value of approximately $200 billion as part of the action in the Section 301 investigation of China's acts, policies, and practices related to technology transfer, intellectual property, and innovation. The U.S. Trade Representative initiated a product exclusion process in June 2019, and interested persons have submitted requests for the exclusion of specific products. This notice announces the U.S. Trade Representative's determination to grant certain exclusion requests, as specified in the annex to this notice. The product exclusions announced in this notice will apply as of the September 24, 2018, effective date of the $200 billion action, to August 7, 2020.

## 10. USTR Publishes Exclusion Request Schedule on Additional Chinese Products Subject to Increased Tariffs

(84 Fed. Reg. 57144) - In a notice published at 84 Fed. Reg. 43304 (Aug. 20, 2019), the U.S. Trade Representative announced that the Office of the U.S. Trade Representative (USTR) would establish a process by which U.S. stakeholders may request an exclusion from additional duties of particular products classified within a tariff subheading covered by the August 2019 action. This notice announces that USTR will open an electronic portal for submission of exclusion requests on October 31, 2019 for products covered by Annex A of the August 2019 action, and sets out the specific procedures for submitting requests.

- October 31, 2019 at noon EDT: The web portal for submitting exclusion requests-- https://exclusions.USTR.gov--will open.

- January 31, 2020 at 11:59 PM EST: Last day for submitting exclusion requests.

- Responses to individual exclusion requests are due 14 days after USTR posts the request on the online portal.

- Any replies to responses to an exclusion request are due the later of 7 days after the close of the 14-day response period, or 7 days after the posting of a response.

## 11. USTR Seeks Applications for Inclusion on the Binational Panels Roster Under the North American Free Trade Agreement

(84 Fed. Reg. 57152) - The North American Free Trade Agreement (NAFTA) provides for the establishment of a roster of individuals to serve on binational panels convened to review final determinations in antidumping or countervailing duty (AD/CVD) proceedings and amendments to AD/CVD statutes of a NAFTA Party. The United States annually renews its selections for the roster. The Office of the United States Trade Representative (USTR) invites

WASHSTATEC004334

applications from eligible individuals wishing to be included on the roster for the period April 1, 2020, through March 31, 2021. USTR must receive your application by November 29, 2019.

## 12. EXIM Bank Advisory Committee and Sub-Saharan Africa Advisory Committee to Meet Oct. 30

(84 Fed. Reg. 56810) - The Export-Import Bank of the United States (EXIM) as announced that its advisory committee and its Sub-Saharan Africa Advisory Committee will meet Wednesday, October 30, 2019, 11:00 AM to 2:30 PM EDT, at 811 Vermont Avenue NW, Room 1126, Washington, DC 20571. If you plan to attend, a photo ID must be presented at the guard's desk as part of the clearance process into the building, you may contact India Walker at external@exim.gov to be placed on an attendee list. Discussion of EXIM programs and comments for inclusion in the report on competitiveness of the Export-Import Bank of the United States to Congress.

## 13. Commerce/ITA's Civil Nuclear Trade Advisory Committee to Meet Nov. 12

(84 Fed. Reg. 57699) - The U.S. Department of Commerce's International Trade Administration (ITA) has announced that its Civil Nuclear Trade Advisory Committee will meet in open sessionTuesday, November 12, 2019, 3:00 PM to 4:00 PM EST, at the U.S. Department of Commerce, Herbert C. Hoover Building, Commerce Research Library, 1401 Constitution Ave. NW, Washington, DC 20230. Requests to register to participate (including to speak or for auxiliary aids) and any written comments should be submitted to: Mr. Devin Horne, Office of Energy & Environmental Industries, International Trade Administration, Room 28018, 1401 Constitution Ave. NW, Washington, DC 20230. (Fax: 202-482- 5665; email: devin.horne@trade.gov). Members of the public are encouraged to submit registration requests and written comments via email to ensure timely receipt.

## 14. Homeland Security Advisory Committee to Meet Nov. 14

(84 Fed. Reg. 56828) - The U.S. Department of Homeland Security's Office of Partnership and Engagement has announced that the Homeland Security Advisory Council will meet in open session Thursday, November 14, 2019, 1:45 PM to 3:30 PM EST, in the Town Hall at the Transportation Security Administration, 601 S 12th Street (East Building), Arlington, VA 20598. The Council will swear in new members, and review and deliberate on reports from the Families and Children Care Panel, Emerging Technologies, Prevention of Targeted Violence Against Faith- based Communities, and State, Local, Tribal, and Territorial Cybersecurity subcommittees. Following this, there will be a break for public commentary.

## 15. Commerce/ITA's Environmental Technologies Trade Advisory Committee to Meet Nov. 19

(84 Fed. Reg. 57698) - The U.S. Department of Commerce's International Trade Administration (ITA) has announced that its Environmental Technologies Trade Advisory Committee (ETTAC) will meet Tuesday, November 19, 2019, 8:45 AM to 3:30 PM EST, in the Research Library at the U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230. Those interested in attending must provide notification by Friday, November 8, at 5:00 PM EST. To register and obtain call-in information, submit comments,

WASHSTATEC004335

or request auxiliary aids, please contact: Ms. Amy Kreps, Office of Energy & Environmental Industries (OEEI), International Trade Administration, Room 28018, 1401 Constitution Avenue NW, Washington, DC 20230 or email: amy.kreps@trade.gov. The ETTAC will receive briefings from ITA as well as the interagency and will discuss its priorities and objectives for potential recommendations to the interagency through the Secretary of Commerce. Topics to be considered during the afternoon subcommittee breakout sessions will fall under the three themes of Trade Policy and Trade Negotiations, Trade Promotion and Export Market Development, and Cooperation on Standards, Certifications and Regulations.

## 16. U.S. Government Contracting

- DoD, GSA & NASA/Federal Acquisition Regulation (FAR): OMB Information Collection Submission - Patents - Deadline for Public Comment: Dec. 23, 2019

- DoD/Office of the Under Secretary of Defense for Acquisition and Sustainment: OMB Information Collection Submission - Department of Defense Application for Priority Rating for Production or Construction Equipment - Agency Form No.: DD Form 691 - Deadline for Public Comment: Nov. 25, 2019

- DoD/Defense Logistics Agency (DLA): OMB Information Collection Submission - ASSIST Database - Deadline for Public Comment: Nov. 25, 2019

- GSA: Notice of Announcement of Industry Engagement Event - GSA is hosting an industry engagement event on Wednesday, November 6, 2019, from 9:00 AM to 11:00 AM EST, at the Department of Interior (DOI) Yates Auditorium at 1849 C St. NW, Washington, DC 20240k, to highlight how section 889 of Title VII of the NDAA for FY 2019 (hereinafter Sec. 889) will affect GSA's business and supply chain.

## 17. U.S. Customs and U.S. Census/AES Updates

- U.S. Customs - CSMS #40363706 - ACE CERTIFICATION CQ Deployment Thursday morning, Oct 24, 2019 at 0630 ET

- U.S. Customs - CSMS #40371652 - Food and Drug Administration (FDA) New Center for Tobacco (CTP) Product Subclass Code

- U.S. Customs - CSMS #40373287 - Trade Policy Update for Drawback: Trade Facilitation and Trade Enforcement Act (TFTEA) Combination Privilege Application

- U.S. Customs - CSMS #40386416 - ACE PROD AND CERT EXTENDED Scheduled Maintenance this weekend, Sat. Oct 26, 2019@ 2100 ET to 0400 ET Sun. Oct 27

- U.S. Customs - CSMS #40389928 - Update for the Automated Commercial Environment (ACE) Collections Release 1 – PZ Output Release Date

- U.S. Census - Tips on How to Resolve AES Response Messages

WASHSTATEC004336

| | |
|---|---|
| **Fatal Error Response Code: 068** | **Narrative:** SRN on File; Action Not Allowed<br><br>**Severity:** Fatal<br><br>**Reason: The Shipment is not on file in AES, therefore the requested action is not allowed.**<br><br>**Resolution:** When the Shipment Filing Action Request Indicator is a Change, Replace, or X for Cancel, the Shipment Reference Number must exist on a previous filing in AES for the filer.<br><br>Verify the Shipment Filing Action Request Indicator and the Shipment Reference Number, correct the shipment and resubmit. |
| **Fatal Error Response Code: 808** | **Narrative:** Improbable Destination for Commodity<br><br>**Severity:** Verify<br><br>**Reason:** For the reported Schedule B/HTS Number, the Country of Destination Code is improbable.<br><br>**Resolution:** Certain products are highly unlikely to be exported to certain Countries of Destination based on historical data and industry input. This might indicate either a keying error or misclassification of the product.<br><br>Verify the Schedule B/HTS Number and Country of Destination Code, correct the shipment and resubmit (if necessary). If the information is verified correct as reported, no action is necessary. |

## 18. Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes

- Commerce/E&C - Certain Amorphous Silica Fabric From the People's Republic of China: Rescission of Countervailing Duty Administrative Review; 2018

- Commerce/E&C - Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2017

- Commerce/E&C - Certain Large Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe (Over 4.5 Inches) From Japan: Rescission of Antidumping Duty Administrative Review: 2018-2019

- Commerce/E&C - Certain Small Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe (Under 4.5 Inches) From Japan: Rescission of Antidumping Duty Administrative Review: 2018-2019

- Commerce/E&C - Certain Uncoated Paper From Brazil: Final Results of Antidumping Duty Administrative Review; 2017-2018

WASHSTATEC004337

- Commerce/E&C - Fresh Tomatoes From Mexico: Final Determination of Sales at Less Than Fair Value Pages 57401 - 57403 [FR DOC #2019-23341]

- Commerce/E&C - High Pressure Steel Cylinders From the People's Republic of China: Rescission of Countervailing Duty Administrative Review: 2018

- Commerce/E&C - Mattresses From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Refillable Stainless Steel Kegs From Germany: Final Affirmative Determination of Sales at Less Than Fair Value

- Commerce/E&C - Refillable Stainless Steel Kegs From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Refillable Stainless Steel Kegs From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part

- Commerce/E&C - Stainless Steel Flanges From the People's Republic of China: Rescission of Countervailing Duty Administrative Review; 2019

- Commerce/E&C - Vertical Metal File Cabinets From the People's Republic of China: Final Determination of Sales at Less Than Fair Value

- Commerce/E&C - Vertical Metal File Cabinets From the People's Republic of China: Final Affirmative Countervailing Duty Determination

- USITC - USITC Releases Report on MTB Effects - This report provides a broad assessment of the economic effects of duty suspensions and reductions on U.S. producers, purchasers, and consumers, as well as case studies looking at the effects on groups of products covered by the Miscellaneous Tariff Bill Act of 2018. The report also includes recommendations from interested parties with respect to those domestic industry sectors that might benefit from permanent duty suspensions or reductions, with a particular focus on inequities created by tariff inversions. Much of the information in this report comes from a survey conducted by the Commission after the duty suspensions and reductions became effective.

- USITC - USITC Releases The Year in Trade 2018

- USITC - Certain Microfluidic Systems and Components Thereof and Products Containing Same: Commission Determination To Review in Part a Final Initial Determination Finding a Violation of Section 337 and To Extend the Target Date; Schedule for Filing Written Submissions

- USITC - Certain Semiconductor Devices, Integrated Circuits, and Consumer Products Containing the Same: Commission Determination Not To Review an Initial Determination Terminating the Investigation Based on a Settlement Agreement and a

Withdrawal of the Complaint; Termination of the Investigation

- USITC - Certain Shaker Screens for Drilling Fluids, Components Thereof, and Related Marketing Materials: Notice of Receipt of Complaint; Solicitation of Comments Relating to the Public Interest

- USITC - Fresh Tomatoes From Mexico: Continuation of the Final Phase of an Antidumping Duty Investigation and Revised Schedule

- USITC - Wooden Cabinets and Vanities From China: Scheduling of the Final Phase of Countervailing Duty and Anti-Dumping Duty Investigations

- USITC - Government in the Sunshine Act Meeting Notice - October 31, 2019, 11:00 AM EDT

## 19. GAO and CRS Reports, Testimony, and Correspondence of Interest

- CRS - Brexit: Status and Outlook

- CRS - The European Parliament and U.S. Interests

- CRS - The Changing Landscape of Immigrant Investment Programs

- CRS - Australia

## 20. U.S. Government Trade Forms and Other Information Collections Open for Public Comment

(84 Fed. Reg. 57054) - Agency: U.S. Dept. of Justice/Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) - Title: Informant Agreement - Agency Form No.: ATF Form 3252.2 - Type of Review: New Collection - Deadline for Public Comment: Dec. 23, 2019

## Other Headlines

## 21. This Week in Congress: New Worries About the NDAA

MiltiaryTimes.com, Oct. 28 - Senate Armed Services Committee officials this week will release a "skinny" defense authorization bill plan as lawmakers grow increasingly pessimistic about the possibility of reaching a compromise on a host of disputed issues with the massive military policy bill. Committee Chairman Jim Inhofe, R-Okla., said last week that the move is designed to ensure that a host of necessary items — including numerous military specialty pay authorizations — are passed by the end of the year. But a day later, House Armed Services Chairman Adam Smith, D-Wash., said a stripped-down version of the measure wouldn't solve all of lawmakers' problems. Negotiations on the broader measure have stalled in recent weeks as Democrats and Republicans have fought over military construction money used for President Donald Trump's controversial border wall project.

## 22. Beijing Woos U.S. and Other Foreign Companies as Trade War

**Takes Toll**

WSJ.com, Oct. 27 - China has stepped up its charm offensive to attract U.S. and other foreign companies in recent weeks, seeking to offset the debilitating impact of the trade war while still exchanging blistering comments with Washington. The country's premier, Li Keqiang, has wooed foreign companies with noticeable enthusiasm this month, telling a roundtable of Western executives, for example, that global manufacturing enterprises are welcome to seize opportunities as China opens up further. The move suggests a growing realization of the trade war's toll on the Chinese economy and on U.S. companies' willingness to invest in China. It also reflects a recognition that foreign companies are key to achieving Chinese leaders' ambitions for both growth and technological advancement. The pursuit of foreign investors comes as the Communist party elite sits down Monday for its first top policy-setting meeting, or plenum, since early last year, during which leaders will discuss their next five-year economic blueprint, according to Chinese officials involved in policy making.

## 23. Amazon or Microsoft? DoD Picks a Winner for Its Controversial JEDI Contract

DefenseNews.com, No. 26 - Microsoft won the contract for the Department of Defense's enterprise cloud, potentially worth $10 billion over 10 years, the Pentagon announced Oct. 25. The tech giant won the award over Amazon Web Services, just three days after Secretary of Defense Mark Esper recused himself from the award after months of review because his son worked for IBM. Amazon was widely considered by industry to be the front runner for the award. The JEDI contract process continues to be under investigation by the DoD inspector general and stuck in federal court. The Pentagon plans to move 80 percent of its systems over to the Joint Enterprise Defense Infrastructure cloud, better known as JEDI. The cloud will contain both unclassified and classified data. In a statement, DoD CIO Dana Deasy heralded the contract award as a win for the war fighter. "The National Defense Strategy dictates that we must improve the speed and effectiveness with which we develop and deploy modernized technical capabilities to our women and men in uniform," DoD Chief Information Officer Dana Deasy said. "The DoD Digital Modernization Strategy was created to support this imperative. This award is an important step in execution of the Digital Modernization Strategy."

## 24. Key Dates Leading Up to the U.S. Pentagon's Cloud-Computing Award to Microsoft

Reuters.com, Oct. 27 - Microsoft Corp has won the U.S. Pentagon's $10 billion cloud-computing contract, the Defense Department said on Friday, beating out favorite Amazon.com Inc. The contract, called the Joint Enterprise Defense Infrastructure Cloud, or JEDI, is part of a broad modernization of the Pentagon's information technology systems. Here is a timeline of important dates leading up to the award.

## 25. Hypersonics Pitch Day: Air Force Woos Startups

BreakingDefense.com, Oct. 25 - Hypersonics and "pitch days," two of the hottest concepts at the Air Force right now, will come together for the first time Nov. 7. Air Force experts will judge products and ideas from startup firms related to solving key challenges to hypersonic flight, such as Mach 5-plus propulsion and new materials that can withstand extremely high

temperatures. Lt. Gen. Duke Richardson, military deputy to Air Force acquisition czar Will Roper, will oversee the panel of judges who pick the winner of a same-day contract of up to $750,000 to jumpstart their work, according to an Oct. 18 announcement from Air Force Materiel Command's 96th Test Wing. The pitch day will be held at the Doolittle Institute in Niceville, Fla. "Fielding hypersonic weapons is a top priority for our warfighters. The Air Force is leading the way, and we can use all the help we can get from innovative companies," Richardson said. "That's one reason why this pitch day is so exciting."

## 26. Pentagon, With an Eye on China, Pushes for Help From American Tech

NYTimes.com, Oct. 25 - Pentagon officials have been holding private discussions with tech industry executives to wrestle with a key question: how to ensure future supplies of the advanced computer chips needed to retain America's military edge. The talks, some of which predate the Trump administration, recently took on an increased urgency, according to people who were involved or briefed on the discussions. Pentagon officials encouraged chip executives to consider new production lines for semiconductors in the United States, said the people, who declined to be identified because the talks were confidential. The discussions are being driven by the Pentagon's increased dependence on chips made abroad, especially in Taiwan, as well as recent tensions with China, these people said. One chip maker, the Taiwan Semiconductor Manufacturing Company, better known as TSMC, plays a particularly crucial role producing commercial chips that also have applications for aircraft, satellites, drones and wireless communications. And because of unrest over the past few months in the semiautonomous Chinese territory of Hong Kong, some Pentagon officials and chip executives have wondered about situations that could force suppliers in Taiwan to limit or cut off silicon shipments, the people said.

## 27. Air Force Halts Funding for Boeing's bBallistic Missile Replacement

WashingtonPost.com, Oct. 22 - The Air Force has halted funding for Boeing's $349 million ballistic missile development effort, effectively clearing the way for a Northrop Grumman-led team to become the only bidder for one of the Pentagon's most expensive weapons production programs. The move is an apparent response to Boeing's recent announcement that it will drop out of the Ground Based Strategic Deterrent program, an $85 billion project to replace the nation's Minuteman III ballistic missiles. The Defense Department appears unwilling to pay Boeing to develop a next-generation ballistic missile when the company is refusing to submit that missile for review. A Boeing representative said the company is disappointed in the Air Force's decision not to allot more funding for its missile.

## 28. Analysts Predict Counterdrone Market Will Top $2B

C4ISRNet.com, Oct. 28 - The three biggest obstacles facing the counterdrone market are the law, the nature of the threat, and the technology itself. In fairness, those are obstacles to the adoption of most any national security technology. A new analysis by investment consultants Frost & Sullivan tackles the counterdrone market, an area of high interest, no consensus, and much proverbial snake oil. The report projects a counterdrone market whose revenues will exceed $2 billion by 2024. What legal obstacles counterdrone systems face depend on how, exactly, the equipment works to stop a drone. "Adoption of these [counterdrone] technologies is limited by individual country rules against wiretapping, jamming, and computer hacking — all methods employed by various C-UAS," said Michael Blades of Frost & Sullivan.

WASHSTATEC004341

## 29. Uphill Sledding for EOD Funding

NationalDefenseMagazine.org, Oct. 28 - Once a high-profile mission set, the military's explosive ordnance disposal community is now receiving less attention — and less money — from lawmakers. Just a decade ago, policymakers were pumping billions of dollars annually into initiatives to counter improvised explosive devices that were being used to target U.S. troops overseas. The film "The Hurt Locker," about a fictional EOD team operating in Iraq, won an Oscar for Best Picture. But times have changed. "We became very well publicized and we became a very big thing during the height of the IED years," noted Maj. Daniel Long with the Air Force's congressional liaison office. "As we've withdrawn out of Iraq, as Afghanistan starts to pull down, I don't know that we normally get the same amount of attention that we have previously, which is frankly a bit of a problem" because of the ongoing threat, he said at the National Defense Industrial Association's Global EOD Symposium and Exhibition. Between 2006 and 2009, the Joint Improvised Explosive Device Defeat Organization received more than $16 billion, according to the Government Accountability Office. By 2015, the renamed Joint Improvised-Threat Defeat Organization was receiving less than $600 million annually, and its budgets have remained relatively flat since then.

## 30. FTC Investigates Northrop: GBSD?

BreakingDefense.com, Oct. 24 - The Federal Trade Commission appears to be investigating whether Northrop Grumman acted in restraint of trade and violated an order requiring the company to sell its solid motor rocket engines on "a non-discriminatory basis to all competitors for missile contracts." Northrop disclosed the investigation today in its quarterly report: "In October 2019, the company received a civil investigative demand from the FTC requesting certain information relating to a potential issue of the company's compliance with the Order in connection with a pending strategic missile competition. The company is working to respond to the request. We believe the company has been and continues to be in full compliance with the Order, but we cannot predict any potential impact on the pending competition." Now, that does not make clear that the FTC is looking at the Ground Based Strategic Deterrent (GBSD), but there aren't a lot of other candidates for "a strategic missile competition" and it refers to an "Order."

## 31. How the Army Will Use Satellites to Track Land Threats in Real Time

C4ISRNet.com, Oct. 25 - The Army has needs. One of those needs is the ability to track and target land threats that are beyond the war fighters' line of sight. Though much of the focus on space sensing capabilities is directed at missile defense or space situational awareness, the ability to see time-sensitive ground threats like tanks beyond the line of sight of ground forces is essential for the war fighter. To help build this capability, the Army is teaming with the Space Development Agency on a space-based sensor layer dedicated to deep targeting that can feed information to the war fighter on the ground in real time. The SDA is actually developing a trio of sensing capabilities in space: a layer dedicated to tracking hypersonic weapons and ballistic missiles; a layer dedicated to space situational awareness and investigating objects in cislunar orbit; and a layer dedicated to detecting and maintaining custody of time-sensitive ground threats.

## 32. Does Major Joint Military Procurement Really Work in the Baltics?

DefenseNews.com, Oct. 28 - On paper, the Baltic nations appear to have closely aligned defense modernization needs that make the joint procurement of advanced military equipment a no-brainer. After all, Latvia, Estonia and Lithuania have historically shared national interests, are currently facing a similar threat from Russia and each have relatively small defense budgets. Joint procurement would drive down costs for large defense articles by allowing the smaller Baltic nations to buy in greater numbers. It would also allow the countries to share maintenance responsibilities, which would save money. And it would drive greater interoperability in countering an adversary's simultaneous attack all three nations. But then there's the reality of the situation. "I think there are many misperceptions on Baltic integration," Janis Garisons, state secretary for the Latvian Ministry of Defence, told Defense News during a September visit to Washington. "I think this is a little bit of a wrong perception that there is a lot of added value in those common procurements."

## 33. Opinion: Is 3-D Printing the Future of Terrorism?

WSJ.com, Oct. 25 - On Oct. 9, a gunman tried to massacre worshipers on Yom Kippur at a synagogue in Halle, Germany, and crossed a new threshold: It was the first time a terrorist perpetrated a deadly attack with homemade weapons using 3-D-printed components—including a 3-D-printed gun. Instead of the slaughter the gunman had hoped for, he killed two people—in part because he couldn't get past a locked synagogue door, in part because what he called his "improvised guns" jammed or failed to fire. But the Halle attack shouldn't be dismissed as a macabre flop. The killer was interested not just in murder but in inspiration. In an online manifesto that German authorities have confirmed he wrote, the gunman styled himself a pioneer on a trial run: He wanted to use emerging technologies to encourage subsequent terrorists to follow in his footsteps and perfect his tactics. His goal was what security experts call "proof of concept." . . . The self-made Halle arsenal is a harbinger of a worrisome new era. The shooter sought to demonstrate the possibility of making simple, lethal, hard-to-trace, homemade guns that can be used by furtive lone-wolf terrorists like himself, as well as by larger extremist groups trying to lie low. More such attempts will likely follow, each building on the other to become increasingly deadly.

## 34. Opinion: US-China Competition: The Coming Decoupling? – Analysis

Eurasiareview.com, Oct. 27 - The United States and China are now clearly locked in a competition over dominance of the technologies of the future. At the same time, some elements of key government organisations on both sides are pushing for a major decoupling of very intertwined supply chains and value generation ecosystems that have developed over more than 30 years. How did we get to the point where zero sum competition and some level of decoupling are now widely accepted in government, academic, and business circles, and companies on both sides are acting in ways that will both heighten the competition and accelerate the decoupling? All this in several short years? Several parallel processes came together to produce this, which is happening in some sense organically, with no clear long-term thinking in either capital that accounts for the economic and national security costs, and second-, third-, and fourth- order effects. US policy towards China on technology issues has been driven by four major factors, some stemming from long standing concerns, and others coming out of recent developments around advanced technologies, where Chinese firms are suddenly both a supplier and collaborator and a new competitor.

## Upcoming Export Control and Other Trade Compliance Conferences

**Oct. 29-30 - Aéro Montréal and Cirrus Research Associates - Training on the Canadian Defence Market - Montreal**

**Nov. 4-5 - Aéro Montréal and McCarter & English - Training on the US Market - Montreal**

**Nov. 5 - America's Small Business Development Centers and M-PALM - Automated Commercial Environment (ACE) Export Compliance Seminar - Baltimore - Lofts Hotel**

**Nov. 5-6 - U.S. Dept. of Commerce/Bureau of Industry and Security (BIS) - Complying with U.S. Export Controls - Huntsville, AL**

**Nov. 12 - US Dept. of the Treasury/Office of Foreign Assets Control (OFAC) - 2019 OFAC Symposium - Washington, DC - Walter E. Washington Convention Center**

**Nov. 12-13 - Nielsonsmith - Customs Compliance in Europe 2019 - Düsseldorf, Germany**

**Nov. 18 - Cnxtd ("Connected") Inc. - 2019 International Conference on the EU Cybersecurity Act - Brussels - Hotel Brussels**

**Nov. 19 - C5 Group - European Forum on U.S. Export Controls - Brussels**

**Nov. 20-21 - C5 Group - European U.S. Defence Contracting - Brussels**

**Nov. 20-21 - Nielsonsmith - The European Anti-Corruption Summit - Munich, Germany**

**Dec. 3-4 - C5 Group - 12th Advanced Conference on Customs Compliance - London - St. James' Court, A Taj Hotel**

**Dec. 4-5 - American Conference Institute - 36th International Conference on the Foreign Corrupt Practices Act - Washington, DC**

**Dec. 10-11 - American Conference Institute - 10th Annual New York Forum on Economic Sanctions - New York City**

**Dec. 11 - German Government/Federal Office of Economics and Export Control - 11th Information Day Export Control 2019 -Frankfurt - Cape Europa, Osloer Str. 5, 60327 Frankfurt am Main**

**Dec. 13 - European Commission - 2019 Export Control Forum - Brussels - Albert Borschette Conference Centre (CCAB) Room CCAB0A Rue Froissart 36**

**Jan. 23-24 - American Conference Institute - AML & OFAC Compliance for the Insurance Industry - New York City**

**Jan. 28-29 - American Conference Institute - 9th Forum on U.S. Export & Re-Export Compliance for Canadian Operations - Toronto - Toronto Airport Marriott Hotel** - Gary Stanley, Editor of Defense and Export-Import Update, will once again co-chair this important conference.

**Jan. 30-31 - American Conference Institute - 14th Forum on the Foreign Corrupt Practices Act - Houston**

WASHSTATEC004344

**Feb. 5-6 – Nielsonsmith – Export Compliance in Europe – Munich, Germany**

**Feb. 11-12 – Nielsonsmith – European, EU and EU Member State Trade Controls Compliance for North American Companies Summit – Washington, DC**

**Feb. 24-26 – Society for International Affairs – 2020 Winter Back to Basics Conference – Las Vegas – Westin Las Vegas Hotel**

We hope this update proves helpful. If you have questions about any of these developments, please do not hesitate to call us. If you received this free newsletter from a colleague or friend and would like to subscribe directly, please just e-mail your name, title, company, and e-mail address to gstanley@glstrade.com.

Cordially yours,

Gary L. Stanley
President
Global Legal Services, PC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.20015
Tel. +1 (202) 686-4854
Fax +1 (202) 686-2624
Mobile +1 (202) 352-3059
E-mail gstanley@glstrade.com

Message

| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 10/28/2019 1:56:31 PM |
| **To:** | Abraham, Liz (Federal) [LAbraham@doc.gov] |
| **Subject:** | RE: For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases |

https://www.google.com/search?q=Myth%3A+Transferring+control+of+firearms+from+State+to+Commerce+will+result
+in+deregulation+of+U.S.+firearms+exports&rlz=1C1GCEA_enUS866US866&oq=Myth%3A+Transferring+control+of+fire
arms+from+State+to+Commerce+will+result+in+deregulation+of+U.S.+firearms+exports&aqs=chrome..69i57j69i58.922j
0j9&sourceid=chrome&ie=UTF-8

Joseph N. Khawam
Office of the Legal Adviser (L/PM)


SBU - DELIBERATIVE PROCESS

**From:** Abraham, Liz (Federal) <LAbraham@doc.gov>
**Sent:** Monday, October 28, 2019 9:48 AM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** FW: For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases


Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; Kluttz, Lawson (Federal) <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Ashooh, Richard <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; Comstock, Earl (Federal) <EComstock@doc.gov>; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz (Federal) <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Borman, Matthew <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; Curtis, Deborah (Federal) <DCurtis@doc.gov>; Hess, Hillary <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

████████████████████████████████████████

████████████████████████

███████████████████████

Best,
Dave
_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.8757       | BlackBerry: ████████████
e-mail:       *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*


Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

Message
_____

**From:**       McKeeby, David I [McKeebyDI@state.gov]
**Sent:**       10/28/2019 3:16:37 PM
**To:**         Williams, Rebekah A. EOP/NSC [Rebekah.A.Williams@nsc.eop.gov]; Vicent,Grayson
                [grayson.k.vincent@nsc.eop.gov]; Biery, Meghan N. EOP/NSC [Meghan.N.Biery@nsc.eop.gov]; Tapia, Angela M Lt
                Col USAF OSD OASD LA (USA) [angela.m.tapia2.mil@mail.mil]; 'LKluttz@doc.gov' [LKluttz@doc.gov]; Bulgrin, Julie K.
                EOP/NSC [Julie.K.Bulgrin@nsc.eop.gov]; Wilson, John MarkM. EOP/NSC [John.M.Wilson@nsc.eop.gov]; Waterman,
                Elijah J. EOP/NSC [Elijah.J.Waterman@nsc.eop.gov]; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
                Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F [Millermf@state.gov]; Koelling,
                Richard W [KoellingRW@state.gov]; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov;
                Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov;
                James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J [HeidemaSJ@state.gov]; Kovar,
                Jeffrey D [KovarJD@state.gov]; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov;
                Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M [KaldahlRM@state.gov]; Jasmeet_K._Seehra@omb.eop.gov;
                susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov;
                Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.gov; candice.l.rodriguez.civ@mail.mil;
                DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**CC:**         Paul, Joshua M [PaulJM@state.gov]
**Subject:**    RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Attachments:** 1015 Roll-Out Plan and TPs--CATS I-III.docx

**Importance:**  High

Interagency Colleagues:

█████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757       | BlackBerry: ███████████
e-mail:     _mckeebydi@state.gov_ |  Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM

**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.8757       | BlackBerry: ████████████
e-mail:       _mckeebydi@state.gov_ |   Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

| | |
|---|---|
| **Message** | |
| **From:** | Peckham, Yvonne M [PeckhamYM@state.gov] |
| **Sent:** | 10/28/2019 4:00:09 PM |
| **To:** | Koelling, Richard W [KoellingRW@state.gov] |
| **CC:** | Hart, Robert L [HartRL@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Khawam, Joseph N [KhawamJN@state.gov]; Seehra,Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]; Watkins, Pamela K [WatkinsPK@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov] |
| **Subject:** | RE: For Comment by COB on October 30th -- Revised State and Commerce Export Control Rules for Guns and Ammunition |

Thank you Rick.

Yvonne

Yvonne Peckham
Management Analyst
Office of Directives Management
U.S. Department of State
HST, Suite 6519
2201 C Street NW
Washington, DC
(202) 485-2160 or X52160

SENSITIVE BUT UNCLASSIFIED

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Monday, October 28, 2019 11:50 AM
**To:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Watkins, Pamela K <WatkinsPK@state.gov>
**Cc:** Hart, Robert L <HartRL@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: For Comment by COB on October 30th -- Revised State and Commerce Export Control Rules for Guns and Ammunition

Jasmeet, Yvonne, Pam,

Very respectfully,

Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Wednesday, October 23, 2019 9:27 AM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>; DHSOGCRegulations <DHSOGCRegulations@hq.dhs.gov>; Heidi.Cohen@treasury.gov; Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (USA) <susan.g.daoussi.civ@mail.mil>; Minnifield, Tracy J CIV DTSA LD (US) <tracy.j.minnifield.civ@mail.mil>; Mueller, Andrew J CIV DTSA LD (USA) <andrew.j.mueller2.civ@mail.mil>; Asha, Mathew <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Hart, Robert L <HartRL@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>; Asha, Mathew <amathew@doc.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Hunt, Alex T. EOP/OMB <Alexander_T._Hunt@omb.eop.gov>; Mancini, Dominic J. EOP/OMB <Dominic_J._Mancini@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Joyce, Shannon M. EOP/OMB <Shannon_M_Joyce@omb.eop.gov>; Theroux, Rich P. EOP/OMB <Richard_P._Theroux@omb.eop.gov>; Turner, Austin F. EOP/OMB <Austin_F_Turner@omb.eop.gov>
**Subject:** For Comment by COB on October 30th -- Revised State and Commerce Export Control Rules for Guns and Ammunition



WASHSTATEC004352

Message

| | |
|---|---|
| **From:** | Dash-pauls, Michele [michele.dash-pauls@nnsa.doe.gov] |
| **Sent:** | 10/28/2019 5:11:21 PM |
| **To:** | McKeeby, David I [McKeebyDI@state.gov]; Williams, Rebekah A. EOP/NSC [Rebekah.A.Williams@nsc.eop.gov]; Vicent, Grayson [grayson.k.vincent@nsc.eop.gov]; Biery, Meghan N. EOP/NSC [Meghan.N.Biery@nsc.eop.gov]; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) [angela.m.tapia2.mil@mail.mil]; 'LKluttz@doc.gov' [LKluttz@doc.gov]; Bulgrin, Julie K. EOP/NSC [Julie.K.Bulgrin@nsc.eop.gov]; Wilson, John MarkM. EOP/NSC [John.M.Wilson@nsc.eop.gov]; Waterman, Elijah J. EOP/NSC [Elijah.J.Waterman@nsc.eop.gov]; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F [Millermf@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J [HeidemaSJ@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M [KaldahlRM@state.gov]; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M [melissa.krupa@nnsa.doe.gov]; Prestosh, Evelyn [evelyn.prestosh@nnsa.doe.gov] |
| **CC:** | Paul, Joshua M [PaulJM@state.gov] |
| **Subject:** | RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |

All,

█████████████████████

Michele


Michele Dash-Pauls
Deputy Director
Office of Nuclear Export Controls
Dept of Energy/National Nuclear Security Administration
Tel: 202-586-2645
Fax: 202-586-4452
E-mail: michele.dash-pauls@nnsa.doe.gov


**From:** McKeeby, David I [mailto:McKeebyDI@state.gov]
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov

**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** [EXTERNAL] RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

███████████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

Best,
Dave
_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:     202.647.8757     | BlackBerry: ████████████
e-mail:    *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov

**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

███████████████████████████████████████████

██████████████████████████████

███████████████████████████

Best,
Dave
_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:          202.647.8757          | BlackBerry: ███████████
e-mail:          *mckeebydi@state.gov* |    Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

WASHSTATEC004355

Message

---

| | |
|---|---|
| **From:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent:** | 10/28/2019 10:27:04 PM |
| **To:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **CC:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |
| **Attachments:** | 1015 Roll-Out Plan and TPs--CATS I-III.docx |

Joe – some additional points and a question ███████████████████████████ Thanks - Jeff

SENSITIVE BUT UNCLASSIFIED

**From:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>
**Sent:** Monday, October 28, 2019 5:53 PM
**To:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shellooe, Ryan P. EOP/NSC <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

███████████████████████████████████████████████

Thanks,
Elijah

**From:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>
**Sent:** Monday, October 28, 2019 1:11 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vincent, Grayson K. EOP/NSC <Grayson.K.Vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO

<Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shelloe, Ryan P. EOP/NSC <Ryan.P.Shelloe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

All,

████████████████████████

Michele


Michele Dash-Pauls
Deputy Director
Office of Nuclear Export Controls
Dept of Energy/National Nuclear Security Administration
Tel: 202-586-2645
Fax: 202-586-4452
E-mail: michele.dash-pauls@nnsa.doe.gov

---

**From:** McKeeby, David I [mailto:McKeebyDI@state.gov]
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shelloe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** [EXTERNAL] RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High


Interagency Colleagues:

[black redaction box]

[black redaction box]

[black redaction box]

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757          | BlackBerry: [black redaction box]

e-mail:      _mckeebydi@state.gov_ |   Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson
<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E
CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>;
Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC
<John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas
<SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F
<Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>;
Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov;
EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov;
Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov;
James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>;
Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov;
Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov;
candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov;
heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

[black redaction box]

██████████████████████████████████████████████

████████████████████████

██████████████████████████

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757         | BlackBerry  ████████
e-mail:       *mckeebydi@state.gov* |  Web:  *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

WASHSTATEC004359

Message

| | |
|---|---|
| **From**: | Comstock, Earl (Federal) [EComstock@doc.gov] |
| **Sent**: | 10/28/2019 10:36:52 PM |
| **To**: | McKeeby, David I [McKeebyDI@state.gov]; Hess, Hillary [Hillary.Hess@bis.doc.gov]; Williams, Rebekah A. EOP/NSC [Rebekah.A.Williams@nsc.eop.gov]; Vicent, Grayson [grayson.k.vincent@nsc.eop.gov]; Biery, Meghan N. EOP/NSC [Meghan.N.Biery@nsc.eop.gov]; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) [angela.m.tapia2.mil@mail.mil]; Kluttz, Lawson (Federal) [LKluttz@doc.gov]; Bulgrin, Julie K. EOP/NSC [Julie.K.Bulgrin@nsc.eop.gov]; Wilson, John MarkM. EOP/NSC [John.M.Wilson@nsc.eop.gov]; Waterman, Elijah J. EOP/NSC [Elijah.J.Waterman@nsc.eop.gov]; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Ashooh, Richard [Richard.Ashooh@bis.doc.gov]; Miller, Michael F [Millermf@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, SarahJ [HeidemaSJ@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M [KaldahlRM@state.gov]; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz (Federal) [LAbraham@doc.gov]; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Borman, Matthew [Matthew.Borman@bis.doc.gov]; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Curtis, Deborah (Federal) [DCurtis@doc.gov]; heidi.cohen@treasury.gov |
| **CC**: | Paul, Joshua J [PaulJM@state.gov]; Mooney, Timothy [Timothy.Mooney@bis.doc.gov] |
| **Subject**: | Re: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |
| **Attachments**: | 2019-10-28 3.40pm Redline edits to 1015 Roll-Out Plan and TPs--CATS I-III - for sending back to State.docx |

███████████████████████████

Earl

---

**From:** "McKeeby, David I" <McKeebyDI@state.gov>
**Date:** Monday, October 28, 2019 at 3:14 PM
**To:** "Hess, Hillary" <Hillary.Hess@bis.doc.gov>, "Williams, Rebekah A. EOP/NSC" <Rebekah.A.Williams@nsc.eop.gov>, "Vicent, Grayson" <grayson.k.vincent@nsc.eop.gov>, "Biery, Meghan N. EOP/NSC" <Meghan.N.Biery@nsc.eop.gov>, "Tapia, Angela M Lt Col USAF OSD OASD LA (USA)" <angela.m.tapia2.mil@mail.mil>, "Kluttz, Lawson (Federal)" <LKluttz@doc.gov>, "Bulgrin, Julie K. EOP/NSC" <Julie.K.Bulgrin@nsc.eop.gov>, "Wilson, John Mark M. EOP/NSC" <John.M.Wilson@nsc.eop.gov>, "Waterman, Elijah J. EOP/NSC" <Elijah.J.Waterman@nsc.eop.gov>, "Anthony.J.Ruggiero@nsc.eop.gov" <Anthony.J.Ruggiero@nsc.eop.gov>, "Ryan.M.Tully@nsc.eop.gov" <Ryan.M.Tully@nsc.eop.gov>, "Steven.J.Menashi@who.eop.gov" <Steven.J.Menashi@who.eop.gov>, "Ashooh, Richard" <Richard.Ashooh@bis.doc.gov>, "Miller, Michael F" <Millermf@state.gov>, "Koelling, Richard W" <KoellingRW@state.gov>, "Michael.B.Williams@who.eop.gov" <Michael.B.Williams@who.eop.gov>, "Michael.J.Ellis@who.eop.gov" <Michael.J.Ellis@who.eop.gov>, "Jennifer.B.Lichter@who.eop.gov" <Jennifer.B.Lichter@who.eop.gov>, "Comstock, Earl (Federal)" <EComstock@doc.gov>, "Robert.T.Goad2@who.eop.gov" <Robert.T.Goad2@who.eop.gov>, "James.S.Baehr@who.eop.gov" <James.S.Baehr@who.eop.gov>, "Ryan.P.Shellooe@nsc.eop.gov" <Ryan.P.Shellooe@nsc.eop.gov>, "Heidema, Sarah J" <HeidemaSJ@state.gov>, "Kovar, Jeffrey D" <KovarJD@state.gov>, "Ross.T.Gillfillan@who.eop.gov" <Ross.T.Gillfillan@who.eop.gov>, "James.D.Mandolfo@who.eop.gov" <James.D.Mandolfo@who.eop.gov>, "Thomas.F.Leary@nsc.eop.gov" <Thomas.F.Leary@nsc.eop.gov>, "Kaldahl, Ryan M" <KaldahlRM@state.gov>, "Jasmeet_K._Seehra@omb.eop.gov" <Jasmeet_K._Seehra@omb.eop.gov>, "susan.g.daoussi.civ@mail.mil" <susan.g.daoussi.civ@mail.mil>, "Abraham, Liz (Federal)" <LAbraham@doc.gov>, "Tony.Coppolino@usdoj.gov" <Tony.Coppolino@usdoj.gov>, "Joseph.S.Wier@nsc.eop.gov" <Joseph.S.Wier@nsc.eop.gov>, Matthew Borman <Matthew.Borman@bis.doc.gov>, "Michele.Dash-pauls@NNSA.Doe.Gov" <Michele.Dash-pauls@NNSA.Doe.Gov>, "candice.l.rodriguez.civ@mail.mil"

<candice.l.rodriguez.civ@mail.mil>, "Curtis, Deborah (Federal)" <DCurtis@doc.gov>,
"heidi.cohen@treasury.gov" <heidi.cohen@treasury.gov>
Cc: "Paul, Joshua M" <PaulJM@state.gov>, "Mooney, Timothy" <Timothy.Mooney@bis.doc.gov>
Subject: RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Hillary:

███████████████████████████████████████████████████████████

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

| | | |
|---|---|---|
| Phone: | 202.647.8757 | \| BlackBerry: ████████ |
| e-mail: | _mckeebydi@state.gov_ \| | Web: _PM Homepage_ \|Twitter: _@StateDeptPM_ |

Stay connected with _State.gov_:



UNCLASSIFIED

From: Hillary Hess <Hillary.Hess@bis.doc.gov>
Sent: Monday, October 28, 2019 1:48 PM
To: McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>;
Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia,
Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC
<Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J.
EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F
<Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov;
Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov;
James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey
D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov;
Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov;
susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov;
Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov;
candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
Cc: Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
Subject: RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Dave,

███████████████████████████████████████████████████████████

Hillary

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary Hess <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High


Interagency Colleagues:

[REDACTED]

[REDACTED]

[REDACTED]

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.8757       | BlackBerry: [REDACTED]
e-mail:      *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*


Stay connected with *State.gov:*



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson

<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov

**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

Best,
Dave
_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:     202.647.8757     | BlackBerry: █████████
e-mail:     mckeebydi@state.gov |  Web: PM Homepage |Twitter: @StateDeptPM

Stay connected with State.gov:



SBU - DELIBERATIVE PROCESS

Message
_____

**From**: Abraham, Liz (Federal) [LAbraham@doc.gov]
**Sent**: 10/29/2019 10:12:52 AM
**To**: Joseph N Khawam [KhawamJN@state.gov]
**Subject**: Fwd: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Attachments**: image001.png; ATT00001.htm; image002.png; ATT00002.htm; image003.png; ATT00003.htm; image004.png;
ATT00004.htm; image005.png; ATT00005.htm; image006.png; ATT00006.htm; image007.png; ATT00007.htm;
image001.png; ATT00008.htm; image002.png; ATT00009.htm; image003.png; ATT00010.htm; image004.png;
ATT00011.htm; image005.png; ATT00012.htm; image006.png; ATT00013.htm; image007.png; ATT00014.htm;
image001.png; ATT00015.htm; image002.png; ATT00016.htm; image003.png; ATT00017.htm; image004.png;
ATT00018.htm; image005.png; ATT00019.htm; image006.png; ATT00020.htm; image007.png; ATT00021.htm; 2019-
10-28 3.40pm Redline edits to 1015 Roll-Out Plan and TPs--CATS I-III - for sending back to State.docx; ATT00022.htm



Sent from my iPhone

Begin forwarded message:

> **From:** "Comstock, Earl (Federal)" <EComstock@doc.gov>
> **Date:** October 28, 2019 at 6:36:52 PM EDT
> **To:** "McKeeby, David I" <McKeebyDI@state.gov>, "Hess, Hillary" <Hillary.Hess@bis.doc.gov>, "Williams,
> Rebekah A. EOP/NSC" <Rebekah.A.Williams@nsc.eop.gov>, "Vicent, Grayson"
> <grayson.k.vincent@nsc.eop.gov>, "Biery, Meghan N. EOP/NSC" <Meghan.N.Biery@nsc.eop.gov>,
> "Tapia, Angela M Lt Col USAF OSD OASD LA (USA)" <angela.m.tapia2.mil@mail.mil>, "Kluttz, Lawson
> (Federal)" <LKluttz@doc.gov>, "Bulgrin, Julie K. EOP/NSC" <Julie.K.Bulgrin@nsc.eop.gov>, "Wilson, John
> Mark M. EOP/NSC" <John.M.Wilson@nsc.eop.gov>, "Waterman, Elijah J. EOP/NSC"
> <Elijah.J.Waterman@nsc.eop.gov>, "Anthony.J.Ruggiero@nsc.eop.gov"
> <Anthony.J.Ruggiero@nsc.eop.gov>, "Ryan.M.Tully@nsc.eop.gov" <Ryan.M.Tully@nsc.eop.gov>,
> "Steven.J.Menashi@who.eop.gov" <Steven.J.Menashi@who.eop.gov>, "Ashooh, Richard"
> <Richard.Ashooh@bis.doc.gov>, "Miller, Michael F" <Millermf@state.gov>, "Koelling, Richard W"
> <KoellingRW@state.gov>, "Michael.B.Williams@who.eop.gov" <Michael.B.Williams@who.eop.gov>,
> "Michael.J.Ellis@who.eop.gov" <Michael.J.Ellis@who.eop.gov>, "Jennifer.B.Lichter@who.eop.gov"
> <Jennifer.B.Lichter@who.eop.gov>, "Robert.T.Goad2@who.eop.gov" <Robert.T.Goad2@who.eop.gov>,
> "James.S.Baehr@who.eop.gov" <James.S.Baehr@who.eop.gov>, "Ryan.P.Shellooe@nsc.eop.gov"
> <Ryan.P.Shellooe@nsc.eop.gov>, "Heidema, Sarah J" <HeidemaSJ@state.gov>, "Kovar, Jeffrey D"
> <KovarJD@state.gov>, "Ross.T.Gillfillan@who.eop.gov" <Ross.T.Gillfillan@who.eop.gov>,
> "James.D.Mandolfo@who.eop.gov" <James.D.Mandolfo@who.eop.gov>,
> "Thomas.F.Leary@nsc.eop.gov" <Thomas.F.Leary@nsc.eop.gov>, "Kaldahl, Ryan M"
> <KaldahlRM@state.gov>, "Jasmeet_K._Seehra@omb.eop.gov" <Jasmeet_K._Seehra@omb.eop.gov>,
> "susan.g.daoussi.civ@mail.mil" <susan.g.daoussi.civ@mail.mil>, "Abraham, Liz (Federal)"
> <LAbraham@doc.gov>, "Tony.Coppolino@usdoj.gov" <Tony.Coppolino@usdoj.gov>,
> "Joseph.S.Wier@nsc.eop.gov" <Joseph.S.Wier@nsc.eop.gov>, "Borman, Matthew"
> <Matthew.Borman@bis.doc.gov>, "Michele.Dash-pauls@NNSA.Doe.Gov" <Michele.Dash-
> pauls@NNSA.Doe.Gov>, "candice.l.rodriguez.civ@mail.mil" <candice.l.rodriguez.civ@mail.mil>, "Curtis,
> Deborah (Federal)" <DCurtis@doc.gov>, "heidi.cohen@treasury.gov" <heidi.cohen@treasury.gov>
> **Cc:** "Paul, Joshua M" <PaulJM@state.gov>, "Mooney, Timothy" <Timothy.Mooney@bis.doc.gov>
> **Subject: Re: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases**



> Earl

**From:** "McKeeby, David I" <McKeebyDI@state.gov>
**Date:** Monday, October 28, 2019 at 3:14 PM
**To:** "Hess, Hillary" <Hillary.Hess@bis.doc.gov>, "Williams, Rebekah A. EOP/NSC"
<Rebekah.A.Williams@nsc.eop.gov>, "Vicent, Grayson" <grayson.k.vincent@nsc.eop.gov>,
"Biery, Meghan N. EOP/NSC" <Meghan.N.Biery@nsc.eop.gov>, "Tapia, Angela M Lt Col USAF
OSD OASD LA (USA)" <angela.m.tapia2.mil@mail.mil>, "Kluttz, Lawson (Federal)"
<LKluttz@doc.gov>, "Bulgrin, Julie K. EOP/NSC" <Julie.K.Bulgrin@nsc.eop.gov>, "Wilson, John
Mark M. EOP/NSC" <John.M.Wilson@nsc.eop.gov>, "Waterman, Elijah J. EOP/NSC"
<Elijah.J.Waterman@nsc.eop.gov>, "Anthony.J.Ruggiero@nsc.eop.gov"
<Anthony.J.Ruggiero@nsc.eop.gov>, "Ryan.M.Tully@nsc.eop.gov"
<Ryan.M.Tully@nsc.eop.gov>, "Steven.J.Menashi@who.eop.gov"
<Steven.J.Menashi@who.eop.gov>, "Ashooh, Richard" <Richard.Ashooh@bis.doc.gov>, "Miller,
Michael F" <Millermf@state.gov>, "Koelling, Richard W" <KoellingRW@state.gov>,
"Michael.B.Williams@who.eop.gov" <Michael.B.Williams@who.eop.gov>,
"Michael.J.Ellis@who.eop.gov" <Michael.J.Ellis@who.eop.gov>,
"Jennifer.B.Lichter@who.eop.gov" <Jennifer.B.Lichter@who.eop.gov>, "Comstock, Earl
(Federal)" <EComstock@doc.gov>, "Robert.T.Goad2@who.eop.gov"
<Robert.T.Goad2@who.eop.gov>, "James.S.Baehr@who.eop.gov"
<James.S.Baehr@who.eop.gov>, "Ryan.P.Shellooe@nsc.eop.gov"
<Ryan.P.Shellooe@nsc.eop.gov>, "Heidema, Sarah J" <HeidemaSJ@state.gov>, "Kovar, Jeffrey
D" <KovarJD@state.gov>, "Ross.T.Gillfillan@who.eop.gov" <Ross.T.Gillfillan@who.eop.gov>,
"James.D.Mandolfo@who.eop.gov" <James.D.Mandolfo@who.eop.gov>,
"Thomas.F.Leary@nsc.eop.gov" <Thomas.F.Leary@nsc.eop.gov>, "Kaldahl, Ryan M"
<KaldahlRM@state.gov>, "Jasmeet_K._Seehra@omb.eop.gov"
<Jasmeet_K._Seehra@omb.eop.gov>, "susan.g.daoussi.civ@mail.mil"
<susan.g.daoussi.civ@mail.mil>, "Abraham, Liz (Federal)" <LAbraham@doc.gov>,
"Tony.Coppolino@usdoj.gov" <Tony.Coppolino@usdoj.gov>, "Joseph.S.Wier@nsc.eop.gov"
<Joseph.S.Wier@nsc.eop.gov>, Matthew Borman <Matthew.Borman@bis.doc.gov>,
"Michele.Dash-pauls@NNSA.Doe.Gov" <Michele.Dash-pauls@NNSA.Doe.Gov>,
"candice.l.rodriguez.civ@mail.mil" <candice.l.rodriguez.civ@mail.mil>, "Curtis, Deborah
(Federal)" <DCurtis@doc.gov>, "heidi.cohen@treasury.gov" <heidi.cohen@treasury.gov>
**Cc:** "Paul, Joshua M" <PaulJM@state.gov>, "Mooney, Timothy"
<Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out
Plan/Releases

Hillary:

█████████████████████████████████████████

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.8757          | BlackBerry: ████████

e-mail:       *mckeebydf@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*


Stay connected with *State.gov*:

WASHSTATEC004366

UNCLASSIFIED

**From:** Hillary Hess <Hillary.Hess@bis.doc.gov>
**Sent:** Monday, October 28, 2019 1:48 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; FComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shelloo@nsc.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; **Matthew Borman** <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Dave,

<!-- redacted -->

Hillary

---

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; FComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shelloo@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary Hess <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

<!-- redacted -->

<!-- redacted -->

████████████████████████

Best,

Dave

_____

**David I. McKeeby**

Deputy Director

Office of Congressional & Public Affairs

Bureau of Political-Military Affairs (PM/CPA)

U.S. Department of State

Phone:        202.647.8757        | BlackBerry: ████████

e-mail:        *mckeebydi@state.gov* |   Web:   *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:

WASHSTATEC004368

Message

| | |
|---|---|
| **From:** | Abraham, Liz (Federal) [LAbraham@doc.gov] |
| **Sent:** | 10/29/2019 12:23:24 PM |
| **To:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject:** | FW: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |
| **Attachments:** | 1015 Roll-Out Plan and TPs--CATS I-III.docx |

FYI.

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

**From:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>
**Sent:** Monday, October 28, 2019 5:53 PM
**To:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vincent, Grayson K. EOP/NSC <Grayson.K.Vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; Kluttz, Lawson (Federal) <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Ashooh, Richard <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; Comstock, Earl (Federal) <EComstock@doc.gov>; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shellooe, Ryan P. EOP/NSC <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; Abraham, Liz (Federal) <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Borman, Matthew <Matthew.Borman@bis.doc.gov>; candice.l.rodriguez.civ@mail.mil; Curtis, Deborah (Federal) <DCurtis@doc.gov>; Hess, Hillary <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

███████████████████████

Thanks,
Elijah

**From:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>
**Sent:** Monday, October 28, 2019 1:11 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vincent, Grayson K. EOP/NSC <Grayson.K.Vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>;

Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shellooe, Ryan P. EOP/NSC <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

All,

█████████████████████

Michele


Michele Dash-Pauls
Deputy Director
Office of Nuclear Export Controls
Dept of Energy/National Nuclear Security Administration
Tel: 202-586-2645
Fax: 202-586-4452
E-mail: michele.dash-pauls@nnsa.doe.gov


**From:** McKeeby, David I [mailto:McKeebyDI@state.gov]
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** [EXTERNAL] RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

[REDACTED]

Best,
Dave

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757           | BlackBerry: [REDACTED]
e-mail:     *mckeebydi@state.gov* |  Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:



Best,
Dave

---

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

| | | |
|---|---|---|
| Phone: | 202.647.8757 | | BlackBerry: ███████ |
| e-mail: | *mckeebydi@state.gov* | Web: *PM Homepage* |Twitter: *@StateDeptPM* |

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

WASHSTATEC004372

Message

| | |
|---|---|
| **From:** | Krueger, Thomas G [KruegerTG@state.gov] |
| **Sent:** | 10/29/2019 12:44:25 PM |
| **To:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Subject:** | Re: Review of AM toS - Notification of the Proposed Transfer of Certain Articles (USML Cat I-III) to DOC, Pursuant to 38(f) |

CATR clears

Sent from my BlackBerry 10 smartphone.

---

**From:** Koelling, Richard W
**Sent:** Tuesday, October 29, 2019 8:26 AM
**To:** Krueger, Thomas G
**Subject:** FW: Review of AM toS - Notification of the Proposed Transfer of Certain Articles (USML Cat I-III) to DOC, Pursuant to 38(f)

Tom, resending.

Cheers, Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

UNCLASSIFIED

**From:** Koelling, Richard W
**Sent:** Monday, October 28, 2019 4:30 PM
**To:** Eggleston, Brett A <EgglestonBA@state.gov>; Carter, Melanie R <CarterMR@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; PM-CPA <PM-CPA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Tucker, Maureen E <TuckerME@state.gov>; Kruger, Thomas U <KrugerTU@state.gov>
**Cc:** Miller, Michael F <Millermf@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Brechwald, Matthew J (T) <BrechwaldMJ2@state.gov>; Hart, Robert L <HartRL@state.gov>; MacPherson, Ashley N <MacPhersonAN@state.gov>; PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>; Nanavatty, Katharine B <NanavattyKB@state.gov>; SP_Staff Assistants <SP_StaffAssistants@state.gov>
**Subject:** Review of AM toS - Notification of the Proposed Transfer of Certain Articles (USML Cat I-III) to DOC, Pursuant to 38(f)

Dear all,
For your information only, you may remember clearing the below subject AM to T a few weeks ago. Last week we learned that the addressee would require changing to S. As such, I have modified the memo to reflect this new direction. Please note that no other substantive changes have been made to the letter other than those provided during your initial review.  Also, unlike the previous send, I have taken the liberty of including the nine tabs referenced by the previous AM here.

Please note that we expect OMB to complete their interagency review of our rule by Thursday of this week, after which we intend to forward this completed package to S for signature.

WASHSTATEC004373

Again, thank you for your assistance throughout this process. If you would like to provide further comments on the above prior to that date, they are most certainly welcome. Should you choose to do so, please forward them to me as well as to Mr. Robert Hart, included here.


Very respectfully,


Rick


Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828


UNCLASSIFIED

**From:** Koelling, Richard W
**Sent:** Tuesday, October 8, 2019 10:15 AM
**To:** Eggleston, Brett A <EgglestonBA@state.gov>; Carter, Melanie R <CarterMR@state.gov>; Urena, Michael A <UrenaMA@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; PM-CPA <PM-CPA@state.gov>; Abisellan, Eduardo <AbisellanE@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Nanavatty, Katharine B <NanavattyKB@state.gov>; Miller, Michael F <Millermf@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Brechwald, Matthew J (T) <BrechwaldMJ2@state.gov>; Foster, John A <FosterJA2@state.gov>
**Subject:** Review of AM to T v3 - Notification of the Proposed Transfer of Certain Articles (USML Cat I-III) to DOC, Pursuant to 38(f)
**Importance:** High


Dear all,




Very respectfully,


Rick Koelling


Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828


UNCLASSIFIED

Message
| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 10/29/2019 1:28:50 PM |
| **To:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **CC:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |

Thanks, Jeff. ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

SENSITIVE BUT UNCLASSIFIED

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Sent:** Monday, October 28, 2019 6:27 PM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Joe – some additional points and a question in response to those that NSC picked up.  Thanks - Jeff

SENSITIVE BUT UNCLASSIFIED

**From:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>
**Sent:** Monday, October 28, 2019 5:53 PM
**To:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela A Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shelloe, Ryan P. EOP/NSC <Ryan.P.Shelloe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

████████████████████████████████████████

Thanks,
Elijah

**From:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>
**Sent:** Monday, October 28, 2019 1:11 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>;
Vincent, Grayson K. EOP/NSC <Grayson.K.Vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC
<Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>;
'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M.
EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Ruggiero,
Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>;
Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F
<Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO
<Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B.
EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO
<Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shellooe, Ryan P.
EOP/NSC <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D
<KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO
<James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M
<KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>;
susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC
<Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov;
Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh,
Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

All,

███████████████████

Michele


Michele Dash-Pauls
Deputy Director
Office of Nuclear Export Controls
Dept of Energy/National Nuclear Security Administration
Tel: 202-586-2645
Fax: 202-586-4452
E-mail: michele.dash-pauls@nnsa.doe.gov


**From:** McKeeby, David I [mailto:McKeebyDI@state.gov]
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson
<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col
USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K.
EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. <John.M.Wilson@nsc.eop.gov>; Waterman,
Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling,
Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov;
Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov;
Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>;
Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M

<KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov;
Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Dash-pauls, Michele
<michele.dash-pauls@nnsa.doe.gov>; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov;
heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** [EXTERNAL] RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:



Best,
Dave
_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry: ▓▓▓▓▓▓
e-mail:       _mckeebydi@state.gov_ |  Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson
<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E
CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>;
Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC
<John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas
<SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F
<Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>;
Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov;
EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov;
Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov;
James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>;
Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov;

Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; **Foster, John A** <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

Best,
Dave

---
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.8757       | BlackBerry:
e-mail:       *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

Message

| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 10/29/2019 1:38:43 PM |
| **To:** | McKeeby, David I [McKeebyDI@state.gov] |
| **CC:** | Kovar, Jeffrey D [KovarJD@state.gov]; Paul, Joshua M [PaulJM@state.gov] |
| **Subject:** | FW: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |
| **Attachments:** | 1015 Roll-Out Plan and TPs--CATS I-III.docx |

Hi Dave:  Jeff had a few additional edits and comments on top of NSC's.  Jeff is out of the office today, but he asked me to pass along the attached.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

Thanks,
Joe

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

SENSITIVE BUT UNCLASSIFIED

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Sent:** Monday, October 28, 2019 6:27 PM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

SENSITIVE BUT UNCLASSIFIED

**From:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>
**Sent:** Monday, October 28, 2019 5:53 PM
**To:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shelloe, Ryan P. EOP/NSC <Ryan.P.Shelloe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>

**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

████████████████████████████████████

Thanks,
Elijah

---

**From:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>
**Sent:** Monday, October 28, 2019 1:11 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vincent, Grayson K. EOP/NSC <Grayson.K.Vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie E. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shellooe, Ryan P. EOP/NSC <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

All,

████████████████████████████████

Michele


Michele Dash-Pauls
Deputy Director
Office of Nuclear Export Controls
Dept of Energy/National Nuclear Security Administration
Tel: 202-586-2645
Fax: 202-586-4452
E-mail: michele.dash-pauls@nnsa.doe.gov


---

**From:** McKeeby, David I [mailto:McKeebyDI@state.gov]
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K.

EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@nsc.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** [EXTERNAL] RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

Best,
Dave

***

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757      | BlackBerry: ▮▮▮▮▮▮
e-mail:     *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;

Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases


Colleagues:

Best,
Dave
_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757      | BlackBerry ███████
e-mail:     _mckeebydi@state.gov_ |  Web: _PM Homepage_ |Twitter: _@StateDeptPM_


Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

Message

| | |
|---|---|
| **From**: | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Sent**: | 10/29/2019 2:36:08 PM |
| **To**: | Koelling, Richard W [KoellingRW@state.gov] |
| **CC**: | Abraham, Liz [LAbraham@doc.gov] |
| **Subject**: | RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |

Thanks, Rick.

Tim

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Tuesday, October 29, 2019 10:35 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Cc:** Abraham, Liz <LAbraham@doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Tim,

████████████████████████████████████████

Thanks,

Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Sent:** Tuesday, October 29, 2019 10:11 AM
**To:** Koelling, Richard W <KoellingRW@state.gov>
**Cc:** Abraham, Liz <LAbraham@doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Rick,

████████████████████████████████████████

Thanks,
Tim

**From:** Comstock, Earl (Federal) <EComstock@doc.gov>
**Sent:** Monday, October 28, 2019 6:37 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Hillary Hess <Hillary.Hess@bis.doc.gov>; Williams, Rebekah A. EOP/NSC
<Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC
<Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>;
LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC
<John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>;
Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh
<Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>;
Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov;
Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J
<HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov;
James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>;
Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>;
Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>;
Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Curtis, Deborah (Federal) <DCurtis@doc.gov>;
heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** Re: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

███████████████████████████████████████████

Earl

**From:** "McKeeby, David I" <McKeebyDI@state.gov>
**Date:** Monday, October 28, 2019 at 3:14 PM
**To:** "Hess, Hillary" <Hillary.Hess@bis.doc.gov>, "Williams, Rebekah A. EOP/NSC"
<Rebekah.A.Williams@nsc.eop.gov>, "Vicent, Grayson" <grayson.k.vincent@nsc.eop.gov>, "Biery, Meghan N.
EOP/NSC" <Meghan.N.Biery@nsc.eop.gov>, "Tapia, Angela M Lt Col USAF OSD OASD LA (USA)"
<angela.m.tapia2.mil@mail.mil>, "Kluttz, Lawson (Federal)" <LKluttz@doc.gov>, "Bulgrin, Julie K. EOP/NSC"
<Julie.K.Bulgrin@nsc.eop.gov>, "Wilson, John Mark M. EOP/NSC" <John.M.Wilson@nsc.eop.gov>, "Waterman,
Elijah J. EOP/NSC" <Elijah.J.Waterman@nsc.eop.gov>, "Anthony.J.Ruggiero@nsc.eop.gov"
<Anthony.J.Ruggiero@nsc.eop.gov>, "Ryan.M.Tully@nsc.eop.gov" <Ryan.M.Tully@nsc.eop.gov>,
"Steven.J.Menashi@who.eop.gov" <Steven.J.Menashi@who.eop.gov>, "Ashooh, Richard"
<Richard.Ashooh@bis.doc.gov>, "Miller, Michael F" <Millermf@state.gov>, "Koelling, Richard W"
<KoellingRW@state.gov>, "Michael.B.Williams@who.eop.gov" <Michael.B.Williams@who.eop.gov>,
"Michael.J.Ellis@who.eop.gov" <Michael.J.Ellis@who.eop.gov>, "Jennifer.B.Lichter@who.eop.gov"
<Jennifer.B.Lichter@who.eop.gov>, "Comstock, Earl (Federal)" <EComstock@doc.gov>,
"Robert.T.Goad2@who.eop.gov" <Robert.T.Goad2@who.eop.gov>, "James.S.Baehr@who.eop.gov"
<James.S.Baehr@who.eop.gov>, "Ryan.P.Shellooe@nsc.eop.gov" <Ryan.P.Shellooe@nsc.eop.gov>, "Heidema,
Sarah J" <HeidemaSJ@state.gov>, "Kovar, Jeffrey D" <KovarJD@state.gov>, "Ross.T.Gillfillan@who.eop.gov"
<Ross.T.Gillfillan@who.eop.gov>, "James.D.Mandolfo@who.eop.gov" <James.D.Mandolfo@who.eop.gov>,
"Thomas.F.Leary@nsc.eop.gov" <Thomas.F.Leary@nsc.eop.gov>, "Kaldahl, Ryan M" <KaldahlRM@state.gov>,
"Jasmeet_K._Seehra@omb.eop.gov" <Jasmeet_K._Seehra@omb.eop.gov>, "susan.g.daoussi.civ@mail.mil"
<susan.g.daoussi.civ@mail.mil>, "Abraham, Liz (Federal)" <LAbraham@doc.gov>,
"Tony.Coppolino@usdoj.gov" <Tony.Coppolino@usdoj.gov>, "Joseph.S.Wier@nsc.eop.gov"
<Joseph.S.Wier@nsc.eop.gov>, Matthew Borman <Matthew.Borman@bis.doc.gov>, "Michele.Dash-

pauls@NNSA.Doe.Gov" <Michele.Dash-pauls@NNSA.Doe.Gov>, "candice.l.rodriguez.civ@mail.mil"
<candice.l.rodriguez.civ@mail.mil>, "Curtis, Deborah (Federal)" <DCurtis@doc.gov>,
"heidi.cohen@treasury.gov" <heidi.cohen@treasury.gov>
**Cc:** "Paul, Joshua M" <PaulJM@state.gov>, "Mooney, Timothy" <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Hillary:

████████████████████████████████████████

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757      | BlackBerry: ███████████
e-mail:     _mckeebydi@state.gov_ |   Web:  _PM Homepage_ |Twitter: _@StateDeptPM_


Stay connected with _State.gov_:




                          UNCLASSIFIED

**From:** Hillary Hess <Hillary.Hess@bis.doc.gov>
**Sent:** Monday, October 28, 2019 1:48 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>;
Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia,
Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC
<Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J.
EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F
<Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov;
Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov;
James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey
D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov;
Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov;
susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov;
Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov;
candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Dave,

████████████████████████████████████████

Hillary

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary Hess <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High


Interagency Colleagues:

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State


Phone:        202.647.8757        | BlackBerry: ████████████
e-mail:       mckeebydi@state.gov |  Web: _PM Homepage_ |Twitter: _@StateDeptPM_


Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM

**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov

**Cc:** Paul, Joshua M <PaulJM@state.gov>

**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757        | BlackBerry:
e-mail:       _mckeebydi@state.gov_ |   Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

Message

| | |
|---|---|
| **From:** | McKeeby, David I [McKeebyDI@state.gov] |
| **Sent:** | 10/29/2019 4:16:23 PM |
| **To:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **CC:** | Kovar, Jeffrey D [KovarJD@state.gov]; Paul, Joshua M [PaulJM@state.gov] |
| **Subject:** | RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases |

Joe:

Thanks—we'll get these incorporated.

████████████████████████████████████████

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:     202.647.8757          | BlackBerry: ███████████
e-mail:     _mckeebydi@state.gov_ |  Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SENSITIVE BUT UNCLASSIFIED

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Tuesday, October 29, 2019 9:39 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>
**Cc:** Kovar, Jeffrey D <KovarJD@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** FW: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Hi Dave:  Jeff had a few additional edits and comments on top of NSC's. ███████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Thanks,
Joe

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

SENSITIVE BUT UNCLASSIFIED

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Sent:** Monday, October 28, 2019 6:27 PM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** Minarich, Christine M <MinarichCM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

SENSITIVE BUT UNCLASSIFIED

**From:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>
**Sent:** Monday, October 28, 2019 5:53 PM
**To:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>; McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shellooe, Ryan P. EOP/NSC <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO <James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC <Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh, Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

███████████████████████████████████

Thanks,
Elijah

**From:** Dash-pauls, Michele <michele.dash-pauls@nnsa.doe.gov>
**Sent:** Monday, October 28, 2019 1:11 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vincent, Grayson K. EOP/NSC <Grayson.K.Vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Ruggiero, Anthony J. EOP/NSC <Anthony.J.Ruggiero@nsc.eop.gov>; Tully, Ryan M. EOP/NSC <Ryan.M.Tully@nsc.eop.gov>; Menashi, Steven J. EOP/WHO <Steven.J.Menashi@who.eop.gov>; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Williams, Michael B. EOP/WHO <Michael.B.Williams@who.eop.gov>; Ellis, Michael J. EOP/WHO <Michael.J.Ellis@who.eop.gov>; Lichter, Jennie B. EOP/WHO <Jennifer.B.Lichter@who.eop.gov>; EComstock@doc.gov; Goad, Robert T. EOP/WHO <Robert.T.Goad2@who.eop.gov>; Baehr, James S. EOP/WHO <James.S.Baehr@who.eop.gov>; Shellooe, Ryan P. EOP/NSC <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D

<KovarJD@state.gov>; Gillfillan, Ross T. EOP/WHO <Ross.T.Gillfillan@who.eop.gov>; Mandolfo, James D. EOP/WHO
<James.D.Mandolfo@who.eop.gov>; Leary, Thomas F. EOP/NSC <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M
<KaldahlRM@state.gov>; Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>;
susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Wier, Joseph S. EOP/NSC
<Joseph.S.Wier@nsc.eop.gov>; Matthew.Borman@bis.doc.gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov;
Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov; Krupa, Melissa M <melissa.krupa@nnsa.doe.gov>; Prestosh,
Evelyn <evelyn.prestosh@nnsa.doe.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

All,

████████████████████

Michele

Michele Dash-Pauls
Deputy Director
Office of Nuclear Export Controls
Dept of Energy/National Nuclear Security Administration
Tel: 202-586-2645
Fax: 202-586-4452
E-mail: michele.dash-pauls@nnsa.doe.gov

---

**From:** McKeeby, David I [mailto:McKeebyDI@state.gov]
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson
<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col
USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Bulgrin, Julie K.
EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman,
Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Koelling,
Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov;
Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov;
Ryan.P.Shelloe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>;
Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M
<KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov;
Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Dash-pauls, Michele
<michele.dash-pauls@nnsa.doe.gov>; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov;
heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** [EXTERNAL] RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry: ████████████

e-mail:        *mckeebydi@state.gov* |        Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



---

SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson
<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E
CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA)
<angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>;
Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC
<John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas
<SmagulaN@state.gov>; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F
<Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>;
Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov;
EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov;
Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov;
James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>;
Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov;
Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov;
candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov;
heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Best,
Dave

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

| Phone: | 202.647.8757 | | BlackBerry: ██████ |

e-mail: _mckeebydi@state.gov_ |   Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

WASHSTATEC004392

Message

| | |
|---|---|
| **From**: | Webster, Hillary [WebsterH@state.gov] |
| **Sent**: | 10/29/2019 9:13:18 PM |
| **To**: | Koelling, Richard W [KoellingRW@state.gov] |
| **Subject**: | Re: Cats I, II, and III update |

Sorry - got a call ████████████ I am online now and available to chat but I know it is late - otherwise I can connect first thing in the morning....

---

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Tuesday, October 29, 2019 3:17 PM
**To:** Webster, Hillary <WebsterH@state.gov>
**Subject:** RE: Cats I, II, and III update

Do you have time to chat?

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

---

**From:** Webster, Hillary <WebsterH@state.gov>
**Sent:** Tuesday, October 29, 2019 3:08 PM
**To:** Koelling, Richard W <KoellingRW@state.gov>
**Subject:** RE: Cats I, II, and III update

Ha ha, does the smiley face mean yes? Or yikes, you all already have too much going on? ☺

**Hillary Webster**
**T/PM DDTC**
**Deloitte Consulting**
**Desk Phone: 202 663 3264**
**Mobile:** ████████

---

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Tuesday, October 29, 2019 2:58 PM
**To:** Webster, Hillary <WebsterH@state.gov>
**Subject:** RE: Cats I, II, and III update

 ☺

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

---

**From:** Webster, Hillary <WebsterH@state.gov>
**Sent:** Tuesday, October 29, 2019 2:47 PM
**To:** Koelling, Richard W <KoellingRW@state.gov>
**Subject:** Cats I, II, and III update

WASHSTATEC004393

Hi Rick!

I'm working on the below table for a presentation for DAS Miller for a Thursday meeting with U/S Ford. Could you/someone from your team provide an update on the latest and greatest surrounding Cats I, II, III? I've highlighted below where I could use some help with language/inputs.

Please let me know if you have any questions.

Thanks,
Hillary



| Priority | Description |
| --- | --- |
|  |  |
| **Proposed Rules for Oversight of Firearms Exports** | • Amendment to Categories I, II, and III of the USML to transfer oversight of types of firearms, ammunition, and related items to the Department of Commerce to modernize export control regulations, ease industry compliance, and improve enforceability.<br>• Insert update on recent accomplishments: |

WASHSTATEC004394



Hillary Webster
T/PM DDTC
Deloitte Consulting
Desk Phone: 202 663 3264
Mobile: 202 203 9341

WASHSTATEC004395

Message

| | |
|---|---|
| **From:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent:** | 10/30/2019 11:48:50 AM |
| **To:** | McKeeby, David I [McKeebyDI@state.gov] |
| **Subject:** | RE: CPA Media Monitoring: Politico: Inhofe unveils 'skinny' NDAA |

Dave, attempting to access the full 67 pages now, but so far unsuccessful. Any mention of Cats I-III or 3-D printing controls?

Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Tuesday, October 29, 2019 8:44 PM
**To:** PM-Directors <PM-Directors@state.gov>; PM-Deputy-Directors <PM-Deputy-Directors@state.gov>; PM-DAS's <PM-DASs@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** CPA Media Monitoring: Politico: Inhofe unveils 'skinny' NDAA


Sent from my BlackBerry 10 smartphone.

**From:** POLITICO Pro <politicoemail@politicopro.com>
**Sent:** Tuesday, October 29, 2019 7:55 PM
**To:** McKeeby, David I
**Reply To:** POLITICO subscriptions
**Subject:** Inhofe unveils 'skinny' NDAA

**Inhofe unveils 'skinny' NDAA**

By Connor O'Brien

10/29/2019 07:38 PM EDT

Senate Armed Services Chairman Jim Inhofe on Tuesday rolled out the text of a slimmed-down version of the annual National Defense Authorization Act.

The "skinny" NDAA would renew only the military authorities set to expire at the end of the year. The Oklahoma Republican has floated the idea since last month as an alternative bill, should a House and Senate conference committee tasked with hammering out a final fiscal 2020 defense policy bill hit an impasse.

The 67-page back-up measure includes a slew of pressing provisions that would, among other things:

WASHSTATEC004396

— Renew expiring military and civilian pay, bonuses and other benefits for one year

— Authorize bulk purchases of parts for the F-35 fighter jet

— Extend the deadlines for the National Commission on Military Aviation Safety and the Cyberspace Solarium Commission

— Renew funding for counterterrorism operations and security programs in Afghanistan and throughout the Middle East

— Authorize some badly needed military infrastructure projects

— Authorize funding for the Defense Health Program, the Pentagon inspector general's office, working capital funds and drug interdiction activities

— Authorize funding for the nonproliferation Nunn-Lugar Cooperative Threat Reduction Program

In a statement, Inhofe called the measure "a simple, politics-free" proposal meant to serve as a Plan B.

"I want to preserve all options for fulfilling our constitutional duty," the senator explained. "My Democrat colleagues in the Senate have been great partners throughout this entire process, and I believe we can still reach a final, bipartisan agreement on a comprehensive defense authorization bill, just as we have for the last 58 years."

Senate Republicans and House Democrats remain at odds, though, over whether to include provisions to limit military funding for President Donald Trump's border wall with Mexico as well as a slew of contentious provisions on presidential war powers, paid family leave, military malpractice lawsuits and nuclear weapons.

Lawmakers in both parties would lose some under a skinny NDAA, as it would jettison many popular proposals under negotiation by House and Senate Armed Services leaders such as a new military space service, which has been detailed differently by the two chambers.

And House Armed Services Chairman Adam Smith (D-Wash.) has largely dismissed the proposal, arguing lawmakers should negotiate a final bill that includes provisions limit the president from grabbing money for more Southern border barriers.

*To view online*:
https://subscriber.politicopro.com/defense/article/2019/10/inhofe-unveils-skinny-ndaa-1815167

**You received this POLITICO Pro content because your customized settings include: Appropriations, Advocacy (and) Military (or) Coalition Forces…, Intergovernmental Affairs (and) Military…, Defense and Security, Policy and Regulations (and) Military Research…, Lobbying (and) Nuclear Weapons (or) Military…, The White House (and) Defense and Security, National Defense Authorization Act. To change your alert settings, please go to https://subscriber.politicopro.com/settings.**

WASHSTATEC004397

This email alert has been sent for the exclusive use of POLITICO Pro subscriber, mckeebydi@state.gov. Forwarding or reproducing the alert without the express, written permission of POLITICO Pro is a violation of copyright law and the POLITICO Pro subscription agreement.

Copyright © 2019 by POLITICO LLC. To subscribe to Pro, please go to politicopro.com.

This email was sent to mckeebydi@state.gov by:
POLITICO, LLC
1000 Wilson Blvd.
Arlington, VA 22209
USA .

WASHSTATEC004398

| Message | |
| --- | --- |
| **From**: | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent**: | 10/30/2019 11:51:17 AM |
| **To**: | Webster, Hillary [WebsterH@state.gov] |
| **Subject**: | RE: Cats I, II, and III update |

I'm in when you are.

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** Webster, Hillary <WebsterH@state.gov>
**Sent:** Tuesday, October 29, 2019 5:13 PM
**To:** Koelling, Richard W <KoellingRW@state.gov>
**Subject:** Re: Cats I, II, and III update

Sorry - got a call to ███████████ I am online now and available to chat but I know it is late - otherwise I can connect first thing in the morning....

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Tuesday, October 29, 2019 3:17 PM
**To:** Webster, Hillary <WebsterH@state.gov>
**Subject:** RE: Cats I, II, and III update

Do you have time to chat?

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

**From:** Webster, Hillary <WebsterH@state.gov>
**Sent:** Tuesday, October 29, 2019 3:08 PM
**To:** Koelling, Richard W <KoellingRW@state.gov>
**Subject:** RE: Cats I, II, and III update

Ha ha, does the smiley face mean yes? Or yikes, you all already have too much going on? ☺

**Hillary Webster**
**T/PM DDTC**
**Deloitte Consulting**
**Desk Phone: 202 663 3264**
**Mobile** ███████████

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Tuesday, October 29, 2019 2:58 PM

WASHSTATEC004399

**To:** Webster, Hillary <<u>WebsterH@state.gov</u>>
**Subject:** RE: Cats I, II, and III update



Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

---

**From:** Webster, Hillary <<u>WebsterH@state.gov</u>>
**Sent:** Tuesday, October 29, 2019 2:47 PM
**To:** Koelling, Richard W <<u>KoellingRW@state.gov</u>>
**Subject:** Cats I, II, and III update

Hi Rick!

I'm working on the below table for a presentation for DAS Miller for a Thursday meeting with U/S Ford. Could you/someone from your team provide an update on the latest and greatest surrounding Cats I, II, III? I've highlighted below where I could use some help with language/inputs.

Please let me know if you have any questions.

Thanks,
Hillary

| Priority | Description |
|---|---|
| | |
| **Proposed Rules for Oversight of Firearms Exports** | • Amendment to Categories I, II, and III of the USML to transfer oversight of types of firearms, ammunition, and related items to the Department of Commerce to modernize export control regulations, ease industry compliance, and improve enforceability.<br>• Insert update on recent accomplishments: |
| | |



Hillary Webster
T/PM DDTC
Deloitte Consulting
Desk Phone: 202 663 3264
Mobile: 

WASHSTATEC004401

Message

_____

**From:**       Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]
**Sent:**       10/30/2019 8:51:58 PM
**To:**         Mathew, Asha (Federal) [amathew@doc.gov]; Robbins, Peter (Federal) [PRobbins@doc.gov]; Hart, Robert L
                [HartRL@state.gov]; Koelling, RichardW [KoellingRW@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov];
                Kottmyer, Alice M [KottmyerAM@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]
**CC:**         Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]; Gardiner,Kyle S. EOP/OMB
                [Kyle.S.Gardiner@omb.eop.gov]; Biery, Meghan N. EOP/NSC [Meghan.N.Biery@nsc.eop.gov]
**Subject:**    DOJ Comments on Commerce and State final export control rules for guns and ammunition
**Attachments:** UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19.docx; 2019-10-18 4.41pm CLEAN Commerce
                Cat I-III firearms rule for sending to OMB once OPSP clears - ATF 10-28-19.docx

Folks –

██████████████████████████████████████████████████████████████

+ Kyle as the OIRA state desk officer.

+ Meghan for NSC awareness.

Thanks!

WASHSTATEC004402

Message

| From: | Khawam, Joseph N [KhawamJN@state.gov] |
|---|---|
| Sent: | 10/31/2019 5:06:48 PM |
| To: | Kovar, Jeffrey D [KovarJD@state.gov] |
| Subject: | FW: DOJ Comments on Commerce and State final export control rules for guns and ammunition |
| Attachments: | UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 RLH.docx |

Jeff:  Here are the comments and edits from OMB review. ███████████████████████████

████████████████████████████████████████████████████████████████████████████████

Thanks,
Joe

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

_____

**From:** Hart, Robert L <HartRL@state.gov>
**Sent:** Thursday, October 31, 2019 12:04 PM
**To:** Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition

Proposed responses in the attached.████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████hat

████████████████████████████████████████████████████████████████████████████████

I'll sit on this until later this afternoon before passing back, let me know if anyone has any thoughts or tweaks.

Thanks,

Rob Hart
202.736.9221 | hartrl@state.gov

_____

**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Thursday, October 31, 2019 9:42 AM
**To:** Koelling, Richard W <KoellingRW@state.gov>
**Cc:** Hart, Robert L <HartRL@state.gov>
**Subject:** RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition

Thanks Rick – I read through both and didn't see any show-stopper comments/requested edits

MM

_____

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Wednesday, October 30, 2019 6:03 PM
**To:** Miller, Michael F <Millermf@state.gov>
**Subject:** Fwd: DOJ Comments on Commerce and State final export control rules for guns and ammunition

WASHSTATEC004403

Haven't opened yet. Still driving.

Get Outlook for iOS

---

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>

**Sent:** Wednesday, October 30, 2019 4:51:58 PM

**To:** Asha, Mathew <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>

**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>

**Subject:** DOJ Comments on Commerce and State final export control rules for guns and ammunition

Folks –

███████████████████████████████████████████████

+ Kyle as the OIRA state desk officer.

+ Meghan for NSC awareness.

Thanks!

WASHSTATEC004404

Message

| | |
|---|---|
| **From:** | Hart, Robert L [HartRL@state.gov] |
| **Sent:** | 10/31/2019 8:11:19 PM |
| **To:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]; Robbins, Peter (Federal) [PRobbins@doc.gov] |
| **CC:** | Asha, Mathew [amathew@doc.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Gardiner,Kyle S. EOP/OMB [Kyle.S.Gardiner@omb.eop.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Koelling, Richard W [KoellingRW@state.gov] |
| **Subject:** | RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition |
| **Attachments:** | UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

Hi Jasmeet, ██████████████████████████████████████

Thanks,

Rob Hart
202.736.9221 | hartrl@state.gov

---

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Thursday, October 31, 2019 10:46 AM
**To:** Robbins, Peter (Federal) <PRobbins@doc.gov>
**Cc:** Asha, Mathew <amathew@doc.gov>; Hart, Robert L <HartRL@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>
**Subject:** RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition

+ State folks.

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

**From:** Robbins, Peter (Federal) <PRobbins@doc.gov>
**Sent:** Thursday, October 31, 2019 10:35 AM
**To:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Cc:** Mathew, Asha (Federal) <amathew@doc.gov>
**Subject:** RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition

Jasmeet,

███████████████████████

---

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Wednesday, October 30, 2019 4:52 PM
**To:** Mathew, Asha (Federal) <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB

WASHSTATEC004405

<Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>
**Subject:** DOJ Comments on Commerce and State final export control rules for guns and ammunition

Folks –



+ Kyle as the OIRA state desk officer.

+ Meghan for NSC awareness.

Thanks!

Message

| | |
|---|---|
| **From:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov] |
| **Sent:** | 11/1/2019 6:37:24 PM |
| **To:** | Asha, Mathew [amathew@doc.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Gardiner,Kyle S. EOP/OMB [Kyle.S.Gardiner@omb.eop.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Hart, Robert L [HartRL@state.gov]; Robbins, Peter (Federal) [PRobbins@doc.gov] |
| **CC:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov] |
| **Subject:** | RE: Status of Commerce and State final export control rules for guns and ammunition |
| **Attachments:** | UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

███████████████████████████████████████████████████

**From:** Hart, Robert L <HartRL@state.gov>
**Sent:** Thursday, October 31, 2019 4:11 PM
**To:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>
**Cc:** Asha, Mathew <amathew@doc.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Koelling, Richard W <KoellingRW@state.gov>
**Subject:** RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition

Hi Jasmeet, ███████████████████████████████████

Thanks,

Rob Hart
202.736.9221 | hartrl@state.gov

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Thursday, October 31, 2019 10:46 AM
**To:** Robbins, Peter (Federal) <PRobbins@doc.gov>
**Cc:** Asha, Mathew <amathew@doc.gov>; Hart, Robert L <HartRL@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>
**Subject:** RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition

+ State folks.

███████████████████████████████████████████████

███████████████████████████████████████████████

**From:** Robbins, Peter (Federal) <PRobbins@doc.gov>
**Sent:** Thursday, October 31, 2019 10:35 AM
**To:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Cc:** Mathew, Asha (Federal) <amathew@doc.gov>
**Subject:** RE: DOJ Comments on Commerce and State final export control rules for guns and ammunition

Jasmeet,

███████████████████████

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Wednesday, October 30, 2019 4:52 PM
**To:** Mathew, Asha (Federal) <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>
**Subject:** DOJ Comments on Commerce and State final export control rules for guns and ammunition

Folks –

████████████████████████████████████████████

+ Kyle as the OIRA state desk officer.

+ Meghan for NSC awareness.

Thanks!

Message

| | |
|---|---|
| **From:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent:** | 11/1/2019 9:58:37 PM |
| **To:** | Nightingale, Robert L [NightingaleRL@state.gov] |
| **CC:** | Legal-PM-DL [Legal-PM-DL@state.gov] |
| **Subject:** | L/PM Weekly |



5. **(SBU) ITAR Categories I – III**: We received interagency comments from OMB on our reg package. We expect DDTC and Commerce to coordinate early next week on any final revisions so that we can move the action memo to S to approve the 30-day Congressional Notification package.



SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov] |
| **Sent:** | 11/4/2019 8:03:14 PM |
| **To:** | Mathew, Asha (Federal) [amathew@doc.gov]; Robbins, Peter (Federal) [PRobbins@doc.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Hart, Robert L [HartRL@state.gov]; Koelling, Richard W [KoellingRW@state.gov] |
| **CC:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]; Biery,Meghan N. EOP/NSC [Meghan.N.Biery@nsc.eop.gov]; Gardiner, Kyle S. EOP/OMB [Kyle.S.Gardiner@omb.eop.gov] |
| **Subject:** | FW: For Comment by COB on November 6th -- Responses from Commerce and State on DOJ comments on final export control rules for guns and ammunition |
| **Attachments:** | 2019-11-4 1.48pm Redline BIS resp. to ATF comments on Commerce Cat I-III firearms rule - ATF 10-28-19.docx; 2019-11-4 1.48pm CLEAN BIS resp. to ATF comments on Commerce Cat I-III firearms rule - ATF 10-28-19.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

███████████████████████████████████████████████████

███████████████

███████████████████████████████████████████████████

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Monday, November 4, 2019 2:42 PM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Kevin.R.Jones@usdoj.gov
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>
**Subject:** For Comment by COB on November 6th -- Responses from Commerce and State on DOJ comments on final export control rules for guns and ammunition

Folks --

███████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████

Jasmeet

Message

| | |
|---|---|
| **From:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent:** | 11/4/2019 8:43:57 PM |
| **To:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject:** | FW: For Comment by COB on November 6th -- Responses from Commerce and State on DOJ comments on final export control rules for guns and ammunition |
| **Attachments:** | 2019-11-4 1.48pm Redline BIS resp. to ATF comments on Commerce Cat I-III firearms rule - ATF 10-28-19.docx; 2019-11-4 1.48pm CLEAN BIS resp. to ATF comments on Commerce Cat I-III firearms rule - ATF 10-28-19.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Monday, November 4, 2019 3:03 PM
**To:** Asha, Mathew <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>
**Subject:** FW: For Comment by COB on November 6th -- Responses from Commerce and State on DOJ comments on final export control rules for guns and ammunition

███████████████████████████████████████████████

██████████

███████████████████████████████████████████████

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Monday, November 4, 2019 2:42 PM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Kevin.R.Jones@usdoj.gov
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>
**Subject:** For Comment by COB on November 6th -- Responses from Commerce and State on DOJ comments on final export control rules for guns and ammunition

Folks –

Jasmeet

WASHSTATEC004412

Message

_____

**From:**      Marquis, Matthew R [MarquisMR@state.gov]
**Sent:**      11/5/2019 3:27:24 PM
**To:**        PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov]; Legal-PM-DL [Legal-PM-DL@state.gov]
**CC:**        PM-CPA [PM-CPA@state.gov]; Miller, Michael F [Millermf@state.gov]
**Subject:**   CPA Media Monitoring: The Libertarian Institute: 3D-Printed Firearms and Defense Distributed: A Guide to
             Understanding "Ghost Guns"



**3D-Printed Firearms and Defense Distributed: A Guide to Understanding "Ghost Guns"**
**By Sam Jacobs**
**4 November 2019**

Disclaimer: This guide is intended to be informational only surrounding the topic of ghost guns and 3D-printed firearms. It is not legal advice.

Ever since the landmark ruling on 3D-printed firearms, outrage and moral panic have surrounded so-called "ghost guns." Whether you're a proponent of Second Amendment freedoms or just doing opponent research, it's important to have the facts about what a ghost gun is and what it is not.

It's also important to know other related terms in the world of firearms – like how is a ghost gun different from a 3D-printed gun? And what is an 80-percent lower? This guide will answer all of your ghost gun questions, and will separate fact from fiction surrounding this polarizing topic.

**What Is a Ghost Gun?**

Put simply, a "ghost gun" is a catchall term for any firearm without a serial number. There are a variety of ways a person can come to own a firearm without a serial number that do not involve breaking federal law, which generally prohibits the removal of serial numbers but not, however, the ownership of a firearm without a serial number.

It's not a loophole in the law. The law is specifically written to exclude professional gunsmiths and hobbyists. Even if you own a ghost gun – that you must make yourself – you're never allowed to sell or transfer it without getting a serial number. In fact, there are a number of procedures in place allowing for amateur gunsmiths to get a serial number for their homemade firearms for precisely this purpose.

**What Is a Gun?**

To understand the law behind so-called "ghost guns," it's important to understand what a gun is under the law. This relates back to the Ship of Theseus problem in philosophy: In this thought experiment, one considers a boat. What about a boat makes it a boat? How much of it may we replace and still be talking about the same object? Does a mast make the boat? The sails? The deck? The hull?

Now apply this to firearms. Is a barrel a weapon? What about a stock? What about the two of them together, but no trigger? Is the trigger alone a weapon? There are a number of combinations to this question: At what point does something stop being a hunk of metal and start being a firearm?

WASHSTATEC004413

And the various combinations have one answer: A "gun" under the law is a part called the lower receiver. This ceases to be a hunk of metal when it is more than 80 percent finished. Up until that point, you just have a hunk of metal.

## What Is an 80-Percent Lower?

3D-Printed Firearms and Defense Distributed: A Guide to Understanding Ghost GunsTaking the above, we can extrapolate that it is perfectly legal to purchase a hunk of metal that also happens to be an 80-percent finished lower receiver. In fact, there is a small cottage industry dedicated to selling people this very object in an easy-to-process form. These are also known as "unfinished receivers" and "blanks."

If you want to sell or otherwise transfer the receiver once it's been finished, you're going to need a license. However, if you just want to make yourself a weapon – either because it seems like a fun way to spend an afternoon or because you want to own an untraceable weapon – you don't have to jump through any hoops other than purchasing the lower and finishing it. You don't have to register it, you don't have to get it a serial number. You don't even need to pass the same background check you might otherwise have to.

Unsurprisingly, those selling 80-percent lowers tend to make them as easy as possible for the most amateur of amateur gunsmiths to complete. In fact, many of the same retailers selling 80-percent lowers likewise sell complete kits with everything you need to transform what is legally just a hunk of metal into a complete firearm by doing the remaining 20 percent of the work. You'll still need to have some proficiency with machine tools to finish the weapon, but not nearly as much as what would be required to complete a lower from a raw piece of metal. A drill press or rotary tool are enough to finish most 80-percent lower receivers. The time required is between one and seven hours, depending on the skill level of the operator.

## How Many Ghost Guns Are There?

It's nearly impossible to know precisely how many ghost guns are floating around the United States today – that's what makes them "ghost guns." However, we do know that they are particularly popular in places like California, where there are extremely restrictive firearms laws. In 2014, the ATF speculated that tens of thousands of ghost guns were running around California. Again, this was purely speculation.

Four high-profile crimes were committed in the State of California with ghost guns, which likewise brought them to media prominence in the state, one of which was a Santa Monica rampage shooting in 2013. The assailant was otherwise prohibited from owning firearms. Another rampage shooting at Rancho Tehama Preserve was committed by a man who was prohibited from firearms possession due to a restraining order.

It's worth noting a common thread here: Ghost guns are popular in restrictive states. This is why they are so popular among anarchists and Second Amendment activists who sometimes organize so-called "build parties" where people trade the knowledge required to make ghost guns.

The recent court case involving Defense Distributed is not the first attempt of the federal government to stamp out ghost guns. In 2014, the ATF raided Ares Armor, confiscating 6,000 blanks they claimed were too finished to not have serial numbers on them. After an investigation, all but 18 of them were processed as legal for sale. EG Armory of California was likewise raided and had their customer list seized, forfeiting 3,800 lowers without admitting to any wrongdoing. C&G Tool Inc's owner pled guilty to charges he illegally manufactured firearms by making it easy for anyone to show up at his shop, press a couple buttons and walk off with an unregistered firearm with no serial number.

## What Is Defense Distributed?

3D-Printed Firearms and Defense Distributed: A Guide to Understanding Ghost GunsOf course, in a world of readily available 3D-printing technology, it's not that much of a leap to move from people buying 80-percent lowers to people making lower receivers – 80 percent finished or otherwise – using the same technology in the comfort of their own homes. Defense Distributed recently made headlines due to a court injunction against it preventing the release of 3D-printer blueprints for several firearms.

In fact, Defense Distributed is not the first attempt at making firearms leveraging 3D-printer technology. Defense Distributed did not even intend to charge for the plans required to get a 3D printer to print weapons or lowers. What made Defense Distributed different is that they planned to bring to market 3D printers optimized with the printing of firearms specifically in mind. The company likewise released a CNC mill called the Ghost Gunner – optimized and designed for the purpose of completing 80-percent lowers with little or no skill in machining.

Both UPS and FedEx have explicitly refused to carry these machines from Defense Distributed through their respective carriers.

**What Are the Basics of the Defense Distributed Case?**

You might have heard about Defense Distributed going to court against the Department of Defense in the news. Defense Distributed has come up with plans for the world's first completely 3D-printable firearm, the Liberator. On May 5, 2013, the plans were released to the public gratis, but the Department of Defense requested their removal as a violation of arms trafficking laws. In the course of two days, the plans were downloaded over 100,000 times. Despite Defense Distributed's removal of the plans, they are readily and easily available on file sharing sites such as Pirate Bay and GitHub. No one has suggested that possession of these plans is in violation of any federal law.

In May 2016, Defense Distributed took the Department of State to court over the matter. Defense Distributed is a non-profit whose plans for printable weapons – and all of their other IP for that matter – is open source, meaning that the source code is accessible for anyone to work on or modify as they see fit. It is a federally registered 501(c)(3) tax exempt organization and not a weapons manufacturer. Cody Wilson, Defense Distributed's founder and the man at the center of the controversy, holds a Type 7 Federal Firearms License, entitling him to both manufacture and sell arms and ammunition.

The Liberator is named after a firearm developed by the OSS, the precursor of the CIA, to be dropped behind enemy lines for anti-Axis resistance on the ground. However, other than limited use in France, there is no evidence that this was a widely deployed weapon.

It's worth noting that the present injunction in place does not target either 3D printing of guns or any other variety of home manufacture. On the contrary, it is a prior restraint attempt to block free speech, in this case the code in the blueprints for the firearms. If there are legal issues with the plastic firearms printed by 3D printers, they are dealt with under laws specifically germane to plastic, guns which cannot be detected by metal detectors.

You also don't need a 3D printer, a drill press or even an 80-percent lower to start making firearms in the comfort of your own home. In addition to blueprints for 3D-printable guns, there are copious documents on the Internet detailing how you can make handguns and other firearms at home using objects commonly available at your local hardware store. Such books are legal and easy to find, as are books detailing the home manufacture of pipe bombs or even napalm out of commonly available objects.

Finally, it is extremely unlikely that street gangs are presently printing out untraceable firearms on 3D printers, as there are easier and cheaper methods of obtaining such arms.

WASHSTATEC004415

## Who Is Cody Wilson?

3D-Printed Firearms and Defense Distributed: A Guide to Understanding Ghost GunsMuch has been made of Cody Wilson throughout the hysteria regarding Defense Distributed in the press. Cody Wilson is, of course, not terribly relevant to whether or not 3D-printable firearms are or ought to be legal. However, it's worth briefly discussing who he is and what it is about him that makes him so unpalatable to gun grabbers.

A Little Rock, Arkansas native, Cody Wilson dropped out of the University of Texas Law School in 2013, after having began work on Defense Distributed in 2012. He visited the local ATF offices at this time to inquire about legal ramifications and was interrogated by officers for his trouble.

Wilson has heterodox political beliefs perhaps best described as crypto-anarchism, which is his own personal label. He is also influenced by post-Marxist thinkers such as Jean Baudrillard, whom he refers to as his "master."

Defense Distributed is not the only controversial project that Wilson is a part of. In 2017, he was also the founder of Hatreon, an alternative to Patreon created after several so-called "Alt Right" thinkers were removed from Patreon in response to the events in Charlottesville. He has likened himself, for his participation in Defense Distributed and Hatreon alike, as being along the same lines as Bitcoin and Wikileaks in terms of disrupting the predominant power dynamics in society today.

While one cannot have a discussion about 3D-printable firearms or the Defense Distributed case without mentioning Cody Wilson, it is worth noting that regardless of what one thinks of Cody Wilson, his politics or his side projects have precisely no bearing on the Defense Distributed case in particular or 3D-printed arms in general.

## What Is the Undetectable Firearms Act?

The Undetectable Firearms Act of 1988 makes illegal the manufacture, import, sale, shipping, delivery, possession, processing, transfer or receipt of any firearm not detectable by walk-through metal detectors. The Act was largely an attempt by the Reagan Administration to outlaw cheap plastic firearms known as "Saturday Night Specials." It's worth noting that American firearm manufacturers were also proponents of the law both because of optics (it was one of the first attempts at gun control at the federal level) and also because it largely impacted European competitors like Glock while leaving them alone. The Glock 17 was one of the main targets of the act.

The law was subject to a sunset clause that expired in 1998. However, the Act was renewed twice before finally going out in 2013. Firearms previously outlawed under that act have been perfectly legal since then. For its part, the NRA supported the existence of the law, but not any extension of its scope, including language specifically targeting 3D printers and other similar emerging technologies.

## How Will 3D-Printed Firearms Change the World?

It's not clear that 3D-printed firearms will do much to change the world, as they're already covered by several laws. However, there is one way that 3D-printed firearms will create significant change: To the extent that it was not before, gun control is effectively a dead issue. The Defense Distributed case shows that, try as they might, gun grabbers will be increasingly powerless to shut down private, untraceable ownership of firearms for hunting, sporting, self defense, or any other purpose free people might choose.

*Sam Jacobs is the lead writer and chief historian at Ammo.com. Work from Ammo.com's Resistance Library has been featured by USA Today, Reason, Bloomberg's Business Week, Zero Hedge, The Guardian, and National Review as well as many other prominent news and alt-news publications. Sam grew up in a working-class*

WASHSTATEC004416

*suburb in New England. He has lived in the EU, so has spent a lot of time in countries that don't value gun freedom. He currently lives off-grid with his wife and kid back in the U.S.*

Link: https://libertarianinstitute.org/articles/3d-printed-firearms-defense-distributed-ghost-gun-guide/

_____

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.6968
e-mail:       *MarquisMR@state.gov* |   Web:  *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Abraham, Liz (Federal) [LAbraham@doc.gov] |
| **Sent:** | 11/5/2019 6:50:48 PM |
| **To:** | Robinson, Stuart J. (CIV) [Stuart.J.Robinson@usdoj.gov] |
| **CC:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject:** | FW: BIS response to additional DOJ comments ready for sending back to OMB |
| **Attachments:** | 2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; 2019-11-5 11.54am CLEAN BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx |

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

Message

| | |
|---|---|
| **From:** | Robinson, Stuart J. (CIV) [Stuart.J.Robinson@usdoj.gov] |
| **Sent:** | 11/5/2019 6:55:38 PM |
| **To:** | Abraham, Liz (Federal) [LAbraham@doc.gov] |
| **CC:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject:** | Re: BIS response to additional DOJ comments ready for sending back to OMB |



On Nov 5, 2019, at 10:54 AM, Abraham, Liz (Federal) <LAbraham@doc.gov> wrote:



Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

<2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx>
<2019-11-5 11.54am CLEAN BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx>

Message

| | |
|---|---|
| **From:** | McKeeby, David I [McKeebyDI@state.gov] |
| **Sent:** | 11/5/2019 7:26:07 PM |
| **To:** | 'Hillary Hess' [Hillary.Hess@bis.doc.gov]; 'Williams, Rebekah A.EOP/NSC' [Rebekah.A.Williams@nsc.eop.gov]; Vicent, Grayson [grayson.k.vincent@nsc.eop.gov]; 'Biery, Meghan N. EOP/NSC' [Meghan.N.Biery@nsc.eop.gov]; 'Tapia, Angela M Lt Col USAF OSD OASD LA(USA)' [angela.m.tapia2.mil@mail.mil]; 'LKluttz@doc.gov' [LKluttz@doc.gov]; 'Bulgrin, Julie K. EOP/NSC' [Julie.K.Bulgrin@nsc.eop.gov]; 'Wilson, John Mark M. EOP/NSC' [John.M.Wilson@nsc.eop.gov]; 'Waterman, Elijah J. EOP/NSC' [Elijah.J.Waterman@nsc.eop.gov]; 'Anthony.J.Ruggiero@nsc.eop.gov' [Anthony.J.Ruggiero@nsc.eop.gov]; 'Ryan.M.Tully@nsc.eop.gov' [Ryan.M.Tully@nsc.eop.gov]; 'Steven.J.Menashi@who.eop.gov' [Steven.J.Menashi@who.eop.gov]; 'Richard Ashooh' [Richard.Ashooh@bis.doc.gov]; Miller, Michael F [Millermf@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; 'Michael.B.Williams@who.eop.gov' [Michael.B.Williams@who.eop.gov]; 'Michael.J.Ellis@who.eop.gov' [Michael.J.Ellis@who.eop.gov]; 'Jennifer.B.Lichter@who.eop.gov' [Jennifer.B.Lichter@who.eop.gov]; 'EComstock@doc.gov' [EComstock@doc.gov]; 'Robert.T.Goad2@who.eop.gov' [Robert.T.Goad2@who.eop.gov]; 'James.S.Baehr@who.eop.gov' [James.S.Baehr@who.eop.gov]; 'Ryan.P.Shellooe@nsc.eop.gov' [Ryan.P.Shellooe@nsc.eop.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]; 'Ross.T.Gillfillan@who.eop.gov' [Ross.T.Gillfillan@who.eop.gov]; 'James.D.Mandolfo@who.eop.gov' [James.D.Mandolfo@who.eop.gov]; 'Thomas.F.Leary@nsc.eop.gov' [Thomas.F.Leary@nsc.eop.gov]; Kaldahl, Ryan M [KaldahlRM@state.gov]; 'Jasmeet_K._Seehra@omb.eop.gov' [Jasmeet_K._Seehra@omb.eop.gov]; 'susan.g.daoussi.civ@mail.mil' [susan.g.daoussi.civ@mail.mil]; 'Abraham,Liz' [LAbraham@doc.gov]; 'Tony.Coppolino@usdoj.gov' [Tony.Coppolino@usdoj.gov]; 'Joseph.S.Wier@nsc.eop.gov' [Joseph.S.Wier@nsc.eop.gov]; 'Matthew Borman' [Matthew.Borman@bis.doc.gov]; 'Michele.Dash-pauls@NNSA.Doe.Gov' [Michele.Dash-pauls@NNSA.Doe.Gov]; 'candice.l.rodriguez.civ@mail.mil' [candice.l.rodriguez.civ@mail.mil]; 'DCurtis@doc.gov' [DCurtis@doc.gov]; 'heidi.cohen@treasury.gov' [heidi.cohen@treasury.gov] |
| **CC:** | Paul, Joshua M [PaulJM@state.gov]; 'Timothy Mooney' [Timothy.Mooney@bis.doc.gov] |
| **Subject:** | Cats I-III Roll-Out Plan/Releases |
| **Attachments:** | 1015 Roll-Out Plan and TPs--CATS I-III.docx |

Interagency Colleagues:

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757        | BlackBerry: ██████████
e-mail:     _mckeebydi@state.gov_ |  Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



**From:** McKeeby, David I
**Sent:** Monday, October 28, 2019 3:14 PM
**To:** Hillary Hess <Hillary.Hess@bis.doc.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Hillary:

████████████████████████████████████████

Best,
Dave

---

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757          | BlackBerry: ██████████
e-mail:     *mckeebydi@state.gov* |  Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



UNCLASSIFIED

**From:** Hillary Hess <Hillary.Hess@bis.doc.gov>
**Sent:** Monday, October 28, 2019 1:48 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey

D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov;
Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov;
susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov;
Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov;
candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Dave,



Hillary

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson
<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col
USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC
<Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J.
EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F
<Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov;
Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov;
James.S.Baehr@nsc.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey
D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov;
Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov;
susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov;
Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov;
candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary Hess <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry: ███████████
e-mail:    _mckeebydi@state.gov_ |  Web: _PM Homepage_ |Twitter: _@StateDeptPM_


Stay connected with *State.gov*:



---

SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson
<grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E
CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <
angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>;
Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC
<John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas
<SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov;
Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F
<Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>;
Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov;
EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov;
Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov;
James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>;
Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov;
Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov;
candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov;
heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases


Colleagues:



Best,
Dave

---
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State


Phone:        202.647.8757        | BlackBerry: ███████████

e-mail: _mckeehydi@state.gov_ |   Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



SBU - DELIBERATIVE PROCESS

WASHSTATEC004424

**Message**

| | |
|---|---|
| **From:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent:** | 11/5/2019 8:28:15 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov]; Hart, Robert L [HartRL@state.gov]; Khawam, Joseph N [KhawamJN@state.gov]; Minarich, Christine M [MinarichCM@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov] |
| **CC:** | Miller, Michael F [Millermf@state.gov] |
| **Subject:** | FW: For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition |
| **Attachments:** | 2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; 2019-11-5 11.54am CLEAN BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

<div style="background:black"> </div>

Please forward any and all concerns to me and I will forward to Jasmeet tomorrow p.m.

Thanks.

v/r, Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Tuesday, November 5, 2019 2:07 PM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Asha, Mathew <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>
**Subject:** For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition

Folks –

<div style="background:black"> </div>

<div style="background:black"> </div>

Thank you!

WASHSTATEC004426

Message

| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 11/5/2019 8:41:01 PM |
| **To:** | Abraham, Liz (Federal) [LAbraham@doc.gov]; Robinson, Stuart J. (CIV) [Stuart.J.Robinson@usdoj.gov] |
| **Subject:** | RE: BIS response to additional DOJ comments ready for sending back to OMB |
| **Attachments:** | UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

And attached are the latest from State.  These are the versions DDTC returned to OMB that incorporate edits and comments from DOJ/ATF.  Thanks.

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

SENSITIVE BUT UNCLASSIFIED

**From:** Abraham, Liz (Federal) <LAbraham@doc.gov>
**Sent:** Tuesday, November 5, 2019 1:51 PM
**To:** Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Cc:** Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** FW: BIS response to additional DOJ comments ready for sending back to OMB

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

Message

| | |
|---|---|
| **From:** | Kottmyer, Alice M [KottmyerAM@state.gov] |
| **Sent:** | 11/6/2019 12:32:21 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]; Khawam, Joseph N [KhawamJN@state.gov] |
| **CC:** | Kottmyer, Alice M [KottmyerAM@state.gov] |
| **Subject:** | FW: For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition |
| **Attachments:** | 2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; 2019-11-5 11.54am CLEAN BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

The latest on the ███████████████████████ in case you were curious as to what the rules look like now.

---

SBU - DELIBERATIVE PROCESS

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Tuesday, November 5, 2019 2:07 PM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Asha, Mathew <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>
**Subject:** For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition

Folks –

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Thank you!

Message

| | |
|---|---|
| **From:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent:** | 11/6/2019 1:43:43 PM |
| **To:** | PM-DTCP-RAA [PM-DTCP-RAA@state.gov] |
| **Subject:** | FW: CPA MEDIA MONITORING: 5 November 2019 |

Today's offering.

Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

---

**From:** Marquis, Matthew R <MarquisMR@state.gov>
**Sent:** Tuesday, November 5, 2019 4:46 PM
**To:** Windecker, Melissa A <WindeckerMA@state.gov>; PM-Strategy <PM-Strategy@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; PM-Directors <PM-Directors@state.gov>; PM-Deputy-Directors <PM-Deputy-Directors@state.gov>; PM-POLAD-DL <PM-POLAD-DL@state.gov>; Brown, Stanley L <BrownSL@state.gov>; O'Keefe, Kevin P <OKeefeKP@state.gov>; Miller, Michael F <Millermf@state.gov>; Mak, Daniella <MakD@state.gov>; Dudding, Maria <DuddingM@state.gov>; Nute, Kathryn M <NuteKM3@state.gov>; Phalen, Susan A <PhalenSA@state.gov>; Cooper, R. Clarke <CooperRC@state.gov>; Ryan.M.Tully@nsc.eop.gov; j.tylerwilliamson@gmail.com; george.castellon20@gmail.com; Trowbridge, Laura E. <trowbridge.laura@ou.edu>
**Subject:** CPA MEDIA MONITORING: 5 November 2019



**Alerts for 5 November 2019**

"Trump administration turns its back on child soldiers again", What's particularly egregious about this year's decision is that President Trump has in effect waived all of the CSPA's prohibitions, allowing all relevant military assistance to remain accessible to the seven countries currently budgeted to receive such assistance. The four countries absent from the waiver announcement – Iran, Burma/Myanmar, Sudan, and Syria – do not receive U.S. military assistance, irrespective of their use of child soldiers.

"Washington Should Back, Not Punish, the Lebanese Military", The author of this controversial decision is U.S. President Donald Trump's National Security Council (NSC), which broke with the enduring U.S. bipartisan consensus on Lebanon policy. But as bold as the White House's action is, it should come as no surprise. NSC staffers with responsibility for the Middle East have been aggressively trying to repurpose and downsize Lebanon's military assistance program for more than a year.

"'China is using arms transfers to get its foot in the door'", China is muscling in on the global weapons market and offering low-quality arms in a bid to exploit it and gather intelligence, a United States State Department Official claims.

"AeroVironment lands $6.4 million Raven tactical UAS follow-on contract for Southeast Asian military", The customer was not disclosed, but Thailand and the Philippines already operate the Raven UAS, along with 18 NATO member countries, and other customers in South America and Africa, with 45 military operators in total.

WASHSTATEC004429

"Why Russia Is Arming a Longtime US Ally in Asia", For Duterte, the relationship is one of growing necessity with Western governments increasingly reluctant to sell arms to the Philippines. In 2016, the U.S. blocked the delivery of 26,000 assault rifles to Manila following concerns that the Duterte government's committed extrajudicial killings and other human-rights violations in its effort to root out drug dealers.

"US woos Asia with plan to rival China's 'Belt and Road'", As Ross was talking up U.S. trade and investment in the region, saying of Australia, "We'd be delighted to sell more military aircraft if that suits your department of defense," China opened a lavish import expo Tuesday in Shanghai showcasing its own eagerness to do business.

"Russia Dominated Syria's War. Now It's Sending Mercenaries to Libya.", After four years of behind-the-scenes financial and tactical support for a would-be Libyan strongman, Russia is now pushing far more directly to shape the outcome of Libya's messy civil war. It has introduced advanced Sukhoi jets, coordinated missile strikes, and precision-guided artillery, as well as the snipers — the same playbook that made Moscow a kingmaker in the Syrian civil war.

"Finland warns fighter contenders to keep their budget-busting offers real", Defense officials here have conceded that all five bidders, including Saab (Gripen), Dassault Rafale, the pan-European Eurofighter Typhoon, Boeing (F/A-18 Super Hornet), Lockheed Martin (F-35) have struggled with the project's rigid budgetary ceiling.

"As PMU gets involved in Iraqi protests, rumors about military coup spread", With anti-Iranian sentiments growing, the Iran-backed Popular Mobilization Units (PMU) have gotten involved in the protests, accusing the West and its regional and local allies of being behind the unrest.

"Seahawks For Navy: India, US To Seal Deal", Given the urgency, the Indian Navy is buying 24 MH-60R Seahawks in flyaway condition, and plans to build another 99 in India through the strategic partnership route.

"Yemen Makes Peace With Allied Separatists Amid Effort to End War", Yemen's internationally recognized government and southern separatists struck a peace deal in Saudi Arabia on Tuesday, formally ending a rift that had threatened the allies' efforts to counter Iran-backed rebels in control of the capital.

"Japan to Receive Additional US Supersonic Ballistic Missile Interceptors", The Japan Self Defense Force (JSDF) is slated to receive four additional Standard Missile-3 (SM-3) Block IIA interceptors by December 2022, the U.S. Department of Defense (DoD) announced on November 1.

"Reorienting the Coast Guard: A Case for Patrol Forces Indo-Pacific", Until now, the U.S. Navy has done its best to address partners' non-military needs in maritime security; however, the U.S. Coast Guard brings a mix of authorities to conduct both law enforcement and military functions that is uniquely suitable for these missions.

"UAE announces Middle East defense giant in the wake of Aramco attacks", The effective ruler of the United Arab Emirates (UAE) announced Tuesday that 25 government-owned and independent companies are to combine to create one of the Middle East's biggest defense groups.

"Security Contractor Erik Prince Is in Talks to Acquire Ukraine's Motor Sich", Erik Prince, a private security contractor and informal adviser to President Trump, is in discussions to purchase a Ukrainian aerospace manufacturer that the U.S. is trying to prevent China from buying, according to officials briefed on the matter.

"3D-Printed Firearms and Defense Distributed: A Guide to Understanding "Ghost Guns", Ever since the landmark ruling on 3D-printed firearms, outrage and moral panic have surrounded so-called "ghost guns." Whether you're a proponent of Second Amendment freedoms or just doing opponent research, it's important to have the facts about what a ghost gun is and what it is not.

WASHSTATEC004430

"Exercise Cutlass Express underway", The exercise is one of three African regional "Express" series exercises sponsored by AFRICOM and facilitated by U.S. Naval Forces Africa, designed to train U.S. naval forces while assessing and improving combined maritime law enforcement capacity.

"US Helps Senegal Defend Against Sahel Extremists", Sales said the U.S. has invested up to $10 million a year for various security initiatives over the last several years.

"US reaffirms support for Lebanon Army amid aid freeze questions", The Trump administration has reaffirmed on Monday its support for the Lebanese Army Forces (LAF) and Security services, stressing that "no expenditures or purchases have been delayed", without explaining if the reported freeze on $105 million in aid is still in place.

"Chinese military equipment lack quality, say experts", Cooper continued, warning, "To quote another Latin phrase - caveat emptor! - Buyer, beware. We have seen countries around the world leap at the chance to obtain high-tech, low-cost defensive capabilities, only to see their significant investments crumble and rust in their hands."

"China-led Asian trade bloc pushes ahead as India drops out", Leaders of countries involved in the Regional Comprehensive Economic Partnership said Monday that they had resolved differences, but India said it was out. Seven years after talks began, the signing of a final deal was pushed back to next year.

"China – not Iran – is the real reason US troops will never leave Iraq", Iraq has also purchased billions of dollars' worth of Chinese military equipment over the last few years, including armed unmanned aerial vehicles (UAVs), precision-guided rockets and ballistic missile systems. Iraq supposedly uses Chinese-made drones for counter-terrorism purposes, suggesting yet another area of competition for the United States.

"North Korea criticizes 'hostile policy' as U.S. diplomat visits South Korea", The top U.S. negotiator in defense cost-sharing talks with South Korea, James DeHart, was also set to arrive in Seoul on Tuesday, a South Korean Foreign Ministry official said.

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.6968
e-mail:     *MarquisMR@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

**Message**

| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 11/7/2019 2:29:20 PM |
| **To:** | McKeeby, David I [McKeebyDI@state.gov] |
| **CC:** | Paul, Joshua M [PaulJM@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | RE: Cats I-III Roll-Out Plan/Releases |
| **Attachments:** | RE: For Comment by COB on October 30th -- Revised State and Commerce Export Control Rules for Guns and Ammunition; 1015 Roll-Out Plan and TPs--CATS I-III.docx |

Thanks, Dave.  I don't have any contacts at DHS.  I checked the email that OMB sent out (attached), and it unfortunately looks like DHS has a mailbox set up for clearance of regulations.  I don't know the ATF folks at DOJ, but I'm happy to ask Commerce for a POC if helpful.  The DOJ attorneys preparing for litigation are:  Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>

I also took a quick look at the updated Fact Sheet. ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████.  Please see recommended edits to the Fact Sheet attached.

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

---

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Wednesday, November 6, 2019 3:49 PM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** RE: Cats I-III Roll-Out Plan/Releases

Thanks for flagging, Joe – would also note that neither DOJ nor DHS have weighed in, so we'd welcome additional POCs to spam.

Best,
Dave

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry: ████████████
e-mail:        *mckeebydi@state.gov* |  Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Wednesday, November 6, 2019 3:42 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** FW: Cats I-III Roll-Out Plan/Releases

Dave: ███████████████████████████████████
███████████████████████████████████████████████

Thanks,
Joe

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

**From:** Abraham, Liz (Federal) <LAbraham@doc.gov>
**Sent:** Wednesday, November 6, 2019 1:05 PM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: Cats I-III Roll-Out Plan/Releases

███████████████████████████████████████████████

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

**From:** Abraham, Liz (Federal)
**Sent:** Wednesday, November 6, 2019 8:26 AM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** FW: Cats I-III Roll-Out Plan/Releases

█████████████

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Tuesday, November 5, 2019 2:26 PM
**To:** Hess, Hillary <Hillary.Hess@bis.doc.gov>; 'Williams, Rebekah A. EOP/NSC' <Rebekah.A.Williams@nsc.eop.gov>;

Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; 'Biery, Meghan N. EOP/NSC' <Meghan.N.Biery@nsc.eop.gov>; 'Tapia, Angela M Lt Col USAF OSD OASD LA (USA)' <angela.m.tapia2.mil@mail.mil>; Kluttz, Lawson (Federal) <LKluttz@doc.gov>; 'Bulgrin, Julie K. EOP/NSC' <Julie.K.Bulgrin@nsc.eop.gov>; 'Wilson, John Mark M. EOP/NSC' <John.M.Wilson@nsc.eop.gov>; 'Waterman, Elijah J. EOP/NSC' <Elijah.J.Waterman@nsc.eop.gov>; 'Anthony.J.Ruggiero@nsc.eop.gov' <Anthony.J.Ruggiero@nsc.eop.gov>; 'Ryan.M.Tully@nsc.eop.gov' <Ryan.M.Tully@nsc.eop.gov>; 'Steven.J.Menashi@who.eop.gov' <Steven.J.Menashi@who.eop.gov>; Ashooh, Richard <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; 'Michael.B.Williams@who.eop.gov' <Michael.B.Williams@who.eop.gov>; 'Michael.J.Ellis@who.eop.gov' <Michael.J.Ellis@who.eop.gov>; 'Jennifer.B.Lichter@who.eop.gov' <Jennifer.B.Lichter@who.eop.gov>; Comstock, Earl (Federal) <EComstock@doc.gov>; 'Robert.T.Goad2@who.eop.gov' <Robert.T.Goad2@who.eop.gov>; 'James.S.Baehr@who.eop.gov' <James.S.Baehr@who.eop.gov>; 'Ryan.P.Shellooe@nsc.eop.gov' <Ryan.P.Shellooe@nsc.eop.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; 'Ross.T.Gillfillan@who.eop.gov' <Ross.T.Gillfillan@who.eop.gov>; 'James.D.Mandolfo@who.eop.gov' <James.D.Mandolfo@who.eop.gov>; 'Thomas.F.Leary@nsc.eop.gov' <Thomas.F.Leary@nsc.eop.gov>; Kaldahl, Ryan M <KaldahlRM@state.gov>; 'Jasmeet_K._Seehra@omb.eop.gov' <Jasmeet_K._Seehra@omb.eop.gov>; 'susan.d.daoussi.civ@mail.mil' <susan.d.daoussi.civ@mail.mil>; Abraham, Liz (Federal) <LAbraham@doc.gov>; 'Tony.Coppolino@usdoj.gov' <Tony.Coppolino@usdoj.gov>; 'Joseph.S.Wier@nsc.eop.gov' <Joseph.S.Wier@nsc.eop.gov>; Borman, Matthew <Matthew.Borman@bis.doc.gov>; 'Michele.Dash-pauls@NNSA.Doe.Gov' <Michele.Dash-pauls@NNSA.Doe.Gov>; 'candice.l.rodriguez.civ@mail.mil' <candice.l.rodriguez.civ@mail.mil>; Curtis, Deborah (Federal) <DCurtis@doc.gov>; 'heidi.cohen@treasury.gov' <heidi.cohen@treasury.gov>

**Cc:** Paul, Joshua M <PaulJM@state.gov>; Mooney, Timothy <Timothy.Mooney@bis.doc.gov>
**Subject:** Cats I-III Roll-Out Plan/Releases

Interagency Colleagues:

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry ████████
e-mail:       *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



---

**From:** McKeeby, David I
**Sent:** Monday, October 28, 2019 3:14 PM
**To:** Hillary Hess <Hillary.Hess@bis.doc.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela

M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Hillary:

████████████████████████████████████████████████████████

Best,
Dave
_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry: ████████
e-mail:        *mckeebydi@state.gov* | Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



---

UNCLASSIFIED

**From:** Hillary Hess <Hillary.Hess@bis.doc.gov>
**Sent:** Monday, October 28, 2019 1:48 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov;

candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Dave,

███████████████████████████████████████████████████████████████████

Hillary

---

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov>; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary Hess <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████
██████████████████████████████████████████████████

Best,
Dave

---
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757      | BlackBerry: ██████████
e-mail:     mckeebydi@state.gov |   Web: PM Homepage |Twitter: @StateDeptPM

WASHSTATEC004436

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757        | BlackBerry:
e-mail:     *mckeebydi@state.gov* |  Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

WASHSTATEC004438

Message

| | |
|---|---|
| **From:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent:** | 10/28/2019 3:49:56 PM |
| **To:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Watkins, Pamela K [WatkinsPK@state.gov] |
| **CC:** | Hart, Robert L [HartRL@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject:** | RE: For Comment by COB on October 30th -- Revised State and Commerce Export Control Rules for Guns and Ammunition |

Jasmeet, Yvonne, Pam,

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Very respectfully,

Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Wednesday, October 23, 2019 9:27 AM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>; DHSOGCRegulations <DHSOGCRegulations@hq.dhs.gov>; Heidi.Cohen@treasury.gov; Laychak, Michael R SES DTSA EO (US) <michael.r.laychak.civ@mail.mil>; Daoussi, Susan G CIV DTSA LD (USA) <susan.g.daoussi.civ@mail.mil>; Minnifield, Tracy J CIV DTSA LD (US) <tracy.j.minnifield.civ@mail.mil>; Mueller, Andrew J CIV DTSA LD (USA) <andrew.j.mueller2.civ@mail.mil>; Asha, Mathew <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Hart, Robert L <HartRL@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>; Asha, Mathew <amathew@doc.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Hunt, Alex T. EOP/OMB <Alexander_T._Hunt@omb.eop.gov>; Mancini, Dominic J. EOP/OMB <Dominic_J._Mancini@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Joyce, Shannon M. EOP/OMB <Shannon_M_Joyce@omb.eop.gov>; Theroux, Rich P. EOP/OMB <Richard_P._Theroux@omb.eop.gov>; Turner, Austin F. EOP/OMB <Austin_F_Turner@omb.eop.gov>
**Subject:** For Comment by COB on October 30th -- Revised State and Commerce Export Control Rules for Guns and Ammunition

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

WASHSTATEC004439



WASHSTATEC004440

Message

| | |
|---|---|
| **From:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov] |
| **Sent:** | 11/7/2019 3:08:17 PM |
| **To:** | 'Brown, Kelly (Federal) (kBrown@doc.gov)' [kBrown@doc.gov]; Mathew,Asha (Federal) [amathew@doc.gov]; Robbins, Peter (Federal) [PRobbins@doc.gov]; Hart, Robert L [HartRL@state.gov]; Koelling, RichardW [KoellingRW@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | FW: For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition |
| **Attachments:** | 2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; 2019-11-5 11.54am CLEAN BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

---

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Tuesday, November 5, 2019 2:07 PM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Mathew, Asha (Federal) <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>
**Subject:** For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition

Folks –

Thank you!

Message

| | |
|---|---|
| **From**: | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent**: | 11/7/2019 3:13:29 PM |
| **To**: | Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject**: | RE: HEADS-UP: REUTERS: CATS I-III |

interesting

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Thursday, November 7, 2019 10:12 AM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Subject:** FW: HEADS-UP: REUTERS: CATS I-III
**Importance:** High


Joseph N. Khawam
Office of the Legal Adviser (L/PM)

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, November 7, 2019 10:11 AM
**To:** Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Khawam, Joseph N <KhawamJN@state.gov>; 'Waterman, Elijah J. EOP/NSC' <Elijah.J.Waterman@nsc.eop.gov>; 'Williams, Rebekah A. EOP/NSC' <Rebekah.A.Williams@nsc.eop.gov>; 'Biery, Meghan N. EOP/NSC' <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>
**Cc:** Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>
**Subject:** HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Colleagues:



Best,
Dave

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

| Phone: | 202.647.8757 | | BlackBerry: ███████ |
| e-mail: | _mckeebydi@state.gov_ | | Web: _PM Homepage_ |Twitter: _@StateDeptPM_ |

Stay connected with _State.gov_:



---

**From:** Stone, Mike (Reuters) <███████████████████>
**Sent:** Thursday, November 7, 2019 9:38 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>
**Subject:** you around? got a question.


Mike Stone
Arms Industry Correspondent

Reuters News
Thomson Reuters

Office: ███████
Office: ███████
Mobile
Twitter: MichaelStone
Email ███████████

**Message**

| | |
|---|---|
| **From**: | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent**: | 11/7/2019 3:15:03 PM |
| **To**: | Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject**: | RE: Email to Staff re. Cats 1-3 |

Yes, please do. ███████████████████████████████

SENSITIVE BUT UNCLASSIFIED

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Thursday, November 7, 2019 10:11 AM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Subject:** FW: Email to Staff re. Cats 1-3
**Importance:** High

Please see email below.  I think we need to ███████████████

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Thursday, November 7, 2019 10:09 AM
**To:** Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** Email to Staff re. Cats 1-3
**Importance:** High

Dear all,

Thanks to Dave ████████████████████████████████████████████ So that the Hill hears from us before they read it in the press, H and I believe it would be advisable to send a quick email to our staffers. Unless you object by 11am, I will send the following:

Dear all,

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Josh

_____
**Josh Paul**
Director, Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

☎ Phone:    202.647.7878 | ☽    BlackBerry: ██████████    🖷    Fax: 202.647.4055

✉ e-mail:   **_PaulJM@State.Gov_** | 🖥 Web: **_www.state.gov/t/pm/_**

🐦 http://twitter.com/StateDeptPM

Stay connected with *State.gov*:



SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004445

Message

| | |
|---|---|
| **From:** | Kottmyer, Alice M [KottmyerAM@state.gov] |
| **Sent:** | 11/7/2019 3:15:39 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]; Khawam, Joseph N [KhawamJN@state.gov] |
| **CC:** | Kottmyer, Alice M [KottmyerAM@state.gov] |
| **Subject:** | FW: For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition |
| **Attachments:** | 2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; 2019-11-5 11.54am CLEAN BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

**Importance:**   High

███████████████████████

SENSITIVE BUT UNCLASSIFIED

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Thursday, November 7, 2019 10:08 AM
**To:** 'Brown, Kelly (Federal) (kBrown@doc.gov)' <kBrown@doc.gov>; Asha, Mathew <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** FW: For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Tuesday, November 5, 2019 2:07 PM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Mathew, Asha (Federal) <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>
**Subject:** For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition

Folks –

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Thank you!

WASHSTATEC004447

Message

| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 11/7/2019 3:33:22 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov]; McKeeby, David I [McKeebyDI@state.gov]; Paul, Joshua M [PaulJM@state.gov]; Darrach, Tamara A [DarrachTA@state.gov]; Miller, Michael F [Millermf@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov] |
| **Subject:** | RE: Email to Staff re. Cats 1-3 |

Sounds good.  Thanks.

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

---

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 7, 2019 10:33 AM
**To:** Khawam, Joseph N <KhawamJN@state.gov>; McKeeby, David I <McKeebyDI@state.gov>; Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Email to Staff re. Cats 1-3

Just gave comments over the phone to Dave.  He will revise. Joe- ███████████████

---

SENSITIVE BUT UNCLASSIFIED

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Thursday, November 7, 2019 10:32 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Email to Staff re. Cats 1-3

███████████████████████████████████████████

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

---

SENSITIVE BUT UNCLASSIFIED

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, November 7, 2019 10:29 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Email to Staff re. Cats 1-3
**Importance:** High

Sarah, Joe:

We propose the following holding line. If you tell me you'd ok with it ASAP, we can give it to Reuters:



Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.8757       | BlackBerry: ▮▮▮▮▮▮
e-mail:      _mckeebydi@state.gov_ |   Web:  _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



---

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 7, 2019 10:27 AM
**To:** Khawam, Joseph N <KhawamJN@state.gov>; Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Email to Staff re. Cats 1-3

Josh-

This looks good.

Are we developing press points to share with White House, DOC, DOJ, etc.?

---

SENSITIVE BUT UNCLASSIFIED

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Thursday, November 7, 2019 10:19 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Email to Staff re. Cats 1-3

Ok here.

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Thursday, November 7, 2019 10:17 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Email to Staff re. Cats 1-3

As just discussed via phone with Sarah, ██████████████████████████████

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

Josh

Joe, ok?

Josh

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 7, 2019 10:13 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Miller, Michael F <Millermf@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Email to Staff re. Cats 1-3

███████████████████████████████████████████████████████████████████████

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Thursday, November 7, 2019 10:09 AM
**To:** Darrach, Tamara A <DarrachTA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** Email to Staff re. Cats 1-3
**Importance:** High

Dear all,

Thanks to Dave ███████████████████████████████████████████ So that the Hill
hears from us before they read it in the press, H and I believe it would be advisable to send a quick email to our staffers.
Unless you object by 11am, I will send the following:

███████

Josh

---

**Josh Paul**
Director, Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

☎ Phone:   202.647.7878 | ☏ BlackBerry: ███████ | 🖷 Fax: 202.647.4055
✉ e-mail:   ***PaulJM@State.Gov*** | 🖳 Web: ***www.state.gov/t/pm/***

🐦 http://twitter.com/StateDeptPM

Stay connected with *State.gov*:



SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From**: | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov] |
| **Sent**: | 11/7/2019 3:44:02 PM |
| **To**: | 'Brown, Kelly (Federal) (kBrown@doc.gov)' [kBrown@doc.gov]; Mathew,Asha (Federal) [amathew@doc.gov]; Robbins, Peter (Federal) [PRobbins@doc.gov] |
| **CC**: | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]; Heidema,Sarah J [HeidemaSJ@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Hart, Robert L [HartRL@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov] |
| **Subject**: | More DOJ comments on the Commerce Export Control Rule for Guns and Ammunition |
| **Attachments**: | 2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.COMBINED.11-05-2019.docx |

**Importance**:   High

███████████████████████

**From:** Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>
**Sent:** Thursday, November 7, 2019 10:36 AM
**To:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Cc:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>
**Subject:** Revised State and Commerce Export Control Rules for Guns and Ammunition (RIN 1400-AE30 & 0694-AF47)

November 7, 2019

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████

Thanks,

Eric

Signed ...
--- Eric Taylor Gormsen ---
Office of Legal Policy
Department of Justice
(202) 514-4087
Fax: 353-2374

Message

| | |
|---|---|
| **From:** | Miller, Michael F [Millermf@state.gov] |
| **Sent:** | 11/7/2019 3:59:23 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov]; Khawam, Joseph N [KhawamJN@state.gov]; Paul, Joshua M [PaulJM@state.gov]; Darrach, Tamara A [DarrachTA@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov] |
| **Subject:** | RE: Update: USML Categories 1-3 |

Cool

<div align="center">SENSITIVE BUT UNCLASSIFIED</div>

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 7, 2019 10:52 AM
**To:** Khawam, Joseph N <KhawamJN@state.gov>; Paul, Joshua M <PaulJM@state.gov>; Miller, Michael F <Millermf@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Update: USML Categories 1-3

I'm fine with this

<div align="center">SENSITIVE BUT UNCLASSIFIED</div>

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Thursday, November 7, 2019 10:50 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** RE: Update: USML Categories 1-3

Looks ok to me.  Thanks.

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

<div align="center">SENSITIVE BUT UNCLASSIFIED</div>

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Thursday, November 7, 2019 10:38 AM
**To:** Miller, Michael F <Millermf@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** FW: Update: USML Categories 1-3

Fite response below.

<div align="center">SENSITIVE BUT UNCLASSIFIED</div>

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Thursday, November 7, 2019 10:33 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Rice, Edmund <edmund.rice@mail.house.gov>; Steffens, Jessica
<jessica.steffens@mail.house.gov>; Hunter, Robert <robert_hunter@foreign.senate.gov>
**Cc:** Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** RE: Update: USML Categories 1-3

Cannot wait.  The pending 38(f) will therefore be withdrawn, and a new one will be submitted?

---

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Thursday, November 7, 2019 10:29 AM
**To:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>; Rice, Edmund <edmund.rice@mail.house.gov>;
Steffens, Jessica <jessica.steffens@mail.house.gov>; Hunter, Robert (Foreign Relations)
<Robert_Hunter@foreign.senate.gov>
**Cc:** Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** Update: USML Categories 1-3

Dear all,

I just want to flag for you that the Administration is preparing to re-engage with Congress on updated rules regarding
U.S. Munitions List Categories 1-3, having taken into account feedback, including from Congress, on the earlier rules.  As
soon as these are finalized we will be in touch to schedule a briefing.

Josh

---

**Josh Paul**
Director, Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

☏ Phone:    202.647.7878 | ☉   BlackBerry: ███████ | ☏ Fax: 202.647.4055

✉ e-mail:    *PaulJM@State.Gov* | ▯  Web: *www.state.gov/t/pm/*

🐦 http://twitter.com/StateDeptPM

Stay connected with *State.gov*:



<div align="center">SENSITIVE BUT UNCLASSIFIED</div>

Message

---

**From:** Peckham, Yvonne M [PeckhamYM@state.gov]
**Sent:** 11/7/2019 5:12:32 PM
**To:** Hart, Robert L [HartRL@state.gov]
**CC:** Peckham, Yvonne M [PeckhamYM@state.gov]
**Subject:** RE: State Cats 1-3

Thank you Rob,

I am standing by to upload to ROCIS.

Yvonne

**From:** Hart, Robert L <HartRL@state.gov>
**Sent:** Thursday, November 7, 2019 12:10 PM
**To:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>;
Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Peckham, Yvonne M
<PeckhamYM@state.gov>
**Subject:** RE: State Cats 1-3

Hi Jasmeet,

█████████████████████████████████████████████████████████████

Thanks █████████████████████████████████████

Rob Hart
202.736.9221 | hartrl@state.gov

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Thursday, November 7, 2019 12:00 PM
**To:** Kottmyer, Alice M <KottmyerAM@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W
<KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>
**Subject:** State Cats 1-3

█████████████████████████████████████████████████████████████

Message

| | |
|---|---|
| **From:** | Coppolino, Tony (CIV) [Tony.Coppolino@usdoj.gov] |
| **Sent:** | 11/7/2019 5:31:20 PM |
| **To:** | Matthew Borman [Matthew.Borman@bis.doc.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Timothy Mooney [Timothy.Mooney@bis.doc.gov]; Abraham, Liz [LAbraham@doc.gov]; Curtis, Deborah (Federal) [DCurtis@doc.gov] |
| **CC:** | Miller, Michael F [Millermf@state.gov]; Soskin, Eric (CIV) [Eric.Soskin@usdoj.gov]; Myers, Steven A. (CIV) [Steven.A.Myers@usdoj.gov]; Robinson, Stuart J. (CIV) [Stuart.J.Robinson@usdoj.gov] |
| **Subject:** | RE: HEADS-UP: REUTERS: CATS I-III |
| **Attachments:** | Cats I-III Roll-Out Plan/Releases |



**From:** Matthew Borman <Matthew.Borman@bis.doc.gov>
**Sent:** Thursday, November 07, 2019 10:26 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Coppolino, Tony (CIV) <tcoppoli@CIV.USDOJ.GOV>
**Cc:** Miller, Michael F <Millermf@state.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 07, 2019 10:24 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Tony.Coppolino@usdoj.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>
**Cc:** Miller, Michael F <Millermf@state.gov>
**Subject:** FW: HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Sending this to you as a heads-up.  I've let Jasmeet at OMB know

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, November 7, 2019 10:11 AM
**To:** Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Khawam, Joseph N <KhawamJN@state.gov>; 'Waterman, Elijah J. EOP/NSC' <Elijah.J.Waterman@nsc.eop.gov>; 'Williams, Rebekah A. EOP/NSC' <Rebekah.A.Williams@nsc.eop.gov>; 'Biery, Meghan N. EOP/NSC' <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>
**Cc:** Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>

**Subject:** HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Colleagues:



Best,
Dave
_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.8757        | BlackBerry: ██████████
e-mail:     *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



---

**From:** Stone, Mike (Reuters) <████████████████████>
**Sent:** Thursday, November 7, 2019 9:38 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>
**Subject:** you around? got a question.

Mike Stone
Arms Industry Correspondent

Reuters News
Thomson Reuters

Office: ████████████

WASHSTATEC004457

Office: ███████████
Mobile:██████████
Twitter: <u>MichaelStone</u>
Email: ████████████

WASHSTATEC004458

Message
_____

**From:**  McKeeby, David I [McKeebyDI@state.gov]
**Sent:**  11/5/2019 7:26:07 PM
**To:**  'Hillary Hess' [Hillary.Hess@bis.doc.gov]; 'Williams, Rebekah A.EOP/NSC' [Rebekah.A.Williams@nsc.eop.gov]; Vicent, Grayson [grayson.k.vincent@nsc.eop.gov]; 'Biery, Meghan N. EOP/NSC' [Meghan.N.Biery@nsc.eop.gov]; 'Tapia, Angela M Lt Col USAF OSD OASD LA(USA)' [angela.m.tapia2.mil@mail.mil]; 'LKluttz@doc.gov' [LKluttz@doc.gov]; 'Bulgrin, Julie K. EOP/NSC' [Julie.K.Bulgrin@nsc.eop.gov]; 'Wilson, John Mark M. EOP/NSC' [John.M.Wilson@nsc.eop.gov]; 'Waterman, Elijah J. EOP/NSC' [Elijah.J.Waterman@nsc.eop.gov]; 'Anthony.J.Ruggiero@nsc.eop.gov' [Anthony.J.Ruggiero@nsc.eop.gov]; 'Ryan.M.Tully@nsc.eop.gov' [Ryan.M.Tully@nsc.eop.gov]; 'Steven.J.Menashi@who.eop.gov' [Steven.J.Menashi@who.eop.gov]; 'Richard Ashooh' [Richard.Ashooh@bis.doc.gov]; Miller, Michael F [Millermf@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; 'Michael.B.Williams@who.eop.gov' [Michael.B.Williams@who.eop.gov]; 'Michael.J.Ellis@who.eop.gov' [Michael.J.Ellis@who.eop.gov]; 'Jennifer.B.Lichter@who.eop.gov' [Jennifer.B.Lichter@who.eop.gov]; 'EComstock@doc.gov' [EComstock@doc.gov]; 'Robert.T.Goad2@who.eop.gov' [Robert.T.Goad2@who.eop.gov]; 'James.S.Baehr@who.eop.gov' [James.S.Baehr@who.eop.gov]; 'Ryan.P.Shellooe@nsc.eop.gov' [Ryan.P.Shellooe@nsc.eop.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Kovar, Jeffrey D [KovarJD@state.gov]; 'Ross.T.Gillfillan@who.eop.gov' [Ross.T.Gillfillan@who.eop.gov]; 'James.D.Mandolfo@who.eop.gov' [James.D.Mandolfo@who.eop.gov]; 'Thomas.F.Leary@nsc.eop.gov' [Thomas.F.Leary@nsc.eop.gov]; Kaldahl, Ryan M [KaldahlRM@state.gov]; 'Jasmeet_K._Seehra@omb.eop.gov' [Jasmeet_K._Seehra@omb.eop.gov]; 'susan.g.daoussi.civ@mail.mil' [susan.g.daoussi.civ@mail.mil]; 'Abraham,Liz' [LAbraham@doc.gov]; Coppolino, Tony (CIV) [tcoppoli@CIV.USDOJ.GOV]; 'Joseph.S.Wier@nsc.eop.gov' [Joseph.S.Wier@nsc.eop.gov]; 'Matthew Borman' [Matthew.Borman@bis.doc.gov]; 'Michele.Dash-pauls@NNSA.Doe.Gov' [Michele.Dash-pauls@NNSA.Doe.Gov]; 'candice.l.rodriguez@mail.mil' [candice.l.rodriguez.civ@mail.mil]; 'DCurtis@doc.gov' [DCurtis@doc.gov]; 'heidi.cohen@treasury.gov' [heidi.cohen@treasury.gov]
**CC:**  Paul, Joshua M [PaulJM@state.gov]; 'Timothy Mooney' [Timothy.Mooney@bis.doc.gov]
**Subject:**  Cats I-III Roll-Out Plan/Releases
**Attachments:**  1015 Roll-Out Plan and TPs--CATS I-III.docx

Interagency Colleagues:



Best,
Dave
_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:   202.647.8757   | BlackBerry: ▮▮▮▮▮▮
e-mail:   _mckeebydi@state.gov_ |   Web: _PM Homepage_ |Twitter: _@StateDeptPM_

Stay connected with _State.gov_:



**From:** McKeeby, David I
**Sent:** Monday, October 28, 2019 3:14 PM
**To:** Hillary Hess <Hillary.Hess@bis.doc.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@state.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Hillary:

Thank you ███████████████████████████████████████

Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

| Phone: | 202.647.8757 | | BlackBerry: ████████ |
| e-mail: | *mckeebydi@state.gov* | | Web: *PM Homepage* | Twitter: *@StateDeptPM* |

Stay connected with *State.gov*:



UNCLASSIFIED

**From:** Hillary Hess <Hillary.Hess@bis.doc.gov>
**Sent:** Monday, October 28, 2019 1:48 PM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey

D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases

Dave,

███████████████████████████████████████████████████████████████████████████

Hillary

---

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Monday, October 28, 2019 11:17 AM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; LKluttz@doc.gov; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Steven.J.Menashi@who.eop.gov; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; Abraham, Liz <LAbraham@doc.gov>; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; DCurtis@doc.gov; Hillary Hess <Hillary.Hess@bis.doc.gov>; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: For Interagency Review/Clearance: COB TODAY 10/28: Cats I-III Roll-Out Plan/Releases
**Importance:** High

Interagency Colleagues:

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

Best,
Dave

_____
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry:  ████████
e-mail:        *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



---

SBU - DELIBERATIVE PROCESS

**From:** McKeeby, David I
**Sent:** Thursday, October 24, 2019 1:39 PM
**To:** Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Vicent, Grayson <grayson.k.vincent@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Lebegue, Katherine E CIV DTSA MD (USA) <katherine.e.lebegue.civ@mail.mil>; Tapia, Angela M Lt Col USAF OSD OASD LA (USA) <angela.m.tapia2.mil@mail.mil>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Darrach, Tamara A <DarrachTA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Wilson, John Mark M. EOP/NSC <John.M.Wilson@nsc.eop.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Smagula, Nicholas <SmagulaN@state.gov>; Anthony.J.Ruggiero@nsc.eop.gov; Ryan.M.Tully@nsc.eop.gov; Steven.J.Menashi@who.eop.gov; Julie.K.Bulgrin@nsc.eop.gov; Richard.Ashooh@bis.doc.gov; Miller, Michael F <Millermf@state.gov>; Krueger, Thomas G <KruegerTG@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Michael.B.Williams@who.eop.gov; Michael.J.Ellis@who.eop.gov; Jennifer.B.Lichter@who.eop.gov; EComstock@doc.gov; Robert.T.Goad2@who.eop.gov; James.S.Baehr@who.eop.gov; Ryan.P.Shellooe@nsc.eop.gov; Heidema, Sarah J <HeidemaSJ@state.gov>; Kovar, Jeffrey D <KovarJD@state.gov>; Ross.T.Gillfillan@who.eop.gov; James.D.Mandolfo@who.eop.gov; Thomas.F.Leary@nsc.eop.gov; Kaldahl, Ryan M <KaldahlRM@state.gov>; Jasmeet_K._Seehra@omb.eop.gov; susan.g.daoussi.civ@mail.mil; LAbraham@doc.gov; Tony.Coppolino@usdoj.gov; Joseph.S.Wier@nsc.eop.gov; Matthew.Borman@bis.doc.gov; Michele.Dash-pauls@NNSA.Doe.Gov; candice.l.rodriguez.civ@mail.mil; Foster, John A <FosterJA2@state.gov>; DCurtis@doc.gov; Hillary.Hess@bis.doc.gov; heidi.cohen@treasury.gov
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** For Interagency Review/Clearance: COB MONDAY 10/28: Cats I-III Roll-Out Plan/Releases

Colleagues:

████████████████████████████████████

████████████████████

████████████████████

Best,
Dave

---
**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.8757        | BlackBerry:  ████████

e-mail: *mckeehydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



SBU - DELIBERATIVE PROCESS

WASHSTATEC004463

Message

| | |
|---|---|
| **From:** | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent:** | 11/7/2019 6:10:23 PM |
| **To:** | Peckham, Yvonne M [PeckhamYM@state.gov] |
| **CC:** | Hart, Robert L [HartRL@state.gov]; Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov]; Koelling, Richard W [KoellingRW@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov] |
| **Subject:** | Please upload into ROCIS |
| **Attachments:** | UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

Yvonne,

███████████████████████████████  Thank you!

SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Abraham, Liz (Federal) [LAbraham@doc.gov] |
| **Sent:** | 11/7/2019 6:23:01 PM |
| **To:** | Coppolino, Tony (CIV) [Tony.Coppolino@usdoj.gov]; Borman, Matthew [Matthew.Borman@bis.doc.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Mooney, Timothy [Timothy.Mooney@bis.doc.gov]; Curtis, Deborah (Federal) [DCurtis@doc.gov] |
| **CC:** | Miller, Michael F [Millermf@state.gov]; Soskin, Eric (CIV) [Eric.Soskin@usdoj.gov]; Myers, Steven A. (CIV) [Steven.A.Myers@usdoj.gov]; Robinson, Stuart J. (CIV) [Stuart.J.Robinson@usdoj.gov] |
| **Subject:** | Re: HEADS-UP: REUTERS: CATS I-III |



https://business.financialpost.com/pmn/business-pmn/trump-administration-rule-changes-to-ease-gun-exports-progress-sources

---

**From:** Coppolino, Tony (CIV) <Tony.Coppolino@usdoj.gov>
**Sent:** Thursday, November 7, 2019 12:31 PM
**To:** Borman, Matthew <Matthew.Borman@bis.doc.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Mooney, Timothy <Timothy.Mooney@bis.doc.gov>; Abraham, Liz (Federal) <LAbraham@doc.gov>; Curtis, Deborah (Federal) <DCurtis@doc.gov>
**Cc:** Miller, Michael F <Millermf@state.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>; Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

---

**From:** Matthew Borman <Matthew.Borman@bis.doc.gov>
**Sent:** Thursday, November 07, 2019 10:26 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Coppolino, Tony (CIV) <tcoppoli@CIV.USDOJ.GOV>
**Cc:** Miller, Michael F <Millermf@state.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 07, 2019 10:24 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Tony.Coppolino@usdoj.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>

**Cc:** Miller, Michael F <Millermf@state.gov>
**Subject:** FW: HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Sending this to you as a heads-up.  I've let Jasmeet at OMB know

---

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, November 7, 2019 10:11 AM
**To:** Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Khawam, Joseph N <KhawamJN@state.gov>; 'Waterman, Elijah J. EOP/NSC' <Elijah.J.Waterman@nsc.eop.gov>; 'Williams, Rebekah A. EOP/NSC' <Rebekah.A.Williams@nsc.eop.gov>; 'Biery, Meghan N. EOP/NSC' <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>
**Cc:** Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>
**Subject:** HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Colleagues:



Best,
Dave

---

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.8757          | BlackBerry: ▮▮▮▮▮▮▮
e-mail:    *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**From:** Stone, Mike (Reuters) <███████████████>
**Sent:** Thursday, November 7, 2019 9:38 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>
**Subject:** you around? got a question.


Mike Stone
Arms Industry Correspondent

Reuters News
Thomson Reuters

Office: ███████████
Office: ███████████
Mobile ███████████
Twitter: MichaelStone
Email: ███████████████

Message

---

**From:** Koelling, Richard W [KoellingRW@state.gov]
**Sent:** 11/7/2019 8:11:28 PM
**To:** Khawam, Joseph N [KhawamJN@state.gov]
**Subject:** Fwd: State Cats 1-3
**Attachments:** FW: For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition

Joe, you're not on this string. Can you verify that Rob sent the correct version?

Get Outlook for iOS

---

**From:** Hart, Robert L <HartRL@state.gov>

**Sent:** Thursday, November 7, 2019 12:10 PM

**To:** Seehra, Jasmeet K. EOP/OMB; Kottmyer, Alice M; Koelling, Richard W; Heidema, Sarah J; Peckham, Yvonne M

**Subject:** RE: State Cats 1-3

Hi Jasmeet, ████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

Thanks. ████████████████████████████

Rob Hart

202.736.9221 | hartrl@state.gov

---

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>

**Sent:** Thursday, November 7, 2019 12:00 PM

**To:** Kottmyer, Alice M <KottmyerAM@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>

**Subject:** State Cats 1-3

████████████████████████████████████████████████████

WASHSTATEC004468

Message

| | |
|---|---|
| **From:** | Seehra, Jasmeet K. EOP/OMB [Jasmeet_K._Seehra@omb.eop.gov] |
| **Sent:** | 11/7/2019 3:08:17 PM |
| **To:** | 'Brown, Kelly (Federal) (kBrown@doc.gov)' [kBrown@doc.gov]; Asha,Mathew [amathew@doc.gov]; Robbins, Peter (Federal) [PRobbins@doc.gov]; Hart, Robert L [HartRL@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Kottmyer, Alice M [KottmyerAM@state.gov]; Peckham, Yvonne M [PeckhamYM@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | FW: For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition |
| **Attachments:** | 2019-11-5 11.54am Redline BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; 2019-11-5 11.54am CLEAN BIS resp. to ATF 10-28-19 and Other DOJ 11-4-19 on Commerce Cat I-III firearms rule.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP.docx; UTab 2plus - Revised USML Categories I II and III Full Text - ATF 10-28-19 DTCP clean.docx |

[redacted]

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>
**Sent:** Tuesday, November 5, 2019 2:07 PM
**To:** Hinchman, Robert (OLP) <Robert.Hinchman@usdoj.gov>; Gormsen, Eric T (OLP) <Eric.T.Gormsen@usdoj.gov>; Jones, Kevin R (OLP) <Kevin.R.Jones@usdoj.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Kottmyer, Alice M <KottmyerAM@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>
**Cc:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>; Gardiner, Kyle S. EOP/OMB <Kyle.S.Gardiner@omb.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Mathew, Asha (Federal) <amathew@doc.gov>; Robbins, Peter (Federal) <PRobbins@doc.gov>
**Subject:** For Comment by COB tomorrow, November 6th -- Most current version of State and Commerce export control rules on Guns and Ammunition

Folks –

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Thank you!

WASHSTATEC004469

Message

| | |
|---|---|
| **From:** | Shin, Jae E [ShinJE@state.gov] |
| **Sent:** | 11/7/2019 9:40:16 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | RE: HEADS-UP: REUTERS: CATS I-III |

Thank you, Sarah.

Jae

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 7, 2019 12:58 PM
**To:** Shin, Jae E <ShinJE@state.gov>; Hamilton, Catherine E <HamiltonCE@state.gov>
**Subject:** FW: HEADS-UP: REUTERS: CATS I-III

The below email chain notes that it's about to become public that we are going to move the 1-3 rules back to the Hill...

---

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, November 7, 2019 12:32 PM
**To:** Manning, Kevin (Federal) <KManning@doc.gov>; Kluttz, Lawson (Federal) <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>
**Cc:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Paul, Joshua M <PaulJM@state.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>; Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>; Christ, Katelyn E. EOP/NSC <Katelyn.E.Christ@nsc.eop.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

Commerce Colleagues:



Best,
Dave

_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

| | |
|---|---|
| Phone: | 202.647.8757          | BlackBerry: ██████████ |
| e-mail: | mckeebydi@state.gov |  Web: PM Homepage |Twitter: @StateDeptPM |

WASHSTATEC004470

Stay connected with *State.gov*:



**From:** Manning, Kevin (Federal) <KManning@doc.gov>
**Sent:** Thursday, November 7, 2019 12:07 PM
**To:** Kluttz, Lawson (Federal) <LKluttz@doc.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>
**Cc:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Paul, Joshua M <PaulJM@state.gov>; McKeeby, David I <McKeebyDI@state.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>; Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>; Christ, Katelyn E. EOP/NSC <Katelyn.E.Christ@nsc.eop.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

Thanks Lawson.

████████████████████████████████████████████████

Thank you,
Kevin

Kevin Manning
Department of Commerce | Office of Public Affairs
202.482.6063 (o) | ████████ (m) | kmanning@doc.gov

**From:** Kluttz, Lawson (Federal) <LKluttz@doc.gov>
**Sent:** Thursday, November 7, 2019 12:01 PM
**To:** Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>; Manning, Kevin (Federal) <KManning@doc.gov>
**Cc:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Paul, Joshua M <PaulJM@state.gov>; McKeeby, David I <McKeebyDI@state.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>; Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>; Christ, Katelyn E. EOP/NSC <Katelyn.E.Christ@nsc.eop.gov>
**Subject:** Re: HEADS-UP: REUTERS: CATS I-III

Adding Kevin Manning from DoC OPA ████████████████████████████

Sent from my iPhone

On Nov 7, 2019, at 11:07 AM, Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov> wrote:

> Adding Katelyn as well from NSC Leg.

**From:** Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>
**Sent:** Thursday, November 7, 2019 10:17 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; McKeeby, David I <McKeebyDI@state.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>
**Cc:** Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>; Bulgrin, Julie K. EOP/NSC <Julie.K.Bulgrin@nsc.eop.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

+ NSC Leg.

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Thursday, November 7, 2019 10:14 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>; Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Waterman, Elijah J. EOP/NSC <Elijah.J.Waterman@nsc.eop.gov>; Williams, Rebekah A. EOP/NSC <Rebekah.A.Williams@nsc.eop.gov>; Biery, Meghan N. EOP/NSC <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>
**Cc:** Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

███████████████████████████████████████████████████

Josh

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, November 7, 2019 10:11 AM
**To:** Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Khawam, Joseph N <KhawamJN@state.gov>; 'Waterman, Elijah J. EOP/NSC' <Elijah.J.Waterman@nsc.eop.gov>; 'Williams, Rebekah A. EOP/NSC' <Rebekah.A.Williams@nsc.eop.gov>; 'Biery, Meghan N. EOP/NSC' <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>
**Cc:** Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>
**Subject:** HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Colleagues:

███████████████████████████████████████████████████



Best,
Dave
_____

**David I. McKeeby**
Deputy Director
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

| | | |
|---|---|---|
| Phone: | 202.647.8757 | | BlackBerry: ███████ |
| e-mail: | *mckeebydi@state.gov* | | Web: *PM Homepage* |Twitter: *@StateDeptPM* |

Stay connected with *State.gov*:

<image001.png><image002.png><image003.png><image004.png><image005.png><image006.png><image007.png>

_____

**From:** Stone, Mike (Reuters) <█████████████████>
**Sent:** Thursday, November 7, 2019 9:38 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>
**Subject:** you around? got a question.




Mike Stone
Arms Industry Correspondent

Reuters News
Thomson Reuters

Office: ███████
Office: ███████
Mobile ███████
Twitter: MichaelStone
Email: ███████

Message

| | |
|---|---|
| **From**: | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Sent**: | 11/7/2019 10:01:57 PM |
| **To**: | Koelling, Richard W [KoellingRW@state.gov] |
| **Subject**: | OMB has cleared the Commerce Cat I-III (firearms) rule. |

Rick,

OMB has cleared the Commerce Cat I-III (firearms) rule.

Have you also received word that the State rule is cleared?

Thanks,
Tim

Message

**From**: Timothy Mooney [Timothy.Mooney@bis.doc.gov]
**Sent**: 11/7/2019 10:26:51 PM
**To**: Koelling, Richard W [KoellingRW@state.gov]; Hart, Robert L [HartRL@state.gov]
**CC**: Abraham, Liz [LAbraham@doc.gov]; Steven Clagett [Steven.Clagett@bis.doc.gov]; Jeff Bond [Jeff.Bond@bis.doc.gov]
**Subject**: OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed
**Attachments**: 2019-11-7 OMB cleared Commerce Cat I-III firearms rule with docket number.docx



Message

---

**From:**    Koelling, Richard W [KoellingRW@state.gov]
**Sent:**    11/7/2019 11:34:05 PM
**To:**    Heidema, Sarah J [HeidemaSJ@state.gov]; Khawam, Joseph N [KhawamJN@state.gov]; Timothy Mooney [timothy.mooney@bis.doc.gov]
**Subject:**    Fwd: OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed
**Attachments:**    2019-11-7 OMB cleared Commerce Cat I-III firearms rule with docket number.docx

Tim, adding Sarah and Joe, as I am out until Tuesday. Thank you.

Rick

Get Outlook for iOS

---

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>

**Sent:** Thursday, November 7, 2019 5:26:51 PM

**To:** Koelling, Richard W <KoellingRW@state.gov>; Hart, Robert L <HartRL@state.gov>

**Cc:** Abraham, Liz <LAbraham@doc.gov>; Clagett, Steven <steven.clagett@bis.doc.gov>; Jeff Bond <Jeff.Bond@bis.doc.gov>

**Subject:** OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed



Message
_____

**From:**       Koelling, Richard W [KoellingRW@state.gov]
**Sent:**       11/7/2019 11:39:49 PM
**To:**         Khawam, Joseph N [KhawamJN@state.gov]
**Subject:**    Re: State Cats 1-3


Thank you. Just wanted a sanity check, as I have limited capabilities from home.

Get Outlook for iOS
_____

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Thursday, November 7, 2019 3:27:45 PM
**To:** Koelling, Richard W <KoellingRW@state.gov>
**Subject:** RE: State Cats 1-3

As far as I can tell, it is the correct version.

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

_____

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Thursday, November 7, 2019 3:11 PM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** Fwd: State Cats 1-3

Joe, you're not on this string. Can you verify that Rob sent the correct version?


Get Outlook for iOS
_____

**From:** Hart, Robert L <HartRL@state.gov>

**Sent:** Thursday, November 7, 2019 12:10 PM

**To:** Seehra, Jasmeet K. EOP/OMB; Kottmyer, Alice M; Koelling, Richard W; Heidema, Sarah J; Peckham, Yvonne M

**Subject:** RE: State Cats 1-3


Hi Jasmeet, ███████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████


Thanks. ██████████████████████████████████████


Rob Hart

202.736.9221 | hartrl@state.gov

WASHSTATEC004477

**From:** Seehra, Jasmeet K. EOP/OMB <Jasmeet_K._Seehra@omb.eop.gov>

**Sent:** Thursday, November 7, 2019 12:00 PM

**To:** Kottmyer, Alice M <KottmyerAM@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Peckham, Yvonne M <PeckhamYM@state.gov>

**Subject:** State Cats 1-3

Message

| | |
|---|---|
| **From**: | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Sent**: | 11/8/2019 11:27:56 AM |
| **To**: | Curtis, Deborah (Federal) [DCurtis@doc.gov]; Abraham, Liz [LAbraham@doc.gov]; Coppolino, Tony (CIV) [Tony.Coppolino@usdoj.gov]; Matthew Borman [Matthew.Borman@bis.doc.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Miller, Michael F [Millermf@state.gov]; Soskin,Eric (CIV) [Eric.Soskin@usdoj.gov]; Myers, Steven A. (CIV) [Steven.A.Myers@usdoj.gov]; Robinson, Stuart J. (CIV) [Stuart.J.Robinson@usdoj.gov] |
| **Subject**: | RE: HEADS-UP: REUTERS: CATS I-III |
| **Attachments**: | OIRA EO 12866 page showing OIRA review completed on 11-7-19 for State Cat I-III final rule.PNG; OIRA EO 12866 page showing OIRA review completed on 11-7-19 for Commerce Cat I-III final rule.PNG |

The OIRA EO 12866 tracking site now shows the OIRA review has been completed for the Commerce and State rules.  I included links and attached images from the website.

OIRA website showing OIRA review of Commerce rule completed on 11/7/19:

https://reginfo.gov/public/do/eoReviewSearch

OIRA website showing OIRA review of State rule completed on 11/7/19:

https://reginfo.gov/public/do/eoReviewSearch

Tim

---

**From:** Timothy Mooney
**Sent:** Thursday, November 07, 2019 1:50 PM
**To:** 'Curtis, Deborah (Federal)' <DCurtis@doc.gov>; Abraham, Liz <labraham@doc.gov>; Coppolino, Tony (CIV) <Tony.Coppolino@usdoj.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>; Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

███████████████████████████████████████████████████████████████

Current status at OMB for Commerce rule:

https://reginfo.gov/public/do/eoReviewSearch

Current status at OMB for State rule:

https://reginfo.gov/public/do/eoReviewSearch

Tim

---

**From:** Curtis, Deborah (Federal) <DCurtis@doc.gov>
**Sent:** Thursday, November 07, 2019 1:24 PM
**To:** Abraham, Liz <LAbraham@doc.gov>
**Cc:** Coppolino, Tony (CIV) <Tony.Coppolino@usdoj.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Heidema,

WASHSTATEC004479

Sarah J <HeidemaSJ@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Miller, Michael F <Millermf@state.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>; Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Subject:** Re: HEADS-UP: REUTERS: CATS I-III

███████████

On Nov 7, 2019, at 1:23 PM, Abraham, Liz (Federal) <LAbraham@doc.gov> wrote:

███████████████████████████████

https://business.financialpost.com/pmn/business-pmn/trump-administration-rule-changes-to-ease-gun-exports-progress-sources

**From:** Coppolino, Tony (CIV) <Tony.Coppolino@usdoj.gov>
**Sent:** Thursday, November 7, 2019 12:31 PM
**To:** Borman, Matthew <Matthew.Borman@bis.doc.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Mooney, Timothy <Timothy.Mooney@bis.doc.gov>; Abraham, Liz (Federal) <LAbraham@doc.gov>; Curtis, Deborah (Federal) <DCurtis@doc.gov>
**Cc:** Miller, Michael F <Millermf@state.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>; Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III



**From:** Matthew Borman <Matthew.Borman@bis.doc.gov>
**Sent:** Thursday, November 07, 2019 10:26 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Coppolino, Tony (CIV) <tcoppoli@CIV.USDOJ.GOV>
**Cc:** Miller, Michael F <Millermf@state.gov>
**Subject:** RE: HEADS-UP: REUTERS: CATS I-III

███████████████████

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Thursday, November 07, 2019 10:24 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Tony.Coppolino@usdoj.gov; Matthew Borman <Matthew.Borman@bis.doc.gov>
**Cc:** Miller, Michael F <Millermf@state.gov>

WASHSTATEC004480

**Subject:** FW: HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Sending this to you as a heads-up. ████████████████

---

**From:** McKeeby, David I <McKeebyDI@state.gov>
**Sent:** Thursday, November 7, 2019 10:11 AM
**To:** Miller, Michael F <Millermf@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; 'LKluttz@doc.gov' <LKluttz@doc.gov>; Khawam, Joseph N <KhawamJN@state.gov>; 'Waterman, Elijah J. EOP/NSC' <Elijah.J.Waterman@nsc.eop.gov>; 'Williams, Rebekah A. EOP/NSC' <Rebekah.A.Williams@nsc.eop.gov>; 'Biery, Meghan N. EOP/NSC' <Meghan.N.Biery@nsc.eop.gov>; Hart, Robert L <HartRL@state.gov>
**Cc:** Cooper, R. Clarke <CooperRC@state.gov>; Windecker, Melissa A <WindeckerMA@state.gov>; PM-CPA <PM-CPA@state.gov>
**Subject:** HEADS-UP: REUTERS: CATS I-III
**Importance:** High

Colleagues:



Best,

Dave

---

**David I. McKeeby**

Deputy Director

Office of Congressional & Public Affairs

Bureau of Political-Military Affairs (PM/CPA)

U.S. Department of State

Phone:      202.647.8757      | BlackBerry: ████████

e-mail:     *mckeebydi@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:

<image001.png><image002.png><image003.png><image004.png><image005.png><image006.png><image007.png>

**From:** Stone, Mike (Reuters) <████████████████████>
**Sent:** Thursday, November 7, 2019 9:38 AM
**To:** McKeeby, David I <McKeebyDI@state.gov>
**Subject:** you around? got a question.

Mike Stone
Arms Industry Correspondent

Reuters News
Thomson Reuters

Office:1████████
Office: ████████
Mobile:████
Twitter: MichaelStone
Email: ████████████

Office of Information and Regulatory Affairs (OIRA)
Executive Order Submissions with Review Completed in Last 30 Days
**November 08, 2019**

Department of State

**AGENCY:** STATE                          **RIN:** 1400-AE87                    **Status:** Concluded
**TITLE:** Visas: Documentation Under the Immigration and Nationality Act, as Amended
**STAGE:** Interim Final Rule              **ECONOMICALLY SIGNIFICANT:** No
**RECEIVED DATE:** 08/28/2019             **LEGAL DEADLINE:** None
**COMPLETED:** 10/09/2019                 **COMPLETED ACTION:** Consistent with Change


**AGENCY:** STATE                          **RIN:** 1400-AE30                    **Status:** Concluded
**TITLE:** International Traffic in Arms Regulations: Categories I, II, and III
**STAGE:** Final Rule                      **ECONOMICALLY SIGNIFICANT:** No
**RECEIVED DATE:** 10/23/2019             **LEGAL DEADLINE:** None
**\*\* COMPLETED:** 11/07/2019            **COMPLETED ACTION:** Consistent with Change

WASHSTATEC004483

Office of Information and Regulatory Affairs (OIRA)
Executive Order Submissions with Review Completed in Last 30 Days
November 08, 2019

Department of Commerce

**AGENCY:** DOC-BIS  **RIN:** 0694-AH90  **Status:** Concluded
**TITLE:**Restricting Additional Exports and Reexports to Cuba
**STAGE:** Final Rule  **ECONOMICALLY SIGNIFICANT:** No
**RECEIVED DATE:** 09/26/2019  **LEGAL DEADLINE:** None
**COMPLETED:** 10/11/2019  **COMPLETED ACTION:** Consistent with Change


**AGENCY:** DOC-BIS  **RIN:** 0694-AF47  **Status:** Concluded
**TITLE:**Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML)
**STAGE:** Final Rule  **ECONOMICALLY SIGNIFICANT:** No
**RECEIVED DATE:** 10/23/2019  **LEGAL DEADLINE:** None
** **COMPLETED:** 11/07/2019  **COMPLETED ACTION:** Consistent with Change

WASHSTATEC004484

**Message**

| | |
|---|---|
| **From:** | Hart, Robert L [HartRL@state.gov] |
| **Sent:** | 11/8/2019 2:44:37 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | RE: Notification package |
| **Attachments:** | Tab 0 - USML Cat I-III 38(f) - AM to S v7 - G.docx; Tab 1 - Notification Letters to Congress v7 - G.docx; Tab 2 - Revised USML Categories I, II, and III - G.docx; Tab 3 - Line-inLine-out Comparison of Current USML Categories I, II, and III with these USML Categories as Revised V6 - G.docx; Tab 4 - Revised Department of Commerce Companion Control Text.docx; Tab 5 - Summary of Revisions to USML Categories I II and IIIv6 - G.docx; Tab 6 - Proposed Controls for Major Defense Equipment in Category III -G.docx; Tab 7 - AM to T, Notification to Congress, 20190204 - G.docx; Tab 8 - SOC for Small Group Meeting on Transfer of Categories I-III, 20190918 - G.pdf; Tab 9 - SOC for Small Group Meeting on Transfer of Categories I-III, 20190927 - G.pdf |

Here's what we've got, ███████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████

Rob Hart
202.736.9221 | hartrl@state.gov

---

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 8:38 AM
**To:** Hart, Robert L <HartRL@state.gov>
**Subject:** Notification package

I'm happy to give it a once over to ensure that you have everything you need.

Also, you should have the final commerce rule that Tim sent you yesterday…

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

Message

**From**: Heidema, Sarah J [HeidemaSJ@state.gov]
**Sent**: 11/8/2019 3:14:10 PM
**To**: Hart, Robert L [HartRL@state.gov]
**Subject**: Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL
**Attachments**: Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL.docx

This is the final.  Can you please save it appropriately

WASHSTATEC004486

Message

___

**From:** Hart, Robert L [HartRL@state.gov]
**Sent:** 11/8/2019 3:23:43 PM
**To:** Heidema, Sarah J [HeidemaSJ@state.gov]
**Subject:** RE: Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL
**Attachments:** Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL.docx

Here's the updated version, which is now saved on the share drive.

Rob Hart
202.736.9221 | hartrl@state.gov

___

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 10:19 AM
**To:** Hart, Robert L <HartRL@state.gov>
**Subject:** RE: Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL

Thanks. ██████████ Can you send me the final with these changes?

___

**From:** Hart, Robert L <HartRL@state.gov>
**Sent:** Friday, November 8, 2019 10:18 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** RE: Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL

Will do, two quick things:

██████████████████████████████████████████████████

Rob Hart
202.736.9221 | hartrl@state.gov

___

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 10:14 AM
**To:** Hart, Robert L <HartRL@state.gov>
**Subject:** Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL

This is the final.  Can you please save it appropriately

Message

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 11/8/2019 3:26:48 PM |
| **To**: | Hart, Robert L [HartRL@state.gov] |
| **Subject**: | Tab 1 - Notification Letters to Congress v7 - G |
| **Attachments**: | Tab 1 - Notification Letters to Congress v7 - G.docx |

I inserted a hyphen into "3D" in these to make it consistent with the memo

Message

| | |
|---|---|
| **From:** | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Sent:** | 11/8/2019 3:33:35 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Khawam, Joseph N [KhawamJN@state.gov] |
| **CC:** | Steven Clagett [Steven.Clagett@bis.doc.gov]; Jeff Bond [Jeff.Bond@bis.doc.gov]; Richard Ashooh [Richard.Ashooh@bis.doc.gov]; MatthewBorman [Matthew.Borman@bis.doc.gov]; Abraham, Liz [LAbraham@doc.gov]; Alexander Lopes [Alexander.Lopes@bis.doc.gov]; Karen NiesVogel [Karen.NiesVogel@bis.doc.gov]; Hillary Hess [Hillary.Hess@bis.doc.gov] |
| **Subject:** | RE: OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed (Please keep BIS in the loop as the 38(f) process progresses) |

Thanks, Sarah and welcome back.

That sounds good.

Tim

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 08, 2019 8:36 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** Steven Clagett <Steven.Clagett@bis.doc.gov>; Jeff Bond <Jeff.Bond@bis.doc.gov>; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Abraham, Liz <LAbraham@doc.gov>; Alexander Lopes <Alexander.Lopes@bis.doc.gov>; Karen NiesVogel <Karen.NiesVogel@bis.doc.gov>; Hillary Hess <Hillary.Hess@bis.doc.gov>
**Subject:** RE: OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed (Please keep BIS in the loop as the 38(f) process progresses)

Will do.  We are going to move this package to our Secretary today for approval to start the notification.  His staff is expecting it but this will take a few days to receive.  Once we get it we will let you know.  Also, I anticipate we'll be setting up a joint briefing for Hill staff on this on or about the first day it is delivered.

All the best,

Sarah

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Sent:** Friday, November 8, 2019 6:43 AM
**To:** Koelling, Richard W <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** Clagett, Steven <steven.clagett@bis.doc.gov>; Jeff Bond <Jeff.Bond@bis.doc.gov>; Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Abraham, Liz <LAbraham@doc.gov>; Lopes, Alexander <alexander.lopes@bis.doc.gov>; Karen NiesVogel

WASHSTATEC004489

<Karen.NiesVogel@bis.doc.gov>; Hillary Hess <Hillary.Hess@bis.doc.gov>
**Subject:** RE: OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed (Please keep BIS in the loop as the 38(f) process progresses)



Tim Mooney
Senior Export Policy Analyst
Regulatory Policy Division
Bureau of Industry and Security
Tel. (202) 482-3371

---

**From:** Timothy Mooney
**Sent:** Thursday, November 07, 2019 8:03 PM
**To:** 'Koelling, Richard W' <KoellingRW@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed

---

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Thursday, November 07, 2019 6:34 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** Fwd: OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed

Tim, adding Sarah and Joe, as I am out until Tuesday. Thank you.


Rick


Get Outlook for iOS

---

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>

**Sent:** Thursday, November 7, 2019 5:26:51 PM

**To:** Koelling, Richard W <KoellingRW@state.gov>; Hart, Robert L <HartRL@state.gov>

**Cc:** Abraham, Liz <LAbraham@doc.gov>; Clagett, Steven <steven.clagett@bis.doc.gov>; Jeff Bond

WASHSTATEC004490

<Jeff.Bond@bis.doc.gov>

**Subject:** OMB cleared Commerce Cat I-III (firearms) rule for use with the 38(f) notification as needed



Message

---

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 11/8/2019 3:41:00 PM |
| **To**: | PM-Staffers Mailbox [PM-StaffersMailbox@state.gov] |
| **CC**: | Windecker, Melissa A [WindeckerMA@state.gov]; Miller, Michael F [Millermf@state.gov]; Hart, Robert L [HartRL@state.gov]; Koelling, RichardW [KoellingRW@state.gov]; Khawam, Joseph N [KhawamJN@state.gov]; Paul, Joshua M [PaulJM@state.gov] |
| **Subject**: | 1-3 USML AM for S |
| **Attachments**: | Tab 2 - Revised USML Categories I, II, and III - G.docx; Tab 3 - Line-inLine-out Comparison of Current USML Categories I, II, and III with these USML Categories as Revised V6 - G.docx; Tab 4 - Revised Department of Commerce Companion Control Text.docx; Tab 5 - Summary of Revisions to USML Categories I II and IIIv6 - G.docx; Tab 6 - Proposed Controls for Major Defense Equipment in Category III -G.docx; Tab 7 - AM to T, Notification to Congress, 20190204 - G.docx; Tab 8 - SOC for Small Group Meeting on Transfer of Categories I-III, 20190918 - G.pdf; Tab 9 - SOC for Small Group Meeting on Transfer of Categories I-III, 20190927 - G.pdf; Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL.docx; Tab 1 - Notification Letters to Congress v7 - G.docx |

| | |
|---|---|
| **Importance**: | High |

Attached please find the package for S to approve Congressional notification of changes to USML Categories 1-3.  Please let us know if there are any questions.

Have a good weekend-
Sarah

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

<div align="center">SENSITIVE BUT UNCLASSIFIED</div>

Message

---

**From:**      Paul, Joshua M [PaulJM@state.gov]
**Sent:**      11/8/2019 3:54:42 PM
**To:**        Miller, Michael F [Millermf@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Hart, Robert L
               [HartRL@state.gov]; Windecker, Melissa A [WindeckerMA@state.gov]
**CC:**        PM-CPA [PM-CPA@state.gov]
**Subject:**   H Clearance on Cats 1-3 AM

**Importance:**   High

H A/S wants to personally clear before the package goes up.  Please send to Chloe Barz in H (cc'ing me for tracking purposes).

Josh

_____

**Josh Paul**
Director, Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

☎ Phone:      202.647.7878 | ☏ BlackBerry: ▮▮▮▮▮ | 🖨 Fax: 202.647.4055
✉ e-mail:     *PaulJM@State.Gov* | 🖥 Web: *www.state.gov/t/pm/*

🐦 http://twitter.com/StateDeptPM

Stay connected with *State.gov*:

SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Windecker, Melissa A [WindeckerMA@state.gov] |
| **Sent:** | 11/8/2019 3:58:43 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov]; Paul, Joshua M [PaulJM@state.gov]; PM-Staffers Mailbox [PM-StaffersMailbox@state.gov] |
| **CC:** | Miller, Michael F [Millermf@state.gov]; Hart, Robert L [HartRL@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject:** | RE: 1-3 USML AM for S |

S specials are following up with H specials on the deadline right now.

---

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 10:58 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: 1-3 USML AM for S

Josh-

This needs to be in Everest NLT NOON today.  That gives H one hour

---

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Friday, November 8, 2019 10:57 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: 1-3 USML AM for S
**Importance:** High

Just saw this – please hold (or, at least, don't submit to Everest) while I clear with H A/S.

---

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 10:41 AM
**To:** PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** 1-3 USML AM for S
**Importance:** High

Attached please find the package for S to approve Congressional notification of changes to USML Categories 1-3.  Please let us know if there are any questions.

Have a good weekend-
Sarah

WASHSTATEC004494

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Paul, Joshua M [PaulJM@state.gov] |
| **Sent:** | 11/8/2019 3:58:40 PM |
| **To:** | Heidema, Sarah J [HeidemaSJ@state.gov]; PM-Staffers Mailbox [PM-StaffersMailbox@state.gov] |
| **CC:** | Windecker, Melissa A [WindeckerMA@state.gov]; Miller, Michael F [Millermf@state.gov]; Hart, Robert L [HartRL@state.gov]; Koelling, Richard W [KoellingRW@state.gov]; Khawam, Joseph N [KhawamJN@state.gov] |
| **Subject:** | RE: 1-3 USML AM for S |

Understood. I've informed them we're submitting it at noon.

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 10:58 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: 1-3 USML AM for S

Josh-

This needs to be in Everest NLT NOON today.  That gives H one hour

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Friday, November 8, 2019 10:57 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: 1-3 USML AM for S
**Importance:** High

Just saw this – please hold (or, at least, don't submit to Everest) while I clear with H A/S.

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 10:41 AM
**To:** PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** 1-3 USML AM for S
**Importance:** High

Attached please find the package for S to approve Congressional notification of changes to USML Categories 1-3.  Please let us know if there are any questions.

Have a good weekend-
Sarah

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004497

Message

| | |
|---|---|
| **From:** | Paul, Joshua M [PaulJM@state.gov] |
| **Sent:** | 11/8/2019 4:12:20 PM |
| **To:** | PM-Staffers Mailbox [PM-StaffersMailbox@state.gov] |
| **CC:** | Windecker, Melissa A [WindeckerMA@state.gov]; Miller, Michael F [Millermf@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Hart, Robert L [HartRL@state.gov] |
| **Subject:** | FW: 1-3 USML AM for S Clearance |
| **Attachments:** | Tab 1 - Notification Letters to Congress v7 - G.docx |
| | |
| **Importance:** | High |

FYSA – H just cleared back... to S Specials....

---

SENSITIVE BUT UNCLASSIFIED

**From:** Sanchez, Michael A <SanchezMA4@state.gov>
**Sent:** Friday, November 8, 2019 11:12 AM
**To:** Lederman, Andrew R <LedermanAR@state.gov>; Barz, Chloe O <BarzCO@state.gov>; H_Staffers <H_Staffers@state.gov>; H_SpecialAssistants <H_SpecialAssistants@state.gov>
**Cc:** S_SpecialAssistants <S_SpecialAssistants@state.gov>; Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** RE: 1-3 USML AM for S Clearance

Drew-

A/S Taylor approves the package with edits to the transmittal letters.

Thanks,

Mike

---

SENSITIVE BUT UNCLASSIFIED

**From:** Lederman, Andrew R <LedermanAR@state.gov>
**Sent:** Friday, November 8, 2019 11:06 AM
**To:** Barz, Chloe O <BarzCO@state.gov>; H_Staffers <H_Staffers@state.gov>; H_SpecialAssistants <H_SpecialAssistants@state.gov>
**Cc:** S_SpecialAssistants <S_SpecialAssistants@state.gov>
**Subject:** RE: 1-3 USML AM for S Clearance

Awesome, thanks so much!

**Andrew R. Lederman**
Special Assistant
Office of the Secretary
U.S. Department of State
202-647-6822

---

SENSITIVE BUT UNCLASSIFIED

**From:** Barz, Chloe O <BarzCO@state.gov>
**Sent:** Friday, November 8, 2019 11:06 AM
**To:** Lederman, Andrew R <LedermanAR@state.gov>; H_Staffers <H_Staffers@state.gov>; H_SpecialAssistants <H_SpecialAssistants@state.gov>

**Cc:** S_SpecialAssistants <S_SpecialAssistants@state.gov>
**Subject:** Re: 1-3 USML AM for S Clearance

She is reviewing it as we speak.

Thanks,
Chloe

Get Outlook for iOS

---

**From:** Lederman, Andrew R <LedermanAR@state.gov>
**Sent:** Friday, November 8, 2019 11:04:35 AM
**To:** H_Staffers <H_Staffers@state.gov>; H_SpecialAssistants <H_SpecialAssistants@state.gov>
**Cc:** S_SpecialAssistants <S_SpecialAssistants@state.gov>
**Subject:** 1-3 USML AM for S Clearance

Colleagues,

I understand A/S Taylor would like to clear this paper. Please expedite this as much as possible as we need this paper from PM NLT 1150.

Thanks.

Drew

**Andrew R. Lederman**
Special Assistant
Office of the Secretary
U.S. Department of State
202-647-6822

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004499

Message

---

**From:**        Kovar, Jeffrey D [KovarJD@state.gov]
**Sent:**        11/8/2019 9:36:57 PM
**To:**          Khawam, Joseph N [KhawamJN@state.gov]
**Subject:**     RE: Weekly Report

thanks

---

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Friday, November 8, 2019 4:10 PM
**To:** Kovar, Jeffrey D <KovarJD@state.gov>
**Subject:** RE: Weekly Report

Here's a blurb on Cats I-III:



Joseph N. Khawam
Office of the Legal Adviser (L/PM)

---

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Sent:** Friday, November 8, 2019 8:23 AM
**To:** Legal-PM-DL <Legal-PM-DL@state.gov>
**Subject:** Weekly Report

Good morning — please send me your blurbs by 2pm today.  Thanks.


******
*Jeffrey D. Kovar*
*Assistant Legal Adviser for Political-Military Affairs*
*U.S. Department of State*
*2201 C ST NW*
*Washington DC 20520-6805*
*(o) 202-647-9288*
*(c) 202-253-0976*

WASHSTATEC004500

Message

| | |
|---|---|
| **From:** | Nightingale, Robert L [NightingaleRL@state.gov] |
| **Sent:** | 11/8/2019 9:40:29 PM |
| **To:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Subject:** | RE: L/PM Weekly |

Thanks.

SENSITIVE BUT UNCLASSIFIED

**From:** Kovar, Jeffrey D <KovarJD@state.gov>
**Sent:** Friday, November 8, 2019 4:38 PM
**To:** Nightingale, Robert L <NightingaleRL@state.gov>
**Cc:** Legal-PM-DL <Legal-PM-DL@state.gov>
**Subject:** L/PM Weekly



7. **(SBU) ITAR Categories I – III**:  OMB completed the interagency review of our reg package.  We understand that DDTC has submitted the action memo to S to approve the 30-day Congressional Notification package.  Congressional Notification therefore may occur as early as next week, but the timing depends on if and when S approves to action memo.

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004501

Message
_____

**From:**      Paul, Joshua M [PaulJM@state.gov]
**Sent:**      11/12/2019 2:43:27 PM
**To:**        Darrach, Tamara A [DarrachTA@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Hart, Robert L
               [HartRL@state.gov]
**CC:**        PM-CPA [PM-CPA@state.gov]; Miller, Michael F [Millermf@state.gov]
**Subject:**   Cats 1-3

**Importance:**   High

Hi all,

Per H's update that the Biegun testimony has been pushed, we could be looking at doing this (i.e. briefing and CN) today. Noting various scheduling constraints, and that the H courier run is at 3pm, I wanted to flag that 2pm or 230pm might be the briefing times – assuming Commerce and DTSA can support, and the Hill is available.  If any urgent objections please flag now before the 10am conf call H, Sarah, and I are doing with the interagency leg folks.

Josh

_____

**Josh Paul**
Director, Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

☎ Phone:   202.647.7878 | 🕐  BlackBerry: ███████   🖨  Fax: 202.647.4055
✉ e-mail:   **_PaulJM@State.Gov_** | 🖥  Web: **_www.state.gov/t/pm/_**

🐦 http://twitter.com/StateDeptPM

Stay connected with *State.gov*:



SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 11/12/2019 4:25:51 PM |
| **To**: | Paul, Joshua M [PaulJM@state.gov] |
| **Subject**: | email for the Hill |
| **Attachments**: | Tab 2 - Revised USML Categories I, II, and III - G.docx; Tab 4 - Revised Department of Commerce Companion Control Text.docx |

The new commerce rule language is in in 734.7(c). State control language has not changed since the last notification Copy Matt Borman and Mike Laychak and me/miller. This is cribbed directly from the notification letter that H will send:



Call me if you have any questions.


Thanks!

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent:** | 11/12/2019 4:56:50 PM |
| **To:** | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Subject:** | FW: TPs--CATS I-III |
| **Attachments:** | 1112 Roll-Out Plan and TPs--CATS I-III.docx |

**From:** Strike, Andrew P <StrikeAP@state.gov>
**Sent:** Tuesday, November 12, 2019 11:55 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** TPs--CATS I-III

For your use later today…



WASHSTATEC004504



WASHSTATEC004505



WASHSTATEC004506



WASHSTATEC004507



WASHSTATEC004508



WASHSTATEC004509



WASHSTATEC004510



WASHSTATEC004511



WASHSTATEC004512

Appointment

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 11/12/2019 4:57:22 PM |
| **To**: | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Subject**: | FW: USML CATS I-III for HFAC, SFRC, and Senate Banking |
| **Location**: | Rayburn 2200 |
| **Start**: | 11/12/2019 7:00:00 PM |
| **End**: | 11/12/2019 8:00:00 PM |
| **Show Time As:** | Tentative |

**Recurrence**:   (none)

-----Original Appointment-----
**From:** Darrach, Tamara A <DarrachTA@state.gov>
**Sent:** Tuesday, November 12, 2019 11:47 AM
**To:** Darrach, Tamara A; Heidema, Sarah J; Paul, Joshua M
**Subject:** USML CATS I-III for HFAC, SFRC, and Senate Banking
**When:** Tuesday, November 12, 2019 2:00 PM-3:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Rayburn 2200

Message

**From:** Timothy Mooney [Timothy.Mooney@bis.doc.gov]
**Sent:** 11/12/2019 4:58:36 PM
**To:** Heidema, Sarah J [HeidemaSJ@state.gov]
**Subject:** RE: TPs--CATS I-III

Thanks, Sarah.

Tim

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Tuesday, November 12, 2019 11:57 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** FW: TPs--CATS I-III

**From:** Strike, Andrew P <StrikeAP@state.gov>
**Sent:** Tuesday, November 12, 2019 11:55 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** TPs--CATS I-III

For your use later today…





WASHSTATEC004515



WASHSTATEC004516



WASHSTATEC004517



WASHSTATEC004518



WASHSTATEC004519



WASHSTATEC004520



WASHSTATEC004521



WASHSTATEC004522

Message

| | |
|---|---|
| **From**: | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Sent**: | 11/12/2019 5:06:32 PM |
| **To**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject**: | RE: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer |



**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Tuesday, November 12, 2019 12:05 PM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Subject:** FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer


**From:** Miller, Michael F <Millermf@state.gov>
**Sent:** Tuesday, November 12, 2019 10:14 AM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer


**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Monday, February 25, 2019 7:28 AM
**To:** PM-DAS's <PM-DASs@state.gov>; PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>
**Subject:** FW: Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

We have a hold.

Josh

**From:** Fite, David (Foreign Relations) <David_Fite@foreign.senate.gov>
**Sent:** Friday, February 22, 2019 7:03 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Edmund.Rice@mail.house.gov (edmund.rice@mail.house.gov) <edmund.rice@mail.house.gov>; Silberman, Zach <Zach.Silberman@mail.house.gov>; Callahan, Tom (Foreign Relations) <Tom_Callahan@foreign.senate.gov>
**Subject:** Senator Menendez Letter to SecState on Hold on CAT I-III Transfer

FYI.  In the mail.

WASHSTATEC004523

Message
_____

**From:**         Heidema, Sarah J [HeidemaSJ@state.gov]
**Sent:**         11/12/2019 5:06:18 PM
**To:**           Timothy Mooney [Timothy.Mooney@bis.doc.gov]; Matthew Borman [Matthew.Borman@bis.doc.gov]; Laychak,
                  Michael R SES DTSA EO (US) [michael.r.laychak.civ@mail.mil]; Daoussi, Susan G CIV DTSA LD (USA)
                  [susan.g.daoussi.civ@mail.mil]
**Subject:**      FW: Briefing Read-Ahead
**Attachments:**  RE: Short Notice Request: Availability this afternoon for briefing


FYSA


SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Tuesday, November 12, 2019 12:05 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: Briefing Read-Ahead

See attached.


SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Tuesday, November 12, 2019 12:04 PM
**To:** Paul, Joshua M <PaulJM@state.gov>; Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Khawam, Joseph N <KhawamJN@state.gov>
**Subject:** RE: Briefing Read-Ahead

Tamara-

Can you please send Joe and us a copy of what you sent to the Hill? ███████████████████ THanks


SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Tuesday, November 12, 2019 11:39 AM
**To:** Darrach, Tamara A <DarrachTA@state.gov>
**Cc:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Subject:** RE: Briefing Read-Ahead

Roger.

(+Sarah for info)


SENSITIVE BUT UNCLASSIFIED

**From:** Darrach, Tamara A <DarrachTA@state.gov>
**Sent:** Tuesday, November 12, 2019 11:38 AM
**To:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: Briefing Read-Ahead

WASHSTATEC004524

I'll send it.  Let me coordinate with Commerce.

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Tuesday, November 12, 2019 11:37 AM
**To:** Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** RE: Briefing Read-Ahead

-or you can send it, either way

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M
**Sent:** Tuesday, November 12, 2019 11:37 AM
**To:** Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** Briefing Read-Ahead
**Importance:** High

Hi, please confirm H is OK with PM sending this to the Hill in advance of our briefing, as per previous practice:



SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Darrach, Tamara A [DarrachTA@state.gov] |
| **Sent:** | 11/12/2019 4:58:26 PM |
| **To:** | Steffens, Jessica [jessica.steffens@mail.house.gov]; Fite, David [david_fite@foreign.senate.gov]; Rice, Edmund [edmund.rice@mail.house.gov]; Hunter, Robert [robert_hunter@foreign.senate.gov] |
| **CC:** | Huddleston, Clay (Foreign Relations) [Clay_Huddleston@foreign.senate.gov]; PM-CPA [PM-CPA@state.gov]; Giannangeli, Giulia R [GiannangeliGR@state.gov]; Wolfe, William E [WolfeWE@state.gov]; Paul, Joshua M [PaulJM@state.gov] |
| **Subject:** | RE: Short Notice Request: Availability this afternoon for briefing |
| **Attachments:** | Revised USML Categories I II and III - G (002).docx; Revised Department of Commerce Companion Control Text.docx |

Dear all,

We look forward to briefing you this afternoon. In advance of our briefing, I am attaching copies of the revised rules we will be discussing with you.  I would particularly draw your attention to the Commerce rule, Section 734.7(c), where, in order to address concerns raised by some members of Congress and the public regarding certain access to 3-D printing technology and software for firearms, the Department of Commerce has revised its rule to make certain technology and software capable of producing firearms subject to the EAR when posted on the internet under specified circumstances.

Thanks, and we look forward to answering your questions this afternoon,
Tamara


**Tamara Darrach Goulding**
Senior Congressional Advisor
Bureau of Legislative Affairs
U.S. Department of State
Tel: (202) 647-8763
Email: DarrachTA@state.gov


SENSITIVE BUT UNCLASSIFIED

**Billing Code: 3510-33-P**

**DEPARTMENT OF COMMERCE**

**Bureau of Industry and Security**

**15 CFR Parts 732, 734, 736, 740, 742, 743, 744, 746, 748, 758, 762, 772, and 774**

**[Docket No. 191107-0079]**

**RIN 0694-AF47**

**Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control under the United States Munitions List (USML)**

**AGENCY:** Bureau of Industry and Security, Department of Commerce.

**ACTION:** Final rule.

1. The authority citation for 15 CFR part 732 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

2. Section 732.2 is amended by adding one sentence to the end of the paragraph (b) introductory text to read as follows:

**§ 732.2 Steps regarding scope of the EAR.**

* * * * *

WASHSTATEC004527

(b) *  *  *   The following also remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, as referenced in § 734.7(c)).

*  *  *  *  *

**PART 734 – SCOPE OF THE EXPORT ADMINISTRATION REGULATIONS**

3. The authority citation for 15 CFR part 734 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018).

4. Section 734.7 is amended by:

a. Revising paragraph (a) introductory text; and

b. Adding paragraph (c) to read as follows:

**§ 734.7 Published.**

(a) Except as set forth in paragraph (b) and (c) of this section, unclassified "technology" or "software" is "published," and is thus not "technology" or "software" subject to the EAR, when it has been made available to the public without restrictions upon its further dissemination such as through any of the following:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004528

\* \* \* \* \*

(c) The following remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, that is made available by posting on the internet in an electronic format, such as AMF or G-code, and is ready for insertion into a computer numerically controlled machine tool, additive manufacturing equipment, or any other equipment that makes use of the "software" or "technology" to produce the firearm frame or receiver or complete firearm.

\* \* \* \* \*

**PART 736 – GENERAL PROHIBITIONS**

5. The authority citation for 15 CFR part 736 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 2151 note; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p. 168; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

6. Supplement No. 1 to part 736 is amended by revising paragraph (e)(3) to read as follows:

WASHSTATEC004529

**SUPPLEMENT NO. 1 TO PART 736 - GENERAL ORDERS**

\*  \*  \*  \*  \*

(e) \*  \*  \*

(3) *Prior commodity jurisdiction determinations.* If the U.S. State Department has previously determined that an item is not subject to the jurisdiction of the ITAR and the item was not listed in a then existing "018" series ECCN (for purposes of the "600 series" ECCNs, or the 0x5zz ECCNs) or in a then existing ECCN 9A004.b or related software or technology ECCN (for purposes of the 9x515 ECCNs), then the item is per se not within the scope of a "600 series" ECCN, a 0x5zz ECCN, or a 9x515 ECCN.  If the item was not listed elsewhere on the CCL at the time of such determination (*i.e.*, the item was designated EAR99), the item shall remain designated as EAR99 unless specifically enumerated by BIS or DDTC in an amendment to the CCL or to the USML, respectively.

\*  \*  \*  \*  \*

**PART 740 – LICENSE EXCEPTIONS**

7. The authority citation for 15 CFR part 740 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*;  22 U.S.C. 7201 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228;  E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

8. Section 740.2 is amended by adding paragraphs (a)(21) and (22) to read as follows:

[ PAGE  \\* MERGEFORMAT ]

WASHSTATEC004530

**§ 740.2 Restrictions on all license exceptions.**

(a) *   *   *

(21)  The reexport or transfer (in-country) of firearms classified under ECCNs 0A501 or 0A502 if a part or component that is not "subject to the ITAR," but would otherwise meet the criteria in USML Category I(h)(2)(*i.e.*, parts and components specially designed for conversion of a semiautomatic firearm to a fully automatic firearm) is incorporated into the firearm or is to be reexported or transferred (in-country) with the firearm with "knowledge" the part or component will be subsequently incorporated into the firearm.  (*See* USML Category I(h)(2)).  In such instances, no license exceptions are available except for License Exception GOV (§ 740.11(b)(2)(ii)).

(22) The export, reexport, or transfer (in-country) of any item classified under a 0x5zz ECCN when a party to the transaction is designated on the Department of the Treasury, Office of Foreign Assets Control (OFAC), Specially Designated Nationals and Blocked Persons (SDN) list under the designation [SDNT], pursuant to the Narcotics Trafficking Sanctions Regulations, [ HYPERLINK "http://www.ecfr.gov/cgi-bin/text-idx?SID=5eae22affe2e3675b6deaa3fb796eb7a&tpl=/ecfrbrowse/Title31/31cfr536_main_02.tpl" \t "_blank" ] or under the designation [SDNTK], pursuant to the Foreign Narcotics Kingpin Sanctions Regulations, [ HYPERLINK "http://www.ecfr.gov/cgi-bin/text-idx?SID=5eae22affe2e3675b6deaa3fb796eb7a&tpl=/ecfrbrowse/Title31/31cfr598_main_02.tpl" \t "_blank" ].

WASHSTATEC004531

9. Section 740.9 is amended by:

a.  Adding five sentences at the end of paragraph (a) introductory text;

b.  Adding one sentence at the end of paragraph (b)(1) introductory text;

c.  Adding paragraph (b)(5); and

d.  Redesignating notes 1 through 3 to paragraph (b) as notes 2 through 4 to paragraph (b);

The additions read as follows:

**§ 740.9 Temporary imports, exports, reexports, and transfers (in-country) (TMP).**

\*  \*  \*  \*  \*

(a)  \*   \*   \*  This paragraph (a) does not authorize any export of a commodity controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502 to, or any export of such an item that was imported into the United States from, a country in Country Group D:5 (Supplement No. 1 of this part), or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan.  The only provisions of this paragraph (a) that are eligible for use to export such items are paragraph (a)(5) of this section ("Exhibition and demonstration") and paragraph (a)(6) of this section ("Inspection, test, calibration, and repair").  In addition, this paragraph (a) may not be used to export more than 75 firearms per shipment.  In accordance with the requirements in § 758.1(b)(9) and (g)(4) of the EAR, the exporter or its agent must provide documentation that includes the serial number, make, model, and caliber of each firearm being exported by filing these data elements in an EEI filing in AES.  In accordance with the exclusions in License Exception TMP under paragraph

[ PAGE  \\* MERGEFORMAT ]

WASHSTATEC004532

(b)(5) of this section, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country,, or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model designation (if assigned) controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740);); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under paragraph (b)(5) of this section.

*   *   *   *   *

(b)   *   *   *

(1) *   *   * No provision of paragraph (b) of this section, other than paragraph (b)(3), (4), or (5), may be used to export firearms controlled by ECCN 0A501.a, .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.

*   *   *   *   *

(5) *Exports of firearms and certain shotguns temporarily in the United States.*  This paragraph (b)(5) authorizes the export of no more than 75 end item firearms per shipment controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for a period not exceeding one year, provided that:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004533

(i) The firearms were not shipped from or manufactured in a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR;

(ii) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740; and

(iii) The firearms are not ultimately destined to a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR, or to Russia;

(iv) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License cException TMP (15 CFR 740.9(b)(5))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provided (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration

WASHSTATEC004534

documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States.

(v) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(5)(iv)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(5): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(5), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

\*   \*   \*   \*   \*

10. Section 740.10 is amended by:

a.  Adding one sentence at the end of paragraph (b)(1); and

b.  Adding paragraph (b)(4).

The additions read as follows:

**§ 740.10 Servicing and replacement of parts and equipment (RPL)**

\*   \*   \*   \*   \*

*(b)* \* \* \*

WASHSTATEC004535

(1) *   *   * The export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 temporarily in the United States for servicing and replacement may be exported under paragraphs (b)(2) or (3) of this section only if the additional requirements in paragraph (b)(4) of this section are also met.

*   *   *   *   *

(4) *Exports of firearms and certain shotguns temporarily in the United States for servicing and replacement.* This paragraph (b)(4) authorizes the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for servicing or replacement for a period not exceeding one year or the time it takes to service or replace the commodity, whichever is shorter, provided that the requirements of paragraphs (b)(2) or (3) of this section are met and:

(i) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740;

(ii) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and

WASHSTATEC004536

description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provided (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement.

(iii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(4)(iii)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(4): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(4), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

*   *   *   *   *

11.  Section 740.11 is amended by:

a. Adding two sentences at the end of the introductory text;

WASHSTATEC004537

b. Adding Note 2 to paragraph (b)(2); and

c. Redesignating note 1 to paragraph (c)(1) as note 3 to paragraph (c)(1) and notes 1 and 2 to paragraph (e) as notes 4 and 5 to paragraph (e).

The additions read as follows:

## § 740.11 Governments, international organizations, international inspections, under the Chemical Weapons Convention, and the International Space Station (GOV).

*   *   *   Commodities listed in ECCN 0A501 are eligible only for transactions described in paragraphs (b)(2)(i) and (ii) of this section.  Any item listed in a 0x5zz ECCN for export, reexport, or transfer (in-country) to an E:1 country is eligible only for transactions described in paragraphs (b)(2)(i) and (ii) solely for U.S. Government official use of this section.

*   *   *   *   *

*Note 2 to paragraph (b)(2):  Items controlled for NS, MT, CB, NP, FC, or AT reasons may not be exported, reexported, or transferred (in-country) to, or for the use of military, police, intelligence entities, or other sensitive end users (e.g., contractors or other governmental parties performing functions on behalf of military, police, or intelligence entities) of a government in a Country Group E:1 or E:2 country.*

*   *   *   *   *

12. Section 740.14 is amended by revising paragraph (b)(4) introductory text, revising the heading to paragraph (e), and by adding paragraphs (e)(3) and (4) to read as follows:

WASHSTATEC004538

**§ 740.14 Baggage (BAG).**

\* \* \* \* \*

(b) \* \* \*

(4) *Tools of trade.* Usual and reasonable kinds and quantities of tools, instruments, or equipment and their containers and also technology for use in the trade, occupation, employment, vocation, or hobby of the traveler or members of the household who are traveling or moving. For special provisions regarding firearms and ammunition, see paragraph (e) of this section.  For special provisions regarding encryption commodities and software subject to EI controls, see paragraph (f) of this section.  For a special provision that specifies restrictions regarding the export or reexport of technology under this paragraph (b)(4), see paragraph (g) of this section. For special provisions regarding personal protective equipment under ECCN 1A613.c or .d, see paragraph (h) of this section.

\* \* \* \* \*

(e) *Special provisions for firearms and ammunition.* \* \* \*

(3) A United States citizen or a permanent resident alien leaving the United States may export under this License Exception firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505.a, subject to the following limitations:

(i) Not more than three firearms and 1,000 rounds of ammunition may be taken on any one trip.

WASHSTATEC004539

(ii) "Parts," "components," "accessories," and "attachments" exported pursuant to this paragraph must be of a kind and limited to quantities that are reasonable for the activities described in paragraph (e)(3)(iv) of this section or that are necessary for routine maintenance of the firearms being exported.

(iii) The commodities must be with the person's baggage.

(iv) The commodities must be for the person's exclusive use and not for resale or other transfer of ownership or control.  Accordingly, except as provided in paragraph (e)(4) of this section, firearms, "parts," "components," "accessories," "attachments," and ammunition, may not be exported permanently under this License Exception.  All firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and all unused ammunition controlled under ECCN 0A505.a exported under this License Exception must be returned to the United States.

(v) Travelers leaving the United States temporarily are required to declare the firearms, "parts," "components," "accessories," "attachments," and ammunition being exported under this license exception to a Customs and Border Protection (CBP) officer prior to departure from the United States and present such items to the CBP officer for inspection, confirming that the authority for the export is License Exception BAG and that the exporter is compliant with its terms.

(4) A nonimmigrant alien leaving the United States may export or reexport under this License Exception only such firearms controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505 as he or she brought into the United States under the relevant provisions of Department of Justice regulations at 27 CFR part 478.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004540

* * * * *

## § 740.16 [AMENDED]

13.  Section 740.16 is amended by:

a.  Revising paragraph (a)(2);

b.  Revising paragraphs (b)(2)(iv) and (v); and

c.  Adding paragraph (b)(2)(vi);

The revisions and addition read as follows:

## § 740.16 Additional permissive reexports (APR).

* * * * *

(a)  * * *

(2) The commodities being reexported are not controlled for NP, CB, MT, SI, or CC reasons or described in ECCNs 0A919, 3A001.b.2 or b.3 (except those that are being reexported for use in civil telecommunications applications), 6A002, 6A003; or commodities classified under a 0x5zz ECCN; and

* * * * *

(b)  * * *

(2)  * * *

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004541

(iv) Commodities described in ECCN 0A504 that incorporate an image intensifier tube;

(v) Commodities described in ECCN 6A002; or

(vi) Commodities classified under a 0x5zz ECCN.

*  *  *  *  *

14.  Section 740.20 is amended by revising paragraph (b)(2)(ii) to read as follows:

**§ 740.20 License Exception Strategic Trade Authorization (STA).**

*  *  *  *  *

(b)  *  *  *

(2)  *  *  *

(ii) License Exception STA may not be used for:

(A) Any item controlled in ECCNs 0A501.a, .b, .c, .d, or .e; 0A981; 0A982; 0A983; 0A503; 0E504; 0E982; or

(B) Shotguns with barrel length less than 18 inches controlled in 0A502.

*  *  *  *  *

15. Add Supplement No. 4 to part 740 to read as follows:

**SUPPLEMENT NO. 4 TO PART 740 - ANNEX A FIREARM MODELS**

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004542

(a) *Pistols/revolvers.*

(1) German Model P08 Pistol = SMCR.

(2) IZH 34M, .22 Target pistol.

(3) IZH 35M, .22 caliber Target pistol.

(4) Mauser Model 1896 pistol = SMCR.

(5) MC-57-1 pistol.

(6) MC-1-5 pistol.

(7) Polish Vis Model 35 pistol = SMCR.

(8) Soviet Nagant revolver = SMCR.

(9) TOZ 35, .22 caliber Target pistol.

(10) MTs 440.

(11) MTs 57-1.

(12) MTs 59-1.

(13) MTs 1-5.

(14) TOZ-35M (starter pistol).

(15) Biathlon-7K.

WASHSTATEC004543

(b) *Rifles.*

(1) BARS-4 Bolt Action carbine.

(2) Biathlon target rifle, .22.

(3) British Enfield rifle = SMCR.

(4) CM2, .22 target rifle (also known as SM2, .22).

(5) German model 98K =SMCR.

(6) German model G41 = SMCR.

(7) German model G43=SMCR.

(8) IZH-94.

(9) LOS-7, bolt action.

(10) MC-7-07.

(11) MC-18-3.

(12) MC-19-07.

(13) MC-105-01.

(14) MC-112-02.

(15) MC-113-02.

(16) MC-115-1.

WASHSTATEC004544

(17) MC-125/127.

(18) MC-126.

(19) MC-128.

(20) Saiga.

(21) Soviet Model 38 carbine=SMCR.

(22) Soviet Model 44 carbine-SMCR.

(23) Soviet Model 91/30 rifle=SMCR.

(24) TOZ 18, .22 bolt action.

(25) TOZ 55.

(26) TOZ 78.

(27) Ural Target, .22lr.

(28) VEPR rifle.

(29) Winchester Model 1895, Russian Model rifle=SMCR.

(30) Sever – double barrel.

(31) IZH18MH single barrel break action.

(32) MP-251 over/under rifle.

(33) MP-221 double barrel rifle.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004545

(34) MP-141K.

(35) MP-161K.

(36) MTs 116-1.

(37) MTs 116M.

(38) MTs 112-02.

(39) MTs 115-1.

(40) MTs 113-02.

(41) MTs 105-01.

(42) MTs 105-05.

(43) MTs 7-17 combination gun.

(44) MTs 7-12-07 rifle/shotgun.

(45) MTs 7-07.

(46) MTs 109-12-07 rifle.

(47) MTs 109-07 rifle.

(48) MTs 106-07 combination.

(49) MTs 19-97.

(50) MTs 19-09.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004546

(51) MTs 18-3M.

(52) MTs 125.

(53) MTs 126.

(54) MTs 127.

(55) Berkut-2.

(56) Berkut-2M1.

(57) Berkut-3.

(58) Berkut-2-1.

(59) Berkut-2M2.

(60) Berkut-3-1.

(61) Ots-25.

(62) MTs 20-07.

(63) LOS-7-1.

(64) LOS -7-2.

(65) LOS-9-1.

(66) Sobol (Sable).

(67) Rekord.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004547

(68) Bars-4-1.

(69) Saiga.

(70) Saiga-M.

(71) Saiga 308.

(72) Saiga-308-1.

(73) Saiga 308-2.

(74) Saiga-9.

(75) Korshun.

(76) Ural-5-1.

(77) Ural 6-1.

(78) Ural-6-2.

(79) SM-2.

(80) Biatlon-7-3.

(81) Biatlon-7-4.

(82) Rekord-1.

(83) Rekord-2.

(84) Rekord-CISM.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004548

(85) Rekord-1-308.

(86) Rekord-2-308.

(87) Rekord-1-308-CISM.

(88) VEPR.

(89) VEPR Super.

(90) VEPR Pioneer.

(91) VEPR Safari.

(92) TOZ 109.

(93) KO 44-1.

(94) TOZ 78-01.

(95) KO 44.

(96) TOZ 99.

(97) TOZ 99-01.

(98) TOZ 55-01 Zubr.

(99) TOZ 55-2 Zubr.

(100) TOZ 120 Zubr.

(101) MTs 111.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004549

(102) MTs 109.

(103) TOZ 122.

(104) TOZ 125.

(105) TOZ 28.

(106) TOZ 300.

## PART 742 – CONTROL POLICY—CCL BASED CONTROLS

16.   The authority citation for part 742 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 3201 *et seq.*; 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; Sec. 1503, Pub. L. 108–11, 117 Stat. 559; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018).

17.   Section 742.6 is amended by revising the first and sixth sentences of paragraph (b)(1)(i) and adding a seventh sentence at the end of paragraph (b)(1)(i) to read as follows:

## §742.6 Regional stability.

\*   \*   \*   \*   \*

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004550

(b)  *  *  *

(1)  *  *  *

(i)  Applications for exports and reexports of ECCN 0A501, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items; 9x515 items and "600 series" items and will be reviewed on a case-by-case basis to determine whether the transaction is contrary to the national security or foreign policy interests of the United States, including the foreign policy interest of promoting the observance of human rights throughout the world.  *  *  * When destined to the People's Republic of China or a country listed in Country Group E:1 in Supplement No. 1 to part 740 of the EAR, items classified under ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 or any 9x515 ECCN will be subject to a policy of denial.  In addition, applications for exports and reexports of ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items when there is reason to believe the transaction involves criminal organizations, rebel groups, street gangs, or other similar groups or individuals, that may be disruptive to regional stability, including within individual countries, will be subject to a policy of denial.

*  *  *  *  *

18.  Section 742.7 is amended by revising paragraphs (a)(1) through (4) and (c) to read as follows:

**§ 742.7 Crime control and detection.**

(a)  *  *  *

WASHSTATEC004551

(1)  Crime control and detection instruments and equipment and related "technology" and "software" identified in the appropriate ECCNs on the CCL under CC Column 1 in the Country Chart column of the "License Requirements" section.  A license is required to countries listed in CC Column 1 (Supplement No. 1 to part 738 of the EAR).  Items affected by this requirement are identified on the CCL under the following ECCNs: 0A502, 0A504, 0A505.b, 0A978, 0A979 0E502, 0E505 ("technology" for "development" or for "production" of buckshot shotgun shells controlled under ECCN 0A505.b), 1A984, 1A985, 3A980, 3A981, 3D980, 3E980, 4A003 (for fingerprint computers only), 4A980, 4D001 (for fingerprint computers only), 4D980, 4E001 (for fingerprint computers only), 4E980, 6A002 (for police-model infrared viewers only), 6E001 (for police-model infrared viewers only), 6E002 (for police-model infrared viewers only), and 9A980.

(2)  Shotguns with a barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 2 in the Country Chart column of the "License Requirements" section regardless of end user to countries listed in CC Column 2 (Supplement No. 1 to part 738 of the EAR).

(3)  Shotguns with barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 3 in the Country Chart column of the "License Requirements" section only if for sale or resale to police or law enforcement entities in countries listed in CC Column 3 (Supplement No. 1 to part 738 of the EAR).

(4)  Certain crime control items require a license to all destinations, except Canada. These items are identified under ECCNs 0A982, 0A503, and 0E982.  Controls for these items appear in

WASHSTATEC004552

each ECCN; a column specific to these controls does not appear in the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

(c)  *Contract sanctity*.  Contract sanctity date: August 22, 2000.  Contract sanctity applies only to items controlled under ECCNs 0A982, 0A503, and 0E982 destined for countries not listed in CC Column 1 of the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

19.  Section 742.17 is amended by:

a. Revising the first sentence of paragraph (a); and

b. Revising paragraph (f) to read as follows:

## § 742.17  Exports of firearms to OAS member countries.

(a)  *License requirements*. BIS maintains a licensing system for the export of firearms and related items to all OAS member countries.  *   *   *

*   *   *   *   *

(f) *Items/Commodities*.   Items requiring a license under this section are ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), and 0A505 (except 0A505.d).  (See Supplement No. 1 to part 774 of the EAR).

*   *   *   *   *

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004553

**§ 742.19 [AMENDED]**

20. Section 742.19(a)(1) is amended by:

a. Removing "0A986" and adding in its place "0A505.c"; and

b. Removing "0B986" and adding in its place "0B505.c".

**PART 743 – SPECIAL REPORTING AND NOTIFICATION**

21. The authority citation for 15 CFR part 743 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*;  50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783;  E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; 78 FR 16129; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

22. Section 743.4 is amended by:

a. Adding four sentences to the end of paragraph (a);

b. By redesignating Note to paragraph (a) as Note 1 to paragraph (a);

c. Revising paragraph (b);

d. Adding paragraphs (c)(1)(i) and (c)(2)(i);

e. By redesignating Note to paragraph (e)(1)(ii) as Note 2 to paragraph (e)(1)(ii);

e. Revising paragraph (h); and

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004554

f. Adding paragraph (i) to read as follows:

## § 743.4 Conventional arms reporting.

(a) *   *   *   This section does not require reports when the exporter uses the alternative submission method described under paragraph (h) of this section.   The alternative submission method under paragraph (h) requires the exporter to submit the information required for conventional arms reporting in this section as part of the required EEI submission in AES, pursuant to § 758.1(b)(9).   Because of the requirements in § 758.1(g)(4)(ii) for the firearms that require conventional arms reporting of all conventional arms, the Department of Commerce believes all conventional arms reporting requirements for firearms will be met by using the alternative submission method.   The Department of Commerce leaves standard method for submitting reports in place in case any additional items are moved from the USML to the CCL, that may require conventional arms reporting.

*Note 1 to paragraph (a):* *   *   *

(b) *Requirements.*   You must submit one electronic copy of each report required under the provisions of this section, or submit this information using the alternative submission method specified in paragraph (h) of this section, and maintain accurate supporting records (see § 762.2(b) of the EAR) for all exports of items specified in paragraph (c) of this section for the following:

(c) *   *   *

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004555

(1) *  *  *

    (i) ECCN 0A501.a and .b.

*  *  *  *  *

(2) *  *  *

    (i) ECCN 0A501.a and .b.

*  *  *  *  *

(h) *Alternative submission method*.  This paragraph (h) describes an alternative submission method for meeting the conventional arms reporting requirements of this section.  The alternative submission method requires the exporter, when filing the required EEI submission in AES, pursuant to § 758.1(b)(9), to include the six character ECCN classification (*i.e.*, 0A501.a or 0A501.b) as the first text to appear in the Commodity description block.  If the exporter properly includes this information in the EEI filing in AES, the Department of Commerce will be able to obtain that export information directly from AES to meet the U.S. Government's commitments to the Wassenaar Arrangement and United Nations for conventional arms reporting.  An exporter that complies with the requirements in § 758.1(g)(4)(ii) does not have to submit separate annual and semi-annual reports to the Department of Commerce pursuant to this section.

(i) *Contacts.* General information concerning the Wassenaar Arrangement and reporting obligations thereof is available from the Office of National Security and Technology Transfer Controls, Tel.: (202) 482-0092, Fax: (202) 482-4094.  Information concerning the reporting requirements for items identified in paragraphs (c)(1) and (2) of this section is available from the

WASHSTATEC004556

Office of Nonproliferation and Treaty Compliance (NPTC), Tel.: (202) 482-4188, Fax: (202) 482-4145.

## PART 744 – CONTROL POLICY: END-USER AND END-USE BASED

23.  The authority citation for 15 CFR part 744 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4582; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 22 U.S.C. 3201 et seq.; 42 U.S.C. 2139a; 22 U.S.C. 7201 et seq.; 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of September 19, 2018, 83 FR 47799 (September 20, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of January 16, 2019, 84 FR 127 (January 18, 2019).

## § 744.9 [AMENDED]

24.  Section 744.9 is amended by removing "0A987" from paragraphs (a)(1) and (b) and adding in its place "0A504".

## PART 746 – EMBARGOES AND OTHER SPECIAL CONTROLS

25.  The authority citation for 15 CFR part 746 is revised to read as follows:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004557

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 287c; Sec 1503, Pub. L. 108-11, 117 Stat. 559; 22 U.S.C. 6004; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 12854, 58 FR 36587, 3 CFR, 1993 Comp., p. 614; E.O. 12918, 59 FR 28205, 3 CFR, 1994 Comp., p. 899; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p 168; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Presidential Determination 2007-7, 72 FR 1899, 3 CFR, 2006 Comp., p. 325; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

## § 746.3 [AMENDED]

26.  Section 746.3 is amended by removing "0A986" from paragraph (b)(2) and adding in its place "0A505.c".

## § 746.7 [AMENDED]

27.  Section 746.7 is amended in paragraph (a)(1) by:

a. Adding "0A503," immediately before "0A980"; and

b. Removing "0A985,".

## PART 748 – APPLICATIONS (CLASSIFICATION, ADVISORY, AND LICENSE) AND DOCUMENTATION

28.  The authority citation for 15 CFR part 748 is revised to read as follows:

WASHSTATEC004558

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

29.  Section 748.12 is amended by:

a. Revising the heading;

b. Adding introductory text;

c. Revising paragraphs (a) introductory text and (a)(1);

d. Redesignating the note to paragraph (c)(8) as note 1 to paragraph (c)(8); and

e. Adding paragraph (e).

The revisions and additions read as follows.

**§ 748.12 Firearms import certificate or import permit.**

License applications for certain firearms and related commodities require support documents in accordance with this section.  For destinations that are members of the Organization of American States (OAS), an FC Import Certificate or equivalent official document is required in accordance with paragraphs (a) through (d) of this section.  For other destinations that require a firearms import or permit, the firearms import certificate or permit is required in accordance with paragraph (e) of this section.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004559

(a) *Requirement to obtain document for OAS member states.* Unless an exception in § 748.9(c) applies, an FC Import Certificate is required for license applications for firearms and related commodities, regardless of value, that are destined for member countries of the OAS.  This requirement is consistent with the OAS Model Regulations described in § 742.17 of the EAR.

(1)  *Items subject to requirement.* Firearms and related commodities are those commodities controlled for "FC Column 1" reasons under ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), or 0A505 (except 0A505.d).

*   *   *   *   *

(e)  *Requirement to obtain an import certificate or permit for other than OAS member states.*  If the country to which firearms, parts, components, accessories, and attachments controlled under ECCN 0A501, or ammunition controlled under ECCN 0A505, are being exported or reexported requires that a government-issued certificate or permit be obtained prior to importing the commodity, the exporter or reexporter must obtain and retain on file the original or a copy of that certificate or permit before applying for an export or reexport license unless:

(1)  A license is not required for the export or reexport; or

(2)  The exporter is required to obtain an import or end-user certificate or other equivalent official document pursuant to paragraphs (a) thorough (d) of this section and has, in fact, complied with that requirement.

(3)(i) The number or other identifying information of the import certificate or permit must be stated on the license application.

WASHSTATEC004560

(ii) If the country to which the commodities are being exported does not require an import certificate or permit for firearms imports, that fact must be noted on any license application for ECCN 0A501 or 0A505 commodities.

*Note 2 to paragraph (e).*  *Obtaining a BIS Statement by Ultimate Consignee and Purchaser pursuant to § 748.11 of the EAR does not exempt the exporter or reexporter from the requirement to obtain a certification pursuant to paragraph (a) of this section because that statement is not issued by a government.*

30. Supplement No. 2 to part 748 (Unique Application and Submission Requirements) is amended by adding paragraph (z) to read as follows:

## SUPPLEMENT NO. 2 TO PART 748 - UNIQUE APPLICATION AND SUBMISSION REQUIREMENTS

\*   \*   \*   \*   \*

(z) *Exports of firearms and certain shotguns temporarily in the United States.*

(1) *Certification.*  If you are submitting a license application for the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that will be temporarily in the United States, *e.g.*, for servicing and repair or for intransit shipments, you must include the following certification in Block 24:

The firearms in this license application will not be shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or

WASHSTATEC004561

Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740.  I and the parties to this transaction will comply with the requirements specified in paragraph (z)(2)(i) and (ii) of Supplement No. 2 to part 748.

(2) *Requirements*.  Each approved license for commodities described under paragraph (z) must comply with the requirements specified in paragraphs (z)(2)(i) and (ii) of this supplement.

(i) When the firearms enter the U.S. as a temporary import, the temporary importer or its agent must:

(A) Provide the following statement to U.S. Customs and Border Protection: "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(B) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address, and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

WASHSTATEC004562

(ii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (z)(2)(i)(B) of this supplement to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (z): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (z), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

## PART 758 – EXPORT CLEARANCE REQUIREMENTS

31.  The authority citation for part 758 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

32.  Section 758.1 is amended by:

a. Revising paragraphs (b)(7) (8), and adding paragraph (b)(9);

b. Revising paragraph (c)(1);

c. Adding Note 1 to paragraph (c)(1);

c. Adding paragraph (g)(4); and

WASHSTATEC004563

d. Redesignating Note to paragraph (h)(1) as Note 3 to paragraph (h)(1); to read as follows:

## § 758.1 The Electronic Export Enforcement (EEI) filing to the Automated Export System (AES).

*   *   *   *   *

(b)  *   *   *

(7) For all items exported under authorization Validated End-User (VEU);

(8) For all exports of tangible items subject to the EAR where parties to the transaction, as described in § 748.5(d) through (f) of the EAR, are listed on the Unverified List (Supplement No. 6 to part 744 of the EAR), regardless of value or destination; or

(9) For all exports, except for exports authorized under License Exception BAG, as set forth in §740.14 of the EAR, of items controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada.

(c) *   *   *

(1) License Exception Baggage (BAG), as set forth in §740.14 of the EAR. See 15 CFR 30.37(x) of the FTR;

*Note 1 to paragraph (c)(1): See the export clearance requirements for exports of firearms controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18*

[ PAGE  \* MERGEFORMAT ]

*inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505,*

*authorized under License Exception BAG, as set forth in §740.14 of the EAR.*

\* \* \* \* \*

(g) \* \* \*

(4) *Exports of Firearms and Related Items.*  This paragraph (g)(4) includes two separate requirements under paragraph (g)(4)(i) and (ii) of this section that are used to better identify exports of certain end item firearms under the EAR.  Paragraph (g)(4)(i) is limited to certain EAR authorizations.  Paragraph (g)(4)(ii) applies to all EAR authorizations that require EEI filing in AES.

(i) *Identifying end item firearms by manufacturer, model, caliber, and serial number in the EEI filing in AES.*  For any export authorized under License Exception TMP or a BIS license authorizing a temporary export of items controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other required data for the associated EEI filing, you must report the manufacturer, model, caliber, and serial number of the exported items.  The requirements of this paragraph also apply to any other export authorized under a BIS license that includes a condition or proviso on the license requiring the submission of this information specified in paragraph (g) of this section when the EEI is filed in AES.

(ii) *Identifying end item firearms by "items" level classification or other control descriptor in the EEI filing in AES.*  For any export of items controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other

WASHSTATEC004565

required data for the associated EEI filing, you must include the six character ECCN

classification (*i.e.*, 0A501.a, or 0A501.b), or for shotguns controlled under 0A502 the phrase

"0A501 barrel length less than 18 inches" as the first text to appear in the Commodity

description block in the EEI filing in AES.  (*See* § 743.4(h) for the use of this information for

conventional arms reporting).

      *Note 2 to paragraph (g)(4):* *If a commodity described in paragraph (g)(4) is exported*

*under License Exception TMP under § 740.9(a)(6) for inspection, test, calibration, or repair is*

*not consumed or destroyed in the normal course of authorized temporary use abroad, the*

*commodity must be disposed of or retained in one of the ways specified in § 740.9(a)(14)(i), (ii),*

*or (iii).  For example, if a commodity described in paragraph (g)(4) was destroyed while being*

*repaired after being exported under § 740.9(a)(6), the commodity described in paragraph (g)(4)*

*would not be required to be returned.  If the entity doing the repair returned a replacement of the*

*commodity to the exporter from the United States, the import would not require an EAR*

*authorization.  The entity that exported the commodity described in paragraph (g)(4) and the*

*entity that received the commodity would need to document this as part of their recordkeeping*

*related to this export and subsequent import to the United States.*

\*   \*   \*   \*   \*

    33.  Add § 758.10 to read as follows:

**§ 758.10  Entry clearance requirements for temporary imports.**

(a) *Scope*.  This section specifies the temporary import entry clearance requirements for firearms

"subject to the EAR" that are on the United States Munitions Import List (USMIL, 27 CFR

[ PAGE  \\* MERGEFORMAT ]

WASHSTATEC004566

447.21), except for firearms "subject to the EAR" that are temporarily brought into the United States by nonimmigrant aliens under the provisions of Department of Justice regulations at 27 CFR part 478 (*See* § 740.14(e) of License Exception BAG for information on the export of these firearms "subject to the EAR").  These firearms are controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.  Items that are temporarily exported under the EAR must have met the export clearance requirements specified in § 758.1 of the EAR.

(1) An authorization under the EAR is *not* required for the temporary import of "items" that are "subject to the EAR," including for "items" "subject to the EAR" that are on the USMIL. Temporary imports of firearms described in this section must meet the entry clearance requirements specified in paragraph (b) of this section.

 (2) Permanent imports are regulated by the Attorney General under the direction of the Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (see 27 CFR parts 447, 478, 479, and 555).

(b) *EAR procedures for temporary imports and subsequent exports*.  To the satisfaction of U.S. Customs and Border Protection, the temporary importer must comply with the following procedures:

(1) At the time of entry into the U.S. of the temporary import:

        (i) Provide one of the following statements specified in paragraphs (b)(1)(i)(A), (B), or (C) of this section to U.S. Customs and Border Protection:

WASHSTATEC004567

(A) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of License Exception TMP (15 CFR 740.9(b)(5));"

(B) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b));" or

(C) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(ii) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value;

(iii) Provide (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States;

(iv) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

WASHSTATEC004568

*Note 1 to paragraph (b)(1):* *In accordance with the exclusions in License Exception TMP under § 740.9(b)(5) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country; or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under § 740.9(b)(5).*

*Note 2 to paragraph (b)(1):* *In accordance with the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured inin Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR.*

(2) At the time of export, in accordance with the U.S. Customs and Border Protection procedures, the eligible exporter, or an agent acting on the filer's behalf, must as required under § 758.1(b)(9) of the EAR file the export information with CBP by filing EEI in AES, noting the

WASHSTATEC004569

applicable EAR authorization as the authority for the export, and provide, upon request by CBP, the entry document number or a copy of the CBP document under which the "item" subject to the EAR" on the USMIL was temporarily imported. *See* also the additional requirements in § 758.1(g)(4).

34.  Add § 758.11 to read as follows:

**§ 758.11  Export clearance requirements for firearms and related items.**

(a)  *Scope.*  The export clearance requirements of this section apply to all exports of commodities controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada, that are authorized under License Exception BAG, as set forth in §740.14.

(b) *Required form.*  Prior to making any export described in paragraph (a) of this section, the exporter is required to submit a properly completed Department of Homeland Security, CBP Form 4457, (Certificate of Registration for Personal Effects Taken Abroad) (OMB Control Number 1651-0010), to the U.S. Customs and Border Protection (CBP), pursuant to 19 CFR 148.1, and as required by this section of the EAR.

(1) Where to obtain the form?  The CBP Certification of Registration Form 4457 can be found on the following CBP website:

WASHSTATEC004570

https://www.cbp.gov/document/forms/form-4457-certificate-registration-personal-effects-taken-abroad

(2) Required "description of articles" for firearms to be included on the CBP Form 4457.  For all exports of firearms controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, the exporter must provide to CBP the serial number, make, model, and caliber for each firearm being exported by entering this information under the "Description of Articles" field of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad.

(c) *Where to find additional information on the CBP Form 4457*?

*See* the following CBP website page for additional information:

https://help.cbp.gov/app/answers/detail/a_id/323/~/traveling-outside-of-the-u.s.---temporarily-taking-a-firearm%2C-rifle%2C-gun%2C.

(d) *Return of items exported pursuant to this section*.  The exporter when returning with a commodity authorized under License Exception BAG and exported pursuant this section, is required to present a copy of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad) (OMB Control Number 1651-0010), to CBP, pursuant to 19 CFR 148.1, and as required by this section of the EAR.

**PART 762 – RECORDKEEPING**

35.  The authority citation for part 762 is revised to read as follows:

WASHSTATEC004571

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

36.   Section 762.2 is amended by removing "and," at the end of paragraph (a)(10), redesignating paragraph (a)(11) as paragraph (a)(12), and adding a new paragraph (a)(11) to read as follows:

## § 762.2 Records to be retained.

(a)   *   *   *

(11) The serial number, make, model, and caliber for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502 that have been exported.  The "exporter" or any other party to the transaction (*see* § 758.3 of the EAR), that creates or receives such records is a person responsible for retaining this record; and

*   *   *   *   *

37.   Section 762.3 is amended by revising paragraph (a)(5) to read as follows:

## § 762.3 Records exempt from recordkeeping requirements.

(a)   *   *   *

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004572

(5)  Warranty certificate, except for a warranty certificate issued for an address located outside the United States for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502;

*  *  *  *  *

## PART 772 – DEFINITIONS OF TERMS

38.  The authority citation for part 772 is revised to read as follows:

**Authority:**  50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

## § 772.1 – [AMENDED]

39.  In § 772.1, in the definition of "specially designed," Note 1 is amended by removing "0B986" and adding in its place "0B505.c"; and the definition of "complete breech mechanisms" is added as set forth below:

## § 772.1 Definitions of terms as used in the Export Administration Regulations (EAR).

*  *  *  *  *

_Complete breech mechanisms_.  The mechanism for opening and closing the breech of a breech-loading firearm, especially of a heavy-caliber weapon.

*  *  *  *  *

WASHSTATEC004573

**PART 774 - THE COMMERCE CONTROL LIST**

40. The authority citation for 15 CFR part 774 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 10 U.S.C. 7420; 10 U.S.C. 7430(e); 22 U.S.C. 287c, 22 U.S.C. 3201 *et seq.*; 22 U.S.C. 6004; 42 U.S.C. 2139a; 15 U.S.C. 1824a; 50 U.S.C. 4305; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

41.  In Supplement No. 1 to part 774, Category 0, revise Export Control Classification Number (ECCN) 0A018 to read as follows:

**Supplement No. 1 to Part 774 – The Commerce Control List**

*   *   *   *   *

**0A018 Items on the Wassenaar Munitions List (see List of Items Controlled).**

No items currently are in this ECCN.  See ECCN 0A505 for "parts" and "components" for ammunition that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b.

WASHSTATEC004574

42.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A018 and 0A521, entries for ECCNs 0A501, 0A502, 0A503, 0A504, and 0A505 to read as follows:

**0A501 Firearms (except 0A502 shotguns) and related commodities as follows (see List of Items controlled).**

**License Requirements**

*Reason for Control:* NS, RS, FC, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except 0A501.y | NS Column 1 |
| RS applies to entire entry except 0A501.y | RS Column 1 |
| FC applies to entire entry except 0A501.y | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

*License Requirement Note:* In addition to using the Commerce Country Chart to determine license requirements, a license is required for exports and reexports of ECCN 0A501.y.7 firearms to the People's Republic of China.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*  $500 for 0A501.c, .d, and .x.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004575

$500 for 0A501.c, .d, .e, and .x if the ultimate destination is Canada.

*GBS*: N/A

*CIV*: N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in this entry.

**List of Items Controlled**

*Related Controls*: (1) Firearms that are fully automatic, and magazines with a capacity of greater than 50 rounds, are "subject to the ITAR."  (2) See ECCN 0A502 for shotguns and their "parts" and "components" that are subject to the EAR.  Also see ECCN 0A502 for shot-pistols.  (3) See ECCN 0A504 and USML Category XII for controls on optical sighting devices.

*Related Definitions*: N/A

*Items*:

a.      Non-automatic and semi-automatic firearms equal to .50 caliber (12.7 mm) or less.

WASHSTATEC004576

*Note 1 to paragraph 0A501.a: 'Combination pistols' are controlled under ECCN 0A501.a. A 'combination pistol' (a.k.a., a combination gun) has at least one rifled barrel and at least one smoothbore barrel (generally a shotgun style barrel).*

b.     Non-automatic and non-semi-automatic rifles, carbines, revolvers or pistols with a caliber greater than .50 inches (12.7 mm) but less than or equal to .72 inches (18.0 mm).

c.     The following types of "parts" and "components" if "specially designed" for a commodity controlled by paragraph .a or .b of this entry, or USML Category I (unless listed in USML Category I(g) or (h)):  barrels, cylinders, barrel extensions, mounting blocks (trunnions), bolts, bolt carriers, operating rods, gas pistons, trigger housings, triggers, hammers, sears, disconnectors, pistol grips that contain fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors) and buttstocks that contain fire control "parts" or "components."

d.     Detachable magazines with a capacity of greater than 16 rounds "specially designed" for a commodity controlled by paragraph .a or .b of this entry.

*Note 2 to paragraph 0A501.d: Magazines with a capacity of 16 rounds or less are controlled under 0A501.x.*

e.     Receivers (frames) and "complete breech mechanisms," including castings, forgings stampings, or machined items thereof, "specially designed" for a commodity by controlled by paragraph .a or .b of this entry.

f. through w. [Reserved]

WASHSTATEC004577

x.      "Parts" and "components" that are "specially designed" for a commodity classified under paragraphs .a through .c of this entry or the USML and not elsewhere specified on the USML or CCL.

y.      Specific "parts," "components," "accessories" and "attachments" "specially designed" for a commodity subject to control in this ECCN or common to a defense article in USML Category I and not elsewhere specified in the USML or CCL as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor.

y.1.      Stocks or grips, that do not contain any fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors);"

y.2.      Scope mounts or accessory rails;

y.3.      Iron sights;

y.4.      Sling swivels;

y.5.      Butt plates or recoil pads;

y.6.      Bayonets; and

y.7.      Firearms manufactured from 1890 to 1898 and reproductions thereof.

***Technical Note 1 to 0A501:*** *The controls on "parts" and "components" in ECCN 0A501 include those "parts" and "components" that are common to firearms described in ECCN 0A501 and to those firearms "subject to the ITAR."*

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004578

*Note 3 to 0A501:* Antique firearms (i.e., those manufactured before 1890) and reproductions thereof, muzzle loading black powder firearms except those designs based on centerfire weapons of a post 1937 design, BB guns, pellet rifles, paint ball, and all other air rifles are EAR99 commodities.

*Note 4 to 0A501:* Muzzle loading (black powder) firearms with a caliber less than 20 mm that were manufactured later than 1937 that are used for hunting or sporting purposes that were not "specially designed" for military use and are not "subject to the ITAR" nor controlled as shotguns under ECCN 0A502 are EAR99 commodities.

**0A502 Shotguns; shotguns "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes; "complete breech mechanisms;" except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use.**

**License Requirements**

*Reason for Control*:   RS, CC, FC, UN, AT, NS

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to shotguns with a barrel length less than 18 inches (45.72 cm) | NS Column 1 |
| RS applies to shotguns with a barrel | RS Column 1 |

WASHSTATEC004579

| | |
|---|---|
| length less than 18 inches (45.72 cm) | |
| FC applies to entire entry | FC Column 1 |
| CC applies to shotguns with a barrel length less than 24 in. (60.96 cm) and shotgun "components" controlled by this entry regardless of end user | CC Column 1 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm), regardless of end user | CC Column 2 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm) if for sale or resale to police or law enforcement | CC Column 3 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to shotguns with a barrel length less than 18 inches (45.72 cm) | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   $500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes.

   $500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes, "complete breech

WASHSTATEC004580

mechanisms" if the ultimate destination is Canada.

*GBS:*   N/A

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*:  Shotguns that are fully automatic are "subject to the ITAR."

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**Note 1 to 0A502:** *Shotguns made in or before 1898 are considered antique shotguns and designated as EAR99.*

**Technical Note:** *Shot pistols or shotguns that have had the shoulder stock removed and a pistol grip attached are controlled by ECCN 0A502.  Slug guns are also controlled under ECCN 0A502.*

**0A503 Discharge type arms; non-lethal or less-lethal grenades and projectiles, and "specially designed" "parts" and "components" of those projectiles; and devices to administer electric shock, for example, stun guns, shock batons, shock shields, electric cattle prods, immobilization guns and projectiles; except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use; and "specially designed" "parts" and "components," n.e.s.**

**License Requirements**

*Reason for Control:*  CC, UN

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004581

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | A license is required for ALL destinations, except Canada, regardless of end use.  Accordingly, a column specific to this control does not appear on the Commerce Country Chart.  (See part 742 of the EAR for additional information). |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

 *LVS:*  N/A

 *GBS:*  N/A

 *CIV:*  N/A

**List of Items Controlled**

 *Related Controls*: Law enforcement restraint devices that administer an electric shock are controlled under ECCN 0A982.  Electronic devices that monitor and report a person's location to enforce restrictions on movement for law enforcement or penal reasons are controlled under ECCN 3A981.

 *Related Definitions*: N/A

 *Items*: The list of items controlled is contained in the ECCN heading.

WASHSTATEC004582

**0A504 Optical sighting devices for firearms (including shotguns controlled by 0A502); and "components" as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* FC, RS, CC, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| RS applies to paragraph .i | RS Column 1 |
| FC applies to paragraphs .a, .b, .c, .d, .e, .g, and .i of this entry | FC Column 1 |
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See §746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $500 for 0A504.g.

*GBS:* N/A

*CIV:* N/A

**List of Items Controlled**

*Related Controls:* (1) See USML Category XII(c) for sighting devices using second generation image intensifier tubes having luminous sensitivity greater than 350 µA/lm, or third generation or higher image intensifier tubes, that are "subject to the ITAR." (2) See USML Category XII(b) for laser aiming or laser illumination systems "subject to the ITAR." (3) Section 744.9 of the EAR imposes a license requirement on certain commodities described in

WASHSTATEC004583

0A504 if being exported, reexported, or transferred (in-country) for use by a military end-user or for incorporation into an item controlled by ECCN 0A919.

*Related Definitions:* N/A

*Items:*

a.    Telescopic sights.

b.    Holographic sights.

c.    Reflex or "red dot" sights.

d.    Reticle sights.

e.    Other sighting devices that contain optical elements.

f.    Laser aiming devices or laser illuminators ''specially designed'' for use on firearms, and having an operational wavelength exceeding 400 nm but not exceeding 710 nm.

*Note 1 to 0A504.f: 0A504.f does not control laser boresighting devices that must be placed in the bore or chamber to provide a reference for aligning the firearms sights.*

g.    Lenses, other optical elements and adjustment mechanisms for articles in paragraphs .a, .b, .c, .d, .e, or .i.

h.    [Reserved]

i.    Riflescopes that were not "subject to the EAR" as of [INSERT DATE ONE DAY PRIOR TO THE EFFECTIVE DATE OF THE FINAL RULE] and are "specially designed" for use in firearms that are "subject to the ITAR."

WASHSTATEC004584

*Note 2 to paragraph i:*  For purpose of the application of "specially designed" for the riflescopes controlled under 0A504.i, paragraph (a)(1) of the definition of "specially designed" in § 772.1 of the EAR is what is used to determine whether the riflescope is "specially designed."

**0A505  Ammunition as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, CC, FC, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to 0A505.a and .x | NS Column 1 |
| RS applies to 0A505.a and .x | RS Column 1 |
| CC applies to 0A505.b | CC Column 1 |
| FC applies to entire entry except 0A505.d | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to 0A505.a, .d,  and .x | AT Column 1 |
| AT applies to 0A505.c | A license is required for items controlled by paragraph .c of this entry to North Korea for anti-terrorism reasons.  The Commerce Country Chart is not designed to determine AT licensing requirements for this entry.  See §742.19 of the EAR for additional information. |

WASHSTATEC004585

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500 for items in 0A505.x, except $3,000 for items in 0A505.x that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b. (*i.e.*, "Specially designed" components and parts for ammunition, except cartridge cases, powder bags, bullets, jackets, cores, shells, projectiles, boosters, fuses and components, primers, and other detonating devices and ammunition belting and linking machines (all of which are "subject to the ITAR"). (See 22 CFR parts 120 through 130))

*GBS*: N/A

*CIV*: N/A

**Special conditions for STA**

*STA*: Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A505.

**List of Items Controlled**

*Related Controls*: (1) Ammunition for modern heavy weapons such as howitzers, artillery, cannon, mortars and recoilless rifles as well as inherently military ammunition types such as ammunition preassembled into links or belts, caseless ammunition, tracer ammunition, ammunition with a depleted uranium projectile or a projectile with a hardened tip or core and ammunition with an explosive projectile are "subject to the ITAR." (2) Percussion caps, and lead balls and bullets, for use with muzzle-loading firearms are EAR99 items.

*Related Definitions*: N/A

[ PAGE \* MERGEFORMAT ]

WASHSTATEC004586

*Items*:

a.     Ammunition for firearms controlled by ECCN 0A501 or USML Category I and not enumerated in paragraph .b, .c, or .d of this entry or in USML Category III.

b.     Buckshot (No. 4 .24'' diameter and larger) shotgun shells.

c.     Shotgun shells (including less than lethal rounds) that do not contain buckshot; and "specially designed" "parts" and "components" of shotgun shells.

   *Note 1 to 0A505.c:*  *Shotgun shells that contain only chemical irritants are controlled under ECCN 1A984.*

d.     Blank ammunition for firearms controlled by ECCN 0A501 and not enumerated in USML Category III.

e. through w. [Reserved]

x.     "Parts" and "components" that are "specially designed" for a commodity subject to control in this ECCN or a defense article in USML Category III and not elsewhere specified on the USML, the CCL or paragraph .d of this entry.

   *Note 2 to 0A505.x:* *The controls on "parts" and "components" in this entry include Berdan and boxer primers, metallic cartridge cases, and standard metallic projectiles such as full metal jacket, lead core, and copper projectiles.*

WASHSTATEC004587

*Note 3 to 0A505.x:*   The controls on "parts" and "components" in this entry include those "parts" and "components" that are common to ammunition and ordnance described in this entry and to those enumerated in USML Category III.

*Note 4 to 0A505:* Lead shot smaller than No. 4 Buckshot, empty and unprimed shotgun shells, shotgun wads, smokeless gunpowder, 'Dummy rounds' and blank rounds (unless linked or belted), not incorporating a lethal or non-lethal projectile(s) are designated EAR99.  A 'dummy round or drill round' is a round that is completely inert, i.e., contains no primer, propellant, or explosive charge.  It is typically used to check weapon function and for crew training.

43.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A521 and 0A604, an entry for ECCN 0A602 to read as follows:

**0A602  Guns and Armament as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004588

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A602.

**List of Items Controlled**

*Related Controls*: (1) Modern heavy weapons such as howitzers, artillery, cannon, mortars, and recoilless rifles are "subject to the ITAR."  (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.  (3) See ECCN 0A606 for engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or USML Category VII.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004589

*Related Definitions*:  N/A

*Items*:

a.      Guns and armament manufactured between 1890 and 1919.

b.      Military flame throwers with an effective range less than 20 meters.

c. through w.   [Reserved]

x.      "Parts" and "components" that are "specially designed" for a commodity subject to control in paragraphs .a or .b of this ECCN or a defense article in USML Category II and not elsewhere specified on the USML or the CCL.

   *Note 1 to 0A602.x:* Engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or a defense article in USML Category VII are controlled under ECCN 0A606.x.

   *Note 2 to 0A602:*  "Parts," "components," "accessories," and "attachments" specified in USML subcategory II(j) are subject to the controls of that paragraph.

   *Note 3 to 0A602:*  Black powder guns and armament manufactured in or prior to 1890 and replicas thereof designed for use with black powder propellants are designated EAR99.

**Supplement No. 1 to Part 774 – [AMENDED]**

WASHSTATEC004590

44.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0A918, 0A984, 0A985, 0A986, and 0A987.

45.  In Supplement No. 1 to part 774, Category 0, revise ECCN 0A988 to read as follows:

**0A988  Conventional military steel helmets.**

No items currently are in this ECCN.  See ECCN 1A613.y.1 for conventional steel helmets that, immediately prior to July 1, 2014, were classified under 0A988.

46.  In Supplement No. 1 to part 774, Category 0, add, before the entry for ECCN 0B521, entries for ECCNs 0B501 and 0B505 to read as follows:

**0B501 Test, inspection, and production "equipment" and related commodities for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A501 or USML Category I as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*:  NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
|  |  |

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004591

| NS applies to entire entry except equipment for ECCN 0A501.y | NS Column 1 |
|---|---|
| RS applies to entire entry except equipment for ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

> *LVS:* $3000

> *GBS:* N/A

> *CIV:* N/A

**Special conditions for STA**

> *STA:*  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any item in this entry.

**List of Items Controlled**

WASHSTATEC004592

*Related Controls:* N/A

*Related Definitions:* N/A

*Items:*

a.      Small arms chambering machines.

b.      Small arms deep hole drilling machines and drills therefor.

c.      Small arms rifling machines.

d.      Small arms spill boring machines.

e.      Production equipment (including dies, fixtures, and other tooling) "specially designed" for the "production" of the items controlled in 0A501.a through .x. or USML Category I.

**0B505 Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A505 or USML Category III, except equipment for the hand loading of cartridges and shotgun shells, as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to paragraphs .a and .x | NS Column 1 |
| RS applies to paragraphs .a and .x | RS Column 1 |

WASHSTATEC004593

| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
|---|---|
| AT applies to paragraphs .a, .d, and .x | AT Column 1 |
| AT applies to paragraph .c | A license is required for export or reexport of these items to North Korea for anti-terrorism reasons. |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B505.

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

a.      Production equipment (including tooling, templates, jigs, mandrels, molds, dies, fixtures, alignment mechanisms, and test equipment), not enumerated in USML Category III that are "specially designed" for the "production" of commodities controlled by ECCN 0A505.a or .x or USML Category III.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004594

b.     Equipment "specially designed" for the "production" of commodities in ECCN 0A505.b.

c.     Equipment "specially designed" for the "production" of commodities in ECCN 0A505.c.

d.     Equipment "specially designed" for the "production" of commodities in ECCN 0A505.d.

e. through .w    [Reserved]

x.     "Parts" and "components" "specially designed" for a commodity subject to control in paragraph .a of this entry.

47.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0B521 and 0B604, an entry for ECCN 0B602 to read as follows:

**0B602 Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A602 or USML Category II as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004595

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*: Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B602.

**List of Items Controlled**

*Related Controls:* N/A

*Related Definitions:* N/A

*Items:*

a.     The following commodities if "specially designed" for the "development" or "production" of commodities enumerated in ECCN 0A602.a or USML Category II:

WASHSTATEC004596

a.1.    Gun barrel rifling and broaching machines and tools therefor;

a.2.    Gun barrel rifling machines;

a.3.    Gun barrel trepanning machines;

a.4.    Gun boring and turning machines;

a.5.    Gun honing machines of 6 feet (183 cm) stroke or more;

a.6.    Gun jump screw lathes;

a.7.    Gun rifling machines; and

a.8.    Barrel straightening presses.

b.    Jigs and fixtures and other metal-working implements or accessories of the kinds exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

c.    Other tooling and equipment, "specially designed" for the "production" of items in ECCN 0A602 or USML Category II.

d.    Test and evaluation equipment and test models, including diagnostic instrumentation and physical test models, "specially designed" for items in ECCN 0A602 or USML Category II.

**Supplement No. 1 to Part 774 – [AMENDED]**

48. In Supplement No. 1 to part 774, Category 0, remove ECCN 0B986.

WASHSTATEC004597

49. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D001 and 0D521, entries for ECCNs 0D501 and 0D505 to read as follows:

**0D501  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A501 or 0B501.**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | NS Column 1 |
| RS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |

WASHSTATEC004598

| AT applies to entire entry | AT Column 1 |
|---|---|

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

   *CIV*:  N/A

   *TSR*:  N/A

**Special conditions for STA**

   *STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D501.

**List of Items Controlled**

   *Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category I is "subject to the ITAR".

   *Related Definitions*:  N/A

   *Items*: The list of items controlled is contained in this ECCN heading.

**0D505  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A505 or 0B505.**

WASHSTATEC004599

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a .and .x | NS Column 1 |
| RS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a and .x | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to "software" for commodities in ECCN 0A505.a, .d, or .x and equipment in ECCN 0B505.a, .d, or .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004600

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D505.

**List of Items Controlled**

*Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category III is "subject to the ITAR".

*Related Definitions*:  N/A

*Items*: The list of items controlled is contained in this ECCN heading.

50. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D521 and 0D604, an entry for ECCN 0D602 to read as follows:

**0D602  "Software" "specially designed" for the "development," "production," operation or maintenance of commodities controlled by 0A602 or 0B602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004601

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*: N/A

*TSR*: N/A

**Special conditions for STA**

*STA*:   Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0D602.

**List of Items Controlled**

*Related Controls*:  (1) "Software" required for and directly related to articles enumerated in USML Category II is "subject to the ITAR".   (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004602

*Related Definitions*:  N/A

*Items*:   "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by ECCN 0A602 and ECCN 0B602.

51.  In Supplement No. 1 to part 774, Category 0, remove ECCN 0E018.

52.  In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E001 and 0E521, entries for ECCNs 0E501, 0E502, 0E504, and 0E505 to read as follows:

**0E501 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by 0A501 or 0B501 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |

WASHSTATEC004603

| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

   *CIV*:  N/A

   *TSR*:  N/A

**Special conditions for STA**

   *STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any "technology" in ECCN 0E501.

**List of Items Controlled**

   *Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR."

   *Related Definitions*: N/A

   *Items*:

a.   "Technology" "required" for the "development" or "production" of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

WASHSTATEC004604

b.     "Technology" "required" for the operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

**0E502  "Technology" "required" for the "development" or "production" of commodities controlled by 0A502.**

**License Requirements**

*Reason for Control*:  CC, UN

| Controls | Country Chart (See Supp. No. 1 part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

WASHSTATEC004605

*Related Controls*: Technical data required for and directly related to articles enumerated

in USML Category I are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**0E504 ''Technology'' ''required'' for the ''development'' or ''production'' of commodities
controlled by 0A504 that incorporate a focal plane array or image**

**intensifier tube.**

**License Requirements**

*Reason for Control:* RS, UN, AT

| *Controls* | *Country Chart (See Supp. No. 1 part 738)* |
|---|---|
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004606

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**0E505 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A505.**

**License Requirements**

*Reason for Control:* NS, RS, UN, CC, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505; and for "software" for that equipment | NS Column 1 |

WASHSTATEC004607

| | |
|---|---|
| and those commodities in 0D505 | |
| RS applies to entire entry except "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505 and for "software" for those commodities and that equipment in 0D505 | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| CC applies to "technology" for the "development" or "production" of commodities in 0A505.b | CC Column 1 |
| AT applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a, .d, and .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*: N/A

*TSR*: N/A

WASHSTATEC004608

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "technology" in 0E505.

**List of Items Controlled**

*Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category III are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in this ECCN heading.

53.  In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E521 and 0E604, an entry for ECCN 0E602:

**0E602  "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A602 or 0B602, or "software" controlled by 0D602 as follows (see List of Items Controlled).**

WASHSTATEC004609

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0E602.

**List of Items Controlled**

WASHSTATEC004610

*Related Controls*: Technical data directly related to articles enumerated in USML Category II are "subject to the ITAR."

*Related Definitions*: N/A

*Items*: "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A602 or 0B602, or "software" controlled by ECCN 0D602.

**Supplement No. 1 to Part 774 – [AMENDED]**

54. In Supplement No. 1 to part 774, Category 0, remove ECCN 0E918.

55. In Supplement No. 1 to part 774, Category 0, revise ECCN 0E982 to read as follows.

**0E982 "Technology" exclusively for the "development" or "production" of equipment controlled by 0A982 or 0A503.**

**License Requirements**

*Reason for Control:*   CC

WASHSTATEC004611

| *Control(s)* |
|---|
| CC applies to "technology" for items controlled by 0A982 or 0A503.  A license is required for ALL destinations, except Canada, regardless of end use.  Accordingly, a column specific to this control does not appear on the Commerce Country Chart.  (See part 742 of the EAR for additional information.) |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

    *CIV:*   N/A

    *TSR:*   N/A

**List of Items Controlled**

    *Related Controls*: N/A

    *Related Definitions*: N/A

    *Items*:

The list of items controlled is contained in the ECCN heading.

**Supplement No. 1 to Part 774 – [AMENDED]**

    56.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0E984 and 0E987.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004612

57.  In Supplement No. 1 to part 774, Category 1, revise ECCN 1A984 to read as follows:

**1A984   Chemical agents, including tear gas formulation containing 1 percent or less of orthochlorobenzalmalononitrile (CS), or 1 percent or less of chloroacetophenone (CN), except in individual containers with a net weight of 20 grams or less; liquid pepper except when packaged in individual containers with a net weight of 3 ounces (85.05 grams) or less; smoke bombs; non-irritant smoke flares, canisters, grenades and charges; and other pyrotechnic articles (excluding shotgun shells, unless the shotgun shells contain only chemical irritants) having dual military and commercial use, and "parts" and "components" "specially designed" therefor, n.e.s.**

**License Requirements**

*Reason for Control*:   CC

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   N/A

*GBS:*   N/A

[ PAGE   \* MERGEFORMAT ]

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

58.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2B004 to read as follows:

**2B004 Hot "isostatic presses" having all of the characteristics described in the List of Items Controlled, and "specially designed" "components" and "accessories" therefor.**

**License Requirements**

*Reason for Control*:  NS, MT NP, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 2 |
| MT applies to entire entry | MT Column 1 |

[ PAGE  \\* MERGEFORMAT ]

WASHSTATEC004614

| | |
|---|---|
| NP applies to entire entry, except 2B004.b.3 and presses with maximum working pressures below 69 MPa | NP Column 1 |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS*:   N/A

*GBS*:   N/A

*CIV*:   N/A

**List of Items Controlled**

*Related Controls*:  (1) See ECCN 2D001 for software for items controlled under this entry. (2) See ECCNs 2E001 ("development"), 2E002 ("production"), and 2E101 ("use") for technology for items controlled under this entry. (3) For "specially designed" dies, molds and tooling, see ECCNs 0B501, 0B602, 0B606, 1B003, 9B004, and 9B009.  (4) For additional controls on dies, molds and tooling, see ECCNs 1B101.d, 2B104, and 2B204.  (5) Also see ECCNs 2B117 and 2B999.a.

*Related Definitions*: N/A

*Items*:

WASHSTATEC004615

a. A controlled thermal environment within the closed cavity and possessing a chamber cavity with an inside diameter of 406 mm or more; *and*

b. Having any of the following:

b.1. A maximum working pressure exceeding 207 MPa;

b.2. A controlled thermal environment exceeding 1,773 K (1,500 °C); *or*

b.3. A facility for hydrocarbon impregnation and removal of resultant gaseous degradation products.

*Technical Note:*  *The inside chamber dimension is that of the chamber in which both the working temperature and the working pressure are achieved and does not include fixtures. That dimension will be the smaller of either the inside diameter of the pressure chamber or the inside diameter of the insulated furnace chamber, depending on which of the two chambers is located inside the other.*

59.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2B018 to read as follows:

WASHSTATEC004616

**2B018  Equipment on the Wassenaar Arrangement Munitions List.**

No commodities currently are controlled by this entry.  Commodities formerly controlled by paragraphs .a through .d, .m, and .s of this entry are controlled in ECCN 0B606.  Commodities formerly controlled by paragraphs .e through .l of this entry are controlled by ECCN 0B602.  Commodities formerly controlled by paragraphs .o through .r of this entry are controlled by ECCN 0B501.  Commodities formerly controlled by paragraph .n of this entry are controlled in ECCN 0B501 if they are "specially designed" for the "production" of the items controlled in ECCN 0A501.a through .x or USML Category I and controlled in ECCN 0B602 if they are of the kind exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

60.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2D018 to read as follows:

**2D018 "Software" for the "development," "production," or "use" of equipment controlled by 2B018.**

No software is currently controlled under this entry.  See ECCNs 0D501, 0D602, and 0D606 for software formerly controlled under this entry.

61.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E001 to read as follows:

WASHSTATEC004617

**2E001 "Technology" according to the General Technology Note for the "development" of equipment or "software" controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999), or 2D (except 2D983, 2D984, 2D991, 2D992, or 2D994).**

**License Requirements**

*Reason for Control*:  NS, MT, NP, CB, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for items controlled by 2A001, 2B001 to 2B009, 2D001 or 2D002 | NS Column 1 |
| MT applies to "technology"  for items controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, 2B119 to 2B122, 2D001, or 2D101 for MT reasons | MT Column 1 |
| NP applies to "technology" for items controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233, 2D001, | NP Column 1 |

WASHSTATEC004618

| 2D002, 2D101, 2D201, or 2D202 for NP reasons | |
|---|---|
| NP applies to "technology" for items controlled by 2A290, 2A291, or 2D290 for NP reasons | NP Column 2 |
| CB applies to "technology" for equipment controlled by 2B350 to 2B352, valves controlled by 2A226 having the characteristics of those controlled by 2B350.g, and software controlled by 2D351 | CB Column 2 |
| AT applies to entire entry | AT Column 1 |

**Reporting Requirements**

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

[ PAGE \* MERGEFORMAT ]

WASHSTATEC004619

**Special Conditions for STA**

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "development" of "software" specified in the License Exception STA paragraph in the License Exception section of ECCN 2D001 or for the "development" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls*: See also 2E101, 2E201, and 2E301

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

**Note 1 to 2E001:**  *ECCN 2E001 includes "technology" for the integration of probe systems into coordinate measurement machines specified by 2B006.a.*

62.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E002 to read as follows:

WASHSTATEC004620

**2E002 "Technology" according to the General Technology Note for the "production" of equipment controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), or 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999).**

## License Requirements

*Reason for Control*:  NS, MT, NP, CB, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for equipment controlled by 2A001, 2B001 to 2B009 | NS Column 1 |
| MT applies to "technology" for equipment controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, or 2B119 to 2B122 for MT reasons | MT Column 1 |
| NP applies to "technology" for equipment controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233 for NP reasons | NP Column 1 |
| NP applies to "technology" for equipment controlled by 2A290 or 2A291 for NP reasons | NP Column 2 |

WASHSTATEC004621

| | |
|---|---|
| CB applies to "technology" for equipment Controlled by 2B350 to 2B352 and for valves controlled by 2A226 having the characteristics of those controlled by 2B350.g | CB Column 2 |
| AT applies to entire entry | AT Column 1 |

**Reporting Requirements**

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

**Special Conditions for STA**

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "production" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified

WASHSTATEC004622

in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

63. In Supplement No. 1 to part 774, Category 7, revise ECCN 7A611 to read as follows:

**7A611  Military fire control, laser, imaging, and guidance equipment, as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, MT, RS, AT, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738). |
|---|---|
| NS   applies   to   entire   entry   except | NS Column 1 |

[ PAGE   \* MERGEFORMAT ]

| 7A611.y | |
|---------|--------|
| MT applies to commodities in 7A611.a that meet or exceed the parameters in 7A103.b or .c | MT Column 1 |
| RS applies to entire entry except 7A611.y | RS Column 1 |
| AT applies to entire entry | AT Column 1 |
| UN applies to entire entry except 7A611.y | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $1500

*GBS:* N/A

*CIV:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 7A611.

**List of Items Controlled**

*Related Controls*:  (1) Military fire control, laser, imaging, and guidance equipment that are enumerated in USML Category XII, and technical data (including software) directly related thereto, are subject to the ITAR.  (2) See Related Controls in ECCNs 0A504, 2A984, 6A002,

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004624

6A003, 6A004, 6A005, 6A007, 6A008, 6A107, 7A001, 7A002, 7A003, 7A005, 7A101, 7A102, and 7A103.  (3) See ECCN 3A611 and USML Category XI for controls on countermeasure equipment.  (4) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S. origin "600 series" controlled content.

*Related Definitions*: N/A

*Items*:

a. Guidance or navigation systems, not elsewhere specified on the USML, that are "specially designed" for a defense article on the USML or for a 600 series item.

b. to w. [RESERVED]

x. "Parts," "components," "accessories," and "attachments," including accelerometers, gyros, angular rate sensors, gravity meters (gravimeters), and inertial measurement units (IMUs), that are "specially designed" for defense articles controlled by USML Category XII or items controlled by 7A611, and that are NOT:

1. Enumerated or controlled in the USML or elsewhere within ECCN 7A611;

2. Described in ECCNs 6A007, 6A107, 7A001, 7A002, 7A003, 7A101, 7A102, or 7A103; or

3. Elsewhere specified in ECCN 7A611.y or 3A611.y.

y. Specific "parts," "components," "accessories," and "attachments" "specially designed" for a commodity subject to control in this ECCN or a defense article in Category XII and not elsewhere specified on the USML or in the CCL, as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004625

y.1 [RESERVED]

Dated:

**Richard E. Ashooh**

*Assistant Secretary for Export Administration.*

WASHSTATEC004626

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:** Department of State.

**ACTION:** Final rule.

**§ 121.1 The United States Munitions List.**

* * * * *

**Category I—Firearms and Related Articles**

*(a) Firearms using caseless ammunition.

*(b) Fully automatic firearms to .50 caliber (12.7 mm) inclusive.

*(c) Firearms specially designed to integrate fire control, automatic tracking, or automatic firing (*e.g.*, Precision Guided Firearms).

*Note to paragraph (c):* Integration does not include only attaching to the firearm or rail.

*(d) Fully automatic shotguns regardless of gauge.

*(e) Silencers, mufflers, and sound suppressors.

WASHSTATEC004627

(f) [Reserved]

(g) Barrels, receivers (frames), bolts, bolt carriers, slides, or sears specially designed for the articles in paragraphs (a), (b), and (d) of this category.

(h) Parts, components, accessories, and attachments, as follows:

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm;

(3) Parts and components specially designed for defense articles described in paragraphs (c) and (e); or

(4) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data. (*See* § 125.4 of this subchapter

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

for exemptions.)

(j)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

**Category II—Guns and Armament**

(a) Guns and armament greater than .50 caliber (12.7 mm), as follows:

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004629

*(1) Guns, howitzers, artillery, and cannons;

*(2) Mortars;

*(3) Recoilless rifles;

*(4) Grenade launchers; or

(5) Developmental guns and armament greater than .50 caliber (12.7 mm) funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004630

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flamethrowers with an effective range greater than or equal to 20 meters.

(c) [Reserved]

*(d) Kinetic energy weapon systems specially designed for destruction or rendering mission-abort of a target.

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004631

modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

(e) Signature reduction devices specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category (*e.g.*, muzzle flash suppression devices).

(f)–(i) [Reserved]

(j) Parts, components, accessories, and attachments, as follows:

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004632

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004633

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004634

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), and (j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(l)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition and Ordnance**

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004635

(a) Ammunition, as follows:

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004636

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

(b) Ammunition/ordnance handling equipment specially designed for the articles controlled in this category, as follows:

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004637

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]

(d) Parts and components for the articles in this category, as follows:

(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive;

(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004638

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004639

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles enumerated in paragraphs (a), (b), and (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(f)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004640

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting, or popping.

*Note 3 to Category III:* Grenades containing non-lethal or less lethal projectiles are under the jurisdiction of the Department of Commerce.

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004641

Message
| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 11/12/2019 5:07:13 PM |
| **To:** | Nightingale, Robert L [NightingaleRL@state.gov] |
| **Subject:** | FW: 1-3 USML AM for S |
| **Attachments:** | Tab 2 - Revised USML Categories I, II, and III - G.docx; Tab 3 - Line-inLine-out Comparison of Current USML Categories I, II, and III with these USML Categories as Revised V6 - G.docx; Tab 4 - Revised Department of Commerce Companion Control Text.docx; Tab 5 - Summary of Revisions to USML Categories I II and IIIv6 - G.docx; Tab 6 - Proposed Controls for Major Defense Equipment in Category III -G.docx; Tab 7 - AM to T, Notification to Congress, 20190204 - G.docx; Tab 8 - SOC for Small Group Meeting on Transfer of Categories I-III, 20190918 - G.pdf; Tab 9 - SOC for Small Group Meeting on Transfer of Categories I-III, 20190927 - G.pdf; Tab 0 - USML Cat I-III 38(f) - AM to S v8 FINAL.docx; Tab 1 - Notification Letters to Congress v7 - G.docx |

**Importance:** High

Hi Robby:  Would you by chance be able to pull from Everest the signed AM package for Categories I-III?  The latest draft I have is attached.  We were told that S signed it on Friday.

Thanks,
Joe

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

SENSITIVE BUT UNCLASSIFIED

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Friday, November 8, 2019 10:41 AM
**To:** PM-Staffers Mailbox <PM-StaffersMailbox@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Miller, Michael F <Millermf@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** 1-3 USML AM for S
**Importance:** High

Attached please find the package for S to approve Congressional notification of changes to USML Categories 1-3.  Please let us know if there are any questions.

Have a good weekend-
Sarah

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

SENSITIVE BUT UNCLASSIFIED

Message

**From**: Heidema, Sarah J [HeidemaSJ@state.gov]
**Sent**: 11/12/2019 5:28:00 PM
**To**: Timothy Mooney [Timothy.Mooney@bis.doc.gov]
**Subject**: Key Points of Transfer for Final Rule
**Attachments**: Key Points of Transfer for Final Rule.docx

Good cheat sheet

SENSITIVE BUT UNCLASSIFIED

**Key Points of Transfers of Commercial Firearms from State to Commerce Jurisdiction Pursuant to Federal Register Notice International Traffic in Arms Regulations:  U.S. Munitions List Categories I, II, and III (RIN 1400-AE30)**

**Items that remain on the USML**

- Category I(a): Firearms using caseless ammunition
- Category I(b): Automatic firearms to .50 caliber
  - A fully automatic firearm or shotgun is any firearm or shotgun which shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger
- Category I(c): Firearms specially designed to integrate fire control, automatic tracking, or automatic firing
- Category I(d): Automatic shotguns
- Category I(e): Silencers
- Category I(g): Barrels, receivers (frames), bolts, bolt carriers, slides, or sears specially designed for automatic firearms or firearms using caseless ammunition
- Category I(h):
  - High-capacity (more than 50 round) magazines and drums, automatic aiming or stabilization systems, and parts and components specially designed to convert a semi-automatic firearms into a fully-automatic weapon or for defense articles described in paragraphs (c) and (e)
- Category II(a): Guns, howitzers, artillery, cannons, mortars, recoilless rifles, grenade launchers and DOD funded developmental guns
- Category II(b): Flame throwers with range of over 20 meters
- Category III(d): Kinetic energy weapon systems
- Category III(e): Signature reduction devices for Category II items
- Category III(j): Specific critical parts, components, accessories, and attachments for Category II items
- Category III(a): Specific types of ammunition, including ammunition for fully automatic firearms, tracers, IR tracers, depleted uranium rounds, belted ammunition, lightweight ammunition, ammunition and projectiles for Category II items

- Category III(b): Belting, linking, and de-linking equipment and fuze setting devices
- Category III(d): Specific parts and components for USML ammunition

**Items that are proposed for transfer to CCL**

- Semi-automatic and non-automatic firearms from Category I(a) and II(a)
  - Except firearms using caseless ammunition
- Non-automatic shotguns from Category I(d)
- Parts, components, components, accessories and attachments for these firearms and shotguns, from Category I(g) and (h) and II(j)
  - Except silencers, high-capacity (more than 50 round) magazines and drums, automatic aiming or stabilization systems, parts and components specially designed to convert semi-automatic firearms to fully-automatic or for defense articles described in Category I(c) or (e)
- Accessories and attachments, and lower-level parts and components, for automatic firearms from Category I(h)
- Semi-automatic and non-automatic high-caliber firearms from Category II(a), and parts and components from Category II(j)
- Parts, components, accessories and attachments for guns, howitzers, artillery, cannons, recoilless rifles, grenade launchers, military flame throwers and rail guns from Category II(J)
  - Except those identified in Category II(e) and (j)
- Ammunition for firearms that transition to the Commerce Control List from Category III(a), and parts and components from Category III(d)
  - Except specific types of ammunition described in Category III(a)
- Parts, components, accessories and attachments for USML ammunition from Category III(d)
  - Except those identified in Category III(d)

- Firearms and most parts and components transferred to Commerce jurisdiction still require a license to all destinations, including Canada
- State will continue to implement brokering controls for all firearms, regardless of export jurisdiction

WASHSTATEC004645

Message

**From**:         Heidema, Sarah J [HeidemaSJ@state.gov]
**Sent**:         11/12/2019 5:42:54 PM
**To**:           Ross, Paula E [RossPE@state.gov]
**Subject**:      10 copies
**Attachments**:  Revised USML Categories I II and III - G (002).docx

thanks

Sarah Heidema
Director
Office of Defense Trade Controls Policy
Directorate of Defense Trade Controls
Department of State
202-663-2809

Message

| | |
|---|---|
| **From:** | Darrach, Tamara A [DarrachTA@state.gov] |
| **Sent:** | 11/12/2019 4:58:26 PM |
| **To:** | Steffens, Jessica [jessica.steffens@mail.house.gov]; Fite, David [david_fite@foreign.senate.gov]; Rice, Edmund [edmund.rice@mail.house.gov]; Hunter, Robert [robert_hunter@foreign.senate.gov] |
| **CC:** | Huddleston, Clay (Foreign Relations) [Clay_Huddleston@foreign.senate.gov]; PM-CPA [PM-CPA@state.gov]; Giannangeli, Giulia R [GiannangeliGR@state.gov]; Wolfe, William E [WolfeWE@state.gov]; Paul, Joshua M [PaulJM@state.gov] |
| **Subject:** | RE: Short Notice Request: Availability this afternoon for briefing |
| **Attachments:** | Revised USML Categories I II and III - G (002).docx; Revised Department of Commerce Companion Control Text.docx |

Dear all,

We look forward to briefing you this afternoon. In advance of our briefing, I am attaching copies of the revised rules we will be discussing with you. I would particularly draw your attention to the Commerce rule, Section 734.7(c), where, in order to address concerns raised by some members of Congress and the public regarding certain access to 3-D printing technology and software for firearms, the Department of Commerce has revised its rule to make certain technology and software capable of producing firearms subject to the EAR when posted on the internet under specified circumstances.

Thanks, and we look forward to answering your questions this afternoon,
Tamara

**Tamara Darrach Goulding**
Senior Congressional Advisor
Bureau of Legislative Affairs
U.S. Department of State
Tel: (202) 647-8763
Email: DarrachTA@state.gov

SENSITIVE BUT UNCLASSIFIED

**Billing Code: 3510-33-P**

**DEPARTMENT OF COMMERCE**

**Bureau of Industry and Security**

**15 CFR Parts 732, 734, 736, 740, 742, 743, 744, 746, 748, 758, 762, 772, and 774**

**[Docket No. 191107-0079]**

**RIN 0694-AF47**

**Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control under the United States Munitions List (USML)**

**AGENCY:** Bureau of Industry and Security, Department of Commerce.

**ACTION:** Final rule.

  1. The authority citation for 15 CFR part 732 is revised to read as follows:

  **Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

  2. Section 732.2 is amended by adding one sentence to the end of the paragraph (b) introductory text to read as follows:

**§ 732.2 Steps regarding scope of the EAR.**

\* \* \* \* \*

WASHSTATEC004648

(b) *  *  *   The following also remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, as referenced in § 734.7(c)).

*  *  *  *  *

## PART 734 – SCOPE OF THE EXPORT ADMINISTRATION REGULATIONS

3. The authority citation for 15 CFR part 734 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018).

4. Section 734.7 is amended by:

a. Revising paragraph (a) introductory text; and

b. Adding paragraph (c) to read as follows:

## § 734.7 Published.

(a) Except as set forth in paragraph (b) and (c) of this section, unclassified "technology" or "software" is "published," and is thus not "technology" or "software" subject to the EAR, when it has been made available to the public without restrictions upon its further dissemination such as through any of the following:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004649

\* \* \* \* \*

(c) The following remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, that is made available by posting on the internet in an electronic format, such as AMF or G-code, and is ready for insertion into a computer numerically controlled machine tool, additive manufacturing equipment, or any other equipment that makes use of the "software" or "technology" to produce the firearm frame or receiver or complete firearm.

\* \* \* \* \*

## PART 736 – GENERAL PROHIBITIONS

5. The authority citation for 15 CFR part 736 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 2151 note; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p. 168; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

6. Supplement No. 1 to part 736 is amended by revising paragraph (e)(3) to read as follows:

WASHSTATEC004650

**SUPPLEMENT NO. 1 TO PART 736 - GENERAL ORDERS**

\* \* \* \* \*

(e) \* \* \*

(3) *Prior commodity jurisdiction determinations.* If the U.S. State Department has previously determined that an item is not subject to the jurisdiction of the ITAR and the item was not listed in a then existing "018" series ECCN (for purposes of the "600 series" ECCNs, or the 0x5zz ECCNs) or in a then existing ECCN 9A004.b or related software or technology ECCN (for purposes of the 9x515 ECCNs), then the item is per se not within the scope of a "600 series" ECCN, a 0x5zz ECCN, or a 9x515 ECCN.  If the item was not listed elsewhere on the CCL at the time of such determination (*i.e.*, the item was designated EAR99), the item shall remain designated as EAR99 unless specifically enumerated by BIS or DDTC in an amendment to the CCL or to the USML, respectively.

\* \* \* \* \*

**PART 740 – LICENSE EXCEPTIONS**

7. The authority citation for 15 CFR part 740 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*;  22 U.S.C. 7201 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228;  E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

8. Section 740.2 is amended by adding paragraphs (a)(21) and (22) to read as follows:

WASHSTATEC004651

**§ 740.2 Restrictions on all license exceptions.**

(a) *  *  *

(21)  The reexport or transfer (in-country) of firearms classified under ECCNs 0A501 or 0A502 if a part or component that is not "subject to the ITAR," but would otherwise meet the criteria in USML Category I(h)(2)(*i.e.*, parts and components specially designed for conversion of a semiautomatic firearm to a fully automatic firearm) is incorporated into the firearm or is to be reexported or transferred (in-country) with the firearm with "knowledge" the part or component will be subsequently incorporated into the firearm.  (*See* USML Category I(h)(2)).  In such instances, no license exceptions are available except for License Exception GOV (§ 740.11(b)(2)(ii)).

(22) The export, reexport, or transfer (in-country) of any item classified under a 0x5zz ECCN when a party to the transaction is designated on the Department of the Treasury, Office of Foreign Assets Control (OFAC), Specially Designated Nationals and Blocked Persons (SDN) list under the designation [SDNT], pursuant to the Narcotics Trafficking Sanctions Regulations, [ HYPERLINK "http://www.ecfr.gov/cgi-bin/text-idx?SID=5eae22affe2e3675b6deaa3fb796eb7a&tpl=/ecfrbrowse/Title31/31cfr536_main_02.tpl" \t "_blank" ] or under the designation [SDNTK], pursuant to the Foreign Narcotics Kingpin Sanctions Regulations, [ HYPERLINK "http://www.ecfr.gov/cgi-bin/text-idx?SID=5eae22affe2e3675b6deaa3fb796eb7a&tpl=/ecfrbrowse/Title31/31cfr598_main_02.tpl" \t "_blank" ].

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004652

9. Section 740.9 is amended by:

a.  Adding five sentences at the end of paragraph (a) introductory text;

b.  Adding one sentence at the end of paragraph (b)(1) introductory text;

c.  Adding paragraph (b)(5); and

d.  Redesignating notes 1 through 3 to paragraph (b) as notes 2 through 4 to paragraph (b);

The additions read as follows:

**§ 740.9 Temporary imports, exports, reexports, and transfers (in-country) (TMP).**

\* \* \* \* \*

(a)  \*  \*  \*  This paragraph (a) does not authorize any export of a commodity controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502 to, or any export of such an item that was imported into the United States from, a country in Country Group D:5 (Supplement No. 1 of this part), or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan.  The only provisions of this paragraph (a) that are eligible for use to export such items are paragraph (a)(5) of this section ("Exhibition and demonstration") and paragraph (a)(6) of this section ("Inspection, test, calibration, and repair").  In addition, this paragraph (a) may not be used to export more than 75 firearms per shipment.  In accordance with the requirements in § 758.1(b)(9) and (g)(4) of the EAR, the exporter or its agent must provide documentation that includes the serial number, make, model, and caliber of each firearm being exported by filing these data elements in an EEI filing in AES.  In accordance with the exclusions in License Exception TMP under paragraph

WASHSTATEC004653

(b)(5) of this section, the entry clearance requirements in § 758.1(b)(9) do not permit the

temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or

manufactured in a Country Group D:5 country,, or that are shipped from or manufactured in

Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan

(except for any firearm model designation (if assigned) controlled by 0A501 that is specified

under Annex A in Supplement No. 4 to part 740);); or shotguns with a barrel length less than 18

inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group

D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan,

Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under paragraph

(b)(5) of this section.

\*   \*   \*   \*   \*

(b)   \*   \*   \*

(1) \*   \*   \* No provision of paragraph (b) of this section, other than paragraph (b)(3), (4),

or (5), may be used to export firearms controlled by ECCN 0A501.a, .b, or shotguns with a barrel

length less than 18 inches controlled in ECCN 0A502.

\*   \*   \*   \*   \*

(5) *Exports of firearms and certain shotguns temporarily in the United States.*  This

paragraph (b)(5) authorizes the export of no more than 75 end item firearms per shipment

controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches

controlled in ECCN 0A502 that are temporarily in the United States for a period not exceeding

one year, provided that:

WASHSTATEC004654

(i) The firearms were not shipped from or manufactured in a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR;

(ii) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740; and

(iii) The firearms are not ultimately destined to a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR, or to Russia;

(iv) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License cException TMP (15 CFR 740.9(b)(5))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provided (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration

WASHSTATEC004655

documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States.

(v) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(5)(iv)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(5): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(5), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

\*   \*   \*   \*   \*

10. Section 740.10 is amended by:

a.  Adding one sentence at the end of paragraph (b)(1); and

b.  Adding paragraph (b)(4).

The additions read as follows:

**§ 740.10 Servicing and replacement of parts and equipment (RPL)**

\*   \*   \*   \*   \*

*(b) \* \* \**

[ PAGE  \\* MERGEFORMAT ]

WASHSTATEC004656

(1) * * * The export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 temporarily in the United States for servicing and replacement may be exported under paragraphs (b)(2) or (3) of this section only if the additional requirements in paragraph (b)(4) of this section are also met.

* * * * *

(4) *Exports of firearms and certain shotguns temporarily in the United States for servicing and replacement.* This paragraph (b)(4) authorizes the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for servicing or replacement for a period not exceeding one year or the time it takes to service or replace the commodity, whichever is shorter, provided that the requirements of paragraphs (b)(2) or (3) of this section are met and:

(i) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740;

(ii) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and

WASHSTATEC004657

description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provided (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement.

(iii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(4)(iii)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(4): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(4), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

\*   \*   \*   \*   \*

11. Section 740.11 is amended by:

a. Adding two sentences at the end of the introductory text;

[ PAGE  \\* MERGEFORMAT ]

WASHSTATEC004658

b. Adding Note 2 to paragraph (b)(2); and

c. Redesignating note 1 to paragraph (c)(1) as note 3 to paragraph (c)(1) and notes 1 and 2 to paragraph (e) as notes 4 and 5 to paragraph (e).

The additions read as follows:

## § 740.11 Governments, international organizations, international inspections, under the Chemical Weapons Convention, and the International Space Station (GOV).

\*   \*   \*   Commodities listed in ECCN 0A501 are eligible only for transactions described in paragraphs (b)(2)(i) and (ii) of this section.  Any item listed in a 0x5zz ECCN for export, reexport, or transfer (in-country) to an E:1 country is eligible only for transactions described in paragraphs (b)(2)(i) and (ii) solely for U.S. Government official use of this section.

\*   \*   \*   \*   \*

*Note 2 to paragraph (b)(2):  Items controlled for NS, MT, CB, NP, FC, or AT reasons may not be exported, reexported, or transferred (in-country) to, or for the use of military, police, intelligence entities, or other sensitive end users (e.g., contractors or other governmental parties performing functions on behalf of military, police, or intelligence entities) of a government in a Country Group E:1 or E:2 country.*

\*   \*   \*   \*   \*

12. Section 740.14 is amended by revising paragraph (b)(4) introductory text, revising the heading to paragraph (e), and by adding paragraphs (e)(3) and (4) to read as follows:

WASHSTATEC004659

**§ 740.14 Baggage (BAG).**

\* \* \* \* \*

(b) \* \* \*

(4) *Tools of trade.* Usual and reasonable kinds and quantities of tools, instruments, or equipment and their containers and also technology for use in the trade, occupation, employment, vocation, or hobby of the traveler or members of the household who are traveling or moving. For special provisions regarding firearms and ammunition, see paragraph (e) of this section.  For special provisions regarding encryption commodities and software subject to EI controls, see paragraph (f) of this section.  For a special provision that specifies restrictions regarding the export or reexport of technology under this paragraph (b)(4), see paragraph (g) of this section. For special provisions regarding personal protective equipment under ECCN 1A613.c or .d, see paragraph (h) of this section.

\* \* \* \* \*

(e) *Special provisions for firearms and ammunition.* \* \* \*

(3) A United States citizen or a permanent resident alien leaving the United States may export under this License Exception firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505.a, subject to the following limitations:

(i) Not more than three firearms and 1,000 rounds of ammunition may be taken on any one trip.

[ PAGE  \\* MERGEFORMAT ]

WASHSTATEC004660

(ii) "Parts," "components," "accessories," and "attachments" exported pursuant to this paragraph must be of a kind and limited to quantities that are reasonable for the activities described in paragraph (e)(3)(iv) of this section or that are necessary for routine maintenance of the firearms being exported.

(iii) The commodities must be with the person's baggage.

(iv) The commodities must be for the person's exclusive use and not for resale or other transfer of ownership or control.  Accordingly, except as provided in paragraph (e)(4) of this section, firearms, "parts," "components," "accessories," "attachments," and ammunition, may not be exported permanently under this License Exception.  All firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and all unused ammunition controlled under ECCN 0A505.a exported under this License Exception must be returned to the United States.

(v) Travelers leaving the United States temporarily are required to declare the firearms, "parts," "components," "accessories," "attachments," and ammunition being exported under this license exception to a Customs and Border Protection (CBP) officer prior to departure from the United States and present such items to the CBP officer for inspection, confirming that the authority for the export is License Exception BAG and that the exporter is compliant with its terms.

(4) A nonimmigrant alien leaving the United States may export or reexport under this License Exception only such firearms controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505 as he or she brought into the United States under the relevant provisions of Department of Justice regulations at 27 CFR part 478.

[ PAGE  \* MERGEFORMAT ]

\* \* \* \* \*

## § 740.16 [AMENDED]

13.  Section 740.16 is amended by:

a.  Revising paragraph (a)(2);

b.  Revising paragraphs (b)(2)(iv) and (v); and

c.  Adding paragraph (b)(2)(vi);

The revisions and addition read as follows:

## § 740.16 Additional permissive reexports (APR).

\* \* \* \* \*

(a)  \* \* \*

(2) The commodities being reexported are not controlled for NP, CB, MT, SI, or CC reasons or described in ECCNs 0A919, 3A001.b.2 or b.3 (except those that are being reexported for use in civil telecommunications applications), 6A002, 6A003; or commodities classified under a 0x5zz ECCN; and

\* \* \* \* \*

(b)  \* \* \*

(2)  \* \* \*

WASHSTATEC004662

(iv) Commodities described in ECCN 0A504 that incorporate an image intensifier tube;

(v) Commodities described in ECCN 6A002; or

(vi) Commodities classified under a 0x5zz ECCN.

*   *   *   *   *

14.  Section 740.20 is amended by revising paragraph (b)(2)(ii) to read as follows:

**§ 740.20 License Exception Strategic Trade Authorization (STA).**

*   *   *   *   *

(b)  *   *   *

(2)  *   *   *

(ii) License Exception STA may not be used for:

(A) Any item controlled in ECCNs 0A501.a, .b, .c, .d, or .e; 0A981; 0A982; 0A983; 0A503; 0E504; 0E982; or

(B) Shotguns with barrel length less than 18 inches controlled in 0A502.

*   *   *   *   *

15. Add Supplement No. 4 to part 740 to read as follows:

**SUPPLEMENT NO. 4 TO PART 740 - ANNEX A FIREARM MODELS**

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004663

(a) *Pistols/revolvers.*

(1) German Model P08 Pistol = SMCR.

(2) IZH 34M, .22 Target pistol.

(3) IZH 35M, .22 caliber Target pistol.

(4) Mauser Model 1896 pistol = SMCR.

(5) MC-57-1 pistol.

(6) MC-1-5 pistol.

(7) Polish Vis Model 35 pistol = SMCR.

(8) Soviet Nagant revolver = SMCR.

(9) TOZ 35, .22 caliber Target pistol.

(10) MTs 440.

(11) MTs 57-1.

(12) MTs 59-1.

(13) MTs 1-5.

(14) TOZ-35M (starter pistol).

(15) Biathlon-7K.

WASHSTATEC004664

(b) *Rifles.*

(1) BARS-4 Bolt Action carbine.

(2) Biathlon target rifle, .22.

(3) British Enfield rifle = SMCR.

(4) CM2, .22 target rifle (also known as SM2, .22).

(5) German model 98K =SMCR.

(6) German model G41 = SMCR.

(7) German model G43=SMCR.

(8) IZH-94.

(9) LOS-7, bolt action.

(10) MC-7-07.

(11) MC-18-3.

(12) MC-19-07.

(13) MC-105-01.

(14) MC-112-02.

(15) MC-113-02.

(16) MC-115-1.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004665

(17) MC-125/127.

(18) MC-126.

(19) MC-128.

(20) Saiga.

(21) Soviet Model 38 carbine=SMCR.

(22) Soviet Model 44 carbine-SMCR.

(23) Soviet Model 91/30 rifle=SMCR.

(24) TOZ 18, .22 bolt action.

(25) TOZ 55.

(26) TOZ 78.

(27) Ural Target, .22lr.

(28) VEPR rifle.

(29) Winchester Model 1895, Russian Model rifle=SMCR.

(30) Sever – double barrel.

(31) IZH18MH single barrel break action.

(32) MP-251 over/under rifle.

(33) MP-221 double barrel rifle.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004666

(34) MP-141K.

(35) MP-161K.

(36) MTs 116-1.

(37) MTs 116M.

(38) MTs 112-02.

(39) MTs 115-1.

(40) MTs 113-02.

(41) MTs 105-01.

(42) MTs 105-05.

(43) MTs 7-17 combination gun.

(44) MTs 7-12-07 rifle/shotgun.

(45) MTs 7-07.

(46) MTs 109-12-07 rifle.

(47) MTs 109-07 rifle.

(48) MTs 106-07 combination.

(49) MTs 19-97.

(50) MTs 19-09.

WASHSTATEC004667

(51) MTs 18-3M.

(52) MTs 125.

(53) MTs 126.

(54) MTs 127.

(55) Berkut-2.

(56) Berkut-2M1.

(57) Berkut-3.

(58) Berkut-2-1.

(59) Berkut-2M2.

(60) Berkut-3-1.

(61) Ots-25.

(62) MTs 20-07.

(63) LOS-7-1.

(64) LOS -7-2.

(65) LOS-9-1.

(66) Sobol (Sable).

(67) Rekord.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004668

(68) Bars-4-1.

(69) Saiga.

(70) Saiga-M.

(71) Saiga 308.

(72) Saiga-308-1.

(73) Saiga 308-2.

(74) Saiga-9.

(75) Korshun.

(76) Ural-5-1.

(77) Ural 6-1.

(78) Ural-6-2.

(79) SM-2.

(80) Biatlon-7-3.

(81) Biatlon-7-4.

(82) Rekord-1.

(83) Rekord-2.

(84) Rekord-CISM.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004669

(85) Rekord-1-308.

(86) Rekord-2-308.

(87) Rekord-1-308-CISM.

(88) VEPR.

(89) VEPR Super.

(90) VEPR Pioneer.

(91) VEPR Safari.

(92) TOZ 109.

(93) KO 44-1.

(94) TOZ 78-01.

(95) KO 44.

(96) TOZ 99.

(97) TOZ 99-01.

(98) TOZ 55-01 Zubr.

(99) TOZ 55-2 Zubr.

(100) TOZ 120 Zubr.

(101) MTs 111.

WASHSTATEC004670

(102) MTs 109.

(103) TOZ 122.

(104) TOZ 125.

(105) TOZ 28.

(106) TOZ 300.

## PART 742 – CONTROL POLICY—CCL BASED CONTROLS

16.  The authority citation for part 742 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 3201 *et seq.*; 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; Sec. 1503, Pub. L. 108–11, 117 Stat. 559; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018).

17.  Section 742.6 is amended by revising the first and sixth sentences of paragraph (b)(1)(i) and adding a seventh sentence at the end of paragraph (b)(1)(i) to read as follows:

## §742.6 Regional stability.

\*   \*   \*   \*   \*

WASHSTATEC004671

(b)  *  *  *

(1)  *  *  *

(i)  Applications for exports and reexports of ECCN 0A501, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items; 9x515 items and "600 series" items and will be reviewed on a case-by-case basis to determine whether the transaction is contrary to the national security or foreign policy interests of the United States, including the foreign policy interest of promoting the observance of human rights throughout the world.  *  *  * When destined to the People's Republic of China or a country listed in Country Group E:1 in Supplement No. 1 to part 740 of the EAR, items classified under ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 or any 9x515 ECCN will be subject to a policy of denial.  In addition, applications for exports and reexports of ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items when there is reason to believe the transaction involves criminal organizations, rebel groups, street gangs, or other similar groups or individuals, that may be disruptive to regional stability, including within individual countries, will be subject to a policy of denial.

*  *  *  *  *

18.  Section 742.7 is amended by revising paragraphs (a)(1) through (4) and (c) to read as follows:

§ 742.7 Crime control and detection.

(a)  *  *  *

WASHSTATEC004672

(1)  Crime control and detection instruments and equipment and related "technology" and "software" identified in the appropriate ECCNs on the CCL under CC Column 1 in the Country Chart column of the "License Requirements" section.  A license is required to countries listed in CC Column 1 (Supplement No. 1 to part 738 of the EAR).  Items affected by this requirement are identified on the CCL under the following ECCNs: 0A502, 0A504, 0A505.b, 0A978, 0A979 0E502, 0E505 ("technology" for "development" or for "production" of buckshot shotgun shells controlled under ECCN 0A505.b), 1A984, 1A985, 3A980, 3A981, 3D980, 3E980, 4A003 (for fingerprint computers only), 4A980, 4D001 (for fingerprint computers only), 4D980, 4E001 (for fingerprint computers only), 4E980, 6A002 (for police-model infrared viewers only), 6E001 (for police-model infrared viewers only), 6E002 (for police-model infrared viewers only), and 9A980.

(2)  Shotguns with a barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 2 in the Country Chart column of the "License Requirements" section regardless of end user to countries listed in CC Column 2 (Supplement No. 1 to part 738 of the EAR).

(3)  Shotguns with barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 3 in the Country Chart column of the "License Requirements" section only if for sale or resale to police or law enforcement entities in countries listed in CC Column 3 (Supplement No. 1 to part 738 of the EAR).

(4)  Certain crime control items require a license to all destinations, except Canada. These items are identified under ECCNs 0A982, 0A503, and 0E982.  Controls for these items appear in

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004673

each ECCN; a column specific to these controls does not appear in the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

(c)   *Contract sanctity*.   Contract sanctity date: August 22, 2000.   Contract sanctity applies only to items controlled under ECCNs 0A982, 0A503, and 0E982 destined for countries not listed in CC Column 1 of the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

19.   Section 742.17 is amended by:

a. Revising the first sentence of paragraph (a); and

b. Revising paragraph (f) to read as follows:

## § 742.17   Exports of firearms to OAS member countries.

(a)   *License requirements*. BIS maintains a licensing system for the export of firearms and related items to all OAS member countries.   *   *   *

*   *   *   *   *

(f) *Items/Commodities*.   Items requiring a license under this section are ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), and 0A505 (except 0A505.d).   (See Supplement No. 1 to part 774 of the EAR).

*   *   *   *   *

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004674

**§ 742.19 [AMENDED]**

20. Section 742.19(a)(1) is amended by:

a. Removing "0A986" and adding in its place "0A505.c"; and

b. Removing "0B986" and adding in its place "0B505.c".


**PART 743 – SPECIAL REPORTING AND NOTIFICATION**

21. The authority citation for 15 CFR part 743 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*;  50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783;  E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; 78 FR 16129; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).


22. Section 743.4 is amended by:

a. Adding four sentences to the end of paragraph (a);

b. By redesignating Note to paragraph (a) as Note 1 to paragraph (a);

c. Revising paragraph (b);

d. Adding paragraphs (c)(1)(i) and (c)(2)(i);

e. By redesignating Note to paragraph (e)(1)(ii) as Note 2 to paragraph (e)(1)(ii);

e. Revising paragraph (h); and

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004675

f. Adding paragraph (i) to read as follows:

**§ 743.4 Conventional arms reporting.**

(a) *   *   *   This section does not require reports when the exporter uses the alternative submission method described under paragraph (h) of this section.  The alternative submission method under paragraph (h) requires the exporter to submit the information required for conventional arms reporting in this section as part of the required EEI submission in AES, pursuant to § 758.1(b)(9).  Because of the requirements in § 758.1(g)(4)(ii) for the firearms that require conventional arms reporting of all conventional arms, the Department of Commerce believes all conventional arms reporting requirements for firearms will be met by using the alternative submission method.  The Department of Commerce leaves standard method for submitting reports in place in case any additional items are moved from the USML to the CCL, that may require conventional arms reporting.

   *Note 1 to paragraph (a):* *   *   *

(b) *Requirements.*  You must submit one electronic copy of each report required under the provisions of this section, or submit this information using the alternative submission method specified in paragraph (h) of this section, and maintain accurate supporting records (see § 762.2(b) of the EAR) for all exports of items specified in paragraph (c) of this section for the following:

(c) *   *   *

WASHSTATEC004676

(1) *  *  *

   (i) ECCN 0A501.a and .b.

*  *  *  *  *

(2) *  *  *

   (i) ECCN 0A501.a and .b.

*  *  *  *  *

(h) *Alternative submission method.*  This paragraph (h) describes an alternative submission method for meeting the conventional arms reporting requirements of this section.  The alternative submission method requires the exporter, when filing the required EEI submission in AES, pursuant to § 758.1(b)(9), to include the six character ECCN classification (*i.e.*, 0A501.a or 0A501.b) as the first text to appear in the Commodity description block.  If the exporter properly includes this information in the EEI filing in AES, the Department of Commerce will be able to obtain that export information directly from AES to meet the U.S. Government's commitments to the Wassenaar Arrangement and United Nations for conventional arms reporting.  An exporter that complies with the requirements in § 758.1(g)(4)(ii) does not have to submit separate annual and semi-annual reports to the Department of Commerce pursuant to this section.

(i) *Contacts.* General information concerning the Wassenaar Arrangement and reporting obligations thereof is available from the Office of National Security and Technology Transfer Controls, Tel.: (202) 482-0092, Fax: (202) 482-4094.  Information concerning the reporting requirements for items identified in paragraphs (c)(1) and (2) of this section is available from the

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004677

Office of Nonproliferation and Treaty Compliance (NPTC), Tel.: (202) 482-4188, Fax: (202) 482-4145.

## PART 744 – CONTROL POLICY: END-USER AND END-USE BASED

23.  The authority citation for 15 CFR part 744 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4582; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 22 U.S.C. 3201 et seq.; 42 U.S.C. 2139a; 22 U.S.C. 7201 et seq.; 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of September 19, 2018, 83 FR 47799 (September 20, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of January 16, 2019, 84 FR 127 (January 18, 2019).

## § 744.9 [AMENDED]

24.  Section 744.9 is amended by removing "0A987" from paragraphs (a)(1) and (b) and adding in its place "0A504".

## PART 746 – EMBARGOES AND OTHER SPECIAL CONTROLS

25.  The authority citation for 15 CFR part 746 is revised to read as follows:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004678

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 287c; Sec 1503, Pub. L. 108-11, 117 Stat. 559; 22 U.S.C. 6004; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 12854, 58 FR 36587, 3 CFR, 1993 Comp., p. 614; E.O. 12918, 59 FR 28205, 3 CFR, 1994 Comp., p. 899; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p 168; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Presidential Determination 2007-7, 72 FR 1899, 3 CFR, 2006 Comp., p. 325; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

**§ 746.3 [AMENDED]**

26.  Section 746.3 is amended by removing "0A986" from paragraph (b)(2) and adding in its place "0A505.c".

**§ 746.7 [AMENDED]**

27.  Section 746.7 is amended in paragraph (a)(1) by:

a. Adding "0A503," immediately before "0A980"; and

b. Removing "0A985,".

**PART 748 – APPLICATIONS (CLASSIFICATION, ADVISORY, AND LICENSE) AND DOCUMENTATION**

28.  The authority citation for 15 CFR part 748 is revised to read as follows:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004679

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

29. Section 748.12 is amended by:

a. Revising the heading;

b. Adding introductory text;

c. Revising paragraphs (a) introductory text and (a)(1);

d. Redesignating the note to paragraph (c)(8) as note 1 to paragraph (c)(8); and

e. Adding paragraph (e).

The revisions and additions read as follows.

**§ 748.12 Firearms import certificate or import permit.**

License applications for certain firearms and related commodities require support documents in accordance with this section.  For destinations that are members of the Organization of American States (OAS), an FC Import Certificate or equivalent official document is required in accordance with paragraphs (a) through (d) of this section.  For other destinations that require a firearms import or permit, the firearms import certificate or permit is required in accordance with paragraph (e) of this section.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004680

(a) *Requirement to obtain document for OAS member states.* Unless an exception in § 748.9(c) applies, an FC Import Certificate is required for license applications for firearms and related commodities, regardless of value, that are destined for member countries of the OAS.  This requirement is consistent with the OAS Model Regulations described in § 742.17 of the EAR.

(1)  *Items subject to requirement.* Firearms and related commodities are those commodities controlled for "FC Column 1" reasons under ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), or 0A505 (except 0A505.d).

\*   \*   \*   \*   \*

(e)  *Requirement to obtain an import certificate or permit for other than OAS member states.*  If the country to which firearms, parts, components, accessories, and attachments controlled under ECCN 0A501, or ammunition controlled under ECCN 0A505, are being exported or reexported requires that a government-issued certificate or permit be obtained prior to importing the commodity, the exporter or reexporter must obtain and retain on file the original or a copy of that certificate or permit before applying for an export or reexport license unless:

(1)  A license is not required for the export or reexport; or

(2)  The exporter is required to obtain an import or end-user certificate or other equivalent official document pursuant to paragraphs (a) thorough (d) of this section and has, in fact, complied with that requirement.

(3)(i) The number or other identifying information of the import certificate or permit must be stated on the license application.

WASHSTATEC004681

(ii) If the country to which the commodities are being exported does not require an import certificate or permit for firearms imports, that fact must be noted on any license application for ECCN 0A501 or 0A505 commodities.

*Note 2 to paragraph (e).* *Obtaining a BIS Statement by Ultimate Consignee and Purchaser pursuant to § 748.11 of the EAR does not exempt the exporter or reexporter from the requirement to obtain a certification pursuant to paragraph (a) of this section because that statement is not issued by a government.*

30. Supplement No. 2 to part 748 (Unique Application and Submission Requirements) is amended by adding paragraph (z) to read as follows:

## SUPPLEMENT NO. 2 TO PART 748 - UNIQUE APPLICATION AND SUBMISSION REQUIREMENTS

\* \* \* \* \*

(z) *Exports of firearms and certain shotguns temporarily in the United States.*

(1) *Certification.* If you are submitting a license application for the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that will be temporarily in the United States, *e.g.*, for servicing and repair or for intransit shipments, you must include the following certification in Block 24:

The firearms in this license application will not be shipped from or manufactured in

Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or

WASHSTATEC004682

Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740.  I and the parties to this transaction will comply with the requirements specified in paragraph (z)(2)(i) and (ii) of Supplement No. 2 to part 748.

(2) *Requirements*.  Each approved license for commodities described under paragraph (z) must comply with the requirements specified in paragraphs (z)(2)(i) and (ii) of this supplement.

(i) When the firearms enter the U.S. as a temporary import, the temporary importer or its agent must:

(A) Provide the following statement to U.S. Customs and Border Protection: "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(B) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address, and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

WASHSTATEC004683

(ii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (z)(2)(i)(B) of this supplement to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (z): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (z), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

## PART 758 – EXPORT CLEARANCE REQUIREMENTS

31.  The authority citation for part 758 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

32.  Section 758.1 is amended by:

a. Revising paragraphs (b)(7) (8), and adding paragraph (b)(9);

b. Revising paragraph (c)(1);

c. Adding Note 1 to paragraph (c)(1);

c. Adding paragraph (g)(4); and

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004684

d. Redesignating Note to paragraph (h)(1) as Note 3 to paragraph (h)(1); to read as follows:

**§ 758.1 The Electronic Export Enforcement (EEI) filing to the Automated Export System (AES).**

*   *   *   *   *

(b)  *   *   *

(7) For all items exported under authorization Validated End-User (VEU);

(8) For all exports of tangible items subject to the EAR where parties to the transaction, as described in § 748.5(d) through (f) of the EAR, are listed on the Unverified List (Supplement No. 6 to part 744 of the EAR), regardless of value or destination; or

 (9) For all exports, except for exports authorized under License Exception BAG, as set forth in §740.14 of the EAR, of items controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada.

(c)  *   *   *

(1) License Exception Baggage (BAG), as set forth in §740.14 of the EAR. See 15 CFR 30.37(x) of the FTR;

*Note 1 to paragraph (c)(1): See the export clearance requirements for exports of firearms controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18*

WASHSTATEC004685

*inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505,*

*authorized under License Exception BAG, as set forth in §740.14 of the EAR.*

\* \* \* \* \*

(g) \* \* \*

(4) *Exports of Firearms and Related Items*.  This paragraph (g)(4) includes two separate

requirements under paragraph (g)(4)(i) and (ii) of this section that are used to better identify

exports of certain end item firearms under the EAR.  Paragraph (g)(4)(i) is limited to certain

EAR authorizations.  Paragraph (g)(4)(ii) applies to all EAR authorizations that require EEI

filing in AES.

(i) *Identifying end item firearms by manufacturer, model, caliber, and serial number in the EEI*

*filing in AES*.  For any export authorized under License Exception TMP or a BIS license

authorizing a temporary export of items controlled under ECCNs 0A501.a or .b, or shotguns with

a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other

required data for the associated EEI filing, you must report the manufacturer, model, caliber, and

serial number of the exported items.  The requirements of this paragraph also apply to any other

export authorized under a BIS license that includes a condition or proviso on the license

requiring the submission of this information specified in paragraph (g) of this section when the

EEI is filed in AES.

(ii) *Identifying end item firearms by "items" level classification or other control descriptor in the*

*EEI filing in AES*.  For any export of items controlled under ECCNs 0A501.a or .b, or shotguns

with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other

WASHSTATEC004686

required data for the associated EEI filing, you must include the six character ECCN classification (*i.e.*, 0A501.a, or 0A501.b), or for shotguns controlled under 0A502 the phrase "0A501 barrel length less than 18 inches" as the first text to appear in the Commodity description block in the EEI filing in AES.  (*See* § 743.4(h) for the use of this information for conventional arms reporting).

> **Note 2 to paragraph (g)(4):** *If a commodity described in paragraph (g)(4) is exported under License Exception TMP under § 740.9(a)(6) for inspection, test, calibration, or repair is not consumed or destroyed in the normal course of authorized temporary use abroad, the commodity must be disposed of or retained in one of the ways specified in § 740.9(a)(14)(i), (ii), or (iii).  For example, if a commodity described in paragraph (g)(4) was destroyed while being repaired after being exported under § 740.9(a)(6), the commodity described in paragraph (g)(4) would not be required to be returned.  If the entity doing the repair returned a replacement of the commodity to the exporter from the United States, the import would not require an EAR authorization.  The entity that exported the commodity described in paragraph (g)(4) and the entity that received the commodity would need to document this as part of their recordkeeping related to this export and subsequent import to the United States.*

\*   \*   \*   \*   \*

33.  Add § 758.10 to read as follows:

**§ 758.10  Entry clearance requirements for temporary imports.**

(a) *Scope*.  This section specifies the temporary import entry clearance requirements for firearms "subject to the EAR" that are on the United States Munitions Import List (USMIL, 27 CFR

WASHSTATEC004687

447.21), except for firearms "subject to the EAR" that are temporarily brought into the United States by nonimmigrant aliens under the provisions of Department of Justice regulations at 27 CFR part 478 (*See* § 740.14(e) of License Exception BAG for information on the export of these firearms "subject to the EAR").  These firearms are controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.  Items that are temporarily exported under the EAR must have met the export clearance requirements specified in § 758.1 of the EAR.

(1) An authorization under the EAR is *not* required for the temporary import of "items" that are "subject to the EAR," including for "items" "subject to the EAR" that are on the USMIL. Temporary imports of firearms described in this section must meet the entry clearance requirements specified in paragraph (b) of this section.

 (2) Permanent imports are regulated by the Attorney General under the direction of the Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (see 27 CFR parts 447, 478, 479, and 555).

(b) *EAR procedures for temporary imports and subsequent exports.*  To the satisfaction of U.S. Customs and Border Protection, the temporary importer must comply with the following procedures:

(1) At the time of entry into the U.S. of the temporary import:

(i) Provide one of the following statements specified in paragraphs (b)(1)(i)(A), (B), or (C) of this section to U.S. Customs and Border Protection:

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004688

(A) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of License Exception TMP (15 CFR 740.9(b)(5));"

 (B) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b));" or

(C) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(ii) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value;

(iii) Provide (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States;

(iv) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

WASHSTATEC004689

*Note 1 to paragraph (b)(1): In accordance with the exclusions in License Exception TMP under § 740.9(b)(5) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country; or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under § 740.9(b)(5).*

*Note 2 to paragraph (b)(1): In accordance with the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured inin Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR.*

(2) At the time of export, in accordance with the U.S. Customs and Border Protection procedures, the eligible exporter, or an agent acting on the filer's behalf, must as required under § 758.1(b)(9) of the EAR file the export information with CBP by filing EEI in AES, noting the

WASHSTATEC004690

applicable EAR authorization as the authority for the export, and provide, upon request by CBP, the entry document number or a copy of the CBP document under which the "item" subject to the EAR" on the USMIL was temporarily imported.  *See* also the additional requirements in § 758.1(g)(4).

34.  Add § 758.11 to read as follows:

**§ 758.11  Export clearance requirements for firearms and related items.**

(a)  *Scope.*  The export clearance requirements of this section apply to all exports of commodities controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada, that are authorized under License Exception BAG, as set forth in §740.14.

(b) *Required form.*  Prior to making any export described in paragraph (a) of this section, the exporter is required to submit a properly completed Department of Homeland Security, CBP Form 4457, (Certificate of Registration for Personal Effects Taken Abroad) (OMB Control Number 1651-0010), to the U.S. Customs and Border Protection (CBP), pursuant to 19 CFR 148.1, and as required by this section of the EAR.

(1) Where to obtain the form?  The CBP Certification of Registration Form 4457 can be found on the following CBP website:

WASHSTATEC004691

https://www.cbp.gov/document/forms/form-4457-certificate-registration-personal-effects-taken-abroad

(2) Required "description of articles" for firearms to be included on the CBP Form 4457.  For all exports of firearms controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, the exporter must provide to CBP the serial number, make, model, and caliber for each firearm being exported by entering this information under the "Description of Articles" field of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad.

(c) *Where to find additional information on the CBP Form 4457*?
*See* the following CBP website page for additional information:

https://help.cbp.gov/app/answers/detail/a_id/323/~/traveling-outside-of-the-u.s.---temporarily-taking-a-firearm%2C-rifle%2C-gun%2C.

(d) *Return of items exported pursuant to this section*.  The exporter when returning with a commodity authorized under License Exception BAG and exported pursuant this section, is required to present a copy of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad) (OMB Control Number 1651-0010), to CBP, pursuant to 19 CFR 148.1, and as required by this section of the EAR.


**PART 762 – RECORDKEEPING**

35.  The authority citation for part 762 is revised to read as follows:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004692

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

36.  Section 762.2 is amended by removing "and," at the end of paragraph (a)(10), redesignating paragraph (a)(11) as paragraph (a)(12), and adding a new paragraph (a)(11) to read as follows:

**§ 762.2 Records to be retained.**

(a)  *   *   *

(11) The serial number, make, model, and caliber for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502 that have been exported.  The "exporter" or any other party to the transaction (*see* § 758.3 of the EAR), that creates or receives such records is a person responsible for retaining this record; and

*   *   *   *   *

37.  Section 762.3 is amended by revising paragraph (a)(5) to read as follows:

**§ 762.3 Records exempt from recordkeeping requirements.**

(a) *   *   *

WASHSTATEC004693

(5)  Warranty certificate, except for a warranty certificate issued for an address located outside

the United States for any firearm controlled in ECCN 0A501.a and for shotguns with barrel

length less than 18 inches controlled in 0A502;

* * * * *


## PART 772 – DEFINITIONS OF TERMS

38.  The authority citation for part 772 is revised to read as follows:

**Authority:**  50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O.

13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871

(August 13, 2018).

## § 772.1 – [AMENDED]

39.  In § 772.1, in the definition of "specially designed," Note 1 is amended by removing

"0B986" and adding in its place "0B505.c"; and the definition of "complete breech mechanisms"

is added as set forth below:

## § 772.1 Definitions of terms as used in the Export Administration Regulations (EAR).

* * * * *

_Complete breech mechanisms_.  The mechanism for opening and closing the breech of a breech-

loading firearm, especially of a heavy-caliber weapon.

* * * * *

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004694

## PART 774 - THE COMMERCE CONTROL LIST

40. The authority citation for 15 CFR part 774 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 10 U.S.C. 7420; 10 U.S.C. 7430(e); 22 U.S.C. 287c, 22 U.S.C. 3201 *et seq.*; 22 U.S.C. 6004; 42 U.S.C. 2139a; 15 U.S.C. 1824a; 50 U.S.C. 4305; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

41.  In Supplement No. 1 to part 774, Category 0, revise Export Control Classification Number (ECCN) 0A018 to read as follows:

**Supplement No. 1 to Part 774 – The Commerce Control List**

\* \* \* \* \*

**0A018 Items on the Wassenaar Munitions List (see List of Items Controlled).**

No items currently are in this ECCN.  See ECCN 0A505 for "parts" and "components" for ammunition that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b.

WASHSTATEC004695

42.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A018 and 0A521, entries for ECCNs 0A501, 0A502, 0A503, 0A504, and 0A505 to read as follows:

**0A501 Firearms (except 0A502 shotguns) and related commodities as follows (see List of Items controlled).**

**License Requirements**

*Reason for Control:* NS, RS, FC, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except 0A501.y | NS Column 1 |
| RS applies to entire entry except 0A501.y | RS Column 1 |
| FC applies to entire entry except 0A501.y | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

*License Requirement Note:* In addition to using the Commerce Country Chart to determine license requirements, a license is required for exports and reexports of ECCN 0A501.y.7 firearms to the People's Republic of China.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*  $500 for 0A501.c, .d, and .x.

WASHSTATEC004696

$500 for 0A501.c, .d, .e, and .x if the ultimate destination is Canada.

*GBS*: N/A

*CIV*: N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in this entry.

**List of Items Controlled**

*Related Controls*: (1) Firearms that are fully automatic, and magazines with a capacity of greater than 50 rounds, are "subject to the ITAR."  (2) See ECCN 0A502 for shotguns and their "parts" and "components" that are subject to the EAR.  Also see ECCN 0A502 for shot-pistols.  (3) See ECCN 0A504 and USML Category XII for controls on optical sighting devices.

*Related Definitions*: N/A

*Items*:

a.      Non-automatic and semi-automatic firearms equal to .50 caliber (12.7 mm) or less.

WASHSTATEC004697

*Note 1 to paragraph 0A501.a:* '*Combination pistols' are controlled under ECCN 0A501.a.  A 'combination pistol' (a.k.a., a combination gun) has at least one rifled barrel and at least one smoothbore barrel (generally a shotgun style barrel).*

b.      Non-automatic and non-semi-automatic rifles, carbines, revolvers or pistols with a caliber greater than .50 inches (12.7 mm) but less than or equal to .72 inches (18.0 mm).

c.      The following types of "parts" and "components" if "specially designed" for a commodity controlled by paragraph .a or .b of this entry, or USML Category I (unless listed in USML Category I(g) or (h)):  barrels, cylinders, barrel extensions, mounting blocks (trunnions), bolts, bolt carriers, operating rods, gas pistons, trigger housings, triggers, hammers, sears, disconnectors, pistol grips that contain fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors) and buttstocks that contain fire control "parts" or "components."

d.      Detachable magazines with a capacity of greater than 16 rounds "specially designed" for a commodity controlled by paragraph .a or .b of this entry.

*Note 2 to paragraph 0A501.d:* *Magazines with a capacity of 16 rounds or less are controlled under 0A501.x.*

e.      Receivers (frames) and "complete breech mechanisms," including castings, forgings stampings, or machined items thereof, "specially designed" for a commodity by controlled by paragraph .a or .b of this entry.

f. through w. [Reserved]

WASHSTATEC004698

x.      "Parts" and "components" that are "specially designed" for a commodity classified under paragraphs .a through .c of this entry or the USML and not elsewhere specified on the USML or CCL.

y.      Specific "parts," "components," "accessories" and "attachments" "specially designed" for a commodity subject to control in this ECCN or common to a defense article in USML Category I and not elsewhere specified in the USML or CCL as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor.

      y.1.      Stocks or grips, that do not contain any fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors);"

      y.2.      Scope mounts or accessory rails;

      y.3.      Iron sights;

      y.4.      Sling swivels;

      y.5.      Butt plates or recoil pads;

      y.6.      Bayonets; and

      y.7.      Firearms manufactured from 1890 to 1898 and reproductions thereof.

      ***Technical Note 1 to 0A501:*** *The controls on "parts" and "components" in ECCN 0A501 include those "parts" and "components" that are common to firearms described in ECCN 0A501 and to those firearms "subject to the ITAR."*

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004699

*Note 3 to 0A501:*  *Antique firearms (i.e., those manufactured before 1890) and reproductions thereof, muzzle loading black powder firearms except those designs based on centerfire weapons of a post 1937 design, BB guns, pellet rifles, paint ball, and all other air rifles are EAR99 commodities.*

*Note 4 to 0A501: Muzzle loading (black powder) firearms with a caliber less than 20 mm that were manufactured later than 1937 that are used for hunting or sporting purposes that were not "specially designed" for military use and are not "subject to the ITAR" nor controlled as shotguns under ECCN 0A502 are EAR99 commodities.*

**0A502 Shotguns; shotguns "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes; "complete breech mechanisms;" except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use.**

**License Requirements**

*Reason for Control*:  RS, CC, FC, UN, AT, NS

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
|---|---|
| NS applies to shotguns with a barrel length less than 18 inches (45.72 cm) | NS Column 1 |
| RS applies to shotguns with a barrel | RS Column 1 |

WASHSTATEC004700

| | |
|---|---|
| length less than 18 inches (45.72 cm) | |
| FC applies to entire entry | FC Column 1 |
| CC applies to shotguns with a barrel length less than 24 in. (60.96 cm) and shotgun "components" controlled by this entry regardless of end user | CC Column 1 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm), regardless of end user | CC Column 2 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm) if for sale or resale to police or law enforcement | CC Column 3 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to shotguns with a barrel length less than 18 inches (45.72 cm) | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   $500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes.

$500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes, "complete breech

WASHSTATEC004701

mechanisms" if the ultimate destination is Canada.

*GBS:*   N/A

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*:  Shotguns that are fully automatic are "subject to the ITAR."

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**Note 1 to 0A502:** *Shotguns made in or before 1898 are considered antique shotguns and designated as EAR99.*

**Technical Note:** *Shot pistols or shotguns that have had the shoulder stock removed and a pistol grip attached are controlled by ECCN 0A502.  Slug guns are also controlled under ECCN 0A502.*

**0A503 Discharge type arms; non-lethal or less-lethal grenades and projectiles, and "specially designed" "parts" and "components" of those projectiles; and devices to administer electric shock, for example, stun guns, shock batons, shock shields, electric cattle prods, immobilization guns and projectiles; except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use; and "specially designed" "parts" and "components," n.e.s.**

**License Requirements**

*Reason for Control:*  CC, UN

WASHSTATEC004702

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | A license is required for ALL destinations, except Canada, regardless of end use.  Accordingly, a column specific to this control does not appear on the Commerce Country Chart.  (See part 742 of the EAR for additional information). |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

  *LVS:*   N/A

  *GBS:*   N/A

  *CIV:*   N/A

**List of Items Controlled**

   *Related Controls*: Law enforcement restraint devices that administer an electric shock are controlled under ECCN 0A982.  Electronic devices that monitor and report a person's location to enforce restrictions on movement for law enforcement or penal reasons are controlled under ECCN 3A981.

   *Related Definitions*: N/A

   *Items*: The list of items controlled is contained in the ECCN heading.

WASHSTATEC004703

**0A504 Optical sighting devices for firearms (including shotguns controlled by 0A502); and "components" as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* FC, RS, CC, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| RS applies to paragraph .i | RS Column 1 |
| FC applies to paragraphs .a, .b, .c, d, .e, .g, and .i of this entry | FC Column 1 |
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See §746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $500 for 0A504.g.

*GBS:* N/A

*CIV:* N/A

**List of Items Controlled**

*Related Controls:* (1) See USML Category XII(c) for sighting devices using second generation image intensifier tubes having luminous sensitivity greater than 350 µA/lm, or third generation or higher image intensifier tubes, that are "subject to the ITAR." (2) See USML Category XII(b) for laser aiming or laser illumination systems "subject to the ITAR." (3) Section 744.9 of the EAR imposes a license requirement on certain commodities described in

WASHSTATEC004704

0A504 if being exported, reexported, or transferred (in-country) for use by a military end-user or for incorporation into an item controlled by ECCN 0A919.

*Related Definitions:* N/A

*Items:*

a.  Telescopic sights.

b.  Holographic sights.

c.  Reflex or "red dot" sights.

d.  Reticle sights.

e.  Other sighting devices that contain optical elements.

f.  Laser aiming devices or laser illuminators ''specially designed'' for use on firearms, and having an operational wavelength exceeding 400 nm but not exceeding 710 nm.


*Note 1 to 0A504.f: 0A504.f does not control laser boresighting devices that must be placed in the bore or chamber to provide a reference for aligning the firearms sights.*


g.  Lenses, other optical elements and adjustment mechanisms for articles in paragraphs .a, .b, .c, .d, .e, or .i.

h.  [Reserved]

i.  Riflescopes that were not "subject to the EAR" as of [INSERT DATE ONE DAY PRIOR TO THE EFFECTIVE DATE OF THE FINAL RULE] and are "specially designed" for use in firearms that are "subject to the ITAR."

WASHSTATEC004705

*Note 2 to paragraph i:*  For purpose of the application of "specially designed" for the riflescopes controlled under 0A504.i, paragraph (a)(1) of the definition of "specially designed" in § 772.1 of the EAR is what is used to determine whether the riflescope is "specially designed."

**0A505  Ammunition as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, CC, FC, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to 0A505.a and .x | NS Column 1 |
| RS applies to 0A505.a and .x | RS Column 1 |
| CC applies to 0A505.b | CC Column 1 |
| FC applies to entire entry except 0A505.d | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to 0A505.a, .d,  and .x | AT Column 1 |
| AT applies to 0A505.c | A license is required for items controlled by paragraph .c of this entry to North Korea for anti-terrorism reasons.  The Commerce Country Chart is not designed to determine AT licensing requirements for this entry.  See §742.19 of the EAR for additional information. |

WASHSTATEC004706

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500 for items in 0A505.x, except $3,000 for items in 0A505.x that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b. (*i.e.*, "Specially designed" components and parts for ammunition, except cartridge cases, powder bags, bullets, jackets, cores, shells, projectiles, boosters, fuses and components, primers, and other detonating devices and ammunition belting and linking machines (all of which are "subject to the ITAR"). (See 22 CFR parts 120 through 130))

*GBS*: N/A

*CIV*: N/A


**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A505.


**List of Items Controlled**

*Related Controls*:  (1) Ammunition for modern heavy weapons such as howitzers, artillery, cannon, mortars and recoilless rifles as well as inherently military ammunition types such as ammunition preassembled into links or belts, caseless ammunition, tracer ammunition, ammunition with a depleted uranium projectile or a projectile with a hardened tip or core and ammunition with an explosive projectile are "subject to the ITAR."  (2) Percussion caps, and lead balls and bullets, for use with muzzle-loading firearms are EAR99 items.

*Related Definitions*:  N/A


[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004707

*Items*:

a.      Ammunition for firearms controlled by ECCN 0A501 or USML Category I and not enumerated in paragraph .b, .c, or .d of this entry or in USML Category III.

b.      Buckshot (No. 4 .24'' diameter and larger) shotgun shells.

c.      Shotgun shells (including less than lethal rounds) that do not contain buckshot; and "specially designed" "parts" and "components" of shotgun shells.

   ***Note 1 to 0A505.c:***  *Shotgun shells that contain only chemical irritants are controlled under ECCN 1A984.*

d.      Blank ammunition for firearms controlled by ECCN 0A501 and not enumerated in USML Category III.

e. through w. [Reserved]

x.      "Parts" and "components" that are "specially designed" for a commodity subject to control in this ECCN or a defense article in USML Category III and not elsewhere specified on the USML, the CCL or paragraph .d of this entry.

   ***Note 2 to 0A505.x:*** *The controls on "parts" and "components" in this entry include Berdan and boxer primers, metallic cartridge cases, and standard metallic projectiles such as full metal jacket, lead core, and copper projectiles.*

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004708

*Note 3 to 0A505.x:*   The controls on "parts" and "components" in this entry include those "parts" and "components" that are common to ammunition and ordnance described in this entry and to those enumerated in USML Category III.

*Note 4 to 0A505:* Lead shot smaller than No. 4 Buckshot, empty and unprimed shotgun shells, shotgun wads, smokeless gunpowder, 'Dummy rounds' and blank rounds (unless linked or belted), not incorporating a lethal or non-lethal projectile(s) are designated EAR99.  A 'dummy round or drill round' is a round that is completely inert, i.e., contains no primer, propellant, or explosive charge.  It is typically used to check weapon function and for crew training.

43.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A521 and 0A604, an entry for ECCN 0A602 to read as follows:

**0A602  Guns and Armament as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |

WASHSTATEC004709

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A602.

**List of Items Controlled**

*Related Controls*: (1) Modern heavy weapons such as howitzers, artillery, cannon, mortars, and recoilless rifles are "subject to the ITAR."  (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.  (3) See ECCN 0A606 for engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or USML Category VII.

WASHSTATEC004710

*Related Definitions*:  N/A

*Items*:

a.      Guns and armament manufactured between 1890 and 1919.

b.      Military flame throwers with an effective range less than 20 meters.

c. through w.   [Reserved]

x.       "Parts" and "components" that are "specially designed" for a commodity subject to control in paragraphs .a or .b of this ECCN or a defense article in USML Category II and not elsewhere specified on the USML or the CCL.

   *Note 1 to 0A602.x: Engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or a defense article in USML Category VII are controlled under ECCN 0A606.x.*

   *Note 2 to 0A602:  "Parts," "components," "accessories," and "attachments" specified in USML subcategory II(j) are subject to the controls of that paragraph.*

   *Note 3 to 0A602:  Black powder guns and armament manufactured in or prior to 1890 and replicas thereof designed for use with black powder propellants are designated EAR99.*

**Supplement No. 1 to Part 774 – [AMENDED]**

WASHSTATEC004711

44.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0A918, 0A984, 0A985, 0A986, and 0A987.

45.  In Supplement No. 1 to part 774, Category 0, revise ECCN 0A988 to read as follows:

**0A988  Conventional military steel helmets.**

No items currently are in this ECCN.  See ECCN 1A613.y.1 for conventional steel helmets that, immediately prior to July 1, 2014, were classified under 0A988.

46.  In Supplement No. 1 to part 774, Category 0, add, before the entry for ECCN 0B521, entries for ECCNs 0B501 and 0B505 to read as follows:

**0B501 Test, inspection, and production "equipment" and related commodities for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A501 or USML Category I as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*:  NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
| --- | --- |
|  |  |

WASHSTATEC004712

| NS applies to entire entry except equipment for ECCN 0A501.y | NS Column 1 |
|---|---|
| RS applies to entire entry except equipment for ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any item in this entry.

**List of Items Controlled**

WASHSTATEC004713

*Related Controls:* N/A

*Related Definitions:* N/A

*Items:*

a.      Small arms chambering machines.

b.      Small arms deep hole drilling machines and drills therefor.

c.      Small arms rifling machines.

d.      Small arms spill boring machines.

e.      Production equipment (including dies, fixtures, and other tooling) "specially designed" for the "production" of the items controlled in 0A501.a through .x. or USML Category I.

**0B505 Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A505 or USML Category III, except equipment for the hand loading of cartridges and shotgun shells, as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to paragraphs .a and .x | NS Column 1 |
| RS applies to paragraphs .a and .x | RS Column 1 |

WASHSTATEC004714

| | |
|---|---|
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to paragraphs .a, .d, and .x | AT Column 1 |
| AT applies to paragraph .c | A license is required for export or reexport of these items to North Korea for anti-terrorism reasons. |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

 *LVS:* $3000

 *GBS:* N/A

 *CIV:* N/A

**Special conditions for STA**

 *STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B505.

**List of Items Controlled**

 *Related Controls*: N/A

 *Related Definitions*: N/A

 *Items*:

a. Production equipment (including tooling, templates, jigs, mandrels, molds, dies, fixtures, alignment mechanisms, and test equipment), not enumerated in USML Category III that are "specially designed" for the "production" of commodities controlled by ECCN 0A505.a or .x or USML Category III.

WASHSTATEC004715

b.      Equipment "specially designed" for the "production" of commodities in ECCN 0A505.b.

c.      Equipment "specially designed" for the "production" of commodities in ECCN 0A505.c.

d.      Equipment "specially designed" for the "production" of commodities in ECCN 0A505.d.

e. through .w    [Reserved]

x.      "Parts" and "components" "specially designed" for a commodity subject to control in paragraph .a of this entry.

47.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0B521 and 0B604, an entry for ECCN 0B602 to read as follows:

**0B602 Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A602 or USML Category II as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004716

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

    *LVS:* $3000

    *GBS:* N/A

    *CIV:* N/A

**Special conditions for STA**

    *STA*: Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B602.

**List of Items Controlled**

    *Related Controls:* N/A

    *Related Definitions:* N/A

    *Items:*

a.    The following commodities if "specially designed" for the "development" or "production" of commodities enumerated in ECCN 0A602.a or USML Category II:

WASHSTATEC004717

a.1.     Gun barrel rifling and broaching machines and tools therefor;

a.2.     Gun barrel rifling machines;

a.3.     Gun barrel trepanning machines;

a.4.     Gun boring and turning machines;

a.5.     Gun honing machines of 6 feet (183 cm) stroke or more;

a.6.     Gun jump screw lathes;

a.7.     Gun rifling machines; and

a.8.     Barrel straightening presses.

b.     Jigs and fixtures and other metal-working implements or accessories of the kinds exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

c.     Other tooling and equipment, "specially designed" for the "production" of items in ECCN 0A602 or USML Category II.

d.     Test and evaluation equipment and test models, including diagnostic instrumentation and physical test models, "specially designed" for items in ECCN 0A602 or USML Category II.


**Supplement No. 1 to Part 774 – [AMENDED]**

48. In Supplement No. 1 to part 774, Category 0, remove ECCN 0B986.

WASHSTATEC004718

49. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D001 and 0D521, entries for ECCNs 0D501 and 0D505 to read as follows:

**0D501  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A501 or 0B501.**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | NS Column 1 |
| RS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004719

| AT applies to entire entry | AT Column 1 |
|---|---|

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

    *CIV*:  N/A

    *TSR*:  N/A

**Special conditions for STA**

    *STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D501.

**List of Items Controlled**

    *Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category I is "subject to the ITAR".

    *Related Definitions*:  N/A

    *Items*: The list of items controlled is contained in this ECCN heading.

**0D505  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A505 or 0B505.**

WASHSTATEC004720

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a .and .x | NS Column 1 |
| RS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a and .x | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to "software" for commodities in ECCN 0A505.a, .d, or .x and equipment in ECCN 0B505.a, .d, or .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004721

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D505.

**List of Items Controlled**

*Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category III is "subject to the ITAR".

*Related Definitions*:  N/A

*Items*: The list of items controlled is contained in this ECCN heading.

50. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D521 and 0D604, an entry for ECCN 0D602 to read as follows:

**0D602  "Software" "specially designed" for the "development," "production," operation or maintenance of commodities controlled by 0A602 or 0B602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

WASHSTATEC004722

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

    *CIV*:  N/A

    *TSR*:  N/A

**Special conditions for STA**

    *STA*:    Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0D602.

**List of Items Controlled**

    *Related Controls*:  (1) "Software" required for and directly related to articles enumerated in USML Category II is "subject to the ITAR".   (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004723

*Related Definitions*: N/A

*Items*:   "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by ECCN 0A602 and ECCN 0B602.

    51.  In Supplement No. 1 to part 774, Category 0, remove ECCN 0E018.

    52.  In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E001 and 0E521, entries for ECCNs 0E501, 0E502, 0E504, and 0E505 to read as follows:

**0E501 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by 0A501 or 0B501 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004724

| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

> *CIV*:  N/A

> *TSR*:  N/A

**Special conditions for STA**

> *STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any "technology" in ECCN 0E501.

**List of Items Controlled**

> *Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR."

> *Related Definitions*: N/A

> *Items*:

a.      "Technology" "required" for the "development" or "production" of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

WASHSTATEC004725

b.      "Technology" "required" for the operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

**0E502  "Technology" "required" for the "development" or "production" of commodities controlled by 0A502.**

**License Requirements**

*Reason for Control*:  CC, UN

| Controls | Country Chart (See Supp. No. 1 part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

WASHSTATEC004726

*Related Controls*: Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**0E504 "Technology" "required" for the "development" or "production" of commodities controlled by 0A504 that incorporate a focal plane array or image**

**intensifier tube.**

**License Requirements**

*Reason for Control:* RS, UN, AT

| Controls | Country Chart (See Supp. No. 1 part 738) |
|---|---|
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004727

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**0E505 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A505.**

**License Requirements**

*Reason for Control:* NS, RS, UN, CC, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505; and for "software" for that equipment | NS Column 1 |

WASHSTATEC004728

| | |
|---|---|
| and those commodities in 0D505 | |
| RS applies to entire entry except "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505 and for "software" for those commodities and that equipment in 0D505 | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| CC applies to "technology" for the "development" or "production" of commodities in 0A505.b | CC Column 1 |
| AT applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a, .d, and .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

WASHSTATEC004729

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "technology" in 0E505.

**List of Items Controlled**

*Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category III are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in this ECCN heading.

53.  In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E521 and 0E604, an entry for ECCN 0E602:

**0E602  "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A602 or 0B602, or "software" controlled by 0D602 as follows (see List of Items Controlled).**

WASHSTATEC004730

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0E602.

**List of Items Controlled**

WASHSTATEC004731

*Related Controls*:  Technical data directly related to articles enumerated in USML Category II are "subject to the ITAR."

*Related Definitions*: N/A

*Items*:  "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A602 or 0B602, or "software" controlled by ECCN 0D602.

**Supplement No. 1 to Part 774 – [AMENDED]**

54.  In Supplement No. 1 to part 774, Category 0, remove ECCN 0E918.

55.  In Supplement No. 1 to part 774, Category 0, revise ECCN 0E982 to read as follows.

**0E982 "Technology" exclusively for the "development" or "production" of equipment controlled by 0A982 or 0A503.**

**License Requirements**

*Reason for Control:*   CC

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004732

| Control(s) |
| --- |
| CC applies to "technology" for items controlled by 0A982 or 0A503. A license is required for ALL destinations, except Canada, regardless of end use. Accordingly, a column specific to this control does not appear on the Commerce Country Chart. (See part 742 of the EAR for additional information.) |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

> *CIV:*   N/A

> *TSR:*   N/A

**List of Items Controlled**

> *Related Controls*: N/A

> *Related Definitions*: N/A

> *Items*:

The list of items controlled is contained in the ECCN heading.

**Supplement No. 1 to Part 774 – [AMENDED]**

> 56.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0E984 and 0E987.

[ PAGE  \* MERGEFORMAT ]

57.  In Supplement No. 1 to part 774, Category 1, revise ECCN 1A984 to read as follows:

**1A984   Chemical agents, including tear gas formulation containing 1 percent or less of orthochlorobenzalmalononitrile (CS), or 1 percent or less of chloroacetophenone (CN), except in individual containers with a net weight of 20 grams or less; liquid pepper except when packaged in individual containers with a net weight of 3 ounces (85.05 grams) or less; smoke bombs; non-irritant smoke flares, canisters, grenades and charges; and other pyrotechnic articles (excluding shotgun shells, unless the shotgun shells contain only chemical irritants) having dual military and commercial use, and "parts" and "components" "specially designed" therefor, n.e.s.**

**License Requirements**

*Reason for Control*:   CC

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   N/A

*GBS:*   N/A

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004734

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

58.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2B004 to read as follows:

**2B004 Hot "isostatic presses" having all of the characteristics described in the List of Items Controlled, and "specially designed" "components" and "accessories" therefor.**

**License Requirements**

*Reason for Control*:  NS, MT NP, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 2 |
| MT applies to entire entry | MT Column 1 |

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004735

| | |
|---|---|
| NP applies to entire entry, except 2B004.b.3 and presses with maximum working pressures below 69 MPa | NP Column 1 |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS*:   N/A

*GBS*:   N/A

*CIV*:   N/A

**List of Items Controlled**

*Related Controls*:  (1) See ECCN 2D001 for software for items controlled under this entry. (2) See ECCNs 2E001 ("development"), 2E002 ("production"), and 2E101 ("use") for technology for items controlled under this entry. (3) For "specially designed" dies, molds and tooling, see ECCNs 0B501, 0B602, 0B606, 1B003, 9B004, and 9B009.  (4) For additional controls on dies, molds and tooling, see ECCNs 1B101.d, 2B104, and 2B204.  (5) Also see ECCNs 2B117 and 2B999.a.

*Related Definitions*: N/A

*Items*:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004736

a. A controlled thermal environment within the closed cavity and possessing a chamber cavity with an inside diameter of 406 mm or more; *and*

b. Having any of the following:

b.1. A maximum working pressure exceeding 207 MPa;

b.2. A controlled thermal environment exceeding 1,773 K (1,500 °C); *or*

b.3. A facility for hydrocarbon impregnation and removal of resultant gaseous degradation products.

*Technical Note:  The inside chamber dimension is that of the chamber in which both the working temperature and the working pressure are achieved and does not include fixtures. That dimension will be the smaller of either the inside diameter of the pressure chamber or the inside diameter of the insulated furnace chamber, depending on which of the two chambers is located inside the other.*

59.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2B018 to read as follows:

WASHSTATEC004737

**2B018  Equipment on the Wassenaar Arrangement Munitions List.**

No commodities currently are controlled by this entry.  Commodities formerly controlled by paragraphs .a through .d, .m, and .s of this entry are controlled in ECCN 0B606.  Commodities formerly controlled by paragraphs .e through .l of this entry are controlled by ECCN 0B602.  Commodities formerly controlled by paragraphs .o through .r of this entry are controlled by ECCN 0B501.  Commodities formerly controlled by paragraph .n of this entry are controlled in ECCN 0B501 if they are "specially designed" for the "production" of the items controlled in ECCN 0A501.a through .x or USML Category I and controlled in ECCN 0B602 if they are of the kind exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

60.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2D018 to read as follows:

**2D018 "Software" for the "development," "production," or "use" of equipment controlled by 2B018.**

No software is currently controlled under this entry.  See ECCNs 0D501, 0D602, and 0D606 for software formerly controlled under this entry.

61.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E001 to read as follows:

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004738

**2E001 "Technology" according to the General Technology Note for the "development" of equipment or "software" controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999), or 2D (except 2D983, 2D984, 2D991, 2D992, or 2D994).**

**License Requirements**

*Reason for Control*:  NS, MT, NP, CB, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for items controlled by 2A001, 2B001 to 2B009, 2D001 or 2D002 | NS Column 1 |
| MT applies to "technology"   for items controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, 2B119 to 2B122, 2D001, or 2D101 for MT reasons | MT Column 1 |
| NP applies to "technology" for items controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233, 2D001, | NP Column 1 |

WASHSTATEC004739

| | |
|---|---|
| 2D002, 2D101, 2D201, or 2D202 for NP reasons | |
| NP applies to "technology" for items controlled by 2A290, 2A291, or 2D290 for NP reasons | NP Column 2 |
| CB applies to "technology" for equipment controlled by 2B350 to 2B352, valves controlled by 2A226 having the characteristics of those controlled by 2B350.g, and software controlled by 2D351 | CB Column 2 |
| AT applies to entire entry | AT Column 1 |

**Reporting Requirements**

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

WASHSTATEC004740

**Special Conditions for STA**

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "development" of "software" specified in the License Exception STA paragraph in the License Exception section of ECCN 2D001 or for the "development" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls*: See also 2E101, 2E201, and 2E301

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

**Note 1 to 2E001:** *ECCN 2E001 includes "technology" for the integration of probe systems into coordinate measurement machines specified by 2B006.a.*

62.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E002 to read as follows:

WASHSTATEC004741

**2E002 "Technology" according to the General Technology Note for the "production" of equipment controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), or 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999).**

**License Requirements**

*Reason for Control*:  NS, MT, NP, CB, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for equipment controlled by 2A001, 2B001 to 2B009 | NS Column 1 |
| MT applies to "technology" for equipment controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, or 2B119 to 2B122 for MT reasons | MT Column 1 |
| NP applies to "technology" for equipment controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233 for NP reasons | NP Column 1 |
| NP applies to "technology" for equipment controlled by 2A290 or 2A291 for NP reasons | NP Column 2 |

WASHSTATEC004742

| CB applies to "technology" for equipment Controlled by 2B350 to 2B352 and for valves controlled by 2A226 having the characteristics of those controlled by 2B350.g | CB Column 2 |
|---|---|
| AT applies to entire entry | AT Column 1 |

**Reporting Requirements**

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

**Special Conditions for STA**

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "production" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified

WASHSTATEC004743

in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

63. In Supplement No. 1 to part 774, Category 7, revise ECCN 7A611 to read as follows:

**7A611  Military fire control, laser, imaging, and guidance equipment, as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, MT, RS, AT, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738). |
|---|---|
| NS applies to entire entry except | NS Column 1 |

[ PAGE  \* MERGEFORMAT ]

| 7A611.y | |
|---|---|
| MT applies to commodities in 7A611.a that meet or exceed the parameters in 7A103.b or .c | MT Column 1 |
| RS applies to entire entry except 7A611.y | RS Column 1 |
| AT applies to entire entry | AT Column 1 |
| UN applies to entire entry except 7A611.y | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $1500

*GBS:* N/A

*CIV:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 7A611.

**List of Items Controlled**

*Related Controls*:  (1) Military fire control, laser, imaging, and guidance equipment that are enumerated in USML Category XII, and technical data (including software) directly related thereto, are subject to the ITAR.  (2) See Related Controls in ECCNs 0A504, 2A984, 6A002,

[ PAGE  \* MERGEFORMAT ]

WASHSTATEC004745

6A003, 6A004, 6A005, 6A007, 6A008, 6A107, 7A001, 7A002, 7A003, 7A005, 7A101, 7A102, and 7A103.   (3) See ECCN 3A611 and USML Category XI for controls on countermeasure equipment.   (4) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S. origin "600 series" controlled content.

*Related Definitions*: N/A

*Items*:

a. Guidance or navigation systems, not elsewhere specified on the USML, that are "specially designed" for a defense article on the USML or for a 600 series item.

b. to w. [RESERVED]

x. "Parts," "components," "accessories," and "attachments," including accelerometers, gyros, angular rate sensors, gravity meters (gravimeters), and inertial measurement units (IMUs), that are "specially designed" for defense articles controlled by USML Category XII or items controlled by 7A611, and that are NOT:

1. Enumerated or controlled in the USML or elsewhere within ECCN 7A611;

2. Described in ECCNs 6A007, 6A107, 7A001, 7A002, 7A003, 7A101, 7A102, or 7A103; or

3. Elsewhere specified in ECCN 7A611.y or 3A611.y.

y. Specific "parts," "components," "accessories," and "attachments" "specially designed" for a commodity subject to control in this ECCN or a defense article in Category XII and not elsewhere specified on the USML or in the CCL, as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor:

WASHSTATEC004746

y.1 [RESERVED]

Dated:

**Richard E. Ashooh**

*Assistant Secretary for Export Administration.*

WASHSTATEC004747

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:** Department of State.

**ACTION:** Final rule.

**§ 121.1 The United States Munitions List.**

\* \* \* \* \*

**Category I—Firearms and Related Articles**

   \*(a) Firearms using caseless ammunition.

   \*(b) Fully automatic firearms to .50 caliber (12.7 mm) inclusive.

   \*(c) Firearms specially designed to integrate fire control, automatic
tracking, or automatic firing (*e.g.*, Precision Guided Firearms).

   *Note to paragraph (c):* Integration does not include only attaching to the
firearm or rail.

   \*(d) Fully automatic shotguns regardless of gauge.

   \*(e) Silencers, mufflers, and sound suppressors.

WASHSTATEC004748

(f) [Reserved]

(g) Barrels, receivers (frames), bolts, bolt carriers, slides, or sears specially designed for the articles in paragraphs (a), (b), and (d) of this category.

(h) Parts, components, accessories, and attachments, as follows:

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm;

(3) Parts and components specially designed for defense articles described in paragraphs (c) and (e); or

(4) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data. (*See* § 125.4 of this subchapter

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

for exemptions.)

(j)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

**Category II—Guns and Armament**

(a) Guns and armament greater than .50 caliber (12.7 mm), as follows:

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004750

*(1) Guns, howitzers, artillery, and cannons;

*(2) Mortars;

*(3) Recoilless rifles;

*(4) Grenade launchers; or

(5) Developmental guns and armament greater than .50 caliber (12.7 mm) funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

[ PAGE   \\* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004751

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flamethrowers with an effective range greater than or equal to 20 meters.

(c) [Reserved]

*(d) Kinetic energy weapon systems specially designed for destruction or rendering mission-abort of a target.

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire

[ PAGE   \* MERGEFORMAT ]

modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

(e) Signature reduction devices specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category (*e.g.*, muzzle flash suppression devices).

(f)–(i) [Reserved]

(j) Parts, components, accessories, and attachments, as follows:

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004753

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004754

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004755

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), and (j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(l)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition and Ordnance**

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004756

(a) Ammunition, as follows:

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004757

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

(b) Ammunition/ordnance handling equipment specially designed for the articles controlled in this category, as follows:

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004758

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]

(d) Parts and components for the articles in this category, as follows:

(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive;

(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004759

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004760

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles enumerated in paragraphs (a), (b), and (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(f)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004761

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting, or popping.

*Note 3 to Category III:* Grenades containing non-lethal or less lethal projectiles are under the jurisdiction of the Department of Commerce.

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004762

Message

| | |
|---|---|
| **From:** | Hart, Robert L [HartRL@state.gov] |
| **Sent:** | 11/12/2019 7:01:57 PM |
| **To:** | Sanchez, Michael A [SanchezMA4@state.gov] |
| **Subject:** | RE: |
| **Attachments:** | Tab 3 - Line-inLine-out Comparison of Current USML Categories I, II, and III with these USML Categories as Revised V6 - G.docx |

Rob Hart
202.736.9221 | hartrl@state.gov

---

**From:** Sanchez, Michael A <SanchezMA4@state.gov>
**Sent:** Tuesday, November 12, 2019 2:00 PM
**To:** Hart, Robert L <HartRL@state.gov>
**Subject:**

Can you give Mike a quick call at 7-9379?  Its Joe

Michael A. Sanchez
Special Assistant, Bureau of Legislative Affairs (H)
HST 7805 | Office:  202-647-9379| SanchezMA4@state.gov

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:** Department of State.

**ACTION:** Final rule.


**§ 121.1 The United States Munitions List.**

\* \* \* \* \*

**Category I—Firearms** and Related Articles

   \*(a) Firearms using caseless ammunition.

   \*(b) Fully automatic firearms to .50 caliber (12.7 mm) inclusive.

   \*(c) Firearms specially designed to integrate fire control, automatic

tracking, or automatic firing (*e.g.*, Precision Guided Firearms).

   *Note to paragraph (c):* Integration does not include only attaching to the

firearm or rail.

   \*(d) Fully automatic shotguns regardless of gauge.

WASHSTATEC004764

*(e) Silencers, mufflers, and sound suppressors.

(f) [Reserved]

(g) Barrels, receivers (frames) bolts, bolt carriers, slides, or sears specially designed for the articles in paragraphs (a), (b), and (d) of this category.

(h) Parts, components, accessories, and attachments, as follows:

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm;

(3) Parts and components specially designed for defense articles described in paragraphs (c) and (e); or

(4) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (*see* §120.10 of this subchapter) and defense services (*see* §120.9 of this subchapter) directly related to the defense articles described in this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense

[ PAGE   \* MERGEFORMAT ]

services using the classified technical data. (See § 125.4 of this subchapter for exemptions.)

(j) – (w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (see § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x)*: Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (see § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

**Category II—Guns and Armament**

[ PAGE   \* MERGEFORMAT ]

(a) Guns and armament greater than caliber .50 (12.7 mm), as follows:

*(1) Guns, howitzers, artillery, and cannons;

*(2) Mortars;

*(3) Recoilless rifles;

*(4) Grenade launchers; or

(5) Developmental guns and armament greater than .50 caliber (12.7 mm) funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE**

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004767

**ONE YEAR AFTER PUBLICATION IN THE FEDERAL**

**REGISTER**], or later.

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flamethrowers with an effective range greater than or equal to 20 meters.

(c) [Reserved]

*(d) Kinetic energy weapon systems specially designed for destruction or rendering mission-abort of a target.

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004768

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

(e) Signature reduction devices specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category (*e.g.*, muzzle flash suppression devices).

(f) – (i) [Reserved]

(j) Parts, components, accessories, and attachments, as follows:

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004769

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004770

container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004771

that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see* §120.10 of this subchapter) and defense services (*see* §120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), and (j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(l) – (w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004772

commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition and Ordnance**

(a) Ammunition, as follows:

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004773

of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE**

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004774

**ONE YEAR AFTER PUBLICATION IN THE FEDERAL**

**REGISTER]**, or later.

(b) Ammunition/ordnance handling equipment specially designed for the articles controlled in this category, as follows:

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]

(d) Parts and components for the articles in this category, as follows:

(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive;

(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;;

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004775

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004776

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (*see* §120.10 of this subchapter) and defense services (*see* §120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), and (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(f) – (w) [Reserved]

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004777

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting or popping.

*Note 3 to Category III:* Grenades containing non-lethal or less lethal projectiles are under the jurisdiction of the Department of Commerce.

\* \* \* \* \*

[ PAGE   \\* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004778

Message

| | |
|---|---|
| **From:** | Hart, Robert L [HartRL@state.gov] |
| **Sent:** | 11/12/2019 7:50:54 PM |
| **To:** | Khawam, Joseph N [KhawamJN@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Koelling, Richard W [KoellingRW@state.gov] |
| **Subject:** | RE: USML Letters |
| **Attachments:** | Tab 3 - Line-inLine-out Comparison of Current USML Categories I, II, and III with these USML Categories as Revised V6 - G.docx |

Joe, here's that document again. Thanks for your help.

Rob Hart
202.736.9221 | hartrl@state.gov

---

**From:** Khawam, Joseph N <KhawamJN@state.gov>
**Sent:** Tuesday, November 12, 2019 2:50 PM
**To:** Heidema, Sarah J <HeidemaSJ@state.gov>; Hart, Robert L <HartRL@state.gov>; Koelling, Richard W <KoellingRW@state.gov>
**Subject:** FW: USML Letters
**Importance:** High

Here are the signed letters. We'll need to pull the AM package to get the remaining documents notified, which I've asked the L special to do. The relevant attachments are Tabs 2-6, except that the line-in, line-out document PM staffers uploaded to Everest was wrong. Rob sent Mike the right one. Rob, can you send the line-in, line-out document that you sent to Mike?

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

---

**From:** Sanchez, Michael A <SanchezMA4@state.gov>
**Sent:** Tuesday, November 12, 2019 2:46 PM
**To:** Khawam, Joseph N <KhawamJN@state.gov>
**Cc:** Darrach, Tamara A <DarrachTA@state.gov>
**Subject:** USML Letters
**Importance:** High

Hi Joe,

Thank you again for coming to our office and clarifying the attachments to be sent this afternoon. As discussed, attached are the signed and dated transmittal letters; PM staffers can pull the attachments from Everest to complete the package, if needed.

Thanks in advance,

Mike

Michael A. Sanchez
Special Assistant, Bureau of Legislative Affairs (H)
HST 7805 | Office: 202-647-9379| SanchezMA4@state.gov

WASHSTATEC004779

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:** Department of State.

**ACTION:** Final rule.

**§ 121.1 The United States Munitions List.**

\* \* \* \* \*

**Category I—Firearms** and Related Articles

  \*(a) Firearms using caseless ammunition.

  \*(b) Fully automatic firearms to .50 caliber (12.7 mm) inclusive.

  \*(c) Firearms specially designed to integrate fire control, automatic

tracking, or automatic firing (*e.g.*, Precision Guided Firearms).

  *Note to paragraph (c):* Integration does not include only attaching to the

firearm or rail.

  \*(d) Fully automatic shotguns regardless of gauge.

WASHSTATEC004780

*(e) Silencers, mufflers, and sound suppressors.

(f) [Reserved]

(g) Barrels, receivers (frames) bolts, bolt carriers, slides, or sears specially designed for the articles in paragraphs (a), (b), and (d) of this category.

(h) Parts, components, accessories, and attachments, as follows:

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm;

(3) Parts and components specially designed for defense articles described in paragraphs (c) and (e); or

(4) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (*see* §120.10 of this subchapter) and defense services (*see* §120.9 of this subchapter) directly related to the defense articles described in this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004781

services using the classified technical data. (See § 125.4 of this subchapter for exemptions.)

(j) – (w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (see § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x)*: Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (see § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

**Category II—Guns and Armament**

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004782

(a) Guns and armament greater than caliber .50 (12.7 mm), as follows:

*(1) Guns, howitzers, artillery, and cannons;

*(2) Mortars;

*(3) Recoilless rifles;

*(4) Grenade launchers; or

(5) Developmental guns and armament greater than .50 caliber (12.7 mm) funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE**

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004783

**ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flamethrowers with an effective range greater than or equal to 20 meters.

(c) [Reserved]

*(d) Kinetic energy weapon systems specially designed for destruction or rendering mission-abort of a target.

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004784

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

(e) Signature reduction devices specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category (*e.g.*, muzzle flash suppression devices).

(f) – (i) [Reserved]

(j) Parts, components, accessories, and attachments, as follows:

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004785

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004786

container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004787

that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see* §120.10 of this subchapter) and defense services (*see* §120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), and (j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(l) – (w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004788

commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition and Ordnance**

(a) Ammunition, as follows:

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004789

of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE**

**ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

(b) Ammunition/ordnance handling equipment specially designed for the articles controlled in this category, as follows:

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]

(d) Parts and components for the articles in this category, as follows:

(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive;

(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;;

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004791

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004792

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (*see* §120.10 of this subchapter) and defense services (*see* §120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), and (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(f) – (w) [Reserved]

[ PAGE   \* MERGEFORMAT ]

WASHSTATEC004793

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting or popping.

*Note 3 to Category III:* Grenades containing non-lethal or less lethal projectiles are under the jurisdiction of the Department of Commerce.

* * * * *

[ PAGE   \* MERGEFORMAT ]

SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Khawam, Joseph N [KhawamJN@state.gov] |
| **Sent:** | 11/12/2019 7:50:29 PM |
| **To:** | Minarich, Christine M [MinarichCM@state.gov] |
| **Subject:** | FW: Activity in Case 2:18-cv-01115-RSL State of Washington et al v. United States Department of State et al Order on Motion for Summary Judgment |
| **Attachments:** | 192 - Order on MSJ.pdf |
| **Importance:** | High |

FYI. The Washington order was released today. Also, we're notifying Congress now of the rule changes. Busy day. I'd be interested in your thoughts about the order after you've read it.

Joseph N. Khawam
Office of the Legal Adviser (L/PM)

---

SENSITIVE BUT UNCLASSIFIED

**From:** Myers, Steven A. (CIV) <Steven.A.Myers@usdoj.gov>
**Sent:** Tuesday, November 12, 2019 1:29 PM
**To:** Coppolino, Tony (CIV) <Tony.Coppolino@usdoj.gov>; Soskin, Eric (CIV) <Eric.Soskin@usdoj.gov>; Robinson, Stuart J. (CIV) <Stuart.J.Robinson@usdoj.gov>; Khawam, Joseph N <KhawamJN@state.gov>; Abraham, Liz (LAbraham@doc.gov) <LAbraham@doc.gov>
**Subject:** FW: Activity in Case 2:18-cv-01115-RSL State of Washington et al v. United States Department of State et al Order on Motion for Summary Judgment
**Importance:** High

This just in from the Washington case.

For all of the foregoing reasons, plaintiffs' motion for summary judgment (Dkt. #170) is GRANTED in part and DENIED in part. The July 27, 2018, "Temporary Modification of Category I of the United States Munitions List" and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED. Defendants' motions for summary judgment (Dkt. #173 and #174) are DENIED.

Steven A. Myers
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L St. NW, Washington DC 20005
Tel: (202) 305-8648  Fax: (202) 616-8470

**From:** ECF@wawd.uscourts.gov <ECF@wawd.uscourts.gov>
**Sent:** Tuesday, November 12, 2019 1:24 PM
**To:** ECF@wawd.uscourts.gov
**Subject:** Activity in Case 2:18-cv-01115-RSL State of Washington et al v. United States Department of State et al Order on Motion for Summary Judgment

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

WASHSTATEC004795

### U.S. District Court

### United States District Court for the Western District of Washington

## Notice of Electronic Filing

The following transaction was entered on 11/12/2019 at 10:24 AM PST and filed on 11/12/2019

| | |
|---|---|
| **Case Name:** | State of Washington et al v. United States Department of State et al |
| **Case Number:** | 2:18-cv-01115-RSL |
| **Filer:** | |
| **Document Number:** | 192 |

**Docket Text:**
**ORDER granting in part and denying in part Plaintiffs' [170] Motion for Summary Judgment; denying Defendants' [173] Cross Motion. The 7/27/2018, "Temporary Modification of Category I of the United States Munitions List" and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED. Signed by Judge Robert S. Lasnik.(MW)**

**2:18-cv-01115-RSL Notice has been electronically mailed to:**

Jeffrey Todd Sprung     jeffs2@atg.wa.gov, comcec@atg.wa.gov, jennahw@atg.wa.gov, rachels@atg.wa.gov

Beth E Terrell     bterrell@terrellmarshall.com, bkinsey@terrellmarshall.com, docketrequests@terrellmarshall.com, filing@terrellmarshall.com, hbrown@terrellmarshall.com, hrota@terrellmarshall.com, jnuss@terrellmarshall.com

Scott J Kaplan     scott.kaplan@doj.state.or.us, aislinn.price@doj.state.or.us, henry.kantor@doj.state.or.us, john.hopkinson@doj.state.or.us

Venkat Balasubramani     venkat@focallaw.com, docket@focallaw.com, misty@focallaw.com

Joel B Ard     Joel@ard.law

Todd Richard Bowers     ToddB@atg.wa.gov, raelynnp@atg.wa.gov

Zachary P Jones     zach.jones@atg.wa.gov, comcec@atg.wa.gov, grace.summers@atg.wa.gov

Kristin Beneski     kristinb1@atg.wa.gov, MorganM1@ATG.WA.GOV, comcec@ATG.WA.GOV, rachels@atg.wa.gov

Jeffrey George Rupert     JeffreyR2@atg.wa.gov, GraceS1@atg.wa.gov, JennahW@atg.wa.gov, comcec@atg.wa.gov

Eric Soskin     Eric.Soskin@usdoj.gov

Jacob Campion     Jacob.Campion@ag.state.mn.us, pamela.hewitt@ag.state.mn.us

Matthew Goldstein     mgoldstein@fmlaw.law, docket@fmlaw.law, dthompson@fmlaw.law,

WASHSTATEC004796

maarong@gmail.com

Ilona M Kirshon     ilona.kirshon@state.de.us

Robyn R Bender     Robyn.Bender@dc.gov

Nathanael Blake     nathan.blake@ag.iowa.gov

Julia Doyle Bernhardt     jbernhardt@oag.state.md.us, mscanlan@oag.state.md.us

Stuart Justin Robinson     stuart.j.robinson@usdoj.gov, fedprog.ecf@usdoj.gov

Deepak Gupta     deepak@guptawessler.com, nabila@guptawessler.com

Steven A Myers     steven.a.myers@usdoj.gov

John D Kimball     jkimball@blankrome.com, mgranito@BlankRome.com, mhindman@blankrome.com, mjesani@blankrome.com

Charles R. Flores     cflores@beckredden.com

Kit Walsh     kit@eff.org

Samuel T Towell     stowell@oag.state.va.us, egrimesey@oag.state.va.us

Benjamin D Battles     benjamin.battles@vermont.gov, karen.farnsworth@vermont.gov

Jonathan Scott Goldman     jgoldman@attorneygeneral.gov, lsheidy@attorneygeneral.gov

Robert T Nakatsuji     Robert.T.Nakatsuji@hawaii.gov, Derek.R.Matsumoto@hawaii.gov

Jimmy R Rock     Jimmy.Rock@dc.gov

Andrew J Saindon     andy.saindon@dc.gov

Nelson R Richards     nelson.richards@doj.ca.gov, mark.beckington@doj.ca.gov

Maura Murphy Osborne     maura.murphyosborne@ct.gov

Michael J Fischer     mfischer@attorneygeneral.gov, athomson@attorneygeneral.gov

Patricia Davis     patriciaa.davis@state.de.us

Steven C Wu     steven.wu@ag.ny.gov

Jeremy M Feigenbaum     Jeremy.Feigenbaum@njoag.gov, Melissa.Medoway@law.njoag.gov

Jonathan B Miller     Jonathan.Miller@state.ma.us

Sripriya Narasimhan     snarasimhan@ncdoj.gov

Jeffrey Paul Dunlap     jdunlap@oag.state.md.us, mscanlan@oag.state.md.us

WASHSTATEC004797

Justin J Sullivan     jjsullivan@riag.ri.gov, ccole@riag.ri.gov

Grant T Sullivan     grant.sullivan@coag.gov, sullivgt@gmail.com

Elizabeth Roberson-Young     erobersonyoung@atg.state.il.us, DKinkead@atg.state.il.us, skrajewski@atg.state.il.us

**2:18-cv-01115-RSL Notice will not be electronically mailed to:**

Benjamin Barber(Terminated)
#17-07936
WASHINGTON COUNTY JAIL
215 SW ADAMS MS35
HILLSBORO, OR 97123-3874

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1035929271 [Date=11/12/2019] [FileNumber=7817680-0] [bf6908c7880fc735295e93b289038a871b1cb90da1c77c05414010c5263f790441 fa7f1ee7d4dde6e416f05d53822fa8703c83fedf92fb3da91dcdd3a425bce0]]

WASHSTATEC004798

1

2

3

4

5

6

                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8    STATE OF WASHINGTON, *et al.*,

9                            Plaintiffs,                    NO. C18-1115RSL

10          v.

11   UNITED STATES DEPARTMENT OF                   ORDER INVALIDATING JULY 27,
     STATE, *et al.*,                              2018, TEMPORARY
                                                   MODIFICATION AND LETTER
12
                             Defendants.
13

14

15          This matter comes before the Court on the parties' cross-motions for summary judgment.

16   Dkt. #170, #173, and #174. Plaintiffs seek a summary determination that the federal defendants

17   violated the Administrative Procedures Act ("APA") when they modified the United States

18   Munitions List ("USML") and issued a letter authorizing the on-line publication of certain

19   computer aided design ("CAD") data files in July 2018. They request that the Court vacate the

20   agency action and permanently enjoin the federal defendants from removing the CAD files at

21
     issue from the USML unless and until they comply with the statutory procedural requirements.
22

23                      **BACKGROUND AND PROCEDURAL HISTORY**

24          Since at least 2013, the federal government had taken the position that the Arms Export

25   Control Act ("AECA"), 22 U.S.C. § 2778, authorizes restrictions on the internet publication of

26

27   ORDER INVALIDATING TEMPORARY
     MODIFICATION AND LETTER - 1
28

WASHSTATEC004799

CAD files that allow users to create guns and their components with a 3D printer. When defendant Defense Distributed posted CAD files for various weapons on its website at the end of 2012, the Directorate of Defense Trade Controls ("DDTC"), which is part of the Department of State, notified Defense Distributed that the publication may have been unauthorized and in violation of the AECA's implementing regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-30. The DDTC explained that making the CAD files available on the internet constituted a disclosure or transfer of technical data to foreign persons and was considered an "export" subject to the AECA and ITAR. The government advised Defense Distributed to remove the files from its website and, if it believed the files were not properly subject to export control, to utilize the commodity jurisdiction ("CJ") procedure to obtain an official determination from the DDTC.

Defense Distributed filed a number of determination requests. When the DDTC failed to make timely rulings, Defense Distributed filed a lawsuit in the United States District Court for the Western District of Texas. Defense Distributed v. U.S. Dep't of State, C15-0372RP (W.D. Tex). That litigation pitted Defense Distributed and the Second Amendment Foundation on one side against the Department of State, the DDTC, and various federal employees on the other. Defense Distributed challenged the federal government's power to regulate its publication of the CAD files on the internet, arguing that the regulation subjected its gun-related speech to a system of prior restraints that was applied in an arbitrary manner in violation of Defense Distributed's First, Second, and Fifth Amendment rights. A month after the Texas litigation was filed, the DDTC determined that some, but not all, of the CAD data files Defense Distributed wanted to publish on the internet were technical data subject to the AECA and ITAR.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 2

WASHSTATEC004800

Defense Distributed filed a motion for preliminary injunction in the Texas litigation to preclude the federal government from imposing prepublication approval requirements on any of its CAD files. The federal government opposed the motion, arguing that:

- "export of Defense Distributed's CAD files could cause serious harm to U.S. national security and foreign policy interests" that "warrant subjecting [the files] to ITAR's export licensing of technical data;"

- Defense Distributed's "CAD files constitute the functional equivalent of defense articles: capable, in the hands of anyone who possesses commercially available 3D printing equipment, of 'automatically' generating a lethal firearm that can be easily modified to be virtually undetectable in metal detectors and other security equipment;"

- "The State Department is particularly concerned that [Defense Distributed's] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or guerrilla groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons;" and

- both the government and the public "have a strong interest in curbing violent regional conflicts elsewhere in the world, especially when such conflict implicates the security of the United States and the world as a whole."

Id., Dkt. #32 at 19-20 (W.D. Tex.) (internal quotation marks and citations omitted). The then-Director of the Office of Defense Trade Controls Management, Lisa V. Aguirre, concluded that the unrestricted export of Defense Distributed's CAD files would result in the production of plastic firearms that are fully operable and virtually undetectable by conventional security measures, that their use to commit terrorism, piracy, assassinations, or other serious crimes would cause serious and long-lasting harm to the foreign policy and national security interests of the United States, that efforts to restrict the availability of these articles to enemies of the United

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 3

WASHSTATEC004801

States would fail, that the proliferation of weapons and related technologies would contribute to a more dangerous international environment, and that the export would undercut the domestic laws of nations that have more restrictive firearm controls and the United States' foreign relations with those nations would suffer. Id., Dkt. #32-1 at ¶ 35.

The Honorable Robert L. Pitman denied Defense Distributed's motion for preliminary injunction, noting that Defense Distributed's avowed purpose is to facilitate "*global* access to, and the collaborative production of, information and knowledge related to the three-dimensional ('3D') printing of arms," and that such activities "undoubtedly increase[] the possibility of outbreak or escalation of conflict" and are of the type Congress authorized the President to regulate through the AECA. Id., Dkt. #43 at 8-9 (emphasis in original). The Fifth Circuit affirmed, finding that "the State Department's stated interest in preventing foreign nationals - including all manner of enemies of this country - from obtaining technical data on how to produce weapons and weapons parts" constitutes "a very strong public interest in national defense and national security." Defense Distributed v. U.S. Dep't of State, 838 F.3d 451, 458 (5th Cir. 2016).

In April 2018, the federal government moved to dismiss Defense Distributed's claims in the Texas litigation, reiterating that what was at stake was "the United States' ability to control the export of weapons - a system of laws and regulations that seeks to ensure that articles useful for warfare or terrorism are not shipped from the United States to other countries (or otherwise provided to foreigners) without authorization, where, beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability." C15-0372RP, Dkt. #92 at 1 (W.D. Tex). Later that month, the parties reached a

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 4

tentative settlement agreement. Pursuant to the settlement, which was not signed until July 29, 2018, the Department of State changed course, abandoning its prior regulatory and litigation positions and allowing the private defendants, Defense Distributed, the Second Amendment Foundation, and Conn Williamson, to publish on the internet CAD files for the automated production of 3D-printed weapons. The federal government specifically agreed, among other things, to publish a notice of proposed rulemaking and final rule revising the United States Munitions List ("USML") that would allow the distribution of the CAD files, to announce a temporary modification of the USML to allow immediate distribution while the final rule was in development, and to issue a letter to Defense Distributed and other defendants advising that the CAD files are approved for public release and unlimited distribution. The federal defendants also acknowledged and agreed that the temporary modification and letter "permits any United States person . . . to access, discuss, use, reproduce, or otherwise benefit from" the CAD files. The announcement of the temporary modification and the issuance of the letter were to occur on or before July 27, 2018. No findings of fact or other statements are provided in the settlement agreement that address, much less invalidate, the federal government's prior analysis regarding the likely impacts of publication on national security or world peace or that otherwise explain the federal government's change of position.

On May 24, 2018, the Department of State published a notice of proposed rulemaking ("NPRM") that implicated the technical data at issue in the litigation. The NPRM proposed an amendment to the ITAR to, *inter alia*, remove certain Category I items (primarily small caliber weapons and their related technical data) from the USML, thereby lifting the requirement to obtain a license for their export. 83 Fed. Reg. 24,198 (May 24, 2018). Although the NPRM did

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 5

not explicitly mention 3D-printed firearms or their related technical data, approximately 12% of the comments received in response to the NPRM did, and all of them opposed lifting the license requirement. The public comment period end on July 9, 2018. The settlement agreement was made public the following day. The temporary modification was published and the letter to the private defendants was issued on July 27, 2018. The temporary modification contains an assertion that the DDTC "has determined that it is in the interest of the security and foreign policy of the United States" to immediately modify Category I of the USML to exclude the technical data at issue in the Texas litigation. Dkt. #171-2 at 2. The public comments opposing exclusion were not considered by the agency when it issued the temporary modification and letter. Dkt. #179-2 at ¶ 7.

Three days after the temporary modification was published, eight states and the District of Columbia filed this lawsuit, alleging that the federal defendants' conduct was *ultra vires* and in violation of the APA and the Tenth Amendment to the United States Constitution.[1] In response to plaintiffs' motion for preliminary injunctive relief, the federal defendants justified the deregulation of the CAD files (along with the delisting of other items within Category I of the USML) by pointing to a Department of Defense determination that the items "do not provide the United States with a critical military or intelligence advantage" and "are already commonly available and not inherently for military end-use." Dkt. #64-1 at 10. After an expedited hearing, the Court found that plaintiffs had shown a likelihood of success on the merits of their APA claim insofar as the temporary modification resulted in the removal of one or more items from

---

[1] An amended complaint, adding eleven more States/Commonwealths as plaintiffs, was filed on August 2, 2018. Dkt. # 29.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 6

WASHSTATEC004804

the USML, that plaintiffs had shown a likelihood of irreparable injury if an injunction did not issue because Defense Distributed had announced its intent to make the CAD files downloadable from its website on August 1, 2018,[2] and that the balance of hardships and the public interest tipped sharply in plaintiffs' favor. The federal defendants were enjoined from implementing or enforcing the temporary modification of the USML and/or the July 27th letter and were required to preserve the status quo *ex ante* as if the modification had not occurred and the letter had not been issued. Dkt. #23 and #95.

In the context of the States' challenge to the issuance of the temporary modification and letter, the federal defendants produced and supplemented the administrative record on which the decision to issue the temporary modification and letter was based.[3] Plaintiffs now seek an order invalidating the temporary modification and letter under the APA and permanently enjoining the federal defendants from removing the computer files at issue from the USML unless and until they comply with the governing procedural requirements. The federal and private defendants oppose plaintiffs' motion and request judgment in their favor.

## DISCUSSION

### A. Jurisdiction

Both the federal and private defendants challenge the Court's jurisdiction over this matter. The federal defendants argue that the States cannot meet prudential standing

---

[2] The private defendants now assert that they published the subject CAD files to the internet immediately upon receipt of the letter and the issuance of the temporary modification. Dkt. #174-1 at 5-6. The publication does not change the following analysis.

[3] Plaintiffs do not concede that the record, as supplemented, is complete or that defendants' various claims of privilege are proper.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 7

WASHSTATEC004805

requirements. The private defendants argue that the issuance of the temporary modification and letter are "committed to agency discretion by law" and not subject to judicial review under 5 U.S.C. § 701(a)(2) and 22 U.S.C. § 2278(h), that listing on the USML is a political question over which the Court lacks subject matter jurisdiction, and that the claims are barred by the Tucker Act.[4]

## 1. Zone of Interests

The question of standing involves both constitutional limitations imposed by Article III of the U.S. Constitution and prudential limitations imposed by the judiciary to limit the exercise of federal jurisdiction. See Warth v. Seldin, 422 U.S. 490, 498 (1975); Allen v. Wright, 468 U.S. 737, 751 (1984). To present a justiciable case or controversy under Article III, plaintiffs must demonstrate an "injury in fact" that is "fairly traceable" to the actions of the defendants and that will likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The prudential limitations are "founded in concern about the proper - and properly limited - role of the courts in a democratic society." Warth, 422 U.S. at 498. The prudential requirement at issue here is that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision on which the claim is based. See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970).

The zone-of-interests test is a standing requirement of general applicability, but "the zone of interests of a statute for purposes of obtaining judicial review of administrative action under

---

[4] Defendants also incorporate by reference arguments made in the preliminary injunction context regarding Article III standing and this lawsuit being an impermissible collateral attack on the outcome of the litigation in the Western District of Texas. Those arguments are again rejected. See Dkt. #95 at 9-12.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 8

the generous review provisions of the APA" is fairly expansive. <u>Bennett v. Spear</u>, 520 U.S. 154, 163 (1997) (internal quotation marks and citations omitted). The test "is not meant to be especially demanding" in the APA context, and the Supreme Court applies "the test in keeping with Congress's evident intent when enacting the APA to make agency action presumptively reviewable." <u>Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak</u>, 567 U.S. 209, 225 (2012) (internal quotation marks and citations omitted). Plaintiffs need not establish a congressional purpose to benefit them through passage of the underlying statute, they need simply have interests that relate to and are not inconsistent with the purposes implicit in the statute. <u>Id.</u> The Supreme Court has "always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff." <u>Id.</u>

The AECA "was intended to authorize the President to control the import and export of defense articles and defense services in 'furtherance of world peace and the security and foreign policy of the United States." <u>U.S. v. Chi Mak</u>, 683 F.3d 1126, 1134 (9th Cir. 2012) (quoting 22 U.S.C. § 2778(a)(1)). In keeping with the goals of the statute, the federal government has, in the past, justified subjecting the CAD files at issue to ITAR's export licensing scheme based on their characteristics and functionality, which make them especially dangerous to U.S. national security and foreign policy interests. The agency properly focused its analysis on the factors specified in the AECA and deemed it important to keep plastic, undetectable firearms out of foreign hands where they were not subject to U.S. laws and controls. The agency's focus on exports, national security, and world peace does not, however, mean that the States' domestic interests are unrelated or marginally related to the AECA's purposes. The State Department found that the firearms generated by the subject CAD files "can be easily modified to be

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 9

virtually undetectable in metal detectors and other security equipment," could be used in assassinations or terrorist activities "specifically directed at U.S. persons," and could lead to violent regional conflicts that implicate the security of the United States. <u>Defense Distributed v. U.S. Dep't of State</u>, C15-0372RP, Dkt. #32 at 19-20 (W.D. Tex). Given that the CAD files and the resulting weapons can be transported, undetected, virtually anywhere in the world, these same impacts would likely arise within the United States even if the plastic weapons are manufactured abroad. The States' interests in curbing violence, assassinations, terrorist threats, aviation and other security breaches, and violations of gun control laws within their borders are at least marginally related to the interests protected or regulated by the AECA. The state and federal interests, while not identical, are aligned and not in any way inconsistent. Because the States' grievance arguably falls within the zone of interests protected or regulated by the AECA, there is no judicially-imposed limit on the Court's exercise of jurisdiction in this matter.

## 2. Agency Discretion and Judicial Review

The private defendants argue that this Court lacks jurisdiction over plaintiffs' APA claims because the APA does not apply "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The AECA expressly commits one type of decision to agency discretion, namely the decision to designate an item as a defense article or defense service. 22 U.S.C. § 2778(h). The decision at issue here, however, is the removal of an item from the USML. Plaintiffs are challenging the federal defendants' failure to comply with statutory procedures and/or to consider certain congressionally-specified factors when making removal decisions under AECA. Congress did not expressly make such removal decisions unreviewable.

Even absent a statutory bar to judicial review, certain agency decisions have traditionally

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 10

been considered wholly discretionary and beyond review. To be sure, the AECA confers broad

discretion on the President when determining whether to add or remove items from the USML,

but that discretion is not unbounded: Congress has imposed both procedural and substantive

benchmarks to guide the agency's action. In order to honor the "basic presumption of judicial

review" embodied in the APA and to "give effect to the command that courts set aside agency

action that is an abuse of discretion," the Supreme Court has "read the § 701(a)(2) exception for

action committed to agency discretion quite narrowly, restricting it to those rare circumstances

where the relevant statute is drawn so that a court would have no meaningful standard against

which to judge the agency's exercise of discretion" and has "generally limited the exception to

certain categories of administrative decisions that courts traditionally have regarded as

committed to agency discretion, . . . such as a decision not to institute enforcement proceedings .

. . or a decision by an intelligence agency to terminate an employee in the interest of national

security . . . ." Dep't of Commerce v. N.Y., __ U.S. __, 139 S. Ct. 2551, 2567-68 (2019)

(internal quotation marks and citations omitted).

      The procedural and substantive requirements at issue in this case are clearly stated, and

whether the agency complied with those requirements can be judicially evaluated without fear of

treading on any matter that implicates agency expertise, involves a complicated balancing of

factors, or has been traditionally regarded as beyond judicial review. The Court finds that the

process through which defendants removed items from the USML in July 2018, defendants'

compliance with the standards furnished by the AECA, and the adequacy of the agency's

analysis of and explanation for its decision are subject to judicial review under the APA.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 11

### 3. Political Question

The private defendants also argue that the regulation or deregulation of defense articles or services under the AECA is a political question that is nonjusticiable under the separation of powers doctrine. This argument fails for much the same reasons as the agency discretion and judicial review arguments. While the decision to include an item on the USML or to grant or deny an export license for a listed item is statutorily excluded from judicial review and/or requires an exercise of discretion within the agency's expertise, whether the agency complied with clear procedural requirements and considered factors Congress deemed relevant when removing an item from the USML is neither a political question nor one committed to the agency's discretion as a matter of statute or case law.

### 4. Tucker Act

Finally, the private defendants assert that the Court of Federal Claims has exclusive jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). Plaintiffs seek to invalidate agency action under the APA because it violates the procedural requirements of the AECA and/or is arbitrary and capricious. These claims are statutory and, as plaintiffs point out, the Tucker Act has no application in this context. Dkt. #186 at 22. The private defendants abandoned this argument in reply.

## B. Administrative Procedures Act Claims

The APA authorizes judicial review of final agency action and provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 12

excess of statutory jurisdiction, authority, or limitations; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706. Plaintiffs argue that the federal government's efforts to immediately remove items from the USML through issuance of a temporary modification and letter were not in accordance with law and were without observance of procedure required by law insofar as the State Department failed to give thirty days' notice to the Congressional foreign relations committees specified in 22 U.S.C. § 2778(f)(1). Plaintiffs also seek to invalidate the decision to allow the CAD files to be published on the internet on the ground that the temporary modification violates the limitations on federal power imposed by the Tenth Amendment. Finally, plaintiffs argue that the agency action was arbitrary and capricious because the agency failed to consider the factors identified by Congress and because the delisting is not supported by substantial evidence in the administrative record.

**1. Congressional Notice**

The AECA requires that the President or his designee periodically review the items on the USML to ensure that export controls are warranted. 22 U.S.C. § 2778(f)(1). The results of the review must be reported to Congress, and the Department "may not remove any item from the Munitions List until 30 days after the date on which [it] has provided notice of the proposed removal to the Committee on International Relations of the House of Representatives and to the Committee on Foreign Relations of the Senate . . . ." Id. The federal defendants argue that the Congressional notice requirement does not apply because the CAD files at issue here are not specifically enumerated on the USML and are therefore not "items" for purposes of § 2778(f)(1). This argument was rejected at the preliminary injunction stage, and the Court sees no reason to reconsider its decision.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 13

The President has the power to designate "defense articles and defense services" and to control their import and export "[i]n furtherance of world peace and the security and foreign policy of the United States." 22 U.S.C. § 2778(a)(1). The articles and services (*i.e.*, items) so designated constitute the USML. Id. See also 22 C.F.R. § 121.1(a) (describing the organization of the USML and noting each USML category is composed of related defense articles). Category I of the USML includes all firearms up to .50 caliber (22 C.F.R. § 121.1(I)(a) and (b)) and all technical data "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of" such firearms (22 C.F.R. § 120.10(a)). Through the CJ process, the Department of State specifically determined that the subject CAD files are subject to the export controls of ITAR.

The Department of State argues that its decision to immediately allow the unlicensed export of previously-regulated items does not trigger the Congressional notice requirement because the temporary modification did not deregulate a whole group or category of defense articles described in the USML, such as "nonautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)," 22 C.F.R. § 121.1(I)(a). This argument conflates "category" with "item." As described in the statute, the USML is a list of items designated by the President as "defense articles and defense services." 22 U.S.C. § 2778(a)(1). Rather than generate an exhaustive list of every individual article or service that is subject to export control under the AECA, the Department of State opted to populate the USML with generally descriptive categories. Those categories describe actual items, however, and it is those items that are the "defense articles and defense services" subject to export control under the AECA. 22 C.F.R. § 121.1.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 14

WASHSTATEC004812

The congressional review and notice requirements specifically apply to items, not categories of items. 22 U.S.C. § 2778(f). The Department's CJ regulation further confirms that it is the removal of a particular article or service - an item rather than a category - that triggers the review and notice requirements. The Department describes the CJ procedure as a means of resolving doubts "as to whether an article or service is covered by the U.S. Munitions List" and to seek "redesignation of an article or service currently covered by the U.S. Munitions List." 22 C.F.R. § 120.4(a). Immediately after the reference to redesignation, the regulations reiterate that the "Department must provide notice to Congress at least 30 days before any item is removed from the U.S. Munitions List." Id. Given the language, structure, and purpose of the statute and implementing regulations, the Court finds that the attempt to revoke the listing of an item previously covered by the USML through the issuance of a "temporary modification," thereby lifting all export controls under the AECA and ITAR, triggers the congressional notice requirement of the statute.

It is undisputed that Congress was not notified prior to the removal of the subject CAD files from the USML. This procedural failure cannot be rectified by providing Congressional notice thirty days in advance of making the "temporary" removal "final:" the temporary modification implemented the removal immediately, without waiting for the proposed rule to become final and without giving Congress notice and an opportunity to exercise its oversight role. Because the removal to which the States object occurred as of July 27, 2018, a subsequent notice is obviously not timely under the statute.[5]

---

[5] To the extent the federal defendants are relying on 22 C.F.R. § 126.2 as authority for the temporary modification (see Dkt. #173 at 6), its use of that procedure to immediately redesignate an item that was previously covered by the USML without Congressional notice violates the governing

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 15

WASHSTATEC004813

The Court finds that the temporary modification of the USML to allow immediate publication of the previously-regulated CAD files constitutes the removal of one or more items from the USML without the required Congressional notice. Because the agency action was "without observance of procedure required by law," it must be held unlawful and set aside under § 706 of the APA.

**2. Tenth Amendment Claim**

As part of the settlement agreement in the Texas litigation, the federal defendants agreed that the temporary modification that would be issued on or before July 27, 2018, would permit "any United States person" including the private defendants' customers and members, "to access, discuss, use, reproduce, or otherwise benefit from the technical data" contained in the CAD files at issue. Dkt. #171-2 at 6. Plaintiffs argue that this provision exceeds the limits imposed on the federal government by the Tenth Amendment in that it conflicts with, and presumably abrogates, state laws restricting certain persons from possessing, manufacturing, owning, and/or using firearms in general or 3D-printed firearms in particular. Plaintiffs therefore argue that the temporary modification must be invalidated as "otherwise not in accordance with law" under the APA.

Both the federal and private defendants have, at various times during this litigation, disavowed any intent to alter or in any way impact existing prohibitions or limitations on the possession of firearms, and the federal defendants recognize the continuing viability of state law gun control measures. Plaintiffs find no comfort in these statements "given the plain language of

---

statute. "It is beyond dispute that a federal regulation cannot empower the Government to do what a federal statute prohibits it from doing." Tuan Thai v. Ashcroft, 366 F.3d 790, 798 (9th Cir. 2004).

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 16

the operative Temporary Modification and Letter." Dkt. #186 at 14. A review of the notice of

temporary modification and letter shows, however, that neither communication expressly

permits "any United States person" to "use" the CAD files or 3D-printed firearms. Nor do they

contain a reference incorporating the settlement agreement or the promises set forth therein.

Without assistance from the parties, the Court declines to determine whether a contractual

provision regarding the intended meaning of a promised, future statement would have any effect

on state law or be otherwise enforceable when the statement, when finally issued, contains no

language regarding the subject matter.

### 4. Arbitrary and Capricious

Plaintiffs allege that the federal defendants' decision to allow Defense Distributed to

upload to the internet CAD files containing 3D printing instructions for the manufacture of

undetectable weapons was arbitrary and capricious because the State Department failed to

consider the factors set forth in the AECA, failed to offer an explanation supported by

substantial evidence in the administrative record, and/or has asserted justifications that are

pretextual. In determining whether agency action was arbitrary and capricious, the Court's scope

of review is "narrow" and focused on determining whether the agency "examined the relevant

data and articulated a satisfactory explanation for [its] decision, including a rational connection

between the facts found and the choice made." Dep't of Commerce, 139 S. Ct. at 2569 (citing

Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43

(1983) (internal quotation marks omitted). In order for the Court to be able to determine whether

the agency has acted within the bounds imposed by the governing statute, the agency is required

to disclose the basis for its action, making the findings necessary to support the decision, and

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 17

produce an administrative record that substantially supports those findings. <u>Burlington Truck Lines, Inc. v. U.S.</u>, 371 U.S. 156, 168 (1962).

The federal defendants, citing 22 C.F.R. § 120.3(b), argue that only items that "provide[] a critical military or intelligence advantage" belong on the USML and that a multi-year, inter-agency review process led to the determination that firearms up to .50 caliber do not satisfy that standard. There are a number of problems with this argument. First, the regulation cited states that articles or services that provide "a critical military or intelligence advantage" "shall be" included on the USML. Items that fit that description must be on the USML, but they are not the only items that can be included. Thus, an agency determination that small-caliber firearms do not provide critical military or intelligence advantages does not explain why those previously-controlled items were removed from the list.

Second, Congress granted the President and his designees the discretion to remove an item from the USML in light of certain considerations and factors. Congress directed the agency to consider how the proliferation of weaponry and related technical data would impact world peace, national security, and foreign policy. The State Department essentially concedes that, despite the specified statutory considerations, it evaluated the export controls on small caliber firearms only through the prism of whether restricting foreign access would provide the United States with a military or intelligence advantage. Because the delisting was not "based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute," it must be invalidated under the APA. <u>Motor Vehicle Mfrs.</u>, 463 U.S. at 42.

Third, given the agency's prior position regarding the need to regulate 3D-printed

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 18

firearms and the CAD files used to manufacture them, it must do more than simply announce a contrary position.

> [T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position. . . . [T]he agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate . . . [But s]ometimes it must - when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy . . . . It would be arbitrary or capricious to ignore such matters. In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay . . . the prior policy.

F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515-16 (2009) (emphasis in original). Until April 2018, the federal government regulated technical data related to the design and production of weapons using a 3D printer because the data and weapons posed a threat to world peace and the security and foreign policy of the United States. Some of its concerns related specifically to the undetectable nature of a gun made from plastic: because they could slip through conventional security equipment, the State Department feared that they could be used in assassination attempts, hijackings, piracy, and terrorist activities. Other concerns related to the portability and ease of a manufacturing process that would allow terrorist groups and embargoed nations to evade sanctions, repair weapons, restock arms supplies, and fuel violent regional conflicts. Both aspects of the technical data at issue would, the State Department feared, subvert the domestic laws of nations with restrictive firearm controls, impairing the United States' foreign relations with those nations. Overall, the Department of State concluded that the worldwide publication of computerized instructions for the manufacture of undetectable firearms was a threat to world peace and the national security interests of the United States and would

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 19

cause serious and long-lasting harm to its foreign policy. Against these findings, the federal

defendants offer nothing: no analysis of the potential impacts of removing the CAD files for 3D-

printed firearms from the USML, no response to the public comments raising concerns about

such a removal, no acknowledgment in the NPRMs of its change in position with regards to the

CAD files, and no justification in the temporary modification, the letter, or the administrative

record for the change.[6]

The federal defendants argue that the agency appropriately evaluated whether import and

export restrictions on small caliber firearms were warranted and that the results of the multi-year

inter-agency review apply to 3D-printed guns and the technical data related to them. The only

parts of the administrative record cited in support of this argument are the NPRMs issued by the

Departments of State and Commerce regarding the delisting of certain items in Category I of the

USML. A review of those documents shows that:

> ● the goal of the proposed revisions is to limit Category I to only those items "that
> provide the United States with a critical military or intelligence advantage or, in

---

[6] The private defendants point to a PowerPoint presentation made at an Additive Manufacturing Symposium in February 2014 and a law review article written by their former counsel that same year as support for the agency's 2018 decision to remove the subject CAD files from the USML. The law review article merely raises constitutional arguments against the regulation of 3D-printed guns and is seemingly unrelated to any justification the agency has offered for its action. The symposium presentation includes two slides related to 3D-printed guns, one displaying a picture of a 3D-printed gun (courtesy of Cody Wilson) and another including text stating that export controls offer no benefit to U.S. manufacturing or national security. Dkt. #116-1 at 32. There is no indication that the agency actually relied on this document when issuing the temporary modification in 2018: in fact, it tacitly concedes that it did not because the multi-year review upon which the decision was apparently based focused on small caliber firearms generally, not 3D-printed guns specifically. Just as importantly, the slides do not reflect consideration of the factors Congress intended the agency to consider or constitute a "reasoned explanation" for disregarding the agency's prior findings regarding the impact of 3D-printed weapons on world peace, national security, and foreign policy. Fox Television Stations, 556 U.S. at 516.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 20

WASHSTATEC004818

the case of weapons, are inherently for military end use" (83 Fed. Reg. 24,198);[7]

● the revised Category I will no longer cover small-caliber non-automatic and semi-automatic firearms (Id.);

● the revised Category I will no longer cover "commercial items widely available in retail outlets and less sensitive military items" (83 Fed. Reg. 24,166);

● the proposed changes are based on an inter-agency review (Id.).

These statements are merely descriptions of the changes proposed and the process used, not an analysis of or justification for the changes. The Department of Commerce goes on to say that it believes that, unless an item provides a critical military or intelligence advantage to the United States or is generally unavailable at retail outlets for civil and recreational activities, the burdens of subjecting U.S. manufacturers to the obligations of the ITAR are not warranted by any proportionate benefits to national security or foreign policy objectives. 83 Fed. Reg. 24,167.

Whatever the merits of this analysis with regards to the rim fire rifles, pistols, and other popular shooting implements specifically mentioned in the NPRMs, it does not provide a "reasoned explanation" for the action with regards to the CAD files and 3D-printed weapons at issue here. Less than two months before the NPRMs were published, the State Department had taken the position that 3D-printed weapons posed unique threats to world peace, national

---

[7] The descriptions of what will be covered by the revised Category I vary in the NPRMs. The Department of State asserts that the revised Category I will cover "only defense articles that are inherently military or that are not otherwise widely available for commercial sale." 83 Fed. Reg. 24, 198. The Department of Commerce describes Category I items under the amended USML as those which are "inherently military and otherwise warrant control on the USML" or "possess parameters or characteristics that provide a critical military or intelligence advantage to the United States[] and are almost exclusively available from the United States." 83 Fed. Reg. 24,166.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 21

security, and the foreign policy of the United States: the agency's specific concerns regarding the proliferation of these weapons are well-documented in the administrative record. The NPRMs neither display an awareness that the agency is changing its position with regards to the data files, nor provide a reasoned explanation for a new policy that necessarily "rests upon factual findings that contradict those which underlay its prior policy." Fox Television Stations, 556 U.S. at 515-16. The agency has simply abandoned, without acknowledgment or analysis, its previous position and has sub silentio found that the delisting is consistent with world peace, national security, and U.S. foreign policy despite explicit, recent findings to the contrary. See Motor Vehicles Mfrs. Ass'n, 463 U.S. at 46-51 (acknowledging that an agency need not consider and reject all policy alternatives when reaching a decision, but noting that where an alternative is within the ambit of the existing standard or policy, "it may not be abandoned without any consideration whatsoever").[8] Because it is arbitrary and capricious to ignore the contradiction in these circumstances, the agency action must be invalidated.

The Court finds that the agency action is arbitrary and capricious in two, independent respects. First, the agency failed to consider aspects of the problem which Congress deemed important before issuing the temporary modification and letter on July 27, 2018. Second, the agency failed to identify substantial evidence in the administrative record explaining a change of position that necessarily contradicts its prior determinations and findings regarding the threats posed by the subject CAD files and the need to regulate the same under the AECA. Because the agency action was arbitrary and capricious, it is unlawful and must be set aside under § 706 of

---

[8] In addition, there are no findings (and no evidence in the administrative record) that the CAD files at issue here were widely available before the agency abruptly deregulated them on July 27, 2018.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 22

WASHSTATEC004820

the APA.[9]

## C. The Private Defendants' Other Arguments

### 1. Motion to Dismiss

The private defendants incorporate by reference a motion to dismiss that was denied almost a year ago. Having offered no reason to reconsider the prior ruling and no explanation for the delay in seeking reconsideration, the motion is denied.

### 2. Personal Jurisdiction

Defense Distributed argues that the Court lacks jurisdiction over its person. Such a defense can be, and has been, waived. Although Defense Distributed asserted a personal jurisdiction defense in its answer, it omitted it from the motion to dismiss it filed on October 11, 2018, and has therefore waived the defense under Fed. R. Civ. P. 12(h)(1)(A).

### 3. First Amendment Justification for Agency Action

The private defendants argue that the CAD files are protected speech under the First Amendment and assert that the files were removed from the USML in order to avoid constitutional problems. The agency, however, has not relied on the First Amendment as justification for its action, and neither the Court nor the private defendants may supply a basis for the decision that the agency itself did not rely upon. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 683-84 (2007).

### 4. First Amendment Violation

The private defendants again assert that restrictions on their ability to publish the files

---

[9] Because the agency action must be invalidated on other grounds, the Court has not considered whether the agency's justifications were pretextual or whether such a finding would warrant invalidation under the APA.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 23

constitute a prior restraint that is presumed to be unconstitutional and that the regulations should be subjected to strict scrutiny. Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation. Plaintiffs allege that the federal defendants failed to follow prescribed procedures and acted in an arbitrary and capricious manner when they issued the temporary modification and letter authorizing the immediate publication of the CAD files. The State Department has not attempted to justify its action as compelled by the First Amendment, nor have the private defendants shown that their First Amendment interests are a defense to plaintiffs' claims or a talisman that excuses the federal defendants' failures under the APA.

**D. Remedy**

The presumptive remedy for unlawful agency action is vacatur and remand. All. for the Wild Rockies v. United States Forest Serv., 907 F.3d 1105, 1121 (9th Cir. 2018). Plaintiffs also seek an injunction preventing the federal defendants from again issuing a temporary modification purporting to deregulate the subject CAD files with no warning. Plaintiffs have not shown that the harm they fear is likely to occur, however. There is no indication that the federal defendants are poised to immediately modify the USML as soon as their previous efforts are invalidated or are otherwise inclined to ignore the procedural and substantive requirements of the AECA discussed in this order. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.").

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 24

**CONCLUSION**

For all of the foregoing reasons, plaintiffs' motion for summary judgment (Dkt. #170) is GRANTED in part and DENIED in part. The July 27, 2018, "Temporary Modification of Category I of the United States Munitions List" and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED. Defendants' motions for summary judgment (Dkt. #173 and #174) are DENIED.


Dated this 12th day of November, 2019.


Robert S. Lasnik
United States District Judge

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 25

Message

| | |
|---|---|
| **From:** | Cooper, R. Clarke [CooperRC@state.gov] |
| **Sent:** | 11/12/2019 9:17:05 PM |
| **To:** | Betts, Timothy A [BettsTA@state.gov]; Paul, Joshua M [PaulJM@state.gov]; Heidema, Sarah J [HeidemaSJ@state.gov]; Miller, Michael F [Millermf@state.gov] |
| **CC:** | Windecker, Melissa A [WindeckerMA@state.gov] |
| **Subject:** | RE: TODAY: Heads Up: Cats 1-3 |

Thank you all for the quick turn, and appreciate the readout. If past coverage is an indicator, McBride's coverage in WJS should be fair.


---
Sent from Workspace ONE Boxer

On November 12, 2019 at 15:26:26 EST, Betts, Timothy A <BettsTA@state.gov> wrote:

Well done, everyone.

Josh:  Could you shoot me the press guidance that will be used for the RTQs, please?

Thanks,
Tim

*Timothy A. Betts*
Principal Deputy Assistant Secretary
Bureau of Political-Military Affairs
U.S. Department of State
(202) 647-9023


SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M <PaulJM@state.gov>
**Sent:** Tuesday, November 12, 2019 3:08 PM
**To:** Cooper, R. Clarke <CooperRC@state.gov>; Betts, Timothy A <BettsTA@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>
**Subject:** RE: TODAY: Heads Up: Cats 1-3

By way of update:


• State, Commerce and DTSA successfully completed the briefing to bipartisan staff from each of HFAC, SFRC and SBANK. The briefing went well overall; some concerns were raised about the future notification of licenses moving to Commerce, but the issue was not pressed. In a sidebar after the briefing, Senator Menendez' staffer described his mood as "mildly pleased" that the interagency had paid attention to the concerns that had been expressed (although we await to see if this remains the case after the anticipated response from some quarters).

• The CN will be delivered via courier between 3-4pm this afternoon.

- The Wall Street Journal's Courtney McBride was backgrounded by State and Commerce this afternoon and will run a story at some point after the embargo expires, at 4pm today.

- We are working to schedule a statutory briefing under the NDAA to HASC and SASC for tomorrow.

- We are working to line up the planned roundtable hosted by Heritage in the near future, and with the arms control community thereafter.

- Finally, after 4pm we will be in RTQ posture for press enquiries.

Thanks,

Josh

SENSITIVE BUT UNCLASSIFIED

**From:** Cooper, R. Clarke <CooperRC@state.gov>
**Sent:** Tuesday, November 12, 2019 11:41 AM
**To:** Paul, Joshua M <PaulJM@state.gov>; Betts, Timothy A <BettsTA@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>
**Subject:** TODAY: Heads Up: Cats 1-3

Thanks for the heads-up Josh.  Please keep me apprised.

If the timing works right, I may be able to participate in whatever briefing call we provide our Congressional contacts.

Regards,

**R. Clarke Cooper**
Assistant Secretary of State
Political Military Affairs Bureau

CooperRC@state.gov

ENGAGE. ENHANCE. ENABLE.

SENSITIVE BUT UNCLASSIFIED

**From:** Paul, Joshua M
**Sent:** Tuesday, November 12, 2019 5:19 PM
**To:** Cooper, R. Clarke <CooperRC@state.gov>; Betts, Timothy A <BettsTA@state.gov>
**Cc:** Windecker, Melissa A <WindeckerMA@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Miller, Michael F <Millermf@state.gov>
**Subject:** Heads Up: Cats 1-3

Dear A/S and PDAS,

Just writing to flag that after S's approval of the Cats 1-3 AM we held an interagency conference call this morning ██████████████████████████ ██████ We have been able to obtain staff availability for 2pm, and will be briefing at that time, followed by a 3pm notification.

Thanks,

Josh

---

**Josh Paul**
Director, Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

☎ Phone:   202.647.7878 | ☏   BlackBerry: ███████████ | 🖷 Fax: 202.647.4055
✉ e-mail:   ***PaulJM@State.Gov*** | 🖷   Web: ***www.state.gov/t/pm/***

🐦 http://twitter.com/StateDeptPM

Stay connected with *State.gov*:



SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From**: | Marquis, Matthew R [MarquisMR@state.gov] |
| **Sent**: | 11/12/2019 9:25:18 PM |
| **To**: | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov] |
| **CC**: | PM-CPA [PM-CPA@state.gov]; PM-DAS's [PM-DASs@state.gov]; PM-Directors [PM-Directors@state.gov]; Darrach, Tamara A [DarrachTA@state.gov] |
| **Subject**: | CPA Media Monitoring: Wall Street Journal: Administration Plans to Ease Exports of U.S.-Made Firearms |



**Administration Plans to Ease Exports of U.S.-Made Firearms**
**By Courtney McBride**
**12 November 2019**

The Trump administration has finalized plans to shift authority over the export of certain firearms and ammunition from the State Department to the Commerce Department, part of a nearly decadelong effort to boost compliance, strengthen enforcement and protect U.S. technology.

Officials from the two departments on Tuesday notified several congressional committees of the final rule. Following a 30-day notification period, the final rule would take effect 45 days after publication in the Federal Register.

Members of the congressional committees didn't immediately respond to requests for comment.

Under the rule change, the State Department would maintain control over the export of firearms and related items of a military character, or that provide military or intelligence benefits to the U.S., according to a department official.

Authority over the export of weapons that don't meet those criteria -- including those widely available in domestic retail settings -- would shift to the Commerce Department.

The rule change applies only to commercial transfers, and doesn't affect the ability of individual U.S. citizens to purchase or possess firearms.

Tuesday's action follows a multiyear review by the departments of Commerce, Defense, Homeland Security, Justice and State, which received and incorporated comments from the public and other interested parties.

Senior officials from Commerce and State told The Wall Street Journal that the process has been responsive to feedback from lawmakers and members of the public. The State Department received more than 3,000 public comments on the proposed rule, according to a senior department official.

The senior officials said Tuesday that the revised rules would reduce financial and administrative burdens on the private sector by removing a requirement that companies register with the State Department.

Regardless of the transfer of authority, controlled items will still be subject to government authorization and monitoring, they said.

In light of congressional and public concern, technology and software related to 3-D firearms production will remain subject to stringent controls under the Commerce Department.

Last year, lawmakers from both parties warned that foreign bad actors could gain access to the plans for 3-D printed weapons, potentially posing a national security threat to the United States.

Attorneys general from eight states filed suit to prevent a Texas company, Defense Distributed, from publishing the plans online. While that case was pending last summer, gun-rights groups published the materials on a separate website, arguing that the First Amendment protects their right to do so.

President Trump wrote on Twitter in July 2018: "I am looking into 3-D Plastic Guns being sold to the public. Already spoke to NRA, doesn't seem to make much sense!"

Link: https://www.wsj.com/articles/administration-plans-to-ease-exports-of-u-s-made-firearms-11573592986?mod=searchresults&page=1&pos=1

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.6968
e-mail:        *MarquisMR@state.gov* |  Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent:** | 11/12/2019 9:27:15 PM |
| **To:** | Rogers, Shana A [RogersSA2@state.gov] |
| **Subject:** | FW: CPA Media Monitoring: Yubanet: Federal judge strikes down Trump Administration action allowing release of 3D-printed guns |

---

**From:** Marquis, Matthew R <MarquisMR@state.gov>
**Sent:** Tuesday, November 12, 2019 4:17 PM
**To:** PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>; Legal-PM-DL <Legal-PM-DL@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Subject:** CPA Media Monitoring: Yubanet: Federal judge strikes down Trump Administration action allowing release of 3D-printed guns



**Federal judge strikes down Trump Administration action allowing release of 3D-printed guns**
**By Washington state Attorney General Bob Ferguson**
**12 November 2019**

A federal judge ruled today that the Trump Administration violated federal law in its efforts to allow 3D-printed gun files to be released on the internet.

In July 2018, Attorney General Bob Ferguson filed a lawsuit in the U.S. District Court for the Western District of Washington, arguing that Trump Administration efforts to allow the distribution of data files for downloadable, 3D-printed firearms violated the Administrative Procedure Act and the Constitution.

In his ruling, Judge Robert Lasnik granted Ferguson's motion for summary judgment, meaning the case will not need to go to trial. The judge ruled that the Trump Administration's decision to allow the unlimited distribution on the internet of data files for untraceable, undetectable 3D-printed guns was arbitrary, capricious and unlawful.

"Given the agency's prior position regarding the need to regulate 3D-printed firearms and the CAD files used to manufacture them, it must do more than simply announce a contrary position," Judge Lasnik wrote. "Overall, the Department of State concluded that the worldwide publication of computerized instructions for the manufacture of undetectable firearms was a threat to world peace and the national security interests of the United States and would cause serious and long-lasting harm to its foreign policy. Against these findings, the federal defendants offer nothing."

"It is baffling that the Trump Administration continued to work so hard to allow domestic abusers, felons and terrorists access to untraceable, undetectable 3D-printed guns," Ferguson said. "Even the president himself said in a tweet that this decision didn't make any sense — one of the rare instances when I agreed with him. I'm thankful the court agrees, too."

In July 2018, President Trump wrote on Twitter: "I am looking into 3-D Plastic Guns being sold to the public. Already spoke to NRA, doesn't seem to make much sense!"

Other highlights from today's ruling:

WASHSTATEC004829

- "It is undisputed that Congress was not notified prior to the removal of the subject CAD files from the USML. This procedural failure cannot be rectified by providing Congressional notice thirty days in advance of making the 'temporary' removal 'final:' the temporary modification implemented the removal immediately, without waiting for the proposed rule to become final and without giving Congress notice and an opportunity to exercise its oversight role. Because the removal to which the States object occurred as of July 27, 2018, a subsequent notice is obviously not timely under the statute."

- "The Court finds that the agency action is arbitrary and capricious in two, independent respects. First, the agency failed to consider aspects of the problem which Congress deemed important before issuing the temporary modification and letter on July 27, 2018. Second, the agency failed to identify substantial evidence in the administrative record explaining a change of position that necessarily contradicts its prior determinations and findings regarding the threats posed by the subject CAD files and the need to regulate the same under the AECA. Because the agency action was arbitrary and capricious, it is unlawful and must be set aside."

**Case background**

In 2015, Defense Distributed, an organization dedicated to global distribution of open-source, downloadable 3D-printed guns, sued the federal government after the U.S. State Department forced the removal of the files from the internet. The federal government successfully argued before federal trial and appellate courts that posting the files online violates firearm export laws and poses a serious threat to national security and public safety. The United States Supreme Court declined to hear the case.

Then, in an abrupt reversal, the federal government settled the case on June 29, 2018. As part of the settlement, the Trump Administration agreed to allow unlimited public distribution on the internet of the downloadable files for 3D-printed guns.

The court granted Ferguson's request to block internet distribution of the downloadable files for 3D-printed guns on July 31, 2018, the day before Defense Distributed planned to release them. The court later blocked the gun files' release for the duration of the lawsuit.

Ferguson has also taken action at the state level, successfully introducing agency-request legislation to ban the manufacture or possession of untraceable, undetectable 3D-printed guns. The new law also prohibits sending a printable gun file to a person who is ineligible to possess firearms.

Ferguson has filed 51 lawsuits against the Trump Administration and has not lost a case. Ferguson has 25 legal victories against the Trump Administration. Fourteen of those cases are finished and cannot be appealed. The Trump Administration has or may appeal the other 11, which include lawsuits involving Dreamers and rules restricting contraception access. No court to rule on the merits of the Attorney General's arguments in a lawsuit against the Trump Administration has ruled against the office.

Link: https://yubanet.com/usa/federal-judge-strikes-down-trump-administration-action-allowing-release-of-3d-printed-guns/

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:      202.647.6968

WASHSTATEC004830

e-mail:  *MarquisMR@state.gov* |  Web:  *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

WASHSTATEC004831

Message

| | |
|---|---|
| **From:** | Kovar, Jeffrey D [KovarJD@state.gov] |
| **Sent:** | 11/12/2019 9:31:49 PM |
| **To:** | Dorosin, Joshua L [DorosinJL@state.gov]; String, Marik A [StringMA@state.gov] |
| **Subject:** | FW: CPA Media Monitoring: KUT Radio: Judge Blocks Rule Change That Allowed Austin-Based Company To Publish 3D-Printed Gun Plans |
| **Attachments:** | 192 - Order on MSJ.pdf |

Marik and Josh: The judge in the Washington case has declared the temporary rule and settlement from the Defense Distributed litigation to be null and void, ███████████████████████ Ironically, we also did the Congressional Notification of the proposed final rule today. - Jeff

---

**From:** Marquis, Matthew R <MarquisMR@state.gov>
**Sent:** Tuesday, November 12, 2019 4:14 PM
**To:** PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>; Legal-PM-DL <Legal-PM-DL@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Subject:** CPA Media Monitoring: KUT Radio: Judge Blocks Rule Change That Allowed Austin-Based Company To Publish 3D-Printed Gun Plans



**Judge Blocks Rule Change That Allowed Austin-Based Company To Publish 3D-Printed Gun Plans**
**By Matt Largey**
**12 November 2019**

A federal judge in Washington state is overturning a settlement between the federal government and Austin-based Defense Distributed that allowed the company to publish plans for 3D-printable guns online last year.

Defense Distributed had been in a years-long legal battle in federal court in Austin over the legality of publishing the plans online. The State Department had argued that the distribution of the plans online would violate federal arms export rules, since they could be accessed from anywhere in the world. But last spring, the State Department suddenly settled with the company, agreeing to modify the rules to allow the plans to be published online.

Defense Distributed did so last summer, amid a flurry of last-ditch requests from a coalition of states to block the publication over fears that making the plans available online for free could put untraceable weapons in the hands of people who might be violent. Nineteen states and the District of Columbia filed suit in Washington state arguing the State Department did not follow proper procedure in modifying the arms export rules.

Four days after the publication, U.S. District Judge Robert Lasnik issued an order temporarily halting distribution of the plans, though some had already been downloaded thousands of times and spread to file sharing sites online.

Today, Judge Lasnik issued a ruling overturning the State Department's actions, finding the agency failed to provide Congress with 30 days required under the law.

"Because the agency action was 'without observance of procedure required by law,'" Lasnik writes, "it must be held unlawful and set aside."

However, the judge leaves the door open to the State Department trying again to alter the rules, following proper procedure.

The State Department is also free to appeal the ruling.

Earlier this year, Defense Distributed founder Cody Wilson was charged with sexual assault after he paid an underage girl $500 for sex in an Austin motel room. Wilson fled to Taiwan before he was arrested and returned to the U.S. He pleaded guilty to a lesser charge, avoiding jail time, though he was required to pay a fine and register as a sex offender.

He stepped down from his position at Defense Distributed while the criminal charges were pending, though he recently rejoined the company.

Link: https://www.kut.org/post/judge-blocks-rule-change-allowed-austin-based-company-publish-3d-printed-gun-plans

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:          202.647.6968
e-mail:         *MarquisMR@state.gov* |   Web:  *PM Homepage* [Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, *et al.*,

        Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
STATE, *et al.*,

        Defendants.

NO. C18-1115RSL

ORDER INVALIDATING JULY 27,
2018, TEMPORARY
MODIFICATION AND LETTER

        This matter comes before the Court on the parties' cross-motions for summary judgment.
Dkt. #170, #173, and #174. Plaintiffs seek a summary determination that the federal defendants
violated the Administrative Procedures Act ("APA") when they modified the United States
Munitions List ("USML") and issued a letter authorizing the on-line publication of certain
computer aided design ("CAD") data files in July 2018. They request that the Court vacate the
agency action and permanently enjoin the federal defendants from removing the CAD files at
issue from the USML unless and until they comply with the statutory procedural requirements.

## BACKGROUND AND PROCEDURAL HISTORY

        Since at least 2013, the federal government had taken the position that the Arms Export
Control Act ("AECA"), 22 U.S.C. § 2778, authorizes restrictions on the internet publication of

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 1

WASHSTATEC004834

CAD files that allow users to create guns and their components with a 3D printer. When defendant Defense Distributed posted CAD files for various weapons on its website at the end of 2012, the Directorate of Defense Trade Controls ("DDTC"), which is part of the Department of State, notified Defense Distributed that the publication may have been unauthorized and in violation of the AECA's implementing regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-30. The DDTC explained that making the CAD files available on the internet constituted a disclosure or transfer of technical data to foreign persons and was considered an "export" subject to the AECA and ITAR. The government advised Defense Distributed to remove the files from its website and, if it believed the files were not properly subject to export control, to utilize the commodity jurisdiction ("CJ") procedure to obtain an official determination from the DDTC.

Defense Distributed filed a number of determination requests. When the DDTC failed to make timely rulings, Defense Distributed filed a lawsuit in the United States District Court for the Western District of Texas. <u>Defense Distributed v. U.S. Dep't of State</u>, C15-0372RP (W.D. Tex). That litigation pitted Defense Distributed and the Second Amendment Foundation on one side against the Department of State, the DDTC, and various federal employees on the other. Defense Distributed challenged the federal government's power to regulate its publication of the CAD files on the internet, arguing that the regulation subjected its gun-related speech to a system of prior restraints that was applied in an arbitrary manner in violation of Defense Distributed's First, Second, and Fifth Amendment rights. A month after the Texas litigation was filed, the DDTC determined that some, but not all, of the CAD data files Defense Distributed wanted to publish on the internet were technical data subject to the AECA and ITAR.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 2

Defense Distributed filed a motion for preliminary injunction in the Texas litigation to preclude the federal government from imposing prepublication approval requirements on any of its CAD files. The federal government opposed the motion, arguing that:

- "export of Defense Distributed's CAD files could cause serious harm to U.S. national security and foreign policy interests" that "warrant subjecting [the files] to ITAR's export licensing of technical data;"

- Defense Distributed's "CAD files constitute the functional equivalent of defense articles: capable, in the hands of anyone who possesses commercially available 3D printing equipment, of 'automatically' generating a lethal firearm that can be easily modified to be virtually undetectable in metal detectors and other security equipment;"

- "The State Department is particularly concerned that [Defense Distributed's] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or guerrilla groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons;" and

- both the government and the public "have a strong interest in curbing violent regional conflicts elsewhere in the world, especially when such conflict implicates the security of the United States and the world as a whole."

Id., Dkt. #32 at 19-20 (W.D. Tex.) (internal quotation marks and citations omitted). The then-Director of the Office of Defense Trade Controls Management, Lisa V. Aguirre, concluded that the unrestricted export of Defense Distributed's CAD files would result in the production of plastic firearms that are fully operable and virtually undetectable by conventional security measures, that their use to commit terrorism, piracy, assassinations, or other serious crimes would cause serious and long-lasting harm to the foreign policy and national security interests of the United States, that efforts to restrict the availability of these articles to enemies of the United

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 3

States would fail, that the proliferation of weapons and related technologies would contribute to a more dangerous international environment, and that the export would undercut the domestic laws of nations that have more restrictive firearm controls and the United States' foreign relations with those nations would suffer. Id., Dkt. #32-1 at ¶ 35.

The Honorable Robert L. Pitman denied Defense Distributed's motion for preliminary injunction, noting that Defense Distributed's avowed purpose is to facilitate "*global* access to, and the collaborative production of, information and knowledge related to the three-dimensional ('3D') printing of arms," and that such activities "undoubtedly increase[] the possibility of outbreak or escalation of conflict" and are of the type Congress authorized the President to regulate through the AECA. Id., Dkt. #43 at 8-9 (emphasis in original). The Fifth Circuit affirmed, finding that "the State Department's stated interest in preventing foreign nationals - including all manner of enemies of this country - from obtaining technical data on how to produce weapons and weapons parts" constitutes "a very strong public interest in national defense and national security." Defense Distributed v. U.S. Dep't of State, 838 F.3d 451, 458 (5th Cir. 2016).

In April 2018, the federal government moved to dismiss Defense Distributed's claims in the Texas litigation, reiterating that what was at stake was "the United States' ability to control the export of weapons - a system of laws and regulations that seeks to ensure that articles useful for warfare or terrorism are not shipped from the United States to other countries (or otherwise provided to foreigners) without authorization, where, beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability." C15-0372RP, Dkt. #92 at 1 (W.D. Tex). Later that month, the parties reached a

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 4

tentative settlement agreement. Pursuant to the settlement, which was not signed until July 29, 2018, the Department of State changed course, abandoning its prior regulatory and litigation positions and allowing the private defendants, Defense Distributed, the Second Amendment Foundation, and Conn Williamson, to publish on the internet CAD files for the automated production of 3D-printed weapons. The federal government specifically agreed, among other things, to publish a notice of proposed rulemaking and final rule revising the United States Munitions List ("USML") that would allow the distribution of the CAD files, to announce a temporary modification of the USML to allow immediate distribution while the final rule was in development, and to issue a letter to Defense Distributed and other defendants advising that the CAD files are approved for public release and unlimited distribution. The federal defendants also acknowledged and agreed that the temporary modification and letter "permits any United States person . . . to access, discuss, use, reproduce, or otherwise benefit from" the CAD files. The announcement of the temporary modification and the issuance of the letter were to occur on or before July 27, 2018. No findings of fact or other statements are provided in the settlement agreement that address, much less invalidate, the federal government's prior analysis regarding the likely impacts of publication on national security or world peace or that otherwise explain the federal government's change of position.

On May 24, 2018, the Department of State published a notice of proposed rulemaking ("NPRM") that implicated the technical data at issue in the litigation. The NPRM proposed an amendment to the ITAR to, *inter alia*, remove certain Category I items (primarily small caliber weapons and their related technical data) from the USML, thereby lifting the requirement to obtain a license for their export. 83 Fed. Reg. 24,198 (May 24, 2018). Although the NPRM did

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 5

WASHSTATEC004838

not explicitly mention 3D-printed firearms or their related technical data, approximately 12% of the comments received in response to the NPRM did, and all of them opposed lifting the license requirement. The public comment period end on July 9, 2018. The settlement agreement was made public the following day. The temporary modification was published and the letter to the private defendants was issued on July 27, 2018. The temporary modification contains an assertion that the DDTC "has determined that it is in the interest of the security and foreign policy of the United States" to immediately modify Category I of the USML to exclude the technical data at issue in the Texas litigation. Dkt. #171-2 at 2. The public comments opposing exclusion were not considered by the agency when it issued the temporary modification and letter. Dkt. #179-2 at ¶ 7.

Three days after the temporary modification was published, eight states and the District of Columbia filed this lawsuit, alleging that the federal defendants' conduct was *ultra vires* and in violation of the APA and the Tenth Amendment to the United States Constitution.[1] In response to plaintiffs' motion for preliminary injunctive relief, the federal defendants justified the deregulation of the CAD files (along with the delisting of other items within Category I of the USML) by pointing to a Department of Defense determination that the items "do not provide the United States with a critical military or intelligence advantage" and "are already commonly available and not inherently for military end-use." Dkt. #64-1 at 10. After an expedited hearing, the Court found that plaintiffs had shown a likelihood of success on the merits of their APA claim insofar as the temporary modification resulted in the removal of one or more items from

---

[1] An amended complaint, adding eleven more States/Commonwealths as plaintiffs, was filed on August 2, 2018. Dkt. # 29.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 6

WASHSTATEC004839

the USML, that plaintiffs had shown a likelihood of irreparable injury if an injunction did not

issue because Defense Distributed had announced its intent to make the CAD files downloadable

from its website on August 1, 2018,[2] and that the balance of hardships and the public interest

tipped sharply in plaintiffs' favor. The federal defendants were enjoined from implementing or

enforcing the temporary modification of the USML and/or the July 27th letter and were required

to preserve the status quo *ex ante* as if the modification had not occurred and the letter had not

been issued. Dkt. #23 and #95.

In the context of the States' challenge to the issuance of the temporary modification and

letter, the federal defendants produced and supplemented the administrative record on which the

decision to issue the temporary modification and letter was based.[3] Plaintiffs now seek an order

invalidating the temporary modification and letter under the APA and permanently enjoining the

federal defendants from removing the computer files at issue from the USML unless and until

they comply with the governing procedural requirements. The federal and private defendants

oppose plaintiffs' motion and request judgment in their favor.

## DISCUSSION

**A. Jurisdiction**

Both the federal and private defendants challenge the Court's jurisdiction over this

matter. The federal defendants argue that the States cannot meet prudential standing

---

[2] The private defendants now assert that they published the subject CAD files to the internet immediately upon receipt of the letter and the issuance of the temporary modification. Dkt. #174-1 at 5-6. The publication does not change the following analysis.

[3] Plaintiffs do not concede that the record, as supplemented, is complete or that defendants' various claims of privilege are proper.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 7

requirements. The private defendants argue that the issuance of the temporary modification and letter are "committed to agency discretion by law" and not subject to judicial review under 5 U.S.C. § 701(a)(2) and 22 U.S.C. § 2278(h), that listing on the USML is a political question over which the Court lacks subject matter jurisdiction, and that the claims are barred by the Tucker Act.[4]

### 1. Zone of Interests

The question of standing involves both constitutional limitations imposed by Article III of the U.S. Constitution and prudential limitations imposed by the judiciary to limit the exercise of federal jurisdiction. See Warth v. Seldin, 422 U.S. 490, 498 (1975); Allen v. Wright, 468 U.S. 737, 751 (1984). To present a justiciable case or controversy under Article III, plaintiffs must demonstrate an "injury in fact" that is "fairly traceable" to the actions of the defendants and that will likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The prudential limitations are "founded in concern about the proper - and properly limited - role of the courts in a democratic society." Warth, 422 U.S. at 498. The prudential requirement at issue here is that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision on which the claim is based. See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970).

The zone-of-interests test is a standing requirement of general applicability, but "the zone of interests of a statute for purposes of obtaining judicial review of administrative action under

---

[4] Defendants also incorporate by reference arguments made in the preliminary injunction context regarding Article III standing and this lawsuit being an impermissible collateral attack on the outcome of the litigation in the Western District of Texas. Those arguments are again rejected. See Dkt. #95 at 9-12.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 8

WASHSTATEC004841

the generous review provisions of the APA" is fairly expansive. <u>Bennett v. Spear</u>, 520 U.S. 154, 163 (1997) (internal quotation marks and citations omitted). The test "is not meant to be especially demanding" in the APA context, and the Supreme Court applies "the test in keeping with Congress's evident intent when enacting the APA to make agency action presumptively reviewable." <u>Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak</u>, 567 U.S. 209, 225 (2012) (internal quotation marks and citations omitted). Plaintiffs need not establish a congressional purpose to benefit them through passage of the underlying statute, they need simply have interests that relate to and are not inconsistent with the purposes implicit in the statute. <u>Id.</u> The Supreme Court has "always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff." <u>Id.</u>

The AECA "was intended to authorize the President to control the import and export of defense articles and defense services in 'furtherance of world peace and the security and foreign policy of the United States." <u>U.S. v. Chi Mak</u>, 683 F.3d 1126, 1134 (9th Cir. 2012) (quoting 22 U.S.C. § 2778(a)(1)). In keeping with the goals of the statute, the federal government has, in the past, justified subjecting the CAD files at issue to ITAR's export licensing scheme based on their characteristics and functionality, which make them especially dangerous to U.S. national security and foreign policy interests. The agency properly focused its analysis on the factors specified in the AECA and deemed it important to keep plastic, undetectable firearms out of foreign hands where they were not subject to U.S. laws and controls. The agency's focus on exports, national security, and world peace does not, however, mean that the States' domestic interests are unrelated or marginally related to the AECA's purposes. The State Department found that the firearms generated by the subject CAD files "can be easily modified to be

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 9

virtually undetectable in metal detectors and other security equipment," could be used in assassinations or terrorist activities "specifically directed at U.S. persons," and could lead to violent regional conflicts that implicate the security of the United States. <u>Defense Distributed v. U.S. Dep't of State</u>, C15-0372RP, Dkt. #32 at 19-20 (W.D. Tex). Given that the CAD files and the resulting weapons can be transported, undetected, virtually anywhere in the world, these same impacts would likely arise within the United States even if the plastic weapons are manufactured abroad. The States' interests in curbing violence, assassinations, terrorist threats, aviation and other security breaches, and violations of gun control laws within their borders are at least marginally related to the interests protected or regulated by the AECA. The state and federal interests, while not identical, are aligned and not in any way inconsistent. Because the States' grievance arguably falls within the zone of interests protected or regulated by the AECA, there is no judicially-imposed limit on the Court's exercise of jurisdiction in this matter.

### 2. Agency Discretion and Judicial Review

The private defendants argue that this Court lacks jurisdiction over plaintiffs' APA claims because the APA does not apply "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The AECA expressly commits one type of decision to agency discretion, namely the decision to designate an item as a defense article or defense service. 22 U.S.C. § 2778(h). The decision at issue here, however, is the removal of an item from the USML. Plaintiffs are challenging the federal defendants' failure to comply with statutory procedures and/or to consider certain congressionally-specified factors when making removal decisions under AECA. Congress did not expressly make such removal decisions unreviewable.

Even absent a statutory bar to judicial review, certain agency decisions have traditionally

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 10

been considered wholly discretionary and beyond review. To be sure, the AECA confers broad

discretion on the President when determining whether to add or remove items from the USML,

but that discretion is not unbounded: Congress has imposed both procedural and substantive

benchmarks to guide the agency's action. In order to honor the "basic presumption of judicial

review" embodied in the APA and to "give effect to the command that courts set aside agency

action that is an abuse of discretion," the Supreme Court has "read the § 701(a)(2) exception for

action committed to agency discretion quite narrowly, restricting it to those rare circumstances

where the relevant statute is drawn so that a court would have no meaningful standard against

which to judge the agency's exercise of discretion" and has "generally limited the exception to

certain categories of administrative decisions that courts traditionally have regarded as

committed to agency discretion, . . . such as a decision not to institute enforcement proceedings .

. . or a decision by an intelligence agency to terminate an employee in the interest of national

security . . . ." Dep't of Commerce v. N.Y., __ U.S. __, 139 S. Ct. 2551, 2567-68 (2019)

(internal quotation marks and citations omitted).

The procedural and substantive requirements at issue in this case are clearly stated, and

whether the agency complied with those requirements can be judicially evaluated without fear of

treading on any matter that implicates agency expertise, involves a complicated balancing of

factors, or has been traditionally regarded as beyond judicial review. The Court finds that the

process through which defendants removed items from the USML in July 2018, defendants'

compliance with the standards furnished by the AECA, and the adequacy of the agency's

analysis of and explanation for its decision are subject to judicial review under the APA.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 11

WASHSTATEC004844

### 3. Political Question

The private defendants also argue that the regulation or deregulation of defense articles or services under the AECA is a political question that is nonjusticiable under the separation of powers doctrine. This argument fails for much the same reasons as the agency discretion and judicial review arguments. While the decision to include an item on the USML or to grant or deny an export license for a listed item is statutorily excluded from judicial review and/or requires an exercise of discretion within the agency's expertise, whether the agency complied with clear procedural requirements and considered factors Congress deemed relevant when removing an item from the USML is neither a political question nor one committed to the agency's discretion as a matter of statute or case law.

### 4. Tucker Act

Finally, the private defendants assert that the Court of Federal Claims has exclusive jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). Plaintiffs seek to invalidate agency action under the APA because it violates the procedural requirements of the AECA and/or is arbitrary and capricious. These claims are statutory and, as plaintiffs point out, the Tucker Act has no application in this context. Dkt. #186 at 22. The private defendants abandoned this argument in reply.

## B. Administrative Procedures Act Claims

The APA authorizes judicial review of final agency action and provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 12

excess of statutory jurisdiction, authority, or limitations; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706. Plaintiffs argue that the federal government's efforts to immediately remove items from the USML through issuance of a temporary modification and letter were not in accordance with law and were without observance of procedure required by law insofar as the State Department failed to give thirty days' notice to the Congressional foreign relations committees specified in 22 U.S.C. § 2778(f)(1). Plaintiffs also seek to invalidate the decision to allow the CAD files to be published on the internet on the ground that the temporary modification violates the limitations on federal power imposed by the Tenth Amendment. Finally, plaintiffs argue that the agency action was arbitrary and capricious because the agency failed to consider the factors identified by Congress and because the delisting is not supported by substantial evidence in the administrative record.

### 1. Congressional Notice

The AECA requires that the President or his designee periodically review the items on the USML to ensure that export controls are warranted. 22 U.S.C. § 2778(f)(1). The results of the review must be reported to Congress, and the Department "may not remove any item from the Munitions List until 30 days after the date on which [it] has provided notice of the proposed removal to the Committee on International Relations of the House of Representatives and to the Committee on Foreign Relations of the Senate . . . ." Id. The federal defendants argue that the Congressional notice requirement does not apply because the CAD files at issue here are not specifically enumerated on the USML and are therefore not "items" for purposes of § 2778(f)(1). This argument was rejected at the preliminary injunction stage, and the Court sees no reason to reconsider its decision.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 13

The President has the power to designate "defense articles and defense services" and to control their import and export "[i]n furtherance of world peace and the security and foreign policy of the United States." 22 U.S.C. § 2778(a)(1). The articles and services (*i.e.*, items) so designated constitute the USML. Id. See also 22 C.F.R. § 121.1(a) (describing the organization of the USML and noting each USML category is composed of related defense articles). Category I of the USML includes all firearms up to .50 caliber (22 C.F.R. § 121.1(I)(a) and (b)) and all technical data "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of" such firearms (22 C.F.R. § 120.10(a)). Through the CJ process, the Department of State specifically determined that the subject CAD files are subject to the export controls of ITAR.

The Department of State argues that its decision to immediately allow the unlicensed export of previously-regulated items does not trigger the Congressional notice requirement because the temporary modification did not deregulate a whole group or category of defense articles described in the USML, such as "nonautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)," 22 C.F.R. § 121.1(I)(a). This argument conflates "category" with "item." As described in the statute, the USML is a list of items designated by the President as "defense articles and defense services." 22 U.S.C. § 2778(a)(1). Rather than generate an exhaustive list of every individual article or service that is subject to export control under the AECA, the Department of State opted to populate the USML with generally descriptive categories. Those categories describe actual items, however, and it is those items that are the "defense articles and defense services" subject to export control under the AECA. 22 C.F.R. § 121.1.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 14

WASHSTATEC004847

The congressional review and notice requirements specifically apply to items, not categories of items. 22 U.S.C. § 2778(f). The Department's CJ regulation further confirms that it is the removal of a particular article or service - an item rather than a category - that triggers the review and notice requirements. The Department describes the CJ procedure as a means of resolving doubts "as to whether an article or service is covered by the U.S. Munitions List" and to seek "redesignation of an article or service currently covered by the U.S. Munitions List." 22 C.F.R. § 120.4(a). Immediately after the reference to redesignation, the regulations reiterate that the "Department must provide notice to Congress at least 30 days before any item is removed from the U.S. Munitions List." Id. Given the language, structure, and purpose of the statute and implementing regulations, the Court finds that the attempt to revoke the listing of an item previously covered by the USML through the issuance of a "temporary modification," thereby lifting all export controls under the AECA and ITAR, triggers the congressional notice requirement of the statute.

It is undisputed that Congress was not notified prior to the removal of the subject CAD files from the USML. This procedural failure cannot be rectified by providing Congressional notice thirty days in advance of making the "temporary" removal "final:" the temporary modification implemented the removal immediately, without waiting for the proposed rule to become final and without giving Congress notice and an opportunity to exercise its oversight role. Because the removal to which the States object occurred as of July 27, 2018, a subsequent notice is obviously not timely under the statute.[5]

_____

[5] To the extent the federal defendants are relying on 22 C.F.R. § 126.2 as authority for the temporary modification (see Dkt. #173 at 6), its use of that procedure to immediately redesignate an item that was previously covered by the USML without Congressional notice violates the governing

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 15

WASHSTATEC004848

The Court finds that the temporary modification of the USML to allow immediate publication of the previously-regulated CAD files constitutes the removal of one or more items from the USML without the required Congressional notice. Because the agency action was "without observance of procedure required by law," it must be held unlawful and set aside under § 706 of the APA.

**2. Tenth Amendment Claim**

As part of the settlement agreement in the Texas litigation, the federal defendants agreed that the temporary modification that would be issued on or before July 27, 2018, would permit "any United States person" including the private defendants' customers and members, "to access, discuss, use, reproduce, or otherwise benefit from the technical data" contained in the CAD files at issue. Dkt. #171-2 at 6. Plaintiffs argue that this provision exceeds the limits imposed on the federal government by the Tenth Amendment in that it conflicts with, and presumably abrogates, state laws restricting certain persons from possessing, manufacturing, owning, and/or using firearms in general or 3D-printed firearms in particular. Plaintiffs therefore argue that the temporary modification must be invalidated as "otherwise not in accordance with law" under the APA.

Both the federal and private defendants have, at various times during this litigation, disavowed any intent to alter or in any way impact existing prohibitions or limitations on the possession of firearms, and the federal defendants recognize the continuing viability of state law gun control measures. Plaintiffs find no comfort in these statements "given the plain language of

---

statute. "It is beyond dispute that a federal regulation cannot empower the Government to do what a federal statute prohibits it from doing." Tuan Thai v. Ashcroft, 366 F.3d 790, 798 (9th Cir. 2004).

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 16

the operative Temporary Modification and Letter." Dkt. #186 at 14. A review of the notice of

temporary modification and letter shows, however, that neither communication expressly

permits "any United States person" to "use" the CAD files or 3D-printed firearms. Nor do they

contain a reference incorporating the settlement agreement or the promises set forth therein.

Without assistance from the parties, the Court declines to determine whether a contractual

provision regarding the intended meaning of a promised, future statement would have any effect

on state law or be otherwise enforceable when the statement, when finally issued, contains no

language regarding the subject matter.

### 4. Arbitrary and Capricious

Plaintiffs allege that the federal defendants' decision to allow Defense Distributed to

upload to the internet CAD files containing 3D printing instructions for the manufacture of

undetectable weapons was arbitrary and capricious because the State Department failed to

consider the factors set forth in the AECA, failed to offer an explanation supported by

substantial evidence in the administrative record, and/or has asserted justifications that are

pretextual. In determining whether agency action was arbitrary and capricious, the Court's scope

of review is "narrow" and focused on determining whether the agency "examined the relevant

data and articulated a satisfactory explanation for [its] decision, including a rational connection

between the facts found and the choice made." Dep't of Commerce, 139 S. Ct. at 2569 (citing

Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43

(1983) (internal quotation marks omitted). In order for the Court to be able to determine whether

the agency has acted within the bounds imposed by the governing statute, the agency is required

to disclose the basis for its action, making the findings necessary to support the decision, and

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 17

produce an administrative record that substantially supports those findings. <u>Burlington Truck</u> <u>Lines, Inc. v. U.S.</u>, 371 U.S. 156, 168 (1962).

The federal defendants, citing 22 C.F.R. § 120.3(b), argue that only items that "provide[] a critical military or intelligence advantage" belong on the USML and that a multi-year, inter-agency review process led to the determination that firearms up to .50 caliber do not satisfy that standard. There are a number of problems with this argument. First, the regulation cited states that articles or services that provide "a critical military or intelligence advantage" "shall be" included on the USML. Items that fit that description must be on the USML, but they are not the only items that can be included. Thus, an agency determination that small-caliber firearms do not provide critical military or intelligence advantages does not explain why those previously-controlled items were removed from the list.

Second, Congress granted the President and his designees the discretion to remove an item from the USML in light of certain considerations and factors. Congress directed the agency to consider how the proliferation of weaponry and related technical data would impact world peace, national security, and foreign policy. The State Department essentially concedes that, despite the specified statutory considerations, it evaluated the export controls on small caliber firearms only through the prism of whether restricting foreign access would provide the United States with a military or intelligence advantage. Because the delisting was not "based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute," it must be invalidated under the APA. <u>Motor Vehicle Mfrs.</u>, 463 U.S. at 42.

Third, given the agency's prior position regarding the need to regulate 3D-printed

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 18

WASHSTATEC004851

firearms and the CAD files used to manufacture them, it must do more than simply announce a

contrary position.

> [T]he requirement that an agency provide reasoned explanation for its action
> would ordinarily demand that it display awareness that it *is* changing position. . . .
> [T]he agency need not always provide a more detailed justification than what
> would suffice for a new policy created on a blank slate . . . [But s]ometimes it must
> - when, for example, its new policy rests upon factual findings that contradict
> those which underlay its prior policy . . . . It would be arbitrary or capricious to
> ignore such matters. In such cases it is not that further justification is demanded by
> the mere fact of policy change; but that a reasoned explanation is needed for
> disregarding facts and circumstances that underlay . . . the prior policy.

F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515-16 (2009) (emphasis in original).

Until April 2018, the federal government regulated technical data related to the design and

production of weapons using a 3D printer because the data and weapons posed a threat to world

peace and the security and foreign policy of the United States. Some of its concerns related

specifically to the undetectable nature of a gun made from plastic: because they could slip

through conventional security equipment, the State Department feared that they could be used in

assassination attempts, hijackings, piracy, and terrorist activities. Other concerns related to the

portability and ease of a manufacturing process that would allow terrorist groups and embargoed

nations to evade sanctions, repair weapons, restock arms supplies, and fuel violent regional

conflicts. Both aspects of the technical data at issue would, the State Department feared, subvert

the domestic laws of nations with restrictive firearm controls, impairing the United States'

foreign relations with those nations. Overall, the Department of State concluded that the

worldwide publication of computerized instructions for the manufacture of undetectable firearms

was a threat to world peace and the national security interests of the United States and would

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 19

cause serious and long-lasting harm to its foreign policy. Against these findings, the federal

defendants offer nothing: no analysis of the potential impacts of removing the CAD files for 3D-

printed firearms from the USML, no response to the public comments raising concerns about

such a removal, no acknowledgment in the NPRMs of its change in position with regards to the

CAD files, and no justification in the temporary modification, the letter, or the administrative

record for the change.[6]

The federal defendants argue that the agency appropriately evaluated whether import and

export restrictions on small caliber firearms were warranted and that the results of the multi-year

inter-agency review apply to 3D-printed guns and the technical data related to them. The only

parts of the administrative record cited in support of this argument are the NPRMs issued by the

Departments of State and Commerce regarding the delisting of certain items in Category I of the

USML. A review of those documents shows that:

- the goal of the proposed revisions is to limit Category I to only those items "that
provide the United States with a critical military or intelligence advantage or, in

---

[6] The private defendants point to a PowerPoint presentation made at an Additive Manufacturing Symposium in February 2014 and a law review article written by their former counsel that same year as support for the agency's 2018 decision to remove the subject CAD files from the USML. The law review article merely raises constitutional arguments against the regulation of 3D-printed guns and is seemingly unrelated to any justification the agency has offered for its action. The symposium presentation includes two slides related to 3D-printed guns, one displaying a picture of a 3D-printed gun (courtesy of Cody Wilson) and another including text stating that export controls offer no benefit to U.S. manufacturing or national security. Dkt. #116-1 at 32. There is no indication that the agency actually relied on this document when issuing the temporary modification in 2018: in fact, it tacitly concedes that it did not because the multi-year review upon which the decision was apparently based focused on small caliber firearms generally, not 3D-printed guns specifically. Just as importantly, the slides do not reflect consideration of the factors Congress intended the agency to consider or constitute a "reasoned explanation" for disregarding the agency's prior findings regarding the impact of 3D-printed weapons on world peace, national security, and foreign policy. Fox Television Stations, 556 U.S. at 516.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 20

WASHSTATEC004853

the case of weapons, are inherently for military end use" (83 Fed. Reg. 24,198);[7]

● the revised Category I will no longer cover small-caliber non-automatic and semi-automatic firearms (Id.);

● the revised Category I will no longer cover "commercial items widely available in retail outlets and less sensitive military items" (83 Fed. Reg. 24,166);

● the proposed changes are based on an inter-agency review (Id.).

These statements are merely descriptions of the changes proposed and the process used, not an analysis of or justification for the changes. The Department of Commerce goes on to say that it believes that, unless an item provides a critical military or intelligence advantage to the United States or is generally unavailable at retail outlets for civil and recreational activities, the burdens of subjecting U.S. manufacturers to the obligations of the ITAR are not warranted by any proportionate benefits to national security or foreign policy objectives. 83 Fed. Reg. 24,167.

Whatever the merits of this analysis with regards to the rim fire rifles, pistols, and other popular shooting implements specifically mentioned in the NPRMs, it does not provide a "reasoned explanation" for the action with regards to the CAD files and 3D-printed weapons at issue here. Less than two months before the NPRMs were published, the State Department had taken the position that 3D-printed weapons posed unique threats to world peace, national

---

[7] The descriptions of what will be covered by the revised Category I vary in the NPRMs. The Department of State asserts that the revised Category I will cover "only defense articles that are inherently military or that are not otherwise widely available for commercial sale." 83 Fed. Reg. 24, 198. The Department of Commerce describes Category I items under the amended USML as those which are "inherently military and otherwise warrant control on the USML" or "possess parameters or characteristics that provide a critical military or intelligence advantage to the United States[] and are almost exclusively available from the United States." 83 Fed. Reg. 24,166.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 21

WASHSTATEC004854

security, and the foreign policy of the United States: the agency's specific concerns regarding

the proliferation of these weapons are well-documented in the administrative record. The

NPRMs neither display an awareness that the agency is changing its position with regards to the

data files, nor provide a reasoned explanation for a new policy that necessarily "rests upon

factual findings that contradict those which underlay its prior policy." <u>Fox Television Stations</u>,

556 U.S. at 515-16. The agency has simply abandoned, without acknowledgment or analysis, its

previous position and has sub silentio found that the delisting is consistent with world peace,

national security, and U.S. foreign policy despite explicit, recent findings to the contrary. <u>See</u>

<u>Motor Vehicles Mfrs. Ass'n</u>, 463 U.S. at 46-51 (acknowledging that an agency need not consider

and reject all policy alternatives when reaching a decision, but noting that where an alternative is

within the ambit of the existing standard or policy, "it may not be abandoned without any

consideration whatsoever").[8] Because it is arbitrary and capricious to ignore the contradiction in

these circumstances, the agency action must be invalidated.

The Court finds that the agency action is arbitrary and capricious in two, independent

respects. First, the agency failed to consider aspects of the problem which Congress deemed

important before issuing the temporary modification and letter on July 27, 2018. Second, the

agency failed to identify substantial evidence in the administrative record explaining a change of

position that necessarily contradicts its prior determinations and findings regarding the threats

posed by the subject CAD files and the need to regulate the same under the AECA. Because the

agency action was arbitrary and capricious, it is unlawful and must be set aside under § 706 of

---

[8] In addition, there are no findings (and no evidence in the administrative record) that the CAD files at issue here were widely available before the agency abruptly deregulated them on July 27, 2018.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 22

WASHSTATEC004855

the APA.[9]

## C. The Private Defendants' Other Arguments

### 1. Motion to Dismiss

The private defendants incorporate by reference a motion to dismiss that was denied almost a year ago. Having offered no reason to reconsider the prior ruling and no explanation for the delay in seeking reconsideration, the motion is denied.

### 2. Personal Jurisdiction

Defense Distributed argues that the Court lacks jurisdiction over its person. Such a defense can be, and has been, waived. Although Defense Distributed asserted a personal jurisdiction defense in its answer, it omitted it from the motion to dismiss it filed on October 11, 2018, and has therefore waived the defense under Fed. R. Civ. P. 12(h)(1)(A).

### 3. First Amendment Justification for Agency Action

The private defendants argue that the CAD files are protected speech under the First Amendment and assert that the files were removed from the USML in order to avoid constitutional problems. The agency, however, has not relied on the First Amendment as justification for its action, and neither the Court nor the private defendants may supply a basis for the decision that the agency itself did not rely upon. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 683-84 (2007).

### 4. First Amendment Violation

The private defendants again assert that restrictions on their ability to publish the files

---

[9] Because the agency action must be invalidated on other grounds, the Court has not considered whether the agency's justifications were pretextual or whether such a finding would warrant invalidation under the APA.

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 23

constitute a prior restraint that is presumed to be unconstitutional and that the regulations should be subjected to strict scrutiny. Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation. Plaintiffs allege that the federal defendants failed to follow prescribed procedures and acted in an arbitrary and capricious manner when they issued the temporary modification and letter authorizing the immediate publication of the CAD files. The State Department has not attempted to justify its action as compelled by the First Amendment, nor have the private defendants shown that their First Amendment interests are a defense to plaintiffs' claims or a talisman that excuses the federal defendants' failures under the APA.

**D. Remedy**

The presumptive remedy for unlawful agency action is vacatur and remand. All. for the Wild Rockies v. United States Forest Serv., 907 F.3d 1105, 1121 (9th Cir. 2018). Plaintiffs also seek an injunction preventing the federal defendants from again issuing a temporary modification purporting to deregulate the subject CAD files with no warning. Plaintiffs have not shown that the harm they fear is likely to occur, however. There is no indication that the federal defendants are poised to immediately modify the USML as soon as their previous efforts are invalidated or are otherwise inclined to ignore the procedural and substantive requirements of the AECA discussed in this order. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.").

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 24

WASHSTATEC004857

**CONCLUSION**

For all of the foregoing reasons, plaintiffs' motion for summary judgment (Dkt. #170) is GRANTED in part and DENIED in part. The July 27, 2018, "Temporary Modification of Category I of the United States Munitions List" and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED. Defendants' motions for summary judgment (Dkt. #173 and #174) are DENIED.

Dated this 12th day of November, 2019.

Robert S. Lasnik
United States District Judge

ORDER INVALIDATING TEMPORARY
MODIFICATION AND LETTER - 25

Message

| | |
|---|---|
| **From:** | Strike, Andrew P [StrikeAP@state.gov] |
| **Sent:** | 11/12/2019 11:14:12 PM |
| **To:** | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov]; Legal-PM-DL [Legal-PM-DL@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov]; Miller, Michael F [Millermf@state.gov] |
| **Subject:** | Fwd: Reuters: Judge blocks White House from allowing downloads of 3-D printed gun blueprints |

Judge blocks White House from allowing downloads of 3-D printed gun blueprints
Jonathan Stempel

(Reuters) - A federal judge on Tuesday struck down the Trump administration's effort to allow blueprints for making guns from 3-D printers to be posted online.

U.S. District Judge Robert Lasnik said the State Department violated federal law by letting Defense Distributed, a Texas-based nonprofit, publish downloadable blueprints for the untraceable, undetectable, mainly plastic firearms, as part of a June 2018 legal settlement.

Lasnik cited the State Department's prior view that publishing such instructions could threaten U.S. foreign policy, national security and even world peace by enabling criminals, including terrorists outside the United States, to obtain the firearms.

"Against these findings, the federal defendants offer nothing" to support the reversal, the Seattle-based judge wrote. "Because the agency action was arbitrary and capricious, it is unlawful and must be set aside."

The State Department is reviewing the decision. The U.S. Department of Justice, which represented the agency, did not immediately respond to requests for comment. Lawyers for Defense Distributed did not immediately respond to similar requests.

Lasnik ruled in a lawsuit by 19 U.S. states and Washington, D.C., led mainly by Democrats, to keep the blueprints offline.

Gun rights advocates have said fears about posting the blueprints were overblown, but the states called a ban necessary to protect the public and deny criminals easy access to weapons.

"It is baffling that the Trump Administration continued to work so hard to allow domestic abusers, felons and terrorists access to untraceable, undetectable 3D-printed guns," Washington state's attorney general, Bob Ferguson, said in a statement.

He noted that Republican President Donald Trump tweeted one day after the July 2018 lawsuit was filed that he was looking into the public sale of 3-D guns and had spoken to the National Rifle Association, and said that the guns did not "seem to make much sense!"

"I'm thankful the court agrees," said Ferguson, a Democrat.

California, Illinois, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania and Virginia were among the more populous states to join Ferguson's lawsuit.

Defense Distributed had argued that the earlier ban violated its constitutional rights to free speech and to bear arms under the First and Second Amendments. It had hoped to make its blueprints available to the public in August 2018.

The case is Washington v U.S. Department of State et al, U.S. District Court, Western District of Washington, No. 18-01115.

WASHSTATEC004859

Message

| | |
|---|---|
| **From:** | Robbins, Hailey [RobbinsH2@state.gov] |
| **Sent:** | 11/12/2019 11:47:13 PM |
| **To:** | Ford, Christopher A [FordCA@state.gov] |
| **CC:** | T_SpecAssts [T_SpecAssts@state.gov] |
| **Subject:** | Night Notes 11/12 |
| **Attachments:** | 1112 Roll-Out Plan and TPs--CATS I-III.docx; PG - ending Fordow waiver.docx; S Statement on ending Fordow waiver.docx |



**CATS I-III Rollout Plan:** State, Commerce and DTSA successfully completed the briefing to bipartisan staff from each of HFAC, SFRC and SBANK. The briefing went well overall; some concerns were raised about the future notification of licenses moving to Commerce, but the issue was not pressed.  In a sidebar after the briefing, Senator Menendez' staffer described his mood as "mildly pleased" that the interagency had paid attention to the concerns that had been expressed (although we await to see if this remains the case after the anticipated response from some quarters).  The CN was delivered via courier between 3-4pm this afternoon.  The Wall Street Journal's Courtney McBride was backgrounded by State and Commerce this afternoon and will run a story at some point after the embargo expires, at 4pm today.  PM/CPA is working to schedule a statutory briefing under the NDAA to HASC and SASC for tomorrow.  PM/CPA is also working to line up the planned roundtable hosted by Heritage in the near future, and with the arms control community thereafter.  Finally, after 4pm, PM/CPA will be postured for press enquiries.  The detailed rollout plan and TPs are attached for your awareness.

Hailey Robbins
Chief of Staff
Office of the Under Secretary for Arms Control
and International Security
U.S. Department of State
202-647-4397

SENSITIVE BUT UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent:** | 11/13/2019 2:03:24 PM |
| **To:** | PM-DTCP-RAA [PM-DTCP-RAA@state.gov] |
| **Subject:** | FW: CPA MEDIA MONITORING: 12 November 2019 |

Team,
Some good articles regarding Cats I-III and 3D printing.

Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

---

**From:** Marquis, Matthew R <MarquisMR@state.gov>
**Sent:** Tuesday, November 12, 2019 4:45 PM
**To:** Windecker, Melissa A <WindeckerMA@state.gov>; PM-Strategy <PM-Strategy@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; PM-Directors <PM-Directors@state.gov>; PM-Deputy-Directors <PM-Deputy-Directors@state.gov>; PM-POLAD-DL <PM-POLAD-DL@state.gov>; Brown, Stanley L <BrownSL@state.gov>; O'Keefe, Kevin P <OKeefeKP@state.gov>; Miller, Michael F <Millermf@state.gov>; Mak, Daniella <MakD@state.gov>; Dudding, Maria <DuddingM@state.gov>; Nute, Kathryn M <NuteKM3@state.gov>; Phalen, Susan A <PhalenSA@state.gov>; Cooper, R. Clarke <CooperRC@state.gov>; Ryan.M.Tully@nsc.eop.gov; j.tylerwilliamson@gmail.com; george.castellon20@gmail.com; Trowbridge, Laura E. <trowbridge.laura@ou.edu>
**Subject:** CPA MEDIA MONITORING: 12 November 2019



**Alerts for 12 November 2019**

"U.S. to ease firearm export rules next month: sources", U.S. firearms makers will be able to more easily export guns, including assault rifles and ammunition, as early as mid-December under rules set to be finalized by the Trump administration, people briefed on the matter said on Tuesday.

"Administration Plans to Ease Exports of U.S.-Made Firearms", Tuesday's action follows a multiyear review by the departments of Commerce, Defense, Homeland Security, Justice and State, which received and incorporated comments from the public and other interested parties. Senior officials from Commerce and State told The Wall Street Journal that the process has been responsive to feedback from lawmakers and members of the public. The State Department received more than 3,000 public comments on the proposed rule, according to a senior department official.

"Federal judge strikes down Trump Administration action allowing release of 3D-printed guns", In his ruling, Judge Robert Lasnik granted Ferguson's motion for summary judgment, meaning the case will not need to go to trial. The judge ruled that the Trump Administration's decision to allow the unlimited distribution on the internet of data files for untraceable, undetectable 3D-printed guns was arbitrary, capricious and unlawful.

"Judge Blocks Rule Change That Allowed Austin-Based Company To Publish 3D-Printed Gun Plans", Today, Judge Lasnik issued a ruling overturning the State Department's actions, finding the agency failed to provide Congress with 30 days required under the law.  "Because the agency action was 'without observance of

WASHSTATEC004861

procedure required by law,'" Lasnik writes, "it must be held unlawful and set aside." However, the judge leaves the door open to the State Department trying again to alter the rules, following proper procedure.

"Ukraine troops, rebels pull out of Donbass village", Ukraine's military removed its troops and armored vehicles from the front line near the villages of Petrivske and Bohdanivka on Monday, as both Kyiv and rebel commanders work to disengage their forces from the remaining flashpoints in eastern Ukraine.

"U.S. military imagery shows possible atrocities by Turkish-backed forces in Syria", If verified, the imagery could provide credibility to allegations that the offensive Turkey launched over Western objections last month has resulted in repeated abuses against Syrian Kurds who have been an important U.S. partner against the Islamic State.

"On a Rocky Island, Russia Seeks Military and Psychological Edge", The base, built to serve all types of Russia's transport and military helicopters, allows Mr. Putin to maintain psychological pressure on its neighbors and deter what it sees as a nightmare scenario: neighboring Finland or Sweden joining NATO, allowing the alliance to further encroach on Russia's borders. Moscow wants the tiny Baltic nations of Estonia, Latvia and Lithuania, which were part of the Soviet Union but are NATO members, to worry about whether their allies won't or can't come to their aid, giving Russia political leverage.

"US-South Korea Alliance Under Pressure as Deadlines for Military Pacts Approach", As a tradeoff, South Korea is looking into reforming its military to rely more on technologies such as unmanned aircrafts and weaponized drones. However, this clashes with Washington's demand that Seoul pay more for its share of defense costs, which Bennett said most likely needs to come out of Seoul's defense budget marked for the research and development and acquisition of weapons. In that case, Seoul's ability to devote funds to develop and purchase military technologies could be curtailed.

"Taiwan to receive first two F-16Vs by 2023: defense chief", The first two of 66 F-16V fighter jets that Taiwan has purchased from the United States are expected to arrive in 2023, Defense Minister Yen De-fa (嚴德發) said Tuesday during a legislative hearing. The rest of the all-weather multi-role aircraft will be delivered in batches of four or five units between 2024 and 2026, Yen said.

"Mali says several extremists dead in new military offensive", The offensive comes after about 100 soldiers have been killed by extremists in the span of a month. It represents one of the army's heaviest losses since a 2013 French-led military intervention to oust the extremists from power in the major towns of northern Mali.

"Pirates attacked Italian supply ship, two crew wounded, Mexico", Pirates boarded the ship, in following skirmish two crew, both Italians, were wounded, but luckily, wounds aren't life threatening. Pirates managed to loot the ship and the crew, and fled. Injured seamen were transferred to hospital, REMAS moved to Ciudad del Carmen anchorage and anchored.

"Colombia foreign minister to move to top defense post", Colombia's foreign minister Carlos Holmes Trujillo will move to head the defense ministry, President Ivan Duque said on Tuesday, where he will focus on everyday security and the fight against armed groups and drug trafficking

"West Africa grapples with piracy in Gulf of Guinea hotspot", In the first nine months of this year the Gulf of Guinea accounted for 82 percent of crew kidnappings around the world, according to the International Maritime Bureau, an organisation monitoring crimes at sea. In a stark illustration of the problem, 13 sailors were kidnapped in two separate attacks on Norwegian and Greek vessels in the waters of Benin and Togo, west of Nigeria, even as the international exercise was still going on.

"A State with Four Armies: How to Deal with the Case of Iraq", Given the fraught history of Iraq's regular military forces, it is no surprise that alternative formations, such as the Popular Mobilization Forces and the

WASHSTATEC004862

Peshmerga, came into existence. These forces are best regarded as reactions to the repeated inadequacy of the Iraqi Army to provide security to major population groups, which is itself a function of Iraq's violent history of political rule.

"How a preacher sent gunmen into Burkina Faso's schools", As Western forces rely increasingly on their Sahel partners, rights groups and residents say they sometimes overlook abuses by locals. Four witnesses described to Reuters summary executions of suspected insurgents during search operations. These included an incident in the village of Belhoro on Feb. 3, in which security forces ordered nine men out of their homes and shot them dead, according to two women who saw the killings.

"Iraq's elite rallies around Iran-backed plan to hang on to power", Iraq's ruling parties appear to have rallied behind a strategy, blessed by Iran, to try to survive a mass anti-government uprising by containing protests on the streets of Baghdad while offering a package of political reforms and elections next year.

"Japan, US say 3-way ties with S. Korea are key to security", South Korea has announced plans to scrap the General Security of Military Information Agreement, or GSOMIA, amid disputes with Japan over trade and wartime history. The deal, which is set to expire later this month, symbolizes the Asian neighbors' security cooperation with Washington in the face of North Korea's nuclear and missile threat and China's growing influence. U.S. President Donald Trump's administration has been exerting last-minute pressure on Japan and South Korea to keep the deal.

"Czechs to sign deal to buy 12 US military helicopters by year's end", Defense Minister Lubomir Metnar says the deal is worth the worth 14.6 billion Czech crowns ($631 million) and the helicopters are to be delivered in 2023 to replace the obsolete Soviet-made Mi-24s. The Czechs will get eight UH-1Y Venom choppers and four AH-1Z Vipers from U.S. maker Bell Hellicopter.

"Israel kills Islamic Jihad commander, rockets rain from Gaza", Israel killed a top commander from the Iranian-backed Palestinian militant group Islamic Jihad on Tuesday in the Gaza Strip, drawing rocket salvoes that reached as far as Tel Aviv in the worst cross-border fighting in months.

"The EU just agreed on 13 more weapons projects to develop more firepower independently of the US", The projects took months to negotiate, but French President Emmanuel Macron underlined the desire for deeper EU defense collaboration last week when he said the US-led NATO defense alliance was dying.

"Airbus expects updated industry call for Germany's Tornado replacement contest", Complicating a pick between the Eurofighter and the F-18 is the requirement that Germany must keep a contingent of aircraft capable of carrying U.S. nuclear bombs under NATO's nuclear doctrine. That seemed to give Boeing's offering an advantage, German paper Süddeutsche Zeitung claimed in a report last month.

"Pakistan plans to increase arms exports to $1b a year", Pakistan is looking to expand its export of arms, with the end goal of selling $1 billion worth of defence equipment every year, according to a report by the Nikkei Asian Review. In fact, it has already started increasing its arms sales.

"F-35, F-22 Jets To Be Displayed At Dubai Airshow 2019", The Pentagon is set to display its advanced F-22 Raptor and F-35 Lightning II fighters at the Dubai Airshow 2019, marking the F-35 jet's first participation at an event in the Middle East. This opens up the possibility that the United States (US) is looking at the United Arab Emirates (UAE), Saudi Arabia, and other Arab countries in the region that do not have stealth fighters, as a potential market for its own jets.

"Can a new Franco-German export agreement clear the air for Europe's future fighter?", The export pact, which entered into force in late October with the formal exchange of government notes, is meant to streamline a contentious process that has clouded bilateral defense cooperation for some time. Namely, the agreement

WASHSTATEC004863

dictates that joint government programs, like FCAS fighter jet, be free from interference by partner nations when it comes to eventual exports.

"Spotlight: Landmines pose serious humanitarian threat to Yemenis", The landmines and IEDs continue posing a threat to the civilians despite the ongoing efforts exerted by the experts of the mine-clearing project in Yemen. Previous reports by humanitarian organizations said Yemen has become one of the largest landmine battlefields in the world since World War II.

"Turkey's S-400 buy may have spoiled Gulf nations' chances of flying the F-35", The United States will likely continue to look the other way when Gulf nations buy certain technologies like tanks and artillery from countries like Russia and China, said Richard Aboulafia, an aerospace analyst with the Teal Group. However, more sophisticated air defense capabilities like the S-400 will probably be off limits to countries that want the F-35, he said.

"Boeing Delivers First P-8A Poseidon to United Kingdom's Royal Air Force", Boeing [NYSE: BA] last week delivered the first of nine P-8A Poseidon maritime patrol aircraft (MPA) to the United Kingdom Royal Air Force (RAF). The United Kingdom is acquiring the multi-mission aircraft through the Foreign Military Sales process with the U.S. Navy. The P-8A Poseidon replaces the U.K.'s retired Nimrod aircraft.

"Ukraine says it expects same amount of US aid in 2020 'if not larger'", Reuters reported that Ukraine's defense minister Andriy Zahorodniuk cited a "general common opinion" in Washington that aid to Ukraine should be increased in response to President Volodymyr Zelensky's anti-corruption efforts.

"EDITORIAL: Japan's arms purchases from U.S. are rife with waste, flaws", The Board of Audit's scrutiny of the government's books has revealed serious problems with the way Japan's arms purchases from the United States are made and paid for along with a wide range of wasteful spending and flaws in public funds management.

"US snipers train with ally to sharpen shooting skills", Vidrio explained how the MET-J shared information on how the U.S. Army executes sniper tasks and in turn, the Jordanians shared their way of doing the same task. The exchange not only reviewed basic sniper skills but incorporated different approaches to instruct the material to other soldiers.

"A new future in global arms sales?", A simple model of just selling systems into the region likely won't fly, nor will teaming on a particular competition necessarily be enough. Boeing formed a joint venture with SAMI, for example, recognizing the need to commit long term.

"Democrats fight Trump stonewall over Lebanon military aid freeze", US officials hope to resolve the dispute over the aid soon, which had not been previously frozen under the Trump administration. A State Department official told Al-Monitor that no military purchases made with US aid had been delayed, and that the decision was part of "a continual review" of American assistance "to ensure we are meeting US foreign policy objectives and optimizing value for the American taxpayer."

"First F-35 Sale To UAE Could Still Be Years Away", The timing of the new sales discussions also followed a pattern of U.S. policy. The first F-35I ordered by Israel arrived at Nevatim AB in December 2016. The U.S. government generally offers Israel at least a five-year head start on new fighter technology, then allows other governments in the regions to import the aircraft, Aboulafia says.

"Trump weighs conditioning foreign aid on religious freedom", Two White House officials confirmed the basics of the religious freedom aid-conditioning plan. They stressed that the idea is in its early stages and an executive order is still being drafted, meaning questions about, say, whether military aid will be covered remain unanswered.

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.6968
e-mail:       *MarquisMR@state.gov* |   Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

Message

| | |
|---|---|
| **From:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Sent:** | 11/13/2019 5:32:50 PM |
| **To:** | Trotto, Thomas [TrottoT@state.gov] |
| **Subject:** | FW: CPA Media Monitoring: Engadget: The legal battle over 3D-printed guns is far from over |

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

---

**From:** Marquis, Matthew R <MarquisMR@state.gov>
**Sent:** Wednesday, November 13, 2019 12:00 PM
**To:** PM-DTCP-Tasking-DL <PM-DTCP-Tasking-DL@state.gov>; Legal-PM-DL <Legal-PM-DL@state.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Miller, Michael F <Millermf@state.gov>
**Subject:** CPA Media Monitoring: Engadget: The legal battle over 3D-printed guns is far from over



**The legal battle over 3D-printed guns is far from over**
**By Christine Fisher**
**13 November 2019**

Last year, Defense Distributed won a legal battle, which allowed it to continue uploading and sharing blueprints for 3D-printed guns. The decision was immediately criticized by states and gun-reform advocates. Now, a US District Judge has overturned the ruling. Once again, it is illegal to publish blueprints for 3D-printed guns online.

The battle started in 2012, when Defense Distributed posted blueprints for a 3D-printed pistol. More than 100,000 copies were downloaded, and it wasn't long before the US State Department told Defense Distributed that it was violating International Traffic in Arms Regulations. The State Department said sharing the files "could cause serious harm to U.S. national security and foreign policy interests."

Defense Distributed argued that preventing it from sharing its blueprints online violated the First Amendment, and in what many felt was a surprising response, the State Department surrendered to that argument. It reached a settlement with Defense Distributed that allowed the company to continue sharing its 3D-printed gun files.

Yesterday, U.S. District Judge Robert Lasnik in Seattle ruled that the State Department did not give a proper explanation when it reached that settlement. That's a violation of the federal Administrative Procedure Act, and as a result, Lasnik has overturned the ruling.

"Given the agency's prior position regarding the need to regulate 3D-printed firearms and the CAD files used to manufacture them, it must do more than simply announce a contrary position," Lasnik wrote in his decision.

The State Department is reviewing Lasnik's ruling, and Defense Distributed will likely appeal. But as Bloomberg points out, even President Trump said 3D-printed guns don't "make much sense." Whether or not Lasnik's ruling is allowed to stand, the battle over 3D-printed guns will likely continue.

WASHSTATEC004866

Link: https://www.engadget.com/2019/11/13/3d-printed-guns-ruling-overturned/

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:        202.647.6968
e-mail:        *MarquisMR@state.gov* |  Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

Message

---

**From:**  Carroll, Christienne [CarrollC@state.gov]
**Sent:**  11/13/2019 10:15:21 PM
**To:**  Heidema, Sarah J [HeidemaSJ@state.gov]; Miller, Michael F [Millermf@state.gov]
**CC:**  Paul, Joshua M [PaulJM@state.gov]
**Subject:**  RE: Availability for CATS I-III Heritage Private Roundtable

Sarah,

I'll send you a calendar invite, but I just wanted to let you know that the private roundtable at Heritage is <u>confirmed for
10:00 a.m. on Wednesday 11/20</u>.   It will be held at the main Heritage Foundation building located at:  214
Massachusetts Avenue NE, Washington, DC 20002.  Commerce and DTSA are confirmed as well.

Will anyone else from State be joining you (other than CPA)?

Thanks,
Christienne

**From:** Heidema, Sarah J <HeidemaSJ@state.gov>
**Sent:** Wednesday, November 13, 2019 11:59 AM
**To:** Carroll, Christienne <CarrollC@state.gov>; Miller, Michael F <Millermf@state.gov>
**Cc:** Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

It does

**From:** Carroll, Christienne <<u>CarrollC@state.gov</u>>
**Sent:** Wednesday, November 13, 2019 11:56 AM
**To:** Heidema, Sarah J <<u>HeidemaSJ@state.gov</u>>; Miller, Michael F <<u>Millermf@state.gov</u>>
**Cc:** Paul, Joshua M <<u>PaulJM@state.gov</u>>
**Subject:** FW: Availability for CATS I-III Heritage Private Roundtable

Sarah,

Commerce confirmed they have availability Wednesday morning for the Heritage roundtable.   If this timing works for
you, then we should be good to go!

Best,
Christienne

**From:** Jessica Curyto <<u>Jessica.Curyto@bis.doc.gov</u>>
**Sent:** Wednesday, November 13, 2019 11:43 AM
**To:** Carroll, Christienne <<u>CarrollC@state.gov</u>>; Timothy Mooney <<u>Timothy.Mooney@bis.doc.gov</u>>; Matthew Borman
<<u>Matthew.Borman@bis.doc.gov</u>>; Lopes, Alexander <<u>alexander.lopes@bis.doc.gov</u>>
**Cc:** Richard Ashooh <<u>Richard.Ashooh@bis.doc.gov</u>>; <u>LKluttz@doc.gov</u>; Petrina Chase <<u>Petrina.Chase@bis.doc.gov</u>>;
Clagett, Steven <<u>steven.clagett@bis.doc.gov</u>>; Jeff Bond <<u>Jeff.Bond@bis.doc.gov</u>>; Paul, Joshua M <<u>PaulJM@state.gov</u>>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

Hi Christienne,

WASHSTATEC004868

Yes, Commerce would be available that morning, Wednesday, 11/20 for a timeslot between 9am-12pm. Director Alex Lopes is available that morning and DAS Matt Borman is available between 9am-11am.

Thank you,
Jessica

**From:** Carroll, Christienne <CarrollC@state.gov>
**Sent:** Wednesday, November 13, 2019 11:39 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Jessica Curyto <Jessica.Curyto@bis.doc.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Alexander Lopes <Alexander.Lopes@bis.doc.gov>
**Cc:** Richard Ashooh <Richard.Ashooh@bis.doc.gov>; LKluttz@doc.gov; Petrina Chase <Petrina.Chase@bis.doc.gov>; Steven Clagett <Steven.Clagett@bis.doc.gov>; Jeff Bond <Jeff.Bond@bis.doc.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

Jessica,

Heritage just updated me that they have a room and can host the roundtable next Wednesday 11/20 (Monday and Tuesday are not an option).   Does Commerce have availability between 9AM and 12:00 on Wednesday 11/20?

Thanks,
Christienne

**From:** Carroll, Christienne
**Sent:** Wednesday, November 13, 2019 11:12 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Jessica Curyto <Jessica.Curyto@bis.doc.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Lopes, Alexander <alexander.lopes@bis.doc.gov>
**Cc:** Richard Ashooh <Richard.Ashooh@bis.doc.gov>; LKluttz@doc.gov; Petrina Chase <Petrina.Chase@bis.doc.gov>; Clagett, Steven <steven.clagett@bis.doc.gov>; Jeff Bond <Jeff.Bond@bis.doc.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

Jessica,

Does Commerce have availability next Monday, Tuesday or Wednesday morning (11/18-20)?  Heritage is not able to support a private roundtable this Friday, but could do this early next week.

Please let me know if any of those days would work, and if so, the available times in the mornings.

Many thanks,
Christienne

**From:** Carroll, Christienne
**Sent:** Wednesday, November 13, 2019 8:44 AM
**To:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>; Jessica Curyto <Jessica.Curyto@bis.doc.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Lopes, Alexander <alexander.lopes@bis.doc.gov>
**Cc:** Richard Ashooh <Richard.Ashooh@bis.doc.gov>; LKluttz@doc.gov; Petrina Chase <Petrina.Chase@bis.doc.gov>; Clagett, Steven <steven.clagett@bis.doc.gov>; Jeff Bond <Jeff.Bond@bis.doc.gov>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

Jessica,

Thanks for providing Commerce's availability.  Today won't be possible, but we will try for Friday if State also has availability.

WASHSTATEC004869

Many thanks,

Christienne

---

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Sent:** Tuesday, November 12, 2019 8:06 PM
**To:** Jessica Curyto <Jessica.Curyto@bis.doc.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Lopes, Alexander <alexander.lopes@bis.doc.gov>
**Cc:** Richard Ashooh <Richard.Ashooh@bis.doc.gov>; LKluttz@doc.gov; Petrina Chase <Petrina.Chase@bis.doc.gov>; Carroll, Christienne <CarrollC@state.gov>; Clagett, Steven <steven.clagett@bis.doc.gov>; Jeff Bond <Jeff.Bond@bis.doc.gov>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

Jessica,

Any of those times of Friday work well for me.

███████████████████████████████████████████████████

On who should attend, I would say Matt, Alex, Jeff Bond, and I would be good.

Tim

---

**From:** Jessica Curyto <Jessica.Curyto@bis.doc.gov>
**Sent:** Tuesday, November 12, 2019 5:47 PM
**To:** Matthew Borman <Matthew.Borman@bis.doc.gov>; Alexander Lopes <Alexander.Lopes@bis.doc.gov>; Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Cc:** Richard Ashooh <Richard.Ashooh@bis.doc.gov>; LKluttz@doc.gov; Petrina Chase <Petrina.Chase@bis.doc.gov>; 'carrollc@state.gov' <carrollc@state.gov>
**Subject:** FW: Availability for CATS I-III Heritage Private Roundtable

Matt / Alex / Tim - Per the emails below, checking on BIS availability this week for a private roundtable at Heritage. Please let me know your thoughts on who should staff this roundtable.

Christienne and Lawson - Based on Matt's availability for the remainder of the week, below are some initial times from the Commerce side:

- Wednesday, November 13th – 1:00pm-2:00pm
- Friday, November 15th - 9:00am-10:00am, 10:00am-11:00am, 11:00am-12:00pm, 3:00pm-4:00pm

Thank you,
Jessica

---

**From:** Carroll, Christienne <CarrollC@state.gov>
**Sent:** Tuesday, November 12, 2019 5:09 PM
**To:** LKluttz@doc.gov; Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Jessica Curyto <Jessica.Curyto@bis.doc.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

Just checking back in on this.  Please confirm the dates/times this week you could support a private roundtable at The Heritage Foundation as part of the rollout plan.

Many thanks,
Christienne


<center>SBU - DELIBERATIVE PROCESS</center>

**From:** Kluttz, Lawson (Federal) <LKluttz@doc.gov>
**Sent:** Tuesday, November 12, 2019 12:36 PM
**To:** Carroll, Christienne <CarrollC@state.gov>; Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Curyto, Jessica <Jessica.Curyto@bis.doc.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: Availability for CATS I-III Heritage Private Roundtable

Adding Jessica Curyto from BIS.


**From:** Carroll, Christienne <CarrollC@state.gov>
**Sent:** Tuesday, November 12, 2019 12:35 PM
**To:** Miller, Michael F <Millermf@state.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Kluttz, Lawson (Federal) <LKluttz@doc.gov>
**Cc:** PM-CPA <PM-CPA@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** Availability for CATS I-III Heritage Private Roundtable

Good afternoon,

Could you please confirm what dates/times you are available this week to support the private roundtable at Heritage on CATS I-III?

As soon as I have your availability, I'll coordinate with Heritage on scheduling.

Many thanks,

Christienne


**Christienne Carroll**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State


<center>SBU - DELIBERATIVE PROCESS</center>

Appointment

**From**:        Carroll, Christienne [CarrollC@state.gov]
**Sent**:        11/13/2019 10:16:39 PM
**To**:          Heidema, Sarah J [HeidemaSJ@state.gov]; Miller, Michael F [Millermf@state.gov]; PM-CPA [PM-CPA@state.gov]

**Subject**:     Heritage Foundation Private Roundtable (CATs I-III)
**Location**:    Heritage Foundation: 214 Massachusetts Avenue NE

**Start**:       11/20/2019 3:00:00 PM
**End**:         11/20/2019 4:30:00 PM
**Show Time As**: Tentative


**Recurrence**:  (none)

WASHSTATEC004872

Message

| | |
|---|---|
| **From**: | Betts, Timothy A [BettsTA@state.gov] |
| **Sent**: | 11/14/2019 1:07:17 AM |
| **To**: | Cooper, R. Clarke [CooperRC@state.gov] |
| **CC**: | Windecker, Melissa A [WindeckerMA@state.gov]; PM-DAS's [PM-DASs@state.gov] |
| **Subject**: | Good morning |

Clarke,

A few updates on the home front:



- CAT 1-2-3 notification is making almost no news, given the other activity occurring on the Hill and with the Erdogan visit.

Enjoy Israel.

Regards,
Tim

*Timothy A. Betts*
Principal Deputy Assistant Secretary
Bureau of Political-Military Affairs
U.S. Department of State
(202) 647-9023

SENSITIVE BUT UNCLASSIFIED

Appointment

**From**:          Heidema, Sarah J [HeidemaSJ@state.gov]
**Sent**:          11/14/2019 12:56:45 PM
**To**:            Carroll, Christienne [CarrollC@state.gov]

**Subject**:       Accepted: Heritage Foundation Private Roundtable (CATs I-III)
**Location**:      Heritage Foundation: 214 Massachusetts Avenue NE

**Start**:         11/20/2019 3:00:00 PM
**End**:           11/20/2019 4:30:00 PM
**Show Time As**:  Busy

**Recurrence**:    (none)

WASHSTATEC004874

Message

| | |
|---|---|
| **From:** | Gary Stanley [gstanley@glstrade.com] |
| **Sent:** | 11/14/2019 2:22:33 PM |
| **To:** | Robert L. Hart [hartrl@state.gov] |
| **Subject:** | Defense and Export-Import Update (Nov. 14, 2019) |

**Use Code S10-856-856L20.S to update a 10% "Speaker Discount." Group discounts are also available.**

**Dear All,**

**Good Day!**

**Gary Stanley's Export Control Tip of the Day:** The listing of an entity on the Entity List does not impose limitations on payments between parties; therefore, you may pay Huawei or one of its listed affiliates for items received from Huawei or one if its listed affiliates. Conversely, The listing of an entity on the Entity List does not impose limitations on payments between parties; therefore, Huawei or one of its affiliates can pay you for items lawfully shipped.

**Today's Items:**

1. **Global Affairs Canada Issues Update on Export Permits to Saudi Arabia**
2. **U.S. Government Contracting**
3. **U.S. Customs and U.S. Census/AES Updates**
4. **Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes**
5. **GAO and CRS Reports, Testimony, and Correspondence of Interest**

**Other Headlines**

6. **Warrantless Searches of Devices at Ports Illegal, Court Rules**
7. **DISA Official: 'No One Knows' How Cyber Standards Will Impact Contractor Pool**
8. **Seattle Judge Keeps Ban on internet Sales of 3D-Printed Gun Plans**
9. **U.S.-China Trade Talks Hit Snag Over Farm Purchases**
10. **Israelis Create Foreign Investment Overseer; China Targeted**
11. **China in Focus as West Debates Critical Minerals Challenge**
12. **European Steel Leaders Seek Scrutiny of Chinese British Steel Rescue**

13. **Can DoD Get Speed & Security With the Cloud?**
14. **Report Warns US Army to Watch Out for Creeping Operational Costs With Future Helos**
15. **Air Force, Allies Team to Find Space Startups**
16. **Stealthy Lockheed F-35 Breaks Down Too Often, Pentagon Says**
17. **F-35 Program on Track to Replace Turkey, Pentagon Officials Say**
18. **The Pentagon Plan to Save the F-35's Logistics System Hinges on Whether Lockheed Will Relinquish Data Control**
19. **Pentagon's AI Problem Is 'Dirty' Data: Lt. Gen. Shanahan**
20. **German Military Refuses to Take Delivery of Two Airbus A400M Planes**
21. **Opinion: Speed-of-Light Weaponry Requires Faster Acquisition Timelines**

**Upcoming Export Control and Other Trade Compliance Conferences -** *NEW EVENT ADDED!*

# 1. Global Affairs Canada Issues Update on Export Permits to Saudi Arabia

The Canadian Deputy Ministers of International Trade and Foreign Affairs within Global Affairs Canada have issued a memorandum addressed to the Canadian Minister of Foreign Affairs that provides an update on the Department's assessment of export permits to the Kingdom of Saudi Arabia (KSA). As a result of the deterioration in relations between Canada and KSA, the conflict and resulting humanitarian crisis in Yemen, and the Khashoggi killing, the Government has been re-evaluating Canada's foreign, defence and security policies towards KSA. During the period of assessment, no existing valid permits were suspended or canceled, thus allowing for the continued export of some items, including Light Armoured Vehicles (LAVs) by General Dynamics Land Systems Canada (GDLS-C). Moreover, during this period, the Department has assessed and processed a further 48 permit applications for exports of controlled goods to KSA on a case-by-case basis under its standard robust risk assessment process. Those permits have been deemed ready for approval by officials and await your further consideration. Since November 2018 and in line with the Department's standard robust risk assessment process, officials examined areas of concern, including the domestic human rights situation and the conflict in Yemen, and identified the types of exports that could be considered to give rise to a risk. In this context, however, officials found no credible evidence linking Canadian exports of military equipment or other controlled items to any human rights or humanitarian law violations committed by the Saudi government. Officials did not identify any existing permits or pending applications that would be of concern under the standard robust risk assessment framework.

# 2. U.S. Government Contracting

- DoD/Air Force: Notice of Intent to Grant an Exclusive Patent License to the Defense Science Technology Laboratory, an executive agency of the Ministry of Defense of the United Kingdom of Great Britain and Northern Ireland.

WASHSTATEC004876

## 3. U.S. Customs and U.S. Census/AES Updates

- U.S. Customs - CSMS #40622269 - ACE EDI Message Responses were Delayed from Noon-1pm ET

- U.S. Customs - DHS Awards $198K for Raw Material Import Tracking Using Blockchain

- U.S. Census - Dec. 12 Webinar on Trade Trends, Policy Actions and Resources for Metals and Critical Minerals

## 4. Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes

- Commerce/E&C - Certain Lined Paper Products from India: Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments; 2017-2018

- Commerce/E&C - Ceramic Tile from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Critical Circumstances Determination, and Postponement of Final Determination

- Commerce/E&C - Emulsion Styrene-Butadiene Rubber from Brazil: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018

- Commerce/E&C - Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Amended Preliminary Determination of Sales at Less Than Fair Value

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 19, 2019, 11:00 AM EST

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 20, 2019, 11:00 AM EST

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 22, 2019, 11:00 AM EST

## 5. GAO and CRS Reports, Testimony, and Correspondence of Interest

- GAO - F-35 AIRCRAFT SUSTAINMENT: DOD Faces Challenges in Sustaining a Growing Fleet GAO-20-234T: Published: Nov 13, 2019. Publicly Released: Nov 13, 2019.

- CRS - U.S. Strategy for Engagement in Central America: Policy Issues for Congress

- CRS - Iraq: Protests and the Future of U.S. Partnership

- CRS - Presidential Directives: An Introduction

WASHSTATEC004877

- CRS - Latin America and the Caribbean: U.S. Policy Overview

- CRS - DOD's Cloud Strategy and the JEDI Cloud Procurement

- CRS - Air Force B-21 Raider Long-Range Strike Bomber

## Other Headlines

## 6. Warrantless Searches of Devices at Ports Illegal, Court Rules

CSMonitor.com & Associated Press, Nov. 13 - A federal court in Boston has ruled that warrantless U.S. government searches of the phones and laptops of international travelers at airports and other U.S. ports of entry violate the Fourth Amendment. Tuesday's ruling in U.S. District Court came in a lawsuit filed by the American Civil Liberties Union and the Electronic Frontier Foundation on behalf of 11 travelers whose smartphones and laptops were searched without individualized suspicion at U.S. ports of entry. ACLU attorney Esha Bhandari said the ruling strengthens the Fourth Amendment protections of international travelers who enter the United States every year. The ACLU describes the searches as "fishing expeditions." They say border officers must now demonstrate individualized suspicion of contraband before they can search a traveler's electronic device. The government has vigorously defended the searches as a critical tool to protect America. The number of electronic device searches at U.S. ports of entry has increased significantly, the ACLU said. Last year, the government conducted more than 33,000 searches, almost four times the number from just three years prior. Documents filed as part of the lawsuit claim the scope of the warrantless searches has expanded to assist in enforcement of tax, bankruptcy, environmental and consumer protection laws, gathering intelligence, and advancing criminal investigations.

## 7. DISA Official: 'No One Knows' How Cyber Standards Will Impact Contractor Pool

NextGov.com, Nov. 4 - Officials at the Defense Information Systems Agency don't know whether forthcoming vendor cybersecurity standards will shrink the pool of contractors that qualify for critical tech projects. In January, the Pentagon plans to publish the final version of the Cybersecurity Maturity Model Certification, or CMMC. Under the framework, companies would have their cyber practices graded on a scale of one to five, and procurement officials would use the rating to determine which vendors are eligible for certain contracts, with more sensitive projects requiring more stringent security standards. While the program is intended to push vendors to strengthen their security standards and increase visibility into the department's supply chain, it could also render a significant chunk of the Pentagon's contractor pool ineligible for its most sensitive projects, according to DISA officials. "A very small number … of the 300,000 [defense industrial base] companies have state-of-the-art cybersecurity. The majority of them are at the lower end of that one to five scale," Maj. Gen. Garrett Yee, assistant to the director of DISA, said Monday during a speech at the agency's annual Forecast to Industry Day. That notion is based on estimates from the Office of the Secretary of Defense, not DISA's own assessment, he noted. When asked during a media roundtable how the program would impact the pool of qualified vendors for the agency's sensitive tech projects, Yee said, "No one knows the answer to that."

WASHSTATEC004878

## 8. Seattle Judge Keeps Ban on internet Sales of 3D-Printed Gun Plans

Spokesman.com, Nov. 12 - Computer programs to make plastic guns with a 3D printer have to stay off the internet, at least for now, because the Trump administration failed to follow proper procedures for changing the rules that currently keep them offline, a federal judge in Seattle ruled Tuesday. U.S. District Judge Robert Lasnik agreed with Washington and 18 other states that the way the U.S. State Department tried to lift the ban on internet sales of the plans was arbitrary, not supported by evidence and a violation of the federal Administrative Procedures Act. That federal law governs the steps an agency must take when changing rules. "The agency has simply abandoned, without acknowledgment or analysis, its previous position" that 3D-printed weapons posed unique threats to world peace, national security and foreign policy, the judge wrote. "Because it is arbitrary and capricious to ignore the contradiction in these circumstances, the agency action must be invalidated." In 2013, the State Department said the Arms Export Control Act gave it the authority to restrict the posting of computer-assisted design files that can be used to make guns with a 3D printer. It ordered a Texas company, Defense Distributed, which had posted those files, to remove them.

## 9. U.S.-China Trade Talks Hit Snag Over Farm Purchases

WSJ.com, Nov. 13 - Trade talks between the U.S. and China have hit a snag over farm purchases, creating another obstacle to locking down the limited trade deal President Trump outlined last month. Mr. Trump has said that China has agreed to buy up to $50 billion in U.S. soybeans, pork and other agricultural products annually. But China is leery of putting a numerical commitment in the text of an agreement, according to people familiar with the matter. Beijing wants to avoid cutting a deal that looks one-sided in Washington's favor, some of the people said, and also wants to have a way out should trade tensions escalate again. "We can always stop the purchases if things get worse again," said one Chinese official. The dispute over farm purchases is one of several issues that have delayed completion of the limited trade accord announced by Mr. Trump and Chinese Vice Premier Liu He on Oct. 11. Both sides are also at odds over when—and by how much—the U.S. would agree to lift tariffs on Chinese imports, Beijing's core demand that's linked to its offers on other issues.

## 10. Israelis Create Foreign Investment Overseer; China Targeted

BreakingDefense.com, Nov. 13 - American pressure on Israel helped the government here decide to limit the involvement of Chinese companies in building infrastructure programs in Israel and other investments in defense-related programs. Breaking Defense exposed the big concern among Israeli defense experts last year about the growing Chinese involvement in sensitive projects like the new Haifa port near the Israeli navy's main base. The Chinese company will build it and manage it for 25 years. Following three years of deliberations and intense pressure from the US over growing Chinese investments in Israeli companies, particularly in technology firms, Israel's security cabinet decided on October 30 to set up a new mechanism to monitor foreign investments. It appears to be similar to the American Committee on Foreign Investment in the United States (CFIUS). This happens even as China is Israel's second-largest trading partner and a significant foreign investor. The People's Republic of China has also taken an active interest in collaboration with Israel on innovation and technology, which inspired the establishment of a "Comprehensive Innovation Partnership" between the two countries in March 2017. In 2018, bilateral trade between the

WASHSTATEC004879

countries hit a record of $15.3 billion, up from just $51.5 million in 1992 and $13.1 billion in 2017.

## 11. China in Focus as West Debates Critical Minerals Challenge

Reuters.com, Nov. 14 - Western powers will attend talks in Brussels next week on curbing China's dominance of rare earths and other critical resources and EU officials will present their vision to create entire green supply chains. The talks, on Nov. 19, have taken place annually for much of this decade, bringing together diplomats and industry representatives from the European Union, Japan and United States. They have yet to weaken China's power, especially over rare earths, and global trade tensions aggravate the situation. In a daily news briefing in Beijing, Chinese Foreign Ministry spokesman Geng Shuang said it was not possible to "guide or monopolize" a certain sector or market in a closely connected world. China, the world's leading producer of rare earths, was "willing to satisfy the reasonable need" of various countries for resources and products, he said. A net importers of most minerals, the European Union in 2011 was among the first to compile a critical raw materials list.

## 12. European Steel Leaders Seek Scrutiny of Chinese British Steel Rescue

Reuters.com, Nov. 14 - European steel lobby Eurofer plans to raise concerns with the European Commission over Chinese group Jingye's proposed rescue of British Steel, saying the deal may flout rules on fair competition. In what would be the first takeover by a Chinese company of steel mills in the European Union, Jingye said on Monday it had reached a provisional agreement to buy British Steel and promised to invest £1.2 billion over the next decade. The deal, which requires regulatory approval, strikes at the heart of tensions between those in industry and government keen to embrace China as a major trading partner and those worried about the top steel producer's clout on the global market. Some analysts have also voiced concern about handing China control of a strategic sector. Eurofer said the planned purchase was a fresh instance of China exporting excess steel capacity to the edge of the European Union.

## 13. Can DoD Get Speed & Security With the Cloud?

BreakingDefense.com, Nov. 13 - If the Pentagon gets cloud computing right — and that's a big if indeed — it just might square the circle between accelerating acquisition and improving security, a senior cybersecurity official said here Tuesday. "By nature, there is a trade between the objective of agile software development and the assurance properties that we're trying to achieve," said Mitchell Komaroff, the principal cybersecurity advisor to DoD CIO Dana Deasy. But, he said, there are ways to reconcile them. Right now, the Defense Department has the worst of both worlds. Cybersecurity certification can be so laborious and bureaucratic that software is often obsolete before it's finished testing. Yet the final product isn't necessarily secure anyway, because new threats emerge faster than the Pentagon can upgrade its defenses. . . . Yes, Murphy said, there could still be a waiver process to skip security requirements when speed is of the essence – but it needs to be controlled at a much higher level than it is today. "Today there are far too many instances where there's an O-4 or O-5 [a major or lieutenant colonel] program manager making risk decisions," he said. In the system he's putting together, "maybe it's the service secretary."

WASHSTATEC004880

## 14. Report Warns US Army to Watch Out for Creeping Operational Costs With Future Helos

DefenseNews.com, Nov. 13 - The U.S. Army is currently set up to afford fielding two future vertical lift aircraft types simultaneously in roughly a decade, but the service should be careful when estimating the actual cost of keeping the fleets running, according to a Nov. 13 report by the Center for Strategic and International Studies. Fielding new FVL aircraft is the Army's No. 3 priority and is part of an ambitious and relatively new modernization plan for the service. . . . Replacing the current fleet is becoming increasingly imperative as helicopters in service are reaching technological and capability limits, even with upgrades. The report noted that the Army's current timelines for developing and fielding a future attack reconnaissance aircraft, or FARA, by 2028 and a future long-range assault aircraft, or FLRAA, by 2030 will work if the programs are managed well. But there are risks involved in getting aircraft through development into production, and the Army could experience issues if it does not take steps to predict operational and sustainment costs, and keep those costs down once the aircraft are fielded.

## 15. Air Force, Allies Team to Find Space Startups

BreakingDefense.com, Nov. 13 - The US Air Force is encouraging commercial startups in allied countries to bring innovative space tech to its attention for possible funding. Technology areas being explored include space situational awareness, space data analytics, space communication, artificial intelligence (AI) and satellite servicing. The innovation hub Techstars has launched a new industry accelerator focused on space and allied connectivity, Techstars Allied Space Accelerator. The Ministries of Defense of the Netherlands and Norway, and the Norwegian Space Agency are co-sponsoring the initiative. Just like other Techstars efforts, the program tries to bring commercial firms and their cutting edge products into the defense world. But rather than physically bringing start-ups and potential military customers together in the same place, the Allied Space Accelerator is run as a virtual program. Techstars currently has hubs in Boston and Los Angeles.

## 16. Stealthy Lockheed F-35 Breaks Down Too Often, Pentagon Says

Bloomberg.com, Nov. 13 - The Pentagon's chief weapons tester said the next-generation F-35 jet continues to fall short of full combat readiness targets and, despite some progress on reliability issues, all three versions of the fighter are breaking down "more often than planned." None of the Air Force, Marines and Navy variants of the Lockheed Martin Corp. fighter are meeting their five key "reliability or maintainability metrics," Robert Behler, the Pentagon's director of operational testing, said in prepared remarks Wednesday before two House Armed Services Committee panels. The House subcommittees are reviewing the $428 billion program's status and progress recovering from years of cost overruns and production delays. . . . His statement is a reality check just weeks after the Pentagon and Lockheed Martin announced that they finalized the largest contract in the program's history, a deal valued at $34 billion for 478 additional aircraft. About $27 billion of F-35s have already been placed on contract even though the program hasn't completed all its combat testing and struggles with reliability.

## 17. F-35 Program on Track to Replace Turkey, Pentagon Officials Say

DefenseNews.com, Nov. 13 - Since removing Turkey from the multinational F-35 program over its purchase of a Russian air defense system, the U.S. has found alternate suppliers for all but a dozen components Turkey is producing for the Lockheed-made fighter jet. As U.S. President Donald Trump met with Turkish President Recep Tayyip Erdogan at the White House on Wednesday, the Pentagon's F-35 program executive testified in Congress that he expects Turkey will be phased out on schedule, by March 2020. Lockheed and Pratt & Whitney, he said, have "spectacular progress" finding alternate suppliers. "We began just over a year ago, very quietly but deliberately, taking actions to find alternate sources for all of those parts," said the program executive, said Lt. Gen. Eric Fick, adding, "We are not quite there yet, so we have, on the air frame side, 11 components we have to mitigate to be at full-rate production ... and on the engines, there's one: integrated bladed rotors, IBR's."

## 18. The Pentagon Plan to Save the F-35's Logistics System Hinges on Whether Lockheed Will Relinquish Data Control

DefenseNews.com, Nov. 13 - The Pentagon and Lockheed Martin are at odds over how much data the military can have access to for its own jet, the F-35, and that's creating renewed friction in the fight to fix longstanding issues with the automated logistics system vital to keeping it flying. Both the Pentagon and Lockheed say a relaunched version of the Autonomic Logistics Information System, or ALIS, should be ready to start sending to squadrons by September 2020, both the military's top acquisition official and the F-35 program manager expressed frustration to lawmakers at a House Armed Services subcommittee hearing Tuesday with how much control Lockheed asserts over crucial data for the system. ALIS is an off-board system that runs the maintenance and logistics system for the F-35. "One of the key elements of coming up with a new ALIS architecture, data standards, and all the other parts that would make a very good system is understanding the data set as it exists today — what all the algorithms are — and we are still in the process of going through that with Lockheed Martin," said Ellen Lord, the under secretary of defense for acquisition and sustainment. "But understanding where all the intellectual property is and making sure the government has access to what it has paid for is a key part of rearchitecting ALIS."

## 19. Pentagon's AI Problem Is 'Dirty' Data: Lt. Gen. Shanahan

BreakingDefense.com, Nov. 13 - Some people say data is the new oil. I don't like that," the Defense Department's AI director told me in his office here. "I treat it as mineral ore: There's a lot of crap. You have to filter out the impurities from the raw material to get the gold nuggets." Lt. Gen. Jack Shanahan learned this the hard way as head of the much-debated Project Maven, which he led for two years before becoming the founding director of the Joint Artificial Intelligence Center last year. The lessons from that often-painful process – discussed in detail below – now shape Shanahan's approach to the new and ever-more ambitious projects the Defense Department is taking on. They range from the relatively low-risk, non-combat applications that JAIC got warmed up with in 2019, like predicting helicopter engine breakdowns before they happen, to the joint warfighting efforts Shanahan wants to ramp up to in 2020: . . .

## 20. German Military Refuses to Take Delivery of Two Airbus A400M Planes

Reuters.com, Nov. 13 - Germany's air force said on Wednesday it had decided not to accept delivery of two Airbus A400M planes, citing recurring technical problems with the military transporters. The air force said the A400M had taken part in nearly 1,700 missions and formed the backbone of its air transport for carrying personnel and material, air-to-air refueling and humanitarian aid missions. Although 31 aircraft of 53 ordered had been handed over, it said there were technical issues with the planes, including with nuts used on propellers. It said extra time was needed for inspections that undermined the readiness of the A400M fleet. Airbus said in a statement that issues with the model were not safety critical. "We are aware of findings related to dowel bolts/Propeller interface in some of our customer aircraft," it said. "This is not safety critical and our customers continue to accept and operate their aircraft." . . . The German air force said extra inspections were also needed to test engine mounts, combustion chambers and engine flaps and for crack detection on various parts. It said the A400M was still not able to perform all tasks, despite these checks.

## 21. Opinion: Speed-of-Light Weaponry Requires Faster Acquisition Timelines

NationalDefenseMagazine.org, Nov. 13 - America's adversaries are rapidly advancing their offensive capabilities with hypersonic missiles, which can fly at more than five times the speed of sound. Addressing this threat will require new defenses, such as directed energy weapons, which reach targets at the speed of light, have much larger magazines, cost less per shot, and engage targets with precision far beyond traditional kinetic weapons. Recognizing this threat, both the House and Senate appropriations bills for Fiscal Year 2020 reflect notable funding increases, as high as $656 million, for hypersonics and hypersonics defense, underscoring that this should be an even higher priority for the Pentagon. But realizing the promise of directed energy for hypersonics defense will require much more than increased funding. In order to more rapidly deliver this fast-evolving technology to men and women in uniform, the Pentagon must also find ways to accelerate the current acquisition process. The structure of the Pentagon's existing acquisition governance unintentionally incentivizes the industrial base to slow-roll cutting-edge technology advancements and force-fit the solutions they developed years ago, keeping directed energy and other advanced technology from getting from the lab to the warfighters.

## Upcoming Export Control and Other Trade Compliance Conferences - *NEW EVENT ADDED!*

**Nov. 15 - Massachusetts Export Center - Deemed Export Compliance & Technology Control Plan Development - Westborough, Massachusetts - MassTech Collaborative, Karl Weiss Center, 75 North Drive, Westborough**

**Nov. 18 - Cnxtd ("Connected") Inc. - 2019 International Conference on the EU Cybersecurity Act - Brussels - Hotel Brussels**

**Nov. 18 - C5 Group - 2nd Annual Navigating Russia Sanctions Complexities - in London - Le Méridien Piccadilly Hotel**

**Nov. 19 - C5 Group - European Forum on U.S. Export Controls - Brussels - Le Châtelain Brussels Hotel, Brussels**

WASHSTATEC004883

**Nov. 19 - Massachusetts Export Center - Using ACE Reports to Manage and Audit AES Filings - Webinar**

**Nov. 19-20 - C5 Group - 8th London Forum on Global Economic Sanctions - London - Le Méridien Piccadilly Hotellive Meridien Piccadilly Hotel**

**Nov. 20-21 - C5 Group - European U.S. Defence Contracting - Brussels**

**Nov. 20-21 - American Conference Institute - Customs Compliance Industry Exchange - Washington, DC - Washington Plaza Hotel**

**Nov. 20-21 - Nielsonsmith - The European Anti-Corruption Summit - Munich, Germany**

**Nov. 20-21 -C5 Group - European Forum for US Defence Contracting and DFARS/FAR Compliance - Brussels - Le Châtelain Brussels Hotel**

*NEW* **- Nov. 21 - California Small Business Export Program - Export Compliance and Export Opportunities Conference in Northern California - Admission: Free - 8:30 AM to 2:30 PM - Santa Clara, California - Mission College, 3000 Mission College Boulevard, Building TAV, Room 130**

**Dec. 4 - Virginia SBDC - Export Compliance Essentials for the Small Business Exporter - Fairfax, Virginia - 4031 University Drive, Suite 100**

**Dec. 4 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Navigating USMCA for the Automotive Industry Webinar - 11:00 AM EST**

**Dec. 4-5 - American Conference Institute - 36th International Conference on the Foreign Corrupt Practices Act - Washington, DC**

**Dec. 6 - Society for International Affairs - Holiday Party - Washington, DC - "The Loft," 601 F Street, N.W.**

**Dec. 10 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: ECCN Classification Numbers - 2:00 PM to 3:00 PM EST**

**Dec. 10-11 - American Conference Institute - 10th Annual New York Forum on Economic Sanctions - New York City**

**Dec. 11 - German Government/Federal Office of Economics and Export Control - 11th Information Day Export Control 2019 -Frankfurt - Cape Europa, Osloer Str. 5, 60327 Frankfurt am Main**

**Dec. 12 - Virginia SBDC & Port of Norfolk - Incoterms® 2020 - Norfolk, Virginia - World Trade Center, 101 W. Main Street**

*NEW* **- Dec. 12 - U.S. Dept. of Commerce/U.S. Census Bureau & International Trade Administration - Webinar on Trade Trends, Policy Actions & Resources for Metals & Critical Minerals - 2:00 PM EST**

WASHSTATEC004884

**Dec. 13 - Massachusetts Export Center & Massachusetts SBDC - Export Expo - Boston - State Transportation Building, 10 Park Plaza**

**Dec. 13 - European Commission - 2019 Export Control Forum - Brussels - Albert Borschette Conference Centre (CCAB) Room CCAB0A Rue Froissart 36**

**Jan. 14 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Commodity Jurisdiction - 1:00 PM to 2:00 PM EST**

**Jan. 16 – 20 - International Compliance Professionals Association - ICPA@Sea - Galveston Ship Terminal to Cozumel**

**Jan. 22 - American Conference Institute - Dallas Economic Sanctions Boot Camp - Dallas - Dallas Marriott Downtown Hotel**

**Jan. 22-23 - American Conference Institute - 10th Annual Forum on AML & OFAC Compliance for the Insurance Industry - New York - Park Lane Hotel**

**Jan. 23-24 - American Conference Institute - AML & OFAC Compliance for the Insurance Industry - New York City**

**Jan. 27 - American Conference Institute - Miami Economic Sanctions Boot Camp - Miami - Marriott Miami Biscayne Bay Hotel**

**Jan. 28-29 - American Conference Institute - 9th Forum on U.S. Export & Re-Export Compliance for Canadian Operations - Toronto - Toronto Airport Marriott Hote**l - Gary Stanley, Editor of Defense and Export-Import Update, will once again co-chair this important conference.

**Jan. 29-30 - C5 Group - 6th Annual Conference on Anti-Corruption Nordics - Oslo - The Clarion Hotel**

**Jan. 30-31 - American Conference Institute - 14th Forum on the Foreign Corrupt Practices Act - Houston**

**Feb. 5-6 - Nielsonsmith - Export Compliance in Europe - Munich, Germany**

**Feb. 11 - American Conference Institute - San Francisco Economic Sanctions Boot Camp - San Francisco - Marines' Memorial Club and Hotel**

**Feb. 11-12 - Nielsonsmith - European Trade Controls Compliance Strategic Summit - Washington, DC**

**Feb. 18 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Drop Shipments and Routed Transactions - 2:00 PM to 3:00 PM EST**

**Feb. 24-26 - Society for International Affairs - 2020 Winter Back to Basics Conference - Las Vegas - Westin Las Vegas Hotel**

**Feb. 26 - American Conference Institute - Women Leaders in Defense and Aerospace Law & Compliance - Washington, DC - Washington Plaza Hotel**

WASHSTATEC004885

**March 3-4 - American Conference Institute - Practitioners' Think-Tank on ITC Litigation & Enforcement - Washington, DC**

**March 10 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Cultural Sensitivity Program - 1:00 PM to 2:00 PM EST**

**March 15-18 - International Compliance Professionals Association - 2020 ICPA Annual Conference - San Diego - Sheridan San Diego Hotel & Marina**

**March 24-25 - American Conference Institute - 10th Annual Advanced Forum on Global Encryption, Cloud & Cyber Export Controls - San Francisco**

*NEW* **- March 24-25 - C5 Group - 12th Advanced Conference on Customs Compliance - London - St. James' Court, A Taj Hotel**

**April 14 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: ACE Export Reports for Compliance - 1:00 PM to 2:00 PM EST**

**May 27-28 - Nielsonsmith - US Trade Controls Compliance in Europe Conference - Munich - Gary Stanley, Editor of Defense and Export-Import Update, will speak at this conference.**

We hope this update proves helpful. If you have questions about any of these developments, please do not hesitate to call us. If you received this free newsletter from a colleague or friend and would like to subscribe directly, please just e-mail your name, title, company, and e-mail address to gstanley@glstrade.com.

Cordially yours,

Gary L. Stanley
President
Global Legal Services, PC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.20015
Tel. +1 (202) 686-4854
Fax +1 (202) 686-2624
Mobile +1 (202) 352-3059
E-mail gstanley@glstrade.com

Message

| | |
|---|---|
| **From:** | Gary Stanley [gstanley@glstrade.com] |
| **Sent:** | 11/14/2019 2:22:33 PM |
| **To:** | Michael F.Miller [MillerMF@state.gov] |
| **Subject:** | Defense and Export-Import Update (Nov. 14, 2019) |

**Use Code S10-856-856L20.S to update a 10% "Speaker Discount." Group discounts are also available.**

**Dear All,**

**Good Day!**

**Gary Stanley's Export Control Tip of the Day:** **The listing of an entity on the Entity List does not impose limitations on payments between parties; therefore, you may pay Huawei or one of its listed affiliates for items received from Huawei or one if its listed affiliates. Conversely, The listing of an entity on the Entity List does not impose limitations on payments between parties; therefore, Huawei or one of its affiliates can pay you for items lawfully shipped.**

**Today's Items:**

1. **Global Affairs Canada Issues Update on Export Permits to Saudi Arabia**
2. **U.S. Government Contracting**
3. **U.S. Customs and U.S. Census/AES Updates**
4. **Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes**
5. **GAO and CRS Reports, Testimony, and Correspondence of Interest**

**Other Headlines**

6. **Warrantless Searches of Devices at Ports Illegal, Court Rules**
7. **DISA Official: 'No One Knows' How Cyber Standards Will Impact Contractor Pool**
8. **Seattle Judge Keeps Ban on internet Sales of 3D-Printed Gun Plans**
9. **U.S.-China Trade Talks Hit Snag Over Farm Purchases**
10. **Israelis Create Foreign Investment Overseer; China Targeted**
11. **China in Focus as West Debates Critical Minerals Challenge**
12. **European Steel Leaders Seek Scrutiny of Chinese British Steel Rescue**

13. **Can DoD Get Speed & Security With the Cloud?**

14. **Report Warns US Army to Watch Out for Creeping Operational Costs With Future Helos**

15. **Air Force, Allies Team to Find Space Startups**

16. **Stealthy Lockheed F-35 Breaks Down Too Often, Pentagon Says**

17. **F-35 Program on Track to Replace Turkey, Pentagon Officials Say**

18. **The Pentagon Plan to Save the F-35's Logistics System Hinges on Whether Lockheed Will Relinquish Data Control**

19. **Pentagon's AI Problem Is 'Dirty' Data: Lt. Gen. Shanahan**

20. **German Military Refuses to Take Delivery of Two Airbus A400M Planes**

21. **Opinion: Speed-of-Light Weaponry Requires Faster Acquisition Timelines**

**Upcoming Export Control and Other Trade Compliance Conferences - *NEW EVENT ADDED!***

# 1. Global Affairs Canada Issues Update on Export Permits to Saudi Arabia

The Canadian Deputy Ministers of International Trade and Foreign Affairs within Global Affairs Canada have issued a memorandum addressed to the Canadian Minister of Foreign Affairs that provides an update on the Department's assessment of export permits to the Kingdom of Saudi Arabia (KSA). As a result of the deterioration in relations between Canada and KSA, the conflict and resulting humanitarian crisis in Yemen, and the Khashoggi killing, the Government has been re-evaluating Canada's foreign, defence and security policies towards KSA. During the period of assessment, no existing valid permits were suspended or canceled, thus allowing for the continued export of some items, including Light Armoured Vehicles (LAVs) by General Dynamics Land Systems Canada (GDLS-C). Moreover, during this period, the Department has assessed and processed a further 48 permit applications for exports of controlled goods to KSA on a case-by-case basis under its standard robust risk assessment process. Those permits have been deemed ready for approval by officials and await your further consideration. Since November 2018 and in line with the Department's standard robust risk assessment process, officials examined areas of concern, including the domestic human rights situation and the conflict in Yemen, and identified the types of exports that could be considered to give rise to a risk. In this context, however, officials found no credible evidence linking Canadian exports of military equipment or other controlled items to any human rights or humanitarian law violations committed by the Saudi government. Officials did not identify any existing permits or pending applications that would be of concern under the standard robust risk assessment framework.

# 2. U.S. Government Contracting

- DoD/Air Force: Notice of Intent to Grant an Exclusive Patent License to the Defense Science Technology Laboratory, an executive agency of the Ministry of Defense of the United Kingdom of Great Britain and Northern Ireland.

## 3. U.S. Customs and U.S. Census/AES Updates

- U.S. Customs - CSMS #40622269 - ACE EDI Message Responses were Delayed from Noon-1pm ET

- U.S. Customs - DHS Awards $198K for Raw Material Import Tracking Using Blockchain

- U.S. Census - Dec. 12 Webinar on Trade Trends, Policy Actions and Resources for Metals and Critical Minerals

## 4. Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes

- Commerce/E&C - Certain Lined Paper Products from India: Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments; 2017-2018

- Commerce/E&C - Ceramic Tile from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Critical Circumstances Determination, and Postponement of Final Determination

- Commerce/E&C - Emulsion Styrene-Butadiene Rubber from Brazil: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018

- Commerce/E&C - Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Amended Preliminary Determination of Sales at Less Than Fair Value

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 19, 2019, 11:00 AM EST

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 20, 2019, 11:00 AM EST

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 22, 2019, 11:00 AM EST

## 5. GAO and CRS Reports, Testimony, and Correspondence of Interest

- GAO - F-35 AIRCRAFT SUSTAINMENT: DOD Faces Challenges in Sustaining a Growing Fleet GAO-20-234T: Published: Nov 13, 2019. Publicly Released: Nov 13, 2019.

- CRS - U.S. Strategy for Engagement in Central America: Policy Issues for Congress

- CRS - Iraq: Protests and the Future of U.S. Partnership

- CRS - Presidential Directives: An Introduction

WASHSTATEC004889

- CRS - Latin America and the Caribbean: U.S. Policy Overview

- CRS - DOD's Cloud Strategy and the JEDI Cloud Procurement

- CRS - Air Force B-21 Raider Long-Range Strike Bomber

## Other Headlines

## 6. Warrantless Searches of Devices at Ports Illegal, Court Rules

CSMonitor.com & Associated Press, Nov. 13 - A federal court in Boston has ruled that warrantless U.S. government searches of the phones and laptops of international travelers at airports and other U.S. ports of entry violate the Fourth Amendment. Tuesday's ruling in U.S. District Court came in a lawsuit filed by the American Civil Liberties Union and the Electronic Frontier Foundation on behalf of 11 travelers whose smartphones and laptops were searched without individualized suspicion at U.S. ports of entry. ACLU attorney Esha Bhandari said the ruling strengthens the Fourth Amendment protections of international travelers who enter the United States every year. The ACLU describes the searches as "fishing expeditions." They say border officers must now demonstrate individualized suspicion of contraband before they can search a traveler's electronic device. The government has vigorously defended the searches as a critical tool to protect America. The number of electronic device searches at U.S. ports of entry has increased significantly, the ACLU said. Last year, the government conducted more than 33,000 searches, almost four times the number from just three years prior. Documents filed as part of the lawsuit claim the scope of the warrantless searches has expanded to assist in enforcement of tax, bankruptcy, environmental and consumer protection laws, gathering intelligence, and advancing criminal investigations.

## 7. DISA Official: 'No One Knows' How Cyber Standards Will Impact Contractor Pool

NextGov.com, Nov. 4 - Officials at the Defense Information Systems Agency don't know whether forthcoming vendor cybersecurity standards will shrink the pool of contractors that qualify for critical tech projects. In January, the Pentagon plans to publish the final version of the Cybersecurity Maturity Model Certification, or CMMC. Under the framework, companies would have their cyber practices graded on a scale of one to five, and procurement officials would use the rating to determine which vendors are eligible for certain contracts, with more sensitive projects requiring more stringent security standards. While the program is intended to push vendors to strengthen their security standards and increase visibility into the department's supply chain, it could also render a significant chunk of the Pentagon's contractor pool ineligible for its most sensitive projects, according to DISA officials. "A very small number … of the 300,000 [defense industrial base] companies have state-of-the-art cybersecurity. The majority of them are at the lower end of that one to five scale," Maj. Gen. Garrett Yee, assistant to the director of DISA, said Monday during a speech at the agency's annual Forecast to Industry Day. That notion is based on estimates from the Office of the Secretary of Defense, not DISA's own assessment, he noted. When asked during a media roundtable how the program would impact the pool of qualified vendors for the agency's sensitive tech projects, Yee said, "No one knows the answer to that."

WASHSTATEC004890

## 8. Seattle Judge Keeps Ban on internet Sales of 3D-Printed Gun Plans

Spokesman.com, Nov. 12 - Computer programs to make plastic guns with a 3D printer have to stay off the internet, at least for now, because the Trump administration failed to follow proper procedures for changing the rules that currently keep them offline, a federal judge in Seattle ruled Tuesday. U.S. District Judge Robert Lasnik agreed with Washington and 18 other states that the way the U.S. State Department tried to lift the ban on internet sales of the plans was arbitrary, not supported by evidence and a violation of the federal Administrative Procedures Act. That federal law governs the steps an agency must take when changing rules. "The agency has simply abandoned, without acknowledgment or analysis, its previous position" that 3D-printed weapons posed unique threats to world peace, national security and foreign policy, the judge wrote. "Because it is arbitrary and capricious to ignore the contradiction in these circumstances, the agency action must be invalidated." In 2013, the State Department said the Arms Export Control Act gave it the authority to restrict the posting of computer-assisted design files that can be used to make guns with a 3D printer. It ordered a Texas company, Defense Distributed, which had posted those files, to remove them.

## 9. U.S.-China Trade Talks Hit Snag Over Farm Purchases

WSJ.com, Nov. 13 - Trade talks between the U.S. and China have hit a snag over farm purchases, creating another obstacle to locking down the limited trade deal President Trump outlined last month. Mr. Trump has said that China has agreed to buy up to $50 billion in U.S. soybeans, pork and other agricultural products annually. But China is leery of putting a numerical commitment in the text of an agreement, according to people familiar with the matter. Beijing wants to avoid cutting a deal that looks one-sided in Washington's favor, some of the people said, and also wants to have a way out should trade tensions escalate again. "We can always stop the purchases if things get worse again," said one Chinese official. The dispute over farm purchases is one of several issues that have delayed completion of the limited trade accord announced by Mr. Trump and Chinese Vice Premier Liu He on Oct. 11. Both sides are also at odds over when—and by how much—the U.S. would agree to lift tariffs on Chinese imports, Beijing's core demand that's linked to its offers on other issues.

## 10. Israelis Create Foreign Investment Overseer; China Targeted

BreakingDefense.com, Nov. 13 - American pressure on Israel helped the government here decide to limit the involvement of Chinese companies in building infrastructure programs in Israel and other investments in defense-related programs. Breaking Defense exposed the big concern among Israeli defense experts last year about the growing Chinese involvement in sensitive projects like the new Haifa port near the Israeli navy's main base. The Chinese company will build it and manage it for 25 years. Following three years of deliberations and intense pressure from the US over growing Chinese investments in Israeli companies, particularly in technology firms, Israel's security cabinet decided on October 30 to set up a new mechanism to monitor foreign investments. It appears to be similar to the American Committee on Foreign Investment in the United States (CFIUS). This happens even as China is Israel's second-largest trading partner and a significant foreign investor. The People's Republic of China has also taken an active interest in collaboration with Israel on innovation and technology, which inspired the establishment of a "Comprehensive Innovation Partnership" between the two countries in March 2017. In 2018, bilateral trade between the

WASHSTATEC004891

countries hit a record of $15.3 billion, up from just $51.5 million in 1992 and $13.1 billion in 2017.

## 11. China in Focus as West Debates Critical Minerals Challenge

Reuters.com, Nov. 14 - Western powers will attend talks in Brussels next week on curbing China's dominance of rare earths and other critical resources and EU officials will present their vision to create entire green supply chains. The talks, on Nov. 19, have taken place annually for much of this decade, bringing together diplomats and industry representatives from the European Union, Japan and United States. They have yet to weaken China's power, especially over rare earths, and global trade tensions aggravate the situation. In a daily news briefing in Beijing, Chinese Foreign Ministry spokesman Geng Shuang said it was not possible to "guide or monopolize" a certain sector or market in a closely connected world. China, the world's leading producer of rare earths, was "willing to satisfy the reasonable need" of various countries for resources and products, he said. A net importers of most minerals, the European Union in 2011 was among the first to compile a critical raw materials list.

## 12. European Steel Leaders Seek Scrutiny of Chinese British Steel Rescue

Reuters.com, Nov. 14 - European steel lobby Eurofer plans to raise concerns with the European Commission over Chinese group Jingye's proposed rescue of British Steel, saying the deal may flout rules on fair competition. In what would be the first takeover by a Chinese company of steel mills in the European Union, Jingye said on Monday it had reached a provisional agreement to buy British Steel and promised to invest £1.2 billion over the next decade. The deal, which requires regulatory approval, strikes at the heart of tensions between those in industry and government keen to embrace China as a major trading partner and those worried about the top steel producer's clout on the global market. Some analysts have also voiced concern about handing China control of a strategic sector. Eurofer said the planned purchase was a fresh instance of China exporting excess steel capacity to the edge of the European Union.

## 13. Can DoD Get Speed & Security With the Cloud?

BreakingDefense.com, Nov. 13 - If the Pentagon gets cloud computing right — and that's a big if indeed — it just might square the circle between accelerating acquisition and improving security, a senior cybersecurity official said here Tuesday. "By nature, there is a trade between the objective of agile software development and the assurance properties that we're trying to achieve," said Mitchell Komaroff, the principal cybersecurity advisor to DoD CIO Dana Deasy. But, he said, there are ways to reconcile them. Right now, the Defense Department has the worst of both worlds. Cybersecurity certification can be so laborious and bureaucratic that software is often obsolete before it's finished testing. Yet the final product isn't necessarily secure anyway, because new threats emerge faster than the Pentagon can upgrade its defenses. . . . Yes, Murphy said, there could still be a waiver process to skip security requirements when speed is of the essence – but it needs to be controlled at a much higher level than it is today. "Today there are far too many instances where there's an O-4 or O-5 [a major or lieutenant colonel] program manager making risk decisions," he said. In the system he's putting together, "maybe it's the service secretary."

WASHSTATEC004892

## 14. Report Warns US Army to Watch Out for Creeping Operational Costs With Future Helos

DefenseNews.com, Nov. 13 - The U.S. Army is currently set up to afford fielding two future vertical lift aircraft types simultaneously in roughly a decade, but the service should be careful when estimating the actual cost of keeping the fleets running, according to a Nov. 13 report by the Center for Strategic and International Studies. Fielding new FVL aircraft is the Army's No. 3 priority and is part of an ambitious and relatively new modernization plan for the service. . . . Replacing the current fleet is becoming increasingly imperative as helicopters in service are reaching technological and capability limits, even with upgrades. The report noted that the Army's current timelines for developing and fielding a future attack reconnaissance aircraft, or FARA, by 2028 and a future long-range assault aircraft, or FLRAA, by 2030 will work if the programs are managed well. But there are risks involved in getting aircraft through development into production, and the Army could experience issues if it does not take steps to predict operational and sustainment costs, and keep those costs down once the aircraft are fielded.

## 15. Air Force, Allies Team to Find Space Startups

BreakingDefense.com, Nov. 13 - The US Air Force is encouraging commercial startups in allied countries to bring innovative space tech to its attention for possible funding. Technology areas being explored include space situational awareness, space data analytics, space communication, artificial intelligence (AI) and satellite servicing. The innovation hub Techstars has launched a new industry accelerator focused on space and allied connectivity, Techstars Allied Space Accelerator. The Ministries of Defense of the Netherlands and Norway, and the Norwegian Space Agency are co-sponsoring the initiative. Just like other Techstars efforts, the program tries to bring commercial firms and their cutting edge products into the defense world. But rather than physically bringing start-ups and potential military customers together in the same place, the Allied Space Accelerator is run as a virtual program. Techstars currently has hubs in Boston and Los Angeles.

## 16. Stealthy Lockheed F-35 Breaks Down Too Often, Pentagon Says

Bloomberg.com, Nov. 13 - The Pentagon's chief weapons tester said the next-generation F-35 jet continues to fall short of full combat readiness targets and, despite some progress on reliability issues, all three versions of the fighter are breaking down "more often than planned." None of the Air Force, Marines and Navy variants of the Lockheed Martin Corp. fighter are meeting their five key "reliability or maintainability metrics," Robert Behler, the Pentagon's director of operational testing, said in prepared remarks Wednesday before two House Armed Services Committee panels. The House subcommittees are reviewing the $428 billion program's status and progress recovering from years of cost overruns and production delays. . . . His statement is a reality check just weeks after the Pentagon and Lockheed Martin announced that they finalized the largest contract in the program's history, a deal valued at $34 billion for 478 additional aircraft. About $27 billion of F-35s have already been placed on contract even though the program hasn't completed all its combat testing and struggles with reliability.

## 17. F-35 Program on Track to Replace Turkey, Pentagon Officials Say

WASHSTATEC004893

DefenseNews.com, Nov. 13 - Since removing Turkey from the multinational F-35 program over its purchase of a Russian air defense system, the U.S. has found alternate suppliers for all but a dozen components Turkey is producing for the Lockheed-made fighter jet. As U.S. President Donald Trump met with Turkish President Recep Tayyip Erdogan at the White House on Wednesday, the Pentagon's F-35 program executive testified in Congress that he expects Turkey will be phased out on schedule, by March 2020. Lockheed and Pratt & Whitney, he said, have "spectacular progress" finding alternate suppliers. "We began just over a year ago, very quietly but deliberately, taking actions to find alternate sources for all of those parts," said the program executive, said Lt. Gen. Eric Fick, adding, "We are not quite there yet, so we have, on the air frame side, 11 components we have to mitigate to be at full-rate production ... and on the engines, there's one: integrated bladed rotors, IBR's."

## 18. The Pentagon Plan to Save the F-35's Logistics System Hinges on Whether Lockheed Will Relinquish Data Control

DefenseNews.com, Nov. 13 - The Pentagon and Lockheed Martin are at odds over how much data the military can have access to for its own jet, the F-35, and that's creating renewed friction in the fight to fix longstanding issues with the automated logistics system vital to keeping it flying. Both the Pentagon and Lockheed say a relaunched version of the Autonomic Logistics Information System, or ALIS, should be ready to start sending to squadrons by September 2020, both the military's top acquisition official and the F-35 program manager expressed frustration to lawmakers at a House Armed Services subcommittee hearing Tuesday with how much control Lockheed asserts over crucial data for the system. ALIS is an off-board system that runs the maintenance and logistics system for the F-35. "One of the key elements of coming up with a new ALIS architecture, data standards, and all the other parts that would make a very good system is understanding the data set as it exists today — what all the algorithms are — and we are still in the process of going through that with Lockheed Martin," said Ellen Lord, the under secretary of defense for acquisition and sustainment. "But understanding where all the intellectual property is and making sure the government has access to what it has paid for is a key part of rearchitecting ALIS."

## 19. Pentagon's AI Problem Is 'Dirty' Data: Lt. Gen. Shanahan

BreakingDefense.com, Nov. 13 - Some people say data is the new oil. I don't like that," the Defense Department's AI director told me in his office here. "I treat it as mineral ore: There's a lot of crap. You have to filter out the impurities from the raw material to get the gold nuggets." Lt. Gen. Jack Shanahan learned this the hard way as head of the much-debated Project Maven, which he led for two years before becoming the founding director of the Joint Artificial Intelligence Center last year. The lessons from that often-painful process – discussed in detail below – now shape Shanahan's approach to the new and ever-more ambitious projects the Defense Department is taking on. They range from the relatively low-risk, non-combat applications that JAIC got warmed up with in 2019, like predicting helicopter engine breakdowns before they happen, to the joint warfighting efforts Shanahan wants to ramp up to in 2020: . . .

## 20. German Military Refuses to Take Delivery of Two Airbus A400M Planes

Reuters.com, Nov. 13 - Germany's air force said on Wednesday it had decided not to accept delivery of two Airbus A400M planes, citing recurring technical problems with the military transporters. The air force said the A400M had taken part in nearly 1,700 missions and formed the backbone of its air transport for carrying personnel and material, air-to-air refueling and humanitarian aid missions. Although 31 aircraft of 53 ordered had been handed over, it said there were technical issues with the planes, including with nuts used on propellers. It said extra time was needed for inspections that undermined the readiness of the A400M fleet. Airbus said in a statement that issues with the model were not safety critical. "We are aware of findings related to dowel bolts/Propeller interface in some of our customer aircraft," it said. "This is not safety critical and our customers continue to accept and operate their aircraft." . . . The German air force said extra inspections were also needed to test engine mounts, combustion chambers and engine flaps and for crack detection on various parts. It said the A400M was still not able to perform all tasks, despite these checks.

## 21. Opinion: Speed-of-Light Weaponry Requires Faster Acquisition Timelines

NationalDefenseMagazine.org, Nov. 13 - America's adversaries are rapidly advancing their offensive capabilities with hypersonic missiles, which can fly at more than five times the speed of sound. Addressing this threat will require new defenses, such as directed energy weapons, which reach targets at the speed of light, have much larger magazines, cost less per shot, and engage targets with precision far beyond traditional kinetic weapons. Recognizing this threat, both the House and Senate appropriations bills for Fiscal Year 2020 reflect notable funding increases, as high as $656 million, for hypersonics and hypersonics defense, underscoring that this should be an even higher priority for the Pentagon. But realizing the promise of directed energy for hypersonics defense will require much more than increased funding. In order to more rapidly deliver this fast-evolving technology to men and women in uniform, the Pentagon must also find ways to accelerate the current acquisition process. The structure of the Pentagon's existing acquisition governance unintentionally incentivizes the industrial base to slow-roll cutting-edge technology advancements and force-fit the solutions they developed years ago, keeping directed energy and other advanced technology from getting from the lab to the warfighters.

## Upcoming Export Control and Other Trade Compliance Conferences - NEW EVENT ADDED!

**Nov. 15 - Massachusetts Export Center - Deemed Export Compliance & Technology Control Plan Development - Westborough, Massachusetts - MassTech Collaborative, Karl Weiss Center, 75 North Drive, Westborough**

**Nov. 18 - Cnxtd ("Connected") Inc. - 2019 International Conference on the EU Cybersecurity Act - Brussels - Hotel Brussels**

**Nov. 18 - C5 Group - 2nd Annual Navigating Russia Sanctions Complexities - in London - Le Méridien Piccadilly Hotel**

**Nov. 19 - C5 Group - European Forum on U.S. Export Controls - Brussels - Le Châtelain Brussels Hotel, Brussels**

WASHSTATEC004895

**Nov. 19 - Massachusetts Export Center - Using ACE Reports to Manage and Audit AES Filings - Webinar**

**Nov. 19-20 - C5 Group - 8th London Forum on Global Economic Sanctions - London - Le Méridien Piccadilly Hotellive Meridien Piccadilly Hotel**

**Nov. 20-21 - C5 Group - European U.S. Defence Contracting - Brussels**

**Nov. 20-21 - American Conference Institute - Customs Compliance Industry Exchange - Washington, DC - Washington Plaza Hotel**

**Nov. 20-21 - Nielsonsmith - The European Anti-Corruption Summit - Munich, Germany**

**Nov. 20-21 -C5 Group - European Forum for US Defence Contracting and DFARS/FAR Compliance - Brussels - Le Châtelain Brussels Hotel**

*NEW* - **Nov. 21 - California Small Business Export Program - Export Compliance and Export Opportunities Conference in Northern California - Admission: Free - 8:30 AM to 2:30 PM - Santa Clara, California - Mission College, 3000 Mission College Boulevard, Building TAV, Room 130**

**Dec. 4 - Virginia SBDC - Export Compliance Essentials for the Small Business Exporter - Fairfax, Virginia - 4031 University Drive, Suite 100**

**Dec. 4 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Navigating USMCA for the Automotive Industry Webinar - 11:00 AM EST**

**Dec. 4-5 - American Conference Institute - 36th International Conference on the Foreign Corrupt Practices Act - Washington, DC**

**Dec. 6 - Society for International Affairs - Holiday Party - Washington, DC - "The Loft," 601 F Street, N.W.**

**Dec. 10 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: ECCN Classification Numbers - 2:00 PM to 3:00 PM EST**

**Dec. 10-11 - American Conference Institute - 10th Annual New York Forum on Economic Sanctions - New York City**

**Dec. 11 - German Government/Federal Office of Economics and Export Control - 11th Information Day Export Control 2019 -Frankfurt - Cape Europa, Osloer Str. 5, 60327 Frankfurt am Main**

**Dec. 12 - Virginia SBDC & Port of Norfolk - Incoterms® 2020 - Norfolk, Virginia - World Trade Center, 101 W. Main Street**

*NEW* - **Dec. 12 - U.S. Dept. of Commerce/U.S. Census Bureau & International Trade Administration - Webinar on Trade Trends, Policy Actions & Resources for Metals & Critical Minerals - 2:00 PM EST**

WASHSTATEC004896

**Dec. 13 - Massachusetts Export Center & Massachusetts SBDC - Export Expo - Boston - State Transportation Building, 10 Park Plaza**

**Dec. 13 - European Commission - 2019 Export Control Forum - Brussels - Albert Borschette Conference Centre (CCAB) Room CCAB0A Rue Froissart 36**

**Jan. 14 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Commodity Jurisdiction - 1:00 PM to 2:00 PM EST**

**Jan. 16 − 20 - International Compliance Professionals Association - ICPA@Sea - Galveston Ship Terminal to Cozumel**

**Jan. 22 - American Conference Institute - Dallas Economic Sanctions Boot Camp - Dallas - Dallas Marriott Downtown Hotel**

**Jan. 22-23 - American Conference Institute - 10th Annual Forum on AML & OFAC Compliance for the Insurance Industry - New York - Park Lane Hotel**

**Jan. 23-24 - American Conference Institute - AML & OFAC Compliance for the Insurance Industry - New York City**

**Jan. 27 - American Conference Institute - Miami Economic Sanctions Boot Camp - Miami - Marriott Miami Biscayne Bay Hotel**

**Jan. 28-29 - American Conference Institute - 9th Forum on U.S. Export & Re-Export Compliance for Canadian Operations - Toronto - Toronto Airport Marriott Hotel** - Gary Stanley, Editor of Defense and Export-Import Update, will once again co-chair this important conference.

**Jan. 29-30 - C5 Group - 6th Annual Conference on Anti-Corruption Nordics - Oslo - The Clarion Hotel**

**Jan. 30-31 - American Conference Institute - 14th Forum on the Foreign Corrupt Practices Act - Houston**

**Feb. 5-6 - Nielsonsmith - Export Compliance in Europe - Munich, Germany**

**Feb. 11 - American Conference Institute - San Francisco Economic Sanctions Boot Camp - San Francisco - Marines' Memorial Club and Hotel**

**Feb. 11-12 - Nielsonsmith - European Trade Controls Compliance Strategic Summit - Washington, DC**

**Feb. 18 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Drop Shipments and Routed Transactions - 2:00 PM to 3:00 PM EST**

**Feb. 24-26 - Society for International Affairs - 2020 Winter Back to Basics Conference - Las Vegas - Westin Las Vegas Hotel**

**Feb. 26 - American Conference Institute - Women Leaders in Defense and Aerospace Law & Compliance - Washington, DC - Washington Plaza Hotel**

WASHSTATEC004897

**March 3-4 - American Conference Institute - Practitioners' Think-Tank on ITC Litigation & Enforcement - Washington, DC**

**March 10 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Cultural Sensitivity Program - 1:00 PM to 2:00 PM EST**

**March 15-18 - International Compliance Professionals Association - 2020 ICPA Annual Conference - San Diego - Sheridan San Diego Hotel & Marina**

**March 24-25 - American Conference Institute - 10th Annual Advanced Forum on Global Encryption, Cloud & Cyber Export Controls - San Francisco**

***NEW* - March 24-25 - C5 Group - 12th Advanced Conference on Customs Compliance - London - St. James' Court, A Taj Hotel**

**April 14 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: ACE Export Reports for Compliance - 1:00 PM to 2:00 PM EST**

**May 27-28 - Nielsonsmith - US Trade Controls Compliance in Europe Conference - Munich - Gary Stanley, Editor of Defense and Export-Import Update, will speak at this conference.**

We hope this update proves helpful. If you have questions about any of these developments, please do not hesitate to call us. If you received this free newsletter from a colleague or friend and would like to subscribe directly, please just e-mail your name, title, company, and e-mail address to gstanley@glstrade.com.

Cordially yours,

Gary L. Stanley
President
Global Legal Services, PC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.20015
Tel. +1 (202) 686-4854
Fax +1 (202) 686-2624
Mobile +1 (202) 352-3059
E-mail gstanley@glstrade.com

Message

**From:**       Gary Stanley [gstanley@glstrade.com]
**Sent:**        11/14/2019 2:22:33 PM
**To:**          John A.Foster [FosterJA2@state.gov]
**Subject:**    Defense and Export-Import Update (Nov. 14, 2019)

**Use Code S10-856-856L20.S to update a 10% "Speaker Discount." Group discounts are also available.**

**Dear All,**

**Good Day!**

**Gary Stanley's Export Control Tip of the Day:** **The listing of an entity on the Entity List does not impose limitations on payments between parties; therefore, you may pay Huawei or one of its listed affiliates for items received from Huawei or one if its listed affiliates. Conversely, The listing of an entity on the Entity List does not impose limitations on payments between parties; therefore, Huawei or one of its affiliates can pay you for items lawfully shipped.**

**Today's Items:**

1. **Global Affairs Canada Issues Update on Export Permits to Saudi Arabia**
2. **U.S. Government Contracting**
3. **U.S. Customs and U.S. Census/AES Updates**
4. **Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes**
5. **GAO and CRS Reports, Testimony, and Correspondence of Interest**

**Other Headlines**

6. **Warrantless Searches of Devices at Ports Illegal, Court Rules**
7. **DISA Official: 'No One Knows' How Cyber Standards Will Impact Contractor Pool**
8. **Seattle Judge Keeps Ban on internet Sales of 3D-Printed Gun Plans**
9. **U.S.-China Trade Talks Hit Snag Over Farm Purchases**
10. **Israelis Create Foreign Investment Overseer; China Targeted**
11. **China in Focus as West Debates Critical Minerals Challenge**

WASHSTATEC004899

12. **European Steel Leaders Seek Scrutiny of Chinese British Steel Rescue**

13. **Can DoD Get Speed & Security With the Cloud?**

14. **Report Warns US Army to Watch Out for Creeping Operational Costs With Future Helos**

15. **Air Force, Allies Team to Find Space Startups**

16. **Stealthy Lockheed F-35 Breaks Down Too Often, Pentagon Says**

17. **F-35 Program on Track to Replace Turkey, Pentagon Officials Say**

18. **The Pentagon Plan to Save the F-35's Logistics System Hinges on Whether Lockheed Will Relinquish Data Control**

19. **Pentagon's AI Problem Is 'Dirty' Data: Lt. Gen. Shanahan**

20. **German Military Refuses to Take Delivery of Two Airbus A400M Planes**

21. **Opinion: Speed-of-Light Weaponry Requires Faster Acquisition Timelines**

**Upcoming Export Control and Other Trade Compliance Conferences - *NEW EVENT ADDED!***

# 1. Global Affairs Canada Issues Update on Export Permits to Saudi Arabia

The Canadian Deputy Ministers of International Trade and Foreign Affairs within Global Affairs Canada have issued a memorandum addressed to the Canadian Minister of Foreign Affairs that provides an update on the Department's assessment of export permits to the Kingdom of Saudi Arabia (KSA). As a result of the deterioration in relations between Canada and KSA, the conflict and resulting humanitarian crisis in Yemen, and the Khashoggi killing, the Government has been re-evaluating Canada's foreign, defence and security policies towards KSA. During the period of assessment, no existing valid permits were suspended or canceled, thus allowing for the continued export of some items, including Light Armoured Vehicles (LAVs) by General Dynamics Land Systems Canada (GDLS-C). Moreover, during this period, the Department has assessed and processed a further 48 permit applications for exports of controlled goods to KSA on a case-by-case basis under its standard robust risk assessment process. Those permits have been deemed ready for approval by officials and await your further consideration. Since November 2018 and in line with the Department's standard robust risk assessment process, officials examined areas of concern, including the domestic human rights situation and the conflict in Yemen, and identified the types of exports that could be considered to give rise to a risk. In this context, however, officials found no credible evidence linking Canadian exports of military equipment or other controlled items to any human rights or humanitarian law violations committed by the Saudi government. Officials did not identify any existing permits or pending applications that would be of concern under the standard robust risk assessment framework.

# 2. U.S. Government Contracting

- DoD/Air Force: Notice of Intent to Grant an Exclusive Patent License to the Defense Science Technology Laboratory, an executive agency of the Ministry of Defense of the United Kingdom of Great Britain and Northern Ireland.

## 3. U.S. Customs and U.S. Census/AES Updates

- U.S. Customs - CSMS #40622269 - ACE EDI Message Responses were Delayed from Noon-1pm ET

- U.S. Customs - DHS Awards $198K for Raw Material Import Tracking Using Blockchain

- U.S. Census - Dec. 12 Webinar on Trade Trends, Policy Actions and Resources for Metals and Critical Minerals

## 4. Commerce/Enforcement and Compliance and U.S. International Trade Commission Actions and Votes

- Commerce/E&C - Certain Lined Paper Products from India: Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments; 2017-2018

- Commerce/E&C - Ceramic Tile from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Critical Circumstances Determination, and Postponement of Final Determination

- Commerce/E&C - Emulsion Styrene-Butadiene Rubber from Brazil: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018

- Commerce/E&C - Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Amended Preliminary Determination of Sales at Less Than Fair Value

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 19, 2019, 11:00 AM EST

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 20, 2019, 11:00 AM EST

- USITC - Government in the Sunshine Act Meeting Notice - Nov. 22, 2019, 11:00 AM EST

## 5. GAO and CRS Reports, Testimony, and Correspondence of Interest

- GAO - F-35 AIRCRAFT SUSTAINMENT: DOD Faces Challenges in Sustaining a Growing Fleet GAO-20-234T: Published: Nov 13, 2019. Publicly Released: Nov 13, 2019.

- CRS - U.S. Strategy for Engagement in Central America: Policy Issues for Congress

- CRS - Iraq: Protests and the Future of U.S. Partnership

- CRS - Presidential Directives: An Introduction

- CRS - Latin America and the Caribbean: U.S. Policy Overview

- CRS - DOD's Cloud Strategy and the JEDI Cloud Procurement

- CRS - Air Force B-21 Raider Long-Range Strike Bomber

## Other Headlines

## 6. Warrantless Searches of Devices at Ports Illegal, Court Rules

CSMonitor.com & Associated Press, Nov. 13 - A federal court in Boston has ruled that warrantless U.S. government searches of the phones and laptops of international travelers at airports and other U.S. ports of entry violate the Fourth Amendment. Tuesday's ruling in U.S. District Court came in a lawsuit filed by the American Civil Liberties Union and the Electronic Frontier Foundation on behalf of 11 travelers whose smartphones and laptops were searched without individualized suspicion at U.S. ports of entry. ACLU attorney Esha Bhandari said the ruling strengthens the Fourth Amendment protections of international travelers who enter the United States every year. The ACLU describes the searches as "fishing expeditions." They say border officers must now demonstrate individualized suspicion of contraband before they can search a traveler's electronic device. The government has vigorously defended the searches as a critical tool to protect America. The number of electronic device searches at U.S. ports of entry has increased significantly, the ACLU said. Last year, the government conducted more than 33,000 searches, almost four times the number from just three years prior. Documents filed as part of the lawsuit claim the scope of the warrantless searches has expanded to assist in enforcement of tax, bankruptcy, environmental and consumer protection laws, gathering intelligence, and advancing criminal investigations.

## 7. DISA Official: 'No One Knows' How Cyber Standards Will Impact Contractor Pool

NextGov.com, Nov. 4 - Officials at the Defense Information Systems Agency don't know whether forthcoming vendor cybersecurity standards will shrink the pool of contractors that qualify for critical tech projects. In January, the Pentagon plans to publish the final version of the Cybersecurity Maturity Model Certification, or CMMC. Under the framework, companies would have their cyber practices graded on a scale of one to five, and procurement officials would use the rating to determine which vendors are eligible for certain contracts, with more sensitive projects requiring more stringent security standards. While the program is intended to push vendors to strengthen their security standards and increase visibility into the department's supply chain, it could also render a significant chunk of the Pentagon's contractor pool ineligible for its most sensitive projects, according to DISA officials. "A very small number … of the 300,000 [defense industrial base] companies have state-of-the-art cybersecurity. The majority of them are at the lower end of that one to five scale," Maj. Gen. Garrett Yee, assistant to the director of DISA, said Monday during a speech at the agency's annual Forecast to Industry Day. That notion is based on estimates from the Office of the Secretary of Defense, not DISA's own assessment, he noted. When asked during a media roundtable how the program would impact the pool of qualified vendors for the agency's sensitive tech projects, Yee said, "No one knows the answer to that."

WASHSTATEC004902

## 8. Seattle Judge Keeps Ban on internet Sales of 3D-Printed Gun Plans

Spokesman.com, Nov. 12 - Computer programs to make plastic guns with a 3D printer have to stay off the internet, at least for now, because the Trump administration failed to follow proper procedures for changing the rules that currently keep them offline, a federal judge in Seattle ruled Tuesday. U.S. District Judge Robert Lasnik agreed with Washington and 18 other states that the way the U.S. State Department tried to lift the ban on internet sales of the plans was arbitrary, not supported by evidence and a violation of the federal Administrative Procedures Act. That federal law governs the steps an agency must take when changing rules. "The agency has simply abandoned, without acknowledgment or analysis, its previous position" that 3D-printed weapons posed unique threats to world peace, national security and foreign policy, the judge wrote. "Because it is arbitrary and capricious to ignore the contradiction in these circumstances, the agency action must be invalidated." In 2013, the State Department said the Arms Export Control Act gave it the authority to restrict the posting of computer-assisted design files that can be used to make guns with a 3D printer. It ordered a Texas company, Defense Distributed, which had posted those files, to remove them.

## 9. U.S.-China Trade Talks Hit Snag Over Farm Purchases

WSJ.com, Nov. 13 - Trade talks between the U.S. and China have hit a snag over farm purchases, creating another obstacle to locking down the limited trade deal President Trump outlined last month. Mr. Trump has said that China has agreed to buy up to $50 billion in U.S. soybeans, pork and other agricultural products annually. But China is leery of putting a numerical commitment in the text of an agreement, according to people familiar with the matter. Beijing wants to avoid cutting a deal that looks one-sided in Washington's favor, some of the people said, and also wants to have a way out should trade tensions escalate again. "We can always stop the purchases if things get worse again," said one Chinese official. The dispute over farm purchases is one of several issues that have delayed completion of the limited trade accord announced by Mr. Trump and Chinese Vice Premier Liu He on Oct. 11. Both sides are also at odds over when—and by how much—the U.S. would agree to lift tariffs on Chinese imports, Beijing's core demand that's linked to its offers on other issues.

## 10. Israelis Create Foreign Investment Overseer; China Targeted

BreakingDefense.com, Nov. 13 - American pressure on Israel helped the government here decide to limit the involvement of Chinese companies in building infrastructure programs in Israel and other investments in defense-related programs. Breaking Defense exposed the big concern among Israeli defense experts last year about the growing Chinese involvement in sensitive projects like the new Haifa port near the Israeli navy's main base. The Chinese company will build it and manage it for 25 years. Following three years of deliberations and intense pressure from the US over growing Chinese investments in Israeli companies, particularly in technology firms, Israel's security cabinet decided on October 30 to set up a new mechanism to monitor foreign investments. It appears to be similar to the American Committee on Foreign Investment in the United States (CFIUS). This happens even as China is Israel's second-largest trading partner and a significant foreign investor. The People's Republic of China has also taken an active interest in collaboration with Israel on innovation and technology, which inspired the establishment of a "Comprehensive Innovation Partnership" between the two countries in March 2017. In 2018, bilateral trade between the

WASHSTATEC004903

countries hit a record of $15.3 billion, up from just $51.5 million in 1992 and $13.1 billion in 2017.

## 11. China in Focus as West Debates Critical Minerals Challenge

Reuters.com, Nov. 14 - Western powers will attend talks in Brussels next week on curbing China's dominance of rare earths and other critical resources and EU officials will present their vision to create entire green supply chains. The talks, on Nov. 19, have taken place annually for much of this decade, bringing together diplomats and industry representatives from the European Union, Japan and United States. They have yet to weaken China's power, especially over rare earths, and global trade tensions aggravate the situation. In a daily news briefing in Beijing, Chinese Foreign Ministry spokesman Geng Shuang said it was not possible to "guide or monopolize" a certain sector or market in a closely connected world. China, the world's leading producer of rare earths, was "willing to satisfy the reasonable need" of various countries for resources and products, he said. A net importers of most minerals, the European Union in 2011 was among the first to compile a critical raw materials list.

## 12. European Steel Leaders Seek Scrutiny of Chinese British Steel Rescue

Reuters.com, Nov. 14 - European steel lobby Eurofer plans to raise concerns with the European Commission over Chinese group Jingye's proposed rescue of British Steel, saying the deal may flout rules on fair competition. In what would be the first takeover by a Chinese company of steel mills in the European Union, Jingye said on Monday it had reached a provisional agreement to buy British Steel and promised to invest £1.2 billion over the next decade. The deal, which requires regulatory approval, strikes at the heart of tensions between those in industry and government keen to embrace China as a major trading partner and those worried about the top steel producer's clout on the global market. Some analysts have also voiced concern about handing China control of a strategic sector. Eurofer said the planned purchase was a fresh instance of China exporting excess steel capacity to the edge of the European Union.

## 13. Can DoD Get Speed & Security With the Cloud?

BreakingDefense.com, Nov. 13 - If the Pentagon gets cloud computing right — and that's a big if indeed — it just might square the circle between accelerating acquisition and improving security, a senior cybersecurity official said here Tuesday. "By nature, there is a trade between the objective of agile software development and the assurance properties that we're trying to achieve," said Mitchell Komaroff, the principal cybersecurity advisor to DoD CIO Dana Deasy. But, he said, there are ways to reconcile them. Right now, the Defense Department has the worst of both worlds. Cybersecurity certification can be so laborious and bureaucratic that software is often obsolete before it's finished testing. Yet the final product isn't necessarily secure anyway, because new threats emerge faster than the Pentagon can upgrade its defenses. . . . Yes, Murphy said, there could still be a waiver process to skip security requirements when speed is of the essence – but it needs to be controlled at a much higher level than it is today. "Today there are far too many instances where there's an O-4 or O-5 [a major or lieutenant colonel] program manager making risk decisions," he said. In the system he's putting together, "maybe it's the service secretary."

WASHSTATEC004904

## 14. Report Warns US Army to Watch Out for Creeping Operational Costs With Future Helos

DefenseNews.com, Nov. 13 - The U.S. Army is currently set up to afford fielding two future vertical lift aircraft types simultaneously in roughly a decade, but the service should be careful when estimating the actual cost of keeping the fleets running, according to a Nov. 13 report by the Center for Strategic and International Studies. Fielding new FVL aircraft is the Army's No. 3 priority and is part of an ambitious and relatively new modernization plan for the service. . . . Replacing the current fleet is becoming increasingly imperative as helicopters in service are reaching technological and capability limits, even with upgrades. The report noted that the Army's current timelines for developing and fielding a future attack reconnaissance aircraft, or FARA, by 2028 and a future long-range assault aircraft, or FLRAA, by 2030 will work if the programs are managed well. But there are risks involved in getting aircraft through development into production, and the Army could experience issues if it does not take steps to predict operational and sustainment costs, and keep those costs down once the aircraft are fielded.

## 15. Air Force, Allies Team to Find Space Startups

BreakingDefense.com, Nov. 13 - The US Air Force is encouraging commercial startups in allied countries to bring innovative space tech to its attention for possible funding. Technology areas being explored include space situational awareness, space data analytics, space communication, artificial intelligence (AI) and satellite servicing. The innovation hub Techstars has launched a new industry accelerator focused on space and allied connectivity, Techstars Allied Space Accelerator. The Ministries of Defense of the Netherlands and Norway, and the Norwegian Space Agency are co-sponsoring the initiative. Just like other Techstars efforts, the program tries to bring commercial firms and their cutting edge products into the defense world. But rather than physically bringing start-ups and potential military customers together in the same place, the Allied Space Accelerator is run as a virtual program. Techstars currently has hubs in Boston and Los Angeles.

## 16. Stealthy Lockheed F-35 Breaks Down Too Often, Pentagon Says

Bloomberg.com, Nov. 13 - The Pentagon's chief weapons tester said the next-generation F-35 jet continues to fall short of full combat readiness targets and, despite some progress on reliability issues, all three versions of the fighter are breaking down "more often than planned." None of the Air Force, Marines and Navy variants of the Lockheed Martin Corp. fighter are meeting their five key "reliability or maintainability metrics," Robert Behler, the Pentagon's director of operational testing, said in prepared remarks Wednesday before two House Armed Services Committee panels. The House subcommittees are reviewing the $428 billion program's status and progress recovering from years of cost overruns and production delays. . . . His statement is a reality check just weeks after the Pentagon and Lockheed Martin announced that they finalized the largest contract in the program's history, a deal valued at $34 billion for 478 additional aircraft. About $27 billion of F-35s have already been placed on contract even though the program hasn't completed all its combat testing and struggles with reliability.

## 17. F-35 Program on Track to Replace Turkey, Pentagon Officials Say

WASHSTATEC004905

DefenseNews.com, Nov. 13 - Since removing Turkey from the multinational F-35 program over its purchase of a Russian air defense system, the U.S. has found alternate suppliers for all but a dozen components Turkey is producing for the Lockheed-made fighter jet. As U.S. President Donald Trump met with Turkish President Recep Tayyip Erdogan at the White House on Wednesday, the Pentagon's F-35 program executive testified in Congress that he expects Turkey will be phased out on schedule, by March 2020. Lockheed and Pratt & Whitney, he said, have "spectacular progress" finding alternate suppliers. "We began just over a year ago, very quietly but deliberately, taking actions to find alternate sources for all of those parts," said the program executive, said Lt. Gen. Eric Fick, adding, "We are not quite there yet, so we have, on the air frame side, 11 components we have to mitigate to be at full-rate production ... and on the engines, there's one: integrated bladed rotors, IBR's."

## 18. The Pentagon Plan to Save the F-35's Logistics System Hinges on Whether Lockheed Will Relinquish Data Control

DefenseNews.com, Nov. 13 - The Pentagon and Lockheed Martin are at odds over how much data the military can have access to for its own jet, the F-35, and that's creating renewed friction in the fight to fix longstanding issues with the automated logistics system vital to keeping it flying. Both the Pentagon and Lockheed say a relaunched version of the Autonomic Logistics Information System, or ALIS, should be ready to start sending to squadrons by September 2020, both the military's top acquisition official and the F-35 program manager expressed frustration to lawmakers at a House Armed Services subcommittee hearing Tuesday with how much control Lockheed asserts over crucial data for the system. ALIS is an off-board system that runs the maintenance and logistics system for the F-35. "One of the key elements of coming up with a new ALIS architecture, data standards, and all the other parts that would make a very good system is understanding the data set as it exists today — what all the algorithms are — and we are still in the process of going through that with Lockheed Martin," said Ellen Lord, the under secretary of defense for acquisition and sustainment. "But understanding where all the intellectual property is and making sure the government has access to what it has paid for is a key part of rearchitecting ALIS."

## 19. Pentagon's AI Problem Is 'Dirty' Data: Lt. Gen. Shanahan

BreakingDefense.com, Nov. 13 - Some people say data is the new oil. I don't like that," the Defense Department's AI director told me in his office here. "I treat it as mineral ore: There's a lot of crap. You have to filter out the impurities from the raw material to get the gold nuggets." Lt. Gen. Jack Shanahan learned this the hard way as head of the much-debated Project Maven, which he led for two years before becoming the founding director of the Joint Artificial Intelligence Center last year. The lessons from that often-painful process – discussed in detail below – now shape Shanahan's approach to the new and ever-more ambitious projects the Defense Department is taking on. They range from the relatively low-risk, non-combat applications that JAIC got warmed up with in 2019, like predicting helicopter engine breakdowns before they happen, to the joint warfighting efforts Shanahan wants to ramp up to in 2020: . . .

## 20. German Military Refuses to Take Delivery of Two Airbus A400M Planes

Reuters.com, Nov. 13 - Germany's air force said on Wednesday it had decided not to accept delivery of two Airbus A400M planes, citing recurring technical problems with the military transporters. The air force said the A400M had taken part in nearly 1,700 missions and formed the backbone of its air transport for carrying personnel and material, air-to-air refueling and humanitarian aid missions. Although 31 aircraft of 53 ordered had been handed over, it said there were technical issues with the planes, including with nuts used on propellers. It said extra time was needed for inspections that undermined the readiness of the A400M fleet. Airbus said in a statement that issues with the model were not safety critical. "We are aware of findings related to dowel bolts/Propeller interface in some of our customer aircraft," it said. "This is not safety critical and our customers continue to accept and operate their aircraft." . . . The German air force said extra inspections were also needed to test engine mounts, combustion chambers and engine flaps and for crack detection on various parts. It said the A400M was still not able to perform all tasks, despite these checks.

## 21. Opinion: Speed-of-Light Weaponry Requires Faster Acquisition Timelines

NationalDefenseMagazine.org, Nov. 13 - America's adversaries are rapidly advancing their offensive capabilities with hypersonic missiles, which can fly at more than five times the speed of sound. Addressing this threat will require new defenses, such as directed energy weapons, which reach targets at the speed of light, have much larger magazines, cost less per shot, and engage targets with precision far beyond traditional kinetic weapons. Recognizing this threat, both the House and Senate appropriations bills for Fiscal Year 2020 reflect notable funding increases, as high as $656 million, for hypersonics and hypersonics defense, underscoring that this should be an even higher priority for the Pentagon. But realizing the promise of directed energy for hypersonics defense will require much more than increased funding. In order to more rapidly deliver this fast-evolving technology to men and women in uniform, the Pentagon must also find ways to accelerate the current acquisition process. The structure of the Pentagon's existing acquisition governance unintentionally incentivizes the industrial base to slow-roll cutting-edge technology advancements and force-fit the solutions they developed years ago, keeping directed energy and other advanced technology from getting from the lab to the warfighters.

## Upcoming Export Control and Other Trade Compliance Conferences - *NEW EVENT ADDED!*

**Nov. 15 - Massachusetts Export Center - Deemed Export Compliance & Technology Control Plan Development - Westborough, Massachusetts - MassTech Collaborative, Karl Weiss Center, 75 North Drive, Westborough**

**Nov. 18 - Cnxtd ("Connected") Inc. - 2019 International Conference on the EU Cybersecurity Act - Brussels - Hotel Brussels**

**Nov. 18 - C5 Group - 2nd Annual Navigating Russia Sanctions Complexities - in London - Le Méridien Piccadilly Hotel**

**Nov. 19 - C5 Group - European Forum on U.S. Export Controls - Brussels - Le Châtelain Brussels Hotel, Brussels**

WASHSTATEC004907

**Nov. 19 - Massachusetts Export Center - Using ACE Reports to Manage and Audit AES Filings - Webinar**

**Nov. 19-20 - C5 Group - 8th London Forum on Global Economic Sanctions - London - Le Méridien Piccadilly Hotellive Meridien Piccadilly Hotel**

**Nov. 20-21 - C5 Group - European U.S. Defence Contracting - Brussels**

**Nov. 20-21 - American Conference Institute - Customs Compliance Industry Exchange - Washington, DC - Washington Plaza Hotel**

**Nov. 20-21 - Nielsonsmith - The European Anti-Corruption Summit - Munich, Germany**

**Nov. 20-21 -C5 Group - European Forum for US Defence Contracting and DFARS/FAR Compliance - Brussels - Le Châtelain Brussels Hotel**

*NEW* **- Nov. 21 - California Small Business Export Program - Export Compliance and Export Opportunities Conference in Northern California - Admission: Free - 8:30 AM to 2:30 PM - Santa Clara, California - Mission College, 3000 Mission College Boulevard, Building TAV, Room 130**

**Dec. 4 - Virginia SBDC - Export Compliance Essentials for the Small Business Exporter - Fairfax, Virginia - 4031 University Drive, Suite 100**

**Dec. 4 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Navigating USMCA for the Automotive Industry Webinar - 11:00 AM EST**

**Dec. 4-5 - American Conference Institute - 36th International Conference on the Foreign Corrupt Practices Act - Washington, DC**

**Dec. 6 - Society for International Affairs - Holiday Party - Washington, DC - "The Loft," 601 F Street, N.W.**

**Dec. 10 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: ECCN Classification Numbers - 2:00 PM to 3:00 PM EST**

**Dec. 10-11 - American Conference Institute - 10th Annual New York Forum on Economic Sanctions - New York City**

**Dec. 11 - German Government/Federal Office of Economics and Export Control - 11th Information Day Export Control 2019 -Frankfurt - Cape Europa, Osloer Str. 5, 60327 Frankfurt am Main**

**Dec. 12 - Virginia SBDC & Port of Norfolk - Incoterms® 2020 - Norfolk, Virginia - World Trade Center, 101 W. Main Street**

*NEW* **- Dec. 12 - U.S. Dept. of Commerce/U.S. Census Bureau & International Trade Administration - Webinar on Trade Trends, Policy Actions & Resources for Metals & Critical Minerals - 2:00 PM EST**

WASHSTATEC004908

**Dec. 13 - Massachusetts Export Center & Massachusetts SBDC - Export Expo - Boston - State Transportation Building, 10 Park Plaza**

**Dec. 13 - European Commission - 2019 Export Control Forum - Brussels - Albert Borschette Conference Centre (CCAB) Room CCAB0A Rue Froissart 36**

**Jan. 14 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Commodity Jurisdiction - 1:00 PM to 2:00 PM EST**

**Jan. 16 – 20 - International Compliance Professionals Association - ICPA@Sea - Galveston Ship Terminal to Cozumel**

**Jan. 22 - American Conference Institute - Dallas Economic Sanctions Boot Camp - Dallas - Dallas Marriott Downtown Hotel**

**Jan. 22-23 - American Conference Institute - 10th Annual Forum on AML & OFAC Compliance for the Insurance Industry - New York - Park Lane Hotel**

**Jan. 23-24 - American Conference Institute - AML & OFAC Compliance for the Insurance Industry - New York City**

**Jan. 27 - American Conference Institute - Miami Economic Sanctions Boot Camp - Miami - Marriott Miami Biscayne Bay Hotel**

**Jan. 28-29 – American Conference Institute - 9th Forum on U.S. Export & Re-Export Compliance for Canadian Operations - Toronto - Toronto Airport Marriott Hote**l - Gary Stanley, Editor of Defense and Export-Import Update, will once again co-chair this important conference.

**Jan. 29-30 - C5 Group - 6th Annual Conference on Anti-Corruption Nordics - Oslo - The Clarion Hotel**

**Jan. 30-31 - American Conference Institute - 14th Forum on the Foreign Corrupt Practices Act - Houston**

**Feb. 5-6 - Nielsonsmith - Export Compliance in Europe - Munich, Germany**

**Feb. 11 - American Conference Institute - San Francisco Economic Sanctions Boot Camp - San Francisco - Marines' Memorial Club and Hotel**

**Feb. 11-12 - Nielsonsmith - European Trade Controls Compliance Strategic Summit - Washington, DC**

**Feb. 18 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Drop Shipments and Routed Transactions - 2:00 PM to 3:00 PM EST**

**Feb. 24-26 - Society for International Affairs - 2020 Winter Back to Basics Conference - Las Vegas - Westin Las Vegas Hotel**

**Feb. 26 - American Conference Institute - Women Leaders in Defense and Aerospace Law & Compliance - Washington, DC - Washington Plaza Hotel**

WASHSTATEC004909

**March 3-4 - American Conference Institute - Practitioners' Think-Tank on ITC Litigation & Enforcement - Washington, DC**

**March 10 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: Cultural Sensitivity Program - 1:00 PM to 2:00 PM EST**

**March 15-18 - International Compliance Professionals Association - 2020 ICPA Annual Conference - San Diego - Sheridan San Diego Hotel & Marina**

**March 24-25 - American Conference Institute - 10th Annual Advanced Forum on Global Encryption, Cloud & Cyber Export Controls - San Francisco**

*NEW* **- March 24-25 - C5 Group - 12th Advanced Conference on Customs Compliance - London - St. James' Court, A Taj Hotel**

**April 14 - National Customs Brokers & Forwarders Association of America, Inc.& U.S. Dept. of Commerce - Exporting Mechanics Webinar Series II: ACE Export Reports for Compliance - 1:00 PM to 2:00 PM EST**

**May 27-28 - Nielsonsmith - US Trade Controls Compliance in Europe Conference - Munich - Gary Stanley, Editor of Defense and Export-Import Update, will speak at this conference.**

We hope this update proves helpful. If you have questions about any of these developments, please do not hesitate to call us. If you received this free newsletter from a colleague or friend and would like to subscribe directly, please just e-mail your name, title, company, and e-mail address to gstanley@glstrade.com.

Cordially yours,

Gary L. Stanley
President
Global Legal Services, PC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.20015
Tel. +1 (202) 686-4854
Fax +1 (202) 686-2624
Mobile +1 (202) 352-3059
E-mail gstanley@glstrade.com

Message

| | |
|---|---|
| **From**: | Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Sent**: | 11/14/2019 2:45:16 PM |
| **To**: | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Subject**: | FW: Notification package? |
| **Attachments**: | Tab Zc - November 2019 Congressional Notification - Line-in Line-out.pdf; Tab Zd - November 2019 Congressional Notification - Commerce Draft Final Rule.pdf; Tab Ze - November 2019 Congressional Notification - Summary of Revisions to USML.pdf; Tab Zf - November 2019 Congressional Notification - Proposed Controls for MDE.pdf; Tab Za - November 2019 Congressional Notification - Cover Letters.PDF; Tab Zb - November 2019 Congressional Notification - State Draft Final Rule.pdf |

This is what was sent

WASHSTATEC004911



United States Department of State

*Washington, D.C. 20520*

The Honorable
James E. Risch, Chairman
Committee on Foreign Relations
United States Senate
Washington, D.C. 201510

NOV 1 2 2019

Dear Mr. Chairman:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
          As stated.



United States Department of State

*Washington, D.C. 20520*

The Honorable
Robert Menendez, Ranking Member
Committee on Foreign Relations
United States Senate
Washington, DC 20510

NOV 1 2 2019

Dear Senator Menendez:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
As stated.

WASHSTATEC004913



**United States Department of State**

*Washington, D.C. 20520*

The Honorable
Eliot L. Engel, Chairman
Committee on Foreign Affairs
House of Representatives
Washington, DC 20515

NOV 1 2 2019

Dear Mr. Chairman:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
   As stated.

WASHSTATEC004914



**United States Department of State**

*Washington, D.C. 20520*

The Honorable
Michael T. McCaul, Ranking Member
Committee on Foreign Affairs
House of Representatives
Washington, DC 20515

NOV 1 2 2019

Dear Mr. McCaul:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
    As stated.

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:** Department of State.

**ACTION:** Final rule.

**§ 121.1 The United States Munitions List.**

* * * * *

**Category I—Firearms and Related Articles**

*(a) Firearms using caseless ammunition.

*(b) Fully automatic firearms to .50 caliber (12.7 mm) inclusive.

*(c) Firearms specially designed to integrate fire control, automatic tracking, or automatic firing (*e.g.*, Precision Guided Firearms).

*Note to paragraph (c):* Integration does not include only attaching to the firearm or rail.

*(d) Fully automatic shotguns regardless of gauge.

*(e) Silencers, mufflers, and sound suppressors.

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004916

(f) [Reserved]

(g) Barrels, receivers (frames), bolts, bolt carriers, slides, or sears specially designed for the articles in paragraphs (a), (b), and (d) of this category.

(h) Parts, components, accessories, and attachments, as follows:

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm;

(3) Parts and components specially designed for defense articles described in paragraphs (c) and (e); or

(4) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data. (*See* § 125.4 of this subchapter

2

WASHSTATEC004917

for exemptions.)

(j)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

**Category II—Guns and Armament**

(a) Guns and armament greater than .50 caliber (12.7 mm), as follows:

3

WASHSTATEC004918

*(1) Guns, howitzers, artillery, and cannons;

*(2) Mortars;

*(3) Recoilless rifles;

*(4) Grenade launchers; or

(5) Developmental guns and armament greater than .50 caliber (12.7 mm) funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

4

WASHSTATEC004919

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flamethrowers with an effective range greater than or equal to 20 meters.

(c) [Reserved]

*(d) Kinetic energy weapon systems specially designed for destruction or rendering mission-abort of a target.

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire

5

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004920

modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

(e) Signature reduction devices specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category (*e.g.*, muzzle flash suppression devices).

(f)–(i) [Reserved]

(j) Parts, components, accessories, and attachments, as follows:

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

6

WASHSTATEC004921

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

7

WASHSTATEC004922

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

8

WASHSTATEC004923

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), and (j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(l)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition and Ordnance**

9

WASHSTATEC004924

(a) Ammunition, as follows:

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

10

WASHSTATEC004925

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

(b) Ammunition/ordnance handling equipment specially designed for the articles controlled in this category, as follows:

11

WASHSTATEC004926

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]

(d) Parts and components for the articles in this category, as follows:

(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive;

(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

12

WASHSTATEC004927

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

13

WASHSTATEC004928

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles enumerated in paragraphs (a), (b), and (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(f)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

14

WASHSTATEC004929

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting, or popping.

*Note 3 to Category III:* Grenades containing non-lethal or less lethal projectiles are under the jurisdiction of the Department of Commerce.

15

WASHSTATEC004930

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:** Department of State.

**ACTION:** Final rule.


**§ 121.1 The United States Munitions List.**

\* \* \* \* \*

**Category I—Firearms** and Related Articles

~~, **Close Assault Weapons and Combat Shotguns**~~

\*(a) Firearms using caseless ammunition~~Nonautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)~~.


\*(b) Fully automatic firearms to .50 caliber ~~inclusive~~ (12.7 mm) inclusive.

WASHSTATEC004931

*(c) Firearms specially designed to integrate fire control, automatic tracking, or automatic firing (*e.g.*, Precision Guided Firearms)~~or other weapons (e.g. insurgency-counterinsurgency, close assault weapons systems) having a special military application regardless of caliber.~~

*Note to paragraph (c):* Integration does not include only attaching to the firearm or rail.

*(d) Fully automatic shotguns regardless of gauge.

~~Combat shotguns. This includes any shotgun with a barrel length less than 18 inches.~~

*(e) Silencers, mufflers, and sound ~~and flash~~ suppressors ~~for the articles in (a) through (d) of this category and their specifically designed, modified or adapted components and parts.~~

(f) [Reserved]

~~Riflescopes manufactured to military specifications (See category XII(c) for controls on night sighting devices.)~~

*(g) Barrels, ~~cylinders,~~ receivers (frames) bolts, bolt carriers, slides, or sears~~or complete breech mechanisms~~ specially designed for the articles in paragraphs (a), (b), and ~~through~~ (d) of this category.

2

WASHSTATEC004932

(h) ~~Components, p~~Parts, components, accessories, and attachments~~-~~, as follows:

~~for the articles in paragraphs (a) through (g) of this category.~~

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm;

(3) Parts and components specially designed for defense articles described in paragraphs (c) and (e); or

(4) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (~~as defined in~~*see* §120.10 of this subchapter) and defense services (~~as defined in~~*see* §120.9 of this subchapter) directly related to the defense articles described in ~~paragraphs (a) through (h) of~~this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data. (See § 125.4 of this subchapter for exemptions.)

3

WASHSTATEC004933

~~Technical data directly related to the manufacture or production of any defense articles described elsewhere in this category that are designated as Significant Military Equipment (SME) shall itself be designated SME.~~

(j) – (w) [Reserved] ~~The following interpretations explain and amplify the terms used in this category and throughout this subchapter:~~

~~(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the action of an explosive or which may be readily converted to do so.~~

~~(2) A rifle is a shoulder firearm which can discharge a bullet through a rifled barrel 16 inches or longer.~~

~~(3) A carbine is a lightweight shoulder firearm with a barrel under 16 inches in length.~~

~~(4) A pistol is a hand-operated firearm having a chamber integral with or permanently aligned with the bore.~~

~~(5) A revolver is a hand-operated firearm with a revolving cylinder containing chambers for individual cartridges.~~

~~(6) A submachine gun, "machine pistol" or "machine gun" is a firearm originally designed to fire, or capable of being fired, fully automatically by a single pull of the trigger.~~

(x) Commodities, software, and technology subject to the EAR (see

4

WASHSTATEC004934

§ 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x)*: Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (see § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

~~: This coverage by the U.S. Munitions List in paragraphs (a) through (i) of this category excludes any non-combat shotgun with a barrel length of 18 inches or longer, BB, pellet, and muzzle loading (black powder) firearms. This category does not cover riflescopes and sighting devices that are not~~

5

WASHSTATEC004935

~~manufactured to military specifications. It also excludes accessories and~~

~~attachments (e.g., belts, slings, after market rubber grips, cleaning kits) for~~

~~firearms that do not enhance the usefulness, effectiveness, or capabilities of~~

~~the firearm, components and parts. The Department of Commerce regulates~~

~~the export of such items. See the Export Administration Regulations (15~~

~~CFR parts 730-799). In addition, license exemptions for the items in this~~

~~category are available in various parts of this subchapter (e.g., §§123.17,~~

~~123.18 and 125.4).~~

**Category II—Guns and Armament**


*(a) Guns and armament greater than ~~over~~ caliber .50 (~~i.e.,~~ 12.7 mm), as follows:

*(1) Guns, howitzers, artillery, and cannons;

*(2) Mortars;

*(3) Recoilless rifles;

*(4) Grenade launchers; or ~~whether towed, airborne, self-propelled, or~~

~~fixed, including but not limited to, howitzers, mortars, cannons, recoilless~~

~~rifles, and grenade launchers~~

(5) Developmental guns and armament greater than .50 caliber (12.7 mm)

funded by the Department of Defense and specially designed parts and

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004936

components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the

7

WASHSTATEC004937

CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

 (b) Flame-throwers with an effective range greater than or equal to 20 meters.~~specifically designed or modified for military application.~~

(c) [Reserved]~~Apparatus and devices for launching or delivering ordnance, other than those articles controlled in Category IV.~~

*(d) Kinetic energy weapon systems specially ~~specifically~~ designed ~~or modified~~ for destruction or rendering mission-abort of a target.

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

8

WASHSTATEC004938

(e) Signature <u>reduction devices</u> ~~control materials (e.g., parasitic,~~ ~~structural, coatings, screening) techniques, and equipment~~ <u>specially</u> ~~specifically~~ designed~~, developed, configured, adapted or modified to alter or~~ ~~reduce the signature (e.g., muzzle flash suppression, radar, infrared, visual,~~ ~~laser/electro-optical, acoustic) of~~ <u>for the guns and armament controlled in</u> <u>paragraphs (a), (b), and (d) of this category (</u>*e.g.*<u>, muzzle flash suppression</u> <u>devices)</u>~~defense articles controlled by this category~~.

<u>*(f) – (i) [Reserved]</u>~~Engines specifically designed or modified for the~~ ~~self-propelled guns and howitzers in paragraph (a) of this category.~~

~~(g) Tooling and equipment specifically designed or modified for the~~ ~~production of defense articles controlled by this category.~~

~~(h) Test and evaluation equipment and test models specifically designed~~ ~~or modified for the articles controlled by this category. This includes but is~~ ~~not limited to diagnostic instrumentation and physical test models.~~

~~(i) Autoloading systems for electronic programming of projectile~~ ~~function for the defense articles controlled in this Category.~~

(j) ~~All other components, p~~Parts, <u>components,</u> accessories, <u>and</u> attachments<u>, as follows:</u> ~~and associated equipment specifically designed or~~ ~~modified for the articles in paragraphs (a) through (i) of this category. This~~

9

WASHSTATEC004939

~~includes but is not limited to mounts and carriages for the articles controlled in this category.~~

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

10

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC004940

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

11

WASHSTATEC004941

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see*as defined in §120.10 of this subchapter) and defense services (*see*as defined in §120.9 of this subchapter) directly related to the defense articles described in paragraphs (a)-, (b), (d), (e), and through

12

WASHSTATEC004942

(j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (See § 125.4 of this subchapter for exemptions.) ~~Technical data directly related to the manufacture or production of any defense articles described elsewhere in this category that are designated as Significant Military Equipment (SME) shall itself be designated SME.~~

(l) – (w) [Reserved] ~~The following interpretations explain and amplify the terms used in this category and elsewhere in this subchapter:~~

~~(1) The kinetic energy weapons systems in paragraph (d) of this category include but are not limited to:~~

~~(i) Launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6km/s, in single or rapid fire modes, using methods such as: electromagnetic, electrothermal, plasma, light gas, or chemical;~~

~~(ii) Prime power generation, electric armor, energy storage, thermal management, conditioning, switching or fuel-handling equipment; and the electrical interfaces between power supply gun and other turret electric drive function;~~

13

WASHSTATEC004943

(iii) Target acquisition, tracking fire control or damage assessment systems; and

(iv) Homing seeker, guidance or divert propulsion (lateral acceleration) systems for projectiles.

(2) The articles in this category include any end item, component, accessory, attachment part, firmware, software or system that has been designed or manufactured using technical data and defense services controlled by this category.

(3) The articles specifically designed or modified for military application controlled in this category include any article specifically developed, configured, or adapted for military application.

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition/ and Ordnance**

\*(a) Ammunition/, as follows:ordnance for the articles in Categories I and II of this section.

14

WASHSTATEC004944

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

15

WASHSTATEC004945

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

16

WASHSTATEC004946

(b) Ammunition/ordnance handling equipment specially ~~specifically~~ designed ~~or modified~~ for the articles controlled in this category, as follows:~~,~~ ~~such as, belting, linking, and de-linking equipment.~~

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]~~Equipment and tooling specifically designed or modified for the production of defense articles controlled by this category.~~

(d) ~~Components, p~~Parts and components,~~ accessories, attachments and associated equipment specifically designed or modified~~ for the articles in this category, as follows:

\*(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive~~Guidance and control components for the articles in paragraph (a) of this category~~;

\*(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;~~Safing, arming and fuzing components (including target detection and localization devices) for the articles in paragraph (a) of this category;~~ ~~and~~

17

WASHSTATEC004947

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;~~All other components, parts, accessories, attachments and associated equipment for the articles in paragraphs (a) through (c) of this category.~~

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

18

WASHSTATEC004948

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or

19

WASHSTATEC004949

predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (*see*~~as defined in~~ §120.10 of this subchapter) and defense services (*see*~~as defined in~~ §120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), and ~~through~~ (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)~~Technical data directly related to the manufacture or production of any defense articles described elsewhere in this category that are designated as Significant Military Equipment (SME) shall itself be designated SME.~~

(f) – (w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles. ~~The following explains and amplifies the terms used in this category and elsewhere in this subchapter:~~

~~(1) The components, parts, accessories and attachments controlled in this category include, but are not limited to cartridge cases, powder bags (or~~

20

WASHSTATEC004950

~~other propellant charges), bullets, jackets, cores, shells (excluding shotgun~~

~~shells), projectiles (including canister rounds and submunitions therefor),~~

~~boosters, firing components therefor, primers, and other detonating devices~~

~~for the defense articles controlled in this category.~~

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* ~~(2)~~ This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting or popping. ~~(3) Equipment and tooling in paragraph (c) of this category does not include equipment for hand-loading ammunition.~~

~~(4) The articles in this category include any end item, component, accessory, attachment, part, firmware, software, or system that has been~~

21

WASHSTATEC004951

~~designed or manufactured using technical data and defense services~~

~~controlled by this category.~~

~~(5) The articles specifically designed or modified for military application~~

~~controlled in this category include any article specifically developed,~~

~~configured, or adapted for military application~~

*Note 3 to Category III:* Grenades containing non-lethal or less lethal

projectiles are under the jurisdiction of the Department of Commerce.

\* \* \* \* \*

22

WASHSTATEC004952

**Billing Code: 3510-33-P**

**DEPARTMENT OF COMMERCE**

**Bureau of Industry and Security**

**15 CFR Parts 732, 734, 736, 740, 742, 743, 744, 746, 748, 758, 762, 772, and 774**

**[Docket No. 191107-0079]**

**RIN 0694-AF47**

**Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control under the United States Munitions List (USML)**

**AGENCY:**  Bureau of Industry and Security, Department of Commerce.

**ACTION:**  Final rule.

1. The authority citation for 15 CFR part 732 is revised to read as follows:

**Authority:**  50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq*.; 50 U.S.C. 1701 *et seq*.; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

2. Section 732.2 is amended by adding one sentence to the end of the paragraph (b) introductory text to read as follows:

**§ 732.2 Steps regarding scope of the EAR.**

\* \* \* \* \*

WASHSTATEC004953

(b) *   *   *   The following also remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, as referenced in § 734.7(c)).

*   *   *   *   *

## PART 734 – SCOPE OF THE EXPORT ADMINISTRATION REGULATIONS

3. The authority citation for 15 CFR part 734 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018).

4. Section 734.7 is amended by:

a. Revising paragraph (a) introductory text; and

b. Adding paragraph (c) to read as follows:

## § 734.7 Published.

(a) Except as set forth in paragraph (b) and (c) of this section, unclassified "technology" or "software" is "published," and is thus not "technology" or "software" subject to the EAR, when it has been made available to the public without restrictions upon its further dissemination such as through any of the following:

2

WASHSTATEC004954

\* \* \* \* \*

(c) The following remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, that is made available by posting on the internet in an electronic format, such as AMF or G-code, and is ready for insertion into a computer numerically controlled machine tool, additive manufacturing equipment, or any other equipment that makes use of the "software" or "technology" to produce the firearm frame or receiver or complete firearm.

\* \* \* \* \*

## PART 736 – GENERAL PROHIBITIONS

5. The authority citation for 15 CFR part 736 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 2151 note; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p. 168; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

6. Supplement No. 1 to part 736 is amended by revising paragraph (e)(3) to read as follows:

WASHSTATEC004955

**SUPPLEMENT NO. 1 TO PART 736 - GENERAL ORDERS**

\* \* \* \* \*

(e) \* \* \*

(3) *Prior commodity jurisdiction determinations.* If the U.S. State Department has previously determined that an item is not subject to the jurisdiction of the ITAR and the item was not listed in a then existing "018" series ECCN (for purposes of the "600 series" ECCNs, or the 0x5zz ECCNs) or in a then existing ECCN 9A004.b or related software or technology ECCN (for purposes of the 9x515 ECCNs), then the item is per se not within the scope of a "600 series" ECCN, a 0x5zz ECCN, or a 9x515 ECCN.  If the item was not listed elsewhere on the CCL at the time of such determination (*i.e.*, the item was designated EAR99), the item shall remain designated as EAR99 unless specifically enumerated by BIS or DDTC in an amendment to the CCL or to the USML, respectively.

\* \* \* \* \*

**PART 740 – LICENSE EXCEPTIONS**

7. The authority citation for 15 CFR part 740 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*;  22 U.S.C. 7201 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228;  E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

8. Section 740.2 is amended by adding paragraphs (a)(21) and (22) to read as follows:

4

WASHSTATEC004956

**§ 740.2 Restrictions on all license exceptions.**

(a) *  *  *

(21)  The reexport or transfer (in-country) of firearms classified under ECCNs 0A501 or 0A502 if a part or component that is not "subject to the ITAR," but would otherwise meet the criteria in USML Category I(h)(2)(*i.e.*, parts and components specially designed for conversion of a semiautomatic firearm to a fully automatic firearm) is incorporated into the firearm or is to be reexported or transferred (in-country) with the firearm with "knowledge" the part or component will be subsequently incorporated into the firearm.  (*See* USML Category I(h)(2)).  In such instances, no license exceptions are available except for License Exception GOV (§ 740.11(b)(2)(ii)).

(22) The export, reexport, or transfer (in-country) of any item classified under a 0x5zz ECCN when a party to the transaction is designated on the Department of the Treasury, Office of Foreign Assets Control (OFAC), Specially Designated Nationals and Blocked Persons (SDN) list under the designation [SDNT], pursuant to the Narcotics Trafficking Sanctions Regulations, 31 CFR part 536, or under the designation [SDNTK], pursuant to the Foreign Narcotics Kingpin Sanctions Regulations, 31 CFR part 598.

 

9. Section 740.9 is amended by:

a.  Adding five sentences at the end of paragraph (a) introductory text;

b.  Adding one sentence at the end of paragraph (b)(1) introductory text;

WASHSTATEC004957

c.  Adding paragraph (b)(5); and

d. Redesignating notes 1 through 3 to paragraph (b) as notes 2 through 4 to paragraph (b);

The additions read as follows:

**§ 740.9 Temporary imports, exports, reexports, and transfers (in-country) (TMP).**

\*   \*   \*   \*   \*

(a)  \*   \*   \*  This paragraph (a) does not authorize any export of a commodity controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502 to, or any export of such an item that was imported into the United States from, a country in Country Group D:5 (Supplement No. 1 of this part), or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan.  The only provisions of this paragraph (a) that are eligible for use to export such items are paragraph (a)(5) of this section ("Exhibition and demonstration") and paragraph (a)(6) of this section ("Inspection, test, calibration, and repair").  In addition, this paragraph (a) may not be used to export more than 75 firearms per shipment.  In accordance with the requirements in § 758.1(b)(9) and (g)(4) of the EAR, the exporter or its agent must provide documentation that includes the serial number, make, model, and caliber of each firearm being exported by filing these data elements in an EEI filing in AES.  In accordance with the exclusions in License Exception TMP under paragraph (b)(5) of this section, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country,, or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan

6

WASHSTATEC004958

(except for any firearm model designation (if assigned) controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740);); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under paragraph (b)(5) of this section.

*   *   *   *   *

(b)   *   *   *

(1) *   *   * No provision of paragraph (b) of this section, other than paragraph (b)(3), (4), or (5), may be used to export firearms controlled by ECCN 0A501.a, .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.

*   *   *   *   *

(5) *Exports of firearms and certain shotguns temporarily in the United States.* This paragraph (b)(5) authorizes the export of no more than 75 end item firearms per shipment controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for a period not exceeding one year, provided that:

(i) The firearms were not shipped from or manufactured in a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR;

7

(ii) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740; and

(iii) The firearms are not ultimately destined to a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR, or to Russia;

(iv) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License cException TMP (15 CFR 740.9(b)(5))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provided (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States.

8

(v) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(5)(iv)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(5): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(5), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

*   *   *   *   *

10. Section 740.10 is amended by:

a.  Adding one sentence at the end of paragraph (b)(1); and

b.  Adding paragraph (b)(4).

The additions read as follows:

## § 740.10 Servicing and replacement of parts and equipment (RPL)

*   *   *   *   *

*(b)* * * *

(1) *   *   * The export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 temporarily in the United States for

9

WASHSTATEC004961

servicing and replacement may be exported under paragraphs (b)(2) or (3) of this section only if the additional requirements in paragraph (b)(4) of this section are also met.

*   *   *   *   *

(4) *Exports of firearms and certain shotguns temporarily in the United States for servicing and replacement.* This paragraph (b)(4) authorizes the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for servicing or replacement for a period not exceeding one year or the time it takes to service or replace the commodity, whichever is shorter, provided that the requirements of paragraphs (b)(2) or (3) of this section are met and:

(i) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740;

(ii) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

10

WASHSTATEC004962

(C) Provided (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement.

(iii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(4)(iii)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(4):* *In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(4), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

\*   \*   \*   \*   \*

11.  Section 740.11 is amended by:

a. Adding two sentences at the end of the introductory text;

b. Adding Note 2 to paragraph (b)(2); and

WASHSTATEC004963

c. Redesignating note 1 to paragraph (c)(1) as note 3 to paragraph (c)(1) and notes 1 and 2 to paragraph (e) as notes 4 and 5 to paragraph (e).

The additions read as follows:

## § 740.11 Governments, international organizations, international inspections, under the Chemical Weapons Convention, and the International Space Station (GOV).

*   *   *   Commodities listed in ECCN 0A501 are eligible only for transactions described in paragraphs (b)(2)(i) and (ii) of this section.  Any item listed in a 0x5zz ECCN for export, reexport, or transfer (in-country) to an E:1 country is eligible only for transactions described in paragraphs (b)(2)(i) and (ii) solely for U.S. Government official use of this section.

*   *   *   *   *

*Note 2 to paragraph (b)(2):*  *Items controlled for NS, MT, CB, NP, FC, or AT reasons may not be exported, reexported, or transferred (in-country) to, or for the use of military, police, intelligence entities, or other sensitive end users (e.g., contractors or other governmental parties performing functions on behalf of military, police, or intelligence entities) of a government in a Country Group E:1 or E:2 country.*

*   *   *   *   *

12. Section 740.14 is amended by revising paragraph (b)(4) introductory text, revising the heading to paragraph (e), and by adding paragraphs (e)(3) and (4) to read as follows:

## § 740.14 Baggage (BAG).

WASHSTATEC004964

\* \* \* \* \*

(b) \* \* \*

(4) *Tools of trade.* Usual and reasonable kinds and quantities of tools, instruments, or equipment and their containers and also technology for use in the trade, occupation, employment, vocation, or hobby of the traveler or members of the household who are traveling or moving. For special provisions regarding firearms and ammunition, see paragraph (e) of this section.  For special provisions regarding encryption commodities and software subject to EI controls, see paragraph (f) of this section.  For a special provision that specifies restrictions regarding the export or reexport of technology under this paragraph (b)(4), see paragraph (g) of this section. For special provisions regarding personal protective equipment under ECCN 1A613.c or .d, see paragraph (h) of this section.

\* \* \* \* \*

(e) *Special provisions for firearms and ammunition.* \* \* \*

(3) A United States citizen or a permanent resident alien leaving the United States may export under this License Exception firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505.a, subject to the following limitations:

(i) Not more than three firearms and 1,000 rounds of ammunition may be taken on any one trip.

WASHSTATEC004965

(ii) "Parts," "components," "accessories," and "attachments" exported pursuant to this paragraph must be of a kind and limited to quantities that are reasonable for the activities described in paragraph (e)(3)(iv) of this section or that are necessary for routine maintenance of the firearms being exported.

(iii) The commodities must be with the person's baggage.

(iv) The commodities must be for the person's exclusive use and not for resale or other transfer of ownership or control.  Accordingly, except as provided in paragraph (e)(4) of this section, firearms, "parts," "components," "accessories," "attachments," and ammunition, may not be exported permanently under this License Exception.  All firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and all unused ammunition controlled under ECCN 0A505.a exported under this License Exception must be returned to the United States.

(v) Travelers leaving the United States temporarily are required to declare the firearms, "parts," "components," "accessories," "attachments," and ammunition being exported under this license exception to a Customs and Border Protection (CBP) officer prior to departure from the United States and present such items to the CBP officer for inspection, confirming that the authority for the export is License Exception BAG and that the exporter is compliant with its terms.

(4) A nonimmigrant alien leaving the United States may export or reexport under this License Exception only such firearms controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505 as he or she brought into the United States under the relevant provisions of Department of Justice regulations at 27 CFR part 478.

14

WASHSTATEC004966

\* \* \* \* \*

## § 740.16 [AMENDED]

13.  Section 740.16 is amended by:

a.  Revising paragraph (a)(2);

b.  Revising paragraphs (b)(2)(iv) and (v); and

c.  Adding paragraph (b)(2)(vi);

The revisions and addition read as follows:

## § 740.16 Additional permissive reexports (APR).

\* \* \* \* \*

(a)  \* \* \*

(2) The commodities being reexported are not controlled for NP, CB, MT, SI, or CC reasons or described in ECCNs 0A919, 3A001.b.2 or b.3 (except those that are being reexported for use in civil telecommunications applications), 6A002, 6A003; or commodities classified under a 0x5zz ECCN; and

\* \* \* \* \*

(b)  \* \* \*

(2)  \* \* \*

15

WASHSTATEC004967

(iv) Commodities described in ECCN 0A504 that incorporate an image intensifier tube;

(v) Commodities described in ECCN 6A002; or

(vi) Commodities classified under a 0x5zz ECCN.

*  *  *  *  *

14.  Section 740.20 is amended by revising paragraph (b)(2)(ii) to read as follows:

**§ 740.20 License Exception Strategic Trade Authorization (STA).**

*  *  *  *  *

(b)  *  *  *

(2)  *  *  *

(ii) License Exception STA may not be used for:

(A) Any item controlled in ECCNs 0A501.a, .b, .c, .d, or .e; 0A981; 0A982; 0A983; 0A503; 0E504; 0E982; or

(B) Shotguns with barrel length less than 18 inches controlled in 0A502.

*  *  *  *  *

15. Add Supplement No. 4 to part 740 to read as follows:

**SUPPLEMENT NO. 4 TO PART 740 - ANNEX A FIREARM MODELS**

WASHSTATEC004968

(a) *Pistols/revolvers.*

(1) German Model P08 Pistol = SMCR.

(2) IZH 34M, .22 Target pistol.

(3) IZH 35M, .22 caliber Target pistol.

(4) Mauser Model 1896 pistol = SMCR.

(5) MC-57-1 pistol.

(6) MC-1-5 pistol.

(7) Polish Vis Model 35 pistol = SMCR.

(8) Soviet Nagant revolver = SMCR.

(9) TOZ 35, .22 caliber Target pistol.

(10) MTs 440.

(11) MTs 57-1.

(12) MTs 59-1.

(13) MTs 1-5.

(14) TOZ-35M (starter pistol).

(15) Biathlon-7K.

17

WASHSTATEC004969

(b) *Rifles.*

(1) BARS-4 Bolt Action carbine.

(2) Biathlon target rifle, .22.

(3) British Enfield rifle = SMCR.

(4) CM2, .22 target rifle (also known as SM2, .22).

(5) German model 98K =SMCR.

(6) German model G41 = SMCR.

(7) German model G43=SMCR.

(8) IZH-94.

(9) LOS-7, bolt action.

(10) MC-7-07.

(11) MC-18-3.

(12) MC-19-07.

(13) MC-105-01.

(14) MC-112-02.

(15) MC-113-02.

(16) MC-115-1.

18

WASHSTATEC004970

(17) MC-125/127.

(18) MC-126.

(19) MC-128.

(20) Saiga.

(21) Soviet Model 38 carbine=SMCR.

(22) Soviet Model 44 carbine-SMCR.

(23) Soviet Model 91/30 rifle=SMCR.

(24) TOZ 18, .22 bolt action.

(25) TOZ 55.

(26) TOZ 78.

(27) Ural Target, .22lr.

(28) VEPR rifle.

(29) Winchester Model 1895, Russian Model rifle=SMCR.

(30) Sever – double barrel.

(31) IZH18MH single barrel break action.

(32) MP-251 over/under rifle.

(33) MP-221 double barrel rifle.

WASHSTATEC004971

(34) MP-141K.

(35) MP-161K.

(36) MTs 116-1.

(37) MTs 116M.

(38) MTs 112-02.

(39) MTs 115-1.

(40) MTs 113-02.

(41) MTs 105-01.

(42) MTs 105-05.

(43) MTs 7-17 combination gun.

(44) MTs 7-12-07 rifle/shotgun.

(45) MTs 7-07.

(46) MTs 109-12-07 rifle.

(47) MTs 109-07 rifle.

(48) MTs 106-07 combination.

(49) MTs 19-97.

(50) MTs 19-09.

WASHSTATEC004972

(51) MTs 18-3M.

(52) MTs 125.

(53) MTs 126.

(54) MTs 127.

(55) Berkut-2.

(56) Berkut-2M1.

(57) Berkut-3.

(58) Berkut-2-1.

(59) Berkut-2M2.

(60) Berkut-3-1.

(61) Ots-25.

(62) MTs 20-07.

(63) LOS-7-1.

(64) LOS -7-2.

(65) LOS-9-1.

(66) Sobol (Sable).

(67) Rekord.

21

WASHSTATEC004973

(68) Bars-4-1.

(69) Saiga.

(70) Saiga-M.

(71) Saiga 308.

(72) Saiga-308-1.

(73) Saiga 308-2.

(74) Saiga-9.

(75) Korshun.

(76) Ural-5-1.

(77) Ural 6-1.

(78) Ural-6-2.

(79) SM-2.

(80) Biatlon-7-3.

(81) Biatlon-7-4.

(82) Rekord-1.

(83) Rekord-2.

(84) Rekord-CISM.

WASHSTATEC004974

(85) Rekord-1-308.

(86) Rekord-2-308.

(87) Rekord-1-308-CISM.

(88) VEPR.

(89) VEPR Super.

(90) VEPR Pioneer.

(91) VEPR Safari.

(92) TOZ 109.

(93) KO 44-1.

(94) TOZ 78-01.

(95) KO 44.

(96) TOZ 99.

(97) TOZ 99-01.

(98) TOZ 55-01 Zubr.

(99) TOZ 55-2 Zubr.

(100) TOZ 120 Zubr.

(101) MTs 111.

WASHSTATEC004975

(102) MTs 109.

(103) TOZ 122.

(104) TOZ 125.

(105) TOZ 28.

(106) TOZ 300.

## PART 742 – CONTROL POLICY—CCL BASED CONTROLS

16.   The authority citation for part 742 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22

U.S.C. 3201 *et seq.*; 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; Sec. 1503, Pub.

L. 108–11, 117 Stat. 559; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58

FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950;

E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001

Comp., p. 783; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320;

Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR

56253 (November 9, 2018).

17.   Section 742.6 is amended by revising the first and sixth sentences of paragraph

(b)(1)(i) and adding a seventh sentence at the end of paragraph (b)(1)(i) to read as follows:

## §742.6 Regional stability.

*   *   *   *   *

24

WASHSTATEC004976

(b)  *  *  *

(1)  *  *  *

(i)  Applications for exports and reexports of ECCN 0A501, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items; 9x515 items and "600 series" items and will be reviewed on a case-by-case basis to determine whether the transaction is contrary to the national security or foreign policy interests of the United States, including the foreign policy interest of promoting the observance of human rights throughout the world.  *  *  * When destined to the People's Republic of China or a country listed in Country Group E:1 in Supplement No. 1 to part 740 of the EAR, items classified under ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 or any 9x515 ECCN will be subject to a policy of denial.  In addition, applications for exports and reexports of ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items when there is reason to believe the transaction involves criminal organizations, rebel groups, street gangs, or other similar groups or individuals, that may be disruptive to regional stability, including within individual countries, will be subject to a policy of denial.

*  *  *  *  *

18.  Section 742.7 is amended by revising paragraphs (a)(1) through (4) and (c) to read as follows:

**§ 742.7 Crime control and detection.**

(a)  *  *  *

25

WASHSTATEC004977

(1)  Crime control and detection instruments and equipment and related "technology" and "software" identified in the appropriate ECCNs on the CCL under CC Column 1 in the Country Chart column of the "License Requirements" section.  A license is required to countries listed in CC Column 1 (Supplement No. 1 to part 738 of the EAR).  Items affected by this requirement are identified on the CCL under the following ECCNs: 0A502, 0A504, 0A505.b, 0A978, 0A979 0E502, 0E505 ("technology" for "development" or for "production" of buckshot shotgun shells controlled under ECCN 0A505.b), 1A984, 1A985, 3A980, 3A981, 3D980, 3E980, 4A003 (for fingerprint computers only), 4A980, 4D001 (for fingerprint computers only), 4D980, 4E001 (for fingerprint computers only), 4E980, 6A002 (for police-model infrared viewers only), 6E001 (for police-model infrared viewers only), 6E002 (for police-model infrared viewers only), and 9A980.

(2)  Shotguns with a barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 2 in the Country Chart column of the "License Requirements" section regardless of end user to countries listed in CC Column 2 (Supplement No. 1 to part 738 of the EAR).

(3)  Shotguns with barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 3 in the Country Chart column of the "License Requirements" section only if for sale or resale to police or law enforcement entities in countries listed in CC Column 3 (Supplement No. 1 to part 738 of the EAR).

(4)  Certain crime control items require a license to all destinations, except Canada. These items are identified under ECCNs 0A982, 0A503, and 0E982.  Controls for these items appear in

26

WASHSTATEC004978

each ECCN; a column specific to these controls does not appear in the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

(c)  *Contract sanctity*.  Contract sanctity date: August 22, 2000.  Contract sanctity applies only to items controlled under ECCNs 0A982, 0A503, and 0E982 destined for countries not listed in CC Column 1 of the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

19.  Section 742.17 is amended by:

a. Revising the first sentence of paragraph (a); and

b. Revising paragraph (f) to read as follows:

## § 742.17  Exports of firearms to OAS member countries.

(a)  *License requirements*. BIS maintains a licensing system for the export of firearms and related items to all OAS member countries.  *   *   *

*   *   *   *   *

(f) *Items/Commodities*.   Items requiring a license under this section are ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), and 0A505 (except 0A505.d).  (See Supplement No. 1 to part 774 of the EAR).

*   *   *   *   *

27

WASHSTATEC004979

**§ 742.19 [AMENDED]**

20. Section 742.19(a)(1) is amended by:

a. Removing "0A986" and adding in its place "0A505.c"; and

b. Removing "0B986" and adding in its place "0B505.c".

**PART 743 – SPECIAL REPORTING AND NOTIFICATION**

21. The authority citation for 15 CFR part 743 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*;  50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783;  E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; 78 FR 16129; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

22. Section 743.4 is amended by:

a. Adding four sentences to the end of paragraph (a);

b. By redesignating Note to paragraph (a) as Note 1 to paragraph (a);

c. Revising paragraph (b);

d. Adding paragraphs (c)(1)(i) and (c)(2)(i);

e. By redesignating Note to paragraph (e)(1)(ii) as Note 2 to paragraph (e)(1)(ii);

e. Revising paragraph (h); and

28

WASHSTATEC004980

f. Adding paragraph (i) to read as follows:

## § 743.4 Conventional arms reporting.

(a) *   *   *   This section does not require reports when the exporter uses the alternative submission method described under paragraph (h) of this section.  The alternative submission method under paragraph (h) requires the exporter to submit the information required for conventional arms reporting in this section as part of the required EEI submission in AES, pursuant to § 758.1(b)(9).  Because of the requirements in § 758.1(g)(4)(ii) for the firearms that require conventional arms reporting of all conventional arms, the Department of Commerce believes all conventional arms reporting requirements for firearms will be met by using the alternative submission method.  The Department of Commerce leaves standard method for submitting reports in place in case any additional items are moved from the USML to the CCL, that may require conventional arms reporting.

> *Note 1 to paragraph (a):* *   *   *

(b) *Requirements*.  You must submit one electronic copy of each report required under the provisions of this section, or submit this information using the alternative submission method specified in paragraph (h) of this section, and maintain accurate supporting records (see § 762.2(b) of the EAR) for all exports of items specified in paragraph (c) of this section for the following:

(c) *   *   *

WASHSTATEC004981

(1) * * *

    (i) ECCN 0A501.a and .b.

* * * * *

(2) * * *

    (i) ECCN 0A501.a and .b.

* * * * *

(h) *Alternative submission method.*  This paragraph (h) describes an alternative submission method for meeting the conventional arms reporting requirements of this section.  The alternative submission method requires the exporter, when filing the required EEI submission in AES, pursuant to § 758.1(b)(9), to include the six character ECCN classification (*i.e.*, 0A501.a or 0A501.b) as the first text to appear in the Commodity description block.  If the exporter properly includes this information in the EEI filing in AES, the Department of Commerce will be able to obtain that export information directly from AES to meet the U.S. Government's commitments to the Wassenaar Arrangement and United Nations for conventional arms reporting.  An exporter that complies with the requirements in § 758.1(g)(4)(ii) does not have to submit separate annual and semi-annual reports to the Department of Commerce pursuant to this section.


(i) *Contacts.* General information concerning the Wassenaar Arrangement and reporting obligations thereof is available from the Office of National Security and Technology Transfer Controls, Tel.: (202) 482-0092, Fax: (202) 482-4094.  Information concerning the reporting requirements for items identified in paragraphs (c)(1) and (2) of this section is available from the

30

Office of Nonproliferation and Treaty Compliance (NPTC), Tel.: (202) 482-4188, Fax: (202) 482-4145.

## PART 744 – CONTROL POLICY: END-USER AND END-USE BASED

23.  The authority citation for 15 CFR part 744 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4582; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 22 U.S.C. 3201 et seq.; 42 U.S.C. 2139a; 22 U.S.C. 7201 et seq.; 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of September 19, 2018, 83 FR 47799 (September 20, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of January 16, 2019, 84 FR 127 (January 18, 2019).

## § 744.9 [AMENDED]

24.  Section 744.9 is amended by removing "0A987" from paragraphs (a)(1) and (b) and adding in its place "0A504".

## PART 746 – EMBARGOES AND OTHER SPECIAL CONTROLS

25.  The authority citation for 15 CFR part 746 is revised to read as follows:

31

WASHSTATEC004983

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 287c; Sec 1503, Pub. L. 108-11, 117 Stat. 559; 22 U.S.C. 6004; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 12854, 58 FR 36587, 3 CFR, 1993 Comp., p. 614; E.O. 12918, 59 FR 28205, 3 CFR, 1994 Comp., p. 899; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p 168; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Presidential Determination 2007-7, 72 FR 1899, 3 CFR, 2006 Comp., p. 325; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

## § 746.3 [AMENDED]

26.  Section 746.3 is amended by removing "0A986" from paragraph (b)(2) and adding in its place "0A505.c".

## § 746.7 [AMENDED]

27.  Section 746.7 is amended in paragraph (a)(1) by:

a. Adding "0A503," immediately before "0A980"; and

b. Removing "0A985,".

## PART 748 – APPLICATIONS (CLASSIFICATION, ADVISORY, AND LICENSE) AND DOCUMENTATION

28.  The authority citation for 15 CFR part 748 is revised to read as follows:

WASHSTATEC004984

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

29.  Section 748.12 is amended by:

a. Revising the heading;

b. Adding introductory text;

c. Revising paragraphs (a) introductory text and (a)(1);

d. Redesignating the note to paragraph (c)(8) as note 1 to paragraph (c)(8); and

e. Adding paragraph (e).

The revisions and additions read as follows.

**§ 748.12 Firearms import certificate or import permit.**

License applications for certain firearms and related commodities require support documents in accordance with this section.  For destinations that are members of the Organization of American States (OAS), an FC Import Certificate or equivalent official document is required in accordance with paragraphs (a) through (d) of this section.  For other destinations that require a firearms import or permit, the firearms import certificate or permit is required in accordance with paragraph (e) of this section.

WASHSTATEC004985

(a) *Requirement to obtain document for OAS member states.* Unless an exception in § 748.9(c) applies, an FC Import Certificate is required for license applications for firearms and related commodities, regardless of value, that are destined for member countries of the OAS.  This requirement is consistent with the OAS Model Regulations described in § 742.17 of the EAR.

(1)  *Items subject to requirement.* Firearms and related commodities are those commodities controlled for "FC Column 1" reasons under ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), or 0A505 (except 0A505.d).

\*   \*   \*   \*   \*

(e)  *Requirement to obtain an import certificate or permit for other than OAS member states.*  If the country to which firearms, parts, components, accessories, and attachments controlled under ECCN 0A501, or ammunition controlled under ECCN 0A505, are being exported or reexported requires that a government-issued certificate or permit be obtained prior to importing the commodity, the exporter or reexporter must obtain and retain on file the original or a copy of that certificate or permit before applying for an export or reexport license unless:

(1)  A license is not required for the export or reexport; or

(2)  The exporter is required to obtain an import or end-user certificate or other equivalent official document pursuant to paragraphs (a) thorough (d) of this section and has, in fact, complied with that requirement.

(3)(i) The number or other identifying information of the import certificate or permit must be stated on the license application.

WASHSTATEC004986

(ii) If the country to which the commodities are being exported does not require an import certificate or permit for firearms imports, that fact must be noted on any license application for ECCN 0A501 or 0A505 commodities.

*Note 2 to paragraph (e).*  *Obtaining a BIS Statement by Ultimate Consignee and Purchaser pursuant to § 748.11 of the EAR does not exempt the exporter or reexporter from the requirement to obtain a certification pursuant to paragraph (a) of this section because that statement is not issued by a government.*

30. Supplement No. 2 to part 748 (Unique Application and Submission Requirements) is amended by adding paragraph (z) to read as follows:

## SUPPLEMENT NO. 2 TO PART 748 - UNIQUE APPLICATION AND SUBMISSION REQUIREMENTS

*   *   *   *   *

(z) *Exports of firearms and certain shotguns temporarily in the United States.*

(1) *Certification.*  If you are submitting a license application for the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that will be temporarily in the United States, *e.g.*, for servicing and repair or for intransit shipments, you must include the following certification in Block 24:

The firearms in this license application will not be shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or

35

WASHSTATEC004987

Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740.  I and the parties to this transaction will comply with the requirements specified in paragraph (z)(2)(i) and (ii) of Supplement No. 2 to part 748.

(2) *Requirements*.  Each approved license for commodities described under paragraph (z) must comply with the requirements specified in paragraphs (z)(2)(i) and (ii) of this supplement.

(i) When the firearms enter the U.S. as a temporary import, the temporary importer or its agent must:

(A) Provide the following statement to U.S. Customs and Border Protection: "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(B) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address, and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

36

WASHSTATEC004988

(ii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (z)(2)(i)(B) of this supplement to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (z): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (z), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

## PART 758 – EXPORT CLEARANCE REQUIREMENTS

31.  The authority citation for part 758 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

32.  Section 758.1 is amended by:

a. Revising paragraphs (b)(7) (8), and adding paragraph (b)(9);

b. Revising paragraph (c)(1);

c. Adding Note 1 to paragraph (c)(1);

c. Adding paragraph (g)(4); and

WASHSTATEC004989

d. Redesignating Note to paragraph (h)(1) as Note 3 to paragraph (h)(1); to read as follows:

**§ 758.1 The Electronic Export Enforcement (EEI) filing to the Automated Export System (AES).**

\* \* \* \* \*

(b) \* \* \*

(7) For all items exported under authorization Validated End-User (VEU);

(8) For all exports of tangible items subject to the EAR where parties to the transaction, as described in § 748.5(d) through (f) of the EAR, are listed on the Unverified List (Supplement No. 6 to part 744 of the EAR), regardless of value or destination; or

(9) For all exports, except for exports authorized under License Exception BAG, as set forth in §740.14 of the EAR, of items controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada.

(c) \* \* \*

(1) License Exception Baggage (BAG), as set forth in §740.14 of the EAR. See 15 CFR 30.37(x) of the FTR;

*Note 1 to paragraph (c)(1): See the export clearance requirements for exports of firearms controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18*

38

WASHSTATEC004990

*inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505,*

*authorized under License Exception BAG, as set forth in §740.14 of the EAR.*

\* \* \* \* \*

(g) \* \* \*

(4) *Exports of Firearms and Related Items.*  This paragraph (g)(4) includes two separate

requirements under paragraph (g)(4)(i) and (ii) of this section that are used to better identify

exports of certain end item firearms under the EAR.  Paragraph (g)(4)(i) is limited to certain

EAR authorizations.  Paragraph (g)(4)(ii) applies to all EAR authorizations that require EEI

filing in AES.

(i) *Identifying end item firearms by manufacturer, model, caliber, and serial number in the EEI*

*filing in AES.*  For any export authorized under License Exception TMP or a BIS license

authorizing a temporary export of items controlled under ECCNs 0A501.a or .b, or shotguns with

a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other

required data for the associated EEI filing, you must report the manufacturer, model, caliber, and

serial number of the exported items.  The requirements of this paragraph also apply to any other

export authorized under a BIS license that includes a condition or proviso on the license

requiring the submission of this information specified in paragraph (g) of this section when the

EEI is filed in AES.

(ii) *Identifying end item firearms by "items" level classification or other control descriptor in the*

*EEI filing in AES.*  For any export of items controlled under ECCNs 0A501.a or .b, or shotguns

with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other

WASHSTATEC004991

required data for the associated EEI filing, you must include the six character ECCN classification (*i.e.*, 0A501.a, or 0A501.b), or for shotguns controlled under 0A502 the phrase "0A501 barrel length less than 18 inches" as the first text to appear in the Commodity description block in the EEI filing in AES.  (*See* § 743.4(h) for the use of this information for conventional arms reporting).

      **Note 2 to paragraph (g)(4):** *If a commodity described in paragraph (g)(4) is exported under License Exception TMP under § 740.9(a)(6) for inspection, test, calibration, or repair is not consumed or destroyed in the normal course of authorized temporary use abroad, the commodity must be disposed of or retained in one of the ways specified in § 740.9(a)(14)(i), (ii), or (iii).  For example, if a commodity described in paragraph (g)(4) was destroyed while being repaired after being exported under § 740.9(a)(6), the commodity described in paragraph (g)(4) would not be required to be returned.  If the entity doing the repair returned a replacement of the commodity to the exporter from the United States, the import would not require an EAR authorization.  The entity that exported the commodity described in paragraph (g)(4) and the entity that received the commodity would need to document this as part of their recordkeeping related to this export and subsequent import to the United States.*

\*   \*   \*   \*   \*

    33.  Add § 758.10 to read as follows:

**§ 758.10  Entry clearance requirements for temporary imports.**

(a) *Scope*.  This section specifies the temporary import entry clearance requirements for firearms "subject to the EAR" that are on the United States Munitions Import List (USMIL, 27 CFR

40

WASHSTATEC004992

447.21), except for firearms "subject to the EAR" that are temporarily brought into the United States by nonimmigrant aliens under the provisions of Department of Justice regulations at 27 CFR part 478 (*See* § 740.14(e) of License Exception BAG for information on the export of these firearms "subject to the EAR").  These firearms are controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.  Items that are temporarily exported under the EAR must have met the export clearance requirements specified in § 758.1 of the EAR.

(1) An authorization under the EAR is *not* required for the temporary import of "items" that are "subject to the EAR," including for "items" "subject to the EAR" that are on the USMIL. Temporary imports of firearms described in this section must meet the entry clearance requirements specified in paragraph (b) of this section.

 (2) Permanent imports are regulated by the Attorney General under the direction of the Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (see 27 CFR parts 447, 478, 479, and 555).

(b) *EAR procedures for temporary imports and subsequent exports.*  To the satisfaction of U.S. Customs and Border Protection, the temporary importer must comply with the following procedures:

(1) At the time of entry into the U.S. of the temporary import:

(i) Provide one of the following statements specified in paragraphs (b)(1)(i)(A), (B), or (C) of this section to U.S. Customs and Border Protection:

41

WASHSTATEC004993

(A) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of License Exception TMP (15 CFR 740.9(b)(5));"

(B) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b));" or

(C) "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(ii) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value;

(iii) Provide (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States;

(iv) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

42

*Note 1 to paragraph (b)(1):* In accordance with the exclusions in License Exception TMP under § 740.9(b)(5) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country; or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under § 740.9(b)(5).

*Note 2 to paragraph (b)(1):* In accordance with the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured inin Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR.

(2) At the time of export, in accordance with the U.S. Customs and Border Protection procedures, the eligible exporter, or an agent acting on the filer's behalf, must as required under § 758.1(b)(9) of the EAR file the export information with CBP by filing EEI in AES, noting the

WASHSTATEC004995

applicable EAR authorization as the authority for the export, and provide, upon request by CBP, the entry document number or a copy of the CBP document under which the "item" subject to the EAR" on the USMIL was temporarily imported.  *See* also the additional requirements in § 758.1(g)(4).

34.  Add § 758.11 to read as follows:

**§ 758.11  Export clearance requirements for firearms and related items.**

(a)  *Scope.*  The export clearance requirements of this section apply to all exports of commodities controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada, that are authorized under License Exception BAG, as set forth in §740.14.

(b) *Required form.*  Prior to making any export described in paragraph (a) of this section, the exporter is required to submit a properly completed Department of Homeland Security, CBP Form 4457, (Certificate of Registration for Personal Effects Taken Abroad) (OMB Control Number 1651-0010), to the U.S. Customs and Border Protection (CBP), pursuant to 19 CFR 148.1, and as required by this section of the EAR.

(1) Where to obtain the form?  The CBP Certification of Registration Form 4457 can be found on the following CBP website:

44

WASHSTATEC004996

https://www.cbp.gov/document/forms/form-4457-certificate-registration-personal-effects-taken-abroad

(2) Required "description of articles" for firearms to be included on the CBP Form 4457.  For all exports of firearms controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, the exporter must provide to CBP the serial number, make, model, and caliber for each firearm being exported by entering this information under the "Description of Articles" field of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad.

(c) *Where to find additional information on the CBP Form 4457*?

*See* the following CBP website page for additional information:

https://help.cbp.gov/app/answers/detail/a_id/323/~/traveling-outside-of-the-u.s.---temporarily-taking-a-firearm%2C-rifle%2C-gun%2C.

(d) *Return of items exported pursuant to this section*.  The exporter when returning with a commodity authorized under License Exception BAG and exported pursuant this section, is required to present a copy of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad) (OMB Control Number 1651-0010), to CBP, pursuant to 19 CFR 148.1, and as required by this section of the EAR.

## PART 762 – RECORDKEEPING

35.  The authority citation for part 762 is revised to read as follows:

45

WASHSTATEC004997

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

36.   Section 762.2 is amended by removing "and," at the end of paragraph (a)(10), redesignating paragraph (a)(11) as paragraph (a)(12), and adding a new paragraph (a)(11) to read as follows:

**§ 762.2 Records to be retained.**

(a)  *   *   *

(11) The serial number, make, model, and caliber for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502 that have been exported.  The "exporter" or any other party to the transaction (*see* § 758.3 of the EAR), that creates or receives such records is a person responsible for retaining this record; and

*   *   *   *   *

37.   Section 762.3 is amended by revising paragraph (a)(5) to read as follows:

**§ 762.3 Records exempt from recordkeeping requirements.**

(a)  *   *   *

46

(5)  Warranty certificate, except for a warranty certificate issued for an address located outside the United States for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502;

*  *  *  *  *


## PART 772 – DEFINITIONS OF TERMS

38.  The authority citation for part 772 is revised to read as follows:

**Authority:**  50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

## § 772.1 – [AMENDED]

39.  In § 772.1, in the definition of "specially designed," Note 1 is amended by removing "0B986" and adding in its place "0B505.c"; and the definition of "complete breech mechanisms" is added as set forth below:

## § 772.1 Definitions of terms as used in the Export Administration Regulations (EAR).

*  *  *  *  *

*Complete breech mechanisms*.  The mechanism for opening and closing the breech of a breech-loading firearm, especially of a heavy-caliber weapon.

*  *  *  *  *

WASHSTATEC004999

**PART 774 - THE COMMERCE CONTROL LIST**

40. The authority citation for 15 CFR part 774 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 10 U.S.C. 7420; 10 U.S.C. 7430(e); 22 U.S.C. 287c, 22 U.S.C. 3201 *et seq.*; 22 U.S.C. 6004; 42 U.S.C. 2139a; 15 U.S.C. 1824a; 50 U.S.C. 4305; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

41. In Supplement No. 1 to part 774, Category 0, revise Export Control Classification Number (ECCN) 0A018 to read as follows:

**Supplement No. 1 to Part 774 – The Commerce Control List**

\* \* \* \* \*

**0A018 Items on the Wassenaar Munitions List (see List of Items Controlled).**

No items currently are in this ECCN. See ECCN 0A505 for "parts" and "components" for ammunition that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b.

WASHSTATEC005000

42.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A018 and 0A521, entries for ECCNs 0A501, 0A502, 0A503, 0A504, and 0A505 to read as follows:

**0A501 Firearms (except 0A502 shotguns) and related commodities as follows (see List of Items controlled).**

**License Requirements**

*Reason for Control:* NS, RS, FC, UN, AT

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
|---|---|
| NS applies to entire entry except 0A501.y | NS Column 1 |
| RS applies to entire entry except 0A501.y | RS Column 1 |
| FC applies to entire entry except 0A501.y | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

*License Requirement Note:* In addition to using the Commerce Country Chart to determine license requirements, a license is required for exports and reexports of ECCN 0A501.y.7 firearms to the People's Republic of China.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*  $500 for 0A501.c, .d, and .x.

49

WASHSTATEC005001

$500 for 0A501.c, .d, .e, and .x if the ultimate destination is Canada.

*GBS*: N/A

*CIV*: N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in this entry.

**List of Items Controlled**

*Related Controls*: (1) Firearms that are fully automatic, and magazines with a capacity of greater than 50 rounds, are "subject to the ITAR."  (2) See ECCN 0A502 for shotguns and their "parts" and "components" that are subject to the EAR.  Also see ECCN 0A502 for shot-pistols.  (3) See ECCN 0A504 and USML Category XII for controls on optical sighting devices.

*Related Definitions*: N/A

*Items*:

a.       Non-automatic and semi-automatic firearms equal to .50 caliber (12.7 mm) or less.

WASHSTATEC005002

*Note 1 to paragraph 0A501.a:* '*Combination pistols' are controlled under ECCN 0A501.a. A 'combination pistol' (a.k.a., a combination gun) has at least one rifled barrel and at least one smoothbore barrel (generally a shotgun style barrel).*

b.      Non-automatic and non-semi-automatic rifles, carbines, revolvers or pistols with a caliber greater than .50 inches (12.7 mm) but less than or equal to .72 inches (18.0 mm).

c.      The following types of "parts" and "components" if "specially designed" for a commodity controlled by paragraph .a or .b of this entry, or USML Category I (unless listed in USML Category I(g) or (h)):  barrels, cylinders, barrel extensions, mounting blocks (trunnions), bolts, bolt carriers, operating rods, gas pistons, trigger housings, triggers, hammers, sears, disconnectors, pistol grips that contain fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors) and buttstocks that contain fire control "parts" or "components."

d.      Detachable magazines with a capacity of greater than 16 rounds "specially designed" for a commodity controlled by paragraph .a or .b of this entry.

*Note 2 to paragraph 0A501.d:* *Magazines with a capacity of 16 rounds or less are controlled under 0A501.x.*

e.      Receivers (frames) and "complete breech mechanisms," including castings, forgings stampings, or machined items thereof, "specially designed" for a commodity by controlled by paragraph .a or .b of this entry.

f. through w. [Reserved]

51

WASHSTATEC005003

x.      "Parts" and "components" that are "specially designed" for a commodity classified under paragraphs .a through .c of this entry or the USML and not elsewhere specified on the USML or CCL.

y.      Specific "parts," "components," "accessories" and "attachments" "specially designed" for a commodity subject to control in this ECCN or common to a defense article in USML Category I and not elsewhere specified in the USML or CCL as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor.

y.1.      Stocks or grips, that do not contain any fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors);"

y.2.      Scope mounts or accessory rails;

y.3.      Iron sights;

y.4.      Sling swivels;

y.5.      Butt plates or recoil pads;

y.6.      Bayonets; and

y.7.      Firearms manufactured from 1890 to 1898 and reproductions thereof.

***Technical Note 1 to 0A501:*** *The controls on "parts" and "components" in ECCN 0A501 include those "parts" and "components" that are common to firearms described in ECCN 0A501 and to those firearms "subject to the ITAR."*

52

*Note 3 to 0A501:*  *Antique firearms (i.e., those manufactured before 1890) and reproductions thereof, muzzle loading black powder firearms except those designs based on centerfire weapons of a post 1937 design, BB guns, pellet rifles, paint ball, and all other air rifles are EAR99 commodities.*

*Note 4 to 0A501: Muzzle loading (black powder) firearms with a caliber less than 20 mm that were manufactured later than 1937 that are used for hunting or sporting purposes that were not "specially designed" for military use and are not "subject to the ITAR" nor controlled as shotguns under ECCN 0A502 are EAR99 commodities.*

**0A502 Shotguns; shotguns "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes; "complete breech mechanisms;" except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use.**

**License Requirements**

*Reason for Control*:   RS, CC, FC, UN, AT, NS

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
|---|---|
| NS applies to shotguns with a barrel length less than 18 inches (45.72 cm) | NS Column 1 |
| RS applies to shotguns with a barrel | RS Column 1 |

WASHSTATEC005005

| | |
|---|---|
| length less than 18 inches (45.72 cm) | |
| FC applies to entire entry | FC Column 1 |
| CC applies to shotguns with a barrel length less than 24 in. (60.96 cm) and shotgun "components" controlled by this entry regardless of end user | CC Column 1 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm), regardless of end user | CC Column 2 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm) if for sale or resale to police or law enforcement | CC Column 3 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to shotguns with a barrel length less than 18 inches (45.72 cm) | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   $500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes.

$500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes, "complete breech

54

WASHSTATEC005006

mechanisms" if the ultimate destination is Canada.

*GBS:*   N/A

*CIV:*   N/A


**List of Items Controlled**

*Related Controls*:  Shotguns that are fully automatic are "subject to the ITAR."

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**Note 1 to 0A502:** *Shotguns made in or before 1898 are considered antique shotguns and designated as EAR99.*

**Technical Note:** *Shot pistols or shotguns that have had the shoulder stock removed and a pistol grip attached are controlled by ECCN 0A502.  Slug guns are also controlled under ECCN 0A502.*


**0A503 Discharge type arms; non-lethal or less-lethal grenades and projectiles, and "specially designed" "parts" and "components" of those projectiles; and devices to administer electric shock, for example, stun guns, shock batons, shock shields, electric cattle prods, immobilization guns and projectiles; except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use; and "specially designed" "parts" and "components," n.e.s.**


**License Requirements**

*Reason for Control:*  CC, UN

55

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | A license is required for ALL destinations, except Canada, regardless of end use. Accordingly, a column specific to this control does not appear on the Commerce Country Chart. (See part 742 of the EAR for additional information). |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   N/A

*GBS:*   N/A

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*: Law enforcement restraint devices that administer an electric shock are controlled under ECCN 0A982. Electronic devices that monitor and report a person's location to enforce restrictions on movement for law enforcement or penal reasons are controlled under ECCN 3A981.

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

WASHSTATEC005008

**0A504 Optical sighting devices for firearms (including shotguns controlled by 0A502); and "components" as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* FC, RS, CC, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| RS applies to paragraph .i | RS Column 1 |
| FC applies to paragraphs .a, .b, .c, d, .e, .g, and .i of this entry | FC Column 1 |
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See §746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $500 for 0A504.g.

*GBS:* N/A

*CIV:* N/A

**List of Items Controlled**

*Related Controls:* (1) See USML Category XII(c) for sighting devices using second generation image intensifier tubes having luminous sensitivity greater than 350 μA/lm, or third generation or higher image intensifier tubes, that are "subject to the ITAR." (2) See USML Category XII(b) for laser aiming or laser illumination systems "subject to the ITAR." (3) Section 744.9 of the EAR imposes a license requirement on certain commodities described in

57

WASHSTATEC005009

0A504 if being exported, reexported, or transferred (in-country) for use by a military end-user or for incorporation into an item controlled by ECCN 0A919.

*Related Definitions:* N/A

*Items:*

a.      Telescopic sights.

b.      Holographic sights.

c.      Reflex or "red dot" sights.

d.      Reticle sights.

e.      Other sighting devices that contain optical elements.

f.      Laser aiming devices or laser illuminators ''specially designed'' for use on firearms, and having an operational wavelength exceeding 400 nm but not exceeding 710 nm.


*Note 1 to 0A504.f: 0A504.f does not control laser boresighting devices that must be placed in the bore or chamber to provide a reference for aligning the firearms sights.*


g.      Lenses, other optical elements and adjustment mechanisms for articles in paragraphs .a, .b, .c, .d, .e, or .i.

h.      [Reserved]

i.      Riflescopes that were not "subject to the EAR" as of [INSERT DATE ONE DAY PRIOR TO THE EFFECTIVE DATE OF THE FINAL RULE] and are "specially designed" for use in firearms that are "subject to the ITAR."

58

WASHSTATEC005010

*Note 2 to paragraph i:* For purpose of the application of "specially designed" for the riflescopes controlled under 0A504.i, paragraph (a)(1) of the definition of "specially designed" in § 772.1 of the EAR is what is used to determine whether the riflescope is "specially designed."

**0A505  Ammunition as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, CC, FC, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to 0A505.a and .x | NS Column 1 |
| RS applies to 0A505.a and .x | RS Column 1 |
| CC applies to 0A505.b | CC Column 1 |
| FC applies to entire entry except 0A505.d | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to 0A505.a, .d,  and .x | AT Column 1 |
| AT applies to 0A505.c | A license is required for items controlled by paragraph .c of this entry to North Korea for anti-terrorism reasons.  The Commerce Country Chart is not designed to determine AT licensing requirements for this entry.  See §742.19 of the EAR for additional information. |

59

WASHSTATEC005011

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500 for items in 0A505.x, except $3,000 for items in 0A505.x that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b. (*i.e.*, "Specially designed" components and parts for ammunition, except cartridge cases, powder bags, bullets, jackets, cores, shells, projectiles, boosters, fuses and components, primers, and other detonating devices and ammunition belting and linking machines (all of which are "subject to the ITAR"). (See 22 CFR parts 120 through 130))

*GBS*: N/A

*CIV*: N/A

**Special conditions for STA**

*STA*: Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A505.

**List of Items Controlled**

*Related Controls*:  (1) Ammunition for modern heavy weapons such as howitzers, artillery, cannon, mortars and recoilless rifles as well as inherently military ammunition types such as ammunition preassembled into links or belts, caseless ammunition, tracer ammunition, ammunition with a depleted uranium projectile or a projectile with a hardened tip or core and ammunition with an explosive projectile are "subject to the ITAR."  (2) Percussion caps, and lead balls and bullets, for use with muzzle-loading firearms are EAR99 items.

*Related Definitions*:  N/A

60

*Items*:

a.      Ammunition for firearms controlled by ECCN 0A501 or USML Category I and not enumerated in paragraph .b, .c, or .d of this entry or in USML Category III.

b.      Buckshot (No. 4 .24'' diameter and larger) shotgun shells.

c.      Shotgun shells (including less than lethal rounds) that do not contain buckshot; and "specially designed" "parts" and "components" of shotgun shells.

   ***Note 1 to 0A505.c:***  *Shotgun shells that contain only chemical irritants are controlled under ECCN 1A984.*

d.      Blank ammunition for firearms controlled by ECCN 0A501 and not enumerated in USML Category III.

e. through w. [Reserved]

x.      "Parts" and "components" that are "specially designed" for a commodity subject to control in this ECCN or a defense article in USML Category III and not elsewhere specified on the USML, the CCL or paragraph .d of this entry.

   ***Note 2 to 0A505.x:***  *The controls on "parts" and "components" in this entry include Berdan and boxer primers, metallic cartridge cases, and standard metallic projectiles such as full metal jacket, lead core, and copper projectiles.*

WASHSTATEC005013

*Note 3 to 0A505.x:*   *The controls on "parts" and "components" in this entry include those "parts" and "components" that are common to ammunition and ordnance described in this entry and to those enumerated in USML Category III.*

*Note 4 to 0A505: Lead shot smaller than No. 4 Buckshot, empty and unprimed shotgun shells, shotgun wads, smokeless gunpowder, 'Dummy rounds' and blank rounds (unless linked or belted), not incorporating a lethal or non-lethal projectile(s) are designated EAR99.  A 'dummy round or drill round' is a round that is completely inert, i.e., contains no primer, propellant, or explosive charge.  It is typically used to check weapon function and for crew training.*

43.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A521 and 0A604, an entry for ECCN 0A602 to read as follows:

**0A602  Guns and Armament as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |

62

WASHSTATEC005014

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA:*  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A602.

**List of Items Controlled**

*Related Controls*: (1) Modern heavy weapons such as howitzers, artillery, cannon, mortars, and recoilless rifles are "subject to the ITAR."  (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.  (3) See ECCN 0A606 for engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or USML Category VII.

63

WASHSTATEC005015

*Related Definitions*:  N/A

*Items*:

a.     Guns and armament manufactured between 1890 and 1919.

b.     Military flame throwers with an effective range less than 20 meters.

c. through w.   [Reserved]

x.      "Parts" and "components" that are "specially designed" for a commodity subject to control in paragraphs .a or .b of this ECCN or a defense article in USML Category II and not elsewhere specified on the USML or the CCL.

   *Note 1 to 0A602.x: Engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or a defense article in USML Category VII are controlled under ECCN 0A606.x.*

   *Note 2 to 0A602:  "Parts," "components," "accessories," and "attachments" specified in USML subcategory II(j) are subject to the controls of that paragraph.*

   *Note 3 to 0A602:  Black powder guns and armament manufactured in or prior to 1890 and replicas thereof designed for use with black powder propellants are designated EAR99.*

**Supplement No. 1 to Part 774 – [AMENDED]**

WASHSTATEC005016

44.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0A918, 0A984, 0A985, 0A986, and 0A987.

45.  In Supplement No. 1 to part 774, Category 0, revise ECCN 0A988 to read as follows:

**0A988  Conventional military steel helmets.**

No items currently are in this ECCN.  See ECCN 1A613.y.1 for conventional steel helmets that, immediately prior to July 1, 2014, were classified under 0A988.

46.  In Supplement No. 1 to part 774, Category 0, add, before the entry for ECCN 0B521, entries for ECCNs 0B501 and 0B505 to read as follows:

**0B501 Test, inspection, and production "equipment" and related commodities for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A501 or USML Category I as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*:  NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except equipment | NS Column 1 |

WASHSTATEC005017

| | |
|---|---|
| for ECCN 0A501.y | |
| RS applies to entire entry except equipment for ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA:*  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any item in this entry.

**List of Items Controlled**

*Related Controls:* N/A

*Related Definitions:* N/A

*Items:*

66

WASHSTATEC005018

a.      Small arms chambering machines.

b.      Small arms deep hole drilling machines and drills therefor.

c.      Small arms rifling machines.

d.      Small arms spill boring machines.

e.      Production equipment (including dies, fixtures, and other tooling) "specially designed"

for the "production" of the items controlled in 0A501.a through .x. or USML Category I.

**0B505 Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A505 or USML Category III, except equipment for the hand loading of cartridges and shotgun shells, as follows (see List of Items Controlled).**

**License Requirements**

   *Reason for Control:* NS, RS, UN, AT

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
|---|---|
| NS applies to paragraphs .a and .x | NS Column 1 |
| RS applies to paragraphs .a and .x | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to paragraphs .a, .d, and .x | AT Column 1 |
| AT applies to paragraph .c | A license is required for export or reexport of |

67

| | these items to North Korea for anti-terrorism reasons. |
|---|---|

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA:*  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B505.

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

a.       Production equipment (including tooling, templates, jigs, mandrels, molds, dies, fixtures, alignment mechanisms, and test equipment), not enumerated in USML Category III that are "specially designed" for the "production" of commodities controlled by ECCN 0A505.a or .x or USML Category III.

b.       Equipment "specially designed" for the "production" of commodities in ECCN 0A505.b.

WASHSTATEC005020

c.      Equipment "specially designed" for the "production" of commodities in ECCN 0A505.c.

d.      Equipment "specially designed" for the "production" of commodities in ECCN 0A505.d.

e. through .w    [Reserved]

x.      "Parts" and "components" "specially designed" for a commodity subject to control in paragraph .a of this entry.

47.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0B521 and 0B604, an entry for ECCN 0B602 to read as follows:

**0B602 Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A602 or USML Category II as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |

69

WASHSTATEC005021

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*: Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B602.

**List of Items Controlled**

*Related Controls:* N/A

*Related Definitions:* N/A

*Items:*

a.      The following commodities if "specially designed" for the "development" or "production" of commodities enumerated in ECCN 0A602.a or USML Category II:

a.1.    Gun barrel rifling and broaching machines and tools therefor;

a.2.    Gun barrel rifling machines;

70

WASHSTATEC005022

a.3.    Gun barrel trepanning machines;

a.4.    Gun boring and turning machines;

a.5.    Gun honing machines of 6 feet (183 cm) stroke or more;

a.6.    Gun jump screw lathes;

a.7.    Gun rifling machines; and

a.8.    Barrel straightening presses.

b.    Jigs and fixtures and other metal-working implements or accessories of the kinds exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

c.    Other tooling and equipment, "specially designed" for the "production" of items in ECCN 0A602 or USML Category II.

d.    Test and evaluation equipment and test models, including diagnostic instrumentation and physical test models, "specially designed" for items in ECCN 0A602 or USML Category II.

**Supplement No. 1 to Part 774 – [AMENDED]**

48. In Supplement No. 1 to part 774, Category 0, remove ECCN 0B986.

49. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D001 and 0D521, entries for ECCNs 0D501 and 0D505 to read as follows:

71

WASHSTATEC005023

**0D501  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A501 or 0B501.**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | NS Column 1 |
| RS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

72

WASHSTATEC005024

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D501.

**List of Items Controlled**

*Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category I is "subject to the ITAR".

*Related Definitions*:  N/A

*Items*: The list of items controlled is contained in this ECCN heading.

**0D505  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A505 or 0B505.**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| | |

73

WASHSTATEC005025

| | |
|---|---|
| NS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a .and .x | NS Column 1 |
| RS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a and .x | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to "software" for commodities in ECCN 0A505.a, .d, or .x and equipment in ECCN 0B505.a, .d, or .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D505.

**List of Items Controlled**

74

WASHSTATEC005026

*Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category III is "subject to the ITAR".

*Related Definitions*:  N/A

*Items*: The list of items controlled is contained in this ECCN heading.

50. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D521 and 0D604, an entry for ECCN 0D602 to read as follows:

**0D602  "Software" "specially designed" for the "development," "production," operation or maintenance of commodities controlled by 0A602 or 0B602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

75

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

    *CIV*:  N/A

    *TSR*:  N/A

**Special conditions for STA**

    *STA*:    Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0D602.

**List of Items Controlled**

    *Related Controls*:  (1) "Software" required for and directly related to articles enumerated in USML Category II is "subject to the ITAR".   (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.

    *Related Definitions*:  N/A

    *Items*:   "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by ECCN 0A602 and ECCN 0B602.

WASHSTATEC005028

51.  In Supplement No. 1 to part 774, Category 0, remove ECCN 0E018.

52.  In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E001 and 0E521, entries for ECCNs 0E501, 0E502, 0E504, and 0E505 to read as follows:

**0E501 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by 0A501 or 0B501 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

WASHSTATEC005029

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any "technology" in ECCN 0E501.

**List of Items Controlled**

*Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR."

*Related Definitions*: N/A

*Items*:

a.      "Technology" "required" for the "development" or "production" of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

b.      "Technology" "required" for the operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

WASHSTATEC005030

**0E502  "Technology" "required" for the "development" or "production" of commodities controlled by 0A502.**

**License Requirements**

*Reason for Control*:  CC, UN

| Controls | Country Chart (See Supp. No. 1 part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

*Related Controls*: Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

WASHSTATEC005031

**0E504 ''Technology'' ''required'' for the ''development'' or ''production'' of commodities controlled by 0A504 that incorporate a focal plane array or image intensifier tube.**

**License Requirements**

*Reason for Control:* RS, UN, AT

| Controls | Country Chart (See Supp. No. 1 part 738) |
|---|---|
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

WASHSTATEC005032

**0E505 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A505.**

**License Requirements**

*Reason for Control:* NS, RS, UN, CC, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505; and for "software" for that equipment and those commodities in 0D505 | NS Column 1 |
| RS applies to entire entry except "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in | RS Column 1 |

81

WASHSTATEC005033

| 0B505 and for "software" for those commodities and that equipment in 0D505 | |
|---|---|
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| CC applies to "technology" for the "development" or "production" of commodities in 0A505.b | CC Column 1 |
| AT applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a, .d, and .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

> *CIV*:  N/A

> *TSR*:  N/A

**Special conditions for STA**

> *STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "technology" in 0E505.

WASHSTATEC005034

**List of Items Controlled**

*Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category III are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in this ECCN heading.

53.  In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E521 and 0E604, an entry for ECCN 0E602:

**0E602  "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A602 or 0B602, or "software" controlled by 0D602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |

WASHSTATEC005035

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0E602.

**List of Items Controlled**

*Related Controls*:  Technical data directly related to articles enumerated in USML Category II are "subject to the ITAR."

*Related Definitions*: N/A

*Items*:  "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A602 or 0B602, or "software" controlled by ECCN 0D602.

84

WASHSTATEC005036

**Supplement No. 1 to Part 774 – [AMENDED]**

54.  In Supplement No. 1 to part 774, Category 0, remove ECCN 0E918.

55.  In Supplement No. 1 to part 774, Category 0, revise ECCN 0E982 to read as follows.

**0E982 "Technology" exclusively for the "development" or "production" of equipment controlled by 0A982 or 0A503.**

**License Requirements**

*Reason for Control:*   CC

| Control(s) |
|---|
| CC applies to "technology" for items controlled by 0A982 or 0A503.  A license is required for ALL destinations, except Canada, regardless of end use.  Accordingly, a column specific to this control does not appear on the Commerce Country Chart.  (See part 742 of the EAR for additional information.) |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

85

WASHSTATEC005037

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

**Supplement No. 1 to Part 774 – [AMENDED]**

56.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0E984 and 0E987.

57.  In Supplement No. 1 to part 774, Category 1, revise ECCN 1A984 to read as follows:

**1A984   Chemical agents, including tear gas formulation containing 1 percent or less of orthochlorobenzalmalononitrile (CS), or 1 percent or less of chloroacetophenone (CN), except in individual containers with a net weight of 20 grams or less; liquid pepper except when packaged in individual containers with a net weight of 3 ounces (85.05 grams) or less;**

86

WASHSTATEC005038

smoke bombs; non-irritant smoke flares, canisters, grenades and charges; and other pyrotechnic articles (excluding shotgun shells, unless the shotgun shells contain only chemical irritants) having dual military and commercial use, and "parts" and "components" "specially designed" therefor, n.e.s.

**License Requirements**

*Reason for Control*:   CC

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   N/A

*GBS:*   N/A

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

WASHSTATEC005039

58.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2B004 to read as follows:

**2B004 Hot "isostatic presses" having all of the characteristics described in the List of Items Controlled, and "specially designed" "components" and "accessories" therefor.**

**License Requirements**

*Reason for Control*:  NS, MT NP, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 2 |
| MT applies to entire entry | MT Column 1 |
| NP applies to entire entry, except 2B004.b.3 and presses with maximum working pressures below 69 MPa | NP Column 1 |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS*:   N/A

*GBS*:   N/A

88

WASHSTATEC005040

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*:   (1) See ECCN 2D001 for software for items controlled under this entry. (2) See ECCNs 2E001 ("development"), 2E002 ("production"), and 2E101 ("use") for technology for items controlled under this entry. (3) For "specially designed" dies, molds and tooling, see ECCNs 0B501, 0B602, 0B606, 1B003, 9B004, and 9B009.  (4) For additional controls on dies, molds and tooling, see ECCNs 1B101.d, 2B104, and 2B204.  (5) Also see ECCNs 2B117 and 2B999.a.

*Related Definitions*: N/A

*Items*:

a. A controlled thermal environment within the closed cavity and possessing a chamber cavity with an inside diameter of 406 mm or more; *and*

b. Having any of the following:

b.1. A maximum working pressure exceeding 207 MPa;

b.2. A controlled thermal environment exceeding 1,773 K (1,500 °C); *or*

89

WASHSTATEC005041

b.3. A facility for hydrocarbon impregnation and removal of resultant gaseous degradation products.

*Technical Note:   The inside chamber dimension is that of the chamber in which both the working temperature and the working pressure are achieved and does not include fixtures. That dimension will be the smaller of either the inside diameter of the pressure chamber or the inside diameter of the insulated furnace chamber, depending on which of the two chambers is located inside the other.*

59.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2B018 to read as follows:

**2B018  Equipment on the Wassenaar Arrangement Munitions List.**

No commodities currently are controlled by this entry.  Commodities formerly controlled by paragraphs .a through .d, .m, and .s of this entry are controlled in ECCN 0B606.  Commodities formerly controlled by paragraphs .e through .l of this entry are controlled by ECCN 0B602. Commodities formerly controlled by paragraphs .o through .r of this entry are controlled by ECCN 0B501.  Commodities formerly controlled by paragraph .n of this entry are controlled in ECCN 0B501 if they are "specially designed" for the "production" of the items controlled in ECCN 0A501.a through .x or USML Category I and controlled in ECCN 0B602 if they are of

WASHSTATEC005042

the kind exclusively designed for use in the manufacture of items in ECCN 0A602 or USML

Category II.

60.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2D018 to read as follows:

**2D018 "Software" for the "development," "production," or "use" of equipment controlled by 2B018.**

No software is currently controlled under this entry.  See ECCNs 0D501, 0D602, and 0D606 for software formerly controlled under this entry.

61.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E001 to read as follows:

**2E001 "Technology" according to the General Technology Note for the "development" of equipment or "software" controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999), or 2D (except 2D983, 2D984, 2D991, 2D992, or 2D994).**

**License Requirements**

*Reason for Control*:  NS, MT, NP, CB, AT

91

WASHSTATEC005043

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for items controlled by 2A001, 2B001 to 2B009, 2D001 or 2D002 | NS Column 1 |
| MT applies to "technology"   for items  controlled  by  2B004,  2B009,  2B104, 2B105,  2B109,  2B116,  2B117,  2B119  to 2B122, 2D001, or 2D101 for MT reasons | MT Column 1 |
| NP applies to "technology" for items controlled by 2A225, 2A226, 2B001, 2B004,   2B006,   2B007,   2B009,   2B104, 2B109,   2B116,   2B201,   2B204,   2B206, 2B207, 2B209, 2B225 to 2B233, 2D001, 2D002,  2D101,  2D201,  or  2D202  for  NP reasons | NP Column 1 |
| NP applies to "technology" for items controlled by 2A290, 2A291, or 2D290 for NP reasons | NP Column 2 |
| CB applies to "technology"   for equipment controlled by 2B350 to 2B352, valves controlled   by   2A226   having   the characteristics   of   those   controlled   by 2B350.g, and software controlled by 2D351 | CB Column 2 |

92

WASHSTATEC005044

| AT applies to entire entry | AT Column 1 |
|---|---|

## Reporting Requirements

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

## List Based License Exceptions (See Part 740 for a description of all license exceptions)

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

## Special Conditions for STA

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "development" of "software" specified in the License Exception STA paragraph in the License Exception section of ECCN 2D001 or for the "development" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

93

WASHSTATEC005045

**List of Items Controlled**

*Related Controls*: See also 2E101, 2E201, and 2E301

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

**Note 1 to 2E001:**  *ECCN 2E001 includes "technology" for the integration of probe systems into coordinate measurement machines specified by 2B006.a.*

62.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E002 to read as follows:

**2E002 "Technology" according to the General Technology Note for the "production" of equipment controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), or 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999).**

**License Requirements**

*Reason for Control*:  NS, MT, NP, CB, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for equipment | NS Column 1 |

94

WASHSTATEC005046

| | |
|---|---|
| controlled by 2A001, 2B001 to 2B009 | |
| MT applies to "technology" for equipment controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, or 2B119 to 2B122 for MT reasons | MT Column 1 |
| NP applies to "technology" for equipment controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233 for NP reasons | NP Column 1 |
| NP applies to "technology" for equipment controlled by 2A290 or 2A291 for NP reasons | NP Column 2 |
| CB applies to "technology" for equipment Controlled by 2B350 to 2B352 and for valves controlled by 2A226 having the characteristics of those controlled by 2B350.g | CB Column 2 |
| AT applies to entire entry | AT Column 1 |

**Reporting Requirements**

95

WASHSTATEC005047

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

**Special Conditions for STA**

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "production" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

96

WASHSTATEC005048

63. In Supplement No. 1 to part 774, Category 7, revise ECCN 7A611 to read as follows:

**7A611  Military fire control, laser, imaging, and guidance equipment, as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, MT, RS, AT, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738). |
|---|---|
| NS applies to entire entry except 7A611.y | NS Column 1 |
| MT applies to commodities in 7A611.a that meet or exceed the parameters in 7A103.b or .c | MT Column 1 |
| RS applies to entire entry except 7A611.y | RS Column 1 |
| AT applies to entire entry | AT Column 1 |
| UN applies to entire entry except 7A611.y | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

WASHSTATEC005049

*LVS:* $1500

*GBS:* N/A

*CIV:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 7A611.

**List of Items Controlled**

*Related Controls*: (1) Military fire control, laser, imaging, and guidance equipment that are enumerated in USML Category XII, and technical data (including software) directly related thereto, are subject to the ITAR. (2) See Related Controls in ECCNs 0A504, 2A984, 6A002, 6A003, 6A004, 6A005, 6A007, 6A008, 6A107, 7A001, 7A002, 7A003, 7A005, 7A101, 7A102, and 7A103. (3) See ECCN 3A611 and USML Category XI for controls on countermeasure equipment. (4) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S. origin "600 series" controlled content.

*Related Definitions*: N/A

*Items*:

a. Guidance or navigation systems, not elsewhere specified on the USML, that are "specially designed" for a defense article on the USML or for a 600 series item.

b. to w. [RESERVED]

WASHSTATEC005050

x. "Parts," "components," "accessories," and "attachments," including accelerometers, gyros, angular rate sensors, gravity meters (gravimeters), and inertial measurement units (IMUs), that are "specially designed" for defense articles controlled by USML Category XII or items controlled by 7A611, and that are NOT:

1. Enumerated or controlled in the USML or elsewhere within ECCN 7A611;

2. Described in ECCNs 6A007, 6A107, 7A001, 7A002, 7A003, 7A101, 7A102, or 7A103; or

3. Elsewhere specified in ECCN 7A611.y or 3A611.y.

y. Specific "parts," "components," "accessories," and "attachments" "specially designed" for a commodity subject to control in this ECCN or a defense article in Category XII and not elsewhere specified on the USML or in the CCL, as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor:

   y.1 [RESERVED]

Dated:

**Richard E. Ashooh**

*Assistant Secretary for Export Administration.*

99

<u>Summary of Revisions to USML Categories I, II, and III</u>

In 2009, the interagency began a review of the U.S. export control system, with the goal of strengthening national security and the competitiveness of key U.S. manufacturing and technology sectors by focusing on current threats, as well as adapting to the changing economic and technological landscape.  This review determined that the then-current export control system was overly complicated, contained too many redundancies, and, in trying to protect too much, diminished our ability to focus our efforts on the most critical national security priorities.

To this end, the Departments of State and Commerce have been reviewing and revising the two primary lists of controlled items, i.e., the United States Munitions List (USML) and the Commerce Control List (CCL).  A key strategy in the reform effort  has been to construct the lists so they positively identify the items they control.  Thus, for example, the USML lists the specific types of parts, components, accessories, and attachments that warrant control under the International Traffic in Arms Regulations (ITAR) rather than all generic "parts," "components," "accessories and attachments" that are in any way "specifically designed, modified, adapted, or configured" for a defense article, regardless of military significance (as is currently the case for unrevised USML categories).  All other generic parts, components, accessories, and attachments and the technology for their "production," "development," or "use" that are "specially designed" for an item formerly on the USML but not specifically identified on the USML will become subject to the jurisdiction of the Export Administration Regulations (EAR) and identified on its CCL.

In connection with this effort, the Department of State has published 26 final, or interim final, rules revising 18 of the 21 USML categories.  In May 2018, the Department of State published proposed revisions of the remaining three USML Categories, including Category I (firearms and related articles), II (guns and armaments) and III (ammunition and ordnance), which follow this model of utilizing a "positive list" for controls.  Articles that are not positively identified on the USML will continue to be controlled, albeit under the jurisdiction of the EAR.

In February 2019, the Department of State formally notified Congress of the transfer of jurisdictional control of certain classes of items in Categories, I, II, and III. The Department of State is submitting a new notification to Congress because the Department of Commerce has amended certain controls in its draft companion rule. In particular, in order to address concerns raised by some members of Congress and the public regarding certain access to 3D printing technology and

1

WASHSTATEC005052

software for firearms, the Department of Commerce has revised its draft final rule to make certain technology and software capable of producing firearms subject to the EAR when posted on the internet under specified circumstances.  The Department of State has not made any changes to the classes of items in Categories I, II, or III that it is proposing to remove from the USML from the time that the Department of State notified Congress in February 2019.

### Category I—Firearms and Related Articles

Paragraph (a) is revised by limiting the scope of the control to firearms using caseless ammunition. Non-automatic and semi-automatic firearms that do not use caseless ammunition will be controlled in Export Control Classification Number (ECCN) 0A501 on the CCL, except for firearms manufactured prior to 1890.

Paragraph (b) is non-substantively revised.

Paragraph (c) is revised by limiting the scope to firearms specially designed to integrate fire control, automatic tracking, or automatic firing (*e.g.*, Precision Guided Firearms). Other weapons that were controlled here will be controlled in ECCN 0A501.

Paragraph (d) is revised by limiting the scope to fully automatic shotguns. Other shotguns that were controlled here will be controlled in ECCN 0A502.

Paragraph (e) is revised by removing flash suppressors and moving certain parts and components for the remaining items in paragraph (e) to paragraph (h)(3). Flash suppressors will be controlled in ECCN 0A501.

Paragraph (f) is reserved. Riflescopes with night vision or infrared were moved to USML Category XII(c)(2) in 2016 through 81 FR 70340. All other rifle scopes that were controlled here will be controlled in ECCN 0A504.

Paragraph (g) is revised to more clearly delineate the major components of USML firearms that are controlled. The major parts and components of firearms that transition to the CCL will be controlled in ECCN 0A501.

Paragraph (h) is revised by adding four subparagraphs to specifically enumerate the articles controlled. The parts, components, accessories, and attachments of firearms that transition to the CCL will be controlled in ECCN

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005053

0A501, as will any parts, components, accessories, and attachments of USML firearms that are not listed in paragraphs (g) or (h).

Paragraph (i) is revised to add control for the classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data.

A new paragraph (x) has been added to USML Category I, allowing ITAR licensing on behalf of the Department of Commerce for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category XII and are described in the purchase documentation submitted with the application.

**Category II— Guns and Armament**

Paragraph (a) is revised by adding five subparagraphs to specifically enumerate the articles controlled, including adding a control for DOD-funded development guns and armaments and their specially designed parts and components. Two notes are added to paragraph (a) in order to exclude from the control certain items that do not warrant control on the USML. Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) will be controlled under ECCN 0A501. Black powder guns and armaments manufactured between 1890 and 1919 will be controlled under ECCN 0A602, except for black powder guns and armaments manufactured earlier than 1890.

Paragraph (b) is revised to control flame throwers based on the technical parameter of a range 20 meters or greater.

Paragraph (c) is reserved. The items that were controlled in this paragraph that warrant USML control are now described in paragraph (a)(4) and the rest are controlled in ECCN 0A602.

Paragraph (d) is revised to control specially designed kinetic energy weapons.

Paragraph (e) is revised to more specifically describe the items warranting control under this paragraph. Items that were controlled in this paragraph as being

3

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005054

for guns and armaments controlled in paragraph (c) that did not move to paragraph (a)(4) are controlled in ECCN 0A602.

Paragraph (f) is reserved. The items that were controlled here will be controlled in ECCN 0A606.

Paragraph (g) is reserved. The items that were controlled here will be controlled in ECCN 0B602.

Paragraph (h) is reserved. The items that were controlled here will be controlled in ECCN 0B602.

Paragraph (i) is reserved. The items that were controlled that continue to warrant USML control are moved to paragraphs (j)(9) and components therefor to (j)(10) and the rest will be controlled in ECCN 0B602.

Paragraph (j) is revised by adding seventeen subparagraphs to specifically enumerate the articles controlled. The parts, components, accessories, and attachments that are not listed in paragraph (j) will be controlled in ECCN 0A602.

Paragraph (k) is revised to add control for the classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data.

A new paragraph (x) has been added to USML Category II, allowing ITAR licensing on behalf of the Department of Commerce for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category XII and are described in the purchase documentation submitted with the application.

**Category III— Ammunition and Ordnance**

Paragraph (a) is revised by adding ten subparagraphs to specifically enumerate the articles controlled, including adding a control for DOD-funded development ammunition. Ammunition not described will be controlled under ECCN 0A505.  Black powder guns and armaments manufactured between 1890 and 1919 will be controlled under ECCN 0A602, except for black powder guns and armaments manufactured earlier than 1890.

4

WASHSTATEC005055

Paragraph (b) is revised to more specifically describe the items warranting control under this paragraph by identifying those items in two subparagraphs. Items that were controlled in this paragraph but do not meet the more specific description will be controlled in ECCN 0B505.

Paragraph (c) is reserved. The items that were controlled in this paragraph will be controlled in ECCN 0B505.

Paragraph (d) is revised by adding fifteen subparagraphs to specifically enumerate the articles controlled. Parts and components of USML ammunition that are not described will be controlled in ECCN 0A505.

Paragraph (e) is revised to add control for the classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data.

A new paragraph (x) has been added to USML Category II, allowing ITAR licensing on behalf of the Department of Commerce for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category XII and are described in the purchase documentation submitted with the application.

A new note is added to Category III to provide that ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber are not on the USML. These items will be controlled in ECCN 0A505. An additional new note is added to provide that grenades containing non-lethal or less lethal projectiles are not on the USML. These grenades will be controlled in ECCN 0A505.

For items that have transitioned to the CCL in a 600 series entry, transactions destined for countries subject to a U.S. arms embargo will *not* be eligible for license exceptions, except for License Exception GOV under EAR §740.11(b)(2)(ii).  Multilateral regime-controlled items moved from the USML to the CCL will retain their regime control parameters and reasons for control.

The Department of Commerce has created a License Exception Strategic Trade Authorization (STA, §740.20), which authorizes the export, re-export, and transfer (in-country) of certain items on the CCL to "countries of least concern" without a license (i.e., Argentina, Australia, Austria, Belgium, Bulgaria, Canada,

5

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005056

Croatia, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Ireland, Italy, Japan, Latvia, Lithuania, Luxembourg, Netherlands, New Zealand, Norway, Poland, Portugal, Romania, Slovakia, Slovenia, South Korea, Spain, Sweden, Switzerland, Turkey, and the United Kingdom).  Parts, components, accessories and attachments controlled under subparagraph "x" of the relevant ECCNs will be automatically available for this exception.  However, end-items that will be controlled under the new ECCNs will be subject to a "first time" license requirement.  Exporters will be able to request a determination on STA eligibility for these items concurrent with a license request. If the Departments of State, Defense, and Commerce all agree, the end-item would be separately posted, by model number, as eligible for STA in the future.  If the departments cannot reach consensus, the end-item would continue to require a license to all destinations except Canada.

Existing License Exceptions LVS (§740.3), TMP (§740.9), RPL (§740.10), and GOV (§740.11(b)(2)(ii) or (b)(2)(iii)) will be eligible for use for items controlled by these ECCNs.

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005057

UNCLASSIFIED

Categories I, II, and III MDE Transitioning to the CCL

| ITEM DESCRIPTION | CCL CONTROL | |
|---|---|---|
| Cartridge, 5.56mm M855A1 | CCL | ECCN 0A505.a |

UNCLASSIFIED

WASHSTATEC005058

Message

| | |
|---|---|
| **From:** | Marquis, Matthew R [MarquisMR@state.gov] |
| **Sent:** | 11/14/2019 3:14:11 PM |
| **To:** | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov]; Legal-PM-DL [Legal-PM-DL@state.gov] |
| **CC:** | PM-CPA [PM-CPA@state.gov]; Miller, Michael F [Millermf@state.gov] |
| **Subject:** | CPA Media Monitoring: New York Times: Blueprints for 3-D Printed Guns Cannot Be Posted Online, Judge Says |



## Blueprints for 3-D Printed Guns Cannot Be Posted Online, Judge Says
**By Mihir Zaveri**
**12 November 2019**

A federal judge in Washington State on Tuesday blocked the Trump administration from allowing blueprints for making plastic guns on 3-D printers to be posted on the internet, ruling that the move violated federal procedures.

The judge, Robert S. Lasnik of United States District Court in Seattle, said that the government violated federal law in July 2018, when the State Department said the blueprints could be posted online. The department previously held that export laws banning the foreign distribution of firearms prevented the publication of the blueprints.

Among the procedural steps the State Department should have followed was a requirement to give Congress advance notice of such an action, Judge Lasnik said. He said that the federal government did not offer a "reasoned explanation" for its reversal.

Judge Lasnik said in the 25-page order that the federal government "must do more than simply announce a contrary position."

"The Department of State concluded that the worldwide publication of computerized instructions for the manufacture of undetectable firearms was a threat to world peace and the national security interests of the United States and would cause serious and long-lasting harm to its foreign policy," Judge Lasnik said, referring to the department's earlier findings.

Tuesday's ruling, which is likely to be appealed, stoked a long, fierce debate over 3-D printed firearms. Proponents have asserted that there is a First Amendment right to publish such materials, while critics have argued that allowing 3-D printed firearms could lead to increased gun violence and allow criminals and terrorists to skirt gun control legislation.

Nineteen states and the District of Columbia sued last year over the State Department's move.

"It is baffling that the Trump Administration continued to work so hard to allow domestic abusers, felons and terrorists access to untraceable, undetectable 3D-printed guns," said Bob Ferguson, the attorney general of Washington, one of the states that sued the department.

Senator Edward J. Markey of Massachusetts, another state in the lawsuit, said on Twitter that the decision was "a victory for gun safety and the rule of law, and a defeat for Donald Trump, who is afraid to stand up and protect Americans from gun violence."

The White House did not immediately respond to requests for comment on Tuesday evening.

The State Department said Tuesday evening that it was "continuing to review the Washington court's order," and referred further questions to the Department of Justice, which has declined to comment.

Judge Lasnik's order came as the Trump administration is separately working on new rules to revise and streamline the process for exporting consumer firearms that some gun control advocates worry could increase the accessibility of 3-D printed guns.

Jonas Oransky, legal director for the gun control group Everytown for Gun Safety, said Judge Lasnik's ruling should push the government to "stand down from finalizing its rule that weakens oversight of downloadable gun blueprints."

Judge Lasnik's ruling also did not directly settle the First Amendment arguments raised by those who support the blueprints' publication because the State Department "has not attempted to justify its action as compelled by the First Amendment," the judge's order stated.

The roots of the case stretch back to 2012, when Defense Distributed, a nonprofit based in Austin, Texas, began publishing schematics for certain weapons on its website.

Cody Wilson, a champion of gun rights and anarchism from Texas who founded Defense Distributed, had claimed a First Amendment right to publish the blueprints. Mr. Wilson declined to comment on Tuesday.

Chad Flores, a lawyer for Defense Distributed, which is a party in the case, said that while federal procedures were important, the "Constitution is always paramount."

"With today's unprecedented ruling, a few rogue state officials have commandeered the State Department to do their unconstitutional bidding nationwide," Mr. Flores said. "Defense Distributed will be appealing and fully expects a swift reversal."

Since at least 2013, the State Department said it could regulate the blueprints and restricted their publication online. The State Department also asked Defense Distributed to remove some of the files it had uploaded, Judge Lasnik said.

Defense Distributed sued the State Department in 2015, spurring years of rulings and appeals until June 2018, when the State Department reversed itself and concluded the schematics did not violate controls meant to keep certain military technology out of the hands of the country's enemies.

A court-approved settlement in July 2018 between the State Department and Mr. Wilson ended the legal case and gave Mr. Wilson the right to distribute the schematics.

Then Washington and other states sued to prevent the publication. Judge Lasnik issued a temporary order against the Trump administration in July 2018.

Tuesday's ruling was a motion for summary judgment, meaning that the case would not have to go to trial, Mr. Ferguson said.

Link: https://www.nytimes.com/2019/11/12/us/3d-printed-guns-blueprints.html

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

WASHSTATEC005060

Phone:       202.647.6968
e-mail:      *MarquisMR@state.gov* |  Web: *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

Message

| | |
|---|---|
| **From**: | Marquis, Matthew R [MarquisMR@state.gov] |
| **Sent**: | 11/14/2019 3:16:19 PM |
| **To**: | PM-DTCP-Tasking-DL [PM-DTCP-Tasking-DL@state.gov]; Legal-PM-DL [Legal-PM-DL@state.gov] |
| **CC**: | PM-CPA [PM-CPA@state.gov]; Miller, Michael F [Millermf@state.gov] |
| **Subject**: | CPA Media Monitoring: The Verge: Trump deal to share 3D-printed gun blueprints online ruled 'unlawful' |



**Trump deal to share 3D-printed gun blueprints online ruled 'unlawful'**
**By James Vincent**
**13 November 2019**

A federal judge has struck down a decision by the Trump administration to allow blueprints for 3D-printed guns to be shared online.

In a ruling published Tuesday, Judge Robert Lasnik said the deal made in July last year was "arbitrary and capricious" and thus a violation of the federal Administrative Procedure Act and the Constitution.

The original deal was part of a settlement between the Justice Department and Texas-based nonprofit Defense Distributed, which garnered worldwide attention in 2013 with its claims to have created the world's first "100 percent 3D-printed gun." The dissemination of plans for the gun was blocked by the Obama administration, but last year Defense Distributed successfully sued the government and had the ban reversed, arguing that it was a free speech violation.

Lasnik's ruling has overturned this last decision, with the judge stating that previous arguments made against Defense Distributed by the Department of State — namely that "the manufacture of undetectable firearms was a threat to world peace and the national security interests of the United States" — still held. "Against these findings, the federal defendants offer nothing," said Lasnik.

The ruling was made as a summary judgement, meaning the case will not go to trial, but Defense Distributed says it will still appeal the decision.

"The First Amendment protects the freedom of speech from all abridgment, including indirect censorship efforts like this one," Chad Flores, a spokesperson for the nonprofit, told Bloomberg. "And states aren't allowed to commandeer the federal government to do their unconstitutional bidding, even under the guise of statutory technicalities."

Opposition to the Trump administration's decision came from numerous states, who argued that allowing plans for 3D-printed guns to be shared online endangered law enforcement and citizens alike.

"Without question, the release of step-by-step instructions for the production of untraceable and undetectable firearms would threaten the safety of not only our nation's residents, but people around the globe," said New York Attorney General Letitia James in a statement.

Bloomberg notes that the decision may still have limitations, given that Defense Distributed worked around a previous, temporary ban on downloading plans by simply mailing blueprints directly to customers. Said Flores: "The speech these states want so badly to censor is already on the internet and always will be."

Link: https://www.theverge.com/2019/11/13/20962658/3d-printed-gun-download-ban-reversed-trump-administration-defense-distributed

---

**Matthew Marquis**
Office of Congressional & Public Affairs
Bureau of Political-Military Affairs (PM/CPA)
U.S. Department of State

Phone:       202.647.6968
e-mail:        *MarquisMR@state.gov* |   Web:  *PM Homepage* |Twitter: *@StateDeptPM*

Stay connected with *State.gov*:



**Official**
UNCLASSIFIED

WASHSTATEC005063

Message

---

**From:**        Abraham, Liz (Federal) [LAbraham@doc.gov]
**Sent:**        11/14/2019 3:23:28 PM
**To:**          Khawam, Joseph N [KhawamJN@state.gov]
**Subject:**     FW: 38(f) Notification package submitted by State officially on 11/12/19. 30-day clock expires on 12/12/19.
**Attachments:** Tab Zc - November 2019 Congressional Notification - Line-in Line-out.pdf; Tab Zd - November 2019 Congressional Notification - Commerce Draft Final Rule.pdf; Tab Ze - November 2019 Congressional Notification - Summary of Revisions to USML.pdf; Tab Zf - November 2019 Congressional Notification - Proposed Controls for MDE.pdf; Tab Za - November 2019 Congressional Notification - Cover Letters.PDF; Tab Zb - November 2019 Congressional Notification - State Draft Final Rule.pdf


FYI.  What we received on the 38f notification.

Confidentiality Notice:  This e-mail message is intended only for the named recipients.  It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law.  If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited.  Please notify us immediately that you have received this message in error, and delete the message.

WASHSTATEC005064



United States Department of State

*Washington, D.C. 20520*

The Honorable
James E. Risch, Chairman
Committee on Foreign Relations
United States Senate
Washington, D.C. 201510

NOV 1 2 2019

Dear Mr. Chairman:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
    As stated.



**United States Department of State**

*Washington, D.C. 20520*

The Honorable
Robert Menendez, Ranking Member
Committee on Foreign Relations
United States Senate
Washington, DC 20510

NOV 1 2 2019

Dear Senator Menendez:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
    As stated.



**United States Department of State**

*Washington, D.C. 20520*

The Honorable
Eliot L. Engel, Chairman
Committee on Foreign Affairs
House of Representatives
Washington, DC 20515

NOV 1 2 2019

Dear Mr. Chairman:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
    As stated.

WASHSTATEC005067



United States Department of State

*Washington, D.C. 20520*

The Honorable
Michael T. McCaul, Ranking Member
Committee on Foreign Affairs
House of Representatives
Washington, DC 20515

NOV 1 2 2019

Dear Mr. McCaul:

Pursuant to Section 38(f)(1) of the Arms Export Control Act (22 U.S.C. 2778(f)(1)), the Department is transmitting herewith notification of the intention to transfer jurisdictional control of certain classes of item currently on the United States Munitions List (USML) to the Commerce Control List (CCL).

Attached for your reference are the following documents: a summary of the revisions to the USML; the final regulatory text of Categories I, II and III; line-in/line-out comparison of the current and revised USML Categories I, II and III; the Department of Commerce's revised companion regulatory text; and a summary of the controls for major defense equipment.

Sincerely,

Mary Elizabeth Taylor
Assistant Secretary
Bureau of Legislative Affairs

Enclosures:
    As stated.

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:**  Department of State.

**ACTION:**  Final rule.

**§ 121.1 The United States Munitions List.**

* * * * *

**Category I—Firearms and Related Articles**

*(a) Firearms using caseless ammunition.

*(b) Fully automatic firearms to .50 caliber (12.7 mm) inclusive.

*(c) Firearms specially designed to integrate fire control, automatic tracking, or automatic firing (*e.g.*, Precision Guided Firearms).

*Note to paragraph (c):* Integration does not include only attaching to the firearm or rail.

*(d) Fully automatic shotguns regardless of gauge.

*(e) Silencers, mufflers, and sound suppressors.

WASHSTATEC005069

(f) [Reserved]

(g) Barrels, receivers (frames), bolts, bolt carriers, slides, or sears specially designed for the articles in paragraphs (a), (b), and (d) of this category.

(h) Parts, components, accessories, and attachments, as follows:

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm;

(3) Parts and components specially designed for defense articles described in paragraphs (c) and (e); or

(4) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data. (*See* § 125.4 of this subchapter

2

WASHSTATEC005070

for exemptions.)

(j)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

**Category II—Guns and Armament**

(a) Guns and armament greater than .50 caliber (12.7 mm), as follows:

3

WASHSTATEC005071

*(1) Guns, howitzers, artillery, and cannons;

*(2) Mortars;

*(3) Recoilless rifles;

*(4) Grenade launchers; or

(5) Developmental guns and armament greater than .50 caliber (12.7 mm) funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

<div align="center">4</div>

WASHSTATEC005072

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flamethrowers with an effective range greater than or equal to 20 meters.

(c) [Reserved]

*(d) Kinetic energy weapon systems specially designed for destruction or rendering mission-abort of a target.

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire

5

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005073

modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

(e) Signature reduction devices specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category (*e.g.*, muzzle flash suppression devices).

(f)–(i) [Reserved]

(j) Parts, components, accessories, and attachments, as follows:

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

6

WASHSTATEC005074

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

7

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005075

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

8

WASHSTATEC005076

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), and (j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(l)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition and Ordnance**

9

WASHSTATEC005077

(a) Ammunition, as follows:

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

10

WASHSTATEC005078

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

(b) Ammunition/ordnance handling equipment specially designed for the articles controlled in this category, as follows:

11

WASHSTATEC005079

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]

(d) Parts and components for the articles in this category, as follows:

(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive;

(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

12

WASHSTATEC005080

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

13

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005081

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (*see* § 120.10 of this subchapter) and defense services (*see* § 120.9 of this subchapter) directly related to the defense articles enumerated in paragraphs (a), (b), and (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.)

(f)–(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

14

WASHSTATEC005082

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting, or popping.

*Note 3 to Category III:* Grenades containing non-lethal or less lethal projectiles are under the jurisdiction of the Department of Commerce.

15

WASHSTATEC005083

Billing Code 4710-25

**DEPARTMENT OF STATE**

**22 CFR Parts 121, 123, 124, 126, and 129**

**[Public Notice 10603]**

**RIN 1400-AE30**

**International Traffic in Arms Regulations: U.S. Munitions List**

**Categories I, II, and III**

**AGENCY:** Department of State.

**ACTION:** Final rule.

**§ 121.1 The United States Munitions List.**

* * * * *

**Category I—Firearms** and Related Articles

~~, **Close Assault Weapons and Combat Shotguns**~~

*(a) Firearms using caseless ammunition~~Nonautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)~~.

*(b) Fully automatic firearms to .50 caliber ~~inclusive~~ (12.7 mm) inclusive.

WASHSTATEC005084

*(c) Firearms <u>specially designed to integrate fire control, automatic</u>

<u>tracking, or automatic firing (*e.g.*, Precision Guided Firearms)</u>~~or other~~

~~weapons (e.g. insurgency-counterinsurgency, close assault weapons~~

~~systems) having a special military application regardless of caliber.~~

   *Note to paragraph (c):* <u>Integration does not include only attaching to the</u>

<u>firearm or rail.</u>


*(d) <u>Fully automatic shotguns regardless of gauge.</u>

~~Combat shotguns. This includes any shotgun with a barrel length less~~

~~than 18 inches.~~

*(e) Silencers, mufflers, <u>and </u>sound ~~and flash ~~suppressors ~~for the articles~~

~~in (a) through (d) of this category and their specifically designed, modified~~

~~or adapted components and parts.~~


(f) <u>[Reserved]</u>

~~Riflescopes manufactured to military specifications (See category XII(c)~~

~~for controls on night sighting devices.)~~

<u>*</u>(g) Barrels, ~~cylinders, ~~receivers (frames) <u>bolts, bolt carriers, slides, or</u>

<u>sears</u>~~or complete breech mechanisms~~ <u>specially designed </u>for the articles in

paragraphs (a)<u>, (b), and </u>~~through~~ (d) of this category.

2

WASHSTATEC005085

(h) ~~Components, p~~Parts, <u>components,</u> accessories<u>,</u> and attachments~~-~~<u>, as</u> <u>follows:</u>

~~for the articles in paragraphs (a) through (g) of this category.~~

<u>(1) Drum and other magazines for firearms to .50 caliber (12.7 mm)</u> <u>inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of</u> <u>the firearm, and specially designed parts and components therefor;</u>

<u>(2) Parts and components specially designed for conversion of a semi-</u> <u>automatic firearm to a fully automatic firearm;</u>

<u>(3) Parts and components specially designed for defense articles</u> <u>described in paragraphs (c) and (e); or</u>

<u>(4) Accessories or attachments specially designed to automatically</u> <u>stabilize aim (other than gun rests) or for automatic targeting, and specially</u> <u>designed parts and components therefor.</u>

(i) Technical data (~~as defined in~~<u>see</u> §120.10 of this subchapter) and defense services (~~as defined in~~<u>see</u> §120.9 of this subchapter) directly related to the defense articles described in ~~paragraphs (a) through (h) of~~ this category <u>and classified technical data directly related to items controlled in</u> <u>ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the</u> <u>classified technical data. (See § 125.4 of this subchapter for exemptions.)</u>

3

WASHSTATEC005086

~~Technical data directly related to the manufacture or production of any defense articles described elsewhere in this category that are designated as Significant Military Equipment (SME) shall itself be designated SME.~~

(j) – (w) [Reserved] ~~The following interpretations explain and amplify the terms used in this category and throughout this subchapter:~~

~~(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the action of an explosive or which may be readily converted to do so.~~

~~(2) A rifle is a shoulder firearm which can discharge a bullet through a rifled barrel 16 inches or longer.~~

~~(3) A carbine is a lightweight shoulder firearm with a barrel under 16 inches in length.~~

~~(4) A pistol is a hand-operated firearm having a chamber integral with or permanently aligned with the bore.~~

~~(5) A revolver is a hand-operated firearm with a revolving cylinder containing chambers for individual cartridges.~~

~~(6) A submachine gun, "machine pistol" or "machine gun" is a firearm originally designed to fire, or capable of being fired, fully automatically by a single pull of the trigger.~~

(x) Commodities, software, and technology subject to the EAR (see

4

§ 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x)*: Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (see § 123.1(b) of this subchapter).

*Note to Category I:* The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant;

(2) A fully automatic firearm or shotgun is any firearm or shotgun that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger; and

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

~~: This coverage by the U.S. Munitions List in paragraphs (a) through (i) of this category excludes any non-combat shotgun with a barrel length of 18 inches or longer, BB, pellet, and muzzle loading (black powder) firearms. This category does not cover riflescopes and sighting devices that are not~~

5

WASHSTATEC005088

~~manufactured to military specifications. It also excludes accessories and~~

~~attachments (e.g., belts, slings, after market rubber grips, cleaning kits) for~~

~~firearms that do not enhance the usefulness, effectiveness, or capabilities of~~

~~the firearm, components and parts. The Department of Commerce regulates~~

~~the export of such items. See the Export Administration Regulations (15~~

~~CFR parts 730-799). In addition, license exemptions for the items in this~~

~~category are available in various parts of this subchapter (e.g., §§123.17,~~

~~123.18 and 125.4).~~

**Category II—Guns and Armament**


\*(a) Guns and armament greater than ~~over~~ caliber .50 (~~i.e.,~~ 12.7 mm), as
follows:

\*(1) Guns, howitzers, artillery, and cannons;

\*(2) Mortars;

\*(3) Recoilless rifles;

\*(4) Grenade launchers; or~~whether towed, airborne, self-propelled, or~~

~~fixed, including but not limited to, howitzers, mortars, cannons, recoilless~~

~~rifles, and grenade launchers~~

(5) Developmental guns and armament greater than .50 caliber (12.7 mm)

funded by the Department of Defense and specially designed parts and

6

WASHSTATEC005089

components therefor.

*Note 1 to paragraph (a)(5):* This paragraph does not control guns and armament greater than .50 caliber (12.7 mm); (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(5):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(5):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

*Note 1 to paragraph (a):* This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; black powder guns and armaments manufactured between 1890 and 1919 controlled on the

7

WASHSTATEC005090

CCL under ECCN 0A602; or black powder guns and armaments manufactured earlier than 1890.

*Note 2 to paragraph (a):* Guns and armament when integrated into their carrier (*e.g.*, surface vessels, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flame-throwers with an effective range greater than or equal to 20 meters.~~specifically designed or modified for military application.~~

(c) [Reserved]~~Apparatus and devices for launching or delivering ordnance, other than those articles controlled in Category IV.~~

*(d) Kinetic energy weapon systems specially ~~specifically~~ designed ~~or modified~~ for destruction or rendering mission-abort of a target.

*Note to paragraph (d):* Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

8

WASHSTATEC005091

(e) Signature <u>reduction devices</u> ~~control materials (e.g., parasitic,~~ ~~structural, coatings, screening) techniques, and equipment~~ <u>specially</u> ~~specifically~~ designed, ~~developed, configured, adapted or modified to alter or~~ ~~reduce the signature (e.g., muzzle flash suppression, radar, infrared, visual,~~ ~~laser/electro-optical, acoustic) of~~ <u>for the guns and armament controlled in</u> <u>paragraphs (a), (b), and (d) of this category (*e.g.*, muzzle flash suppression</u> <u>devices)</u>~~defense articles controlled by this category~~.

<u>*(f) – (i) [Reserved]</u>~~Engines specifically designed or modified for the~~ ~~self-propelled guns and howitzers in paragraph (a) of this category.~~

~~(g) Tooling and equipment specifically designed or modified for the~~ ~~production of defense articles controlled by this category.~~

~~(h) Test and evaluation equipment and test models specifically designed~~ ~~or modified for the articles controlled by this category. This includes but is~~ ~~not limited to diagnostic instrumentation and physical test models.~~

~~(i) Autoloading systems for electronic programming of projectile~~ ~~function for the defense articles controlled in this Category.~~

(j) ~~All other components, p~~Parts, <u>components,</u> accessories, <u>and</u> attachments<u>, as follows:</u> ~~and associated equipment specifically designed or~~ ~~modified for the articles in paragraphs (a) through (i) of this category. This~~

9

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005092

~~includes but is not limited to mounts and carriages for the articles controlled in this category.~~

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

(8) Bore evacuators;

(9) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(10) Components for independently powered ammunition handling systems and platform interface, as follows:

(i) Mounts;

(ii) Carriages;

10

WASHSTATEC005093

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

*Note to paragraph (j)(10):* For weapons mounts specially designed for surface vessels and special naval equipment, *see* Category VI. For weapons mounts specially designed for ground vehicles, *see* Category VII.

(11) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, ammunition feeder systems, and ammunition container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(12) Systems and equipment for the guns and armament controlled in paragraphs (a) and (d) of this category for use in programming ammunition, and specially designed parts and components therefor;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Recoil systems specially designed to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

11

WASHSTATEC005094

(15) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(16) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(17) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (*see* ~~as defined in~~ §120.10 of this subchapter) and defense services (*see* ~~as defined in~~ §120.9 of this subchapter) directly related to the defense articles described in paragraphs (a)~~-~~, (b), (d), (e), and ~~through~~

12

WASHSTATEC005095

(j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (*See* § 125.4 of this subchapter for exemptions.) ~~Technical data directly related to the manufacture or production of any defense articles described elsewhere in this category that are designated as Significant Military Equipment (SME) shall itself be designated SME.~~

(l) – (w) [Reserved] ~~The following interpretations explain and amplify the terms used in this category and elsewhere in this subchapter:~~

~~(1) The kinetic energy weapons systems in paragraph (d) of this category include but are not limited to:~~

~~(i) Launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6km/s, in single or rapid fire modes, using methods such as: electromagnetic, electrothermal, plasma, light gas, or chemical;~~

~~(ii) Prime power generation, electric armor, energy storage, thermal management; conditioning, switching or fuel-handling equipment; and the electrical interfaces between power supply gun and other turret electric drive function;~~

13

WASHSTATEC005096

(iii) Target acquisition, tracking fire control or damage assessment systems; and

(iv) Homing seeker, guidance or divert propulsion (lateral acceleration) systems for projectiles.

(2) The articles in this category include any end item, component, accessory, attachment part, firmware, software or system that has been designed or manufactured using technical data and defense services controlled by this category.

(3) The articles specifically designed or modified for military application controlled in this category include any article specifically developed, configured, or adapted for military application.

(x) Commodities, software, and technology subject to the EAR (*see* § 120.42 of this subchapter) used in or with defense articles.

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

**Category III—Ammunition/ and Ordnance**

*(a) Ammunition/, as follows:ordnance for the articles in Categories I and II of this section.

14

WASHSTATEC005097

*(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

*(2) Ammunition preassembled into links or belts;

*(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

*(4) Caseless ammunition manufactured with smokeless powder;

*Note to paragraph (a)(4):* Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

*(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

*(6) Ammunition employing pyrotechnic material in the projectile base or any ammunition employing a projectile that incorporates tracer materials of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

*(7) Ammunition for fully automatic firearms that fire superposed or stacked projectiles or for guns that fire superposed or stacked projectiles;

15

WASHSTATEC005098

*(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

*(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

*Note 1 to paragraph (a)(10):* This paragraph does not control ammunition: (a) in production; (b) determined to be subject to the EAR via a commodity jurisdiction determination (*see* § 120.4 of this subchapter); or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

*Note 2 to paragraph (a)(10):* Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

*Note 3 to paragraph (a)(10):* This provision is applicable to those contracts or other funding authorizations that are dated [**INSERT DATE ONE YEAR AFTER PUBLICATION IN THE FEDERAL REGISTER**], or later.

16

WASHSTATEC005099

(b) Ammunition/ordnance handling equipment specially ~~specifically~~ designed ~~or modified~~ for the articles controlled in this category, as follows:~~,~~ ~~such as, belting, linking, and de-linking equipment.~~

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]~~Equipment and tooling specifically designed or modified for the production of defense articles controlled by this category.~~

(d) ~~Components, p~~Parts and components~~, accessories, attachments and associated equipment specifically designed or modified~~ for the articles in this category, as follows:

\*(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary or explosive~~Guidance and control components for the articles in paragraph (a) of this category;~~

\*(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;~~Safing, arming and fuzing components (including target detection and localization devices) for the articles in paragraph (a) of this category; and~~

17

WASHSTATEC005100

*Note to paragraph (d)(2):* This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (*e.g.*, bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium; ~~All other components, parts, accessories, attachments and associated equipment for the articles in paragraphs (a) through (c) of this category.~~

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (*e.g.*, fuzes, rotating bands, cases, liners, fins, boosters);

(5) Canisters or sub-munitions (*e.g.*, bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

(6) Projectiles that employ tips (*e.g.*, M855A1 Enhanced Performance Round (EPR)) or cores regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases specially designed for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

18

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005101

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

*Note to paragraph (d)(10):* This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or

19

WASHSTATEC005102

predecessor order, and a security classification guide developed pursuant
thereto or equivalent, or to the corresponding classification rules of another
government or intergovernmental organization.

(e) Technical data (~~*see*as defined in~~ §120.10 of this subchapter) and
defense services (~~*see*as defined in~~ §120.9 of this subchapter) directly related
to the defense articles described in paragraphs (a), (b), and ~~through~~ (d) of
this category and classified technical data directly related to items controlled
in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the
classified technical data. (*See* § 125.4 of this subchapter for
exemptions.)~~Technical data directly related to the manufacture or production~~
~~of any defense articles described elsewhere in this category that are~~
~~designated as Significant Military Equipment (SME) shall itself be~~
~~designated SME.~~

(f) – (w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (*see*
§ 120.42 of this subchapter) used in or with defense articles.  ~~The following~~
~~explains and amplifies the terms used in this category and elsewhere in this~~
~~subchapter:~~

~~(1) The components, parts, accessories and attachments controlled in~~
~~this category include, but are not limited to cartridge cases, powder bags (or~~

20

WASHSTATEC005103

~~other propellant charges), bullets, jackets, cores, shells (excluding shotgun~~ ~~shells), projectiles (including canister rounds and submunitions therefor),~~ ~~boosters, firing components therefor, primers, and other detonating devices~~ ~~for the defense articles controlled in this category.~~

*Note to paragraph (x):* Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (*see* § 123.1(b) of this subchapter).

*Note 1 to Category III:* This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

*Note 2 to Category III:* ~~(2)~~ This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting or popping. ~~(3) Equipment and tooling in paragraph (c) of this category does not include equipment for hand-loading ammunition.~~

~~(4) The articles in this category include any end item, component, accessory, attachment, part, firmware, software, or system that has been~~

21

WASHSTATEC005104

~~designed or manufactured using technical data and defense services~~

~~controlled by this category.~~

~~(5) The articles specifically designed or modified for military application~~

~~controlled in this category include any article specifically developed,~~

~~configured, or adapted for military application~~

*Note 3 to Category III:* Grenades containing non-lethal or less lethal

projectiles are under the jurisdiction of the Department of Commerce.

* * * * *

22

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005105

**Billing Code: 3510-33-P**

**DEPARTMENT OF COMMERCE**

**Bureau of Industry and Security**

**15 CFR Parts 732, 734, 736, 740, 742, 743, 744, 746, 748, 758, 762, 772, and 774**

**[Docket No. 191107-0079]**

**RIN 0694-AF47**

**Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control under the United States Munitions List (USML)**

**AGENCY:** Bureau of Industry and Security, Department of Commerce.

**ACTION:** Final rule.

1. The authority citation for 15 CFR part 732 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

2. Section 732.2 is amended by adding one sentence to the end of the paragraph (b) introductory text to read as follows:

**§ 732.2 Steps regarding scope of the EAR.**

\* \* \* \* \*

1

WASHSTATEC005106

(b) *   *   *   The following also remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, as referenced in § 734.7(c)).

*   *   *   *   *

## PART 734 – SCOPE OF THE EXPORT ADMINISTRATION REGULATIONS

3. The authority citation for 15 CFR part 734 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13637, 78 FR 16129, 3 CFR, 2014 Comp., p. 223; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018).

4. Section 734.7 is amended by:

a. Revising paragraph (a) introductory text; and

b. Adding paragraph (c) to read as follows:

## § 734.7 Published.

(a) Except as set forth in paragraph (b) and (c) of this section, unclassified "technology" or "software" is "published," and is thus not "technology" or "software" subject to the EAR, when it has been made available to the public without restrictions upon its further dissemination such as through any of the following:

2

WASHSTATEC005107

\* \* \* \* \*

(c) The following remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, that is made available by posting on the internet in an electronic format, such as AMF or G-code, and is ready for insertion into a computer numerically controlled machine tool, additive manufacturing equipment, or any other equipment that makes use of the "software" or "technology" to produce the firearm frame or receiver or complete firearm.

\* \* \* \* \*

**PART 736 – GENERAL PROHIBITIONS**

5. The authority citation for 15 CFR part 736 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 2151 note; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13020, 61 FR 54079, 3 CFR, 1996 Comp., p. 219; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p. 168; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

6. Supplement No. 1 to part 736 is amended by revising paragraph (e)(3) to read as follows:

WASHSTATEC005108

**SUPPLEMENT NO. 1 TO PART 736 - GENERAL ORDERS**

\*   \*   \*   \*   \*

(e) \*   \*   \*

(3) *Prior commodity jurisdiction determinations.* If the U.S. State Department has previously determined that an item is not subject to the jurisdiction of the ITAR and the item was not listed in a then existing "018" series ECCN (for purposes of the "600 series" ECCNs, or the 0x5zz ECCNs) or in a then existing ECCN 9A004.b or related software or technology ECCN (for purposes of the 9x515 ECCNs), then the item is per se not within the scope of a "600 series" ECCN, a 0x5zz ECCN, or a 9x515 ECCN.  If the item was not listed elsewhere on the CCL at the time of such determination (*i.e.*, the item was designated EAR99), the item shall remain designated as EAR99 unless specifically enumerated by BIS or DDTC in an amendment to the CCL or to the USML, respectively.

\*   \*   \*   \*   \*

**PART 740 – LICENSE EXCEPTIONS**

7. The authority citation for 15 CFR part 740 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*;  22 U.S.C. 7201 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228;  E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

8. Section 740.2 is amended by adding paragraphs (a)(21) and (22) to read as follows:

4

**§ 740.2 Restrictions on all license exceptions.**

(a) *   *   *

(21)  The reexport or transfer (in-country) of firearms classified under ECCNs 0A501 or 0A502 if a part or component that is not "subject to the ITAR," but would otherwise meet the criteria in USML Category I(h)(2)(*i.e.*, parts and components specially designed for conversion of a semiautomatic firearm to a fully automatic firearm) is incorporated into the firearm or is to be reexported or transferred (in-country) with the firearm with "knowledge" the part or component will be subsequently incorporated into the firearm.  (*See* USML Category I(h)(2)).  In such instances, no license exceptions are available except for License Exception GOV (§ 740.11(b)(2)(ii)).

(22) The export, reexport, or transfer (in-country) of any item classified under a 0x5zz ECCN when a party to the transaction is designated on the Department of the Treasury, Office of Foreign Assets Control (OFAC), Specially Designated Nationals and Blocked Persons (SDN) list under the designation [SDNT], pursuant to the Narcotics Trafficking Sanctions Regulations, 31 CFR part 536, or under the designation [SDNTK], pursuant to the Foreign Narcotics Kingpin Sanctions Regulations, 31 CFR part 598.

9. Section 740.9 is amended by:

a.  Adding five sentences at the end of paragraph (a) introductory text;

b.  Adding one sentence at the end of paragraph (b)(1) introductory text;

5

WASHSTATEC005110

c. Adding paragraph (b)(5); and

d. Redesignating notes 1 through 3 to paragraph (b) as notes 2 through 4 to paragraph (b);

The additions read as follows:

**§ 740.9 Temporary imports, exports, reexports, and transfers (in-country) (TMP).**

\* \* \* \* \*

(a) \* \* \* This paragraph (a) does not authorize any export of a commodity controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502 to, or any export of such an item that was imported into the United States from, a country in Country Group D:5 (Supplement No. 1 of this part), or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan. The only provisions of this paragraph (a) that are eligible for use to export such items are paragraph (a)(5) of this section ("Exhibition and demonstration") and paragraph (a)(6) of this section ("Inspection, test, calibration, and repair"). In addition, this paragraph (a) may not be used to export more than 75 firearms per shipment. In accordance with the requirements in § 758.1(b)(9) and (g)(4) of the EAR, the exporter or its agent must provide documentation that includes the serial number, make, model, and caliber of each firearm being exported by filing these data elements in an EEI filing in AES. In accordance with the exclusions in License Exception TMP under paragraph (b)(5) of this section, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country,, or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan

6

(except for any firearm model designation (if assigned) controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740);); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under paragraph (b)(5) of this section.

\* \* \* \* \*

(b)  \* \* \*

(1) \* \* \* No provision of paragraph (b) of this section, other than paragraph (b)(3), (4), or (5), may be used to export firearms controlled by ECCN 0A501.a, .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.

\* \* \* \* \*

(5) *Exports of firearms and certain shotguns temporarily in the United States.*  This paragraph (b)(5) authorizes the export of no more than 75 end item firearms per shipment controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for a period not exceeding one year, provided that:

(i) The firearms were not shipped from or manufactured in a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR;

7

WASHSTATEC005112

(ii) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740; and

(iii) The firearms are not ultimately destined to a U.S. arms embargoed country, *i.e.*, destination listed in Country Group D:5 in Supplement No. 1 to part 740 of the EAR, or to Russia;

(iv) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License cException TMP (15 CFR 740.9(b)(5))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provided (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States.

8

WASHSTATEC005113

(v) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(5)(iv)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(5): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(5), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

*   *   *   *   *

10. Section 740.10 is amended by:

a.  Adding one sentence at the end of paragraph (b)(1); and

b.  Adding paragraph (b)(4).

The additions read as follows:

## § 740.10 Servicing and replacement of parts and equipment (RPL)

*   *   *   *   *

*(b)* * * *

(1) *   *   * The export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 temporarily in the United States for

9

servicing and replacement may be exported under paragraphs (b)(2) or (3) of this section only if the additional requirements in paragraph (b)(4) of this section are also met.

\* \* \* \* \*

(4) *Exports of firearms and certain shotguns temporarily in the United States for servicing and replacement.* This paragraph (b)(4) authorizes the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are temporarily in the United States for servicing or replacement for a period not exceeding one year or the time it takes to service or replace the commodity, whichever is shorter, provided that the requirements of paragraphs (b)(2) or (3) of this section are met and:

(i) The firearms were not shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740;

(ii) When the firearms entered the U.S. as a temporary import, the temporary importer or its agent:

(A) Provided the following statement to U.S. Customs and Border Protection: "This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b))";

(B) Provided to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

10

WASHSTATEC005115

(C) Provided (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement.

(iii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (b)(4)(iii)(B) of this section to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (b)(4):* *In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (b)(4), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

\*   \*   \*   \*   \*

11.  Section 740.11 is amended by:

a. Adding two sentences at the end of the introductory text;

b. Adding Note 2 to paragraph (b)(2); and

WASHSTATEC005116

c. Redesignating note 1 to paragraph (c)(1) as note 3 to paragraph (c)(1) and notes 1 and 2 to paragraph (e) as notes 4 and 5 to paragraph (e).

The additions read as follows:

### § 740.11 Governments, international organizations, international inspections, under the Chemical Weapons Convention, and the International Space Station (GOV).

*   *   *   Commodities listed in ECCN 0A501 are eligible only for transactions described in paragraphs (b)(2)(i) and (ii) of this section.  Any item listed in a 0x5zz ECCN for export, reexport, or transfer (in-country) to an E:1 country is eligible only for transactions described in paragraphs (b)(2)(i) and (ii) solely for U.S. Government official use of this section.

*   *   *   *   *

*Note 2 to paragraph (b)(2):*  *Items controlled for NS, MT, CB, NP, FC, or AT reasons may not be exported, reexported, or transferred (in-country) to, or for the use of military, police, intelligence entities, or other sensitive end users (e.g., contractors or other governmental parties performing functions on behalf of military, police, or intelligence entities) of a government in a Country Group E:1 or E:2 country.*

*   *   *   *   *

12. Section 740.14 is amended by revising paragraph (b)(4) introductory text, revising the heading to paragraph (e), and by adding paragraphs (e)(3) and (4) to read as follows:

### § 740.14 Baggage (BAG).

12

WASHSTATEC005117

\* \* \* \* \*

(b) \* \* \*

(4) *Tools of trade*. Usual and reasonable kinds and quantities of tools, instruments, or equipment and their containers and also technology for use in the trade, occupation, employment, vocation, or hobby of the traveler or members of the household who are traveling or moving. For special provisions regarding firearms and ammunition, see paragraph (e) of this section.  For special provisions regarding encryption commodities and software subject to EI controls, see paragraph (f) of this section.  For a special provision that specifies restrictions regarding the export or reexport of technology under this paragraph (b)(4), see paragraph (g) of this section. For special provisions regarding personal protective equipment under ECCN 1A613.c or .d, see paragraph (h) of this section.

\* \* \* \* \*

(e) *Special provisions for firearms and ammunition*. \* \* \*

(3) A United States citizen or a permanent resident alien leaving the United States may export under this License Exception firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505.a, subject to the following limitations:

(i) Not more than three firearms and 1,000 rounds of ammunition may be taken on any one trip.

13

WASHSTATEC005118

(ii) "Parts," "components," "accessories," and "attachments" exported pursuant to this paragraph must be of a kind and limited to quantities that are reasonable for the activities described in paragraph (e)(3)(iv) of this section or that are necessary for routine maintenance of the firearms being exported.

(iii) The commodities must be with the person's baggage.

(iv) The commodities must be for the person's exclusive use and not for resale or other transfer of ownership or control.  Accordingly, except as provided in paragraph (e)(4) of this section, firearms, "parts," "components," "accessories," "attachments," and ammunition, may not be exported permanently under this License Exception.  All firearms, "parts," "components," "accessories," or "attachments" controlled under ECCN 0A501 and all unused ammunition controlled under ECCN 0A505.a exported under this License Exception must be returned to the United States.

(v) Travelers leaving the United States temporarily are required to declare the firearms, "parts," "components," "accessories," "attachments," and ammunition being exported under this license exception to a Customs and Border Protection (CBP) officer prior to departure from the United States and present such items to the CBP officer for inspection, confirming that the authority for the export is License Exception BAG and that the exporter is compliant with its terms.

(4) A nonimmigrant alien leaving the United States may export or reexport under this License Exception only such firearms controlled under ECCN 0A501 and ammunition controlled under ECCN 0A505 as he or she brought into the United States under the relevant provisions of Department of Justice regulations at 27 CFR part 478.

14

WASHSTATEC005119

\* \* \* \* \*

## § 740.16 [AMENDED]

13.  Section 740.16 is amended by:

a.  Revising paragraph (a)(2);

b.  Revising paragraphs (b)(2)(iv) and (v); and

c.  Adding paragraph (b)(2)(vi);

The revisions and addition read as follows:

## § 740.16 Additional permissive reexports (APR).

\* \* \* \* \*

(a)  \* \* \*

(2) The commodities being reexported are not controlled for NP, CB, MT, SI, or CC reasons or described in ECCNs 0A919, 3A001.b.2 or b.3 (except those that are being reexported for use in civil telecommunications applications), 6A002, 6A003; or commodities classified under a 0x5zz ECCN; and

\* \* \* \* \*

(b)  \* \* \*

(2)  \* \* \*

WASHSTATEC005120

(iv) Commodities described in ECCN 0A504 that incorporate an image intensifier tube;

(v) Commodities described in ECCN 6A002; or

(vi) Commodities classified under a 0x5zz ECCN.

*  *  *  *  *

14.  Section 740.20 is amended by revising paragraph (b)(2)(ii) to read as follows:

**§ 740.20 License Exception Strategic Trade Authorization (STA).**

*  *  *  *  *

(b)  *  *  *

(2)  *  *  *

(ii) License Exception STA may not be used for:

(A) Any item controlled in ECCNs 0A501.a, .b, .c, .d, or .e; 0A981; 0A982; 0A983; 0A503; 0E504; 0E982; or

(B) Shotguns with barrel length less than 18 inches controlled in 0A502.

*  *  *  *  *

15. Add Supplement No. 4 to part 740 to read as follows:

**SUPPLEMENT NO. 4 TO PART 740 - ANNEX A FIREARM MODELS**

16

WASHSTATEC005121

(a) *Pistols/revolvers.*

(1) German Model P08 Pistol = SMCR.

(2) IZH 34M, .22 Target pistol.

(3) IZH 35M, .22 caliber Target pistol.

(4) Mauser Model 1896 pistol = SMCR.

(5) MC-57-1 pistol.

(6) MC-1-5 pistol.

(7) Polish Vis Model 35 pistol = SMCR.

(8) Soviet Nagant revolver = SMCR.

(9) TOZ 35, .22 caliber Target pistol.

(10) MTs 440.

(11) MTs 57-1.

(12) MTs 59-1.

(13) MTs 1-5.

(14) TOZ-35M (starter pistol).

(15) Biathlon-7K.

17

(b) *Rifles.*

(1) BARS-4 Bolt Action carbine.

(2) Biathlon target rifle, .22.

(3) British Enfield rifle = SMCR.

(4) CM2, .22 target rifle (also known as SM2, .22).

(5) German model 98K =SMCR.

(6) German model G41 = SMCR.

(7) German model G43=SMCR.

(8) IZH-94.

(9) LOS-7, bolt action.

(10) MC-7-07.

(11) MC-18-3.

(12) MC-19-07.

(13) MC-105-01.

(14) MC-112-02.

(15) MC-113-02.

(16) MC-115-1.

18

WASHSTATEC005123

(17) MC-125/127.

(18) MC-126.

(19) MC-128.

(20) Saiga.

(21) Soviet Model 38 carbine=SMCR.

(22) Soviet Model 44 carbine-SMCR.

(23) Soviet Model 91/30 rifle=SMCR.

(24) TOZ 18, .22 bolt action.

(25) TOZ 55.

(26) TOZ 78.

(27) Ural Target, .22lr.

(28) VEPR rifle.

(29) Winchester Model 1895, Russian Model rifle=SMCR.

(30) Sever – double barrel.

(31) IZH18MH single barrel break action.

(32) MP-251 over/under rifle.

(33) MP-221 double barrel rifle.

WASHSTATEC005124

(34) MP-141K.

(35) MP-161K.

(36) MTs 116-1.

(37) MTs 116M.

(38) MTs 112-02.

(39) MTs 115-1.

(40) MTs 113-02.

(41) MTs 105-01.

(42) MTs 105-05.

(43) MTs 7-17 combination gun.

(44) MTs 7-12-07 rifle/shotgun.

(45) MTs 7-07.

(46) MTs 109-12-07 rifle.

(47) MTs 109-07 rifle.

(48) MTs 106-07 combination.

(49) MTs 19-97.

(50) MTs 19-09.

WASHSTATEC005125

(51) MTs 18-3M.

(52) MTs 125.

(53) MTs 126.

(54) MTs 127.

(55) Berkut-2.

(56) Berkut-2M1.

(57) Berkut-3.

(58) Berkut-2-1.

(59) Berkut-2M2.

(60) Berkut-3-1.

(61) Ots-25.

(62) MTs 20-07.

(63) LOS-7-1.

(64) LOS -7-2.

(65) LOS-9-1.

(66) Sobol (Sable).

(67) Rekord.

WASHSTATEC005126

(68) Bars-4-1.

(69) Saiga.

(70) Saiga-M.

(71) Saiga 308.

(72) Saiga-308-1.

(73) Saiga 308-2.

(74) Saiga-9.

(75) Korshun.

(76) Ural-5-1.

(77) Ural 6-1.

(78) Ural-6-2.

(79) SM-2.

(80) Biatlon-7-3.

(81) Biatlon-7-4.

(82) Rekord-1.

(83) Rekord-2.

(84) Rekord-CISM.

WASHSTATEC005127

(85) Rekord-1-308.

(86) Rekord-2-308.

(87) Rekord-1-308-CISM.

(88) VEPR.

(89) VEPR Super.

(90) VEPR Pioneer.

(91) VEPR Safari.

(92) TOZ 109.

(93) KO 44-1.

(94) TOZ 78-01.

(95) KO 44.

(96) TOZ 99.

(97) TOZ 99-01.

(98) TOZ 55-01 Zubr.

(99) TOZ 55-2 Zubr.

(100) TOZ 120 Zubr.

(101) MTs 111.

WASHSTATEC005128

(102) MTs 109.

(103) TOZ 122.

(104) TOZ 125.

(105) TOZ 28.

(106) TOZ 300.

## PART 742 – CONTROL POLICY—CCL BASED CONTROLS

16.  The authority citation for part 742 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 3201 *et seq.*; 42 U.S.C. 2139a; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; Sec. 1503, Pub. L. 108–11, 117 Stat. 559; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018).

17.  Section 742.6 is amended by revising the first and sixth sentences of paragraph (b)(1)(i) and adding a seventh sentence at the end of paragraph (b)(1)(i) to read as follows:

## §742.6 Regional stability.

\*   \*   \*   \*   \*

24

WASHSTATEC005129

(b)  *  *  *

(1)  *  *  *

(i)  Applications for exports and reexports of ECCN 0A501, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items; 9x515 items and "600 series" items and will be reviewed on a case-by-case basis to determine whether the transaction is contrary to the national security or foreign policy interests of the United States, including the foreign policy interest of promoting the observance of human rights throughout the world.  *  *  * When destined to the People's Republic of China or a country listed in Country Group E:1 in Supplement No. 1 to part 740 of the EAR, items classified under ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 or any 9x515 ECCN will be subject to a policy of denial.  In addition, applications for exports and reexports of ECCN 0A501, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, 0E504, and 0E505 items when there is reason to believe the transaction involves criminal organizations, rebel groups, street gangs, or other similar groups or individuals, that may be disruptive to regional stability, including within individual countries, will be subject to a policy of denial.

*  *  *  *  *

18.  Section 742.7 is amended by revising paragraphs (a)(1) through (4) and (c) to read as follows:

§ 742.7 Crime control and detection.

(a)  *  *  *

25

WASHSTATEC005130

(1)  Crime control and detection instruments and equipment and related "technology" and "software" identified in the appropriate ECCNs on the CCL under CC Column 1 in the Country Chart column of the "License Requirements" section.  A license is required to countries listed in CC Column 1 (Supplement No. 1 to part 738 of the EAR).  Items affected by this requirement are identified on the CCL under the following ECCNs: 0A502, 0A504, 0A505.b, 0A978, 0A979 0E502, 0E505 ("technology" for "development" or for "production" of buckshot shotgun shells controlled under ECCN 0A505.b), 1A984, 1A985, 3A980, 3A981, 3D980, 3E980, 4A003 (for fingerprint computers only), 4A980, 4D001 (for fingerprint computers only), 4D980, 4E001 (for fingerprint computers only), 4E980, 6A002 (for police-model infrared viewers only), 6E001 (for police-model infrared viewers only), 6E002 (for police-model infrared viewers only), and 9A980.

(2)  Shotguns with a barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 2 in the Country Chart column of the "License Requirements" section regardless of end user to countries listed in CC Column 2 (Supplement No. 1 to part 738 of the EAR).

(3)  Shotguns with barrel length greater than or equal to 24 inches, identified in ECCN 0A502 on the CCL under CC Column 3 in the Country Chart column of the "License Requirements" section only if for sale or resale to police or law enforcement entities in countries listed in CC Column 3 (Supplement No. 1 to part 738 of the EAR).

(4)  Certain crime control items require a license to all destinations, except Canada. These items are identified under ECCNs 0A982, 0A503, and 0E982.  Controls for these items appear in

WASHSTATEC005131

each ECCN; a column specific to these controls does not appear in the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

(c) *Contract sanctity*.  Contract sanctity date: August 22, 2000.  Contract sanctity applies only to items controlled under ECCNs 0A982, 0A503, and 0E982 destined for countries not listed in CC Column 1 of the Country Chart (Supplement No. 1 to part 738 of the EAR).

*   *   *   *   *

19.  Section 742.17 is amended by:

a. Revising the first sentence of paragraph (a); and

b. Revising paragraph (f) to read as follows:

**§ 742.17  Exports of firearms to OAS member countries.**

(a) *License requirements*. BIS maintains a licensing system for the export of firearms and related items to all OAS member countries.  *   *   *

*   *   *   *   *

(f) *Items/Commodities*.   Items requiring a license under this section are ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), and 0A505 (except 0A505.d).  (See Supplement No. 1 to part 774 of the EAR).

*   *   *   *   *

27

**§ 742.19 [AMENDED]**

20. Section 742.19(a)(1) is amended by:

a. Removing "0A986" and adding in its place "0A505.c"; and

b. Removing "0B986" and adding in its place "0B505.c".

**PART 743 – SPECIAL REPORTING AND NOTIFICATION**

21. The authority citation for 15 CFR part 743 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*;  50 U.S.C. 1701 *et seq.*; E.O.

13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783;  E.O. 13637, 78 FR 16129, 3 CFR, 2014

Comp., p. 223; 78 FR 16129; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

22. Section 743.4 is amended by:

a. Adding four sentences to the end of paragraph (a);

b. By redesignating Note to paragraph (a) as Note 1 to paragraph (a);

c. Revising paragraph (b);

d. Adding paragraphs (c)(1)(i) and (c)(2)(i);

e. By redesignating Note to paragraph (e)(1)(ii) as Note 2 to paragraph (e)(1)(ii);

e. Revising paragraph (h); and

WASHSTATEC005133

f. Adding paragraph (i) to read as follows:

### § 743.4 Conventional arms reporting.

(a) *   *   *   This section does not require reports when the exporter uses the alternative submission method described under paragraph (h) of this section.  The alternative submission method under paragraph (h) requires the exporter to submit the information required for conventional arms reporting in this section as part of the required EEI submission in AES, pursuant to § 758.1(b)(9).  Because of the requirements in § 758.1(g)(4)(ii) for the firearms that require conventional arms reporting of all conventional arms, the Department of Commerce believes all conventional arms reporting requirements for firearms will be met by using the alternative submission method.  The Department of Commerce leaves standard method for submitting reports in place in case any additional items are moved from the USML to the CCL, that may require conventional arms reporting.

*Note 1 to paragraph (a):* *   *   *

(b) *Requirements*.  You must submit one electronic copy of each report required under the provisions of this section, or submit this information using the alternative submission method specified in paragraph (h) of this section, and maintain accurate supporting records (see § 762.2(b) of the EAR) for all exports of items specified in paragraph (c) of this section for the following:

(c) *   *   *

29

(1) *  *  *

   (i) ECCN 0A501.a and .b.

*  *  *  *  *

(2) *  *  *

   (i) ECCN 0A501.a and .b.

*  *  *  *  *

(h) *Alternative submission method.*  This paragraph (h) describes an alternative submission method for meeting the conventional arms reporting requirements of this section.  The alternative submission method requires the exporter, when filing the required EEI submission in AES, pursuant to § 758.1(b)(9), to include the six character ECCN classification (*i.e.*, 0A501.a or 0A501.b) as the first text to appear in the Commodity description block.  If the exporter properly includes this information in the EEI filing in AES, the Department of Commerce will be able to obtain that export information directly from AES to meet the U.S. Government's commitments to the Wassenaar Arrangement and United Nations for conventional arms reporting.  An exporter that complies with the requirements in § 758.1(g)(4)(ii) does not have to submit separate annual and semi-annual reports to the Department of Commerce pursuant to this section.

(i) *Contacts.* General information concerning the Wassenaar Arrangement and reporting obligations thereof is available from the Office of National Security and Technology Transfer Controls, Tel.: (202) 482-0092, Fax: (202) 482-4094.  Information concerning the reporting requirements for items identified in paragraphs (c)(1) and (2) of this section is available from the

WASHSTATEC005135

Office of Nonproliferation and Treaty Compliance (NPTC), Tel.: (202) 482-4188, Fax: (202) 482-4145.

## PART 744 – CONTROL POLICY: END-USER AND END-USE BASED

23.  The authority citation for 15 CFR part 744 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4582; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 22 U.S.C. 3201 et seq.; 42 U.S.C. 2139a; 22 U.S.C. 7201 et seq.; 22 U.S.C. 7210; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of September 19, 2018, 83 FR 47799 (September 20, 2018); Notice of November 8, 2018, 83 FR 56253 (November 9, 2018); Notice of January 16, 2019, 84 FR 127 (January 18, 2019).

## § 744.9 [AMENDED]

24.  Section 744.9 is amended by removing "0A987" from paragraphs (a)(1) and (b) and adding in its place "0A504".

## PART 746 – EMBARGOES AND OTHER SPECIAL CONTROLS

25.  The authority citation for 15 CFR part 746 is revised to read as follows:

31

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 287c; Sec 1503, Pub. L. 108-11, 117 Stat. 559; 22 U.S.C. 6004; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 12854, 58 FR 36587, 3 CFR, 1993 Comp., p. 614; E.O. 12918, 59 FR 28205, 3 CFR, 1994 Comp., p. 899; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13338, 69 FR 26751, 3 CFR, 2004 Comp., p 168; Presidential Determination 2003-23, 68 FR 26459, 3 CFR, 2004 Comp., p. 320; Presidential Determination 2007-7, 72 FR 1899, 3 CFR, 2006 Comp., p. 325; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018); Notice of May 8, 2019, 84 FR 20537 (May 10, 2019).

### § 746.3 [AMENDED]

26.  Section 746.3 is amended by removing "0A986" from paragraph (b)(2) and adding in its place "0A505.c".

### § 746.7 [AMENDED]

27.  Section 746.7 is amended in paragraph (a)(1) by:

a. Adding "0A503," immediately before "0A980"; and

b. Removing "0A985,".

## PART 748 – APPLICATIONS (CLASSIFICATION, ADVISORY, AND LICENSE) AND DOCUMENTATION

28.  The authority citation for 15 CFR part 748 is revised to read as follows:

WASHSTATEC005137

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

29.  Section 748.12 is amended by:

a. Revising the heading;

b. Adding introductory text;

c. Revising paragraphs (a) introductory text and (a)(1);

d. Redesignating the note to paragraph (c)(8) as note 1 to paragraph (c)(8); and

e. Adding paragraph (e).

The revisions and additions read as follows.

**§ 748.12 Firearms import certificate or import permit.**

License applications for certain firearms and related commodities require support documents in accordance with this section.  For destinations that are members of the Organization of American States (OAS), an FC Import Certificate or equivalent official document is required in accordance with paragraphs (a) through (d) of this section.  For other destinations that require a firearms import or permit, the firearms import certificate or permit is required in accordance with paragraph (e) of this section.

WASHSTATEC005138

(a) *Requirement to obtain document for OAS member states.* Unless an exception in § 748.9(c) applies, an FC Import Certificate is required for license applications for firearms and related commodities, regardless of value, that are destined for member countries of the OAS.  This requirement is consistent with the OAS Model Regulations described in § 742.17 of the EAR.

(1)  *Items subject to requirement.* Firearms and related commodities are those commodities controlled for "FC Column 1" reasons under ECCNs 0A501 (except 0A501.y), 0A502, 0A504 (except 0A504.f), or 0A505 (except 0A505.d).

\*   \*   \*   \*   \*

(e)  *Requirement to obtain an import certificate or permit for other than OAS member states.*  If the country to which firearms, parts, components, accessories, and attachments controlled under ECCN 0A501, or ammunition controlled under ECCN 0A505, are being exported or reexported requires that a government-issued certificate or permit be obtained prior to importing the commodity, the exporter or reexporter must obtain and retain on file the original or a copy of that certificate or permit before applying for an export or reexport license unless:

(1)  A license is not required for the export or reexport; or

(2)  The exporter is required to obtain an import or end-user certificate or other equivalent official document pursuant to paragraphs (a) thorough (d) of this section and has, in fact, complied with that requirement.

(3)(i) The number or other identifying information of the import certificate or permit must be stated on the license application.

WASHSTATEC005139

(ii) If the country to which the commodities are being exported does not require an import certificate or permit for firearms imports, that fact must be noted on any license application for ECCN 0A501 or 0A505 commodities.

> *Note 2 to paragraph (e).*  *Obtaining a BIS Statement by Ultimate Consignee and Purchaser pursuant to § 748.11 of the EAR does not exempt the exporter or reexporter from the requirement to obtain a certification pursuant to paragraph (a) of this section because that statement is not issued by a government.*

30. Supplement No. 2 to part 748 (Unique Application and Submission Requirements) is amended by adding paragraph (z) to read as follows:

## SUPPLEMENT NO. 2 TO PART 748 - UNIQUE APPLICATION AND SUBMISSION REQUIREMENTS

\*   \*   \*   \*   \*

(z) *Exports of firearms and certain shotguns temporarily in the United States.*

(1) *Certification.*  If you are submitting a license application for the export of firearms controlled by ECCN 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that will be temporarily in the United States, *e.g.*, for servicing and repair or for intransit shipments, you must include the following certification in Block 24:

> The firearms in this license application will not be shipped from or manufactured in
>
> Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or

WASHSTATEC005140

Uzbekistan, except for any firearm model controlled by 0A501 that is specified under Annex A in Supplement No. 4 to part 740.  I and the parties to this transaction will comply with the requirements specified in paragraph (z)(2)(i) and (ii) of Supplement No. 2 to part 748.

(2) *Requirements*.  Each approved license for commodities described under paragraph (z) must comply with the requirements specified in paragraphs (z)(2)(i) and (ii) of this supplement.

(i) When the firearms enter the U.S. as a temporary import, the temporary importer or its agent must:

(A) Provide the following statement to U.S. Customs and Border Protection: "This shipment is being temporarily imported in accordance with the EAR.  This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(B) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value; and

(C) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address, and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

36

WASHSTATEC005141

(ii) In addition to the export clearance requirements of part 758 of the EAR, the exporter or its agent must provide the import documentation related to paragraph (z)(2)(i)(B) of this supplement to U.S. Customs and Border Protection at the time of export.

*Note 1 to paragraph (z): In addition to complying with all applicable EAR requirements for the export of commodities described in paragraph (z), exporters and temporary importers should contact U.S. Customs and Border Protection (CBP) at the port of temporary import or export, or at the CBP website, for the proper procedures for temporarily importing or exporting firearms controlled in ECCN 0A501.a or .b or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502, including regarding how to provide any data or documentation required by BIS.*

## PART 758 – EXPORT CLEARANCE REQUIREMENTS

31.  The authority citation for part 758 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

32.  Section 758.1 is amended by:

a. Revising paragraphs (b)(7) (8), and adding paragraph (b)(9);

b. Revising paragraph (c)(1);

c. Adding Note 1 to paragraph (c)(1);

c. Adding paragraph (g)(4); and

37

    d. Redesignating Note to paragraph (h)(1) as Note 3 to paragraph (h)(1); to read as follows:

**§ 758.1 The Electronic Export Enforcement (EEI) filing to the Automated Export System (AES).**

\*  \*  \*  \*  \*

(b)  \*  \*  \*

(7) For all items exported under authorization Validated End-User (VEU);

(8) For all exports of tangible items subject to the EAR where parties to the transaction, as described in § 748.5(d) through (f) of the EAR, are listed on the Unverified List (Supplement No. 6 to part 744 of the EAR), regardless of value or destination; or

(9) For all exports, except for exports authorized under License Exception BAG, as set forth in §740.14 of the EAR, of items controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c, regardless of value or destination, including exports to Canada.

(c) \*  \*  \*

(1) License Exception Baggage (BAG), as set forth in §740.14 of the EAR. See 15 CFR 30.37(x) of the FTR;

    *Note 1 to paragraph (c)(1): See the export clearance requirements for exports of firearms controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18*

WASHSTATEC005143

*inches controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505,*

*authorized under License Exception BAG, as set forth in §740.14 of the EAR.*

\* \* \* \* \*

(g) \* \* \*

(4) *Exports of Firearms and Related Items.* This paragraph (g)(4) includes two separate requirements under paragraph (g)(4)(i) and (ii) of this section that are used to better identify exports of certain end item firearms under the EAR. Paragraph (g)(4)(i) is limited to certain EAR authorizations. Paragraph (g)(4)(ii) applies to all EAR authorizations that require EEI filing in AES.

(i) *Identifying end item firearms by manufacturer, model, caliber, and serial number in the EEI filing in AES.* For any export authorized under License Exception TMP or a BIS license authorizing a temporary export of items controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other required data for the associated EEI filing, you must report the manufacturer, model, caliber, and serial number of the exported items. The requirements of this paragraph also apply to any other export authorized under a BIS license that includes a condition or proviso on the license requiring the submission of this information specified in paragraph (g) of this section when the EEI is filed in AES.

(ii) *Identifying end item firearms by "items" level classification or other control descriptor in the EEI filing in AES.* For any export of items controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, in addition to any other

39

required data for the associated EEI filing, you must include the six character ECCN classification (*i.e.*, 0A501.a, or 0A501.b), or for shotguns controlled under 0A502 the phrase "0A501 barrel length less than 18 inches" as the first text to appear in the Commodity description block in the EEI filing in AES.  (*See* § 743.4(h) for the use of this information for conventional arms reporting).

> **Note 2 to paragraph (g)(4):** *If a commodity described in paragraph (g)(4) is exported under License Exception TMP under § 740.9(a)(6) for inspection, test, calibration, or repair is not consumed or destroyed in the normal course of authorized temporary use abroad, the commodity must be disposed of or retained in one of the ways specified in § 740.9(a)(14)(i), (ii), or (iii).  For example, if a commodity described in paragraph (g)(4) was destroyed while being repaired after being exported under § 740.9(a)(6), the commodity described in paragraph (g)(4) would not be required to be returned.  If the entity doing the repair returned a replacement of the commodity to the exporter from the United States, the import would not require an EAR authorization.  The entity that exported the commodity described in paragraph (g)(4) and the entity that received the commodity would need to document this as part of their recordkeeping related to this export and subsequent import to the United States.*

\*   \*   \*   \*   \*

33.  Add § 758.10 to read as follows:

## § 758.10  Entry clearance requirements for temporary imports.

(a) *Scope.*  This section specifies the temporary import entry clearance requirements for firearms "subject to the EAR" that are on the United States Munitions Import List (USMIL, 27 CFR

WASHSTATEC005145

447.21), except for firearms "subject to the EAR" that are temporarily brought into the United

States by nonimmigrant aliens under the provisions of Department of Justice regulations at 27

CFR part 478 (*See* § 740.14(e) of License Exception BAG for information on the export of these

firearms "subject to the EAR").  These firearms are controlled in ECCN 0A501.a or .b or

shotguns with a barrel length less than 18 inches controlled in ECCN 0A502.  Items that are

temporarily exported under the EAR must have met the export clearance requirements specified

in § 758.1 of the EAR.

(1) An authorization under the EAR is *not* required for the temporary import of "items" that are

"subject to the EAR," including for "items" "subject to the EAR" that are on the USMIL.

Temporary imports of firearms described in this section must meet the entry clearance

requirements specified in paragraph (b) of this section.

 (2) Permanent imports are regulated by the Attorney General under the direction of the

Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (see 27 CFR parts

447, 478, 479, and 555).

(b) *EAR procedures for temporary imports and subsequent exports.*  To the satisfaction of U.S.

Customs and Border Protection, the temporary importer must comply with the following

procedures:

(1) At the time of entry into the U.S. of the temporary import:

(i) Provide one of the following statements specified in paragraphs (b)(1)(i)(A), (B), or

(C) of this section to U.S. Customs and Border Protection:

41

WASHSTATEC005146

(A) "This shipment is being temporarily imported in accordance with the EAR. This shipment will be exported in accordance with and under the authority of License Exception TMP (15 CFR 740.9(b)(5));"

(B) "This shipment is being temporarily imported in accordance with the EAR. This shipment will be exported in accordance with and under the authority of License Exception RPL (15 CFR 740.10(b));" or

(C) "This shipment is being temporarily imported in accordance with the EAR. This shipment will be exported in accordance with and under the authority of BIS license number (provide the license number) (15 CFR 750.7(a) and 758.4);"

(ii) Provide to U.S. Customs and Border Protection an invoice or other appropriate import-related documentation (or electronic equivalents) that includes a complete list and description of the firearms being temporarily imported, including their model, make, caliber, serial numbers, quantity, and U.S. dollar value;

(iii) Provide (if temporarily imported for a trade show, exhibition, demonstration, or testing) to U.S. Customs and Border Protection the relevant invitation or registration documentation for the event and an accompanying letter that details the arrangements to maintain effective control of the firearms while they are in the United States;

(iv) Provide (if temporarily imported for servicing or replacement) to U.S. Customs and Border Protection the name, address and contact information (telephone number and/or email) of the organization or individual in the U.S. that will be receiving the item for servicing or replacement).

42

*Note 1 to paragraph (b)(1):* In accordance with the exclusions in License Exception TMP under § 740.9(b)(5) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in a Country Group D:5 country; or that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured in a Country Group D:5 country, or from Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception TMP under § 740.9(b)(5).

*Note 2 to paragraph (b)(1):* In accordance with the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR, the entry clearance requirements in § 758.1(b)(9) do not permit the temporary import of: firearms controlled in ECCN 0A501.a or .b that are shipped from or manufactured in Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan (except for any firearm model controlled by proposed 0A501 that is specified under Annex A in Supplement No. 4 to part 740;); or shotguns with a barrel length less than 18 inches controlled in ECCN 0A502 that are shipped from or manufactured inin Russia, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Turkmenistan, Ukraine, or Uzbekistan, because of the exclusions in License Exception RPL under § 740.10(b)(4) and Supplement No. 2 to part 748 paragraph (z) of the EAR.

(2) At the time of export, in accordance with the U.S. Customs and Border Protection procedures, the eligible exporter, or an agent acting on the filer's behalf, must as required under § 758.1(b)(9) of the EAR file the export information with CBP by filing EEI in AES, noting the

43

WASHSTATEC005148

applicable EAR authorization as the authority for the export, and provide, upon request by CBP,

the entry document number or a copy of the CBP document under which the "item" subject to

the EAR" on the USMIL was temporarily imported.  *See* also the additional requirements in

§ 758.1(g)(4).

34.  Add § 758.11 to read as follows:

**§ 758.11  Export clearance requirements for firearms and related items.**

(a)  *Scope*.  The export clearance requirements of this section apply to all exports of commodities

controlled under ECCNs 0A501.a or .b, shotguns with a barrel length less than 18 inches

controlled under ECCN 0A502, or ammunition controlled under ECCN 0A505 except for .c,

regardless of value or destination, including exports to Canada, that are authorized under License

Exception BAG, as set forth in §740.14.

(b) *Required form*.  Prior to making any export described in paragraph (a) of this section, the

exporter is required to submit a properly completed Department of Homeland Security, CBP

Form 4457, (Certificate of Registration for Personal Effects Taken Abroad) (OMB Control

Number 1651-0010), to the U.S. Customs and Border Protection (CBP), pursuant to 19 CFR

148.1, and as required by this section of the EAR.

(1) Where to obtain the form?  The CBP Certification of Registration Form 4457 can be found

on the following CBP website:

WASHSTATEC005149

https://www.cbp.gov/document/forms/form-4457-certificate-registration-personal-effects-taken-abroad

(2) Required "description of articles" for firearms to be included on the CBP Form 4457.  For all exports of firearms controlled under ECCNs 0A501.a or .b, or shotguns with a barrel length less than 18 inches controlled under ECCN 0A502, the exporter must provide to CBP the serial number, make, model, and caliber for each firearm being exported by entering this information under the "Description of Articles" field of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad.

(c) *Where to find additional information on the CBP Form 4457*?

*See* the following CBP website page for additional information:

https://help.cbp.gov/app/answers/detail/a_id/323/~/traveling-outside-of-the-u.s.---temporarily-taking-a-firearm%2C-rifle%2C-gun%2C.

(d) *Return of items exported pursuant to this section*.  The exporter when returning with a commodity authorized under License Exception BAG and exported pursuant this section, is required to present a copy of the CBP Form 4457, Certificate of Registration for Personal Effects Taken Abroad) (OMB Control Number 1651-0010), to CBP, pursuant to 19 CFR 148.1, and as required by this section of the EAR.

**PART 762 – RECORDKEEPING**

35.  The authority citation for part 762 is revised to read as follows:

45

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

36.  Section 762.2 is amended by removing "and," at the end of paragraph (a)(10), redesignating paragraph (a)(11) as paragraph (a)(12), and adding a new paragraph (a)(11) to read as follows:

**§ 762.2 Records to be retained.**

(a)  *  *  *

(11) The serial number, make, model, and caliber for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502 that have been exported.  The "exporter" or any other party to the transaction (*see* § 758.3 of the EAR), that creates or receives such records is a person responsible for retaining this record; and

*  *  *  *  *

37.  Section 762.3 is amended by revising paragraph (a)(5) to read as follows:

**§ 762.3 Records exempt from recordkeeping requirements.**

(a)  *  *  *

46

WASHSTATEC005151

(5)  Warranty certificate, except for a warranty certificate issued for an address located outside the United States for any firearm controlled in ECCN 0A501.a and for shotguns with barrel length less than 18 inches controlled in 0A502;

*  *  *  *  *


## PART 772 – DEFINITIONS OF TERMS

38.  The authority citation for part 772 is revised to read as follows:

**Authority:**  50 U.S.C. 4801-4852; 50 U.S.C. 4601 *et seq.*; 50 U.S.C. 1701 *et seq.*; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

## § 772.1 – [AMENDED]

39.  In § 772.1, in the definition of "specially designed," Note 1 is amended by removing "0B986" and adding in its place "0B505.c"; and the definition of "complete breech mechanisms" is added as set forth below:

## § 772.1 Definitions of terms as used in the Export Administration Regulations (EAR).

*  *  *  *  *

*Complete breech mechanisms*.  The mechanism for opening and closing the breech of a breech-loading firearm, especially of a heavy-caliber weapon.

*  *  *  *  *

WASHSTATEC005152

## PART 774 - THE COMMERCE CONTROL LIST

40. The authority citation for 15 CFR part 774 is revised to read as follows:

**Authority:** 50 U.S.C. 4801-4852; 50 U.S.C. 4601 et seq.; 50 U.S.C. 1701 et seq.; 10 U.S.C. 7420; 10 U.S.C. 7430(e); 22 U.S.C. 287c, 22 U.S.C. 3201 *et seq.*; 22 U.S.C. 6004; 42 U.S.C. 2139a; 15 U.S.C. 1824a; 50 U.S.C. 4305; 22 U.S.C. 7201 *et seq.*; 22 U.S.C. 7210; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; Notice of August 8, 2018, 83 FR 39871 (August 13, 2018).

41.  In Supplement No. 1 to part 774, Category 0, revise Export Control Classification Number (ECCN) 0A018 to read as follows:

## Supplement No. 1 to Part 774 – The Commerce Control List

\*   \*   \*   \*   \*

## 0A018 Items on the Wassenaar Munitions List (see List of Items Controlled).

No items currently are in this ECCN.  See ECCN 0A505 for "parts" and "components" for ammunition that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b.

48

42.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A018 and 0A521, entries for ECCNs 0A501, 0A502, 0A503, 0A504, and 0A505 to read as follows:

**0A501 Firearms (except 0A502 shotguns) and related commodities as follows (see List of Items controlled).**

**License Requirements**

*Reason for Control:* NS, RS, FC, UN, AT

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
|---|---|
| NS applies to entire entry except 0A501.y | NS Column 1 |
| RS applies to entire entry except 0A501.y | RS Column 1 |
| FC applies to entire entry except 0A501.y | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

*License Requirement Note:* In addition to using the Commerce Country Chart to determine license requirements, a license is required for exports and reexports of ECCN 0A501.y.7 firearms to the People's Republic of China.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*  $500 for 0A501.c, .d, and .x.

49

WASHSTATEC005154

$500 for 0A501.c, .d, .e, and .x if the ultimate destination is Canada.

*GBS*: N/A

*CIV*: N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in this entry.

**List of Items Controlled**

*Related Controls*: (1) Firearms that are fully automatic, and magazines with a capacity of greater than 50 rounds, are "subject to the ITAR."  (2) See ECCN 0A502 for shotguns and their "parts" and "components" that are subject to the EAR.  Also see ECCN 0A502 for shot-pistols.  (3) See ECCN 0A504 and USML Category XII for controls on optical sighting devices.

*Related Definitions*: N/A

*Items:*

a.     Non-automatic and semi-automatic firearms equal to .50 caliber (12.7 mm) or less.

WASHSTATEC005155

*Note 1 to paragraph 0A501.a:* '*Combination pistols*' *are controlled under ECCN 0A501.a.  A* '*combination pistol*' *(a.k.a., a combination gun) has at least one rifled barrel and at least one smoothbore barrel (generally a shotgun style barrel).*

b.      Non-automatic and non-semi-automatic rifles, carbines, revolvers or pistols with a caliber greater than .50 inches (12.7 mm) but less than or equal to .72 inches (18.0 mm).

c.      The following types of "parts" and "components" if "specially designed" for a commodity controlled by paragraph .a or .b of this entry, or USML Category I (unless listed in USML Category I(g) or (h)):  barrels, cylinders, barrel extensions, mounting blocks (trunnions), bolts, bolt carriers, operating rods, gas pistons, trigger housings, triggers, hammers, sears, disconnectors, pistol grips that contain fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors) and buttstocks that contain fire control "parts" or "components."

d.      Detachable magazines with a capacity of greater than 16 rounds "specially designed" for a commodity controlled by paragraph .a or .b of this entry.

*Note 2 to paragraph 0A501.d:* *Magazines with a capacity of 16 rounds or less are controlled under 0A501.x.*

e.      Receivers (frames) and "complete breech mechanisms," including castings, forgings stampings, or machined items thereof, "specially designed" for a commodity by controlled by paragraph .a or .b of this entry.

f. through w. [Reserved]

51

WASHSTATEC005156

x.      "Parts" and "components" that are "specially designed" for a commodity classified under paragraphs .a through .c of this entry or the USML and not elsewhere specified on the USML or CCL.

y.      Specific "parts," "components," "accessories" and "attachments" "specially designed" for a commodity subject to control in this ECCN or common to a defense article in USML Category I and not elsewhere specified in the USML or CCL as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor.

y.1.    Stocks or grips, that do not contain any fire control "parts" or "components" (*e.g.*, triggers, hammers, sears, disconnectors);"

y.2.    Scope mounts or accessory rails;

y.3.    Iron sights;

y.4.    Sling swivels;

y.5.    Butt plates or recoil pads;

y.6.    Bayonets; and

y.7.    Firearms manufactured from 1890 to 1898 and reproductions thereof.

***Technical Note 1 to 0A501:*** *The controls on "parts" and "components" in ECCN 0A501 include those "parts" and "components" that are common to firearms described in ECCN 0A501 and to those firearms "subject to the ITAR."*

52

WASHSTATEC005157

*Note 3 to 0A501:*  *Antique firearms (i.e., those manufactured before 1890) and reproductions thereof, muzzle loading black powder firearms except those designs based on centerfire weapons of a post 1937 design, BB guns, pellet rifles, paint ball, and all other air rifles are EAR99 commodities.*

*Note 4 to 0A501:* *Muzzle loading (black powder) firearms with a caliber less than 20 mm that were manufactured later than 1937 that are used for hunting or sporting purposes that were not "specially designed" for military use and are not "subject to the ITAR" nor controlled as shotguns under ECCN 0A502 are EAR99 commodities.*

**0A502 Shotguns; shotguns "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes; "complete breech mechanisms;" except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use.**

**License Requirements**

*Reason for Control*:   RS, CC, FC, UN, AT, NS

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
|---|---|
| NS applies to shotguns with a barrel length less than 18 inches (45.72 cm) | NS Column 1 |
| RS applies to shotguns with a barrel | RS Column 1 |

WASHSTATEC005158

| | |
|---|---|
| length less than 18 inches (45.72 cm) | |
| FC applies to entire entry | FC Column 1 |
| CC applies to shotguns with a barrel length less than 24 in. (60.96 cm) and shotgun "components" controlled by this entry regardless of end user | CC Column 1 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm), regardless of end user | CC Column 2 |
| CC applies to shotguns with a barrel length greater than or equal to 24 in. (60.96 cm) if for sale or resale to police or law enforcement | CC Column 3 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to shotguns with a barrel length less than 18 inches (45.72 cm) | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

 *LVS:*   $500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes.

   $500 for 0A502 shotgun "parts" and "components," consisting of complete trigger mechanisms; magazines and magazine extension tubes, "complete breech

54

WASHSTATEC005159

mechanisms" if the ultimate destination is Canada.

*GBS:*   N/A

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*:  Shotguns that are fully automatic are "subject to the ITAR."

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

**Note 1 to 0A502:** *Shotguns made in or before 1898 are considered antique shotguns and designated as EAR99.*

**Technical Note:** *Shot pistols or shotguns that have had the shoulder stock removed and a pistol grip attached are controlled by ECCN 0A502.  Slug guns are also controlled under ECCN 0A502.*

**0A503 Discharge type arms; non-lethal or less-lethal grenades and projectiles, and "specially designed" "parts" and "components" of those projectiles; and devices to administer electric shock, for example, stun guns, shock batons, shock shields, electric cattle prods, immobilization guns and projectiles; except equipment used exclusively to treat or tranquilize animals, and except arms designed solely for signal, flare, or saluting use; and "specially designed" "parts" and "components," n.e.s.**

**License Requirements**

*Reason for Control:*  CC, UN

WASHSTATEC005160

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | A license is required for ALL destinations, except Canada, regardless of end use.  Accordingly, a column specific to this control does not appear on the Commerce Country Chart.  (See part 742 of the EAR for additional information). |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

 *LVS:* N/A

 *GBS:* N/A

 *CIV:* N/A

**List of Items Controlled**

 *Related Controls*: Law enforcement restraint devices that administer an electric shock are controlled under ECCN 0A982.  Electronic devices that monitor and report a person's location to enforce restrictions on movement for law enforcement or penal reasons are controlled under ECCN 3A981.

 *Related Definitions*: N/A

 *Items*: The list of items controlled is contained in the ECCN heading.

WASHSTATEC005161

**0A504 Optical sighting devices for firearms (including shotguns controlled by 0A502); and "components" as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* FC, RS, CC, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| RS applies to paragraph .i | RS Column 1 |
| FC applies to paragraphs .a, .b, .c, d, .e, .g, and .i of this entry | FC Column 1 |
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See §746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $500 for 0A504.g.

*GBS:* N/A

*CIV:* N/A

**List of Items Controlled**

*Related Controls:* (1) See USML Category XII(c) for sighting devices using second generation image intensifier tubes having luminous sensitivity greater than 350 μA/lm, or third generation or higher image intensifier tubes, that are "subject to the ITAR." (2) See USML Category XII(b) for laser aiming or laser illumination systems "subject to the ITAR." (3) Section 744.9 of the EAR imposes a license requirement on certain commodities described in

WASHSTATEC005162

0A504 if being exported, reexported, or transferred (in-country) for use by a military end-user or for incorporation into an item controlled by ECCN 0A919.

*Related Definitions:* N/A

*Items:*

a.      Telescopic sights.

b.      Holographic sights.

c.      Reflex or "red dot" sights.

d.      Reticle sights.

e.      Other sighting devices that contain optical elements.

f.      Laser aiming devices or laser illuminators ''specially designed'' for use on firearms, and having an operational wavelength exceeding 400 nm but not exceeding 710 nm.


**Note 1 to 0A504.f:** *0A504.f does not control laser boresighting devices that must be placed in the bore or chamber to provide a reference for aligning the firearms sights.*


g.      Lenses, other optical elements and adjustment mechanisms for articles in paragraphs .a, .b, .c, .d, .e, or .i.

h.      [Reserved]

i.      Riflescopes that were not "subject to the EAR" as of [INSERT DATE ONE DAY PRIOR TO THE EFFECTIVE DATE OF THE FINAL RULE] and are "specially designed" for use in firearms that are "subject to the ITAR."

58

*Note 2 to paragraph i:*  For purpose of the application of "specially designed" for the riflescopes controlled under 0A504.i, paragraph (a)(1) of the definition of "specially designed" in § 772.1 of the EAR is what is used to determine whether the riflescope is "specially designed."

**0A505  Ammunition as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, CC, FC, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to 0A505.a and .x | NS Column 1 |
| RS applies to 0A505.a and .x | RS Column 1 |
| CC applies to 0A505.b | CC Column 1 |
| FC applies to entire entry except 0A505.d | FC Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to 0A505.a, .d,  and .x | AT Column 1 |
| AT applies to 0A505.c | A license is required for items controlled by paragraph .c of this entry to North Korea for anti-terrorism reasons.  The Commerce Country Chart is not designed to determine AT licensing requirements for this entry.  See §742.19 of the EAR for additional information. |

59

WASHSTATEC005164

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500 for items in 0A505.x, except $3,000 for items in 0A505.x that, immediately prior to [INSERT DATE 45 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER], were classified under 0A018.b. (*i.e.*, "Specially designed" components and parts for ammunition, except cartridge cases, powder bags, bullets, jackets, cores, shells, projectiles, boosters, fuses and components, primers, and other detonating devices and ammunition belting and linking machines (all of which are "subject to the ITAR"). (See 22 CFR parts 120 through 130))

*GBS*: N/A

*CIV*: N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A505.

**List of Items Controlled**

*Related Controls*:  (1) Ammunition for modern heavy weapons such as howitzers, artillery, cannon, mortars and recoilless rifles as well as inherently military ammunition types such as ammunition preassembled into links or belts, caseless ammunition, tracer ammunition, ammunition with a depleted uranium projectile or a projectile with a hardened tip or core and ammunition with an explosive projectile are "subject to the ITAR."  (2) Percussion caps, and lead balls and bullets, for use with muzzle-loading firearms are EAR99 items.

*Related Definitions*:  N/A

WASHSTATEC005165

*Items*:

a.      Ammunition for firearms controlled by ECCN 0A501 or USML Category I and not enumerated in paragraph .b, .c, or .d of this entry or in USML Category III.

b.      Buckshot (No. 4 .24'' diameter and larger) shotgun shells.

c.      Shotgun shells (including less than lethal rounds) that do not contain buckshot; and "specially designed" "parts" and "components" of shotgun shells.

      ***Note 1 to 0A505.c:***  *Shotgun shells that contain only chemical irritants are controlled under ECCN 1A984.*

d.      Blank ammunition for firearms controlled by ECCN 0A501 and not enumerated in USML Category III.

e. through w. [Reserved]

x.      "Parts" and "components" that are "specially designed" for a commodity subject to control in this ECCN or a defense article in USML Category III and not elsewhere specified on the USML, the CCL or paragraph .d of this entry.

      ***Note 2 to 0A505.x:*** *The controls on "parts" and "components" in this entry include Berdan and boxer primers, metallic cartridge cases, and standard metallic projectiles such as full metal jacket, lead core, and copper projectiles.*

WASHSTATEC005166

*Note 3 to 0A505.x:*   *The controls on "parts" and "components" in this entry include those "parts" and "components" that are common to ammunition and ordnance described in this entry and to those enumerated in USML Category III.*

*Note 4 to 0A505:* *Lead shot smaller than No. 4 Buckshot, empty and unprimed shotgun shells, shotgun wads, smokeless gunpowder, 'Dummy rounds' and blank rounds (unless linked or belted), not incorporating a lethal or non-lethal projectile(s) are designated EAR99.  A 'dummy round or drill round' is a round that is completely inert, i.e., contains no primer, propellant, or explosive charge.  It is typically used to check weapon function and for crew training.*

43.  In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0A521 and 0A604, an entry for ECCN 0A602 to read as follows:

**0A602  Guns and Armament as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
|---|---|
| NS applies to entire entry | NS Column 1 |

62

WASHSTATEC005167

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions** (See Part 740 for a description of all license exceptions)

*LVS:* $500

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0A602.

**List of Items Controlled**

*Related Controls*: (1) Modern heavy weapons such as howitzers, artillery, cannon, mortars, and recoilless rifles are "subject to the ITAR."  (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.  (3) See ECCN 0A606 for engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or USML Category VII.

63

WASHSTATEC005168

*Related Definitions*:  N/A

*Items*:

a.      Guns and armament manufactured between 1890 and 1919.

b.      Military flame throwers with an effective range less than 20 meters.

c. through w.   [Reserved]

x.       "Parts" and "components" that are "specially designed" for a commodity subject to control in paragraphs .a or .b of this ECCN or a defense article in USML Category II and not elsewhere specified on the USML or the CCL.

*Note 1 to 0A602.x: Engines that are "specially designed" for a self-propelled gun or howitzer subject to control under paragraph .a of this ECCN or a defense article in USML Category VII are controlled under ECCN 0A606.x.*

*Note 2 to 0A602:  "Parts," "components," "accessories," and "attachments" specified in USML subcategory II(j) are subject to the controls of that paragraph.*

*Note 3 to 0A602:  Black powder guns and armament manufactured in or prior to 1890 and replicas thereof designed for use with black powder propellants are designated EAR99.*

**Supplement No. 1 to Part 774 – [AMENDED]**

64

44.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0A918, 0A984, 0A985, 0A986, and 0A987.

45.  In Supplement No. 1 to part 774, Category 0, revise ECCN 0A988 to read as follows:

**0A988  Conventional military steel helmets.**

No items currently are in this ECCN.  See ECCN 1A613.y.1 for conventional steel helmets that, immediately prior to July 1, 2014, were classified under 0A988.

46.  In Supplement No. 1 to part 774, Category 0, add, before the entry for ECCN 0B521, entries for ECCNs 0B501 and 0B505 to read as follows:

**0B501 Test, inspection, and production "equipment" and related commodities for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A501 or USML Category I as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*:  NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except equipment | NS Column 1 |

WASHSTATEC005170

| | |
|---|---|
| for ECCN 0A501.y | |
| RS applies to entire entry except equipment for ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA:*  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any item in this entry.

**List of Items Controlled**

*Related Controls:* N/A

*Related Definitions:* N/A

*Items:*

66

WASHSTATEC005171

a.      Small arms chambering machines.

b.      Small arms deep hole drilling machines and drills therefor.

c.      Small arms rifling machines.

d.      Small arms spill boring machines.

e.      Production equipment (including dies, fixtures, and other tooling) "specially designed"
for the "production" of the items controlled in 0A501.a through .x. or USML Category I.


**0B505 Test, inspection, and production "equipment" and related commodities "specially
designed" for the "development" or "production" of commodities enumerated or otherwise
described in ECCN 0A505 or USML Category III, except equipment for the hand loading
of cartridges and shotgun shells, as follows (see List of Items Controlled).**


**License Requirements**

   *Reason for Control:* NS, RS, UN, AT

| *Control(s)* | *Country Chart (See Supp. No. 1 to part 738)* |
| --- | --- |
| NS applies to paragraphs .a and .x | NS Column 1 |
| RS applies to paragraphs .a and .x | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to paragraphs  .a, .d, and .x | AT Column 1 |
| AT applies to paragraph .c | A license is required for export or reexport of |

67

WASHSTATEC005172

| | these items to North Korea for anti-terrorism reasons. |
|---|---|

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA:*  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B505.

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

a.    Production equipment (including tooling, templates, jigs, mandrels, molds, dies, fixtures, alignment mechanisms, and test equipment), not enumerated in USML Category III that are "specially designed" for the "production" of commodities controlled by ECCN 0A505.a or .x or USML Category III.

b.    Equipment "specially designed" for the "production" of commodities in ECCN 0A505.b.

68

c.      Equipment "specially designed" for the "production" of commodities in ECCN 0A505.c.

d.      Equipment "specially designed" for the "production" of commodities in ECCN 0A505.d.

e. through .w    [Reserved]

x.      "Parts" and "components" "specially designed" for a commodity subject to control in paragraph .a of this entry.

47. In Supplement No. 1 to part 774, Category 0, add, between entries for ECCNs 0B521 and 0B604, an entry for ECCN 0B602 to read as follows:

**0B602 Test, inspection, and production "equipment" and related commodities "specially designed" for the "development" or "production" of commodities enumerated or otherwise described in ECCN 0A602 or USML Category II as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |

69

WASHSTATEC005174

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:* $3000

*GBS:* N/A

*CIV:* N/A

**Special conditions for STA**

*STA*: Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0B602.

**List of Items Controlled**

*Related Controls:* N/A

*Related Definitions:* N/A

*Items:*

a.       The following commodities if "specially designed" for the "development" or "production" of commodities enumerated in ECCN 0A602.a or USML Category II:

a.1.     Gun barrel rifling and broaching machines and tools therefor;

a.2.     Gun barrel rifling machines;

70

WASHSTATEC005175

a.3.    Gun barrel trepanning machines;

a.4.    Gun boring and turning machines;

a.5.    Gun honing machines of 6 feet (183 cm) stroke or more;

a.6.    Gun jump screw lathes;

a.7.    Gun rifling machines; and

a.8.    Barrel straightening presses.

b.    Jigs and fixtures and other metal-working implements or accessories of the kinds

exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

c.    Other tooling and equipment, "specially designed" for the "production" of items in

ECCN 0A602 or USML Category II.

d.    Test and evaluation equipment and test models, including diagnostic instrumentation and

physical test models, "specially designed" for items in ECCN 0A602 or USML Category II.

**Supplement No. 1 to Part 774 – [AMENDED]**

48. In Supplement No. 1 to part 774, Category 0, remove ECCN 0B986.

49. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs

0D001 and 0D521, entries for ECCNs 0D501 and 0D505 to read as follows:

WASHSTATEC005176

**0D501  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A501 or 0B501.**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | NS Column 1 |
| RS applies to entire entry except "software" for commodities in ECCN 0A501.y or equipment in ECCN 0B501 for commodities in ECCN 0A501.y | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

72

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D501.

**List of Items Controlled**

*Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category I is "subject to the ITAR".

*Related Definitions*:  N/A

*Items*: The list of items controlled is contained in this ECCN heading.

**0D505  "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by 0A505 or 0B505.**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
|  |  |

WASHSTATEC005178

| NS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a .and .x | NS Column 1 |
|---|---|
| RS applies to "software" for commodities in ECCN 0A505.a and .x and equipment in ECCN 0B505.a and .x | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to "software" for commodities in ECCN 0A505.a, .d, or .x and equipment in ECCN 0B505.a, .d, or .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "software" in 0D505.

**List of Items Controlled**

74

WASHSTATEC005179

*Related Controls*:  "Software" required for and directly related to articles enumerated in USML Category III is "subject to the ITAR".

*Related Definitions*:  N/A

*Items*: The list of items controlled is contained in this ECCN heading.

50. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0D521 and 0D604, an entry for ECCN 0D602 to read as follows:

**0D602  "Software" "specially designed" for the "development," "production," operation or maintenance of commodities controlled by 0A602 or 0B602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control:* NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

75

WASHSTATEC005180

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

    *CIV*:  N/A

    *TSR*:  N/A

**Special conditions for STA**

    *STA*:   Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0D602.

**List of Items Controlled**

    *Related Controls*:  (1) "Software" required for and directly related to articles enumerated in USML Category II is "subject to the ITAR".   (2) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S.-origin "600 series" items.

    *Related Definitions*:  N/A

    *Items*:   "Software" "specially designed" for the "development," "production," operation, or maintenance of commodities controlled by ECCN 0A602 and ECCN 0B602.

WASHSTATEC005181

51. In Supplement No. 1 to part 774, Category 0, remove ECCN 0E018.

52. In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E001 and 0E521, entries for ECCNs 0E501, 0E502, 0E504, and 0E505 to read as follows:

**0E501 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by 0A501 or 0B501 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

WASHSTATEC005182

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used to ship any "technology" in ECCN 0E501.

**List of Items Controlled**

*Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR."

*Related Definitions*: N/A

*Items*:

a.      "Technology" "required" for the "development" or "production" of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

b.      "Technology" "required" for the operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A501 (other than 0A501.y) or 0B501.

78

**0E502  "Technology" "required" for the "development" or "production" of commodities controlled by 0A502.**

**License Requirements**

*Reason for Control*:  CC, UN

| Controls | Country Chart (See Supp. No. 1 part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

*Related Controls*: Technical data required for and directly related to articles enumerated in USML Category I are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

79

WASHSTATEC005184

**0E504 ''Technology'' ''required'' for the ''development'' or ''production'' of commodities controlled by 0A504 that incorporate a focal plane array or image intensifier tube.**

**License Requirements**

*Reason for Control:* RS, UN, AT

| Controls | Country Chart (See Supp. No. 1 part 738) |
|---|---|
| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1(b) of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in the ECCN heading.

WASHSTATEC005185

**0E505 "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A505.**

**License Requirements**

*Reason for Control:* NS, RS, UN, CC, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in 0B505; and for "software" for that equipment and those commodities in 0D505 | NS Column 1 |
| RS applies to entire entry except "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a and .x; for equipment for those commodities in | RS Column 1 |

81

| | |
|---|---|
| 0B505 and for "software" for those commodities and that equipment in 0D505 | |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| CC applies to "technology" for the "development" or "production" of commodities in 0A505.b | CC Column 1 |
| AT applies to "technology" for "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing commodities in 0A505.a, .d, and .x | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

  *CIV*:  N/A

  *TSR*:  N/A

**Special conditions for STA**

  *STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any "technology" in 0E505.

WASHSTATEC005187

**List of Items Controlled**

*Related Controls*:  Technical data required for and directly related to articles enumerated in USML Category III are "subject to the ITAR".

*Related Definitions*: N/A

*Items*: The list of items controlled is contained in this ECCN heading.

53.  In Supplement No. 1 to part 774, Category 0, add, between the entries for ECCNs 0E521 and 0E604, an entry for ECCN 0E602:

**0E602  "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, overhaul, or refurbishing of commodities controlled by 0A602 or 0B602, or "software" controlled by 0D602 as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, RS, UN, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 1 |

WASHSTATEC005188

| RS applies to entire entry | RS Column 1 |
| UN applies to entire entry | See § 746.1 of the EAR for UN controls |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV*:  N/A

*TSR*:  N/A

**Special conditions for STA**

*STA*:  Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 0E602.

**List of Items Controlled**

*Related Controls*:  Technical data directly related to articles enumerated in USML Category II are "subject to the ITAR."

*Related Definitions*: N/A

*Items*:  "Technology" "required" for the "development," "production," operation, installation, maintenance, repair, or overhaul of commodities controlled by ECCN 0A602 or 0B602, or "software" controlled by ECCN 0D602.

84

WASHSTATEC005189

**Supplement No. 1 to Part 774 – [AMENDED]**

54. In Supplement No. 1 to part 774, Category 0, remove ECCN 0E918.

55. In Supplement No. 1 to part 774, Category 0, revise ECCN 0E982 to read as follows.

**0E982 "Technology" exclusively for the "development" or "production" of equipment controlled by 0A982 or 0A503.**

**License Requirements**

*Reason for Control:*   CC

| *Control(s)* |
| --- |
| CC applies to "technology" for items controlled by 0A982 or 0A503.  A license is required for ALL destinations, except Canada, regardless of end use.  Accordingly, a column specific to this control does not appear on the Commerce Country Chart.  (See part 742 of the EAR for additional information.) |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

WASHSTATEC005190

*CIV:*   N/A

*TSR:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

**Supplement No. 1 to Part 774 – [AMENDED]**

56.  In Supplement No. 1 to part 774, Category 0, remove ECCNs 0E984 and 0E987.

57.  In Supplement No. 1 to part 774, Category 1, revise ECCN 1A984 to read as follows:

**1A984   Chemical agents, including tear gas formulation containing 1 percent or less of orthochlorobenzalmalononitrile (CS), or 1 percent or less of chloroacetophenone (CN), except in individual containers with a net weight of 20 grams or less; liquid pepper except when packaged in individual containers with a net weight of 3 ounces (85.05 grams) or less;**

WASHSTATEC005191

**smoke bombs; non-irritant smoke flares, canisters, grenades and charges; and other pyrotechnic articles (excluding shotgun shells, unless the shotgun shells contain only chemical irritants) having dual military and commercial use, and "parts" and "components" "specially designed" therefor, n.e.s.**

**License Requirements**

*Reason for Control*:   CC

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| CC applies to entire entry | CC Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS:*   N/A

*GBS:*   N/A

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

WASHSTATEC005192

58. In Supplement No. 1 to part 774, Category 2, revise ECCN 2B004 to read as follows:

**2B004 Hot "isostatic presses" having all of the characteristics described in the List of Items Controlled, and "specially designed" "components" and "accessories" therefor.**

**License Requirements**

*Reason for Control*:  NS, MT NP, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to entire entry | NS Column 2 |
| MT applies to entire entry | MT Column 1 |
| NP applies to entire entry, except 2B004.b.3 and presses with maximum working pressures below 69 MPa | NP Column 1 |
| AT applies to entire entry | AT Column 1 |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*LVS*:   N/A

*GBS*:   N/A

WASHSTATEC005193

*CIV:*   N/A

**List of Items Controlled**

*Related Controls*:  (1) See ECCN 2D001 for software for items controlled under this entry. (2) See ECCNs 2E001 ("development"), 2E002 ("production"), and 2E101 ("use") for technology for items controlled under this entry. (3) For "specially designed" dies, molds and tooling, see ECCNs 0B501, 0B602, 0B606, 1B003, 9B004, and 9B009.  (4) For additional controls on dies, molds and tooling, see ECCNs 1B101.d, 2B104, and 2B204.  (5) Also see ECCNs 2B117 and 2B999.a.

*Related Definitions*: N/A

*Items*:

a. A controlled thermal environment within the closed cavity and possessing a chamber cavity with an inside diameter of 406 mm or more; *and*

b. Having any of the following:

b.1. A maximum working pressure exceeding 207 MPa;

b.2. A controlled thermal environment exceeding 1,773 K (1,500 °C); *or*

WASHSTATEC005194

b.3. A facility for hydrocarbon impregnation and removal of resultant gaseous degradation products.

*Technical Note: The inside chamber dimension is that of the chamber in which both the working temperature and the working pressure are achieved and does not include fixtures. That dimension will be the smaller of either the inside diameter of the pressure chamber or the inside diameter of the insulated furnace chamber, depending on which of the two chambers is located inside the other.*

59.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2B018 to read as follows:

**2B018  Equipment on the Wassenaar Arrangement Munitions List.**

No commodities currently are controlled by this entry.  Commodities formerly controlled by paragraphs .a through .d, .m, and .s of this entry are controlled in ECCN 0B606.  Commodities formerly controlled by paragraphs .e through .l of this entry are controlled by ECCN 0B602. Commodities formerly controlled by paragraphs .o through .r of this entry are controlled by ECCN 0B501.  Commodities formerly controlled by paragraph .n of this entry are controlled in ECCN 0B501 if they are "specially designed" for the "production" of the items controlled in ECCN 0A501.a through .x or USML Category I and controlled in ECCN 0B602 if they are of

90

the kind exclusively designed for use in the manufacture of items in ECCN 0A602 or USML Category II.

60.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2D018 to read as follows:

**2D018 "Software" for the "development," "production," or "use" of equipment controlled by 2B018.**

No software is currently controlled under this entry.  See ECCNs 0D501, 0D602, and 0D606 for software formerly controlled under this entry.

61.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E001 to read as follows:

**2E001 "Technology" according to the General Technology Note for the "development" of equipment or "software" controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999), or 2D (except 2D983, 2D984, 2D991, 2D992, or 2D994).**

**License Requirements**

*Reason for Control*:  NS, MT, NP, CB, AT

WASHSTATEC005196

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for items controlled by 2A001, 2B001 to 2B009, 2D001 or 2D002 | NS Column 1 |
| MT applies to "technology"  for items controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, 2B119 to 2B122, 2D001, or 2D101 for MT reasons | MT Column 1 |
| NP applies to "technology" for items controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233, 2D001, 2D002, 2D101, 2D201, or 2D202 for NP reasons | NP Column 1 |
| NP applies to "technology" for items controlled by 2A290, 2A291, or 2D290 for NP reasons | NP Column 2 |
| CB applies to "technology"  for equipment controlled by 2B350 to 2B352, valves controlled by 2A226 having the characteristics of those controlled by 2B350.g, and software controlled by 2D351 | CB Column 2 |

92

| AT applies to entire entry | AT Column 1 |
|---|---|

**Reporting Requirements**

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

**Special Conditions for STA**

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "development" of "software" specified in the License Exception STA paragraph in the License Exception section of ECCN 2D001 or for the "development" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

93

WASHSTATEC005198

**List of Items Controlled**

*Related Controls*: See also 2E101, 2E201, and 2E301

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

**Note 1 to 2E001:** *ECCN 2E001 includes "technology" for the integration of probe systems into coordinate measurement machines specified by 2B006.a.*

62.  In Supplement No. 1 to part 774, Category 2, revise ECCN 2E002 to read as follows:

**2E002 "Technology" according to the General Technology Note for the "production" of equipment controlled by 2A (except 2A983, 2A984, 2A991, or 2A994), or 2B (except 2B991, 2B993, 2B996, 2B997, 2B998, or 2B999).**

**License Requirements**

*Reason for Control*:  NS, MT, NP, CB, AT

| Control(s) | Country Chart (See Supp. No. 1 to part 738) |
|---|---|
| NS applies to "technology" for equipment | NS Column 1 |

94

| | |
|---|---|
| controlled by 2A001, 2B001 to 2B009 | |
| MT applies to "technology" for equipment controlled by 2B004, 2B009, 2B104, 2B105, 2B109, 2B116, 2B117, or 2B119 to 2B122 for MT reasons | MT Column 1 |
| NP applies to "technology" for equipment controlled by 2A225, 2A226, 2B001, 2B004, 2B006, 2B007, 2B009, 2B104, 2B109, 2B116, 2B201, 2B204, 2B206, 2B207, 2B209, 2B225 to 2B233 for NP reasons | NP Column 1 |
| NP applies to "technology" for equipment controlled by 2A290 or 2A291 for NP reasons | NP Column 2 |
| CB applies to "technology" for equipment Controlled by 2B350 to 2B352 and for valves controlled by 2A226 having the characteristics of those controlled by 2B350.g | CB Column 2 |
| AT applies to entire entry | AT Column 1 |

**Reporting Requirements**

WASHSTATEC005200

See § 743.1 of the EAR for reporting requirements for exports under License Exceptions, and Validated End-User authorizations.

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

*CIV:*   N/A

*TSR:*   Yes, except N/A for MT

**Special Conditions for STA**

*STA:*   License Exception STA may not be used to ship or transmit "technology" according to the General Technology Note for the "production" of equipment as follows: ECCN 2B001 entire entry; or "Numerically controlled" or manual machine tools as specified in 2B003 to any of the destinations listed in Country Group A:6 (See Supplement No.1 to part 740 of the EAR).

**List of Items Controlled**

*Related Controls*: N/A

*Related Definitions*: N/A

*Items*:

The list of items controlled is contained in the ECCN heading.

WASHSTATEC005201

63. In Supplement No. 1 to part 774, Category 7, revise ECCN 7A611 to read as follows:

**7A611  Military fire control, laser, imaging, and guidance equipment, as follows (see List of Items Controlled).**

**License Requirements**

*Reason for Control*: NS, MT, RS, AT, UN

| Control(s) | Country Chart (See Supp. No. 1 to part 738). |
|---|---|
| NS applies to entire entry except 7A611.y | NS Column 1 |
| MT applies to commodities in 7A611.a that meet or exceed the parameters in 7A103.b or .c | MT Column 1 |
| RS applies to entire entry except 7A611.y | RS Column 1 |
| AT applies to entire entry | AT Column 1 |
| UN applies to entire entry except 7A611.y | See § 746.1(b) of the EAR for UN controls |

**List Based License Exceptions (See Part 740 for a description of all license exceptions)**

WASHSTATEC005202

*LVS:* $1500

*GBS:* N/A

*CIV:* N/A

**Special Conditions for STA**

*STA:* Paragraph (c)(2) of License Exception STA (§ 740.20(c)(2) of the EAR) may not be used for any item in 7A611.

**List of Items Controlled**

*Related Controls*:  (1) Military fire control, laser, imaging, and guidance equipment that are enumerated in USML Category XII, and technical data (including software) directly related thereto, are subject to the ITAR.  (2) See Related Controls in ECCNs 0A504, 2A984, 6A002, 6A003, 6A004, 6A005, 6A007, 6A008, 6A107, 7A001, 7A002, 7A003, 7A005, 7A101, 7A102, and 7A103.  (3) See ECCN 3A611 and USML Category XI for controls on countermeasure equipment.  (4) See ECCN 0A919 for foreign-made "military commodities" that incorporate more than a *de minimis* amount of U.S. origin "600 series" controlled content.

*Related Definitions*: N/A

*Items*:

a. Guidance or navigation systems, not elsewhere specified on the USML, that are "specially designed" for a defense article on the USML or for a 600 series item.

b. to w. [RESERVED]

WASHSTATEC005203

x. "Parts," "components," "accessories," and "attachments," including accelerometers, gyros, angular rate sensors, gravity meters (gravimeters), and inertial measurement units (IMUs), that are "specially designed" for defense articles controlled by USML Category XII or items controlled by 7A611, and that are NOT:

1. Enumerated or controlled in the USML or elsewhere within ECCN 7A611;

2. Described in ECCNs 6A007, 6A107, 7A001, 7A002, 7A003, 7A101, 7A102, or 7A103; or

3. Elsewhere specified in ECCN 7A611.y or 3A611.y.

y. Specific "parts," "components," "accessories," and "attachments" "specially designed" for a commodity subject to control in this ECCN or a defense article in Category XII and not elsewhere specified on the USML or in the CCL, as follows, and "parts," "components," "accessories," and "attachments" "specially designed" therefor:

y.1 [RESERVED]

Dated:

**Richard E. Ashooh**

*Assistant Secretary for Export Administration.*

WASHSTATEC005204

<u>Summary of Revisions to USML Categories I, II, and III</u>

In 2009, the interagency began a review of the U.S. export control system, with the goal of strengthening national security and the competitiveness of key U.S. manufacturing and technology sectors by focusing on current threats, as well as adapting to the changing economic and technological landscape.  This review determined that the then-current export control system was overly complicated, contained too many redundancies, and, in trying to protect too much, diminished our ability to focus our efforts on the most critical national security priorities.

To this end, the Departments of State and Commerce have been reviewing and revising the two primary lists of controlled items, i.e., the United States Munitions List (USML) and the Commerce Control List (CCL).  A key strategy in the reform effort  has been to construct the lists so they positively identify the items they control.  Thus, for example, the USML lists the specific types of parts, components, accessories, and attachments that warrant control under the International Traffic in Arms Regulations (ITAR) rather than all generic "parts," "components," "accessories and attachments" that are in any way "specifically designed, modified, adapted, or configured" for a defense article, regardless of military significance (as is currently the case for unrevised USML categories).  All other generic parts, components, accessories, and attachments and the technology for their "production," "development," or "use" that are "specially designed" for an item formerly on the USML but not specifically identified on the USML will become subject to the jurisdiction of the Export Administration Regulations (EAR) and identified on its CCL.

In connection with this effort, the Department of State has published 26 final, or interim final, rules revising 18 of the 21 USML categories.  In May 2018, the Department of State published proposed revisions of the remaining three USML Categories, including Category I (firearms and related articles), II (guns and armaments) and III (ammunition and ordnance), which follow this model of utilizing a "positive list" for controls.  Articles that are not positively identified on the USML will continue to be controlled, albeit under the jurisdiction of the EAR.

In February 2019, the Department of State formally notified Congress of the transfer of jurisdictional control of certain classes of items in Categories, I, II, and III. The Department of State is submitting a new notification to Congress because the Department of Commerce has amended certain controls in its draft companion rule. In particular, in order to address concerns raised by some members of Congress and the public regarding certain access to 3D printing technology and

1

WASHSTATEC005205

software for firearms, the Department of Commerce has revised its draft final rule to make certain technology and software capable of producing firearms subject to the EAR when posted on the internet under specified circumstances.  The Department of State has not made any changes to the classes of items in Categories I, II, or III that it is proposing to remove from the USML from the time that the Department of State notified Congress in February 2019.

### Category I—Firearms and Related Articles

Paragraph (a) is revised by limiting the scope of the control to firearms using caseless ammunition. Non-automatic and semi-automatic firearms that do not use caseless ammunition will be controlled in Export Control Classification Number (ECCN) 0A501 on the CCL, except for firearms manufactured prior to 1890.

Paragraph (b) is non-substantively revised.

Paragraph (c) is revised by limiting the scope to firearms specially designed to integrate fire control, automatic tracking, or automatic firing (*e.g.*, Precision Guided Firearms). Other weapons that were controlled here will be controlled in ECCN 0A501.

Paragraph (d) is revised by limiting the scope to fully automatic shotguns. Other shotguns that were controlled here will be controlled in ECCN 0A502.

Paragraph (e) is revised by removing flash suppressors and moving certain parts and components for the remaining items in paragraph (e) to paragraph (h)(3). Flash suppressors will be controlled in ECCN 0A501.

Paragraph (f) is reserved. Riflescopes with night vision or infrared were moved to USML Category XII(c)(2) in 2016 through 81 FR 70340. All other rifle scopes that were controlled here will be controlled in ECCN 0A504.

Paragraph (g) is revised to more clearly delineate the major components of USML firearms that are controlled. The major parts and components of firearms that transition to the CCL will be controlled in ECCN 0A501.

Paragraph (h) is revised by adding four subparagraphs to specifically enumerate the articles controlled. The parts, components, accessories, and attachments of firearms that transition to the CCL will be controlled in ECCN

2

WASHSTATEC005206

0A501, as will any parts, components, accessories, and attachments of USML firearms that are not listed in paragraphs (g) or (h).

Paragraph (i) is revised to add control for the classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data.

A new paragraph (x) has been added to USML Category I, allowing ITAR licensing on behalf of the Department of Commerce for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category XII and are described in the purchase documentation submitted with the application.

**Category II— Guns and Armament**

Paragraph (a) is revised by adding five subparagraphs to specifically enumerate the articles controlled, including adding a control for DOD-funded development guns and armaments and their specially designed parts and components. Two notes are added to paragraph (a) in order to exclude from the control certain items that do not warrant control on the USML. Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) will be controlled under ECCN 0A501. Black powder guns and armaments manufactured between 1890 and 1919 will be controlled under ECCN 0A602, except for black powder guns and armaments manufactured earlier than 1890.

Paragraph (b) is revised to control flame throwers based on the technical parameter of a range 20 meters or greater.

Paragraph (c) is reserved. The items that were controlled in this paragraph that warrant USML control are now described in paragraph (a)(4) and the rest are controlled in ECCN 0A602.

Paragraph (d) is revised to control specially designed kinetic energy weapons.

Paragraph (e) is revised to more specifically describe the items warranting control under this paragraph. Items that were controlled in this paragraph as being

3

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005207

for guns and armaments controlled in paragraph (c) that did not move to paragraph (a)(4) are controlled in ECCN 0A602.

Paragraph (f) is reserved. The items that were controlled here will be controlled in ECCN 0A606.

Paragraph (g) is reserved. The items that were controlled here will be controlled in ECCN 0B602.

Paragraph (h) is reserved. The items that were controlled here will be controlled in ECCN 0B602.

Paragraph (i) is reserved. The items that were controlled that continue to warrant USML control are moved to paragraphs (j)(9) and components therefor to (j)(10) and the rest will be controlled in ECCN 0B602.

Paragraph (j) is revised by adding seventeen subparagraphs to specifically enumerate the articles controlled. The parts, components, accessories, and attachments that are not listed in paragraph (j) will be controlled in ECCN 0A602.

Paragraph (k) is revised to add control for the classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data.

A new paragraph (x) has been added to USML Category II, allowing ITAR licensing on behalf of the Department of Commerce for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category XII and are described in the purchase documentation submitted with the application.

**Category III— Ammunition and Ordnance**

Paragraph (a) is revised by adding ten subparagraphs to specifically enumerate the articles controlled, including adding a control for DOD-funded development ammunition. Ammunition not described will be controlled under ECCN 0A505.  Black powder guns and armaments manufactured between 1890 and 1919 will be controlled under ECCN 0A602, except for black powder guns and armaments manufactured earlier than 1890.

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005208

Paragraph (b) is revised to more specifically describe the items warranting control under this paragraph by identifying those items in two subparagraphs. Items that were controlled in this paragraph but do not meet the more specific description will be controlled in ECCN 0B505.

Paragraph (c) is reserved. The items that were controlled in this paragraph will be controlled in ECCN 0B505.

Paragraph (d) is revised by adding fifteen subparagraphs to specifically enumerate the articles controlled. Parts and components of USML ammunition that are not described will be controlled in ECCN 0A505.

Paragraph (e) is revised to add control for the classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data.

A new paragraph (x) has been added to USML Category II, allowing ITAR licensing on behalf of the Department of Commerce for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category XII and are described in the purchase documentation submitted with the application.

A new note is added to Category III to provide that ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber are not on the USML. These items will be controlled in ECCN 0A505. An additional new note is added to provide that grenades containing non-lethal or less lethal projectiles are not on the USML. These grenades will be controlled in ECCN 0A505.

For items that have transitioned to the CCL in a 600 series entry, transactions destined for countries subject to a U.S. arms embargo will *not* be eligible for license exceptions, except for License Exception GOV under EAR §740.11(b)(2)(ii).  Multilateral regime-controlled items moved from the USML to the CCL will retain their regime control parameters and reasons for control.

The Department of Commerce has created a License Exception Strategic Trade Authorization (STA, §740.20), which authorizes the export, re-export, and transfer (in-country) of certain items on the CCL to "countries of least concern" without a license (i.e., Argentina, Australia, Austria, Belgium, Bulgaria, Canada,

5

WASHSTATEC005209

Croatia, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Ireland, Italy, Japan, Latvia, Lithuania, Luxembourg, Netherlands, New Zealand, Norway, Poland, Portugal, Romania, Slovakia, Slovenia, South Korea, Spain, Sweden, Switzerland, Turkey, and the United Kingdom).  Parts, components, accessories and attachments controlled under subparagraph "x" of the relevant ECCNs will be automatically available for this exception.  However, end-items that will be controlled under the new ECCNs will be subject to a "first time" license requirement.  Exporters will be able to request a determination on STA eligibility for these items concurrent with a license request. If the Departments of State, Defense, and Commerce all agree, the end-item would be separately posted, by model number, as eligible for STA in the future.  If the departments cannot reach consensus, the end-item would continue to require a license to all destinations except Canada.

Existing License Exceptions LVS (§740.3), TMP (§740.9), RPL (§740.10), and GOV (§740.11(b)(2)(ii) or (b)(2)(iii)) will be eligible for use for items controlled by these ECCNs.

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005210

UNCLASSIFIED

Categories I, II, and III MDE Transitioning to the CCL

| ITEM DESCRIPTION | CCL CONTROL | |
|---|---|---|
| Cartridge, 5.56mm M855A1 | CCL | ECCN 0A505.a |

UNCLASSIFIED

WASHSTATEC005211

Message

| | |
|---|---|
| **From:** | Trotto, Thomas [TrottoT@state.gov] |
| **Sent:** | 11/14/2019 3:33:57 PM |
| **To:** | Koelling, Richard W [KoellingRW@state.gov] |
| **Subject:** | RE: FYI. The website for the "Forum for Arms Trade" has posted a copy of the regulatory text from the State and Commerce rules submitted for the 38(f) notification |

Thanks

SENSITIVE BUT UNCLASSIFIED

**From:** Koelling, Richard W <KoellingRW@state.gov>
**Sent:** Thursday, November 14, 2019 10:25 AM
**To:** Trotto, Thomas <TrottoT@state.gov>
**Subject:** FW: FYI. The website for the "Forum for Arms Trade" has posted a copy of the regulatory text from the State and Commerce rules submitted for the 38(f) notification

You asked for the regulatory text. Here it is. Should be both rules.

Rick

Richard W. Koelling, Jr.
Deputy Director (Acting)
Office of Defense Trade Controls Policy
Department of State
202-663-2828

SENSITIVE BUT UNCLASSIFIED

**From:** Timothy Mooney <Timothy.Mooney@bis.doc.gov>
**Sent:** Thursday, November 14, 2019 9:46 AM
**To:** Richard Ashooh <Richard.Ashooh@bis.doc.gov>; Matthew Borman <Matthew.Borman@bis.doc.gov>; Abraham, Liz <LAbraham@doc.gov>; Clagett, Steven <steven.clagett@bis.doc.gov>; Lopes, Alexander <alexander.lopes@bis.doc.gov>; Hillary Hess <Hillary.Hess@bis.doc.gov>; Karen NiesVogel <Karen.NiesVogel@bis.doc.gov>; Heidema, Sarah J <HeidemaSJ@state.gov>; Koelling, Richard W <KoellingRW@state.gov>; LKluttz@doc.gov; Curtis, Deborah (Federal) <DCurtis@doc.gov>
**Subject:** FYI. The website for the "Forum for Arms Trade" has posted a copy of the regulatory text from the State and Commerce rules submitted for the 38(f) notification

Here is an a link to the webpage with some of the website text copied and pasted:

https://www.forumarmstrade.org/catitoiii.html

Possible Transfer of Arms and Ammunition (USML Cat I-III) to Commerce



**UPDATES: On November 12, officials** <u>met</u> **with Congressional staff indicating plans to move forward. Rep Ami Bera (D-CA) responded with** <u>concerns</u>**. On November 13, text is available (**<u>State</u>**,** <u>Commerce</u>**), starting a 30 day review period for Congress under AECA 38(f). The main change is creation of regulation of 3D printing under the Commerce Department (further analysis underway)**

**\*\*\*\*\***

WASHSTATEC005213

Message

| | |
|---|---|
| **From:** | Timothy Mooney [Timothy.Mooney@bis.doc.gov] |
| **Sent:** | 11/14/2019 5:07:40 PM |
| **To:** | Darrach, Tamara A [DarrachTA@state.gov]; Steffens, Jessica [jessica.steffens@mail.house.gov]; Fite, David [david_fite@foreign.senate.gov]; Rice, Edmund [edmund.rice@mail.house.gov]; Hunter, Robert [robert_hunter@foreign.senate.gov] |
| **CC:** | Huddleston, Clay (Foreign Relations) [Clay_Huddleston@foreign.senate.gov]; PM-CPA [PM-CPA@state.gov]; Giannangeli, Giulia R [GiannangeliGR@state.gov]; Wolfe, William E [WolfeWE@state.gov]; Paul, Joshua M [PaulJM@state.gov]; LKluttz@doc.gov; Alexander Lopes [Alexander.Lopes@bis.doc.gov]; Heidema, Sarah J [HeidemaSJ@state.gov] |
| **Subject:** | RE: Short Notice Request: Availability this afternoon for briefing (Per your request, here is the redline compare for the Commerce control text) |
| **Attachments:** | Redline of Revised Department of Commerce Companion Control Text comparing 11-12-19 to 2-4-19 submissions.pdf |



Timothy Mooney
Senior Export Policy Analyst
Regulatory Policy Division
Bureau of Industry and Security
Tel. (202) 482-3371

**From:** Darrach, Tamara A <DarrachTA@state.gov>
**Sent:** Tuesday, November 12, 2019 11:58 AM
**To:** Steffens, Jessica <jessica.steffens@mail.house.gov>; Fite, David <david_fite@foreign.senate.gov>; Rice, Edmund <edmund.rice@mail.house.gov>; Hunter, Robert <robert_hunter@foreign.senate.gov>
**Cc:** Huddleston, Clay (Foreign Relations) <Clay_Huddleston@foreign.senate.gov>; PM-CPA <PM-CPA@state.gov>; Giannangeli, Giulia R <GiannangeliGR@state.gov>; Wolfe, William E <WolfeWE@state.gov>; Paul, Joshua M <PaulJM@state.gov>
**Subject:** RE: Short Notice Request: Availability this afternoon for briefing

Dear all,

We look forward to briefing you this afternoon. In advance of our briefing, I am attaching copies of the revised rules we will be discussing with you. I would particularly draw your attention to the Commerce rule, Section 734.7(c), where, in order to address concerns raised by some members of Congress and the public regarding certain access to 3-D printing technology and software for firearms, the Department of Commerce has revised its rule to make certain technology and software capable of producing firearms subject to the EAR when posted on the internet under specified circumstances.

Thanks, and we look forward to answering your questions this afternoon,
Tamara

WASHSTATEC005214

**Tamara Darrach Goulding**
Senior Congressional Advisor
Bureau of Legislative Affairs
U.S. Department of State
Tel: (202) 647-8763
Email:  DarrachTA@state.gov

SENSITIVE BUT UNCLASSIFIED

WASHSTATEC005215