UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

    Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF STATE, et al.,

    Defendants.

No. 2:20-cv-0111-RAJ

**FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT 11

34 Fed. Reg. 12029 (July 17, 1969)

Motion for Summary Judgment
Exhibits

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12002
Washington, DC 20530
202-353-0533

Opposition to Motion for Preliminary Injunction
(No. 2:20-cv-111-RAJ) – i

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12002
Washington, DC 20530
202-353-0533

time within 30 days from the date of its publication in the FEDERAL REGISTER file with the Hearing Clerk, Department of Health, Education, and Welfare, Room 5440, 330 Independence Avenue SW, Washington, D.C. 20201, written objections thereto, preferably in quintuplicate. Objections shall show wherein the person filing will be adversely affected by the order and specify with particularity the provisions of the order deemed objectionable and the grounds for the objections. If a hearing is requested, the objections must state the issues for the hearing. A hearing will be granted if the objections are supported by grounds legally sufficient to justify the relief sought. Objections may be accompanied by a memorandum or brief in support thereof.

*Effective date.* This order shall become effective on the date of its publication in the FEDERAL REGISTER.

(Sec. 408(e), (m), 68 Stat. 514, 517; 21 U.S.C. 346a (e), (m))

Dated: July 8, 1969.

HERBERT L. LEY, Jr.,
*Commissioner of Food and Drugs.*

[F.R. Doc. 69-8396; Filed, July 16, 1969; 8:45 a.m.]

---

SUBCHAPTER C—DRUGS

PART 146a—CERTIFICATION OF PENICILLIN AND PENICILLIN-CONTAINING DRUGS

Correction and Clarification Regarding Penicillin-Streptomycin Containing Combination Drugs for Veterinary Use

An order published in the FEDERAL REGISTER of June 13, 1969 (34 F.R. 9333), included among other things certain amendments regarding tests and methods of assay and certification requirements of penicillin and penicillin-containing drugs.

Sections 146a.58 and 146a.67 provided for label changes in the products covered by these monographs with regard to their use in food-producing animals. The changes would require that the labeling for such products bear a statement that animals treated with such products are not to be slaughtered for food within 30 days of the last treatment. An order was promulgated May 17, 1969 (34 F.R. 7849), that incorporated the findings and conclusions of the Commissioner and was based in part upon comments submitted in response to said proposal.

As a completion of action on the proposal of April 11, 1968 (33 F.R. 5627), and based upon the findings published in the order of May 17, 1969 (34 F.R. 7849), pusuant to the provisions of the Federal Food, Drug, and Cosmetic Act (sec. 507, 59 Stat. 463, as amended; 21 U.S.C. 357) and under authority delegated to the Commissioner (21 CFR 2.120): The amendments to § 146a.58 and § 146a.67 promulgated June 13, 1969 (34 F.R. 9333), as related to use of such drugs in food-producing animals are hereby based upon the findings and conclusions set forth in said order of May 17, 1969.

Effective date. The labeling changes required by the order of June 13, 1969, become effective on July 23, 1969. Antibiotic preparations not in compliance with § 146a.58 or § 146a.67 as revised will be subject to regulatory action after November 13, 1969.

(Sec. 507, 59 Stat. 463, as amended; 21 U.S.C. 357)

Dated: July 9, 1969.

HERBERT L. LEY, Jr.,
*Commissioner of Food and Drugs.*

[F.R. Doc. 69-8395; Filed, July 16, 1969; 8:45 a.m.]

---

# Title 22—FOREIGN RELATIONS

## Chapter I—Department of State

SUBCHAPTER M—INTERNATIONAL TRAFFIC IN ARMS

[Dept. Reg. 108.605]

### REVISION

Parts 121 through 127 of Title 22 of the Code of Federal Regulations are revised and Part 128 is added as set forth below. This revision does not include § 121.01 which will be issued at a later date.

Part
121 Arms, Ammunition, and Implements of War.
122 Registration.
123 Licenses for Unclassified Arms, Ammunition, and Implements of War.
124 Manufacturing License and Technical Assistance Agreements.
125 Technical Data.
126 Prohibited Shipments, Temporary Suspension or Modification of Regulations, Exemptions and Relation to Other Provisions of Law.
127 Violations and Penalties.
128 Administrative Procedures.

### PART 121—ARMS, AMMUNITION, AND IMPLEMENTS OF WAR

ENUMERATION OF ARTICLES

Sec.
121.01 The U.S. munitions list.

DEFINITIONS AND INTERPRETATIONS

121.02 Equipment.
121.03 Firearms.
121.04 Cartridge and shell casings.
121.05 Military demolition blocks and blasting caps.
121.06 Apparatus and devices under Category IV(b).
121.07 Amphibious vehicles.
121.08 Chemical agents.
121.09 Propellants.
121.10 Military explosives.
121.11 Military fuel thickeners.
121.12 Vessels of war and special naval equipment.
121.13 Aircraft and related articles.
121.14 Helium gas.
121.15 Forgings, castings, and machined bodies.
121.16 "United States".
121.17 Person.
121.18 Export.
121.19 Intransit shipments.
121.20 Licenses.
121.21 District directors of customs.

AUTHORITY: The provisions of this Part 121 issued under sec. 414, as amended, 68 Stat. 848; 22 U.S.C. 1934; secs. 101 and 105, E.O. 10973, 26 F.R. 10469; sec. 6, Departmental Delegation of Authority No. 104, 26 F.R. 10608, as amended, 27 F.R. 9925, 28 F.R. 7231; and Redelegation of Authority No. 104-3-A, 28 F.R. 7231.

ENUMERATION OF ARTICLES

§ 121.01 The U.S. munitions list.

* * * * *

DEFINITIONS AND INTERPRETATIONS

§ 121.02 Equipment.

The term "equipment" as used in this subchapter, unless it appears otherwise in the context, means any article (see footnote 1, § 121.01) not including technical data. The terms "equipment" and "article" include (a) experimental equipment being developed for military use, and (b) models and mockups (with or without moving parts) if they reveal any information relating to the use, operation, maintenance, repair, overhaul, production, processing, manufacture, research, development, or design of any arms, ammunition, and implements of war on the U.S. Munitions List.

§ 121.03 Firearms.

Rifles, carbines, revolvers, and pistols, to caliber .50 inclusive, and shotguns with barrels less than 18 inches in length, are included under Category I(a). Machineguns, submachineguns, machine pistols, and fully automatic rifles to caliber .50 inclusive are included under Category I(b).

(a) As used in this subchapter, the term "firearm" denotes a weapon not over .50 caliber which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. (BB and pellet guns are not included on the Munitions List.)

(b) A "rifle" is a shoulder firearm discharging bullets through a rifled barrel at least 16 inches in length, including combination and drilling guns.

(c) A "carbine" is a lightweight shoulder firearm with a short barrel, under 16 inches in length.

(d) A "pistol" is a hand-operated firearm having a chamber integral with, or permanently aligned with, the bore.

(e) A "revolver" is a hand-operated firearm with a revolving cylinder containing chambers for individual cartridges.

(f) A "machinegun," "machine pistol" or "submachinegun" is a firearm originally designed to fire, or capable of being fired fully automatically by a single pull of the trigger.

§ 121.04 Cartridge and shell casings.

Cartridge and shell casings are included under Category III of the U.S. Munitions List unless, prior to their exportation, they have been rendered useless beyond the possibility of restoration for use for the purpose originally produced by means of excessive heating, flame treatment, mangling, crushing, cutting, or popping. (Shotgun ammunition is not included in the Munitions List.)

### § 121.05 Military demolition blocks and blasting caps.

The term "military demolition blocks and blasting caps" does not include the following articles:

(a) Electric squibs.
(b) No. 6 and No. 8 blasting caps, including electric.
(c) Delay electric blasting caps (including No. 6 and No. 8 millisecond).
(d) Seismograph electric blasting caps (including SSS, Static-Master, Vibrocap SR, and SEISMO SR).
(e) Oil well perforating devices.

### § 121.06 Apparatus and devices under Category IV(b).

Category IV(b) includes inter alia the following: Fuzes and components thereof, bomb racks and shackles, bomb shackle release units, bomb ejectors, torpedo tubes, torpedo and guided missile boosters, guidance system materials (except those having a commercial application), launching racks and projectors, pistols (exploders), igniters, fuze arming devices, intervalometers, and components therefor, guided missile launchers and specialized handling equipment and hardened missile launching facilities.

### § 121.07 Amphibious vehicles.

As used in Category VII(f), the term "amphibious vehicles" includes, but is not limited to, automotive vehicles or chassis embodying all-wheel drive and equipped to meet special military requirements, with adaptation features for deep water fording and sealed electrical systems.

### § 121.08 Chemical agents.

(See Category XIV(a).) A chemical agent is a substance useful in war which, by its ordinary and direct chemical action, produces a powerful physiological effect. The term "chemical agents" includes but is not limited to the following chemical compounds:

1. Lung irritants:
(a) Diphonylcyanoarsine (DC).
(b) Fluorine (but not fluorene).
(c) Trichloronitro methane (Chlorpicrin PS).
2. Vesicants:
(a) B Chlorvinyldichlorarsine (Lewisite, L).
(b) Bisdichlorethyl sulphide (Mustard gas, HD or H).
(c) Ethyldichloroarsine (ED).
(d) Methyldichloroarsine (MD).
3. Lachrymators and tear gases:
(a) Bromhenzylcyanide (BBC).
(b) Chloroacetophenone (CN).
(c) Dibromodimethyl ether.
(d) Dichlorodimethyl ether (ClCl).
(e) Ethyldibromoarsine.
(f) Phenylcarbylamine chloride.
(g) Tear gas solutions (CNB and CNS).
(h) Tear gas orthochlorobenzalmalononitrile (OS).
4. Sternutators and irritant smokes:
(a) Diphenylaminechloroarsine (Adamsite, DM).
(b) Diphenylchlorarsine (BA).
(c) Liquid pepper.
5. Nerve gases. These are toxic compounds which affect the nervous system, such as:
(a) Dimethylaminoethoxycyanophosphine oxide (GA).
(b) Methylisopropoxyfluorophosphine oxide (GB).
(c) Methylpinacolyloxyfluoriphosphine oxide (GD).
6. Antiplant chemicals:
(a) Butyl 2,4-dichlorophenoxyacetate (LNA).
(b) 2,4,5-trichlorophenoxyacetate (LNB).
(c) Butyl 2-chloro-4-fluorophenoxyacetate (LNF).

### § 121.09 Propellants.

The term "propellants" includes but is not limited to the following:
(a) Propellant powders, including smokeless shotgun powder (see § 123.37).
(b) Hydrazine (including Monomethyl hydrazine and symmetrical dimethyl hydrazine but excluding hydrazine hydrate).
(c) Unsymmetrical dimethyl hydrazine.
(d) Hydrogen peroxide over 85 percent concentration.
(e) Nitroguanadine or picrite.
(f) Nitrocellulose with nitrogen content of over 12.20 percent.
(g) Nitrogen tetroxide.
(h) Other solid propellant compositions, including but not limited to the following:
(1) Single base (nitrocellulose).
(2) Double base (nitrocellulose, nitroglycerin).
(3) Triple base (nitrocellulose, nitroglycerin, nitroguanidine).
(4) Composite of nitroglycerin, ammonium perchlorate, potassium perchlorate, nitronium perchlorate, guanidine (guanidinium) perchlorate, nitrogen tetroxide, ammonium nitrate or nitrocellulose with plastics, metal fuels, or rubbers added; and compounds composed only of fluorine and one or more of the following: Other halogens, oxygen, or nitrogen.
(5) Special purpose chemical base high energy solid military fuels.
(i) Other liquid propellant compositions, including but not limited to the following:
(1) Monopropellants (hydrazine, hydrazine nitrate, and water).
(2) Bipropellants (hydrazine, fuming nitric acid (HNO$_4$)).
(3) Perchloryl fluoride.
(4) Special purpose chemical base high energy liquid military fuels and oxidizers.

### § 121.10 Military explosives.

The term "military explosives" includes, but is not limited to, the following:
(a) Ammonium picrate.
(b) Black powder made with potassium nitrate or sodium nitrate.
(c) Cyclotetramethylene - tetranitramine (HMX).
(d) Cyclotrimethylene - trinitramine (RDX, Cyclonite, Hexogen or T4).
(e) Dinitronaphthalene.
(f) Ethylenedinitramine.
(g) Hexanitrodiphenylamine.
(h) Nitroglycerin.
(i) Nitrostarch.
(j) Pentaerythritol tetranitrate (penthrite, pentrite or PETN).
(k) Tetranitronaphthalene.
(l) Trinitroanisol.
(m) Trinitronaphthalene.
(n) Trinitrophenol (picric acid).
(o) Trinitrophenylmethylnitramine (Tetryl).
(p) Trinitrotoluene (TNT).
(q) Trinitroxylene.
(r) Ammonium perchlorate nitrocellulose (military grade).
(s) Any combinations of the above.

### § 121.11 Military fuel thickeners.

The term "military fuel thickneners" includes: compounds (e.g., octal), or mixtures of such compounds (e.g., napalm) specifically formulated for the purpose of producing materials which, when added to petroleum products, provide a gel-type incendiary material for use in bombs, projectiles, flame throwers, or other implements of war.

### § 121.12 Vessels of war and special naval equipment.

(See Category VI.) The term "vessels of war" includes, but is not limited to, the following:
(a) Combatant:
(1) Warships (including nuclear-powered versions):

Aircraft carriers (CVA, CVE, CVHE, CVL, CVS).
Battleships (BB, BBG).
Command ships (CBO, CLC).
Cruisers (CA, CAG, CB, CG, CL, CLAA, CLG).
Destroyers (DD, DDC, DDE, DDG, DDR, DL, DLG).
Submarines (SS, SSB, SSG, SSK, SSR).

(2) Amphibious warfare vessels:

Amphibious assault ship (LPH).
Amphibious force flagship (AGC).
Assault helicopter aircraft carrier (CVHA).
Attack cargo ship (AKA).
Control escort vessel (DEC).
Cargo submarine (AK(SS)).
Inshore fire support ship (IFS).
Landing ships (LSD, LSMR, LST, LPD).
Transport submarine (AP(SS)).
Transports (APA, APD).

(3) Landing craft (LCM, LCU, LCVP, ATC, CCB).
(4) Landing vehicle, tracked (LVT).
(5) Mine warfare vessels:

Mine hunter, coastal (MHC).
Mine countermeasures support ship (MCS).
Minelayers (DM, MMA, MMC, MMF).
Minesweepers (DMS, MSC, MSC(O), MSF, MSO, MSI, MSB, MSA, YMS, MSL, Ub/MS).

(6) Patrol vessels:

Escort vessels (DE, DER, PCS, PCER, PF, DEG).
Gunboats (PCM, PR).
Submarine chasers (PC, PCS, SC).
Yacht (PY).

(b) Auxiliary vessels and service craft:
(1) Advanced aviation base ship (AVB).
(2) Auxiliary submarine (AG(SS)).
(3) Cable repairing or laying ship (ARC).
(4) Degaussing vessel (ABG).
(5) Distilling ship (AW).
(6) Drone aircraft catapult control craft (YV).
(7) Floating dry docks, cranes, and associated workships and lighters (AFDB, AFDL, AFDM, ARD, YFD, YFMD, YR, YRDH, YRDM, YHL, YSD).
(8) Guided missile ship (AVM).

(9) Harbor utility craft (YFU).
(10) Icebreaker (AGB).
(11) Logistic support ships (AE, AF, AK, AKS, AO, ACE, AOG, AOR, AO(SS), AVS).
(12) Miscellaneous auxiliary (AG, IX, YAG).
(13) Miscellaneous cargo ships (AKD, AKL, AKV, AVT).
(14) Naval barges and lighters (YC, YCF, YCK, YCV, YF, YFB, YFN, YFNS, YFNX, YFP, YFR, YFRN, YFRT, YFT, YG, YGN, YO, YOG, YOGN, YON, YOS, YSR, YTT, YW, YWN).
(15) Net laying and tending ships (AKN, AN, YNG).
(16) Oceanographic research ship (AGOR).
(17) Patrol craft (PT, YP).
(18) Repair, salvage, and rescue vessels (AR, ARB, ARG, ARL, ARS, ARSD, ARV, ARVA, ARVE, ASR).
(19) Survey ships (AGS, AGSC).
(20) Target and training submarine (SST).
(21) Tenders (AD, AGP, ARST, AS, AV, AVP, YDT).
(22) Transports and barracks vessels (AP, APB, APC, APL, YHB, YRB, YRBM).
(23) Tugs (ATA, ATF, ATR, YTB, YTL, YTM).
(24) Ocean radar picket ship (AGR).
(25) Submersible craft (X). (See Category XX.)
(26) Utility aircraft carrier (CVU).
(c) Coast Guard patrol and service vessels and craft:
(1) Submarine repair and berthing barge (YRB).
(2) Labor transportation barracks ship (APL).
(3) Coast Guard cutter (CGC).
(4) Gunboat (WPG).
(5) Patrol craft (WPC, WSC).
(6) Seaplane tender (WAVP).
(7) Icebreaker (WAGB).
(8) Cargo ship (WAK).
(9) Buoy tenders and boats (WAGE, WD).
(10) Cable layer (WARC).
(11) Lightship (WAL).
(12) Coast Guard tugs (WAT, WKT).
(13) Radio ship (WAGR).
(14) Special vessel (WIX).
(15) Auxiliary vessels (WAG, WAGE).
(16) Other Coast Guard patrol or rescue craft (i) of over 300 horsepower when equipped with a gas turbine engine or engines, and (ii) of over 600 horsepower when equipped with an engine or engines of the internal combustion, reciprocating type.
(d) Air Force craft: Air Force rescue boat.
(e) Army vessels and craft:
(1) Transportation Corps tug: 100 ft. (LT), 65 ft. (ST), T-boat, Q-boat, J-boat, E-boat.
(2) Barges (BG, BC, BR, BSP, BSPI, BKI, BCF, BBL, BARC, BK).
(3) Cranes, floating (BD).
(4) Drydock, floating (FDL).
(5) Repair ship, floating (FMS).
(6) Trainer, amphibious 20-ton wheeled tow boat, inland waterway (LTI, STI).

§ 121.13 Aircraft and related articles.

(a) The term "aircraft" used in Category VIII of the U.S. Munitions List means aircraft designed, modified, or equipped for military purpose as specified in Category VIII, including so-called "demilitarized" aircraft. The export of such aircraft are subject to the licensing requirements of the Department of State.

(b) Regardless of demilitarization, all aircraft bearing an original military designation are included in Category VIII of the U.S. Munitions List, except the following aircraft which have not been specifically equipped, reequipped, or modified for military operations:
(1) Cargo aircraft bearing "C" designations C-45 through C-118 inclusive, and C-121.
(2) Trainer aircraft bearing "T" designations and using reciprocating engines only.
(3) Utility aircraft bearing "U" designations and using reciprocating engines only.
(4) All liaison aircraft bearing an "L" designation.

§ 121.14 Helium gas.

The word "helium" means "contained helium" at standard atmospheric pressure (14.7 pounds per square inch) and 70° Fahrenheit. The term "contained helium" means the actual quantity of the element helium (i.e., 100 percent pure helium) in terms of cubic feet present in a mixture of helium and other gases. Purity determination shall be made by usually recognized methods.

§ 121.15 Forgings, castings, and machined bodies.

Items in a partially completed state, such as forgings, castings, extrusions, and machined bodies of any of the articles enumerated on the U.S. Munitions List which have reached a stage in manufacture where they are clearly identifiable as arms, ammunition, and implements of war are considered to be such articles for the purposes of section 414 of the Mutual Security Act, as amended.

§ 121.16 "United States."

For the purposes of this subchapter the term "United States," when used in the geographical sense, unless otherwise expressly defined, includes the several States, the insular possessions of the United States, the Canal Zone, the District of Columbia, and any territory over which the United States exercises all and any powers of administration, legislation, and jurisdiction.

§ 121.17 Person.

For the purposes of this subchapter the term "Person" includes a partnership, company, association, corporation, firm, society, or joint stock company, as well as a natural person.

§ 121.18 Export.

For the purposes of this subchapter the term "export" means the sending or taking out of the United States in any manner any article, equipment, or technical data on the U.S. Munitions List except as may be otherwise expressly provided in a particular context.

§ 121.19 Intransit shipments.

For the purposes of this subchapter equipment on the U.S. Munitions List temporarily entering the United States in transit to another country, including return to the country of export, shall constitute a temporary import for which a Department of State Intransit License (DSP-61) shall be required.

§ 121.20 Licenses.

(a) For the purposes of this subchapter the term "license" denotes a document bearing the word "license" which when dated, sealed, numbered, and signed by the Secretary of State or his authorized designees permits the export, temporary export, or intransit shipment of specific articles on the U.S. Munitions List (See §§ 123.05.)

(b) Licenses shall be issued valid for 6 months unless a different period is expressly stated thereon. The licenses are not transferable.

(c) Upon request by the applicant, licenses for the export of technical data as defined in § 125.01 may be issued valid for 1 year.

(d) No photographic or other copy may be made of an original license unless authorized by the Department of State.

§ 121.21 District Director of Customs.

When used in this subchapter the term "district director of customs" includes the district directors of customs at customs headquarters ports (other than the port of New York, N.Y.); the regional commissioner of customs, the deputy and assistant regional commissioners of customs for customs region II at the port of New York, N.Y.; and port directors at customs ports not designated as headquarters ports.

## PART 122—REGISTRATION

Sec.
122.01 Registration requirements.
122.02 Application for registration.
122.03 Refund of fee.
122.04 Notification of changes in information furnished by registrants.
122.05 Maintenance of records by registrants.

PROCEDURES

122.10 Submission of application.

AUTHORITY: The provisions of this Part 122 issued under sec. 414, as amended, 68 Stat. 848, 22 U.S.C. 1934; secs. 101 and 105, E.O. 10973, 26 F.R. 10469; sec. 6, Departmental Delegation of Authority No. 104, 26 F.R. 10608, as amended, 27 F.R. 9925, 28 F.R. 7231; Redelegation of Authority No. 104-3-A, 28 F.R. 7231.

§ 122.01 Registration requirements.

(a) Persons (as defined in § 121.17 of this subchapter) engaged in the business, in the United States, of manufacturing or exporting articles enumerated in the U.S. Munitions List shall be required to register with the Secretary of State.

Manufacturers, whether they engage in export, shall also be required to register.

(b) Persons engaged in the business, in the United States, of exporting articles enumerated in the U.S. Munitions List, and importing such articles under the provisions of Title 26, Code of Federal Regulations, are required to register for a fee with the Secretary of State as exporters, and to register for a fee with the Secretary of the Treasury as importers.

(c) The fabrication of arms, ammunition, and implements of war for experimental or scientific purposes, including research and development, is not considered as manufacture for the purposes of the regulations in this part.

(d) Registration is not required of persons (1) whose pertinent business activities are confined to the production or exportation of unclassified technical data relating to arms, ammunition, and implements of war, or (2) whose export activity is subject to license under the provisions of the Atomic Energy Act of 1954, as amended, and which does not include exports of articles on the U.S. Munitions List.

§ 122.02　Application for registration.

(a) Applicants may be registered for periods of from 1 to 5 years at a time upon submission of a completed Form DSP-9, and payment of a fee as follows:

| | |
|---|---|
| 1 year | $125 |
| 2 years | 250 |
| 3 years | 350 |
| 4 years | 425 |
| 5 years | 500 |

(b) A registrant who fails to renew his registration after its lapse and, after an intervening period seeks to register again, shall be liable to pay registration fees if during that period or part thereof he had conducted business activities involving articles enumerated in the U.S. Munitions List.

§ 122.03　Refund of fee.

When a multiple-year registration fee has been paid, a request for refund for whole future years will be honored pro rata only if the person ceases to be a manufacturer or exporter of Munitions List articles during the years for which refund is claimed.

§ 122.04　Notification of changes in information furnished by registrants.

Registered persons must notify the Secretary of State of significant changes in the information set forth in their applications for registration, such as the establishment of a foreign affiliate.

§ 122.05　Maintenance of records by registrants.

(a) Persons required to register must maintain for a period of 6 years, subject to the inspection of the Secretary of State or any person designated by him, records bearing on U.S. Munitions List articles, including records concerning the acquisition and disposition of such articles by the registrant. The Secretary may prescribe a longer or shorter period in individual cases as he may deem appropriate.

(b) Officers of the Office of Security, of the Office of Munitions Control of the Department of State, and of the U.S. Customs Agency Service, Bureau of Customs, Treasury Department, are hereby designated as the representatives of the Secretary of State for the purposes of this section.

PROCEDURES

§ 122.10　Submission of application.

(a) Department of State Form DSP-9, Application for Registration, must be submitted to the Department in original. The Department will not register an applicant who has not satisfactorily replied to all questions on the form or who fails to accompany the application with a payment of one of the fees prescribed in § 122.02(a).

(b) Applications and fees (by money order or check payable to the Department of State) must be mailed or delivered together to the Department as indicated in the instructions on the back of Form DSP-9.

(c) Other matters pertaining to registration requirements should be addressed to the Office of Munitions Control, Department of State, Washington, D.C. 20520.

PART 123—LICENSES FOR UNCLASSIFIED[1] ARMS, AMMUNITION, AND IMPLEMENTS OF WAR

Sec.
123.01　Export licenses.
123.02　Imports.
123.03　Intransit license.
123.04　Temporary export licenses.
123.05　License denial, revocation, suspension, or amendment.
123.06　Foreign trade zones.
123.07　Export to warehouses or distribution points outside the United States.
123.08　Export of vessels of war and military aircraft.
123.09　Overhaul, repairs, or modifications of foreign-owned arms, ammunition, and implements of war.
123.10　Country of ultimate destination.
123.11　Movements of vessels outside U.S. territorial jurisdiction.
123.12　Canadian shipments.
123.13　Shipments between U.S. possessions and the Panama Canal Zone.
123.14　Domestic aircraft shipments via foreign ports.
123.15　Import certificate/delivery verification procedure.

EXEMPTIONS

123.30　Obsolete small arms.
123.31　Arms and ammunition for personal use.
123.32　Arms for personal use of members of the Armed Forces and civilian employees of the U.S. Government.
123.33　Sample shipments.
123.34　Minor components.
123.35　Border shipments and shipments transiting Panama Canal.
123.36　Certain helium gas exports.
123.37　Propellants and explosives.
123.38　Nuclear materials.

---

[1] Provisions for the export of classified arms, ammunition and implements of war are contained in Part 125 of this subchapter.

PROCEDURES

123.50　Applications for licenses.
123.51　Renewal and disposition of licenses.
123.52　Ports of exit or entry.
123.53　Filing of export and intransit licenses with district directors of customs.
123.54　Shipments by mail.
123.55　Temporary exports.
123.56　Domestic aircraft shipments via a foreign country.

AUTHORITY: The provisions of this Part 123 issued under sec. 414, as amended, 68 Stat. 848; 22 U.S.C. 1934; secs. 101 and 105, E.O. 10973, 26 F.R. 10469; sec. 6 Departmental Delegation of Authority No. 104, 26 F.R. 10608, as amended, 27 F.R. 9925, 28 F.R. 7231; and Redelegation of Authority No. 104-3-A, 28 F.R. 7231.

§ 123.01　Export license.

Equipment (see § 121.02 of this subchapter for definition) on the U.S. Munitions List shall not be exported from the United States until a license has been obtained from the Department of State, or it is otherwise exempt under other provisions of this subchapter. As a condition precedent for the issuance of an export license, the Department of State may require all pertinent documentary information regarding the proposed transaction, and may also require the execution of an appropriate bond.

§ 123.02　Imports.

Equipment on the U.S. Munitions List shall not be imported into the United States unless (a) it had been previously exported temporarily under a license issued by the Department of State; (b) it constitutes a temporary import under the Intransit License procedure (see §§ 123.03 and 123.09); or (c) its import has been authorized or exempted by the Secretary of the Treasury (26 CFR Part 178).

§ 123.03　Intransit license.

An intransit license shall be required for the temporary entry of any equipment enumerated in the U.S. Munitions List into the United States for transshipment to a third country (see also § 123.35). The Department may require the execution of an appropriate bond. (An Intransit License may also be used for other temporary imports. See §§ 121.19 and 123.09.)

§ 123.04　Temporary export license.

A license for the temporary export of unclassified equipment on the Munitions List may be obtained from the Department of State in lieu of export and import licenses when such equipment will be exported on a temporary basis and will be returned to the United States. The Department may require full documentary information regarding such proposed transaction, and the execution of an appropriate bond. (See § 123.55 for procedures.) With respect to firearms as defined in 26 U.S.C. 5845(a), evidence shall be shown that all applicable requirements of 26 CFR Part 179 have been satisfied.

§ 123.05  License denial, revocation, suspension or amendment.[2]

(a) Licenses may be denied, revoked, suspended, or amended by the Department of State without prior notice whenever the Department deems such action to be advisable in furtherance of (1) world peace; (2) the security of the United States; (3) the foreign policy of the United States; or (4) whenever the Department has reason to believe that section 414 of the Mutual Security Act of 1954, as amended, or any regulation contained in this subchapter shall have been violated.

(b) Whenever a license application is denied, or an outstanding license is revoked, suspended, or amended, the applicant or licensee shall be advised promptly in writing of the Department's decision, together with the reasons therefor as specifically as security and foreign relations considerations permit.

(c) Upon written request within 30 days after receipt of an adverse decision by the Department of State, the applicant or licensee shall be accorded an opportunity to present additional information and a review of the whole case by the Department.

§ 123.06  Foreign trade zones.

A Foreign Trade Zone of the United States is considered an integral part of the United States for the purpose of this subchapter. A license is therefore not required for shipments between the United States and such a Foreign Trade Zone. However, an export license shall be required for all shipments of U.S. Munitions List equipment from such Foreign Trade Zones to other countries.

§ 123.07  Export to warehouses or distribution points outside the United States.

Applications for license to export U.S. Munitions List equipment to warehouses or distribution points outside the United States for subsequent resale will be considered by the Department of State. Licenses issued for such transactions normally will contain conditions for special distribution controls and reporting.

§ 123.08  Export of vessels of war and military aircraft.

(a) The transfer of a privately owned vessel of war as defined by § 121.12 or a privately owned military aircraft as defined in § 121.13 from the United States to foreign registry shall constitute an export for which an approval or license from the Department of State shall be required. If the vessel or aircraft in question is physically located abroad, the written approval of the Department of State shall be obtained before the registry of such vessel or aircraft may be transferred.

(b) The registration under a foreign flag of a privately owned vessel of war or privately owned military aircraft that has not been registered in the United States, but is located in the United States, shall constitute an export for which a license from the Department of State is required.

NOTE: Such transactions may also require the prior approval of the Maritime Administration or the Federal Aviation Administration, as applicable.

§ 123.09  Overhaul, repairs, or modifications of foreign-owned arms, ammunition, and implements of war.

Persons intending to overhaul, repair, or modify foreign-owned arms, ammunition, and implements of war on the U.S. Munitions List, in the United States, shall obtain an Intransit License from the Department of State. The entry of such equipment into the United States for overhaul, repair, or modification shall constitute a temporary import provided it will be returned directly to the country of ownership.

§ 123.10  Country of ultimate destination.

(a) The country designated on the application for an export license as the country of ultimate destination shall be the country in which the equipment shall ultimately receive end use. Such equipment shall not be diverted from that country even though it might have been incorporated through an intermediate process into other end items.

(b) The prior written approval of the Department of State shall be obtained before U.S. Munitions List equipment previously exported from the United States under a license of the Department of State may be resold, diverted, transferred, transshipped, reshipped, or reexported to, or disposed of in any country other than the country of ultimate destination as stated in the export license.

(c) The exporter shall incorporate the following statement as an integral part of the shipper's export declaration, the bill of lading and the invoice, whenever U.S. Munitions List equipment is to be exported: "These commodities are licensed by the U.S. Government for export to (Country of ultimate destination). Diversion contrary to U.S. law is prohibited." The person to whom a license has been granted shall be responsible for the inclusion of such a statement even though the transaction may be handled by a freight forwarder or other forwarding agent.

(d) Applications for export (form DSP–5) of significant combat equipment[3] (and letter applications in cases of significant classified combat equipment) submitted to the Office of Munitions Control shall be accompanied by a "Consignee-Purchaser Transaction Statement" (Form DSP–83) which must be submitted by the foreign importer to the U.S. applicant for export license. The Transaction Statement shall provide that, except as specifically authorized by prior written approval of the Department of State, the ultimate consignee (and purchaser if not the same as the ultimate consignee) will not re-export, resell or otherwise dispose of the equipment enumerated in the application outside the country named as the location of the ultimate consignee. The Office of Munitions Control reserves the right to require a Consignee-Purchaser Transaction Statement with respect to the export of any U.S. Munitions List article.

(e) In applications for export where a Consignee-Purchaser Transaction Statement is required and where both the ultimate consignee and the purchaser are nongovernmental entities, the Department of State may require a Nonretransfer Assurance (DSP–83, Item 8) from the appropriate authority of the foreign importer's government. The Nonretransfer Assurance shall provide that the foreign importer's government undertakes not to authorize the reexport, resale, or other disposition of the equipment enumerated in the application without obtaining the prior written consent of the U.S. Government.

§ 123.11  Movements of vessels outside U.S. territorial jurisdiction.

(a) A license from the Department of State shall be required whenever a vessel on the U.S. Munitions List makes a voyage outside the United States which is deemed an export as defined in § 121.18 of this subchapter.

(b) An export license shall not be required when such a vessel departs from the United States without entering the territorial waters of a foreign country, provided no arms, ammunition, or implements of war, or technical data related thereto are carried as cargo. In the event that such a vessel shall enter the territorial waters of a foreign country before returning to the United States, or carries as cargo arms, ammunition, or implements of war, or technical data related thereto, a License for Temporary Export (DSP–73) shall be obtained from the Department of State. (See §§ 123.04 and 123.55.)

§ 123.12  Canada, shipments.

District directors of customs and postmasters may release unclassified Munitions List equipment (as defined in § 121.01 of this subchapter) to Canada without an export license with the following exceptions:

(a) Intransit shipments through the United States to or from Canada, or intransit shipments through Canada from the United States;

(b) Helium gas as defined in Category XV;

(c) Nuclear weapons strategic delivery systems and all specifically designed

---

[2] The provisions of § 123.06 are also applicable to applications and licenses for the export of technical data (see Part 125 of this subchapter).

[3] Significant combat equipment shall include the articles (not including technical data) enumerated in categories I (a), (b) and (c) (in quantity); II (a) and (b); III(a) (excluding ammunition for firearms in category I); IV (a), (c), and (d); V(b) (in quantity); VI(a) (limited to combatant vessels as defined in § 121.12(a) of this subchapter), (b) (Inclusive only of turrets and gun mounts, missile systems, and special weapons systems) and (c); VII (a), (b), (c), and (f); VIII (a), (b), (c), GEMS as defined in (k), and inertial systems as defined in (1); XII(a); XIV (a), (b), (c), and (d); XVI; and XVII.

components, parts, accessories, attachments, and associated equipment therefor;

(d) Nuclear weapons design and test equipment as defined in Category XVI;

(e) Naval nuclear propulsion equipment as defined in Category VI(e);

(f) Aircraft as defined in Category VIII(a).

§ 123.13 Shipments between U.S. possessions and the Panama Canal Zone.

Export licenses shall not be required for shipments of equipment on the U.S. Munitions List between the United States, U.S. possessions, and the Panama Canal Zone. Licenses, however, are required for shipments between these areas and foreign countries.

§ 123.14 Domestic aircraft shipments via foreign ports.

A license is not required for airborne shipments of arms, ammunition, and implements of war being transported from one port in the United States to another U.S. port via a foreign country. In lieu thereof, a statement is required of the pilot (see § 123.56).

§ 123.15 Import certificate/delivery verification procedure.

(IC/DV) General. The United States and a number of foreign countries have agreed on a procedure designed to assure that certain commodities imported into their territories will not be diverted, transshipped, or reexported to another destination except in accordance with export control regulations of the importing country. The procedure covered by such agreement is known as the Import Certificate/Delivery Verification Procedure (IC/DV) and may be invoked with respect to equipment on the U.S. Munitions List.

(a) Exports. As a supplement to normal control procedures, the Department may utilize the IC/DV procedure on proposed exports of Munitions List equipment to nongovernment entities in the following countries: Austria, Belgium, Denmark, France, Federal Republic of Germany, Greece, Hong Kong, Italy, Japan, Luxembourg, the Netherlands, Norway, Portugal, Turkey, and the United Kingdom. In each case in which the Department invokes the IC/DV procedure, U.S. exporters will be required to submit, in addition to an export license application (a completed form DSP-5), the original Import Certificate authenticated by the government of the importing country. This document will serve as evidence that the foreign importer has complied with the import regulations of the government of the importing country and that he has declared his intentions not to divert, transship or reexport the material described therein without prior approval of that government. After delivery of the commodities to the foreign consignee, the Department may also require U.S. exporters to furnish documentation (Delivery Verification) from the government of the importing country attesting to the delivery in accordance with the terms of the approved export license. Both the Import Certificate and the Delivery Verification will be obtained and furnished to the U.S. exporter by the foreign importer.

(b) *Triangular transaction.* When a transaction involves three or more countries which have adopted the IC/DV procedure, governments of these countries may stamp a triangular symbol on the "Import Certificate". This symbol is usually placed on the "Import Certificate" when the applicant for the "Import Certificate" (the importer) has stated either (1) he is uncertain whether the items covered by the "Import Certificate" will be imported into the country issuing the "Import Certificate"; (2) that he knows that the items will not be imported into the country issuing the "Import Certificate"; or (3) that, if the items are to be imported into the country issuing the "Import Certificate", they will subsequently be reexported to another destination. Consequently, it is possible that the ultimate consignee and the country of ultimate destination will not coincide with that of the importer. All parties, including the ultimate consignee in the true country of ultimate destination will be shown on the completed "Import Certificate."

EXEMPTIONS

§ 123.30 Obsolete small arms.

District directors of customs are authorized to permit the export, without a license, of firearms covered by Category I (a) and (e) of the U.S. Munitions List, which were manufactured prior to 1898, on presentation of satisfactory evidence of age.

§ 123.31 Arms and ammunition for personal use.

(a) Subject to the provisions of § 126.01, district directors of customs are authorized to permit, after declaration by the individual and inspection by a customs office, not more than three nonautomatic firearms and not more than 1,000 cartridges therefor, to be exported from the United States without a license, when these firearms are on the person of an individual or with his baggage or effects, whether accompanied or unaccompanied (but not mailed), and are intended exclusively for his personal use for sporting or scientific purposes or for personal protection and not for resale. This exemption extends to not more than three tear gas guns or other type hand dispensers and not more than 100 tear gas cartridges therefor. The foregoing exemption is not applicable (1) to crewmembers of vessels or aircraft unless they personally declare the firearms to a customs officer upon each departure from the United States, and declare the intention to return them on each return to the United States, and (2) to the personnel referred to in § 123.32, infra.

(b) Subject to the provisions of § 126.01 of this subchapter, district directors of customs are authorized to permit individuals to export ammunition for firearms, without a license, provided the quantity does not exceed 1,000 cartridges (or rounds) in any shipment, and the ammunition is for their personal use and not for resale. The foregoing exemption is not applicable to the personnel referred to in § 123.32.

§ 123.32 Arms for personal use of members of the Armed Forces and civilian employees of the U.S. Government.

The following exemptions shall apply to uniformed personnel of the U.S. Armed Forces and U.S. civilian employees of the U.S. Government (both referred to hereinafter as "personnel") who are assigned abroad for extended duty. These exemptions do not apply to dependents of the personnel.

(a) *Firearms.* District directors of customs are authorized to permit Category I(a) firearms and parts for such weapons to leave (but not be mailed from) the United States without a license provided: (1) They are consigned to servicemen's clubs abroad for uniformed members of the U.S. Armed Forces; (2) in the case of uniformed members of the U.S. Armed Forces and civilian employees of the Department of Defense, they are consigned to the personnel, for their personal use and not for resale, if the firearms are accompanied by a written authorization from the commanding officer; or (3) in the case of other U.S. Government employees, they are consigned to such personnel for their personal use and not for resale, and the Chief of the U.S. Diplomatic Mission, or his designee, in the country of destination, has approved in writing to the Department of State the bringing of specific types and quantities of firearms into that country.

(b) *Ammunition.* District directors of customs are authorized to permit not more than 1,000 cartridges (or rounds) of ammunition for the firearms in paragraph (a) of this section to be exported (but not mailed) from the United States without a license when the firearms are on the person of the owner or with his baggage or effects, whether accompanied or unaccompanied (but not mailed).

§ 123.33 Sample shipments.

Subject to the provisions of § 126.01 of this subchapter, district directors of customs are authorized to permit a total of not more than three rifles, carbines (excluding automatic and semiautomatic models), revolvers, and pistols to be exported without a license, provided the articles in question are not for sale and will be returned to the original shipper. Customs authorities may also permit the export of sample firearms without a license when they are being returned to their original owner abroad.

§ 123.34 Minor components.

Subject to the provisions of § 126.01 of this subchapter district directors of customs are authorized to permit the export without a license of components and parts for Category I(a) firearms, except barrels, cylinders, receivers (frames), or complete breech mechanisms, when the total value does not exceed $100 wholesale in any single transaction.

§ 123.35 Border shipments and shipments transiting the Panama Canal.

Shipments originating in Canada or Mexico which incidentally transit the United States en route to a delivery point in the country of origin are exempt from the requirement of an intransit license. Vessels transiting the Panama Canal without off-loading cargo are exempt from the requirement of an intransit license.

§ 123.36 Certain helium gas exports.

Subject to the provisions of §§ 121.14 and 126.01 of this subchapter, district directors of customs are authorized to permit the export, without a license, of miniature cylinders containing helium gas in fractional cubic foot quantities mixed with other gases: *Provided*, That the shipment does not exceed 10 cubic feet of "contained helium" to any consignee in any one shipment, and (a) the gas is intended for medical use or for the use of educational and research institutions and laboratories where such organizations have education and research as their primary purpose; or (b) the gas is to be used by U.S. companies to repair or provide maintenance on equipment for which they have contractual responsibilities.

§ 123.37 Propellants and explosives.

Subject to the provisions of § 126.01 of this subchapter, district directors of customs are authorized to permit the export, without a license in any single transaction, of not more than 25 pounds of propellants and explosives for nonexplosive uses, such as for medical uses and laboratory tests. Such shipments must be clearly marked as to content and must not include any materials bearing a military security classification.

§ 123.38 Nuclear materials.

To the extent that equipment, the export of which is controlled by the Atomic Energy Commission under the Atomic Energy Act of 1954, as amended, is coextensive with equipment in Category VI(e), Category XVI, and Category XVIII, the provisions of this subchapter shall not apply.

PROCEDURES

§ 123.50 Applications for licenses.[4]

Applications for licenses for the export of arms, ammunition, and implements of war shall be made as follows (on forms dated not earlier than 1968) to the Office of Munitions Control, Department of State, Washington, D.C. 20520:

(a) Applications for export licenses shall be made on Form DSP–5.

(b) Applications for intransit licenses shall be made on Form DSP–61.

(c) Applications for temporary export licenses shall be made on Form DSP–73.

§ 123.51 Renewal and disposition of licenses.

(a) If any licensed commodities are not shipped within the period authorized in the license, a new application for another license shall be submitted therefor. The new application shall refer to the lapsed license and shall not include any commodities other than the unshipped balance of the lapsed license.

(d) Unused, e x p i r e d, suspended, amended, or revoked licenses shall be returned immediately to the Department of State.

§ 123.52 Ports of exit or entry.

An application for a license shall state the proposed port or ports of exit from, and if applicable, entry into, the United States. If, after the issuance of the license, there will be any change of the port or ports originally stated in the application, the Office of Munitions Control shall be notified immediately by letter of such proposed change, and a copy shall be sent to the district director of customs at the new port.

§ 123.53 Filing of export and intransit licenses with district directors of customs.

(a) Prior to the actual shipment of any arms, ammunition and implements of war on the U.S. Munitions List, the license issued therefor shall be filed with the district director of customs at the port where the shipment is made, except for exports by mail (see § 123.54). A Shipper's Export Declaration (U.S. Department of Commerce Form 7525-V) shall also be filed with, and be authenticated by, the district director of customs before the arms, ammunition, and implements of war are actually shipped for export. The district director of customs shall endorse each license to show the shipments made. Licenses shall be returned by the district director of customs to the Office of Munitions Control, Department of State, upon expiration of the dates stated thereon, or upon the completion of the shipments, whichever first occurs.

(b) District directors of customs are authorized to permit the shipment of arms, ammunition, and implements of war on the U.S. Munitions List identified on any license when the total value of the shipment does not exceed 10 percent of the aggregate value (not quantity) stated in the license.

§ 123.54 Shipments by mail.

Export licenses for U.S. Munitions List equipment being sent abroad by mail shall be filed with the postmaster at the post office where the equipment is mailed. A Shipper's Export Declaration (U.S. Department of Commerce Form 7525–V) shall also be filed with, and be authenticated by, the postmaster before the equipment is actually sent. The postmaster shall endorse each license to show the shipments made. Licenses shall be returned by the postmaster to the Department of State upon expiration of the dates stated thereon or upon completion of the mailings, whichever first occurs.

§ 123.55 Temporary exports.

(a) A License for Temporary Export of unclassified U.S. Munitions List equipment (not technical data) shall be obtained from the Department of State, on Form DSP-73 when such arms, ammunition, and implements of war will be sent temporarily abroad for brief periods and will be returned to the United States in the same condition.

(b) Equipment authorized for temporary export under License for Temporary Export shall be shipped only from a port in the United States where a district director of customs is available. The License for Temporary Export shall be presented to the district director of customs who, upon verification, shall endorse the exit column on the reverse side of the license. The endorsed License for Temporary Export shall be retained by the licensee. In the case of a military aircraft or vessel the endorsed license shall be carried on board such vessel or aircraft as evidence that it has been duly authorized by the Department of State to leave the United States temporarily.

(c) Upon the return to the United States of equipment covered by a License for Temporary Export, the license shall be endorsed in the entry column by the district director of customs. The licensee shall transmit the used license immediately to the Office of Munitions Control, Department of State.

(d) The Department of State may permit a series of temporary exports of aircraft and vessels on the U.S. Munitions List under a single License for Temporary Export. Full details regarding such transactions shall be submitted to the Department on Form DSP-73, supplemented if necessary by a covering letter. Such series of temporary exports shall usually be for a period not exceeding 6 months. The district director of customs shall endorse the License for Temporary Export upon each exit from, and reentry into, the United States. On the final return, the licensee shall transmit the used license immediately to the Office of Munitions Control, Department of State.

(e) All unused Licenses for Temporary Export shall be returned to the Office of Munitions Control, Department of State, prior to, or immediately after, the expiration of the authorized dates stated thereon.

(f) Owners of arms, ammunition, and implements of war on the U.S. Munitions List exported under Licenses for Temporary Export shall be responsible for the acts of their employees, agents, and all authorized persons to whom possession has been entrusted regarding the operation, use, possession, transportation, and handling of such arms, ammunition, and implements of war abroad. All transferees abroad obtaining temporary custody of such arms, ammunition, and implements of war, directly or indirectly, and irrespective of the number of intermediate transfers, shall be bound by the regulations of this subchapter in the same manner and to same extent as the original owner-transferor.

(g) Failure to return immediately a used or a lapsed unused License for Temporary Export to the Office of Munitions Control, Department of State, shall constitute an offense punishable under the provisions of Part 127 of this subchapter.

---

[4] The procedures governing the export of classified information and equipment are set forth in Part 125 of this subchapter.

(h) Extensions of Licenses for Temporary Export shall be made to the Office of Munitions Control, Department of State, on new application forms (DSP-73), which shall state, inter alia, the port of departure stated in the original application and the name of the new port of departure if different.

§ 123.56 Domestic aircraft shipments via a foreign country.

When airborne shipments of arms, ammunition, and implements of war on the U.S. Munitions List are to be transported from one location in the United States to another location in the United States via a foreign country, the pilot of the aircraft shall file a written statement with the district director of customs at the port of exit in the United States. The original statement shall be filed at the time of exit with the district director of Customs. A duplicate of the statement shall also be filed with the district director of customs at the port of reentry, who shall duly endorse it and transmit it to the district director of customs at the port of exit. The statement shall be as follows:

STATEMENT

DOMESTIC SHIPMENTS VIA A FOREIGN COUNTRY OF ARMS, AMMUNITION, AND IMPLEMENTS OF WAR ON THE U.S. MUNITIONS LIST

Under the penalty according to Federal law, the undersigned certifies and warrants that all the facts in this document are true and correct, and that the equipment listed below are being shipped from _____ _____ (U.S. port of exit) via _____ to (foreign country) _____, which is the final (U.S. port of entry) destination in the United States.

| Amount | Description of equipment | Value |
|--------|--------------------------|-------|
| ------ | ------------------------ | ----- |
| ------ | ------------------------ | ----- |
| ------ | ------------------------ | ----- |

Signed _____

Endorsement: Customs Inspector.
Port of exit _____
Date: _____
Endorsement: Customs Inspector.
Port of entry _____
Date: _____

PART 124—MANUFACTURING LICENSE AND TECHNICAL ASSISTANCE AGREEMENTS

Sec.
124.01 Manufacturing license and technical assistance agreements.
124.02 Export of technical data in furtherance of an agreement.
124.03 Deposit of copies of signed agreements with the Department of State.
124.04 Termination of manufacturing license and technical assistance agreements.
124.05 Proposed agreements not concluded.

PROCEDURES

124.10 Required information in agreements.
124.11 Required information in letters of transmittal.

AUTHORITY: The provisions of this Part 124 issued under sec. 414, as amended, 68 Stat. 848, 22 U.S.C. 1934; secs. 101 and 105, E.O. 10973, 26 F.R. 10469; sec. 6, Departmental Delegation of Authority No. 104, 26 F.R. 10608, as amended, 27 F.R. 9925, 28 F.R. 7231; Redelegation of Authority No. 104-3-A, 28 F.R. 7231.

§ 124.01 Manufacturing license and technical assistance agreements.

Proposed agreements and proposed amendments to existing agreements between persons in the United States and persons in foreign countries, private or governmental, for (a) the manufacture abroad, or (b) the furnishing abroad of technical assistance (i.e., the performance of functions and/or the conveyance of information involving the disclosure of technical data) relating to arms, ammunition, and implements of war on the U.S. Munitions List, shall be submitted by letter (not Form DSP-5) to the Office of Munitions Control, Department of State, for approval from the standpoint of world peace, U.S. foreign policy and the security of the United States. Proposed agreements (or amendments thereto) shall not take effect until Department of State approval has been obtained. (Sales representation agreements are not subject to Department of State approval.)

§ 124.02 Export of technical data in furtherance of an agreement.

(a) District directors of customs or postal authorities may permit the export without a license of unclassified technical data, in furtherance of a manufacturing license or technical assistance agreement covering arms, ammunition, and implements of war on the U.S. Munitions List which has been approved in writing by the Department of State, unless the unclassified technical data exceed the technical and/or product limitations approved in the relevant agreement. The U.S. party to the agreement shall certify that the unclassified technical data to be exported comply with the limitations imposed in this subsection. Department of State approval shall be additionally obtained for the export of any portion of the unclassified technical data which may exceed such limitations.

(b) The export of classified information in furtherance of an approved manufacturing license or technical assistance agreement which provides for the transmittal of classified information shall not require further Department of State approval provided:

(1) The U.S. party certifies to the Department of Defense transmittal authority that the classified information does not exceed the technical and/or product limitations in the agreement approved by the Department of State, and

(2) The U.S. party complies with the requirements of the Department of Defense Industrial Security Manual concerning the transmission of such classified information, and any other requirements of cognizant U.S. departments or agencies.

§ 124.03 Deposit of copies of signed agreements with the Department of State.

U.S. parties to manufacturing license and technical assistance agreements shall, within 30 days after their signature and entry into force, file with the Office of Munitions Control, Department of State, one copy of all such agreements concluded with the foreign parties.

§ 124.04 Termination of manufacturing license and technical assistance agreements.

U.S. parties to manufacturing license and technical assistance agreements shall inform the Office of Munitions Control, Department of State, in writing not less than 60 days prior to the expiration date of any such approved agreement of the impending termination of that agreement.

§ 124.05 Proposed agreements not concluded.

Proposed agreements that have been approved by the Department of State, with or without provisos, but not finally concluded with foreign parties for any reason whatsoever, shall be brought to the attention of the Office of Munitions Control, Department of State, within 60 days following a decision not to conclude the agreements.

PROCEDURES

§ 124.10 Required information in agreements.

Proposed manufacturing license and technical assistance agreements (and amendments thereto) shall be submitted in five copies to the Department of State for approval. (Such agreements shall not become effective until the Department's approval has been obtained.) The proposed agreements shall contain, inter alia, the following information and statements in terms as precise as possible, or the transmittal letter shall state the reasons for their omission or variation:

(a) The equipment and technology involved as described by military nomenclature, contract number, Federal stock number, nameplate data, or other specific information.

(b) A detailed description of the assistance and information to be furnished and the manufacturing rights to be granted, if any.

(c) The duration of the proposed agreement.

(d) Specific identification of the countries or areas in which manufacturing, production, processing, sale, or other form of transfer is to be licensed.

(e) A statement that reads as follows: "The article to be produced under license, including technical data pertaining thereto, is not authorized to be directly or indirectly sold, leased, released, assigned, transferred, conveyed, or in any manner disposed of in or to Albania, Bulgaria, Communist China, Cuba, Czechoslovakia, East Germany, Estonia, Hungary, Latvia, Lithuania, North Korea, Outer Mongolia, Poland, Rumania, Union of Soviet Socialist Republics, any of the area of Viet-Nam which is under de facto Communist control, and any other area which is determined by the Department of State to be under Communist control."

(f) (1) With respect to all manufacturing license agreements, a statement that reads as follows: "No export, sale,

transfer or other disposition of the licensed article is authorized to any country outside the territory wherein manufacture or sale is herein licensed without the prior written approval of the U.S. Government."

(2) With respect to manufacturing license agreements for significant combat equipment,[1] the Department may require that the prospective foreign licensee furnish an "Nth Country Control Statement" (Form DSP-83a) to the Office of Munitions Control. The Nth Country Control Statement shall provide that the licensee agrees to ensure that any contract or other transfer arrangement with a recipient of the licensed article in any country within the licensed sales territory will include the following provision:

"The recipient shall obtain the approval of the United States Government prior to entering into a commitment for the transfer of the licensed article by sale or otherwise to another recipient in the same or any other country in the world."

[At the option of the parties, the obligation on the licensee as provided in the Nth Country Control Statement (Form DSP-83a) may be included in the manufacturing license agreement.]

[The Office of Munitions Control reserves the right to require an Nth Country Control Statement (Form DSP-83a) or a similar undertaking in the license agreement, at the option of the parties, in connection with the foreign manufacture of any U.S. Munitions List article.]

(g) A statement that reads as follows: "This agreement shall not become effective without the prior approval of the Department of State of the United States Government."

(h) A statement that reads as follows: "This agreement is subject to all the laws and regulations, now or hereafter in effect, of the United States Government and its departments and agencies."

(i) A statement that reads as follows: "The licensor retains the right to terminate this agreement if the United States Government or its departments or agencies disapproves the continuance of the agreement."

(j) A statement that reads as follows:

"(1) It is agreed that sales under contracts made with funds derived through the Military Assistance Program or otherwise through the United States Government will not include either (a) charges for patent rights in which the U.S. Government holds a royalty-free license, or (b) charges for data which the U.S. Government has a right to use and disclose to others, which are in the public domain, or which the U.S. Government has acquired without restrictions upon their use and disclosure to others. However, charges may be made for reasonable reproduction, handling, mailing, and similar administrative costs incident to the furnishing of such data.

"(2) If the U.S. Government is obligated to pay royalties, fees or other charges for technical data, patents and inventions which were background to Licensor prior to any U.S. Government-funded effort for design and development of the items which are the subject of this agreement, and which are involved in the manufacture, use or sale of these items, any such charges, fees or royalties for the use of such rights in connection with any purchases from licensee or its sublicensees with U.S. funds, including those derived from a Mutual Security Program, shall be no greater than such first-mentioned obligation.

"(3) Subject to the provisions of paragraph (2) above, no other fees, charges or royalties in this agreement will be assessed against U.S. Government funded purchases of such items, except that a proportionate share of (a) technical assistance, (b) inventions and data which have been developed entirely without U.S. Government funding, (c) charges made for handling, reproduction and transfer of documentation as provided in this agreement, and (d) the rental or purchase price of machine tools and tooling may, to the extent that such charges are reasonable and related to the proposed procurement, be recognized as items of costs for such purchases."

(k) A statement that reads as follows: "The Licensor and Licensee agree that obligations created by this agreement are subordinate to any obligations created by contracts or subcontracts which they may have individually or collectively with the U.S. Government."

(l) A statement that reads as follows: "Any use of tooling and facilities which the U.S. Government owns or to which it has the right to acquire title must be authorized by the U.S. Government contracting officer."

(m) A statement that reads as follows: "No liability shall be incurred by or attributed to the U.S. Government in connection with any possible infringements of privately-owned patent or proprietary rights, either domestic or foreign, by reason of the U.S. Government's approval of this agreement."

§ 124.11  Required information in letters of transmittal.

An application for approval of a manufacturing license or technical assistance agreement with a foreign person by the Department of State shall be accompanied by an explanatory letter, in original and four copies, containing the following:

(a) A statement giving the licensor's Munitions Control registration number.

(b) A statement identifying any U.S. Government contract under which the equipment or technical data was or were produced, improved, developed, or supplied, or whether derived from any bid or other proposal to the U.S. Government.

(c) A statement giving the military security classification of the equipment or technical data.

(d) A statement reading as follows: "If the agreement is approved by the Department of State, such approval will not be construed by _____
                                      (the applicant)
as passing on the legality of the agreement from the standpoint of antitrust laws or other applicable statutes, nor will _____ construe
        (the applicant)
the Department's approval as constituting either approval or disapproval of any of the business terms or conditions between the parties to the agreement."

(e) A statement identifying any patent applications which disclose any of the subject matter of the equipment or technical data covered by secrecy orders issued by the U.S. Patent Office.

(f) A statement that reads as follows: "The _____ will not
             (applicant)
permit the proposed agreement to enter into force until it has been approved by the Department of State."

(g) A statement reading as follows: "Within 30 days the _____
                                         (applicant)
will furnish the Department of State with one copy of the signed agreement (or amendment) as finally concluded; will advise the Department of its termination not less than 60 days prior to expiration, including information on the continuation of any rights or flow of technical data to the foreign party; and if a decision is made not to conclude the proposed agreement, will so advise the Department within 60 days."

## PART 125—TECHNICAL DATA

Sec.
125.01  Technical data.
125.02  Classified information.
125.03  Export of technical data.
125.04  Export of unclassified technical data.
125.05  Export of classified information.

EXEMPTIONS

125.10  Shipments by U.S. Government agencies.
125.11  General exemptions.
125.12  Canadian shipments.
125.13  Data on nuclear materials.

PROCEDURES

125.20  Export of unclassified technical data.
125.21  Export of classified information.
125.22  Certification requirements.
125.23  Filing of licenses for export of technical data.

AUTHORITY: The provisions of this Part 125 issued under sec. 414, as amended, 68 Stat. 848; 22 U.S.C. 1934; secs. 101 and 105, E.O. 10973, 26 F.R. 10469; sec. 6, Departmental Delegation of Authority No. 104, 26 F.R. 10608, as amended, 27 F.R. 9925, 28 F.R. 7231; and Redelegation of Authority No 104-3-A, 28 F.R. 7231.

NOTE: Export licenses for technical data may be denied, revoked, suspended, or amended by the Department of State (See § 123.05 of this subchapter.)

§ 125.01  Technical data.

As used in this subchapter the term "technical data" means: (a) Unclassified information related to the use, operation, maintenance, repair, overhaul, production, processing, manufacture, development, engineering, or design of any arms, ammunition, and implements of war on the U.S. Munitions List, or (b) any technology which advances the state-of-the-art or establishes a new art in an area of significant military

---

[1] Significant combat equipment shall include the articles (not including technical data) enumerated in categories I (a), (b), and (c) (in quantity); II (a) and (b); III (a) (excluding ammunition for firearms in category I); IV (a), (c), and (d); V(b) (in quantity); VI(a) (limited to combatant vessels as defined in § 121.12(a) of this subchapter), (b) inclusive only of turrets and gun mounts, missile systems, and special weapons systems) and (e); VII (a), (b), (c), and (f); VIII (a), (b), (c), OEMS as defined in (k), and inertial systems as defined in (l); XII(a); XIV (a), (b), (c), and (d); XVI; and XVII.

applicability,[1] or (c) classified information as defined in § 125.02.

§ 125.02 Classified information.

As used in this subchapter, the term "classified information" is either (a) equipment, or (b) information (relating to any arms, ammunition, and implements of war on the U.S. Munitions List) which has been assigned a U.S. security classification as requiring protection in the interest of national defense. (Patent applications covered by a secrecy order fall in the same category as classified information. See § 125.05 (d).) See §§ 125.10 and 125.11 for exemptions.

§ 125.03 Export of technical data.

The export controls of this subchapter over technical data (a) apply to the export of unclassified technical data relating to arms, ammunition, and implements of war on the U.S. Munitions List, and (b) classified equipment and classified information relating to arms, ammunition, and implements of war on the U.S. Munitions List as defined in § 125.02. These controls shall apply whenever the information is to be exported by oral, visual, or documentary means. Therefore, an export occurs whenever technical data is, inter alia, mailed or shipped outside the United States, carried by hand outside the United States, disclosed through visits abroad by American citizens (including participation in briefings and symposia), and disclosed to foreign nationals[2] in the United States (including plant visits and participation in briefings and symposia). A license to export technical data shall not be used for foreign production purposes, or for technical assistance in such production, without the specific approval of the Department of State.

§ 125.04 Export of unclassified technical data.

(a) *General.* A license issued by the Department of State shall be required for the export of unclassified technical data relating to any arms, ammunition, and implements of war on the U.S. Munitions List unless otherwise expressly exempted in this subchapter (see §§ 125.10 and 125.11).

(b) *Patents.* A license issued by the Department of State shall be required for the export of unclassified technical data relating to arms, ammunition, and implements of war on the U.S. Munitions List which are included in any application for a foreign patent. This licensing requirement is in addition to the license for foreign filing which must be obtained by an exporter from the U.S. Patent Office during the first 6 months of the pendancy of a patent application. After 6 months, only a Department of State license shall be required. (See § 125.05(d) concerning patent applications covered by a secrecy order.)

(c) *Visits.* A license issued by the Department of State shall be required for the export of unclassified technical data relating to arms, ammunition, and implements of war on the U.S. Munitions List which are to be disclosed to foreign nationals either in connection with visits to foreign countries, including foreign diplomatic missions and consular offices in the United States and abroad, by U.S. persons, or in connection with visits to the United States by foreign nationals, unless otherwise expressly exempted in this subchapter (see § 125.11).

§ 125.05 Export of classified information.

(a) Any request for authority to export classified information by other than the cognizant department or agency of the U.S. Government shall be submitted by letter to the Department of State for approval. (See §§ 125.10 and 125.11 for exemptions.) The letter shall set forth all pertinent information with full details of the proposed transaction. (See § 125.21 for procedure.)

(b) Classified information, as defined in § 125.02, which is approved by the Department of State for export shall be transferred or communicated only in accordance with the requirements of the Department of Defense Industrial Security Manual relating to the transmission of classified information (and any other requirements imposed by cognizant U.S. departments and agencies).

(c) The approval of the Department of State shall be obtained for the export of classified information to be disclosed to foreign nationals either in connection with visits to foreign countries by U.S. persons, or in connection with visits to the United States by foreign nationals, unless the proposed export is expressly exempt under the provisions of this subchapter (see § 125.11). There shall be no release of classified information in any manner or form to any foreign national except as otherwise expressly provided in this subchapter.

(d) All communications relating to a patent application covered by a secrecy order shall be addressed to the U.S. Patent Office. (See 37 CFR 5.11.)

EXEMPTIONS

§ 125.10 Shipments by U.S. Government agencies.

Exports of technical data by U.S. Government agencies are exempt in accordance with Part 126 of this subchapter. This exemption, however, shall not apply when a U.S. Government agency, on behalf of a private individual or firm, acts as a transmittal agent either as a convenience or in satisfaction of security requirements.

§ 125.11 General exemptions.

(a) Except as provided in § 125.01, district directors of customs and postal authorities are authorized to permit the export without a license of unclassified technical data as follows:

(1) If it is in published[3] form and subject to public dissemination by being:
 (i) Sold at newsstands and bookstores;
 (ii) Available by subscription or purchase without restrictions to any person or available without cost to any person;
 (iii) Granted second class mailing privileges by the U.S. Government; or,
 (iv) Freely available at public libraries.

(2) If it has been approved for public release by any U.S. Government department or agency having authority to classify information or material under Executive Order 10501, as amended, and does not disclose the details of design, production, or manufacture of any arms, ammunition, or implements of war on the U.S. Munitions List.

(3) If the export is in furtherance of a manufacturing license or technical assistance agreement approved by the Department of State in accordance with Part 124 of this subchapter.

(4) If the export is in furtherance of a contract with an agency of the U.S. Government or a contract between an agency of the U.S. Government and foreign persons, provided the contract calls for the transmission of relevant unclassified technical data, and such data are being exported only by the prime contractor.

(5) If it relates to firearms not in excess of caliber .50 and ammunition for such weapons, except technical data containing advanced designs, processes, and manufacturing techniques.

(6) If it consists of technical data, other than design, development, or production information relating to equipment, the export of which has been previously authorized to the same recipient.

(7) If it consists of operations, maintenance, and training manuals, and aids relating to equipment, the export of which has been authorized to the same recipient.[4]

(8) If it consists of additional copies of technical data previously approved for export to the same recipient.

(9) If it consists solely of technical data being reexported to the original source of import.

(10) If the export is by the prime contractor in direct support and within the technical and/or product limitations of a "U.S. Government approved project" and the prime contractor so certifies. The Office of Munitions Control, Department of State, will verify, upon request, those projects which are "U.S. Government approved", and accord an exemption to the applicant who applies for such verification and exemption, where

---

[1] The initial burden of determining whether the technology in question advances the state-of-the-art or establishes a new art is upon the U.S. party or applicant.

[2] The term "foreign nationals" as used in this subchapter means "All persons not citizens of, not nationals of, nor immigrant aliens to, the United States" as defined in the Department of Defense Industrial Security Manual. However, certain other foreign persons may be cleared to have access to technical data. See section 3 of the Industrial Security Manual.

[3] The burden for obtaining appropriate U.S. Government approval for the publication of technical data falling within the definition in § 125.01, including such data as may be developed under other than U.S. Government contract, is on the person or company seeking publication.

[4] Not applicable to technical data relating to Category VI(e) and Category XVI.

appropriate, under this subparagraph.[5]

(11) If the export is solely for the use of American citizen employees of U.S. firms provided the U.S. firm certifies its overseas employee is a U.S. citizen and has a "need to know."[6]

(b) *Plant visits.* Except as restricted by the provisions of § 126.01 of this subchapter:

(1) No license shall be required for the oral and visual disclosure of unclassified technical data during the course of a plant visit by foreign nationals provided the data is disclosed in connection with a classified plant visit or the visit has the approval of a U.S. Government agency having authority for the classification of information of material under Executive Order 10501, as amended, and the requirements of section V, paragraph 38(i) of the Industrial Security Manual are met.

(2) No license shall be required for the documentary disclosure of unclassified technical data during the course of a plant visit by foreign nationals provided it is a verbatim presentation of the oral and visual data disclosed under subparagraph (1) of this paragraph.

(3) No Department of State approval is required for the disclosure of oral and visual classified information during the course of a plant visit by foreign nationals provided the visit has been approved by the cognizant U.S. Defense agency and the requirements of section V, paragraph 38(i) of the Defense Industrial Security Manual are met.

§ 125.12 Canadian shipments.

District directors of customs and postal authorities are authorized to permit the export of unclassified technical data to Canada without an export license, except when such technical data relate to the arms, ammunition, and implements of war in § 123.12 of this subchapter.

§ 125.13 Data on nuclear materials.

To the extent that technical data, the export of which are controlled by the Atomic Energy Commission under the Atomic Energy Act of 1954, as amended, are coextensive with technical data related to articles in Category VI(e),

---

[5] Classified information may also be transmitted in direct support of and within the technical and/or product limitations of such verified "U.S. Government approved projects" without prior Department of State approval provided the U.S. party so certifies and complies with the requirements of the Department of Defense Industrial Security Manual relating to the transmission of such classified information (and any other requirements of cognizant U.S. Government departments or agencies).

[6] Classified information may also be exported to such certified American citizen employees without prior Department of State approval provided the U.S. party complies with the requirements of the Department of Defense Industrial Security Manual relating to the transmission of such classified information (and any other requirements of cognizant U.S. Government departments or agencies). Such technical data or information (classified or unclassified) shall not be released by oral, visual, or documentary means to any foreign person.

Category XVI, and Category XVIII, the provisions of this subchapter shall not apply.

PROCEDURES

§ 125.20 Export of unclassified technical data.

(a) *General and visits.* Unless exempted in §§ 125.10 or 125.11 of this subchapter, applications for the export or the disclosure of nonexempt unclassified technical data to foreign persons shall be made to the Department of State on Form DSP-5, accompanied by five copies of the data. In the case of visits, sufficient details of the proposed discussions shall be transmitted in quintuplicate for an adequate appraisal of the data in question.

(b) *Patents.* All requests for approval for the filing of patent applications in a foreign country, and requests for filing amendments, modifications or supplements thereto, shall be made to the U.S. Patent Office in accordance with 37 CFR Part 5, and to the Department of State in accordance with the provisions of paragraph (a) of this section.

§ 125.21 Export of classified information.

Unless exempted in § 125.10 or § 125.11 of this subchapter, applications for approval to export or disclose classified information or classified equipment to foreign nationals shall be submitted to the Department of State by letter (not DSP-5) in quintuplicate, accompanied by 5 copies of any documentary information. The letter shall include, inter alia, statements specifying:

(a) A lead statement giving the licensor's Munitions Control registration number.

(b) The highest degree of security classification of the equipment or information involved, and the authority responsible for assigning such classification.

(c) The cognizant project or contracting agency.

(d) If the equipment or information was not directly contracted for, whether it was derived from U.S. Government sources, project development, bid requirements, or contractual arrangements.

(e) Military nomenclature, contract numbers, and other identifying information.

(f) Location(s) and date(s) where disclosure(s) will be made.

(g) The purpose and the names of the foreign person(s) to whom disclosure(s) will be made.

§ 125.22 Certification requirements.

An exporter in the United States claiming any exemption for the export of technical data in accordance with the provisions of § 125.11, may do so by certifying that the proposed export is covered by the relevant paragraph(s) of that Section. Such certification shall be made by marking the package or letter "22 CFR 125.11 * * * applicable," identifying the specific paragraph(s) under which the exemption is claimed.

§ 125.23 Filing of licenses for export of technical data.

Licenses authorizing the export of technical data shall be presented to, and filed with the appropriate district director of customs or postmaster at the time of shipment or mailing. The district director of customs or postmaster shall transmit the licenses to the Office of Munitions Control, Department of State, in accordance with the instructions contained on the reverse thereof.

PART 126—PROHIBITED SHIPMENTS, TEMPORARY SUSPENSION OR MODIFICATION OF REGULATIONS, EXEMPTIONS, AND RELATION TO OTHER PROVISIONS OF LAW

Sec.
126.01 Prohibited shipments to or from certain countries.
126.02 Temporary suspension or modification of regulations of the subchapter.
126.03 Waiver or exception in hardship cases.
126.04 Shipments by U.S. Government agencies.
126.05 Relation to other provisions of law.

AUTHORITY: The provisions of this Part 126 issued under sec. 414, as amended, 68 Stat. 848, 22 U.S.C. 1934; secs. 101 and 105, E.O. 10973, 26 F.R. 10469; sec. 6, Departmental Delegation of Authority No. 104, 26 F.R. 10608, as amended, 27 F.R. 9925, 28 F.R. 7231; Redelegation of Authority No. 104-3-A, 28 F.R. 7231.

§ 126.01 Prohibited shipments to or from certain countries.

The policy of the United States is to deny licenses and other approvals for U.S. Munitions List articles destined for or originating in Albania, Bulgaria, Communist China, Cuba, Czechoslovakia, East Germany, Estonia, Hungary, Latvia, Lithuania, North Korea, Outer Mongolia, Poland, Rumania, Union of Soviet Socialist Republics, any of the area of Viet-Nam which is under *de facto* communist control, and to or from any other area where the shipment of Munitions List articles would not be in furtherance of world peace and the security and foreign policy of the United States. The exemptions provided in the regulations in this subchapter, except § 125.11(a) (1) and (2) of this subchapter, do not apply to shipments destined for or originating in any of these proscribed countries or areas.

§ 126.02 Temporary suspension or modification of regulations of the subchapter.

The Director, Office of Munitions Control, Department of State, is authorized to order the temporary suspension or modification of any or all of the regulations of this subchapter in the interest of furthering the objectives of world peace and the security and foreign policy of the United States.

§ 126.03 Waiver or exception in hardship cases.

In bona fide cases showing exceptional and undue hardship, the Director, Office

of Munitions Control, Department of State, is authorized to make an exception to the regulations of this subchapter after full review.

§ 126.04 Shipments by U.S. Government agencies.

The exportation of Articles on the U.S. Munitions List by any department or agency of the U.S. Government is not subject to the provisions of section 414 of the Mutual Security Act of 1954, as amended. A license to export such articles, therefore, is not required when all aspects of the transaction are handled by a U.S. Government agency. A license shall be required, however, when a private person or forwarding agent is involved in any aspect of the transaction unless the consignor, consignee, and intermediate consignee (if any) are agencies of the U.S. Government and the exportation is covered by a U.S. Government bill of lading. This section does not authorize any government department or agency to export any items listed in § 121.01 of this subchapter which are subject to restrictions by virtue of other statutory provisions.

§ 126.05 Relation to other provisions of law.

The provisions in this subchapter are in addition to, and are not in lieu of, any other provision of law or regulations respecting commerce in arms, ammunition, and implements of war, and technical data relating thereto.

---

## PART 127—VIOLATIONS AND PENALTIES

Sec.
127.01 Violations in general.
127.02 Misrepresentation and concealment of facts.
127.03 Penalties for violations.
127.04 Penalties for violations relating to Southern Rhodesia.
127.05 Authority of district directors of customs.
127.06 Seizure and forfeiture in attempts at illegal exports.

AUTHORITY: The provisions of this Part 127 issued under sec. 414, as amended, 68 Stat. 848; 22 U.S.C. 1934; 18 U.S.C. 1001; 22 U.S.C. 401; secs. 101 and 105, E.O. 10973, 28 F.R. 10469; sec. 6, Departmental Delegation of Authority No. 104, 26 F.R. 1068, as amended, 27 F.R. 9925, 28 F.R. 7231; and Redelegation of Authority No. 104-3-A, 28 F.R. 7231. The provisions of Part 127 regarding exports to Southern Rhodesia, issued under E.O. 11322, 32 F.R. 119; 59 Stat. 620, 22 U.S.C. 287c.

§ 127.01 Violations in general.

It shall be unlawful for any person to export or attempt to export from the United States any of those articles on the U.S. Munitions List without first having obtained a license therefor, unless written approval was obtained from the Department of State or an exemption from this requirement is authorized by this subchapter.

§ 127.02 Misrepresentation and concealment of facts.

(a) It shall be unlawful willfully to use, or attempt to use, for the purpose of exportation of U.S. Munitions List articles, any export or intransit control document which contains a false statement or misrepresents or conceals a material fact. Any such false statement, misrepresentation or concealment of material fact in such a document shall be considered, as made in a matter within the jurisdiction of a department or agency of the United States, in violation of section 1001 of title 18, United States Code and section 414 of the Mutual Security Act of 1954, as amended (22 U.S.C. 1934).

(b) For the purpose of this section, the term export control document includes the following when used for the purpose of exportation, or attempted exportation of U.S. Munitions List articles:
(1) Applications for export or intransit license and supporting documents.
(2) Shippers export declarations.
(3) Invoices.
(4) Declarations of destination.
(5) Delivery verifications.
(6) Applications for temporary export license.
(7) Applications for registration.
(8) Purchase orders.
(9) Foreign import certificates.
(10) Bills-of-lading.
(11) Air way bills.
(12) Consignee-purchaser transaction statements.
(13) Nth country control statements.

§ 127.03 Penalties for violations.

Any person who willfully violates any provision of section 414 of the Mutual Security Act of 1954, as amended (22 U.S.C. 1934), or any rule or regulation issued under that section, or who willfully, in a registration or license application, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall, upon conviction, be fined not more than $25,000, or imprisoned not more than 2 years, or both.

§ 127.04 Penalties for violations relating to Southern Rhodesia.

Any person subject to the jurisdiction of the United States who, with regard to exports from the United States to Southern Rhodesia, willfully violates any provision of section 1(d), of Executive Order 11322 or any rule or regulation contained in this part, or who willfully in a registration or license application makes any untrue statement of a material fact, or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall, upon conviction, be fined not more than $10,000, or imprisoned not more than 10 years, or both.

§ 127.05 Authority of district directors of customs.

(a) District directors of customs are authorized to take appropriate action to insure observance of this subchapter as to the exportation, or the attempted exportation, of arms, ammunition, and implements of war, and technical data relating thereto, whether authorized by licenses or written approval issued under this subchapter, including, but not limited to, inspection of loading or unloading of carriers.

(b) Upon the presentation of a license or written approval to a customs officer, authorizing the exportation of arms, ammunition, and implements of war, and technical data relating thereto, the customs officer may require, in addition to such documents as may be required by customs regulations, the production of other relevant documents and information relating to the proposed exportation, including, but not limited to, invoices, orders, packing lists, shipping documents, correspondence, and instructions.

§ 127.06 Seizure and forfeiture in attempts at illegal exports.

(a) Any attempt to export or ship from or take out of the United States any articles on the U.S. Munitions List in violation of the provisions of this subchapter shall constitute an offense punishable under section 401 of title 22 of the United States Code. Whenever it is known or there shall be probable cause to believe that any articles on the U.S. Munitions List are intended to be or are being or have been exported or removed from the United States in violation of law, such articles and any vessel, vehicle or aircraft involved in such attempt shall be subject to seizure, forfeiture and disposition as provided in section 401 of title 22 of the United States Code.

(b) Similarly, any attempt to violate any of the conditions under which a Temporary Export or Intransit License was issued pursuant to this subchapter shall also constitute an offense punishable under section 401 of title 22 of the United States Code, and such articles, together with any vessel, vehicle or aircraft involved in such attempt shall be subject to seizure, forfeiture, and disposition as provided in section 401 of title 22 of the United States Code.

---

## PART 128—ADMINISTRATIVE PROCEDURES

§ 128.01 Exclusion of functions under section 414 of the Mutual Security Act of 1954, as amended.

The functions conferred by section 414 of the Mutual Security Act of 1954, as amended, are excluded from the following sections of the Administrative Procedure Act: 5 U.S.C. §§ 553, 554.

(Sec. 414, as amended, 68 Stat. 848; 22 U.S.C. 1934; secs. 101 and 105, E.O. 10973, 28 F.R. 10469; sec. 6, Departmental Delegation of Authority No. 104, 26 F.R. 10608, as amended, 27 F.R. 9925, 28 F.R. 7231; and Redelegation of Authority No. 104-3-A, 28 F.R. 7231)

NOTE: The recordkeeping and reporting requirements contained herein have been approved by the Bureau of the Budget in accordance with the Federal Reports Act of 1942.

Effective dates: The regulations in Subchapter M shall be effective upon publication in the FEDERAL REGISTER, except (a) the following articles shall

not be subject to Department of State licensing until 42 days after the date of publication: Liquid pepper as listed in § 121.08(4)(c); nitrogen tetroxide as listed in § 121.09(7); and perchloryl fluoride as listed in § 121.09(9)(c); and (b) the following articles shall not be relinquished from Department of State licensing until 42 days after the date of publication: Shotguns with barrels 18 inches and over in length; landing ships (LSSF, LSIL, LSM, and LSSL), landing craft (LCC, LCP, LCR, LCS, LCV), floating dock (YD), floating pile driver (YPD), and dredge (YM), as previously listed in § 121.12.

Dated: July 2, 1969.

[SEAL]  WILLIAM P. ROGERS,
        *Secretary of State.*

[F.R. Doc. 69-8412; Filed, July 16, 1969; 8:49 a.m.]

# Title 25—INDIANS

**Chapter I—Bureau of Indian Affairs, Department of the Interior**

SUBCHAPTER T—OPERATION AND MAINTENANCE

## PART 221—OPERATION AND MAINTENANCE CHARGES

### Flathead Indian Irrigation Project, Mont.

On page 9287 of the FEDERAL REGISTER of June 12, 1969, there was published a notice of intention to amend §§ 221.24, 221.26 and 221.28 of title 25, Code of Federal Regulations, dealing with the irrigable lands of the Flathead Indian Irrigation Project, Mont., that are subject to the jurisdiction of the several irrigation districts. The purpose of the amendments is to establish the lump sum assessment against the Flathead, Mission, and Jocko Valley Districts within the Flathead Indian Irrigation Project for the 1970 season.

Interested persons were given 30 days within which to submit written comments, suggestions, or objections with respect to the proposed amendments. No comments, suggestions, or objections have been received, and the proposed amendments are hereby adopted without change as set forth below.

Sections 221.24, 221.26, and 221.28 are amended to read as follows:

§ 221.24  Charges.

Pursuant to a contract executed by the Flathead Irrigation District, Flathead Indian Irrigation Project, Mont., on May 12, 1928, as supplemented and amended by later contracts dated February 27, 1929, March 28, 1934, August 26, 1936, and April 5, 1950, there is hereby fixed for the season of 1970 an assessment of $305,976.29 for the operation and maintenance of the irrigation system which serves that portion of the project within the confines and under the jurisdiction of the Flathead Irrigation District. This assessment involves an area of approximately 82,057.61 acres, which does not include any land held in trust for Indians and covers all proper general charges and project overhead.

§ 221.26  Charges.

Pursuant to a contract executed by the Mission Irrigation District, Flathead Indian Irrigation Project, Mont., on March 7, 1931, approved by the Secretary of the Interior on April 21, 1931, as supplemented and amended by later contracts dated June 2, 1934, June 6, 1936, and May 16, 1951, there is hereby fixed, for the season of 1970 an assessment of $55,169.18 for the operation and maintenance of the irrigation system which serves that portion of the project within the confines and under the jurisdiction of the Mission Irrigation District. This assessment involves an area of approximately 14,908.72 acres, which does not include any land held in trust for Indians and covers all proper general charges and project overhead.

§ 221.28  Charges.

Pursuant to a contract executed by the Jocko Valley Irrigation District, Flathead Irrigation Project, Mont., on November 13, 1934, approved by the Secretary of the Interior on February 26, 1935, as supplemented and amended by later contracts dated August 26, 1936, April 18, 1950, and August 24, 1967, there is hereby fixed for the season of 1970 an assessment of $23,279.52 for the operation and maintenance of the irrigation system which serves that portion of the project within the confines and under the jurisdiction of the Jocko Valley Irrigation District. This assessment involves an area of approximately 6,870.03 acres, which does not include any lands held in trust for Indians and covers all proper general charges and project overhead.

JAMES F. CANAN,
*Area Director.*

[F.R. Doc. 69-8401; Filed, July 16, 1969; 8:45 a.m.]

# Title 49—TRANSPORTATION

**Chapter X—Interstate Commerce Commission**

SUBCHAPTER A—GENERAL RULES AND REGULATIONS

[Ex Parte No. MC-37 (Sub-No. 13)]

## PART 1048—COMMERCIAL ZONES

### Rio Grande Border Municipalities, Commercial Zones and Terminal Areas; Postponement of Effective Date

By order of the Commission entered May 7, 1969, and published on page 9870 of the June 26, 1969, issue of the FEDERAL REGISTER, § 1048.101 of Chapter X of Title 49 of the Code of Federal Regulations was amended.

Upon consideration of the record in the above-entitled proceeding, and of the joint petition (letter) of G. Arrendondo Transfer Co., Inc., Gateway Transfer Co., Inc., Southern Trucking Co., Alamo Express, Inc., Brown Express, Inc., Central Express, Inc., and Valley Transit, Inc., filed July 1, 1969, for extension of the time for filing petitions for reconsideration, treated also as a petition for extension of the effective date; and good cause appearing therefor:

*It is ordered,* That the time on or before which petitions for reconsideration in the above-entitled proceeding may be filed be, and it is hereby, extended to August 4, 1969.

*It is further ordered,* That the statutory effective date of the order entered May 7, 1969, in the said proceeding be, and it is hereby, postponed from July 12, 1969, to September 8, 1969.

Dated at Washington, D.C., this 10th day of July 1969.

By the Commission, Chairman Brown.

[SEAL]  ANDREW ANTHONY, Jr.,
        *Acting Secretary.*

[F.R. Doc. 69-8428; Filed, July 16, 1969; 8:47 a.m.]