UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | )  No. 2:20-cv-0111-RAJ |
| | ) |
| Plaintiffs, | )  **FEDERAL DEFENDANTS'** |
| v. | )  **MOTION FOR SUMMARY** |
| | )  **JUDGMENT** |
| UNITED STATES DEPARTMENT OF | ) |
| STATE, et al., | ) |
| | ) |
| Defendants. | ) |

# EXHIBIT 12

Public Law 94-329, 90 Stat. 729 (June 30, 1976)

Motion for Summary Judgment
Exhibits

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12002
Washington, DC 20530
202-353-0533

## Public Law 94–329
## 94th Congress

### An Act

To amend the Foreign Assistance Act of 1961 and the Foreign Military Sales Act, and for other purposes.

June 30, 1976
[H.R. 13680]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "International Security Assistance and Arms Export Control Act of 1976".

International Security Assistance and Arms Export Control Act of 1976.
22 USC 2151 note.

### TITLE I—MILITARY ASSISTANCE PROGRAM

#### AUTHORIZATION

SEC. 101. Section 504(a) of the Foreign Assistance Act of 1961 is amended to read as follows:

22 USC 2312.

"(a)(1) There is authorized to be appropriated to the President to carry out the purposes of this chapter $196,700,000 for the fiscal year 1976 and $177,300,000 for the fiscal year 1977. Not more than the following amounts of funds available for carrying out this chapter (other than funds appropriated under section 507 of the International Security Assistance and Arms Export Control Act of 1976) may be allocated and made available to each of the following countries for such fiscal years:

| Country | Fiscal Year 1976 Amount | Fiscal Year 1977 Amount |
|---|---|---|
| Greece | $31,000,000 | $33,000,000 |
| Indonesia | 13,000,000 | 15,000,000 |
| Jordan | 50,000,000 | 55,000,000 |
| Republic of Korea | 55,000,000 | 8,300,000 |
| Philippines | 17,000,000 | 17,000,000 |
| Thailand | 16,000,000 | 16,000,000 |
| Turkey | 31,000,000 | 50,000,000 |
| Ethiopia | 6,000,000 | 6,000,000 |

The amount specified in this paragraph for military assistance to any such country for fiscal year 1976 or for fiscal year 1977 may be increased by not more than 10 per centum of such amount if the President deems such increase necessary for the purposes of this chapter.

Limitation.

"(2) Not to exceed $6,000,000 of the funds available for fiscal year 1976 to carry out the purposes of this chapter, and not to exceed $3,700,000 of the funds available for fiscal year 1977 to carry out the purposes of this chapter (other than funds appropriated under section 507 of the International Security Assistance and Arms Export Control Act of 1976), may be used to provide assistance to international organizations and, subject to the limitations contained in paragraph (3), to countries which are not designated in paragraph (1).

"(3) Funds available for assistance under this chapter may not be used to furnish assistance to more than 20 countries (including those countries designated in paragraph (1)) in fiscal year 1976. Funds available for assistance under this chapter (other than funds appropriated under section 507 of the International Security Assistance and Arms Export Control Act of 1976) may not be used to furnish assistance to more than 12 countries (including those countries designated in paragraph (1)) in fiscal year 1977.



AUTHENTICATED U.S. GOVERNMENT INFORMATION
GPO

22 USC 2351, 2364.

*Infra.*
Appropriation
authorization.

"(4) The authority of section 610(a) and of section 614(a) may not be used to increase any amount specified in paragraph (1) or (2). The limitations contained in paragraphs (1), (2), and (3) shall not apply to emergency assistance furnished under section 506(a).

"(5) There is authorized to be appropriated to the President, for administrative and other related expenses incurred in carrying out the purposes of this chapter, $32,000,000 for the fiscal year 1976 and $70,000,000 for the fiscal year 1977.

Prohibition.

"(6) None of the funds appropriated under this subsection shall be used to furnish sophisticated weapons systems, such as missile systems or jet aircraft for military purposes, to any less developed country not specified in paragraph (1) unless the President determines that the furnishing of such weapons systems is important to the national security of the United States and reports within thirty days each such determination to the Congress.

"(7) Amounts appropriated under this subsection are authorized to remain available until expended.

22 USC 2370.

"(8) Assistance for Turkey under this chapter shall be subject to the requirements of section 620(x) of this Act.".

### SPECIAL AUTHORITY

22 USC 2318.

SEC. 102. Section 506(a) of the Foreign Assistance Act of 1961 is amended to read as follows:

22 USC 2411.

"(a)(1) If the President first determines and reports to Congress in accordance with section 652 of this Act—

"(A) that an unforeseen emergency exists which requires immediate military assistance to a foreign country or international organization;

"(B) that a failure to respond immediately to that emergency will result in serious harm to vital United States security interests; and

*Post,* p. 734.
22 USC 2751
note.

"(C) that the emergency requirement cannot be met under authority of the Arms Export Control Act or any other law except this section;

he may order defense articles from the stocks of the Department of Defense and defense services for the purposes of this part, subject to reimbursement from subsequent appropriations made specifically therefor under subsection (b).

"(2) The total value of defense articles and defense services ordered under this subsection in any fiscal year may not exceed $67,500,000. The authority contained in this subsection shall be effective in any fiscal year only to the extent provided in an appropriation Act.

"(3) The President shall keep the Congress fully and currently informed of all defense articles and defense services ordered under this subsection.".

### STOCKPILING OF DEFENSE ARTICLES FOR FOREIGN COUNTRIES

22 USC 2321h.

SEC. 103. Section 514 of the Foreign Assistance Act of 1961 is amended to read as follows:

"SEC. 514. STOCKPILING OF DEFENSE ARTICLES FOR FOREIGN COUNTRIES.—(a) No defense article in the inventory of the Department of Defense which is set aside, reserved, or in any way earmarked or intended for future use by any foreign country may be made available to or for use by any foreign country unless such transfer is authorized under this Act or the Arms Export Control Act, or any subsequent corresponding legislation, and the value of such transfer is charged

against funds authorized under such legislation or against the limitations specified in such legislation, as appropriate, for the fiscal period in which such defense article is transferred. For purposes of this subsection, 'value' means the acquisition cost plus crating, packing, handling, and transportation costs incurred in carrying out this section. "Value."

"(b)(1) The value of defense articles to be set aside, earmarked, reserved, or intended for use as war reserve stocks for allied or other foreign countries (other than for purposes of the North Atlantic Treaty Organization) in stockpiles located in foreign countries may not exceed in any fiscal year an amount greater than is specified in security assistance authorizing legislation for that fiscal year.

"(2) The value of such additions to stockpiles in foreign countries shall not exceed $93,750,000 for the period beginning July 1, 1975, and ending September 30, 1976, and $125,000,000 for the fiscal year 1977.

"(c) Except for stockpiles in existence on the date of enactment of the International Security Assistance and Arms Export Control Act of 1976 and for stockpiles located in countries which are members of the North Atlantic Treaty Organization, no stockpile may be located outside the boundaries of a United States military base or a military base used primarily by the United States.

"(d) No defense article transferred from any stockpile which is made available to or for use by any foreign country may be considered an excess defense article for the purpose of determining the value thereof.

"(e) The President shall promptly report to the Congress each new stockpile, or addition to an existing stockpile, described in this section of defense articles valued in excess of $10,000,000 in any fiscal year.". *Report to Congress.*

TERMINATION OF MILITARY ASSISTANCE ADVISORY GROUPS AND MISSIONS

SEC. 104. Section 515 of the Foreign Assistance Act of 1961 is amended— *22 USC 2321i.*

(1) by striking out "Effective July 1, 1976," and inserting in lieu thereof "(a) During the period beginning July 1, 1976, and ending September 30, 1977,"; and

(2) by adding at the end thereof the following new subsections:
"(b)(1) After September 30, 1977, no military assistance advisory group, military mission, or other organization of United States military personnel performing similar military advisory functions under this Act may operate in any foreign country unless specifically authorized by the Congress.

"(2) The President may assign not more than three members of the Armed Forces of the United States to the Chief of each United States Diplomatic Mission to perform such functions as such Chief of Mission determines necessary with respect to international military education and training provided under chapter 5 of this part, to sales of defense articles and services under the Arms Export Control Act, or to such other international security assistance programs as the President may designate. After September 30, 1977, no such functions or related activities may be performed by any defense attachés assigned, detailed, or attached to the United States Diplomatic Mission in any foreign country. *Post, p. 732. Post, p. 734. 22 USC 2751 note.*

"(c) After September 30, 1976, the number of military missions, groups, and similar organizations may not exceed 34.

"(d) As used in this section, the term 'military assistance advisory group, military mission, or other organization of United States mili- *Definition.*

tary personnel performing similar military advisory functions under this Act' does not include regular units of Armed Forces of the United States engaged in routine functions designed to bring about the standardization of military operations and procedures between the Armed Forces of the United States and allies of the United States.".

TERMINATION OF AUTHORITY TO FURNISH GRANT MILITARY ASSISTANCE

SEC. 105. Chapter 2 of part II of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new section:

22 USC 2321j.

"SEC. 516. TERMINATION OF AUTHORITY.—(a) Except to the extent that the Congress may, subsequent to the enactment of this section, authorize the furnishing of military assistance in accordance with this chapter to specified countries in specified amounts, the authorities contained in this chapter (other than the authorities contained in

22 USC 2318.
*Ante*, pp. 730, 731.

sections 506, 514, and 515(b)(2)) may not be exercised after September 30, 1977, except that such authorities shall remain available until September 30, 1980, to the extent necessary to carry out obligations incurred under this chapter on or before September 30, 1977.

"(b) Funds available to carry out this chapter shall be available notwithstanding the limitations contained in paragraphs (2) and (3)

*Ante*, p. 729.

of section 504(a) of this Act—

"(1) for the winding up of military assistance programs under this chapter, including payment of the costs of packing, crating, handling, and transporting defense articles furnished under this chapter and of related administrative costs; and

22 USC 2311.

"(2) for costs incurred under section 503(c) with respect to defense articles on loan to countries no longer eligible under section 504(a) for military assistance.".

INTERNATIONAL MILITARY EDUCATION AND TRAINING

SEC. 106. (a) Part II of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new chapter:

"CHAPTER 5—INTERNATIONAL MILITARY EDUCATION AND TRAINING

22 USC 2347.

"SEC. 541. GENERAL AUTHORITY.—The President is authorized to furnish, on such terms and conditions consistent with this Act as the President may determine (but whenever feasible on a reimbursable basis), military education and training to military and related civilian personnel of foreign countries. Such training and education may be provided through—

"(1) attendance at military educational and training facilities in the United States (other than Service academies) and abroad;

"(2) attendance in special courses of instruction at schools and institutions of learning or research in the United States and abroad; and

"(3) observation and orientation visits to military facilities and related activities in the United States and abroad.

22 USC 2347a.

Report to Speaker of the House and congressional committee.

"SEC. 542. AUTHORIZATION.—There are authorized to be appropriated to the President to carry out the purposes of this chapter $27,000,000 for the fiscal year 1976 and $30,200,000 for the fiscal year 1977. After June 30, 1976, no training under this section may be conducted outside the United States unless the President has reported and justified such training to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate.

"Sec. 543. Purposes.—Education and training activities conducted under this chapter shall be designed—     22 USC 2347b.

"(1) to encourage effective and mutually beneficial relations and increased understanding between the United States and foreign countries in furtherance of the goals of international peace and security; and

"(2) to improve the ability of participating foreign countries to utilize their resources, including defense articles and defense services obtained by them from the United States, with maximum effectiveness, thereby contributing to greater self-reliance by such countries.".

(b) The Foreign Assistance Act of 1961 is amended as follows:     Repeal.

(1) Section 510 is repealed.     22 USC 2321a.

(2) Section 622 is amended—     22 USC 2382.

(A) in subsection (b) by inserting "and military education and training" immediately after "(including civic action)"; and

(B) by amending subsection (c) to read as follows:

"(c) Under the direction of the President, the Secretary of State shall be responsible for the continuous supervision and general direction of economic assistance, military assistance, and military education and training programs, including but not limited to determining whether there shall be a military assistance (including civic action) or a military education and training program for a country and the value thereof, to the end that such programs are effectively integrated both at home and abroad and the foreign policy of the United States is best served thereby.".

(3) Section 623 is amended—     22 USC 2383.

(A) in subsection (a)(4) by inserting "and related civilian" immediately after "military"; and

(B) in subsection (a)(6) by inserting ", education and training" immediately after "assistance".

(4) Section 632 is amended—     22 USC 2392.

(A) in subsections (a) and (e) by inserting ", military education and training" immediately after "articles" wherever it appears; and

(B) in subsection (b) by striking out "and defense articles" and inserting in lieu thereof ", defense articles, or military education and training".

(5) Section 636 is amended—     22 USC 2396.

(A) in subsection (g)(1) by inserting ", military education and training" immediately after "articles"; and

(B) in subsection (g)(2) and in subsection (g)(3) by striking out "personnel" and inserting in lieu thereof "and related civilian personnel".

(6) Section 644 is amended—     22 USC 2403.

(A) by amending subsection (f) to read as follows:

"(f) 'Defense service' includes any service, test, inspection, repair, publication, or technical or other assistance or defense information used for the purposes of furnishing military assistance, but does not include military educational and training activities under chapter 5 of part II."; and     "Defense service."

(B) by adding at the end thereof the following new subsection:

"(n) 'Military education and training' includes formal or informal instruction of foreign students in the United States or overseas by officers or employees of the United States, contract technicians, con-     "Military education and training."

tractors (including instruction at civilian institutions), or by correspondence courses, technical, educational, or information publications and media of all kinds, training aids, orientation, and military advice to foreign military units and forces.".

22 USC 2321a note.

(c) Except as may be expressly provided to the contrary in this Act, all determinations, authorizations, regulations, orders, contracts, agreements, and other actions issued, undertaken, or entered into under authority of any provision of law amended or repealed by this section shall continue in full force and effect until modified, revoked, or superseded by appropriate authority.

22 USC 2347 note.

(d) Funds made available pursuant to other provisions of law for foreign military educational and training activities shall remain available for obligation and expenditure for their original purposes in accordance with the provisions of law originally applicable to those purposes or in accordance with the provisions of law currently applicable to those purposes.

## TITLE II—ARMS EXPORT CONTROLS

### CHANGE IN TITLE

22 USC 2751 note.

SEC. 201. (a) The first section of the Foreign Military Sales Act is amended by striking out " "The Foreign Military Sales Act" and inserting in lieu thereof "the 'Arms Export Control Act".

(b) Any reference to the Foreign Military Sales Act shall be deemed to be a reference to the Arms Export Control Act.

### ARMS SALES POLICY

22 USC 2751.

SEC. 202. (a) Section 1 of the Foreign Military Sales Act is amended by striking out the last paragraph and inserting in lieu thereof the following new paragraphs:

"It shall be the policy of the United States to exert leadership in the world community to bring about arrangements for reducing the international trade in implements of war and to lessen the danger of outbreak of regional conflict and the burdens of armaments. United States programs for or procedures governing the export, sale, and grant of defense articles and defense services to foreign countries and international organizations shall be administered in a manner which will carry out this policy.

"It is the sense of the Congress that the President should seek to initiate multilateral discussions for the purpose of reaching agreements among the principal arms suppliers and arms purchasers and other countries with respect to the control of the international trade in armaments. It is further the sense of Congress that the President should work actively with all nations to check and control the international sale and distribution of conventional weapons of death and destruction and to encourage regional arms control arrangements. In furtherance of this policy, the President should undertake a concerted effort to convene an international conference of major arms-supplying and arms-purchasing nations which shall consider measures to limit conventional arms transfers in the interest of international peace and stability.

"It is the sense of the Congress that the aggregate value of defense articles and defense services—

"(1) which are sold under section 21 or section 22 of this Act; or

PUBLIC LAW 94–329—JUNE 30, 1976          90 STAT. 735

"(2) which are licensed or approved for export under section 38 of this Act to, for the use, or for benefit of the armed forces, police, intelligence, or other internal security forces of a foreign country or international organization under a commercial sales contract;

in any fiscal year should not exceed current levels.".

(b)(1) The President shall conduct a comprehensive study of the arms sales policies and practices of the United States Government, including policies and practices with respect to commercial arms sales, in order to determine whether such policies and practices should be changed. Such study shall examine the rationale for arms sales to foreign countries, the benefits to the United States of such arms sales, the risks to world peace as a result of such arms sales, trends in arms sales by the United States and other countries, and steps which might be taken by the United States to provide for limitations on arms sales. In addition, such study shall include an evaluation of the impact of United States arms sales policies on the economic and social development of foreign countries and consideration of steps which might be taken by the United States to encourage the maximum use of the resources of the developing countries for economic and social development purposes.

*Study.*
*22 USC 2751 note.*

(2) Not later than the end of the one-year period beginning on the date of enactment of this section, the President shall submit to the Congress a report setting forth in detail (A) the findings made and conclusions reached as a result of the study conducted pursuant to paragraph (1) of this subsection, together with such recommendations for legislation as the President deems appropriate, (B) the efforts made by the United States during the five years immediately preceding the submission of such report to initiate and otherwise encourage arms sales limitations, and (C) the efforts being made by the United States at the time of the submission of such report to initiate and otherwise encourage arms sales limitations in accordance with the policies stated in the amendment made by subsection (a) of this section.

*Report to Congress.*

TRANSFER OF DEFENSE SERVICES

Sec. 203. (a) Section 3(a)(2) of the Foreign Military Sales Act is amended, effective July 1, 1976, by inserting immediately after "article" each time it appears "or related training or other defense service".

*22 USC 2753 and note.*

(b) Section 505(a) of the Foreign Assistance Act of 1961 is amended, effective July 1, 1976, by inserting immediately after "articles" each time it appears "or related training or other defense service.".

*22 USC 2314 and note.*

APPROVAL FOR TRANSFER OF DEFENSE ARTICLES

Sec. 204. (a) Section 3 of the Foreign Military Sales Act is amended by adding at the end thereof the following new subsections:

*22 USC 2753.*

"(e) The President may not give his consent under paragraph (2) of subsection (a) or under the third sentence of such subsection to a transfer of a defense article, or related training or other defense service, sold under this Act and may not give his consent to such a transfer under section 505(a)(1) or 505(a)(4) of the Foreign Assistance Act of 1961 unless, 30 days prior to giving such consent, the President submits to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate a written certification with respect to such proposed transfer containing—

*Written certification, submittal to Speaker of the House and congressional committee.*
*22 USC 2314.*

"(1) the name of the country or international organization proposing to make such transfer,

"(2) a description of the defense article or related training or other defense service proposed to be transferred, including the original acquisition cost of such defense article or related training or other defense service,

"(3) the name of the proposed recipient of such defense article or related training or other defense service,

"(4) the reasons for such proposed transfer, and

"(5) the date on which such transfer is proposed to be made.

Any certification submitted to Congress pursuant to this subsection shall be unclassified, except that information regarding the dollar value and number of defense articles, or related training or other defense services, proposed to be transferred may be classified if public disclosure thereof would be clearly detrimental to the security of the United States.

"(f) If the President receives any information that a transfer of any defense article, or related training or other defense service, has been made without his consent as required under this section or under section 505 of the Foreign Assistance Act of 1961, he shall report such information immediately to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate.".

(b)(1) The second sentence of subsection (a) of section 3 of the Foreign Military Sales Act is amended by striking out ", and prior" and all that follows thereafter through "transferred" the second time it appears.

(2) The first sentence of section 505(e) of the Foreign Assistance Act of 1961 is amended by striking out ", and prior" and all that follows through "transferred" the second time it appears.

**SALES FROM STOCKS**

Sec. 205. Section 21 of the Foreign Military Sales Act is amended to read as follows:

"Sec. 21. Sales From Stocks.—(a) The President may sell defense articles and defense services from the stocks of the Department of Defense to any eligible country or international organization if such country or international organization agrees to pay in United States dollars—

"(1) in the case of a defense article not intended to be replaced at the time such agreement is entered into, not less than the actual value thereof;

"(2) in the case of a defense article intended to be replaced at the time such agreement is entered into, the estimated cost of replacement of such article, including the contract or production costs less any depreciation in the value of such article; or

"(3) in the case of the sale of a defense service, the full cost to the United States Government of furnishing such service.

"(b) Except as provided by subsection (d) of this section, payment shall be made in advance or, if the President determines it to be in the national interest, upon delivery of the defense article or rendering of the defense service.

"(c) Personnel performing defense services sold under this Act may not perform any duties of a combatant nature, including any duties related to training, advising, or otherwise providing assistance regarding combat activities, outside the United States in connection with the performance of those defense services.

"(d) If the President determines it to be in the national interest pursuant to subsection (b) of this section, billings for sales made

**Margin notes:**

Report to Speaker of the House and congressional committee.
22 USC 2314.

22 USC 2753.

22 USC 2314.

22 USC 2761.

PUBLIC LAW 94–329—JUNE 30, 1976                    90 STAT. 737

under letters of offer issued under this section after the enactment of this subsection may be dated and issued upon delivery of the defense article or rendering of the defense service and shall be due and payable upon receipt thereof by the purchasing country or international organization. Interest shall be charged on any net amount due and payable which is not paid within sixty days after the date of such billing. The rate of interest charged shall be a rate not less than a rate determined by the Secretary of the Treasury taking into consideration the current average market yield on outstanding short-term obligations of the United States as of the last day of the month preceding the billing and shall be computed from the date of billing. The President may extend such sixty-day period to one hundred and twenty days if he determines that emergency requirements of the purchaser for acquisition of such defense articles or defense services exceed the ready availability to the purchaser of funds sufficient to pay the United States in full for them within such sixty-day period and submits that determination to the Congress together with a special emergency request for the authorization and appropriation of additional funds to finance such purchases under this Act.

"(e)(1) After September 30, 1976, letters of offer for the sale of defense articles or for the sale of defense services that are issued pursuant to this section or pursuant to section 22 of this Act shall include appropriate charges for— <span style="float:right">22 USC 2762.</span>

    "(A) administrative services, calculated on an average percentage basis to recover the full estimated costs of administration of sales made under this Act to all purchasers of such articles and services;

    "(B) any use of plant and production equipment in connection with such defense articles; and

    "(C) a proportionate amount of any nonrecurring costs of research, development, and production of major defense equipment.

"(2) The President may reduce or waive the charge or charges which would otherwise be considered appropriate under paragraphs (1)(B) and (1)(C) for particular sales that would, if made, significantly advance United States Government interests in North Atlantic Treaty Organization standardization, or foreign procurement in the United States under coproduction arrangements. <span style="float:right">Reduction or waiver.</span>

"(f) Any contracts entered into between the United States and a foreign country under the authority of this section or section 22 of this Act shall be prepared in a manner which will permit them to be made available for public inspection to the fullest extent possible consistent with the national security of the United States.

"(g) In carrying out section 814 of the Act of October 7, 1975 (Public Law 94–106), the President may enter into North Atlantic Treaty Organization standardization agreements for the cooperative furnishing of training on a bilateral or multilateral basis, if the financial principles of such agreements are based on reciprocity. Such agreements shall include reimbursement for all direct costs but may exclude reimbursement for indirect costs, administrative surcharges, and costs of billeting of trainees (except to the extent that members of the United States Armed Forces occupying comparable accommodations are charged for such accommodations by the United States). Each such agreement shall be transmitted promptly to the Speaker of the House of Representatives and the Committees on Appropriations, Armed Services, and Foreign Relations of the Senate.". <span style="float:right">NATO standardization agreements. 89 Stat. 540.</span>

<span style="float:right">Transmittal to Speaker of the House and congressional committees.</span>

SALES FROM STOCKS AFFECTING UNITED STATES COMBAT READINESS

*Ante,* p. 736.

SEC. 206. Section 21 of the Foreign Military Sales Act, as amended by section 205 of this Act, is further amended by adding at the end thereof the following new subsection:

Written statement, transmittal to Speaker of the House and congressional committees.

"(h) (1) Sales of defense articles and defense services which could have significant adverse effect on the combat readiness of the Armed Forces of the United States shall be kept to an absolute minimum. The President shall transmit to the Speaker of the House of Representatives and the Committees on Armed Services and Foreign Relations of the Senate on the same day a written statement giving a complete explanation with respect to any proposal to sell, under this section, any defense articles or defense services if such sale could have a significant adverse effect on the combat readiness of the Armed Forces of the United States. Each such statement shall be unclassified except to the extent that public disclosure of any item of information contained therein would be clearly detrimental to the security of the United States. Any necessarily classified information shall be confined to a supplemental report. Each such statement shall include an explanation relating to only one such proposal to sell and shall set forth—

"(A) the country or international organization to which the sale is proposed to be made;

"(B) the amount of the proposed sale;

"(C) a description of the defense article or service proposed to be sold;

"(D) a full description of the impact which the proposed sale will have on the Armed Forces of the United States; and

"(E) a justification for such proposed sale, including a certification that such sale is important to the security of the United States. A certification described in subparagraph (E) shall take effect on the date on which such certification is transmitted and shall remain in effect for not to exceed one year.

"(2) No delivery may be made under any sale which is required to be reported under paragraph (1) of this subsection unless the certification required to be transmitted by paragraph (E) of paragraph (1) is in effect.".

PROCUREMENT FOR CASH SALES

22 USC 2762.

SEC. 207. (a) Section 22(a) of the Foreign Military Sales Act is amended by adding at the end thereof the following: "Interest shall be charged on any net amount by which any such country or international organization is in arrears under all of its outstanding unliquidated dependable undertakings, considered collectively. The rate of interest charged shall be a rate not less than a rate determined by the Secretary of the Treasury taking into consideration the current average market yield on outstanding short-term obligations of the United States as of the last day of the month preceding the net arrearage and shall be computed from the date of net arrearage.".

Interest rate.

(b) Section 22(b) of the Foreign Military Sales Act is amended by striking out the first sentence and inserting in lieu thereof the following: "The President may, if he determines it to be in the national interest, issue letters of offer under this section which provide for billing upon delivery of the defense article or rendering of the defense service and for payment within one hundred and twenty days after the date of billing. This authority may be exercised, however, only if the President also determines that the emergency requirements of the purchaser for acquisition of such defense articles and services exceed the ready availability to the purchaser of funds sufficient to make

PUBLIC LAW 94–329—JUNE 30, 1976                90 STAT. 739

payments on a dependable undertaking basis and submits both determinations to the Congress together with a special emergency request for authorization and appropriation of additional funds to finance such purchases under this Act.".

EXTENSION OF PAYMENT PERIOD FOR CREDIT SALES

SEC. 208. (a) Paragraph (1) of section 23 of the Foreign Military Sales Act is amended by striking out "ten years" and inserting in lieu thereof "twelve years".

(b) The amendment made by subsection (a) shall apply with respect to financing under agreements entered into on or after the date of enactment of this Act for the procurement of defense articles to be delivered, or defense services to be rendered, after such date.

22 USC 2763.

22 USC 2763 note.

ANNUAL ESTIMATE AND JUSTIFICATION FOR SALES PROGRAM

SEC. 209. (a) Immediately after section 24 of the Foreign Military Sales Act, add the following new section:

"SEC. 25. ANNUAL ESTIMATE AND JUSTIFICATION FOR SALES PROGRAM.—(a) The President shall transmit to the Congress, as a part of the presentation materials for security assistance programs proposed for each fiscal year, a report which sets forth—

"(1) an estimate of the amount of sales expected to be made to each country under sections 21 and 22 of this Act, including a detailed explanation of the foreign policy and United States national security considerations involved in expected sales to each country;

"(2) an estimate of the amount of credits and guaranties expected to be extended to each country under sections 23 and 24 of this Act;

"(3) a list of all findings which are in effect on the date of such transmission made by the President pursuant to section 3(a)(1) of this Act, together with a full and complete justification for each such finding, explaining how sales to each country with respect to which such finding has been made will strengthen the security of the United States and promote world peace; and

"(4) an arms control impact statement for each purchasing country, including (A) an analysis of the relationship between expected sales to each country and arms control efforts relating to that country, and (B) the impact of such expected sales on the stability of the region that includes the purchasing country.

"(b) Not later than thirty days following the receipt of a request made by the Committee on Foreign Relations of the Senate or the Committee on International Relations of the House of Representatives for additional information with respect to any estimate submitted pursuant to subsection (a), the President shall submit such information to such committee.

"(c) The President shall make every effort to submit all of the information required by this section wholly in unclassified form. In the event the President submits any such information in classified form, he shall submit such classified information in an addendum and shall also submit simultaneously a detailed summary, in unclassified form, of such classified information.".

(b) Section 634(d) of the Foreign Assistance Act of 1961 is amended by striking out "and military sales under this or any other Act" in the fourth sentence.

22 USC 2765. Report to Congress.

22 USC 2761, 2762.

22 USC 2763, 2764.

Information, submittal to congressional committee.

22 USC 2394.

MILITARY SALES AUTHORIZATION

22 USC 2771.

SEC. 210. (a) Section 31(a) of the Foreign Military Sales Act is amended by striking out "not to exceed $405,000,000 for the fiscal year 1975" and inserting in lieu thereof "not to exceed $1,039,000,000 for the fiscal year 1976 and not to exceed $740,000,000 for the fiscal year 1977".

(b) Section 31(b) of such Act is amended to read as follows:

22 USC 2764.

"(b) The aggregate total of credits, or participations in credits, extended pursuant to this Act and of the principal amount of loans guaranteed pursuant to section 24(a) shall not exceed $2,374,700,000 for the fiscal year 1976, of which not less than $1,500,000,000 shall be available only for Israel, and shall not exceed $2,022,100,000 for the fiscal year 1977, of which not less than $1,000,000,000 shall be available only for Israel.".

(c)(1) Section 31 of such Act is further amended by adding at the end thereof the following new subsections:

22 USC 2763.

"(c) Funds made available for the fiscal years 1976 and 1977 under subsection (a) of this section shall be obligated to finance the procurement of defense articles and defense services by Israel on a long-term repayment basis either by the extension of credits, without regard to the limitations contained in section 23, or by the issuance of guaranties under section 24. Repayment shall be in not less than twenty years, following a grace period of ten years on repayment of principal. Israel shall be released from one-half of its contractual liability to repay the United States Government with respect to defense articles and defense services so financed for each such year.

22 USC 2311 et seq.

"(d) The aggregate acquisition cost to the United States of excess defense articles ordered by the President in any fiscal year after fiscal year 1976 for delivery to foreign countries or international organizations under the authority of chapter 2 of part II of the Foreign Assistance Act of 1961 or pursuant to sales under this Act may not exceed $100,000,000 (exclusive of ships and their on-board stores and supplies transferred in accordance with law).".

Repeal.
22 USC 2321b and notes.
Transfer of funds.

(2) Subsections (a), (b), (c), and (e) of section 8 of the Act entitled "An Act to amend the Foreign Military Sales Act and for other purposes", approved January 12, 1971 (Public Law 91–672; 84 Stat. 2053), are repealed effective July 1, 1976. All funds in the suspense account referred to in subsection (a) of such section on July 1, 1976, shall be transferred to the general fund of the Treasury.

REPORTS ON COMMERCIAL AND GOVERNMENTAL MILITARY EXPORTS;
CONGRESSIONAL ACTION

22 USC 2776.

SEC. 211. (a) Section 36 of the Foreign Military Sales Act is amended to read as follows:

Report to Speaker of the House and congressional committee.

"SEC. 36. REPORTS ON COMMERCIAL AND GOVERNMENTAL MILITARY EXPORTS; CONGRESSIONAL ACTION.—(a) The President shall transmit to the Speaker of the House of Representatives and to the chairman of the Committee on Foreign Relations of the Senate not more than thirty days after the end of each quarter an unclassified report (except that any material which was transmitted in classified form under subsection (b)(1) or (c)(1) of this section may be contained in a classified addendum to such report, and any letter of offer referred to in paragraph (1) of this subsection may be listed in such addendum unless such letter of offer has been the subject of an unclassified certification pursuant to subsection (b)(1) of this section) containing:—

Contents.

"(1) a listing of all letters of offer to sell any major defense equipment for $1,000,000 or more under this Act to each foreign

PUBLIC LAW 94–329—JUNE 30, 1976                90 STAT. 741

country and international organization, by category, if such letters of offer have not been accepted or canceled;

"(2) a listing of all such letters of offer that have been accepted during the fiscal year in which such report is submitted, together with the total value of all defense articles and defense services sold to each foreign country and international organization during such fiscal year;

"(3) the cumulative dollar amounts, by foreign country and international organization, of sales credit agreements under section 23 and guaranty agreements under section 24 made during the fiscal year in which such report is submitted;

<div style="float:right">22 USC 2763, 2764.</div>

"(4) a numbered listing of all licenses and approvals for the export to each foreign country and international organization during such fiscal year of commercially sold major defense equipment, by category, sold for $1,000,000 or more, together with the total value of all defense articles and defense services so licensed for each foreign country and international organization, setting forth with respect to the listed major defense equipment—

"(A) the items to be exported under the license,

"(B) the quantity and contract price of each such item to be furnished, and

"(C) the name and address of the ultimate user of each such item;

"(5) projections of the dollar amounts, by foreign country and international organization, of cash sales expected to be made under sections 21 and 22, credits to be extended under section 23, and guaranty agreements to be made under section 24 in the quarter of the fiscal year immediately following the quarter for which such report is submitted;

<div style="float:right">22 USC 2761, 2762.</div>

"(6) a projection with respect to all cash sales expected to be made and credits expected to be extended to each country and organization for the remainder of the fiscal year in which such report is transmitted;

"(7) an estimate of the number of officers and employees of the United States Government and of United States civilian contract personnel present in each such country at the end of that quarter for assignments in implementation of sales and commercial exports under this Act; and

"(8) an analysis and description of the services being performed by officers and employees of the United States Government under section 21(a) of this Act, including the number of personnel so employed.

For each letter of offer to sell under paragraphs (1) and (2), the report shall specify (i) the foreign country or international organization to which the defense article or service is offered or was sold, as the case may be; (ii) the dollar amount of the offer to sell or the sale and the number of defense articles offered or sold, as the case may be; (iii) a description of the defense article or service offered or sold, as the case may be; and (iv) the United States Armed Force or other agency of the United States which is making the offer to sell or the sale, as the case may be.

"(b)(1) In the case of any letter of offer to sell any defense articles or services under this Act for $25,000,000 or more, or any major defense equipment for $7,000,000 or more, before such letter of offer is issued, the President shall submit to the Speaker of the House of Representatives and to the chairman of the Committee on Foreign Relations of the Senate a numbered certification with respect to such offer to sell containing the information specified in clauses (i) through

<div style="float:right">Certification, submittal to Speaker of the House and congressional committee.</div>

Statement,
transmittal to
congressional
committee.

(iv) of subsection (a). In addition, the President shall, upon the request of such committee or the Committee on International Relations of the House of Representatives, transmit promptly to both such committees a statement setting forth, to the extent specified in such request—

"(A) a detailed description of the defense articles or services to be offered, including a brief description of the capabilities of any defense article to be offered;

"(B) an estimate of the number of officers and employees of the United States Government and of United States civilian contract personnel expected to be needed in such country to carry out the proposed sale;

"(C) the name of each contractor expected to provide the defense article or defense service proposed to be sold (if known on the date of transmittal of such statement);

"(D) an analysis of the arms control impact pertinent to such offer to sell, prepared in consultation with the Secretary of Defense;

"(E) the reasons why the foreign country or international organization to which the sale is proposed to be made needs the defense articles or services which are the subject of such sale and a description of how such country or organization intends to use such defense articles or services;

"(F) an analysis by the President of the impact of the proposed sale on the military stocks and the military preparedness of the United States;

"(G) the reasons why the proposed sale is in the national interest of the United States;

"(H) an analysis by the President of the impact of the proposed sale on the military capabilities of the foreign country or international organization to which such sale would be made;

"(I) an analysis by the President of how the proposed sale would affect the relative military strengths of countries in the region to which the defense articles or services which are the subject of such sale would be delivered and whether other countries in the region have comparable kinds and amounts of defense articles or services;

"(J) an estimate of the levels of trained personnel and maintenance facilities of the foreign country or international organization to which the sale would be made which are needed and available to utilize effectively the defense articles or services proposed to be sold;

"(K) an analysis of the extent to which comparable kinds and amounts of defense articles or services are available from other countries;

"(L) an analysis of the impact of the proposed sale on United States relations with the countries in the region to which the defense articles or services which are the subject of such sale would be delivered; and

"(M) a detailed description of any agreement proposed to be entered into by the United States for the purchase or acquisition by the United States of defense articles, services, or equipment, or other articles, services, or equipment of the foreign country or international organization in connection with, or as consideration for, such letter of offer, including an analysis of the impact of such proposed agreement upon United States business concerns which might otherwise have provided such articles, services, or equipment to the United States, an estimate of the costs to be

PUBLIC LAW 94–329—JUNE 30, 1976                90 STAT. 743

incurred by the United States in connection with such agreement compared with costs which would otherwise have been incurred, an estimate of the economic impact and unemployment which would result from entering into such proposed agreement, and an analysis of whether such costs and such domestic economic impact justify entering into such proposed agreement. A certification transmitted pursuant to this subsection shall be unclassified, except that the information specified in clause (ii) and the details of the description specified in clause (iii) of subsection (a) may be classified if the public disclosure thereof would be clearly detrimental to the security of the United States. The letter of offer shall not be issued if the Congress, within thirty calendar days after receiving such certification, adopts a concurrent resolution stating that it objects to the proposed sale, unless the President states in his certification that an emergency exists which requires such sale in the national security interests of the United States.

"(2) Any such resolution shall be considered in the Senate in accordance with the provisions of section 601(b) of the International Security Assistance and Arms Export Control Act of 1976.      *Post,* p. 765.

"(3) For the purpose of expediting the consideration and adoption of concurrent resolutions under this subsection, a motion to proceed to the consideration of any such resolution after it has been reported by the appropriate committee shall be treated as highly privileged in the House of Representatives.

"(c) In the case of an application by a person (other than with regard to a sale under section 21 or section 22 of this Act) for a license for the export of any major defense equipment sold under a contract in the amount of $7,000,000 or more or of defense articles or defense services sold under a contract in the amount of $25,000,000 or more, not less than 30 days before issuing such license the President shall transmit to the Speaker of the House of Representatives and to the chairman of the Committee on Foreign Relations of the Senate an unclassified numbered certification with respect to such application specifying (1) the foreign country or international organization to which such export will be made, (2) the dollar amount of the items to be exported, and (3) a description of the items to be exported. In addition, the President shall, upon the request of such committee or the Committee on International Relations of the House of Representatives, transmit promptly to both such committees a statement setting forth, to the extent specified in such request, a description of the capabilities of the items to be exported, an estimate of the total number of United States personnel expected to be needed in the foreign country concerned in connection with the items to be exported and an analysis of the arms control impact pertinent to such application, prepared in consultation with the Secretary of Defense. A certification transmitted pursuant to this subsection shall be unclassified, except that the information specified in paragraph (2) and the details of the description specified in paragraph (3) may be classified if the public disclosure thereof would be clearly detrimental to the security of the United States.

*Certification, transmittal to Speaker of the House and congressional committee. 22 USC 2761, 2762.*

*Statement, transmittal to congressional committees.*

"(d) In the case of an approval under section 38 of this Act of a United States commercial technical assistance or manufacturing licensing agreement for or in a country not a member of the North Atlantic Treaty Organization which involves the manufacture abroad of any item of significant combat equipment on the United States Munitions List, before such approval is given, the President shall submit a certification with respect to such proposed commercial agreement in a manner similar to the certification required under subsection (c) containing      *Post,* p. 744.

comparable information, except that the last sentence of such subsection shall not apply to certifications submitted pursuant to this subsection.".

22 USC 2776 note.
22 USC 2776.

*Infra.*

(b) The amendment made by subsection (a) of this section shall apply with respect to letters of offer for which a certification is transmitted pursuant to section 36(b) of the Arms Export Control Act on or after the date of enactment of this Act and to export licenses for which an application is filed under section 38 of such Act on or after such date.

CONTROL OF LICENSES WITH RESPECT TO ARMS EXPORTS AND IMPORTS

SEC. 212. (a)(1) Chapter 3 of the Foreign Military Sales Act is amended by adding at the end thereof the following new section:

22 USC 2778.

"SEC. 38. CONTROL OF ARMS EXPORTS AND IMPORTS.—(a)(1) In furtherance of world peace and the security and foreign policy of the United States, the President is authorized to control the import and the export of defense articles and defense services and to provide foreign policy guidance to persons of the United States involved in the export and import of such articles and services. The President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List.

Regulations.

"(2) Decisions on issuing export licenses under this section shall be made in coordination with the Director of the United States Arms Control and Disarmament Agency and shall take into account the Director's opinion as to whether the export of an article will contribute to an arms race, increase the possibility of outbreak or escalation of conflict, or prejudice the development of bilateral or multilateral arms control arrangements.

"(b)(1) As prescribed in regulations issued under this section, every person (other than an officer or employee of the United States Government acting in an official capacity) who engages in the business of manufacturing, exporting, or importing any defense articles or defense services designated by the President under subsection (a)(1) shall register with the United States Government agency charged with the administration of this section, and shall pay a registration fee which shall be prescribed by such regulations. Such regulations shall prohibit the return to the United States for sale in the United States (other than for the Armed Forces of the United States and its allies or for any State or local law enforcement agency) of any military firearms or ammunition of United States manufacture furnished to foreign governments by the United States under this Act or any other foreign assistance or sales program of the United States, whether or not enhanced in value or improved in condition in a foreign country. This prohibition shall not extend to similar firearms that have been so substantially transformed as to become, in effect, articles of foreign manufacture.

"(2) Except as otherwise specifically provided in regulations issued under subsection (a)(1), no defense articles or defense services designated by the President under subsection (a)(1) may be exported or imported without a license for such export or import, issued in accordance with this Act and regulations issued under this Act, except that no license shall be required for exports or imports made by or for an agency of the United States Government (A) for official use by a department or agency of the United States Government, or (B) for

PUBLIC LAW 94–329—JUNE 30, 1976          90 STAT. 745

carrying out any foreign assistance or sales program authorized by law and subject to the control of the President by other means.

"(3) No license may be issued under this Act for the export of any major defense equipment sold under a contract in the amount of $25,000,000 or more to any foreign country which is not a member of the North Atlantic Treaty Organization unless such major defense equipment was sold under this Act.

"(c) Any person who willfully violates any provision of this section or section 39, or any rule or regulation issued under either section, or who willfully, in a registration or license application or required report, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $100,000 or imprisoned not more than two years, or both.

"(d) This section applies to and within the Canal Zone.

"(e) In carrying out functions under this section with respect to the export of defense articles and defense services, the President is authorized to exercise the same powers concerning violations and enforcement which are conferred upon departments, agencies and officials by sections 6 (c), (d), (e), and (f) and 7 (a) and (c) of the Export Administration Act of 1969, subject to the same terms and conditions as are applicable to such powers under such Act. Nothing in this subsection shall be construed as authorizing the withholding of information from the Congress.".

Penalties.
*Post*, p. 767.

50 USC app.
2405, 2406.

(2) Section 2(b) of the Foreign Military Sales Act is amended—

(A) by inserting "and exports" immediately after "sales" both times it appears; and

(B) by inserting "and whether there shall be delivery or other performance under such sale or export," immediately after "thereof,".

22 USC 2752.

(b)(1) Section 414 of the Mutual Security Act of 1954 is repealed. Any reference to such section shall be deemed to be a reference to section 38 of the Arms Export Control Act and any reference to licenses issued under section 38 of the Arms Export Control Act shall be deemed to include a reference to licenses issued under section 414 of the Mutual Security Act of 1954.

Repeal.
22 USC 1934 and note, 2778 note.

(2) All determinations, authorizations, regulations, orders, contracts, agreements, and other actions issued, undertaken, or entered into under section 414 of the Mutual Security Act of 1954 shall continue in full force and effect until modified, revoked, or superseded by appropriate authority.

22 USC 1934 note.

CANCELLATION AND SUSPENSION OF LICENSES AND CONTRACTS

SEC. 213. Section 42 of the Foreign Military Sales Act is amended by adding at the end thereof the following new subsection:

22 USC 2791

"(e)(1) Each contract for sale entered into under sections 21 and 22 of this Act shall provide that such contract may be canceled in whole or in part, or its execution suspended, by the United States at any time under unusual or compelling circumstances if the national interest so requires.

22 USC 2761, 2762.

"(2)(A) Each export license issued under section 38 of this Act shall provide that such license may be revoked, suspended, or amended by the Secretary of State, without prior notice, whenever the Secretary deems such action to be advisable.

*Ante*, p. 744.

"(B) Nothing in this paragraph may be construed as limiting the regulatory authority of the President under this Act.

90 STAT. 746          PUBLIC LAW 94–329—JUNE 30, 1976

22 USC 2761, 2762.

"(3) There are authorized to be appropriated from time to time such sums as may be necessary (A) to refund moneys received from purchasers under contracts of sale entered into under sections 21 and 22 of this Act that are canceled or suspended under this subsection to the extent such moneys have previously been disbursed to private contractors and United States Government agencies for work in progress, and (B) to pay such damages and costs that accrue from the corresponding cancellation or suspension of the existing procurement contracts or United States Government agency work orders involved.".

ADMINISTRATIVE EXPENSES

22 USC 2792.

SEC. 214. Section 43 of the Foreign Military Sales Act is amended by designating the present section as subsection (a) and by adding at the end thereof the following new subsection:

"(b) Administrative expenses incurred by any department or agency of the United States Government (including any mission or group) in carrying out functions under this Act which are primarily for the benefit of any foreign country shall be fully reimbursed from amounts received for sales under sections 21 and 22.".

DEFINITIONS

22 USC 2794.

SEC. 215. Section 47 of the Foreign Military Sales Act is amended—
    (1) by striking out "and" at the end of paragraph (1);
    (2) by striking out the period at the end of paragraph (2) and inserting in lieu thereof a semicolon; and
    (3) by adding immediately after paragraph (2) the following new paragraphs:

"(3) 'defense article', except as provided in paragraph (7) of this section, includes—
    "(A) any weapon, weapons system, munition, aircraft, vessel, boat, or other implement of war,
    "(B) any property, installation, commodity, material, equipment, supply, or goods used for the purposes of making military sales,
    "(C) any machinery, facility, tool, material, supply, or other item necessary for the manufacture, production, processing, repair, servicing, storage, construction, transportation, operation, or use of any article listed in this paragraph, and
    "(D) any component or part of any article listed in this paragraph,

42 USC 2014.

but does not include merchant vessels or (as defined by the Atomic Energy Act of 1954) source material, byproduct material, special nuclear material, production facilities, utilization facilities, or atomic weapons or articles involving Restricted Data;

22 USC 2403.

"(4) 'defense service', except as provided in paragraph (7) of this section, includes any service, test, inspection, repair, training, publication, technical or other assistance, or defense information (as defined in section 644(e) of the Foreign Assistance Act of 1961), used for the purposes of making military sales;

"(5) 'training' includes formal or informal instruction of foreign students in the United States or overseas by officers or employees of the United States, contract technicians, or contractors (including instruction at civilian institutions), or by correspondence courses, technical, educational, or information publications and media of all kinds, training aid, orientation, training exercise, and military advice to foreign military units and forces;

"(6) 'major defense equipment' means any item of significant combat equipment on the United States Munitions List having a nonrecurring research and development cost of more than $50,000,000 or a total production cost of more than $200,000,000; and

"(7) 'defense articles and defense services' means, with respect to commercial exports subject to the provisions of section 38 of this Act, those items designated by the President pursuant to subsection (a)(1) of such section.". *Ante,* p. 744.

### ANNUAL FOREIGN SALES REPORT

SEC. 216. Section 657 of the Foreign Assistance Act of 1961 is amended as follows: 22 USC 2417.

(1) The section caption is amended by inserting "AND MILITARY EXPORTS" after "FOREIGN ASSISTANCE".

(2) Paragraph (1) of subsection (a) is amended to read as follows:

"(1) the aggregate dollar value of all foreign assistance (including military education and training), foreign military sales, sales credits, and guaranties provided or made by the United States Government by any means to all foreign countries and international organizations, and the aggregate dollar value of such assistance, sales, sales credits, and guaranties, by category, provided or made by the United States Government to or for each such country or organization during that fiscal year;".

(3) Paragraph (3) of subsection (a) is amended to read as follows:

"(3) the aggregate dollar value and quantity of defense articles and defense services, and of military education and training, exported to each foreign country and international organization, by category, specifying whether the export was made by grant under chapter 2 or chapter 5 of part II of this Act, by sale under chapter 2 of the Arms Export Control Act, by commercial sale licensed under chapter 3 of that Act, or by other authority; and".

(4) Paragraph (4) of subsection (a) is repealed.

(5) Paragraph (5) of subsection (a) is amended—

(A) by redesignating such paragraph as paragraph (4), and

(B) by striking out "(4)" and inserting in lieu thereof "(3)".

### REPORT ON SALES OF EXCESS DEFENSE ARTICLES

SEC. 217. Not later than February 28, 1977, the President shall transmit to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate a full and complete report regarding all sales made under the Arms Export Control Act during the period July 1, 1976, through December 31, 1976, of excess defense articles to foreign governments and international organizations (other than any such article sold solely for scrap). Such report shall set forth— Transmittal to Speaker of the House and congressional committee. 22 USC 2751 note.

(1) the number of such sales;

(2) the total acquisition costs of the articles sold;

(3) the total gross price paid for such articles exclusive of administrative surcharges and costs of repairing, rehabilitation, or modifying such articles;

(4) the data set forth under paragraphs (1), (2), and (3) totaled separately for those sales made at less than 33⅓ per centum of the acquisition costs thereof; and

90 STAT. 748                    PUBLIC LAW 94–329—JUNE 30, 1976

(5) the estimated total proceeds of sales of articles included under paragraph (4) if such articles had been sold instead through United States Government surplus property disposal operations and the percentage thereof that would have been paid out of such proceeds to meet direct expenses incurred in connection with such dispositions pursuant to law.

STUDY OF THE EFFECTS OF ARMS EXPORT CONTROL PROVISIONS

22 USC 2751 note.

SEC. 218. (a) The Secretary of State, in consultation with the Secretary of Defense, shall conduct a comprehensive study of the effects of the enactment of the arms export control provisions contained in this title with a view to determining the consequences of such provisions on (1) the foreign policy of the United States, (2) the balance of payments of the United States, (3) the trade with foreign countries, (4) unemployment in the United States, and (5) weapons procurement by the Department of Defense.

Submittal to President and Congress.

(b) The Secretary of State shall submit the results of such study to the President and the Congress within one year after the date of enactment of this section, together with such comments and recommendations for legislation as he deems appropriate.

TITLE III—GENERAL LIMITATIONS

HUMAN RIGHTS

22 USC 2304.

SEC. 301. (a) Section 502B of the Foreign Assistance Act of 1961 is amended to read as follows:

"SEC. 502B. HUMAN RIGHTS.—(a) (1) It is the policy of the United States, in accordance with its international obligations as set forth in the Charter of the United Nations and in keeping with the constitutional heritage and traditions of the United States, to promote and encourage increased respect for human rights and fundamental freedoms for all without distinction as to race, sex, language, or religion. To this end, a principal goal of the foreign policy of the United States is to promote the increased observance of internationally recognized human rights by all countries.

"(2) It is further the policy of the United States that, except under circumstances specified in this section, no security assistance may be provided to any country the government of which engages in a consistent pattern of gross violations of internationally recognized human rights.

"(3) In furtherance of the foregoing policy the President is directed to formulate and conduct international security assistance programs of the United States in a manner which will promote and advance human rights and avoid identification of the United States, through such programs, with governments which deny to their people internationally recognized human rights and fundamental freedoms, in violation of international law or in contravention of the policy of the United States as expressed in this section or otherwise.

Report to Congress.

"(b) The Secretary of State shall transmit to the Congress, as part of the presentation materials for security assistance programs proposed for each fiscal year, a full and complete report, prepared with the assistance of the Coordinator for Human Rights and Humanitarian Affairs, with respect to practices regarding the observance of and respect for internationally recognized human rights in each country proposed as a recipient of security assistance. In determining whether a government falls within the provisions of subsection (a) (3)

and in the preparation of any report or statement required under this section, consideration shall be given to—

"(1) the relevant findings of appropriate international organizations, including nongovernmental organizations, such as the International Committee of the Red Cross; and

"(2) the extent of cooperation by such government in permitting an unimpeded investigation by any such organization of alleged violations of internationally recognized human rights.

"(c)(1) Upon the request of the Senate or the House of Representatives by resolution of either such House, or upon the request of the Committee on Foreign Relations of the Senate or the Committee on International Relations of the House of Representatives, the Secretary of State shall, within thirty days after receipt of such request, transmit to both such committees a statement, prepared with the assistance of the Coordinator for Human Rights and Humanitarian Affairs, with respect to the country designated in such request, setting forth—

Statement, transmittal to Congress.

"(A) all the available information about observance of and respect for human rights and fundamental freedom in that country, and a detailed description of practices by the recipient government with respect thereto;

"(B) the steps the United States has taken to—

"(i) promote respect for and observance of human rights in that country and discourage any practices which are inimical to internationally recognized human rights, and

"(ii) publicly or privately call attention to, and disassociate the United States and any security assistance provided for such country from, such practices;

"(C) whether, in the opinion of the Secretary of State, notwithstanding any such practices—

"(i) extraordinary circumstances exist which necessitate a continuation of security assistance for such country, and, if so, a description of such circumstances and the extent to which such assistance should be continued (subject to such conditions as Congress may impose under this section), and

"(ii) on all the facts it is in the national interest of the United States to provide such assistance; and

"(D) such other information as such committee or such House may request.

"(2)(A) A resolution of request under paragraph (1) of this subsection shall be considered in the Senate in accordance with the provisions of section 601(b) of the International Security Assistance and Arms Export Control Act of 1976.

Post, p. 765. "Certification."

"(B) The term 'certification', as used in section 601 of such Act, means, for the purposes of this subsection, a resolution of request of the Senate under paragraph (1) of this subsection.

"(3) In the event a statement with respect to a country is requested pursuant to paragraph (1) of this subsection but is not transmitted in accordance therewith within thirty days after receipt of such request, no security assistance shall be delivered to such country except as may thereafter be specifically authorized by law from such country unless and until such statement is transmitted.

"(4)(A) In the event a statement with respect to a country is transmitted under paragraph (1) of this subsection, the Congress may at any time thereafter adopt a joint resolution terminating, restricting, or continuing security assistance for such country. In the event such a joint resolution is adopted, such assistance shall be so terminated, so restricted, or so continued, as the case may be.

90 STAT. 750                PUBLIC LAW 94–329—JUNE 30, 1976

"Certification."

Definitions.

"(B) Any such resolution shall be considered in the Senate in accordance with the provisions of section 601(b) of the International Security Assistance and Arms Export Control Act of 1976.

"(C) The term 'certification', as used in section 601 of such Act, means, for the purposes of this paragraph, a statement transmitted under paragraph (1) of this subsection.

"(d) For the purposes of this section—

"(1) the term 'gross violations of internationally recognized human rights' includes torture or cruel, inhuman, or degrading treatment or punishment, prolonged detention without charges and trial, and other flagrant denial of the right to life, liberty, or the security of person; and

"(2) the term 'security assistance' means—

"(A) assistance under chapter 2 (military assistance) or chapter 4 (security supporting assistance) or chapter 5 (military education and training) of this part or part VI (assistance to the Middle East) of this Act;

"(B) sales of defense articles or services, extensions of credits (including participations in credits, and guaranties of loans under the Arms Export Control Act; or

"(C) any license in effect with respect to the export of defense articles or defense services to or for the armed forces, police, intelligence, or other internal security forces of a foreign country under section 38 of the Arms Export Control Act.".

*Ante,* p. 744.
22 USC 2384.

Coordinator for
Human Rights
and
Humanitarian
Affairs.

*Ante,* p. 748.

(b) Section 624 of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new subsection:

"(f)(1) There is established in the Department of State a Coordinator for Human Rights and Humanitarian Affairs. The Coordinator shall be appointed by the President with the advice and consent of the Senate. He shall be responsible to the Secretary of State for matters pertaining to human rights and humanitarian affairs (including matters relating to refugees, prisoners of war, and members of the United States Armed Forces missing in action) in the conduct of foreign policy. The Secretary of State shall carry out his responsibility under section 502B of this Act through the Coordinator for Human Rights and Humanitarian Affairs.

"(2) The Coordinator for Human Rights and Humanitarian Affairs shall maintain continuous observation and review of all matters pertaining to human rights and humanitarian affairs (including matters relating to refugees, prisoners of war, and members of the United States Armed Forces missing in action) in the conduct of foreign policy including—

22 USC 2151n.

"(A) gathering detailed information regarding humanitarian affairs and the observance of and respect for internationally recognized human rights in each country to which requirements of sections 116 and 502B of this Act are relevant;

"(B) preparing the statements and reports to Congress required under section 502B of this Act;

"(C) making recommendations to the Secretary of State and the Administrator of the Agency for International Development regarding compliance with sections 116 and 502B of this Act; and

"(D) performing other responsibilities which serve to promote increased observance of internationally recognized human rights by all countries.".

PUBLIC LAW 94–329—JUNE 30, 1976

90 STAT. 751

PROHIBITION AGAINST DISCRIMINATION

SEC. 302. (a) Section 505 of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new subsection:

22 USC 2314.

"(g)(1) It is the policy of the United States that no assistance under this chapter should be furnished to any foreign country, the laws, regulations, official policies, or governmental practices of which prevent any United States person (as defined in section 7701(a)(30) of the Internal Revenue Code of 1954) from participating in the furnishing of defense articles or defense services under this chapter on the basis of race, religion, national origin, or sex.

26 USC 7701.

"(2)(A) No agency performing functions under this chapter shall, in employing or assigning personnel to participate in the performance of any such function, whether in the United States or abroad, take into account the exclusionary policies or practices of any foreign government where such policies or practices are based upon race, religion, national origin, or sex.

"(B) Each contract entered into by any such agency for the performance of any function under this chapter shall contain a provision to the effect that no person, partnership, corporation, or other entity performing functions pursuant to such contract, shall, in employing or assigning personnel to participate in the performance of any such function, whether in the United States or abroad, take into account the exclusionary policies or practices of any foreign government where such policies or practices are based upon race, religion, national origin, or sex.

"(3) The President shall promptly transmit reports to the Speaker of the House of Representatives and the chairman of the Committee on Foreign Relations of the Senate concerning any transaction in which any United States person (as defined in section 7701(a)(30) of the Internal Revenue Code of 1954) is prevented by a foreign government on the basis of race, religion, national origin, or sex, from participating in the furnishing of assistance under this chapter, or education and training under chapter 5, to any foreign country. Such reports shall include (A) a description of the facts and circumstances of any such discrimination, (B) the response thereto on the part of the United States or any agency or employee thereof, and (C) the result of such response, if any.

Reports, transmittal to Speaker of the House and congressional committee.

"(4)(A) Upon the request of the Committee on Foreign Relations of the Senate or the Committee on International Relations of the House of Representatives, the President shall, within 60 days after receipt of such request, transmit to both such committees a statement, prepared with the assistance of the Coordinator for Human Rights and Humanitarian Affairs, with respect to the country designated in such request, setting forth—

"(i) all the available information about the exclusionary policies or practices of the government of such country when such policies or practices are based upon race, religion, national origin, or sex and prevent any such person from participating in a transaction involving the furnishing of any assistance under this chapter or any education and training under chapter 5;

Ante, p. 732.

"(ii) the response of the United States thereto and the results of such response;

"(iii) whether, in the opinion of the President, notwithstanding any such policies or practices—

"(I) extraordinary circumstances exist which necessitate a continuation of such assistance or education and training transaction, and, if so, a description of such circumstances

and the extent to which such assistance or education and training transaction should be continued (subject to such conditions as Congress may impose under this section), and

"(II) on all the facts it is in the national interest of the United States to continue such assistance or education and training transaction; and

"(iv) such other information as such committee may request.

"(B) In the event a statement with respect to an assistance or training transaction is requested pursuant to subparagraph (A) of this paragraph but is not transmitted in accordance therewith within 60 days after receipt of such request, such assistance or training transaction shall be suspended unless and until such statement is transmitted.

"(C)(i) In the event a statement with respect to an assistance or training transaction is transmitted under subparagraph (A) of this paragraph, the Congress may at any time thereafter adopt a joint resolution terminating or restricting such assistance or training transaction.

*Post*, p. 765.
"Certification."

"(ii) Any such resolution shall be considered in the Senate in accordance with the provisions of section 601(b) of the International Security Assistance and Arms Export Control Act of 1976.

"(iii) The term 'certification', as used in section 601 of such Act, means, for the purposes of this paragraph, a statement transmitted under subparagraph (A) of this paragraph.".

22 USC 2755.

(b) Chapter 1 of the Foreign Military Sales Act is amended by adding at the end thereof the following new section:

"SEC. 5. PROHIBITION AGAINST DISCRIMINATION.—(a) It is the policy of the United States that no sales should be made, and no credits (including participations in credits) or guaranties extended to or for any foreign country, the laws, regulations, official policies, or governmental practices of which prevent any United States person (as

26 USC 7701.

defined in section 7701(a)(30) of the Internal Revenue Code of 1954) from participating in the furnishing of defense articles or defense services under this Act on the basis of race, religion, national origin, or sex.

"(b)(1) No agency performing functions under this Act shall, in employing or assigning personnel to participate in the performance of any such function, whether in the United States or abroad, take into account the exclusionary policies or practices of any foreign government where such policies or practices are based upon race, religion, national origin, or sex.

"(2) Each contract entered into by any such agency for the performance of any function under this Act shall contain a provision to the effect that no person, partnership, corporation, or other entity performing functions pursuant to such contract, shall, in employing or assigning personnel to participate in the performance of any such function, whether in the United States or abroad, take into account the exclusionary policies or practices of any foreign government where such policies or practices are based upon race, religion, national origin, or sex.

Reports,
transmittal to
Speaker of the
House and
congressional
committee.

"(c) The President shall promptly transmit reports to the Speaker of the House of Representatives and the chairman of the Committee on Foreign Relations of the Senate concerning any instance in which any United States person (as defined in section 7701(a)(30) of the Internal Revenue Code of 1954) is prevented by a foreign government on the basis of race, religion, national origin, or sex, from participating in the performance of any sale or licensed transaction under this Act. Such reports shall include (1) a description of the facts and circum-

PUBLIC LAW 94–329—JUNE 30, 1976          90 STAT. 753

stances of any such discrimination, (2) the response thereto on the part of the United States or any agency or employee thereof, and (3) the result of such response, if any.

"(d)(1) Upon the request of the Committee on Foreign Relations of the Senate or the Committee on International Relations of the House of Representatives, the President shall, within 60 days after receipt of such request, transmit to both such committees a statement, prepared with the assistance of the Coordinator for Human Rights and Humanitarian Affairs, with respect to the country designated in such request, setting forth— *Statement, transmittal to congressional committees.*

"(A) all the available information about the exclusionary policies or practices of the government of such country when such policies or practices are based upon race, religion, national origin or sex and prevent any such person from participating in the performance of any sale or licensed transaction under this Act;

"(B) the response of the United States thereto and the results of such response;

"(C) whether, in the opinion of the President, notwithstanding any such policies or practices—

"(i) extraordinary circumstances exist which necessitate a continuation of such sale or licensed transaction, and, if so, a description of such circumstances and the extent to which such sale or licensed transaction should be continued (subject to such conditions as Congress may impose under this section), and

"(ii) on all the facts it is in the national interest of the United States to continue such sale or licensed transaction; and

"(D) such other information as such committee may request.

"(2) In the event a statement with respect to a sale or licensed transaction is requested pursuant to paragraph (1) of this subsection but is not transmitted in accordance therewith within 60 days after receipt of such request, such sale or licensed transaction shall be suspended unless and until such statement is transmitted.

"(3)(A) In the event a statement with respect to a sale or licensed transaction is transmitted under paragraph (1) of this subsection, the Congress may at any time thereafter adopt a joint resolution terminating or restricting such sale or licensed transaction.

"(B) Any such resolution shall be considered in the Senate in accordance with the provisions of section 601(b) of the International Security Assistance and Arms Export Control Act of 1976. *Post, p. 765.*

"(C) The term 'certification', as used in section 601 of such Act, means, for the purposes of this paragraph, a statement transmitted under paragraph (1) of this subsection.". *"Certification."*

PROHIBITION OF ASSISTANCE TO COUNTRIES GRANTING SANCTUARY TO INTERNATIONAL TERRORISTS

SEC. 303. Chapter 1 of part III of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new section:

"SEC. 620A. PROHIBITION AGAINST FURNISHING ASSISTANCE TO COUNTRIES WHICH GRANT SANCTUARY TO INTERNATIONAL TERRORISTS.—(a) Except where the President finds national security to require otherwise, the President shall terminate all assistance under this Act to any government which aids or abets, by granting sanctuary from prosecution to, any individual or group which has committed an act of international terrorism and the President may not thereafter *22 USC 2371.*

90 STAT. 754          PUBLIC LAW 94–329—JUNE 30, 1976

furnish assistance to such government until the end of the one year period beginning on the date of such termination, except that if during its period of ineligibility for assistance under this section such government aids or abets, by granting sanctuary from prosecution to, any other individual or group which has committed an act of international terrorism, such government's period of ineligibility shall be extended for an additional year for each such individual or group.

"(b) If the President finds that national security justifies a continuation of assistance to any government described in subsection (a), he shall report such finding to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate.".

Report to Speaker of the House and congressional committee.

INELIGIBILITY

22 USC 2314.

Sec. 304. (a) Section 505(d) of the Foreign Assistance Act of 1961 is amended to read as follows:

"(d)(1) Assistance and deliveries of assistance under this chapter to any country shall be terminated as hereinafter provided, if such country uses defense articles or defense services furnished under this Act, the Mutual Security Act of 1954, or any predecessor Foreign Assistance Act, in substantial violation (either in terms of quantities or in terms of the gravity of the consequences regardless of the quantities involved) of any agreement entered into pursuant to any such Act (A) by using such articles or services for a purpose not authorized under section 502 or, if such agreement provides that such articles or services may only be used for purposes more limited than those authorized under section 502, for a purpose not authorized under such agreement; (B) by transferring such articles or services to, or permitting any use of such articles or services by, anyone not an officer, employee, or agent of the recipient country without the consent of the President; or (C) by failing to maintain the security of such articles or services.

68 Stat. 832.
22 USC 1751 note.

22 USC 2302.

"(2)(A) Assistance and deliveries of assistance shall be terminated pursuant to paragraph (1) of this subsection if the President so determines and so states in writing to the Congress, or if the Congress so finds by joint resolution.

"(B) The President shall report to the Congress promptly upon the receipt of information that a violation described in paragraph (1) of this subsection may have occurred.

Report to Congress.

"(3) Assistance to a country shall remain terminated in accordance with paragraph (1) of this subsection until such time as—

"(A) the President determines that the violation has ceased; and

"(B) the country concerned has given assurances satisfactory to the President that such violation will not recur.

"(4) The authority contained in section 614(a) of this Act may not be used to waive the provisions of this section with respect to further assistance under this chapter.".

22 USC 2753.

(b)(1) Section 3(c) of the Foreign Military Sales Act is amended to read as follows:

"(c)(1)(A) No credits (including participations in credits) may be issued and no guaranties may be extended for any foreign country under this Act as hereinafter provided, if such country uses defense articles or defense services furnished under this Act, or any predecessor Act, in substantial violation (either in terms of quantities or in terms of the gravity of the consequences regardless of the quantities involved) of any agreement entered into pursuant to any such Act (i) by using such articles or services for a purpose not authorized

under section 4 or, if such agreement provides that such articles or services may only be used for purposes more limited than those authorized under section 4 for a purpose not authorized under such agreement; (ii) by transferring such articles or services to, or permitting any use of such articles or services by, anyone not an officer, employee, or agent of the recipient country without the consent of the President; or (iii) by failing to maintain the security of such articles or services.

22 USC 2754.

"(B) No cash sales or deliveries pursuant to previous sales may be made with respect to any foreign country under this Act as hereinafter provided, if such country uses defense articles or defense services furnished under this Act, or any predecessor Act, in substantial violation (either in terms of quantity or in terms of the gravity of the consequences regardless of the quantities involved) of any agreement entered into pursuant to any such Act by using such articles or services for a purpose not authorized under section 4 or, if such agreement provides that such articles or services may only be used for purposes more limited than those authorized under section 4, for a purpose not authorized under such agreement.

"(2) The President shall report to the Congress promptly upon the receipt of information that a violation described in paragraph (1) of this subsection may have occurred.

Report to Congress.

"(3)(A) A country shall be deemed to be ineligible under subparagraph (A) of paragraph (1) of this subsection, or both subparagraphs (A) and (B) of such paragraph in the case of a violation described in both such paragraphs, if the President so determines and so reports in writing to the Congress, or if the Congress so determines by joint resolution.

"(B) Notwithstanding a determination by the President of ineligibility under subparagraph (B) of paragraph (1) of this subsection, cash sales and deliveries pursuant to previous sales may be made if the President certifies in writing to the Congress that a termination thereof would have significant adverse impact on United States security, unless the Congress adopts or has adopted a joint resolution pursuant to subparagraph (A) of this paragraph with respect to such ineligibility.

"(4) A country shall remain ineligible in accordance with paragraph (1) of this subsection until such time as—

"(A) the President determines that the violation has ceased; and

"(B) the country concerned has given assurances satisfactory to the President that such violation will not recur.".

(2) Section 3(d) of the Foreign Military Sales Act is repealed and subsections (e) and (f) of such section, as added by section 204 of this Act, are redesignated as subsections (d) and (e), respectively.

Repeal.
*Ante,* p. 735.

### NUCLEAR TRANSFERS

Sec. 305. Chapter 3 of part III of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new section:

"Sec. 669. Nuclear Transfers.—(a) Except as provided in subsection (b), no funds authorized to be appropriated by this Act or the Arms Export Control Act may be used for the purpose of—

22 USC 2429.

"(1) providing economic assistance;

"(2) providing military or security supporting assistance or grant military education and training; or

"(3) extending military credits or making guarantees;

to any country which—

"(A) delivers nuclear reprocessing or enrichment equipment, materials, or technology to any other country; or

"(B) receives such equipment, materials or technology from any other country;
unless before such delivery—

"(i) the supplying country and receiving country have reached agreement to place all such equipment, materials, and technology, upon delivery, under multilateral auspices and management when available; and

"(ii) the recipient country has entered into an agreement with the International Atomic Energy Agency to place all such equipment, materials, technology, and all nuclear fuel and facilities in such country under the safeguards system of such Agency.

"(b)(1) Notwithstanding the provisions of subsection (a) of this section, the President may, by Executive order effective not less than 30 days following its date of promulgation, furnish assistance which would otherwise be prohibited under paragraph (1), (2), or (3) of such subsection if he determines and certifies in writing to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate that—

"(A) the termination of such assistance would have a serious adverse effect on vital United States interests; and

"(B) he has received reliable assurances that the country in question will not acquire or develop nuclear weapons or assist other nations in doing so.

Such certification shall set forth the reasons supporting such determination in each particular case.

"(2)(A)  The Congress may by joint resolution terminate or restrict assistance described in paragraphs (1) through (3) of subsection (a) with respect to a country to which the prohibition in such subsection applies or take any other action with respect to such assistance for such country as it deems appropriate.

"(B)  Any such joint resolution with respect to a country shall, if introduced within 30 days after the transmittal of a certification under paragraph (1) with respect to such country, be considered in the Senate in accordance with the provisions of section 601(b) of the International Security Assistance and Arms Export Control Act of 1976.".

*Post,* p. 765.

## TITLE IV—PROVISIONS RELATING TO SPECIFIC REGIONS OR COUNTRIES

### MIDDLE EAST POLICY STATEMENT

22 USC 2441.

SEC. 401. Section 901 of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new paragraph:

"It is the sense of Congress that the United States will continue to determine Middle East Policy as circumstances may require and that the authority contained in the joint resolution entitled 'Joint resolution to implement the United States proposal for the early-warning system in Sinai', approved October 13, 1975 (Public Law 94–110), and the authorizations contained in the amendments made by the International Security Assistance and Arms Export Control Act of 1976 do not, and shall not in any way be construed to, constitute congressional approval, acceptance, or endorsement (1) of any oral or written commitment, understanding, assurance, promise, or agreement, whether expressed or implied, or any other expression, oral or written (other than the 'United States Proposal for the Early Warning System in Sinai'), made by any official of the United States which

22 USC 2441 note.

PUBLIC LAW 94–329—JUNE 30, 1976                    90 STAT. 757

Israel, Egypt, or any other nation or organization might construe or interpret as a basis on which it could rely or act, or (2) of any characterization of any such commitment, understanding, assurance, promise, or agreement, or other expression, as constituting a 'codification' of existing, congressionally approved United States policy.".

AID FOR CYPRIOT REFUGEES

SEC. 402. Section 495 of the Foreign Assistance Act of 1961 is amended by striking out "$30,000,000" and inserting in lieu thereof "$40,000,000".

<div align="right">22 USC 2292f.</div>

ASSISTANCE TO TURKEY

SEC. 403. Section 620(x)(1) of the Foreign Assistance Act of 1961, as amended by section 2(c) of the Act of October 6, 1975 (Public Law 94–104), is amended by striking out "*Provided,*" and all that follows through the end of paragraph (1) and inserting in lieu thereof the following: "*Provided*, That for the fiscal year 1976, the period beginning July 1, 1976, and ending September 30, 1976, and the fiscal year 1977, the President may suspend the provisions of this subsection and of section 3(c) of the Arms Export Control Act with respect to cash sales and extensions of credits and guaranties under such Act for the procurement of such defense articles and defense services as the President determines are necessary to enable Turkey to fulfill her defense responsibilities as a member of the North Atlantic Treaty Organization, except that (A) during the fiscal year 1976 and the period beginning July 1, 1976, and ending September 30, 1976, the total value of defense articles and defense services sold to Turkey under such Act, either for cash or financed by credits and guaranties, shall not exceed $125,000,000, and (B) during the fiscal year 1977, the total value of defense articles and defense services sold to Turkey under such Act, either for cash or financed by credits and guaranties, shall not exceed $125,000,000. Any such suspension shall be effective only so long as Turkey observes the cease-fire on Cyprus, does not increase its military forces or its civilian population on Cyprus, and does not transfer to Cyprus any United States supplied arms, ammunition, or implements of war. The determination required by the proviso in the first sentence of this paragraph shall be made, on a case-by-case basis, with respect to each cash sale, each approval for use of credits, and each approval for use of a guaranty for Turkey. Each such determination shall be reported to the Congress and shall be accompanied by a full and complete statement of the reasons supporting the President's determination and a statement containing the information specified in clauses (A) through (D) of section 2(c) (4) of the Act of October 6, 1975 (Public Law 94–104). In any case involving the sale of significant combat equipment on the United States Munitions List in which the congressional review provisions of section 36(b) of the Arms Export Control Act do not apply, the President may not issue the letter of offer or approve the use of the credits or guaranty, as the case may be, until the end of the thirty-day period beginning on the date on which the report required by the preceding sentence is submitted to the Congress.".

<div align="right">
Suspension.<br>
22 USC 2370.<br>
<br>
22 USC 2753.<br>
<br>
Report to<br>
Congress.<br>
<br>
89 Stat. 509.<br>
<br>
*Ante,* p. 740.
</div>

LIMITATION ON CERTAIN ASSISTANCE TO AND ACTIVITIES IN ANGOLA

SEC. 404. (a) Notwithstanding any other provision of law, no assistance of any kind may be provided for the purpose, or which would have the effect, of promoting or augmenting, directly or indirectly, the capacity of any nation, group, organization, movement, or individual

<div align="right">22 USC 2293<br>note.</div>

90 STAT. 758        PUBLIC LAW 94–329—JUNE 30, 1976

to conduct military or paramilitary operations in Angola unless and until the Congress expressly authorizes such assistance by law enacted after the date of enactment of this section.

Report to Speaker of the House and congressional commitee.

(b) If the President determines that assistance prohibited by subsection (a) should be furnished in the national security interests of the United States, he shall submit to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate a report containing—

(1) a description of the amounts and categories of assistance which he recommends to be authorized and the identity of the proposed recipients of such assistance; and

(2) a certification that he has determined that the furnishing of such assistance is important to the national security interests of the United States and a detailed statement, in unclassified form, of the reasons supporting such determination.

(c) The prohibition contained in subsection (a) does not apply with respect to assistance which is furnished solely for humanitarian purposes.

(d) The provisions of this section may not be waived under any other provision of law.

SOVIET INTERVENTION IN ANGOLA

22 USC 2293 note.

SEC. 405. The Congress views the large-scale and continuing Soviet intervention in Angola, including active sponsorship and support of Cuban armed forces in Angola, as being completely inconsistent with any reasonably defined policy of détente, as well as with Articles 1 and 2 of the United Nations Charter, the principle of noninterference in the affairs of other countries agreed to at Helsinki in 1975, and with the spirit of recent bilateral agreements between the United States and the Union of Soviet Socialist Republics. Such intervention should be taken explicitly into account in United States foreign policy planning and negotiations.

LIMITATIONS ON ECONOMIC ASSISTANCE, MILITARY ASSISTANCE, SALES, AND SALES CREDITS FOR CHILE

22 USC 2370 note.
22 USC 2151 note.

SEC. 406. (a) (1) No military or security supporting assistance and no military education and training may be furnished under the Foreign Assistance Act of 1961 for Chile; and no credits (including participations in credits) may be extended and no loan may be guaranteed under the Arms Export Control Act with respect to Chile. No deliveries of any such assistance, credits, or guaranties may be made to Chile on or after the date of enactment of this section.

(2) No sales (including cash sales) may be made and no export license may be issued under the Arms Export Control Act with respect to Chile on or after the date of enactment of this section.

(b)(1) Notwithstanding any other provision of law, the total amount of economic assistance which may be made available for Chile during the period beginning July 1, 1976, and ending September 30, 1977, may not exceed $27,500,000. For purposes of this subsection, economic assistance includes any assistance of any kind which is provided, directly or indirectly, to or for the benefit of Chile by any department, agency, or other instrumentality of the United States Government (other than assistance provided under chapter 2, 4, or 5

PUBLIC LAW 94–329—JUNE 30, 1976          90 STAT. 759

of part II of the Foreign Assistance Act of 1961 or credits or guaran-    22 USC 2311,
ties extended under the Arms Export Control Act), but does not     2346.
include commodities furnished under title II of the Agricultural Trade    *Ante*, p. 732.
Development and Assistance Act of 1954. This subsection shall not be    7 USC 1721.
construed to authorize the furnishing of any assistance which is
prohibited under any other provision of law.

(2) The $27,500,000 limit set forth in paragraph (1) of this sub-
section may be increased by not to exceed $27,500,000 if the President
certifies in writing to the Speaker of the House of Representatives
and the Committee on Foreign Relations of the Senate that the
Government of Chile—

(A) does not engage in a consistent pattern of gross violations
of internationally recognized human rights, including torture or
cruel, inhuman, or degrading treatment or punishment, prolonged
detention without charges or trial, or other flagrant denials of the
right to life, liberty, or the security of person;

(B) has permitted the unimpeded investigation, by interna-
tionally recognized commissions on human rights (including the
United Nations Commission on Human Rights and the Inter-
American Commission on Human Rights of the Organization of
American States) of alleged violations of internationally recog-
nized human rights (as described in subparagraph (A) of this
paragraph); and

(C) has taken steps to inform the families of prisoners of the
condition of and charges against such prisoners.

### CONTROL OF MILITARY FORCES IN THE INDIAN OCEAN

SEC. 407. (a) It is the sense of Congress that the President should    22 USC 2151
undertake to enter into negotiations with the Soviet Union intended    note.
to achieve an agreement limiting the deployment of naval, air, and
land forces of the Soviet Union and the United States in the Indian
Ocean and littoral countries. Such negotiations should be convened
as soon as possible and should consider, among other things, limita-
tions with respect to—

(1) the establishment or use of facilities for naval, air, or land
forces in the Indian Ocean and littoral countries;

(2) the number of naval vessels which may be deployed in the
Indian Ocean, or the number of "shipdays" allowed therein; and

(3) the type and number of military forces and facilities
allowed therein.

(b) Not later than December 1, 1976, the President shall transmit    Report to
a report to the Speaker of the House of Representatives and the Com-    Speaker of the
mittee on Foreign Relations of the Senate with respect to steps he has    House and
taken to carry out the provisions of this section.    congressional
committee.

### UNITED STATES CITIZENS IMPRISONED IN MEXICO

SEC. 408. (a) The Congress, while sharing the concern of the Presi-    22 USC 2291
dent over the urgent need for international cooperation to restrict traf-    note.
fic in dangerous drugs, is convinced that such efforts must be consistent
with respect for fundamental human rights. The Congress, therefore,
calls upon the President to take steps to insure that United States
efforts to secure stringent international law enforcement measures are

combined with efforts to secure fair and humane treatment for citizens of all countries.

(b)(1) The Congress requests that the President communicate directly to the President and Government of the Republic of Mexico, a nation with which we have friendly and cooperative relations, the continuing desire of the United States for such relations between our two countries and the concern of the United States over treatment of United States citizens arrested in Mexico.

**Report to Speaker of the House and congressional committee.**

(2) The Secretary of State shall report to the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate within one hundred and twenty days after the date of enactment of this section, and every one hundred and twenty days thereafter, on progress toward full respect for the human and legal rights of all United States citizens detained in Mexico.

### EMERGENCY FOOD NEEDS OF PORTUGAL

**22 USC 2293 note.**

SEC. 409. It is the sense of the Congress that the President should undertake immediately an evaluation of the emergency food needs of Portugal. It is further the sense of the Congress that the President should take timely action to alleviate such emergency by providing Portugal with food commodities under the provisions of pertinent statutes.

### STRIFE IN LEBANON

**22 USC 2441 note.**

SEC. 410. It is the sense of the Congress that the situation in Lebanon, a nation traditionally friendly to the United States, poses a danger to peace in the Middle East. The Congress deplores the armed civil strife and the continuing erosion of national institutions which threaten to destroy the political and economic fabric of Lebanon with such tragic impact on all its people. The Congress views with grave concern any outside efforts to exploit the current strife with the purpose of transforming Lebanon into a radical state in confrontation with Israel. The Congress requests that the President use his good offices to secure an end to the civil strife and national discord in Lebanon and to preserve the traditional friendly attitude of Lebanon toward the United States.

### REPORT ON KOREA

SEC. 411. Chapter 3 of part III of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new section:

**22 USC 2428.**

"SEC. 668. REPORT ON KOREA.—Within ninety days after the enactment of this section, and at least once during each of the next five years, the President shall transmit to the Speaker of the House of Representatives and to the Committees on Foreign Relations and Armed Services of the Senate a report which (1) reviews the progress made under the announced program of the Republic of Korea to modernize its armed forces so as to achieve military self-sufficiency by 1980, (2) reports on the role of the United States in mutual security efforts in the Republic of Korea, and (3) reports on the prospects for or implementation of phased reduction of United States Armed Forces assigned to duty in the Republic of Korea, in coordination with the timetable of the Republic of Korea for military self-sufficiency.".

PUBLIC LAW 94–329—JUNE 30, 1976     90 STAT. 761

SEC. 412. The Congress views with distress the erosion of important civil liberties in the Republic of Korea and requests that the President communicate this concern in forceful terms to the Government of the Republic of Korea within sixty days after enactment.

22 USC 2428 note.

## REPEAL OF INDOCHINA ASSISTANCE

SEC. 413. (a) Part V of the Foreign Assistance Act of 1961 and sections 34, 35, 36, 37, 38, 39, and 40 of the Foreign Assistance Act of 1974 are repealed. All determinations, authorizations, regulations, orders, contracts, agreements, and other actions issued, undertaken, or entered into under authority of any provision of law repealed by this section shall continue in full force and effect until modified, revoked, or superseded by appropriate authority.

Repeal. 22 USC 2431, 2432, 2433 notes, 2434, 2435, 2415, 2416. 22 USC 2431 note.

(b) Subject to the availability of appropriations therefor, the President is authorized to adopt as a contract of the United States Government, and assume any liabilities arising thereunder (in whole or in part), any contract which had been funded or approved for funding by the Agency for International Development prior to June 30, 1975, for financing with funds made available under the Foreign Assistance Act of 1961 or the Foreign Assistance Act of 1974, or any equitable claim based upon a letter of intent issued prior to April 30, 1975, in which the Agency had expressed its intention to finance a transaction subject to the availability of funds, between the former Governments of Vietnam or Cambodia (including any of their agencies) or the Government of Laos (or any of its agencies) and any person and to apply with respect to any such contract the authorities of the Foreign Assistance Act of 1961.

22 USC 2151 note, 2151a note.

(c) Funds made available for the purposes of part V of the Foreign Assistance Act of 1961 and of section 36 of the Foreign Assistance Act of 1974 (including amounts certified pursuant to section 1311 of the Supplemental Appropriation Act, 1955 (31 U.S.C. 200), as having been obligated against appropriations heretofore made) are authorized to be appropriated, and thereafter, to remain available until expended, to meet necessary expenses arising from the actions authorized by subsection (b) of this section and such funds are authorized to remain available until expended to meet necessary expenses arising from the termination of assistance programs authorized by such part and such section 36, which expenses may include but need not be limited to the settlement of claims and associated personnel costs.

## LEBANON HOUSING RECONSTRUCTION

SEC. 414. Section 223(j) of the Foreign Assistance Act of 1961 is amended by striking out "and" in the last sentence and by inserting immediately before the period at the end of such sentence ", and in Lebanon, not exceeding a face amount of $15,000,000".

22 USC 2183.

## ITALY RELIEF AND REHABILITATION

SEC. 415. Chapter 9 of part I of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new section:

"SEC. 495B. ITALY RELIEF AND REHABILITATION.—(a) In addition to amounts otherwise available for such purpose, there is authorized to be appropriated $25,000,000 for the fiscal year 1976 to furnish

Appropriation authorization. 22 USC 2292h.

assistance under this chapter for the relief and rehabilitation of the people who have been victimized by the recent earthquake in Italy. Amounts appropriated under this section are authorized to remain available until expended.

"(b) Obligations incurred prior to the date of enactment of this section against other appropriations or accounts for the purpose of providing relief and rehabilitation assistance to the people of Italy may be charged to the appropriations authorized under this section.".

### LEBANON RELIEF AND REHABILITATION

SEC. 416. Chapter 9 of part I of the Foreign Assistance Act of 1961, as amended by section 415 of this Act, is further amended by adding at the end thereof the following new section:

22 USC 2292i.

"SEC. 495C. LEBANON RELIEF AND REHABILITATION.—(a) The Congress, recognizing that prompt United States assistance is necessary to alleviate the human suffering arising from civil strife in Lebanon and to restore the confidence of the people of Lebanon, authorizes the President to furnish assistance, on such terms and conditions as he may determine, for the relief and rehabilitation of refugees and other needy people in Lebanon.

Appropriation authorization.

"(b) There is authorized to be appropriated to the President for the purposes of this section, in addition to amounts otherwise available for such purposes, $20,000,000, which amount is authorized to remain available until expended.

22 USC 2292.

"(c) Assistance under this section shall be provided in accordance with the policies and general authority contained in section 491.

"(d) Obligations incurred prior to the date of enactment of this section against other appropriations or accounts for the purpose of providing relief and rehabilitation assistance to the people of Lebanon may be charged to the appropriations authorized under this section.

Reports to Speaker of the House and congressional committees.

"(e) Not later than sixty days after the date of enactment of appropriations to carry out this section, and on a quarterly basis thereafter, the President shall transmit reports to the Committees on Foreign Relations and Appropriations of the Senate and to the Speaker of the House of Representatives regarding the programing and obligation of funds under this section.".

## TITLE V—MISCELLANEOUS AUTHORIZATIONS

### SECURITY SUPPORTING ASSISTANCE

22 USC 2346a.

SEC. 501. (a) Section 532 of the Foreign Assistance Act of 1961 is amended to read as follows:

"SEC. 532. AUTHORIZATION.—(a) There is authorized to be appropriated to the President to carry out the purposes of this chapter for the fiscal year 1976 $1,766,200,000, of which not less than $65,000,000 shall be available only for Greece, $730,000,000 shall be available only for Israel, and $705,000,000 shall be available only for Egypt, and for the fiscal year 1977 $1,860,000,000, of which not less than $785,000,000 shall be available only for Israel, not less than $750,000,000 shall be available only for Egypt, not less than $27,500,000 shall be available only for Zambia, and not less than $27,500,000 shall be available only for Zaire. Amounts appropriated under this section are authorized to remain available until expended.

PUBLIC LAW 94–329—JUNE 30, 1976 90 STAT. 763

"(b)(1) None of the funds made available under this section for Zaire and Zambia may be used for military, guerrilla, or paramilitary activities in either such country or in any other country.

"(2) Assistance furnished under this chapter to Zaire and Zambia for fiscal year 1977 shall not be counted for purposes of the limitation contained in the last sentence of section 531 on the number of countries which may receive assistance under this chapter in any fiscal year.". 22 USC 2346.

MIDDLE EAST SPECIAL REQUIREMENT FUND

SEC. 502. Section 903 of the Foreign Assistance Act of 1961 is 22 USC 2443. amended—

(1) in subsection (a), by striking out "for the fiscal year 1975 not to exceed $100,000,000" and inserting in lieu thereof "for the fiscal year 1976 not to exceed $50,000,000 and for the fiscal year 1977 not to exceed $35,000,000"; and

(2) by striking out subsection (c) and inserting in lieu thereof the following:

"(c) Funds appropriated under subsection (a) shall be available to assist the Governments of Egypt and Israel in carrying out activities under the Agreement of October 10, 1975, and to pay the costs of implementing the United States proposal for the early warning system in Sinai. Such funds may be obligated without regard to the provisions of subsection (b) of this section to the extent that the proposed obligation has been justified to the Congress prior to the enactment of this subsection.

"(d) Of the amount authorized to be appropriated in subsection (a) for the fiscal years 1976 and 1977, not less than $12,000,000 for each such year shall constitute a contribution by the United States toward the settlement of the deficit of the United Nations Relief and Works Agency for Palestine Refugees in the Middle East, if the President determines that a reasonable number of other countries will contribute a fair share toward the settlement of such deficit within a reasonable period of time after the date of enactment of the International Security Assistance and Arms Export Control Act of 1976. In determining such Ante, p. 729. fair share, the President shall take into consideration the economic position of each such country. Such $24,000,000 shall be in addition to any other contribution to such Agency by the United States pursuant to any other provision of law.

"(e) Funds made available under this section may be obligated without regard to the provisions of subsection (b) of this section for programs contained in the presentation materials submitted to Congress for the fiscal year 1977.".

CONTINGENCY FUND

SEC. 503. Chapter 5 of part I of the Foreign Assistance Act of 1961 22 USC 2261. is amended—

(1) in the chapter heading, by striking out "DISASTER RELIEF" and inserting in lieu thereof "CONTINGENCY FUND"; and

(2) in section 451(a)— 22 USC 2261.

(A) by striking out "for the fiscal year 1975 not to exceed $5,000,000," and inserting in lieu thereof "for the fiscal year 1976 not to exceed $5,000,000 and for the fiscal year 1977 not to exceed $5,000,000";

(B) by striking out "or by section 639"; and

90 STAT. 764                  PUBLIC LAW 94–329—JUNE 30, 1976

(C) by adding at the end thereof the following new sentence: "Amounts appropriated under this section are authorized to remain available until expended.".

INTERNATIONAL NARCOTICS CONTROL

22 USC 2291a.        SEC. 504. (a) Section 482 of the Foreign Assistance Act of 1961 is amended by inserting immediately before the period at the end of the first sentence ", $40,000,000 for the fiscal year 1976, no part of which may be obligated for or on behalf of any country where illegal traffic in opiates has been a significant problem unless and until the President determines and certifies in writing to the Speaker of the House of Representatives and the chairman of the Committee on Foreign Relations of the Senate that assistance furnished to such country pursuant to the authority in this chapter is significantly reducing the amount of illegal opiates entering the international market, and not to exceed $34,000,000 for the fiscal year 1977".

22 USC 2291.        (b) Section 481 of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new subsection:

"(c)(1) Notwithstanding any other provision of law, no officer or employee of the United States may engage or participate in any direct police arrest action in any foreign country with respect to narcotics control efforts.

Study, transmittal to Speaker of the House and President of the Senate.

"(2) The President shall carry out a study with respect to methods through which United States narcotics control programs in foreign countries might be placed under the auspices of international or regional organizations. The results of such study shall be transmitted to the Speaker of the House of Representatives and the President of the Senate not later than June 30, 1977.".

AUTHORIZATION FOR INTERNATIONAL ATOMIC ENERGY AGENCY

22 USC 2222.        SEC. 505. Section 302 of the Foreign Assistance Act of 1961 is amended by adding at the end thereof the following new subsection:

"(i) In addition to amounts otherwise available under this section, there are authorized to be appropriated for fiscal year 1976 $1,000,000 and for fiscal year 1977 $2,000,000 to be available only for the International Atomic Energy Agency to be used for the purpose of strengthening safeguards and inspections relating to nuclear fissile facilities and materials. Amounts appropriated under this subsection are authorized to remain available until expended.".

INTERIM QUARTER AUTHORIZATIONS

22 USC 2162 note.        SEC. 506. (a) Any authorization of appropriations in this Act, or in any amendment to any other law made by this Act, for the fiscal year 1976, shall be deemed to include an additional authorization of appropriations for the period beginning July 1, 1976, and ending September 30, 1976, in amounts which equal one-fourth of any amount authorized for the fiscal year 1976 and in accordance with the authorities applicable to operations and activities authorized under this Act or such other law, unless appropriations for the same purpose are specifically authorized in a law hereinafter enacted.

22 USC 2751 note.
Ante, p. 734.
22 USC 2764.

(b) The aggregate total of credits, including participations in credits, extended pursuant to the Arms Export Control Act and of the principal amount of loans guaranteed pursuant to section 24(a) of such Act during the period beginning July 1, 1976, and ending Sep-

PUBLIC LAW 94–329—JUNE 30, 1976          90 STAT. 765

tember 30, 1976, may not exceed an amount equal to one-fourth of the
amount authorized by section 31(b) of such Act to be extended and    *Ante,* p. 740.
guaranteed for the fiscal year 1976.

BASE AGREEMENTS WITH SPAIN, GREECE, AND TURKEY

SEC. 507. (a) In addition to any amounts authorized to be appro-    22 USC 2151
priated by any amendment made by this Act which may be available    note.
for such purpose, there are authorized to be appropriated such sums
as may be necessary for the fiscal year 1977 to carry out international
agreements or other arrangements for the use by the Armed Forces
of the United States of military facilities in Spain, Greece, or Turkey.

(b) No funds appropriated under this section may be obligated or
expended to carry out any such agreement or other arrangement until
legislation has been enacted approving such agreement or other
arrangement.

TITLE VI—MISCELLANEOUS PROVISIONS

EXPEDITED PROCEDURE IN THE SENATE

SEC. 601. (a)(1) The provisions of subsection (b) of this section
shall apply with respect to the consideration in the Senate of any
resolution required by law to be considered in accordance with such
provisions.

(2) Any such law shall—

    (A) state whether the term "resolution" as used in subsection    "Resolution."
(b) of this section, means, for the purposes of such law—

        (i) a joint resolution; or

        (ii) a resolution of either House of Congress;

        (iii) a concurrent resolution; and

    (B) specify the certification to which such resolution shall
apply.

(b)(1) For purposes of any such law, the continuity of a session of
Congress is broken only by an adjournment of the Congress sine die,
and the days on which either House is not in session because of an
adjournment of more than three days to a day certain are excluded
in the computation of the period indicated.

(2) Paragraphs (3) and (4) of this subsection are enacted—

    (A) as an exercise of the rulemaking power of the Senate and
as such they are deemed a part of the rules of the Senate, but
applicable only with respect to the procedure to be followed in the
Senate in the case of resolutions described by subsection (a)(1)
of this section; and they supersede other rules of the Senate only
to the extent that they are inconsistent therewith; and

    (B) with full recognition of the constitutional right of the
Senate to change such rules at any time, in the same manner and
to the same extent as in the case of any other rule of the Senate.

(3)(A) If the committee of the Senate to which has been referred
a resolution relating to a certification has not reported such resolution
at the end of ten calendar days after its introduction, not counting any
day which is excluded under paragraph (1) of this subsection, it
is in order to move either to discharge the committee from further
consideration of the resolution or to discharge the committee from
further consideration of any other resolution introduced with respect
to the same certification which has been referred to the committee,

except that no motion to discharge shall be in order after the committee has reported a resolution with respect to the same certification.

(B) A motion to discharge under subparagraph (A) of this paragraph may be made only by a Senator favoring the resolution, is privileged, and debate thereon shall be limited to not more than 1 hour, to be divided equally between those favoring and those opposing the resolution, the time to be divided equally between, and controlled by, the majority leader and the minority leader or their designees. An amendment to the motion is not in order, and it is not in order to move to reconsider the vote by which the motion is agreed to or disagreed to.

(4) (A) A motion in the Senate to proceed to the consideration of a resolution shall be privileged. An amendment to the motion shall not be in order, nor shall it be in order to move to reconsider the vote by which the motion is agreed to or disagreed to.

(B) Debate in the Senate on a resolution, and all debatable motions and appeals in connection therewith, shall be limited to not more than 10 hours, to be equally divided between, and controlled by, the majority leader and the minority leader or their designees.

(C) Debate in the Senate on any debatable motion or appeal in connection with a resolution shall be limited to not more than 1 hour, to be equally divided between, and controlled by, the mover and the manager of the resolution, except that in the event the manager of the resolution is in favor of any such motion or appeal, the time in opposition thereto, shall be controlled by the minority leader or his designee. Such leaders, or either of them, may, from time under their control on the passage of a resolution, allot additional time to any Senator during the consideration of any debatable motion or appeal.

(D) A motion in the Senate to further limit debate on a resolution, debatable motion, or appeal is not debatable. No amendment to, or motion to recommit, a resolution is in order in the Senate.

### PROCUREMENTS FROM SMALL BUSINESSES

Report to
Congress.
22 USC 2352
note.

Sec. 602. In order to encourage procurements from small business concerns under chapter 4 of the Foreign Assistance Act of 1961, the Administrator of the Agency for International Development shall report to the Congress every six months on the extent to which small businesses have participated in procurements under such chapter and on what efforts the Agency has made to foster such procurements from small business concerns. The Small Business Administration shall lend all available assistance to the Agency for the purposes of carrying out this section.

### PAYMENT OF CONSULTANTS

22 USC 2386.

Sec. 603. Section 626(a) of the Foreign Assistance Act of 1961 is amended by striking out "$100 per diem" and inserting in lieu thereof "the daily equivalent of the highest rate which may be paid to an employee under the General Schedule established by section 5332 of title 5, United States Code".

### FEES OF MILITARY SALES AGENTS AND OTHER PAYMENTS

22 USC 2776.

Sec. 604. (a) Section 36 of the Foreign Military Sales Act, as amended by section 211 of this Act, is further amended as follows:

(1) In subsection (a)—
(A) strike out "and" at the end of paragraph (7);
(B) redesignate paragraph (8) as paragraph (9); and

PUBLIC LAW 94–329—JUNE 30, 1976    90 STAT. 767

(C) insert the following new paragraph immediately after paragraph (7):

"(8) a description of each payment, contribution, gift, commission, or fee reported to the Secretary of State under section 39, including (A) the name of the person who made such payment, contribution, gift, commission, or fee; (B) the name of any sales agent or other person to whom such payment, contribution, gift, commission, or fee was paid; (C) the date and amount of such payment, contribution, gift, commission, or fee; (D) a description of the sale in connection with which such payment, contribution, gift, commission, or fee was paid; and (E) the identification of any business information considered confidential by the person submitting it which is included in the report; and".

(2) In the first sentence of subsection (b), insert immediately before the period "and a description, containing the information specified in paragraph (8) of subsection (a), of any contribution, gift, commission, or fee paid or offered or agreed to be paid in order to solicit, promote, or otherwise to secure such letter of offer".

(b) Chapter 3 of the Foreign Military Sales Act, as amended by section 212 of this Act, is further amended by adding at the end thereof the following new section:

22 USC 2779.

"SEC. 39. FEES OF MILITARY SALES AGENTS AND OTHER PAYMENTS.—(a) In accordance with such regulations as he may prescribe, the Secretary of State shall require adequate and timely reporting on political contributions, gifts, commissions and fees paid, or offered or agreed to be paid, by any person in connection with—

"(1) sales of defense articles or defense services under section 22 of this Act; or

22 USC 2762.

"(2) commercial sales of defense articles or defense services licensed or approved under section 38 of this Act;

to or for the armed forces of a foreign country or international organization in order to solicit, promote, or otherwise to secure the conclusion of such sales. Such regulations shall specify the amounts and the kinds of payments, offers, and agreements to be reported, and the form and timing of reports, and shall require reports on the names of sales agents and other persons receiving such payments. The Secretary of State shall by regulation require such recordkeeping as he determines is necessary.

Recordkeeping.

"(b) The President may, by regulation, prohibit, limit, or prescribe conditions with respect to such contributions, gifts, commissions, and fees as he determines will be in furtherance of the purposes of this Act.

"(c) No such contribution, gift, commission, or fee may be included, in whole or in part, in the amount paid under any procurement contract entered into under section 22 of this Act, unless the amount thereof is reasonable, allocable to such contract, and not made to a person who has solicited, promoted, or otherwise secured such sale, or has held himself out as being able to do so, through improper influence. For the purposes of this section, 'improper influence' means influence, direct or indirect, which induces or attempts to induce consideration or action by any employee or officer of a purchasing foreign government or international organization with respect to such purchase on any basis other than such consideration of merit as are involved in comparable United States procurements.

"Improper influence."

90 STAT. 768          PUBLIC LAW 94-329—JUNE 30, 1976

"(d)(1) All information reported to the Secretary of State and all records maintained by any person pursuant to regulations prescribed under this section shall be available, upon request, to any standing committee of the Congress or any subcommittee thereof and to any agency of the United States Government authorized by law to have access to the books and records of the person required to submit reports or to maintain records under this section.

"(2) Access by an agency of the United States Government to records maintained under this section shall be on the same terms and conditions which govern the access by such agency to the books and records of the person concerned.".

Effective date.
22 USC 2776
note.

(c) The amendments made by this section shall take effect sixty days after the date of enactment of this Act.

USE OF PERSONNEL

22 USC 2751
note.
22 USC 2751
note.
*Ante,* p. 734.

SEC. 605. (a) Nothing in this Act is intended to authorize any additional military or civilian personnel for the Department of Defense for the purposes of this Act, the Foreign Assistance Act of 1961, or the Arms Export Control Act. Personnel levels authorized in statutes authorizing appropriations for military and civilian personnel of the Department of Defense shall be controlling over all military and civilian personnel of the Department of Defense assigned to carry out functions under the Arms Export Control Act and the Foreign Assistance Act of 1961.

22 USC 2791.

(b) Section 42 of the Foreign Military Sales Act, as amended by section 213 of this Act, is further amended by adding at the end thereof the following new subsection:

"(f) The President shall, to the maximum extent possible and consistent with the purposes of this Act, use civilian contract personnel in any foreign country to perform defense services sold under this Act.".

ASSISTANCE FOR PRODUCTIVE ENTERPRISES

22 USC 2370.

SEC. 606. Section 620(k) of the Foreign Assistance Act of 1961 is amended by inserting immediately before the period at the end of the first sentence ", except that this sentence does not apply with respect to assistance for construction of any productive enterprise in Egypt which is described in the presentation materials to Congress for fiscal year 1977".

EXTORTION AND ILLEGAL PAYMENTS

Report to
Congress.
22 USC 2394a.

SEC. 607. Within 60 days after receiving information which substantiates that officials of a foreign country receiving international security assistance have (1) received illegal or otherwise improper payments from a United States corporation in return for a contract to purchase defense articles or services from such corporation, or (2) extorted, or attempted to extort, money or other things of value in return for actions by officials of that country that permit a United States citizen or corporation to conduct business in that country, the President shall submit to Congress a report outlining the circumstances of such payment or extortion. The report shall contain a recommendation from the President as to whether the United States should continue a security assistance program for that country.

PUBLIC LAW 94–329—JUNE 30, 1976          90 STAT. 769

EXTENSION OF AIRPORT AT PINECREEK, MINNESOTA

SEC. 608. The consent of Congress is hereby granted for the State of Minnesota or a subdivision or instrumentality thereof to enter into an agreement with the Government of Canada, a Canadian Province, or a subdivision or instrumentality of either, providing for the extension of the Pinecreek Airport at Pinecreek, Minnesota, into the Province of Manitoba, Canada, and the operation of the airport by a joint Canadian-American airport authority. The effectiveness of such agreement shall be conditioned on its approval by the Secretary of State.

Approved June 30, 1976.

LEGISLATIVE HISTORY:

HOUSE REPORTS: No. 94–1144 (Comm. on International Relations) and No. 94–1272
          (Comm. of Conference).
SENATE REPORT No. 94–876 accompanying S. 3439 (Comm. on Foreign Relations).
CONGRESSIONAL RECORD, Vol. 122 (1976):
          May 19, June 2, considered and passed House.
          June 14, considered and passed Senate, amended, in lieu of S. 3439.
          June 22, House agreed to conference report.
          June 25, Senate agreed to conference report.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 12, No. 27:
          July 1, Presidential statement.