1

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3

4

5

6

7

8

STATE OF WASHINGTON, et al.,

    Plaintiffs,

             v.

UNITED STATES DEPARTMENT OF
STATE, et al.,

    Defendants.

No. 2:20-cv-0111-RAJ

**FEDERAL DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

9

10

11

12

13

# EXHIBIT 14

45 Fed. Reg. 43970 (Dec. 19, 1980)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Motion for Summary Judgment
Exhibits

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12002
Washington, DC 20530
202-353-0533

## DEPARTMENT OF STATE

**22 CFR Parts 121, 122, 123, 124, 125, 126, 127, 128, 129, 130**

**[SD-164]**

**Revision of the International Traffic in Arms Regulations (ITAR)**

**AGENCY:** Department of State.

**ACTION:** Proposed rules.

**SUMMARY:** The public is invited to comment on the proposed revision of the International Traffic in Arms Regulations (the ITAR). The proposed revision seeks to simplify and clarify the ITAR and to make it consistent with recent statutory enactments. It includes new provisions which are designed to improve the regulatory scheme established under the Arms Export Control Act.

**DATE:** Due to the comprehensive nature of the changes proposed by the Department of State, the proposed revision will be open for public comment until February 27, 1981. Comments must be received in writing no later than that date.

**ADDRESS:** Comments should be sent to Mr. William B. Robinson, Director, Office of Munitions Control, Department of State, 2201 C Street, NW., Washington, D.C. 20520. All comments received will be available for public inspection in the Reading Room of the Department of State.

**FOR FURTHER INFORMATION CONTACT:** Mr. Kenneth Humborg, (202) 235-9756.

**SUPPLEMENTARY INFORMATION:** The ITAR were originally developed pursuant to Section 414 of the Mutual Security Act of 1954, 68 Stat. 848. The provisions of this act were to a large extent superseded in 1976 by the Arms Export Control Act. Section 38 of the Act (22 U.S.C. 2778) continued the President's authority to control the export and import of defense articles and services. This provision also authorized the President to promulgate regulations for the import and export of such articles and services, and to provide foreign policy guidance to persons involved in the export and import of such articles and services. Executive Order 11958 of January 18, 1977, as amended (42 FR 4311, 44 FR 7939, 44 FR 56673), delegated authority to the Secretary of State, in cooperation with the Secretaries of Commerce and Defense, to regulate exports of defense articles and defense services.

As a result of the enactment of the 1976 legislation, it became clear that changes would have to be made in the ITAR. For example, the Arms Export Control Act used terminology different from that used in the predecessor legislation. Also, the 1976 legislation provided authority for new substantive provisions in the ITAR. Section 39 of the Act (22 U.S.C. 2779), for example, provided authority for provisions dealing with the fees of agents and other payments. Although amendments to the ITAR were enacted to implement the substantive changes in the law, it soon became clear that the regulations needed a substantial revision in order to conform their terminology more closely with that of the 1976 legislation and subsequent amendments. The last significant revision of the ITAR had been completed in 1969, and there was in addition a need to simplify the complex structure and language of the regulations. As a result, the Department of State undertook in 1979 to revise the ITAR. The following revision is the result of this process.

The proposed revision seeks to clarify the ITAR as much as possible. It includes several new provisions or changes which are designed to improve the regulatory program under the ITAR. Specifically, the revision includes changes to the U.S. Munitions List concerning certain articles and technical data which are now to be regulated by the Department of Commerce. An example is the deletion of certain Inertial Navigation Systems (INS) destined for specific countries. This change is due primarily to the enactment of the Export Administration Act of 1979 (Section 17(c), Pub. L. 96–72), which transferred regulatory authority for certain INS exports to the Department of Commerce.

Also included in the regulations are several new definitions of key terms and phrases (e.g., defense articles and services, manufacturing license agreements, foreign person, export). Provisions have been expressly included to authorize advisory opinions in certain instances. A new chapter on confidential business information has been added due to the need for a better understanding of the Department of State's policy on this subject and because of recent amendments to the Arms Export Control Act (22 U.S.C. 2778(e)) and the Export Administration Act (50 U.S.C. App. 2411(c)).

The revision also incorporates into the text of the ITAR those informal "MC Notes" of recent years which were designed to provide regulatory guidance on the application of the ITAR. For example, a provision has been added to make it clear that the regulation of the export of technical data does not purport to interfere with the First Amendment rights of individuals.

One of the most important provisions of the proposed ITAR is the new definition of "exports" (§ 121.34). The definition and related provisions (e.g., § 123.1) make it clear that the transfer of a defense article or technical data to a foreign person (defined in § 121.35) under circumstances in which the U.S. person knows or has reason to believe that the article or data will be removed from the U.S. constitutes an export. A license is necessary for this export. The U.S. person involved in the export must obtain the license unless the foreign person involved in the transaction obtains the license and the U.S. person endorses it before transferring (i.e., exporting) the article or data. This change was designed to improve compliance with the licensing and regulatory provisions of the ITAR.

Section 108(a) of the recently enacted International Security and Development Cooperation Act of 1980 will require a further review to determine if additional defense articles and defense services should be removed from the Munitions List. Any resulting proposals for further changes to the regulations will be published separately.

It is proposed that Subchapter M of Chapter I of Title 22, Code of Federal Regulations, be revised to read as follows:

## SUBCHAPTER M—INTERNATIONAL TRAFFIC IN ARMS

Part

121  Defense articles and defense services
122  Registration of manufacturers and exporters
123  Licenses for the export of unclassified defense articles
124  Manufacturing license agreements, technical assistance agreements, and other defense services
125  Licenses for the export of technical data and classified data and classified equipment
126  General policies and provisions
127  Violations and penalties
128  Administrative procedures
129  Confidential business information
130  Political contributions, fees, and commissions

## SUBCHAPTER M—INTERNATIONAL TRAFFIC IN ARMS[1]

## PART 121—DEFENSE ARTICLES AND DEFENSE SERVICES ENUMERATION OF ARTICLES

Sec.
121.1   The U.S. Munitions List.

---

[1] The basic statutory authority for this subchapter is Section 38 of the Arms Export Control Act (22 U.S.C. 2778). Section 38 authorizes the President to promulgate regulations for the import and export of defense articles and defense services and to

Footnotes continued on next page

**Interpretations of the U.S. Munitions List**

121.2  Interpretations of the U.S. Munitions List.
121.21  Aircraft and related articles.
121.22  Amphibious articles.
121.23  Apparatus and devices under Category IV(c).
121.24  Cartridges and shell casings.
121.25  Chemical agents.
121.26  End-items, components, accessories, attachments and parts.
121.27  Firearms.
121.28  Forgings, castings and machined bodies.
121.29  Military demolition blocks and blasting caps.
121.210  Military explosives
121.211  Military fuel thickeners.
121.212  Propellants.
121.213  Vessels of war and special naval equipment.

**Definitions**

121.3  Definitions.
121.31  Article or defense article.
121.32  Defense articles and defense services.
121.33  District director of customs.
121.34  Export.
121.35  Foreign national or foreign person.
121.36  Hearing Commissioner.
121.37  Intransit shipment.
121.38  License.
121.39  Manufacturing license agreement.
121.310  Office of Munitions Control.
121.311  Person.
121.312  Service or defense service.
121.313  Significant military equipment.
121.314  Technical assistance agreement.
121.315  Technical data.
121.316  United States.
121.317  U.S. Person.

**Authority:** Sections 38 and 39, Arms Export Control Act, 90 Stat. 744, 767 (22 U.S.C. 2778 and 2779); E.O. 11958, 42 FR 4311; 22 U.S.C. 2658.

**Enumeration of Articles**

**§ 121.1  The U.S. Munitions List.**

The following articles and technical data are designated as defense articles and defense services.

<hr>

Footnotes continued from last page establish a U.S. Munitions List. The authority of the President to promulgate such regulations with respect to exports was delegated to the Secretary of State by Executive Order 11958 (42 FR 4311), subject to the concurrence of the Secretary of Commerce or the Secretary of Defense with respect to certain specified issues. Other provisions of the Arms Export Control Act constitute the authority for some of the specific provisions of these regulations (e.g. Section 39 (22 U.S.C. 2779) is the basic authority for Part 130 of these regulations). Authority for the regulations is also derived from the Secretary of State's general statutory authority to promulgate regulations and delegate authority concerning functions vested in the Secretary of State (22 U.S.C. 2658). By virtue of delegations of authority by the Secretary of State, these regulations are primarily administered by the Director of the Office of Munitions Control of the Department of State.

**CATEGORY I—FIREARMS**

*(a) Nonautomatic, semi-automatic and fully automatic firearms to caliber .50 inclusive, and all components and parts for such firearms (see § 121.27).

(b) Riflescopes manufactured to military specifications, and specifically designed components therefor; firearm silencers and flash suppressors.

**CATEGORY II—ARTILLERY AND PROJECTORS**

*(a) Guns over caliber .50, howitzers, mortars, and recoilless rifles.

*(b) Military flamethrowers and projectors.

(c) Components and parts for the articles in paragraphs (a) and (b) of this category, including mounts and carriages for these articles.

**CATEGORY III—AMMUNITION**

*(a) Ammunition for the arms in Categories I and II of this section.

(b) Components, parts, accessories, and attachments for articles in paragraph (a) of this category, including cartridge cases, powder bags, bullets, jackets, cores, shells (excluding shotgun), projectiles, boosters, fuzes and components therefor, primers, and other detonating devices for such ammunition (see § 121.24).

(c) Ammunition belting and linking machines.

(d) Ammunition manufacturing machines and ammunition loading machines (except handloading ones).

**CATEGORY IV—LAUNCH VEHICLES, GUIDED MISSILES, BALLISTIC MISSILES, ROCKETS, TORPEDOES, BOMBS AND MINES**

*(a) rockets (except meteorological sounding rockets), bombs, grenades, torpedoes, depth charges, land and naval mines, as well as launchers for such defense articles, and demolition blocks and blasting caps (see § 121.29).

*(b) Launch vehicles, guided missiles, guided missile systems, guided missile launchers, tactical ballistic missiles, strategic ballistic missiles, and missile and anti-missile systems.

(c) Apparatus, devices, and materials for the handling, control, activation, detection, protection, discharge, or detonation of the articles in paragraphs (a) and (b) of this category (see § 121.23).

*(d) Missile and space vehicle powerplants.

*(e) Military explosive excavating devices.

*(f) Ablative materials fabricated or semi-fabricated from advanced composites (e.g., silica, graphite, carbon, and boron filaments) for the articles in this category that are derived directly from or specifically developed or modified for defense articles. This includes the tape wrapping and other techniques for their production.

*(g) Non-nuclear warheads for rockets and guided missiles.

(h) All specifically designed components, parts, accessories, attachments, and associated equipment for the articles in this category.

<hr>

*All items preceded by an asterisk are "significant military equipment" to the extent specified in § 121.313.

**CATEGORY V—EXPLOSIVES, PROPELLANTS, AND INCENDIARY AGENTS**

*(a) Military explosives (see § 121.210).

*(b) Military fuel thickeners (see § 121.211).

(c) Propellants for the articles in Categories III and IV of this section (see § 121.212).

(d) Military pyrotechnics, except pyrotechnic materials having dual military and commercial use.

**CATEGORY VI—VESSELS OF WAR AND SPECIAL NAVAL EQUIPMENT**

*(a) Warships, amphibious warfare vessels, landing craft, mine warfare vessels, patrol vessels, auxiliary vessels and service craft and experimental types of naval ships (see § 121.213).

*(b) Turrets and gun mounts, missile systems, arresting gear, special weapons systems, protective systems, submarine storage batteries, catapults and other components, parts, attachments, and accessories specifically designed for combatant vessels.

(c) Mine sweeping equipment, components, parts, attachments and accessories specifically designed therefor.

(d) Harbor entrance detection devices (magnetic, pressure, and acoustic ones) and controls and components therefor.

*(e) Naval nuclear propulsion plants, their land prototypes, and special facilities for their construction, support, and maintenance. This includes any machinery, device, component, or equipment specifically developed or designed for use in such plants or facilities. (See § 123.27.)

**CATEGORY VII—TANKS AND MILITARY VEHICLES**

*(a) Military type armed or armored vehicles, military railway trains, and vehicles designated or modified to accommodate mountings for arms or other specialized military equipment or fitted with such items.

*(b) Military tanks, combat engineer vehicles, bridge launching vehicles, half-tracks and gun carriers.

*(c) Self-propelled guns and howitzers.

(d) Military trucks, trailers, hoists, and skids specifically designed, modified, or equipped to mount or carry weapons of Categories I, II and IV or for carrying and handling the articles in paragraph (a) of Categories III and IV.

(e) Military recovery vehicles.

*(f) Amphibious vehicles (see § 121.22).

*(g) All engines specifically designed or modified for the vehicles in paragraphs (a), (b), (c), and (f) of this category.

(h) All specifically designed components and parts, accessories, attachments, and associated equipment for the articles in this category, including military bridging and deep water fording kits.

**CATEGORY VIII—AIRCRAFT, SPACECRAFT, AND ASSOCIATED EQUIPMENT**

*(a) Aircraft, including helicopters, non-expansive balloons, drones, and lighter-than-air aircraft, which are designed, modified, or equipped for military purposes. This includes but is not limited to the following military purposes: Gunnery, bombing, rocket or missile launching, electronic and other

surveillance, reconnaissance, refueling, aerial mapping, military liaison, cargo carrying or dropping, personnel dropping, airborne warning and control, and military training (see § 121.21).

*(b) Spacecraft, including manned and unmanned, active and passive satellites.

*(c) Military aircraft engines, except reciprocating engines, and spacecraft engines specifically designed or modified for the aircraft and spacecraft in paragraphs (a) and (b) of this category.

*(d) Airborne equipment (including but not limited to airborne refueling equipment) specifically designed for use with the aircraft, spacecraft, and engines of the types in paragraphs (a), (b), and (c) of this category.

(e) Launching and recovery equipment for the articles in paragraphs (a) and (b) of this category, insofar as this equipment is specifically designed for military use or for use with spacecraft.

(f) Power supplies and energy sources specifically designed for spacecraft.

(g) Components, parts, accessories, attachments, and associated equipment (including ground support equipment) specifically designed or modified for the articles in paragraphs (a) through (f) of this category.

(h) Components for developmental aircraft until or unless certificated by the Federal Aviation Administration.

*(i) Ground effect machines (GEMS) specifically designed for military use, including surface effect machines and other air cushion vehicles, and all components, parts, accessories, attachments, and associated equipment specifically designed or modified for use with such machines.

*(j) Inertial navigation systems and specifically designed components therefor which are inherently capable of yielding accuracies of better than 1 to 2 nautical miles per hour circular error of probability (c.e.p.). Such systems or components which are standard equipment in civil aircraft and which are certified by the Federal Aviation Administration as being an integral part of such aircraft are subject to export regulation by the Office Of Munitions Control only if the export is intended for a controlled country described in Section 620 (f) of the Foreign Assistance Act of 1961, as amended [1] (22 U.S.C. 2370(f)) (except Yugoslavia). All exports of technical data (regardless of destination) relating to the design, development or manufacture of inertial navigation equipment, its related parts, components, or subsystems are subject to the requirements of the regulations contained in this subchapter. The export of technical data relating to the repair of parts, components, or subsystems of inertial navigation systems (including accelerometers and gyroscopes) which are not certified by the FAA as being an integral part of civil aircraft are subject to the requirements of this subchapter.

**CATEGORY IX—MILITARY TRAINING EQUIPMENT**

(a) Military training equipment includes but is not limited to attack trainers, radar target

---

[1] The Export Administration Act of 1979 (50 U.S.C. App. 2416(c)) deals with the export of such items to noncontrolled countries.

---

trainers, radar target generators, gunnery training devices, antisubmarine warfare trainers, target equipment, armament training units, flight simulation devices, operational flight trainers, flight simulators, radar trainers, and navigation trainers.

(b) Components, parts, accessories, attachments, and associated equipment specifically designed or modified for the articles in paragraph (a) of this category.

**CATEGORY X—PROTECTIVE PERSONNEL EQUIPMENT**

(a) Body armor specifically designed, modified or equipped for military use; articles, including clothing, designed, modified or equipped to protect against or reduce detection by radar, infrared (IR) or other sensors; attachments to military helmets, including optical sights, slewing devices or mechanisms to protect against thermal flash or lasers.

(b) Partial pressure suits and liquid oxygen converters used in aircraft (enumerated in Category VIII(a)).

(c) Protective apparel and equipment specifically designed for use with the articles in paragraphs (a) through (d) in Category XIV.

(d) Components, parts, accessories, attachments, and associated equipment specifically designed for use with the articles in paragraphs (a), (b), and (c) of this category.

**CATEGORY XI—MILITARY AND SPACE ELECTRONICS**

(a) Electronic equipment not included in Category XII of the Munitions List which is assigned a military designation or is specifically designed, modified or configured for military application. This includes but is not limited to the following items:

*(1) Underwater sound equipment, including towed arrays, electronic beam formed sonar, target classification equipment, and spectrographic displays; search, acquisition, tracking, moving target indication and imaging radar systems; active and passive countermeasures, counter-countermeasures; electronic fuses; identification systems; command, control and communications systems; and, regardless of designation, any experimental or developmental electronic equipment specifically designed or modified for military application, or for use with a military system.

(2) Sonic depth finders; underwater telephones; electromechanical beam forming sonars and elementary sonobuoys (except depth finders which are used on pleasure boats and for commercial and sport fishing purposes and which do not meet military specifications); radios; weather, navigation, and air traffic control radar systems; navigation guidance, object-locating methods and means; displays; telemetering equipment; and armored coaxial cable suitable for both signal and power transmission at high voltages and suitable for use in deep sea water.

(b) Space electronics: *(1) Electronic equipment specifically designed or modified for spacecraft and spaceflight.

(2) Electronic equipment specifically designed or modified for use with communications satellites.

*(c) Electronic systems or equipment specifically designed for surveillance and monitoring of the electromagnetic spectrum for intelligence or security purposes and electronic systems or equipment designed to counteract such surveillance and monitoring.

(d) Components, parts, accessories, attachments, and associated equipment specifically designed for use or currently used with the equipment in paragraphs (a) through (c) of this category.

**CATEGORY XII—FIRE CONTROL, RANGE FINDER, OPTICAL AND GUIDANCE AND CONTROL EQUIPMENT**

*(a) Fire control systems; gun and missile tracking and guidance systems; military infrared, image intensifier and other night sighting and night viewing equipment designed for poor visibility conditions; masers and military lasers; gun laying equipment; range, position and height finders and spotting instruments; aiming devices (electronic, gyroscopic, optic, and acoustic); bomb sights, bombing computers, military television sighting and viewing units, inertial platforms, and periscopes for the articles of this section.

(b) Inertial and other weapons or space vehicle guidance and control systems; spacecraft guidance, control and stabilization systems; astro compasses; and star trackers.

(c) Components, parts, accessories, attachments, and associated equipment specifically designed or modified for the articles in paragraphs (a) and (b) of this category.

**CATEGORY XIII—AUXILIARY MILITARY EQUIPMENT**

(a) Aerial cameras, space cameras, special purpose military cameras, and specialized processing equipment therefor; military photointerpretation, stereoscopic plotting, and photogrammetry equipment, and components specifically designed therefor.

(b) Speech scramblers, privacy devices, cryptographic devices (encoding and decoding), and components specifically designed therefor, ancillary equipment, and especially devised protective apparatus for such devices, components, and equipment.

(c) Self-contained diving and underwater breathing apparatus designed for a military purpose and components specifically designed therefor.

(d) Structural materials (including plate, rolled and extended shapes, bars and forgings, castings, welding consumables and metal matrix composites) developed specifically to enhance the military effectiveness of ships, aircraft, spacecraft, vehicles and associated equipment.

(e) Concealment and deception equipment, including but not limited to special paints, decoys, and simulators; and components, parts and accessories specifically designed therefor.

(f) Energy conversion devices for producing electrical energy from nuclear, thermal, or solar energy, or from chemical reaction which are specifically designed or modified for military application.

(g) Chemiluminescent compounds and solid state devices specifically designed or modified for military application.

CATEGORY XIV—TOXICOLOGICAL AGENTS AND EQUIPMENT AND RADIOLOGICAL EQUIPMENT

*(a) Chemical agents, including lung irritants, vesicants, lachrymators, tear gases, (except tear gas formulations containing 1% or less CN or CS), sternutators and irritant smoke, and nerve gases and incapacitating agents (see § 121.25).

*(b) Biological agents adapted for use in war to produce death or disablement in human beings or animals, or to damage vegetation.

*(c) Equipment for dissemination, detection, and identification of, and defense against, the articles in paragraphs (a) and (b) of this category.

*(d) Nuclear radiation detection and measuring devices, manufactured to military specification.

*(e) Components, parts, accessories, attachments, and associated equipment specifically designed or modified for the articles in paragraphs (c) and (d) of this category.

CATEGORY XV—[RESERVED]

CATEGORY XVI—NUCLEAR WEAPONS DESIGN AND TEST EQUIPMENT [2]

*(a) Any article, material, equipment, or device which is specifically designed or specifically modified for use in the design, development, or fabrication of nuclear weapons or nuclear explosive devices.

*(b) Any article, material, equipment, or device which is specifically designed or specifically modified for use in the devising, carrying out, or evaluating of nuclear weapons tests or any other nuclear explosions, except such items as are in normal commercial use for other purposes.

CATEGORY XVII—CLASSIFIED ARTICLES

*All articles, including technical data related thereto, not enumerated herein containing information which is classified as requiring protection in the interests of national security.

CATEGORY XVIII—TECHNICAL DATA

Technical Data relating to the articles designated in this subchapter as defense articles and defense services.

CATEGORY XIX—[RESERVED]

CATEGORY XX—SUBMERSIBLE VESSELS, OCEANOGRAPHIC AND ASSOCIATED EQUIPMENT

*(a) Submersible vessels, manned and unmanned, designed for military purposes or having independent capability to maneuver vertically or horizontally at depths below 1,000 feet or powered by nuclear propulsion plants.

*(b) Submersible vessels, manned or unmanned, designed in whole or in part from technology developed by or for the U.S. Armed Forces.

(c) Any of the articles in Categories VI, IX, XI, XIII, and elsewhere in § 121.1 of this subchapter that may be used with submersible vessels and oceanographic or associated equipment assigned a military designation.

*See § 123.27. See also Department of Commerce Export Regulations, 15 CFR Part 378.

(d) Equipment, components, parts, accessories, and attachments designed specifically for any of the articles in paragraphs (a) and (b) of this category.

(e) Articles and technical data for submarine nuclear propulsion plants which upon review are determined to have significant naval nuclear propulsion applicability will be considered as nuclear propulsion articles and data for the purposes of these regulations. See § 123.27.

CATEGORY XXI—[RESERVED]

CATEGORY XXII—MISCELLANEOUS ARTICLES

Any defense article and technical data relating thereto not enumerated in this subchapter which has substantial military applicability, as determined by the Director, Office of Munitions Control with the concurrence of the Department of Defense.

Interpretations of the U.S. Munitions List

§ 121.2  Interpretations of the U.S. Munitions List.

The interpretations contained in this part explain and amplify the terms used in § 121.1. These interpretations have the same force as if they were a part of the U.S. Munitions List category to which they refer. The Office of Munitions Control will provide, upon request, additional interpretative guidance to any person who needs to know whether a particular item is included on the U.S. Munitions List.

§ 121.21  Aircraft and related articles.

In Category VIII, "aircraft" means aircraft designed, modified, or equipped for a military purpose, including aircraft described as "demilitarized." All aircraft bearing an original military designation are included in Category VIII. However, the following aircraft are not so included so long as they have not been specifically equipped, reequipped, or modified for military operations:

(a) Cargo aircraft bearing "C" designations and numbered C–45 through C–118 inclusive, and C–121.

(b) Trainer aircraft bearing "T" designations and using reciprocating engines only.

(c) Utility aircraft bearing "U" designations and using reciprocating engines only.

(d) All liaison aircraft bearing an "L" designation.

(e) All observation aircraft bearing "O" designations and using reciprocating engines.

§ 121.22  Amphibious vehicles.

An "amphibious vehicle" in Category VII(f) is an automotive vehicle or chassis embodying all-wheel drive which is equipped to meet special military requirements and which has sealed electrical systems and adaptation features for deep water fording.

§ 121.23  Apparatus and devices under Category IV(c).

Category IV includes the following: Fuzes and components for the items listed in that category, bomb racks and shackles, bomb shackle release units, bomb ejectors, torpedo tubes, torpedo and guided missile boosters, guidance system materials (except those having a commercial application), launching racks and projectors, pistols (exploders), igniters, fuze arming devices, intervalometers, and components therefor, guided missile launchers and specialized handling equipment, and hardened missile launching facilities.

§ 121.24  Cartridge and shell casings.

Cartridge and shell casings are included in Category III unless, prior to export, they have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting, or popping.

§ 121.25  Chemical agents.

A chemical agent in Category XIV(a) is a substance having military application which by its ordinary and direct chemical action produces a powerful physiological effect. The term "chemical agent" includes but is not limited to the following chemical compounds:

(a) Lung irritants:
(1) Diphenylcyanoarsine (DC).
(2) Fluorine (but not fluorene).
(3) Trichloronitro methane (chloropicrin PS).

(b) Vesicants:
(1) B Chlorvinyldichlorarsine (Lewisite, L).
(2) Bisdichlorethyl sulphide (Mustard gas, HD or H).
(3) Ethyldichloroarsine (ED).
(4) Methyldichloroarsine (MD).

(c) Lachrymators and tear gases:
(1) Brombenzlcyanide (BBC).
(2) Chloroacetophenone (CN).
(3) Dibromodimethyl ether.
(4) Dichlorodimethyl ether (ClCi).
(5) Ethyldibromoarsine.
(6) Phenylcarbylamine chloride.
(7) Tear gas solutions (CNB and CNS).
(8) Tear gas orthochlorobenzalmalononitrile (CS).

(d) Sternutators and irritant smokes:
(1) Diphenylaminechlorarsine (Adamsite, DM).
(2) Diphenylchlorarsine (BA).
(3) Liquid pepper.

(e) Nerve gases. These are toxic componds which affect the nervous system, such as:
(1) Dimethylaminoethoxycyanophosphine oxide (GA).
(2) Methylisopropoxyfluorophosphine oxide (GB).

(3) Methylpinacolyloxyfluorophosphine oxide (GD).

(f) Antiplant chemicals, such as: Butyl 2-chloro-4-fluorophenoxyacetate (LNF).

### § 121.26 End-items, components, accessories, attachments and parts.

(a) An end-item is an assembled article ready for its intended use. Only ammunition, fuel or an other energy source is required to place it in an operating state.

(b) A component is an item which is useful only when used in conjunction with an end-item. A major component includes any assembled element which forms a portion of an end-item without which the end-item is inoperable. (Examples: Airframes, tail sections, transmissions, tank treads, hulls, etc.). A minor component includes any assembled element of a major component.

(c) Accessories and attachments are elements of any component, system, or product which are not necessary for the operation of an end-item, but which enhance the usefulness or effectiveness of the end-item. (Examples: Riflescopes, special paints, etc.)

(d) A part is any single unassembled element of a major or a minor component, accessory, or attachment which is not normally subject to disassembly without the destruction or the impairment of design use. (Examples: Rivets, wire, bolts, etc.)

(e) The software, firmware, and any related unique support tools (such as computers, linkers, editors, test case generators, diagnostic checkers, library of functions and system test diagnostics) for equipment or systems covered under any category are considered as a part of the end-product or component. Software includes the system functional design, logic flow, algorithms, application programs, operating systems and support software for design, implementation, test, operation, diagnosis and repair.

### § 121.27 Firearms.

(a) Category I(a) includes revolvers, pistols, rifles, carbines, fully automatic rifles, submachine guns, machine pistols and machine guns to caliber .50, inclusive. It excludes shotguns and muzzle loading (black powder) firearms.

(b) A "firearm" is a weapon not over .50 caliber which is designed to expel a projectile by the action of an explosive or which may be readily converted to do so.

(c) A "rifle" is a shoulder firearm which can discharge a bullet through a rifled barrel at least 16 inches in length.

(d) A "carbine" is a lightweight shoulder firearm with a barrel under 16 inches in length.

(e) A "pistol" is a hand-operated firearm having a chamber integral with or permanently aligned with the bore.

(f) A "revolver" is a hand-operated firearm with a revolving cylinder containing chambers for individual cartridges.

(g) A "submachine gun", "machine pistol" or "machine gun" is a firearm originally designed to fire, or capable of being fired, fully automatically by a single pull of the trigger.

### § 121.28 Forgings, castings and machined bodies.

Articles on the U.S. Munitions List include articles in a partially completed state (such as forgings, castings, extrusions, and machined bodies) which have reached a stage in manufacture where they are clearly identifiable as defense articles.

### § 121.29 Military demolition blocks and blasting caps.

Military demolition blocks and blasting caps referred to in Category IV do not include the following articles:

(a) Electric squibs.

(b) No. 6 and No. 8 blasting caps, including electric ones.

(c) Delay electric blasting caps (including No. 6 and No. 8 millisecond ones).

(d) Seismograph electric blasting caps (including SSS, Static-Master, Vibrocap SR, and SEISMO SR).

(e) Oil well perforating devices.

### § 121.210 Military explosives.

Military explosives in Category V include, but are not limited to, the following:

(a) Ammonium picrate.

(b) Black powder made with potassium nitrate or sodium nitrate.

(c) Cyclotetramethylene-tetranitramine (HMX).

(d) Cyclotetramethylene-trinitramine (RDX, Cyclonite, Hexogen or T4).

(e) Dinitronaphthalene.

(f) Ethylenedinitramine.

(g) Hexanitrodiphenylamine.

(h) Nitroglycerin.

(i) Nitrostarch.

(j) Pentaerythritol tetranitrate (penthrite, pentrite or PETN).

(k) Tetranitronaphthalene.

(l) Trinitroanisol.

(m) Trinitronaphthalene.

(n) Trinitrophenol (picric acid).

(o) Trinitrophenylmethylnitramine (Tetryl).

(p) Trinitrotoluene (TNT).

(q) Trinitroxylene.

(r) Ammonium perchlorate nitrocellulose (military grade).

(s) Any combinations of the above.

### § 121.211 Military fuel thickeners.

Military fuel thickeners in Category V include compounds (e.g., octal) or mixtures of such compounds (e.g., napalm) specifically formulated for the purpose of producing materials which, when added to petroleum products, provide a gel-type incendiary material for use in bombs, projectiles, flame throwers, or other implements of war.

### § 121.212 Propellants.

Propellants in Category V include, but are not limited to the following:

(a) Propellant powders, including smokeless shotgun powder.

(b) Hydrazine (including Monomethyl hydrazine and symmetrical dimethyl hydrazine but excluding hydrazine hydrate).

(c) Unsymmetrical dimethyl hydrazine.

(d) Hydrogen peroxide of over 85 percent concentration.

(e) Nitroguanadine or picrite.

(f) Nitrocellulose with nitrogen content of over 12.20 percent.

(g) Nitrogen tetroxide.

(h) Other solid propellant compositions, including but not limited to the following:

(1) Single base (nitrocellulose).

(2) Double base (nitrocellulose, nitroglycerin).

(3) Triple base (nitrocellulose, nitroglycerin, nitroguanidine).

(4) Composite of nitroglycerin, ammonium perchlorate, potassium perchlorate, nitronium perchlorate, guanidine (quanidinium) perchlorate, nitrogen tetroxide, ammonium nitrate or nitrocellulose with plastics, metal fuels, or rubbers added; and compounds composed only of fluorine and halogens, oxygen, or nitrogen.

(5) Special purpose high energy solid military fuels with a chemical base.

(i) Other liquid propellant compositions, including but no limited to, the following:

(1) Monopropellants (hydrazine, hydrazine nitrate, and water).

(2) Bipropellants (hydrazine, fuming nitric acid HNO3).

(3) Special purpose chemical base high energy liquid military fuels and oxidizers.

### § 121.213 Vessels of war and special naval equipment.

Vessels of war in Category VI include, but are not limited to, the following:

(a) Combatant vessels:

(1) Warships (including nuclear-powered versions):

(i) Aircraft carriers (CV, CVN)

(ii) Battleships (BB)

(iii) Cruisers (CA, CG, CGN)
(iv) Destroyers (DD, DDG)
(v) Frigates (FF, FFG)
(vi) Submarines (SS, SSN SSBN, SSG, SSAG)
(2) Other Combatant Classifications:
(i) Patrol Combatants (PG, PHM)
(ii) Amphibious Helicopter/Landing Craft Carriers (LHA, LPD, LPH)
(iii) Amphibious Landing Craft Carriers (LKA, LPA, LSD, LST)
(iv) Amphibious Command Ship (LCC)
(v) Mine Warfare Ships (MSO)
(b) Auxiliaries:
(1) Mobile Logistics Support:
(i) Under way Replishment (AD, AF, AFS, AO, AOE, AOR)
(ii) Material Support (AD, AR, AS)
(2) Support Ships:
(i) Fleet Support (ARS, ASR, ATA, ATF, ATS)
(ii) Other Auxiliaries (AG, AGDS, AGF, AGM, AGOR, AGOS, AGS, AH, AK, AKR, AOG, AOT, AP, APB, ARC, ARL, AVM, AVT)
(c) Combatant Craft:
(1) Patrol Craft:
(i) Coastal Patrol Combatants (PB, PCF, PCH, PTF)
(ii) River, Roadstead Craft (ATC, PBR)
(2) Amphibious Warfare Craft:
(i) Landing Craft (AALC, LCAC, LCM, LCPL, LCPR, LCU, LWT, SLWT)
(ii) Special Warfare Craft (LSSC, MSSC, SDV, SWCL, SWCM)
(3) Mine Warfare Craft:
(i) Mine Counter measures craft (MSB, MSD, MSI, MSM, MSR)
(d) Support and Service Craft:
(i) Tugs (YTB, YTL, YTM)
(ii) Tankers (YO, YOG, YW)
(iii) Lighters (YC, YCF, YCV, YF, YFN, YFNB, YFNX, YFR, YFRN, YFU, YG,YGN, YOGN, YON, YOS, YSR, YWN)
(iv) Miscellaneous (APL, DSRV, DSV, IX, NR, YAG, YD, YDT, YFB, YFND, YEP, YFRT, YHLC, YM, YNG, YP, YPD, YR, YRB, YRBM, YRDH, YRDM, YRR, YRST, YSD)
(e) Coast Guard Patrol and Service Vessels and Craft:
(i) Coast Guard cutter (CGC, WHEC, WMEC)
(ii) Patrol Craft (WPB)
(iii) Icebreaker (WAGB)
(iv) Oceanography vessel (WAGO)
(v) Special vessel (WIX)
(vi) Buoy tenders (WLB, WLM, WLI, WLR, WLIC)
(vii) Tugs (WYTM, WYTL)
(viii) Light ship (WLV)

## Definitions

### § 121.3  Definitions.

The definitions contained in this part apply to the use throughout this subchapter of the defined terms unless a different meaning is specified. See also § 130.1 for definitions applicable to Part 130.

### § 121.31  Article or defense article.

"Article" or "defense article" means an item in § 121.1, including any item which does not itself have direct military application but which transmits technical data relating to an article (e.g., models and mockups, with or without moving parts).

### § 121.32  Defense articles and defense services.

"Defense articles and defense services" means technical assistance, articles, services and technical data relating to articles and services.

### § 121.33  District director of customs.

"District director of customs" means the district directors of customs at customs headquarters ports (other than the port of New York City, New York); the regional commissioners of customs, the deputy and assistant regional commissioners of customs for customs region II at the port of New York, New York; and port directors at customs ports not designated as headquarters ports.

### § 121.34  Export.

(a) Export of defense articles and defenses services (including technical data) means:
(1) Sending, transmitting or taking defense articles and defense services out of the United States in any manner;
(2) Transferring them to a foreign national in the United States in circumstances in which the transferor knows or has reason to know that the transferred article or technical data will be sent, transmitted or taken out of the United States in any manner, or
(3) Transfer to a foreign person of title, registration, or control of:
(i) an aircraft or vessel of war, wherever located, or
(ii) A satellite launched into space from the United States.
(b) The disclosure to a foreign national of technical data relating to significant military equipment, whether in the United States or abroad, constitutes an export. The disclosure of technical data to a foreign national abroad constitutes an export. Disclosure of a technical data to a foreign national in the United States constitutes an export when the transferor knows or has reason to know that the disclosed technical data will be disclosed outside the United States. Travel abroad by a United States national or permanent resident whose personal knowledge includes technical data does not constitute an export.

### § 121.35  Foreign national or foreign person.

"Foreign national" or "foreign person" means a person (§ 121.311) who is not a citizen or national of the United States and who is not a permanent resident in the United States. This includes a foreign corporation, international organization, foreign government, and any agency or subdivision of a foreign government.

### § 121.36  Hearing Commissioner.

"Hearing Commissioner" means the Hearing Commissioner, Bureau of Trade Regulation, U.S. Department of Commerce. (See 15 CFR 388.2.)

### § 121.37  Intransit shipment.

"Intransit shipment" means a temporary import into the United States of an article which is to be reexported within twelve months, including its return to the foreign country from which it was imported.

### § 121.38  License.

"License" means a document bearing the word "license" which, when issued by the Director, Office of Munitions Control, or his authorized designee, permits the export or untransit shipment of a specified defense article or defense service (including technical data). (See §§123.1 and 125.2.)

### § 121.39  Manufacturing license agreement.

An agreement whereby a U.S. person grants a foreign person a legal right or license to manufacture defense articles abroad and which involves or contemplates (a) the export of defense articles or defense services (including technical data) or (b) the utilization of previously exported defense articles or defense services (including technical data).

### § 121.310  Office of Munitions Control.

"Office of Munitions Control" means the Office of Munitions Control, Bureau of Politico-Military Affairs, Department of State, Washington, D.C. 20520.

### § 121.311  Person.

"Person" means a natural person as well as a corporation, business association, society, group, or governmental entity. If a provision in this subchapter does not refer exclusively to a foreign person (§ 121.35) or U.S. person (§ 121.317), it refers to both.

### § 121.312  Service or defense service.

"Service" or "defense service" means any test, inspection, repair, maintenance, over haul, programming, modification or other action to alter,

improve or maintain the operation, reliability or characteristics of an article. It includes the furnishing of any technical data (see 121.315).

### § 121.313   Significant military equipment.

(a) "Significant military equipment" means articles, as identified in paragraph (b) of this section, for which special export controls are warranted because of their capacity for substantial utility in the conduct of military operations.

(b) Articles designated as significant military equipment under the criterion specified in paragraph (a) of this section include the articles (not including technical data) enumerated in § 121.1 in Categories I (a) (in quantity); II (a) and (b); III (a) (excluding ammunition for firearms in Category (I)); IV (a), (b), (d), (e), (f) and (g); V (a) (in quantity) and (b); VI (a) (limited to combatant vessels as interpreted in § 121.21(a)), (b) (inclusive only of turrets and gun mounts, missile systems, and special weapons systems) and (e); VII (a), (b), (c), (f), and (g); VIII (a), (b), (c), (d), GEMS as defined in (i), and inertial systems as defined in (j); XI (a)(1), (b)(1), (c); XII (a); XIV (a), (b), (c) and (d); XVI; XVII; and XX (a) and (b).

(c) Items in section 121.1 which are preceded by an asterisk are "significant military equipment."

### § 121.314   Technical assistance agreement.

An agreement involving the performance of defense services or the disclosure of technical data, as opposed to the granting of a right or license to manufacture defense articles.

### § 121.315   Technical data.

"Technical data" means:
(a) Unclassified information not in the public domain relating directly to:
(1) The design, production, manufacture, processing, engineering, development, operation, or reconstruction of an article; or
(2) Training in the operation, use, overhaul, repair or maintenance of an article; or
(3) The performance of a defense service (see § 121.32);
(b) Classified information relating to defense articles or defense services; and
(c) Information covered by a patent secrecy order.

### § 121.316   United States.

"United States", when used in the geographical sense, includes the several States, the Commonwealth of Puerto Rico, the insular possessions of the United States, the District of Columbia, and any territory over which the United States exercises any powers of administration, legislation, and jurisdiction.

### § 121.317   U.S. Person.

"U.S. Person" means a person (§ 121.311) who is a citizen, national, or permanent resident of the United States.

## PART 122—REGISTRATION OF MANUFACTURERS AND EXPORTERS

Sec.
122.1   Registration requirements.
122.2   Application for registration.
122.3   Refund of fee.
122.4   Notification of changes in information furnished by registrants.
122.5   Maintenance of records by registrants.
122.6   Submission of application.

Authority: Section 38, Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); E.O. 11958, 42 FR 4311; 22 U.S.C. 2658.

### § 122.1   Registration requirements.

(a) Any person who engages in the United States in the business of either manufacturing or exporting defense articles or defense services is required to register with the Office of Munitions Control. A manufacturer of defense articles or services who does not engage in exporting must nevertheless register as a manufacturer.

(b) The fabrication of articles for experimental or scientific purposes, including research and development, is not considered as manufacture for purposes of this part.

(c) Registration is not required of a person whose pertinent business activity is confined to the production only of unclassified technical data. It is not required of persons all of whose manufacturing and export activities are licensed under the Atomic Energy Act of 1954, as amended.

### § 122.2   Application for registration.

(a) A person who is required to register may do so for periods of from 1 to 5 years upon submission of a completed Form DSP–9, and payment of a fee as follows:

| | |
|---|---|
| 1 year | $125 |
| 2 years | 250 |
| 3 years | 350 |
| 4 years | 425 |
| 5 years | 500 |

(b) A registrant who fails to renew a registration after its lapse and, after an intervening period, seeks to register again must pay registration fees for any part of such intervening period during which the registrant engaged in the business of manufacturing or exporting defense articles or defense services.

### § 122.3   Refund of fee.

Fees paid in advance for whole future years of a multiple year registration will be refunded upon request if the registrant ceases to engage in the manufacture or export of defense articles and defense services. A request for a refund must be submitted to the Office of Munitions Control prior to the beginning of any year for which a refund is claimed.

### § 122.4   Notification of changes in information furnished by registrants.

A registered person must notify the Department of State of material changes in the information contained in the registration. Examples of material changes include the establishment of a foreign affiliate or subsidiary, a merger, a change of location, or dealing with an additional category of defense articles or defense services.

### § 122.5   Maintenance of records by registrants.

(a) A person who is required to register must maintain records on defense articles, including records concerning the manufacture, acquisition and disposition of such articles by the registrant during each year. They will be maintained for a period of 6 years dating from the year for which registration was required. The Director, Office of Munitions Control, may prescribe a longer or shorter period in individual cases.

(b) Records maintained under this section shall be available at all times for inspection and copying by the Director, Office of Munitions Control or his designee.

### § 122.6   Submission of application.

Department of State Form DSP–9, Registration Statement, must be submitted to the Cashier, ESC/C, Department of State, Washington, D.C. 20520, together with payment by check or money order payable to the Department of State of one of the fees prescribed in § 122.2(a). The Office of Munitions Control will return to the sender any registration statement which is incomplete or which is not accompanied by payment of a proper registration fee.

## PART 123—LICENSES FOR THE EXPORT OF UNCLASSIFIED DEFENSE ARTICLES

Sec.
123.1   Export licenses.
123.2   Imports.
123.3   Intransit license
123.4   Temporary export license.
123.5   License denial, revocation, suspension or amendment.
123.6   Foreign trade zones and U.S. Customs bonded warehouses.
123.7   Export to warehouse or distribution points outside the United States.

123.8   Export of vessels of war, military aircraft and satellites.
123.9   [Reserved].
123.10   Country of ultimate destination.
123.11   Movements of vessels outside U.S. territorial jurisdiction.
123.12   Canadian shipments
123.13   Shipments between U.S. possessions.
123.14   Domestic aircraft shipments via foreign ports.
123.15   Import certificate/delivery verification procedure.
123.16   Approval of a proposal to sell significant military equipment.

Exemptions

123.20   Obsolete non-automatic firearms.
123.21   Firearms and ammunition for personal use.
123.22   Firearms for personal use of members of the U.S. Armed Forces and civilian employees of the U.S. Government.
123.23   Minor components.
123.24   Border shipments.
123.25   [Reserved].
123.26   [Reserved].
123.27   Nuclear materials.
123.28   Transfers to foreign nationals within the United States.

Procedures

123.30   Applications for licenses.
123.31   Renewal and disposition of licenses.
123.32   Port of exit or entry.
123.33   filing of export and intransit licenses, and shipper's export declarations, with district directors of customs.
123.34   Shipments by mail.
123.35   Temporary exports.
123.36   Domestic aircraft shipments via a foreign country.
123.37   Advisory opinions.

Authority: Section 38, Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); E.O. 11958, 42 FR 4311; 22 U.S.C. 2658.

Note.—Provisions for the export of classified defense articles and defense services are contained in Part 125 of this subchapter.

### § 123.1   Export licenses.

(a) The exporter must obtain a license issued by the Office of Munitions Control prior to the export of a defense article, except when the export qualifies for an exemption under the provisions of this subchapter. A person who intends to export defense articles (see § 121.34) must obtain a license or assure that a license has been obtained prior to the export. For example, a person who intends to sell defense articles to a foreign national under circumstances in which he knows or has reason to know that the article will be taken out of the United States (see § 121.34) must obtain a license or have the license presented to him (for example, by the foreign purchaser) and must certify or acknowledge on the face of the license that it has been presented prior to the export. As a condition precedent to the issuance of an export license, the Office of Munitions Control may require all pertinent documentary information regarding the proposed transaction.

(b) An application for an export license under this part must be accompanied by a copy of the relevant DD Form 1513 in cases involving the U.S. Foreign Military Sales Program, or a copy of a firm order or letter of intent in all other cases.

### § 123.2   Imports.

No defense article may be imported into the United States unless (a) it was previously exported temporarily under a license issued by the Office of Munitions Control; (b) it constitutes an intransit shipment (see § 123.3); or (c) its import is authorized by the Secretary of the Treasury (See 27 CFR Parts 178 to 181).

### § 123.3   Intransit license.

A Temporary Import license (DSP–61) issued by the Office of Munitions Control is required for the intransit shipment of any unclassified defense article. This requirement applies, in particular, to any temporary import of a defense article of a foreign person for overhaul, repair or modification, and the subsequent direct return to the country from which it was imported. The Office of Munitions Control may require an appropriate bond. The Temporary Import license must also be used for other temporary imports. (See also §§ 123.24, 125.3(b), 125.21).

### § 123.4   Temporary export license.

A license for the temporary export of unclassified defense articles (DSP–73) may be issued by the Office of Munitions Control in lieu of export and import licenses when the article is to be exported for a period of less than twelve months and is to be returned to the United States.

### § 123.5   License denial, revocation, suspension or amendment.

(a) A license may be denied, revoked, suspended, or amended without prior notice whenever the Department of State believes that such action is advisable in furtherance of (1) world peace; (2) the security of the United States; (3) the foreign policy of the United States; or (4) whenever the Department of State believes that 22 U.S.C. § 2778 or § 2779 or any regulation contained in this subchapter has been violated; or (5) whenever the applicant or licensee has been debarred under § 127.7 or suspended under § 127.8; or (6) whenever an order of debarment or suspension has been made applicable to the applicant or licensee under § 127.9; or (7) whenever a person who has been debarred or suspended has a significant interest in the transaction.

(b) whenever a license application is denied or an outstanding license is revoked, suspended, or amended, the Office of Munitions Control will inform the applicant or licensee of the action taken and the reasons for that action.

(c) The applicant or licensee may request reconsideration of a denial and may submit additional information in support of the request. A request for reconsideration must be submitted in writing to the Office of Munitions Control within 30 days after the applicant or licensee has been informed of the adverse decision.

### § 123.6   Foreign trade zones and U.S. Customs bonded warehouses.

An export license is not required for shipments between the United States and a foreign trade zone or a U.S. Customs bonded warehouse. An export license is required for all shipments of defense articles from a foreign trade zone or a U.S. Customs bonded warehouse to foreign countries, regardless of how the articles reached the zone or warehouse.

### § 123.7   Export to warehouse or distribution points outside the United States.

A license to export defense articles to a warehouse or distribution point outside the United States for subsequent resale normally will contain conditions for special distribution controls and reporting.

### § 123.8   Export of vessels of war, military aircraft and satellites.

(a) The transfer of a privately owned vessel of war or a privately-owned military aircraft from the United States to a foreign registry requires a license from the Department of State. This requirement applies irrespective of whether the vessel or aircraft is physically located in the United States or abroad.

(b) The transfer of title of a satellite launched into space from within the United States requires a license from the Department of State.

(c) The registration in a foreign country of a privately-owned vessel of war or a privately-owned military aircraft which is not registered in the United States but which is located in the United States constitutes an export. A license from the Department of State is therefore required. (Such transactions may also require the prior approval of the Maritime Administration, Department of Commerce, or the Federal Aviation Administration, Department of Transportation.)

## § 123.9 [Reserved].

## § 123.10 Country of ultimate destination.

(a) The country designated as the country of ultimate destination on the application for an export license must be the country of ultimate end-use. The licensee must obtain the written approval of the Department of State before reselling, diverting, transferring, transshipping, or disposing of a defense article in any country other than the country of ultimate destination as stated in the export license, or in the shipper's export declaration (in the case of a country for which no export license is required under this subchapter).

(b) An application for a license to export unclassified significant military equipment (Form DSP-5) must be submitted to the Office of Munitions Control accompanied by a "Nontransfer and Use Certificate" (Form DSP-83). This form is to be executed by the foreign consignee and foreign end-user. (The export of classified military equipment also requires the submission of Form DSP-83. See § 125.21 of this subchapter). The certificate stipulates that, except as specifically authorized by prior written approval of the Department of State, the foreign consignee and foreign end-user will not reexport, resell or otherwise dispose of the significant military equipment enumerated in the application outside the country named as the location of the foreign end-user. The Office of Munitions Control may also require a Nontransfer and Use Certificate for the export of any other defense articles or defense services.

(c) When a Nontransfer and Use Certificate is required in an application for an export license, and when both the foreign consignee and the foreign end-user are non-governmental entities, the Office of Munitions Control may require that the appropriate authority of the government of the country of ultimate destination also execute the certificate. The certificate stipulates that the foreign government undertakes not to authorize the reexport, resale, or other disposition of the defense articles enumerated in the application without obtaining the prior written consent of the U.S. Government.

## § 123.11 Movements of vessels outside U.S. territorial jurisdiction.

(a) A licnese issued by the Office of Munitions Control is required whenever a vessel of war which is not a public vessel of the United States or of a foreign government makes a voyage outside the United States.

(b) An export license is not required when such a vessel of war departs from the United States without entering the

territorial waters of a foreign country if no defense articles are carried as cargo. Such a vessel may not enter the territorial waters of a foreign country before returning to the United States or carry as cargo any defense article without a License for Temporary Export (Form DSP–73) from the Department of State. (See §§ 123.4 and 123.35.)

## § 123.12 Canadian shipments.

(a) District directors of customs and postmasters may permit the export without a license of any unclassified defense article, including technical data (as defined in § 121.315) for export directly to Canada for end-use in Canada, with the following exceptions:

(1) Full automatic firearms in Category I(a) which are not for end-use by the Federal Government, or a Municipal or a Provincial Government of Canada;

(2) Nuclear weapons strategic delivery systems and all specifically designed components, parts, accessories, attachments, and associated equipment therefor;

(3) Nuclear weapon design and test equipment defined in Category XVI;

(4) Naval nuclear propulsion equipment defined in Category VI(e);

(5) Aircraft defined in Category VIII(a);

(6) Submersible and oceanographic vessels and related articles defined in Category XX (a) through (e).

(7) Technical data which can only be exported pursuant to an approved manufacturing license agreement or technical assistance agreement if an applicable agreement has not been approved by the Department of State (see § 125.25(4)).

(b) The foregoing exemption from obtaining an export license for certain defense articles or technical data destined for Canada does not exempt a shipper from filing the Shipper's Export Declaration required by § 123.33 or from complying with the requirements of § 123.10.

(c) The requirements of Part 124 of this subchapter must be complied with in the situations contemplated in that part.

## § 123.13 Shipments between U.S. possessions.

An export license is not required for the shipment of a defense article between the United States, the Commonwealth of Puerto Rico, and U.S. possessions. A license is required, however, for shipment between these areas and foreign countries.

## § 123.14 Domestic aircraft shipments via foreign ports.

A license is not required for an airborne shipment of any defense article from one port in the United States to another U.S. port via a foreign country. In lieu thereof, a statement is required of the pilot (see § 123.36).

## § 123.15 Import certificate/delivery verification procedure.

The United States and a number of foreign countries have agreed on procedures designed to assure that a commodity imported into their territory will not be diverted, transshipped, or reexported to another destination except in accordance with export control regulations of the importing country. This is known as the Import Certificate/ Delivery Verification Procedure (IC/DV) and may be invoked with respect to defense articles.

(a) Exports. The Department of State may utilize the IC/DV procedure on proposed exports of defense articles to non-government entities in the following countries: Austria, Belgium, Denmark, France, Federal Republic of Germany, Greece, Hong Kong, Italy, Japan, Luxembourg, the Netherlands, Norway, Portugal, Turkey, and the United Kingdom. In such cases, U.S. exporters may be required to submit an export license application (the completed Form DSP–5) and the original Import Certificate, which must be provided and authenticated by the government of the importing country. This document verifies that the foreign importer complied with the import regulations of the government of the importing country and that the importer declared the intention not to divert, transship or reexport the material described therein without the prior approval of that government. After delivery of the commodities to the foreign consignee, the Department of State may also require U.S. exporters to furnish Delivery Verification documentation from the government of the importing country. This documentation verifies that the delivery was in accordance with the terms of the approved export license. Both the "Import Certificate" and the "Delivery Verification" must be furnished to the U.S. exporter by the foreign importer.

(b) Triangular transactions. When a transaction involves three or more countries which have adopted the IC/ DV procedure, the governments of these countries may stamp a triangular symbol on the "Import Certificate". This symbol is usually placed on the "Import Certificate" when the applicant for the "Import Certificate" (the importer) stated either (1) that there is uncertainty

whether the items covered by the "Import Certificate" will be imported into the country issuing the Import Certificate; (2) that he or she knows that the items will not be imported into the country issuing the "Import Certificate"; or (3) that, if the items are to be imported into the country issuing the "Import Certificate", they will subsequently be reexported to another destination. Thus, it is possible that the ultimate consignee and the country of ultimate destination will not coincide with that of the importer. All parties, including the ultimate consignee in the country of ultimate destination, must be shown on the completed "Import Certificate."

## § 123.16  Approval of a proposal to sell significant military equipment.

(a) The approval of the Department of State is required in the following circumstance as a condition precedent to any proposal or presentation to any foreign government or foreign national which is designed to constitute a basis for a decision to purchase defense articles or defense services through either commercial or Foreign Military Sales procedures:

(1) The subject of the proposal or presentation is significant military equipment on the United States Munitions List (see § 123.313) to be sold under a contract for $7,000,000 or more; and

(2) The equipment is intended for use by the armed forces of a foreign country; and

(3) A sale would involve the export from the United States of any defense article or defense service.

(b) A "proposal or presentation designed to constitute a basis for a decision to purchase" means the communication of information in sufficient detail that the person communicating that information knows or should have known that it would permit an intended purchaser to decide to acquire the particular significant military equipment in question. For example, a presentation which described the equipment's performance characteristics, price, and probable availability for delivery would require prior approval in any case where the three criteria specified in paragraph (a) of this section were met. By contrast, advertising or other reporting in a publication of general circulation; preliminary discussions to ascertain market potential; or merely calling attention to the fact that a company manufactures a particular item of significant military equipment would not require prior approval.

(c)(1) Every application for an export license to implement a sale which meets the three criteria specified in paragraph (a) of this section must be accompanied by a statement from the applicant which either:

(i) Refers to a specific approval previously granted with respect to the transaction; or

(ii) Certifies that no proposal or presentation requiring prior approval has been made.

(2) The Department of State may require a similar statement from the Foreign Military Sales contractor concerned in any case where the United States Government receives a request for a letter of offer for a sale which meets the three criteria specified in paragraph (a) of this section.

(d) The requirement of this section for prior approval is met by any of the following:

(1) A written statement approving the proposed sale or approving the making of a proposal or presentation.

(2) A license for the export of technical data relating to the proposed sale to the country concerned issued under § 125.2 or § 125.3.

(3) A temporary export license relating to the proposed sale for a demonstration to the armed forces of the country of export issued under § 123.35.

(e) In addition to other remedies and penalties prescribed by law or this subchapter, a failure to obtain the approval required by paragraph (a) of this section may be considered to be a reason for disapproval of a license application or a request for a letter of offer.

(f) A request for a written statement approving the making of a proposal or presentation with respect to a sale of significant military equipment (see § 123.16(d)(1)) must be by letter with five copies thereof to the Office of Munitions Control. The letter must outline in detail the intended sales effort, including usage of the equipment involved and the country (or countries) involved. The letter must be accompanied by five copies of suitable descriptive information concerning the equipment.

## Exemptions

### § 123.20  Obsolete non-automatic firearms.

District directors of customs may permit the export without a license of non-automatic firearms covered by Category I(a) of § 121.1 if they were manufactured before 1898.

### § 123.21  Firearms and ammunition for personal use.

(a) District director of customs may permit a United States citizen or a

permanent resident of the United States to export temporarily from the United States without a license not more than three non-automatic firearms in Category I(a) of § 121.1 and not more than 1,000 cartridges therefor. There must first be a declaration by the individual and an inspection by a customs officer. The firearms and accompanying ammunition must be with the individual's baggage or effects, whether accompanied or unaccompanied (but not mailed). They must be intended exclusively for that person's use and not for resale or other transfer or ownership. Accordingly, this exemption does not apply to firearms being exported permanently from the United States. The foregoing exemption is not applicable to a crew-member of a vessel or aircraft unless such crew-member declares the firearms to a customs officer upon each departure from the United States, and declares the intention to return them on each return to the United States. It is also not applicable to the personnel referred to in § 123.22.

(b) District directors of customs may permit a nonresident of the United States to export such firearms in Category I(a) of § 121.1 and ammunition as the nonresident brought into the United States under the provisions of 27 CFR 178.115(d). (The latter provision specifically excludes from the definition of importation the bringing into the United States of firearms and ammunition by certain nonresidents for specified purposes.)

(c) District directors of customs may permit a United States citizen or a permanent resident alien in the United States to export without a license ammunition for firearms referred to in paragraph (a) of this section: *Provided.* The quantity does not exceed 1,000 cartridges (or rounds) in any shipment. The ammunition must be for personal use and not for resale or other transfer of ownership. The foregoing exemption is not applicable to the personnel referred to in § 123.22.

### § 123.22  Firearms for personal use of members of the U.S. Armed Forces and civilian employees of the U.S. Government.

The following exemptions apply to uniformed members of the U.S. Armed Forces and U.S. civilian employees of the U.S. Government (both referred to herein as "personnel") who are assigned abroad for extended duty. These exemptions do not apply to dependents.

(a) *Firearms.* District directors of customs may permit non-automatic firearms in Category I(a) of § 121.1 and parts for such firearms to leave (but not be mailed from) the United States

without a license provided: (1) They are consigned to servicemen's clubs abroad for uniformed members of the U.S. Armed Forces; (2) in the case of a uniformed member of the U.S. Armed Forces and a civilian employee of the Department of Defense, they are consigned to the personnel for personal use and not for resale or other transfer of ownership, and if the firearms are accompanied by a written authorization from the commanding officer concerned; or (3) in the case of other U.S. Government employees, they are consigned to such personnel for personal use and not for resale or other transfer of ownership, and the Chief of the U.S. Diplomatic Mission or his designee in the country of destination has approved in writing to the Department of State the bringing of the specific types and quantities of firearms into that country.

(b) *Ammunition.* District directors of customs may permit not more than 1,000 cartridges (or rounds) of ammunition for the firearms referred to in paragraph (a) of this section to be exported (but not mailed) from the United States without a license when the firearms are on the person of the owner or with his baggage or effects, whether accompanied or unaccompanied (but not mailed).

### § 123.23   Minor components.

District directors of customs are authorized to permit the export without a license of components and parts for Category I(a) firearms, except barrels, cylinders, receivers (frames), or complete breech mechanisms, when the total value does not exceed $100 wholesale in any single transaction.

### § 123.24   Border shipments.

A shipment originating in Canada or Mexico which incidentally transits the United States enroute to a delivery point in the same country that originated the shipment is exempt from the requirement of an intransit license.

### § 123.25   [Reserved].

### § 123.26   [Reserved].

### § 123.27   Nuclear materials.

(a) The provisions of this subchapter do not apply to equipment in Category VI(e), Category XVI, and Category XVIII of § 121.1 to the extent such equipment is under the export control of the Department of Energy pursuant to the Atomic Energy Act of 1954, as amended, and the Nuclear Non-Proliferation Act of 1978.

(b) A license for the export of any machinery, device, component, equipment, or technical data relating to equipment referred to in Category VI(e)

will not be granted unless the proposed export comes within the scope of an existing Agreement for Cooperation for Mutual Defense Purposes concluded pursuant to the Atomic Energy Act of 1954, as amended, with the government of the country to which the article is to be exported. Licenses may be granted in the absence of such an agreement only (1) if the proposed export involves an article which is identical to that in use in an unclassified civilian nuclear powerplant and (2) if the proposed export has no relationship to naval nuclear propulsion, and (3) if it is not for use in a naval propulsion plant.

### § 123.28   Transfer to foreign nationals within the United States.

A license is not required for the transfer of an unclassified defense article to a foreign person in the United States if the defense article is transferred for use in the United States and a written notification against taking or sending the article outside the United States without an export license is made in conjunction with the transfer. A copy of the written notification should be promptly forwarded to the Office of Munitions Control and describe the defense article involved.

### Procedures

### § 123.30   Applications for licenses.

Applications for licenses for the export of defense articles must originate with a U.S. person (see § 121.311). They must be made to the Office of Munitions Control as follows:

(a) Applications for export licenses must be made on Form DSP-5 or DSP-85.

(b) Intransit license applications must be made on Form DSP-61.

(c) Temporary export license applications must be made on Form DSP-73.

(d) The following specific procedures apply to the preparation and submission of the applications:

(1) Applications for Department of State export licenses must be confined to proposed exports of defense articles.

(2) Form DSP-5, DSP-85, DSP-61, and DSP-73 applications must have an entry in each block where space is provided for an entry. Comprehensive statements concerning commodity, end-use, and specific purpose are important and should be submitted in an originial and five copies. Samples of properly executed applications are available in the Office of Munitions Control. (Ask for Munitions Control Circular No. 2.)

(3) Unused licenses and licenses which have expired must be returned to the Office of Munitions Control immediately after their validity expires.

(4) Form DSP-83, duly executed, must accompany all license applications for the export of significant military equipment (see § 121.313).

(5) Applications for export licenses should not be submitted until the applicant has a firm order or letter of intent from the purchaser or consignee.

(6) A request under the provisions of Section 38(e) of the Arms Export Control Act for confidential treatment of information provided to the Department of State must be by letter to the Office of Munitions Control, Department of State (see Part 129).

### § 123.31   Renewal and disposition of licenses.

(a) A license lapses if the defense articles are not shipped within the period authorized by the license. Defense articles to be shipped thereafter require a new application and license. The new application should refer to the lapsed license. It should not include any defense article other than the unshipped balance of the lapsed license.

(b) Unused, expired, suspended, amended, or revoked licenses must be returned immediately to the Department of State.

### § 123.32   Port of exit or entry.

An application for a license must state the proposed port of exit from the United States. If the export will consist of transferring a defense article or technical data within the U.S. to an alien, then the place where this will occur shall be stated. If applicable, the port of entry must also be stated. After a license is issued, the licensee must immediately notify the Office of Munitions Control in writing of any proposed change of the port. A copy must be sent to the district director of customs at the new port.

### § 123.33   Filing of export and intransit licenses, and shipper's export declarations, with district directors of customs

(a) The recipient of an approved export license or a foreign person to which it has been properly endorsed and transferred in accordance with § 123.1(a) must deposit the license with the district director of customs at the port of exit designated on the license before shipping the defense article in question. (For exports by mail, see § 123.34) After a license has been so deposited, the export may be made through the designated port or, if necessary, through any other port, provided the exporter complies with the procedures established by the U.S. Customs Service and § 123.32. Before shipping any defense article to port of exit, the exporter must also file a

Shippers Export Declaration (Department of Commerce Form 7525–V) with the district director of customs at such port. (For the export of technical data, see §§ 125.23 and 125.24).

(b) Before the export occurs, the district director of customs at the port of exit must authenticate the requisite Shippers Export Declaration, and endorse the approved license to show the shipment made. The district director of customs will return a copy of each authenticated shippers export declaration to the Office of Munitions Control. Every license will also be returned upon the completion of the export or upon the expiration date stated on the license, whichever occurs first.

(c) If a license is not required for an export (see § 123.20 to § 123.28) the exporter nevertheless is required to file a Shippers Export Declaration with U.S. Customs officer. The declaration must state that the proposed export is covered by a relevant section of these regulations. The certification must be made by annotating the declaration "22 CFR Part 123 applicable" and by identifying the section under which an exemption is claimed. A copy of each such declaration must be mailed immediately by the shipper to the Office of Munitions Control.

(d) District directors of customs are authorized to permit the shipment of defense articles identified on any license when the total value of the shipment does not exceed 10 percent of the aggregate monetary value (not quantity) stated in the license.

### § 123.34  Shipments by mail.

An export license for defense articles being sent abroad by mail must be filed with the postmaster at the post office where the equipment is mailed. A Shipper's Export Declaration (U.S. Department of Commerce Form 7525–V) must be filed with and authenticated by the postmaster before the equipment is actually sent. The postmaster will endorse each license to show the shipments made. Every license must be returned by the postmaster to the Office of Munitions Control upon its date of expiration as stated thereon or upon completion of the mailings, whichever occurs first.

### § 123.35  Temporary exports.

(a) If unclassified defense articles are to be sent abroad for brief periods and returned to the United States in the same condition, a license for the temporary export of unclassified defense articles must be obtained from the Department of State (Form DSP–73).

(b) Defense articles authorized for temporary exports under a license for temporary export may be shipped only from a port in the United States where a district director of customs is available. The license for temporary export must be presented to the district director of customs who, upon verification, will endorse the exit column on the reverse side of the license. The endorsed license for temporary export is to be retained by the licensee. In the case of a military aircraft or vessel, the endorsed license must be carried on board such vessel or aircraft as evidence that it has been duly authorized by the Department of State to leave the United States temporarily.

(c) Upon the return to the United States of defense articles covered by a license for temporary export, the license will be endorsed in the entry column by the district director of customs. This procedure shall be followed for all exits and entries made during the period for which the license is valid. The licensee must transmit the used license immediately to the Department of State, Office of Munitions Control after the final return in the case of multiple exports under the same license.

(d) Licenses for temporary export must be returned to the Office of Munitions Control upon expiration.

(e) An owner of any defense article exported under license or other approval for temporary export is responsible for the acts of employees, agents, and all authorized persons to whom possession has been entrusted regarding the operation, use, possession, transportation, and handling of such article abroad. All persons abroad subject to U.S. jurisdiction who obtain temporary custody of a defense article exported from the United States, directly or indirectly, and irrespective of the number of intermediate transfers, are bound by the regulations of this subchapter in the same manner and to same extent as the original owner-transferor.

### § 123.36  Domestic aircraft shipments via a foreign country.

When an article is to be transported by air from one location in the United States to another location in the United States via a foreign country, the pilot of the aircraft must file a written statement with the district director of customs at the port of exit in the United States. The original statement must be filed at the time of exit with the district director of customs. A duplicate must be filed with the district director of customs at the port of reentry, who will duly endorse it and transmit it to the district director of

customs at the port of exit. The statement will be as follows:

**Statement**

**Domestic Shipment Via a Foreign Country of Articles on the U.S. Munitions List**

Under the penalty according to Federal law, the undersigned certifies and warrants that all the information in this document is true and correct, and that the equipment listed below is being shipped from (U.S. port to exit) ——————— via (foreign country) ——————— to (U.S. port of entry) ———————, which is the final destination in the United States.

**Description of**

Amount: ———————
Equipment: ———————
Value: ———————
Signed: ———————
Endorsement: Customs Inspector.
Port of Exit: ———————
Date: ———————
Endorsement: Customs Inspector.
Port of Entry: ———————
Date: ———————

### § 123.37

**Advisory opinions.**

A person desiring information as to whether the Department of State would be likely to approve a license for the export of particular defense articles or defense services to a particular country may use the Office of Munitions Control's informal "Advisory Opinions" procedure. These opinions are advisory only. They are not binding on the Department of State and are revocable. A request for an advisory opinion must be by letter. It must outline in detail the equipment and its usage and the country or countries involved. Five copies of the letter shall be provided. The letter must be accompanied by an original and five copies of suitable descriptive information concerning the equipment. If a request for an advisory opinion is to involve more than one country, the letter should address only those countries in the same geographic area.

### PART 124—MANUFACTURING LICENSE AGREEMENTS, TECHNICAL ASSISTANCE AGREEMENTS, AND OTHER DEFENSE SERVICES

Sec.
124.1   Manufacturing license and technical assistance agreements.
124.2   Export of technical data in furtherance of an agreement.
124.3   Deposit of copies of signed agreements with the Department of State.
124.4   Termination of manufacturing license and technical assistance agreements.
124.5   Proposed agreements not concluded.
124.6   Approval of a proposal for technical assistance and manufacturing license agreements.

**Procedures**

124.10  Required information in agreements.
124.11  Required information in letters of transmittal.
124.12  Agreement disapproval and revocation, suspension or amendments of approval.

**Exemptions**

124.20  Offshore Procurement.

Authority: Section 38, Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); E.O. 11958, 42 FR 4311; 22 U.S.C. 2658.

## § 124.1  Manufacturing license and technical assistance agreements.

(a) The following categories of proposed agreements must be submitted for approval to the Office of Munitions Control:

(1) Proposed agreements for the manufacture abroad of defense articles (see § 121.39).

(2) Agreements for the furnishing of defense services abroad (see §§ 121.39 and 121.314); and

(3) Technical assistance agreements (see § 121.314).

(b) Amendments to the agreements referred to in (a) or to agreements previously approved by the Office of Munitions Control also require the approval of the Office of Munitions Control.

(c) These agreements and amendments thereto shall not take effect until approved by the Office of Munitions Control. The approval of the Office of Munitions Control facilitates subsequent exports under the agreement (see §§ 124.2 and 125.25(4)). The approval of the Office of Munitions Control shall be based on the security and foreign policy of the United States and the interests of world peace.

(d) A sales representative agreement is not subject to Department of State approval. (See Part 130 for requirements on reporting fees, commissions, etc.)

(e) The agreements which must be submitted for approval under this chapter do not include those which involve a single export and which do not contemplate any continuing relation between the U.S. person and the foreign person.

(f) Exports pursuant to contracts between a foreign person and a U.S. person which provide for the export of defense articles or technical data developed or to be developed in the U.S. for a foreign person are subject to the export requirements of Part 123 and Part 125 of this chapter if the contracts are not manufacturing license agreements or technical assistance agreements (see §§ 121.39 and 121.314). The Office of Munitions Control may make such exports subject to the same conditions

and requirements which are applicable to the latter agreements by this part.

## § 124.2  Export of technical data in furtherance of an agreement.

(a) District directors of customs or postal authorities may permit the export without a license of unclassified technical data if the export is in furtherance of a manufacturing license or technical assistance agreement. The agreement must have been approved in writing by the Department of State. The export will not be permitted if it exceeds the limitations in the relevant agreement. The U.S. party to the agreement must certify that the export complies with limitations imposed in or under this subsection. Department of State approval must be obtained for the export of any portion of the unclassified technical data which may exceed such limitations.

(b) The export of classified information in furtherance of an approved manufacturing license or a technical assistance agreement which provides for the transmittal of classified information does not require further Department of State approval when:

(1) The U.S. party certifies to the Department of Defense transmittal authority that the classified information does not exceed the technical or product limitations in the agreement approved by the Department of State; and

(2) The U.S. party complies with the requirements of the Department of Defense Industrial Security Manual concerning the transmission of the classified information, and any other requirements of cognizant U.S. departments or agencies.

## § 124.3  Deposit of copies of signed agreements with the Department of State.

The U.S. party to a manufacturing license or a technical assistance agreement must file one copy of such agreement with the Office of Munitions Control within 30 days after signature and entry into effect.

## § 124.4  Termination of manufacturing license and technical assistance agreements.

The United States party to a manufacturing license or a technical assistance agreement must inform the Office of Munitions Control of the impending termination of the agreement. The information must be in writing and submitted not less than 60 days prior to the expiration date of any such approved agreement.

## § 124.5  Proposed agreements not concluded.

A proposed agreement approved by the Department of State, with or without

provisos, but for whatever reason not finally concluded, must be brought to the attention of the Office of Munitions Control within 60 days following a decision not to conclude the agreement.

## § 124.6  Approval of a proposal for technical assistance and manufacturing license agreements.

(a) The approval of the Department of State is required as a condition precedent to any proposal or presentation designed to constitute a basis for a decision to purchase, either through commercial or Foreign Military Sales procedures, made to any foreign government or foreign national if:

(1) The subject of the proposal or presentation is a technical assistance or manufacturing license agreement for the production or assembly of significant military equipment on the Munitions List; and

(2) The equipment is intended for use by the armed forces of a foreign country; and

(3) The technical assistance or manufacturing license agreement would involve the export form the United States of any defense articles or of technical data relating to a defense article.

(b) A "proposal or presentation designed to constitute a basis for a decision to purchase" means the communication of information is sufficient detail that the person communicating that information knew or should have known that it would permit an intended purchaser to decide to enter into the proposed technical assistance or manufacturing license agreement. For example, a presentation which describes the price and probable schedule for performance would require prior approval in any case where the three criteria specified in paragraph (a) of this section were met. By contrast, advertising or other reporting in a publication of general circulation; preliminary discussions to ascertain market potential; or merely calling attention to the fact that a company manufactures a particular article of significant military equipment would not require prior approval.

(c)(1) Every request for the approval of a technical assistance or manufacturing license agreement which meets the three criteria specified in paragraph (a) of this section must be accompanied by a statement from the applicant which either:

(i) Refers to a specific approval previously granted with respect to the transaction; or

(ii) Certifies that no proposal or presentation requiring prior approval has been made.

(2) The Department of State may require a similar statement from the foreign Military Sales contractor concerned in any case where the United States Government receives a request for a letter of offer for a sale which meets the three criteria specified in paragraph (a) of this section.

(d) The requirements of this section for prior approval are met by any of the following:

(1) A written statement from the Office of Munitions Control approving the proposed agreement or approving the making of a proposal or presentation relating to the proposed agreement.

(2) A license for the export of technical data to the country concerned issued under § 125.2 or § 125.3 and specifying its relation to a technical assistance or manufacturing license agreement.

(3) A temporary export license issued under § 123.4 relating to the proposed agreement which is for a demonstration to the armed forces of the country of export. It must specify its relation to a proposed technical assistance or manufacturing license agreement.

(e) In addition to other remedies and penalties prescribed by law or this subchapter, a failure to obtain the approval required by paragraph (a) of this section may be considered to be a reason for disapproval of a proposed technical assistance or manufacturing license agreement.

**Procedures**

**§ 124.10   Required information in agreements.**

A proposed manufacturing license or technical assistance agreement (and amendments thereto) must be submitted in eight copies to the Department of State for approval. In order to be approved the proposed agreement must contain, *inter alia,* all of the following information and statements, in terms as precise as possible, unless the Office of Munitions Control concludes that certain information and statements are not needed in a particular agreement.[1] The transmittal letter (see § 124.11) must state the reasons for any omission or variation of the required information or statements. The information and statements are as follows:

(a) The equipment and technology involved. It should be described by military nomenclature, contract number, Federal stock number, nameplate data, or other specific information.

[1] A manufacturing license agreement must contain all of the information and statements in § 124.10 (a) through (m)(3); a technical assistance agreement must contain all of the information and statements in § 124.10 (a) through (j). See § 124.1 to distinguish between types of agreements.

(b) A detailed description of the assistance and information to be furnished and the manufacturing rights to be granted, if any.

(c) The duration of the proposed agreement.

(d) A statement that reads as follows: "This agreement shall not become effective without the prior approval of the Department of State of the U.S. Government."

(e) A statement that reads as follows: "This agreement is subject to all the laws and regulations, and other administrative acts, now or hereafter in effect, of the U.S. Government and its departments and agencies."

(f) A statement that reads as follows: "The parties to this agreement declare that the obligations contained in this agreement shall not affect the performance of any obligations created by prior contracts or subcontracts which the parties may have individually or collectively with the U.S. Government or its departments and agencies."

(g) A statement that reads as follows: "Any use of tooling and facilities which the U.S. Government owns or to which it has the right to acquire title must be authorized by the U.S. Government contracting officer."

(h) A statement that reads as follows: "No liability will be incurred by or attributed to the U.S. Government in connection with any possible infringements of privately owned patent or proprietary rights, either domestic or foreign, by reason of the U.S. Government's approval of this agreement."

(i) A statement which reads as follows: "The technical data exported from the United States in furtherance of this agreement and any defense article which may be produced or manufactured from such technical data may not be transferred to a person in a third country or to a national of a third country, except as specifically authorized in the agreement or unless the prior written approval of the Department of State has been obtained."

(j) A technical assistance agreement which involves the transfer abroad of technical data which is employable in the production or manufacture of significant military equipment must be accompanied by a "Nontransfer and Use Certificate" (Form DSP–83). It must be completed by the foreign party to the agreement and endorsed by the government of the foreign party. The Office of Munitions Control reserves the right to require that a "Nontransfer and Use Certificate" accompany any other technical assistance agreement as well.

(k) Specific identification of the countries or areas in which manufacturing, production, processing, sale or other form of transfer is to be licensed.

(l)(1) With respect to a manufacturing license agreement, a statement that reads as follows: "No export, sale, transfer, or other disposition of the licensed article is authorized to any country outside the territory wherein

manufacture or sale is herein licensed without the prior written approval of the U.S. Government."

(2) With respect to a manufacturing license agreement for significant military equipment, the following provision must be included:

"Approval of the U.S. Government must be obtained prior to entering into a commitment for the transfer of the licensed article by sale or otherwise to another recipient in the same or any other country."

(3) At the option of the parties, the provision required by the preceding paragraph need not be made a part of the agreement if the licensee furnishes the Office of munitions Control with a completed "Nontransfer and Use Certificate" (DSP–83) dealing with the licensed article.

(4) The Office of Munitions Control may at its option require either a "Nontransfer and Use Certificate" (Form DSP–83) or a similar undertaking in the license agreement in connection with the foreign manufacture of any defense article.

(m) A statement that reads as follows:

"(1) It is agreed that sales by licensee or its sublicensees under contracts made through the U.S. Government will not include either charges for patent rights in which the U.S. Government holds a royalty-free license, or charges for data which the U.S. Government has a right to use and disclose to others, which are in the public domain, or which the U.S. Government has acquired or is entitled to acquire without restrictions upon their use and disclosure to others.

(2) If the U.S. Government is obligated or becomes obligated to pay to the licensor royalties, fees, or other charges for the use of technical data or patents which are involved in the manufacture, use, or sale of any licensed article, any royalties, fees or other charges in connection with purchases of such licensed article from licensee or its sublicensees with funds derived through the U.S. Government may not exceed the total amount the U.S. Government would have been obligated to pay the licensor directly.

(3) If the U.S. Government has made financial or other contributions to the design and development of any licensed article, any charges for technical assistance or know-how relating to the item in connection with purchases of such articles from licensee or sublicensees with funds derived through the U.S. Government must be proportionately reduced to reflect the U.S. Government contributions, and, subject to the provisions of paragraph (l)(2) of this section, no other royalties, fees or other charges may be assessed against U.S. Government funded purchases of such article. However, charges may be made for reasonable reproduction, handling, mailing, or similar administrative costs incident to the furnishing of such data."

**§ 124.11   Required information in letters of transmittal.**

An application for Department of State approval of a manufacturing

license or technical assistance agreement with a foreign person must be accompanied by an explanatory letter. An original and seven copies containing the following shall be submitted:

(a) A statement giving the applicant's Munitions Control registration number.

(b) A statement identifying any U.S. Government contract under which the equipment or technical data was generated, improved, or developed and supplied to the U.S. Government, and whether the equipment or technical data were derived from any bid or other proposal to the U.S. Government.

(c) A statement giving the military security classification of the equipment or technical data.

(d) A statement reading as follows:

"If the agreement is approved by the Department of State, such approval will not be construed by

_____
(the applicant)
as passing on the legality of the agreement from the standpoint of antitrust laws or other applicable statutes, nor will

_____
(the applicant)
construe the Department's approval as constituting either approval or disapproval of any of the business terms or conditions between the parties to the agreement."

(e) A statement identifying any patent application which discloses any of the subject matter of the equipment or technical data covered by secrecy orders issued by the U.S. Patent Office.

(f) A statement that reads as follows:

"The

_____
(applicant)
will not permit the proposed agreement to enter into force until it has been approved by the Department of State."

(g) A statement reading as follows:

"Within 30 days the

_____
(applicant)
will furnish the Department of State with one copy of the signed agreement (or amendment) as finally concluded; will inform the Department of its termination not less than 60 days prior to expiration, including information on the continuation of any rights or flow of technical data to the foreign party; and if a decision is made not to conclude the proposed agreement, will so inform the Department within 60 days."

§ 124.12 Agreement disapproval and revocation, suspension or amendments of approval.

(a) A manufacturing license or technical assistance agreement may be disapproved, and a previously granted approval of such an agreement may be revoked, suspended or amended by the Department of State without prior notice whenever the Department deems such action to be advisable in furtherance of:

(1) World peace, the security of the United States, or the foreign policy of the United States; or

(2) Whenever the Department of State believes that 22 U.S.C. 2778 or any regulation contained in this subchapter has been violated; or

(3) Whenever a party to the agreement has been debarred under 127.7 of this subchapter; or

(4) Whenever an order or debarment or suspension has been made applicable to such a party under § 127.9 of this subchapter; or

(5) Whenever a person who has been debarred or suspended has a significant interest in the transaction.

(b) Whenever an agreement is disapproved or a previously granted approval of an agreement is revoked, suspended, or amended, the U.S. party will be promptly advised in writing of the Department's decision. The reasons therefor will be stated as specifically as security and foreign policy considerations permit.

(c) If a written request for reconsideration is made within 30 days after service of an adverse decision by the Department of State, the U.S. party will be accorded an opportunity to present additional information. The case will then be reviewed by the Department of State.

**Exemptions**

§ 124.20 Offshore procurement.

Notwithstanding the other provisions in this Part 124, a person in the United States may conclude manufacturing arrangements for the manufacturing of defense articles in a foreign country without prior Department of State approval if:

(a) The foreign manufacture is pursuant to an agreement between the United States Government and a foreign government which specifically provides for the foreign manufacture of the defense article and the person in the U.S. is acting pursuant to a contract or other specific authorization from the U.S. Government and the defense article to be produced is for the exclusive use of either the U.S. Government or the military forces of the foreign government.

(b) The technical data of U.S. origin to be used in the foreign manufacture is unclassified, and has been licensed for export by the Department of State or is subject to one of the exemptions in §§ 125.10, 125.11, or § 125.12 of this subchapter; and

(c) The contract or purchase order between a person in the United States and a foreign person:

(1) Limits the use of the technical data to that required by the contract or purchase order;

(2) Prohibits the disclosure of the data to any other person except duly qualified subcontractors for the equipment within the same country;

(3) Prohibits the acquisition of any rights in the data by any foreign person without the approval of the Department of State; and

(4) Provides that any subcontracts between foreign persons in the approved country for manufacture of equipment for delivery pursuant to the contract or purchase order contain all the limitations of this paragraph (c); and

(d) The person in the United States provides the Office of Munitions Control, Department of State, with a copy of each subcontract (or Purchase Order) for offshore procurement at the time it is accepted by both persons. Each such subcontract or purchase order must clearly identify the article to be produced.

**PART 125—LICENSES FOR THE EXPORT OF TECHNICAL DATA AND CLASSIFIED DATA AND CLASSIFIED EQUIPMENT**

Sec.
125.1   Export of technical data.
125.2   Export of unclassified technical data.
125.3   Export of classified information (data and equipment).

**Exemptions**

125.10   Shipments by U.S. Government agencies.
125.11   General exemptions.
125.12   Data on nuclear materials.

**Procedures**

125.20   Export of unclassified technical data.
125.21   Export of classified information (data and equipment).
125.22   Certification requirements.
125.23   Filing of licenses for export of unclassified information (data and equipment).
125.24   Filing of licenses for export of classified information (data and equipment).
125.24   Specific Procedures on applying for an export license for unclassified technical data.

**Authority:** Section 38, Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); E.O. 11958, 42 FR 4311; 22 U.S.C. 2658.

§ 125.1 Export of technical data.

(a) The export controls of this subchapter apply to the export of unclassified technical data and the export of classified equipment and classified information relating to defense articles (as defined in § 121.315).

(b) A license to export technical data may not be used for foreign production purposes, or for technical assistance in

such productions, without the specific approval of the Department of State (see Part 124 of this subchapter). Technical data licensed for export may not be diverted or transferred from the country of ultimate end-use (as designated in the license or approval for export) without the prior written approval of the Department of State.

(c) The export controls of this subchapter apply to the exports referred to in paragraph (a) of this section regardless of whether the person who intends to export the technical data produces or manufactures defense articles if the technical data is determined by the Office of Munitions Control to be subject to this subchapter.

### § 125.2  Export of unclassified technical data.

(a) *General.* A license issued by the Department of State is required for the export of unclassified technical data (as defined in § 121.315 of this subchapter) unless otherwise exempted in this subchapter (see §§ 125.10 and 125.11).

(b) *Patents.* A license issued by the Department of State is required for the export of unclassified technical data which exceed the data use to support a domestic or foreign filing of a patent application. The export of technical data supporting the filing and processing of patent applications in foreign countries is subject to regulations issued by the U.S. Patent Office under 35 U.S.C. 184.

(c) *Visits and other oral communications.* Unless otherwise expressly exempted in this subchapter (see § 125.11), a license for the export of unclassified technical data is required for the disclosure of unclassified technical data to foreign nationals in connection with visits by U.S. persons to foreign countries. A license is required if the technical data is transmitted in person, telephonically, or by other means (*e.g.*, electronic ones, telex, etc.). It is also required for such disclosures in connection with visits by U.S. persons to foreign diplomatic missions and consular offices in the United States or in connection with a visit by a foreign national to the United States. Licenses are required unless they otherwise are expressly exempted in this subchapter (see § 125.11).

### § 125.3  Export of classified information (data and equipment).

(a) A request for authority to export (as defined in § 121.34 of this subchapter) classified information (data or equipment) by a person other than the cognizant department or agency of the U.S. Government must be submitted to the Department of State for approval. (See §§ 125.10 and 125.11 for

exemptions.) The application must contain all pertinent information with full details of the proposed transaction. (See § 125.21 for procedures.)

(b) Classified information (as defined in § 121.315(b) of this subchapter) which is approved by the Department of State either for export or reexport after a temporary import will be transferred or communicated only in accordance with the requirements relating to the transmission of classified information in the Department of Defense Industrial Security Manual. Any other requirements imposed by cognizant U.S. departments and agencies must also be complied with.

(c) The approval of the Department of State must be obtained for the export of classified information by a U.S. person to a foreign national in the U.S. or in a foreign country unless the proposed export is exempt under the provisions of this subchapter (see § 125.11).

(d) All communications relating to a patent application covered by a secrecy order are to be addressed to the U.S. Patent Office. (See 37 CFR 5.11.)

## Exemptions

### § 125.10  Shipments by U.S. Government agencies.

Section 126.4 of this subchapter exempts certain exports by U.S. Government agencies of technical data.

### § 125.11  General exemptions.

(a) Except as provided in § 126.1 of this subchapter, district directors of customs and postal authorities may permit the export without a license of unclassified technical data under the following circumstances.

(1) If the technical data are published or otherwise generally available to the public:

(i) Through sales at newsstands and bookstores;

(ii) Through subscription, unrestricted purchase, or without cost;

(iii) Through second class mailing privileges granted by the U.S. Government; or,

(iv) Are freely available at public libraries; or

(2) If it has been approved for public release by any U.S. Government department or agency having authority to classify information or material under Executive Order 12065, and other applicable Executive Orders, and does not disclose the details of design, production, or manufacture of any arms, ammunition, or implements of war on the U.S. Munitions List; or

(3) If an export is in furtherance of a manufacturing license or technical assistance agreement approved by the

Department of State in accordance with Part 124 of this subchapter; or

(4) If the export is in furtherance of a contract between the exporter and an agency of the U.S. Government, and the contract provides for the export of relevant unclassified technical data, and such data does not disclose the details of design, production, or manufacture of any defense article; or

(5) If they consist of operations, maintenance, and training manuals, and aids relating to an article lawfully exported or authorized for export to the same recipient. This exemption applies only to export by the original Munitions Control licensee. It is not applicable to technical data relating to Category VI(c) and Category XVI; or

(6) If they consist of additional copies of technical data previously exported or authorized for export to the same recipient. Revised copies of such technial data are also exempt if they pertain to the identical defense article and the revisions are solely editorial and do not add to the content of technology previously exported to the same recipient; or

(7) If it related to firearms not in excess of caliber .50 and ammunition for such weapons, except technical data containing advanced designs, processes, and manufacturing techniques; or

(8) If they consist solely of technical data being returned to the original source of import; or

(9) If they are directly related to classified information which has been previously exported in accordance with this subchapter to the same recipient, and which does not disclose the details of a defense service or the design, production, or manufacture of any defense article.

(10) If the technical data (within the meaning of Sec 121.314) consists of information which is not designed or intended to be used, or which could not reasonably be expected to be used, in direct application in the design, production, manufacture, repair, overhaul, processing, engineering, development, operation, maintenance, or reconstruction of defense articles (for example, general mathematical, engineering, or statistical information not purporting to have or not reasonably expected to be given direct application to defense articles). An advisory opinion may be sought in case of doubt as to whether technical data is exempt under this category.

(b) *Plant visits.* Except as restricted by the provisions of § 126.1 of this subchapter:

(1) A license is not required for the oral and visual disclosure of unclassified technical data during the

course of an approved classified plant visit by a foreign person, or of a visit approved by a U.S. Government agency having authority for the classification of information of material under Executive Order 12065, or other applicable Executive Orders. The requirements of section V, paragraph 40(d) of the Defense Industrial Security Manual must also be met.

(2) A license is not required for the documentary disclosure to a foreign person of unclassified technical data during the course of an approved plant visit, provided the document does not contain technical data in excess of that released orally or visually during the visit. The disclosure must be within the terms of the approved visit request, and must not contain technical data which can be used, adapted for use, or disclosed to others for the purpose of manufacture or production of a defense article.

(3) Department of State approval is not required for the disclosure of oral and visual classified information during the course of a plant visit by a foreign person if the visit has been approved by the cognizant U.S. Defense Agency and if the requirements of section V, paragraph 40(d) of the Defense Industrial Security Manual are met.

§ 125.12   Data on nuclear materials.

The provisions of this subchapter do not apply to technical data related to articles in Category VI(e); Category XVI; and Category XVIII. The export of this data is controlled by the Department of Energy pursuant to the Atomic Energy Act of 1954, as amended, and the Nuclear Non-Proliferation Act of 1978.

Procedures

§ 125.20   Export of unclassified technical data.

(a) *General and visits.* Unless an export is exempted from the licensing requirements of the Office of Munitions Control (§ 125.10 and § 125.11) (see § 125.2), an application for the export of unclassified technical data by a person in the United States must be made to the Department of State on Form DSP–5, accompanied by five copies of the data. In the case of a visit, sufficient details of the proposed discussions must be transmitted in quintuplicate for an adequate appraisal of the data.

(b) *Patents.* A request for the filing of a patent application in a foreign country and a request for the filing of an amendment, modification or supplement thereto must be directed to the U.S. Patent Office in accordance with 37 CFR Part 5. If the applicant complies with the regulations of the Patent Office, Department of State approval is

required only for the export of such technical data as exceeds that used to support a patent application in a foreign country. In such cases, an application must be submitted in accordance with the provisions of paragraph (a) of this section.

§ 125.21   Export of classified information (data and equipment).

Unless an export is exempt from the licensing requirements of the Office of Munitions Control (§ 125.10 or § 125.11(b)(3)), an application for approval to export classified information (data or equipment) or to reexport classified equipment after a temporary import must be submitted to the Department of State on Form DSP–85. Such applications will be accepted from a U.S. citizen only. An application for export of classified technical data must be accompanied by five copies of the data. An application for export of classified equipment must be accompanied by five copies of suitable descriptive information and a completed Form DSP–83. All classified materials accompanying an application must be transmitted in the form prescribed by section I, paragraph 5 of the Defense Industrial Security Manual.

§ 125.22   Certification requirements.

To claim an exemption for the export of technical data under the provisions of § 125.11, an exporter must certify that the proposed export is covered by a relevant paragraph of that section. Certification consists of marking the package or letter containing the technical data "22 CFR Part 125 * * * applicable", and identifying the specific paragraph(s) under which the exemption is claimed.

§ 125.23   Filing of licenses for export of unclassified information (data and equipment).

An approved license for the export of unclassified technical data must be deposited with the appropriate district director of customs or postmaster at the time of shipment or mailing. The district director of customs or postmaster will endorse and transmit the license in accordance with the instructions contained on the reverse side thereof to the Office of Munitions Control.

§ 125.24   Filing of licenses for export of classified information (data and equipment).

An approved license for the export of classified data or classified equipment will be forwarded by the Office of Munitions Control to the Defense Supply Agency of the Department of Defense in accordance with the Department of Defense Industrial Security Manual. The

Office of Munitions Control will forward a copy of the issued license to the applicant for that applicant's information. Upon completion of the export, the Defense Supply Agency will return the appropriately endorsed license to the Office of Munitions Control.

§ 125.25   Specific procedures for applying for an export license for unclassified technical data.

The following specific procedures should be followed in applying for an export license for unclassified technical data.

(a) With the exception of an application from a foreign person duly accredited to the United States Government as a member of a foreign diplomatic mission, an application for a license to export unclassified technical data must originate with an American person. (See § 121.311 of this subchapter).

(b) An application for a license to export technical data (as defined in § 121.315 of this subchapter) should clearly identify "TECHNICAL DATA ONLY" when describing the commodity to which the data refer.

(c) Unclassified technical data that are not to be returned to the United States must be the subject of an application on Form DSP–5. Unclassified technical data that are to be returned to the United States must be the subject of an application on Form DSP–73.

(d) Technical data may not be licensed for export for use by a foreign person for any of the functions described in §§ 121.39 and 121.314 of this subchapter unless the Department of State first approves a manufacturing license or technical assistance agreement as provided in Part 124 of this subchapter.

(e) Each DSP–85 license application for the export of classified equipment (see Munitions List Category XVII) must be accompanied by a Form DSP–83, duly executed.

(f) When an approved license for the export of unclassified technical data is used but not endorsed by U.S. Customs or a postmaster, the person exporting the data must self-endorse the license and return it promptly to the Office of Munitions Control.

PART 126—GENERAL POLICIES AND PROVISIONS

Sec.
126.1   Prohibited shipments to or from certain countries.
126.2   Temporary suspension or modification of regulations of the subchapter.
126.3   Waivers.
126.4   Shipments by U.S. Government agencies.

126.5   Relation to other provisions of law.
126.6   Continuation in force.

Authority: Section 38, Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); 601, as amended, 47 Stat. 417 (31 U.S.C. 686); E.O. 11958 (42 FR 4311, January 18, 1977); E.O. 11322, 32 FR 119; 22 U.S.C. 2658.

### § 126.1   Prohibited shipments to or from certain countries.

(a) It is the policy of the United States to deny licenses and other approvals with respect to defense articles or services and technical data destined for or originating in certain countries or areas. This policy applies to countries or areas with respect to which the United States maintains an arms embargo. It also applies when an export would not be in furtherance of world peace and the security and foreign policy of the United States. The exemptions provided in the regulations in this subchapter, except § 125.11(a) (1) and (2) of this subchapter, do not apply with respect to exports to or originating in any of such proscribed countries or areas.

(b) The Director, Office of Munitions Control, maintains a current listing of the proscribed countries and areas referred to in paragraph (a) of this section. This listing is revised from time to time as circumstances warrant. Information on whether a country is included is available to the public upon request.

(c) A defense article licensed for export under this subchapter must not be shipped directly or indirectly to the country or area of ultimate end-use on a vessel, aircraft or other means of conveyance which is owned or operated by, or leased to or from, any of the proscribed countries or areas.

### § 126.2   Temporary suspension or modification of regulations of the subchapter.

The Director, Office of Munitions Control, may order the temporary suspension or modification of any or all of the regulations of this subchapter in the interest of furthering the objectives of world peace and the security and foreign policy of the United States.

### § 126.3   Waivers.

In a case of exceptional and undue hardship, or when it is in the interest of the United States Government, the Director, Office of Munitions Control, may make an exception to the regulations of this subchapter after a full review.

### § 126.4   Shipments by U.S. Government agencies.

(a) A license is not required for the export of any defense article or defense service or technical data by or for any agency of the U.S. Government (1) for official use by such an agency, or (2) for carrying out any foreign assistance or sales program authorized by law and subject to the control of the President by other means. This exemption applies only when all aspects of a transaction (export, carriage, and delivery abroad) are effected by a U.S. Government agency, or when the export is covered by a U.S. Government Bill of Lading. This exemption, however, does not apply when a U.S. Government agency acts as a transmittal agent on behalf of a private individual or firm, either as a convenience or in satisfaction of security requirements.

(b) This section does not authorize any department or agency of the U.S. Government to make any export which is subject to restriction by virtue of other statutory or administrative provisions.

### § 126.5   Relation to other provisions of law.

The provisions in this subchapter are in addition to, and are not in lieu of, any other provisions of law or regulations.

### § 126.6   Continuation in force.

All determinations, authorizations, licenses, approvals of contracts and agreements and other action issued, undertaken, or entered into by the Department of State pursuant to Section 414 of the Mutual Security Act of 1954, as amended, continue in force and effect until or unless modified, revoked or superseded by this subchapter.

## PART 127—VIOLATIONS AND PENALTIES

Sec.
127.1   Violations in general.
127.2   Misrepresentation and omission of facts.
127.3   Penalties for violations.
127.4   (Reserved).
127.5   Authority of U.S. Customs Service Officers.
127.6   Seizure and forfeiture in attempts at illegal exports.
127.7   Debarment.
127.8   Interim suspension.
127.9   Applicability of orders.
127.10   Civil penalty.

Authority: Section 38, Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); 601, as amended, 47 Stat. 417 (31 U.S.C. 686); E.O. 11958, 42 FR 4311; 22 U.S.C. 401; 22 U.S.C. 2658.

### § 127.1   Violations in general.

(a) It is unlawful to export or attempt to export from the United States any defense article or defense service for which a license or written approval is required by this subchapter without first obtaining the required license or written approval from the Department of State.

(b) A person with knowledge that another person is then subject to an order of debarment, or interim suspension, may not, directly or indirectly, in any manner or capacity, without prior disclosure of the facts to, and written authorization of, the Office of Munitions Control:

(1) Apply for, obtain, or use any export control document as defined in § 127.2(b) for such debarred or suspended person; or

(2) Order, buy, receive, use, sell, deliver, store, dispose of, forward, transport, finance, or otherwise service or participate in any transaction which may involve any defense article or defense service or technical data for which a license or approval is required by this subchapter for export from the United States, where such debarred or suspended person may obtain any benefit therefrom or have any direct or indirect interest therein.

(c) No person may willfully cause, or aid, abet, counsel, demand, induce, procure or permit the commission of any act prohibited by, or the omission of any act required by 22 U.S.C. 2778, 22 U.S.C. 2779, or any regulation, license, approval, or order issued thereunder.

### § 127.2   Misrepresentation and omission of facts.

(a) It is unlawful to use any export or intransit control document containing a false statement or misrepresenting or omitting a material fact for the purpose of exporting any defense article or defense service or technical data for which a license or approval is required by this subchapter. Any false statement, misrepresentation, or omission of material fact in an export or intransit control document will be considered as made in a matter within the jurisdiction of a department or agency of the United States for the purposes of 18 U.S.C. 1001, 22 U.S.C. 2778 and 22 U.S.C. 2779.

(b) For the purpose of this section, "export or intransit control documents" include the following:

(1) An application for an export or an intransit license and supporting documents.

(2) Shippers export declaration.

(3) Invoice.

(4) Declaration of destination.

(5) Delivery verification.

(6) Application for temporary export.

(7) Application for registration.

(8) Purchase order.

(9) Foreign import certificate.

(10) Bill-of-lading.

(11) Air waybill.

(12) Nontransfer and Use Certificate.

(13) Any other document used in the regulation or control of defense articles, defense services or technical data for which license or approval is required by this subchapter.

### § 127.3  Penalties for Violations.

Any person who willfully:

(a) Violates any provision of section 38 or section 39 of the Arms Export Control Act (22 U.S.C. 2778 and 2779), or any undertaking specifically required by § 124.10;

(b) In a registration, license application or report required by Section 38 or Section 39 of the Arms Export Control Act (22 U.S.C. 2778 and 2779) or by any rule or regulation issued under either Section, makes any untrue statement of a material fact or omits a material fact required to be stated therein or necessary to make the statements therein not misleading; shall, upon conviction, be subject to fine or imprisonment, or both, as prescribed by 22 U.S.C. 2778(c).

### § 127.4  [Reserved]

### § 127.5  Authority of U.S. Customs Service officers.

(a) U.S. Customs Service officers may take appropriate action to ensure observance of this subchapter as to the export or the attempted export of any defense article, including the inspection of loading or unloading of carriers. This applies whether the export is authorized by license or by written approval issued under this subchapter.

(b) Upon the presentation to a customs officer of a license or written approval authorizing the export of any defense article, the customs officer may require the production of other relevant documents and information relating to the proposed export. This includes but is not limited to, an invoice, order, packing list, shipping document, correspondence, and instructions. The customs officer may in addition require the documents required by the U.S. Customs Service.

### § 127.6  Seizure and forfeiture in attempts at illegal exports.

(a) An attempt to export from the United States any defense articles in violation of the provisions of this subchapter constitutes an offense punishable under Section 401 of Title 22 of the United States Code. Whenever it is known or there is probable cause to believe that any defense article is intended to be or is being or has been exported or removed from the United States in violation of law, such article and any vessel, vehicle or aircraft involved in such attempt is subject to seizure, forfeiture and disposition as provided in Section 401 of Title 22 of the United States Code.

(b) Similarly, an attempt to violate any of the conditions under which a Temporary Export or Intransit License was issued pursuant to this subchapter

also constitutes an offense punishable under Section 401 of Title 22 of the United States Code, and such article, together with any vessel, vehicle or aircraft involved in any such attempt is subject to seizure, forfeiture, and disposition as provided in Section 401 of Title 22 of the United States Code.

### § 127.7  Debarment.

(a) The Director, Bureau of Politico-Military Affairs, Department of State may debar (prohibit) any person from participating directly or indirectly in the export of defense articles or defense services for which a license or approval is required by this subchapter for any of the causes listed below. The following are causes for debarment:

(1) Conviction of a criminal offense as defined in § 127.3.

(2) Any violation of 22 U.S.C. 2778 or any rule or regulation issued thereunder when such a violation is of such character as to provide a reasonable basis to believe and determine that the violator cannot be relied upon to comply with the statute, rules, or regulations in the future, and when such a violation is established in accordance with §§ 128.2 through 128.16 of this chapter.

(3) A decision by the Office of Export Administration, Bureau of Trade Regulation of the Department of Commerce, to deny, suspend, or revoke export privileges to the person under 15 CFR 388.1 and the Export Administration Act of 1979, or to exclude the person from practice before the Bureau of Trade Regulation under 15 CFR 390.2 and under the Export Administration Act of 1969, as amended, where the Hearing Commissioner (see § 128.2 of this subchapter) makes a finding that the facts form a reasonable basis for concluding that the person cannot be relied upon to comply in the future with 22 U.S.C. 2778 or with the rules or regulations issued thereunder.

(b) A person who has been debarred for more than 12 months may petition the Hearing Commissioner to vacate or modify the order of debarment. The petition must be filed with the Hearing Commissioner, and a copy simultaneously filed with the Office of Munitions Control. At his or her discretion, the Hearing Commissioner may require the submission of evidence and arguments, oral or written or both. The Hearing Commissioner, after considering the petition any any evidence and arguments with respect thereto, shall at the earliest practicable date submit a report and recommendations to the Director, Bureau of Politico-Military Affairs, Department of State. The Director may issue an appropriate order disposing of

the petition and the moving party will be informed.

### § 127.8  Interim suspension.

(a) The Director, Office of Munitions Control, is authorized to order the interim suspension of any person when the Director believes that grounds for debarment (as defined in § 127.7) exist and where and to the extent the Director finds that the interim suspension is reasonably necessary to protect world peace or the security or foreign policy of the United States, pending the final disposition of debarment proceedings. The interim suspension orders prohibit that person from participating directly or indirectly in the export of any defense article for which a license or approval is required by this subchapter. The suspended person shall be sent a charging letter as provided in § 128.3 of this subchapter. A copy of the interim suspension order will be served upon that person in the same manner as provided in § 128.3. The interim suspension order may be made effective immediately, without prior notice or hearing. The order will briefly recite the relevant facts, state the grounds for issuance of the order, and describe the nature and duration of the interim suspension. No person may be suspended for a period exceeding 60 days unless proceedings under §§ 128.2 through 128.16 of this subchapter or criminal proceedings are initiated before the expiration of that period.

(b) A motion or petition to vacate or modify an interim suspension order may be filed at any time with the Hearing Commissioner. A copy shall be filed with the Office of Munitions Control. An oral hearing, if requested, will be held before the Hearing Commissioner at the earliest practicable date. The Hearing Commissioner, after considering the assembled record, will submit a report and recommendations to the Director, Bureau of Politico-Military Affairs, Department of State. The Director will issue an appropriate order disposing of the motion or petition and will promptly inform the respondent accordingly.

(c) Except for the particular application or license which is itself the basis of any investigation or proceeding, no license application filed by any person may be returned without action, held without action, or rejected, solely because such person is under investigation, or because proceedings against that person are pending, other than in accordance with the terms of an interim suspension order issued under § 127.8(a).

### 127.9 Applicability of orders.

For the purpose of preventing evasion, orders of the Director, Bureau of Politico-Military Affairs, debarring a person under § 127.7, and orders of the Director, Office of Munitions Control, suspending a person under § 127.8, may be made applicable to any other person who may then or thereafter (during the term of the order) be related to the debarred person by affiliation, ownership, control, position of responsibility, or other commercial connection. Appropriate notice and opportunity to respond to charges will be given.

### 127.10 Civil penalty.

(a) The Director, Bureau of Politico-Military Affairs, Department of State is authorized to impose a civil penalty in an amount not to exceed that authorized by 50 U.S.C. Appendix 2405(c) for each violation of 22 U.S.C. 2778, or any regulation, order, license or approval issued thereunder. This civil penalty may be either in addition to, or in lieu of, any other liability or penalty which may be imposed.

(b) The Office of Munitions Control may make the payment of a civil penalty under this section a prior condition for the issuance, restoration, or continuing validity of any export license.

## PART 128—ADMINISTRATIVE PROCEDURES

Sec.
128.1    Exclusion of functions from Administrative Procedure Act.
128.2    Hearing Commissioner.
128.3    Institution of administrative proceedings.
128.4    Default.
128.5    Answer and demand for oral hearing.
128.6    Discovery.
128.7    Prehearing conference.
128.8    Hearings.
128.9    Proceedings before and report of Hearing Commissioner.
128.10   Disposition of proceedings.
128.11   Consent orders.
128.12   Rehearings.
128.13   Appeals.
128.14   Proceedings confidential.
128.15   Orders containing probationary periods.
128.16   Extension of time.
128.17   Availability of orders.
**Authority:** Section 38, Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); 601, as amended, 47 Stat. 417 (31 U.S.C. 666); E.O. 11958, 42 FR 4311; 22 U.S.C. 2658.

### 128.1 Exclusion of functions from Administrative Procedure Act.

The functions conferred by Section 38 of the Arms Export Control Act are excluded from 5 U.S.C. 553 and 554.

### 128.2 Hearing Commissioner.

The Hearing Commissioner referred to herein is the Hearing Commissioner, Bureau of Trade Regulation, U.S. Department of Commerce, as provided in 15 CFR 388.2. The Hearing Commissioner is authorized to exercise the powers and perform the duties provided for in §§ 127.7, 127.8, and 128.3 through 128.16.

### 128.3 Institution of administrative proceedings.

(a) *Charging letters.* The Director, Office of Munitions Control, with the concurence of the Office of the Legal Adviser, Department of State, may initiate debarment proceedings in accordance with § 127.7 of this subchapter or civil penalties in accordance with § 127.10 of this subchapter. The charging letter will state the essential facts constituting the alleged violation and refer to the regulatory or other provisions involved. It will give notice that if the respondent is found to have committed the alleged violation, he or she may be prohibited from participating in the export of any defense article, defense service or technical data for which a license or approval is required by this subchapter, or that civil penalties may be imposed. The charging letter will require the respondent to answer the charges within 30 days, as provided in § 128.5(a), and indicate that a failure to answer will be taken as an admission of the truth of the charges. It will inform the respondent that he or she is entitled to an oral hearing if a written demand for one is filed with the answer or within 7 days after service of the answer. The respondent will also be informed that he or she may, if so desired, be represented by counsel of his or her choosing. Charging letters may be amended from time to time, upon reasonable notice.

(b) *Service.* A charging letter is served upon a respondent:

(1) If the respondent is a resident of the United States, when it is mailed postage pre-paid in a wrapper addressed to the respondent at his or her last known address; or when left with the respondent or the agent or employee of the respondent; or when left at the respondent's dwelling with some person of suitable age and discretion then residing herein; or

(2) If the respondent is a non-resident of the United States, when served upon the respondent by any of the foregoing means. If such methods of service are not practicable or appropriate, the charging letter may be tendered for service on the respondent to an official of the government of the country wherein the respondent resides,

provided that there is an arrangement or understanding between the U.S. Government and the government of the country wherein the respondent resides permitting this action.

### § 128.4 Default.

(a) *Failure to answer.* If the respondent fails to answer the charging letter, the respondent may be held in default. The case shall then be referred to the Hearing Commissioner for consideration in a manner as the Commissioner may consider appropriate. Any order issued shall have the same effect as an order issued following the disposition of contested charges.

(b) *Petition to set aside defaults.* Upon showing good cause, any respondent against whom a default order has been issued may apply to set aside the default and vacate the order entered thereon. The petition shall be submitted in duplicate to the Director, Bureau of Politico-Military Affairs, U.S. Department of State, 2201 C Street NW., Washington, D.C. 20520. The Director will refer the petition to the Hearing Commissioner for consideration and a recommendation. The Hearing Commissioner will consider the application and may order a hearing and require the respondent to submit further evidence in support of his or her petition. The filing of a petition to set aside a default does not in any manner affect an order entered upon default and such order continues in full force and effect unless a further order is made modifying or terminating it.

### § 128.5 Answer and demand for oral hearing.

(a) *When to answer.* The respondent is required to answer the charging letter within 30 days after service.

(b) *Contents of answer.* An answer must be reponsive to the charging letter. It must fully set forth the nature of the respondent's defense or defenses. In the answer, the respondent must admit or deny specifically each separate allegation of the charging letter, unless the respondent is without knowledge, in which case the respondent's answer shall so state and the statement shall operate as a denial. Failure to deny or controvert any particular allegation will be deemed an admission thereof. The answer may set forth such additional or new matter as the respondent believes supports a defense or claim of mitigation. Any defense or partial defense not specifically set forth in an answer shall be deemed waived. Evidence offered thereon by the respondent at a hearing may be refused except upon good cause being shown. If

the respondent does not demand an oral hearing, he or she shall transmit, within 7 days after the service of his or her answer, original or photocopies of all correspondence, papers, records, affidavits, and other documentary or written evidence having any bearing upon or connection with the matters in issue. If any such materials are in a language other than English, translations into English shall be submitted at the same time.

(c) *Submission of answer.* The answer, written demand for oral hearing (if any) and supporting evidence required by § 128.5(b) shall be in duplicate and mailed or delivered to the Hearing Commissioner, Bureau of Trade Regulation, U.S. Department of Commerce, Washington, D.C. 20230. A copy shall be simultaneously mailed or delivered to the Director, Office of Munitions Control, Department of State, Washington, D.C. 20520.

§ 128.6   Discovery.

(a) *Discovery by the respondent.* The respondent, through the Hearing Commissioner, may request from the Office of Munitions Control any relevant information, not privileged, that may be necessary or helpful in preparing a defense. The Office of Munitions Control may supply summaries in place of original documents and may withhold information from discovery if the interests of national security so require, or if necessary to comply with any statute, executive order or regulation requiring that the information not be disclosed. The respondent may request the Hearing Commissioner to request any relevant information, books, records, or other evidence, from any other person or government agency so long as the request is reasonable in scope and not unduly burdensome.

(b) *Discovery by the Office of Munitions Control.* The Office of Munitions Control or the Hearing Commissioner may request from the respondent admissions of facts, answers to interrogatories, the production of books, records, or other relevant evidence, so long as the request is relevant and material, reasonable in scope, and not unduly burdensome.

(c) *Subpoenas.* At the request of any party, the Hearing Commissioner may issue subpoenas, returnable before him, requiring the attendance of witnesses and the production of books, records, and other documentary or physical evidence determined by the Hearing Commissioner to be relevant and material to the proceedings, reasonable in scope, and not unduly burdensome.

(d) *Enforcement of discovery rights.* If the Office of Munitions Control fails to

provide the respondent with information in its possession which is not otherwise available and which is necessary to the respondent's defense, the Hearing Commissioner may dismiss the charges on her or his own motion or on a motion of the respondent. If the respondent fails to respond with reasonable diligence to the requests for discovery by the Office of Munitions Control or the Hearing Commissioner, the Commissioner, on her or his own motion or motion of the Office of Munitions Control, and upon such notice to the respondent as the Hearing Commissioner may direct, may strike respondent's answer and declare the respondent in default, or make any other ruling which the Commissioner deems necessary and just under the circumstances. If a third party fails to respond to the request for information, the Hearing Commissioner shall consider whether the evidence sought is necessary to a fair hearing, and if it is so necessary that a fair hearing may not be held without it, the Commissioner shall dismiss the charges.

§ 128.7   Prehearing conference.

(a) The Hearing Commissioner may, upon his own motion or upon motion of any party, request the parties or their counsel to a prehearing conference to consider (1) simplification of issues; (2) the necessity or desirability of amendments to pleadings; (3) obtaining stipulations of fact and of documents to avoid unnecessary proof; or (4) such other matter as may expedite the disposition of the proceeding. The Hearing Commissioner will prepare a summary of the action agreed upon or taken at the conference, and will incorporate therein any written stipulations or agreements made by the parties. The conference proceedings may be recorded magnetically or taken by a reporter and transcribed, and filed with the Hearing Commissioner.

(b) If a conference is impracticable, the Hearing Commissioner may request the parties to correspond with him or her to achieve the purposes of a conference. The Hearing Commissioner shall prepare a summary of action taken as in the case of a conference.

§ 128.8   Hearings.

(a) A respondent who had not filed a timely written answer is not entitled to a hearing, and the case may be considered by the Hearing Commissioner as provided in § 128.4(a). If an answer is filed, but no oral hearing demanded, the Hearing Commissioner may proceed to consider the case upon the written pleadings and evidence available. The Commissioner may provide for the making of the record in such manner as

the Commissioner deems appropriate. If respondent answers and demands an oral hearing, the Hearing Commissioner, upon due notice, shall set the case for hearing, unless a respondent has raised in his answer no issues of material fact to be determined. If respondent fails to appear at a scheduled hearing, the hearing nevertheless may proceed in respondent's absence. The respondent's failure to appear will not affect the validity of the hearing or any proceedings or action thereafter.

(b) Hearings will be conducted by the Hearing Commissioner in a fair and impartial manner. The rules of evidence prevailing in courts of law do not apply, but all evidentiary material relevant and material to the inquiry will be received and given appropriate weight. Diligent effort shall be made to declassify or to secure unclassified summaries or extracts of classified materials, when not contrary to any statute or security regulation. The Hearing Commissioner will compare an unclassified summary or extract with the related classified materials. If he finds that the summary or extract is supported by the classified materials and omits only so much as remains classified, he may admit the unclassified summary or extract as part of the record, to the extent that such summary or extract is relevant and material. The respondent may submit evidence in explanation or contradiction thereof. The respondent is not entitled to inspect classified materials.

(c) The Hearing Commissioner may administer oaths and affirmations. Respondent may be represented by counsel. Unless otherwise agreed by the parties and the Hearing Commissioner, the proceeding will be taken by a reporter or by magnetic recording, transcribed, and filed with the Hearing Commissioner. Respondent may examine the transcript and may obtain a copy upon payment of proper costs.

§ 128.9   Proceedings before and report of Hearing Commissioner.

(a) The Hearing Commissioner may conform any part of the proceedings before him or her to the Federal Rules of Civil Procedure. The record may be made available in any other proceeding involving the same respondent.

(b) The Hearing Commissioner, after considering the record, will prepare a written report. The report will include findings of fact, findings of law, a finding whether a law or regulation has been violated, and the Hearing Commissioner's recommendations. It shall be transmitted to the Director, Bureau of Politico-Military Affairs, Department of State.

### § 128.10   Disposition of proceedings.

Where the evidence is not sufficient to support the charges, the Director, Office of Munitions Control or the Hearing Commissioner will dismiss the charges. Where the Hearing Commissioner finds that a violation has been committed, the Commissioner's recommendation shall be advisory only. The Director, Bureau of Politico-Military Affairs will review the record, consider the report of the Hearing Commissioner, and make an appropriate disposition of the case. He may issue an order debarring the respondent from participating in the export of defense articles or defense services as provided in § 127.7 of this subchapter, impose a civil penalty as provided in § 127.10 of this chapter, or take such other action as the Commissioner deems appropriate. Any debarment order will be effective for the period of time specified therein and may contain such additional terms and conditions as are deemed appropriate. A copy of the order together with a copy of the Hearing Commissioner's report will be served upon the respondent.

### § 128.11   Consent orders.

The Office of Munitions Control and the respondent may, be agreement, submit to the Hearing Commissioner a proposal for the issuance of a consent order. The Hearing Commissioner will review the facts of the case and the proposal and may conduct conferences with the parties and may require the presentation of evidence in the case. If the Commissioner does not approve the proposal, the Commissioner will notify the parties and the case will proceed as though no consent proposal had been made. If the proposal is approved, the Commissioner will report the facts of the case along with recommendations to the Director, Bureau of Politico-Military Affairs. If the Director does not approve the proposal, the case will proceed as though no consent proposal had been made. If the Director approves the proposal, an appropriate order may be issued.

### § 128.12   Rehearings.

The Hearing Commissioner may grant a rehearing or reopen a proceeding at any time for the purpose of hearing any relevent and material evidence which was not known or obtainable at the time of the original hearing. A report for rehearing or reopening must contain a summary of such evidence, and must explain the reasons why it could not have been presented at the original hearing. The Hearing Commissioner will inform the parties of any further hearing, and will conduct such hearing and submit a report and recommendations in the same manner as provided for the original proceeding (described in § 128.10).

### § 128.13   Appeals.

(a) *Filing of appeals.* An appeal must be in writing, and be addressed to and filed with the Appeals Board, U.S. Department of Commerce, Washington, D.C. 20230. An appeal from a final order denying export privileges or imposing civil penalties must be filed within 30 days after receipt of a copy of the order.

(b) *Grounds and conditions for appeal.* The respondent may appeal from a debarment or from the imposition of a civil penalty upon the ground (1) that the findings of a violation are not supported by any substantial evidence; (2) that a prejudicial error of law was committed; or (3) that the provisions of the order are arbitrary, capricious, or an abuse of discretion. The appeal must specify upon which of these grounds the appeal is based and must indicate from which provisions of the order the appeal is taken. An appeal from an order issued upon default will not be entertained if the respondent has failed to seek relief as provided in § 128.4(b).

(c) *Matters considered on appeal.* An appeal will be considered upon the basis of the assembled record. This record consists of (but is not limited to) the charging letter, the respondent's answer, the transcript or magnetic recording of the hearing before the Hearing Commissioner, the report of the Hearing Commissioner, the order of the Director, Bureau of Politico-Military Affairs, and any other relevant documents involved in the proceedings before the Hearing Commissioner. The Appeals Board may direct a rehearing and reopening before the Hearing Commissioner if it finds that the record is insufficient or that new evidence is relevant and material to the issues and was not known and was not available to the respondent at the time of the original hearings. The Appeals Board may order oral argument before it, but shall not consider facts or arguments relating to the policy embodied in rules or regulations alleged to have been violated.

(d) *Effect of appeals.* The taking of an appeal will not stay the operation of any order.

(e) *Preparation of appeals*—(1) *General requirements.* An Appeal shall be clearly marked "Ref: Appeals Board, U.S. Department of Commerce, Washington, D.C. 20230," and shall be in letter form. The appeal and accompanying material should be filed in duplicate, unless otherwise indicated, and a copy simultaneously mailed or delivered to the Director, Office of Munitions Control, Department of State, Washington, D.C. 20520.

(2) *Oral presentation.* The Appeals Board may grant the appellant an opportunity for oral argument. The Appeals Board will set the time and place for oral argument and will notify the parties, ordinarily at least 10 days before the date set.

(3) *Records.* Records on appeal will be made available for inspection and copying by the appellant or duly authorized representative upon written application. The application should be made to the Appeals Board, U.S. Department of Commerce, Washington, D.C. 20230. It must identify the material or information to be inspected or copied, and the purposes for which it is sought.

(f) *Decisions.* All appeals will be considered and decided within a reasonable time after they are filed. An appeal may be granted or denied in whole or in part, or dismissed at the request of the appellant. The decision of the Appeals Board will be final.

### § 128.14   Proceedings confidential.

Proceedings under this Part are confidential, with the exception of any orders issued therein. Reports of the Hearing Commissioner and copies of transcripts or recordings of hearings will be available to parties and, to the extent of their own testimony, to witnesses. All records are available to any U.S. Government agency showing a proper interest therein.

### § 128.15   Orders containing probationary periods.

(a) *Revocation of probationary periods.* A debarment or interim suspension order may set a probationary period during which the order may be held in abeyance for all or part of the debarment or suspension period, subject to the conditions stated therein. The Director, Office of Munitions Control may apply, without notice to any person to be affected thereby to the Hearing Commissioner for an order revoking probation when it appears that the conditions of the probation have been breached. The facts in support of the application will be presented to the Hearing Commissioner who will report thereon and make a recommendation to the Director, Bureau of Politico-Military Affairs. The latter will make a determination whether to revoke probation and will issue an appropriate order.

(b) *Hearing*—(1) *Objections upon notice.* Any person affected by an application upon notice to revoke probation, within the time specified in

the notice, may file objections with the Hearing Commissioner.

(2) *Objections to order without notice.* Any person adversely affected by an order revoking probation without notice may request that the order be set aside by filing his objections thereto with the Hearing Commissioner. The request will not stay the effective date of the order or revocation.

(3) *Requirements for filing objection.* Objections filed with the Hearing Commissioner must be submitted in writing and in duplicate. A copy must be simultaneously submitted to the Office of Munitions Control. Denials and admissions, as well as any mitigating circumstances, which the person affected intends to present must be set forth in or accompany the letter of objection and must be supported by evidence. A request for an oral hearing may be made at the time of filing objections.

(4) *Determination.* The application and objections thereto will be referred to the Hearing Commissioner. An oral hearing, if requested, will be conducted at an early convenient date, unless the objections filed raise no issues of material fact to be determined. The Hearing Commissioner will report the facts and make a recommendation to the Director, Bureau of Politico-Military Affairs, who will determine whether the application should be granted or denied and will issue an appropriate order. A copy of the order and of the Hearing Commissioner's report will be furnished to any person affected thereby.

(c) *Effect of revocation on other actions.* The revocation of a probationary period will not preclude any other action concerning a further violation, even where revocation is based on the further violation.

### § 128.16 Extension of time.

The Hearing Commissioner, for good cause shown, may extend the time within which to prepare and submit an answer to a charging letter or to perform any other act required by Part 128 of this subchapter.

### § 128.17 Availability of orders.

All debarment orders, orders imposing civil penalties, probationary periods, and interim suspension orders are available for public inspection in the Public Reading Room of the Department of State.

## PART 129—CONFIDENTIAL BUSINESS INFORMATION

Sec.
129.1   Confidential business information
129.2   Other reporting requirements

129.3   Utilization of and access to reports and records
Authority: Section 38(e) and section 39(d), Arms Export Control Act, 90 Stat. 744 (22 U.S.C. 2778); E.O. 11958, 42 FR 4311; section 12(c), Export Administration Act of 1979, 50 U.S.C. App. 2411(c); 5 U.S.C. 552(b) (3) and (4); 22 U.S.C. 2658.

### § 129.1 Confidential business information.

(a) Any person who is required to furnish information under this subchapter may identify any information furnished hereunder which the person considers to be confidential business information.

(b) For purposes of this subchapter, "confidential business information" means commercial or financial information which by law is entitled to protection from disclosure. (See, e.g., 5 U.S.C. 552(b) (3) and (4); 18 U.S.C. 1905; 22 U.S.C. 2778(e); Rule 26(c)(7), Federal Rules of Civil Procedure).

(c) Information which is deemed confidential by the Office of Munitions Control, or with reference to which a request for confidential treatment is made by the person making such information available, shall be protected from unauthorized disclosure. Such information which was received by the Office of Munitions Control prior to June 30, 1980, shall be exempt from public disclosure unless the Director, Office of Munitions Control, determines that the withholding of such information is contrary to the national interest in accordance with Section 38(e) of the Arms Export Control Act (22 U.S.C. 2778(e)). In accordance with the latter provision, information of this kind received after June 30, 1980 shall be withheld from public disclosure unless the Director, Office of Munitions Control, determines that the release of such information is in the national interest. Such information shall not be disclosed to the public prior to providing advance notice to the person who provided the information.

(d) Registration documents required by Part 122 of this subchapter are not deemed to constitute confidential business information. The unclassified reports on commercial and governmental military exports required by section 36 of the Arms Export Control Act (22 U.S.C. 2776) are also not deemed to constitute such information.

### § 129.2 Other reporting requirements.

The submission of reports under this subchapter does not relieve any person of any requirements to furnish information to any federal, state, or municipal agency, department or other instrumentality as required by law, regulation or contract.

### § 129.3 Utilization of and access to reports and records.

(a) All information reported and records maintained under this part will be made available, upon request, for utilization by standing committees of the Congress and subcommittees thereof, and by United States Government agencies, in accordance with Sections 38(e) and 39(d) of the Arms Export Control Act (22 U.S.C. 2778(e), 2779(d)), and reports based upon such information will be submitted to Congress in accordance with sections 36(a)(8) and 36(b)(1) of that Act (22 U.S.C. 2776(a)(8) and (b)(1)).

(b) Nothing in this section shall preclude the furnishing of information to foreign governments for law enforcement or regulatory purposes under international arrangements between the United States and any foreign government.

## PART 130—POLITICAL CONTRIBUTIONS, FEES, AND COMMISSIONS

Sec.
130.1   Definitions.
130.2   [Reserved]
130.3   [Reserved]
130.4   Obligation to furnish information to the Office of Munitions Control, Department of State.
130.5   Information to be furnished by applicant or supplier to the Office of Munitions Control, Department of State.
130.6   Supplementary reports.
130.7   [Reserved]
130.8   [Reserved]
130.9   Information to be furnished by vendor to applicant or supplier.
130.10   Information to be furnished to applicant, supplier or vendor by a recipient of a fee or commission.
130.11   Recordkeeping.
Authority: Sections 38 and 39, Arms Export Control Act, 90 Stat. 744, 767 (22 U.S.C. 2778 and 2779), E.O. 10973, 25 FR 10469; 22 U.S.C. 2658.

### § 130.1 Definitions.

For the purposes of this part:

(a) "Applicant" means any person who applies to the Office of Munitions Control for any license or approval required under this subchapter for the export of defense articles or defense services valued in an amount of $100,000 or more which are being sold commercially to or for the use of the armed forces of a foreign country or international organization. This term also includes a persons to whom the required license or approval has been given.

(b) "Supplier" means any person who enters into a contract with the Department of Defense for the sale of defense articles or defense services valued in an amount of $100,000 or more

under section 22 of the Arms Export Control Act (22 U.S.C. 2762).

(c) "Vendor" means any distributor or manufacturer who, directly or indirectly, furnishes to an applicant or supplier defense articles valued in an amount of $100,000 or more which are end-items or major components as defined in § 121.26. It also means any person who, directly or indirectly, furnishes to an applicant or supplier defense articles or services valued in an amount of $100,000 or more when such articles or services are to be delivered (or incorporated in defense articles or defense services to be delivered) to or for the use of the armed forces of a foreign country or international organization under:

(1) A sale requiring a license or approval from the Office of Munitions Control under this subchapter; or

(2) A sale pursuant to a contract with the Department of Defense under section 22 of the Arms Export Control Act (22 U.S.C. 2762).

(d) "Defense articles" and "defense services" have the meaning given those terms in paragraphs (3), (4) and (7) of section 47 of the Arms Export Control Act (22 U.S.C. 2794 (3), (4), (7)). When used with reference to commercial sales, the definition in § 121.32 applies.

(e) "Political contribution" means any loan, gift, donation or other payment of $1,000 or more made, or offered or agreed to be made, directly or indirectly, whether in cash or in kind, which is:

(1) To or for the benefit of, or at the direction of, any foreign candidate, committee, political party, political faction, or government, or government subdivision, or any individual elected, appointed or otherwise designated as an employee or officer thereof; and

(2) For the solicitation or promotion or otherwise to secure the conclusion of a sale of defense articles or defense services to or for the use of the armed forces of a foreign country or international organization. Taxes, customs duties, license fees, and other charges required to be paid by applicable law or regulation are not regarded as political contributions.

(f)(1) "Fee or commission" means, except as provided in subparagraph (2) of this paragraph, any loan gift, donation or other payment of $1,000 or more made, or offered or agreed to be made, directly or indirectly, whether in cash or in kind, and whether or not pursuant to a written contract, which is:

(i) To or at the direction of any person, irrespective of nationality, whether or not employed by or affiliated with an applicant, a supplier or a vendor; and

(ii) For the solicitation or promotion or otherwise to secure the conclusion of a sale of defense articles or defense services to or for the use of the armed forces of a foreign country or international organization.

(2) The term "fee or commission" does not include:

(i) A political contribution or a payment excluded by paragraph (d) of this section from the definition of political contribution;

(ii) A normal salary (excluding contingent compensation) established at an annual rate and paid to a regular employee of an applicant, supplier or vendor;

(iii) General advertising or promotional expenses not directed to any particular sale or purchaser; or

(iv) Payments made, or offered or agreed to be made, solely for the purchase by an applicant, supplier or vendor of specific goods or technical, operational or advisory services, which payments are not disproportionate in amount with the value of the specific goods or services actually furnished.

(g) "Armed forces" means the army, navy, marine, air force and coast guard, as well as the national guard and national police, of a foreign country. This term also includes any military unit or military personnel organized under or assigned to an international organization.

§ 130.2  [Reserved]

§ 130.3  [Reserved]

§ 130.4  Obligation to furnish information to the Office of Munitions Control, Department of State.

(a)(1) Each applicant must inform the Office of Munitions Control, Department of State as to whether applicant or its vendors have paid, or offered or agreed to pay, in respect of any sale for which a license or approval is requested:

(i) Political contributions in an aggregate amount of $5,000 or more, or

(ii) Fees or commissions in an aggregate amount of $100,000 or more. If so, applicant must furnish to the Office of Munitions Control the information specified in § 130.5. The furnishing of such information or an explanation satisfactory to the Director of the Office of Munitions Control as to why all the information cannot be furnished at that time is a condition precedent to the granting of the relevant license or approval.

(2) The requirements of this paragraph do not apply in the case of an application with respect to a sale for which all the information specified in § 130.5 which is required by this section to be reported shall already have been furnished.

(b) Each supplier must inform the Office of Munitions Control as to whether the supplier or its vendors have paid, or offered or agreed to pay, in respect of any sale:

(1) Political contributions in an aggregate amount of $5,000 or more, or

(2) Fees or commissions in an aggregate amount of $100,000 or more. If so, supplier must furnish to the Office of Munitions Control the information specified in § 130.5. The information required to be furnished pursuant to this paragraph must be so furnished no later than 30 days after the contract award to such supplier, or such earlier date as may be specified by the Department of Defense. For purposes of this paragraph, a contract award includes a purchase order, exercise of an option, or other procurement action requiring a supplier to furnish defense articles or defense services to the Department of Defense for the purposes of section 22 of the Arms Export Control Act (22 U.S.C. 26772).

(c) In determining whether an applicant or its vendors, or a supplier or its vendors, as the case may be, have paid, or offered or agreed to pay, political contributions in an aggregate amount of $5,000 or more in respect of any sale so as to require a report under this section, there must be included in the computation of such aggregate amount any political contributions in respect of the sale which are paid by or on behalf of, or at the direction of, any person to whom the applicant, supplier or vendor has paid, or offered or agreed to pay, a fee or commission in respect of the sale. Any such political contributions are deemed for purposes of this part to be political contributions by the applicant, supplier or vendor who paid or offered or agreed to pay the fee or commission.

(d) Any applicant or supplier which has informed the Office of Munitions Control under this section that neither it nor its vendors have paid, or offered or agreed to pay, political contributions or fees or commissions in an aggregate amount requiring the information specified in § 130.5 to be furnished, must subsequently furnish such information within 30 days after learning that it or its vendors have paid, or offered or agreed to pay, political contributions or fees or commissions in respect of a sale in an aggregate amount which, if known to applicant or supplier at the time of its previous communication with the Office of Munitions Control, would have required the furnishing of information under § 130.4 at that time. Any report furnished under this paragraph must, in addition to the information specified in

§ 130.5, include a detailed statement of the reasons why applicant or supplier did not furnish the information at the time specified in paragraph (a) or paragraph (b) of this section, as applicable.

§ 130.5   Information to be furnished by applicant or supplier to the Office of Munitions Control, Department of State.

(a) Every person required under § 130.4 to furnish information specified in this section in respect to any sale must furnish to the Office of Munitions Control:

(1) The total contract price of the sale to the foreign purchaser;

(2) The name, nationality, address and principal place of business of the applicant or supplier, as the case may be, and, if applicable, the employer and title;

(3) The name, nationality, address and principal place of business, and, if applicable, employer and title of each foreign purchaser, including the ultimate end-user involved in the sale;

(4) Except as provided in paragraph (c) of this section, a statement setting forth with respect to such sale:

(i) The amount of each political contribution paid, or offered or agreed to be paid, and the amount of each fee or commission paid, or offered or agreed to be paid;

(ii) The date or dates on which each reported amount was paid, or offered or agreed to be paid;

(iii) The recipient of each such amount paid, or intended recipient if not yet paid;

(iv) The person who paid, or offered or agreed to pay such amount; and

(v) The aggregate amounts of political contributions and of fees or commission, respectively, which shall have been reported.

(b) In responding to paragraph (a)(4) of this section, the statement must:

(1) With respect to each payment reported, state whether such payment was in cash or in kind. If in kind, it must include a description and valuation thereof. Where precise amounts are not availble because a payment has not yet been made, an estimate of the amount offered or agreed to be paid must be provided;

(2) With respect to each recipient, state:

(i) Its name;

(ii) Its nationality;

(iii) Its address and principal place of business;

(iv) Its employer and title; and

(v) Its relationship, if any, to applicant, supplier, or vendor, and to any foreign purchaser or end-user.

(c) In submitting a report required by § 130.4, the detailed information specified in paragraphs (a)(4) and (b) of this section need not be included if the payments do not exceed:

(1) $2,500 in the case of political contributions; and,

(2) $50,000 in the case of fees or commissions.

In lieu of reporting detailed information with respect to such payments, the aggregate amount thereof must be reported, identified as miscellaneous political contributions or miscellaneous fees or commissions, as the case may be.

(d) Every person required to furnish the information specified in paragraphs (a) and (b) of this section must respond fully to each subdivision of those paragraphs and, where the correct response is "none" or "not applicable," must so state.

§ 130.6   Supplementary reports.

(a) Every applicant or supplier who is required under § 130.4 to furnish the information specified in § 130.5 must submit a supplementary report in connection with each sale in respect of which applicant or supplier has previously been required to furnish information if:

(1) Any political contributions aggregating $2,500 or more or fees or commission aggregating $50,000 or more not previously reported are paid, or offered or agreed to be paid by applicant or supplier or any vendor;

(2) Subsequent developments cause the information initially reported to be no longer accurate or complete (as in the case where a payment actually made is substantially different in amount from a previously reported estimate of an amount offered or agreed to be paid); or

(3) If additional details are requested by the Office of Munitions Control with respect to any miscellaneous payments reported under § 130.5(c).

(b) Supplementary reports must be sent to the Office of Munitions Control within 30 days after the payment, offer or agreement reported therein or, when requested by the Office of Munitions Control, within 30 days after such request, and must include:

(1) Any informatin specified in § 130.5 required or requested to be reported and which was not previously reported; and

(2) The Munitions Control license number, if any, and the Department of Defense contract number, if any, related to the sale.

§ 130.7   [Reserved]

§ 130.8   [Reserved]

§ 130.9   Information to be furnished by vendor to applicant or supplier.

(a) In order to determine whether it is obliged under § 130.4 to furnish the information specified in § 130.5 with respect to a sale, every applicant or supplier must obtain from each vendor, from or through whom the applicant acquired defense articles or defense services forming the whole or a part of the sale, a full disclosure by the vendor of all political contributions or fees or commission paid, by vendor with respect to such sale. Such disclosure must include responses to all the information pertaining to vendor required to enable applicant or supplier, as the case may be, to comply fully with §§ 130.4 and 130.5. If so required, they must include the information furnished by each vendor in providing the information specified.

(b) Any vendor which has been requested by an applicant or supplier to furnish an initial statement under paragraph (a) of this section must, except as provided in paragraph (c), furnish such statement in a timely manner and not later than 20 days after receipt of such request.

(c) If the vendor believes that furnishing information to an applicant or supplier in a requested statement would unreasonably risk injury to the vendor's commercial interests, the vendor may furnish in lieu of the statement an abbreviated statement disclosing only the aggregate amount of all political contributions and the aggregate amount of all fees or commissions which have been paid, or offered or agreed to be paid, by the vendor with respect to the sale. Any abbreviated statement furnished to an applicant or supplier under this paragraph must be accompanied by a certification that the requested information has been reported by the vendor directly to the Office of Munitions Control. The vendor must simultaneously report fully to the Office of Munitions Control all information which the vendor would otherwise have been required to report to the applicant or supplier under this section. Each such report must clearly identify the sale with respect to which the reported information pertains.

(d)(1) If upon the 25th day after the date of its request to vendor, an applicant or supplier has not received from the vendor the initial statement required by paragraph (a) of this section, the applicant or supplier must submit to the Office of Munitions Control a signed statement attesting to:

(i) The manner and extent of applicant's or supplier's attempt to obtain from the vendor the initial statement required under paragraph (a) of this section;

(ii) Vendor's failure to comply with this section; and

(iii) The amount of time which has elapsed between the date of applicant's or supplier's request and the date of the signed statement;

(2) The failure of a vendor to comply with this section does not relieve any applicant or supplier otherwise required by § 130.4 to submit a report to the Office of Munitions Control from submitting such a report.

**§ 130.10  Information to be furnished to applicant, supplier or vendor by a recipient of a fee or commission.**

(a) Every applicant or supplier, and each vendor thereof:

(1) In order to determine whether it is obliged under §§ 130.4 or 130.9 to furnish information specified in § 130.5 with respect to a sale; and

(2) Prior to furnishing such information, must obtain from each person, if any, to whom it has paid, or offered or agreed to pay, a fee or commission in respect of such sale, a timely statement containing a full disclosure by such a person of all political contributions paid, or offered or agreed to be paid, by it or on its behalf, or at its direction, in repect of such sale. Such disclosure must include responses to all the information required to enable the applicant, supplier or vendor, as the case may be, to comply fully with §§ 130.4, 130.5 and 130.9.

(b) In obtaining information under paragraph (a) of this section, the applicant, supplier or vendor, as the case may be, must also require each person to whom a fee or commission is paid, or offered or agreed to be paid, to furnish from time to time such reports of its political contributions as may be necessary to enable the applicant, supplier or vendor, as the case may be, to comply fully with §§ 130.4, 130.5, 130.6 and 130.9.

(c) The applicant, supplier or vendor, as the case may be, must include any political contributions paid, or offered or agreed to be paid, by or on behalf of, or at the direction of, any person to whom it has paid, or offered or agreed to pay a fee or commission in determining whether applicant, supplier or vendor is required by §§ 130.4, 130.6 or § 130.9 to furnish information specified in §130.5.

**§ 130.11  Recordkeeping.**

Each applicant, supplier and vendor must maintain a record of any information it was required to furnish or obtain under this part and all records upon which its reports are based for a period of not less than six years following the date of the report to which they pertain.

Dated: December 11, 1980.

For the Secretary of State.

**Matthew Nimetz,**

*Under Secretary of State for Security Assistance, Science, and Technology.*

[FR Doc. 80-39510 Filed 12-18-80; 8:45 am]

**BILLING CODE 4710-12-M**