UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,

    Defendants.

No. 2:20-cv-0111-RAJ

**FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT 17

83 Fed. Reg. 24198

Motion for Summary Judgment
Exhibits

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12002
Washington, DC 20530
202-353-0533

Opposition to Motion for Preliminary Injunction
(No. 2:20-cv-111-RAJ) – i

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12002
Washington, DC 20530
202-353-0533

83 FR 24198-01, 2018 WL 2332191(F.R.)
PROPOSED RULES
DEPARTMENT OF STATE
22 CFR Parts 121, 123, 124, 126, and 129
[Public Notice 10094]
RIN 1400-AE30

International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III

Thursday, May 24, 2018

AGENCY: Department of State.

**\*24198**  ACTION: Proposed rule.

SUMMARY: The Department of State (the Department) proposes to amend the International Traffic in Arms Regulations (ITAR) to revise Categories I (firearms, close assault weapons and combat shotguns), II (guns and armament) and III (ammunition and ordnance) of the U.S. Munitions List (USML) to describe more precisely the articles warranting export and temporary import control on the USML. Items removed from the USML would become subject to the Export Administration Regulations (EAR).
DATES: The Department will accept comments on this proposed rule until July 9, 2018.

ADDRESSES: Interested parties may submit comments within 45 days of the date of publication by one of the following methods:
• Email: DDTCPublicComments@state.gov with the subject line, "ITAR Amendment—Categories I, II, and III."

• Internet: At www.regulations.gov, search for this notice using Docket DOS-2017-0046.

Comments received after that date will be considered if feasible, but consideration cannot be assured. Those submitting comments should not include any personally identifying information they do not desire to be made public or information for which a claim of confidentiality is asserted, because those comments and/or transmittal emails will be made available for public inspection and copying after the close of the comment period via the Directorate of Defense Trade Controls website at www.pmddtc.state.gov. Parties who wish to comment anonymously may do so by submitting their comments via www.regulations.gov, leaving the fields that would identify the commenter blank and including no identifying information in the comment itself.

FOR FURTHER INFORMATION CONTACT: Robert Monjay, Office of Defense Trade Controls Policy, Department of State, telephone (202) 663-2817; email DDTCPublicComments@state.gov. ATTN: Regulatory Change, USML Categories I, II, and III.

SUPPLEMENTARY INFORMATION: The Directorate of Defense Trade Controls (DDTC), U.S. Department of State, administers the International Traffic in Arms Regulations (ITAR) (22 CFR parts 120 through 130). The items subject to the jurisdiction of the ITAR, i.e., "defense articles," are identified on the ITAR's U.S. Munitions List (USML) (22 CFR 121.1). With few exceptions, items not subject to the export control jurisdiction of the ITAR are subject to the jurisdiction of the Export Administration Regulations (EAR, 15 CFR parts 730 through 774, which includes the Commerce Control List (CCL) in Supplement No. 1 to part 774), administered by the Bureau of Industry and Security (BIS), U.S. Department of Commerce. Both the ITAR and the EAR impose license requirements on exports and reexports. The Department of Commerce is publishing a companion rule in this edition of the Federal Register.

Pursuant to section 38(a)(1) of the Arms Export Control Act (AECA), all defense articles controlled for export or import are part of the United States Munitions List under the AECA. All references to the USML in this rule, however, are to the list of AECA defense articles that are controlled for purposes of export or temporary import pursuant to the ITAR, and not to the list of AECA defense articles on the United States Munitions Import List (USMIL) that are controlled by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for purposes of permanent import under its regulations at 27 CFR part 447. References to the USMIL are to the list of AECA defense articles controlled by ATF for purposes of permanent import.

Section 38(b)(1)(A)(ii) of the AECA, requires, with limited exceptions, registration of persons who engage in the business of brokering activities with respect to the manufacture, export, import, or transfer of any defense article or defense service designated by the President as such under section 38(a)(1) and licensing for such activities. Through Executive Order 13637, the President delegated the responsibility for registration and licensing of brokering activities to the Department of State with respect to defense articles or defense services controlled either for purposes of export by the Department of State or for purposes of permanent import by ATF. Section 129.1(b) of the ITAR states this requirement. As such, all defense articles described in the USMIL or the USML are subject to the brokering controls administered by the U.S. Department of State in part 129 of the ITAR. The transfer of defense articles from the ITAR's USML to the EAR's CCL for purposes of export controls does not affect the list of defense articles controlled on the USMIL under the AECA for purposes of permanent import or brokering controls for any brokering activity, including facilitation in their manufacture, export, permanent import, transfer, reexport, or retransfer. This rule proposes adding a new paragraph (b)(2)(vii) to § 129.2 to update the enumerated list of actions that are not considered brokering. This change is a conforming change and is needed to address the movement of items from the USML to the CCL that will be subject to the brokering controls, to ensure that the U.S. government does not impose a double licensing requirement on the export, reexport or retransfer of such items.

The Department of State is engaged in an effort to revise the U.S. Munitions List so that its scope is limited to those defense articles that provide the United States with a critical military or intelligence advantage or, in the case of weapons, are inherently for military end use. The articles now controlled by USML Categories I, II, and III that would be removed from the USML under this proposed rule do not meet this standard, including many items which are widely available in retail outlets in the United States and abroad.

**Revision of Category I**
This proposed rule revises USML Category I, covering firearms and related articles, to control only defense articles that are inherently military or that are not otherwise widely available for commercial sale. In particular, the revised category will not include non-automatic and semi-automatic firearms to caliber .50 (12.7mm) inclusive, currently controlled under paragraph (a), and all of the parts, components, accessories, and attachments specially designed for those articles. Such items will be subject to the new controls in Export Control Classification Numbers 0A501, 0A502, 0A503, 0A504, 0A505, 0B501, 0B505, 0D501, 0D505, 0E501, and 0E502. Such controls in Category 0 of the CCL will be published in a separate rule by the Department of Commerce.

Paragraph (a) of USML Category I will cover firearms that fire caseless ammunition. Paragraph (b) will continue to cover fully automatic firearms to caliber .50 (12.7mm) inclusive. Paragraph (c) will cover firearms specially designed to integrate fire control, automatic tracking, or automatic firing systems, and all **\*24199** weapons previously described in paragraph (c) that remain on the USML will be covered by paragraph (a), (b) or (c) of this category or by Category II. Paragraph (d) will cover fully automatic shotguns. Paragraph (e) will continue to cover silencers, mufflers, sound suppressors, and specially designed parts and components; flash suppressors will be subject to the EAR. Paragraph (f) will be reserved, as riflescopes and other firearms sighting devices may be controlled in USML Category XII if they have night vison or infrared capabilities, and other riflescopes will be subject to the EAR. Paragraph (g) will continue to cover barrels, receivers (frames), bolts, bolt carriers, slides, or sears, specially designed for the firearms in Category I. Paragraph (h) will cover high capacity (greater than 50 rounds) magazines, and parts and components to convert a semi-automatic firearm into a fully automatic firearm, and accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting. Paragraph (i) will continue to cover the technical data and defense services.

A new (x) paragraph will be added to USML Category I, allowing ITAR licensing for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category I and are described in the purchase documentation submitted with the license application.

The note to Category I will be retained, with conforming revisions. A new second note will be added to clarify the terms "firearm," "fully automatic," and "caseless ammunition".

**Revision of Category II**

This proposed rule revises USML Category II, covering guns and armament, establishing a bright line between the USML and the CCL for the control of these articles.

Most significantly, paragraph (j), controlling parts and components, will be revised to enumerate the articles controlled therein.

Paragraph (a) will be revised to enumerate the articles controlled in that paragraph. The articles currently covered in paragraph (c) (apparatus and devices for launching or delivering ordnance) still warranting control on the ITAR will be included in new paragraph (a)(4). A new paragraph (a)(5) will be added for developmental guns and armaments funded by the Department of Defense and the specially designed parts and components of those developmental guns and armaments. The articles currently controlled in paragraph (f), engines for self-propelled guns and howitzers in paragraph (a), will be on the CCL in ECCN 0A606. Tooling and equipment for the production of articles controlled in USML Category II, currently in paragraph (g), will be on the CCL in ECCN 0B602. Test and evaluation equipment, currently in paragraph (h), will be on the CCL in ECCN 0B602. Certain autoloading systems controlled in paragraph (i) will be moved to paragraphs (j)(9) and (11).

A new (x) paragraph will be added to USML Category II, allowing ITAR licensing for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category II and are described in the purchase documentation submitted with the application.

**Revision of Category III**

This proposed rule revises USML Category III, covering ammunition and ordnance, to establish a bright line between the USML and the CCL for the control of these articles and to be consistent with the changes to Category I.

Most significantly, paragraphs (a) and (d) will be revised to remove broad catch-alls and enumerate the articles to be controlled therein. For example, paragraph (a), which controls ammunition for articles in USML Categories I and II, will be revised to specifically list the ammunition that it controls. A new paragraph (a)(10) will be added for developmental ammunition funded by the Department of Defense and the parts and components specially designed for such developmental ammunition. Ammunition not enumerated in paragraph (a) will be subject to the EAR. Likewise, revised paragraph (d), which controls parts and components, will enumerate the articles it controls; those articles not identified but currently captured via the catch-all will be subject to the EAR.

Additionally, paragraph (c), which controls production equipment and tooling, will be removed and placed into reserve. The articles currently covered by this paragraph will be subject to the EAR.

A new (x) paragraph will be added to USML Category III, allowing ITAR licensing for commodities, software, and technology subject to the EAR, provided those commodities, software, and technology are to be used in or with defense articles controlled in USML Category III and are described in the purchase documentation submitted with the application.

**Conforming ITAR Changes**

Additionally, conforming changes will be made to several sections of the ITAR that refer to the current controls in USML Category I(a). These sections will be amended because they all refer to firearms that will be controlled on the CCL. Section 123.16(b)(2) will be revised to remove reference to the firearms exemptions at § 123.17(a) through (e), which describe the firearms exemptions, because the paragraphs will be removed as a consequence of the control of non-automatic and semi-automatic firearms on the CCL. For the same reason, § 123.16(b)(6) will be revised to describe only the remaining exemption at § 123.17 (personal protective gear), and § 123.16(b)(7) will be reserved. Section 123.17 will be amended to remove paragraphs (a) through (e), consistent with changes made to the USML. Section 123.18, as it describes exemptions for firearms that will be controlled for export by the Department of Commerce, will be removed and placed into reserve. Revision of § 124.14(c)(9) will remove the example of "sporting firearms for commercial resale." The policy guidance on Zimbabwe in § 126.1(s) will be revised to remove reference to the firearms exemption in § 123.17.

Section 129.1(b) of the ITAR will be revised to clarify that the regulations on brokering activities in part 129 apply to those defense articles and defense services designated as such on the USML and those items described on the USMIL (27 CFR 447.21). Section 129.4 of the ITAR will also be revised to clarify brokering requirements for items on the USMIL that are subject to the brokering requirements of the AECA. The items that will move to the CCL for export control purposes, yet are on the USMIL for permanent import purposes, remain subject to the brokering requirements of part 129 with respect to all brokering activities, including facilitation in their manufacture, export, permanent import, transfer, reexport, or retransfer. The revisions also clarify that foreign defense articles that are on the USMIL require brokering authorizations.

**Request for Comments**

The Department welcomes comments from the public and specifically requests input on the following matters:

(1) A key goal of this rulemaking is to ensure the USML and the CCL together control all the items that meet Wassenaar Arrangement commitments embodied in its Munitions List Categories 1, 2 and 3 (WA-ML1, WA-ML2 and WA-ML3). Readers are asked to identify any potential gap in coverage **\*24200** brought about by the changes for USML Categories I, II and III contained in this notice and the new Category 0, 0x5zz ECCNs published separately by the Department of Commerce when reviewed together.

(2) The Department seeks to establish clear distinctions between the USML and the CCL for the control of firearms, large guns, armaments, ordnance and ammunition. The public should provide any specific examples of firearms (or parts, components, accessories thereof), large guns, armaments, ordnance or ammunition whose jurisdiction is unclear based on this revision.

(3) The Department has, in the past, adopted a delayed effective date of 180 days for rules revising entire categories of the USML and moving items to the CCL. The Department seeks to allow industry sufficient time to implement this rule, including time to make changes to IT systems, technology controls plans, and other business processes. The public should provide input on the time necessary to implement any final rule for these categories, as well as a description of any increased burden that, in the view of the commenter, would be imposed on businesses or individuals should this rule be adopted.

**Regulatory Analysis and Notices**

*Administrative Procedure Act*

The Department of State is of the opinion that controlling the import and export of defense articles and services is a foreign affairs function of the United States government and that rules implementing this function are exempt from sections 553 (rulemaking) and 554 (adjudications) of the Administrative Procedure Act (APA). Although the Department is of the opinion that this proposed rule is exempt from the rulemaking provisions of the APA and without prejudice to its determination that controlling the import and export of defense services is a foreign affairs function, the Department is publishing this proposed rule with a 45-day provision for public comment.

*Regulatory Flexibility Act*

Since the Department is of the opinion that this proposed rule is exempt from the rulemaking provisions of 5 U.S.C. 553, it does not require analysis under the Regulatory Flexibility Act.

*Unfunded Mandates Reform Act of 1995*

This proposed amendment does not involve a mandate that will result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any year and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

*Small Business Regulatory Enforcement Fairness Act of 1996*

This rulemaking has been found not to be a major rule within the meaning of the Small Business Regulatory Enforcement Fairness Act of 1996.

*Executive Orders 12372 and 13132*

This rulemaking will not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with Executive Order 13132, it is determined that this rulemaking does not have sufficient federalism implications to require consultations or warrant the preparation of a federalism summary impact statement. The regulations implementing Executive Order 12372 regarding intergovernmental consultation on Federal programs and activities do not apply to this rulemaking.

*Executive Orders 12866 and 13563*

Executive Orders 12866 and 13563 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributed impacts, and equity). The Department believes that the benefits of this rulemaking largely outweigh any costs, in that many items currently controlled on the more-restrictive USML are being moved to the CCL. We request comment from the public on any impact that would be imposed on the public if this rule were adopted.

Executive Order 13563 emphasizes the importance of considering both benefits and costs, both qualitative and quantitative, of harmonizing rules, and of promoting flexibility. This rule has been designated a "significant regulatory action," although not economically significant, under section 3(f) of Executive Order 12866. Accordingly, the rule has been reviewed by the Office of Management and Budget (OMB).

The Department believes the effect of this proposed rule would decrease the number of license applications submitted to the Department under OMB Control No. 1405-0003 by approximately 10,000 annually, for which the average burden estimates are one hour per form, which results in a burden reduction of 10,000 hours per year.

The Department of Commerce estimates that 4,000 of the 10,000 licenses that were required by the Department will be eligible for license exceptions or otherwise not require a separate license under the EAR. The Department of Commerce estimates that 6,000 transactions will require an individual validated license. The Department of Commerce will be collecting the information necessary to process license applications under OMB Control No. 0694-0088. The Department of Commerce estimates that OMB Control No. 0694-0088 takes approximately 43.8 minutes for a manual or electronic submission. The Department of Commerce estimates that the 6,000 licenses constitute a burden of 4,380 hours for this collection. The Department estimates a reduction in burden of 10,000 hours due to the proposed transition of these items to the Department of Commerce. The Department of Commerce estimates that the burden of submitting license applications for these items to the Department of Commerce will be 4,380 burden hours. Therefore, the net burden would be reduced by 5,620 hours. The Department estimates

that the burden hour cost for completing a license application is $44.94 per hour. Therefore, the estimated net reduction of 5,620 burden hours per year is estimated to result in annual burden hour cost reduction of $252,562.80. There may also be other State Department forms that will no longer need to be submitted and that may further reduce the burden hours for applicants. The Department is seeking comments on the reduction from the other forms, as referenced below.

In addition to the reduction in burden hours, there will be direct cost savings to the State Department that would result from the 10,000 license applications no longer being required under the ITAR once these items are moved to the EAR. Pursuant to the AECA, ITAR, and associated delegations of authority, every person who engages in the business of brokering activities, manufacturing, exporting, or temporarily importing any defense articles or defense services must register with the Department of State and pay a registration fee. The Department of State adopted the current fee schedule to align the registration fees with the cost of licensing, compliance and other ***24201** related activities. The Department of Commerce would incur additional costs to administer these controls and process license applications. However, the Department of Commerce does not charge a registration fee to exporters under the EAR and we are unable to estimate the increase in costs to the Department of Commerce to process the new license applications. Therefore, we are unable to provide an estimate of the net change in resource costs to the government from moving these items from the ITAR to the EAR. It is the case, however, that the movement of these items from the ITAR would result in a direct transfer of $2,500,000 per year from the government to the exporting public, less the increased cost to taxpayers, because they would no longer pay fees to the State Department and there is no fee charged by the Department of Commerce to apply for a license.

The Department welcomes comments from the public on the net reduction in burden described within this section, particularly if there are additional burden reductions that are not reflected here (please provide number of hours or cost) or if the estimates noted here appear otherwise inaccurate.

**Estimated Cost Savings**
The Department of State is of the opinion that controlling the import and export of defense articles and services is a foreign affairs function of the United States government and that rules implementing this function are exempt from Executive Order 13771 (82 FR 9339, February 3, 2017). Although the Department is of the opinion that this proposed rule is exempt from E.O. 13771 and without prejudice to its determination that controlling the import and export of defense services is a foreign affairs function, this proposed rule is expected to be an E.O. 13771 deregulatory action. The Department has conducted this analysis in close consultation with the Department of Commerce. The total annual recurring dollar cost savings is estimated to be $1,376,281 for purposes of E.O. 13771 for the Department of State.

*Executive Order 12988*
The Department of State has reviewed this rulemaking in light of sections 3(a) and 3(b)(2) of Executive Order 12988 to eliminate ambiguity, minimize litigation, establish clear legal standards, and reduce burden.

*Executive Order 13175*
The Department of State has determined that this rulemaking will not have tribal implications, will not impose substantial direct compliance costs on Indian tribal governments, and will not preempt tribal law. Accordingly, Executive Order 13175 does not apply to this rulemaking.

*Paperwork Reduction Act*
Notwithstanding any other provision of law, no person is required to respond to, nor is subject to a penalty for failure to comply with, a collection of information, subject to the requirements of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 et seq.) (PRA), unless that collection of information displays a currently valid OMB control number.

The Department of State believes there would be a reduction in burden for OMB Control No. 1405-0003, Application/License for Permanent Export of Unclassified Defense Articles and Related Unclassified Technical Data. This form is an application that, when completed and approved by Department of State, constitutes the official record and authorization for the commercial export of unclassified U.S. Munitions List articles and technical data, pursuant to the AECA and ITAR. For an analysis of the reduction in burden for OMB Control No. 1405-0003, see the above Section for E.O. 12866. The Department of State requests comments on the collection of information or potential reduction in burden be sent also to the Office of Information and Regulatory Affairs of OMB, Attention: Desk Officer for Department of State, at OIRA_Submission@omb.eop.gov or Attention: Desk Officer for Department of State, Office of Information and Regulatory Affairs of OMB, 725 17th St. NW, Washington, DC 20503.

**List of Subjects in 22 CFR Parts 121, 123, 124, 126, and 129**
Arms and munitions, Exports.

Accordingly, for the reasons set forth above, title 22, chapter I, subchapter M, parts 121, 123, 124, 126, and 129 are proposed to be amended as follows:

**PART 121—THE UNITED STATES MUNITIONS LIST**
1. The authority citation for part 121 continues to read as follows:

Authority: Secs. 2, 38, and 71, Pub. L. 90-629, 90 Stat. 744 (22 U.S.C. 2752, 2778, 2797); 22 U.S.C. 2651a; Pub. L. 105-261, 112 Stat. 1920; Section 1261, Pub. L. 112-239; E.O. 13637, 78 FR 16129.
 22 CFR § 121.1
2. Section 121.1 is amended by revising U.S. Munitions List Categories I, II, and III to read as follows:
 22 CFR § 121.1

**§ 121.1 The United States Munitions List.**
\* \* \* \* \*

**Category I—Firearms and Related Articles**
\*(a) Firearms using caseless ammunition.

\*(b) Fully automatic firearms to .50 caliber (12.7 mm) inclusive.

\*(c) Firearms specially designed to integrate fire control, automatic tracking, or automatic firing (e.g., Precision Guided Firearms (PGFs)), and specially designed parts and components therefor.

Note to paragraph (c): Integration does not include only attaching to the firearm or rail.

\*(d) Fully automatic shotguns regardless of gauge.

\*(e) Silencers, mufflers, and sound suppressors, and specially designed parts and components therefor.

(f) [Reserved]

(g) Barrels, receivers (frames), bolts, bolt carriers, slides, or sears specially designed for the articles in paragraphs (a), (b), and (d) of this category.

(h) Parts, components, accessories, and attachments, as follows:

(1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor;

(2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm.

(3) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

(i) Technical data (see § 120.10 of this subchapter) and defense services (see § 120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), (g), and (h) of this category and classified technical data directly related to items controlled in ECCNs 0A501, 0B501, 0D501, and 0E501 and defense services using the classified technical data. (See § 125.4 of this subchapter for exemptions.)

(j)-(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (see § 120.42 of this subchapter) used in or with defense articles.

Note to paragraph (x): Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (see § 123.1(b) of this subchapter).

Note 1 to Category I: Paragraphs (a), (b), (d), (e), (g), (h), and (i) of this category exclude: Any non-automatic or semi- **\*24202** automatic firearms to .50 caliber (12.7 mm) inclusive; non-automatic shotguns; BB, pellet, and muzzle loading (e.g., black powder) firearms; and parts, components, accessories, and attachments of firearms and shotguns in paragraphs (a), (b), (d), and (g) of this category that are common to non-automatic firearms and shotguns. The Department of Commerce regulates the export of such items. See the Export Administration Regulations (15 CFR parts 730 through 774).

Note 2 to Category I: The following interpretations explain and amplify the terms used in this category:

(1) A firearm is a weapon not over .50 caliber (12.7 mm) which is designed to expel a projectile by the deflagration of propellant.

(2) A fully automatic firearm or shotgun is any firearm or shotgun which shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

(3) Caseless ammunition is firearm ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

**Category II—Guns and Armament**
(a) Guns and armament greater than .50 caliber (12.7 mm), as follows:

\*(1) Guns, howitzers, artillery, and cannons;

\*(2) Mortars;

\*(3) Recoilless rifles;

\*(4) Grenade launchers; or

(5) Developmental guns and armament greater than .50 caliber (12.7 mm) funded by the Department of Defense and specially designed parts and components therefor.

Note 1 to paragraph (a)(5): This paragraph does not control guns and armament greater than .50 caliber (12.7 mm) (a) in production, (b) determined to be subject to the EAR via a commodity jurisdiction determination (see § 120.4 of this subchapter), or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

Note 2 to paragraph (a)(5): Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

Note 3 to paragraph (a)(5): This provision is applicable to those contracts or other funding authorizations that are dated (one year after publication of the final rule), or later.

Note 1 to paragraph (a): This paragraph does not include: Non-automatic and non-semi-automatic rifles, carbines, and pistols between .50 (12.7 mm) and .72 caliber (18.288 mm) that are controlled on the CCL under ECCN 0A501; shotguns controlled on the CCL under ECCN 0A502; or black powder guns and armaments manufactured between 1890 and 1919 controlled on the CCL under ECCN 0A602.

Note 2 to paragraph (a): Guns and armament when integrated into their carrier (e.g., ships, ground vehicles, or aircraft) are controlled in the category associated with the carrier. Self-propelled guns and armament are controlled in USML Category VII. Towed guns and armament and stand-alone guns and armament are controlled under this category.

(b) Flame throwers with a minimum effective range of 20 meters.

(c) [Reserved]

*(d) Kinetic energy weapon systems specially designed for destruction or rendering mission-abort of a target.

Note to paragraph (d): Kinetic energy weapons systems include but are not limited to launch systems and subsystems capable of accelerating masses larger than 0.1g to velocities in excess of 1.6 km/s, in single or rapid fire modes, using methods such as: Electromagnetic, electrothermal, plasma, light gas, or chemical. This does not include launch systems and subsystems used for research and testing facilities subject to the EAR, which are controlled on the CCL under ECCN 2B232.

(e) Signature reduction devices specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category (e.g., muzzle flash suppression devices).

(f)-(i) [Reserved]

(j) Parts, components, accessories, and attachments, as follows:

(1) Gun barrels, rails, tubes, and receivers specially designed for the weapons controlled in paragraphs (a) and (d) of this category;

(2) Sights specially designed to orient indirect fire weapons;

(3) Breech blocks for the weapons controlled in paragraphs (a) and (d) of this category;

(4) Firing mechanisms for the weapons controlled in paragraphs (a) and (d) of this category and specially designed parts and components therefor;

(5) Systems for firing superposed or stacked ammunition and specially designed parts and components therefor;

(6) Servo-electronic and hydraulic elevation adjustment mechanisms;

(7) Muzzle brakes;

(8) Bore evacuators;

(9) Independently powered ammunition handling systems and platform interface components as follows:

(i) Mounts;

(ii) Carriages;

(iii) Gun pallets;

(iv) Hydro-pneumatic equilibration cylinders; or

(v) Hydro-pneumatic systems capable of scavenging recoil energy to power howitzer functions;

Note to paragraph (j)(9): For weapons mounts specially designed for ground vehicles, see Category VII.

(10) Recoil systems to mitigate the shock associated with the firing process of guns integrated into air platforms and specially designed parts and components therefor;

(11) Independent ammunition handling systems for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(12) Ammunition containers/drums, ammunition chutes, ammunition conveyor elements, and ammunition container/drum entrance and exit units, specially designed for the guns and armament controlled in paragraphs (a), (b), and (d) of this category;

(13) Aircraft/gun interface units to support gun systems with a designed rate of fire greater than 100 rounds per minute and specially designed parts and components therefor;

(14) Prime power generation, energy storage, thermal management, conditioning, switching, and fuel-handling equipment, and the electrical interfaces between the gun power supply and other turret electric drive components specially designed for kinetic weapons controlled in paragraph (d) of this category;

(15) Kinetic energy weapon target acquisition, tracking fire control, and damage assessment systems and specially designed parts and components therefor; or

*(16) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(k) Technical data (see § 120.10 of this subchapter) and defense services (see § 120.9 of this subchapter) directly related to the defense articles described in paragraphs (a), (b), (d), (e), and (j) of this category and classified technical data directly related to items controlled in ECCNs 0A602, 0B602, 0D602, and 0E602 and defense services using the classified technical data. (See § 125.4 of this subchapter for exemptions.)

(l)-(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (see § 120.42 of this subchapter) used in or with defense articles.

 **\*24203**  Note to paragraph (x): Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (see § 123.1(b) of this subchapter).

**Category III—Ammunition and Ordnance**
*(a) Ammunition, as follows:

(1) Ammunition that incorporates a projectile controlled in paragraph (d)(1) or (3) of this category;

(2) Ammunition preassembled into links or belts;

(3) Shotgun ammunition that incorporates a projectile controlled in paragraph (d)(2) of this category;

(4) Caseless ammunition manufactured with smokeless powder;

Note to paragraph (a)(4): Caseless ammunition is ammunition without a cartridge case that holds the primer, propellant, and projectile together as a unit.

(5) Ammunition, except shotgun ammunition, based on non-metallic cases, or non-metallic cases that have only a metallic base, which result in a total cartridge mass 80% or less than the mass of a brass- or steel-cased cartridge that provides comparable ballistic performance;

(6) Ammunition employing pyrotechnic material in the projectile base and any ammunition employing a projectile that incorporates tracer materials of any type having peak radiance above 710 nm and designed to be observed primarily with night vision optical systems;

(7) Ammunition for fully automatic firearms or guns that fire superposed or stacked projectiles;

(8) Electromagnetic armament projectiles or billets for weapons with a design muzzle energy exceeding 5 MJ;

(9) Ammunition, not specified above, for the guns and armaments controlled in Category II; or

(10) Developmental ammunition funded by the Department of Defense and specially designed parts and components therefor.

Note 1 to paragraph (a)(10): This paragraph does not control ammunition (a) in production, (b) determined to be subject to the EAR via a commodity jurisdiction determination (see § 120.4 of this subchapter), or (c) identified in the relevant Department of Defense contract or other funding authorization as being developed for both civil and military applications.

Note 2 to paragraph (a)(10): Note 1 does not apply to defense articles enumerated on the U.S. Munitions List, whether in production or development.

Note 3 to paragraph (a)(10): This provision is applicable to those contracts or other funding authorizations that are dated (one year after publication of the final rule), or later.

(b) Ammunition/ordnance handling equipment specially designed for the articles controlled in this category, as follows:

(1) Belting, linking, and de-linking equipment; or

(2) Fuze setting devices.

(c) [Reserved]

(d) Parts and components for the articles in this category, as follows:

(1) Projectiles that use pyrotechnic tracer materials that incorporate any material having peak radiance above 710 nm or are incendiary, explosive, steel tipped, or contain a core or solid projectile produced from one or a combination of the following: tungsten, steel, or beryllium copper alloys;

(2) Shotgun projectiles that are flechettes, incendiary, tracer, or explosive;

Note to paragraph (d)(2): This paragraph does not include explosive projectiles specially designed to produce noise for scaring birds or other pests (e.g., bird bombs, whistlers, crackers).

(3) Projectiles of any caliber produced from depleted uranium;

(4) Projectiles not specified above, guided or unguided, for the items controlled in USML Category II, and specially designed parts and components therefor (e.g., fuzes, rotating bands, cases, liners, fins, boosters);

(5) Canisters or sub-munitions (e.g., bomblets or minelets), and specially designed parts and components therefor, for the guns or armament controlled in USML Category II;

(6) Hardened cores, regardless of caliber, produced from one or a combination of the following: tungsten, steel, or beryllium copper alloy;

(7) Cartridge cases, powder bags, or combustible cases for the items controlled in USML Category II;

(8) Non-metallic cases, including cases that have only a metallic base, for the ammunition controlled in paragraph (a)(5) of this category;

(9) Cartridge links and belts for fully automatic firearms and guns controlled in USML Categories I or II;

(10) Primers other than Boxer, Berdan, or shotshell types;

Note to paragraph (d)(10): This paragraph does not control caps or primers of any type in use prior to 1890.

(11) Safing, arming, and fuzing components (to include target detection and proximity sensing devices) for the ammunition in this category and specially designed parts therefor;

(12) Guidance and control components for the ammunition in this category and specially designed parts therefor;

(13) Terminal seeker assemblies for the ammunition in this category and specially designed parts and components therefor;

(14) Illuminating flares or target practice projectiles for the ammunition controlled in paragraph (a)(9) of this category; or

*(15) Any part, component, accessory, attachment, equipment, or system that:

(i) Is classified;

(ii) Contains classified software; or

(iii) Is being developed using classified information.

"Classified" means classified pursuant to Executive Order 13526, or predecessor order, and a security classification guide developed pursuant thereto or equivalent, or to the corresponding classification rules of another government or intergovernmental organization.

(e) Technical data (see § 120.10 of this subchapter) and defense services (see § 120.9 of this subchapter) directly related to the defense articles enumerated in paragraphs (a), (b), and (d) of this category and classified technical data directly related to items controlled in ECCNs 0A505, 0B505, 0D505, and 0E505 and defense services using the classified technical data. (See § 125.4 of this subchapter for exemptions.).

(f)-(w) [Reserved]

(x) Commodities, software, and technology subject to the EAR (see § 120.42 of this subchapter) used in or with defense articles.

Note to paragraph (x): Use of this paragraph is limited to license applications for defense articles where the purchase documentation includes commodities, software, or technology subject to the EAR (see § 123.1(b) of this subchapter).

Notes to Category III: 1. This category does not control ammunition crimped without a projectile (blank star) and dummy ammunition with a pierced powder chamber.

2. This category does not control cartridge and shell casings that, prior to export, have been rendered useless beyond the possibility of restoration for use as a cartridge or shell casing by means of heating, flame treatment, mangling, crushing, cutting, or popping.

3. Grenades containing non-lethal or less lethal projectiles are under the jurisdiction of the Department of Commerce.
* * * * *

PART 123—LICENSES FOR THE EXPORT OF DEFENSE ARTICLES
3. The authority citation for part 123 continues to read as follows:

Authority: Secs. 2, 38, and 71, Pub. L. 90-629, 90 Stat. 744 (22 U.S.C. 2752, 2778, **\*24204** 2797); 22 U.S.C. 2753; 22 U.S.C. 2651a; 22 U.S.C. 2776; Pub. L. 105-261, 112 Stat. 1920; Sec 1205(a), Pub. L. 107-228; Sec. 520, Pub. L. 112-55; Section 1261, Pub. L. 112-239; E.O. 13637, 78 FR 16129.

 22 CFR § 123.15

4. Section 123.15 is amended by revising paragraph (a)(3) to read as follows:

 22 CFR § 123.15

### § 123.15 Congressional certification pursuant to Section 36(c) of the Arms Export Control Act.

(a) * * *

(3) A license for export of defense articles controlled under Category I paragraphs (a) through (g) of the United States Munitions List, § 121.1 of this subchapter, in an amount of $1,000,000 or more.

 * * * * *22 CFR § 123.16

5. Section 123.16 is amended by revising paragraphs (b)(2) introductory text and (b)(6) and removing and reserving paragraph (b)(7) to read as follows:

 22 CFR § 123.16

### § 123.16 Exemptions of general applicability.

* * * * *

(b) * * *

(2) Port Directors of U.S. Customs and Border Protection shall permit the export of parts or components without a license when the total value does not exceed $500 in a single transaction and:
 * * * * *

(6) For exemptions for personal protective gear, refer to § 123.17.

 * * * * *22 CFR § 123.17

6. Section 123.17 is amended by revising the section heading, removing and reserving paragraphs (a) through (e), and revising paragraph (j) to read as follows:

 22 CFR § 123.17

### § 123.17 Exemption for personal protective gear.

* * * * *

(j) If the articles temporarily exported pursuant to paragraphs (f) through (i) of this section are not returned to the United States, a detailed report must be submitted to the Office of Defense Trade Controls Compliance in accordance with the requirements of § 127.12(c)(2) of this subchapter.

 * * * * *22 CFR § 123.18

### § 123.18 [Removed and Reserved]

22 CFR § 123.18

7. Section 123.18 is removed and reserved.

### PART 124—AGREEMENTS, OFF-SHORE PROCUREMENT, AND OTHER DEFENSE SERVICES

8. The authority citation for part 124 continues to read as follows:

Authority: Secs. 2, 38, and 71, Pub. L. 90-629, 90 Stat. 744 (22 U.S.C. 2752, 2778, 2797); 22 U.S.C. 2651a; 22 U.S.C. 2776; Section 1514, Pub. L. 105-261; Pub. L. 111-266; Section 1261, Pub. L. 112-239; E.O. 13637, 78 FR 16129.

 22 CFR § 124.14

9. Section 124.14 is amended by revising paragraph (c)(9) to read as follows:

 22 CFR § 124.14

**§ 124.14 Exports to warehouses or distribution points outside the United States.**
* * * * *
(c) * * *

(9) Unless the articles covered by the agreement are in fact intended to be distributed to private persons or entities (e.g., cryptographic devices and software for financial and business applications), the following clause must be included in all warehousing and distribution agreements: "Sales or other transfers of the licensed article shall be limited to governments of the countries in the distribution territory and to private entities seeking to procure the licensed article pursuant to a contract with a government within the distribution territory, unless the prior written approval of the U.S. Department of State is obtained."
* * * * *

**PART 126—GENERAL POLICIES AND PROVISIONS**
10. The authority citation for part 126 continues to read as follows:

Authority: Secs. 2, 38, 40, 42 and 71, Pub. L. 90-629, 90 Stat. 744 (22 U.S.C. 2752, 2778, 2780, 2791 and 2797); 22 U.S.C. 2651a; 22 U.S.C. 287c; E.O. 12918, 59 FR 28205; 3 CFR, 1994 Comp., p. 899; Sec. 1225, Pub. L. 108-375; Sec. 7089, Pub. L. 111-117; Pub. L. 111-266; Section 7045, Pub. L. 112-74; Section 7046, Pub. L. 112-74; E.O. 13637, 78 FR 16129.
 22 CFR § 126.1
11. Section 126.1 is amended by revising paragraph(s) to read as follows:
 22 CFR § 126.1

**§ 126.1 Prohibited exports, imports, and sales to or from certain countries.**
* * * * *
(s) Zimbabwe. It is the policy of the United States to deny licenses or other approvals for exports or imports of defense articles and defense services destined for or originating in Zimbabwe, except that a license or other approval may be issued, on a case-by-case basis, for the temporary export of firearms and ammunition for personal use by individuals (not for resale or retransfer, including to the Government of Zimbabwe).
* * * * *

**PART 129—REGISTRATION AND LICENSING OF BROKERS**
12. The authority citation for part 129 continues to read as follows:

Authority: Section 38, Pub. L. 104-164, 110 Stat. 1437, (22 U.S.C. 2778); E.O. 13637, 78 FR 16129.
 22 CFR § 129.1
13. Section 129.1 is amended by revising paragraph (b) to read as follows:
 22 CFR § 129.1

**§ 129.1 Purpose.**
* * * * *
(b) All brokering activities identified in this subchapter apply equally to those defense articles and defense services designated in § 121.1 of this subchapter and those items designated in 27 CFR 447.21 (U.S. Munitions Import List).
 22 CFR § 129.2
14. Section 129.2 is amended by:

a. In paragraph (b)(2)(v), removing the word "or" at the end of the paragraph;

b. Removing the period at the end of paragraph (b)(2)(vi) and adding "; or" in its place; and

c. Adding paragraph (b)(2)(vii).

The addition reads as follows:
 22 CFR § 129.2

**§ 129.2 Definitions.**
* * * * *

(b) * * *

(2) * * *

(vii) Activities by persons to facilitate the export, reexport, or transfer of an item subject to the EAR that has been approved pursuant to a license or license exception under the EAR or a license or other approval under this subchapter.
 * * * * *22 CFR § 129.4
15. Section 129.4 is amended by revising paragraphs (a)(1) and (a)(2)(i) to read as follows:
 22 CFR § 129.4

**§ 129.4 Requirement for approval.**
(a) * * *

(1) Any foreign defense article or defense service enumerated in part 121 of this subchapter (see § 120.44 of this subchapter, and § 129.5 for exemptions) and those foreign origin items on the U.S. Munitions Import List (see 27 CFR 447.21); or

 **\*24205**  (2) * * *

(i) Firearms and other weapons of a nature described by Category I(a) through (d), Category II(a) and (d), and Category III(a) of § 121.1 of this subchapter or Category I(a) through (c), Category II(a), and Category III(a) of the U.S. Munitions Import List (see 27 CFR 447.21);
 * * * * *22 CFR § 129.6
16. Section 129.6 is amended by revising paragraph (b)(3)(i) to read as follows:
 22 CFR § 129.6

**§ 129.6 Procedures for obtaining approval.**
* * * * *

(b) * * *

(3) * * *

(i) The U.S. Munitions List (see § 121.1 of this subchapter) or U.S. Munitions Import List (see 27 CFR 447.21) category and sub-category for each article;
 * * * * *
[FR Doc. 2018-10366 Filed 5-21-18; 8:45 am]

BILLING CODE 4710-25-P

---

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.