The Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON; et al., | NO. 2:20-cv-00111-RAJ |
| Plaintiffs, | PLAINTIFF STATES' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. | |
| UNITED STATES DEPARTMENT OF STATE; et al., | NOTED ON MOTION CALENDAR: April 16, 2021[1] |
| Defendants. | ORAL ARGUMENT REQUESTED |

---

[1] The briefing schedule for these cross-motions is governed by the Minute Order at Dkt. # 114.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION .................................................................................................. 1

3

II.     STATEMENT OF UNDISPUTED FACTS ......................................................... 2

4

        A.      Statutory and Regulatory Background ...................................................... 2

5

                1.      State Department: The AECA and ITAR ...................................... 2

6

                2.      Commerce Department: The ECRA and EAR ............................... 3

7

        B.      The Regulation and Attempted Deregulation of 3-D Firearms Files ........ 4

8

                1.      Defense Distributed's 3-D firearms files are ITAR-controlled ......... 4

9

                2.      The State Department settles Defense Distributed's lawsuit ............ 4

10

                3.      The State Department acts to fulfill the Settlement Agreement ........ 6

11

                        a.      The Settlement Agreement's terms ................................... 6

12

                        b.      The NPRMs do not mention 3-D firearms files ................. 6

13

                        c.      This Court vacates the temporary modification and letter ......... 7

14

                        d.      15 U.S.C. § 734.7(c) is added at the eleventh hour ............ 8

15

        C.      The Final Rules ....................................................................................... 8

16

        D.      Procedural History ................................................................................. 10

17

III.    ARGUMENT ..................................................................................................... 10

18

        A.      Legal Standard ....................................................................................... 10

19

        B.      Defendants' Actions Will Permit Uncontrolled Dissemination of 3-D Firearms
20
                Files ....................................................................................................... 11

21

        C.      The State Rule Is Reviewable under the AECA ...................................... 13

22
        D.      Defendants' Standing and Political Question Challenges Fail ................ 17

23
        E.      The State Rule Violates the APA and Must Be Vacated ......................... 19

24
                1.      The rulemaking violated notice-and-comment requirements .......... 19

25
                2.      The rulemaking was arbitrary and capricious ............................... 22

26
                3.      The rulemaking is contrary to the AECA ...................................... 24

IV.   CONCLUSION ............................................................................................................ 24

ii

# TABLE OF AUTHORITIES

## Cases

*A.T.F. v. Fed. Labor Relations Auth.*,
464 U.S. 89 (1983)..................................................................................... 24

*ANA Int'l Inc. v. Way*,
393 F.3d 886 (9th Cir. 2004) ...................................................................... 17

*Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) .................................................................... 16

*Beno v. Shalala*,
30 F.3d 1057 (9th Cir. 1994) ...................................................................... 24

*Bernstein v. U.S. Dep't of State*,
945 F. Supp. 1279 (N.D. Cal. 1996) ........................................................... 14

*Bragdon v. Abbott*,
524 U.S. 624 (1998).................................................................................... 20

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ...................................................................... 18

*Common Cause v. Dep't of Energy*,
702 F.2d 245 (D.C. Cir. 1983) .................................................................... 16

*Ctr. for Biological Diversity v. Mattis*,
868 F.3d 803 (9th Cir. 2017) ...................................................................... 19

*DD v. State*,
838 F.3d 451 (5th Cir. 2016) .................................................................... 4, 5

*Dep't of Commerce v. New York*,
139 S. Ct. 2551 (2019)................................................................................ 16

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020)........................................................................... 13, 22

*E. Bay Sanctuary Covenant v. Trump*,
932 F.3d 742 (9th Cir. 2018) ...................................................................... 24

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009).................................................................................... 24

*Fence Creek Cattle Co. v. U.S. Forest Serv.*,
602 F.3d 1125 (9th Cir. 2010) .................................................................... 10

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Gresham v. Azar,*
950 F.3d 93 (D.C. Cir. 2020)................................................................................. 24

*Guerrero v. Clinton,*
157 F.3d 1190 (9th Cir. 1998) .............................................................................. 16

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice,*
No. C 08-2649 CW, 2009 WL 185423 (N.D. Cal. Jan. 20, 2009) ........................ 21

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.,*
626 F.3d 84 (D.C. Cir. 2010) ................................................................................ 22

*Karn v. State,*
925 F. Supp. 1 (D.D.C. 1996) ............................................................................... 15

*King County v. Azar,*
320 F. Supp. 3d 1167 (W.D. Wash. 2018) ............................................................ 10

*Lands Council v. Powell,*
395 F.3d 1019 (9th Cir. 2005) .............................................................................. 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014)............................................................................................... 19

*Louis v. U.S. Dep't of Labor,*
419 F.3d 970 (9th Cir. 2005) ........................................................................... 20, 21

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
567 U.S. 209 (2012)............................................................................................... 19

*Mid Continent Nail Corp. v. United States,*
846 F.3d 1364 (Fed. Cir. 2017) ............................................................................ 20

*Milner v. Dep't of Navy,*
562 U.S. 562 (2011)............................................................................................... 16

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983)............................................................................................ 22, 23

*Nat. Res. Def. Council v. U.S. EPA,*
279 F.3d 1180 (9th Cir. 2002) ......................................................................... 19, 22

*Nat. Res. Def. Council, Inc. v. Hodel,*
618 F. Supp. 848 (E.D. Cal. 1985) ....................................................................... 21

*Nat. Res. Def. Council, Inc. v. Hodel,*
865 F.2d 288 (D.C. Cir. 1988)............................................................................... 16

*New York v. U.S. Dep't of Labor,*
477 F. Supp. 3d 1 (S.D.N.Y. 2020) ...................................................................... 17

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO. 2:20-CV-00111-RAJ

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Occidental Eng'g Co. v. I.N.S.,*
   753 F.2d 766 (9th Cir. 1985) ................................................................. 11

*San Luis & Delta-Mendota Water Auth. v. Locke,*
   776 F.3d 971 (9th Cir. 2014) ................................................................. 11

*Smith v. Berryhill,*
   139 S. Ct. 1765 (2019) ........................................................................... 14

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ............................................................................... 18

*Thompson v. U.S. Dep't of Labor,*
   885 F.2d 551 (9th Cir. 1989) ................................................................. 11

*United States v. Larionoff,*
   431 U.S. 864 (1977) ............................................................................... 24

*United States v. Martinez,*
   904 F.2d 601 (1990) ............................................................................... 15

*United States v. Pulungan,*
   569 F.3d 326 (7th Cir. 2009) ................................................................. 15

*United States v. Zheng,*
   590 F. Supp. 274 (D.N.J. 1984) ............................................................ 15

*Washington v. State,*
   420 F. Supp. 3d 1130 (W.D. Wash. 2019) ..................................... passim

*Washington v. State,*
   315 F. Supp. 3d 1202 (W.D. Wash. 2018) ............................................. 8

*Washington v. State,*
   318 F. Supp. 3d 1247 (W.D. Wash. 2018) ......................................... 8, 18

*Yassini v. Crosland,*
   618 F.2d 1356 (9th Cir. 1980) ............................................................... 20

### Statutes

15 U.S.C. § 734.7 ................................................................................ passim

22 U.S.C. § 2751 ........................................................................................ 24

22 U.S.C. § 2778 ................................................................................ passim

5 U.S.C. § 553 ............................................................................................ 19

5 U.S.C. § 706 ............................................................................... 10, 11, 23

1    50 U.S.C. § 4801(7) ............................................................................................ 3

2    50 U.S.C. § 4811 ............................................................................................... 19

3    50 U.S.C. § 4812 ................................................................................................. 3

4    50 U.S.C. § 4813 ................................................................................................. 3

5    50 U.S.C. § 4821(a) ........................................................................................... 11

6                                           **Rules**

7    Fed. R. Civ. P. 56 ............................................................................................... 10

8

9                               **Regulations**

10    15 C.F.R. § 734.3(b)(3) ....................................................................................... 3

11    15 C.F.R. § 734.7 ..................................................................................... passim

12    22 C.F.R. § 120.10 ........................................................................................... 2, 3

13    22 C.F.R. § 120.11(a)(7) .................................................................................... 3

14    22 C.F.R. § 120.3(b) ......................................................................................... 23

15    22 C.F.R. § 120.6 .............................................................................................. 14

16    22 C.F.R. § 121.1 ................................................................................................ 2

17    22 C.F.R. § 122.1(a) ........................................................................................... 4

18    22 C.F.R. §§ 120–130 ........................................................................................ 3

19    80 Fed. Reg. 31,528 (Jun. 3, 2015) .................................................................... 3

20    85 Fed. Reg. 18,438 (Apr. 2, 2020) ................................................................. 10

21    *Control of Firearms, Guns, Ammunition and Related Articles the President Determines*
22      *No Longer Warrant Control Under the United States Munitions List (USML)*,
        83 Fed. Reg. 24,166 (May 24, 2018) ............................................................. 6

23    *International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III,*
        83 Fed. Reg. 24,198 (May 24, 2018) ............................................................. 6

24
25    *Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer*
     *Warrant Control Under the United States Munitions List (USML)*, 84 Fed. Reg. 4136 (Jan. 23,
     2020) (Commerce Rule).........................................................................passim

26

PLAINTIFF STATES' OPPOSITION AND       vi       ATTORNEY GENERAL OF WASHINGTON
CROSS-MOTION FOR SJ                              Complex Litigation Division
NO.  2:20-CV-00111-RAJ                           800 5th Avenue, Suite 2000
                                                 Seattle, WA 98104-3188
                                                   (206) 464-7744

*International Traffic In Arms Regulations: U.S. Munitions List Categories I, II, and III*, 85 Fed. Reg. 3819 (Jan. 23, 2020) (State Rule)..............................................................................passim

## <u>Other Authorities</u>

"Designate." Merriam-Webster.com,
    https://tinyurl.com/y4zygc5o (last accessed Feb. 18, 2021)................................................ 14

"Signum." Merrium-Webster.com,
    https://tinyurl.com/y2pd3ws9 (last accessed Feb. 18, 2021)............................................... 14

"While." Merriam-Webster.com,
    https://www.merriam-webster.com/dictionary/while (last accessed Feb. 18, 2021)............. 17

H. Rep. No. 1980, 69th Cong., 2d Sess. 23 (1946)................................................................. 20

H.R. Rep. No. 107-57 (2001)................................................................................................. 15

H.R. Rep. No. 97-58 (1981)............................................................................................. 16, 17

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.     INTRODUCTION

This case addresses the renewed threat that computer files for the production of 3-D-printed firearms (3-D firearms files) will proliferate worldwide through global export and publication on the internet. The stakes are high: as Defendants acknowledge, allowing global dissemination of these files would seriously and permanently compromise national security and public safety. There is no dispute that the files enable undetectable, untraceable, deadly weapons to be printed practically at the push of a button. Currently, as a result of this Court's preliminary injunction, 3-D firearms files remain on the U.S. Munitions List (USML)[2] and are subject to meaningful export control by the State Department (State). But if jurisdiction is transferred to the Commerce Department (Commerce) under the challenged regulations (the State and Commerce Rules, respectively), gaping loopholes in Commerce's jurisdiction will enable the global proliferation of these weapons. This is because Commerce will only retain jurisdiction over published 3-D firearms files in formats "such as AMF or G-code" that are "ready for insertion" into a 3-D printer or similar device. By contrast, the agency will lack jurisdiction over all other 3-D firearms files—including those that are not "ready for insertion," but can be swiftly converted to an "insertable" format using readily available software. And Commerce will lack jurisdiction over 3-D firearms files that have already been "published"—including specific files for functional weapons previously published online by the "crypto-anarchist" Defense Distributed organization.

The loophole-riddled provision for regulating 3-D firearms files under the Commerce Rule, 15 C.F.R. § 734.7(c) ("Subsection (c)"), was never disclosed to the public in any form before final publication, contravening the APA's fundamental notice-and-comment requirements. The record is devoid of any information directly related to the development of Subsection (c): there is *no* documented factual or policy basis for the specific language used in that provision. Because Subsection (c) was never tested through notice-and-comment, and was seemingly pulled from thin air by agencies with no special expertise in 3-D printing technology, Defendants failed

---

[2] Plaintiffs adopt the abbreviations in Defendants' Table of Abbreviations, Dkt. # 110 ("Mot.") at ix.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

to consider its obvious flaws and shortcomings. Not only that, but the proposed rules published in the Federal Register claimed to affect only "commercial" items and gave no indication whatsoever of their sweeping effect on the regulation of 3-D firearms files. The public was notified of proposed changes to a broad array of export-controlled items—but was *not* notified that these changes would implicate 3-D firearms files until it was too late to comment.

Defendants' attempts to avoid judicial review are meritless. The jurisdictional exemptions they cite are inapplicable, as the Court has already preliminarily found. And the States' safety interests fall squarely within the zone of interests under the Arms Export Control Act (AECA), 22 U.S.C. § 2778. This Court has the authority and the duty to review the decision to remove 3-D firearms files from the Munitions List so as to practically guarantee global dissemination.

## II.      STATEMENT OF UNDISPUTED FACTS

### A.      Statutory and Regulatory Background

#### 1.      State Department: The AECA and ITAR

The AECA authorizes the President, "[i]n furtherance of world peace and the security and foreign policy of the United States ... to control the import and the export of defense articles and defense services." 22 U.S.C. § 2778(a)(1). Items designated as defense articles and services "constitute the United States Munitions List," *id.*, which is maintained by the State Department. *See* USML, 22 C.F.R. § 121.1 (2017). Category I of the USML consists of "Firearms and Related Articles," including "technical data" for certain firearms.[3] 22 C.F.R. § 121.1 (Category I(i)). Until recently, Category I included "nonautomatic and semi-automatic firearms to caliber .50 inclusive" and related technical data. 22 C.F.R. § 121.1 (Aug. 30, 2019) (amended Mar. 9, 2020). Under the State and Commerce Rules, most nonautomatic and semi-automatic firearms no longer appear on the USML. *Compare id. with* 22 C.F.R. § 121.1 (Category I(b)). But under the narrow terms of this Court's injunction, 3-D firearms files currently remain on the USML. State controls

---

[3] "Technical data" includes "[s]oftware ... directly related to defense articles" and information "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles ..." 22 C.F.R. § 120.10.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

these items under regulations known as the International Traffic in Arms Regulations (ITAR). *See* 22 C.F.R. §§ 120–130 (2016). State does not have unfettered discretion: for example, when removing an item from the Munitions List, State must notify Congress at least 30 days in advance, 22 U.S.C. § 2778(f)(1), and must account for the AECA's objectives, i.e., furthering "world peace and the security and foreign policy of the United States," 22 U.S.C. § 2778(a)(1); *see Washington v. State*, 420 F. Supp. 3d 1130, 1140, 1144–47 (W.D. Wash. 2019), *appeal dismissed sub nom. State v. DD*, 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020).

### 2.   Commerce Department: The ECRA and EAR

The Export Control Reform Act (ECRA) authorizes the President to regulate the export, reexport, and in-country transfer of certain commodities, software, and technology. 50 U.S.C. §§ 4801(7), 4812. Unlike the AECA, the ECRA is not limited to munitions, but covers a broad array of commercial items. The Commerce Secretary is charged with maintaining a list of ECRA-controlled items, known as the Commerce Control List (CCL). 50 U.S.C. § 4813. These items are regulated under the Export Administration Regulations (EAR). 15 C.F.R. chapter VII, subchapter C. Under the ECRA, a license is required to export items controlled under the EAR only in limited circumstances, such as exports to terrorism-supporting countries, or exports of nuclear weapons, missiles, and chemical or biological weapons. 50 U.S.C. § 4813(c), (d).

Crucially, "published" technology and software are not subject to the EAR. 15 C.F.R. §§ 734.3(b)(3), 734.7(a). Thus, when technology or software "has been made available to the public without restrictions upon its further dissemination," Commerce lacks jurisdiction to control its export. 15 C.F.R. § 734.7(a). In contrast to the ITAR, "publication" under the EAR can occur without government pre-approval or pre-authorization. *Compare* 15 C.F.R. § 734.7(a) (no pre-approval required to "publish" EAR-controlled items) *with* 22 C.F.R. §§ 120.10(b), 120.11(a)(7) (pre-approval required to place ITAR-controlled items into the "public domain").[4]

---

[4] *See also* 80 Fed. Reg. 31,528 (Jun. 3, 2015) (International Traffic in Arms: Revisions to Definitions of Defense Services, Technical Data, and Public Domain) (State has long required "a license or other authorization ... to release ITAR controlled 'technical data'" into the public domain).

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Moreover, while the ITAR require any exporter of Munitions List items to register with State,

2    *see* 22 C.F.R. § 122.1(a), the EAR contain no similar requirement.

3    **B.      The Regulation and Attempted Deregulation of 3-D Firearms Files**

4          **1.      Defense Distributed's 3-D firearms files are ITAR-controlled**

5          Since at least 2013, State has maintained 3-D firearms files on the USML and restricted

6    their export under the ITAR. In 2012, a private organization, Defense Distributed (DD), posted

7    computer-aided design (CAD)[5] firearms files on its website. *DD v. State*, 838 F.3d 451, 455 (5th

8    Cir. 2016), *cert. denied*, 138 S. Ct. 638 (2018). The company's stated objective is to facilitate

9    unrestricted access to firearms worldwide and to evade gun safety laws. Ex. B.[6] To create a

10   functional weapon within hours or minutes, a user would typically need only download the files,

11   use commonly available software to convert and transmit the files to a 3-D printer, and enter a

12   print command. Dkt. # 56 at 3–4 (Patel Decl. ¶¶ 10–14). State promptly notified DD that its

13   website posting constituted an unlawful export under the AECA and the ITAR, and requested

14   that DD remove ten specific CAD files "immediately." Ex. D, ¶¶ 24–25 & Ex. 2. DD complied,

15   and thereafter submitted commodity jurisdiction requests seeking further review. *Id.*, Exs. 3, 4.

16   In 2015, State determined that six categories of DD's CAD files were Category I technical data

17   subject to ITAR control, noting that the files could be used to "automatically find, align, and

18   mill" defense articles using a 3D printer. *Id.*, Exs. 5, 6.

19         **2.      The State Department settles Defense Distributed's lawsuit**

20         In 2015, DD sued State over State's regulation of the CAD files. *DD v. State*, No. 15-

21   CV-372 RP (W.D. Tex.). In defending that lawsuit, State said it was "particularly concerned that

22   [the] proposed export of undetectable firearms technology could be used in an assassination, for

23   the manufacture of spare parts by embargoed nations, terrorist groups, or guerrilla groups, or to

24   compromise aviation security overseas in a manner specifically directed at U.S. persons." Ex. E

25   ───────────────
            [5] CAD files are design files, whereas computer-assisted manufacturing (CAM) files provide the
26   manufacturing or tool paths that perform 3-D printing operations. Dkt. # 56 at 3, ¶¶ 10–12.
            [6] Unless otherwise indicated, lettered exhibits are to the Declaration of Kristin Beneski filed herewith.

1   at 10. State explained that, "absent such regulation" of DD's CAD files, "providing the CAD

2   designs to a foreign person or foreign government would be equivalent to providing the defense

3   article itself, enabling the complete circumvention of ITAR's export regulations." *Id.* at 7.

4        During the litigation, State submitted the declaration of Lisa V. Aguirre, then the Director

5   of the Office of Defense Trade Controls Management. Director Aguirre testified that: (i) "[t]he

6   'Liberator' firearm included in DD's CAD designs presents a specific and unique risk to the

7   national security and foreign policy interests of the United States"; (ii) making the CAD files

8   available online would provide terrorist organizations with firearms, which could be used against

9   the United States or its allies; and (iii) "[a]ccess to weapons technology coupled with the

10  uncontrolled and increasingly ubiquitous means of production … could contribute to armed

11  conflict, terrorist or criminal acts, and seriously undermine global export control and non-

12  proliferation regimes designed to prevent the dangerous and destabilizing spread and

13  accumulation of weapons and related technologies." Ex. D, ¶ 35(c). The district court denied

14  DD's motion for a preliminary injunction, and the Fifth Circuit affirmed, stating:

15       Even if Plaintiffs-Appellants eventually fail to obtain a permanent injunction, the
         files posted in the interim [if a preliminary injunction issued] would remain online
16       essentially forever, hosted by foreign websites such as the Pirate Bay and freely
         available worldwide …. ***Because those files would never go away***, a preliminary
17       injunction would function, in effect, as a permanent injunction as to all files
         released in the interim. ***Thus, the national defense and national security interest
18       would be harmed forever***.

19  *DD v. State*, 838 F.3d at 460 (emphases added).

20       In April 2018, State moved to dismiss DD's lawsuit, arguing that its CAD files "can

21  unquestionably facilitate the creation of defense articles abroad" and that "State has consistently

22  and reasonably concluded that it is not possible to meaningfully curtail the overseas

23  dissemination of arms if unfettered access to technical data essential to the production of those

24  arms is permitted." Ex. C at 3, 7. If it did not regulate the CAD files' export, State told the court,

25  they could be "easily used overseas to make firearms that are subject to U.S. export controls,"

26  where, "beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    foreign policy interests, or international peace and stability." *Id.* at 1.

2         However, while its motion to dismiss was pending, State abruptly settled with DD. *See*

3    Ex. F (Settlement Agreement signed Jun. 29, 2018). The Agreement's terms were not publicly

4    disclosed in time for the public to comment on them. *See Washington*, 420 F. Supp. 3d at 1138.

5    This lawsuit arises from State's actions pursuant to the Settlement Agreement.

6         **3.      The State Department acts to fulfill the Settlement Agreement**

7              **a.      The Settlement Agreement's terms**

8         In the Settlement Agreement, State agreed to permit exports of "the technical data that is

9    the subject of the Action," which includes files DD "has and will continue to create and possess"

10   in the future. Ex. F at 1, 7–8; Ex. G, ¶¶ 25, 36, 40, 44–45.  Specifically, State committed to: (1)

11   issue a new rule revising USML Category I with the effect of excluding DD's 3-D firearms files,

12   and (2) while that rule was in development, issue a temporary modification and letter allowing

13   DD to publicize the subject files in any form, exempt from ITAR. Ex. F at 1–2.

14             **b.      The NPRMs do not mention 3-D firearms files**

15        On May 24, 2018, State and Commerce took the first steps to fulfill the Settlement

16   Agreement by publishing two companion notices of proposed rulemaking (NPRMs). The NPRMs

17   would remove all Category I items from the USML and transfer regulatory jurisdiction to

18   Commerce. *International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and*

19   *III*, 83 Fed. Reg. 24,198 (May 24, 2018)  (State NPRM); *Control of Firearms, Guns, Ammunition*

20   *and Related Articles the President Determines No Longer Warrant Control Under the United*

21   *States Munitions List (USML)*, 83 Fed. Reg. 24,166 (May 24, 2018)  (Commerce NPRM).

22        According to the State NPRM, small-caliber firearms do not "provide the United States

23   with a critical military or intelligence advantage," primarily because they are "widely available

24   in retail outlets in the United States and abroad." State NPRM at 24,198. Therefore, the State

25   NPRM proposed to transfer jurisdiction over non-automatic firearms up to .50 caliber, and related

26   technical data, to Commerce. *Id.* The State NPRM did not mention 3-D firearms files. *See id.*

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Such files—which cannot be lawfully posted on the internet and have a purpose of facilitating the

2   creation of illegal, undetectable weapons—are not "commonly commercially available." *See* Ex.

3   H at 32:16–21; Ex. I at 7–8. The Commerce NPRM, published the same day, likewise described

4   the transferred items as "essentially commercial items widely available in retail outlets and less

5   sensitive military items." *Id*.; *see also* Mot. at 4 (jurisdictional transfer was motivated by belief

6   that the transferred items are "commonly available worldwide"). The Commerce NPRM claimed

7   that the proposed rule "does not deregulate the transferred items." *Id*. And it claimed that the

8   exception for "published" information applies in a "well-established and well understood"

9   manner, citing the example of a "firearm's operation and maintenance manual." *Id.* at 24,167.

10  Like the State NPRM, the Commerce NPRM did not mention 3-D firearms files at all.

11      Defendants never notified the public of the Settlement Agreement, which required the

12  NPRMs' publication and reveals their connection to 3-D firearms files. Nevertheless, some

13  subject-matter experts realized that the very broad category of "technical data" related to Category

14  I items included 3-D firearms files. Ex. J at 5–7 (citing Exs. K, L). Those commenters opposed

15  the proposed rule, pointing to the EAR's "publication" loophole. *See id.* Once the comment period

16  closed, details of the Settlement Agreement became public. *Washington*, 420 F. Supp. 3d at 1138.

17  State then received over 106,000 emails in a week from concerned members of the public, as well

18  as multiple letters from members of Congress and public policy organizations, urging

19  reconsideration. Ex. J at 2–3, 7–8. These technically late comments "were not considered by the

20  agency" when it issued the temporary modification and letter pursuant to the Settlement

21  Agreement. *Washington*, 420 F. Supp. 3d at 1138.

22          c.      **This Court vacates the temporary modification and letter**

23      On July 27, 2018, the Government took the next steps to fulfill the Settlement Agreement

24  by publishing the temporary modification removing 3-D firearms files from the USML and

25  issuing the letter authorizing their unlimited distribution. *Washington*, 420 F. Supp. 3d at 1138.

26  DD then posted a number of 3-D firearms files on its website. *See* Case No. 2:18-cv-01115-RSL,

1  Dkt. # 63 at 6 ("Defense Distributed shared ten subject files" on July 27, 2018).

2       A coalition of twenty states sued and obtained a temporary restraining order, which the

3  district court later converted to a preliminary injunction. *Washington v. State*, 315 F. Supp. 3d

4  1202 (W.D. Wash. 2018) (TRO); *Washington v. State*, 318 F. Supp. 3d 1247 (W.D. Wash. 2018)

5  (PI). State complied with the injunction by rescinding the temporary modification and letter, and

6  DD promptly removed its 3-D firearms files from its website. Ultimately, the court granted

7  summary judgment to the Plaintiff States and vacated the temporary modification and letter.

8  *Washington*, 420 F. Supp. 3d 1130. The Government did not appeal.[7]

9               **d.    15 U.S.C. § 734.7(c) is added at the eleventh hour**

10       In early 2020, the Government took the last step to fulfill the Settlement Agreement by

11  publishing the final State and Commerce Rules. As described below, the State Rule transfers

12  jurisdiction of Category I items to Commerce, while the Commerce Rule adds never-before-seen

13  provisions specific to 3-D firearms files by amending 15 U.S.C. § 734.7 to add Subsection (c).

14  Commerce Rule at 4172–73; *see also* Dkt. # 1-3.

15       The administrative record, produced in September 2020 (Dkt. ## 106–107, 109), reveals

16  that Subsection (c) was added to the draft Commerce Rule in late 2019. An October 2019 internal

17  memorandum to former Secretary Pompeo states that the Administration will submit a "new

18  notification" to Congress that "will include Commerce controls on the publication of 3D-printed

19  firearm files (i.e., computer files that enable a 3D printer to produce components of an operable

20  firearm) under its regulations." Ex. M. That notification was sent on November 12, 2019. Ex. N.

21  Subsection (c) was *never* disclosed to the public before its final publication.

22  **C.    The Final Rules**

23       Defendants published the final State and Commerce Rules on January 23, 2020. As

24  proposed, the State Rule removes small-caliber firearms and related technical data from the

25

26       [7] Defense Distributed and other private defendants appealed the final judgment to the Ninth Circuit (consolidated Case Nos. 20-35030 & 20-35064). Those appeals were dismissed on July 21, 2020.

PLAINTIFF STATES' OPPOSITION AND         8         ATTORNEY GENERAL OF WASHINGTON
CROSS-MOTION FOR SJ                                      Complex Litigation Division
NO.  2:20-CV-00111-RAJ                                   800 Fifth Avenue, Suite 2000
                                                  Seattle, WA 98104-3188
                                                  (206) 464-7744

Munitions List. State Rule at 3823. The Commerce Rule provides that the removed items are added to the Commerce Control List and subject to EAR controls. Commerce Rule at 4173. The "combined effects" of these "companion rule[s]" is to "transfer" 3-D firearms files (and a host of other items) from the USML to the Commerce Control List. State Rule at 3820.

Unlike the NPRMs, the final rules expressly address 3-D firearms files. The Commerce Rule's preamble recognizes that "plaintiffs in *Washington v. Dep't of State* raised concerns about risks to public safety" if 3-D firearms files were released on the internet, and that Commerce "shares the concerns raised over the possibility of widespread and unchecked availability of the software and technology internationally, the lack of government visibility into production and use, and the potential damage to U.S. counter proliferation efforts." Commerce Rule at 4141. It further recognizes that "[i]n the absence of [export] controls ... [3-D firearms files] could be easily used in the proliferation of conventional weapons, the acquisition of destabilizing numbers of such weapons, or for acts of terrorism." *Id.* at 4140. State "agrees with ... Commerce" that controlling the export of 3-D firearms files "remains in the national security and foreign policy interests of the United States." State Rule at 3823.

Unlike the NPRMs, the final rules purport to address the "publication" loophole as applied to 3-D firearms files. Whereas typically, "published" items are an exception to Commerce's EAR jurisdiction, the Commerce Rule creates an exception to the exception by adding the new Subsection (c) to 15 C.F.R. § 734.7. Subsection (c) provides in full:

> The following remains subject to the EAR: "software" or "technology" for the production of a firearm, or firearm frame or receiver, controlled under ECCN 0A501, that is made available by posting on the internet in an electronic format, such as AMF or G-code, and is ready for insertion into a computer numerically controlled machine tool, additive manufacturing equipment, or any other equipment that makes use of the "software" or "technology" to produce the firearm frame or receiver or complete firearm.

15 C.F.R. § 734.7(c). Notably, Subsection (c) permits the export of published 3-D firearms files by any means *other than* internet posting. *See id.* And it only retains jurisdiction over file formats that are "ready for insertion" into manufacturing equipment, such as a 3-D printer. *See id.* 3-D

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    firearms files in other common formats (some of which are readily convertible to AMF or G-

2    code) are not covered by Subsection (c) and can be freely posted online. *See id.* In short,

3    published 3-D firearms files are not subject to EAR export controls *unless* they fall under

4    Subsection (c)'s narrow exception to the exception. *See id.* The administrative record contains

5    no indication that Defendants analyzed or reviewed any information related to the scope or

6    meaning of the terms "AMF," "G-code," or "ready for insertion," or that Defendants analyzed

7    the differences between regulation of 3-D firearms files under the USML and ITAR versus under

8    Subsection (c) and EAR. *See* Beneski Decl. ¶¶ 4–6.

9    **D.      Procedural History**

10       On March 6, 2020, this Court preliminarily enjoined Defendants from implementing or

11   enforcing the State Rule "insofar as it alters the status quo restrictions on technical data and

12   software directly related to the production of firearms or firearm parts using a 3D-printer or

13   similar equipment." Dkt. # 94 (PI Order) at 22. The next day, Defendant DDTC notified the public

14   that 3-D firearms files remained on the Munitions List. Ex. O. On April 2, 2020, Commerce

15   published in the Federal Register a "Notification of court order" likewise indicating that 3-D

16   firearms files remain under State's export-control jurisdiction. 85 Fed. Reg. 18,438 (Apr. 2, 2020).

17                                    **III.      ARGUMENT**

18   **A.      Legal Standard**

19       Under the APA, courts "shall ... hold unlawful and set aside agency action" that is

20   "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

21   § 706. Where the material facts are not genuinely disputed and the questions before the Court are

22   purely legal, the Court can resolve an APA case on a motion for summary judgment. Fed. R. Civ.

23   P. 56; *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010)).

24       "[I]n APA cases, the Court's role is to determine whether, as a matter of law, evidence in

25   the administrative record supports the agency's decision." *King County v. Azar*, 320 F. Supp. 3d

26   1167, 1171 (W.D. Wash. 2018) (citing *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Cir. 1985)). Review is based on "the whole record," 5 U.S.C. § 706, which "consists of all
2   documents and materials directly or *indirectly* considered by agency decision-makers and
3   includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d
4   551, 555 (9th Cir. 1989). Courts may also consider extra-record evidence for background and
5   when necessary to determine whether the agency has considered all relevant factors and explained
6   its decision. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014);
7   *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

8   **B.      Defendants' Actions Will Permit Uncontrolled Dissemination of 3-D Firearms Files**

9           Subsection (c) of the Commerce Rule establishes the means by which Commerce would
10  regulate—or rather, fail to regulate—published 3-D firearms files after their removal from the
11  Munitions List. This Court correctly found that it may "evaluate joint actions to the extent that
12  they are reflected in [State's] decision to remove the 3-D gun files from the Munitions List," PI
13  Order at 11, as Subsection (c)'s limited retention of jurisdiction is central to State's asserted
14  rationale for removing the files from the Munitions List. *See* State Rule at 3823 (State "agrees
15  with ... Commerce" that controlling the export of 3-D firearms files "remains in the national
16  security and foreign policy interests of the United States."). Subsection (c)'s loopholes are the
17  reason the de-listing amounts to a deregulation that harms the States. These loopholes include:

18          *First*, Commerce will only retain jurisdiction over published files in formats "such as
19  AMF or G-code" that are "ready for insertion" into a 3D printer or similar device.[8] But it will
20  lack jurisdiction over files that can be converted to such formats using commonly available 3D-
21  printing software (such as CAD design files). 15 C.F.R. § 734.7(c); *see* PI Order at 17 n.5. But
22  anyone could post CAD design files online, along with a link to free software that could promptly
23  convert the files into a machine-readable format. This gaping loophole will result in widespread,

24          [8] "Ready for insertion" is undefined, and its meaning is not entirely clear. For example, it is not clear
25  whether files that can be "inserted" into 3D printing *software* fall under Subsection (c), or whether it only covers
     files that can be "inserted" into 3D printing hardware ("equipment"). 15 C.F.R. § 734.7(c). Importantly, if the
26  transfer is allowed to go forward, Commerce will have unreviewable discretion to interpret, modify, or rescind
     Subsection (c). *See* 50 U.S.C. § 4821(a).

easy access to downloadable guns with no restrictions. This is no idle threat. Some of DD's export-controlled files—including technical data for assault rifles—were in CAD file formats that are *not* "ready for insertion," but can be easily converted into an "insertable" format. *See* Dkt. # 56 at 5, ¶ 20.[9] DD could also de-convert its insertable files into a non-insertable format and post them online with instructions for converting them back into insertable files. *See* 15 C.F.R. § 734.7(c). Defendants argue that the "ready for insertion" language "provides Commerce the flexibility to address *future changes* in technology," Mot. at 22 (emphasis added), but this is cold comfort since convertible files already exist.

Defendants' prior submissions to the Court effectively concede that Commerce sought to exempt some types of 3-D firearms files from its jurisdiction, without ever directly telling the public this information. In particular, the Declaration of Matthew Borman (Dkt. #85-2) implies that only Computer Aided *Manufacturing* (CAM) files are intended to be covered by the "ready for insertion" language. *See* Dkt. #85-2 at 19, ¶ 46 (describing AMF and G-Code as CAM files). Mr. Borman likewise states that only files with what he describes as a "functional capability" are exempted from the publication exception, because Commerce—apparently crediting the unsuccessful argument DD made in its litigation against State—concluded that controlling other file types currently controlled under ITAR, such as CAD files, would raise First Amendment concerns. *Id.* ¶ 48. Defendants' purported concerns were never disclosed for public comment, nor was the possibility of delineating between file types. As the Plaintiff States' expert has explained, CAD and CAM files are separate file types, but the former can easily be converted to the latter using free, widely-available software. Dkt. # 56 at 4–5, 8 (Patel Decl. ¶¶ 12–14, 28). At least some if not all of the files DD sought to make widely available were CAD files, not CAM files, including designs for assault rifle weapons. *See id.* at 3–4 (Patel Decl. ¶¶ 15–20). But, due to the ease of conversion, there is little point in controlling CAM files without controlling CAD files.

---

[9] *See also DD v. Grewal*, 3:19-cv-04753 (D.N.J.), Dkt. #1-40, ¶ 5 (Feb. 5, 2019) (DD's Director stating company's 3-D firearms files include CAD files from SoLiDworks, STEP, and SketchUp).

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1       *Second*, in contrast to the ITAR—which requires government pre-approval to place an

2   item into the "public domain"—Subsection (c) allows "publication" with no pre-approval. 15

3   C.F.R. § 734.7(a); *supra* at 3–4. Once the files are "published," they are "not … subject to the

4   EAR" and can be exported via any method *other* than "posting on the internet," including by

5   email. 15 C.F.R. § 734.7(c); *see also* PI Order at 17 n.5. While "methods of export other than

6   posting on the Internet" are indeed generally within Commerce's jurisdiction, Mot. at 22,

7   *published* files are an exception. Commerce only retains jurisdiction over published files as

8   provided in Subsection (c), which refers only to exports via internet posting. 15 C.F.R. § 734.7(c).

9   Thus, files like DD's, which have already been "published," are deregulated *ab initio*. *See* 15

10  C.F.R. § 734.7(c). One could even advertise online that published "ready for insertion" files are

11  available to anyone in the world, and then deliver those files via email. *See id.*

12      In short, Subsection (c)'s reservation of EAR jurisdiction over only "ready for insertion"

13  files "made available by posting on the internet" renders its controls effectively meaningless. The

14  rules contain no explanation for these self-defeating limitations[10]—presumably because the

15  public had no opportunity to point them out to the agencies. *See infra* at 19–22. The Court should

16  once again decline to credit Defendants' unsubstantiated assertion that the Commerce Rule

17  "simply mimics what is currently the status quo under ITAR." PI Order at 17 n.5.

18  **C.      The State Rule Is Reviewable under the AECA**

19      The Court correctly found that the Commerce Rule was the result of an "interagency

20  effort," and that "joint actions"—i.e., the "companion" rules here—may be evaluated "to the

21  extent that they are reflected in the decision to remove the 3-D gun files from the Munitions List."

22  PI Order at 10–11. Even if Defendants are correct that the Commerce Rule is unreviewable in

23  isolation, Mot. at 5–6, the Court may consider State's express reliance on purported Commerce

24  controls (including Subsection (c)) to justify the transfer of 3-D firearms files. *See* State Rule at

25  ───────────
        [10] The declarations Defendants cite carry no weight, as litigation-driven explanations not included in the

26  rule itself are "not properly before" the Court. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct.
    1891, 1909 (2020). Plaintiffs are unaware of any formal agency guidance or rule adopting those explanations.

3832. This Court also correctly concluded that the AECA's limitation on judicial review "does not apply to removals from the Munitions List." PI Order at 10–11. 22 U.S.C. § 2778(h) provides:

> The **designation** by the President (or by an official to whom the President's functions under subsection (a) have been duly delegated), in regulations issued under this section, of items **as defense articles or defense services** for purposes of this section shall not be subject to judicial review.

*Id.* (emphases added). Defendants' argument that "designation" of items "as" defense articles encompasses de-designations is unsupported by the statute's text or by judicial precedent.

There is a "strong presumption" in favor of judicial review of agency action. *Smith v. Berryhill*, 139 S. Ct. 1765, 1776 (2019) (citation and internal quotation marks omitted). Congress's precise and narrowly crafted exemption from judicial review is limited to the affirmative "designation" of items "as defense articles" under the AECA. 22 U.S.C. § 2778(h); *see Bernstein v. U.S. Dep't of State*, 945 F. Supp. 1279, 1289 (N.D. Cal. 1996) ("[T]he AECA makes the *initial designation* of items as defense articles unreviewable."). The decision to de-designate items as "no longer" defense articles does not fall within this language. In fact, every relevant reference to designation in Section 2778 concerns items placed on, not removed from, the Munitions List. *See* 22 U.S.C. § 2778 §§ (a), (a)(1), (b), (b)(1)(A)(i), (b)(1)(A)(ii)(I), (b)(2), (f)(5)(C), (h). This also comports with the plain meaning of "designate … as." Webster's defines "designate" in relevant part as "to indicate and set apart *for a specific purpose* …" (emphasis added).[11] The word is derived from the Latin "signum," which means "something that marks or identifies or represents."[12] The statute's structure also supports this view: Section 2778(f)(5)(C) defines "defense article" as "an item designated by the President pursuant to subsection (a)(1)." But a removed item is *not* a defense article. While the very act of removing an item from the Munitions List renders an item *not* a "defense article," such removal would, under Defendants' view that removal is a "designation," paradoxically make the item a "defense article."[13]

---

[11] "Designate." Merriam-Webster.com, https://tinyurl.com/y4zygc5o (last accessed Feb. 18, 2021).

[12] "Signum." Merriam-Webster.com, https://tinyurl.com/y2pd3ws9 (last accessed Feb. 18, 2021).

[13] Defendants' definition is also inconsistent with State's own regulations, *e.g.*, "Defense article means any item or technical data designated" pursuant to Section 2778. 22 C.F.R. § 120.6; *see id.* § 121.1.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Each of the cases Defendants cite is consistent with and supports this Court's prior ruling. *See* Dkt. #110 at pp. 7. In *United States v. Martinez*, the Eleventh Circuit stated that Section 2778(h) supported its conclusion that "the political question doctrine renders the propriety of an item's *placement on the Munitions List* a non-justiciable issue in Federal court," 904 F.2d 601, 601-03, 603 n.4 (1990) (emphasis added). Similarly, *Karn v. State* concerned a challenge to whether an item had been properly designated "*as* a defense article," and the court recognized that this particular decision was nonjusticiable. 925 F. Supp. 1, 3 (D.D.C. 1996). And *United States v. Pulungan* demonstrates that courts apply Section 2778(h) strictly according to its precise language. 569 F.3d 326, 328 (7th Cir. 2009). *Pulungan* also concerned designation "as" a defense article, rather than removal from the Munitions List. *Id.* at 327-28. The court carefully parsed the statutory language to conclude that a designation not made "in regulations" did not fall under Section 2778(h). *Id.* at 328. Congress's precise language limiting its exemption from review to designations "as" defense articles should be similarly respected.

Moreover, Congress's decision to preclude judicial review of designations, but not removals, makes good sense. As the cases above illustrate, the typical challenge to a designation decision will be from a regulated person or entity seeking to avoid a regulatory burden or to excuse noncompliance. To further the broad statutory goals of "world peace and the security and foreign policy of the United States," 22 U.S.C. § 2778(1)(a), Congress chose to make the initial designation decision discretionary—allowing for error on the side of regulation. By contrast, Congress's decision to permit judicial review of removals from the Munitions List reflected its intent to maintain an additional safeguard on such decisions. For similar reasons, Congress does not review designations of defense articles on the Munitions List, but placed its own direct check on removals, requiring 30 days' notice before State can remove an item. 22 U.S.C. § 2778(f)(1).[14] Again, the different treatment of designations versus removals evinces an intent

[14] This requirement furthers Congress's "particularly rigorous oversight of the Munitions List[.]" *United States v. Zheng*, 590 F. Supp. 274, 278-79 (D.N.J. 1984), *vacated on other grounds*, 768 F.2d 518 (3d Cir. 1985); *see also* H.R. Rep. No. 107-57, at 86-87 (2001) (Congress amended Subsection (f) in 2002 to strengthen the notice

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   to privilege the goals of peace and security, by ensuring that removal is not undertaken for

2   arbitrary or improper reasons. Had Congress intended otherwise, it could easily have included

3   "removal" of items in the AECA's provision limiting judicial review. *See id.* It did not.

4       Defendants argue that Section 2778(f)(1)'s congressional notice requirement somehow

5   weighs against judicial review. Citing no authority, they imply that Congress's review is

6   *exclusive*. *See* Mot. at 8. But "[c]ongressional reporting requirements are, of course, legion in

7   federal law." *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 317 (D.C. Cir. 1988); *see also*

8   *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2602 (2019) (Alito, J., concurring in part and

9   dissenting in part). "Generally, congressional reporting requirements are, and heretofore have

10  been, a management tool employed by Congress for its own purposes." *Guerrero v. Clinton*, 157

11  F.3d 1190, 1196 (9th Cir. 1998) (quoting *Hodel*, 865 F.2d at 314); *Armstrong v. Bush*, 924 F.2d

12  282, 291-92 (D.C. Cir. 1991) ("[T]he fact that Congress retains some direct oversight over

13  agencies' compliance with the [statute] does not necessarily indicate an intent to preclude

14  judicial review."); *Common Cause v. Dep't of Energy*, 702 F.2d 245, 250 n.30 (D.C. Cir. 1983).

15      Nor does the cited legislative history support Defendants' position. Mot. at 8–9. First,

16  because the plain language of Section 2778(h) is clear and precise, it is unnecessary to consult

17  legislative history. *See, e.g.*, *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011). Second,

18  Congress added Subsection (f), which describes the President's removal authority and

19  obligations, only a few years after the AECA's enactment, in response to industry concerns about

20  overregulation. H.R. Rep. No. 97-58, at 21-22 (1981). That Congress believed the addition of

21  Subsection (f) was necessary shows that, before such addition, the issue of whether removal was

22  specifically authorized and must be considered was still an open question.[15] The House Report

23  further stated that Subsection (f) "is consistent with past congressional actions to maintain

24  ───────────────

requirements in response to perceived attempts to evade its oversight).

25  [15] It is *possible*, as Defendants argue, that the President had some implicit power to remove items from the
Munitions List prior to the addition of Section 2778(f). *See* Mot. at 8–9. Even assuming he did, the contrived

26  inference that Congress always viewed removal as "a subset of possible designations" would not follow. *See id.* As
evidenced by the addition of 2778(f), Congress viewed "designation" and "removal" as separate processes.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

prudent arms export controls *while contemplating* removal of items from the munitions list which should no longer be considered defense articles for purposes of this section." *Id.* at 22 (emphasis added). Defendants misread this sentence to mean that "past congressional actions" already contemplated removal. Mot. at 9. But this makes no sense because, as Defendants acknowledge, "[a]s originally enacted, § 2778 made no mention of removals from the USML[.]" *Id.* at 8. Rather, the phrase "while contemplating" is a comparative conjunction setting off "past congressional actions" from what was *added* to the statute: the President's new express Subsection (f) authority.[16] *Cf.* H.R. Rep. No. 97-58, at 22 (emphasizing that Subsection (f) does not *require* removal of "any items"). In sum, Section 2778(f)(1) makes explicit what was previously implicit: "designation … of items as defense articles," and subsequent removal of designated items from the Munitions List, are two different types of action.

Finally, if there is any ambiguity in Section 2778(h), the strong presumption of judicial review requires the narrower construction. *See ANA Int'l Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004). State's removal of 3-D gun files from the Munitions List is reviewable.

## D.   Defendants' Standing and Political Question Challenges Fail

This Court has rejected Defendants' meritless standing arguments multiple times now. *See* PI Order at 7 ("The Court agrees with the States that the analysis is no different here than it was in *State of Washington*."). Those arguments fail yet again for the same reasons as before.

Deregulating 3-D firearms files in a manner that permits them to be posted publicly on the internet—thus making them readily and *universally* available both domestically and abroad— will damage the States' sovereign, quasi-sovereign,[17] and proprietary interests in enforcing their gun-safety laws; ensuring the safety and security of their residents and visitors; and protecting

---

[16] *See, e.g.*, "While." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/while (last accessed Feb. 18, 2021) (defining "while" as "similarly and at the same time that").

[17] The Court need not reach Defendants' objection to the States' standing to vindicate their quasi-sovereign (*parens patriae*) interests, Mot. at 14, because harms to the States' sovereign and proprietary interests establish injury in fact. But it is questionable whether the *Mellon* bar applies to statutory (as opposed to constitutional) claims, like those at issue here. *See generally New York v. U.S. Dep't of Labor*, 477 F. Supp. 3d 1, 9 n.6 (S.D.N.Y. 2020).

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    their treasuries, borders, and state facilities. PI Order at 8–9; Dkt. # 55 at 22–24 & cited

2    declarations (describing harms to state interests). The purported lack of a causal connection

3    between export-control deregulation and the States' domestic concerns, *see* Mot. at 14–15, is "so

4    myopic and restrictive as to be unreasonable." PI Order at 8. A "relaxed" traceability analysis is

5    not needed: there is a straight line between federal deregulation and harm to the States. *Contra*

6    Mot. at 14–15. As before, when 3-D firearm files are subject to effective export-control

7    regulations, States are spared the "proliferation of untraceable and undetectable weapons,

8    assassinations, aviation and other security breaches, and violations of gun control laws both

9    abroad and at home." *Washington*, 318 F. Supp. at 1255. Such concerns are far from "speculative"

10   or "attenuated," Mot. at 13–15: as explained above, Commerce's purported retention of

11   jurisdiction is easily circumvented with a few clicks of a computer mouse. *Supra* at III.B.

12         The conclusory assertion that *some* files are available *somewhere* on the internet, Mot. at

13   13–14, does not demonstrate a lack of injury or redressability. *See Washington I*, 318 F. Supp. at

14   1262 ("[T]he possibility that a cybernaut with a BitTorrent protocol will be able to find a file in

15   the dark or remote recesses of the internet does not make the posting to Defense Distributed's site

16   harmless."). In fact, if 3-D firearms files were widely available online, there would be little sense

17   in Commerce purporting to continue regulating their internet posting. Likewise, "[t]he states need

18   not have already suffered … harm" to have standing. *California v. Azar*, 911 F.3d 558, 572 (9th

19   Cir. 2018); *contra* Mot. at 14.[18] "An allegation of future injury may suffice if … there is a

20   substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158

21   (2014). Such risks are well established by the evidence here. *See* Mot. at 22–24 & cited evidence.

22         Defendants' invocation of the political question doctrine (which they abandoned on their

23   appeal of this Court's preliminary injunction) is likewise meritless. Mot. at 10–13. This Court

24

25         [18] In fact, State itself represented in court in 2018 that 3-D firearms files could be "easily used overseas to
      make firearms that are subject to U.S. export controls," where, "beyond the reach of U.S. law [which makes

26   possession of undetectable firearms illegal, 18 U.S.C. § 922], they could be used to threaten U.S. national security,
      U.S. foreign policy interests, or international peace and stability." Ex. C.

already correctly rejected Defendants' attempt to reframe this case as a policy dispute, when in fact the parties *agree* that dissemination of 3-D firearms files would threaten national security, and the States are merely challenging the agencies' failure to comply with the APA. PI Order at 9–10; *see, e.g.*, *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 827 (9th Cir. 2017) (recognizing duty of courts to uphold statutory mandates, even in areas touching upon national security or foreign affairs). The Court should make the same finding here.

Nor do the States fall outside the relevant zone of interests. *See* PI Order at 9. The zone of interests test for claims brought under the APA's judicial review provision is "lenient," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014), and is satisfied if the plaintiff's interests are "arguably" protected. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). As the Court previously found, the "States' interests in curbing violence, assassinations, terrorist threats, aviation and other security breaches, and violations of gun control laws within their borders is at least marginally related to the national security interests protected or regulated by the AECA and the ECRA." PI Order at 9 (citing 22 U.S.C. § 2778(a)(1); 50 U.S.C. § 4811. The Court should again reject Defendants' effort to sever "national security" from "domestic security," which are at least overlapping, if not coextensive.

## E.  The State Rule Violates the APA and Must Be Vacated

Having failed to substantiate their challenges to this Court's jurisdiction, Defendants unsurprisingly have little to say on the merits. The agency actions here blatantly violate the APA's notice-and-comment requirements, and are also arbitrary, capricious, and contrary to the AECA.

### 1.  The rulemaking violated notice-and-comment requirements

The APA requires agencies to provide public notice and an opportunity to comment on proposed rules. 5 U.S.C. § 553(b)(3), (c). "A decision made without adequate notice and comment is arbitrary or an abuse of discretion" as a matter of law. *Nat. Res. Def. Council v. U.S. EPA*, 279 F.3d 1180, 1186 (9th Cir. 2002). Here, as the Court has already found, "neither agency gave any indication that a specific regulation would apply to the online dissemination of 3-D gun files,"

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  the final rules came "out of left field," and this error was not "harmless." PI Order at 12–15.

2  Defendants' arguments to the contrary fail for the same reasons as before. *See* Mot. at 17–18.[19]

3      Defendants continue to insist that notice was adequate because the proposal to remove

4  small-caliber firearms and related technical data from the Munitions List "would necessarily

5  include" 3-D gun files. Mot. at 17. But even when the components of a rule "are technically

6  present" in the proposed rule, notice is deficient where it "obscures the intent of the agency and

7  allows for broad [impacts] through the back door." *Louis v. U.S. Dep't of Labor*, 419 F.3d 970,

8  975–76 (9th Cir. 2005) (agencies may not omit information about the rule's specific intended

9  application so as to allow "potentially controversial subject matter … to go unnoticed buried deep

10  in a non-controversial publication"). Here, the NPRMs failed to mention 3-D gun files even

11  though they were published to effectuate an (as-yet-undisclosed) Settlement Agreement that

12  pertained *specifically* to those items. *Supra* at 6–7; *contra* Mot. at 17. That some sophisticated

13  commenters discerned that the NPRMs would deregulate 3-D gun files, *see id.*, does not render

14  the process fair or adequate: the Government cannot "bootstrap notice from a comment." *Mid*

15  *Continent Nail Corp. v. United States*, 846 F.3d 1364, 1378 (Fed. Cir. 2017). While comments

16  "may be relevant to the court's inquiry under the logical outgrowth doctrine," here, none of the

17  referenced comments addressed Subsection (c)—because they could not, as there was no notice

18  of that provision. *See id.* (finding no logical outgrowth where comments were "entirely silent" on

19  an issue of which no notice was provided).

20

21      [19] Defendants' re-invocation of the APA's "foreign affairs exception" once again fails to support their
    position that the rulemaking at issue is exempt from notice-and-comment requirements. This threshold issue has

22  been thoroughly briefed and decided and need not be revisited yet again. *See* Dkt. # 87 at 8–9; PI Order at 11–12
    (finding the exception does not apply as a matter of law). Defendants do not even address the applicable standard:

23  that the exception only applies where "public rulemaking provisions would provoke definitely undesirable
    international consequences." PI Order at 11 (citing H. Rep. No. 1980, 69th Cong., 2d Sess. 23 (1946); *Yassini v.*

24  *Crosland*, 618 F.2d 1356, 1360 n.4 (9th Cir. 1980)). Here, of course, a "public rulemaking" (albeit not one that
    disclosed its impact on 3-D firearms files) has already occurred. Finally, Defendants' extraordinary claim that

25  Congress "ratified" *all* of the State Department's regulations and interpretations merely by reenacting the general
    export control statute is inconsistent with the presumption of judicial review, and has no support in case law. *See*

26  Mot. at 16; *cf. Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (concluding Congress intended to ratify agency
    definition based on *specific evidence* in the legislative record of its awareness of and assent to the definition).

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    An ordinary interested member of the public would not have understood that the NPRMs

2    could lead to the dissemination of 3-D firearms files. For example, the stated rationale for the

3    NPRMs—that the transferred items are "widely available in retail outlets"—does not apply to

4    such files. *Supra* at 6–7; *see Louis*, 419 F.3d at 976 (NPRM's header and summary should help

5    "alert[] a reader to the stakes"); *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, No. C 08-2649

6    CW, 2009 WL 185423, at *7 (N.D. Cal. Jan. 20, 2009) ("Given the actual impact of the new rule,

7    the notice was patently misleading.") (quoting *Nat. Res. Def. Council, Inc. v. Hodel*, 618 F. Supp.

8    848, 874 (E.D. Cal. 1985)). This explicit limitation further obscured the agencies' actual, but

9    undisclosed, intent to deregulate 3-D firearms files, which are not widely available in retail

10   outlets. Also, the Commerce NPRM misleadingly claimed that the proposal "does not deregulate

11   the transferred items," even though the self-executing "publication" loophole does exactly that.

12   *See supra* at 7;. The Commerce NPRM addressed the "publication" jurisdictional exception only

13   as applied to the innocuous example of an operations manual. *Id.* But under the rules as proposed

14   (which did not include any purported retention of jurisdiction similar to Subsection (c) of the final

15   Commerce Rule), 3-D gun files would have been deregulated entirely.

16   In fact, the final Commerce Rule "all but acknowledges" that the framework described in

17   the NPRMs "did not 'adequately address'" issues specific to 3-D firearms files. PI Order at 13

18   n.3 (quoting Commerce Rule at 4142). 3-D firearms files uniquely facilitate the near-automatic

19   production of untraceable, undetectable, deadly weapons, and their digital form makes them

20   readily transmittable. Therefore, unlike ordinary small-caliber firearms one could lawfully

21   purchase from a retailer (or "technical data" like an operations manual), 3-D firearms files pose

22   unique threats to national security and public safety. As Defendants now agree, 3-D gun files

23   "could be easily used in the proliferation of conventional weapons, the acquisition of destabilizing

24   numbers of such weapons, or for acts of terrorism" across the globe and in the United States.

25   Commerce Rule at 4140. The final rules are the product of unilateral agency action that was never

26   "tested via exposure to diverse public comment," *Int'l Union, United Mine Workers of Am. v.*

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Mine Safety & Health Admin.*, 626 F.3d 84, 95 (D.C. Cir. 2010). A new round of notice-and-comment would provide the "first opportunity" for *any* public input on Subsection (c), and for meaningful public input on the jurisdictional transfer relating to 3-D firearms files more generally. *NRDC*, 279 F.3d at 1186. This alone renders the removal of the files from the Munitions List procedurally defective and warrants vacatur.

### 2.    The rulemaking was arbitrary and capricious

The administrative record reveals that Subsection (c) was added to the Commerce Rule just weeks before final publication. *Supra* at 8. The administrative record contains *no explanation whatsoever* for why Defendants only chose to retain jurisdiction over published 3-D gun files "made available by posting on the internet," but not those exported by other means; and only over files in a format "such as AMF or G-code" that "is ready for insertion" into a 3D printer but not files that can be converted to AMF-type files within minutes.[20] *Supra* at 9–10. These are unexplained departures from prior policy, *contra* Mot. at 21–22—and moreover, they were irrational in light of the stated policy purpose to control the files' global dissemination. *See supra* at 11–13. Because State expressly and erroneously relied on the effectiveness of the Commerce regime as applied to 3-D firearms files, State's rationale for transferring the files to Commerce was arbitrary and capricious. *See, e.g.*, State Rule at 3823 (concluding that the new EAR regulations would "sufficiently address" national security concerns).

Agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Reviewing courts must not substitute their judgment

---

[20] As noted above, *supra* at 12, Commerce now suggests that the "ready for insertion" language is intended to capture only CAM file types and not CAD files. Even if this were otherwise a sufficient explanation, which it is not, Commerce's *post-hoc* litigation declarations may not, as a matter of law, support Defendants' rules without a new round of rulemaking. *See Regents*, 140 S. Ct. at 1909. Moreover, the decision to exclude CAD files is arbitrary for reasons explained above.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    for the agency's, but "the agency must examine the relevant data and articulate a satisfactory

2    explanation for its action including a rational connection between the facts found and the choice

3    made." *Id.* (internal quotation omitted). Courts must hold unlawful and set aside rulemaking that

4    fails to meet these standards. 5 U.S.C. § 706(2)(A).

5         Here, all parties acknowledge that 3-D firearms files pose a national security threat. The

6    agencies purport to agree with "concerns raised over the possibility of widespread and unchecked

7    availability of 3-D printing technology and software, the lack of government visibility into

8    production and use, and the potential damage to U.S. counter-proliferation efforts." State Rule at

9    3823; *see* Commerce Rule at 4141, 4142. The AECA requires State to consider these factors when

10   deciding whether to remove items from the Munitions List. *See* 22 U.S.C. § 2778(a)(1); *State*

11   *Farm*, 463 U.S. at 55 (agency must consider factors "Congress intended" it to consider). Yet

12   State's decision to remove 3-D firearms files from the Munitions List was not designed to further

13   national security: the asserted basis for the de-listing is that the files "do not confer a critical

14   military or intelligence advantage and are not inherently military based on their function." State

15   Rule at 3823; Mot. at 19. This is inadequate: although munitions articles that confer a "military

16   or intelligence advantage" "shall be" included on the Munitions List, they are not the *only* items

17   that can be included. PI Order at 16 (citing 22 C.F.R. § 120.3(b)); *see Washington*, 420 F. Supp.

18   3d at 1144 (State may not evaluate export controls "only through the prism of whether restricting

19   foreign access would provide the United States with a military or intelligence advantage"). The

20   "rational connection" between the "facts found" (that 3-D firearms files threaten national security)

21   and the "choice made" (removing 3-D firearms files from the Munitions List) is missing.

22        State cannot rehabilitate its inadequate rationale by claiming it "took into account" the

23   jurisdictional transfer's effects on U.S. national security and foreign policy interests. State Rule

24   at 3823. Such perfunctory statements fail to give any notion of *how* these important issues were

25   accounted for—and in reality, the Commerce Rule, for no reason apparent from the record, fails

26   to establish any meaningful control over 3-D firearms files. *Supra* at 11–13. "Stating that a factor

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ                         23              ATTORNEY GENERAL OF WASHINGTON
                                                                    Complex Litigation Division
                                                                    800 Fifth Avenue, Suite 2000
                                                                     Seattle, WA 98104-3188
                                                                        (206) 464-7744

was considered … is not a substitute for considering it." *Beno v. Shalala*, 30 F.3d 1057, 1075 (9th Cir. 1994); *see also Gresham v. Azar*, 950 F.3d 93, 103 (D.C. Cir. 2020), *cert. granted,* 20-37, 2020 WL 7086046 (U.S. Dec. 4, 2020), and *cert. granted sub nom. Arkansas v. Gresham*, 20-38, 2020 WL 7086047 (U.S. Dec. 4, 2020) ("Nodding to concerns raised by commenters only to dismiss them in a conclusory manner is not a hallmark of reasoned decisionmaking."). For similar reasons, the State Rule is arbitrary and capricious because it fails to explain the reversal of its position that 3-D firearms files should be ITAR-controlled, and provides no "good reasons for the new policy." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Justifying such a policy reversal requires the agency to "do more than simply announce a contrary position." *Id.* at 515–16. The administrative record is devoid of *any* rationale for why removing 3-D firearms files from the Munitions List is somehow "consistent with the AECA's goals of world peace, national security, and U.S. foreign policy." PI Order at 17.

### 3.      The rulemaking is contrary to the AECA

For similar reasons, the State Rule violates the AECA. PI Order at 18. "'[I]n order to be valid [regulations] must be consistent with the statute under which they are promulgated.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) (quoting *United States v. Larionoff*, 431 U.S. 864, 873 (1977)). Courts must not "rubber-stamp" rules "inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *A.T.F. v. Fed. Labor Relations Auth.*, 464 U.S. 89, 97 (1983). Again, the AECA requires State to maintain the Munitions List "[i]n furtherance of world peace and the security and foreign policy of the United States" by reducing the international trade in arms. 22 U.S.C. §§ 2751, 2778(a)(1). Transferring jurisdiction over 3-D firearms files to an agency that lacks the power to meaningfully control them is contrary to the AECA's purposes and lacks any coherent rationale. PI Order at 18.

### IV.      CONCLUSION

For the reasons above, the Court should vacate Defendants' unlawful actions and order that 3-D firearms files remain on the U.S. Munitions List.

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

DATED this 19th day of February, 2021.

ROBERT W. FERGUSON
Attorney General of Washington

*s/ Kristin Beneski*
KRISTIN BENESKI, WSBA #45478
BRENDAN SELBY, WSBA #55325
Assistant Attorneys General
JEFFREY RUPERT, WSBA #45037
Division Chief
(206) 464-7744
kristin.beneski@atg.wa.gov
brendan.selby@atg.wa.gov
jeffrey.rupert@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

XAVIER BECERRA
Attorney General of California

*/s/ John W. Killeen*
JOHN W. KILLEEN
Deputy Attorney General
(916) 210-6045
John.killeen@doj.ca.gov
*Attorneys for Plaintiff State of California*

PHILIP J. WEISER
Attorney General of Colorado

*/s/ Grant T. Sullivan*
GRANT T. SULLIVAN
Assistant Solicitor General
(720) 508-6349
Grant.sullivan@coag.gov
*Attorneys for Plaintiff State of Colorado*

WILLIAM TONG
Attorney General of Connecticut

*/s/ Maura Murphy Osborne*
MAURA MURPHY OSBORNE
Assistant Attorney General
KIMBERLY MASSICOTTE

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

JOSEPH RUBIN
(860) 808-5318
*Attorneys for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

*s/ Christian Douglas Wright*
CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
JILLIAN A. LAZAR
DAVID J. LYONS
Deputy Attorneys General
(302) 577-8400
Christian.wright@deleware.gov
Jillian.lazar@deleware.gov
David.lyons@deleware.gov
*Attorneys for Plaintiff State of Delaware*

KARL A. RACINE
Attorney General of the District of Columbia

*/s/ Kathleen Konopka*
KATHLEEN KONOPKA
Deputy Attorney General, Public Advocacy
Division
ANDREW J. SAINDON
Senior Assistant Attorney General
(202) 741-0770
Andy.saindon@dc.gov
*Attorneys for Plaintiff District of Columbia*

CLARE E. CONNORS
Attorney General of Hawaii

*s/ Robert T. Nakatsuji*
ROBERT T. NAKATSUJI
Deputy Attorney General
(808) 586-1360
Robert.t.nakatsuji@hawaii.gov
*Attorneys for Plaintiff State of Hawaii*

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

KWAME RAOUL
Attorney General of Illinois

*/s/ Kathryn Hunt Muse*
KATHRYN HUNT MUSE
Deputy Chief, Public Interest Division
DARREN KINKEAD
Assistant Attorney General
(312) 814-3000
kmuse@atg.state.il.us
dkinkead@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*

AARON M. FREY
Attorney General of Maine

*/s/ Susan P. Herman*
SUSAN P. HERMAN
Chief Deputy Attorney General
(207) 626-8814
susan.herman@maine.gov
*Attorneys for Plaintiff State of Maine*

BRIAN E. FROSH
Attorney General of Maryland

*/s/ Jeffrey P. Dunlap*
JEFFREY P. DUNLAP
STEVEN M. SULLIVAN
(410) 576-6325
ssullivan@oag.state.md.us
jdunlap@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

MAURA HEALEY
Attorney General of Massachusetts

*/s/ Phoebe Fischer-Groban*
PHOEBE FISCHER-GROBAN
Assistant Attorney General
(617) 727-2200
Phoebe.fischer-groban@state.ma.us
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2    DANA NESSEL
     Attorney General of Michigan

3
     /s/ Joseph T. Froehlich
4    JOSEPH T. FROEHLICH
     Assistant Attorney General
5    (517) 335-7573
6    Froehlichj1@michigan.gov
     Attorneys for Plaintiff State of Michigan

7
     KEITH ELLISON
8    Attorney General of Minnesota

9
     /s/ Jacob Campion
10   JACOB CAMPION
     Assistant Attorney General
11   (651) 757-1459
12   Jacob.campion@ag.state.mn.us
     Attorneys for Plaintiff State of Minnesota

13
     GURBIR S. GREWAL
14   Attorney General of New Jersey

15
     /s/ Glenn J. Moramarco
16   GLENN J. MORAMARCO
     Assistant Attorney General
17   (609) 376-3235
     Glenn.moramarco@law.njoag.gov
18   Attorneys for Plaintiff State of New Jersey

19   HECTOR BALDERAS
     Attorney General of New Mexico
20
     /s/ Nicholas M. Sydow
21   NICHOLAS M. SYDOW
     Civil Appellate Chief
22   (505) 717-3571
     nsydow@nmag.gov
23   Attorneys for Plaintiff State of New Mexico

24

25

26

LETITIA JAMES
Attorney General for New York

*/s/ Matthew Colangelo*
MATTHEW COLANGELO
Chief Counsel for Federal Initiatives
DANIELA NOGUEIRA
Assistant Attorney General
STEVEN C. WU
Deputy Solicitor General
(212) 416-6057
Matthew.colangelo@ag.ny.gov
Daniela.Nogueira@ag.ny.gov
steven.wu@ag.ny.gov

*Attorneys for Plaintiff State of New York*

JOSHUA H. STEIN
Attorney General of North Carolina

*/s/ Sripriya Narasimhan*
SRIPRIYA NARASIMHAN
Deputy General Counsel
SNarasimhan@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

ELLEN F. ROSENBLUM
Attorney General of Oregon

*/s/ Carla Scott*
CARLA SCOTT
Senior Assistant Attorney General
(971) 673-1915
carla.a.scott@doj.state.or.us
MICHAEL KRON
Special Counsel
(503) 378-4400
Michael.c.kron@doj.state.or.us
*Attorneys for Plaintiff State of Oregon*

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

JOSHUA SHAPIRO
Attorney General of Pennsylvania

3

*s/ Jacob B. Boyer*

4

JACOB B. BOYER
Deputy Attorney General
MICHAEL J. FISCHER

5

Chief Deputy Attorney General

6

(215) 560-2171
jboyer@attorneygeneral.gov

7

mfischer@attorneygeneral.gov
*Attorneys for Plaintiff Commonwealth of*

8

*Pennsylvania*

9

PETER F. NERONHA
Attorney General of Rhode Island

10

11

*/s/ Justin J. Sullivan*

12

JUSTIN J. SULLIVAN
Special Assistant Attorney General

13

(401) 274-4400 ext. 2007
jjsullivan@riag.ri.gov

14

*Attorneys for Plaintiff State of Rhode Island*

15

T.J. DONOVAN
Attorney General of Vermont

16

17

*/s/ Benjamin D. Battles*

18

BENJAMIN D. BATTLES
Solicitor General
(802) 828-5944

19

Benjamin.battles@vermont.gov

20

*Attorneys for Plaintiff State of Vermont*

21

MARK R. HERRING
Attorney General of Virginia

22

23

*/s/ Samuel T. Towell*

24

SAMUEL T. TOWELL
Deputy Attorney General, Civil Litigation
(804) 786-2071

25

STowell@oag.state.va.us

26

*Attorneys for Plaintiff Commonwealth of*
*Virginia*

PLAINTIFF STATES' OPPOSITION AND
CROSS-MOTION FOR SJ
NO.  2:20-CV-00111-RAJ

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2                                JOSHUA L. KAUL
                                Attorney General of Wisconsin

3

4                                *s/ Brian P. Keenan*
                                BRIAN P. KEENAN

5                                Assistant Attorney General
                                (608) 266-0020

6                                keenanbp@doj.state.wi.us
                                *Attorneys for Plaintiff State of Wisconsin*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF STATES' OPPOSITION AND        31        ATTORNEY GENERAL OF WASHINGTON
CROSS-MOTION FOR SJ                            Complex Litigation Division
NO.  2:20-CV-00111-RAJ                         800 Fifth Avenue, Suite 2000
                                             Seattle, WA 98104-3188
                                             (206) 464-7744

1

## <u>DECLARATION OF SERVICE</u>

2      I hereby declare that on this day I caused the foregoing document to be electronically

3  filed with the Clerk of the Court using the Court's CM/ECF System which will send notification

4  of such filing to all counsel of record.

5      DATED this 19th day of February 2021, at Seattle, Washington.

6                                        *s/ Kristin Beneski*

7                                        KRISTIN BENESKI, WSBA #45478
                                        Assistant Attorney General

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26